UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

PATSY WIDAKUSWARA, *et al.*,

            Plaintiffs,

-v-

KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media, *et al.*,

            Defendants.

————————————————————————

25-CV-2390 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

      Plaintiffs, who are journalists, unions, and nonprofits, bring this suit against Defendants Kari Lake, Victor Morales, and the United States Agency for Global Media ("USAGM"), challenging the termination of personnel, cancellation of grant funds, and shuttering of offices and radio infrastructure that have taken place at USAGM and its affiliates since March 15, 2025. On March 28, 2025, this Court granted Plaintiffs' motion for a temporary restraining order, which remains in effect. Before the Court now is Defendants' motion to transfer the case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the motion is granted.

**I.    Background**

      The Court assumes familiarity with the facts of this case, as set forth in its March 28, 2025 Opinion and Order. *See Widakuswara v. Lake*, ---F. Supp. 3d---, No. 25-CV-2390, 2025 WL 945869 (S.D.N.Y. Mar. 28, 2025).

      Relevant to the present motion, Defendants filed a letter on March 26, 2025, requesting that the Court transfer this case to the United States District Court for the District of Columbia ("D.D.C."). (ECF No. 35 ("Mot.").) Plaintiffs opposed the request for transfer on March 27,

2025. (ECF No. 40 ("Opp.").) The Court heard oral argument on March 28, 2025, on both Plaintiffs' motion for a temporary restraining order and Defendants' motion to transfer. Defendants provided supplemental briefing on April 2, 2025 to update the Court on additional cases filed in the District of Columbia since their motion for transfer was filed (ECF No. 56) and Plaintiffs responded on April 3, 2025 (ECF No. 57).

## II.    Legal Standard

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To determine whether transfer is appropriate, a district court first asks "whether the case could have been brought in the proposed transferee district." *Diaz-Roa v. Hermes L., P.C.*, ---F. Supp. 3d---, No. 24-CV-2105, 2024 WL 4866450, at *25 (S.D.N.Y. Nov. 21, 2024) (quotation marks omitted). It then considers "whether transfer would be an appropriate exercise of the Court's discretion." *Cont'l Cas. Co. v. Lockheed Martin Corp.*, No. 23-CV-11147, 2024 WL 3862189, at *4 (S.D.N.Y. Aug. 19, 2024) (quotation marks omitted). "District courts have broad discretion in making determinations of convenience under Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021).

## III.    Discussion

The parties do not contest that this action could have been brought in the District of Columbia, where "[t]he decisions and actions of USAGM, Lake, and Morales" at issue in this case occurred. (Mot. at 4; *see also* Opp. at 2.) Thus, the Court's inquiry focuses on whether transfer is "appropriate," considering:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the

attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022). On the whole, those factors counsel in favor of transfer.

The Court is most persuaded by the Defendants' argument that transferring this case to the D.D.C. would be in the interests of justice and judicial economy. (Mot. at 6.) "It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer," *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999) (collecting cases), and "may be determinative," *Williams v. City of New York*, No. 03-CV-5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006).

When Defendants filed their letter motion to transfer, there were already three cases, closely related to the present one, pending before Judge Royce C. Lamberth in the D.D.C. *RFE/RL, Inc. v. Lake*, 25-CV-799 (D.D.C.); *Open Tech. Fund v. Lake*, 25-CV-840 (D.D.C.); *Abramowitz v. Lake*, 25-CV-887 (D.D.C.). Two more related cases have been filed and assigned to Judge Lamberth since then. *Radio Free Asia v. United States*, 25-CV-907 (D.D.C.); *Middle East Broad. Networks, Inc. v. United States*, 25-CV-966 (D.D.C.)

The existence of these five, closely related cases in the D.D.C. weighs in favor of transfer. All five of these cases pending in the D.D.C. have significant overlap of facts, claims, and defendants with the case in front of this Court.[1] All five challenge the same actions that occurred at USAGM beginning on March 15, 2025.[2] They all assert claims pursuant to the

---

[1] *See* Complaint ¶¶ 11-46, *RFE/RL Inc.* (ECF No. 1); Complaint ¶¶ 19-46, *Open Tech. Fund* (ECF No. 1); Complaint ¶¶ 26-116, *Abramowitz* (ECF No. 1); Complaint ¶¶ 19-53, *Radio Free Asia* (ECF No. 1); Complaint ¶¶ 18-53, *Middle East Broad. Networks* (ECF No. 1).

[2] *See supra* note 1.

Administrative Procedure Act ("APA") and the Constitution, and four assert claims pursuant to the Mandamus Act and All Writs Act.³ They all name USAGM, Victor Morales, and Kari Lake as defendants.⁴ As of the publication of this Order, plaintiffs have filed motions for emergency relief in four of the five cases,⁵ and Judge Lamberth has already granted Radio Free Europe/Radio Liberty's motion for a temporary restraining order to halt USAGM's cancellation of that affiliate's grant funding, *RFE/RL* (ECF No. 14).

The only claims not represented in the five D.D.C. cases so far are Plaintiffs' First Amendment claims. (*See* Opp. at 4.) However, that discrepancy alone does not render these cases, with essentially the same facts and impacted parties, unrelated. And there is no reason to believe that this Court has any more expertise in First Amendment jurisprudence than the D.D.C., such that transferring this case would prejudice Plaintiffs' free-speech claims. In fact, the main case on which Plaintiffs rely for their First Amendment arguments, *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333 (D.D.C. 2020), was decided by Judge Howell in that very district, making Plaintiffs' argument that the court follow *Turner* even stronger in front of the transferee court. (*See* ECF No. 1 ¶¶ 14, 57; ECF No. 17 at 24-26.)

---

³ *See* Complaint ¶¶ 47-60, 74-86, *RFE/RL Inc.* (ECF No. 1); Complaint ¶¶ 47-72, *Open Tech. Fund* (ECF No. 1); Complaint ¶¶ 117-48, *Abramowitz* (ECF No. 1); Complaint ¶¶ 54-76, 90-97, *Radio Free Asia* (ECF No. 1); Complaint ¶¶ 62-76, 90-97, *Middle East Broad. Networks* (ECF No. 1).

⁴ *See* Complaint ¶¶ 6-8, *RFE/RL Inc.* (ECF No. 1); Complaint ¶¶ 13-15, *Open Tech. Fund* (ECF No. 1); Complaint ¶¶ 23-25, *Abramowitz* (ECF No. 1); Complaint ¶¶ 12-14, *Radio Free Asia* (ECF No. 1); Complaint ¶¶ 11-13, *Middle East Broad. Networks* (ECF No. 1).

⁵ *See* Motion for Temporary Restraining Order and Preliminary Injunction, *RFE/RL Inc.* (ECF No. 6); Motion for Temporary Restraining Order, *Open Tech. Fund* (ECF No. 4); Motion for Temporary Restraining Order and Preliminary Injunction, *Abramowitz* (ECF No. 4); Motion for Temporary Restraining Order, *Radio Free Asia* (ECF No. 12).

In addition to promoting judicial economy, transfer would also lessen the risk of conflicting injunctive relief, thereby promoting the interests of justice as well. *See Savin v. CSX Corporation*, 657 F.Supp. 1210, 1214 (S.D.N.Y.1987) ("There is a strong policy favoring the litigation of related claims in the same tribunal in order that . . . inconsistent results can be avoided." (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968))). Should these cases continue to be litigated in different forums, the potential for inconsistent relief, or uncertainty in the scope of relief, will continue to loom. Further, Plaintiffs have already identified a problem with this parallel litigation: The government has filed a motion to stay in *Abramowitz v. Lake*, citing the pendency of this case in the Southern District of New York, while simultaneously moving this Court to transfer the present action to the D.D.C. (ECF No. 57 at 2.) According to Plaintiffs, this shows that "Defendants are not only trying to have their cake and eat it too—they are simultaneously manipulating two courts in service of their goal of unlawfully dismantling USAGM." (*Id.*) Especially in the case of emergency relief, the judicial system is best served by consistent and coherent commands that do not leave the parties with mistaken understandings about their legal obligations or present opportunities to exploit technical loopholes.

Other factors weigh in favor of transfer as well. The D.D.C. would be a more convenient forum for the majority of witnesses and parties, most of whom reside in the District of Columbia or in the surrounding area. (Mot. at 4, 6.) And though there were some relevant facts that occurred in this District, including the impacts of the lay-offs and office closures felt by the "14 full-time and approximately . . . 25 personal service contractors" working at VOA's New York News Bureau in Manhattan (*id.*), the "key operative events" occurred in the District of Columbia, *cf. Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d

735, 745 (S.D.N.Y. 2013). The decisions at issue in this case, including the decisions to terminate hundreds of USAGM employees, cancel grantee contracts, and shutter offices, all occurred in the District of Columbia. (Mot. at 4.) And thousands of the personnel impacted by these decisions, including hundreds who received termination letters on March 25, 2025 (*see* ECF No. 33 at 2), "are located in the [District of Columbia] area." (*See* Mot. at 4.)

Several of the remaining factors are neutral in the Court's transfer analysis. First, the location of relevant documents and access to evidence is generally not treated as a persuasive factor in the modern age with digital storage and transmission capabilities. *See Everlast*, 928 F. Supp. 2d at 747 ("Given electronic discovery, and absent any concrete illustration of inconvenience to either side relating to documents or other non-testimonial evidence, this factor does not materially favor either venue."). Second, neither side has identified any potential "unwilling witnesses" that this District (or any district) would need to compel. *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009) (holding that "this factor is neutral in the Court's analysis" when neither side has identified an unwilling witness); *see also In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, No. 08-CV-3516, 2008 WL 4344531, at *7 (S.D.N.Y. Sept. 18, 2008) (same). And third, because both forums are well acquainted with the APA and constitutional law, that factor is also neutral.

Thus, there remain only two factors that Plaintiffs argue counsel against transfer: the relative means of the parties and the weight accorded to a plaintiff's choice of forum. As to relative means, Plaintiffs contend that because the federal government has significantly greater resources than individuals, unions, and nonprofits, this factor should weigh against transfer. (Opp. at 5.) But while it is obviously true that the government has more resources than any single individual or organization, Plaintiffs have not explained why it would cost them any more

to litigate in the District of Columbia.  *See It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) ("[A] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." (quotation marks omitted)).  After all, if the majority of witnesses and Plaintiffs are located in the District of Columbia, transfer there may well save Plaintiffs money.  And though, as Plaintiffs pointed out at oral argument, one of the law firms representing Plaintiffs is located in the Southern District of New York, all other counsel, including two of the three who argued in front of the Court, are based in the District of Columbia.  (*See* ECF No. 1 at 55-56.)

Thus, the only factor that strongly weighs against transfer is the fact that Plaintiffs chose to litigate in this District, and "a plaintiff's choice of forum is presumptively entitled to substantial deference."  *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) (quoting *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004)).  Ordinarily, a plaintiff should be able to exercise its own litigation strategy, which often includes specific forum selection.  However, where, as here, there are strong concerns about the interests of justice and judicial economy counseling in favor of transfer, as well as the convenience of the parties and witnesses, and the location of key operative facts, a plaintiff's choice of forum cannot override these other weighty considerations.  *See Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009) ("To overcome this presumption in favor of plaintiff's choice of forum, defendant must make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there." (quotation marks omitted)).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is GRANTED.

Notwithstanding the transfer to the United States District Court for the District of Columbia, the temporary restraining order issued by this Court on March 28, 2025 (ECF No. 54) remains in full force and effect unless and until modified, extended, or vacated by the transferee court. *See, e.g.*, *Khalil v. Joyce*, ---F. Supp. 3d. ---, No. 25-CV-1935, 2025 WL 849803, at *14 (S.D.N.Y. Mar. 19, 2025) (ordering that a stay of removal remain in place until a transferee court modified it); *Perficient, Inc. v. Priore*, No. 16-CV-249, 2016 WL 866090, at *6 (E.D. Mo. Mar. 7, 2016) ("As this Court has jurisdiction over the defendant, the Temporary Restraining Order remains in full force and effect [after transfer] until its scheduled expiration date."); *Valassis Commc'ns, Inc. v. News Corp.*, No. 13-14654, 2017 WL 4230646, at *5 (E.D. Mich. Sept. 25, 2017) (concurrently entering a preliminary injunction and granting a motion to transfer); *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1148-49 (N.D. Ill. 2019) (same).

The Clerk of Court is directed to transfer this case to the United States District Court for the District of Columbia. Further, the Clerk shall effectuate the transfer of the case immediately, notwithstanding the seven-day period provided for in Local Rule 83.1, which is hereby waived.

SO ORDERED.

Dated: April 4, 2025
       New York, New York

                                                J. PAUL OETKEN
                                           United States District Judge