UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATSY WIDAKUSWARA, *et al.*,

        Plaintiffs,

v.

KARI LAKE, Senior Advisor to the Acting
CEO of the U.S. Agency for Global Media,
*et al.*,

        Defendants.

Civil Action No. 25-1015 (RCL)

**DEFENDANTS' MOTION TO DISSOLVE
THE TEMPORARY RESTRAINING ORDER (ECF NO. 54)**

The United States Agency for Global Media ("USAGM" or the "Agency"), Kari Lake, in

her official capacity as Senior Advisor to the Acting CEO of USAGM, and Victor Morales, in his

official capacity as Acting CEO of USAGM (together, the "Defendants" or the "Government")

respectfully move to dissolve the March 28, 2025, Temporary Restraining Order, ECF No. 54.  In

addition, Defendants respectfully request an immediate stay of the Temporary Restraining Order

pending a ruling on this motion.  *See* Order, *State of New York v. Trump*, Civ. A. No. 25-0039

(D.R.I. April 7, 2025) (temporarily staying enforcement of an order pending a ruling on

Defendants' *California*-based motion for reconsideration).

This Court should dissolve the Temporary Restraining Order based on the intervening

decision of the Supreme Court in *Dep't of Education v. California*, No. 24A910, 2025 WL

1008354 (Apr. 4, 2025) (per curiam).  In *California*, the Supreme Court stayed a temporary

restraining order that had "enjoin[ed] the Government from terminating various education-related

grants."  *Id.* at *1.  The Supreme Court held that the government was "likely to succeed in showing

the District Court lacked jurisdiction to order the payment of money under the [Administrative Procedure Act]," *id.* at *1–2, reasoning that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* at *2 (quoting 28 U.S.C. §1491(a)(1)). The same jurisdictional bar applies equally to any claims in this case based on USAGM grant agreements. A separate jurisdictional bar under the "'comprehensive' statutory schemes governing the review of employment disputes arising between the federal government and its civil and foreign service officers," *Am. Foreign Serv. Ass'n v. Trump*, Civ A. No. 25-0352 (CJN), 2025 WL 573762, at *8 (D.D.C. Feb. 21, 2025) (quoting *U.S. Info. Agency v. Krc*, 989 F.2d 1211, 1217 (D.C. Cir. 1993)), applies to the portions of the Temporary Restraining Order that control USAGM's ability to take personnel actions. Together, the two jurisdictional bars entirely preclude the Temporary Restraining Order.

For the same reasons the Supreme Court stayed the temporary restraining order at issue in *California*, this Court should dissolve the Temporary Restraining Order here. Pursuant to Local Civil Rule 7(m), counsel for the Defendants have conferred with counsel for the Plaintiffs, who represent that Plaintiffs oppose the relief requested.

## BACKGROUND

### A.    USAGM

The United States funds and operates a network of broadcast media organizations throughout the world to "promote the right of freedom of opinion and expression" and to advance "the goals of United States foreign policy." 22 U.S.C. § 6201. These broadcast organizations are supervised and governed by USAGM. In furtherance of that mission, USAGM oversees federally funded broadcast networks: the Voice of America ("VOA"), the Office of Cuba Broadcasting ("OCB"), Radio Free Asia ("RFA"), Radio Free Europe/Radio Liberty ("RFE/RL"), Middle East

Broadcasting Network ("MBN"), and the Open Technology Fund ("OTF").  Congress directed that all government-funded and operated international broadcasts under the USAGM umbrella "shall" be "consistent with the broad foreign policy objectives of the United States," and "shall include" "a balanced and comprehensive projection of United States thoughts and institutions." *Id.* § 6202(a)(1), (b)(2); *see also id.* § 6202(c)(2) (same for VOA broadcasts).

Congress further authorized that USAGM employ grants to fund the entities under its supervision.  Section 6204(a) authorizes USAGM's CEO to: "make and supervise grants and cooperative agreements for broadcasting and related activities" and "allocate funds appropriated for international broadcasting activities among the various elements of the [USAGM] and grantees, subject to reprogramming notification requirements in law for the reallocation of funds." 22 U.S.C. § 6204(a)(5), (a)(6).

### B.    Executive Order 14238

On March 14, 2025, President Trump issued Executive Order 14238, which directed that USAGM's "non-statutory components and functions" be eliminated and that its "performance of [its] statutory functions and associated personnel" be reduced to "the minimum presence and function required by law."  Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 14, 2025).  In furtherance of the OPM Memorandum and the Executive Order, on March 15, 2015, USAGM placed employees on administrative leave with full pay and benefits.  Thomas Decl. ¶ 6. On March 16, 2025, USAGM terminated contracts with all personal services contractors, who will be paid through March 31, 2025.  *Id.*  The Agency has retained the ability to recall employees from administrative leave to work status as it seeks to implement the Executive Order. *Id.*

## C.      Plaintiffs' Complaint

On March 21, 2025, Plaintiffs—comprising several full-time employees and personal service contractors of the VOA, a director of USAGM, a non-profit organization, and four labor organizations—sued Defendants Lake, Morales, and USAGM for allegedly placing employees and contractors on paid administrative leave, temporarily ceasing broadcasting and programming operations, and terminating grant agreements.  Plaintiffs have asserted violations of the First Amendment, the Separation of Powers Clause, and the Appointments Clause of the constitution; violations of Sections 706(1) and 706(2) of the Administrative Procedure Act; alleged that Defendants breached the "statutory firewall" set forth in 22 U.S.C. §§ 6202, 6204; sought relief under the Mandamus Act and the All Writs Act; and alleged that Defendants acted in an ultra vires manner.  *See generally* Compl., ECF No. 1.  On March 24, 2025, Plaintiffs filed a motion for a preliminary injunction and a temporary restraining order, ECF No 15.  On March 28, 2025, the District Court for the Southern District of New York entered the Temporary Restraining Order, *see* ECF No. 54, enjoining Defendants:

> from taking any further actions to implement or effectuate the March 14, 2025 Executive Order entitled "Continuing the Reduction of the Federal Bureaucracy" as to USAGM and the March 15, 2025 email issued to all VOA staff, or take any action to reduce USAGM's workforce (whether employees, contractors, or grantees), included but not limited to (i) proceeding with any further attempt to terminate, reduce-in-force, place on leave, or furlough any USAGM employee, or contractor, (ii) terminating (or proceeding with terminating as announced) any USAGM grant or contract or proceeding with terminating any USAGM Personal Services Contractors (PSCs) who received notice after March 14, 2025 that their contract would be terminated, including but not limited to John Doe 3 and John Doe 4 who received notice that their contracts would be terminated on March 31, 2025, or (iii) closing any USAGM office or requiring employees or contractors in overseas offices to return to the United States.

ECF No. 54.  On April 4, 2025, this matter was transferred to the District Court for the District of Columbia.  *See* ECF No. 62.

## ARGUMENT

The Supreme Court's analysis in *California* makes clear that the March 28, 2025, Temporary Restraining Order should be dissolved. Simply put, Plaintiffs cannot show a likelihood of success on the merits of their claims because the District Court lacks jurisdiction to enforce USAGM grants or control its personnel actions and the balance of harms favors Defendants.

**I.     Plaintiffs Cannot Show a Likelihood of Success on the Merits of their Grant-based Claims.**

Part (ii) of the Temporary Restraining Order bars Defendants from "terminating (or proceeding with terminating as announced) any USAGM grant or contract or proceeding with terminating any USAGM Personal Services Contractors (PSCs)." ECF No. 54. That type of relief in unavailable in a federal district court and must be obtained from the Court of Federal Claims. The Tucker Act, 28 U.S.C. § 1491(a)(1), provides for judicial review of breach claims for express or implied contracts over $10,000 in the Court of Federal Claims (or district court for claims less than $10,000) "unless such jurisdiction was explicitly withheld or withdrawn by statute." *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (*en banc*). The D.C. Circuit has long "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government." *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, Civ. A. No. 25-0465 (TNM), 2025 WL 763738 at *4 (D.D.C. Mar. 11, 2025) (quoting *Transohio Sav. Bank v. Dir. Off. Of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992) (emphasis in original)). Put another way, "[t]he only remedy to which the United States has consented in cases of breach of contract is to the *payment of money damages* in either the Court of Claims [now the Court of Federal Claims], if the amount claimed is in excess of $10,000, 28 U.S.C. § 1491(a)(1), or the district courts, where the amount in controversy is $10,000 or less. 28 U.S.C. § 1346(a)(1)." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) (emphasis in original). And "[f]ederal courts do not have

the power to order specific performance by the United States of its alleged contractual obligations."
*Id.* at 3.

Defendants raised this jurisdictional bar in their opposition to the motion for a temporary restraining order. *See* ECF. No. 41 at 20 n.3 ("To the extent that Plaintiffs challenge the termination of various grants between USAGM and third parties, this Court lacks jurisdiction to adjudicate such disputes. These claims sound in contract, and are thus committed to the exclusive jurisdiction of the Court of Federal Claims."). The Court in the Southern District of New York previously rejected those arguments in entering the Temporary Restraining Order, *see* ECF No. 54 at 6 n.5, but the intervening decision by the Supreme Court now clarifies that such claims cannot be heard in the District Court.

> The Supreme Court explained:

> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Nor does the waiver apply to claims seeking "money damages." *Ibid*. True, a district court's jurisdiction is "not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). But, as we have recognized, the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

*Id*. As in *California*, the Temporary Restraining Order's bar on USAGM action on grants is inconsistent with the Congressional grant of exclusive jurisdiction to the Court of Federal Claims.

## II.   Plaintiffs Cannot Show a Likelihood of Success on the Merits of Claims Arising from Defendants' Personnel Actions.

Parts (i) and (iii) of the Temporary Restraining Order prevent USAGM from taking certain personnel actions, e.g., terminating employees, closing offices, and changing employee duty

stations. ECF No. 54. The district court also lacked jurisdiction to order these remedies under *California.* Again, "[t]he APA's waiver of sovereign immunity does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *California*, 2015 WL 1008354, at *1 (quoting 5 U.S.C. § 702). Here, the "'comprehensive' statutory schemes governing the review of employment disputes arising between the federal government and its civil and foreign service officers" controls. *Am. Foreign Serv. Ass'n*, 2025 WL 573762, at *8 (quoting *U.S. Info. Agency*, 989 F.2d at 1217).

The Supreme Court has long recognized that Congress established a comprehensive scheme covering all matters involving federal employment. *See United States v. Fausto*, 484 U.S. 439, 455 (1988). Indeed, the Supreme Court has held that, even as to a federal employee raising constitutional claims, that statutory scheme imposes an "implied preclusion of district court jurisdiction[.]" *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 12 (2012). This statutory scheme thus "precludes courts from providing supplemental remedies." *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018); *Saul v. United States*, 928 F.2d 829, 835–42; (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510-11 (9th Cir. 1984). With limited exceptions not relevant here, Congress explicitly sought to reduce the participation of the federal courts, preferring the use of the statutory grievance procedures over all other remedies.

Another Judge of this Court recently described that statutory scheme when addressing analogous claims by unions of federal employees challenging executive actions that they asserted would "systematically dismantle" the agency that employed them. *Am. Foreign Serv. Ass'n*,

2025 WL 573762, at \*1 (quoting plaintiffs' complaint). For civil servants, the "applicable statutory scheme is set forth in the Federal Service Labor-Management Relations Statute (FSLMRS) and the Civil Service Reform Act (CSRA) (of which the FSLMRS is a part)." *Id.* at \*8 (citing *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump (AFGE)*, 929 F.3d 748, 752 (D.C. Cir. 2019); *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004)). For foreign service officers, the Foreign Service Act of 1980 ("FSA") "provides an analogous system for reviewing allegedly adverse actions taken against those employees." *Id.* (citing *Krc*, 989 F.2d at 1217). Together, the FSLMRS, CSRA, and FSA supply the exclusive mechanisms for administrative and judicial review that Congress intended for claims asserting employment harms to federal employees. *See id.*; *see also Nat'l Treasury Emps. Union v. Trump*, 2025 WL 561080, at \*5 (D.D.C. Feb. 20, 2025) (recognizing that the FSLMRS and CSRA together precluded district court's jurisdiction over federal employees' unions' challenges to terminations of their members, reductions in force, and offers of deferred resignation).

In light of that statutory scheme, the facets of the Temporary Restraining Order that control USAGM personnel actions are inconsistent with the statutory scheme that Congress intended federal employees to use as the exclusive means for the resolution for such claims.

### III.   The Balance of Harms Favors Defendants.

Moreover, the Supreme Court's decision indicates that the balance of harms favors the Defendants in this case rather than Plaintiffs. *California*, 2025 WL 1008354, at \*1-2. ("[R]espondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed."). As here, "[n]o grantee promised to return withdrawn funds should its grant termination be reinstated,' and the District Court declined to impose bond." *Id.* (internal quotations omitted); *see* Defs.' Mem. of Law in Opp. to Pls.' Mot. for a Temporary

Restraining Order (Mar. 27, 2025), ECF No. 41 at 21–22 (explaining that the balance of equities weigh against preliminary relief).  Nor have the Plaintiffs promised to reimburse Defendants for any payroll expenses paid by Defendants during the Temporary Restraining Order's effect.

Additionally, the Court should also dissolve the provisions of the Temporary Restraining Order enjoining Defendants' actions because it is overbroad.  It is axiomatic that an injunction "must be narrowly tailored to remedy the harm shown." *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842 (D.C. Cir. 1985).  Although the current Temporary Restraining Order enjoins USAGM from terminating grant agreements, none of the grantees are parties in this case, and Plaintiffs fail to specifically trace any grant termination to their alleged harm.[1]  *See* Mem. of Law at 27–31 (discussing harm from alleged First Amendment violations and failing to mention grant cancelations in its irreparable harm argument).  Instead, highlighting the Temporary Restraining Order's overbreadth, four of the five congressionally-designated grantees have independently sued over their grant agreements in other cases.  *See Radio Free Europe/Radio Liberty Inc. v. Lake*, Civ. A. No. 25-0799 (RCL) (D.D.C.); *Open Technology Fund v. Lake*, Civ. A. No. 25-0840 (RCL) (D.D.C.)*; Radio Free Asia v. United States*, Civ. A. No. 25-0907 (RCL) (D.D.C.); *Middle East Broadcasting Networks v. United States*, Civ. A. No. 25-0966 (RCL) (D.D.C.).  The result for Defendants thus far has been a requirement to confer twice with two sets of counsel, in two sets of cases, concerning the same conduct by Defendants as to a given grantee.  Dissolving the Temporary Restraining Order would separately address the Order's overbreadth issue, obviate the need for such redundant steps, and reduce the risk of inconsistent actions being taken by different plaintiffs' counsel or inconsistent orders being issued by the Court as to the same grant.

---

[1]     Although several personal service contractors of VOA are Plaintiffs in this case, VOA is not.

## CONCLUSION

For the foregoing reasons, the Court should dissolve the Temporary Restraining Order,

ECF. No. 54, and immediately stay the Temporary Restraining Order pending a ruling on this

motion.

Dated: April 8, 2025                                    Respectfully submitted,


                                                        EDWARD R. MARTIN, JR., D.C. Bar #481866
                                                        United States Attorney


                                                        By: */s/ Brenda González Horowitz*
                                                            BRENDA GONZÁLEZ HOROWITZ
                                                            D.C. Bar No. 1017243
                                                            STEPHANIE R. JOHNSON
                                                            Assistant United States Attorneys
                                                            601 D Street, NW
                                                            Washington, DC 20530
                                                            Main: (202) 252-2500

                                                        *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATSY WIDAKUSWARA, *et al.*,

        Plaintiffs,

v.

KARI LAKE, Senior Advisor to the Acting
CEO of the U.S. Agency for Global Media, *et
al.*,

        Defendants.

Civil Action No. 25-1015 (RCL)

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendants' motion to dissolve the temporary restraining

order, Plaintiffs' opposition thereto, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED; it is further

ORDERED that the previously entered Temporary Restraining Order, ECF. No. 54, is

dissolved; it is further

ORDERED that the parties shall meet and confer and propose a schedule for further

proceedings in this action.

SO ORDERED:

_____             _____

Date                                 ROYCE C. LAMBERTH
                                    United States District Judge