UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA, JESSICA JERREAT, KATHRYN NEEPER, JOHN DOES 1-4, REPORTERS SANS FRONTIÈRES, REPORTERS WITHOUT BORDERS, INC., AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES (AFGE), AMERICAN FOREIGN SERVICE ASSOCIATION (AFSA), and THE NEWSGUILD-CWA, | Case No. 1:25-cv-01015-RCL |

                                    Plaintiffs,

        -against-

KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media; VICTOR MORALES, in his official capacity as Acting CEO of the U.S. Agency for Global Media; and U.S. AGENCY FOR GLOBAL MEDIA,

                    Defendants.

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER

Emery Celli Brinckerhoff Abady Ward & Maazel LLP

Government Accountability Project

American Federation of Government Employees, AFL-CIO

American Foreign Service Association

American Federation of State, County and Municipal Employees, AFL-CIO

Democracy Forward Foundation

State Democracy Defenders Fund

Media Freedom and Information Access Clinic at Yale Law School

Plaintiffs hereby oppose Defendants' motion to dissolve the Plaintiffs' Temporary Restraining Order ("TRO"). Defendants' newly asserted argument is without merit. A coalition of plaintiffs with diverse yet uniformly irreparable and immediate harms challenge the Defendants' patent failure to abide by their statutorily mandated duties, their arrogation of authority that rightfully belongs to Congress, and their violation of the Plaintiffs' constitutional right to free speech. There is no basis to dismiss this case as one sounding in contract, nor is this case a mere employment dispute that can be adjudicated and remediated by an administrative agency.

## ARGUMENT

### I.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

This Court has jurisdiction over this suit. The Administrative Procedure Act ("APA") waives the government's sovereign immunity from Plaintiffs' claims—and permits them to be brought in district court. In particular, Section 702 of the APA waives the government's immunity from claims in federal court "seeking relief other than money damages" so long as no "other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Defendants incorrectly contend that the Tucker Act and federal labor statutes "forbid[]" different portions of "the relief which is sought" here.[1] In some instances, those statutes divert contract claims and employment claims to the Court of Federal Claims or

---

[1]   Defendants do not appear to contend that Plaintiffs' claims fall outside Section 702's waiver because they seek "money damages"—and for good reason. Although Plaintiffs' requested relief to block the unlawful dismantling of USAGM would result in Defendants paying money—for example, to the broadcast networks whose grants USAGM unlawfully canceled and to various employees and freelancers USAGM appears otherwise poised to terminate—it is well established that "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). None of the relief Plaintiffs seek can credibly be characterized as such, and Defendants have not claimed that it can.

1

administrative bodies, respectively. But this case presents no such claims. Plaintiffs bring

statutory and constitutional claims, not contractual ones, and they challenge not employment

decisions, but rather Defendants' unconstitutional and otherwise unlawful gutting of the U.S.

Agency for Global Media ("USAGM") and its important, and congressionally mandated,

programs. Those claims are properly before this Court.

### A.    The Tucker Act Does Not Deprive this Court of Jurisdiction

The Tucker Act does not prohibit Plaintiffs from pressing their claims in this Court.

Defendants (correctly) appear to acknowledge that the Tucker Act has nothing to do with most of

Plaintiffs' claims and argue only that the Tucker Act divests this Court of jurisdiction over

Plaintiffs' "grant-based" (Mem. at 5) claims—that is, any claims seeking to block USAGM from

unlawfully and unconstitutionally terminating the grants that Congress directed USAGM to

provide to specified broadcasting networks. But the Tucker Act has nothing to do with those

claims either.

The Tucker Act "provid[es] the exclusive remedy for contract claims against the

government"—and Section 702 of the APA accordingly "does not waive sovereign immunity"

for such claims. *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C.

Cir. 1992), *overruled in part on other grounds*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620

(D.C. Cir. 2017). Importantly, however, the fact that claims involve a contract is not enough to

make them "contract claims"; instead, that turns on whether the claims "are founded *only* on a

contract, or whether they stem from a statute or the Constitution. *Id.*; *accord Crowley Gov't*

*Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (emphasis added)

(holding that a "claim that is validly based on grounds other than a contractual relationship with

the government" is not a contract claim subject to Tucker Act). Plaintiffs' claims here are not

"contract claims." Accordingly, the Tucker Act has no bearing on the case.

First, even assuming that grant agreements qualify as contracts, none of the Plaintiffs

even has a grant agreement with Defendants—and so have no contractual rights they could be

suing to vindicate. Plaintiffs instead bring suit to remediate harm they have experienced because

of Defendants' failure to comply with their statutory obligations to disburse grant money to

statutory grantees, including Radio Free Asia ("RFA") and Radio Free Europe/Radio Liberty

("RFE/RL"). *See* 22 U.S.C. §§ 6204(a)(5)-(6), 6207(d), 6208(d). Specifically, Plaintiff TNG-

CWA represents 100 employees of RFA, a statutory grantee of USAGM, whose employees have

been furloughed as a result of the grant termination and whose employees' First Amendment

rights have been violated by the silencing of that network. *See* Dkt. 16-16 (Schleuss Decl.) ¶¶ 3-

6, 9-10; Dkt. 17 at 27-29. Plaintiff the NewsGuild-CWA's ("TNG-CWA") members also stand

to lose their work visas and be sent back to autocratic countries if funding is not immediately

restored. Schleuss Decl. ¶ 20 and Ex. 1 at 14-15, 21-22. Additionally, TNG-CWA members who

do not work for RFA, but who are journalists who report abroad, rely on RFA's reporting abroad

to inform their own work and their personal safety as journalists operating in countries that do

not tolerate a free press. *Id*. ¶ 15-16. Plaintiffs Reporters sans Frontieres and Reporters Without

Borders, Inc. (together, the "RSF Plaintiffs") members experience this same irreparable listener

harm stemming from the silencing of RFA and RFE/RL feeds. *See* Dkt. 16-15 ¶¶ 11, 26. None of

these Plaintiffs have any contractual relationship with USAGM, and therefore plainly are not

suing on a contract.

Second, Plaintiffs' claims here are not founded on any contract at all, let alone "only" on

one. Rather, they are founded on statutes that require USAGM to fund certain broadcasting

networks, and on constitutional provisions that require executive officials to honor the laws

Congress enacts (and not to burden protected speech). *See* Compl. ¶¶ 102-160. Indeed, Plaintiffs'

claims make no mention of the terms of the grantees' contracts with USAGM. Whatever

contracts the grantee networks may have with USAGM are beside the point because it is federal

*statutes*—both the International Broadcasting Act and appropriations laws—that require

USAGM to make grants, and disburse funds, to the networks.

        In nonetheless contending that Plaintiffs' claims "sound in contract" (Mem. at 6),

Defendants offer little explanation. What little they do offer is unavailing. First, they contend

that a district court cannot "order specific performance by the United States of its alleged

contractual obligations"—and suggest that the Court would enter such a prohibited order if it

barred USAGM from terminating the networks' grants and correspondingly required USAGM to

continue disbursing funding to them. Mem. at 5-6 (citing *Coggeshall Dev. Corp. v. Diamond*,

884 F.2d 1, 3 (1st Cir. 1989)). But requiring USAGM to honor its statutory and constitutional

obligations to make grants to the grantee networks Congress identified, and to disburse the funds

Congress appropriated for those networks, does not order specific performance of any

contractual obligation. It enjoins Defendants from continuing to violate statutory and

constitutional commands, a function that is familiar to federal district courts and that fits easily

within their jurisdiction. And the D.C. Circuit has made clear that these courts are not "forbidden

from granting injunctive relief merely because that relief might be the equivalent of ordering

specific performance of a government contract." *Transohio*, 967 F.2d at 611.

        Second, without any analysis, Defendants offer a block quote from the Supreme Court's

recent emergency-docket order in *Department of Education v. California*, No. 24A910, 604 U.S.

----, 2025 WL 1008354 (Apr. 4, 2025) (per curiam). Dkt. 73 at 6. That short order, which was

issued with "barebones briefing, no argument, and scarce time for reflection," *id.* at *2 (Kagan, J., dissenting), does not help Defendants' case. In *California*, the Court stayed a TRO enjoining the government from terminating various grants and requiring it to pay out "grant obligations" because the Court found it "likely" that the district court lacked jurisdiction to grant such relief. *California*, 2025 WL 1008354, at *1. In so ruling, the Court reiterated the established principles that the APA's waiver of sovereign immunity "does not extend to orders to enforce a contractual obligation to pay money," and that, instead, "suits based on 'any express or implied contract with the United States'" must go to the Court of Federal Claims under the Tucker Act.[2] *Id.* (initial quotations omitted; quoting 28 U.S.C. § 1491(a)).

The Court's brief order did not explain how those principles applied to the claims in that case, but the underlying record shows that the claims there were meaningfully different on multiple fronts: For one, the plaintiffs in *California* were (effectively) the grantees—they were states whose public instrumentalities had received the grants at issue, and who had standing to sue on those instrumentalities' behalf. *See California v. Dep't of Educ.*, No. 25-cv-10548, 2025 WL 760825, at *1 n.2 (D. Mass. Mar. 10, 2025). Here, by contrast, Plaintiffs are not grantees who could enforce the terms of any grant agreement.

Additionally, the grant agreements in *California* were the sole source of any entitlement to the funds, not any statutory or constitutional command. The relevant statute directed the

---

[2]    The Court also noted in passing the established principle that the APA's waiver of sovereign immunity does not "apply to claims seeking 'money damages.'" *Id.* (citing 5 U.S.C. § 702). As noted above, *supra* n.1, defendants rightfully do not appear to claim that this principle has any relevance here. Indeed, the decision in *California* recognizes that "the possibility that an order setting aside an agency's action may result in the disbursement of funds" does not make it a claim for "money damages." *Id.* (quotations omitted; citing *Bowen*, 487 U.S. at 910). And Plaintiffs' "grant-based" (Mem. at 5) claims here are not. A "suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money" is not a suit for "money damages." *Bowen*, 487 U.S. at 900.

Secretary of Education to "use certain funds to make grants to entities" that would recruit and train teachers. *California v. Dep't of Educ.*, 132 F.4th 92, 95 (1st Cir. Mar. 21, 2025) (citing various statutory provisions). The statute did not entitle any particular grantee to the funds; rather, grants were awarded pursuant to a "competitive application process." *Id.* Thus, although the plaintiff grantees there styled their action as an APA challenge to the grants' termination, their particular entitlement to the funds arose only from the grant agreements themselves. And the plaintiffs' allegations focused on the terms of those particular grant agreements and the individual termination decisions. *See, e.g.*, Complaint ¶¶ 165-66, 180-84, *California v. Dep't of Educ.*, 25-cv-10548 (D. Mass), ECF No. 1 (alleging, among other things, that the terminations were not made pursuant to the terms and conditions of the grant agreements). Here, by contrast, Congress passed laws directing USAGM to provide grants to specific grantees and appropriating funds for those grantees specifically, *see, e.g.*, 22 U.S.C. §§ 6204(a)(5), (6), 6207(f), 6208; Pub. L. No. 119-4, div. A, § 1101 (2025)—and Plaintiffs' claims accordingly turn on those statutes and on the Constitution, not on anything in any grantee's agreement with the agency. In fact, the Court here need not even refer to any individual grant terms—which are not even part of the record in this case—to resolve Plaintiffs' claims. Nothing in *California* overrules the longstanding precedent that those sorts of claims belong in district court, not the Court of Federal Claims. *See, e.g.*, *Crowley*, 38 F.4th at 1106; *Transohio*, 967 F.2d at 610.

Defendants also suggest in passing that the Tucker Act leaves this Court without jurisdiction to bar Defendants from "terminating any USAGM Personal Services Contractors (PSCs)." Dkt. 73 at 5. That is also mistaken. This case is not about any breach of any PSC's contract; it is about Defendants' unlawful decision to shut down USAGM in violation of the Constitution and multiple statutory provisions. Whether or not terminating the PSCs' contracts

violated the contracts is not at issue here. (Indeed, in the related *Abramowitz* case, Defendants acknowledge that the PSCs "do not argue" that Defendants "violated the notice provisions to which they are entitled under their contracts." *Abramowitz v. Lake*, 1:25-cv-887-RCL, Dkt. 13, at 27. The PSC Plaintiffs here do not argue that either, because this case is not about anyone's contractual rights.) USAGM admits that it "terminated the contracts with *all* [598] personal services contractors" at the Agency. Decl. of Crystal Thomas, Dkt. 43 ¶¶ 3, 6. Plaintiffs—all of them, and not just the two Plaintiffs who are themselves PSCs—challenge that mass termination as part of Defendants' unconstitutional and otherwise unlawful dismantling of USAGM. This is decidedly not a "dispute . . . entirely contained within the terms of the contract." *Nat'l Star Route Mail Contractors Ass'n, Inc. v. United States Postal Serv.*, 223 F. Supp. 3d 14, 33 (D.D.C. 2016); *cf. Navab-Safavi v. Broadcasting Bd. of Governors*, 650 F. Supp. 2d 40, 68 (D.D.C. 2009) (holding that PSC's First Amendment claim against USAGM predecessor was not "at its essence a contract action" where "there is no question of whether the contract forbids termination," but rather "only a question of whether the Constitution forbids it").

### B.    Federal Labor Statutes Do Not Deprive this Court of Jurisdiction

Defendants also invoke the *California* stay to argue that this Court has no jurisdiction over Plaintiffs' claims because one component of Plaintiffs' efforts to stave off the dissolution of USAGM is to prevent the agency from dispensing with its staff *en masse*. Without citing it, Defendants appear to raise an administrative channeling argument under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). The *Thunder Basin* channeling analysis asks first whether there is "fairly discernible" Congressional intent within a statute's "language, structure, and purpose" to assign exclusive review to an administrative body. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). It then asks whether the claim at issue is "of the type Congress

intended to be reviewed within th[e] statutory structure." *Id*. at 212. Defendants are wrong that Plaintiff's claims are channeled to administrative agencies for several reasons.

First, Defendants' reliance on *California* as a basis to raise a jurisdictional argument they failed entirely to address at the TRO stage is confusing and wrong. Defendants apparently cite *California* merely for the proposition that the APA's waiver of immunity does not apply where another statute "expressly or impliedly forbids the relief which is sought," *see Mem.* at 7 (citing *California*, 2025 WL 1008354, at *1)—but that proposition is uncontroversial, albeit irrelevant. On the relevant question—whether the Civil Service Reform Act of 1978 ("CSRA") and Foreign Service Act of 1980 ("FSA") "impliedly forbid[]" Plaintiffs from pursuing their claims in district court—*California* did not even address the CSRA, FSA, claims touching upon federal employment, or the wholesale dismantling of an agency. It therefore has nothing to say.

Second, Defendants fail to account for the fact that multiple Plaintiffs in this case are not channeled because they have no connection to the CSRA or the FSA: the RSF Plaintiffs, which are nongovernmental organizations of independent journalists; TNG-CWA, a labor organization of private sector employees who work for a USAGM grantee; and John Doe 3 and 4, who are individual independent contractors of USAGM and therefore not "employees" within the definition of either statute. It is thus perhaps unsurprising that, before Judge Oetken, Defendants did not even argue—in their briefs or at oral argument—that this case is channeled. *See* Dkt. 41.

As the District Court for the Northern District of California recently held, in a case brought in part by non-profit organizations challenging the Office of Personnel Management's mass firing of federal probationary employees, the mere fact that a federal personnel action is "embedded within [a] dispute" between the government and private third parties does not divest the court of subject matter jurisdiction. *See Am. Fed'n of Gov't Emps., AFL-CIO v. United States*

8

*Off. of Pers. Mgmt.*, No. C 25-01780 WHA, 2025 WL 660053, at *7 (N.D. Cal. Feb. 28, 2025) (*OPM*). The Ninth Circuit, in denying the government's stay application, affirmed that view. *See Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, No. 25-1677, 2025 WL 914823, at *1 (9th Cir. Mar. 26, 2025).[3]

The presence of non-federal-employee Plaintiffs in this case reinforces this Court's jurisdiction and serves to distinguish this case from the two recent decisions within this district that Defendants cite. *See* Dkt. 73 at 7-8 (citing *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-CV-352 (CJN), 2025 WL 573762 (D.D.C. Feb. 21, 2025) (*AFSA*); and *Nat'l Treasury Emps. Union v. Trump*, No. 25-CV-420 (CRC), 2025 WL 561080 (D.D.C. Feb. 20, 2025) (*NTEU*)).[4] The decisions in *AFSA* and *NTEU* both dealt exclusively with claims brought by labor unions on behalf of their federal-employee members. *AFSA*, 2025 WL 573762, at *4 n.1 (noting claims of third-party plaintiff were "not before the Court on the present motion"); *NTEU*, 2025 WL 561080, at *1. Not so here. RSF and TNG-CWA each allege harm flowing from the Defendants' decision to gut USAGM and discontinue its statutorily mandated functions in violation of the APA and the Constitution—and neither RSF nor TNG-CWA include among its members any federal employees. Theirs are thus claims that have nothing to do with employment, cannot go before any administrative agency, and are therefore not channeled. Because this Court need only assure itself of one Plaintiff with standing to exercise jurisdiction, the fact that this case includes multiple Plaintiffs with no tie to federal employment is, standing alone, a sufficient basis to

---

[3] The Supreme Court recently stayed the order in *OPM*, but acted only based on its view that the non-profit organizations lacked standing. It did not address the union plaintiffs' standing, which was not at issue in that appeal, and it did not address channeling. *See OPM v. AFGE*, No. 24A904, 2025 WL 1035208 (U.S. Apr. 8, 2025).

[4] *AFSA* and *NTEU* were also both preliminary decisions that do not control this Court's analysis.

proceed to the merits. *See UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 362 (D.C. Cir. 2003).

Third, none of the Plaintiffs are channeled in this case because the claims at issue do not fall within the federal employment statutes; *Thunder Basin* is inapplicable. This is an action to protect the existence of an entire *sui generis* governmental agency, not a case challenging a specific employment action.

In determining whether claims fall within a comprehensive administrative scheme, the court must assess, claim by claim, whether each is "of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (cleaned up); *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 534 (D.C. Cir. 2015) ("Civil servants as job applicants can still seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights.") (quoting *Spagnola v. Mathis*, 859 F.2d 223, 230 (D.C. Cir. 1988 (per curiam)). The CSRA provides an administrative process for a covered federal employee to seek review of specified adverse personnel actions taken against that employee. *United States v. Fausto*, 484 U.S.439, 445-47 (1988). The FSA establishes a similar system for certain foreign service employees. *See U.S. Info. Agency v. KRC*, 989 F.2d 1211, 1217 (D.C. Cir. 1993). Neither involves a challenge to the dismantling of the entire federal agency itself.

This is not a case about personnel actions covered by the CSRA or FSA. What Plaintiffs allege is that the gutting of USAGM violates the separation of powers, the First Amendment, and the APA. Neither the CSRA nor the FSA "implicitly" route such "fundamental, even existential" questions about the structure of our constitutional system to agencies that handle employment and labor disputes. *Axon Enter. v. Fed. Trade Comm'n,* 598 U.S. 178, 180, 185 (2023). This case

is therefore not like *Elgin* or *Fausto*, which were filed by employees or their representatives and either invoked the jurisdiction-stripping statutory schemes directly or exclusively challenged adverse employment actions within those statutes' heartland. *See Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1, 6–8 (2012) (employees challenged their removal from federal agencies for failure to register for Selective Service); *Fausto*, 484 U.S. at 441–42 (employee challenged his suspension for unauthorized use of government vehicle). Nor is this case like *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019), in which unions representing their federal-employee members sued the executive branch over an executive order that explicitly governed union collective-bargaining rights. *See id*. at 753. In that case, it was plausible that the FLRA might resolve the Plaintiffs' claims on a statutory basis, obviating the need for any federal court involvement. *Id*. at 761. Not so here, where a federal government administrative agency adjudicating labor or employment disputes is in no position to enjoin the decimation of its sister agency.

    With the important distinction that only in the instant case are there third-party organizational and non-employee Plaintiffs, this case more closely resembles the First Amendment claim that a VOA employee brought against USAGM in *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333 (D.D.C. 2020). In *Turner*, employees of USAGM challenged significant changes that the agency made to the editorial independence of its journalists. *Id*. at 348-53. The court held that some of the plaintiffs' claims were channeled, including complaints regarding "the daily supervisor-employee relationship," but the complaint's First Amendment claim was not channeled. *Id*. at 368. In the court's view, although the First Amendment claim resisted circumstances arising within federal employment, it did not "relate to 'working conditions'" such that they were channeled to the MSPB. *Id*. at 367. Instead, the complaint

alleged "major shifts to the background assumptions behind doing journalism at VOA and the networks." *Id.*

*Turner* builds on *Weaver v. U.S. Information Agency*, 87 F.3d 1429 (D.C. Cir. 1996), a case again regarding the First Amendment rights of a VOA employee. In that case, the court held it lacked jurisdiction over challenges to an oral admonishment that USIA (the agency that broadcast VOA at the time) gave to Weaver. But it exercised jurisdiction over Weaver's First Amendment challenge to the Agency's pre-publication review procedure whose violation led directly to that admonishment. *Id.* at 1434. The court saw no barrier to entertaining Weaver's ripe constitutional challenge to the employment policy "merely because she has also experienced a personnel action related to that claim." *Id.*

This case thus falls squarely within the Circuit's precedent entertaining challenges by USAGM employees to the agency's unlawful actions that dramatically undermine "the mission and policies behind U.S.-funded international broadcasting." *Turner*, 502 F. Supp. 3d at 367-68. And like in *Weaver*, the challenge here is not about USAGM's decision to terminate any or all of its employees. "Instead," this case "is about a prior controlling event": Did USAGM act contrary to constitutional and statutory law when it moved to dismantle itself? *See Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, No. C 25-01780 WHA, 2025 WL 900057, at *3 (N.D. Cal. Mar. 24, 2025) (*OPM*) (finding likelihood of subject matter jurisdiction over union plaintiffs' challenge to mass firings of probationary employees).

Fourth, even if *Thunder Basin* were applicable, the claims at issue are not "of the type Congress intended to be reviewed within th[e] statutory structure." 510 U.S. at 212. Three guideposts inform the *Thunder Basin* jurisdictional assessment: (a) whether denying district court jurisdiction could "foreclose all meaningful judicial review" of the claim; (b) whether the

claim is "entirely collateral" to the statute's review provisions; and (c) whether the claim is "outside the agency's expertise." 510 U.S. at 212-13 (cleaned up). The guideposts are not a checklist of conjunctive requirements. *Axon*, 598 U.S. at 186. Even so, all three guideposts reinforce this Court's jurisdiction and its concomitant duty to resolve the case. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").

a.  This is a case about reviving and sustaining a Congressionally mandated independent agency's entire existence. Judicial review under the CSRA or FSA would come only after multiple layers of agency review, a process that could take years. *See* 5 U.S.C. § 7703 (judicial review provision in CSRA); 22 U.S.C. § 4140 (judicial review provision in FSA); *cf. Axon*, 598 U.S. at 213-16 (Gorsuch, J., concurring) (describing multi-year history of cases subject to statutory administrative review schemes). By that time, USAGM itself would be dead and buried, its audience lost, and its staff scattered, rendering judicial review of Plaintiffs' core claims completely meaningless.

b. The issues in this case are collateral to CSRA and FSA review provisions. As noted, this case does not challenge employment actions directed at specific employees, but rather challenges the prior controlling decision to dismantle an executive agency in defiance of explicit Congressional will and the First Amendment. *OPM*, 2025 WL 900057, at *3. Moreover, Plaintiffs could not get the relief they seek—an order that USAGM, among other things, resume broadcasting VOA—through administrative channels. *Cf. AFGE*, 929 F.3d at 760.

c. This case involves fundamental constitutional questions about the structure of our government, decidedly not the type of questions the relevant administrative bodies "customarily handle[]," placing it outside the agency's expertise. *Axon*, 598 U.S. at 186. There are no

13

threshold employment questions that would benefit from agency expertise, nor could an administrative agency obviate the need for federal court review. *See AFGE*, 929 F.3d at 761; *OPM*, 2025 WL 900057, at \*2; *Axon,* 598 U.S. at 195 ("[U]nlike in *Elgin,* ruling for [Plaintiffs] on expertise-laden grounds would not 'obviate the need' to address their constitutional claims— which, again, allege injury not from this or that ruling but from subjection to all agency authority."). All *Thunder Basin* factors say this is a federal court controversy.

Fifth, even assuming *arguendo* that Congress did intend for the CSRA/FSA to channel Plaintiffs' claims to administrative bodies, the current Administration's actions to decimate those channels in violation of the relevant laws defeat any *Thunder Basin* inference. *Thunder Basin* channeling is an implied doctrine based on the existence of—and Congressional intent discernible from—a comprehensive statutory structure. 510 U.S. at 207. Part of the structure of the CSRA (and the FSLMRS housed therein) is the promise of for-cause removal protections for each of the administrative bodies created thereunder, including the Merit System Protection Board (MSPB) and the Office of Special Counsel (OSC), which handles whistleblower complaints. *See* 5 U.S.C. §§ 1202(d), 1211(b). But President Trump has fired *without cause* members of each of those bodies: MSPB Chair Cathy Harris and Special Counsel Hampton Dellinger. The government has admitted as much, arguing that the CSRA's removal protections are unconstitutional. *See Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at \*2 (D.C. Cir. Apr. 7, 2025), *administratively stayed by Trump v. Wilcox*, No. 24A966, 2025 WL 1063917 (U.S. Apr. 9, 2025) (staying reinstatement of MSPB Chair); *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at \*3 (D.C. Cir. Feb. 15, 2025) (staying reinstatement of OSC Special Counsel).

Regardless of whether removal protections are constitutional, they are part of the CSRA's comprehensive scheme from which every decision cited by Defendants inferred Congressional intent to limit judicial review. The President's violation of that component of the statutory scheme—lawful or not—defeats any channeling inference that may have attached had those bodies remained constituted according to the statute, or simply been without a quorum because of the expiration of a statutory term, because the President's actions have effectively erased a statutory provision that Congress enacted and thus intended be honored. To Plaintiffs' knowledge, no case has yet addressed this unprecedented circumstance. *See OPM*, 2025 WL 900057, at *6 n.2 (declining to address argument because case did not meet *Thunder Basin* factors). In order "to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim," this Court should exercise review. *Webster v. Doe*, 486 U.S. 592, 603 (1988).

Finally, even if this Court rejects the five bases for exercising jurisdiction above, it should nonetheless exercise jurisdiction pursuant to *Leedom v. Kyne*, 358 U.S. 184 (1958). The doctrine is often referred to as a "Hail Mary" jurisdictional "pass," *Mapes v. Reed*, 487 F. Supp. 3d 20, 26 (D.D.C. 2020), but in fact was tailor-made for the circumstances of this case. *Leedom*, which was cited favorably in *Thunder Basin*, 510 U.S. at 213, provides an exception to statutory preclusion when three circumstances are met: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency has plainly acted in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Mapes*, 487 F. Supp. 3d at 26 (cleaned up).

Here, *Thunder Basin* channeling is an implied doctrine; nowhere does the CSRA explicitly preclude judicial review of actions brought by federal employees against the agency that employs them. *See Axon*, 598 U.S. at 207 (Gorsuch, J., concurring) (describing *Thunder Basin* as "jurisdiction-stripping-by-implication"). Plaintiffs have brought claims alleging that USAGM is in clear violation of several unequivocal statutory mandates that govern the Agency's behavior. *See* Dkt. 17 at 19-21. In their March 27 opposition to Plaintiffs' combined motion for a temporary restraining order and preliminary injunction, the Government disputed the mandatory nature of only two of the many statutory mandates that Plaintiffs cite: provisions regarding broadcast to North Korea and Iran, 22 U.S.C. §§ 7813, 8754. Dkt. 41 at 19-20. Those arguments are wrong and will be addressed in Plaintiffs' reply in support of the preliminary injunction. But for purposes of *Leedom*, the government does not deny that it is required to broadcast Voice of America programming, and, as a matter of fact, it has not done so for nearly a month. The agency has thus "disregarded a specific and unambiguous statutory directive." *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988). And there is no way for Plaintiffs to enforce these broadcast mandates through any procedure other than federal court review. The government does not contend that the MSPB could order USAGM to fulfill VOA's charter or live up to USAGM's broadcasting standards and principles. *See* 22 U.S.C. § 6202. Defendants' unequivocal violation of these mandates and the mandates regarding USAGM's existence, its grant disbursements, and Congress's mandatory appropriations all merit *Leedom* review in the absence of another basis for jurisdiction.

To summarize: This Court has jurisdiction *at least* because multiple Plaintiffs have no connection to federal employment. But in fact, each Plaintiff in this case appropriately invokes this Court's jurisdiction to stop the unlawful and unconstitutional shuttering of a statutorily

16

mandated agency because: this case simply does not implicate federal employment statutes; even if it did, the claims at issue are not of a type that Congress intended to be channeled to agency adjudication; even if Congress intended that these claims be channeled to the CSRA or OSC, its intent has been defeated by the decimation of those bodies, contrary to the statutory scheme; and exercising jurisdiction here is necessary to rein in USAGM's violation of multiple unambiguous statutory directives.

## II. THE BALANCE OF HARMS SUPPORTS MAINTAINING THE TRO AND ENTERING A PRELIMINARY INJUNCTION

Defendants renew their argument that the public interest will be irreparably harmed by the disbursement of funds that Congress expressly directed USAGM to spend on the very activities Plaintiffs seek to compel through this lawsuit. *See* Dkt. 73 at 8-9 (arguing irreparable harm from disbursing statutorily mandated and Congressionally appropriated funds); Dkt. 28 at 2 (Defendants requesting bond of $1.1 million per day representing "payroll costs and related expenditures that USAGM estimates it would not otherwise incur absent the requested immediate relief"). That argument is a non-starter. As Judge Oetken said in entering the TRO, the government is not harmed by an order requiring "what is already statutorily mandated both by congressional appropriations for this fiscal year and by the statutes already governing USAGM." Order Granting TRO, Dkt. 54 at 20. And it remains unchanged that "the expenditure of which Defendants complain is merely disbursing the line-item appropriations Congress has already granted USAGM for this fiscal year." *Id*. at 21.

Moreover, Defendants do not contest that Plaintiffs have made a strong showing on the merits of their claims that Defendants are violating the Constitution and otherwise acting unlawfully. "There is generally no public interest in the perpetuation of unlawful agency action," and a "substantial public interest in having governmental agencies abide by the federal laws that

govern their existence and operations." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotes omitted); *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, No. 25-CV-511, 2025 WL 752367, at *16 (D.D.C. Mar. 10, 2025) ("[A]n agency's compliance with a mandatory statutory regime is presumably always in the public interest."). Moreover, as this Court has said, "[i]t is in the interest of the United States to support broadcasting to other nations." *RFE/RL v. Lake*, No. 1:25-cv-799-RCL, Dkt. 14 at 8 (quoting 22 U.S.C. § 6201(3)). The balance of harms offers no basis to dissolve the TRO.

Defendants suggest Plaintiffs should "promise" to return any withdrawn funds or payroll expenses that Defendants might expend to comply with the TRO. Dkt. 73 at 8-9. The assertion is indistinguishable from the government's earlier request for a bond of $1 million per day and would similarly "ensure that very few individuals could afford to sue the federal government." Order Granting TRO at 21. "In a case where the government is alleged to have unlawfully withheld [millions] of dollars of previously committed funds to countless recipients, it would defy logic. . . to hold Plaintiffs hostage for the resulting harm." *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025).

Finally, Defendants' argument that the temporary restraining order is overbroad betrays a failure to grasp the nature of the parties to this case and their claims and harms. Defendants argue that "Plaintiffs fail to specifically trace any grant termination to their alleged harm." Dkt. 73 at 9. Not so. As discussed above, and as was discussed extensively at the hearing on the motion for a temporary restraining order, the TNG-CWA and RSF Plaintiffs suffer immediate and irreparable harm from the cancellation of the RFA and RFE/RL grants. *See* Dkt. 16-16 (Schleuss Decl.) ¶¶ 3-6, 9-10, 20 and Ex. 1 at 14-15, 21-22; Dkt. 16-15 ¶¶ 11, 26 (Bruttin Decl.) Dkt. 17 at 27-29; Ex. A (Transcript of Oral Arg.) at 11-14; *see also* Order Granting TRO at 17-18 (finding

18

irreparable harm to RSF from "shuttering of VOA *and other USAGM-funded networks*"). Loss of RFA grant money directly harms TNG-CWA members as employees of the private entity and other members as listeners, and loss of RFE/RL grant money directly harms RSF members as listeners. The temporary restraining order therefore properly enjoins the termination of at least those networks' grants.

Defendants' complaints that they will have to "confer twice with two sets of counsel" regarding the status of the grants is not well-taken. Defendants have relied on the TRO entered in this case to negotiate a delay in the case filed by Radio Free Asia. *See* Dkt. 14 at 2, 1:25-cv-907-RCL (Apr. 9, 2025). They cannot now seek to dissolve this TRO based on a pending request for relief in the RFA case.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dissolve the temporary restraining order should be denied.

Dated:          April 14, 2025
                New York, New York                    Respectfully Submitted,

GOVERNMENT ACCOUNTABILITY
PROJECT                                               EMERY CELLI BRINCKERHOFF
                                                      ABADY WARD & MAAZEL LLP

_____/s/_____
David Z. Seide (D.C. Bar # 421899)                    _____/s/_____
1612 K Street, NW                                     Andrew G. Celli, Jr.**
Washington, DC 20006                                  Debra L. Greenberger**
(202) 457-0034                                        Daniel M. Eisenberg (D.C. Bar # 90017823)
davids@whistleblower.org                              Nick Bourland**
                                                      One Rockefeller Plaza, 8th Floor
*Counsel for Plaintiffs Patsy Widakuswara,*           New York, New York 10020
*Jessica Jerreat, Kathryn Neeper, John Doe*           (212) 763-5000
*1, John Doe 2, John Doe 3, and John Doe 4*           acelli@ecbawm.com
                                                      dgreenberger@ecbawm.com
AMERICAN FEDERATION OF STATE,                         deisenberg@ecbawm.com
COUNTY, AND MUNICIPAL                                 nbourland@ecbawm.com
EMPLOYEES, AFL-CIO (AFSCME)

                                                      *Counsel for Plaintiffs Patsy Widakuswara,*
_____/s/_____                    *Jessica Jerreat, Kathryn Neeper, John Doe*
Teague Paterson (D.C. Bar # 144528)                   *1, John Doe 2, John Doe 3, John Doe 4,*
Matthew Blumin (D.C. Bar # 1007008)                   *American Federation of State, County and*
Georgina Yeomans (D.C. Bar # 1510777)                 *Municipal Employees (AFSCME); American*
1625 L Street, N.W.                                   *Federation of Government Employees*
Washington, D.C. 20036                                *(AFGE); American Foreign Service*
(202) 775-5900                                        *Association (AFSA); and the NewsGuild-*
TPaterson@afscme.org                                  *CWA*
MBlumin@afscme.org
GYeomans@afscme.org
                                                      AMERICAN FOREIGN SERVICE
*Counsel for Plaintiff American Federation*           ASSOCIATION
*of State, County, and Municipal Employees,*
*AFL-CIO (AFSCME)*
                                                      _____/s/_____
                                                      Sharon Papp (D.C. Bar # 107992)
                                                      Raeka Safai (D.C. Bar # 977301)
                                                      2101 E Street, N.W.
                                                      Washington, D.C. 20037
                                                      (202) 338-4045
                                                      papp@afsa.org
                                                      safai@afsa.org

                                                      *Counsel for Plaintiff American Foreign*
                                                      *Service Association (AFSA)*

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO

_____/s/_____
Rushab Sanghvi (DC Bar # 1012814)
80 F. Street, NW
Washington, DC 20001
(202) 639-6424
SanghR@afge.org

*Counsel for American Federation of*
*Government Employees, AFL-CIO (AFGE).*


DEMOCRACY FORWARD
FOUNDATION

_____/s/_____
Kristin Bateman (admitted only in
California; practice supervised by members
of the D.C. bar)**
Robin F. Thurston (D.C. Bar # 1531399)
Skye L. Perryman (D.C. Bar # 984573)
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs American Federation*
*of State, County and Municipal Employees*
*(AFSCME); American Federation of*
*Government Employees (AFGE); American*
*Foreign Service Association (AFSA); and*
*the NewsGuild-CWA*

STATE DEMOCRACY DEFENDERS
FUND

_____/s/_____
Norman L. Eisen (D.C. Bar # 435051)
Joshua Kolb*
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Norman@statedemocracydefenders.org
Joshua@statedemocracydefenders.org

*Counsel for Reporters Sans Frontières,*
*Reporters Without Borders, Inc., American*
*Federation of State, County and Municipal*
*Employees (AFSCME); and American*
*Federation of Government Employees*
*(AFGE)*


MEDIA FREEDOM & INFORMATION
ACCESS CLINIC - YALE LAW SCHOOL[1]

_____/s/_____
David A. Schulz (D.C. Bar # 459197)
127 Wall Street
New Haven, CT 06520
(212) 663-6162
David.schulz@YLSClinics.org

*Counsel for Plaintiffs Patsy Widakuswara,*
*Jessica Jerreat, Kathryn Neeper, and John*
*Does 1-4*


* *Pro hac vice* application forthcoming

** *Pro hac vice* application pending

---

[1] The views expressed herein do not purport to represent the institutional views of Yale Law School, if any.