UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATSY WIDAKUSWARA**, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>**KARI LAKE**, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media, *et al.*,<br><br>    *Defendants*.<br><br>**MICHAEL ABRAMOWITZ**, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>**KARI LAKE**, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media, *et al.*,<br><br>    *Defendants*. | **Case No. 1:25-cv-1015-RCL**<br>**Case No. 1:25-cv-0887-RCL** |

## ORDER

On April 22, 2025, this Court entered a preliminary injunction (PI) after concluding that the defendants' actions pursuant to Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy," violated numerous provisions of the Administrative Procedure Act (APA). *See* Order, No. 25-cv-1015 (RCL) ("*Widakuswara* Docket"), ECF No. 99; Order, No. 25-cv-887 (RCL) ("*Abramowitz* Docket"), ECF No. 29. The Court enjoined the defendants as follows:

> 1) take all necessary steps to return USAGM employees and contractors to their status prior to the March 14, 2025 Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy," including by restoring all USAGM

1

employees and personal service contractors, who were placed on leave or terminated, to their status prior to March 14, 2025, 2) restore the FY 2025 grants with USAGM Networks Radio Free Asia and Middle East Broadcasting Networks such that international USAGM outlets can "provide news which is consistently reliable and authoritative, accurate, objective, and comprehensive," 22 U.S.C. § 6202(a), (b), and to that end, provide monthly status reports on the first day of each month apprising the Court of the status of the defendants' compliance with this Order, including documentation sufficient to show the disbursement to RFA and MBN of the funds Congress appropriated, and 3) restore VOA [Voice of America] programming such that USAGM fulfills its statutory mandate that VOA "serve as a consistently reliable and authoritative source of news," 22 U.S.C. § 6202(c).

Order, *Widakuswara* Docket, ECF No. 99. The Court entered a corresponding PI in *Abramowitz* specifically tailored to the defendants' actions regarding VOA. Order, Abramowitz Docket, ECF No. 29. The defendants have filed a "Motion for a Partial Stay Pending Appeal" in both cases [ECF No. 102, *Widakuswara* Docket] [ECF No. 32, *Abramowitz* Docket]. For the reasons contained herein, the defendants' Motion is **DENIED**.

Of note, the defendants characterize this Motion as a "partial stay" because they claim that they are not seeking a stay of the third portion of the Court's PI: to "restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)." Mot. at 10 (citing this Court's PI Order). Notwithstanding the defendants' characterization, the effect of the order they request would be to stay the third portion of the PI Order: a stay of the first portion of the PI would stay the implementation of the third, because VOA cannot resume programming if all staff remains on leave indefinitely. And in their Motion and accompanying declarations, defendants do not indicate any plans to resume VOA broadcasting, as is required by the third portion of the PI order. The Court therefore analyzes this Motion as one for a full stay of this Court's PI order.

"[T]he factors regulating the issuance of a stay" include "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

2

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  The Court addresses each in turn.

As the Court discussed in its Memorandum Opinion accompanying the PI Order, the defendants are not likely to succeed on the merits, and indeed, have opted not to argue the merits of the plaintiffs' arbitrary and capricious challenge at all, which formed the bedrock of this Court's holding.  *See Widakuswara v. Lake*, No. 1:25-cv-1015-RCL, 2025 WL 1166400, at *13 (D.D.C. Apr. 22, 2025).

The defendants also do not establish that irreparable harm to the government would occur absent a stay.  Regarding the Court's injunction mandating compliance with congressional appropriations statutes, defendants argue that this obligation will cause irreparable harm to the government because the government is "unlikely to recover" the funds in the event that the D.C. Circuit finds that the defendants have been wrongfully enjoined.  Mot. at 10.  But this is not an accurate characterization of the defendants' harm: financial harm is typically not irreparable unless "the loss threatens the very existence of the movant's business." *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698 (TSC), 2025 WL 842360, at *10 (D.D.C. Mar. 18, 2025) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  Though USAGM must continue to dispense congressional appropriations to RFA and MBN under this Court's injunction, if the D.C. Circuit later holds for the defendants, the money that was disbursed will not "threaten the very existence" of USAGM, and the defendants could seek to recover the funds via other litigation avenues in the future.  In short, ordering the payment of congressionally appropriated money to the intended recipient, and for its intended use, does not amount to irreparable harm to the federal government.  The indefinite withholding of appropriations from international broadcasting outlets,

however, does cause irreparable harm. *See Widakuswara*, 2025 WL 1166400, *16 (detailing irreparable harm to the network grantees, including the shuttering of their businesses entirely).

The defendants devote more discussion to the purported irreparable harm to the defendants regarding the impact on their personnel actions. Defendants represent their understanding of the preliminary injunction as follows: "Rather than narrowing [the injunction] to those employees or contractors who may have been removed or terminated as a result of Executive Order 14238, the Court includes every single 'employee and contractor, who were placed on leave or terminated,' which includes those who may have been placed on administrative leave or terminated for other causes, including, but not limited to, misconduct, performance issues, or security violations." Mot. at 6. Notably, this is the first time in this litigation that the defendants have argued that any of the personnel actions taken since March 14, 2025 were taken for any reason *other than* in response to the Executive Order. And the record belies this belated characterization—indeed, in the March 15 email placing 1,300 VOA employees on administrative leave, the USAGM Director of HR states that the placement was "not for any 'disciplinary purpose.'" Compl. ¶ 74, *Widakuswara* Docket, ECF No. 1. If anything, the defendants have consistently represented that every action at issue in this litigation taken since March 14, 2025, has been in direct response to the Executive Order. *See* Defs.' Opp'n to Mot. for Preliminary Injunction, ECF No. 88, at 3 (listing the actions taken by USAGM since March 14, 2025 and characterizing them as "[i]n furtherance of the OPM Memorandum and the Executive Order."). The PI therefore orders the defendants to return all those employees and contractors affected by the defendants' actions to their status pre-March 14, 2025, the day the Executive Order issued. Such relief is properly tailored to undo the defendants' actions here.

Furthermore, the defendants interpret the injunction as "prevent[ing] [USAGM] from executing any employment action, including placing any employee on administrative leave for any reason whatsoever." Mot. at 10. They argue that this "creates irreparable harm by hamstringing the agency's personnel operations," Mot. at 4, and also believe that "the Court has prohibited the Agency from making use of any reductions in force regardless of reason," Mot. at 7. But the Court's preliminary injunction does not reach so far. The injunction is tailored to undoing the agency's unlawful actions in furtherance of the Executive Order and returning to the pre-March 14 status quo. When USAGM returns to pre-March 14 functioning, as is required by the PI, the injunction does not prevent USAGM from executing personnel decisions for reasons unrelated to the Executive Order, such as "misconduct, performance issues, or security violations" to which they allude—such execution of normal operations would, to the contrary, be in accordance with the status quo pre-March 14.[1]

This is not, as the defendants believe, a determination by the Court that USAGM's status pre-March 14, 2025 is the "benchmark for minimum statutory compliance." Mot. at 2. This Court's relief is based on a finding that defendants' actions since March 14, 2025, in their purported attempt to comply with the Executive Order, have likely contravened the APA. Because a PI "is a stopgap measure . . . intended to maintain a status quo,'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012), it is appropriately tailored relief to order the defendants to reverse their illegal actions and return to the status quo before the illegal actions took place.

---

[1] The defendants also argue that "[t]he injunction prohibits [USAGM] from engaging in contract negotiations, oversteps [USAGM's] broad discretion in setting terms of the grant agreements, and prevents [USAGM] from finalizing any subsequent contract termination even if [USAGM] determines that the contracts are unnecessary for the agency to fulfill its statutory functions." Mot. at 7. But the PI does not bar any of these activities. USAGM can still, with this PI in place, take actions pursuant to its statutory mandate and in compliance with the APA. The actions that the plaintiffs challenge in this lawsuit likely contravene the APA, as the Court has found. *See generally Widakuswara*, 2025 WL 1166400.

As for the final two *Hilton* considerations, the issuance of the stay will "substantially injure the other parties interested in the proceeding." *Hilton*, 481 U.S. at 776. Immediate compliance with the PI is necessary to avert the irreparable harm that is soon to befall the plaintiffs. *See Widakuswara*, 2025 WL 1166400, at *16–17 (detailing the irreparable harm to the plaintiffs absent injunctive relief). And staying the Court's PI is not in the public interest, particularly given that absent the PI, the defendants will continue their actions in contravention of numerous federal laws, including the International Broadcasting Act, relevant congressional appropriations acts, and the APA.

For the foregoing reasons, it is hereby **ORDERED** that the defendants' Motion for Partial Stay Pending Appeal is **DENIED**.

The defendants also request that "even if the Court is not prepared to issue a stay that lasts throughout appellate proceedings," that "the Court issue a temporary stay of these aspects of the injunction until the D.C. Circuit resolves a motion for a partial stay that Defendants intend to file" later today. Mot. at 4. For the same reasons explained *supra*, this request is **DENIED**.

**IT IS SO ORDERED.**

Date: April 25, 2025
3:45 P.M.

Royce C. Lamberth
United States District Judge