UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA, JESSICA JERREAT, KATHRYN NEEPER, JOHN DOES 1-4, REPORTERS SANS FRONTIÈRES, REPORTERS WITHOUT BORDERS, INC., AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES (AFGE), AMERICAN FOREIGN SERVICE ASSOCIATION (AFSA), and THE NEWSGUILD-CWA,<br><br>　　　　　　Plaintiffs,<br><br>　-against-<br><br>KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media; VICTOR MORALES, in his official capacity as Acting CEO of the U.S. Agency for Global Media; and U.S. AGENCY FOR GLOBAL MEDIA,<br><br>　　　　　　Defendants. | Case No. 1:25-cv-01015-RCL |

**PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP

Government Accountability Project

American Federation of Government Employees, AFL-CIO

American Foreign Service Association

American Federation of State, County and Municipal Employees, AFL-CIO

Democracy Forward Foundation

State Democracy Defenders Fund

Media Freedom and Information Access Clinic at Yale Law School

## INTRODUCTION

On April 22, this Court ordered Defendants to "restore [Voice of America ("VOA")] programming such that [Defendant the U.S. Agency for Global Media ("USAGM")] fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)." Dkt. 99 at 1-2. Nonetheless, VOA sat silent for over a month until May 27, when VOA broadcast a mere five minutes of content to only three provinces in Afghanistan. *See* No. 1:25-cv-887-RCL Dkt. 38 ¶ 8. That blip of activity is not enough to fulfill VOA's statutory mandate, and it does not mitigate Defendants' thus far inexorable march to shut down VOA. Plaintiffs therefore respectfully request that this Court issue an order to show cause why Defendants have not violated part (3) of its preliminary injunction and schedule a hearing as soon as possible.

## BACKGROUND

### I. Procedural Updates Following this Court's Preliminary Injunction Order

This Court's April 22 preliminary injunction required three things of Defendants:

1) take all necessary steps to return USAGM employees and contractors to their status prior to the March 14, 2025 Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy," including by restoring all USAGM employees and personal service contractors, who were placed on leave or terminated, to their status prior to March 14, 2025;

2) restore the FY 2025 grants with USAGM Networks Radio Free Asia and Middle East Broadcasting Networks such that international USAGM outlets can 'provide news which is consistently reliable and authoritative, accurate, objective, and comprehensive,' 22 U.S.C. § 6202(a), (b), and , to that end, provide monthly status reports on the first day of each month apprising the Court of the status of the defendants' compliance with this Order, including documentation sufficient to show the disbursement to RFA and MBN of the funds Congress appropriated; and

3) restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c).

Dkt. 99 at 1-2.

On April 25, Defendants appealed this Court's preliminary injunction order and moved to stay parts (1) and (2). A divided panel of the D.C. Circuit stayed those parts on the view that "[t]he district court likely lacked subject-matter jurisdiction to enjoin USAGM's personnel actions and to compel the agency to restore RFA's and MBN's FY 2025 grants." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025).

Plaintiffs petitioned for rehearing en banc, which the D.C. Circuit denied. In doing so, however, seven of the eleven active judges of the D.C. Circuit repudiated the panel's reasoning for staying part (1) of the injunction. In denying en banc review, the court pointed to Defendants' concession that they are required under part (3) of the preliminary injunction to "restore [VOA] programming so as to fulfill VOA's statutory mandate." No. 25-5144, Doc.2117869 at 3. It then disavowed any reliance on or agreement with the contention that "the district court lacks any authority under [part (3)] 'to order personnel actions beyond those that [the government] determines are necessary or appropriate to carry out its statutory mandate.'" *Id.* (quoting Gov't En Banc Resp. at 7). It left that issue to the district court to consider "in the first instance." *Id*.

Judge Pillard, who had dissented from the original panel stay, wrote a separate statement (in addition to joining the seven-judge statement) concurring in the denial of en banc rehearing. She reiterated that "the nub of the denial of *en banc* relief . . . is whether the first prong of the district court's preliminary injunction was 'mismatch[ed]' to the violation," and not whether this Court has jurisdiction to order certain personnel actions in service of ensuring Defendants stop violating the law. No. 25-5144, Doc. 2117869, at 6. Judge Pillard also reiterated that the en banc "court has not limited the district court's remedial options going forward," expressing "confidence that Judge Lamberth can and will afford fitting relief so that defendants meet their

acknowledged obligations to ensure that VOA operates consistently with the International Broadcasting Act, including 22 U.S.C. § 6202 and 6204(b)." *Id.* at 8.

The en banc court later granted rehearing en banc to Radio Free Asia and Middle East Broadcasting Networks, lifting the stay of this Court's order as to those entities. The en banc court recognized that restoration of the Radio Free Asia grant alleviates the irreparable harm that Plaintiff The NewsGuild-CWA faced in the absence of emergency injunctive relief, and thus rehearing as to the stay of part (2) of this Court's injunction in the instant case was not necessary. No. 25-5144 Doc. 2117911, at 2-3.

## II.    Defendants' Noncompliance with Part (3) of the Preliminary Injunction

Even though Defendants have never contested part (3)'s continued operation pending their appeal of the preliminary injunction, they have not meaningfully attempted to comply with the Court's order and, by all accounts, have instead moved forward with their plan to shutter VOA.

Between March 15 and May 27, the only original content VOA produced was a limited number of news packages posted only on the internet in four out of VOA's 49 language services. May 30, 3035 Decl. of Paula Hickey ¶ 7. On May 27, as mentioned above, VOA produced a single 5-minute radio segment to broadcast to only three provinces in Afghanistan. Otherwise, there has been no radio broadcast activity and no televised broadcast.

On May 15, the U.S. General Services Administration listed for accelerated sale the Wilbur J. Cohen Federal Building ("Cohen Building"), where nearly all VOA programming is produced. May 30, 2025 Decl. of John Dryden ¶ 6. The Cohen Building houses 19 radio studios, two radio on television studios, and 12 television studios, each of which is outfitted with the necessary equipment to produce live programming. *Id.* ¶ 7. Congress made the decision to sell

the Cohen building in January 2025, but directed that the sale happen only "after the vacancy of existing Federal agencies." Thomas R. Carper Water Resources Development Act of 2024, Pub. L. No. 118-272, 138 Stat. 2992 (2025). At the time, USAGM had secured a 15-year lease for a new building at 1875 Pennsylvania Avenue in Washington, D.C. VOA was to move operations to that building after the building was properly outfitted to produce and disseminate broadcasts, a process that was slated to take years. *See* Dryden Decl. Ex. A. But Defendants cancelled the lease to 1875 Pennsylvania Avenue on March 17. There is therefore no alternative building slated to house VOA, let alone one properly outfitted to host broadcasting. Dryden Decl. ¶ 10.

Also on May 15, Defendants terminated nearly all of the approximately 598 personal service contractors (PSCs) who work at VOA. Those terminations are effective today, May 30. The PSCs are integral to VOA productions, making up large percentages of the staff of numerous programs. The attached declaration from Plaintiff Kathryn Neeper explains the extensive involvement of PSCs across VOA functions and the near impossibility that VOA could comply with its statutory mandates after terminating nearly every PSC. *See* Neeper Decl. ¶¶ 12-13.

And on May 28, Politico reported, based on information from confidential sources at USAGM, that the agency planned to send "termination notices . . . to all full-time staff." Ben Johansen, *Termination notices expected to go out to all remaining Voice of America employees this week*, Politico (May 28, 2025), https://www.politico.com/news/2025/05/28/voice-of-america-rif-terminations-trump-00372238. That information is consistent with Defendants' March 25, 2025 notices of impending reductions in force, which forecast their intention to terminate 623 VOA employees, including all remaining radio broadcast technicians ("RBTs"). *See* Dkt. 33 and Exhibits. Despite the TRO issued by Judge Oetken and the preliminary

4

injunction issued by this Court, Defendants have never withdrawn that reduction in force notification.

To date, Defendants have left nearly all non-terminated staff on administrative leave. Defendants have recalled only two RBTs, even though their physical presence is essential to every live broadcast such that RBTs were, prior to March 15, scheduled to work 24/7 so that VOA could always remain on air. *See* Dryden Decl. ¶ 12. Over 90% of plaintiff American Federation of Government Employees' ("AFGE's") approximately 700-person bargaining unit remains on administrative leave. *See* Hickey Decl. ¶¶ 5, 9; *see also* Dkt. 43 ¶ 9 (Thomas Decl.). There are approximately 30 employees who are actively working—a skeleton crew that is producing almost no content. *See* Neeper Decl. ¶ 6.

Plaintiffs notified Defendants of their noncompliance with part (3) of the Court's preliminary injunction by email on May 23, 2025—four days before Defendants aired the single 5-minute radio clip—and asked in that email how Defendants planned to come into compliance. Defendants did not respond for an entire week. May 30, 2025 Decl. of Nick Bourland, Ex. A. at 2. Then, on May 30, defendants wrote with their position that they "are in compliance with provision 3" of the preliminary injunction because they are "posting daily news" online; producing the four online language packages discussed above; and "broadcasting via short wave and medium wave radio." *Id.* at 1. This is, as far as Plaintiffs can tell, a reference to the 5-minute news clip broadcast to three provinces in Afghanistan. Defendants also took the position that "the statute does not require Voice of America to broadcast radio." *Id.* Plaintiffs notified Defendants of their disagreement with Defendants' characterization of both the facts of what is being broadcast and the sufficiency of their efforts to fulfill the statutory minimum. Defendants refused to give their position on Plaintiffs' motion for an order to show cause.

5

**ARGUMENT**

The facts show an irreconcilable gulf between this Court's April 22 order that USAGM "restore VOA programming such that USAGM fulfills its statutory mandate" and Defendants' decision to call back almost no staff; fire nearly all PSCs; sell the only building equipped to produce and broadcast live programming; and produce no live content other than a five-minute clip broadcast to only three provinces in Afghanistan. This Court has "broad" equitable "authority to issue additional orders to enforce a prior injunction." *Damus v. Wolf*, 18-cv-578, 2020 WL 601629, at *2 (D.D.C. Feb. 7, 2020) (citation omitted). Plaintiffs therefore respectfully request that this Court order Defendants to come forth to explain how they have complied with the Court's injunction.

To the extent Defendants believe producing limited written material in four languages and airing five minutes of radio content to three provinces of one country is sufficient to comply with the International Broadcasting Act, they are mistaken. 22 U.S.C. § 6202 requires, in unambiguous terms, that Defendants produce and disseminate content "designed so as to effectively reach a significant audience"; that includes, among other things, "programming to meet needs which remain unserved by the totality of media voices available to the people of certain nations"; "information about developments in each significant region of the world"; and "a variety of opinions and voices from within particular nations and regions prevented by censorship or repression from speaking to their fellow countrymen." 22 U.S.C. § 6202(a)(7), (b)(5)-(7). None of Defendants' conduct since this Court's April 22 order can be said to even approach these unequivocal mandates. Indeed, for fiscal year 2025, Congress appropriated over $260 million for Voice of America to carry out these duties and specifically provided that "significant modifications to USAGM broadcast hours previously justified to Congress,

6

including changes to transmission platforms (shortwave, medium wave, satellite, Internet, and television), for all USAGM language services shall be subject to regular notification procedures of the Committees on Appropriations." *See* Further Consolidated Appropriations Act of 2024, Pub L. No. 118-47, 138 Stat. 460, 735-36; *see also* Compl. ¶¶ 45-46 (citing appropriations laws setting funding levels for USAGM and Voice of America). Defendants' minimal activity, including its abandonment of 45 language services; its diminishment from broadcasting over 2,000 hours per week to five minutes over the course of over two months; and the retraction of its footprint from 100 countries to one country, does not come close to satisfying its legal obligations. *See* Abramowitz Decl. ¶ 6, No. 1:25-cv-887-RCL, Dkt. 37-2; Neeper Decl. ¶¶ 2-10.

Defendants' contention that VOA is not required by law to broadcast via radio is flatly contradicted by the text of 22 U.S.C. § 6202, which requires that VOA "communicat[e] directly with the peoples of the world *by radio*," and that VOA "serve as a consistently reliable and authoritative source of news." *Id*. § 6202(c) (emphasis added). Congress's specification that VOA broadcast by radio makes sense: radio is often the only means by which audiences in rural areas and oppressive regimes can access independent reporting. *See* Dkt. 16-15 ¶¶ 20-21 (Bruttin Decl.); *see also* 22 U.S.C. § 7813(a)(1) (provision entitled "Radio Broadcast to North Korea"); 22 U.S.C. § 8754(7) (directing government to compile a "comprehensive strategy to" "expand surrogate radio . . . communications inside Iran"); 22 U.S.C. § 8927 (a), (d) (urging increased broadcasting to former Soviet Union and defining "broadcasting" to include "distribution of media content via radio broadcasting"); 22 U.S.C. § 1461(a) (authorizing Broadcast Board of Governors to disseminate "radio").

Moreover, there is no impediment to Defendants' resumption of their statutory duties. Indeed, the only impediment to compliance is, apparently, Defendants themselves. Defendants

7

have the staff ready at hand to resume USAGM's statutory functions, but have declined to activate that experienced and eager workforce, opting instead to keep them sitting on paid administrative leave. *See* Dryden Decl. ¶ 13. They have opted instead to summarily fire a large percentage of their workforce—the PSCs—and are apparently planning to let go of the remaining staff. Defendants have the studios and equipment necessary to produce consistently reliable broadcasts, but have opted to list their facility for accelerated sale after breaking the 1875 Pennsylvania lease, without announcing any alternative plan for producing and broadcasting content.

The en banc D.C. Circuit made clear that this Court has full authority and jurisdiction to enforce part (3) of its injunction pending the government's appeal. To that end, Plaintiffs respectfully request that this Court order Defendants to show how they have complied with part (3) of the April 22, 2025 preliminary injunction. Specifically, Plaintiffs ask this Court to order Defendants to:

1. Explain how, since April 22, 2025, Defendants have complied with part (3) of the preliminary injunction, including

    a. How Defendants have restored VOA programming such that VOA is producing and broadcasting news consistent with the International Broadcasting Act;

    b. How Defendants' actions are consistent with VOA's congressional appropriations;

    c. Whether Defendants have notified Congress of their dramatic reduction in broadcast hours, as required by the Further Consolidated Appropriations Act of 2024; and

    d. How Defendants are complying with the International Broadcasting Act's statutory firewall.

2. Explain how Defendants intend to come into compliance with part (3) of the injunction, including

    a. How USAGM intends to fulfill 22 U.S.C. § 6202 without the terminated PSCs;

    b. How USAGM intends to fulfill 22 U.S.C. § 6202 without use of the Cohen Building; and

    c. How it plans to staff production of the required content, including as to RBTs, who must be on-site 24/7 to keep broadcasts on the air.

3. Explain how many USAGM employees have been recalled from administrative leave, whether they are actively working on VOA programming, and what work product they have produced.

4. Produce all documents reflecting Defendants' plan to restore VOA programming to fulfill its statutory mandate.

5. Produce all documents reflecting Defendants' plans for further termination of USAGM staff, including but not limited to any Agency RIF and Reorganization Plans ("ARRPs"), RIF notices to be provided to Agency employees or the unions representing them, lists of positions to be covered by any future RIFs, and any other relevant documents or information Defendants have drafted or compiled on these subjects to date.

Should Defendants fail to establish that they are complying with and have plans to comply with part (3) of the preliminary injunction, Plaintiffs reserve all rights to seek further relief, including contempt.

Plaintiffs further request that the Court order Defendants to respond to this motion on an expedited basis because of the ongoing violation of this Court's order and statutory mandates.

Dated:    May 30, 2025
          New York, New York

Respectfully Submitted,

GOVERNMENT ACCOUNTABILITY
PROJECT

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

_____/s/_____
David Z. Seide (D.C. Bar # 421899)
1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

_____/s/_____
Andrew G. Celli, Jr.**
Debra L. Greenberger**
Daniel M. Eisenberg (D.C. Bar # 90017823)
Nick Bourland**
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
dgreenberger@ecbawm.com
deisenberg@ecbawm.com
nbourland@ecbawm.com

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, and John Doe 4*

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL
EMPLOYEES, AFL-CIO (AFSCME)

_____/s/_____
Teague Paterson (D.C. Bar # 144528)
Matthew Blumin (D.C. Bar # 1007008)
Georgina Yeomans (D.C. Bar # 1510777)
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, John Doe 4, American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA); and the NewsGuild-CWA*

AMERICAN FOREIGN SERVICE
ASSOCIATION

_____/s/_____
Sharon Papp (D.C. Bar # 107992)
Raeka Safai (D.C. Bar # 977301)
2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Counsel for Plaintiff American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME)*

*Counsel for Plaintiff American Foreign Service Association (AFSA)*

| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO | STATE DEMOCRACY DEFENDERS FUND |
|---|---|
| /s/<br>Rushab Sanghvi (DC Bar # 1012814)<br>80 F. Street, NW<br>Washington, DC 20001<br>(202) 639-6424<br>SanghR@afge.org<br><br>*Counsel for American Federation of Government Employees, AFL-CIO (AFGE).* | /s/<br>Norman L. Eisen (D.C. Bar # 435051)<br>Joshua Kolb**<br>600 Pennsylvania Avenue SE #15180<br>Washington, DC 20003<br>Norman@statedemocracydefenders.org<br>Joshua@statedemocracydefenders.org<br><br>*Counsel for Reporters Sans Frontières, Reporters Without Borders, Inc., American Federation of State, County and Municipal Employees (AFSCME); and American Federation of Government Employees (AFGE)* |
| DEMOCRACY FORWARD FOUNDATION | MEDIA FREEDOM & INFORMATION ACCESS CLINIC - YALE LAW SCHOOL[1] |
| /s/<br>Kristin Bateman (admitted only in California; practice supervised by members of the D.C. bar)**<br>Robin F. Thurston (D.C. Bar # 1531399)<br>Skye L. Perryman (D.C. Bar # 984573)<br>P.O. Box 34553<br>Washington, DC 20043<br>(202) 448-9090<br>kbateman@democracyforward.org<br>rthurston@democracyforward.org<br>sperryman@democracyforward.org<br><br>*Counsel for Plaintiffs American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA); and the NewsGuild-CWA* | /s/<br>David A. Schulz (D.C. Bar # 459197)<br>127 Wall Street<br>New Haven, CT 06520<br>(212) 663-6162<br>David.schulz@YLSClinics.org<br><br>*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, and John Does 1-4*<br><br>** *Pro hac vice* application pending |

---

[1] The views expressed herein do not purport to represent the institutional views of Yale Law School, if any.