UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA, JESSICA JERREAT, KATHRYN NEEPER, JOHN DOES 1-4, REPORTERS SANS FRONTIÈRES, REPORTERS WITHOUT BORDERS, INC., AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES (AFGE), AMERICAN FOREIGN SERVICE ASSOCIATION (AFSA), and THE NEWSGUILD-CWA, <br><br>      Plaintiffs, <br><br> -against- <br><br>KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media; VICTOR MORALES, in his official capacity as Acting CEO of the U.S. Agency for Global Media; and U.S. AGENCY FOR GLOBAL MEDIA, <br><br>      Defendants. | Case No. 1:25-cv-01015-RCL |

**PLAINTIFFS' SURREPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP

Government Accountability Project

American Federation of Government Employees, AFL-CIO

American Foreign Service Association

American Federation of State, County and Municipal Employees, AFL-CIO

Democracy Forward Foundation

State Democracy Defenders Fund

Media Freedom and Information Access Clinic at Yale Law School

## INTRODUCTION

Two things are clear from Defendants' response. First, Defendants do not have a plan for how they will run the United States Agency for Global Media ("USAGM") consistent with the law. That is a problem both because it illustrates Defendants' ongoing disregard for their obligations as an executive agency to engage in reasoned decision-making and because it illustrates their lack of intention to comply with this Court's order.

Second, and relatedly, Defendants view this Court's injunction as requiring nothing more than piecemeal, extremely limited programming, so long as the small amount of programming it creates fits Defendants' own definition, whatever that may be, of "consistently reliable and authoritative." Defendants insist on reading those four words in a vacuum, sealed off entirely from the Court's reasoning and holdings that prompted the injunction, as well as Congress's myriad directives that are legally binding on Defendants and underpinned the Court's injunction. This Court's injunction was a clear restraint on a rogue agency that has decided to unilaterally remake itself without regard for law or procedure; yet Defendants would treat the injunction as hardly restraining them at all. That Defendants have continued apace with their dismantling of USAGM is a violation of the injunction, plain and simple.

To ensure that its injunction serves as a true restraint on the Agency's unlawful behavior, this Court should enforce the injunction and grant Plaintiffs the relief they have sought: production of Defendants' plan to run the Agency consistent with the statutory mandates that govern it. To the extent the Court agrees with Defendants that the unstayed portion of its injunction is insufficiently clear to require Defendants to comply with their statutory and procedural obligations, the Court should accept Defendants' invitation to "explain exactly how

1

Defendants have purportedly failed to meet that statutory standard, and how exactly Defendants have failed to comply with the Court's order," by also clarifying the injunction. Def. Br. at 4.

**ARGUMENT**

**I.      Defendants Have No Plan for Running the Agency**

On April 22, 2025, this Court held that Defendants had acted in a "hasty, indiscriminate" way in dismantling the Agency, lacking "any analysis whatsoever," let alone reasoned analysis, and in complete disregard of reliance interests. ECF No. 98 at 25-28. Voice of America ("VOA") stopped broadcasting for over a month after this Court's injunction. Plaintiffs therefore asked the Court to order Defendants to produce their plan for running the Agency in line with this Court's order and the Agency's multiple statutory obligations. Such a plan would normally be the resultant administrative record of reasoned, lawful agency action; as Defendants acknowledge, that record is routinely part of litigation under the Administrative Procedure Act. *See* Defs. Br. at 10 n.5. But Defendants' statements and conduct illustrate that Defendants have no such plan. It is therefore incumbent upon this Court to order Defendants to do what they should have done in March—come up with a plan and share it with affected parties, so Plaintiffs and the Court can properly evaluate it.

As Defendants acknowledge at the end of Footnote 1 of their brief, Defendant Lake testified under oath before Congress on June 25, 2025.[1] During that hearing, it became clear that Defendant Lake and others at USAGM engaged in no reasoned analysis before taking the

---

[1] *See* House Committee on Foreign Affairs, *Spies Lies, and Mismanagement: Examining the U.S. Agency for Global Media's Downfall* (June 25, 2025), https://foreignaffairs.house.gov/hearing/spies-lies-and-mismanagement-examining-the-u-s-agency-for-global-medias-downfall/ (video of Defendant Lake's testimony at the June 25, 2025 congressional hearing) (hereinafter "Lake Video"); July 2, 2025 Declaration of Nick Bourland ("Bourland Decl.") Ex. A (transcript of the same).

Agency offline and dismantling it. Specifically, Ranking Member Meeks asked Lake repeatedly whether she had "a record that [she] can produce" regarding what she reviewed in reaching the staffing and programming decisions that the Agency has made. Lake refused to identify a record, instead pointing Congressman Meeks to "the statute" and a photograph of President Trump, and ultimately labeling the question "ridiculous." Lake Video at 20:30-23:47; Bourland Decl. Ex. A at 17-21. Congressman Meeks's takeaway was that Lake acted "on a whim." Lake Video at 23:40; Bourland Decl. Ex. A at 21.

During the hearing Defendant Lake also falsely attributed VOA's silence to this litigation, blaming the Court. In response to criticism regarding silence of the Persian television programming from March 15 until June 13, Lake responded that "the judge froze us from being able to get news on. We literally were frozen in place because of all these lawsuits. Once we were freed to start putting news on, we immediately went to what the statutory minimum is." Lake Video at 16:18-17:03; Bourland Decl. Ex. A at 15-16. Of course, never has this Court or Judge Oetken purported to prohibit USAGM from broadcasting—the opposite is true.

Defendants' conduct confirms that Defendants have not created a plan or engaged in reasoned analysis, and the facts they assert in support of their purported compliance with the injunction are often vague or even inaccurate. By way of example, Defendants cite increased broadcasting to Afghanistan, in a manner that suggests the Agency has made linear progress from a five-minute broadcast (two-and-a-half minutes of original content, played twice in two languages) to an impending thirty-minute broadcast (of fifteen minutes of original content). *See* Defs. Br. at 6-7; Wuco Decl. ¶ 7. In fact, beginning June 20, the day Defendants announced widescale RIFs and placed many of the working staff back on administrative leave, and continuing until June 27, the day Defendants filed their brief, there was no live radio broadcast to

3

Afghanistan whatsoever. July 2, 2025 Declaration of John Dryden ("Dryden Decl.") ¶¶ 4-5; July 2, 2025 Declaration of Patsy Widakuswara ("Widakuswara Decl.") ¶ 7.

Defendants tout their Persian news programming, which resumed in the wake of escalating conflict in Iran, describing it as exemplar of USAGM's capacity to "staff up as need arises." Defs. Br. at 8-9. To cover that conflict, Defendants brought back thirty-nine journalists and a total of seventy-five staff. ECF No. 117-1 ¶ 6. Even so, it still took nearly twenty-four hours to begin television broadcasting. *See* Defs. Br. at 8. Defendants also champion their success in carrying the President's June 21 speech "live, and simultaneously translated." Wuco Decl. ¶ 4. Defendants do not say on which platforms it was carried "live," but the VOA Farsi post on X shows the audio of the translated speech cutting out just 54 seconds into the three-and-a-half-minute speech.[2] In any event, the only reason Defendants were able to "staff up" within 24 hours to cover breaking news in a region requiring not only specialized knowledge of diplomatic relations in that area of the world, but also specific advanced language skills, is because Defendants have not yet been able to fully carry out their plan to terminate 85% of Agency staff—a plan they were preparing well before this litigation was initiated, but have not yet executed almost certainly due to judicial intervention.[3] Defendants have not explained how they will be able to "exercise[] recalls, as appropriate," and maintain their "access to critical talent" after their planned reduction-in-force is effectuated. *See* Widakuswara Decl. ¶¶ 5-6. Defendants also do not explain why they currently have only fifteen active Persian News Network staff, *see*

---

[2] @VOAfarsi, X (June 21, 2025), https://x.com/VOAfarsi/status/1936605934010470512.

[3] Defendants' celebration of their ability to reconstitute Persian programming within one day belies their later assertion that they "restored programming to Voice of America as quickly as practicable following the entry of the Court's injunction." Defs. Br. at 12.

Wuco Decl. ¶ 4 & Ex. 1 at 2,[4] or whether the Persian service is continuing to produce content. Defendants' brief claims they have "increased . . . Persian service to thirty-minutes of programming a day," but cite to the Wuco Declaration, which contains no discussion of the current level of Persian programming. Defs. Br. at 12. Defendants notably do not rely on the June 13 Soltani Declaration's description of Persian News Network activity levels and have apparently abandoned the Soltani Declaration's goal of resuming 24/7 broadcast to Iran. *See* Widakuswara Decl. ¶¶ 3-4.

The balance of Defendants' brief further illuminates the haphazard approach the Agency has taken to propping up minimal programming. Defendants assert that they are broadcasting shortwave from Greenville, South Carolina, whose "signal blankets all Latin America and the Caribbean." Defs. Br. at 5-6. Defendants notably do not say what content, if any, VOA is broadcasting from South Carolina. The only VOA[5] radio production Defendants discuss are the short spots in Dari and Pashto, which are surely of limited use to those in Central and South America (to say nothing of those in Afghanistan, where, as already noted, VOA did not broadcast for a full week). To the extent Defendants are referring to Office of Cuba Broadcasting ("OCB") content, they do not explain how that content is relevant to those outside Cuba. *See* Widakuswara Decl. ¶ 14.

Defendants also highlight a plan to, one day, comply with a statutory mandate to "air programming on the 50 U.S. states." Wuco Decl. ¶ 11. Contrary to Defendants' claim, VOA has

---

[4] Defendants' submission alludes to future further reductions-in-force. Defs. Br. at 9.

[5] OCB is separate from VOA and is funded by a separate line-item appropriation. *See* Explanatory Statement Submitted by Ms. Granger, Chair of the House Committee on Appropriations, Regarding H.R. 2882, Further Consolidated Appropriations Act, 2024, 170 Cong. Rec. H1501, H2089 (Mar. 22, 2024); ECF No. 123-2 (Defendants' staffing plan listing OCB and VOA separately).

not ignored this mandate. *See* Widakuswara Decl. ¶ 15. In any case, Defendants do not explain how they will broadcast their 50-state programming, other than through YouTube state tourism videos. Defs. Br. at 8. How such content could contribute to fulfilling VOA's obligation to broadcast "news," "a balanced and comprehensive projection of significant American thought and institutions," or "responsible discussions on and opinion" on United States policies remains unexplained. 22 U.S.C. § 6202(c). It is also unclear how USAGM directing VOA to broadcast tourism videos produced outside the agency respects "editorial independence." 22 U.S.C. § 6205(d)(6)(A).

## II. The Lack of a Plan is Illegal and Violates this Court's Order

Overhauling an agency with no plan or reasoned analysis is anathema to the Administrative Procedure Act, as this Court already held. That Defendants have apparently failed to develop a plan that complies with their statutory obligations in the wake of the Court's injunction demonstrates that their disregard extends not only to Congress and the laws it has enacted, but to this Court's order.

### a. Defendants Continue to Ignore Congressional Mandates

Defendants' unequivocal position throughout this case has always been, and continues to be, that they can overhaul an agency with no reasoned analysis or consideration of reliance interests, so long as they do so in pursuit of an executive order. That is incorrect. When an agency changes course in its practices or policies, it must engage in a thorough analysis that demonstrates reasoned decision-making and consideration of reliance interests. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("[W]here [an] agency has failed to provide even [a] minimal level of analysis, its action is arbitrary and capricious and

6

so cannot carry the force of law."); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (requiring "good reasons" for new policy). Simply pointing to an executive order does not suffice. *See, e.g.*, *State v. Su*, 121 F.4th 1, 17 (9th Cir. 2024) ("[T]he executive order does not exempt [the agency] from basic APA requirements of reasoned decisionmaking."); *Louisiana v. Biden*, 622 F. Supp. 3d 267, 294-95 (W.D. La. 2022) (citation omitted) ("A decision supported by no reasoning whatsoever in the record cannot be saved merely because it involves an Executive Order.").

Defendants' repeated assertion that the Agency's programming prior to March 14 is not an appropriate benchmark for their current actions therefore misses the point entirely. *See, e.g.*, Defs. Br. at 3-4. Defendants are fundamentally misguided in their insistence that "[s]imply because VOA operated one way in 2024 does not require the Agency to continue operating in the same way in 2025." *Id*. at 12. In fact, the APA requires just that—until Defendants provide a reasoned basis to change course.

But even if Defendants could lawfully pursue an executive order at the expense of their obligations under the APA, they have failed to adequately implement the executive order here. The executive order at issue directed USAGM to "reduce the performance of [its] statutory functions and associated personnel to the minimum presence and function required by law." ECF No. 16-1 at 2. But as Plaintiffs pointed out in our reply brief, there are myriad statutory functions that Defendants simply ignore. Defendants' most recent submission likewise pays these provisions scant attention. For instance, Defendants do not address the 2024 Appropriations Act and its multiple specific requirements. Defendants reference one provision regarding North Korea programming in a footnote but ignore additional mandates regarding programming to the country. *See* 22 U.S.C. § 7814 (USAGM's ongoing obligation to broadcast to North Korea and

7

report to Congress on the efficacy of those reports); Further Consolidated Appropriations Act of 2024, Pub L. No. 118-47, 138 Stat. 460, 813 (funding to "maintain broadcasting hours into North Korea at levels not less than the prior fiscal year"). In touting the reach of their Cuba-specific content to South and Central America through OCB, Defendants ignore their obligation to broadcast "information *about* developments in each significant region of the world" and highlight "voices from *within* particular nations and regions" affected by censorship. 22 U.S.C. § 6202(b)(6) (emphasis added). And Defendants continue to ignore the African continent entirely.[6]

Defendants also minimize the importance of the International Broadcasting Act, appearing to concede they are not incompliance with it, yet contending that is of no moment because times have changed since it was enacted. According to Defendants, at the time the IBA was passed, "reliance on news was not how it exists in 2025" because these days "people . . . share information at the click of a button while on the go, [and are] tied [to] their smart phones on a twenty-four-seven basis," which somehow undermines the need to comply with the IBA. *Id*. That contention—that Defendants are empowered to choose their desired "lens" to interpret the plain language of Congress, Def. Br. 4—is problematic for at least two reasons. First, it ignores the fact that much of VOA's intended audience is dramatically differently situated from Defendants in that many do not have free and unfettered access to an uncensored internet or smart phones. *See, e.g.*, ECF No. 16-15 ¶ 20 ("Our correspondents in Bangladesh, Ethiopia, Kenya, Pakistan, South African, and Zimbabwe report that rural regions in these nations remain mostly or entirely reliant on radio for news coverage."); *see also* ECF No. 16-13 ¶ 19

---

[6] Defendants mention "Africa" only in maintaining they are not required by statute or the Court's order to broadcast to that region of the world. Defs. Br. at 5. Defendants' staffing document shows they have retained just one person to run VOA's Africa Division. ECF No. 123-2 at 2.

(highlighting importance of radio weather broadcast to North Korea so that would-be defectors can plan their walk to China). And second, it ignores that the IBA remains binding upon Defendants, and that Congress has reaffirmed the validity and importance of the act through subsequent amendments and appropriations. *See, e.g.*, ECF No. 120 at 3-6 (discussing subsequent legislative history of IBA); *id*. at 9 (discussing Congress's commitment to agency through its funding decisions); ECF No. 1 ¶¶ 43-44 (discussing 2017 amendments to IBA).

In her testimony to Congress on June 25, Defendant Lake confirmed multiple times that her goal, shared with the President, is to eliminate USAGM, and she expressed frustration about the constraints that Congress has placed on her work and requested that Congress amend the statute. Lake Video at 28:17, 39:55, 1:25:40, 1:42:10, 1:52:24; Bourland Decl. Ex. A at 23, 30, 67, 78, 85, 131. While Defendants have made clear their position that USAGM should be eliminated and U.S. international broadcasting completely remade, the appropriate mechanism to achieve that goal is by appealing to Congress (as Lake did on June 25), not ignoring this Court's injunction and the statutory mandates it was crafted to enforce.

      b.   <u>This Court's Order Requires More than the Current Minimal Activity</u>

Defendants' submission rests on the apparent premise that the Court's injunction is extremely narrow, requiring only that whatever news Defendants deign to broadcast be "reliable" and "authoritative." Defs. Br. at 3. Defendants cast the IBA aside as "not cited or relied upon by the Court when issuing its injunction." *Id*. at 3-4; *but see* ECF No. 98 at 28-29 (preliminary injunction opinion discussing violations of IBA). Therefore, Defendants maintain, the injunction lacks a "clear directive" regarding compliance with the IBA. *Id*. at 5. Defendants presumably also maintain that the Administrative Procedure Act and the Appropriations Act are likewise irrelevant to their compliance, because neither is cited in the Court's order.

But "[a] court order is not an isolated, self-contained writing but [an] order with the gloss of an accompanying opinion. Accordingly, injunctions should be read with all the connotations that are infused into their terms by the opinions of the issuing court." *United States v. Facebook, Inc.*, 136 F.4th 1129, 1133–34 (D.C. Cir. 2025) (internal citations and quotation marks omitted). The Court's injunction was the culmination of its reasoning, in the accompanying opinion, that Defendants violated the law because their actions violated the Administrative Procedure Act, the IBA, and the 2024 Appropriations Act. *See* ECF No. 98 at 25-31. Those laws are therefore the appropriate yardstick against which to measure Defendants' compliance. Unfortunately, rather than conforming their actions to those statutory requirements, Defendants continue to contend that they are not required to follow the law because this Court's order was, in Defendants' view, not specific enough.

        c.   <u>This Court May Accept Defendants' Invitation to Clarify the Injunction</u>

As Judge Pillard explained, this Court "retains the power to require the agency's compliance with its statutory obligations . . . even while the appeal of the preliminary injunction is pending." *See* No. 25-5144, Doc. 2117869, at 5 (D.C. Cir. May 28, 2025) (en banc) (Pillard, J., concurring) (citing *Nat'l Ass'n of Regul. Util. Comm'rs v. U.S. Dep't of Energy*, 680 F.3d 819, 820 (D.C. Cir. 2012); 736 F.3d 517, 520-21 (D.C. Cir. 2013); and Federal Rule of Civil Procedure 62(d)). It would be well within this Court's authority to clarify the injunction to "supervise compliance," "add certainty to an implicated party's effort to comply with the order[,] and provide fair warning as to what future conduct may be found contemptuous." *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 29 (D.D.C. 2013) (first quotation); *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984) (second quotation).

The Court's order is clear and enforceable, but to the extent there is any doubt, this Court should accept Defendants' invitation to "explain exactly why the Court is of the belief that Defendants are not complying with the injunction in place," including by expressly interpreting the injunction to eliminate any doubt that Defendants must comply with the 1994 International Broadcasting Act, the 2024 Appropriations Act, the Administrative Procedure Act, and any other non-repealed directive of Congress.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for an order to show cause and order Defendants to produce their plan to comply with the Court's preliminary injunction. Specifically, the Court should order a plan that reflects (1) how Defendants will operate VOA such that it delivers, through all communication means including radio, television, and online print articles, meaningful programming to a global audience in compliance with statutory mandates; (2) how Defendants will spend VOA's congressional appropriations as Congress intended; (3) that Defendants have brought back sufficient personnel to create and disseminate programming that complies with statutory mandates; and (4) that Defendants have restored VOA's operational capacity such that it can meet its mandate and spend its appropriation.

The Court may also clarify that the injunction requires Defendants' compliance with the 1994 International Broadcasting Act, the 2024 Appropriations Act, the Administrative Procedure Act, and any other non-repealed directive of Congress.

| | |
|---|---|
| Dated:  July 2, 2025<br>New York, New York | Respectfully Submitted, |
| GOVERNMENT ACCOUNTABILITY PROJECT | EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP |

<table>
<tr><td>

_____/s/_____
David Z. Seide (D.C. Bar # 421899)
1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, and John Doe 4*

AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO (AFSCME)

_____/s/_____
Teague Paterson (D.C. Bar # 144528)
Matthew Blumin (D.C. Bar # 1007008)
Georgina Yeomans (D.C. Bar # 1510777)
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for Plaintiff American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME)*

</td><td>

_____/s/_____
Andrew G. Celli, Jr.\*\*
Debra L. Greenberger\*\*
Daniel M. Eisenberg (D.C. Bar # 90017823)
Nick Bourland\*\*
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
dgreenberger@ecbawm.com
deisenberg@ecbawm.com
nbourland@ecbawm.com

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, John Doe 4, American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA); and the NewsGuild-CWA*

AMERICAN FOREIGN SERVICE ASSOCIATION

_____/s/_____
Sharon Papp (D.C. Bar # 107992)
Raeka Safai (D.C. Bar # 977301)
2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Counsel for Plaintiff American Foreign Service Association (AFSA)*

</td></tr>
</table>

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO | STATE DEMOCRACY DEFENDERS FUND |

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

/s/
Rushab Sanghvi (DC Bar # 1012814)
80 F. Street, NW
Washington, DC 20001
(202) 639-6424
SanghR@afge.org

*Counsel for American Federation of Government Employees, AFL-CIO (AFGE).*

DEMOCRACY FORWARD FOUNDATION

/s/
Kristin Bateman***
Robin F. Thurston (D.C. Bar # 1531399)
Skye L. Perryman (D.C. Bar # 984573)
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA); and the NewsGuild-CWA*

STATE DEMOCRACY DEFENDERS FUND

/s/
Norman L. Eisen (D.C. Bar # 435051)
Joshua Kolb*
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Norman@statedemocracydefenders.org
Joshua@statedemocracydefenders.org

*Counsel for Reporters Sans Frontières, Reporters Without Borders, Inc., American Federation of State, County and Municipal Employees (AFSCME); and American Federation of Government Employees (AFGE)*

MEDIA FREEDOM & INFORMATION ACCESS CLINIC - YALE LAW SCHOOL[1]

/s/
David A. Schulz (D.C. Bar # 459197)
127 Wall Street
New Haven, CT 06520
tobin.raju@YLSClinics.org
David.schulz@YLSClinics.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, and John Does 1-4*

\* *Pro hac vice* application forthcoming

\*\* *Pro hac vice* application pending

\*\* D.C. Bar admission pending. Admitted only in California; practice supervised by members of the D.C. Bar.

---

[1] The views expressed herein do not purport to represent the institutional views of Yale Law School, if any.