# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATSY WIDAKUSWARA**, *et al.*,<br><br>    *Plaintiffs*,<br><br>**v.**<br><br>**KARI LAKE**, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media, *et al.*,<br><br>    *Defendants*. | **Case No. 1:25-cv-1015-RCL**<br>**Case No. 1:25-cv-0887-RCL** |
| **MICHAEL ABRAMOWITZ**, *et al.*,<br><br>    *Plaintiffs*,<br><br>**v.**<br><br>**KARI LAKE**, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media, *et al.*,<br><br>    *Defendants*. | |

## ORDER TO SHOW CAUSE

Before the Court is a Motion [ECF No. 112] for an Order to Show Cause filed in *Widakuswara v. Lake*, No. 25-cv-1015, and a similar pending Motion [ECF No. 37] for an Order to Show Cause filed in *Abramowitz v. Lake*, No. 25-cv-887. Broadly, the Motions ask this Court to order the defendants to provide a plan for how they intend to comply with Part III of this Court's preliminary injunction, which requires the defendants to "restore [Voice of America ("VOA")] programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently

reliable and authoritative source of news,' 22 U.S.C. § 6202(c)." *Widakuswara v. Lake*, --- F. Supp. 3d. ---, 2025 WL 1166400, at * 18 (D.D.C. Apr. 22, 2025).

On June 23, 2025, the Court held a hearing on the Motions, during which the Court expressed its dissatisfaction with the defendants' lack of concrete evidence regarding VOA's current operations or future plans. Tr. of June 23 Hr'g, 17:19–18:10, 20:6–12, 32:6–16, ECF No. 51. At the conclusion of the hearing, the Court ordered the defendants to file a supplemental memorandum "with additional information regarding USAGM's recent activities, including any relevant information about USAGM funding decisions, personnel updates, and submissions to Congress." Order for Suppl. Mem., *Widakuswara* ECF No. 121; *Abramowitz* ECF No. 50. On June 27, the defendants filed this supplemental memorandum. Resp. to Order of the Court ("First Suppl. Mem."), *Widakuswara* ECF No. 123, *Abramowitz* ECF No. 54. Both sets of plaintiffs filed a reply on July 2, highlighting gaps in the defendants' memorandum. *See* Pls.' Surreply at 3, *Widakuswara* ECF No. 124 ("the facts [the defendants] assert in support of their purported compliance with the injunction are often vague or even inaccurate"); Pls.' Resp. at 1–2, *Abramowitz* ECF No. 56 (stating that the memorandum "offer[s] little new information"). The Court agreed with the plaintiffs, concluding that the defendants' memorandum failed to deliver the necessary information for the Court to evaluate compliance with the preliminary injunction. So, on July 8, the Court ordered the defendants to file a *second* supplemental memorandum to give the Court a "clear picture of what VOA is doing, what the defendants' plan is for VOA moving forward, or how the defendants made any of these decisions." Order for Second Suppl. Mem. at 5, *Widakuswara* ECF No. 126, *Abramowitz* ECF No. 56.

On July 18, the defendants filed their second supplemental memorandum. Resp. to Order of the Court ("Second Suppl. Mem."), *Widakuswara* ECF No. 129, *Abramowitz* ECF No. 57. The

plaintiffs filed their respective replies on July 25, 2025.  Pls.' Surreply, *Widakuswara* ECF No. 129; Pls.' Resp., *Abramowitz* ECF No. 61.  Upon review of this record, the Court concludes that yet again, the defendants' filing suffers from many of the same deficiencies as their prior submissions.  For the reasons below, the Court will **GRANT** the plaintiffs' Motions for an Order to Show Cause, and accordingly, the defendants are **ORDERED** to produce a plan for how they intend to comply with Part III of the Court's preliminary injunction.

## I.    The defendants have consistently refused to give the Court the full story regarding personnel actions.

In the Court's July 8 Order for a second supplemental memorandum, the Court pointed out that, because of the defendants' "noncommittal" representations regarding VOA staffing levels, the Court was unable to assess the defendants' compliance with the preliminary injunction.  Order for Second Suppl. Mem. at 3.  As a specific example, the Court highlighted the problem with the defendants' prior representation about VOA's ramped-up Persian news personnel capacity: that the agency plans to institute a reduction-in-force (RIF) that would fire the very VOA employees that they're citing as a measure of compliance with this Court's preliminary injunction.  *Id.* at 2–3.  Broadly, the Court then stated that "[t]he defendants need to provide information on staffing that gives a realistic picture of how VOA will be operating moving forward."  *Id.*

But even with this direct command to provide complete information on VOA's future operational capacity and staffing levels, the defendants continue to provide cagey answers and omit key information.  The second supplemental memorandum states that VOA has seventy-two full-time employees "at present," but that "the number is subject to change as the Agency manages its operations."  Second Suppl. Mem. Attach. 1, Decl. of Kari Lake, ECF No. 127-1 ¶ 4.  The defendants do not explain how, when, or why these staffing numbers may change.  Glaringly, the memorandum omits any reference to the planned RIF of the 600-plus VOA employees who have

been on administrative leave for four months and counting.[1]  And perhaps more shockingly, on July 8—the day this Court ordered a second round of supplemental briefing, and a full ten days before the defendants filed the second supplemental memorandum—the defendants informed Plaintiff Michael Abramowitz that he would be removed from his position as Director of VOA. *See* Pls.' Resp. at 2 n.1, *Abramowitz* ECF No. 61.  However, the defendants made no mention of this monumental personnel decision in their filings to this Court.

VOA's staffing levels are inextricably enmeshed with its operational capacity and, in turn, its ability to carry out its statutory mandate, because VOA cannot operate without employees.  As this Court has stated before, "[p]ersonnel decisions are within the agency's purview," Order for Second Suppl. Mem. at 3, but "that discretion is neither boundless nor shielded from judicial review and remediation," *id.* (quoting Clerk's Order No. 2117869 Regarding Denial of Rehearing En Banc, No. 25-5144 (D.C. Cir. May 28, 2025) (Statement of Pillard, J.)).  And without all of the relevant information regarding VOA's employment actions, the Court cannot evaluate the defendants' compliance with Part III of the preliminary injunction.

## II.    The defendants have failed to adequately explain how they are spending the $260 million that Congress appropriated to VOA for Fiscal Year 2025.

Congress appropriated $260 million to VOA based on representations USAGM made in support of its budget in its Fiscal Year (FY) 2025 Budget Justification, including how many hours it intended to broadcast to 100 countries in forty-eight languages.[2]  In the Court's Order for a second supplemental memorandum, the Court specifically deemed the defendants' filings

---

[1]  Mastrangelo, D. "Hundreds Laid Off at Voice of America." The Hill (published June 20, 2025), https://thehill.com/homenews/media/5361098-trump-laid-off-voice-of-america/ (reporting the announcement of termination notices to 639 VOA employees); Johansen, B. "Embattled Voice of America employees face termination 'whiplash.'" POLITICO (published June 20, 2025), https://www.politico.com/news/2025/06/28/voice-of-america-termination-00431342 (discussing VOA RIF to be completed in September).

[2]  *See* USAGM, FY 2025 Congressional Budget Justification, available at https://www.usagm.gov/wp-content/uploads/2024/03/USAGMBudget_FY25_CBJ_03-08-24-1.pdf.

"deficien[t]" for failing to make any reference to the 2025 Fiscal Year Budget Justification or give any explanation for the decision to "abandon" it. Order for Second Suppl. Mem. at 4. The defendants responded with a "breakdown of VOA's fiscal year spending to date," with seven bullet points of various operational buckets with corresponding spending amounts. Second Suppl. Mem., Attach. 1, Decl. of Kari Lake at 6–7.

This representation remains deficient. Listing such significant quantities of money in broad strokes and generalities, without any further breakdown of activities that comprise those hundreds of millions of dollars in spending, is useless to the Court and insufficient to show faithful execution of the programmatic goals evidenced by Congress's appropriation. For example, the defendants report that over half of their appropriations—$137.106 million—have thus far been spent on "Regional Broadcasting Operations" with no further detail. Second Suppl. Mem. at 6. But the Court cannot see how this reported figure could possibly map on to the FY 2025 Budget Justification.

A closer look at each spending category quickly reveals why. The FY 2025 Budget Justification lists VOA spending figures as $38.19 million for the Africa Division; $52.35 million for the East Asia and Pacific Division; $32.7 million for the Eurasia Division; $13.09 million for the Latin America Division; and $32.775 million for the South Asia Division. *See* Summary of Appropriated Funds, FY 2025 Congressional Budget Justification at 65–67. These numbers are further broken down into categories for each language service in each region. For example, the Africa Division chart lists spending figures ranging anywhere from $2–6 million each for languages services in Bambara, Kinyarwanda, Kirundi, French, Hausa, Amharic, Tigrigna, Afaan Oromoo, Portuguese, Somali, Swahili, and Shona. *Id.* at 65. But the agency has since eliminated *all of these language services*. So, of course, the Court cannot make sense of the defendants'

reported spending figure of $137.206 million in "Regional Broadcasting Operations" when nearly all of the regional broadcasting operations have been dark for months now.

The Court suspects that a large portion of the defendants' reported spending figures represent salaries being paid to the 600-plus VOA employees[3] who have been on administrative leave since March. But surely, when Congress appropriated $260 million to VOA for FY 2025, it did not anticipate that such a significant sum of taxpayer funds would be used to pay employees to sit at home for months on end, making no contribution to VOA's statutory mandate.[4] The defendants need to explain how they are spending the hundreds of millions of dollars appropriated to VOA *to carry out its statutory mandate* with news and broadcasting operations—without simply parroting back the amount of money being paid for furloughed employees to do nothing. Without more explanation, the Court is left to conclude that the defendants are simply trying to run out the clock on the fiscal year, without putting the money Congress appropriated toward the purposes Congress intended. The legal term for that is "waste," and it is precisely what federal appropriation law aims to avoid.

---

[3] To be clear, the defendants have not disclosed to the Court how many VOA employees are on administrative leave. Before March 15, 2025, VOA had 1,300 employees. *Widakuswara* Compl. ¶¶ 74–75, ECF No. 1. On March 15, all of them were placed on administrative leave. *Id.* At the end of May, USAGM terminated nearly 600 VOA personal service contractors, bringing the number of VOA employees down to roughly 700. Decl. of Kathryn Neeper ¶ 11, ECF No. 112-3. Because the defendants now represent that there are 75 active VOA employees, the Court infers that the over 600 are still on administrative leave.

[4] Indeed, in the relevant appropriations statute, Congress specifically provided that "significant modifications to USAGM broadcast hours previously justified to Congress, including changes to transmission platforms (shortwave, medium wave, satellite, Internet, and television), for all USAGM language services shall be subject to regular notification procedures of the Committees on Appropriations." *See* Further Consolidated Appropriations Act of 2024, Pub L. No. 118-47, 138 Stat. 460, 735–36. Congress also forbade USAGM from reprogramming more than five percent of VOA's funding and provided that even that modest reprogramming was subject to a 15-day notice period to Congress. 2024 Appropriations Act, div. F, tit. I, 138 Stat. 735; *see* 170 Cong. Rec. at H2087.

The Court observes that the defendants did submit a congressional notification before reprogramming five percent of appropriated funds from USAGM grantee networks (RFE/RL, Open Technology Fund, Middle East Broadcasting Networks, and Radio Free Asia) to "Mission Support." *See* First Suppl. Mem., Attach. 4, Congressional Notification Regarding Reprogramming of Grantee Funding., ECF No. 123-4. But there is no indication that the defendants have undertaken any notification procedures before eliminating the vast majority of VOA operations—which, in any event, would presumably exceed the five percent funding limit on reprogramming.

It bears repeating that "a President sometimes has policy reasons . . . for wanting to spend less than the full amount appropriated by Congress for a particular project or program.  But in those circumstances, even the President does not have unilateral authority to refuse to spend the funds.  Instead, the President must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill."  *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013).  Indeed, the President recently sought—and Congress passed—a rescission of appropriations for the Corporation for Public Broadcasting, which provides funding to National Public Radio ("NPR") and Public Broadcasting Service ("PBS").  *See* Rescissions Act of 2025, Pub. L. No. 119-28.  No such rescission has been requested for any of the funds that Congress appropriated to VOA, and the Executive branch has no residual authority to refuse to spend the funds absent a rescission.  To be sure, it is for the political branches, not the courts, to decide whether to seek rescission of an appropriation.  But it is squarely within the judicial prerogative to hold the Executive branch to account when it appears to bypass legislative mandates.  *See In re Aiken Cnty.*, 725 F.3d at 261 n.1.  Because the defendants seem to see it otherwise, they must show cause as to how their actions handling congressional appropriations are compliant with this Court's preliminary injunction.

III.   **The defendants are providing misleading and contradictory information and appear to be violating numerous statutory provisions.**

Several other issues in the defendants' filings warrant the Court's action here.  The defendants' descriptions of their activities are cryptic and even misleading, lacking the requisite detail needed for the Court to evaluate compliance with the preliminary injunction.  And troublingly, the crumbs of data provided suggest the defendants are ignoring several statutory mandates.

The defendants represent that they are "broadcasting in . . . Mandarin, Farsi, Dari, and Pashto."  Second Suppl. Mem., Attach. 1, Decl. of Kari Lake ¶ 14.  But the defendants have never

actually reported any *radio* or *television* broadcasting in Mandarin. *See* Soltani Decl. ¶ 7, ECF No. 117-1 (describing only minimal web and social media content in Mandarin). As far as this Court can tell, the defendants are using the term "broadcasting" as a catch-all term to refer to radio, television, and online distribution, without disaggregating which types of broadcasting and media are occurring in which languages, and for how long. Given that the International Broadcasting Act requires VOA to "communicat[e] directly with the peoples of the world *by radio*," 22 U.S.C. § 6202(c) (emphasis added), it is crucial that the Court receive detailed, accurate information about VOA's activities in each relevant medium. Furthermore, in their latest filing the defendants ceased providing information about Farsi language operations since the Court has admonished the defendants not to "tout[] activities undertaken by staff that will soon be fired." Order for Second Suppl. Mem. at 3. The Court is left to conclude that the defendants will soon halt VOA's Persian news operations, if they have not already.

In attempting to explain why VOA has whittled down to a paucity of coverage in only Dari, Pashto, Farsi, and Mandarin, the defendants fail to engage with the additional statutory provisions regarding required language programming. *See, e.g.*, Further Consolidated Appropriations Act 2024, 138 Stat. 813 (including funds to "maintain broadcasting hours into North Korea at levels not less than the prior fiscal year"); Foreign Relations Authorization Act, Fiscal Years 1992 and 1993, Pub. L. No. 102-138, § 234 ("As soon as practicable but not later than one year after enactment, the Voice of America Kurdish language programming pursuant to this section shall be broadcast for not less than 1 hour each day."); *id.* § 233 ("The Director of the United States Information Agency shall establish distinct Croatian and Serbian programs within the Yugoslavian section of the Voice of America.").

Finally, the defendants have also made contradictory representations to the Court. In the defendants' first supplemental memorandum, they submitted a sworn declaration stating that USAGM had "recommenced shortwave radio broadcasts from the Edward R. Murrow Shortwave Transmitting Station in Greenville, [North Carolina], as of 12:00PM EDT, today, June 27, 2025." First Suppl. Mem., Attach. 1, Decl. of Frank Wuco ¶ 19. However, in the second supplemental memorandum, the defendants make no mention of any current radio broadcasts from the Edward R. Murrow Station, now stating only that the facility is a "hub for future VOA activities" and referring to instances where the station has provided surge capacity in the past. Second Suppl. Mem., Attach. 1, Decl. of Kari Lake ¶ 11. This sort of flip-flopping—in sworn declarations—raises severe concern and provides yet another basis for entering a show cause order for the defendants to provide a truthful, accurate, and detailed plan regarding VOA's ongoing operations.

## IV.    The Court orders the defendants to show cause as to how they plan to comply with Part III of this Court's preliminary injunction.

For all of these reasons, the Court concludes that judicial intervention is needed to ensure the defendants' compliance with the preliminary injunction. The Court observes one last development that lends support for the Court's action here. Although the defendants represent to this Court that they intend to operate VOA in accordance with its statutory mandate, defendants' statements outside the courtroom indicate otherwise. Defendant Kari Lake made the following on-the-record statement to a news publication, as reported on July 22: "[O]ur goal is to shut the entire agency down as per the instructions of President Trump . . . . And so I'm working to eliminate the agency, and it's been a big job, but we're working hard at it."[5] This statement is

---

[5] Severi, M. & Richards, S., "Kari Lake Bombshell: VOA managers met with Chinese to discuss more favorable coverage for Beijing." JUST THE NEWS (published July 22, 2025), https://justthenews.com/government/federal-agencies/kari-lake-says-chinese-officials-told-voa-how-cover-their-country?utm_medium=social_media&utm_source=mail_social_icon&utm_campaign=social_icons.

deeply troubling amid proceedings to determine the defendants' compliance with VOA's statutory mandate.

The Court has provided the defendants with every opportunity to demonstrate that they are complying with the preliminary injunction in good faith.  To be clear, the Court does not seek to micromanage the affairs of USAGM or dictate how VOA should be run, and to that end, has allowed the defendants to submit multiple filings in support of their purported compliance while the Court has taken the pending motions under advisement.  But at this point, with only two months left in the fiscal year and no clear understanding of how the defendants intend to fulfill VOA's statutory mandates, the Court must take action.

To that end, it is hereby

**ORDERED** that the defendants must provide the following information:

1. Explain how, since April 22, the defendants have complied with Part III of the preliminary injunction, including:

    a. How the defendants have restored VOA programming such that VOA is producing and broadcasting news consistent with the International Broadcasting Act, in each relevant medium (radio, television, and online content), and for each language in which VOA is operating;

    b. How the defendants' actions are consistent with VOA's congressional appropriations;

    c. Whether the defendants have notified Congress of their significant reduction in broadcast hours, as required by the Further Consolidated Appropriations Act of 2024;

2. Identify the precise number of USAGM employees who have been recalled from administrative leave, and explain whether they are actively working on VOA programming, and what work product they have produced; and identify the precise number of USAGM employees that remain on administrative leave.

3. Produce all documents reflecting the defendants' plan to restore VOA programming to fulfill its statutory mandate.

4. Produce all documents reflecting the defendants' plans for further termination of USAGM staff, including but not limited to any Agency RIF and Reorganization Plans ("ARRPs"), RIF notices to be provided to Agency employees or the unions representing them, lists of positions to be covered by any future RIFs, and any other relevant documents or information the defendants have drafted or compiled on these subjects to date.

5. Produce all documents otherwise relating to the defendants' plans to wind down USAGM's operations.

The defendants must submit this information to the Court by 5:00 pm on Wednesday, August 13, 2025.

**IT IS SO ORDERED.**

Date: July __30__, 2025

Royce C. Lamberth
United States District Judge