**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Patsy Widakuswara, *et al.*, | Case No. 25-cv-1015-RCL |
| *Plaintiffs,* | |
| –v.– | |
| KARI LAKE *et al.*, | |
| *Defendants.* | |
| MICHAEL ABRAMOWITZ *et al.*, | Case No. 25-cv-00887-RCL |
| *Plaintiffs,* | |
| –v.– | |
| KARI LAKE *et al.*, | |
| *Defendants.* | |

**PLAINTIFFS' JOINT MOTION TO PAUSE REDUCTIONS IN FORCE IN SERVICE OF ENFORCING PRONG (3) OF THE PRELIMINARY INJUNCTION**

Plaintiffs respectfully request that this Court enforce prong (3) of its preliminary injunction by temporarily enjoining the widescale reduction in force (RIF) that Defendants announced on August 29, effective September 30. Plaintiffs and the Court are in the midst of determining whether Defendants have complied with the active portion of the Court's preliminary injunction. All evidence to date suggests the answer to that question is no. These large-scale RIFs further threaten that effort, and will hamper the Court's ability to enforce its injunction in the future. This Court should therefore preserve the status quo while the parties litigate compliance. Defendants oppose this motion.

## BACKGROUND

On April 22, this Court granted Plaintiffs' motions for a preliminary injunction, finding Defendants' "blanket placement of employees on administrative leave, termination of entire bargaining units of employees, [and] termination of PSCs" were likely arbitrary and capricious as they lacked "any analysis whatsoever" and were likely "not in accordance with" statutory and constitutional law. ECF No. 98 at 24-25.

The Court's preliminary injunction is divided into three parts:

1) take all necessary steps to return USAGM employees and contractors to their status prior to the March 14, 2025 Executive Order 14238, "Continuing the Reduction of the Federal Bureaucracy," including by restoring all USAGM employees and personal service contractors, who were placed on leave or terminated, to their status prior to March 14, 2025;

2) restore the FY 2025 grants with USAGM Networks Radio Free Asia and Middle East Broadcasting Networks such that international USAGM outlets can "provide news which is consistently reliable and authoritative, accurate, objective, and comprehensive," 22 U.S.C. § 6202(a), (b), and , to that end, provide monthly status reports on the first day of each month apprising the Court of the status of the defendants' compliance with this Order, including documentation sufficient to show the disbursement to RFA and MBN of the funds Congress appropriated; and

3) restore VOA programming such that USAGM fulfills its statutory mandate that VOA "serve as a consistently reliable and authoritative source of news," 22 U.S.C. § 6202(c).

Dkt. 99 at 1-2.

On May 3, a divided motions panel of the D.C. Circuit stayed parts (1) and (2) of the preliminary injunction. Plaintiffs sought *en banc* review of the motions panel's decision, which the court denied. But Chief Judge Srinivasan issued a separate statement, joined by six members of the court (a clear majority), in which he clarified that the *en banc* denial "should not be understood to accept or treat with the government's assertion" that "the district court lacks any authority . . . to order personnel actions." Doc. 2117869 in Case No. 25-5144, at 3. "[I]nsofar as the issue may arise in further proceedings in the district court," Chief Judge Srinivasan continued, "that court presumably would consider it in the first instance." *Id*.

Defendants never sought a stay of prong (3) of the preliminary injunction. And Defendants never appealed prong (3) of the injunction. It went into effect on April 22, and has been in effect since. On May 31, Plaintiffs filed a motion for an order to show cause regarding Defendants' compliance with prong (3) of the preliminary injunction. Plaintiffs' motion showed that, over a month after the Court's preliminary injunction, Defendants had not meaningfully attempted to comply with the Court's order and, by all accounts, had instead moved forward with their plan to shutter VOA.

After multiple rounds of briefing and oral argument, this Court granted Plaintiffs' motion for an order to show cause, mandating that Defendants answer specific questions regarding their compliance, including by explaining how they have restored VOA programming such that it complies with the International Broadcasting Act; the number of employees on administrative leave as well as those actively working, with a description of the work they are doing; and documents reflecting Defendants' plans to further terminate USAGM staff. ECF No. 62 at 10-11. The Defendants' response "fail[ed] to provide the information ordered . . . let alone explain how

3

they are in compliance with the Court's preliminary injunction, even on [Defendants'] preferred interpretation of VOA's statutory mandate." ECF No. 72 at 2. The Court therefore granted Plaintiffs' request to depose three of Defendants' declarants on an expedited basis "[t]o allow the defendants one final opportunity, short of a contempt trial, to provide such explanation." *Id.*

Just a few hours after this Court heard argument regarding Defendants' failure to comply with the Court's order to show cause, on August 25, Defendants sent Plaintiffs AFGE and AFSCME, labor unions representing agency employees, retention registers, which are a precursor to reductions in force. *See* Notice, ECF No. 138. Three days later, on August 28, the President issued an executive order purporting to strip employees at the U.S. Agency for Global Media, including all of VOA, of their right to be represented in collective bargaining by a union under Chapter 71 of title 5, United States Code. Yeomans Decl. Ex. F. The next morning, Friday August 29, Defendants purported to terminate AFGE and AFSCME's collective bargaining agreements (CBAs), precluding them from challenging the impending RIFs under their CBAs. Yeomans Decl. Ex. A, B. And that night, Defendants sent reduction in force notices to over 500 USAGM employees—the vast majority of its remaining staff. *See* Notice, ECF No. 141 at 2; *see also* Social Media Post (Aug. 29, 2025), available at https://x.com/KariLake/status/1961600955343843577.

The August 29 RIF notices indicate an effective date of September 30—giving employees only 30 days' notice of their impending termination. Yeomans Decl. Ex. C. The purportedly cancelled CBAs between Defendants and AFGE and AFSCME would have required a minimum of 60 days' notice. Yeomans Decl. Ex. D, E. Defendants informed this Court of their issuance of the retention registers, Notice, ECF No. 139, but to date, a week later, have not

notified the Court of their decision to terminate over 500 employees on a fast-track timetable, nor of their decision to cancel and violate the plain terms of the operative union contracts.

Meanwhile, the parties have been negotiating deposition dates for Leili Soltani, Frank Wuco, and Defendant Lake. Those depositions, which the Court ordered as a means of determining Defendants' compliance with prong (3) of the preliminary injunction, are set to begin September 9 and conclude on September 18. Because of Mr. Wuco's personal travel abroad, he was not able to sit for an in-person deposition before the 18th.

## ARGUMENT

Unilaterally dispensing with over 500 full-time employees on an expedited timeframe, after sidelining the employees' certified collective bargaining agents (who are Plaintiffs in this case), will frustrate Defendants' ability to comply with prong (3) of the Court's preliminary injunction and to fulfill their obligations under the law. Because there is an ongoing dispute over the Defendants' compliance with prong (3) that implicates its staffing levels, including the specialized competencies its staff provides, Plaintiffs respectfully request that this Court preserve the status quo by temporarily enjoining the RIF notices until the Court can ascertain whether Defendants are in compliance with prong (3) of the preliminary injunction or otherwise issues a dispositive ruling in this action.

## I.    Temporarily suspending the RIFs is within this Court's authority to enforce its injunction

"A court's powers to enforce its own injunction by issuing additional orders is broad, particularly where the enjoined party has not 'fully complied with the court's earlier orders.'" *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 98 F. Supp. 2d 25, 26 (D.D.C. 2000) (Lamberth, J.) (quoting *Hutto v. Finney*, 437 U.S. 678, 687 (1978)). The court may also "mold its decree to meet the exigencies of the particular case, and may go beyond earlier orders

to address each element contributing to the violation and insure against the risk of inadequate compliance." *Gomez v. Trump*, 486 F. Supp. 3d 445, 450 (D.D.C. 2020) (cleaned up). This Court should enforce its injunction by preserving the status quo and temporarily pausing the proposed reductions in force until this Court has finally resolved whether Defendants are in compliance with prong (3) of the preliminary injunction.

There is a substantial question whether Defendants are in compliance with part (3) of this Court's preliminary injunction. Most recently, this Court found Defendants had "failed to provide the information ordered in the Court's Order to Show Cause—let alone explain how they are in compliance with the Court's preliminary injunction." Order, ECF No. 72 at 2. The Court accordingly permitted Plaintiffs to take expedited discovery in the form of three depositions, which are scheduled to conclude on September 18.

Defendants' compliance with the injunction is therefore an open, unresolved question. Part of the unresolved inquiry regarding Defendants' compliance is whether and how Defendants plan to staff Voice of America such that it can fulfill its statutory duties. *See* Order to Show Cause, ECF No. 62 at 11. Defendants have not answered that specific inquiry. *See generally* Order, ECF No. 72. Defendants should not be able to end-run compliance with the preliminary injunction by taking drastic action to reduce its staffing levels before this Court has had an opportunity to resolve the open question of Defendants' compliance. Permitting Defendants to go forward with their proposed large-scale reduction in force could frustrate this Court's ability to compel compliance with its order, should the Court ultimately conclude that Defendants are underperforming their obligations.

Another judge in this district took this exact action—pausing RIFs pending the disposition of preliminary-injunction compliance proceedings—where, as here, the D.C. Circuit

6

had partially stayed the court's preliminary injunction, including the injunction's prohibition on conducting reductions in force, and plaintiffs subsequently filed a successful order to show cause concerning compliance with the unstayed portion of the injunction. *See Nat'l Treasury Emps. Union v. Vought*, 778 F. Supp. 3d 144, 150 (D.D.C. 2025), *appeal dismissed*, No. 25-5091, 2025 WL 1385557 (D.C. Cir. May 12, 2025) (*NTEU I*). In *NTEU I*, the district court held plaintiffs were likely to succeed on their claims that the Consumer Financial Protection Bureau and its Acting Director violated the separation of powers and the APA in taking steps to rapidly dismantle the agency, including by issuing stop-work orders and dispensing with staff *en masse*. *See Nat'l Treasury Emps. Union v. Vought*, 774 F. Supp. 3d 1, 11 (D.D.C. 2025), *vacated and remanded,* No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025). The district court entered a nine-part preliminary injunction on March 28, one prong of which barred Defendants from terminating any CFPB employee, except for cause, as well as barring the agency from issuing reduction in force notices to any employee. *Id*. at 85. The D.C. Circuit partially stayed the injunction on April 11, including by staying the prohibition on reduction in force notices. It modified the injunction to allow CFPB to issue "a notice of reduction in force to employees whom defendants have determined, after a particularized assessment, to be unnecessary to the performance of defendants' statutory duties." *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 1721068, at *1 (D.C. Cir. Apr. 11, 2025), *modified on clarification,* No. 25-5091, 2025 WL 1721136 (D.C. Cir. Apr. 28, 2025). On April 17, the defendants issued reduction in force notices to more than eighty percent of the agency's workforce. 778 F. Supp. 3d at 147. Plaintiffs filed a motion for an order to show cause regarding the defendants' compliance with the preliminary injunction. And on April 18, the district court suspended the April 17 reduction

in force pending the court's disposition of the question whether defendants had complied with the preliminary injunction. *Id*. at 150.

As in *NTEU I*, this Court has every authority to maintain the status quo while it determines whether Defendants have complied with the active portion of the preliminary injunction, notwithstanding the fact that the D.C. Circuit has stayed part of this court's original preliminary injunction. In fact, as discussed above, the *en banc* court expressly envisioned further proceedings in this Court related to prong (3). Moreover, this Court has already held that absent a preliminary injunction, including the blocking of mass terminations of USAGM employees, Plaintiffs face irreparable harm. *See* Preliminary Injunction Opinion, ECF No. 98 at 31-34.

Defendants' sidelining of the unions only compounds the need for court action. Had Defendants given employees 60 days' notice of their separation, which is the default Office of Personnel Management rule, 5 CFR § 351.801(a)(1), and is required by each of the unions' now-cancelled collective bargaining agreements,[1] the dispute over Defendants' compliance could plausibly have been resolved before the employees' separation dates. Defendants' decision to subvert that timeline has compelled Plaintiffs to ask this Court for emergency relief.

**II.    There is no jurisdictional barrier to temporarily suspending the RIFs.**

Defendants will no doubt argue, as they have throughout this litigation, that this Court lacks jurisdiction to enjoin the federal government's personnel actions because jurisdiction over

---

[1] Plaintiffs maintain that the cancellation of collective bargaining at USAGM was unlawful and invalid, including but not limited to for the reasons set forth by Judge Friedman in ongoing litigation in this district concerning an executive order issued earlier this year stripping collective bargaining rights from federal employees at other agencies.  *See Nat'l Treasury Emps. Union v. Trump*, 780 F. Supp. 3d 237, 262 (D.D.C. 2025) (holding prior executive order stripping federal employees of collective bargaining rights was *ultra vires*), *stayed on other grounds by* 2025 WL 1441563 (D.C. Cir. May 16, 2025).

federal personnel matters lies exclusively with administrative agencies created by the Civil Service Reform Act (CSRA). There are multiple reasons, however, why such an argument would be wrong.

    **a.** The Court would not be permanently reinstating employees or frustrating the agency's personnel decisions. It would merely temporarily pause the RIFs in aid of enforcing its prior order. As noted, the *en banc* D.C. Circuit understood that even if channeling issues were implicated by other parts of the preliminary injunction—a still unresolved question—this Court could take actions related to personnel in service of prong (3) of the preliminary injunction, which has not been appealed. Effectuating prong (3) undeniably requires staffing. But that does not bring these issues, related to compliance with VOA's statutory mandates, within the reach of the CSRA.

    **b.** This Court has already held as a general matter in this case that the CSRA does not pose a jurisdictional barrier. *See* Preliminary Injunction Opinion, ECF No. 98 at 20-22 & n.22. And while the D.C. Circuit stay panel disagreed, a majority of the appellate court clarified that it did not adopt the government's position that the "district court lacks any authority under [prong (3)] to order personnel actions," and instead left it to this Court to determine "in the first instance" the propriety of doing so. Doc. 2117869 in Case No. 25-5144, at 3.

    To extent Defendants argue that the recent decision in *NTEU v. Vought*, --- F. 4th ----, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) (*NTEU II*), undermines this Court's holding that the CSRA does not preclude jurisdiction, they would be wrong for several reasons. First, as discussed, a majority of the D.C. Circuit already said this Court should determine for itself the propriety of ordering personnel actions in service of enforcing prong (3) of the preliminary injunction.

Second, this case is not channeled for an additional reason not addressed by *NTEU* and recently adopted by the Fourth Circuit. The President's firing, without cause, of members of each CSRA administrative agency has collapsed any implication of jurisdiction-stripping that may have been discernible from the statutory scheme. *See Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 304 (4th Cir. 2025).

The CSRA's three administrative agencies carry out "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests" of federal employees with "the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). Congress created the agencies as wholly "independent of any control or direction by the President," S. Rep. No. 95-969, at 24 (1978), and thereby insulated from any appearance of bias that would attend the executive adjudicating its own employment disputes, *id*. at 6-7 (emphasizing need for "a strong and independent [MSPB] and Special Counsel"); *see also id*. at 7-8 (FLRA structure "will assure impartial adjudication of labor-management cases"). It therefore made the MSPB and FLRA members as well as the Special Counsel removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. §§§ 1202(d), 1211(b), 7104(b); *see also* H. Rep. 95-1403 (July 31, 1978) (Congress rejected President's proposal that FLRA members "serve at the pleasure of the President"). These guarantees of independence and impartiality at the administrative stage are important because judicial review of the agencies' decisions is deferential. *See* 5 U.S.C.A. § 7703(c). Prejudice from a partial administrative tribunal will not necessarily be rooted out before the Federal Circuit.

But shortly after taking office, President Trump fired members of all three bodies without cause. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025); *Dellinger v. Bessent*, --- F. Supp. 3d ----, 2025 WL 665041 (D.D.C. 2025); *Grundmann*, 770 F. Supp. 3d at 173. The remaining members,

10

and those appointed in the future, are on notice that they face removal, at any time, including for impartial rulings that contradict the Administration. A "bedrock principle" of the CSRA—federal employees' guarantee of an independent adjudicator—is gone. *Owen*, 139 F.4th at 307.

*Thunder Basin* is a doctrine of jurisdiction-stripping by implication. Each of the decisions finding that the CSRA strips federal-court jurisdiction over claims touching on federal employment have gleaned Congressional intent from an intact CSRA. Now the CSRA's central promise of unbiased review has been destroyed. Therefore, any implication that Congress intended to channel fundamental challenges to executive overreach—to the extent it ever existed—is gone with it.

**c.** In addition to the harm to the employee plaintiffs and their unions from these RIFs, multiple plaintiffs who have no relationship to federal employment will also be harmed by the RIFs and their effect on programming. The D.C. Circuit in *NTEU II* was clear that the CSRA channels only claims arising from the plaintiff's injury stemming from an employment dispute with the federal government. Third-party plaintiffs who "do not seek redress for employment-related injuries," but nonetheless are harmed by an agency's failure to perform its statutory functions are not channeled. *NTEU II*, No. 25-5091, 2025 WL 2371608, at *6. RSF and TNG-CWA specifically are listeners harmed by the silence of VOA. Although their injuries are compounded by VOA's decision to fire the majority of its staff, they do not directly stem from their own loss of federal employment, and therefore *NTEU II* dictates that they are properly in federal district court. Moreover, the RIFs threaten to upend VOA Director Michael Abramowitz's ability to lead VOA consistent with its statutory mandates. Just as this Court recently preserved the status quo by enjoining Defendants from unlawfully removing

Abramowitz, so too should it preserve his ability to meaningfully lead the agency, a harm disconnected from federal employment.

**d.** Finally, because Defendants have purported to cancel AFGE and AFSCME's collective bargaining agreements with the Agency, the unions no longer have available to them the option to file a grievance under those CBAs or engage in any related proceedings before the FLRA. The Executive Order purports to exclude USAGM from coverage under Chapter 71 of Title 5 of the U.S. Code altogether. The FLRA has held that it lacks jurisdiction to hear cases when such an exclusion occurs. *U.S. Att'ys Off. S. Dist. of Texas & AFGE Loc. 3966*, 57 FLRA 750 (2002). As such, this Court is the proper forum. *See Fed. Educ. Ass'n v. Trump*, No. CV 25-1362, 2025 WL 2355747, at *5 (D.D.C. Aug. 14, 2025) (finding no channeling where agency has been excluded from Chapter 71); *AFGE Local 446 v. Nicholson*, 475 F.3d 341, 347-48 (D.C. Cir. 2007) (district court had jurisdiction because the challenged action was "expressly outside the FLRA's purview" and the union is "presumptively entitled to judicial review of its claim").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court temporarily enjoin the reduction in force implemented on August 29, in service of enforcing its prior preliminary injunction order, to preserve the status quo until the open question of Defendants' compliance is resolved.

Dated: Septembner 8, 2025

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

_____/s/_____

William B. Schultz
Margaret M. Dotzel
Brian J. Beaton, Jr.
Jacobus P. van der Ven
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
wschultz@zuckerman.com
mdotzel@zuckerman.com
cvanderven@zuckerman.com
bbeaton@zuckerman.com

*Counsel for Plaintiffs Michael Abramowitz,*
*Anthony LaBruto, and J Doe 2*

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO (AFSCME)

_____/s/_____

Teague Paterson
Matthew Blumin
Georgina Yeomans
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for Plaintiff American Federation of*
*State, County, and Municipal Employees,*
*AFL-CIO (AFSCME)*

_____/s/_____

Andrew G. Celli, Jr.
Debra L. Greenberger
Daniel M. Eisenberg
Nick Bourland
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
dgreenberger@ecbawm.com
deisenberg@ecbawm.com
nbourland@ecbawm.com

*Counsel for Plaintiffs Patsy Widakuswara,*
*Jessica Jerreat, Kathryn Neeper, John Doe 1,*
*John Doe 2, John Doe 3, John Doe 4, American*
*Federation of State, County and Municipal*
*Employees (AFSCME); American Federation of*
*Government Employees (AFGE); American*
*Foreign Service Association (AFSA); and the*
*NewsGuild-CWA*

GOVERNMENT ACCOUNTABILITY
PROJECT

_____/s/_____

David Z. Seide
1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

*Counsel for Plaintiffs Patsy Widakuswara,*
*Jessica Jerreat, Kathryn Neeper, John Doe 1,*
*John Doe 2, John Doe 3, and John Doe 4*

DEMOCRACY FORWARD FOUNDATION

_____/s/_____

Kristin Bateman*
Robin F. Thurston
Skye L. Perryman
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA);the NewsGuild-CWA*

*Admitted in California only; practicing under the supervision of District of Columbia Bar members

STATE DEMOCRACY DEFENDERS FUND

_____/s/_____

Norman L. Eisen
Joshua Kolb
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Norman@statedemocracydefenders.org
Joshua@statedemocracydefenders.org

*Counsel for Reporters Sans Frontières, Reporters Without Borders, Inc., American Federation of State, County and Municipal Employees (AFSCME); and American Federation of Government Employees (AFGE)*

AMERICAN FOREIGN SERVICE ASSOCIATION

_____/s/_____

Sharon Papp
Raeka Safai
2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Counsel for Plaintiff American Foreign Service Association (AFSA)*

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

_____/s/_____

Rushab Sanghvi
80 F. Street, NW
Washington, DC 20001
(202) 639-6424
SanghR@afge.org

*Counsel for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

MEDIA FREEDOM & INFORMATION
ACCESS CLINIC - YALE LAW SCHOOL**

_____/s/_____
David A. Schulz
127 Wall Street
New Haven, CT 06520
tobin.raju@YLSClinics.org
David.schulz@YLSClinics.org

*Counsel for Plaintiffs Patsy Widakuswara,
Jessica Jerreat, Kathryn Neeper, and John
Does 1-4*

** The views expressed herein do not purport to
represent the institutional views of Yale Law
School, if any.