UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>KARI LAKE, et al.,<br><br>        Defendants. | Civil Action No. 25-0887 (RCL) |
| PATSY WIDAKUSWARA, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>KARI LAKE, et al.,<br><br>        Defendants. | Civil Action No. 25-1015 (RCL) |

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFFS' PARTIAL MOTION
FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Introduction ..................................................................................................................... 1

Background ...................................................................................................................... 2

    I.      Statutory Background ............................................................................ 2

    II.    Factual and Procedural Background ................................................... 3

        A.    Plaintiffs Pleadings. ............................................................... 3

        B.    The Preliminary Injunction. ................................................. 4

        C.    Appeal. ..................................................................................... 4

        D.    Enforcement Proceedings. .................................................... 5

        E.    Dispositive Motions .............................................................. 7

Legal Standards ............................................................................................................... 7

Argument ......................................................................................................................... 8

    I.      This Court Lacks Jurisdiction Over Plaintiffs' Claims. ................. 8

        A.    Plaintiffs Must Pursue Their Employment Claims Through the Statutory Scheme Established. ................................. 8

        B.    *Abramowitz* Plaintiffs LaBruto and John Does 2, *Widakuswara* Plaintiffs 3 and 4, and the Grant or Contract Cancellations or Termination Claims Must Be Brought in the Court of Federal Claims. ................................... 17

    II.    Dismissal is Warranted Because Plaintiffs Do Not Have Standing to Receive the Broad Relief They Seek. ....................................................... 19

    III.   Claims Relating to Closure Not Ripe ............................................ 22

    IV.   Plaintiffs Are Not Entitled to Judgment as a Matter of Law on their APA Claim. ..................................................................................................... 23

        A.    Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete Final Agency Action ........................................ 23

        B.    Plaintiffs Are Not Entitled to Judgment as a Matter of Law Because There Are Adequate Alternative Remedies Available. ....................................... 31

        C.    Defendants' Actions Are Committed to Agency Discretion by Law. ...... 32

        D.    Plaintiffs Have Failed to Demonstrate that Defendants Have Unlawfully Withhed Required Agency Action Under the APA. ................................. 33

    V.     Vacatur is Not Appropriate Under the APA. ................................. 36

    VI.   Any Relief Should Be Narrowly Tailored. .................................... 38

    III.   The Court Should Deny Plaintiffs' Request That the Court Consider Extra-Record Evidence as Part of Its Review. ........................................................... 41

Conclusion ..................................................................................................................... 43

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page**

*Alabama- Coushatta Tribe of Tex. v. United States,*
    757 F.3d 484 (5th Cir. 2014) ............................................................. 24

*Alberts v. HCA Inc.,*
    405 B.R. 498 (D.D.C. 2009) ............................................................. 41

*Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.,*
    Civ. A. No. 25-1923 (JMC), 2025 WL 2615054 (D.D.C. Sept. 10, 2025) ...................... 18-19

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
    929 F.3d 748 (D.C. Cir. 2019) ............................................................. 9

*Am. Library Ass'n v. Sonderling,*
    Civ. A. No. 25-1050 (RJL), 2025 WL 1615771 (D.D.C. June 6, 2025) ....................... 19

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................. 8

*Anglers Conservation Network v. Pritzker,*
    809 F.3d 664 (D.C. Cir. 2016) ............................................................. 33

*Animal Legal Defense Fund v. Perdue,*
    872 F.3d 602 (D.C. Cir. 2017) ............................................................. 42

*Asante v. Azar,*
    436 F. Supp. 3d 215 (D.D.C. 2020) ............................................................. 22

*Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon,*
    Civ. A. No. 25-0999 (TNM), 2025 WL 1568301 (D.D.C. June 3, 2025) ............................ 15

*Baker v. Carr,*
    369 U.S. 186 (1962) ............................................................. 16

*Bennett v. Spear,*
    520 U.S. 154 (1997) ............................................................. 31

*Biden v. Texas,*
    597 U.S. 785 (2022) ............................................................. 26, 27, 29

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ............................................................. 31

*California v. Texas,*
    593 U.S. 659 (2021) ............................................................. 38

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................. 8

*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013) ........................................................................................... 20

*Cobell v. Kempthorne*,
455 F.3d 301 (D.C. Cir. 2006) ..................................................................... 24, 25

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) ........................................................................ 34

*Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*,
Civ. A. No. 20-0103 (RDM), 2020 WL 5642287 (D.D.C. Sept. 22, 2020) ......... 42

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019) ........................................................................................... 30

*Dep't of Ed. v. California*,
604 U.S. 650 (2025) ..................................................................................... 16, 18

*Doran v. Salem Inn, Inc.*,
422 U.S. 922 (1975) ..................................................................................... 36, 39

*Egbert v. Boule*,
596 U.S. 482 (2022) ........................................................................................... 17

*Elgin v. Dep't of the Treasury*,
567 U.S. 1 (2012) ........................................................................................... 9, 10

*Ellipso, Inc. v. Mann*,
460 F. Supp. 2d 99 (D.D.C. 2006) ..................................................................... 41

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP*,
905 F. Supp. 2d 150 (D.D.C. 2012) ................................................................... 41

*FDA v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024) ........................................................................................... 20

*Franks v. Salazar*,
751 F. Supp. 2d 62 (D.D.C. 2010) ..................................................................... 42

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ........................................................................... 31

*Gill v. Whitford*,
585 U.S. 48 (2018) ....................................................................................... 22, 39

*Grosdidier v. Broad. Bd. of Governors*,
709 F.3d 19 (D.C. Cir. 2013) ............................................................................... 8

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) ................................................................. 16, 17

*Harkrader v. Wadley*,
   172 U.S. 148 (1898) ................................................................. 16

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................. 33

*Hernandez v. Pritzker*,
   741 F.3d 129 (D.C. Cir. 2013) ................................................ 8

*Hill Dermaceuticals, Inc. v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013) .................................................. 31

*Holcomb v. Powell*,
   433 F.3d 889 (D.C. Cir. 2006) ................................................ 8

*Holman v. First Am. Title Ins. Co.*,
   Civ. A. No. 24-2311 (JMC), 2025 WL 3467628 (D.D.C. Dec. 3, 2025) ............................. 14

*In re Bluewater Network*,
   234 F.3d 1305 (D.C. Cir. 2000) .............................................. 34

*In re Core Commc'ns, Inc.*,
   531 F.3d 849 (D.C. Cir. 2008) ................................................ 33, 34

*In re Sawyer*,
   124 U.S. 200 (1888) ................................................................. 16

*Lampon-Paz v. OPM*,
   732 F. App'x 158 (3d Cir. 2018) ........................................... 10

*Laningham v. Dep't of Navy*,
   813 F.2d 1236 (D.C. Cir. 1987) .............................................. 8

*Laurel Baye Healthcare of Lake Lanier, Inc. v. Nat'l Lab. Rels. Bd.*,
   564 F.3d 469 (D.C. Cir. 2009) ................................................ 12

*Louisiana v. Biden*,
   622 F. Supp. 3d 267 (W.D. La. 2022) ................................... 26

*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992) ................................................................. 20

*Lujan v. Nat'l Wildlife Fed.*,
   497 U.S. 871 (1990) ................................................................. 24, 26

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ................................................................. 38

*Maryland v. Dep't of Agric.*,
No. 25-1338, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) ...................................................... 15

*McMahon v. New York*,
145 S. Ct. 2643 (2025) ........................................................................................... 15, 17, 18

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........................................................................................................... 19, 39

*National Association of Immigration Judges v. Owen*,
139 F.4th 293 (4th Cir. 2025) ....................................................................................... 11, 12

*National Institutes of Health v. American Public Health Association*
145 S. Ct. 2658 (2025) ....................................................................................................... 18

*Nat'l Treasury Emps. Union v. Vought*,
149 F.4th 762 (D.C. Cir. 2025) ........................................................................................ 12

*Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*,
435 F.3d 326 (D.C. Cir. 2006) .......................................................................................... 38

*New Mexico v. Musk*,
769 F. Supp. 3d 1 (D.D.C. 2025) ...................................................................................... 39

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .............................................................................................. 24, 26, 35

*Oceana, Inc. v. Locke*,
674 F. Supp. 2d 39 (D.D.C. 2009) .................................................................................... 42

*Oceana, Inc. v. Ross*,
290 F. Supp. 3d 73 (D.D.C. 2018) .................................................................................... 30

*Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*,
145 S. Ct. 1914 (2025) ...................................................................................................... 15

*Perry Cap. LLC v. Mnuchin*,
864 F.3d 591 (D.C. Cir. 2017) .......................................................................................... 31

*Raines v. Byrd*,
521 U.S. 811 (1997) ........................................................................................................... 21

*Sampson v. Murray*,
415 U.S. 61 (1974) ............................................................................................................. 16

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991) ............................................................................................ 10

*Scott v. Harris*,
550 U.S. 372 (2007) ............................................................................................................. 8

*Spokeo v. Robins*,
    578 U.S. 330 (2016) ................................................................. 21

*State of Maryland v. United States Dep't of Agric.*,
    151 F.4th 197 (4th Cir. 2025) ................................................. 13, 15, 39

*Steele v. United States*,
    Civ. A. No. 14-1523 (RCL), 2023 WL 6215790 (D.D.C. Sept. 25, 2023) ........... 41

*Steenholdt v. FAA*,
    314 F.3d 633 (D.C. Cir. 2003) .................................................. 32

*Tex. Rural Legal Aidv. Legal Servs. Corp.*,
    940 F.2d 685 (D.C. Cir. 1991)) ................................................ 30

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ........................................................... 37

*U.S. Chamber of Com. v. EPA*,
    642 F.3d 192 (D.C. Cir. 2011) ................................................. 38

*U.S. Conf. of Cath. Bishops v. Dept of State*,
    770 F. Supp. 3d 155 (D.D.C. 2025) ............................................ 19

*United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
    456 F. Supp. 2d 46 (D.D.C. 2006) ............................................. 41

*United States Sugar Corp. v. EPA*,
    830 F.3d 579 (D.C. Cir. 2016) ................................................ 33

*United States v. Fausto*,
    484 U.S. 439 (1988) ......................................................... 9, 13

*United States v. Texas*,
    599 U.S. 670 (2023) ......................................................... 36, 37

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) .......................................................... 22

*Veit v. Heckler*,
    746 F.2d 508 (9th Cir. 1984) ................................................. 10

*Vera Inst. of Just. v. Dep't of Just.*,
    Civ. A. No. 25-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025) ............ 19

*Versata Dev. Corp. v. Rea*,
    959 F. Supp. 2d 912 (E.D. Va. 2013) .......................................... 31

*Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*,
    714 F.3d 186 (4th Cir. 2013) ................................................. 24

*Walden v. Patient-Centered Outcomes Rsch. Inst.*,
    304 F. Supp. 3d 123 (D.D.C. 2018) ................................................................ 8, 9

*Walton v. House of Representatives*,
    265 U.S. 487 (1924) ......................................................................................... 16

*Webster v. Doe*,
    486 U.S. 592 (1988) ......................................................................................... 32

*White v. Berry*,
    171 U.S. 366 (1898) ......................................................................................... 16

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ............................. 4, 11

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) ....................... 4-5, 5, 6

*Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (quotation omitted); *see also Tex. Rural Legal Aidv. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)

## <u>Statutes, Rules, Regulations, and Other Authorities</u>

5 C.F.R. § 351.901 ................................................................................................ 10
5 U.S.C. § 551 ................................................................................................ 27, 28
5 U.S.C. § 701 ........................................................................................................ 32
5 U.S.C. § 702 ........................................................................................................ 16
5 U.S.C. § 704 ........................................................................................................ 31
5 U.S.C. § 706 .................................................................................. 16, 33, 34, 42
5 U.S.C. § 7701 ...................................................................................................... 10
22 U.S.C. § 6202 ............................................................................................... 4, 34
22 U.S.C. § 6203 .................................................................................................... 28
22 U.S.C. § 6204 ................................................................................................. 3 32
22 U.S.C. § 6208a. .................................................................................................. 2
28 U.S.C. 1491 ....................................................................................................... 17
Fed. R. Civ. P. 1 ..................................................................................................... 24
Fed. R. Civ. P. 56 .............................................................................................. 1, 2, 7-8
LCvR 7 ............................................................................................... 1, 23, 29, 41

Defendants, by and through their counsel, respectfully partially cross-move for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 in this action and oppose the partial motion for summary judgment filed by Plaintiffs (*see Widakuswara*, ECF No. 166)[1] pertaining to their claims purportedly brought under the Administrative Procedure Act ("APA").[2]

## INTRODUCTION

This motion addresses the jurisdictional issues and the threshold deficiencies of Plaintiffs' APA claims. Plaintiffs continuously seek to micromanage U.S. Agency for Global Media ("Global Media") and its subcomponent Voice of America, including controlling day-to-day operations and personnel decisions. Plaintiffs ask this Court to engage in judicial review that would eliminate the discretion entrusted to Global Media to run its day-to-day operations, which the Court should deny.

As set forth below, Plaintiffs do not have Article III standing to receive the broad relief requested, and any contract, grant, or lease agreement cancellations or terminations claims must be brought under the Tucker Act in the Court of Federal Claims. Further, Plaintiffs fail to challenge any discrete final agency action under the APA, have other adequate alternative remedies which forecloses relief under the APA, and fail to demonstrate that Defendants are unlawfully withholding required agency action.

Accordingly, pursuant to Rule 56, the Court should grant summary judgment in favor of Defendants on Count 1 in *Abramowitz v. Lake*, Civil Action No. 25-0887, and on Counts 5 and 6 in *Widakuswara v. Lake*, Civil Action No. 25-1015.

---

[1]    Because of the filings are substantially similar or the same in both matters, Defendants primarily cite to the *Widakuswara* docket unless citing to *Abramowitz* docket is warranted.

[2]    Defendants' motions to dismiss and motions for relief from Local Rule 7(n)(1) are fully briefed and ripe for a decision.

## BACKGROUND[3]

### I.    Statutory Background

The mission of United States Agency for Global Media is to inform, engage, and connect people around the world in support of freedom and democracy. *See* https://www.usagm.gov/whowe-are/mission/. In furtherance of that mission, Global Media oversees multiple entities, including Voice of America. *See id.*; *see also* 22 U.S.C. § 6208a. To effectuate its oversight authority, Congress granted Global Media's CEO the authority to, among other things: "direct and supervise all broadcasting activities conducted" by such entities; "review and evaluate the mission and operation of, and to assess the quality, effectiveness, and professional integrity of, all such [entities'] activities within the context of the broad foreign policy objectives of the United States"; and "[t]o undertake such studies as may be necessary to identify areas in which broadcasting activities under its authority could be made more efficient and economical." 22 U.S.C. §§ 6204(a)1, (a)(2), (a)(8). Among other requirements, Congress directed that all government-funded and operated international broadcasts under the Global Media umbrella "shall" be "consistent with the broad foreign policy objectives of the United States," and "shall include" "a balanced and comprehensive projection of United States thoughts and institutions." Id. § 6202(a)(1), (b)(2); *see also id.* § 6202(c)(2) (same for Voice of America broadcasts).

In December 2016, Congress passed, and then-President Obama signed, the 2017 National Defense Authorization Act, which established the basics of Global Media's current governing structure. National Defense Authorization Act of 2017, Pub. L. 114-328, 130 Stat. 2000, 2549, § 1288. That law restructured governance of the Global Media broadcast networks by dissolving

---

[3]    Additional information regarding the background information for these actions can be found in Defendants' pending motion to dismiss.

a governing board structure and centralizing control in a single CEO. 22 U.S.C. §§ 6203, 6204(a)(1), (b). Congress vested the CEO with the many powers previously held by the board, including to "ensure" broadcast activities are consistent with the standards Congress established, including that they be "balanced and comprehensive," *id.* §§ 6204(a)(3), 6202(b)(2), and to "appoint such personnel for the [CEO] as the [CEO] may determine to be necessary." *Id.* § 6204(a)(11). In accordance with the statute, the CEO of Global Media holds broad supervisory authority. 22 U.S.C. § 6204(a)

**II.    Factual and Procedural Background**

    **A.    Plaintiffs Pleadings.**

In *Abramowitz*, the Plaintiffs are Michael Abramowitz, the former Director of Voice of America, Anthony LaBruto, a journalist in the English to Africa Service in the Africa Division of Voice of America, and one "J. Doe" journalist operating under a personal services contract with Voice of America. *See generally Abramowitz*, Compl., ECF No. 1. The *Abramowitz* Plaintiffs chiefly rely on the APA (Count I), separation of powers principles (Count II), Article II's Take Care Clause (Count III), and an argument that Defendants' actions are *ultra vires* (Count IV). *Id.*

In *Widakuswara*, Plaintiffs are Patsy Widakuswara, the Voice of America White House Bureau Chief, Jessica Jerreat, the Voice of America Press Freedom Editor, Kathryn Neeper, the Director of Strategy and Performance Assessment at Global Media, "John Doe 1" and "John Doe 2" are journalist and "full-time equivalent federal employees," "John Doe 3" and "John Doe 4" are independent freelance journalist and were previously operating under a contract with Voice of America, and the remainder of the plaintiffs are organizations, including Reporters Sans Frontieres, Reporters Without Borders, Inc., American Federation of State, County and Municipal Employees, American Federation of Government Employees, American Foreign Service Association, and NewGuild-CWA. *See generally Widakuswara*, Compl., ECF No. 1. The

*Widakuswara* Complaint asserts nine counts, which consist of claims pertaining to purported violations of the First Amendment, the APA, and the statutory firewall, claims brought under the Mandamus Act and the Writs Act, and an *ultra vires* claim. *Id.*

### B.    The Preliminary Injunction.

After the filing of their Complaints, Plaintiffs subsequently moved for preliminary injunction and then the Court entered a preliminary injunction, *see Widakuswara*, Mem. Op. and Order, ECF Nos. 98, 99.  The injunction ordered Defendants, including Global Media, to do three things. *First*, the Court ordered the return of Global Media employees and contractors to their status prior to the Executive Order. *Id.*, Mem. Op. at 36, ECF No. 98.  *Second*, the Court ordered Defendants to restore the FY 2025 grants with Global Media Networks Radio Free Asia and Middle East Broadcasting Networks, and to provide monthly status reports showing disbursement of appropriated funds.[4] *Id. Third*, the Court ordered Defendants to "restore [Voice of America] programming such that [Global Media] fulfills its statutory mandate that [Voice of America] 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)." *Id.*

### C.    Appeal.

Defendants filed a notice of interlocutory appeal in both matters, and moved for an emergency stay in the D.C. Circuit case, *see* Aplts. Mot. (Apr. 25, 2025), *Widakuswara*, No. 25-5144 (D.C. Cir.). The D.C. Circuit granted the emergency motion to stay on May 3, 2025. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *6 (D.C. Cir. May 3, 2025). Provision (1) of the Court's April 22, 2025, preliminary injunction remains stayed pending the D.C. Circuit's resolution of the merits of Defendants' appeal. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL

---

[4]    The grantee organizations also brought a separate set of lawsuits that resulted in a separate set of preliminary injunctions, are not at issue in these actions.

1521355, at *1 (D.C. Cir. May 28, 2025). Briefing before the D.C. Circuit concluded on July 31, 2025, and oral argument was held on September 22, 2025, *see* Doc. #2136163, *Widakuswara*, No. 25-5144 (D.C. Cir.).

### D.    Enforcement Proceedings.

During the pendency of the appeal as to the first two prongs of the injunction, Plaintiffs filed various motions for orders to show cause and to enforce relating to prong (3) of the preliminary injunction. In response, this Court has set hearings, ordered additional filings from Defendants, allowed limited discovery, and granted additional relief for Plaintiffs. *See Widakuswara*, Pls. Motion for Order to Show Cause, ECF No. 112; June 23, 2025, Min. Entry (hearing held); *id.*, June 23, 2025, Order, ECF No. 121 (ordering government to file a supplemental memorandum); *id.*, July 18, 2025, Order, ECF No. 126 (ordering government to file a second supplemental memorandum); *id.*, July 30, 3035, Mem. Order, ECF No. 130  (granting motions for an order to show cause and ordering government to file a response); *id.*, Aug. 18, 2025, Min. Order (setting hearing on order to show cause); *id.*, Aug. 25, 2025, Min. Entry (hearing held); *id.*, Aug. 25, 2025, Order, ECF No. 137 (ordering depositions of Kari Lake, Frank Wuco, and Leili Soltani on compliance issues); *id.*, Pls. Mot. to Enforce Prelim. Inj., ECF No. 144; *id.*, Sept. 29, 2025, Min. Entry (hearing held).

From Defendants' perspective, the situation at Voice of America has changed dramatically since the filings of Plaintiffs' Complaints in March 2025, and indeed Defendants maintain that they have restored Voice of America programming consistent with its statutory mandate. *See Widakuswara*, Defs. Reponses, ECF Nos. 117, 123, 127, 134, 141. Although Voice of America's programming may not reflect the priorities of prior administrations that exceeded the base statutory requirements, the agency is undertaking meaningful and serious efforts to satisfy its statutory mandate. Among other things, Voice of America has resumed multi-spectral radio broadcasting in

Dari and Pashto, television in Farsi, and is producing written and digital content in Dari, Pashto, Farsi, and Mandarin. *Id.*, Sept. 8, 2025, Wuco Decl. ¶ 6, ECF No. 153-1. Voice of America is producing daily web stories and Global Media has restored a robust editorial service. *Id.*, Defs. Opp. at 4, ECF No. 117; *id.*, Defs. Response to Order of Court at 2–3, ECF No. 123. Voice of America has resumed radio transmission to Afghanistan.  *Id.*, Defs. Opp. at 6–7, ECF No. 117. Significant to ongoing efforts across the Global Media enterprise, the Office of Cuba Broadcasting has also resumed shortwave radio broadcasts from the Edward R. Murrow Shortwave Transmitting Station, covering Cuba, Latin America, and the Caribbean. *Id.*, June 27, 2025, Wuco Decl. ¶ 19, ECF No. 123-1. To this end, Defendants have restored affiliate broadcasting from 44 radio stations across Latin America to carry news specific to the Cuba influence bloc, to include Venezuela and Nicaragua. *Id.*, Dec. 8, 2025, Wuco Decl. ¶ 3.4, ECF No. 174-1. Global Media is working to restore Russian-language broadcasting, into Russia, respectively. *Id.*, Defs. Opp. at 5, ECF No. 153; *Id.*, Defs. Notice at 3, ECF No. 141; *id.*, Dec. 8, 2025, Wuco Decl. ¶ 7, ECF No. 174-1; *id.*, Jan. 2, 2026, Wuco Decl. ¶ 6, ECF No. 185-1. Similarly, Global Media is also taking steps to resume Kurdish programming. *See* Dec. 8, 2025, Wuco Decl. ¶ 7, ECF No. 174-1. Global Media plans to broadcast in two Kurdish dialects: Kurmanji and Sorani. Traditional (terrestrial) radio broadcasts will be news-centric, with textual products and additional content being posted on digital platforms, complemented with videos and graphics related to the subject matter. *Id*. Global Media is still developing the staffing plan needed in order to resume Kurdish language broadcasting, but tentatively, the Agency expects to require eight to nine individuals to carry out this programming. *Id*. On December 8, 2025, Global Media notified Congress that it is resuming Kurdish language broadcasting. *Id*. The agency has also resumed Korean-language broadcasting and PBS-BBS Radyo Pilipinas World Service shortwave broadcast operations using the facilities of the

Philippines Transmitting Station in Tinang, Tarlac. *Id.*, Dec. 8, 2025, Wuco Decl. ¶¶ 6, 8.a, ECF No. 174-1.

### E.    Dispositive Motions

In both actions, Defendants moved to dismiss Plaintiffs' Complaints in their entirety. *See generally Widakuswara*, Defs. Mot. to Dismiss, ECF No. 128; *Abramowitz*, Defs. Mot. to Dismiss, ECF No. 58. Specifically, Defendants argued that the Court should dismiss Plaintiffs' Complaints, including Count 1 in Civil Action No. 25-0887, and on Counts 5 and 6 in Civil Action No. 25-1015 (Plaintiffs' APA claims), on numerous grounds, including, but not limited to that this Court lacks jurisdiction over Plaintiffs' claims, and Plaintiffs fail to challenge any discrete agency action under the APA and have other adequate alternative remedies, which forecloses relief under the APA. *Id.* Defendants' motions to dismiss are fully briefed and waiting on ruling from the Court.

Even though Defendants' motion to dismiss raises jurisdictional and threshold APA issues and the D.C. Circuit has not issued a decision on the jurisdictional matters, Plaintiffs moved for partial summary judgment only on their APA claims. *See* Pls. Partial Mot. for Summ. Judg. ("Pls. Partial Mot."), ECF No. 166.[5] Defendants now oppose Plaintiffs' partial motion for summary judgment and cross-move for partial summary judgment.

## LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[5]    Plaintiff Abramowitz has already moved for partial summary judgment on Count I, *see generally Abramowitz*, Pl. Partial Mot. for Summ. Judg., ECF No. 59, and the Court granted Plaintiff Abramowitz's motion, *see id.*, Mem. Op. and Order, ECF Nos. 75, 76. Plaintiff Abramowitz now attempts to move again on the same exact count. Plaintiffs attempt to engage in piecemeal litigation and such litigation choices should be discouraged because it not only burdens the Court and the parties but also promotes judicial inefficiency.

56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Anderson*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Under Rule 56, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party must, to defeat the motion, designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Though courts must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" her position—there "must be evidence on which the jury could reasonably find for" the non-movant. *Anderson*, 477 U.S. at 252. Furthermore, the nonmoving party "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. Dep't of Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal citation and quotation marks omitted). This must be admissible evidence. *Hernandez v. Pritzker*, 741 F.3d 129, 134 (D.C. Cir. 2013); *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 304 F. Supp. 3d 123, 142–43 (D.D.C. 2018).

## ARGUMENT

I.    <u>**This Court Lacks Jurisdiction Over Plaintiffs' Claims.**</u>

   A. **Plaintiffs Must Pursue Their Employment Claims Through the Statutory Scheme Established.**

Plaintiffs' challenge the Defendants' employment actions. *See, e.g.*, *Widakuswara*, Compl., ECF No. 1 ¶ 42 ("Plaintiffs Widakuswara, Jerreat, and John Does 1-4 [] are journalists—

some full-time employees, others independent contractors [] of [Global Media]—whom Defendants have purged from their positions by placing them on indefinite administrative leave ahead of likely [RIF]terminations or cancelling their contracts."); *id.*, Pls. Partial Mot. at 22, ECF No. 166-1 (identifying alleged individually actions including "[p]lacing 1,042 of the agency's 1,147 full-time employees on administrative leave on March 15" and "[t]erminating most of [Global Media] staff, including [Voice of America] radio broadcast technicians, which Defendants proposed to do on March 25"); *Abramowitz*, Compl., ECF No. No. 1, Prayer for Relief ¶ (c) (plaintiffs ask the Court to order Defendants to "cancel the termination of personal services contracts with approximately 500 employees" and "restore [Voice of America's] personnel and operating capacities such that the entities may continue their broadcasting activities at the level before the above actions were taken." Federal law, however, does not permit Plaintiffs to employ an APA action to challenge the removal of federal employees—much less the removal of third-party employees.

Specifically, in passing the CSRA, Congress made the Office of Special Counsel, the Merit Systems Protection Board ("MSPB"), and the Federal Labor Relations Authority the exclusive means for federal employees, applicants, labor unions and other interested parties to raise challenges to final, non-discrimination-related, adverse employment actions, *see United States v. Fausto*, 484 U.S. 439, 455 (1988), even when those disputes involve constitutional claims, *see Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–15 (2012) (citation omitted); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019). The Supreme Court has long recognized that Congress established the CSRA as a comprehensive scheme covering all matters involving federal employment. *See Fausto*, 484 U.S. at 455. Indeed, the Supreme Court has held that, even if a federal employee was raising constitutional claims, the CSRA imposes an

"implied preclusion of district court jurisdiction[.]" *Elgin*, 567 U.S. at 12. The CSRA thus "precludes courts from providing supplemental remedies." *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018); *Saul v. United States*, 928 F.2d 829, 835–42 (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir. 1984). The CSRA permits federal employees to seek review of adverse personnel actions in the Merit Systems Protection Board (MSPB), which may grant relief including reinstatement, backpay, and attorney's fees. *See* 5 U.S.C. §§ 7701(a), 1204(a)(2), 7701(g); 5 C.F.R. § 351.901.

The parties have rehashed these arguments, and Defendants incorporate the arguments in their motion to dismiss and reply as though fully stated herein, relating to this Court lacking jurisdiction over Global Media's personnel decisions, including, but not limited to, terminations, reductions in force, and staffing levels. *See, e.g.*, *Widakuswara*, Defs. Mot. to Dismiss at 11–19, ECF No. 128; *id.*, Defs. Reply at 2–7, ECF No. 148. Plaintiffs continue to argue that Defendants are wrong on the jurisdictional issues, *see id.*, Pls. Partial Mot. at 36–42, ECF No. 166-1, but the D.C. Circuit already has spoken on this issue:

> We have long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions . . . Congress has instead established comprehensive statutory schemes for adjudicating employment disputes with the federal government . . . Federal employees may not circumvent [the requisite statutes'] requirement and limitations by resorting to the catchall APA to challenge agency employment actions . . . [W]hile [Global Media's] employees and contractors might have viable, discrete claims with respect to their individual personnel actions, those claims must be pursued through other remedial channels.

*Widakuswara*, 2025 WL 1288817, at *2. The D.C. Circuit stayed prong (1) of the Court's April 22, 2025, preliminary injunction, writing that, "[t]he district court likely lacked jurisdiction over

[Global Media's] personnel actions." *Id.* at * 2. Even if this Court were to conclude that the D.C. Circuit's statements do not conclusively resolve the very specific issue presented in Plaintiffs' motion, this Court should follow the D.C. Circuit's persuasive analysis in *Widakuswara*, 2025 WL 1288817, at *2, for the proposition that Plaintiffs here must pursue their personnel-related claims through the requisite statutory schemes, including the CSRA.

Plaintiffs, however, argue that their claims are not channeled through the CSRA and rely on a Fourth Circuit case, *National Association of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025). Specifically, Plaintiffs argue that their claims are not subject to channeling because "[t]his year the CSRA's central promise of unbiased review has been destroyed by the President's firing, without cause, of members of each CSRA administrative agency. *Widakuswara*, Pls. Partial Mot. at 37, ECF No. 166-1 (citing *Owen*, 139 F.4th at 304). As an initial matter, *Owen* is an out-of-circuit decision and not dispositive of the issue. *See Laurel Baye Healthcare of Lake Lanier, Inc. v. Nat'l Lab. Rels. Bd.*, 564 F.3d 469, 476 (D.C. Cir. 2009) ("We are bound only by the decisions of our circuit and the Supreme Court."). Moreover, even a persuasive out-of-circuit decision does not alter the D.C. Circuit's highly persuasive analysis for the proposition that Plaintiffs here must pursue their personnel-related claims through the requisite statutory schemes, including the CSRA.

In any event, when assessing whether the CSRA stripped the district court of jurisdiction, the Fourth Circuit remanded to the district court the first *Thunder Basin* inquiry—whether Congress's intent to preclude district-court jurisdiction is "fairly discernible in the statutory scheme." 139 F.4th at 303–04 (quoting *Thunder Basin*, 510 U.S. at 207). Plaintiffs conspicuously decline to acknowledge that *Owen* concluded that all three factors of *Thunder Basin*'s second step were met, meaning that the Fourth Circuit concluded that plaintiffs' claims—including their

- 11 -

constitutional ones—were just the type Congress intended to be reviewed within the CSRA's statutory structure. *Owen*, 139 F.4th at 308–13. And *Owen*'s reasoning is wrong on the merits. As this Court has pointed out, Plaintiffs' lack of "authority, binding or otherwise, compelling the conclusion that the lack of a quorum factors into the *Thunder Basin* analysis" is "notable," especially "given that the MSPB similarly lacked a quorum from 2017 to 2022." *Abramowitz v. Lake*, Civ. A. No. 25-0887 (RCL), 2025 WL 2480354, at *6 (D.D.C. Aug. 28, 2025).

Further, Plaintiffs contend that *Nat'l Treasury Employees Union* supports the ability of Reporters Sans Frontières and Reporters Without Borders, Inc. (the "RSF Plaintiffs") and The NewsGuild-CWA to seek a personnel-related injunction. *See id.* Not so. *Nat'l Treasury Employees Union*, 149 F.4th 762, 776 (D.C. Cir. 2025), *reh'g en banc granted, opinion vacated,* No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025), did not apply CSRA channeling with respect to plaintiffs not seeking "redress for employment-related injuries," but the relief Plaintiffs seek is undeniably based on injuries that would result from Defendants' employment decisions, *see Widakuswara*, Proposed Order, ECF 166-5 at 2–3 ( requesting that the Court vacate "Defendants' placement of nearly all employees on administrative leave, including individual Plaintiffs and employees represented by Union Plaintiffs named in these actions" and "Defendants' issuance of reduction-in-force notices to most of [Global Media] staff, including the RIF notices issued in August 2025," and order "[a]ll employees, including Plaintiffs named in these actions or employees represented by Union Plaintiffs named in these actions, on administrative leave, shall be offered the opportunity to return to work" and "[a]ll outstanding reduction-in-force notices issued to [Global Media] employees shall be rescinded"). The CSRA would be turned "upside down" if the RSF Plaintiffs and The NewsGuild-CWA could challenge these employment decisions in this Court. *Fausto*, 484 U.S. at 449. The "exclusion" of Plaintiffs who are not

individual government employees "from the provisions establishing administrative and judicial review for personnel action" of the type challenged here "prevents [them] from seeking review" under other provisions. *Id.* at 455; *cf. State of Maryland v. United States Dep't of Agric.*, 151 F.4th 197, 215 (4th Cir. 2025) ("[T]he federal court in this case lacked the affirmative power to manage the federal government's workforce at the behest of state governments … Given this comprehensive review system, which excludes the federal district courts and where terminated employees are directed to challenge their terminations and seek reinstatement, we are skeptical that the broad relief that the States sought in this case is available to them in a federal district court."). It would be odd if strangers to the employment relationship—the RSF Plaintiffs and The NewsGuild-CWA—could seek judicial review in this Court when the affected federal employees cannot. The Court should not accept this leapfrogging attempt.

Moreover, Plaintiffs argue that "Abramowitz also has not brought an employment claim. As Director of [Voice of America], he seeks to vindicate his statutory responsibility to lead an agency—an agency that has now been reduced to a shell of its rightful self. Through this lawsuit, he seeks to restore [Voice of America]'s functions to what they used to, and should, be." *Widakuswara*, Pls. Partial Mot. at 41–42, ECF No. 166-1. As a preliminary point, the Court should disregard or strike these arguments from the record.  Plaintiff Michael Abramowitz has already moved for partial summary judgment on Count I—explicitly challenging an employment decision no less—*see generally Abramowitz*, Pl. Partial Mot. for Summ. Judg. (ECF No. 59), the Court granted Plaintiff's motion, *see id.*, Mem. Op. and Order, ECF Nos. 75, 76, and the ruling is on appeal, *see Abramowitz v. Lake*, No. 25-5314 (D.C. Cir.).  "Because this claim is no longer before the Court, Plaintiff['s] partial motion for summary judgment on that same claim must be denied as moot. *Holman v. First Am. Title Ins. Co.*, Civ. A. No. 24-2311 (JMC), 2025 WL 3467628, at *4

(D.D.C. Dec. 3, 2025). Nevertheless, contrary to Plaintiffs' assertions, Congress has precluded district court jurisdiction for the claims brought by Plaintiff Abramowitz regarding his employment regarding being placed on administrative leave and complaints about Global Media personnel being placed on administrative leave or terminated. *See Abramowitz*, Defs. Mot. to Dismiss (ECF No. 58) at 10–16; *see also Abramowitz*, Defs. Reply (ECF No. 87) at 1–6. Also, as discussed further below, Plaintiffs challenge the agency's general re-structuring decisions, including staffing levels, and claim that those decisions potentially affect agency operations generally, but Plaintiffs have not identified a specific staffing decision that have resulted in concrete and particularized injury to a statutorily mandated program or services upon which Plaintiffs rely. *See, e.g.*, *infra* 19–22. Lastly, Plaintiffs argue that "Abramowitz is challenging Defendants' broad, unlawful attempts to wind down virtually all of [Voice of America]'s activities." *Widakuswara*, Pls. Partial Mot. at 42, ECF No. 166-1. But contrary to Plaintiffs' assertions, Voice of America is not closed, has employees to provide mission support, and is meeting its statutory obligations.

Numerous courts, including the Supreme Court, effectively allowed the challenged reductions in force to go forward or determined that employment claims are precluded, and this Court should follow suit. *See, e.g., McMahon v. New York*, 145 S. Ct. 2643 (2025) (staying a district court order that required the government to reinstate Department of Education employees fired as part of a reduction in force); *Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (2025) (staying a district court injunction ordering six departments and agencies to immediately offer reinstatement to over 16,000 employees who had been laid off); *see also Maryland v. Dep't of Agric.*, No. 25-1338, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025) ("The Government is likely to succeed in showing the district court lacked jurisdiction over Plaintiffs'

claims" challenging the "terminat[ion] [of] thousands of probationary federal employees"); *State of Maryland*, 151 F.4th 197 at 215 ("[T]he federal court in this case lacked the affirmative power to manage the federal government's workforce at the behest of state governments.")

Plaintiffs attempt to transform this Court into an ongoing monitor of personnel decisions and staffing levels, but "[j]udges were never meant to be czars overseeing the day-to-day affairs of agencies," *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, Civ. A. No. 25-0999 (TNM), 2025 WL 1568301, at *7 (D.D.C. June 3, 2025), and the Court should reject Plaintiffs' invitation to get deeply involved with Global Media's personnel decisions. Because federal law requires channeling of all claims related to federal employment via the administrative bodies that Congress created in the CSRA, this Court lacks jurisdiction to consider Plaintiffs' claims to the extent they challenge federal personnel decisions. Indeed, such a holding is consistent with the Supreme Court's emphasis in California that the APA does not allow litigants to forestall properly applicable channeling regimes that Congress established. *See Dep't of Ed. v. California*, 604 U.S. 650, 650 (2025).

Even if jurisdiction over such employment-related actions generally was not precluded, reinstatement is not an available remedy under the APA because it exceeds court's historical authority in equity. The APA authorizes a court to grant injunctive relief subject to traditional equitable limitations. *See* 5 U.S.C. § 702(1). Absent express statutory authority, a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement was not a traditionally available remedy at equity. *See Sampson v. Murray*, 415 U.S. 61, 83 (1974). To the contrary, courts of equity lacked "the power . . . to restrain by injunction the removal of a [public] officer." *In re Sawyer*, 124 U.S. 200, 212 (1888); *see, e.g., Baker v. Carr*,

369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction"); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the [g]overnment."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another." (citation omitted)).

The creation of new remedies is "a legislative endeavor," *Egbert v. Boule*, 596 U.S. 482, 491 (2022), and courts of equity lack "the power to create remedies previously unknown to equity jurisprudence," *Grupo Mexicano*, 527 U.S. at 332. Plaintiffs are not entitled to bring claims under the CSRA, nor did they follow CSRA-required procedures. More broadly, no statute authorizes courts to reinstate public employees to improve government services to third parties. This Court thus lacks the power to grant the reinstatement remedy here. Ultimately, any claim that Defendants have failed to take a discrete, mandatory agency action (such as the provision of concrete services) to which Plaintiffs believe they are legally entitled must be brought under the APA's provision authorizing suits to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Or should the Defendants fail to disburse funds that Plaintiffs believe the Defendants are obligated to pay, the parties to the contract could pursue remedies in the Court of Federal Claims under the Tucker Act, 28 U.S.C. 1491. Plaintiffs may not evade the limits on such actions by seeking mass reinstatement of the employees who may provide such services instead.

*See McMahon*, 145 S. Ct. at 2643 (granting stay of an order requiring re-instatement of 1,400 federal employees while the appellate court considers the government's channeling arguments).

    **B.** ***Abramowitz* Plaintiffs LaBruto and John Does 2, *Widakuswara* Plaintiffs 3 and 4, and the Grant or Contract Cancellations or Termination Claims Must Be Brought in the Court of Federal Claims.**

    Plaintiffs insist that Defendants have "cancelled contracts," including contracts with personal services contractors, *Widakuswara*, Pls. Partial Mot. at 17, 22, ECF No. 166-1. Plaintiffs ask this Court, amongst other things, to vacate "Defendants' cancellation of all contracts with personal services contractors, including individual plaintiffs named in these actions" (*id.*, Pls. Proposed Order, ECF No. 166-5 at 2) and order Defendants to "provide Plaintiffs and the Court with an inventory of all contracts and lease arrangements that have been terminated since March 15, 2025," (*id.* at 3) and "continue to make and supervise grants and allocate funds for international broadcasting to Radio Free Europe/Radio Liberty, Radio Free Asia, Radio Free Afghanistan and the Open Technology Fund," *id.*, Compl., ECF No. 1, Prayer for Relief ¶ a (ii). Plaintiffs seek to reverse canceled or terminated contracts, grants, and lease agreements with third parties and Global Media and obtain an order that requires Defendants to pay out money they claim is due under the unidentified agreements. Plaintiffs are not entitled to such relief.

    Not only have Plaintiffs failed to identify each specific canceled or terminated contract, grant, or lease agreement but also failed to demonstrate, as required, that each Plaintiff challenging the canceled or terminated contract, grant, or lease agreement has standing to bring such a claim. Nevertheless, putting that aside, as discussed in Defendants' motion to dismiss, this Court lacks jurisdiction over any claims challenging the cancellation of grant agreements or contracts. *See Widakuswara*, Defs. Mot. to Dismiss at 19–26, ECF No. 128; *Abramowitz*, Defs. Mot. to Dismiss at 16–21, ECF No. 58. Defendants incorporate the arguments raised in their motions to dismiss

and reply as though fully stated herein.  In sum, the Supreme Court and several judges in this district have confirmed that district courts lack jurisdiction under the APA "to enforce . . . contractual obligation[s] to pay money" against the federal government, *California*, 604 U.S. at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)), and Plaintiffs' claims are exactly those traditional contract claims that this Court is precluded from reviewing; thus, Plaintiffs' claims challenging "contract or grants cancellations" should be dismissed at the threshold. *See, e.g., California*, 604 U.S. at 651; *National Institutes of Health v. American Public Health Association* ("*APHA*"), 145 S. Ct. 2658 (2025); *Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*, Civ. A. No. 25-1923 (JMC), 2025 WL 2615054, at *2, 7–11 (D.D.C. Sept. 10, 2025) (denying preliminary injunction and "applying the D.C. Circuit's *Megapulse* test and the Supreme Court's [*California*] and *APHA* analysis, Plaintiffs' retrospective APA claims fall within the Court of Federal Claims' exclusive jurisdiction"); *Vera Inst. of Just. v. Dep't of Just.*, Civ. A. No. 25-1643 (APM), 2025 WL 1865160, at *13 (D.D.C. July 7, 2025), *appeal pending,* No. 25-5248 (D.C. Cir. filed July 10, 2025) (dismissing APA claims because they were essentially contractual); *Am. Library Ass'n v. Sonderling*, Civ. A. No. 25-1050 (RJL), 2025 WL 1615771, at *5–9 (D.D.C. June 6, 2025) (after granting TRO, denying preliminary injunction where plaintiffs alleged grant terminations, because *California* "cast[] doubt on district courts' jurisdiction to hear cases involving grant terminations"); *U.S. Conf. of Cath. Bishops v. Dept of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), *appeal dismissed*, No. 25-5066, 2025 WL 1350103 (D.D.C. May 2, 2025) (denying TRO after concluding that the court lacked the authority to "order the Government to pay money due on a contract").

- 18 -

## II.    Dismissal is Warranted Because Plaintiffs Do Not Have Standing to Receive the Broad Relief They Seek.

As an initial matter, Defendants have previously moved to dismiss Plaintiffs' claims because several of the Plaintiffs' lack organizational and associational standing. *Widakuswara*, Defs. Mot. to Dismiss at 7–11, ECF No. 128; *see also id.*, Defs. Reply at 1–2, ECF No. 148. Because the motion to dismiss is pending and ripe for a decision, to avoid unnecessary repetition, Defendants incorporate the arguments in their motion to dismiss and reply as though fully stated herein.   In addition to those pending standing arguments, as discussed further below, Plaintiffs lack standing to remedy any alleged injury stemming from Voice of America's and Global Media's re-structuring that is not otherwise linked to a concrete and particularized injury to a named party.

Here, Plaintiffs challenges to not only several unidentified canceled or terminated contracts, grants, lease agreements, and employment actions, but also programmatic, structural, and policy changes at Voice of America and Global Media. *See generally Widakuswara* and *Abramowitz*, Compls., ECF No. 1; *Widakuswara*, Pls. Partial Mot., ECF No. 166-1. Plaintiffs, however, lack standing to categorically enjoin Defendants' restructuring decisions. Plaintiffs lack the "irreducible constitutional minimum of standing" required to maintain a suit for the sweeping relief that they seek. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). To meet that constitutional requirement, Plaintiffs must establish that they "[have] suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). The Supreme Court has emphasized that "standing is not dispensed in gross." *Id.* at 61 (quotation omitted) (holding that the circuit court in that case had erred by treating the plaintiffs and defendants, respectively, "as a unified whole"). Thus, "plaintiffs must demonstrate standing for each claim that they press" against each defendant, "and for each form of relief that they seek." *Id.*

(quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). The Court highlighted that "[h]eeding these conditions is critically important" in a "sprawling suit" with multiple plaintiffs, defendants, and claims, where plaintiffs had alleged different impacts stemming from varying conduct by different defendants. *Id.* The same requirement for careful analysis applies here.

Only "actual or imminent" injuries count for Article III purposes. *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Allegations that are "too speculative" or merely assert "possible future injury" do not suffice. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (emphasis and quotation omitted). Plaintiffs do not have standing to lodge a generalized, speculative dispute over claims relating to the "closure" or "dismantling" of Global Media and whether an agency will perform its statutory duties, will have sufficient resources or employees to do so. As an initial matter, as discussed throughout this brief and prior filings, the injuries to Plaintiffs stem from the flawed belief that Voice of America and Global Media was going to shut down. *See e.g.*, *Widakuswara*, Pls. Partial Mot. at 21, ECF No. 166-1 (Plaintiffs stating "[o]perational capacity at [Voice of America] and [Global Media] has been decimated [and h]undreds of millions of listeners have lost out on programming"). However, the state of affairs have drastically changed and evidence supports that Voice of America and Global Media have not closed and operational and Voice of America has resumed programming and is meeting its statutory obligations. *See, e.g.*, *supra* at 5–7. Putting that aside, Plaintiffs challenge Global Media and Voice of America's general restructuring decisions and claims that agency decisions potentially affect agency operations generally but Plaintiffs have not identified any specific staffing decisions or canceled or terminated contract or agreement (besides potentially personal services contracts) that have resulted in concrete and particularized injury to statutorily required programs or services upon which Plaintiffs rely. *See Widakuswara*, Pls. Proposed Order at 2, 3,

ECF No. 166-5 (requesting generally that the Court order Defendants to "provide Plaintiffs and the Court with an inventory of all contracts and lease arrangements that have been terminated since March 15, 2025" and vacate the decision to "nearly all employees on administrative leave," "cancellation of all contracts with personal services contractors, including individual plaintiffs named in these actions," "cessation of the vast majority of programming and broadcasting except for the limited functions identified by the Statutory Minimum Memorandum," and "issuance of reduction-in-force notices to most of [Global Media] staff, including the RIF notices issued in August 2025"). These claims and the sought relief, however, do not satisfy Article III because Plaintiffs cannot establish, nor specified or demonstrated, that canceled or terminated contracts and grants and lease agreements or specific staffing levels are necessary to redress any concrete injury stemming from the loss of discrete statutorily required programs or services.

Also, Plaintiffs' broad claims regarding the purported "dismantling" of Global Media and Voice of America (*see generally Widakuswara*, Pls. Partial Mot., ECF No. 166-1; *id.*, Bruttin Decl. ECF No. 166-3 ¶ 6 (stating "[t]he dismantling of [Voice of America] is causing…)), involve no "legally and judicially cognizable" harm that is "traditionally thought to be capable of resolution through the judicial process," *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Such suits have no "ground[ing] in historical practice" or "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo v. Robins*, 578 U.S. 330, 341 (2016). This "generalized interest . . . is too abstract to constitute a 'case or controversy' appropriate for judicial resolution." *Id.*; *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982).

Accordingly, the Court should deny relief in full for the reasons discussed above and Defendants' motion to dismiss. To the extent the Court is inclined to grant any relief, however,

Article III—and the related requirement that the remedy sought "be limited to the inadequacy that produced the injury in fact that the plaintiff has established," *Gill* v. *Whitford*, 585 U.S. 48, 67–68 (2018)—necessitates that any relief be drawn narrowly to address only demonstrated injuries to Plaintiffs in this case.

**III.**    **Claims Relating to Closure Not Ripe.**

This Court lacks subject matter jurisdiction over any claims, relating to Global Media closing because these claims are not ripe. The ripeness doctrine requires that a litigant's claims be "constitutionally and prudentially ripe," so as to protect (1) "the agency's interest in crystallizing its policy before that policy is subjected to judicial review," (2) "the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting," and (3) "the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Asante v. Azar*, 436 F. Supp. 3d 215, 224 (D.D.C. 2020) (quoting *Nevada v. Dep't of Energy*, 457 F.3d 78, 83–84 (D.C. Cir. 2006). "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). As discussed in Defendants' motion and reply and incorporated as though fully stated herein, Plaintiffs' claims are not ripe for review. *Widakuswara*, Defs. Mot. to Dismiss at 27–28, ECF No. 128; *id.*, Defs. Reply at 8, ECF No. 148. That is because contrary to Plaintiffs' assertions, Global Media is not closed, Voice of America is not in the "dark," nor are the Defendants "dismantling" Global Media or Voice of America.  Thus, the Court should deny Plaintiffs' partial motion for summary judgment.

IV.    **Plaintiffs Are Not Entitled to Judgment as a Matter of Law on their APA Claim.**

Plaintiffs move for judgment as a matter of law on their APA claims, notwithstanding that Defendants have (i), moved to dismiss Plaintiffs' APA claims on jurisdictional grounds (among others), and (ii), moved to stay compliance with Local Civil Rule 7(n) to forgo production of an administrative record given Defendants' pending dispositive motion. *See Widakuswara*, Defs. Mot. to Dismiss, ECF No. 128; *Abramowitz*, Defs. Mot. to Dismiss, ECF No. 58

Notwithstanding these threshold issues, Plaintiffs now ask this Court to weigh the merits of their APA claims when there exists a serious question as to whether this Court has jurisdiction to resolve Plaintiffs' APA claims. That issue is at the heart of the Government's appeal of this Court's preliminary injunction, which awaits a decision from the D.C. Circuit. *See Widakuswara v. Lake*, No. 25-5144 (D.C. Cir.); *Abramowitz v. Lake*, No. 25-5145 (D.C. Cir.). Considering these factors together, Plaintiffs motion is not only premature, but it represents their ongoing attempts at inundating Defendants with motions and filings.[6] It presents a continued disregard for judicial efficiency and conservation of resources, and it contravenes the spirit of Rule 1, to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. For the reasons explained below, the Court should deny Plaintiffs' motion.

A.    **Plaintiffs' APA Claims Fail Because They Do Not Seek Judicial Review of a Discrete Final Agency Action**

As a threshold matter, Plaintiffs do not identify a discrete and circumscribed agency action that Global Media has taken and that could specifically be redressed by a federal court. Plaintiffs must specify "an identifiable action or event" and "direct [their] attack against some particular

---

[6]    Since the inception of this case less than one year ago, there are already more than 180 docket entries in the *Widakuswara* matter, and the parties have engaged in virtually nonstop briefing since the case was filed in March 2025.

'agency action' that causes [them] harm." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990);

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (APA limits judicial review to

"circumscribed, discrete agency actions"). These final agency actions must be "circumscribed

[and] discrete." *S. Utah*, 542 U.S. at 62. The APA does not provide for "general judicial review of

[an agency's] day-to-day operations," *Lujan*, 497 U.S. at 899, like "constructing a building,

operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of

Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). The APA thus contains "a prohibition on programmatic

challenges," meaning "challenges that seek 'wholesale improvement' of an agency's programs by

court decree." *Alabama- Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir.

2014) (cleaned up). "Because 'an on-going program or policy is not, in itself, a final agency action

under the APA,' [a court's] jurisdiction does not extend to reviewing generalized complaints about

agency behavior." *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (citation omitted).

　　Plaintiffs' arguments on the actions they seek to challenge through their APA claims betray

the viability of their claims. To begin, Plaintiffs state that, "prior to March 15, approximately 1,147

full-time employees and 598 personal services contractors worked to deliver impartial news to

global listeners. That includes approximately 1,300 employees at Voice of America who reached

about 362 million people on a weekly basis. Then, over the course of an evening, Defendants

decided to cut [Voice of America's] and [Global Media's] operation back to a mere fraction—

what Defendants call the "statutory minimum." *Widakuswara*, Pls. Partial Mot. at 25, ECF No.

166-1. In other words, Plaintiffs seek to challenge, "[placement of] employees on leave, cancelled

contracts, and shut down programming," *Id.* at 26; *see also id*. at 27 (arguing that the reduction of

"[Voice of America] and [Global Media] from entities that employed thousands of people,

broadcast in 49 languages, and reached 362 million people, to what Defendants call the "statutory

minimum" is a "single" "discrete act"). Plaintiffs' claims present exactly the type of wholesale challenge that the APA forbids. To the extent that Plaintiffs argue that the "decision to shut down the agency" is the "discrete" agency action challenged (*see id.* at 27), that assertion is belied by the law and the facts.

On the law, Plaintiffs' allegations reveal that they do not seek judicial review of a discrete agency action. Rather, they seek wholesale judicial review of Global Media's management of the agency. Instead of presenting the court with a "narrow question to resolve," *Cobell*, 455 F.3d at 307, Plaintiffs challenge a host of individual actions—essentially every discrete agency action that went into Global Media's reduction to a statutory minimum. To be sure, Plaintiffs try to distance themselves from this logical conclusion by arguing that they only challenge the decision to "reduce the agency to its statutory minimum." *Widakuswara*, Pls. Partial Mot. at 26, ECF No. 166-1. But Plaintiffs cannot have it both ways. They cannot purport to challenge only the wholesale attempt to "shut down" Voice of America while simultaneously challenging numerous discrete and final agency actions.

The problem with Plaintiffs' assertions is two-fold. First, it is betrayed by Plaintiffs' filings to date. *See e.g., Widakuswara*, Pls. Mot. Prelim. Inj. at 11, ECF No. 17 ("[T]his case raises [the question of] whether the Executive Branch may lawfully shutter an agency—by dismissing its staff, closing its offices, and ordering the cessation of its services."); *id*. at 51 ("[T]his is a case about reviving and sustaining a Congressionally mandated independent agency's entire existence."); *see also Abramowitz*, No. 25-5145 (D.C. Cir.), Appellees' Opp. Mot. Stay at 10; *Widakuswara*, No. 25-5144 (D.C. Cir.), Appellees' Opp. Mot. Stay at 19, 25. Setting aside the contradictory nature of the arguments advanced by the two sets of Plaintiffs, addressing this type of claim requires the Court to supervise all the agency's activities and determine how the agency

would accomplish each statutorily-mandated function—an even more extreme kind of supervisory claim than was at issue and rejected in *Lujan*. *See* 497 U.S. at 892–93. Such a claim completely circumvents the purpose of the APA's discrete agency action requirement, which is to "protect agencies from undue judicial interference with their lawful discretion and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *S. Utah*, 542 U.S. at 66–67.

Second, this position is also untenable for reasons Defendants have repeatedly expressed—the APA is not a vehicle to challenge an Executive Order; an executive order is a presidential action, and not an agency action and thus Plaintiffs' challenges to the Executive Order under the APA are not reviewable. *See Louisiana v. Biden*, 622 F. Supp. 3d 267, 288 (W.D. La. 2022) (holding that a challenge to EO 14008 "cannot be reviewed under the APA because the President is not an agency"). Plaintiffs' claims that the Executive Order is somehow premised upon evidence that lacked veracity, and did not make appropriate findings, are all non-cognizable under the APA. *See Widakuswara*, Pls. Partial Mot., ECF No. 166-1 at 29.

Moreover, Plaintiffs' purported reliance on *Biden v. Texas*, 597 U.S. 785, 793 (2022), for the proposition that Plaintiffs do not need to "challenge each of the steps necessary" to effectuate an action, *see Widakuswara*, Pls. Partial Mot., ECF No. 166-1 at 28, is misguided. In *Biden*, 597 U.S. at 793, the Secretary of Homeland Security issued a June 1, 2021, memorandum "officially terminating" a discretionary immigration program known as the Migrant Protection Protocols. After a court set aside that termination and remanded for further consideration, the Secretary again formally terminated the program on October 29, 2021, this time with some forty pages of reasoning. *See id*. at 795–96. The court of appeals treated the second termination not as a separately reviewable agency action, but as a mere "post hoc rationalization[ ]" for what it

described as a "Termination Decision" independent of the June 1 and October 29 memoranda. *See id.* at 796–97, 809–10. The Supreme Court reversed. Quoting from the APA's definition of a "rule," it held that the court of appeals had erred "by postulating the existence of an agency decision wholly apart from any 'agency statement of general or particular applicability. . . designed to implement' that decision." *Id*. at 809. (quoting 5 U.S.C. § 551(4)). The Supreme Court did not bless Plaintiffs' expansive reading of the APA's final agency action requirement. Rather, the Court held that the APA does not authorize review of "abstract decision[s] apart from specific agency action, as defined in the APA." *Biden*, 597 U.S. at 809. But that is precisely what Plaintiffs attempt to do here.

Plaintiffs also confusingly argue that if the Court "deems it necessary" to "slot" the challenged action into a subcategory, it "fits the definition of a 'rule'—or, at minimum, the 'equivalent … thereof'— to a tee," *Widakuswara*, Pls. Partial Moti. At 29, ECF No. 166-1 (citing 5 U.S.C. § 551(4), (13)). Plaintiffs are wrong.  To begin, this is the first time that Plaintiffs have advanced this argument, notwithstanding that the parties have briefed the issue of the challenged actions in the context of the Court's APA analysis on multiple occasions. *See e.g.,* Pls. Opp. Mot. Dismiss at 44 (arguing that Defendants actions are discrete and final but making no mention of Defendants' conduct falling within the "rule" provision of reviewable actions). Indeed, when opposing Defendants' motion to dismiss, Plaintiffs made no mention that the "discrete actions" constituted "rules," rather they argued that the challenged actions could be considered "orders." *Id*. (citing 5 U.S.C. § 551(6) for the definition of an "order" under the APA). Plaintiffs cannot change the goalpost every time the parties brief this issue, and they have had numerous other opportunities to make this argument but have failed to do so.

Even if the Court considered the argument, it is nevertheless wrong. In the context of the APA, a "rule" is defined as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). The plaintiffs suggest that the putative reduction decision qualifies as a rule, which would require some "agency statement" designed "to implement, interpret, or prescribe law or policy." *Id.* § 551(4). But Plaintiffs do not point to any official agency statement in support of their assertion. *See Widakuswara*, Pls. Partial Mot. at 29, ECF No. 166-1. Nor do they suggest that the putative reduction decision is anything like an "order, license, sanction, [or] relief." These too are defined terms, *see id.* § 551(6), (8), (10), (11), and a decision to reduce an agency would not satisfy any of the definitions. In sum, the reduction decision posited here, is an abstract decision "wholly apart from" any "specific agency action, as defined in the APA." *Biden*, 597 U.S. at 809.

On the facts, almost a year since this lawsuit was initiated, Plaintiffs cannot show that such a "decision to shut down the agency" has occurred. First, Global Media "continue[s] to exist within the Executive Branch of the Government" as an independent agency. 22 U.S.C. § 6203(a). As Plaintiffs point out, its funding levels have remained the same through multiple continuing resolutions in 2025. *See Widakuswara*, Pls. Partial Mot. at 15, ECF No. 166-1 (noting that on "March 15, 2025, the President signed into law Congress's further appropriations on the same terms to [Voice of America] and [Global Media] that ran through September 30, 2025. H.R. 1968, 119th Cong. § 1101(a) (2025). As before, Congress appropriated "[s]uch amounts as may be necessary, … under the authority and conditions provided in applicable appropriations Acts for fiscal year 2024[,]"); *id.* at 16 ("the President signed into law, following Congress's passage, the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Verterans Affairs, and Extension Act, 2026, which continues appropriations to [Global Media] and [Voice

of America] on the same terms as the above-referenced laws until January 30, 2026."). And though Defendants will not recount here all the steps that Voice of America and Global Media have taken to resume programming and operations (those steps are extensively detailed through Defendants' numerous filings arising out of Plaintiffs' show cause motion and the Court's show cause order), this evidence demonstrates that Voice of America is anything but shuttered.

In support of their motion, Plaintiffs do not point to any evidence in the administrative record, nor could they. Instead, Plaintiffs rely on depositions taken in the context of this Court's order to show cause in support of their merits' argument, but the Court should decline their invitation to do so for a few reasons. First, Plaintiffs advance claims that should, in theory, be decided on an administrative record. There has been no administrative record provided in this case because Defendants moved to stay their obligation to do so pending their threshold dispositive motion. *See Widakuswara*, Defs. Mot. to Dismiss, ECF No. 128; *see also* LCvR 7(n)(1) ("In cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first."). This also makes Plaintiffs' reliance on a statement of undisputed fact inapposite. *See* Comment LCvR 7(h) ("This provision recognizes that in cases where review is based on an administrative record the Court is not called upon to determine whether there is a genuine issue of material fact, but rather to test the agency action against the administrative record. As a result, the normal summary judgment procedures requiring the filing of a statement of undisputed material facts is not applicable.").

Second, it is well established that discovery in actions arising under the APA occurs only in limited circumstances, not present on the record, and Plaintiffs were not awarded this relief in

this context. *See Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (quotation omitted); *see also Tex. Rural Legal Aidv. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991) (explaining that "discovery should not be permitted on [a party's] arbitrary and capricious claim unless [it] can demonstrate unusual circumstances justifying a departure from this general rule"). Instead, it is undisputed that Plaintiffs requested that this Court allow "expedited depositions of up to three of the individuals who have submitted declarations to the Court concerning compliance with the preliminary injunction and the matters discussed in their declarations." *See Widakuswara*, Pls. Resp. July 30, 2025, Order Show Cause, ECF No. 136. Plaintiffs also seemingly recognize that Defendants objected to their attempts to seek discovery in what is otherwise a record review case. *See id*. at 3 ("The *Widakuswara* plaintiffs further requested—and Defendants opposed—limited expedited discovery. *See* [] ECF No. 123 n.5 (Defendants arguing that discovery requested by Plaintiffs was not proper because the preliminary injunction was granted on APA grounds)).

Third, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause. *See Widakuswara*, Aug. 25, 2025, Order, ECF No. 137, (noting that the Court was ordering Leili Soltani, Kari Lake, and Frank Wuco, to sit for depositions to allow Defendants "one final opportunity, short of a contempt trial" to explain their compliance with this Court's preliminary injunction). Critically, this Court's own order said nothing about Plaintiffs ability to depose these individuals with respect to the merits of their claims. Indeed, it is well settled that APA claims are reviewed on the administrative record—no more and no less. *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 82–83 (D.D.C. 2018); *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information

- 30 -

than did the agency when it made its decision.'"). Thus, Plaintiffs' extensive reliance on the Soltani, Lake, and Wuco depositions to support their APA claims is plainly misguided.

Finally, Plaintiffs point to a list of certain discrete acts they contend are "final" for purposes of this Court's APA analysis. *Widakuswara*, Pls. Partial Mot. at 31, ECF No. 166-1. But as noted herein and in Defendants' previous filings, including Defendants' firm position on appeal, at bottom Plaintiffs challenge employment decisions that fall under the Civil Service Reform Act's comprehensive remedial scheme or contract claims that belong in the Court of Federal Claims. The Court therefore lacks jurisdiction over these actions.  To the extent they identify other challenged "actions," they do not satisfy the Supreme Court's finality analysis under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

### B.    Plaintiffs Are Not Entitled to Judgment as a Matter of Law Because There Are Adequate Alternative Remedies Available.

Review under the APA is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. The requirement that a plaintiff have "no other adequate remedy in court," id., reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). As the D.C. Circuit has observed, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation omitted). If there exists an alternative adequate judicial remedy, a plaintiff lacks a cause of action under the APA. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017); *see also Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 927 (E.D. Va. 2013) (dismissing putative APA claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) because decision at issue was not a final agency action and an alternative adequate remedy existed by way of appeal to the Federal Circuit). As already described above in § I, this is, in essence, an

employment action, and there are CSRA remedies. To the extent this case rests on grant cancelations or contract claims, then the Court of Federal Claims provides an adequate alternative under the Tucker Act. For all these reasons, the Court should deny Plaintiffs' motion for summary judgment.

### C.    Defendants' Actions Are Committed to Agency Discretion by Law.

The International Broadcasting Act provides no meaningful standard by which a court might adjudicate Plaintiffs' claims; satisfaction of § 6204(b) is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action is "committed to agency discretion by law" when a "statute is drawn to that a court would have no meaningful standard against which to judge the agency's exercise of discretion," which renders "meaningful judicial review impossible." *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). This is true "even where Congress has not affirmatively precluded review." Heckler, 470 U.S. at 830. Hallmarks of a decision committed to agency discretion include a statute that puts the onus on the agency, not the courts, to apply a standard, *see Webster v. Doe*, 486 U.S. 592, 600 (1988), and general criteria that make it difficult for courts to meaningfully second-guess an agency's determination, *see id.* ("advisable in the interests of the United States" is unreviewable).

Section 6204(b) is just such a law. It calls on Global Media's CEO to "respect" the "professional independence" of (among others) the broadcast networks. When read in conjunction with the broad supervisory authority that Congress bestowed on the CEO, neither statutory term in § 6204(b) is capable of judicial application. Congress required the CEO to "supervise" the networks, to "assess the professional integrity" of the networks, and to "ensure" that coverage is "balanced and comprehensive." 22 U.S.C. § 6204(a); *id.* § 6202(b). The statutory scheme, considered as a whole, requires the CEO to determine the appropriate balance between competing factors—his supervisory demands and the networks' independence. But how to strike that balance

is left to the CEO's discretion. *Cf. United States Sugar Corp. v. EPA*, 830 F.3d 579, 640 (D.C. Cir. 2016).

### D.    Plaintiffs Have Failed to Demonstrate that Defendants Have Unlawfully Withhed Required Agency Action Under the APA.

Plaintiffs argue that "[Voice of America] and [Global Media] are required, by law, to produce certain programming and broadcast to different regions and countries through varied mediums" and "[a]s a result of Defendants' drastic downsizing decision as well as the steps taken to implement it, however, [Voice of America] and [Global Media] ceased broadcasting and programming across the board"; thus, "Defendants are thus unlawfully withholding required programing and broadcasting under 5 U.S.C. § 706(1)." *Widakuswara*, ECF No. 166-1 at 35–36. Plaintiffs are wrong.  Regardless of whether Plaintiffs' assertions were accurate when Plaintiffs filed their March 2025 Complaints, events since that time have plainly rendered Plaintiffs' assertions incorrect and unsupported. Simply put, the situation at Voice of America has changed dramatically since March 2025. Plaintiffs therefore have not identified any "egregious" delay in performing a required duty that would support a claim for agency inaction under the mandamus like standard in 5 U.S.C. § 706(1). *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

When plaintiffs challenge agency inaction, the proper vehicle for suit is 5 U.S.C. § 706(1), which authorizes an action to compel agency action unlawfully withheld. "Section 706(1) permits judicial review of agency inaction, but only within strict limits," mirroring "the common law writ of mandamus." *Anglers Conservation Network v. Pritzke*r, 809 F.3d 664, 670 (D.C. Cir. 2016). As the D.C. Circuit has made clear, relief under Section 706(1) is controlled by the mandamus standard, and "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531

F.3d 849, 855 (D.C. Cir. 2008) (quoting *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir.

2000)). Reflecting the traditional limitations on mandatory injunctions issued to co-equal branches,

"[i]n the case of agency inaction" the Court "not only must satisfy [itself] that there indeed exists

such a duty, but that the agency has 'unreasonably delayed' the contemplated action." *Bluewater*,

234 F.3d at 1315 (quoting 5 U.S.C. § 706(1)). And even once there has been an "unreasonable

delay" in fulfilling the required statutory duty, this Court evaluates "whether the agency's delay is

so egregious as to warrant mandamus." *In re Core Communications, Inc.*, 531 F.3d at 855 (quoting

*Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984)).  Where

there is sufficiently egregious delay in performance of a required duty, courts must still be careful

not to "enmesh[]" the judiciary "in the minutiae of agency administration." *Cobell v. Norton*, 240

F.3d 1081, 1108–09 (D.C. Cir. 2001). The APA does not allow Plaintiffs to seek, or authorize the

Court to enter, programmatic relief concerning Defendants' compliance with broad statutory

mandates writ large. *See S. Utah Wilderness All.*, 542 U.S. at 67. Instead, the burden is on Plaintiffs

to identify discrete and final agency action concerning Defendants' obligations under the specific

statutes—or a failure to act that rises to the level sufficient to warrant relief under § 706(1)'s

demanding, mandamus-like standards.  Plaintiffs have not come close to meeting their burden.

Furthermore, contrary to Plaintiffs' assertions, Defendants have not "ceased broadcasting

and programming across the board." Voice of America is meeting its statutory obligations under

the International Broadcasting Act, and complying with the Court's requirement that it serve,

pursuant to its statutory mandate, as a "consistently reliable and authoritative source of news," *see*

22 U.S.C. § 6202(c). *See generally Widakuswara*, Defs. Responses (ECF Nos. 117, 123, 127, 134,

141). Voice of America has restored programming and is no longer "dark," and has not been in

the "dark" for many months. Voice of America is actively providing programming across multiple

media (e.g., radio, live satellite direct-to-home television, and multiple digital and social media platforms), in multiple languages (e.g., Dari, Pashto, Farsi, and Mandarin), with plans to expand further in both broadcasting and language capacity. More specifically, Voice of America is currently broadcasting in short wave radio transmissions, produces daily web stories, and produces content (both written and digital) in four languages (i.e., Mandarin, Dari, Pashto and Farsi), in addition to the existing broadcasting occurring through the Office of Cuba Broadcasting. *See generally* Soltani Decl. ¶¶ 3–9 (*Widakuswara*, ECF No. 117-1) (explaining the responsibilities of the Persian, Mandarin, Pashto, and Dari Language Services); Wuco Decl. ¶ 6(a)-(d) (*Widakuswara*, ECF No. 153-1); *see also* 2d Thomas Decl. ¶¶ 6–7 (*Abramowitz*, ECF No. 24-4) (explaining the Office of Cuba Broadcasting); Reber Decl. ¶ 4 (*Widakuswara*, ECF No. 117-2) (explaining that radio transmission to Afghanistan resumed). Also, Global Media is taking steps to restore Russian-language and Kurdish-language broadcasting. *See Widakuswara*, Defs. Opp. at 5, ECF No. 153; *id.*, Defs. Notice at 3, ECF No. 141; *id.*, Dec. 8, 2025, Wuco Decl. ¶¶ 3, 6, ECF No. 174-1; *id.*, Jan. 2, 2026, Wuco Decl. ¶ 6, ECF No. 185-1. The agency has resumed Korean-language broadcasting and PBS-BBS Radyo Pilipinas World Service shortwave broadcast operations using the facilities of the Philippines Transmitting Station in Tinang, Tarlac. *Id.*, Dec. 8, 2025, Wuco Decl. ¶ 8.a, ECF No. 174-1. As of the filing of Wuco's December 8, 2025, declaration, Global Media ha 265 active full-time equivalent employees; 57 Personal Services Contractors; and certain locally employed staff overseas. *Id.* ¶ 4. And the staffing level and any reductions in force will not affect Voice of America's ability to broadcast as it is currently broadcasting. Further, all the positions that are currently working on Voice of America broadcasting will remain. *Id.* While there may not be as much programming or as many language services as the agency had elected to provide in prior years, those levels are not required by statute.

In all events, programming has been restored; Voice of America is serving as a source of news for people in need of news and information in repressed nations and regions throughout the world.

Plaintiffs have failed to identify a specific discrete and final statutorily required agency action, or required programing and broadcasting, that is unlawfully being withheld and have failed to demonstrate egregious delay that would warrant mandamus relief. Accordingly, Plaintiffs' claim fails.

## V.    <u>Vacatur is Not Appropriate Under the APA.</u>

Plaintiffs' request—a "broad" injunction that restores Voice of America and Global Media to its March 2025 status, *see Widakuswara*, Pls. Partial Mot. at 33–35, ECF No. 166-1; *see also id.*, Pls. Proposed Order ECF No. 166-5—constitutes an over-broad equitable remedy that exceeds any harm to Plaintiffs. "Traditionally, when a federal court finds a remedy merited, it provides party-specific relief, directing the defendant to take or not take some action relative to the plaintiff. If the court's remedial order affects nonparties, it does so only incidentally." *United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., concurring); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs."). "This tracks the founding-era understanding that courts 'render a judgment or decree upon the right of the litigant[s].'" *Texas*, 599 U.S. at 693 (Gorsuch, J., concurring) (quoting *Rhode Island v. Mass.*, 37 U.S. 657 (1838)). This notion "ensures that federal courts respect the limits of their Article III authority to decide cases and controversies and avoid trenching on the power of the elected branches to shape legal rights and duties more broadly." *Texas*, 599 U.S. at 693–94.

As an initial matter, the APA does not permit vacatur of agency action, much less of an executive order. *See Texas*, 599 U.S at 695 (Gorsuch, J., concurring) (The APA "does not say

anything about 'vacating' agency action ('wholesale' or otherwise)."). The history and structure of the APA do not support that the "set aside" language in Section 706(2) is synonymous to "vacate," but rather that "set aside" should be understood to mean that a court should "disregard" the action taken by the agency in determining the outcome of a case. *Id.* ("Routinely, a court will disregard offensive provisions like these and proceed to decide the parties' dispute without respect to them."). At the time of the APA's adoption, "conventional wisdom regarded agency rules as 'quasi-legislative' in nature." *Id.* at 696. Indeed, federal courts have "never enjoyed the power to 'vacate' legislation," but instead possessed "'little more than the negative power to disregard an unconstitutional enactment.'" *Id.* (citation omitted). Interpreting the APA to allow quasi-legislative rules to be vacated (rather than disregarded) would thus be inconsistent with the history of the APA.

Even if Section 706 could be read to authorize vacatur of agency action, "a district court should think twice—and perhaps twice again—before granting such sweeping relief." *Id.* at 702 (citations and internal quotation marks omitted). As the Supreme Court recently explained in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), there is no basis in equity for a universal injunction that goes beyond remedying the harms incurred by the plaintiffs who have brought the lawsuit. The Court has long recognized that "equitable relief must be limited to the inadequacy that produced [the] injury in fact" and "[a]ny remedy a judge authorizes must not be more burdensome [to the defendant] than necessary to redress the complaining parties." *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring) (cleaned up). To grant universal relief under the auspices of vacatur "strains our separation of powers. It exaggerates the role of the Judiciary in our constitutional order, allowing individual judges to act more like a legislature by decreeing the rights and duties of people nationwide." *Id.* at 703. Accordingly, any equitable remedy applied in the nature of

vacatur should apply only to the named parties. *See California v. Texas*, 593 U.S. 659, 672 (2021) (remedies "ordinarily operate with respect to specific parties" rather than "on legal rules in the abstract") (citations and internal quotation marks omitted); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (observing that the "general rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.") (citations omitted)).

## VI.    <u>Any Relief Should Be Narrowly Tailored.</u>

Although the Court should deny Plaintiffs' motion for the reasons discuss above, to the extent the Court decides to grant injunctive relief, it is well settled that such relief "must be narrowly tailored to remedy the specific harm shown," *Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (citation omitted), and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). In light of these principles, Plaintiffs have failed to demonstrate, or even suggest, how they are entitled to seek relief on behalf of "all employees" and "all personal services contractors," and seek relief specific to "all contracts and lease arrangements." Rather, any injunctive relief the Court grants should be limited to Plaintiffs alone—and, even then, only to those Plaintiffs who have clearly shown that they have standing and face imminent irreparable harm in the absence of relief. Also, the presence of associational plaintiffs does not change those principles. *Cf. U.S. Chamber of Com. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) ("When a [plaintiff] claims associational standing, it is not enough to aver that unidentified members have been injured… Rather the [plaintiff] must specifically 'identify members who have suffered the requisite harm.'" (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)); *Am. Chem. Council v. Dep't of Transp.*,

468 F.3d 810, 819 (D.C. Cir. 2006) ("It is not enough to allege that ... associations comprise the majority" of affected individuals.).

"The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," *Gill*, 585 U.S. at 72, and Plaintiffs therefore should not be allowed to seek relief for claims they have failed to clearly show that they have standing and face imminent irreparable harm in the absence of relief or on behalf of individuals who are not parties to this suit, unidentified members of the organization(s), or non-members, or contracts, grants, and lease agreement that they are not a party to. *See, e.g.*, *Murthy*, 603 U.S. at 61 (holding that plaintiffs "must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek" (cleaned up)); *New Mexico v. Musk*, 769 F. Supp. 3d 1, 6–7 (D.D.C. 2025) ("Terminating thousands of federal employees may cause extreme harm to the individual employees, and potentially the institution writ large…But harm that might befall unnamed third parties does not satisfy the irreparable harm requirement in the context of emergency injunctive relief, which must instead be connected specifically to the parties before the Court."); *see also State of Maryland*, 151 F.4th at 212  ("a plaintiff may not normally seek relief in federal court to vindicate "the legal rights or interests of third parties" … "[i]n other words, "standing doctrine strongly disfavors so-called 'third party standing' " cases, where "even though the plaintiff *does* have an injury in fact and it *can* be redressed by her suit, she is denied standing nonetheless, because she is vindicating rights that more properly belong to somebody else." (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Moreover, Plaintiffs also seek a final judgment that orders Defendants to "provide all broadcasting and programming required by statute." *Widakuswara*, Pls. Proposed Order at 3 (ECF No. 166-5). But, as demonstrated by Defendants' Motion to Dissolve, which Defendants

incorporate as though fully stated herein, such an order would create the same questions and issues as prong (3) of the injunction, which Defendants are currently trying to dissolve or modify. *See Id.*, Defs. Mot. to Dissolve ECF Nos. 175, 185. This is because, at bottom, a judgment to "provide all broadcasting and programming required by statute" is akin to a "follow-the-law" injunction, which is generally impermissible. *See id.* at 13-15; *see, e.g.*, *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009) ("[W]e have held injunctions to be too vague when they enjoin all violations of a statute in the abstract without any further specification."). Such a broad-sweeping order "to provide all broadcasting and programming required by statute" would not be tailored to these particular Plaintiffs. Indeed, Plaintiffs do not even try to show how they have standing to enforce every single statutory requirement or binding legal obligation. *See Widakuswara*, Defs. Mot. to Dissolve at 23-25, ECF No. 175. Without standing or a showing of particular harm, Plaintiffs are not entitled to relief from that harm.[7]

---

[7] Even more blatant, Plaintiffs also ask this Court to order that "Defendants shall provide Plaintiffs and the Court with an inventory of all contracts and lease arrangements that have been terminated since March 15, 2025, and shall take actions, including executing contracts that have been terminated, to restore broadcasting, digital and programming capacity, as necessary to restore Voice of America programming and broadcasting that existed prior on March 15, 2025." *Widakuswara*, Pls. Proposed Order at 3, ECF No. 166-5. Such a request is sweeping. Plaintiffs do not attempt to explain how receiving an inventory of *all* contracts and lease arrangements that have been canceled since March 15, 2025, is relevant to their claims (for example, the *Abramowitz* Plaintiffs expressly disclaim any claims based on contracts) or would remedy their harms. Indeed, this likely would include contracts that Plaintiffs may or may not have known were canceled and Plaintiffs have altogether failed to demonstrate how Global Media's lease arrangements have injured them. More fundamentally, an order to "restore Voice of America programming and broadcasting that existed prior [to] March 15, 2025" converts the problematic prong (3) into a final judgment. *See* Defs. Mot. to Dissolve, ECF Nos. 175, 185. This Court has repeatedly acknowledged that there is no requirement for Global Media to continue programming exactly how it was before March 15, 2025. Plaintiffs' attempt to obtain an order to do just that should be rejected.

**III.     The Court Should Deny Plaintiffs' Request That the Court Consider Extra-Record Evidence as Part of Its Review.**

As an initial matter, Plaintiffs attempt to circumvent Local Civil Rule 7(m) by filing a "non-dispositive motion"—i.e., request that the Court consider extra-record evidence as part of its review—within their partial motion for summary judgment.  Local Civil Rule 7(m) is intended "to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006). Under Local Rule 7(m), counsel must "'discuss the anticipated motion.'" *Id.* at 102. When a party breaches Local Rule 7(m), the Court may deny the nonconforming motion or strike it from the docket. *See Alberts v. HCA Inc.*, 405 B.R. 498, 501 (D.D.C. 2009); *see also Steele v. United States*, Civ. A. No. 14-1523 (RCL), 2023 WL 6215790, at *7 (D.D.C. Sept. 25, 2023). Here, Plaintiffs did not take any steps to meet and confer with Defendant about their non-dispositive request for the court to consider extra-record evidence nor does their motion suggest otherwise.  *See* LCvR 7(m) (stating, "[a] party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed."). Thus, the Court should deny Plaintiffs' request that it consider extra-record evidence or strike that portion of Plaintiffs' motion from the record. *See, e.g., Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP*, 905 F. Supp. 2d 150, 161–62 (D.D.C. 2012) (denying motion and admonishing the movant to comply with Local Rule 7(m)); *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 52 (D.D.C. 2006) (denying a motion to strike for failure to comply with Local Civil Rule 7(m)).

Nevertheless, the Court should deny Plaintiffs request to consider extra-record evidence because Plaintiffs have not met the demanding standard, and it is not warranted.  When reviewing agency actions under the APA, the Court's review is limited to the administrative record, either

"the whole record or those parts of it cited by a party." 5 U.S.C. § 706(2)(F). Only in rare circumstances will consider extra-record evidence in reviewing agency actions. *Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010) (citing *Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). The D.C. Circuit has stated that extra-record evidence was reviewable if it fell within one of three exceptions: "(1) The agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the District Court need[s] to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Animal Legal Defense Fund v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017). To succeed on a motion to admit extra-record evidence, the moving party must "demonstrate unusual circumstances justifying a departure from [the] general rule." *Ctr. for Biological Diversity v. U.S. Army Corps of Engineers*, Civ. A. No. 20-0103 (RDM), 2020 WL 5642287, at *9 (D.D.C. Sept. 22, 2020) (citation omitted). A request for consideration of extra-record evidence is "a request for judicial consideration of evidence that exists apart from the administrative record, on the theory that if the Court did not consider that evidence, 'reviewing agency action would be unnecessarily difficult.'" *Oceana, Inc. v. Locke*, 674 F. Supp. 2d 39, 44 (D.D.C. 2009) (quoting *The Cape Hatteras Access Pres. All. v. Dep't of Interior*, 667 F. Supp. 2d 111, 113–14 (D.D.C. 2009). Plaintiffs argue that "Defendants' conduct checks every box." *Widakuswara*, Pls. Partial Mot. at 43, ECF No. 166-1. Plaintiffs are wrong and miss the mark. As Defendants have demonstrated above, and in their motions to dismiss, this Court lacks jurisdiction over Plaintiffs claims and judicial review is not available in this case—which are threshold legal issues that do not require review of the administrative record nor extra-record evidence. Indeed, Defendants seek dismissal and partial summary judgment not based on an administrative record but instead on jurisdictional

and threshold APA arguments. This Court must first determine whether it has jurisdiction, and that judicial review is available before considering any record evidence, including Plaintiffs' purported extra-record evidence. Accordingly, Plaintiffs' premature request that the Court consider extra-record evidence should be denied.

## CONCLUSION

For these reasons, as well as those in Defendants' pending motion to dismiss, the Court should grant Defendants' partial cross-motion for summary judgment, deny Plaintiffs' partial motion for summary judgment, and enter judgment in Defendants' favor on Count 1 in Civil Action No. 25-0887, and on Counts 5 and 6 in Civil Action No. 25-1015.

Dated: January 12, 2026                    Respectfully submitted,

                                           JEANINE FERRIS PIRRO
                                           United States Attorney

                                           By:        /s/ Stephanie R. Johnson
                                                STEPHANIE R. JOHNSON,
                                                   D.C. Bar # 1632338
                                                BRENDA GONZÁLEZ HOROWITZ,
                                                   D.C. Bar # 017243
                                                Assistant United States Attorneys
                                                Civil Division
                                                601 D Street, NW
                                                Washington, DC 20530
                                                Main: (202) 252-2500

                                           *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KARI LAKE, et al., <br><br> Defendants. | Civil Action No. 25-0887 (RCL) |
| PATSY WIDAKUSWARA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KARI LAKE, et al., <br><br> Defendants. | Civil Action No. 25-1015 (RCL) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiffs' partial motion for summary judgment and Defendants' partial cross-motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Plaintiffs' partial motion is DENIED;

ORDERED that Defendants' partial cross-motion is GRANTED, and it is further

ORDERED that that summary judgment is ENTERED in favor of Defendants on Count 1 in Civil Action No. 25-0887, and on Counts 5 and 6 in Civil Action No. 25-1015.

SO ORDERED:


_____                    _____
Date                                                          Royce C. Lamberth
                                                                United States District Judge