UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-0887 (RCL) |
| KARI LAKE, et al., | |
| Defendants. | |
| PATSY WIDAKUSWARA, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-1015 (RCL) |
| KARI LAKE, et al., | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

For purposes of the parties' partial summary judgment motions, Defendants have largely asserted threshold arguments that can be resolved without consideration of any statement of material facts; thus, the Court should not consider Plaintiffs' undisputed statement of material facts *see Widakuswara*, ECF No. 166-2; *Abramowitz*, ECF No. 103-2). To the extent the Court does consider Plaintiffs' statement of undisputed material facts, pursuant to Local Civil Rule 7(h), Defendants submit this response.

1. VOA launched during the height of World War II to counter Nazi propaganda through truthful reporting delivered to German citizens living under the Nazi regime. ECF No. 4-

5, ¶ 5.[1]

**RESPONSE:** Disputed**,** as this statement is immaterial to the resolution of the parties' motion for summary judgment.  "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if…the fact is of consequence in determining the action").  Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the Administrative Procedure Act ("APA"). Also, disputed on the grounds that Plaintiffs rely on inadmissible evidence because Plaintiff Abramowitz lacks personal knowledge of Voice of America's beginnings during World War II.

2.    In 1948, Congress passed the United States Information and Exchange Act of 1948, known, by the names of its sponsors, as the Smith-Mundt Act. Pub. L. No. 80-402, 62 Stat. 6 (1948).

**RESPONSE:** Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Defendants also assert that Congress passed what is known as the Smith-Mundt Act in 1948. The Act was cited, then, as "United States Information and Educational Exchange Act of 1948." Pub. L. No. 80-402, 62 Stat. 6 (1948).

3.    The Smith-Mundt Act codified "an information service to disseminate abroad information about the United States, its people, and policies promulgated by the Congress, the

---

[1]    For ease of reference, like Plaintiffs, unless otherwise specified, Defendants cite to the *Abramowitz* docket.

President, the Secretary of State and other responsible officials of Government having to do with matters affecting foreign affairs." *Id.,* § 2(1). This formalized VOA's operation.

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, Plaintiffs' cited language does not support that the Smith Mundt Act of 1948 "formalized [Voice of America's] operation." The original Act neither referenced nor referred to Voice of America in any provision. *See* Smith-Mundt Act, Pub. L. No. 80-402, 62 Stat. 6 (1948).

4.    Three decades later, in 1977, Congress further formalized VOA's role and its specific mission by codifying VOA's charter. The Foreign Relations Authorization Act of 1977, Pub. L. No. 94-350 (1976), amended the Smith-Mundt Act to recognize VOA's importance to United States "long-range interests." Pub. L. No. 94-350, § 503, 90 Stat. 823, 831 (1976).

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Defendants also assert that Plaintiffs mischaracterize the act as recognizing specifically "[Voice of America's] importance to the United States 'long-range interests.'" The 1977 Act stated that "the long-range interests" of the United States "are served by communicating directly with the peoples of the world by radio." Pub. L. No. 94-350, § 206, 90 Stat. 831 (1976). While Voice of America was listed as a facet of that interest, Voice of America specifically is not "recognize[d]" as the U.S. "long-range interest." *Id.*

3

5. Over time, Congress built out VOA's mission by adding additional specific requirements. *See* 22 U.S.C. § 6202(a)(7); 22 U.S.C. § 6202(b)(1)-(10).

**<u>RESPONSE</u>**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument.  *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (finding that Plaintiff blending alleged factual assertions with argument regarding their legal significance inadequate under the predecessor to Local Rule 7(h)); *Toomer v. Carter*, Civ. A. No. 11-02216 (EGS/GMH), 2016 WL 9344023, at *4 (D.D.C. Mar. 24, 2016), *report and recommendation adopted sub nom. Toomer v. Mattis*, 266 F. Supp. 3d 184 (D.D.C. 2017) (finding that responses to the statement of material facts fall short of Local Rule 7(h)'s requirements where "they are replete with legal argument, argument regarding the inferences to be drawn from the facts, and assertions of other facts…"); *Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d 5, 9 (D.D.C. 2002) (striking movant's statement of facts for "liberally mix[ing] facts with argument" which "does nothing to assist the court in isolating the material facts…").

6. In 1994, Congress passed the International Broadcasting Act (IBA). Pub. L. No. 103-236, § 302, 108 Stat. 382, 432–33 (1994) (codified as 22 U.S.C. §§ 6201, *et seq.*).

**<u>RESPONSE</u>:** Undisputed.

7. The IBA applies to the United States Agency for Global Media (USAGM), the larger umbrella agency under which VOA now exists, as well as VOA. 22 U.S.C. §§ 6202-6203.

**<u>RESPONSE</u>:** Undisputed.

8. The IBA lays out the overarching principles that guide U.S. international broadcasting and insulates U.S. broadcast agencies' newsroom staff from certain executive branch officials who "shall respect the professional independence and integrity of the Agency, its

broadcasting services, and the grantees of the Agency." 22 U.S.C. § 6204(b). *See also* §§ 6202(a)(5), (b)(1).

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9.

9.      Political leadership has not always respected this statutory scheme. For example, in 2020, the CEO of USAGM, Michael Pack, immediately fired the heads of U.S. international broadcasters and terminated other expert journalist staff for no apparent reason. *See* Letter from Sens. Rubio, Graham, Moran, Collins, Durbin, Leahy, and Van Hollen to Michael Pack (July 1, 2020), at 1 (available at https://perma.cc/4TFQ-RVPE); *see also* Edward Wong, *New Conservative Media Chief Dismisses Heads of U.S.-Funded News Outlets,* N.Y. TIMES (June 17, 2020), https://tinyurl.com/37v9hv6j.

**RESPONSE**: Disputed, on the grounds that this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA. Further, disputed on the grounds that Plaintiffs fail to cite to the record for at least one "fact." *See* Fed. R. Civ. P. 56(c)(1)(A) (A party asserting that a fact is genuinely disputed must cite to a particular parts of materials in the record); LCvR 7(h)(1) (requiring an opposition to a motion to "include references to the parts of the record relied on to support the statement"); *Jackson*, 101 F.3d at 151 (finding that Plaintiff's failure to cite to parts of the factual record inadequate under the predecessor to Local Rule 7(h)).

10.      In 2021, Congress addressed calls for bipartisan reform in the 2021 National

Defense Authorization Act (NDAA). Pub. L. No. 116-283, 134 Stat 3388, 4023-24 (2021). Following the passage of that law, a Presidentially appointed, Senate-confirmed, and party-balanced board of seven, known as the International Broadcasting Advisory Board, must approve by a majority vote the appointment and removal of the heads of the broadcast entities, who are selected or dismissed by the CEO of USAGM. 22 U.S.C. § 6205(e)(1).

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA.

11.    It passed overwhelmingly: In the Senate by a vote of 81 to 13, and in the House by a vote of 322 to 87, overriding a veto by President Donald Trump. *Roll Call Vote 116th Congress-2nd Session*, UNITED STATES SENATE, https://tinyurl.com/5eemrkke.

**RESPONSE**: Disputed, on the grounds that this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA.

12.    In addition to creating their missions and a structure to protect VOA, Congress appropriated significant sums to VOA and USAGM. Specifically, in 2024, Congress appropriated $857,214,000 to USAGM to "carry out international communication activities." Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, div. F., 138 Stat. 460, 735 (2024). Congress specified that "funds appropriated under this heading shall be allocated in accordance

with the table included under this heading in the explanatory statement described in section 4." Id. at 735. That table states that Congress appropriated $260,032,000 to VOA. 118th Cong., Further Consolidated Appropriations Act, 2024, Legislative Text and Explanatory Statement at 1167 (Comm. Print 2024).

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument.  *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9.  Also, disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA. Further, disputed on the grounds that Plaintiffs fail to cite to the record for at least one "fact." *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 7(h)(1); *Jackson*, 101 F.3d at 151. Defendants assert, however, that they do not dispute that for FY 2024, Congress appropriated $857,214,000.00 to Global Media in the International Broadcasting Operations account, with $260,032,000.00 allocated to Voice of America.

13.     Congress also provided in the Appropriations Act that "significant modifications to USAGM broadcast hours previously justified to Congress, including changes to transmission platforms (shortwave, medium wave, satellite, Internet, and television), for all USAGM language services shall be subject to regular notification procedures of the Committees on Appropriations." *See* Further Consolidated Appropriations Act of 2024, Pub L. No. 118-47, div. F., 138 Stat. 460, 735-36 (2024).

**RESPONSE**: Disputed, on the grounds that this this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R.

Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA.

14.     Congress made this appropriation only after USAGM made a specific presentation to Congress, through a budget justification, as to why the money Congress appropriated was necessary and how it would be spent. That presentation set out detailed information about VOA's broadcast hours across numerous countries, languages, and regions. ECF No. 49-3 (2025 CBJ) at 82-86. It then requested specific sums to cover the needs for each component of its operation. *See id.* at 65-67. In addition to these amounts, VOA and USAGM requested $238,359,000 for Mission Support (including contracting and procurement and human resources) and $178,473,000 for Technology, Services, and Innovation (including operating transmitting stations and disseminating radio and satellite services). *Id.* at 69-71.

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument.  *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9.  Also, disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA. Further, disputed on the grounds that Plaintiffs fail to cite to the record for at least one "fact." *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 7(h)(1); *Jackson*, 101 F.3d at 151. Defendants assert, however**,** that for the FY 2025 CBJ in March 2024, USAGM requested $234,330,000 for Mission Support, of which $173,022,000 is for the Office of Technology, Services, and Innovation. USAGMBudget_FY25_CBJ_03-08-24-1.pdf.

15.     Congress renewed VOA's and USAGM's funding several times. Through the

Continuing Appropriations and Extensions Act of 2025, Congress renewed VOA's and USAGM's funding. Pub. L. No. 118-83, 138 Stat. 1524 (2024). In relevant part, that law appropriated "[s]uch amounts as may be necessary, at a rate for operations as provided in the applicable appropriations Acts for fiscal year 2024 and under the authority and conditions provided in such Acts, for continuing projects or activities (including the costs of direct loans and loan guarantees) that are not otherwise specifically provided for in this Act, that were conducted in fiscal year 2024." *Id.*, Div. A, § 101.

**RESPONSE**: Disputed, on the grounds that this this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA.

16.    Upon the expiration of this continuing resolution, Congress again renewed its appropriations to VOA and USAGM on the same terms through yet another continuing resolution, the American Relief Act of 2025. Pub. L. No. 118-158, 138 Stat. 1722, 1723 (2025). Those appropriations were made through March 14, 2025. *Id.*, Div. A § 101.

**RESPONSE**: Disputed, on the grounds that this this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA.

17.    On March 15, 2025, President Trump signed into law Congress's further appropriations on the same terms to VOA and USAGM, which now ran through September 30, 2025. H.R. 1968, 119th Cong. § 1101(a) (2025). As before, Congress appropriated "[s]uch amounts as may be necessary, … under the authority and conditions provided in applicable

appropriations Acts for fiscal year 2024, for projects or activities (including the costs of direct loans and loan guarantees) that are not otherwise specifically provided for, and for which appropriations, funds, or other authority were made available." *Id.* On November 12, 2025, the President signed into law, following Congress' passage, the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Verterans Affairs, and Extensions Act, 2026, which continues appropriations to USAGM and VOA on the same terms as the above-referenced laws. H.R. 5371, 119th Cong., Div. A, § 101 (2025) (enacted); Congress.gov, H.R.5371-Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, https://www.congress.gov/bill/119th-congress/house-bill/5371 (last accessed Nov. 13, 2025).

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA.

18.     Global listeners depend on VOA and USAGM programming to access objective and truthful reporting, especially in countries and regions affected by censorship and repression. *See supra*; *see also* ECF No. 16-13 in 25-cv-1015 ¶ 19 (discussing reliance of North Korean people on VOA's daily North Korea program).

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the

threshold requirements to substantiate a claim under the APA.

19.     Organizations like Reporters Sans Frontières (RSF) and The NewsGuild-CWA (TNG-CWA) rely on VOA and USAGM programming to support their work. *See, e.g.*, ECF No. 16-15 in 25-cv-1015; ECF No. 16-16 in 25-cv-1015 ¶¶ 15-16 (discussing importance of USAGM programming to TNG-CWA reporters abroad); *see also* Ex. A (Nov. 12, 2025 Bruttin Declaration). As this Court has already repeatedly found, groups like RSF rely on VOA as a "trustworthy source of news" in countries where they otherwise cannot access objective information. *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 38 (D.D.C. 2025). RSF alone relies on VOA programming in many countries that as a result of Defendants' downsizing decision lost full access to any VOA broadcasting and reporting. ECF No. 100 at 14-15. It also relies on VOA to report on its own "reports and advocacy efforts." *Widakuswara*, 779 F. Supp. 3d at 28.

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9.

20.     Prior to March 15, 2025, VOA provided comprehensive, multimedia reporting in 49 languages to an estimated 362 million people across the globe on a weekly basis. ECF No. 4-5 ¶ 1.

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate a claim under the APA. Also, this "fact" consists of "speculation, conjecture, and assumptions." *See Williams v. Court Servs. & Offender Supervision Ag. for D.C.*, Civ. A. No. 08-1538 (RCL), 2015 WL 3876602, at *1 (D.D.C. June 22,

11

2015) (striking response to statement of facts where responses were "replete with argument, speculation, conjecture, and assumptions," were voluminous, not concise, and failed to cite to record evidence).

21.      USAGM and VOA employed approximately 1,147 full-time employees and had employment contracts with 598 personal service contractors (PSCs). ECF No. 13-4 ¶ 3. VOA accounted for approximately 1,300 of these full-time employees and PSCs. ECF No. 4-5 ¶ 2. Approximately 1,000 of VOA's employees and contractors were journalists. *Id.* ¶¶ 1-2.

**RESPONSE**: Disputed, as this statement is this "fact" consists of "speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1.

22.      Many of these PSCs were key VOA journalists from other countries who delivered truthful reporting to those living abroad. *Id.* ¶ 2.

**RESPONSE:** Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this "fact" consists of "speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1.

23.      A staff of 32 radio broadcast technicians was essential to keeping this expansive programming running. ECF No. 16-13 in 25-cv-1015 ¶¶ 4, 5, 11, 14.

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this "fact" consists of "speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1.

24.    USAGM provided additional staffing and operational capacity to support VOA and its sister entities. Specifically, USAGM's mission support office provided "a range of support services," including human resources and information technology, among other functions. ECF No. 49-3, at 23-29. These functions were critical to USAGM's and VOA's broadcast functions: Mission Support's Office of Technology, Service, and Innovation "manage[d] IT services and infrastructure for USAGM's federal broadcast networks and distribute[d] content for the entire Agency." *Id*. at 27.

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this "fact" consists of "speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1.

25.    On March 14, 2025, hours prior to signing into law Congress's appropriations to VOA and USAGM, the White House issued an Executive Order, applicable to USAGM, titled "Continuing the Reduction of the Federal Bureaucracy." Exec. Order No. 14,238, 90 FED REG. 13043, 13043 (Mar. 14, 2025) (also available at https://tinyurl.com/2wue2bt7).

**RESPONSE:** Undisputed.

26.    USAGM's leadership then made a decision to implement the Executive Order without any independent analysis of whether it embodied sound policy consonant with the mandates governing the agency or with basic principles of administrative procedure. Defendants made this decision almost instantaneously. Then-Senior Adviser Kari Lake testified that she "learned about [the executive order] at night" on March 14th. Lake Dep. 106:4-15. She "didn't know about [the] executive order" before that. *Id.* at 97:13-14; *see also id.* at 100:4-15. But by the

very "next day," Lake had already "*decided* to get busy to work" reducing VOA's and USAGM's operation from its current operation—in which approximately 1,300 employees delivered news to 362 million people nationwide—to a skeleton crew, which Defendants referred to as the "statutory minimum." *Id.* at 143:13-20, 106:4-15 (emphasis added); *see also id.* at 143:13-19 (there was a "decision of the team" to "follow the President's executive order" and "reduce" VOA and USAGM to the "minimum presence and function required by law").

      **RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, the statements in this paragraph fail to comply with Local Rule 7(h) because it is not concise and should be stricken from the record. *See* LCvR 7(h); *see also, e.g., Walker v. Dis. of Columbia*, 279 F. Supp. 3d 246, 253 (D.D.C. 2017) (Plaintiff's lengthy statements of facts did not comply with LCvR 7(h)(1) and were stricken by the Court). Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper. Further, Defendants assert that Plaintiffs mischaracterize Kari Lake's deposition testimony. Ms. Lake testified that she consulted with Tarak Macheka and Mora (OPM), senior leadership at the agency, Royce Min (20 years federal government attorney), Victor Morales (36 years with federal government), Crystal (head of Human Resources), Roman Napoli (CFO), Chris Luer, Terry Balazs. *See* Lake Dep., ECF No. 94, at 106:4 – 107:18, 144:3-25.

      27.    Lake made clear that in her view, the Executive Order was the only direction she needed: "My view is that whatever the President decides to do with this agency in conjunction

with the legislature, we will abide by that." *Id.* at 129:7-9; *see also id.* at 147:9-13 ("the President really decided to reduce the agency to its statutory minimum"); *id.* at 153:3-6 ("And I don't think it needed to be accepted. What needed to be accepted was that the President had ordered us to reduce the agency to its statutory minimum.").

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument.  *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this "fact" consists of "speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

28.     At that point, Lake had been delegated "95 percent of" the "authorit[ies] of the CEO"—everything other than "[w]riting reports that were due." *Id.* at 55:3-13; *see also id.* at 56:13-20 (this designation happened before the Executive Order was issued).

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of

Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025,
Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA
claims is plainly improper.

29.     Defendants then began implementing their plan that day, and over the next several
days, halting only in the face of judicial intervention. But the "decision" to reduce the agency to
its "statutory minimum" was "made on March 15th." *Id.* at 107:22-108:7.

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties'
motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically,
this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the
threshold requirements to substantiate any claim under the APA. Also, this "fact" consists of
"speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1. Further,
disputed on the grounds that Plaintiffs fail to cite to the record for at least one "fact." *See* Fed. R.
Civ. P. 56(c)(1)(A); LCvR 7(h)(1); *Jackson*, 101 F.3d at 151. Also, this Court's limited grant of
expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs'
claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to
Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is
plainly improper.

30.     The decision to reduce operations to the so-called "statutory minimum" was
made—and Defendants began implementing that decision by going off the air, placing employees
on leave, and firing PSCs—before they even formulated their view of what the statutory minimum
actually was. It was not until March 18, in conjunction with other staff, that Defendants generated
the Statutory Minimum Memorandum, memorializing their decision to adopt the Executive
Order's directive and reduce VOA and USAGM to the "statutory minimum" number of personnel

necessary to maintain the "statutory minimum" functions. Defendant Lake made clear that they developed this Memorandum following their decision, which was "on the President's Executive Order." Ex. B at 2 (Lake Dep. Ex. 3).

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this "fact" consists of "speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1. Further, disputed on the grounds that Plaintiffs fail to cite to the record for at least one "fact." *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 7(h)(1); *Jackson*, 101 F.3d at 151. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

31.     This Memorandum "became guidance for what statutory minimum was so that [Defendants] could effectuate the President's executive order," Lake Dep. 156:13-19, and "a guideline to how we would effectuate the statutory minimum," *id.* at 163:21-22; *see also id.* at 153:8-18 ("I was simply asking them, what is statutory minimum? This is the document."); *id.* at 167:14-17 ("Q: And wasn't this statutory minimum document laying out the maximum extent consistent with law? A: Yes."). It set out recommendations for how many positions to retain and concluded that "[a]ll other positions would be terminated." Ex. B at 2. The Memorandum is a "foundational document that [the agency] can rely on." Lake Dep. 168:13-14.

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this

17

statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

32.    The Statutory Minimum Memorandum does little more than list the number of employees that will fill various positions after the downsizing is accomplished. Ex. B at 2. It contains no findings, analysis, or consideration of any relevant factors. *Id.*

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA.

33.    The only broadcasting standard and principle the Memorandum recites is that U.S. "international broadcasting shall not … duplicate the activities of private United States broadcasters." *See id.* at 3 (quoting 22 U.S.C. § 6202(a)(3)). The Memorandum then declares, "The Voice of America functional requirement and scope is duplicative with the activities of private United States broadcasters." *Id.* at 4.

**RESPONSE**: Disputed, as this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction or Plaintiffs' have met the

threshold requirements to substantiate any claim under the APA.

34.     Even though it was labeled as a "recommendation," Lake made clear that it was final. It reflects "the decision that this was [the] statutory minimum." Lake Dep. 153: 14-18. It was not a recommendation that "needed to be accepted." *Id.* at 153:3-4. This memorandum was then used to "guide[] the agency's decisions," from the date it was issued—March 18th—up to the present day. *Id.* at 168:6-14.

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument.  *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Further, disputed on the grounds that Plaintiffs fail to cite to the record for at least one "fact." *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 7(h)(1); *Jackson*, 101 F.3d at 151. Further, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

35.     Defendants also made other public, written statements reflecting Defendants' decision to drastically reduce VOA's and USAGM's operation. USAGM issued a press release announcing that USAGM "is not salvageable," and that "from top-to-bottom this agency is a giant rot and burden to the American taxpayer—a national security risk for this nation—and irretrievably broken." *USAGM, Senior Advisor Kari Lake cancels obscenely expensive 15-year-lease that*

*burdened the taxpayers and enforces Trump's Executive Order to drastically downsize agency*, U.S. AGENCY FOR GLOBAL MEDIA (Mar. 15, 2025), https://tinyurl.com/3f5jdumn ("USAGM Release"). Kari Lake reiterated that drastic actions were being taken to shut down USAGM and the entities it oversees in the days following the March 15 release. In two interviews, Lake stated that USAGM is not salvageable or unsalvageable multiple times, Kari Lake (@KariLake), X (Mar. 18, 2025, 4:32 PM), https://tinyurl.com/zc3798x4; Kari Lake (@KariLake), X (Mar. 17, 2025, 9:39 PM), https://tinyurl.com/8yxz3kpr, that VOA and related entities put out "anti-American content," and that there is "no oversight over the editorial side of what is going out over the air and that this agency has tried to put up a wall, a border wall around it, Voice of America and others… that says … you can't tell us what we say on the airwaves … that's not how things should operate," Kari Lake (@KariLake), X (Mar. 19, 2025, 7:21 PM), https://tinyurl.com/mr27dr5p.

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Further, disputed on the grounds that Plaintiffs fail to cite to the record for at least one "fact." *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 7(h)(1); *Jackson*, 101 F.3d at 151.

36.    Defendants directed that all staff be placed on administrative leave while they determined what the "statutory minimum" was. Lake Dep. 102:4-9; *id.* at 107:20-108:19.

**RESPONSE**: Disputed, on the grounds that this this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R.

Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper. Further, Defendants also assert that Ms. Lake consulted with many people including officials with the Office of Personnel Management and that the employees are on paid administrative leave. Lake Dep. 105:19-108:16.

37.    On March 15, 2025, Lake "decided to place nearly all USAGM staff on paid administrative leave." *Id.* at 102:4-9. That day, 1,042 of the agency's 1,147 full-time employees were placed on administrative leave, *see* ECF No. 88-4 in 25-cv-1015 ¶ 5, "until further notice." USAGM Release.

**RESPONSE**: Disputed, on the grounds that this this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper. Further, Defendants also assert that Ms. Lake consulted with many people including officials with the Office of Personnel Management and that the employees are on paid administrative leave. Lake Dep. 105:19-108:16.

38.    Also on March 15, 2025, Lake "decided to terminate all the personal service

contractors." Lake Dep. 102:14-21. The next day, USAGM notified VOA's PSCs that they would be terminated effective March 31, 2025. ECF No. 4-5 ¶ 26. The termination notice applied to approximately 600 PSCs who worked at VOA, many of whom were key journalists and some of whom were on J-1 visas that expired 30 days after they were terminated. *Id.* ¶ 34. Although this termination notice was temporarily stayed by this Court's Preliminary Injunction issued on April 22, it was effectuated in May, when several hundred VOA PSCs were terminated. ECF No. 112-3 in 25-cv-1015 ¶ 11.

**RESPONSE:** Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

39.    Between March 15 and the government shutdown on October 1, hundreds of VOA and USAGM employees were paid their full government salary but prohibited from doing any work. ECF No. 77 at 2.

**RESPONSE**: Undisputed.

40.    On March 15, 2025, Lake "directed that VOA cease all programming" and "ordered that the VOA news services, the foreign news services, should shut down their

transmitters." Lake Dep. 109:7-110:1. As a result, on March 17, 2025, William Martin, Director for Stations and operations, instructed all USAGM Foreign Service employees to expect to be placed on administrative leave, but to first shut down all transmitters at their stations within two days and request the respective missions to place all locally employed staff on administrative leave. ECF No. 4-5 ¶ 25.

**RESPONSE**: Disputed, this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

41.    Days later, Defendants notified union officials that Defendants intended to separate all radio broadcast technicians and 594 AFGE members "including broadcast journalists, technicians, budget analysts, electronics engineers, and others." ECF No. 100 at 2-3.

**RESPONSE**: Disputed on the grounds that Plaintiffs fail to properly cite to the record for one fact. *See* Fed. R. Civ. P. 56(c)(1)(A); LCvR 7(h)(1); *Jackson*, 101 F.3d at 151. The document Plaintiffs cite to is the Court's September 29, 2025, order.

42.    As a result of these actions and others, VOA ceased all broadcasting activities for the first time in 83 years. Soltani Dep. at 175:20-22 ("Q: Did all of VOA's language services cease all broadcasting and programming in March 2025? A: Yes."); ECF No. 16-13 in 25-cv-1015 ¶ 14.

**RESPONSE**: Disputed, on the grounds that this "fact" consists of "speculation, conjecture,

and assumptions." *See Williams*, 2015 WL 3876602, at *1. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

43.     Rather than "consider[ing] the interest of audiences abroad before … ordering that VOA cease all programming," Lake categorically and immediately "got busy working to effectuate the President's executive order." Lake Dep. 110:18-22. VOA "continued to sit silent" for months. ECF No. 100 at 4 (cleaned up). Indeed, Lake explained that the only consideration she gave to the effect of abruptly ceasing all broadcast on audiences abroad was to loop a "graphic" with the "VOA charter" on it, rather than "go to … snow … until [Defendants] determined what the statutory minimum was." Lake Dep. at 113:20-114:8.

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper. Further, Defendants assert Ms. Lake did not testify that she got busy to work before considering the interests of audiences abroad nor that she did not consider the interests of audiences abroad. Lake Dep. 111:1-17, 112:18-21, 113:4-18.  Ms. Lake also testified that she did not want to "go to snow" and that graphic has been removed with content/broadcasts brought back up with the language services and, for example, that Cuban broadcasting resumed "right away." *See* Lake

Dep. 114:9-115:5.

44.     Since then—and following this Court's preliminary injunction—Defendants have begun a skeletal VOA operation. VOA is operating four language services in a substantially reduced fashion and with substantially fewer personnel. *See generally, e.g.*, ECF No. 69-2. Defendants recently decided to restart some digital programming for the Korean and Russian Services. Soltani Dep. 199:13-21. Defendants decided to resume some digital programming in North Korea following "the President's tweet about South Korea." Lake Dep. 221:11-15.

**RESPONSE:** Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this "fact" consists of "speculation, conjecture, and assumptions." *See Williams*, 2015 WL 3876602, at *1.

45.     Lake explained minor fluctuations in staffing as occurring because when a "big story breaks, you bring more people in." *Id.* at 238:9; *id.* at 238:22-239:4.

**RESPONSE**: Disputed, on the grounds that this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper.

46.     Defendants have admitted that they could not operate VOA at even the drastically reduced levels it had maintained between late-May 2025 and September 30, 2025, with

the staffing contemplated by the Memorandum. *See* Soltani Dep. 228:17-19 ("Current operation of Persian service with two employees and zero PSCs is not possible, if that's what you're asking."); *id.* at 229:6-9 ("Current operation of China division with two employees only and zero PSCs or any other journalist, is not possible to maintain at this level."); *id.* at 229:18-230:1 ("Current operation of Dari and Pashto, with two employees each and zero PSCs or any other journalists, cannot be maintained as current -- and as I -- as I mentioned in my declaration, the current programming is designed based on current staffing levels."); *see also, e.g.*, *id.* at 230:16-19 ("[T]he current level of programming is designed based -- based on current level of employees that we have, so it's not possible to maintain with two people.").

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument. *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this statement is immaterial to the resolution of the parties' motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court's has jurisdiction, or Plaintiffs' have met the threshold requirements to substantiate any claim under the APA. Also, this Court's limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs' claims, only with respect to their motions to show cause and this Court's July 30, 2025, Order to Show Cause; thus, Plaintiffs' extensive reliance on the deposition to support their APA claims is plainly improper. Further, Defendants assert that Plaintiffs mischaracterize evidence. Namely, Ms. Lake's letter in June 2025 stated that Global Media staffing would *not* reduce numbers to those from the original March 18 memo. *See* Pl. Ex. B, ECF No. 166-4; *see also* Lake Dep. 237:20 – 238:2 ("...And this [March 18 memo] was our first document on statutory minimum put – put together by the career agency staff, and as I said here, we anticipate being

above the originally proposed statutory minimum staffing...”).

47.     As Defendants have admitted, Defendants are not broadcasting to all nations where certain voices and opinions are prevented from reaching fellow countrymen due to censorship and repression, nor have they determined whether certain regions of the world are significant. Soltani Dep. 266:3-269:14 (admitting that several countries to which VOA is not broadcasting prevent voices and opinions from reaching fellow countrymen through repression and censorship); Lake Dep. 273:13-277:4 (Lake stating that she generally lacks any opinion as to whether certain countries prevent their people from engaging with fellow countrymen through repression and censorship); *see also, e.g.*, *id.* at 285:2-11 (Lake admitting that she has no opinion as to whether Africa is a significant region of the world).

**RESPONSE**: Disputed, on the grounds that this paragraph consists of legal conclusions and Plaintiffs blend alleged factual assertions with legal argument.  *See Jackson*, 101 F.3d at 151; *Toomer*, at *4; *Robertson*, 239 F. Supp. 2d at 9. Also, this statement is immaterial to the resolution of the parties’ motion for summary judgment. *See Anderson*, 477 U.S. at 248; Fed. R. Evid. 401. Specifically, this statement has no bearing on whether this Court’s has jurisdiction, or Plaintiffs’ have met the threshold requirements to substantiate any claim under the APA. Also, this Court’s limited grant of expedited discovery was not contemplated in the litigation with respect to the merits of Plaintiffs’ claims, only with respect to their motions to show cause and this Court’s July 30, 2025, Order to Show Cause; thus, Plaintiffs’ extensive reliance on the deposition to support their APA claims is plainly improper.

*        *        *

Dated: January 12, 2026
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____ /s/ Stephanie R. Johnson _____
     STEPHANIE R. JOHNSON,
      D.C. Bar # 1632338
     Assistant United States Attorney
     Civil Division
     601 D Street, NW
     Washington, DC 20530
     (202) 252-7874
     Stephanie.Johnson5@usdoj.gov

*Attorneys for the United States of America*

OF COUNSEL:

Brian Miller
Anna Katherine Drake
Office of the General Counsel
U.S. Agency for Global Media