UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PATSY WIDAKUSWARA, et al., | |
| Plaintiff, | |
| v. | Civil Action No. 25-1015 (RCL) |
| KARI LAKE, et al., | |
| Defendant. | |

**DEFENDANTS' COMBINED MOTION TO DISMISS, OPPOSITION TO PLAINTIFFS'
PARTIAL MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

     I.      BACKGROUND ................................................................................... 2

          A.    Statutory Background ................................................................ 2

          B.    Procedural History .................................................................... 3

Legal Standards ................................................................................................................... 4

Argument ............................................................................................................................. 6

     I.     This Court Lacks Jurisdiction Over Plaintiffs' Claims ........................... 6

     II.    Ms. Lake's Appointments Were Valid ................................................ 8

     III.   Any Relief Should Be Limited in Scope ............................................. 16

Conclusion ......................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
  ("AFGE"), 929 F.3d 748 (D.C. Cir. 2019) .................................................................. 7
*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ................................................................................ 5
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................. 5
*Aviel v. Gor*,
  NO. CV 25-778 (LLA), 2025 WL 2374618 (D.D.C. Aug 14, 2025) ....................... 11
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 5
*Edmond v. United States*,
  520 U.S. 651 (1997) .................................................................................................. 9
*Grosdidier v. Broad. Bd. of Governors*,
  709 F.3d 19 (D.C. Cir. 2013) ................................................................................... 5
*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ................................................................................. 5
*Hernandez v. Pritzker*,
  741 F.3d 129 (D.C. Cir. 2013) ................................................................................. 6
*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006) ................................................................................. 5
*L.M.-M. v. Cuccinelli*,
  442 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................ 9, 14
*Laningham v. Dep't of Navy*,
  813 F.2d 1236 (D.C. Cir. 1987) ............................................................................... 6
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................. 4
*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ................................................................................................ 16
*Nat'l Treasury Emps. Union v. Vought*,
  No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) .................................... 7
*Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*,
  435 F.3d 326 (D.C. Cir. 2006) ............................................................................... 16
*NLRB v. SW Gen., Inc.*,
  580 U.S. 288 (2017) ...................................................................................... 8, 10, 12
*Nyunt v. Chairman, Broadcasting Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ................................................................................. 7
*Printz v. United States*,
  521 U.S. 898 (1997) ................................................................................................ 10

*Scott v. Harris*,
    550 U.S. 372 (2007) ........................................................................................... 5
*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) ......................................................................... 5
*Trump v CASA*, Inc.,
    606 U.S. 831 (2025) ......................................................................................... 16
*United States v. Eaton*,
    169 U.S. 331, 18 S. Ct. 374, 42 L. Ed. 767, 33 Ct. Cl. 508 (1898) ................ 12
*United States v. Fausto*,
    484 U.S. 439 (1988) ........................................................................................... 7
*Walden v. Patient-Centered Outcomes Rsch. Inst.*,
    304 F. Supp. 3d 123 (D.D.C. 2018) ............................................................. 6, 7
*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ......................................................................................... 10

Statutes

5 U.S.C. 3345(a)(1) ................................................................................. 11, 12, 14
5 U.S.C. § 3345(a)(3) ..................................................................................... 13, 15
5 U.S.C. §§ 3345-3349d .......................................................................................... 12
22 U.S.C. § 3345(a) .................................................................................................. 10
22 U.S.C. § 3345(a)(1) .............................................................................................. 10
22 U.S.C. § 6208a ...................................................................................................... 2
22 U.S.C. §§ 6203 ......................................................................................... 2, 10, 11
22 U.S.C. §§ 6204(a) ...................................................................................... 2, 3, 4
28 U.S.C. § 1331 ......................................................................................................... 7
Pub. L. 114-328 .......................................................................................................... 2

Other Authorities

*Unilateral Appointments*,
    2017 Cato Sup. Ct. Rev. 151 ............................................................................ 13

Defendants, Kari Lake, Victor Morales, and the United States Agency for Global Media ("USAGM" or "Global Media") by and through undersigned counsel, hereby submit this Combined Motion to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1), Opposition to Plaintiffs' Partial Motion for Summary Judgment, and Cross-Motion for Summary Judgment pursuant to Rule 56.

As set forth more fully herein, Defendants move to dismiss the supplemental causes of action set forth in the Supplemental Complaint—Count 10 (Violation of the Appointments Clause) and Count 11 (Violation of the Federal Vacancies Reform Act)—for lack of jurisdiction. Alternatively, Defendants cross-move for summary judgment under Rule 56. Accompanying this combined motion is a supporting declaration of Neeraja Gumma with exhibits, a statement of material facts not in dispute ("SOMF"), responses to Plaintiffs' statement of material facts, and a proposed order.

## INTRODUCTION

This combined motion addresses Plaintiffs' Supplemental Claims which allege Ms. Lake's appointments at USAGM violate the Appointments Clause and Federal Vacancies Reform Act ("FVRA"), and therefore, any actions she took in such role are invalid and must be vacated.

As discussed further below, this Court should dismiss the First Supplemental Complaint in its entirety. As a threshold matter, this Court lacks jurisdiction over Plaintiffs' supplemental claims brought under the Appointments Clause or the Federal Vacancies Reform Act ("FVRA"). Should the Court allow this matter to proceed to summary judgment, Defendants submit Ms. Lake's appointments were lawful under both the Appointments Clause and the FVRA and no such alleged violation exists. As a result, Plaintiffs are not entitled to vacatur of any of Ms. Lake's actions.

## I.  **BACKGROUND**

### A.  **Statutory Background**

The mission of Global Media is to inform, engage, and connect people around the world in support of freedom and democracy.  *See* https://www.usagm.gov/whowe-are/mission/.  In furtherance of that mission, Global Media oversees multiple entities, including Voice of America. *See id.*; *see also* 22 U.S.C. § 6208a.  To effectuate its oversight authority, Congress granted Global Media's CEO the authority to, among other things: "direct and supervise all broadcasting activities conducted" by such entities; "review and evaluate the mission and operation of, and to assess the quality, effectiveness, and professional integrity of, all such [entities'] activities within the context of the broad foreign policy objectives of the United States"; and "[t]o undertake such studies as may be necessary to identify areas in which broadcasting activities under its authority could be made more efficient and economical." 22 U.S.C. §§ 6204(a)1, (a)(2), (a)(8).  Among other requirements, Congress directed that all government-funded and operated international broadcasts under the Global Media umbrella "shall" be "consistent with the broad foreign policy objectives of the United States," and "shall include . . . a balanced and comprehensive projection of United States thoughts and institutions." *Id.* § 6202(a)(1), (b)(2); *see also id.* § 6202(c)(2) (same for Voice of America broadcasts).

In December 2016, Congress passed, and then-President Obama signed, the 2017 National Defense Authorization Act, which established Global Media's current governing structure. National Defense Authorization Act of 2017, Pub. L. 114-328, 130 Stat. 2000, 2549, § 1288.  That law restructured governance of the Global Media broadcast networks by dissolving a governing board structure and centralizing control in a single Chief Executive Office ("CEO"). 22 U.S.C. §§ 6203, 6204(a)(1), (b). Congress vested the CEO with the many powers previously held by the board, including to "ensure" broadcast activities are consistent with the standards Congress

established, including that they be "balanced and comprehensive," *id.* §§ 6204(a)(3), 6202(b)(2), and to "appoint such personnel for the [CEO] as the [CEO] may determine to be necessary." *Id.* § 6204(a)(11). In accordance with the statute, the CEO of Global Media holds broad supervisory authority. 22 U.S.C. § 6204(a).

### B. Procedural History[1]

This matter commenced on March 21, 2025 by the filing of Plaintiffs' Complaint which alleged a total of nine claims against Defendants. These claims included alleged violations of the First Amendment (Counts I and II); the Administrative Procedures Act ("APA") (Counts III, V, VI); the statutory firewall (Count IV); a claim under the Mandamus Act and the All Writs Act (Count VII); and an Appointments Clause/Ultra Vires claim (Count IV). On July 18, 2025, Defendants moved to dismiss the nine claims asserted in Plaintiffs' Complaint (ECF No. 128). On November 17, 2026, Plaintiffs subsequently moved for partial summary judgment on these claims (ECF. No. 166). Defendants responded in opposition and cross-moved for partial summary judgment on January 12, 2026 (ECF No. 189). These motions have been fully briefed and are currently pending before the Court.

Also on November 17, 2025, Plaintiffs moved for leave to supplement their Complaint, which Plaintiffs explained was intended to update their Appointment Clause claim to include new factual allegations and to assert a new claim under the FVRA (ECF No. 167). The new allegations referenced testimony from Ms. Lake's September 9, 2025 deposition. On the same day, Plaintiff filed a motion for partial summary judgment on their Appointments Clause claim and the newly asserted FVRA claim (ECF No. 168). For relief, Plaintiffs seek a declaration that Ms. Lake's

---

[1] Additional information regarding the procedural history for this matter can be found in Defendants' pending motion to dismiss (ECF No. 128) and motion for partial summary judgment (ECF No. 189).

appointments to the positions of Senior Advisor, Deputy CEO, and Acting CEO of USAGM violated the Appointments Clause and the FVRA, and in turn, a declaration that any actions taken by Ms. Lake are void and without force and effect, and an injunction ordering that any actions taken by Ms. Lake or under her direction are vacated.  Supp. Compl. (ECF No. 167-1) at 7.

Defendants now move to dismiss Plaintiffs' supplemental claims, oppose Plaintiffs' partial motion for summary judgment and cross-move for partial summary judgment on those claims.

### C.    Factual Timeline of Appointments and Resignations

On January 20, 2025, Amanda Bennett resigned from her role as CEO of USAGM. *See* Gumma Decl. ¶3; SOMF ¶1. On February 27, 2025, Ms.  Lake was appointed Senior Advisor, a non-career Senior Executive Service position, at USAGM. *See* Gumma Decl. ¶4, Exhibit A; SOMF ¶2. On March 3, 2025, the White House Presidential Personnel Office ("PPO") informed USAGM's then-General Counsel that, on February 27, 2025, the President had designated Mr. Victor Morales, then in a career position as Senior Advisor at USAGM, to be Acting CEO of USAGM. *See* Gumma Decl. ¶5; SOMF ¶3.

On July 16, 2025, Acting CEO Morales reassigned Ms. Lake to the position of Deputy CEO.  *See* Gumma Decl. ¶6, Exhibit B.; SOMF ¶4. On July 31, 2025, PPO conveyed that Mr. Morales' designation as Acting CEO of USAGM had ended.  Gumma Decl. ¶8; SOMF ¶6. Since that time, Mr. Morales has remained in his position as Senior Advisor. *Id*. Ms. Lake's service as Acting CEO of USAGAM began on July 31, 2025 and discontinued on November 19, 2025. Gumma Decl. ¶9; SOMF ¶7. Ms. Lake remains in the Deputy CEO position to date. *See* Gumma Decl. ¶6; SOMF ¶4.

### LEGAL STANDARDS

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A

court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. *Anderson*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under Rule 56, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party must, to defeat the motion, designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Though courts must view this evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" her position—there "must be evidence on which the jury could reasonably find for" the non-movant. *Anderson*, 477 U.S. at 252. Furthermore, the nonmoving party "may not rest upon mere allegation or denials of his pleading but must present affirmative

evidence showing a genuine issue for trial." *Laningham v. Dep't of Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal citation and quotation marks omitted). This must be admissible evidence. *Hernandez v. Pritzker*, 741 F.3d 129, 134 (D.C. Cir. 2013); *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 304 F. Supp. 3d 123, 142–43 (D.D.C. 2018).

## ARGUMENT

### I. This Court Lacks Jurisdiction Over Plaintiffs' Claims

On November 17, 2025, Plaintiffs filed their First Supplemental Complaint (ECF No. 167-1) citing two supplemental causes of action, as well as their Partial Motion for Summary Judgment (ECF. No. 168) on the same two claims.

Plaintiffs once again challenge the Defendants' employment actions (ECF No. 167-1 ¶ 25), just as they did in the original Complaint and the motion for partial summary judgment on those claims. *See Widakuswara* Compl., ECF No. 1  ¶ 42 ("Plaintiffs Widakuswara, Jerreat, and John Does 1-4 [] are journalists—some full-time employees, others independent contractors [] of [Global Media]—whom Defendants have purged from their positions by placing them on indefinite administrative leave ahead of likely [RIF]terminations or cancelling their contracts."); *id.*, Pls. Partial Mot. (ECF No. 166-1) at 22  (identifying alleged individual actions including "[p]lacing 1,042 of the agency's 1,147 full-time employees on administrative leave on March 15" and "[t]erminating most of [Global Media] staff, including [Voice of America] radio broadcast technicians, which Defendants proposed to do on March 25"); *Abramowitz* Compl., ECF No. 1, Prayer for Relief ¶ (c) (plaintiffs ask the Court to order Defendants to "cancel the termination of personal services contracts with approximately 500 employees" and "restore [Voice of America's] personnel and operating capacities such that the entities may continue their broadcasting activities at the level before the above actions were taken").

The core allegation within the First Supplemental Complaint is that Ms. Lake has allegedly instituted an unlawful reduction in force ("RIF") that would "terminate the vast majority of staff." *See* Suppl. Compl. (ECF No. 167-1) at 5. Plaintiffs seek vacatur of this and other actions Ms. Lake took while acting allegedly "without authority" in violation of the Appointments Clause and the FVRA. *Id.* at 7-8.

Reductions in force, however, can only be challenged by the affected employees under the procedures set forth in the Civil Service Reform Act ("CSRA"). *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *1 (D.C. Cir. Aug. 15, 2025). Plaintiffs seek to evade the comprehensive remedial scheme established by the CSRA by filing this action in district court. Although district courts have jurisdiction over civil actions arising under federal law, see 28 U.S.C. § 1331, "Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump ("AFGE")*, 929 F.3d 748, 754 (D.C. Cir. 2019). The CRSA provides the proper statutory scheme for the relief Plaintiffs seek within their First Supplemental Complaint. *See United States v. Fausto*, 484 U.S. 439, 444 (1988); *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) ("What you get under the CSRA is what you get.")

Defendants incorporate the arguments in their previous motion to dismiss and reply in further support of that motion as though fully stated herein as they relate to this Court's lack of jurisdiction over USAGM's personnel decisions, including, but not limited to, terminations, reductions in force, and staffing levels. *See, e.g.*, *Widakuswara*, Defs. Mot. to Dismiss (ECF No. 128) at 11–19; *id.*, Defs. Reply (ECF No. 148) at 2–7. Additionally, Defendants have previously moved to dismiss Plaintiffs' claims because several of the Plaintiffs' lack organizational and associational standing. *Widakuswara*, Defs. Mot. to Dismiss (ECF No. 128) at 7–11; *see also id.*,

Defs. Reply (ECF No. 148) at 1–2.  Because the motion to dismiss is pending and ripe for a decision, to avoid unnecessary repetition, Defendants incorporate in this motion the arguments in their previously filed motion to dismiss and reply as though fully stated herein.

In conclusion, for the reasons set forth and otherwise incorporated above, the Court lacks jurisdiction over the supplemental claims and should dismiss Plaintiffs' First Supplemental Complaint (ECF No. 167-1).

**II.**    **Ms. Lake's Appointments Were Valid**

Should the Court determine that it has jurisdiction, Defendants move for summary judgment on the Appointments Clause and FVRA claims.  The resolution of the latter claim largely dictates the outcome of the former because Congress enacted the FVRA to authorize the appointment of acting officials to perform the functions and duties of an office of an Executive agency.  *NLRB v. SW Gen., Inc*., 580 U.S. 288, 293 (2017).  As summarized by the Supreme Court, the "general rule" under the FVRA "is that the first assistant to a vacant office shall become the acting officer" but the "President may override that default rule by directing either a person serving in a different PAS [President appointment and Senate confirmation] office or a senior employee within the relevant agency to become the acting officer instead." *Id*. As addressed below, Ms. Lake's appointments were lawful under the FVRA and under the Appointments Clause. Consequently, Plaintiffs are not entitled to vacatur of any of Ms. Lake's actions and Defendants should be granted summary judgment on those claims.

A.    *The Appointments Clause Was Satisfied*.

Plaintiffs allege that the White House's appointment of Ms. Lake as Senior Advisor, Deputy CEO, and Acting CEO were each invalid under the Appointments Clause.  *See generally* Supp. Compl. (ECF No. 167-1). This is not so.

The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States," unless "the Congress . . . by Law vest[s] the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of the Departments." U.S. Const. art. II, § 2, cl. 2. Principal officers, in other words, must be appointed by the President, with the advice and consent of the Senate, and inferior officers must be appointed in that same manner unless Congress supplants that default rule by vesting the appointment power in the President, a court, or a department head. *Edmond v. United States*, 520 U.S. 651, 660 (1997). By dividing authority between the President and the Senate, the Appointments Clause serves as a check on both branches of government and a means of promoting judicious choices of persons for filling the offices of the union. *See L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 6 (D.D.C. 2020).

Here, Ms. Lake was properly appointed by an official exercising delegated authority of the CEO or a valid Acting CEO for each of her appointment actions.

On January 20, 2025, Amanda Bennett resigned from her role as CEO of USAGM. *See* Gumma Decl. ¶3; SOMF ¶1. Ms. Bennett had been confirmed by the Senate before assuming that position. *See* https://www.usagm.gov/2022/12/09/amanda-bennett-sworn-in-as-usagm-ceo/ (last visited Feb. 5, 2026). On February 27, 2025, Ms. Lake was appointed Senior Advisor, a non-career Senior Executive Service position, at USAGM by Roman Napoli, who was carrying out delegable duties and functions of the office of the CEO on that date. *See* Gumma Decl. ¶4, Exhibit A; SOMF ¶ 2. On March 3, 2025, USAGM was notified that the President had designated Mr. Morales, then in a career position as Senior Advisor at USAGM, to assuming the Acting CEO position. *See* Gumma Decl. ¶5; SOMF ¶3. On July 16, 2025, Acting CEO Morales reassigned Ms. Lake to the position of Deputy CEO. *See* Gumma Decl. ¶6, Exhibit B.; SOMF ¶ 4.

On July 31, 2025, the President ended Morales' designation as Acting CEO of USAGM. *See* Gumma Decl. ¶8, Exhibit B.; SOMF ¶6. Because Ms. Lake was serving as first assistant at this time (i.e., Deputy CEO), Ms. Lake was eligible to serve as Acting CEO of USAGM under 22 U.S.C. § 3345(a)(1) in a temporary capacity when Morales had his designation removed. This series of events, which is consistent with the FVRA, does not run afoul of the Appointments Clause.

The President lawfully exercised his discretion in designating Morales to be Acting CEO at USAGM. 22 U.S.C. § 6203. There is no statute that limits or prohibits the President's prerogative to ensure the Agency has temporary leadership, particularly in the context of a Presidential transition. Therefore, nothing required the President to leave USAGM leaderless and unable to "serve and exercise the authorities and powers" under this chapter. 22 U.S.C. § 6203. Instead, the President has the concomitant authority, incident to his Article II power, to designate an acting CEO. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Robert Jackson, J., concurring) ("congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility"). The President's authority to designate—even if the face of alleged statutory silence—is consistent with the Framers' demand for "unity in the Federal Executive" to guarantee "both vigor and accountability." *Printz v. United States*, 521 U.S. 898, 922 (1997).

Because Morales was lawfully serving in this role as an acting officer under 22 U.S.C. § 3345(a), he had authority to take any action that could be taken by a Presidentially confirmed candidate. *SW General,* 580 U.S. at 294. This would include appointing the staff below him, including Ms. Lake.

This matter is distinguishable from the *Aviel* case cited by Plaintiffs, which pertained to the President's removal of agency heads, not appointments. *Aviel v. Gor*, NO. CV 25-778 (LLA), 2025 WL 2374618 (D.D.C. Aug 14, 2025). In *Aviel*, Congress designated the Board of the Inter-American Foundation with the power to "hire and fire." *Id*. Here, the applicable statute provides for the establishment of the position of CEO of USAGM, and it requires an appointment by the President to fill that position. 22 U.S.C. § 6203. Plaintiffs contend that the President does not have "free-floating constitutional power to appoint acting officials," but in the instant matter, the FVRA provides for it.

As a result, the Appointments Clause was satisfied. Mr. Morales was properly designated Acting CEO by the President, and in turn, he properly designated Ms. Lake to the Deputy CEO role, a role that does not require Senate Confirmation because Mr. Morales, as Acting CEO, had the authority to make that appointment. Because Ms. Lake was then the first assistant to Mr. Morales (USAGM only had one Deputy CEO), she properly assumed the position of Acting CEO when Mr. Morales' service in that capacity ended in accordance with the FVRA as addressed below.

B.    *There Was No Violation of FVRA.*

Plaintiffs allege that President Trump improperly appointed Ms. Lake to serve as Deputy CEO in July 2025, and days later, Lake became acting CEO unlawfully. *See* Pls.' Mot. (ECF. No. 168-1) at 13. Plaintiffs allege Ms. Lake was not properly appointed because she was not confirmed by the Senate or properly appointed by the CEO. *Id*.

As discussed above, Ms. Lake was properly appointed by the Acting CEO to the position of Deputy CEO, and her service as Acting CEO was valid under 5 U.S.C. 3345(a)(1). This is the

default method in which an individual, when acting as the "first assistant", can temporarily perform the functions of a vacant Presidential appointment and Senate confirmation ("PAS") office. *Id.*

Since 1792, Congress has provided for the designation of individuals to serve temporarily as acting officers. *SW General,* 580 U.S. at 294. In 1998, Congress enacted the FVRA, 5 U.S.C. §§ 3345-3349d, to govern the designation of acting officials to perform the duties of an executive office for which appointment is subject to Senate confirmation whenever the incumbent officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." *Id.* § 3345(a). The FVRA provides three principal options. First, absent any presidential designation, the "first assistant" to the vacant office shall perform its functions and duties. *Id.* § 3345(a)(1). Second, the President may depart from that default course by designating another Senate-confirmed official. *Id.* § 3345(a)(2). And third, the President may designate an officer or employee within the same agency to perform the vacant office's functions and duties, provided that he or she has been in the agency for at least 90 days in the 365 days preceding the vacancy, in a position for which the rate of pay is equal to or greater than the minimum rate for GS-15 of the General Schedule. *Id.* § 3345(a)(3).

The fact that an officer holds a PAS office does not mean, however, that one who performs the duties of that office in an acting capacity is also a PAS officer. The Supreme Court has long recognized that, when a "subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official." *United States v. Eaton*, 169 U.S. 331, 343, 18 S. Ct. 374, 42 L. Ed. 767, 33 Ct. Cl. 508 (1898). Consistent with this understanding, Congress has provided the Executive Branch with the means of filling vacancies in PAS offices on a temporary basis since the earliest days of the Republic. *See SW General,* 580 U.S. at 294; Thomas

A. Berry, S.W. General: *The Court Reins in Unilateral Appointments*, 2017 Cato Sup. Ct. Rev. 151, 153.

As already established, Mr. Morales was properly designated by the President under his inherent authority to fill the vacant CEO position. 5 U.S.C. § 3345(a)(3). Mr. Morales was previously serving in a career position as Senior Advisor at USAGM. *See* Gumma Decl. ¶5; SOMF ¶3. When Morales's designation was ended by the President on July 31, 2025, Deputy CEO Lake—at the time the sole Deputy CEO at USAGM—validly assumed the vacant role of Acting CEO by default. *Id.* § 3345(a)(1). *See* Gumma Decl. ¶¶8,9; SOMF ¶6,7. The Deputy CEO is the senior most position reporting to the CEO. *See* Gumma Decl. ¶7; SOMF ¶5. Ms. Lake remains in the Deputy CEO position as of today. *See* Gumma Decl. ¶7; SOMF ¶4.

The FVRA, by its plain text, provides as a default that the first assistant to the CEO shall perform the duties of the CEO temporarily in an acting capacity when that office is vacant; here, the first assistant was Ms. Lake. Plaintiffs try to implant onto the FVRA a condition that the first assistant be in place at the time the vacancy initially occurred, but that condition lacks any textual support in the FVRA and conflicts with other provisions of the statute.

Plaintiffs appear to argue that Ms. Lake—despite her position as Deputy CEO—cannot serve as Acting CEO because § 3345(a)(1) requires that the first assistant be in place at the time the vacancy initially arises to serve as acting officer under the FVRA's default rule. Pls' Mot. (ECF. No. 168-1) at 13-16. That argument, if adopted, would upend the functioning of the Executive Branch, which routinely relies on acting officers who serve in that capacity upon being installed as first assistants after (sometimes long after) the officer position became vacant. This practice is most common at the beginning of a new Administration, which typically fills vacancies in Senate-confirmed positions by appointing first assistants, who then serve in an acting capacity

until the Senate confirms the new Administration's nominees.  Plaintiffs' construction would preclude this practice by barring a new Administration from relying upon subsection 3345(a)(1) to fill those vacancies with new appointees.  It would, in other words, eliminate subsection 3345(a)(1) as an option for staffing the Executive Branch at the precise time when it is needed most.  See Opposition Brief at 38, *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, (D.D.C. 2020).

However, Plaintiffs also dispute that Ms. Lake was lawfully appointed to the Deputy CEO role.  The statute "expressly applies to 'the first assistant to the office of [the officer who resigned],'" and not the first assistant of the officer.  Designation of Acting Associate Attorney General, 25 OLC Op. 177, 179 (Aug. 7, 2001) ("2001 OLC Op.") (quoting 5 U.S.C. § 3345(a)(1)).  The natural reading of that phrase is that a person need only be the first assistant to the office during a vacancy to satisfy § 3345(a)(1), and not that he or she be the first assistant to the particular officer who left the position.[2]  Plaintiffs argument confuses the distinction as discussed below.

After then-CEO Amanda Bennett's resignation on January 20, 2025, Mr. Napoli was carrying out the delegable duties and functions of the office of the CEO. Gumma Decl. ¶4; Ex. A thereto.  Those duties then were assumed by Victor Morales after his designation by President Trump. *See* Gumma Decl. ¶5; SOMF ¶ 3. Mr. Morales' designation was proper under the President's inherent authority discussed above and consistent with the FVRA because, among

---

[2]    In guidance to agencies issued shortly after the FVRA's enactment, OLC initially suggested that an individual may need to be the first assistant "when the vacancy occurs" to serve as acting officer under § 3345(a)(1).  *See* Guidance on Application of Federal Vacancies Reform Act of 1998, 23 OLC Op. 60, 64 (Mar. 22, 1999).  However, OLC revised this interpretation in 2001, noting that its initial interpretation was too brief to reflect OLC's thorough consideration of the issue and was offered "without explanation or, more importantly, any analysis of the Act's text or structure."  2001 OLC Op. at 179. In the wake of the 2001 OLC Opinion, the Government Accountability Office reassessed its interpretation of the FVRA and adopted "the position that a person need not have been in the first assistant position before the vacancy occurs in order to serve as acting officer."  *See* Letter from Victor S. Rezendes, GAO to Sen. Joseph I. Lieberman, et al. (Dec. 7, 2001), https://www.gao.gov/assets/80/75053.pdf (last visited Feb. 5, 2026).

other things, Morales had been a senior career official for over 90 days prior to that appointment. Gumma Decl. ¶5; 5 U.S.C. § 3345(a)(3).

Mr. Morales served as Acting CEO until July 31, 2025, when his designation as Acting CEO ended.  *See* Gumma Decl. ¶8; SOMF ¶6. Ms. Lake, who at the time was validly serving as the sole Deputy CEO (having been placed in that position by Morales while Morales was Acting CEO), rose to fill the Acting CEO vacancy as CEO's first assistant. *See* Gumma Decl. ¶6, Exhibit B.; SOMF ¶4. This is exactly the framework as set forth under the FVRA.

Lastly, Plaintiffs incorrectly assert that even if Ms. Lake was validly appointed Deputy CEO, that her role had not been subordinate to the Acting CEO's office during her tenure and therefore, cannot qualify as the "first assistant" to the CEO's office.  Pls' Mot. (ECF. No. 168-1) at 11. This argument is unfounded. Plaintiffs read too much into the word "assistant."  They essentially argue that her role was in name only, and since the Deputy CEO position was not the first "assistant" to the CEO, therefore, she cannot validly serve as Acting CEO based on §3345(a)(1). There is no statutory authority that precludes a CEO or Acting CEO from delegating any of his or her delegable duties, as was done here. In their motion, Plaintiffs allege, at the time of the vacancy created by the resignation of Ms. Bennett, "there was nobody serving in the position of Deputy CEO[.]" Supp. Compl. (ECF No. 167-1 ¶18). Therefore, it would be plausible that Victor Morales would have delegated various tasks to Ms. Lake while she was serving in the Senior Advisor role, and later, in the Deputy CEO role to which he appointed her.

The FVRA provides that "[a]n action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which [3349c applies] shall have no force or effect." However, because Ms.

Lake's service as Acting CEO was proper, Plaintiffs are not entitled to vacatur of any of her actions on the basis that they were unauthorized.

## III.    Any Relief Should Be Limited in Scope

Although the Court should deny Plaintiffs' motion for the reasons discussed above, to the extent the Court decides to grant injunctive relief, it is well settled that such relief "must be narrowly tailored to remedy the specific harm shown," *Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (citation omitted), and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). Additionally, "universal injunctions likely exceed the equitable authority that Congress has given to federal courts." *Trump v CASA*, Inc. 606 U.S. 831, 2 (2025).

Defendants incorporate the arguments in their previous motion to dismiss and for summary judgment as though fully stated herein as those arguments relate to the issue of the scope of any injunctive relief. *See, e.g.*, *Widakuswara*, Defs. Mot. Part. Sum. Judg. (ECF No. 189) at 38. Because that prior motion is pending and ripe for a decision, to avoid unnecessary repetition, Defendants incorporate the arguments in that motion on this issue as though fully stated herein.

In conclusion, for the reasons set forth and otherwise incorporated above, if the Court decides to grant injunctive relief, it must be limited in scope.

*    *    *

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' First Supplemental Complaint, or in the alternative, grant Defendants' Cross-Motion for Partial Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

Dated: February 6, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Samantha-Josephine Baker*
    SAMANTHA-JOSEPHINE BAKER
    FL Bar #105714
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-2435
    Samantha-Josephine.Baker@usdoj.gov

    *Attorneys for the United States of America*