# EXHIBIT A

H. R. 7148

# One Hundred Nineteenth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Saturday,*
*the third day of January, two thousand and twenty-six*

## An Act

Making further consolidated appropriations for the fiscal year ending September 30, 2026, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Consolidated Appropriations Act, 2026".

**SEC. 2. TABLE OF CONTENTS.**

Sec. 1. Short title.
Sec. 2. Table of contents.
Sec. 3. References.
Sec. 4. Explanatory statement.
Sec. 5. Statement of appropriations.
Sec. 6. Payment to Widows and Heirs of Deceased Members of Congress.

DIVISION A—DEPARTMENT OF DEFENSE APPROPRIATIONS ACT, 2026

Title I—Military Personnel
Title II—Operation and Maintenance
Title III—Procurement
Title IV—Research, Development, Test and Evaluation
Title V—Revolving and Management Funds
Title VI—Other Department of Defense Programs
Title VII—Related Agencies
Title VIII—General Provisions

DIVISION B—DEPARTMENTS OF LABOR, HEALTH AND HUMAN SERVICES, AND EDUCATION, AND RELATED AGENCIES APPROPRIATIONS ACT, 2026

Title I—Department of Labor
Title II—Department of Health and Human Services
Title III—Department of Education
Title IV—Related Agencies
Title V—General Provisions

DIVISION D—TRANSPORTATION, HOUSING AND URBAN DEVELOPMENT, AND RELATED AGENCIES APPROPRIATIONS ACT, 2026

Title I—Department of Transportation
Title II—Department of Housing and Urban Development
Title III—Related Agencies
Title IV—General Provisions—This Act

DIVISION E—FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS ACT, 2026

Title I—Department of the Treasury
Title II—Executive Office of the President and Funds Appropriated to the President
Title III—The Judiciary
Title IV—District of Columbia
Title V—Independent Agencies
Title VI—General Provisions—This Act
Title VII—General Provisions—Government-wide

H. R. 7148—2

Title VIII—General Provisions—District of Columbia

DIVISION F—NATIONAL SECURITY, DEPARTMENT OF STATE, AND
RELATED PROGRAMS APPROPRIATIONS ACT, 2026

Title I—Department of State and Related Programs
Title II—Administration of Assistance
Title III—Bilateral Economic Assistance
Title IV—International Security Assistance
Title V—Multilateral Assistance
Title VI—Export and Investment Assistance
Title VII—General Provisions

DIVISION G—OTHER MATTERS

DIVISION H—FURTHER CONTINUING APPROPRIATIONS ACT, 2026

DIVISION I—AUTHORIZING EXTENDERS AND TECHNICAL CORRECTIONS

DIVISION J—HEALTH CARE EXTENDERS

**SEC. 3. REFERENCES.**

Except as expressly provided otherwise, any reference to "this Act" contained in any division of this Act shall be treated as referring only to the provisions of that division.

**SEC. 4. EXPLANATORY STATEMENT.**

The explanatory statement regarding this Act, printed in the House section of the Congressional Record on or about January 21, 2026, and submitted by the chair of the Committee on Appropriations of the House, shall have the same effect with respect to the allocation of funds and implementation of divisions A through D of this Act as if it were a joint explanatory statement of a committee of conference.

The explanatory statement regarding division A of H.R. 7006 of the 119th Congress, the explanatory statement regarding division B of H.R. 7006 of the 119th Congress, and the explanatory statement regarding division C of H.R. 7006 of the 119th Congress, printed in the House section of the Congressional Record on January 14, 2026, and submitted by the chair of the Committee on Appropriations of the House, shall each have the same effect with respect to the allocation of funds and implementation of divisions E, F, and G, respectively, of this Act as if they were each a joint explanatory statement of a committee of conference.

**SEC. 5. STATEMENT OF APPROPRIATIONS.**

The following sums in this Act are appropriated, out of any money in the Treasury not otherwise appropriated, for the fiscal year ending September 30, 2026.

**SEC. 6. PAYMENT TO WIDOWS AND HEIRS OF DECEASED MEMBERS OF CONGRESS.**

For payment to Jill Marie LaMalfa, widow of Douglas L. LaMalfa, late a Representative from the State of California, $174,000.

H. R. 7148—3

# DIVISION A—DEPARTMENT OF DEFENSE APPROPRIATIONS ACT, 2026

## TITLE I

## MILITARY PERSONNEL

### MILITARY PERSONNEL, ARMY

For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between permanent duty stations, for members of the Army on active duty (except members of reserve components provided for elsewhere), cadets, and aviation cadets; for members of the Reserve Officers' Training Corps; and for payments pursuant to section 156 of Public Law 97–377, as amended (42 U.S.C. 402 note), and to the Department of Defense Military Retirement Fund, $54,538,366,000.

### MILITARY PERSONNEL, NAVY

For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between permanent duty stations, for members of the Navy on active duty (except members of the Reserve provided for elsewhere), midshipmen, and aviation cadets; for members of the Reserve Officers' Training Corps; and for payments pursuant to section 156 of Public Law 97–377, as amended (42 U.S.C. 402 note), and to the Department of Defense Military Retirement Fund, $40,544,559,000.

### MILITARY PERSONNEL, MARINE CORPS

For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between permanent duty stations, for members of the Marine Corps on active duty (except members of the Reserve provided for elsewhere); and for payments pursuant to section 156 of Public Law 97–377, as amended (42 U.S.C. 402 note), and to the Department of Defense Military Retirement Fund, $16,990,389,000.

### MILITARY PERSONNEL, AIR FORCE

For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between permanent duty stations, for members of the Air Force on active duty (except members of reserve components provided for elsewhere), cadets, and aviation cadets; for members of the Reserve Officers' Training Corps; and for payments pursuant to section 156 of Public Law 97–377, as amended (42 U.S.C. 402 note), and to the Department of Defense Military Retirement Fund, $38,768,392,000.

MILITARY PERSONNEL, SPACE FORCE

For pay, allowances, individual clothing, subsistence, interest on deposits, gratuities, permanent change of station travel (including all expenses thereof for organizational movements), and expenses of temporary duty travel between permanent duty stations, for members of the Space Force on duty as described in section 20108 of title 10, United States Code and cadets; for members of the Reserve Officers' Training Corps; for expenses authorized by section 16131 of title 10, United States Code; and for payments pursuant to section 156 of Public Law 97–377, as amended (42 U.S.C. 402 note), and to the Department of Defense Military Retirement Fund, $1,494,342,000.

RESERVE PERSONNEL, ARMY

For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Army Reserve on active duty under sections 10211, 10302, and 7038 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code; and for payments to the Department of Defense Military Retirement Fund, $5,733,696,000.

RESERVE PERSONNEL, NAVY

For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Navy Reserve on active duty under section 10211 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty, and expenses authorized by section 16131 of title 10, United States Code; and for payments to the Department of Defense Military Retirement Fund, $2,712,359,000.

RESERVE PERSONNEL, MARINE CORPS

For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Marine Corps Reserve on active duty under section 10211 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty, and for members of the Marine Corps platoon leaders class, and expenses authorized by section 16131 of title 10, United States Code; and for payments to the Department of Defense Military Retirement Fund, $1,002,925,000.

RESERVE PERSONNEL, AIR FORCE

For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Air Force Reserve on

H. R. 7148—5

active duty under sections 10211, 10305, and 9038 of title 10, United States Code, or while serving on active duty under section 12301(d) of title 10, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing reserve training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code; and for payments to the Department of Defense Military Retirement Fund, $2,701,115,000.

### NATIONAL GUARD PERSONNEL, ARMY

For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Army National Guard while on duty under sections 10211, 10302, or 12402 of title 10 or section 708 of title 32, United States Code, or while serving on duty under section 12301(d) of title 10 or section 502(f) of title 32, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code; and for payments to the Department of Defense Military Retirement Fund, $10,476,992,000.

### NATIONAL GUARD PERSONNEL, AIR FORCE

For pay, allowances, clothing, subsistence, gratuities, travel, and related expenses for personnel of the Air National Guard on duty under sections 10211, 10305, or 12402 of title 10 or section 708 of title 32, United States Code, or while serving on duty under section 12301(d) of title 10 or section 502(f) of title 32, United States Code, in connection with performing duty specified in section 12310(a) of title 10, United States Code, or while undergoing training, or while performing drills or equivalent duty or other duty, and expenses authorized by section 16131 of title 10, United States Code; and for payments to the Department of Defense Military Retirement Fund, $5,467,187,000.

H. R. 7148—6

## TITLE II

## OPERATION AND MAINTENANCE

### OPERATION AND MAINTENANCE, ARMY

For expenses, not otherwise provided for, necessary for the operation and maintenance of the Army, as authorized by law, $58,249,178,000: *Provided,* That not to exceed $12,478,000 may be used for emergencies and extraordinary expenses, to be expended upon the approval or authority of the Secretary of the Army, and payments may be made upon the Secretary's certificate of necessity for confidential military purposes.

### OPERATION AND MAINTENANCE, NAVY

For expenses, not otherwise provided for, necessary for the operation and maintenance of the Navy and the Marine Corps, as authorized by law, $74,723,177,000: *Provided,* That not to exceed $15,055,000 may be used for emergencies and extraordinary expenses, to be expended upon the approval or authority of the Secretary of the Navy, and payments may be made upon the Secretary's certificate of necessity for confidential military purposes.

### OPERATION AND MAINTENANCE, MARINE CORPS

For expenses, not otherwise provided for, necessary for the operation and maintenance of the Marine Corps, as authorized by law, $10,983,917,000.

### OPERATION AND MAINTENANCE, AIR FORCE

For expenses, not otherwise provided for, necessary for the operation and maintenance of the Air Force, as authorized by law, $61,542,591,000: *Provided,* That not to exceed $8,238,000 may be used for emergencies and extraordinary expenses, to be expended upon the approval or authority of the Secretary of the Air Force, and payments may be made upon the Secretary's certificate of necessity for confidential military purposes.

### OPERATION AND MAINTENANCE, SPACE FORCE

For expenses, not otherwise provided for, necessary for the operation and maintenance of the Space Force, as authorized by law, $5,687,748,000.

### OPERATION AND MAINTENANCE, DEFENSE-WIDE

#### (INCLUDING TRANSFER OF FUNDS)

For expenses, not otherwise provided for, necessary for the operation and maintenance of activities and agencies of the Department of Defense (other than the military departments), as authorized by law, $56,089,818,000: *Provided,* That not more than $2,981,000 may be used for the Combatant Commander Initiative Fund authorized under section 166a of title 10, United States Code: *Provided further,* That not to exceed $36,000,000 may be used for emergencies and extraordinary expenses, to be expended upon the approval or authority of the Secretary of Defense, and

payments may be made upon the Secretary's certificate of necessity for confidential military purposes: *Provided further,* That of the funds provided under this heading, not less than $60,000,000 shall be made available for the APEX Accelerators, of which not less than $5,000,000 shall be available for centers with eligible entities defined in 10 U.S.C. 4951(1)(D): *Provided further,* That none of the funds appropriated or otherwise made available by this Act may be used to plan or implement the consolidation or elimination of a budget or appropriations liaison office of the Office of the Secretary of Defense, the office of the Secretary of a military department, or the service headquarters of one of the Armed Forces into a legislative affairs or legislative liaison office: *Provided further,* That of the funds provided under this heading, not less than $86,500,000 shall be made available to the Defense Information Systems Agency for Defense Agencies and Field Activities network optimization and transition costs: *Provided further,* That of the funds provided under this heading, $3,121,000, to remain available until September 30, 2027, shall be available only for expenses relating to certain classified activities: *Provided further,* That of the funds provided under this heading, $27,693,000, to remain available until expended, shall be available only for expenses relating to certain classified activities, and may be transferred as necessary by the Secretary of Defense to operation and maintenance appropriations or research, development, test and evaluation appropriations, to be merged with and to be available for the same time period as the appropriations to which transferred: *Provided further,* That any ceiling on the investment item unit cost of items that may be purchased with operation and maintenance funds shall not apply to the funds described in the preceding proviso: *Provided further,* That of the funds provided under this heading, $3,673,457,000, of which $1,499,808,000, to remain available until September 30, 2027, shall be available to provide support and assistance to foreign security forces or other groups or individuals to conduct, support or facilitate counterterrorism, crisis response, or other Department of Defense security cooperation programs: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the Committees on Appropriations of the House of Representatives and the Senate on the use and status of funds made available in this paragraph: *Provided further,* That the transfer authority provided under this heading is in addition to any other transfer authority provided elsewhere in this Act.

COUNTER-ISIS TRAIN AND EQUIP FUND

For the "Counter-Islamic State of Iraq and Syria Train and Equip Fund", $342,516,000, to remain available until September 30, 2027: *Provided,* That such funds shall be available to the Secretary of Defense in coordination with the Secretary of State, to provide assistance, including training; equipment; logistics support, supplies, and services; stipends; infrastructure repair and renovation; construction for facility fortification and humane treatment; and sustainment, to foreign security forces, irregular forces, groups, or individuals participating, or preparing to participate in activities to counter the Islamic State of Iraq and Syria, and their affiliated or associated groups: *Provided further,* That amounts made available under this heading shall be available to provide assistance only for activities in a country designated by the Secretary of

H. R. 7148—8

Defense, in coordination with the Secretary of State, as having a security mission to counter the Islamic State of Iraq and Syria, and following written notification to the congressional defense committees of such designation: *Provided further,* That the Secretary of Defense shall ensure that prior to providing assistance to elements of any forces or individuals, such elements or individuals are appropriately vetted, including at a minimum, assessing such elements for associations with terrorist groups or groups associated with the Government of Iran; and receiving commitments from such elements to promote respect for human rights and the rule of law: *Provided further,* That the Secretary of Defense shall, not fewer than 15 days prior to obligating from this appropriation account, notify the congressional defense committees in writing of the details of any such obligation: *Provided further,* That the Secretary of Defense may accept and retain contributions, including assistance in-kind, from foreign governments, including the Government of Iraq and other entities, to carry out assistance authorized under this heading: *Provided further,* That contributions of funds for the purposes provided herein from any foreign government or other entity may be credited to this Fund, to remain available until expended, and used for such purposes: *Provided further,* That the Secretary of Defense shall prioritize such contributions when providing any assistance for construction for facility fortification: *Provided further,* That the Secretary of Defense may waive a provision of law relating to the acquisition of items and support services or sections 40 and 40A of the Arms Export Control Act (22 U.S.C. 2780 and 2785) if the Secretary determines that such provision of law would prohibit, restrict, delay or otherwise limit the provision of such assistance and a notice of and justification for such waiver is submitted to the congressional defense committees, the Committees on Appropriations and Foreign Relations of the Senate and the Committees on Appropriations and Foreign Affairs of the House of Representatives: *Provided further,* That the United States may accept equipment procured using funds provided under this heading, or under the heading, "Iraq Train and Equip Fund" in prior Acts, that was transferred to security forces, irregular forces, or groups participating, or preparing to participate in activities to counter the Islamic State of Iraq and Syria and returned by such forces or groups to the United States, and such equipment may be treated as stocks of the Department of Defense upon written notification to the congressional defense committees: *Provided further,* That equipment procured using funds provided under this heading, or under the heading, "Iraq Train and Equip Fund" in prior Acts, and not yet transferred to security forces, irregular forces, or groups participating, or preparing to participate in activities to counter the Islamic State of Iraq and Syria may be treated as stocks of the Department of Defense when determined by the Secretary to no longer be required for transfer to such forces or groups and upon written notification to the congressional defense committees: *Provided further,* That none of the funds made available under this heading may be used to procure or transfer man-portable air defense systems: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the congressional defense committees on the use of funds provided under this heading, including, but not limited to, the number of individuals trained, the nature and scope of support and sustainment provided to each group or

H. R. 7148—9

individual, the area of operations for each group, and the contributions of other countries, groups, or individuals.

OPERATION AND MAINTENANCE, ARMY RESERVE

For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Army Reserve; repair of facilities and equipment; hire of passenger motor vehicles; travel and transportation; care of the dead; recruiting; procurement of services, supplies, and equipment; and communications, $3,258,861,000.

OPERATION AND MAINTENANCE, NAVY RESERVE

For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Navy Reserve; repair of facilities and equipment; hire of passenger motor vehicles; travel and transportation; care of the dead; recruiting; procurement of services, supplies, and equipment; and communications, $1,421,774,000.

OPERATION AND MAINTENANCE, MARINE CORPS RESERVE

For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Marine Corps Reserve; repair of facilities and equipment; hire of passenger motor vehicles; travel and transportation; care of the dead; recruiting; procurement of services, supplies, and equipment; and communications, $319,941,000.

OPERATION AND MAINTENANCE, AIR FORCE RESERVE

For expenses, not otherwise provided for, necessary for the operation and maintenance, including training, organization, and administration, of the Air Force Reserve; repair of facilities and equipment; hire of passenger motor vehicles; travel and transportation; care of the dead; recruiting; procurement of services, supplies, and equipment; and communications, $4,246,342,000.

OPERATION AND MAINTENANCE, ARMY NATIONAL GUARD

For expenses of training, organizing, and administering the Army National Guard, including medical and hospital treatment and related expenses in non-Federal hospitals; maintenance, operation, and repairs to structures and facilities; hire of passenger motor vehicles; personnel services in the National Guard Bureau; travel expenses (other than mileage), as authorized by law for Army personnel on active duty, for Army National Guard division, regimental, and battalion commanders while inspecting units in compliance with National Guard Bureau regulations when specifically authorized by the Chief, National Guard Bureau; supplying and equipping the Army National Guard as authorized by law; and expenses of repair, modification, maintenance, and issue of supplies and equipment (including aircraft), $8,578,238,000.

OPERATION AND MAINTENANCE, AIR NATIONAL GUARD

For expenses of training, organizing, and administering the Air National Guard, including medical and hospital treatment and

related expenses in non-Federal hospitals; maintenance, operation, and repairs to structures and facilities; transportation of things, hire of passenger motor vehicles; supplying and equipping the Air National Guard, as authorized by law; expenses for repair, modification, maintenance, and issue of supplies and equipment, including those furnished from stocks under the control of agencies of the Department of Defense; travel expenses (other than mileage) on the same basis as authorized by law for Air National Guard personnel on active Federal duty, for Air National Guard commanders while inspecting units in compliance with National Guard Bureau regulations when specifically authorized by the Chief, National Guard Bureau, $7,267,399,000.

UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES

For salaries and expenses necessary for the United States Court of Appeals for the Armed Forces, $21,243,000, of which not to exceed $10,000 may be used for official representation purposes.

ENVIRONMENTAL RESTORATION, ARMY

(INCLUDING TRANSFER OF FUNDS)

For the Department of the Army, $190,870,000, to remain available until transferred: *Provided,* That the Secretary of the Army shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of the Army, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Army, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation: *Provided further,* That the transfer authority provided under this heading is in addition to any other transfer authority provided elsewhere in this Act.

ENVIRONMENTAL RESTORATION, NAVY

(INCLUDING TRANSFER OF FUNDS)

For the Department of the Navy, $368,949,000, to remain available until transferred: *Provided,* That the Secretary of the Navy shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of the Navy, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Navy, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation: *Provided further,* That the transfer authority provided under this heading

H. R. 7148—11

is in addition to any other transfer authority provided elsewhere in this Act.

### ENVIRONMENTAL RESTORATION, AIR FORCE

(INCLUDING TRANSFER OF FUNDS)

For the Department of the Air Force, $396,149,000, to remain available until transferred: *Provided,* That the Secretary of the Air Force shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of the Air Force, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Air Force, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation: *Provided further,* That the transfer authority provided under this heading is in addition to any other transfer authority provided elsewhere in this Act.

### ENVIRONMENTAL RESTORATION, DEFENSE-WIDE

(INCLUDING TRANSFER OF FUNDS)

For the Department of Defense, $8,885,000, to remain available until transferred: *Provided,* That the Secretary of Defense shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris of the Department of Defense, or for similar purposes, transfer the funds made available by this appropriation to other appropriations made available to the Department of Defense, to be merged with and to be available for the same purposes and for the same time period as the appropriations to which transferred: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation: *Provided further,* That the transfer authority provided under this heading is in addition to any other transfer authority provided elsewhere in this Act.

### ENVIRONMENTAL RESTORATION, FORMERLY USED DEFENSE SITES

(INCLUDING TRANSFER OF FUNDS)

For the Department of the Army, $235,156,000, to remain available until transferred: *Provided,* That the Secretary of the Army shall, upon determining that such funds are required for environmental restoration, reduction and recycling of hazardous waste, removal of unsafe buildings and debris at sites formerly used by the Department of Defense, transfer the funds made available by this appropriation to other appropriations made available to the Department of the Army, to be merged with and to be available for the same purposes and for the same time period

H. R. 7148—12

as the appropriations to which transferred: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation: *Provided further,* That the transfer authority provided under this heading is in addition to any other transfer authority provided elsewhere in this Act.

OVERSEAS HUMANITARIAN, DISASTER, AND CIVIC AID

For expenses relating to the Overseas Humanitarian, Disaster, and Civic Aid programs of the Department of Defense (consisting of the programs provided under sections 401, 402, 404, 407, 2557, and 2561 of title 10, United States Code), $100,793,000, to remain available until September 30, 2027.

COOPERATIVE THREAT REDUCTION ACCOUNT

For assistance, including assistance provided by contract or by grants, under programs and activities of the Department of Defense Cooperative Threat Reduction Program authorized under the Department of Defense Cooperative Threat Reduction Act, $282,830,000, to remain available until September 30, 2028.

DEPARTMENT OF DEFENSE ACQUISITION WORKFORCE DEVELOPMENT ACCOUNT

For the Department of Defense Acquisition Workforce Development Account, $50,846,000: *Provided,* That no other amounts may be otherwise credited or transferred to the Account, or deposited into the Account, in fiscal year 2026 pursuant to section 1705(d) of title 10, United States Code.

H. R. 7148—13

TITLE III

PROCUREMENT

AIRCRAFT PROCUREMENT, ARMY

For construction, procurement, production, modification, and modernization of aircraft, equipment, including ordnance, ground handling equipment, spare parts, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $3,625,324,000, to remain available for obligation until September 30, 2028.

MISSILE PROCUREMENT, ARMY

For construction, procurement, production, modification, and modernization of missiles, equipment, including ordnance, ground handling equipment, spare parts, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $7,287,263,000, to remain available for obligation until September 30, 2028.

PROCUREMENT OF WEAPONS AND TRACKED COMBAT VEHICLES, ARMY

For construction, procurement, production, and modification of weapons and tracked combat vehicles, equipment, including ordnance, spare parts, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $3,005,021,000, to remain available for obligation until September 30, 2028.

PROCUREMENT OF AMMUNITION, ARMY

For construction, procurement, production, and modification of ammunition, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including ammunition facilities, authorized by section 2854 of title 10, United States Code, and the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired,

H. R. 7148—14

and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $4,576,705,000, to remain available for obligation until September 30, 2028.

OTHER PROCUREMENT, ARMY

For construction, procurement, production, and modification of vehicles, including tactical, support, and non-tracked combat vehicles; the purchase of passenger motor vehicles for replacement only; communications and electronic equipment; other support equipment; spare parts, ordnance, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $9,412,655,000, to remain available for obligation until September 30, 2028.

AIRCRAFT PROCUREMENT, NAVY

For construction, procurement, production, modification, and modernization of aircraft, equipment, including ordnance, spare parts, and accessories therefor; specialized equipment; expansion of public and private plants, including the land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway, $17,239,853,000, to remain available for obligation until September 30, 2028.

WEAPONS PROCUREMENT, NAVY

For construction, procurement, production, modification, and modernization of missiles, torpedoes, other weapons, and related support equipment including spare parts, and accessories therefor; expansion of public and private plants, including the land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway, $6,086,954,000, to remain available for obligation until September 30, 2028.

PROCUREMENT OF AMMUNITION, NAVY AND MARINE CORPS

For construction, procurement, production, and modification of ammunition, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including ammunition facilities, authorized by section 2854 of title 10, United

H. R. 7148—15

States Code, and the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $1,098,630,000, to remain available for obligation until September 30, 2028.

SHIPBUILDING AND CONVERSION, NAVY

For expenses necessary for the construction, acquisition, or conversion of vessels as authorized by law, including armor and armament thereof, plant equipment, appliances, and machine tools and installation thereof in public and private plants; reserve plant and Government and contractor-owned equipment layaway; procurement of critical, long lead time components and designs for vessels to be constructed or converted in the future; and expansion of public and private plants, including land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title, as follows:

    Columbia Class Submarine, $3,928,828,000;
    Columbia Class Submarine (AP), $5,350,766,000;
    Carrier Replacement Program (CVN–80), $1,046,700,000;
    Carrier Replacement Program (AP), $612,038,000;
    Carrier Replacement Program (CVN–81), $1,622,935,000;
    Virginia Class Submarine, $2,740,305,000;
    Virginia Class Submarine (AP), $3,126,816,000;
    CVN Refueling Overhauls, $1,579,011,000;
    DDG–1000 Program, $52,358,000;
    DDG–51 Destroyer, $10,773,000;
    DDG–51 Destroyer (AP), $1,750,000,000;
    FFG–Frigate, $100,000,000;
    FF(X)–Frigate, $242,000,000;
    Medium Landing Ship, $800,000,000;
    TAO Fleet Oiler, $8,346,000;
    TAGOS Surtass Ships, $612,205,000;
    Towing, Salvage, and Rescue Ship, $141,500,000;
    Ship to Shore Connector, $320,000,000;
    Service Craft, $174,602,000;
    Auxiliary Personnel Lighter, $79,000,000;
    Auxiliary Vessels, $290,000,000;
    For outfitting, post delivery, conversions, and first destination transportation, $886,846,000; and
    Completion of Prior Year Shipbuilding Programs, $1,676,587,000.

In all: $27,151,616,000, to remain available for obligation until September 30, 2030: *Provided,* That additional obligations may be incurred after September 30, 2030, for engineering services, tests, evaluations, and other such budgeted work that must be performed in the final stage of ship construction: *Provided further,* That none of the funds provided under this heading for the construction or conversion of any naval vessel to be constructed in shipyards in the United States shall be expended in foreign facilities for the construction of major components of such vessel: *Provided further,* That none of the funds provided under this heading shall be used for the construction of any naval vessel in foreign shipyards:

H. R. 7148—16

*Provided further,* That funds appropriated or otherwise made available by this Act for Columbia Class Submarine (AP) may be available for the purposes authorized by subsections (f), (g), (h) or (i) of section 2218a of title 10, United States Code, only in accordance with the provisions of the applicable subsection.

### OTHER PROCUREMENT, NAVY

For procurement, production, and modernization of support equipment and materials not otherwise provided for, Navy ordnance (except ordnance for new aircraft, new ships, and ships authorized for conversion); the purchase of passenger motor vehicles for replacement only; expansion of public and private plants, including the land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway, $14,693,978,000, to remain available for obligation until September 30, 2028: *Provided,* That such funds are also available for the maintenance, repair, and modernization of ships under a pilot program established for such purposes.

### PROCUREMENT, MARINE CORPS

For expenses necessary for the procurement, manufacture, and modification of missiles, armament, military equipment, spare parts, and accessories therefor; plant equipment, appliances, and machine tools, and installation thereof in public and private plants; reserve plant and Government and contractor-owned equipment layaway; vehicles for the Marine Corps, including the purchase of passenger motor vehicles for replacement only; and expansion of public and private plants, including land necessary therefor, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title, $3,682,643,000, to remain available for obligation until September 30, 2028.

### AIRCRAFT PROCUREMENT, AIR FORCE

For construction, procurement, and modification of aircraft and equipment, including armor and armament, specialized ground handling equipment, and training devices, spare parts, and accessories therefor; specialized equipment; expansion of public and private plants, Government-owned equipment and installation thereof in such plants, erection of structures, and acquisition of land, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes including rents and transportation of things, $19,964,954,000, to remain available for obligation until September 30, 2028.

### MISSILE PROCUREMENT, AIR FORCE

For construction, procurement, and modification of missiles, rockets, and related equipment, including spare parts and accessories therefor; ground handling equipment, and training devices;

expansion of public and private plants, Government-owned equipment and installation thereof in such plants, erection of structures, and acquisition of land, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes including rents and transportation of things, $3,963,961,000, to remain available for obligation until September 30, 2028.

### PROCUREMENT OF AMMUNITION, AIR FORCE

For construction, procurement, production, and modification of ammunition, and accessories therefor; specialized equipment and training devices; expansion of public and private plants, including ammunition facilities, authorized by section 2854 of title 10, United States Code, and the land necessary therefor, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; and procurement and installation of equipment, appliances, and machine tools in public and private plants; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes, $773,327,000, to remain available for obligation until September 30, 2028.

### OTHER PROCUREMENT, AIR FORCE

For procurement and modification of equipment (including ground guidance and electronic control equipment, and ground electronic and communication equipment), and supplies, materials, and spare parts therefor, not otherwise provided for; the purchase of passenger motor vehicles for replacement only; lease of passenger motor vehicles; and expansion of public and private plants, Government-owned equipment and installation thereof in such plants, erection of structures, and acquisition of land, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon, prior to approval of title; reserve plant and Government and contractor-owned equipment layaway, $32,605,147,000, to remain available for obligation until September 30, 2028.

### PROCUREMENT, SPACE FORCE

For construction, procurement, and modification of spacecraft, rockets, and related equipment, including spare parts and accessories therefor; ground handling equipment, and training devices; expansion of public and private plants, Government-owned equipment and installation thereof in such plants, erection of structures, and acquisition of land, for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; reserve plant and Government and contractor-owned equipment layaway; and other expenses necessary for the foregoing purposes including rents and transportation of things, $4,036,035,000, to remain available for obligation until September 30, 2028.

H. R. 7148—18

PROCUREMENT, DEFENSE-WIDE

For expenses of activities and agencies of the Department of Defense (other than the military departments) necessary for procurement, production, and modification of equipment, supplies, materials, and spare parts therefor, not otherwise provided for; the purchase of passenger motor vehicles for replacement only; expansion of public and private plants, equipment, and installation thereof in such plants, erection of structures, and acquisition of land for the foregoing purposes, and such lands and interests therein, may be acquired, and construction prosecuted thereon prior to approval of title; reserve plant and Government and contractor-owned equipment layaway, $7,142,723,000, to remain available for obligation until September 30, 2028.

DEFENSE PRODUCTION ACT PURCHASES

For activities by the Department of Defense pursuant to sections 108, 301, 302, and 303 of the Defense Production Act of 1950 (50 U.S.C. 4518, 4531, 4532, and 4533), $321,923,000, to remain available for obligation until expended, which shall be obligated and expended by the Secretary of Defense as if delegated the necessary authorities conferred by the Defense Production Act of 1950.

NATIONAL GUARD AND RESERVE EQUIPMENT ACCOUNT

For procurement of rotary-wing aircraft; combat, tactical and support vehicles; other weapons; and other procurement items for the reserve components of the Armed Forces, $800,000,000, to remain available for obligation until September 30, 2028: *Provided,* That the Chiefs of National Guard and Reserve components shall, not later than 30 days after enactment of this Act, individually submit to the congressional defense committees the modernization priority assessment for their respective National Guard or Reserve component: *Provided further,* That none of the funds made available by this paragraph may be used to procure manned fixed wing aircraft, or procure or modify missiles, munitions, or ammunition.

H. R. 7148—19

TITLE IV

RESEARCH, DEVELOPMENT, TEST AND EVALUATION

RESEARCH, DEVELOPMENT, TEST AND EVALUATION, ARMY

For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, $16,705,760,000, to remain available for obligation until September 30, 2027.

RESEARCH, DEVELOPMENT, TEST AND EVALUATION, NAVY

For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, $28,099,776,000, to remain available for obligation until September 30, 2027: *Provided*, That funds appropriated in this paragraph which are available for the V–22 may be used to meet unique operational requirements of the Special Operations Forces.

RESEARCH, DEVELOPMENT, TEST AND EVALUATION, AIR FORCE

For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, $50,614,595,000, to remain available for obligation until September 30, 2027.

RESEARCH, DEVELOPMENT, TEST AND EVALUATION, SPACE FORCE

For expenses necessary for basic and applied scientific research, development, test and evaluation, including maintenance, rehabilitation, lease, and operation of facilities and equipment, $14,917,160,000, to remain available until September 30, 2027.

RESEARCH, DEVELOPMENT, TEST AND EVALUATION, DEFENSE-WIDE

For expenses of activities and agencies of the Department of Defense (other than the military departments), necessary for basic and applied scientific research, development, test and evaluation; advanced research projects as may be designated and determined by the Secretary of Defense, pursuant to law; maintenance, rehabilitation, lease, and operation of facilities and equipment, $35,248,875,000, to remain available for obligation until September 30, 2027.

OPERATIONAL TEST AND EVALUATION, DEFENSE

For expenses, not otherwise provided for, necessary for the independent activities of the Director, Operational Test and Evaluation, in the direction and supervision of operational test and evaluation, including initial operational test and evaluation which is conducted prior to, and in support of, production decisions; joint operational testing and evaluation; and administrative expenses in connection therewith, $336,143,000, to remain available for obligation until September 30, 2027.

H. R. 7148—20

TITLE V

REVOLVING AND MANAGEMENT FUNDS

DEFENSE WORKING CAPITAL FUNDS

For the Defense Working Capital Funds, $2,126,540,000.

NATIONAL DEFENSE STOCKPILE TRANSACTION FUND

For the National Defense Stockpile Transaction Fund, $5,700,000, for activities pursuant to the Strategic and Critical Materials Stock Piling Act (50 U.S.C. 98 et seq.).

H. R. 7148—21

## TITLE VI

## OTHER DEPARTMENT OF DEFENSE PROGRAMS

### DEFENSE HEALTH PROGRAM

For expenses, not otherwise provided for, for medical and health care programs of the Department of Defense as authorized by law, $41,770,246,000; of which $38,942,713,000 shall be for operation and maintenance, of which not to exceed one percent shall remain available for obligation until September 30, 2027, and of which up to $21,023,765,000 may be available for contracts entered into under the TRICARE program; of which $354,821,000, to remain available for obligation until September 30, 2028, shall be for procurement; and of which $2,472,712,000, to remain available for obligation until September 30, 2027, shall be for research, development, test and evaluation: *Provided,* That of the funds provided under this heading for research, development, test and evaluation, not less than $1,270,000,000 shall be made available to the Defense Health Agency to carry out the congressionally directed medical research programs: *Provided further,* That, notwithstanding any other provision of law, of the amount made available under this heading for research, development, test and evaluation, not less than $15,000,000 shall be available for HIV prevention educational activities undertaken in connection with United States military training, exercises, and humanitarian assistance activities conducted primarily in African nations: *Provided further,* That the Secretary of Defense shall submit to the congressional defense committees quarterly reports on the current status of the electronic health record program: *Provided further,* That the Comptroller General of the United States shall perform quarterly performance reviews of the electronic health record program.

### CHEMICAL AGENTS AND MUNITIONS DESTRUCTION, DEFENSE

For expenses, not otherwise provided for, necessary for the destruction of the United States stockpile of lethal chemical agents and munitions in accordance with the provisions of section 1412 of the Department of Defense Authorization Act, 1986 (50 U.S.C. 1521), $213,282,000, of which $3,243,000 shall be for operation and maintenance, of which not less than $3,243,000 shall be for the Chemical Stockpile Emergency Preparedness Program, consisting of $2,340,000 for activities on military installations and $903,000, to remain available until September 30, 2027, to assist State and local governments; and $210,039,000, to remain available until September 30, 2027, shall be for research, development, test and evaluation, of which $210,039,000 shall only be for the Assembled Chemical Weapons Alternatives program.

### DRUG INTERDICTION AND COUNTER-DRUG ACTIVITIES, DEFENSE

#### (INCLUDING TRANSFER OF FUNDS)

For drug interdiction and counter-drug activities of the Department of Defense, for transfer to appropriations available to the Department of Defense for military personnel of the reserve components serving under the provisions of title 10 and title 32, United States Code; for operation and maintenance; for procurement; and

H. R. 7148—22

for research, development, test and evaluation, $1,148,675,000, of which $678,737,000 shall be for counter-narcotics support; $134,938,000 shall be for the drug demand reduction program; $305,000,000 shall be for the National Guard counter-drug program; and $30,000,000 shall be for the National Guard counter-drug schools program: *Provided,* That the funds appropriated under this heading shall be available for obligation for the same time period and for the same purpose as the appropriation to which transferred: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back to this appropriation: *Provided further,* That the transfer authority provided under this heading is in addition to any other transfer authority contained elsewhere in this Act.

OFFICE OF THE INSPECTOR GENERAL

For expenses and activities of the Office of the Inspector General in carrying out the provisions of the Inspector General Act of 1978, as amended, $517,599,000, of which $511,895,000 shall be for operation and maintenance, of which not to exceed $700,000 is available for emergencies and extraordinary expenses to be expended upon the approval or authority of the Inspector General, and payments may be made upon the Inspector General's certificate of necessity for confidential military purposes; of which $1,079,000, to remain available for obligation until September 30, 2028, shall be for procurement; and of which $4,625,000, to remain available until September 30, 2027, shall be for research, development, test and evaluation.

H. R. 7148—23

TITLE VII

RELATED AGENCIES

CENTRAL INTELLIGENCE AGENCY RETIREMENT AND DISABILITY
SYSTEM FUND

For payment to the Central Intelligence Agency Retirement
and Disability System Fund, to maintain the proper funding level
for continuing the operation of the Central Intelligence Agency
Retirement and Disability System, $514,000,000.

INTELLIGENCE COMMUNITY MANAGEMENT ACCOUNT

For necessary expenses of the Intelligence Community Management Account, $629,128,000.

H. R. 7148—24

## TITLE VIII

### GENERAL PROVISIONS

SEC. 8001. No part of any appropriation contained in this Act shall be used for publicity or propaganda purposes not authorized by the Congress.

SEC. 8002. During the current fiscal year, provisions of law prohibiting the payment of compensation to, or employment of, any person not a citizen of the United States shall not apply to personnel of the Department of Defense: *Provided,* That salary increases granted to direct and indirect hire foreign national employees of the Department of Defense funded by this Act shall not be at a rate in excess of the percentage increase authorized by law for civilian employees of the Department of Defense whose pay is computed under the provisions of section 5332 of title 5, United States Code, or at a rate in excess of the percentage increase provided by the appropriate host nation to its own employees, whichever is higher: *Provided further,* That this section shall not apply to Department of Defense foreign service national employees serving at United States diplomatic missions whose pay is set by the Department of State under the Foreign Service Act of 1980: *Provided further,* That the limitations of this provision shall not apply to foreign national employees of the Department of Defense in the Republic of Turkey.

SEC. 8003. No part of any appropriation contained in this Act shall remain available for obligation beyond the current fiscal year, unless expressly so provided herein.

SEC. 8004. No more than 20 percent of the appropriations in this Act which are limited for obligation during the current fiscal year shall be obligated during the last 2 months of the fiscal year: *Provided,* That this section shall not apply to obligations for support of active duty training of reserve components or summer camp training of the Reserve Officers' Training Corps.

(TRANSFER OF FUNDS)

SEC. 8005. Upon determination by the Secretary of Defense that such action is necessary in the national interest, the Secretary may, with the approval of the Director of the Office of Management and Budget, transfer not to exceed $6,000,000,000 of working capital funds of the Department of Defense or funds made available in this Act to the Department of Defense for military functions (except military construction) between such appropriations or funds or any subdivision thereof, to be merged with and to be available for the same purposes, and for the same time period, as the appropriation or fund to which transferred: *Provided,* That such authority to transfer may not be used unless for higher priority items, based on unforeseen military requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress: *Provided further,* That the Secretary of Defense shall notify the Congress promptly of all transfers made pursuant to this authority or any other authority in this Act: *Provided further,* That no part of the funds in this Act shall be available to prepare or present a request to the Committees on Appropriations of the House of Representatives and the Senate for reprogramming of funds, unless for higher priority items, based on unforeseen military requirements, than those for which

H. R. 7148—25

originally appropriated and in no case where the item for which reprogramming is requested has been denied by the Congress: *Provided further,* That a request for multiple reprogrammings of funds using authority provided in this section shall be made prior to June 30, 2026: *Provided further,* That transfers among military personnel appropriations shall not be taken into account for purposes of the limitation on the amount of funds that may be transferred under this section.

SEC. 8006. (a) With regard to the list of specific programs, projects, and activities (and the dollar amounts and adjustments to budget activities corresponding to such programs, projects, and activities) contained in the tables titled Explanation of Project Level Adjustments in the explanatory statement regarding this Act and the tables contained in the classified annex accompanying this Act, the obligation and expenditure of amounts appropriated or otherwise made available by this Act for those programs, projects, and activities are hereby required by law to be carried out in the manner provided by such tables to the same extent as if the tables were included in the text of this Act.

(b) Amounts specified in the referenced tables described in subsection (a) shall not be treated as subdivisions of appropriations for purposes of section 8005 of this Act: *Provided,* That section 8005 of this Act shall apply when transfers of the amounts described in subsection (a) occur between appropriation accounts, subject to the limitation in subsection (c): *Provided further,* That the transfer amount limitation provided in section 8005 of this Act shall not apply to transfers of amounts described in subsection (a) if such transfers are necessary for the proper execution of such funds.

(c) During the current fiscal year, amounts specified in the referenced tables in titles III and IV of this Act described in subsection (a) may not be transferred pursuant to section 8005 of this Act other than for proper execution of such amounts, as provided in subsection (b).

SEC. 8007. (a) Not later than 60 days after the date of the enactment of this Act, the Department of Defense shall submit a report to the congressional defense committees to establish the baseline for application of reprogramming and transfer authorities for fiscal year 2026: *Provided,* That the report shall include—

(1) a table for each appropriation with a separate column to display the President's budget request, adjustments made by Congress, adjustments due to enacted rescissions, if appropriate, and the fiscal year enacted level;

(2) a delineation in the table for each appropriation both by budget activity and program, project, and activity as detailed in the Budget Appendix; and

(3) an identification of items of special congressional interest.

(b) Notwithstanding section 8005 of this Act, none of the funds provided in this Act shall be available for reprogramming or transfer until the report identified in subsection (a) is submitted to the congressional defense committees, unless the Secretary of Defense certifies in writing to the congressional defense committees that such reprogramming or transfer is necessary as an emergency requirement: *Provided,* That this subsection shall not apply to transfers from the following appropriations accounts:

(1) "Environmental Restoration, Army";

H. R. 7148—26

(2) "Environmental Restoration, Navy";
(3) "Environmental Restoration, Air Force";
(4) "Environmental Restoration, Defense-Wide";
(5) "Environmental Restoration, Formerly Used Defense Sites"; and
(6) "Drug Interdiction and Counter-drug Activities, Defense".

(TRANSFER OF FUNDS)

SEC. 8008. During the current fiscal year, cash balances in working capital funds of the Department of Defense established pursuant to section 2208 of title 10, United States Code, may be maintained in only such amounts as are necessary at any time for cash disbursements to be made from such funds: *Provided,* That transfers may be made between such funds: *Provided further,* That transfers may be made between working capital funds and the "Foreign Currency Fluctuations, Defense" appropriation and the "Operation and Maintenance" appropriation accounts in such amounts as may be determined by the Secretary of Defense, with the approval of the Director of the Office of Management and Budget, except that such transfers may not be made unless the Secretary of Defense has notified the Congress of the proposed transfer: *Provided further,* That except in amounts equal to the amounts appropriated to working capital funds in this Act, no obligations may be made against a working capital fund to procure or increase the value of war reserve material inventory, unless the Secretary of Defense has notified the Congress prior to any such obligation.

SEC. 8009. Funds appropriated by this Act may not be used to initiate, or materially modify the scope of, a special access program without prior notification 30 calendar days in advance to the congressional defense committees.

SEC. 8010. (a) None of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year shall be available to initiate: (1) a multiyear contract that employs economic order quantity procurement in excess of $20,000,000 in any one year of the contract or that includes an unfunded contingent liability in excess of $20,000,000; or (2) a contract for advance procurement leading to a multiyear contract that employs economic order quantity procurement in excess of $20,000,000 in any one year, unless the congressional defense committees have been notified at least 30 days in advance of the proposed contract award: *Provided,* That no part of any appropriation made available to the Department of Defense for this fiscal year or any prior fiscal year shall be available to initiate a multiyear contract for which the economic order quantity advance procurement is not funded at least to the limits of the Government's liability: *Provided further,* That no part of any appropriation made available to the Department of Defense for this fiscal year or any prior fiscal year shall be available to initiate multiyear procurement contracts for any systems or component thereof if the value of the multiyear contract would exceed $500,000,000 unless specifically provided in this Act: *Provided further,* That no multiyear procurement contract can be terminated without 30-day prior notification to the congressional defense committees: *Provided further,* That the execution of

H. R. 7148—27

multiyear authority shall require the use of a present value analysis to determine lowest cost compared to an annual procurement.

(b) None of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year may be used for a multiyear contract executed after the date of the enactment of this Act unless in the case of any such contract—

(1) the Secretary of Defense has submitted to Congress a budget request for full funding of units to be procured through the contract and, in the case of a contract for procurement of aircraft, that includes, for any aircraft unit to be procured through the contract for which procurement funds are requested in that budget request for production beyond advance procurement activities in the fiscal year covered by the budget, full funding of procurement of such unit in that fiscal year;

(2) cancellation provisions in the contract do not include consideration of recurring manufacturing costs of the contractor associated with the production of unfunded units to be delivered under the contract;

(3) the contract provides that payments to the contractor under the contract shall not be made in advance of incurred costs on funded units; and

(4) the contract does not provide for a price adjustment based on a failure.

(c) Concurrent with the annual budget submission of the President for fiscal year 2027 pursuant to section 1105(a) of title 31, United States Code, that is in compliance with subsection (b)(1), and notwithstanding subsection (b)(4)(B) of section 804 of the National Defense Authorization Act for Fiscal Year 2026 (Public Law 119–60), funds appropriated to the Department of Defense in title III of this Act or in any other provision of law may be used for multiyear procurement contracts, for a period of not more than five years, as follows: Standard Missile–6; Long Range Anti-Ship Missile; Joint Air-to-Surface Standoff Missile Extended Range; Advanced Medium-Range Air-to-Air Missile; and Standard Missile–3 Block 1B; and for a period of not more than seven years, as follows: PATRIOT Advanced Capability–3 Missile Segment Enhancement; Terminal High Altitude Area Defense; and Tomahawk Cruise Missile Systems: *Provided,* That until such submission is provided to the congressional defense committees, to include P–1 and R–1 budget justification documents, which shall identify the allocation of funds by program, project, and activity, none of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year may be obligated or expended to enter into any multiyear procurement contracts: *Provided further,* That before entering into a multiyear procurement contract for Tomahawk Cruise Missile Systems, Joint Air-to-Surface Standoff Missile Extended Range, or Standard Missile–6, the Secretary of Defense shall certify in writing to the congressional defense committees that such action is in the national security interests of the United States.

SEC. 8011. Within the funds appropriated for the operation and maintenance of the Armed Forces, funds are hereby appropriated pursuant to section 401 of title 10, United States Code, for humanitarian and civic assistance costs under chapter 20 of title 10, United States Code: *Provided,* That such funds may also be obligated for humanitarian and civic assistance costs incidental

to authorized operations and pursuant to authority granted in section 401 of title 10, United States Code, and these obligations shall be reported as required by section 401(d) of title 10, United States Code: *Provided further,* That funds available for operation and maintenance shall be available for providing humanitarian and similar assistance by using Civic Action Teams in the Trust Territories of the Pacific Islands and freely associated states of Micronesia, pursuant to the Compact of Free Association as authorized by Public Law 99–239: *Provided further,* That upon a determination by the Secretary of Defense that such action is beneficial for graduate medical education programs conducted at Defense Health Agency medical facilities located in Hawaii, the Secretary of Defense may authorize the provision of medical services at such facilities and transportation to such facilities, on a nonreimbursable basis, for civilian patients from American Samoa, the Commonwealth of the Northern Mariana Islands, the Marshall Islands, the Federated States of Micronesia, Palau, and Guam.

SEC. 8012. None of the funds appropriated by this or any other Act, including prior year Acts, may be used to obligate and expend funds in the Defense Modernization Account made available in accordance with subsection (c) of section 3136 of title 10, United States Code, except for the purposes described in paragraphs (d)(1) through (d)(4): *Provided,* That any program increases, as detailed in the tables titled Explanation of Project Level Adjustments in the explanatory statement regarding this Act, may not be transferred to the Defense Modernization Account pursuant to subsection (c) of section 3136 of title 10, United States Code.

SEC. 8013. None of the funds made available by this Act shall be used in any way, directly or indirectly, to influence congressional action on any legislation or appropriation matters pending before the Congress.

SEC. 8014. None of the funds available in this Act to the Department of Defense, other than appropriations made for necessary or routine refurbishments, upgrades, or maintenance activities, shall be used to reduce or to prepare to reduce the number of deployed and non-deployed strategic delivery vehicles and launchers below the levels set forth in the report submitted to Congress in accordance with section 1042 of the National Defense Authorization Act for Fiscal Year 2012.

(TRANSFER OF FUNDS)

SEC. 8015. (a) Funds appropriated in title III of this Act for the Department of Defense Pilot Mentor-Protégé Program may be transferred to any other appropriation contained in this Act solely for the purpose of implementing a Mentor-Protégé Program developmental assistance agreement pursuant to section 4902 of title 10, United States Code, under the authority of this provision or any other transfer authority contained in this Act.

(b) The Secretary of Defense shall include with the budget justification documents in support of the budget for fiscal year 2027 (as submitted to Congress pursuant to section 1105 of title 31, United States Code) a description of each transfer under this section that occurred during the last fiscal year before the fiscal year in which such budget is submitted.

SEC. 8016. None of the funds in this Act may be available for the purchase by the Department of Defense (and its departments

and agencies) of welded shipboard anchor and mooring chain unless the anchor and mooring chain are manufactured in the United States from components which are substantially manufactured in the United States: *Provided,* That for the purpose of this section, the term "manufactured" shall include cutting, heat treating, quality control, testing of chain and welding (including the forging and shot blasting process): *Provided further,* That for the purpose of this section substantially all of the components of anchor and mooring chain shall be considered to be produced or manufactured in the United States if the aggregate cost of the components produced or manufactured in the United States exceeds the aggregate cost of the components produced or manufactured outside the United States: *Provided further,* That when adequate domestic supplies are not available to meet Department of Defense requirements on a timely basis, the Secretary of the Service responsible for the procurement may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate that such an acquisition must be made in order to acquire capability for national security purposes.

SEC. 8017. None of the funds appropriated by this Act shall be used for the support of any nonappropriated funds activity of the Department of Defense that procures malt beverages and wine with nonappropriated funds for resale (including such alcoholic beverages sold by the drink) on a military installation located in the United States unless such malt beverages and wine are procured within that State, or in the case of the District of Columbia, within the District of Columbia, in which the military installation is located: *Provided,* That, in a case in which the military installation is located in more than one State, purchases may be made in any State in which the installation is located: *Provided further,* That such local procurement requirements for malt beverages and wine shall apply to all alcoholic beverages only for military installations in States which are not contiguous with another State: *Provided further,* That alcoholic beverages other than wine and malt beverages, in contiguous States and the District of Columbia shall be procured from the most competitive source, price and other factors considered.

SEC. 8018. None of the funds available to the Department of Defense may be used to demilitarize or dispose of M–1 Carbines, M–1 Garand rifles, M–14 rifles, .22 caliber rifles, .30 caliber rifles, or M–1911 pistols, or to demilitarize or destroy small arms ammunition or ammunition components that are not otherwise prohibited from commercial sale under Federal law, unless the small arms ammunition or ammunition components are certified by the Secretary of the Army or designee as unserviceable or unsafe for further use.

SEC. 8019. No more than $500,000 of the funds appropriated or made available in this Act shall be used during a single fiscal year for any single relocation of an organization, unit, activity or function of the Department of Defense into or within the National Capital Region: *Provided,* That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying in writing to the congressional defense committees that such a relocation is required in the best interest of the Government.

SEC. 8020. Of the funds made available in this Act under the heading "Procurement, Defense-Wide", $24,613,000 shall be

H. R. 7148—30

available only for incentive payments authorized by section 504 of the Indian Financing Act of 1974 (25 U.S.C. 1544): *Provided,* That a prime contractor or a subcontractor at any tier that makes a subcontract award to any subcontractor or supplier as defined in section 1544 of title 25, United States Code, or a small business owned and controlled by an individual or individuals defined under section 4221(9) of title 25, United States Code, shall be considered a contractor for the purposes of being allowed additional compensation under section 504 of the Indian Financing Act of 1974 (25 U.S.C. 1544) whenever the prime contract or subcontract amount is over $500,000 and involves the expenditure of funds appropriated by an Act making appropriations for the Department of Defense with respect to any fiscal year: *Provided further,* That notwithstanding section 1906 of title 41, United States Code, this section shall be applicable to any Department of Defense acquisition of supplies or services, including any contract and any subcontract at any tier for acquisition of commercial items produced or manufactured, in whole or in part, by any subcontractor or supplier defined in section 1544 of title 25, United States Code, or a small business owned and controlled by an individual or individuals defined under section 4221(9) of title 25, United States Code.

SEC. 8021. (a) Notwithstanding any other provision of law, the Secretary of the Air Force may convey at no cost to the Air Force, without consideration, to Indian tribes located in the States of Nevada, Idaho, North Dakota, South Dakota, Montana, Oregon, Minnesota, and Washington relocatable military housing units located at Grand Forks Air Force Base, Malmstrom Air Force Base, Mountain Home Air Force Base, Ellsworth Air Force Base, and Minot Air Force Base that are excess to the needs of the Air Force.

(b) The Secretary of the Air Force shall convey, at no cost to the Air Force, military housing units under subsection (a) in accordance with the request for such units that are submitted to the Secretary by the Operation Walking Shield Program on behalf of Indian tribes located in the States of Nevada, Idaho, North Dakota, South Dakota, Montana, Oregon, Minnesota, and Washington. Any such conveyance shall be subject to the condition that the housing units shall be removed within a reasonable period of time, as determined by the Secretary.

(c) The Operation Walking Shield Program shall resolve any conflicts among requests of Indian tribes for housing units under subsection (a) before submitting requests to the Secretary of the Air Force under subsection (b).

(d) In this section, the term "Indian tribe" means any recognized Indian tribe included on the current list published by the Secretary of the Interior under section 104 of the Federally Recognized Indian Tribe Act of 1994 (Public Law 103–454; 108 Stat. 4792; 25 U.S.C. 5131).

SEC. 8022. Of the funds appropriated to the Department of Defense under the heading "Operation and Maintenance, Defense-Wide", not less than $12,000,000 may be made available only for the mitigation of environmental impacts, including training and technical assistance to tribes, related administrative support, the gathering of information, documenting of environmental damage, and developing a system for prioritization of mitigation and cost to complete estimates for mitigation, on Indian lands resulting from Department of Defense activities.

H. R. 7148—31

SEC. 8023. Funds appropriated by this Act for the Defense Media Activity shall not be used for any national or international political or psychological activities.

SEC. 8024. Of the amounts appropriated for "Working Capital Fund, Army", $100,000,000 shall be available to maintain competitive rates at the arsenals.

SEC. 8025. (a) Of the funds made available in this Act, not less than $79,000,000 shall be available for the Civil Air Patrol Corporation, of which—

(1) $57,900,000 shall be available from "Operation and Maintenance, Air Force" to support Civil Air Patrol Corporation operation and maintenance, readiness, counter-drug activities, and drug demand reduction activities involving youth programs;

(2) $17,800,000 shall be available from "Aircraft Procurement, Air Force"; and

(3) $3,300,000 shall be available from "Other Procurement, Air Force" for vehicle procurement.

(b) The Secretary of the Air Force should waive reimbursement for any funds used by the Civil Air Patrol for counter-drug activities in support of Federal, State, and local government agencies.

SEC. 8026. (a) None of the funds appropriated in this Act are available to establish a new Department of Defense (department) federally funded research and development center (FFRDC), either as a new entity, or as a separate entity administrated by an organization managing another FFRDC, or as a nonprofit membership corporation consisting of a consortium of other FFRDCs and other nonprofit entities.

(b) Except when acting in a technical advisory capacity, no member of a Board of Directors, Trustees, Overseers, Advisory Group, Special Issues Panel, Visiting Committee, or any similar entity of a defense FFRDC, or any entity that contracts with the Federal government to manage or operate one or more FFRDCs, or any paid consultant to a defense FFRDC shall receive funds appropriated by this Act as compensation for services as a member of such entity: *Provided*, That a member of any such entity shall be allowed travel expenses and per diem as authorized under the Federal Joint Travel Regulations, when engaged in the performance of membership duties: *Provided further*, That except when acting in a technical advisory capacity, no paid consultant shall receive funds appropriated by this Act as compensation by more than one FFRDC in a calendar year.

(c) Notwithstanding any other provision of law, none of the funds available to the department from any source during the current fiscal year may be used by a defense FFRDC, through a fee or other payment mechanism, for construction of new buildings not located on a military installation, for payment of cost sharing for projects funded by Government grants, for absorption of contract overruns, or for certain charitable contributions, not to include employee participation in community service and/or development.

(d) Notwithstanding any other provision of law, of the funds appropriated in this Act, not more than $2,886,300,000 may be funded for professional technical staff-related costs of the defense FFRDCs: *Provided*, That within such funds, not more than $461,300,000 shall be available for the defense studies and analysis FFRDCs: *Provided further*, That this subsection shall not apply to staff years funded in the National Intelligence Program and

H. R. 7148—32

the Military Intelligence Program: *Provided further,* That the Secretary of Defense shall, with the submission of the department's fiscal year 2027 budget request, submit a report presenting the specific amounts of staff years of technical effort to be allocated for each defense FFRDC by program during that fiscal year and the associated budget estimates, by appropriation account and program.

SEC. 8027. For the purposes of this Act, the term "congressional defense committees" means the Armed Services Committee of the House of Representatives, the Armed Services Committee of the Senate, the Subcommittee on Defense of the Committee on Appropriations of the House of Representatives, and the Subcommittee on Defense of the Committee on Appropriations of the Senate.

SEC. 8028. For the purposes of this Act, the term "congressional intelligence committees" means the Permanent Select Committee on Intelligence of the House of Representatives, the Select Committee on Intelligence of the Senate, the Subcommittee on Defense of the Committee on Appropriations of the House of Representatives, and the Subcommittee on Defense of the Committee on Appropriations of the Senate.

SEC. 8029. During the current fiscal year, the Department of Defense may acquire the modification, depot maintenance and repair of aircraft, vehicles and vessels as well as the production of components and other Defense-related articles, through competition between Department of Defense depot maintenance activities and private firms: *Provided,* That the Senior Acquisition Executive of the military department or Defense Agency concerned, with power of delegation, shall certify that successful bids include comparable estimates of all direct and indirect costs for both public and private bids: *Provided further,* That Office of Management and Budget Circular A–76 shall not apply to competitions conducted under this section.

SEC. 8030. (a) None of the funds appropriated in this Act may be expended by an entity of the Department of Defense unless the entity, in expending the funds, complies with the Buy American Act. For purposes of this subsection, the term "Buy American Act" means chapter 83 of title 41, United States Code.

(b) If the Secretary of Defense determines that a person has been convicted of intentionally affixing a label bearing a "Made in America" inscription to any product sold in or shipped to the United States that is not made in America, the Secretary shall determine, in accordance with section 4658 of title 10, United States Code, whether the person should be debarred from contracting with the Department of Defense.

(c) In the case of any equipment or products purchased with appropriations provided under this Act, it is the sense of the Congress that any entity of the Department of Defense, in expending the appropriation, purchase only American-made equipment and products, provided that American-made equipment and products are cost-competitive, quality competitive, and available in a timely fashion.

SEC. 8031. None of the funds appropriated or made available in this Act shall be used to procure carbon, alloy, or armor steel plate for use in any Government-owned facility or property under the control of the Department of Defense which were not melted and rolled in the United States or Canada: *Provided,* That these procurement restrictions shall apply to any and all Federal Supply

Class 9515, American Society of Testing and Materials (ASTM) or American Iron and Steel Institute (AISI) specifications of carbon, alloy or armor steel plate: *Provided further,* That the Secretary of the military department responsible for the procurement may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate that adequate domestic supplies are not available to meet Department of Defense requirements on a timely basis and that such an acquisition must be made in order to acquire capability for national security purposes: *Provided further,* That these restrictions shall not apply to contracts which are in being as of the date of the enactment of this Act.

SEC. 8032. (a)(1) If the Secretary of Defense, after consultation with the United States Trade Representative, determines that a foreign country which is party to an agreement described in paragraph (2) has violated the terms of the agreement by discriminating against certain types of products produced in the United States that are covered by the agreement, the Secretary of Defense shall rescind the Secretary's blanket waiver of the Buy American Act with respect to such types of products produced in that foreign country.

(2) An agreement referred to in paragraph (1) is any reciprocal defense procurement memorandum of understanding, between the United States and a foreign country pursuant to which the Secretary of Defense has prospectively waived the Buy American Act for certain products in that country.

(b) The Secretary of Defense shall submit to the Congress a report on the amount of Department of Defense purchases from foreign entities in fiscal year 2026. Such report shall separately indicate the dollar value of items for which the Buy American Act was waived pursuant to any agreement described in subsection (a)(2), the Trade Agreements Act of 1979 (19 U.S.C. 2501 et seq.), or any international agreement to which the United States is a party.

(c) For purposes of this section, the term "Buy American Act" means chapter 83 of title 41, United States Code.

SEC. 8033. None of the funds appropriated by this Act may be used for the procurement of ball and roller bearings other than those produced by a domestic source and of domestic origin: *Provided,* That the Secretary of the military department responsible for such procurement may waive this restriction on a case-by-case basis by certifying in writing to the Committees on Appropriations of the House of Representatives and the Senate, that adequate domestic supplies are not available to meet Department of Defense requirements on a timely basis and that such an acquisition must be made in order to acquire capability for national security purposes: *Provided further,* That this restriction shall not apply to the purchase of "commercial products", as defined by section 103 of title 41, United States Code, except that the restriction shall apply to ball or roller bearings purchased as end items.

SEC. 8034. Of the amounts appropriated in this Act under the heading "Operation and Maintenance, Defense-Wide", for the Defense Security Cooperation Agency, $50,000,000, to remain available until September 30, 2027, shall be available to the Secretary of Defense, in coordination with the Secretary of State, to provide

H. R. 7148—34

assistance to the Lebanese Armed Forces, including training, equipment, logistics support, supplies and services, stipends, infrastructure repair and renovation, and sustainment: *Provided,* That the Secretary of Defense shall ensure that the Lebanese Armed Forces are vetted prior to providing assistance, including at a minimum, assessing for associations with terrorist groups and receiving a commitment to promote respect for human rights and the rule of law: *Provided further,* That the Secretary of Defense shall, not fewer than 15 days prior to obligating the funds provided in this section, notify the congressional defense committees in writing of the details of any such obligation: *Provided further,* That the Secretary of Defense may waive a provision of law relating to the acquisition of items and support services or sections 40 and 40A of the Arms Export Control Act (22 U.S.C. 2780 and 2785) if the Secretary determines that such provision of law would prohibit, restrict, delay or otherwise limit the provision of such assistance and a notice of and justification for such waiver is submitted to the congressional defense committees, the Committees on Appropriations and Foreign Relations of the Senate and the Committees on Appropriations and Foreign Affairs of the House of Representatives: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the congressional defense committees on the use of funds provided in this section, including, but not limited to, the number of individuals trained within the Lebanese Armed Forces, the nature and scope of support and sustainment provided to the Lebanese Armed Forces, the area of operations for the Lebanese Armed Forces, and the contributions of other countries, groups, or individuals.

SEC. 8035. None of the funds in this Act may be used to purchase any supercomputer which is not manufactured in the United States, unless the Secretary of Defense certifies to the congressional defense committees that such an acquisition must be made in order to acquire capability for national security purposes that is not available from United States manufacturers.

SEC. 8036. (a) The Secretary of Defense may, on a case-by-case basis, waive with respect to a foreign country each limitation on the procurement of defense items from foreign sources provided in law if the Secretary determines that the application of the limitation with respect to that country would invalidate cooperative programs entered into between the Department of Defense and the foreign country, or would invalidate reciprocal trade agreements for the procurement of defense items entered into under section 4851 of title 10, United States Code, and the country does not discriminate against the same or similar defense items produced in the United States for that country.

(b) Subsection (a) applies with respect to—

(1) contracts and subcontracts entered into on or after the date of the enactment of this Act; and

(2) options for the procurement of items that are exercised after such date under contracts that are entered into before such date if the option prices are adjusted for any reason other than the application of a waiver granted under subsection (a).

(c) Subsection (a) does not apply to a limitation regarding construction of public vessels, ball and roller bearings, food, and clothing or textile materials as defined by section XI (chapters 50–65) of the Harmonized Tariff Schedule of the United States

H. R. 7148—35

and products classified under headings 4010, 4202, 4203, 6401 through 6406, 6505, 7019, 7218 through 7229, 7304.41 through 7304.49, 7306.40, 7502 through 7508, 8105, 8108, 8109, 8211, 8215, and 9404.

SEC. 8037. None of the funds made available in this Act, or any subsequent Act making appropriations for the Department of Defense, may be used for the purchase or manufacture of a flag of the United States unless such flags are treated as covered items under section 4862(b) of title 10, United States Code.

SEC. 8038. During the current fiscal year, amounts contained in the Department of Defense Overseas Military Facility Investment Recovery Account shall be available until expended for the payments specified by section 2687a(b)(2) of title 10, United States Code.

SEC. 8039. During the current fiscal year, appropriations which are available to the Department of Defense for operation and maintenance may be used to purchase items having an investment item unit cost of not more than $350,000: *Provided,* That upon determination by the Secretary of Defense that such action is necessary to meet the operational requirements of a Commander of a Combatant Command engaged in a named contingency operation overseas, such funds may be used to purchase items having an investment item unit cost of not more than $500,000.

SEC. 8040. Up to $16,809,000 of the funds appropriated under the heading "Operation and Maintenance, Navy" may be made available for the Asia Pacific Regional Initiative Program for the purpose of enabling the United States Indo-Pacific Command to execute Theater Security Cooperation activities such as humanitarian assistance, and payment of incremental and personnel costs of training and exercising with foreign security forces: *Provided,* That funds made available for this purpose may be used, notwithstanding any other funding authorities for humanitarian assistance, security assistance or combined exercise expenses: *Provided further,* That funds may not be obligated to provide assistance to any foreign country that is otherwise prohibited from receiving such type of assistance under any other provision of law.

SEC. 8041. The Secretary of Defense shall issue regulations to prohibit the sale of any tobacco or tobacco-related products in military resale outlets in the United States, its territories and possessions at a price below the most competitive price in the local community: *Provided,* That such regulations shall direct that the prices of tobacco or tobacco-related products in overseas military retail outlets shall be within the range of prices established for military retail system stores located in the United States.

SEC. 8042. (a) During the current fiscal year, none of the appropriations or funds available to the Department of Defense Working Capital Funds shall be used for the purchase of an investment item for the purpose of acquiring a new inventory item for sale or anticipated sale during the current fiscal year or a subsequent fiscal year to customers of the Department of Defense Working Capital Funds if such an item would not have been chargeable to the Department of Defense Business Operations Fund during fiscal year 1994 and if the purchase of such an investment item would be chargeable during the current fiscal year to appropriations made to the Department of Defense for procurement.

(b) The fiscal year 2027 budget request for the Department of Defense as well as all justification material and other documentation supporting the fiscal year 2027 Department of Defense budget

H. R. 7148—36

shall be prepared and submitted to the Congress on the basis that any equipment which was classified as an end item and funded in a procurement appropriation contained in this Act shall be budgeted for in a proposed fiscal year 2027 procurement appropriation and not in the supply management business area or any other area or category of the Department of Defense Working Capital Funds.

SEC. 8043. None of the funds appropriated by this Act for programs of the Central Intelligence Agency shall remain available for obligation beyond the current fiscal year, except for funds appropriated for the Reserve for Contingencies, which shall remain available until September 30, 2027: *Provided,* That funds appropriated, transferred, or otherwise credited to the Central Intelligence Agency Central Services Working Capital Fund during this or any prior fiscal year shall remain available until expended: *Provided further,* That any funds appropriated or transferred to the Central Intelligence Agency for advanced research and development acquisition, for agent operations, and for covert action programs authorized by the President under section 503 of the National Security Act of 1947 (50 U.S.C. 3093) shall remain available until September 30, 2027: *Provided further,* That any funds appropriated or transferred to the Central Intelligence Agency for the construction, improvement, or alteration of facilities, including leased facilities, to be used primarily by personnel of the intelligence community, shall remain available until September 30, 2028.

SEC. 8044. (a) Except as provided in subsections (b) and (c), none of the funds made available by this Act may be used—

(1) to establish a field operating agency; or

(2) to pay the basic pay of a member of the Armed Forces or civilian employee of the Department of Defense who is transferred or reassigned from a headquarters activity if the member or employee's place of duty remains at the location of that headquarters.

(b) The Secretary of Defense or Secretary of a military department may waive the limitations in subsection (a), on a case-by-case basis, if the Secretary determines, and certifies to the Committees on Appropriations of the House of Representatives and the Senate that the granting of the waiver will reduce the personnel requirements or the financial requirements of the department.

(c) This section does not apply to—

(1) field operating agencies funded within the National Intelligence Program;

(2) an Army field operating agency established to eliminate, mitigate, or counter the effects of improvised explosive devices, and, as determined by the Secretary of the Army, other similar threats;

(3) an Army field operating agency established to improve the effectiveness and efficiencies of biometric activities and to integrate common biometric technologies throughout the Department of Defense; or

(4) an Air Force field operating agency established to administer the Air Force Mortuary Affairs Program and Mortuary Operations for the Department of Defense and authorized Federal entities.

SEC. 8045. (a) None of the funds appropriated by this Act shall be available to convert to contractor performance an activity or function of the Department of Defense that, on or after the

H. R. 7148—37

date of the enactment of this Act, is performed by Department of Defense civilian employees unless—

(1) the conversion is based on the result of a public-private competition that includes a most efficient and cost effective organization plan developed by such activity or function;

(2) the Competitive Sourcing Official determines that, over all performance periods stated in the solicitation of offers for performance of the activity or function, the cost of performance of the activity or function by a contractor would be less costly to the Department of Defense by an amount that equals or exceeds the lesser of—

(A) 10 percent of the most efficient organization's personnel-related costs for performance of that activity or function by Federal employees; or

(B) $10,000,000; and

(3) the contractor does not receive an advantage for a proposal that would reduce costs for the Department of Defense by—

(A) not making an employer-sponsored health insurance plan available to the workers who are to be employed in the performance of that activity or function under the contract; or

(B) offering to such workers an employer-sponsored health benefits plan that requires the employer to contribute less towards the premium or subscription share than the amount that is paid by the Department of Defense for health benefits for civilian employees under chapter 89 of title 5, United States Code.

(b)(1) The Department of Defense, without regard to subsection (a) of this section or subsection (a), (b), or (c) of section 2461 of title 10, United States Code, and notwithstanding any administrative regulation, requirement, or policy to the contrary shall have full authority to enter into a contract for the performance of any commercial or industrial type function of the Department of Defense that—

(A) is included on the procurement list established pursuant to section 2 of the Javits-Wagner-O'Day Act (section 8503 of title 41, United States Code);

(B) is planned to be converted to performance by a qualified nonprofit agency for the blind or by a qualified nonprofit agency for other severely handicapped individuals in accordance with that Act; or

(C) is planned to be converted to performance by a qualified firm under at least 51 percent ownership by an Indian tribe, as defined in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450b(e)), or a Native Hawaiian Organization, as defined in section 8(a)(15) of the Small Business Act (15 U.S.C. 637(a)(15)).

(2) This section shall not apply to depot contracts or contracts for depot maintenance as provided in sections 2469 and 2474 of title 10, United States Code.

(c) The conversion of any activity or function of the Department of Defense under the authority provided by this section shall be credited toward any competitive or outsourcing goal, target, or measurement that may be established by statute, regulation, or policy and is deemed to be awarded under the authority of, and in compliance with, subsection (h) of section 2304 of title 10, United

States Code, for the competition or outsourcing of commercial activities.

(RESCISSIONS)

SEC. 8046. Of the funds appropriated in Department of Defense Appropriations Acts, the following funds are hereby rescinded from the following accounts and programs in the specified amounts: *Provided,* That no amounts may be rescinded from amounts that were designated by the Congress as an emergency requirement pursuant to a concurrent resolution on the budget or the Balanced Budget and Emergency Deficit Control Act of 1985:

"Shipbuilding and Conversion, Navy: FFG–Frigate", 2020/2031, $240,245,000;

"Shipbuilding and Conversion, Navy: FFG–Frigate", 2022/2026, $418,624,000;

"Shipbuilding and Conversion, Navy: FFG–Frigate", 2023/2027, $483,391,000;

"Cooperative Threat Reduction Account", 2024/2026, $33,936,000;

"Other Procurement, Army", 2024/2026, $15,000,000;

"Weapons Procurement, Navy", 2024/2026, $2,943,000;

"Shipbuilding and Conversion, Navy: FFG–Frigate", 2024/2028, $1,271,572,000;

"Aircraft Procurement, Air Force", 2024/2026, $25,397,000;

"Missile Procurement, Air Force", 2024/2026, $41,189,000;

"Procurement, Space Force", 2024/2026, $107,100,000;

"Defense Health Program", 2024/2026, $10,473,000;

"Counter-Islamic State of Iraq and Syria Train and Equip Fund", 2025/2026, $50,000,000;

"Procurement of Weapons and Tracked Combat Vehicles, Army", 2025/2027, $452,647,000;

"Other Procurement, Army", 2025/2027, $119,887,000;

"Aircraft Procurement, Navy", 2025/2027, $155,711,000;

"Weapons Procurement, Navy", 2025/2027, $200,272,000;

"Shipbuilding and Conversion, Navy: FFG–Frigate", 2025/2029, $151,230,000;

"Aircraft Procurement, Air Force", 2025/2027, $193,555,000;

"Missile Procurement, Air Force", 2025/2027, $209,045,000;

"Other Procurement, Air Force", 2025/2027, $186,638,000;

"Procurement, Space Force", 2025/2027, $339,196,000;

"Procurement, Defense-Wide", 2025/2027, $11,807,000;

"Research, Development, Test and Evaluation, Army", 2025/2026, $178,735,000;

"Research, Development, Test and Evaluation, Navy", 2025/2026, $82,461,000;

"Research, Development, Test and Evaluation, Air Force", 2025/2026, $329,435,000;

"Research, Development, Test and Evaluation, Space Force", 2025/2026, $370,149,000; and

"Defense Modernization Account , Defense-Wide", 2025/2028, $28,249,000.

SEC. 8047. None of the funds available in this Act may be used to reduce the authorized positions for military technicians (dual status) of the Army National Guard, Air National Guard, Army Reserve and Air Force Reserve for the purpose of applying

H. R. 7148—39

any administratively imposed civilian personnel ceiling, freeze, or reduction on military technicians (dual status), unless such reductions are a direct result of a reduction in military force structure.

SEC. 8048. None of the funds appropriated or otherwise made available in this Act may be obligated or expended for assistance to the Democratic People's Republic of Korea unless specifically appropriated for that purpose: *Provided,* That this restriction shall not apply to any activities incidental to the Defense POW/MIA Accounting Agency mission to recover and identify the remains of United States Armed Forces personnel from the Democratic People's Republic of Korea.

SEC. 8049. (a) None of the funds available to the Department of Defense for any fiscal year for drug interdiction or counter-drug activities may be transferred to any other department or agency of the United States except as specifically provided in an appropriations law.

(b) None of the funds available to the Central Intelligence Agency for any fiscal year for drug interdiction or counter-drug activities may be transferred to any other department or agency of the United States except as specifically provided in an appropriations law.

SEC. 8050. In addition to the amounts appropriated or otherwise made available elsewhere in this Act, $49,000,000 is hereby appropriated to the Department of Defense: *Provided,* That upon the determination of the Secretary of Defense that it shall serve the national interest, the Secretary shall make grants in the amounts specified as follows: $24,000,000 to the United Service Organizations and $25,000,000 to the Red Cross.

SEC. 8051. Notwithstanding any other provision in this Act, the Small Business Innovation Research program and the Small Business Technology Transfer program set-asides shall be taken proportionally from all programs, projects, or activities to the extent they contribute to the extramural budget. The Secretary of each military department, the Director of each Defense Agency, and the head of each other relevant component of the Department of Defense shall submit to the congressional defense committees, concurrent with submission of the budget justification documents to Congress pursuant to section 1105 of title 31, United States Code, a report with a detailed accounting of the Small Business Innovation Research program and the Small Business Technology Transfer program set-asides taken from programs, projects, or activities within such department, agency, or component during the most recently completed fiscal year.

SEC. 8052. None of the funds available to the Department of Defense under this Act shall be obligated or expended to pay a contractor under a contract with the Department of Defense for costs of any amount paid by the contractor to an employee when—

(1) such costs are for a bonus or otherwise in excess of the normal salary paid by the contractor to the employee; and

(2) such bonus is part of restructuring costs associated with a business combination.

H. R. 7148—40

(INCLUDING TRANSFER OF FUNDS)

Sec. 8053. During the current fiscal year, no more than $30,000,000 of appropriations made in this Act under the heading "Operation and Maintenance, Defense-Wide" may be transferred to appropriations available for the pay of military personnel, to be merged with, and to be available for the same time period as the appropriations to which transferred, to be used in support of such personnel in connection with support and services for eligible organizations and activities outside the Department of Defense pursuant to section 2012 of title 10, United States Code.

Sec. 8054. (a) Notwithstanding any other provision of law, the Chief of the National Guard Bureau may permit the use of equipment of the National Guard Distance Learning Project by any person or entity on a space-available, reimbursable basis. The Chief of the National Guard Bureau shall establish the amount of reimbursement for such use on a case-by-case basis.

(b) Amounts collected under subsection (a) shall be credited to funds available for the National Guard Distance Learning Project and be available to defray the costs associated with the use of equipment of the project under that subsection. Such funds shall be available for such purposes without fiscal year limitation.

Sec. 8055. (a) None of the funds appropriated or otherwise made available by this or prior Acts may be obligated or expended to retire, prepare to retire, or place in storage or on backup aircraft inventory status any C–40 aircraft.

(b) The limitation under subsection (a) shall not apply to an individual C–40 aircraft that the Secretary of the Air Force determines, on a case-by-case basis, to be no longer mission capable due to a Class A mishap.

(c) If the Secretary determines under subsection (b) that an aircraft is no longer mission capable, the Secretary shall submit to the congressional defense committees a certification in writing that the status of such aircraft is due to a Class A mishap and not due to lack of maintenance, repairs, or other reasons.

(d) Not later than 90 days after the date of the enactment of this Act, the Secretary of Defense shall submit to the congressional defense committees a report on the necessary steps taken by the Department of Defense to meet the travel requirements for official or representational duties of members of Congress and the Cabinet in fiscal years 2026 and 2027.

Sec. 8056. (a) None of the funds appropriated in title IV of this Act may be used to procure end-items for delivery to military forces for operational training, operational use, or inventory requirements: *Provided,* That this restriction does not apply to end-items used in development, prototyping in accordance with an approved test strategy, and test activities preceding and leading to acceptance for operational use.

(b) If the number of end-items budgeted with funds appropriated in title IV of this Act exceeds the number required in an approved test strategy, the Under Secretary of Defense (Research and Engineering) and the Under Secretary of Defense (Acquisition and Sustainment), in coordination with the responsible Service Acquisition Executive, shall certify in writing to the congressional defense committees that there is a bonafide need for the additional end-items at the time of submittal to Congress of the budget of the President for fiscal year 2027 pursuant to section 1105 of

H. R. 7148—41

title 31, United States Code: *Provided*, That this restriction does not apply to programs funded within the National Intelligence Program.

(c) The Secretary of Defense shall, at the time of the submittal to Congress of the budget of the President for fiscal year 2027 pursuant to section 1105 of title 31, United States Code, submit to the congressional defense committees a report detailing the use of funds requested in research, development, test and evaluation accounts for end-items used in development, prototyping and test activities preceding and leading to acceptance for operational use: *Provided*, That the report shall set forth, for each end item covered by the preceding proviso, a detailed list of the statutory authorities under which amounts in the accounts described in that proviso were used for such item: *Provided further*, That the Secretary of Defense shall, at the time of the submittal to Congress of the budget of the President for fiscal year 2027 pursuant to section 1105 of title 31, United States Code, submit to the congressional defense committees a certification that funds requested for fiscal year 2027 in research, development, test and evaluation accounts are in compliance with this section: *Provided further*, That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying in writing to the Subcommittees on Defense of the Committees on Appropriations of the House of Representatives and the Senate that it is in the national security interest to do so.

SEC. 8057. None of the funds appropriated or otherwise made available by this or other Department of Defense Appropriations Acts may be obligated or expended for the purpose of performing repairs or maintenance to military family housing units of the Department of Defense, including areas in such military family housing units that may be used for the purpose of conducting official Department of Defense business.

SEC. 8058. Notwithstanding any other provision of law, funds appropriated in this Act under the heading "Research, Development, Test and Evaluation, Defense-Wide" for any new start Defense Innovation Acceleration (PE 0603838D8Z) or Rapid Prototyping Program (PE 0604331D8Z) demonstration project with a value of more than $5,000,000 may only be obligated 15 days after a report, including a description of the project, the planned acquisition and transition strategy and its estimated annual and total cost, has been provided in writing to the congressional defense committees: *Provided*, That the Secretary of Defense may waive this restriction on a case-by-case basis by certifying to the congressional defense committees that it is in the national interest to do so.

SEC. 8059. The Secretary of Defense shall continue to provide a classified quarterly report to the Committees on Appropriations of the House of Representatives and the Senate, Subcommittees on Defense on certain matters as directed in the classified annex accompanying this Act.

SEC. 8060. Notwithstanding section 12310(b) of title 10, United States Code, a servicemember who is a member of the National Guard serving on full-time National Guard duty under section 502(f) of title 32, United States Code, may perform duties in support of the ground-based elements of the National Ballistic Missile Defense System.

SEC. 8061. None of the funds provided in this Act may be used to transfer to any nongovernmental entity ammunition held

H. R. 7148—42

by the Department of Defense that has a center-fire cartridge
and a United States military nomenclature designation of "armor
penetrator", "armor piercing (AP)", "armor piercing incendiary
(API)", "armor-piercing incendiary tracer (API–T)", "general purpose
(GP)", "special purpose (SP)" except 9mm, or "enhanced performance
round (EPR)", except to an entity performing demilitarization serv-
ices for the Department of Defense under a contract that requires
the entity to demonstrate to the satisfaction of the Department
of Defense that the above listed projectiles are either: (1) rendered
incapable of reuse by the demilitarization process; or (2) used to
manufacture ammunition pursuant to a contract with the Depart-
ment of Defense or the manufacture of ammunition for export
pursuant to a License for Permanent Export of Unclassified Military
Articles issued by the Department of State.

SEC. 8062. Notwithstanding any other provision of law, the
Chief of the National Guard Bureau, or their designee, may waive
payment of all or part of the consideration that otherwise would
be required under section 2667 of title 10, United States Code,
in the case of a lease of personal property for a period not in
excess of 1 year to any organization specified in section 508(d)
of title 32, United States Code, or any other youth, social, or
fraternal nonprofit organization as may be approved by the Chief
of the National Guard Bureau, or their designee, on a case-by-
case basis.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8063. Of the amounts appropriated in this Act under
the heading "Operation and Maintenance, Army", $218,015,597
shall remain available until expended: *Provided,* That, notwith-
standing any other provision of law, the Secretary of Defense is
authorized to transfer such funds to other activities of the Federal
Government: *Provided further,* That the Secretary of Defense is
authorized to enter into and carry out contracts for the acquisition
of real property, construction, personal services, and operations
related to projects carrying out the purposes of this section: *Provided
further,* That contracts entered into under the authority of this
section may provide for such indemnification as the Secretary deter-
mines to be necessary: *Provided further,* That projects authorized
by this section shall comply with applicable Federal, State, and
local law to the maximum extent consistent with the national
security, as determined by the Secretary of Defense.

SEC. 8064. (a) None of the funds appropriated in this or any
other Act, including prior year Acts, may be used to implement
a change to—

(1) the appropriations account structure for the National
Intelligence Program budget, including through the creation
of a new appropriation or new appropriation account;

(2) how the National Intelligence Program budget request
is presented in the unclassified P–1, R–1, and O–1 documents
supporting the Department of Defense budget request;

(3) the process by which the National Intelligence Program
appropriations are apportioned to the executing agencies; or

(4) the process by which the National Intelligence Program
appropriations are allotted, obligated and disbursed.

(b) Nothing in subsection (a) shall be construed to prohibit
the merger of programs or changes to the National Intelligence

H. R. 7148—43

Program budget at or below the Expenditure Center level, provided such change is otherwise in accordance with subsection (a).

(c) The Director of National Intelligence and the Secretary of Defense may jointly study and develop detailed proposals for alternative budget presentation and appropriation accounts. Such study shall include a comprehensive counterintelligence risk assessment to ensure that none of the alternative processes will adversely affect counterintelligence.

(d) Upon development of the detailed proposals defined under subsection (c), the Director of National Intelligence and the Secretary of Defense shall—

(1) provide the proposed alternatives to all affected agencies;

(2) receive certification from all affected agencies attesting that the proposed alternatives will not adversely affect counterintelligence; and

(3) not later than 30 days after receiving all necessary certifications under paragraph (2), present the proposed alternatives and certifications to the congressional defense and intelligence committees.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8065. In addition to amounts made available elsewhere in this Act, $25,000,000 is hereby appropriated to the Department of Defense and made available for transfer to operation and maintenance accounts, procurement accounts, and research, development, test and evaluation accounts only for those efforts by the Commander, United States Africa Command to expand cooperation, share operational information, advance interoperability, or improve the capabilities of our allies and partners in their area of operation: *Provided,* That none of the funds provided under this section may be obligated or expended until 30 days after the Secretary of Defense provides to the congressional defense committees an execution plan: *Provided further,* That not less than 15 days prior to any transfer of funds, the Secretary of Defense shall notify the congressional defense committees of the details of any such transfer: *Provided further,* That upon transfer, the funds shall be merged with and available for the same purposes, and for the same time period, as the appropriation to which transferred: *Provided further,* That the transfer authority provided under this section is in addition to any other transfer authority provided elsewhere in this Act.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8066. During the current fiscal year, not to exceed $11,000,000 from each of the appropriations made in title II of this Act for "Operation and Maintenance, Army", "Operation and Maintenance, Navy", and "Operation and Maintenance, Air Force" may be transferred by the military department concerned to its central fund established for Fisher Houses and Suites pursuant to section 2493(d) of title 10, United States Code.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8067. In addition to amounts provided elsewhere in this Act, $5,000,000 is hereby appropriated to the Department of Defense, to remain available for obligation until expended: *Provided,*

That notwithstanding any other provision of law, that upon the determination of the Secretary of Defense that it shall serve the national interest, these funds shall be available only for a grant to the Fisher House Foundation, Inc., only for the construction and furnishing of additional Fisher Houses to meet the needs of military family members when confronted with the illness or hospitalization of an eligible military beneficiary.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8068. Of the amounts appropriated for "Operation and Maintenance, Navy", up to $1,000,000 shall be available for transfer to the John C. Stennis Center for Public Service Development Trust Fund established under section 116 of the John C. Stennis Center for Public Service Training and Development Act (2 U.S.C. 1105).

SEC. 8069. None of the funds available to the Department of Defense may be obligated to modify command and control relationships to give Fleet Forces Command operational and administrative control of United States Navy forces assigned to the Pacific fleet: *Provided,* That the command and control relationships which existed on October 1, 2004, shall remain in force until a written modification has been proposed to the Committees on Appropriations of the House of Representatives and the Senate: *Provided further,* That the proposed modification may be implemented 30 days after the notification unless an objection is received from either the House or Senate Appropriations Committees: *Provided further,* That any proposed modification shall not preclude the ability of the commander of United States Indo-Pacific Command to meet operational requirements.

SEC. 8070. Any notice that is required to be submitted to the Committees on Appropriations of the House of Representatives and the Senate under section 3601 of title 10, United States Code, as added by section 804(a) of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 shall be submitted pursuant to that requirement concurrently to the Subcommittees on Defense of the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 8071. Of the amounts appropriated in this Act under the headings "Procurement, Defense-Wide" and "Research, Development, Test and Evaluation, Defense-Wide", $500,000,000 shall be for the Israeli Cooperative Programs: *Provided,* That of this amount, $60,000,000 shall be for the Secretary of Defense to provide to the Government of Israel for the procurement of the Iron Dome defense system to counter short-range rocket threats, subject to the U.S.-Israel Iron Dome Procurement Agreement, as amended; $127,000,000 shall be for the Short Range Ballistic Missile Defense (SRBMD) program, including cruise missile defense research and development under the SRBMD program; $40,000,000 shall be for co-production activities of SRBMD systems in the United States and in Israel to meet Israel's defense requirements consistent with each nation's laws, regulations, and procedures, subject to the U.S.-Israeli co-production agreement for SRBMD, as amended; $100,000,000 shall be for an upper-tier component to the Israeli Missile Defense Architecture, of which $100,000,000 shall be for co-production activities of Arrow 3 Upper Tier systems in the United States and in Israel to meet Israel's defense requirements consistent

H. R. 7148—45

with each nation's laws, regulations, and procedures, subject to the U.S.-Israeli co-production agreement for Arrow 3 Upper Tier, as amended; and $173,000,000 shall be for the Arrow System Improvement Program including development of a long range, ground and airborne, detection suite.

SEC. 8072. Of the amounts appropriated in this Act under the heading "Shipbuilding and Conversion, Navy", $1,676,587,000 shall be available until September 30, 2026, to fund prior year shipbuilding cost increases for the following programs:

(1) Under the heading "Shipbuilding and Conversion, Navy", 2013/2026: Carrier Replacement Program, $150,000,000;

(2) Under the heading "Shipbuilding and Conversion, Navy", 2016/2026: Virginia Class Submarine Program, $121,538,000;

(3) Under the heading "Shipbuilding and Conversion, Navy", 2016/2026: DDG 51 Program, $14,892,000;

(4) Under the heading "Shipbuilding and Conversion, Navy", 2017/2026: Virginia Class Submarine Program, $99,116,000;

(5) Under the heading "Shipbuilding and Conversion, Navy", 2017/2026: DDG 51 Program, $62,365,000;

(6) Under the heading "Shipbuilding and Conversion, Navy", 2017/2026: LHA Replacement Program, $93,603,000;

(7) Under the heading "Shipbuilding and Conversion, Navy", 2018/2026: Virginia Class Submarine Program, $289,761,000;

(8) Under the heading "Shipbuilding and Conversion, Navy", 2018/2026: DDG 51 Program, $104,238,000;

(9) Under the heading "Shipbuilding and Conversion, Navy", 2018/2026: LPD Flight II Program, $93,442,000;

(10) Under the heading "Shipbuilding and Conversion, Navy", 2018/2026: Oceanographic Ships Program, $6,015,000;

(11) Under the heading "Shipbuilding and Conversion, Navy", 2019/2026: Littoral Combat Ship Program, $5,766,000;

(12) Under the heading "Shipbuilding and Conversion, Navy", 2019/2026: T–AO Fleet Oiler Program, $15,400,000;

(13) Under the heading "Shipbuilding and Conversion, Navy", 2019/2026: Ship to Shore Connector Program, $15,480,000;

(14) Under the heading "Shipbuilding and Conversion, Navy", 2020/2026: CVN Refueling Overhauls, $483,100,000;

(15) Under the heading "Shipbuilding and Conversion, Navy", 2020/2026: T–AO Fleet Oiler Program, $48,260,000;

(16) Under the heading "Shipbuilding and Conversion, Navy", 2022/2026: T–AO Fleet Oiler Program, $19,650,000;

(17) Under the heading "Shipbuilding and Conversion, Navy", 2022/2026: Expeditionary Sea Base Program, $30,000,000;

(18) Under the heading "Shipbuilding and Conversion, Navy", 2022/2026: Expeditionary Fast Transport Program, $11,231,000;

(19) Under the heading "Shipbuilding and Conversion, Navy", 2023/2026: T–AO Fleet Oiler Program, $6,530,000; and

(20) Under the heading "Shipbuilding and Conversion, Navy", 2024/2026: T–AO Fleet Oiler Program, $6,200,000.

SEC. 8073. Funds appropriated by this Act, or made available by the transfer of funds in this Act, for intelligence activities and

intelligence-related activities not otherwise authorized in the Intelligence Authorization Act for Fiscal Year 2026 are deemed to be specifically authorized by the Congress for purposes of section 504 of the National Security Act of 1947 (50 U.S.C. 3094).

SEC. 8074. None of the funds provided in this Act shall be available for obligation or expenditure through a reprogramming of funds that creates or initiates a new program, project, or activity unless such program, project, or activity must be undertaken immediately in the interest of national security and only after written prior notification to the congressional defense committees.

SEC. 8075. None of the funds in this Act may be used for research, development, test, evaluation, procurement or deployment of nuclear armed interceptors of a missile defense system.

SEC. 8076. None of the funds made available by this Act may be obligated or expended for the purpose of decommissioning more than one Littoral Combat Ship.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8077. The Secretary of Defense may transfer funds from any available Department of the Navy appropriation (except military construction) to any available Navy ship construction appropriation for the purpose of liquidating necessary changes resulting from inflation, market fluctuations, or rate adjustments for any ship construction program appropriated in law: *Provided,* That the Secretary may transfer not to exceed $40,000,000 under the authority provided by this section: *Provided further,* That the Secretary may not transfer any funds until 30 days after the proposed transfer has been reported to the Committees on Appropriations of the House of Representatives and the Senate, unless a response from the Committees is received sooner: *Provided further*, That any funds transferred pursuant to this section shall retain the same period of availability as when originally appropriated: *Provided further*, That the transfer authority provided under this section is in addition to any other transfer authority contained elsewhere in this Act: *Provided further,* That the transfer authority provided by this section expires on September 30, 2030.

SEC. 8078. None of the funds appropriated or made available in this Act shall be used to reduce or disestablish the operation of the 53rd Weather Reconnaissance Squadron of the Air Force Reserve, if such action would reduce the WC–130 Weather Reconnaissance mission below the levels funded in this Act: *Provided,* That the Air Force shall allow the 53rd Weather Reconnaissance Squadron to perform other missions in support of national defense requirements during the non-hurricane season.

SEC. 8079. None of the funds provided in this Act shall be available for integration of foreign intelligence information unless the information has been lawfully collected and processed during the conduct of authorized foreign intelligence activities: *Provided,* That information pertaining to United States persons shall only be handled in accordance with protections provided in the Fourth Amendment of the United States Constitution as implemented through Executive Order No. 12333.

SEC. 8080. None of the funds appropriated by this Act for programs of the Office of the Director of National Intelligence shall remain available for obligation beyond the current fiscal year,

except for funds appropriated for research and technology, which shall remain available until September 30, 2027.

SEC. 8081. For purposes of section 1553(b) of title 31, United States Code, any subdivision of appropriations made in this Act under the heading "Shipbuilding and Conversion, Navy" shall be considered to be for the same purpose as any subdivision under the heading "Shipbuilding and Conversion, Navy" appropriations in any prior fiscal year, and the 1 percent limitation shall apply to the total amount of the appropriation.

SEC. 8082. (a) Not later than 60 days after the date of enactment of this Act, the Director of National Intelligence shall submit a report to the congressional intelligence committees to establish the baseline for application of reprogramming and transfer authorities for fiscal year 2026: *Provided,* That the report shall include—

(1) a table for each appropriation with a separate column to display the President's budget request, adjustments made by Congress, adjustments due to enacted rescissions, if appropriate, and the fiscal year enacted level;

(2) a delineation in the table for each appropriation by Expenditure Center and project; and

(3) an identification of items of special congressional interest.

(b) None of the funds provided for the National Intelligence Program in this Act shall be available for reprogramming or transfer until the report identified in subsection (a) is submitted to the congressional intelligence committees, unless the Director of National Intelligence certifies in writing to the congressional intelligence committees that such reprogramming or transfer is necessary as an emergency requirement.

SEC. 8083. Any transfer of amounts appropriated to the Department of Defense Acquisition Workforce Development Account in or for fiscal year 2026 to a military department or Defense Agency pursuant to section 1705(e)(1) of title 10, United States Code, shall be covered by and subject to section 8005 of this Act.

SEC. 8084. (a) None of the funds provided for the National Intelligence Program in this or any prior appropriations Act shall be available for obligation or expenditure through a reprogramming or transfer of funds in accordance with section 102A(d) of the National Security Act of 1947 (50 U.S.C. 3024(d)) that—

(1) creates a new start effort;

(2) terminates a program with appropriated funding of $10,000,000 or more;

(3) transfers funding into or out of the National Intelligence Program; or

(4) transfers funding between appropriations, unless the congressional intelligence committees are notified 30 days in advance of such reprogramming of funds; this notification period may be reduced for urgent national security requirements.

(b) None of the funds provided for the National Intelligence Program in this or any prior appropriations Act shall be available for obligation or expenditure through a reprogramming or transfer of funds in accordance with section 102A(d) of the National Security Act of 1947 (50 U.S.C. 3024(d)) that results in a cumulative increase or decrease of the levels specified in the classified annex accompanying the Act unless the congressional intelligence committees are notified 30 days in advance of such reprogramming of funds;

H. R. 7148—48

this notification period may be reduced for urgent national security requirements.

SEC. 8085. (a) Any agency receiving funds made available in this Act, shall, subject to subsections (b) and (c), post on the public website of that agency any report required to be submitted by the Congress in this or any other Act, upon the determination by the head of the agency that it shall serve the national interest.

(b) Subsection (a) shall not apply to a report if—

(1) the public posting of the report compromises national security; or

(2) the report contains proprietary information.

(c) The head of the agency posting such report shall do so only after such report has been made available to the requesting Committee or Committees of Congress for no less than 45 days.

SEC. 8086. (a) None of the funds appropriated or otherwise made available by this Act may be expended for any Federal contract for an amount in excess of $1,000,000, unless the contractor agrees not to—

(1) enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention; or

(2) take any action to enforce any provision of an existing agreement with an employee or independent contractor that mandates that the employee or independent contractor resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention.

(b) None of the funds appropriated or otherwise made available by this Act may be expended for any Federal contract unless the contractor certifies that it requires each covered subcontractor to agree not to enter into, and not to take any action to enforce any provision of, any agreement as described in paragraphs (1) and (2) of subsection (a), with respect to any employee or independent contractor performing work related to such subcontract. For purposes of this subsection, a "covered subcontractor" is an entity that has a subcontract in excess of $1,000,000 on a contract subject to subsection (a).

(c) The prohibitions in this section do not apply with respect to a contractor's or subcontractor's agreements with employees or independent contractors that may not be enforced in a court of the United States.

(d) The Secretary of Defense may waive the application of subsection (a) or (b) to a particular contractor or subcontractor for the purposes of a particular contract or subcontract if the Secretary or the Deputy Secretary personally determines that the waiver is necessary to avoid harm to national security interests of the United States, and that the term of the contract or subcontract is not longer than necessary to avoid such harm. The determination shall set forth with specificity the grounds for the waiver and for the contract or subcontract term selected, and shall

H. R. 7148—49

state any alternatives considered in lieu of a waiver and the reasons each such alternative would not avoid harm to national security interests of the United States. The Secretary of Defense shall transmit to Congress, and simultaneously make public, any determination under this subsection not less than 15 business days before the contract or subcontract addressed in the determination may be awarded.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8087. From within the funds appropriated for operation and maintenance for the Defense Health Program in this Act, up to $165,000,000, shall be available for transfer to the Joint Department of Defense—Department of Veterans Affairs Medical Facility Demonstration Fund in accordance with the provisions of section 1704 of the National Defense Authorization Act for Fiscal Year 2010, Public Law 111–84: *Provided,* That for purposes of section 1704(b), the facility operations funded are operations of the integrated Captain James A. Lovell Federal Health Care Center, consisting of the North Chicago Veterans Affairs Medical Center, the Navy Ambulatory Care Center, and supporting facilities designated as a combined Federal medical facility as described by section 706 of Public Law 110–417: *Provided further,* That additional funds may be transferred from funds appropriated for operation and maintenance for the Defense Health Program to the Joint Department of Defense—Department of Veterans Affairs Medical Facility Demonstration Fund upon written notification by the Secretary of Defense to the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 8088. Notwithstanding price or other limitations applicable to the purchase of passenger carrying vehicles, appropriations available to the Department of Defense may be used for the purchase of: (1) heavy and light armored vehicles for the physical security of personnel or for force protection purposes up to a limit of $450,000 per vehicle; and (2) passenger motor vehicles up to a limit of $75,000 per vehicle for use by military and civilian employees of the Department of Defense in the United States Central Command area of responsibility.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8089. Upon a determination by the Director of National Intelligence that such action is necessary and in the national interest, the Director may, with the approval of the Director of the Office of Management and Budget, transfer not to exceed $1,500,000,000 of the funds made available in this Act for the National Intelligence Program: *Provided,* That such authority to transfer may not be used unless for higher priority items, based on unforeseen intelligence requirements, than those for which originally appropriated and in no case where the item for which funds are requested has been denied by the Congress: *Provided further,* That a request for multiple reprogrammings of funds using authority provided in this section shall be made prior to June 30, 2026.

SEC. 8090. Of the amounts appropriated in this Act for "Shipbuilding and Conversion, Navy", $290,000,000, to remain available for obligation until September 30, 2030, may be used for the purchase of two used sealift vessels for the National Defense Reserve

Fleet, established under section 11 of the Merchant Ship Sales Act of 1946 (46 U.S.C. 57100): *Provided,* That such amounts are available for reimbursements to the Ready Reserve Force, Maritime Administration account of the United States Department of Transportation for programs, projects, activities, and expenses related to the National Defense Reserve Fleet: *Provided further,* That notwithstanding section 2218 of title 10, United States Code, none of these funds shall be transferred to the National Defense Sealift Fund for execution.

SEC. 8091. The Secretary of Defense shall post grant awards on a public website in a searchable format.

SEC. 8092. None of the funds made available by this Act may be used by the National Security Agency to—

(1) conduct an acquisition pursuant to section 702 of the Foreign Intelligence Surveillance Act of 1978 for the purpose of targeting a United States person; or

(2) acquire, monitor, or store the contents (as such term is defined in section 2510(8) of title 18, United States Code) of any electronic communication of a United States person from a provider of electronic communication services to the public pursuant to section 501 of the Foreign Intelligence Surveillance Act of 1978.

SEC. 8093. None of the funds made available in this or any other Act may be used to pay the salary of any officer or employee of any agency funded by this Act who approves or implements the transfer of administrative responsibilities or budgetary resources of any program, project, or activity financed by this Act to the jurisdiction of another Federal agency not financed by this Act without the express authorization of Congress: *Provided,* That this limitation shall not apply to transfers of funds expressly provided for in Department of Defense Appropriations Acts, or provisions of Acts providing supplemental appropriations for the Department of Defense.

SEC. 8094. Of the amounts appropriated in this Act for "Operation and Maintenance, Navy", $785,052,000, to remain available until expended, may be used for any purposes related to the National Defense Reserve Fleet established under section 11 of the Merchant Ship Sales Act of 1946 (46 U.S.C. 57100): *Provided,* That such amounts are available for reimbursements to the Ready Reserve Force, Maritime Administration account of the United States Department of Transportation for programs, projects, activities, and expenses related to the National Defense Reserve Fleet.

SEC. 8095. (a) None of the funds provided in this Act for the TAO Fleet Oiler program shall be used to award a new contract that provides for the acquisition of the following components unless those components are manufactured in the United States: Auxiliary equipment (including pumps) for shipboard services; propulsion equipment (including engines, reduction gears, and propellers); shipboard cranes; spreaders for shipboard cranes; and anchor chains, specifically for the seventh and subsequent ships of the fleet.

(b) None of the funds provided in this Act for any Frigate program shall be used to award a new contract that provides for the acquisition of the following components unless those components are manufactured in the United States: Air circuit breakers; gyrocompasses; electronic navigation chart systems; steering controls; pumps; propulsion and machinery control systems; totally enclosed lifeboats; auxiliary equipment pumps; shipboard cranes;

auxiliary chill water systems; and propulsion propellers: *Provided*, That the Secretary of the Navy shall incorporate United States manufactured propulsion engines and propulsion reduction gears into any Frigate program beginning not later than with the eleventh ship of the program.

SEC. 8096. None of the funds provided in this Act for requirements development, performance specification development, concept design and development, ship configuration development, systems engineering, naval architecture, marine engineering, operations research analysis, industry studies, preliminary design, development of the Detailed Design and Construction Request for Proposals solicitation package, or related activities for the T–ARC(X) Cable Laying and Repair Ship or the T–AGOS(X) Oceanographic Surveillance Ship may be used to award a new contract for such activities unless these contracts include specifications that all auxiliary equipment, including pumps and propulsion shafts, are manufactured in the United States.

SEC. 8097. No amounts credited or otherwise made available in this or any other Act to the Department of Defense Acquisition Workforce Development Account may be transferred to:

(1) the Rapid Prototyping Fund established under section 804(d) of the National Defense Authorization Act for Fiscal Year 2016 (10 U.S.C. 2302 note); or

(2) credited to a military-department specific fund established under section 804(d)(2) of the National Defense Authorization Act for Fiscal Year 2016.

SEC. 8098. None of the funds made available by this Act may be used for Government Travel Charge Card expenses by military or civilian personnel of the Department of Defense for gaming, or for entertainment that includes topless or nude entertainers or participants, as prohibited by Department of Defense FMR, Volume 9, Chapter 3 and Department of Defense Instruction 1015.10 (enclosure 3, 14a and 14b).

SEC. 8099. (a) None of the funds made available in this Act may be used to maintain or establish a computer network unless such network is designed to block access to pornography websites.

(b) Nothing in subsection (a) shall limit the use of funds necessary for any Federal, State, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities, or for any activity necessary for the national defense, including intelligence activities.

SEC. 8100. None of the funds provided for, or otherwise made available, in this or any other Act, may be obligated or expended by the Secretary of Defense to provide motorized vehicles, aviation platforms, munitions other than small arms and munitions appropriate for customary ceremonial honors, operational military units, or operational military platforms if the Secretary determines that providing such units, platforms, or equipment would undermine the readiness of such units, platforms, or equipment.

SEC. 8101. (a) None of the funds made available by this or any other Act may be used to enter into a contract, memorandum of understanding, or cooperative agreement with, make a grant to, or provide a loan or loan guarantee to any corporation that has any unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner

pursuant to an agreement with the authority responsible for collecting such tax liability, provided that the applicable Federal agency is aware of the unpaid Federal tax liability.

(b) Subsection (a) shall not apply if the applicable Federal agency has considered suspension or debarment of the corporation described in such subsection and has made a determination that such suspension or debarment is not necessary to protect the interests of the Federal Government.

SEC. 8102. (a) Amounts appropriated under title IV of this Act, as detailed in budget activity eight in the tables titled Explanation of Project Level Adjustments in the explanatory statement regarding this Act, may be used for expenses for the agile research, development, test and evaluation, procurement, production, modification, and operation and maintenance, only for the following Software and Digital Technology Pilot programs—

(1) Defensive CYBER—Software Prototype Development (PE 0608041A);

(2) Risk Management Information (PE 0608013N);

(3) Maritime Tactical Command and Control (PE 0608231N);

(4) Space Domain Awareness/Planning/Tasking SW (PE 1208248SF);

(5) Global Command and Control System (PE 0303150K);

(6) Acquisition Visibility (PE 0608648D8Z);

(7) Enterprise Platforms and Capabilities—Software Pilot Program (PE 0608140D8Z); and

(8) Accelerate the Procurement and Fielding of Innovative Technologies (APFIT) (PE 0000000D8Z).

(b) None of the funds appropriated by this or prior Department of Defense Appropriations Acts may be obligated or expended to initiate additional Software and Digital Technology Pilot Programs in fiscal year 2026.

SEC. 8103. None of the funds appropriated or otherwise made available by this Act may be used to transfer the National Reconnaissance Office to the Space Force: *Provided,* That nothing in this Act shall be construed to limit or prohibit cooperation, collaboration, and coordination between the National Reconnaissance Office and the Space Force or any other elements of the Department of Defense.

SEC. 8104. None of the funds made available in this Act may be used in contravention of the following laws enacted or regulations promulgated to implement the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (done at New York on December 10, 1984):

(1) Section 2340A of title 18, United States Code.

(2) Section 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 (division G of Public Law 105–277; 112 Stat. 2681–822; 8 U.S.C. 1231 note) and regulations prescribed thereto, including regulations under part 208 of title 8, Code of Federal Regulations, and part 95 of title 22, Code of Federal Regulations.

(3) Sections 1002 and 1003 of the Department of Defense, Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act, 2006 (Public Law 109–148).

Sᴇᴄ. 8105. None of the funds made available by this Act may be used to provide arms, training, or other assistance to the Azov Battalion.

Sᴇᴄ. 8106. The Secretary of Defense may, in this fiscal year and each fiscal year thereafter, accept and retain contributions, including money, personal property, and services, from foreign governments and other entities, to carry out assistance authorized by section 1250 of the National Defense Authorization Act for Fiscal Year 2016 (Public Law 114–92): *Provided,* That such contributions received shall be available to the Secretary of Defense, with the concurrence of the Secretary of State, to provide assistance authorized by such section, for replacement of any weapons or articles provided to entities described in subparagraphs (A) and (B) of subsection (a)(1) of such section from the inventory of the United States, and to recover or dispose of equipment previously provided to such entities: *Provided further,* That the Secretary of Defense shall consult with the congressional defense committees in advance of the provision of support provided to forces or groups described in subparagraph (B) of such subsection: *Provided further,* That the Secretary of Defense shall notify the congressional defense committees in writing upon the receipt and upon the obligation of any contribution, delineating the sources and amounts of the funds received and the specific use of such contributions: *Provided further,* That any notification of obligation of funds received in this section shall specify an estimated timeline for the delivery of defense articles and defense services provided and shall identify if any equipment provided requires enhanced end-use monitoring: *Provided further,* That contributions of money for the purposes provided herein from any foreign government or other entity may be credited to the Operation and Maintenance, Defense-Wide account, to remain available for the following two fiscal years, and used for such purposes: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the congressional defense committees on the use and status of funds received pursuant to this section.

Sᴇᴄ. 8107. During the current fiscal year, the Department of Defense is authorized to incur obligations of not to exceed $350,000,000 for purposes specified in section 2350j(c) of title 10, United States Code, in anticipation of receipt of contributions, only from the Government of Kuwait, under that section: *Provided,* That, such contributions shall, upon receipt, be credited to the appropriations or fund which incurred such obligations.

Sᴇᴄ. 8108. Of the amounts appropriated in this Act under the heading "Operation and Maintenance, Defense-Wide", for the Defense Security Cooperation Agency, $1,499,808,000, to remain available until September 30, 2027, shall be available for International Security Cooperation Programs and other programs to provide support and assistance to foreign security forces or other groups or individuals to conduct, support or facilitate counterterrorism, crisis response, or building partner capacity programs: *Provided,* That the Secretary of Defense shall, not less than 15 days prior to obligating funds made available in this section, notify the congressional defense committees in writing of the details of any planned obligation: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the Committees on Appropriations of the House of Representatives and the Senate on the use and status of funds made available in this section.

SEC. 8109. Of the amounts appropriated in this Act under the heading "Operation and Maintenance, Defense-Wide", for the Defense Security Cooperation Agency, $267,298,000, to remain available until September 30, 2027, shall be available for support authorized by subparagraphs (A) through (E) and (G) through (I) of section 1226(a)(1) of the National Defense Authorization Act for Fiscal Year 2016 (22 U.S.C. 2151 note), of which not less than $150,000,000 shall be for Jordan: *Provided,* That the Secretary of Defense shall, not less than 15 days prior to obligating funds made available under this section, notify the congressional defense committees in writing of the details of any planned obligation and the nature of the expenses incurred: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the Committees on Appropriations of the House of Representatives and the Senate on the use and status of funds made available in this section.

SEC. 8110. None of the funds made available by this Act may be used in contravention of the War Powers Resolution (50 U.S.C. 1541 et seq.).

SEC. 8111. None of the funds made available by this Act for excess defense articles, assistance under section 333 of title 10, United States Code, or peacekeeping operations for the countries designated annually to be in violation of the standards of the Child Soldiers Prevention Act of 2008 (Public Law 110–457; 22 U.S.C. 2370c–1) may be used to support any military training or operation that includes child soldiers, as defined by the Child Soldiers Prevention Act of 2008, unless such assistance is otherwise permitted under section 404 of the Child Soldiers Prevention Act of 2008.

SEC. 8112. None of the funds made available by this Act may be made available for any member of the Taliban.

SEC. 8113. Notwithstanding any other provision of law, any transfer of funds, appropriated or otherwise made available by this Act, for support to friendly foreign countries in connection with the conduct of operations in which the United States is not participating, pursuant to section 331(d) of title 10, United States Code, shall be made in accordance with section 8005 of this Act.

SEC. 8114. (a) None of the funds appropriated or otherwise made available by this or any other Act may be used by the Secretary of Defense, or any other official or officer of the Department of Defense, to enter into a contract, memorandum of understanding, or cooperative agreement with, or make a grant to, or provide a loan or loan guarantee to Rosoboronexport or any subsidiary of Rosoboronexport.

(b) The Secretary of Defense may waive the limitation in subsection (a) if the Secretary, in consultation with the Secretary of State and the Director of National Intelligence, determines that it is in the vital national security interest of the United States to do so, and certifies in writing to the congressional defense committees that—

    (1) Rosoboronexport has ceased the transfer of lethal military equipment to, and the maintenance of existing lethal military equipment for, the Government of the Syrian Arab Republic;

    (2) the armed forces of the Russian Federation have withdrawn from Ukraine; and

(3) agents of the Russian Federation have ceased taking active measures to destabilize the control of the Government of Ukraine over eastern Ukraine.

(c) The Inspector General of the Department of Defense shall conduct a review of any action involving Rosoboronexport with respect to a waiver issued by the Secretary of Defense pursuant to subsection (b), and not later than 90 days after the date on which such a waiver is issued by the Secretary of Defense, the Inspector General shall submit to the congressional defense committees a report containing the results of the review conducted with respect to such waiver.

SEC. 8115. The Secretary of Defense shall notify the congressional defense committees in writing not more than 30 days after the receipt of any contribution of funds received from the government of a foreign country for any purpose relating to the stationing or operations of the United States Armed Forces: *Provided,* That such notification shall include the amount of the contribution; the purpose for which such contribution was made; and the authority under which such contribution was accepted by the Secretary of Defense: *Provided further,* That not fewer than 15 days prior to obligating such funds, the Secretary of Defense shall submit to the congressional defense committees in writing a notification of the planned use of such contributions, including whether such contributions would support existing or new stationing or operations of the United States Armed Forces.

SEC. 8116. (a) The Chairman of the Joint Chiefs, in coordination with the Secretaries of the military departments and the Chiefs of the Armed Forces, shall submit to the congressional defense committees, not later than 30 days after the last day of each quarter of the fiscal year, a report on the use of operation and maintenance funds for activities or exercises in excess of $5,000,000 that have been designated by the Secretary of Defense as unplanned activities for fiscal year 2026.

(b) Each report required by subsection (a) shall also include—

(1) the title, date, and location, of each activity and exercise covered by the report;

(2) an identification of the military department and units that participated in each such activity or exercise (including an estimate of the number of participants);

(3) the total cost of the activity or exercise, by budget line item (with a breakdown by cost element such as transportation); and

(4) a short explanation of the objective of the activity or exercise.

(c) The report required by subsection (a) shall be submitted in unclassified form, but may include a classified annex.

SEC. 8117. (a) Within 45 days of enactment of this Act, the Secretary of Defense shall allocate amounts made available from the Creating Helpful Incentives to Produce Semiconductors (CHIPS) for America Defense Fund for fiscal year 2026 pursuant to the transfer authority in section 102(b)(1) of the CHIPS Act of 2022 (division A of Public Law 117–167), to the account specified, in the amounts specified, and for the projects and activities specified, in the table titled "Department of Defense Allocation of Funds: CHIPS and Science Act Fiscal Year 2026" in the report accompanying this Act.

(b) Neither the President nor his designee may allocate any amounts that are made available for any fiscal year under section 102(b)(2) of the CHIPS Act of 2022 if there is in effect an Act making or continuing appropriations for part of a fiscal year for the Department of Defense: *Provided,* That in any fiscal year, the matter preceding this proviso shall not apply to the allocation, apportionment, or allotment of amounts for continuing administration of programs allocated using funds transferred from the CHIPS for America Defense Fund, which may be allocated pursuant to the transfer authority in section 102(b)(1) of the CHIPS Act of 2022 only in amounts that are no more than the allocation for such purposes in subsection (a) of this section.

(c) The Secretary of Defense may reallocate funds allocated by subsection (a) of this section, subject to the terms and conditions contained in the provisos in section 8005 of this Act: *Provided,* That amounts may be reallocated pursuant to this subsection only for those requirements necessary to carry out section 9903(b) of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116–283).

(d) Concurrent with the annual budget submission of the President for fiscal year 2027, the Secretary of Defense shall submit to the Committees on Appropriations of the House of Representatives and the Senate proposed allocations by account and by program, project, or activity, with detailed justifications, for amounts made available under section 102(b)(2) of the CHIPS Act of 2022 for fiscal year 2027.

(e) The Department of Defense shall provide the Committees on Appropriations of the House of Representatives and Senate quarterly reports on the status of balances of projects and activities funded by the CHIPS for America Defense Fund for amounts allocated pursuant to subsection (a) of this section, including all uncommitted, committed, and unobligated funds.

SEC. 8118. Not later than 15 days after the date on which any foreign base that involves the stationing or operations of the United States Armed Forces, including a temporary base, permanent base, or base owned and operated by a foreign country, is opened or closed, the Secretary of Defense shall notify the congressional defense committees in writing of the opening or closing of such base: *Provided,* That such notification shall also include information on any personnel changes, costs, and savings associated with the opening or closing of such base.

SEC. 8119. None of the funds appropriated or otherwise made available by this or any other Act shall be obligated or expended by the United States Government for any of the following purposes:

(1) To establish any military installation or base for the purpose of providing for the permanent stationing of United States Armed Forces in Iraq.

(2) To exercise United States control over any oil resource of Iraq or Syria.

SEC. 8120. Up to $500,000,000 of the funds appropriated by this Act under the heading "Operation and Maintenance, Defense-Wide" for the Defense Security Cooperation Agency may be used to support the armed forces of Jordan.

SEC. 8121. The amounts appropriated in title II of this Act are hereby reduced by $1,050,000,000 to reflect excess cash balances in Department of Defense Working Capital Funds, as follows:

(1) From "Operation and Maintenance, Army", $100,000,000;

(2) From "Operation and Maintenance, Navy", $450,000,000; and

(3) From "Operation and Maintenance, Air Force", $500,000,000.

SEC. 8122. Of the funds appropriated in this Act under the heading "Operation and Maintenance, Defense-Wide", $47,000,000 shall be for continued implementation and expansion of the Sexual Assault Special Victims' Counsel Program: *Provided,* That the funds are made available for transfer to the Department of the Army, the Department of the Navy, and the Department of the Air Force: *Provided further,* That funds transferred shall be merged with and available for the same purposes and for the same time period as the appropriations to which the funds are transferred: *Provided further,* That this transfer authority is in addition to any other transfer authority provided in this Act.

SEC. 8123. In carrying out the program described in the memorandum on the subject of "Policy for Assisted Reproductive Services for the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members" issued by the Assistant Secretary of Defense for Health Affairs on April 3, 2012, and the guidance issued to implement such memorandum, the Secretary of Defense shall apply such policy and guidance, except that—

(1) the limitation on periods regarding embryo cryopreservation and storage set forth in part III(G) and in part IV(H) of such memorandum shall not apply; and

(2) the term "assisted reproductive technology" shall include embryo cryopreservation and storage without limitation on the duration of such cryopreservation and storage.

SEC. 8124. The Secretary of Defense may obligate funds made available by this Act for procurement or for research, development, test and evaluation for the F–35 Joint Strike Fighter to modify not fewer than nine F–35 aircraft, including at least three F–35 aircraft of each variant, for any test configuration: *Provided,* That the Secretary of Defense shall, with the concurrence of the Secretary of the Air Force and the Secretary of the Navy, notify the congressional defense committees not fewer than 30 days prior to obligating funds under this section: *Provided further,* That any transfer of funds pursuant to the authority provided in this section shall be made in accordance with section 8005 of this Act.

SEC. 8125. None of the funds appropriated or otherwise made available by this or any other Act may be obligated to integrate an alternative engine on any F–35 aircraft.

SEC. 8126. The Secretary of Defense may use up to $650,000,000 of the amounts appropriated or otherwise made available in this Act to the Department of Defense for the rapid acquisition and deployment of supplies and associated support services pursuant to section 3601 of title 10, United States Code, but only for the purposes specified in clauses (i), (ii), (iii), and (iv) of subsection (c)(3)(B) of such section and subject to the applicable limits specified in clauses (i), (ii), and (iii) of such subsection and, in the case of clause (iv) of such subsection, subject to a limit of $50,000,000, or for the purposes specified in section 229 of the National Defense Authorization Act for Fiscal Year 2024 (Public Law 118–31) and subject to a limit of $100,000,000: *Provided,* That the Secretary

of Defense shall notify the congressional defense committees promptly of all uses of this authority.

SEC. 8127. Notwithstanding section 8056 of this Act, amounts appropriated under the heading "Research, Development, Test and Evaluation, Defense-Wide" of this Act, as detailed in budget activity eight in the tables titled Explanation of Project Level Adjustments in the explanatory statement accompanying this Act for "Defense Innovation Unit (DIU) Fielding" line 301, may be used for expenses for agile research, development, test and evaluation, procurement, production, modification, and operation and maintenance requirements, including the initial acquisition of end-items for operational use: *Provided,* That none of these funds may be obligated or expended until 15 days after the Secretary of Defense provides the congressional defense committees a detailed execution plan for such funds.

SEC. 8128. None of the funds made available by this Act may be used to support any activity conducted by, or associated with, the Wuhan Institute of Virology.

SEC. 8129. None of the funds made available by this Act may be used to fund any work to be performed by EcoHealth Alliance, Inc. in China on research supported by the government of China unless the Secretary of Defense determines that a waiver to such prohibition is in the national security interests of the United States and, not later than 14 days after granting such a waiver, submits to the congressional defense committees a detailed justification for the waiver, including—

(1) an identification of the Department of Defense entity obligating or expending the funds;

(2) an identification of the amount of such funds;

(3) an identification of the intended purpose of such funds;

(4) an identification of the recipient or prospective recipient of such funds (including any third-party entity recipient, as applicable);

(5) an explanation for how the waiver is in the national security interests of the United States; and

(6) any other information the Secretary determines appropriate.

SEC. 8130. None of the funds appropriated or otherwise made available in this or any other Act may be used to transfer, release, or assist in the transfer or release to or within the United States, its territories, or possessions Khalid Sheikh Mohammed or any other detainee who—

(1) is not a United States citizen or a member of the Armed Forces of the United States; and

(2) is or was held on or after June 24, 2009, at United States Naval Station, Guantanamo Bay, Cuba, by the Department of Defense.

SEC. 8131. None of the funds appropriated or otherwise made available in this Act may be used to transfer any individual detained at United States Naval Station Guantanamo Bay, Cuba, to the custody or control of the individual's country of origin, any other foreign country, or any other foreign entity except in accordance with section 1034 of the National Defense Authorization Act for Fiscal Year 2016 (Public Law 114–92) and section 1035 of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 (Public Law 115–232).

H. R. 7148—59

SEC. 8132. (a) None of the funds appropriated or otherwise made available in this or any other Act may be used to construct, acquire, or modify any facility in the United States, its territories, or possessions to house any individual described in subsection (c) for the purposes of detention or imprisonment in the custody or under the effective control of the Department of Defense.

(b) The prohibition in subsection (a) shall not apply to any modification of facilities at United States Naval Station, Guantanamo Bay, Cuba.

(c) An individual described in this subsection is any individual who, as of June 24, 2009, is located at United States Naval Station, Guantanamo Bay, Cuba, and who—

    (1) is not a citizen of the United States or a member of the Armed Forces of the United States; and
    (2) is—
        (A) in the custody or under the effective control of the Department of Defense; or
        (B) otherwise under detention at United States Naval Station, Guantanamo Bay, Cuba.

SEC. 8133. None of the funds made available by this Act may be used to carry out the closure or realignment of the United States Naval Station, Guantanamo Bay, Cuba.

SEC. 8134. There is appropriated to the "Department of Defense Credit Program Account" established pursuant to section 149(e)(5) of title 10, United States Code, $97,770,000, to remain available until expended, to carry out a pilot program on capital assistance to support defense investment in the industrial base as authorized by section 149(e) of such title, of which up to $2,500,000 may be used for administrative expenses and project-specific transaction costs: *Provided,* That costs of loans and loan guarantees, including the cost of modifying such loans and loan guarantees, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further,* That such amounts are available to subsidize gross obligations for the principal amount of loans, and total loan principal, any part of which is to be guaranteed, not to exceed $4,390,000,000: *Provided further,* That, for the purposes of carrying out the Congressional Budget Act of 1974, the Director of the Congressional Budget Office may request, and the Secretary shall promptly provide documentation and information relating to a project receiving capital assistance as authorized under section 149(e) of such title.

SEC. 8135. None of the funds appropriated or otherwise made available by this Act may be used to divest or prepare to divest more than eight U–2 aircraft.

SEC. 8136. The amounts appropriated in title II of this Act are hereby reduced by $1,204,617,000 to reflect savings attributable to efficiencies, streamlining of functions, and management improvements in the Department of Defense, as follows:

    (1) From "Operation and Maintenance, Army", $563,288,000;
    (2) From "Operation and Maintenance, Navy", $109,159,000;
    (3) From "Operation and Maintenance, Marine Corps", $9,467,000;
    (4) From "Operation and Maintenance, Air Force", $319,765,000;

(5) From "Operation and Maintenance, Space Force", $6,493,000; and

(6) From "Operation and Maintenance, Defense-Wide", $196,445,000:

*Provided,* That such reduction may not be derived from amounts appropriated by this Act for the National Intelligence Program or the Military Intelligence Program.

SEC. 8137. (a) Concurrent with the annual budget submission of the President for fiscal year 2027, and each fiscal year thereafter, pursuant to section 1105(a) of title 31, United States Code, the Secretary of Defense shall submit to the Committees on Appropriations of the House of Representatives and the Senate the following with respect to amounts made available by Public Law 119–21 until all such amounts have been expended:

(1) proposed allocations by account, by fiscal year, and by program, project, or activity, with detailed justifications;

(2) P–1 and R–1 budget justification documents, which shall identify the allocation of funds by program, project, and activity; and

(3) budget justification documents, to be known as M–1 and O–1, which shall identify the allocation of funds by budget activity, activity group, and sub-activity group.

(b) Subsequent to the submission required in subsection (a), the Secretary of Defense shall submit to the Committees on Appropriations of the House of Representatives and Senate quarterly reports on the status of balances of projects and activities funded using amounts described in subsection (a), including all uncommitted, committed, and unobligated funds, until all such amounts have been expended.

SEC. 8138. The Secretary of Defense shall obligate funds made available by this or any other Act, including prior year Acts, under the heading "Research, Development, Test and Evaluation, Navy" for the Next Generation Fighter program for the purpose of executing the engineering and manufacturing development contract for the Next Generation Fighter aircraft in a manner that achieves accelerated Initial Operational Capability: *Provided,* That none of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year may be used to pause, cancel, or terminate the Next Generation Fighter program.

SEC. 8139. Of the funds provided under the heading "Operation and Maintenance, Navy", not less than $80,000,000 shall be made available for the establishment of a Platform Supply Vessel Pilot Program (in this section referred to as the "Program") for the purpose of validating Service requirements necessary to meet at-sea and in-shore logistics operations: *Provided,* That the Program shall evaluate options to time charter no less than six, and enter into a contractual agreement for no less than two time charters: *Provided further,* That the condition of the time charter should consider existing United States-built platform supply vessels that are documented under the laws of the United States, owned by a citizen of the United States under 46 U.S.C. 50501, configured for logistics support in the Indo-Pacific region that can meet the regulatory and physical requirements to transport nearly 500,000 gallons of various standard fuels, and provide up to 10,000 square feet of combined deck space for transport of military equipment and personnel for delivery in and out of shallow draft ports in the Indo-Pacific region: *Provided further,* That the Secretary of

the Navy shall provide a briefing within 180 days after the enactment of this Act to the House and Senate Appropriations Committees on the status of the Program and the effectiveness of using PSVs to fill this critical need.

SEC. 8140. Funds made available for the UH–60 Blackhawk aircraft program under this or any other Act, including prior year Acts, under the headings "Aircraft Procurement, Army" and "Research, Development, Test and Evaluation, Army" shall be obligated only for the purposes for which such funds were appropriated and such funds may not be reprogrammed or transferred for other purposes: *Provided,* That none of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year may be used to pause, cancel, or terminate the UH–60 Blackhawk aircraft program or to prepare to pause, cancel, or terminate such program.

SEC. 8141. Funds made available for the E–7 Wedgetail aircraft program under this or any other Act, including prior year Acts, under the headings "Aircraft Procurement, Air Force" and "Research, Development, Test and Evaluation, Air Force" shall be obligated only for the purposes for which such funds were appropriated and such funds may not be reprogrammed or transferred for other purposes: *Provided,* That none of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year may be used to pause, cancel, or terminate the E–7 Wedgetail aircraft program or to prepare to pause, cancel, or terminate such program.

SEC. 8142. None of the funds made available by this Act may be used to close—

(1) the Rock Island Arsenal Museum located in Rock Island Arsenal, Illinois;

(2) the Fort Sill National Historic Landmark and Museum located in Lawton, Oklahoma;

(3) the United States Army Transportation Museum located at Fort Eustis, Virginia; or

(4) the General George Patton Museum of Leadership located at Fort Knox, Kentucky.

SEC. 8143. Of the amounts appropriated in this Act under the heading "Operation and Maintenance, Defense-Wide", for the Defense Security Cooperation Agency, $1,000,000,000, to remain available until September 30, 2027, shall be for the Taiwan Security Cooperation Initiative: *Provided,* That such funds shall be available to the Secretary of Defense, with the concurrence of the Secretary of State, to provide assistance, including new procurement of defense articles, services, and military education and training to Taiwan: *Provided further,* That equipment procured using funds made available in this section, and not yet transferred to Taiwan, or returned by Taiwan to the United States, may be treated as stocks of the Department of Defense upon written notification to the congressional defense committees: *Provided further,* That the Secretary of Defense shall, not less than 15 days prior to obligating funds made available in this section, notify the congressional defense committees in writing of the details of any such obligation: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the congressional defense committees on the use and status of funds made available in this section.

SEC. 8144. Of the amounts appropriated or otherwise made available by title II of this Act under the heading "Operation

H. R. 7148—62

and Maintenance, Air Force", the Secretary of Defense may reimburse the Federated States of Micronesia in an amount not to exceed $34,000,000 for land acquisition costs for defense sites in Yap.

SEC. 8145. The total amount appropriated in title II of this Act is hereby reduced by $550,000,000 to reflect savings due to favorable bulk fuel rates: *Provided,* That such reduction may not be derived from amounts appropriated by this Act for the National Intelligence Program or the Military Intelligence Program.

SEC. 8146. In making Federal financial assistance, the Department of Defense shall continue to apply the negotiated indirect cost rates in section 200.414 of title 2, Code of Federal Regulations, including with respect to the approval of deviations from negotiated indirect cost rates, to the same extent and in the same manner as such negotiated indirect cost rates were applied in fiscal year 2024: *Provided,* That none of the funds appropriated in this or prior Department of Defense Appropriations Acts, or otherwise made available to the Department of Defense may be used to develop, modify, or implement changes to such fiscal year 2024 negotiated indirect cost rates.

(INCLUDING TRANSFER OF FUNDS)

SEC. 8147. Of the amounts appropriated in this Act under the heading "Operation and Maintenance, Defense-Wide", $150,000,000, to remain available until September 30, 2027, may be used for replacement of defense articles and for reimbursement of defense services provided to or identified for provision to Taiwan: *Provided,* That such funds may be transferred to appropriations made available under titles II, III, IV, and V of this Act for replacement, through new procurement or repair of existing unserviceable equipment, of defense articles from the stocks of the Department of Defense, and for reimbursement for defense services of the Department of Defense and military education and training, provided to the government of Taiwan or to foreign countries that have provided support to Taiwan at the request of the United States: *Provided further,* That funds transferred pursuant to this section shall be merged with and available for the same purposes and for the same time period as the appropriations to which the funds are transferred: *Provided further,* That the Secretary of Defense shall notify the congressional defense committees of the details of such transfers not less than 15 days before any such transfer: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back and merged with this appropriation: *Provided further,* That the transfer authority provided in this section is in addition to any other transfer authority provided in this Act.

SEC. 8148. None of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year may be used by the Department of Defense to award a sole-source or non-competitive contract in excess of $100,000,000 for space-based airborne moving target indication systems.

SEC. 8149. None of the funds made available to the Department of Defense for this fiscal year or any prior fiscal year may be used to pause, cancel, or terminate the Next-Generation Overhead

Persistent Infrared Geosynchronous Earth Orbit and the Next-Generation Overhead Persistent Infrared Polar programs.

SEC. 8150. Any transactions or follow-on transactions entered into pursuant to the authority in section 2808a of title 10, United States Code, to carry out repair and construction projects for facilities may only be carried out if, without regard to section 2808a, such projects are otherwise authorized by law and the use of military construction, operation and maintenance, or research, development, test and evaluation funds is otherwise authorized for such projects: *Provided,* That none of the funds appropriated or otherwise made available by this or prior Acts, by title I of division D of Public Law 119–37 or by any prior Act making appropriations for Military Construction, Veterans Affairs, and Related Agencies, or by funds made available to the Department of Defense in Public Law 119–21 may be transferred pursuant to the authority in section 2808a of title 10, United States Code.

SEC. 8151. The amounts appropriated in title IV of this Act are hereby reduced by $1,000,000,000 due to the expiration of authorizations contained in 15 U.S.C. 638, as follows:

"Research, Development, Test and Evaluation, Army", $140,000,000;

"Research, Development, Test and Evaluation, Navy", $157,000,000;

"Research, Development, Test and Evaluation, Air Force", $325,000,000;

"Research, Development, Test and Evaluation, Space Force", $140,000,000; and

"Research, Development, Test and Evaluation, Defense-Wide", $238,000,000:

*Provided,* That this section shall not apply to appropriations for the National Intelligence Program: *Provided further,* That if a law reauthorizing 15 U.S.C. 638 for fiscal year 2026 is enacted after the date of the enactment of this section and before September 30, 2026, the required expenditure amount in 15 U.S.C. 638 for the Department of Defense for such program for such fiscal year shall be prorated on an annual basis for the remainder of such fiscal year based on the extramural budget (as defined in 15 U.S.C. 638(e)(1)) of the Department on the date of the enactment of such law.

SEC. 8152. Of the amounts appropriated in this Act under the heading "Operation and Maintenance, Defense-Wide", for the Defense Security Cooperation Agency, $200,000,000, to remain available until September 30, 2027, shall be available for the International Security Cooperation Program – Baltic Security Initiative to provide support and assistance to the foreign security forces of Estonia, Latvia, and Lithuania in accordance with the objectives identified by section 1247 of the National Defense Authorization Act for Fiscal Year 2026 (Public Law 119–60): *Provided,* That the Secretary of Defense shall, not less than 15 days prior to obligating funds made available in this section, notify the congressional defense committees in writing of the details of any planned obligation: *Provided further,* That the Secretary of Defense shall provide quarterly reports to the Committees on Appropriations of the House of Representatives and the Senate on the use and status of funds made available in this section.

H. R. 7148—64

(INCLUDING TRANSFER OF FUNDS)

SEC. 8153. (a) In addition to amounts made available elsewhere in this Act, $500,000,000, of which not less than $150,000,000 shall be available only for the qualification and testing of second source providers, is hereby appropriated to the Department of Defense and may be transferred to the procurement accounts of the Army, Navy, Air Force, and Department of Defense and the "Research, Development, Test and Evaluation, Defense-Wide" account, only for the following purposes—

(1) investment in modernization, expansion, or facilitization of the solid rocket motor industrial base, including capital equipment, tooling, and facility upgrades;

(2) workforce development, training, and retention;

(3) supplier base expansion and qualification, including second- and third-tier vendors and non-traditional manufacturers;

(4) process improvements, automation, and digital manufacturing; and

(5) risk reduction and surge capacity initiatives necessary to ensure reliable, affordable, and timely production of solid rocket motors and related energetics:

(b) Not later than 60 days after the date of the enactment of this Act, the Secretary of Defense shall provide a briefing to the congressional defense committees on planned activities under this section, including an explanation of how competition considerations and industry input were incorporated into acquisition and execution decisions: *Provided*, That none of the funds provided under this section may be obligated or expended until 30 days after the Secretary of Defense provides to the congressional defense committees a detailed execution plan for the use of such funds: *Provided further,* That the Secretary of Defense shall, not fewer than 15 days prior to any transfer of funds, notify the Committees on Appropriations of the House of Representatives and the Senate in writing of the details of any such transfer: *Provided further,* That upon transfer, the funds shall be merged with and available for the same purposes, and for the same time period, as the appropriation to which transferred: *Provided further,* That upon a determination that all or part of the funds transferred from this appropriation are not necessary for the purposes provided herein, such amounts may be transferred back and merged with this appropriation: *Provided further,* That the transfer authority provided under this section is in addition to any other transfer authority provided elsewhere in this Act.

This division may be cited as the "Department of Defense Appropriations Act, 2026".

H. R. 7148—65

## DIVISION B—DEPARTMENTS OF LABOR, HEALTH AND HUMAN SERVICES, AND EDUCATION, AND RELATED AGENCIES APPROPRIATIONS ACT, 2026

TITLE I

DEPARTMENT OF LABOR

EMPLOYMENT AND TRAINING ADMINISTRATION

TRAINING AND EMPLOYMENT SERVICES

For necessary expenses of the Workforce Innovation and Opportunity Act (referred to in this Act as "WIOA") and the National Apprenticeship Act, $3,981,588,000 plus reimbursements, shall be available. Of the amounts provided:

(1) for grants to States for adult employment and training activities, youth activities, and dislocated worker employment and training activities, $2,919,332,000 as follows:

(A) $875,649,000 for adult employment and training activities, of which $163,649,000 shall be available for the period July 1, 2026 through June 30, 2027, and of which $712,000,000 shall be available for the period October 1, 2026 through June 30, 2027;

(B) $948,130,000 for youth activities, which shall be available for the period April 1, 2026 through June 30, 2027; and

(C) $1,095,553,000 for dislocated worker employment and training activities, of which $235,553,000 shall be available for the period July 1, 2026 through June 30, 2027, and of which $860,000,000 shall be available for the period October 1, 2026 through June 30, 2027:

*Provided,* That the funds available for allotment to outlying areas to carry out subtitle B of title I of the WIOA shall not be subject to the requirements of section 127(b)(1)(B)(ii) of such Act: *Provided further,* That notwithstanding the requirements of WIOA, outlying areas may submit a single application for a consolidated grant that awards funds that would otherwise be available to such areas to carry out the activities described in subtitle B of title I of the WIOA: *Provided further,* That such application shall be submitted to the Secretary of Labor (referred to in this title as "Secretary"), at such time, in such manner, and containing such information as the Secretary may require: *Provided further,* That outlying areas awarded a consolidated grant described in the preceding provisos may use the funds for any of the programs and activities authorized under such subtitle B of title I of the WIOA subject to approval of the application and such reporting requirements issued by the Secretary; and

(2) for national programs, $1,062,256,000 as follows:

(A) $300,859,000 for the dislocated workers assistance national reserve, of which $100,859,000 shall be available for the period July 1, 2026 through September 30, 2027, and of which $200,000,000 shall be available for the period October 1, 2026 through September 30, 2027: *Provided,* That funds provided to carry out section 132(a)(2)(A) of the WIOA may be used to provide assistance to a State for statewide or local use in order to address cases where

there have been worker dislocations across multiple sectors or across multiple local areas and such workers remain dislocated; coordinate the State workforce development plan with emerging economic development needs; and train such eligible dislocated workers: *Provided further*, That funds provided to carry out sections 168(b) and 169(c) of the WIOA may be used for technical assistance and demonstration projects, respectively, that provide assistance to new entrants in the workforce and incumbent workers: *Provided further*, That notwithstanding section 168(b) of the WIOA, of the funds provided under this subparagraph, the Secretary may reserve not more than 10 percent of such funds to provide technical assistance and carry out additional activities related to the transition to the WIOA: *Provided further*, That of the funds provided under this subparagraph, $120,000,000 shall be for training and employment assistance under sections 168(b), 169(c) (notwithstanding the 10 percent limitation in such section) and 170 of the WIOA as follows:

(i) $55,000,000 shall be for workers in the Appalachian region, as defined by 40 U.S.C. 14102(a)(1), workers in the Lower Mississippi, as defined in section 4(2) of the Delta Development Act (Public Law 100–460, 102 Stat. 2246; 7 U.S.C. 2009aa(2)), and workers in the region served by the Northern Border Regional Commission, as defined by 40 U.S.C. 15733; and

(ii) $65,000,000 shall be for the purpose of developing, offering, or improving educational or career training programs at community colleges, defined as public institutions of higher education, as described in section 101(a) of the Higher Education Act of 1965 and at which the associate's degree is primarily the highest degree awarded, with other eligible institutions of higher education, as defined in section 101(a) of the Higher Education Act of 1965, eligible to participate through consortia, with community colleges as the lead grantee: *Provided*, That the Secretary shall follow the requirements for the program in House Report 116–62: *Provided further*, That any grant funds used for apprenticeships shall be used to support only apprenticeship programs registered under the National Apprenticeship Act and as referred to in section 3(7)(B) of the WIOA;

(B) $62,500,000 for Native American programs under section 166 of the WIOA, which shall be available for the period July 1, 2026 through June 30, 2027;

(C) $97,396,000 for migrant and seasonal farmworker programs under section 167 of the WIOA, including $90,134,000 for formula grants (of which not less than 70 percent shall be for employment and training services), $6,591,000 for migrant and seasonal housing (of which not less than 70 percent shall be for permanent housing), and $671,000 for other discretionary purposes, which shall be available for the period April 1, 2026 through June 30, 2027: *Provided*, That notwithstanding any other provision of law or related regulation, the Department of Labor shall take no action limiting the number or proportion

of eligible participants receiving related assistance services or discouraging grantees from providing such services: *Provided further*, That notwithstanding the definition of "eligible seasonal farmworker" in section 167(i)(3)(A) of the WIOA relating to an individual being "low-income", an individual is eligible for migrant and seasonal farmworker programs under section 167 of the WIOA under that definition if, in addition to meeting the requirements of clauses (i) and (ii) of section 167(i)(3)(A), such individual is a member of a family with a total family income equal to or less than 150 percent of the poverty line;

(D) $105,000,000 for YouthBuild activities as described in section 171 of the WIOA, which shall be available for the period April 1, 2026 through June 30, 2027;

(E) $110,000,000 for ex-offender activities, under the authority of section 169 of the WIOA, which shall be available for the period April 1, 2026 through June 30, 2027: *Provided*, That of this amount, $30,000,000 shall be for competitive grants to national and regional intermediaries for activities that prepare for employment young adults with criminal legal histories, young adults who have been justice system-involved, or young adults who have dropped out of school or other educational programs, with a priority for projects serving high-crime, high-poverty areas;

(F) $6,000,000 for the Workforce Data Quality Initiative, under the authority of section 169 of the WIOA, which shall be available for the period July 1, 2026 through June 30, 2027;

(G) $285,000,000 to expand opportunities through apprenticeships only registered under the National Apprenticeship Act and as referred to in section 3(7)(B) of the WIOA, to be available to the Secretary to carry out activities through grants, cooperative agreements, contracts and other arrangements, with States and other appropriate entities, including equity intermediaries and business and labor industry partner intermediaries, which shall be available for the period July 1, 2026 through June 30, 2027; and

(H) $95,501,000 for carrying out Demonstration and Pilot projects under section 169(c) of the WIOA, which shall be available for the period April 1, 2026 through June 30, 2027, in addition to funds available for such activities under subparagraph (A) for the projects, and in the amounts, specified in the table titled "Community Project Funding/Congressionally Directed Spending" included in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided*, That such funds may be used for projects that are related to the employment and training needs of dislocated workers, other adults, or youth: *Provided further*, That the 10 percent funding limitation under such section of the WIOA shall not apply to such funds: *Provided further*, That section 169(b)(6)(C) of the WIOA shall not apply to such funds: *Provided further*, That sections 102 and 107 of this Act shall not apply to such funds.

H. R. 7148—68

JOB CORPS

(INCLUDING TRANSFER OF FUNDS)

To carry out subtitle C of title I of the WIOA, including Federal administrative expenses, the purchase and hire of passenger motor vehicles, the construction, alteration, and repairs of buildings and other facilities, and the purchase of real property for training centers as authorized by the WIOA, $1,760,155,000, plus reimbursements, as follows:

(1) $1,603,325,000 for Job Corps Operations, which shall be available for the period July 1, 2026 through June 30, 2027;

(2) $123,000,000 for construction, rehabilitation and acquisition of Job Corps Centers, which shall be available for the period July 1, 2026 through June 30, 2029, and which may include the acquisition, maintenance, and repair of major items of equipment: *Provided*, That the Secretary may transfer up to 15 percent of such funds to meet the operational needs of such centers or to achieve administrative efficiencies: *Provided further*, That any funds transferred pursuant to the preceding proviso shall not be available for obligation after June 30, 2027: *Provided further*, That the Committees on Appropriations of the House of Representatives and the Senate are notified at least 15 days in advance of any transfer; and

(3) $33,830,000 for necessary expenses of Job Corps, which shall be available for obligation for the period October 1, 2025 through September 30, 2026:

*Provided,* That no funds from any other appropriation shall be used to provide meal services at or for Job Corps Centers.

COMMUNITY SERVICE EMPLOYMENT FOR OLDER AMERICANS

To carry out title V of the Older Americans Act of 1965 (referred to in this Act as "OAA"), $395,000,000, which shall be available for the period April 1, 2026 through June 30, 2027, and may be recaptured and reobligated in accordance with section 517(c) of the OAA.

FEDERAL UNEMPLOYMENT BENEFITS AND ALLOWANCES

For payments during fiscal year 2026 of trade adjustment benefit payments and allowances under part I of subchapter B of chapter 2 of title II of the Trade Act of 1974, and section 246 of that Act; and for training, employment and case management services, allowances for job search and relocation, and related State administrative expenses under part II of subchapter B of part 2 of title II of the Trade Act of 1974, and including benefit payments, allowances, training, employment and case management services, and related State administration provided pursuant to section 231(a) of the Trade Adjustment Assistance Extension Act of 2011, sections 405(a) and 406 of the Trade Preferences Extension Act of 2015, and section 285(a) of the Trade Act of 1974, as amended, $50,300,000 together with such amounts as may be necessary to be charged to the subsequent appropriation for payments for any period subsequent to September 15, 2026: *Provided,* That notwithstanding section 502 of this Act, any part of the appropriation provided under this heading may remain available for obligation

H. R. 7148—69

beyond the current fiscal year pursuant to the authorities of section 245(c) of the Trade Act of 1974 (19 U.S.C. 2317(c)).

STATE UNEMPLOYMENT INSURANCE AND EMPLOYMENT SERVICE OPERATIONS

(INCLUDING TRANSFER OF FUNDS)

For authorized administrative expenses, $74,306,000, together with not to exceed $4,000,584,000 which may be expended from the Employment Security Administration Account in the Unemployment Trust Fund ("the Trust Fund"), of which—

(1) $3,226,635,000 from the Trust Fund is for grants to States for the administration of State unemployment insurance laws as authorized under title III of the Social Security Act (including not less than $467,000,000 to carry out reemployment services and eligibility assessments under section 306 of such Act, any claimants of regular compensation, as defined in such section, including those who are profiled as most likely to exhaust their benefits, may be eligible for such services and assessments: *Provided,* That of such amount, $117,000,000 is specified for grants under section 306 of the Social Security Act and is provided to meet the terms of a concurrent resolution on the budget and $350,000,000 is additional new budget authority specified for purposes of a concurrent resolution on the budget; and $9,000,000 for continued support of the Unemployment Insurance Integrity Center of Excellence), the administration of unemployment insurance for Federal employees and for ex-service members as authorized under 5 U.S.C. 8501–8523, and the administration of trade readjustment allowances, reemployment trade adjustment assistance, and alternative trade adjustment assistance under the Trade Act of 1974 and under section 231(a) of the Trade Adjustment Assistance Extension Act of 2011, sections 405(a) and 406 of the Trade Preferences Extension Act of 2015, and section 285(a) of the Trade Act of 1974, as amended, and shall be available for Federal obligation through December 31, 2026, except that funds for outcome payments pursuant to section 306(f)(2) of the Social Security Act shall be available for Federal obligation through March 31, 2027: *Provided,* That notwithstanding any other provision of law, the Secretary may recapture any funds appropriated under this paragraph that remain unexpended by a State after the period of expenditure for a State (but before such funds have been returned to the Trust Fund), and such recaptured funds shall remain available until expended for reobligation by the Secretary to the States to carry out automation activities related to the administration of unemployment compensation laws: *Provided further,* That funds transferred pursuant to the preceding proviso shall not be available until 60 days after the Secretary has submitted a plan to the Committees on Appropriations of the House of Representatives and the Senate on the planned use of funds;

(2) $18,000,000 from the Trust Fund is for national activities necessary to support the administration of the Federal-State unemployment insurance system;

(3) $653,639,000 from the Trust Fund, together with $21,413,000 from the General Fund of the Treasury, is for

grants to States in accordance with section 6 of the Wagner-Peyser Act, and shall be available for Federal obligation for the period July 1, 2026 through June 30, 2027;

(4) $17,500,000 from the Trust Fund is for national activities of the Employment Service, including administration of the work opportunity tax credit under section 51 of the Internal Revenue Code of 1986 (including assisting States in adopting or modernizing information technology for use in the processing of certification requests), and the provision of technical assistance and staff training under the Wagner-Peyser Act;

(5) $84,810,000 from the Trust Fund is for the administration of foreign labor certifications and related activities under the Immigration and Nationality Act and related laws, of which $61,528,000 shall be available for the Federal administration of such activities, and $23,282,000 shall be available for grants to States for the administration of such activities; and

(6) $52,893,000 from the General Fund is to provide workforce information, national electronic tools, and one-stop system building under the Wagner-Peyser Act and shall be available for Federal obligation for the period July 1, 2026 through June 30, 2027, of which up to $9,800,000 may be used to carry out research and demonstration projects related to testing effective ways to promote greater labor force participation of people with disabilities: *Provided,* That the Secretary may transfer amounts made available for research and demonstration projects under this paragraph to the "Office of Disability Employment Policy" account for such purposes:

*Provided,* That to the extent that the Average Weekly Insured Unemployment ("AWIU") for fiscal year 2026 is projected by the Department of Labor to exceed 3,075,000, an additional $28,600,000 from the Trust Fund shall be available for obligation for every 100,000 increase in the AWIU level (including a pro rata amount for any increment less than 100,000) to carry out title III of the Social Security Act: *Provided further,* That funds appropriated in this Act that are allotted to a State to carry out activities under title III of the Social Security Act may be used by such State to assist other States in carrying out activities under such title III if the other States include areas that have suffered a major disaster declared by the President under the Robert T. Stafford Disaster Relief and Emergency Assistance Act: *Provided further,* That the Secretary may use funds appropriated for grants to States under title III of the Social Security Act to make payments on behalf of States for the use of the National Directory of New Hires under section 453(j)(8) of such Act: *Provided further,* That the Secretary may use funds appropriated for grants to States under title III of the Social Security Act to make payments on behalf of States to the entity operating the State Information Data Exchange System: *Provided further,* That funds appropriated in this Act which are used to establish a national one-stop career center system, or which are used to support the national activities of the Federal-State unemployment insurance, employment service, or immigration programs, may be obligated in contracts, grants, or agreements with States and non-State entities: *Provided further,* That States awarded competitive grants for improved operations under title III of the Social Security Act, or awarded grants to support the national activities of the Federal-State unemployment insurance system, may award subgrants to other States and non-

H. R. 7148—71

State entities under such grants, subject to the conditions applicable to the grants: *Provided further,* That funds appropriated under this Act for activities authorized under title III of the Social Security Act and the Wagner-Peyser Act may be used by States to fund integrated Unemployment Insurance and Employment Service automation efforts, notwithstanding cost allocation principles prescribed under the final rule entitled "Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards" at part 200 of title 2, Code of Federal Regulations: *Provided further,* That the Secretary, at the request of a State participating in a consortium with other States, may reallot funds allotted to such State under title III of the Social Security Act to other States participating in the consortium or to the entity operating the Unemployment Insurance Information Technology Support Center in order to carry out activities that benefit the administration of the unemployment compensation law of the State making the request: *Provided further,* That the Secretary may collect fees for the costs associated with additional data collection, analyses, and reporting services relating to the National Agricultural Workers Survey requested by State and local governments, public and private institutions of higher education, and nonprofit organizations and may utilize such sums, in accordance with the provisions of 29 U.S.C. 9a, for the National Agricultural Workers Survey infrastructure, methodology, and data to meet the information collection and reporting needs of such entities, which shall be credited to this appropriation and shall remain available until September 30, 2027, for such purposes.

ADVANCES TO THE UNEMPLOYMENT TRUST FUND AND OTHER FUNDS

For repayable advances to the Unemployment Trust Fund as authorized by sections 905(d) and 1203 of the Social Security Act, and to the Black Lung Disability Trust Fund as authorized by section 9501(c)(1) of the Internal Revenue Code of 1986; and for nonrepayable advances to the revolving fund established by section 901(e) of the Social Security Act, to the Unemployment Trust Fund as authorized by 5 U.S.C. 8509, and to the "Federal Unemployment Benefits and Allowances" account, such sums as may be necessary, which shall be available for obligation through September 30, 2027.

PROGRAM ADMINISTRATION

For expenses of administering employment and training programs, $104,527,000, together with not to exceed $53,906,000 which shall be available from the Employment Security Administration Account in the Unemployment Trust Fund.

VETERANS' EMPLOYMENT AND TRAINING

VETERANS' EMPLOYMENT AND TRAINING SERVICE

Not to exceed $269,841,000 may be derived from the Employment Security Administration account in the Unemployment Trust Fund to carry out the provisions of chapters 41, 42, and 43 of title 38, United States Code, of which—
    (1) $185,000,000 is for Jobs for Veterans State grants under 38 U.S.C. 4102A(b)(5) to support disabled veterans' outreach program specialists under section 4103A of such title and local

veterans' employment representatives under section 4104(b) of such title, and for the expenses described in section 4102A(b)(5)(C), which shall be available for expenditure by the States through September 30, 2028, and not to exceed 3 percent for the necessary Federal expenditures for data systems and contract support to allow for the tracking of participant and performance information: *Provided,* That, in addition, such funds may be used to support such specialists and representatives in the provision of services to transitioning members of the Armed Forces who have participated in the Transition Assistance Program and have been identified as in need of intensive services, to members of the Armed Forces who are wounded, ill, or injured and receiving treatment in military treatment facilities or warrior transition units, to the spouses or other family caregivers of such wounded, ill, or injured members, and to surviving spouses of individuals who died while serving as members of the Armed Forces or as a result of a service-connected disability;

(2) $34,379,000 is for carrying out the Transition Assistance Program under 38 U.S.C. 4113 and 10 U.S.C. 1144;

(3) $47,048,000 is for Federal administration of chapters 41, 42, and 43 of title 38, and sections 2021, 2021A and 2023 of title 38, United States Code: *Provided,* That up to $500,000 may be used to carry out the Hire VETS Act (division O of Public Law 115–31); and

(4) $3,414,000 is for the National Veterans' Employment and Training Services Institute under 38 U.S.C. 4109:

*Provided,* That the Secretary may reallocate among the appropriations provided under paragraphs (1) through (4) above an amount not to exceed 3 percent of the appropriation from which such reallocation is made.

In addition, from the General Fund of the Treasury, $65,500,000 is for carrying out programs to assist homeless veterans and veterans at risk of homelessness who are transitioning from certain institutions under sections 2021, 2021A, and 2023 of title 38, United States Code: *Provided,* That notwithstanding subsections (c)(3) and (d) of section 2023, the Secretary may award grants through September 30, 2026, to provide services under such section: *Provided further,* That services provided under sections 2021 or under 2021A may include, in addition to services to homeless veterans described in section 2002(a)(1), services to veterans who were homeless at some point within the 60 days prior to program entry or veterans who are at risk of homelessness within the next 60 days, and that services provided under section 2023 may include, in addition to services to the individuals described in subsection (e) of such section, services to veterans recently released from incarceration who are at risk of homelessness: *Provided further,* That notwithstanding paragraph (3) under this heading, funds appropriated in this paragraph may be used for data systems and contract support to allow for the tracking of participant and performance information: *Provided further,* That notwithstanding sections 2021(e)(2) and 2021A(f)(2) of title 38, United States Code, such funds shall be available for expenditure pursuant to 31 U.S.C. 1553.

In addition, fees may be assessed and deposited in the HIRE Vets Medallion Award Fund pursuant to section 5(b) of the HIRE Vets Act, and such amounts shall be available to the Secretary

H. R. 7148—73

to carry out the HIRE Vets Medallion Award Program, as authorized by such Act, and shall remain available until expended: *Provided,* That such sums shall be in addition to any other funds available for such purposes, including funds available under paragraph (3) of this heading: *Provided further,* That section 2(d) of division O of the Consolidated Appropriations Act, 2017 (Public Law 115–31; 38 U.S.C. 4100 note) shall not apply.

EMPLOYEE BENEFITS SECURITY ADMINISTRATION

SALARIES AND EXPENSES

For necessary expenses for the Employee Benefits Security Administration, $191,100,000, of which up to $3,000,000 shall be made available through September 30, 2027, for the procurement of expert witnesses for enforcement litigation.

PENSION BENEFIT GUARANTY CORPORATION

PENSION BENEFIT GUARANTY CORPORATION FUND

The Pension Benefit Guaranty Corporation ("Corporation") is authorized to make such expenditures, including financial assistance authorized by subtitle E of title IV of the Employee Retirement Income Security Act of 1974, within limits of funds and borrowing authority available to the Corporation, and in accord with law, and to make such contracts and commitments without regard to fiscal year limitations, as provided by 31 U.S.C. 9104, as may be necessary in carrying out the program, including associated administrative expenses, through September 30, 2026, for the Corporation: *Provided,* That none of the funds available to the Corporation for fiscal year 2026 shall be available for obligations for administrative expenses in excess of $494,264,000: *Provided further,* That to the extent that the number of new plan participants in plans terminated by the Corporation exceeds 100,000 in fiscal year 2026, an amount not to exceed an additional $9,200,000 shall be available through September 30, 2030, for obligations for administrative expenses for every 20,000 additional terminated participants: *Provided further,* That obligations in excess of the amounts provided for administrative expenses in this paragraph may be incurred and shall be available through September 30, 2030 for obligation for unforeseen and extraordinary pre-termination or termination expenses or extraordinary multiemployer program related expenses after approval by the Office of Management and Budget and notification of the Committees on Appropriations of the House of Representatives and the Senate: *Provided further,* That an additional amount shall be available for obligation through September 30, 2030 to the extent the Corporation's costs exceed $250,000 for the provision of credit or identity monitoring to affected individuals upon suffering a security incident or privacy breach, not to exceed an additional $100 per affected individual.

H. R. 7148—74

WAGE AND HOUR DIVISION

SALARIES AND EXPENSES

For necessary expenses for the Wage and Hour Division, including reimbursement to State, Federal, and local agencies and their employees for inspection services rendered, $260,000,000.

OFFICE OF LABOR-MANAGEMENT STANDARDS

SALARIES AND EXPENSES

For necessary expenses for the Office of Labor-Management Standards, $48,515,000.

OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

SALARIES AND EXPENSES

For necessary expenses for the Office of Federal Contract Compliance Programs, $100,976,000.

OFFICE OF WORKERS' COMPENSATION PROGRAMS

SALARIES AND EXPENSES

For necessary expenses for the Office of Workers' Compensation Programs, $120,500,000, together with $2,205,000 which may be expended from the Special Fund in accordance with sections 39(c), 44(d), and 44(j) of the Longshore and Harbor Workers' Compensation Act.

SPECIAL BENEFITS

(INCLUDING TRANSFER OF FUNDS)

For the payment of compensation, benefits, and expenses (except administrative expenses not otherwise authorized) accruing during the current or any prior fiscal year authorized by 5 U.S.C. 81; continuation of benefits as provided for under the heading "Civilian War Benefits" in the Federal Security Agency Appropriation Act, 1947; the Employees' Compensation Commission Appropriation Act, 1944; section 5(f) of the War Claims Act (50 U.S.C. App. 2012); obligations incurred under the War Hazards Compensation Act (42 U.S.C. 1701 et seq.); and 50 percent of the additional compensation and benefits required by section 10(h) of the Longshore and Harbor Workers' Compensation Act, $1,298,385,000, together with such amounts as may be necessary to be charged to the subsequent year appropriation for the payment of compensation and other benefits for any period subsequent to August 15 of the current year, for deposit into and to assume the attributes of the Employees' Compensation Fund established under 5 U.S.C. 8147(a): *Provided,* That amounts appropriated may be used under 5 U.S.C. 8104 by the Secretary to reimburse an employer, who is not the employer at the time of injury, for portions of the salary of a re-employed, disabled beneficiary: *Provided further,* That balances of reimbursements unobligated on September 30, 2025, shall remain available until expended for the payment of compensation, benefits, and expenses: *Provided further,* That in addition

there shall be transferred to this appropriation from the Postal Service and from any other corporation or instrumentality required under 5 U.S.C. 8147(c) to pay an amount for its fair share of the cost of administration, such sums as the Secretary determines to be the cost of administration for employees of such fair share entities through September 30, 2026: *Provided further,* That of those funds transferred to this account from the fair share entities to pay the cost of administration of the Federal Employees' Compensation Act, $81,808,000 shall be made available to the Secretary as follows:

(1) For enhancement and maintenance of automated data processing systems operations and telecommunications systems, $27,549,000;

(2) For automated workload processing operations, including document imaging, centralized mail intake, and medical bill processing, $25,956,000;

(3) For periodic roll disability management and medical review, $25,957,000;

(4) For program integrity, $2,346,000; and

(5) The remaining funds shall be paid into the Treasury as miscellaneous receipts:

*Provided further,* That the Secretary may require that any person filing a notice of injury or a claim for benefits under 5 U.S.C. 81, or the Longshore and Harbor Workers' Compensation Act, provide as part of such notice and claim, such identifying information (including Social Security account number) as such regulations may prescribe.

### SPECIAL BENEFITS FOR DISABLED COAL MINERS

For carrying out title IV of the Federal Mine Safety and Health Act of 1977, as amended by Public Law 107–275, $24,585,000, to remain available until expended.

For making after July 31 of the current fiscal year, benefit payments to individuals under title IV of such Act, for costs incurred in the current fiscal year, such amounts as may be necessary.

For making benefit payments under title IV for the first quarter of fiscal year 2027, $5,900,000, to remain available until expended.

### ADMINISTRATIVE EXPENSES, ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION FUND

For necessary expenses to administer the Energy Employees Occupational Illness Compensation Program Act, $68,148,000, to remain available until expended: *Provided,* That the Secretary may require that any person filing a claim for benefits under the Act provide as part of such claim such identifying information (including Social Security account number) as may be prescribed.

### BLACK LUNG DISABILITY TRUST FUND

#### (INCLUDING TRANSFER OF FUNDS)

Such sums as may be necessary from the Black Lung Disability Trust Fund (the "Fund"), to remain available until expended, for payment of all benefits authorized by section 9501(d)(1), (2), (6), and (7) of the Internal Revenue Code of 1986; and repayment of, and payment of interest on advances, as authorized by section

H. R. 7148—76

9501(d)(4) of that Act. In addition, the following amounts may be expended from the Fund for fiscal year 2026 for expenses of operation and administration of the Black Lung Benefits program, as authorized by section 9501(d)(5): not to exceed $50,684,000 for transfer to the Office of Workers' Compensation Programs, "Salaries and Expenses"; not to exceed $39,086,000 for transfer to Departmental Management, "Salaries and Expenses"; not to exceed $373,000 for transfer to Departmental Management, "Office of Inspector General"; and not to exceed $356,000 for payments into miscellaneous receipts for the expenses of the Department of the Treasury.

OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

SALARIES AND EXPENSES

For necessary expenses for the Occupational Safety and Health Administration, $629,309,000, including not to exceed $120,000,000 which shall be the maximum amount available for grants to States under section 23(g) of the Occupational Safety and Health Act (the "Act"), which grants shall be no less than 50 percent of the costs of State occupational safety and health programs required to be incurred under plans approved by the Secretary under section 18 of the Act; and, in addition, notwithstanding 31 U.S.C. 3302, the Occupational Safety and Health Administration may retain up to $499,000 per fiscal year of training institute course tuition and fees, otherwise authorized by law to be collected, and may utilize such sums for occupational safety and health training and education: *Provided*, That notwithstanding 31 U.S.C. 3302, the Secretary is authorized, during the fiscal year ending September 30, 2026, to collect and retain fees for services provided to Nationally Recognized Testing Laboratories, and may utilize such sums, in accordance with the provisions of 29 U.S.C. 9a, to administer national and international laboratory recognition programs that ensure the safety of equipment and products used by workers in the workplace: *Provided further,* That none of the funds appropriated under this paragraph shall be obligated or expended to prescribe, issue, administer, or enforce any standard, rule, regulation, or order under the Act which is applicable to any person who is engaged in a farming operation which does not maintain a temporary labor camp and employs 10 or fewer employees: *Provided further,* That no funds appropriated under this paragraph shall be obligated or expended to administer or enforce any standard, rule, regulation, or order under the Act with respect to any employer of 10 or fewer employees who is included within a category having a Days Away, Restricted, or Transferred ("DART") occupational injury and illness rate, at the most precise industrial classification code for which such data are published, less than the national average rate as such rates are most recently published by the Secretary, acting through the Bureau of Labor Statistics, in accordance with section 24 of the Act, except—

(1) to provide, as authorized by the Act, consultation, technical assistance, educational and training services, and to conduct surveys and studies;

(2) to conduct an inspection or investigation in response to an employee complaint, to issue a citation for violations

found during such inspection, and to assess a penalty for violations which are not corrected within a reasonable abatement period and for any willful violations found;

(3) to take any action authorized by the Act with respect to imminent dangers;

(4) to take any action authorized by the Act with respect to health hazards;

(5) to take any action authorized by the Act with respect to a report of an employment accident which is fatal to one or more employees or which results in hospitalization of two or more employees, and to take any action pursuant to such investigation authorized by the Act; and

(6) to take any action authorized by the Act with respect to complaints of discrimination against employees for exercising rights under the Act:

*Provided further,* That the foregoing proviso shall not apply to any person who is engaged in a farming operation which does not maintain a temporary labor camp and employs 10 or fewer employees: *Provided further,* That $12,787,000 shall be available for Susan Harwood training grants: *Provided further,* That $243,000,000 shall be for Federal Enforcement: *Provided further,* That not less than $3,500,000 shall be for Voluntary Protection Programs.

MINE SAFETY AND HEALTH ADMINISTRATION

SALARIES AND EXPENSES

For necessary expenses for the Mine Safety and Health Administration, $387,816,000, including purchase and bestowal of certificates and trophies in connection with mine rescue and first-aid work, and the hire of passenger motor vehicles, including up to $2,000,000 for mine rescue and recovery activities and not less than $10,537,000 for State assistance grants: *Provided,* That notwithstanding 31 U.S.C. 3302, not to exceed $750,000 may be collected by the National Mine Health and Safety Academy for room, board, tuition, and the sale of training materials, otherwise authorized by law to be collected, to be available for mine safety and health education and training activities: *Provided further,* That notwithstanding 31 U.S.C. 3302, the Mine Safety and Health Administration is authorized to collect and retain up to $2,499,000 from fees collected for the approval and certification of equipment, materials, and explosives for use in mines, and may utilize such sums for such activities: *Provided further,* That the Secretary is authorized to accept lands, buildings, equipment, and other contributions from public and private sources and to prosecute projects in cooperation with other agencies, Federal, State, or private: *Provided further,* That the Mine Safety and Health Administration is authorized to promote health and safety education and training in the mining community through cooperative programs with States, industry, and safety associations: *Provided further,* That the Secretary is authorized to recognize the Joseph A. Holmes Safety Association as a principal safety association and, notwithstanding any other provision of law, may provide funds and, with or without reimbursement, personnel, including service of Mine Safety and Health Administration officials as officers in local chapters or in

H. R. 7148—78

the national organization: *Provided further,* That any funds available to the Department of Labor may be used, with the approval of the Secretary, to provide for the costs of mine rescue and survival operations in the event of a major disaster.

BUREAU OF LABOR STATISTICS

SALARIES AND EXPENSES

For necessary expenses for the Bureau of Labor Statistics, including advances or reimbursements to State, Federal, and local agencies and their employees for services rendered, $640,500,000, together with not to exceed $68,000,000 which may be expended from the Employment Security Administration account in the Unemployment Trust Fund.

OFFICE OF DISABILITY EMPLOYMENT POLICY

SALARIES AND EXPENSES

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses for the Office of Disability Employment Policy to provide leadership, develop policy and initiatives, and award grants furthering the objective of eliminating barriers to the training and employment of people with disabilities, $43,000,000, of which not less than $9,000,000 shall be for research and demonstration projects related to testing effective ways to promote greater labor force participation of people with disabilities: *Provided,* That the Secretary may transfer amounts made available under this heading for research and demonstration projects to the "State Unemployment Insurance and Employment Service Operations" account for such purposes.

DEPARTMENTAL MANAGEMENT

SALARIES AND EXPENSES

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses for Departmental Management, including the hire of three passenger motor vehicles, $362,877,000, together with not to exceed $308,000, which may be expended from the Employment Security Administration account in the Unemployment Trust Fund: *Provided,* That $116,125,000 shall be for the Bureau of International Labor Affairs, of which $81,725,000 shall be available for obligation through December 31, 2026: *Provided further,* That funds available to the Bureau of International Labor Affairs may be used to administer or operate international labor activities, bilateral and multilateral technical assistance, and microfinance programs, by or through contracts, grants, subgrants and other arrangements: *Provided further,* That not less than $30,175,000 shall be for programs to combat exploitative child labor internationally and not less than $30,175,000 shall be used to implement model programs that address worker rights issues through technical assistance in countries with which the United States has free trade agreements or trade preference programs:

H. R. 7148—79

*Provided further,* That $4,281,000 shall be used for program evaluation and shall be available for obligation through September 30, 2027: *Provided further,* That funds available for program evaluation may be used to administer grants for the purpose of evaluation: *Provided further,* That grants made for the purpose of evaluation shall be awarded through fair and open competition: *Provided further,* That funds available for program evaluation may be transferred to any other appropriate account in the Department for such purpose: *Provided further,* That the Committees on Appropriations of the House of Representatives and the Senate are notified at least 15 days in advance of any transfer: *Provided further,* That $23,000,000 shall be for the Women's Bureau and may be used for grants to serve and promote the interests of women in the workforce: *Provided further,* That of the amounts made available to the Women's Bureau, not less than $5,000,000 shall be used for grants authorized by the Women in Apprenticeship and Nontraditional Occupations Act: *Provided further,* That the Department of Labor shall support staffing levels necessary to fulfill its statutory responsibilities including carrying out programs, projects, and activities funded in this title of this Act in a timely manner.

IT MODERNIZATION

For necessary expenses for Department of Labor centralized infrastructure technology investment activities related to support systems and modernization, $6,889,000, which shall be available through September 30, 2027.

OFFICE OF INSPECTOR GENERAL

For salaries and expenses of the Office of Inspector General in carrying out the provisions of the Inspector General Act of 1978, $91,187,000, together with not to exceed $5,841,000 which may be expended from the Employment Security Administration account in the Unemployment Trust Fund: *Provided,* That not more than $2,000,000 of the amount provided under this heading may be available until expended.

GENERAL PROVISIONS

SEC. 101. None of the funds appropriated by this Act for the Job Corps shall be used to pay the salary and bonuses of an individual, either as direct costs or any proration as an indirect cost, at a rate in excess of Executive Level II.

(TRANSFER OF FUNDS)

SEC. 102. Not to exceed 1 percent of any discretionary funds (pursuant to the Balanced Budget and Emergency Deficit Control Act of 1985) which are appropriated for the current fiscal year for the Department of Labor in this Act may be transferred between a program, project, or activity, but no such program, project, or activity shall be increased by more than 3 percent by any such transfer: *Provided,* That the transfer authority granted by this section shall not be used to create any new program or to fund any project or activity for which no funds are provided in this Act: *Provided further,* That the Committees on Appropriations of

H. R. 7148—80

the House of Representatives and the Senate are notified at least 15 days in advance of any transfer.

SEC. 103. In accordance with Executive Order 13126, none of the funds appropriated or otherwise made available pursuant to this Act shall be obligated or expended for the procurement of goods mined, produced, manufactured, or harvested or services rendered, in whole or in part, by forced or indentured child labor in industries and host countries already identified by the United States Department of Labor prior to enactment of this Act.

SEC. 104. Except as otherwise provided in this section, none of the funds made available to the Department of Labor for grants under section 414(c) of the American Competitiveness and Workforce Improvement Act of 1998 (29 U.S.C. 2916a) may be used for any purpose other than competitive grants for training individuals who are older than 16 years of age and are not currently enrolled in school within a local educational agency in the occupations and industries for which employers are using H–1B visas to hire foreign workers, and the related activities necessary to support such training.

SEC. 105. None of the funds made available by this Act under the heading "Employment and Training Administration" shall be used by a recipient or subrecipient of such funds to pay the salary and bonuses of an individual, either as direct costs or indirect costs, at a rate in excess of Executive Level II. This limitation shall not apply to vendors providing goods and services as defined in Office of Management and Budget Circular A–133. Where States are recipients of such funds, States may establish a lower limit for salaries and bonuses of those receiving salaries and bonuses from subrecipients of such funds, taking into account factors including the relative cost-of-living in the State, the compensation levels for comparable State or local government employees, and the size of the organizations that administer Federal programs involved including Employment and Training Administration programs.

(TRANSFER OF FUNDS)

SEC. 106. (a) Notwithstanding section 102, the Secretary may transfer funds made available to the Employment and Training Administration by this Act, either directly or through a set-aside, for technical assistance services to grantees to "Program Administration" when it is determined that those services will be more efficiently performed by Federal employees: *Provided*, That this section shall not apply to section 171 of the WIOA.

(b) Notwithstanding section 102, the Secretary may transfer not more than 0.5 percent of each discretionary appropriation made available to the Employment and Training Administration by this Act to "Program Administration" in order to carry out program integrity activities relating to any of the programs or activities that are funded under any such discretionary appropriations: *Provided*, That notwithstanding section 102 and the preceding proviso, the Secretary may transfer not more than 0.5 percent of funds made available in paragraphs (1) and (2) of the "Office of Job Corps" account to paragraph (3) of such account to carry out program integrity activities related to the Job Corps program: *Provided further*, That funds transferred under this subsection shall be available to the Secretary to carry out program integrity activities

directly or through grants, cooperative agreements, contracts and other arrangements with States and other appropriate entities: *Provided further*, That funds transferred under the authority provided by this subsection shall be available for obligation through September 30, 2027.

(TRANSFER OF FUNDS)

SEC. 107. (a) The Secretary may reserve not more than 0.75 percent from each appropriation made available in this Act identified in subsection (b) in order to carry out evaluations of any of the programs or activities that are funded under such accounts. Any funds reserved under this section shall be transferred to "Departmental Management" for use by the Office of the Chief Evaluation Officer within the Department of Labor, and shall be available for obligation through September 30, 2027: *Provided*, That such funds shall only be available if the Chief Evaluation Officer of the Department of Labor submits a plan to the Committees on Appropriations of the House of Representatives and the Senate describing the evaluations to be carried out 15 days in advance of any transfer.

(b) The accounts referred to in subsection (a) are: "Training and Employment Services", "Job Corps", "Community Service Employment for Older Americans", "State Unemployment Insurance and Employment Service Operations", "Employee Benefits Security Administration", "Office of Workers' Compensation Programs", "Wage and Hour Division", "Office of Federal Contract Compliance Programs", "Office of Labor Management Standards", "Occupational Safety and Health Administration", "Mine Safety and Health Administration", "Office of Disability Employment Policy", funding made available to the "Bureau of International Labor Affairs" and "Women's Bureau" within the "Departmental Management, Salaries and Expenses" account, and "Veterans' Employment and Training".

SEC. 108. (a) Section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) shall be applied as if the following text is part of such section:

"(s)(1) The provisions of this section shall not apply for a period of 2 years after the occurrence of a major disaster to any employee—

"(A) employed to adjust or evaluate claims resulting from or relating to such major disaster, by an employer not engaged, directly or through an affiliate, in underwriting, selling, or marketing property, casualty, or liability insurance policies or contracts;

"(B) who receives from such employer on average weekly compensation of not less than $591.00 per week or any minimum weekly amount established by the Secretary, whichever is greater, for the number of weeks such employee is engaged in any of the activities described in subparagraph (C); and

"(C) whose duties include any of the following:

"(i) interviewing insured individuals, individuals who suffered injuries or other damages or losses arising from or relating to a disaster, witnesses, or physicians;

"(ii) inspecting property damage or reviewing factual information to prepare damage estimates;

H. R. 7148—82

"(iii) evaluating and making recommendations regarding coverage or compensability of claims or determining liability or value aspects of claims;

"(iv) negotiating settlements; or

"(v) making recommendations regarding litigation.

"(2) The exemption in this subsection shall not affect the exemption provided by section 13(a)(1).

"(3) For purposes of this subsection—

"(A) the term 'major disaster' means any disaster or catastrophe declared or designated by any State or Federal agency or department;

"(B) the term 'employee employed to adjust or evaluate claims resulting from or relating to such major disaster' means an individual who timely secured or secures a license required by applicable law to engage in and perform the activities described in clauses (i) through (v) of paragraph (1)(C) relating to a major disaster, and is employed by an employer that maintains worker compensation insurance coverage or protection for its employees, if required by applicable law, and withholds applicable Federal, State, and local income and payroll taxes from the wages, salaries and any benefits of such employees; and

"(C) the term 'affiliate' means a company that, by reason of ownership or control of 25 percent or more of the outstanding shares of any class of voting securities of one or more companies, directly or indirectly, controls, is controlled by, or is under common control with, another company.".

(b) This section shall be effective on the date of enactment of this Act.

SEC. 109. (a) FLEXIBILITY WITH RESPECT TO THE CROSSING OF H–2B NONIMMIGRANTS WORKING IN THE SEAFOOD INDUSTRY.—

(1) IN GENERAL.—Subject to paragraph (2), if a petition for H–2B nonimmigrants filed by an employer in the seafood industry is granted, the employer may bring the nonimmigrants described in the petition into the United States at any time during the 120-day period beginning on the start date for which the employer is seeking the services of the nonimmigrants without filing another petition.

(2) REQUIREMENTS FOR CROSSINGS AFTER 90TH DAY.—An employer in the seafood industry may not bring H–2B nonimmigrants into the United States after the date that is 90 days after the start date for which the employer is seeking the services of the nonimmigrants unless the employer—

(A) completes a new assessment of the local labor market by—

(i) listing job orders in local newspapers on 2 separate Sundays; and

(ii) posting the job opportunity on the appropriate Department of Labor Electronic Job Registry and at the employer's place of employment; and

(B) offers the job to an equally or better qualified United States worker who—

(i) applies for the job; and

(ii) will be available at the time and place of need.

(3) EXEMPTION FROM RULES WITH RESPECT TO STAGGERING.—The Secretary of Labor shall not consider an employer in the seafood industry who brings H–2B nonimmigrants into

H. R. 7148—83

the United States during the 120-day period specified in paragraph (1) to be staggering the date of need in violation of section 655.20(d) of title 20, Code of Federal Regulations, or any other applicable provision of law.

(b) H–2B NONIMMIGRANTS DEFINED.—In this section, the term "H–2B nonimmigrants" means aliens admitted to the United States pursuant to section 101(a)(15)(H)(ii)(B) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(H)(ii)(B)).

SEC. 110. The determination of prevailing wage for the purposes of the H–2B program shall be the greater of—(1) the actual wage level paid by the employer to other employees with similar experience and qualifications for such position in the same location; or (2) the prevailing wage level for the occupational classification of the position in the geographic area in which the H–2B nonimmigrant will be employed, based on the best information available at the time of filing the petition. In the determination of prevailing wage for the purposes of the H–2B program, the Secretary shall accept private wage surveys even in instances where Occupational Employment Statistics survey data are available unless the Secretary determines that the methodology and data in the provided survey are not statistically supported.

SEC. 111. None of the funds in this Act shall be used to enforce the definition of corresponding employment found in 20 CFR 655.5 or the three-fourths guarantee rule definition found in 20 CFR 655.20, or any references thereto. Further, for the purpose of regulating admission of temporary workers under the H–2B program, the definition of temporary need shall be that provided in 8 CFR 214.2(h)(6)(ii)(B).

SEC. 112. Notwithstanding any other provision of law, the Secretary may furnish through grants, cooperative agreements, contracts, and other arrangements, up to $450,000 of excess personal property, at a value determined by the Secretary, to apprenticeship programs for the purpose of training apprentices in those programs.

SEC. 113. (a) The Act entitled "An Act to create a Department of Labor", approved March 4, 1913 (37 Stat. 736, chapter 141) is amended by adding at the end the following new section:

"(a) IN GENERAL.—The Secretary of Labor is authorized to employ law enforcement officers or special agents to—

"(1) provide protection for the Secretary of Labor during the workday of the Secretary and during any activity that is preliminary or postliminary to the performance of official duties by the Secretary;

"(2) provide protection, incidental to the protection provided to the Secretary, to a member of the immediate family of the Secretary who is participating in an activity or event relating to the official duties of the Secretary;

"(3) provide continuous protection to the Secretary (including during periods not described in paragraph (1)) and to the members of the immediate family of the Secretary if there is a unique and articulable threat of physical harm, in accordance with guidelines established by the Secretary; and

"(4) provide protection to the Deputy Secretary of Labor or another senior officer representing the Secretary of Labor at a public event if there is a unique and articulable threat of physical harm, in accordance with guidelines established by the Secretary.

"(b) AUTHORITIES.—The Secretary of Labor may authorize a law enforcement officer or special agent employed under subsection (a), for the purpose of performing the duties authorized under subsection (a), to—

"(1) carry firearms;

"(2) make arrests without a warrant for any offense against the United States committed in the presence of such officer or special agent;

"(3) perform protective intelligence work, including identifying and mitigating potential threats and conducting advance work to review security matters relating to sites and events;

"(4) coordinate with local law enforcement agencies; and

"(5) initiate criminal and other investigations into potential threats to the security of the Secretary, in coordination with the Inspector General of the Department of Labor.

"(c) COMPLIANCE WITH GUIDELINES.—A law enforcement officer or special agent employed under subsection (a) shall exercise any authority provided under this section in accordance with any—

"(1) guidelines issued by the Attorney General; and

"(2) guidelines prescribed by the Secretary of Labor.".

(b) This section shall be effective on the date of enactment of this Act.

SEC. 114. The Secretary is authorized to dispose of or divest, by any means the Secretary determines appropriate, including an agreement or partnership to construct a new Job Corps center, all or a portion of the real property on which the Treasure Island Job Corps Center and the Gary Job Corps Center are situated. Any sale or other disposition, to include any associated construction project, will not be subject to any requirement of any Federal law or regulation relating to the disposition of Federal real property or relating to Federal procurement, including but not limited to subchapter III of chapter 5 of title 40 of the United States Code, subchapter V of chapter 119 of title 42 of the United States Code, and chapter 33 of division C of subtitle I of title 41 of the United States Code. The net proceeds of such a sale shall be transferred to the Secretary, which shall be available until expended for such project to carry out the Job Corps Program on Treasure Island and the Job Corps Program in and around San Marcos, Texas, respectively.

SEC. 115. None of the funds made available by this Act may be used to—

(1) alter or terminate the Interagency Agreement between the United States Department of Labor and the United States Department of Agriculture;

(2) close any of the Civilian Conservation Centers, except if such closure is necessary to prevent the endangerment of the health and safety of the students, the capacity of the program is retained, and the requirements of section 159(j) of the WIOA are met; or

(3) close any Job Corps Centers, except if such closure meets the criterion entitled "Long-Term Center Performance" or the criterion entitled "Evaluation of Continuing Center Operations" established by 81 FR 12529, the capacity of the program is retained, and the requirements of section 159(j) of the WIOA are met.

H. R. 7148—85

(RESCISSION)

SEC. 116. Of the unobligated funds available under section 286(s)(2) of the Immigration and Nationality Act (8 U.S.C. 1356(s)(2)), $206,000,000 are hereby permanently rescinded not later than September 30, 2026.

This title may be cited as the "Department of Labor Appropriations Act, 2026".

H. R. 7148—86

TITLE II

DEPARTMENT OF HEALTH AND HUMAN SERVICES

HEALTH RESOURCES AND SERVICES ADMINISTRATION

PRIMARY HEALTH CARE

For carrying out titles II and III of the Public Health Service Act (referred to in this Act as the "PHS Act") with respect to primary health care and the Native Hawaiian Health Care Act of 1988, $1,858,772,000: *Provided,* That no more than $1,000,000 shall be available until expended for carrying out the provisions of section 224(o) of the PHS Act: *Provided further,* That no more than $120,000,000 shall be available until expended for carrying out subsections (g) through (n) and (q) of section 224 of the PHS Act, and for expenses incurred by the Department of Health and Human Services (referred to in this Act as "HHS") pertaining to administrative claims made under such law.

HEALTH WORKFORCE

For carrying out titles III, VII, and VIII of the PHS Act with respect to the health workforce, sections 1128E and 1921 of the Social Security Act, and the Health Care Quality Improvement Act of 1986, $1,413,776,000, which shall be for the purposes and in the amounts specified in the "Final Bill" column for Health Workforce in the "Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That section 751(j)(2) of the PHS Act and the proportional funding amounts in paragraphs (1) through (4) of section 756(f) of the PHS Act shall not apply to funds made available under this heading: *Provided further,* That for any program operating under section 751 of the PHS Act on or before January 1, 2009, the Secretary of Health and Human Services (referred to in this title as the "Secretary") may hereafter waive any of the requirements contained in sections 751(d)(2)(A) and 751(d)(2)(B) of such Act for the full project period of a grant under such section: *Provided further,* That section 756(c) of the PHS Act shall apply to paragraphs (1) through (4) of section 756(a) of such Act: *Provided further,* That no funds shall be available for section 340G–1 of the PHS Act: *Provided further,* That fees collected for the disclosure of information under section 427(b) of the Health Care Quality Improvement Act of 1986 and sections 1128E(d)(2) and 1921 of the Social Security Act shall be sufficient to recover the full costs of operating the programs authorized by such sections and shall remain available until expended for the National Practitioner Data Bank: *Provided further,* That funds transferred to this account to carry out section 846 and subpart 3 of part D of title III of the PHS Act may be used to make prior year adjustments to awards made under such section and subpart: *Provided further,* That amounts made available for the National Health Service Corps ("NHSC") shall remain available until expended for the purposes of providing primary health services, assigning NHSC participants to expand the delivery of substance use disorder treatment services, notwithstanding the assignment priorities and limitations under

sections 333(a)(1)(D), 333(b), and 333A(a)(1)(B)(ii) of the PHS Act, and making payments under the NHSC Loan Repayment Program under section 338B of such Act: *Provided further,* That, within the amount made available for the NHSC, not less than 13 percent shall remain available until expended for the purposes of making payments under the NHSC Loan Repayment Program under section 338B of the PHS Act to individuals participating in such program who provide primary health services in Indian Health Service facilities, Tribally-Operated 638 Health Programs, and Urban Indian Health Programs (as those terms are defined by the Secretary), notwithstanding the assignment priorities and limitations under section 333(b) of the PHS Act, and $8,000,000 shall remain available until expended for payments to individuals participating in such program who provide primary health services in Maternity Care Health Professional Target Areas, as determined by the Secretary, notwithstanding the assignment priorities and limitations under section 333(b) of such Act: *Provided further,* That for purposes of the previous two provisos, section 331(a)(3)(D) of the PHS Act shall be applied as if the term "primary health services" includes clinical substance use disorder treatment services, including those provided by masters level, licensed substance use disorder treatment counselors: *Provided further,* That amounts made available for the Nurse Practitioner Optional Fellowship Program shall be available to make grants to establish, expand, or maintain optional community-based nurse practitioner fellowship programs that are accredited or in the accreditation process, with a preference for those in Federally Qualified Health Centers, for practicing postgraduate nurse practitioners in primary care or behavioral health: *Provided further,* That amounts made available for Pediatric Specialty Loan Repayment shall remain available until expended for activities under section 775 of the PHS Act: *Provided further,* That the United States may recover liquidated damages in an amount determined by the formula under section 338E(c)(1) of the PHS Act if an individual either fails to begin or complete the service obligated by a contract under section 775(b) of the PHS Act: *Provided further,* That for purposes of section 775(c)(1) of the PHS Act, the Secretary may include other mental and behavioral health disciplines as the Secretary deems appropriate: *Provided further,* That the Secretary may terminate a contract entered into under section 775 of the PHS Act in the same manner articulated in section 206 of this title for fiscal year 2026 contracts entered into under section 338B of the PHS Act.

Amounts made available for Medical Student Education shall remain available until expended for grants to public institutions of higher education to expand or support graduate education for physicians provided by such institutions, including funding for infrastructure development, maintenance, equipment, and minor renovations or alterations: *Provided,* That, in awarding such grants, the Secretary shall give priority to public institutions of higher education located in States with a projected primary care provider shortage, as determined by the Secretary: *Provided further,* That grants so awarded are limited to such public institutions of higher education in States in the top quartile of States with a projected primary care provider shortage, as determined by the Secretary: *Provided further,* That the minimum amount of a grant so awarded to such an institution shall be not less than $1,000,000 per year: *Provided further,* That such a grant may be awarded for a period

not to exceed 5 years: *Provided further,* That such a grant awarded with respect to a year to such an institution shall be subject to a matching requirement of non-Federal funds in an amount that is not more than 10 percent of the total amount of Federal funds provided in the grant to such institution with respect to such year.

### MATERNAL AND CHILD HEALTH

For carrying out titles III, XI, XII, and XIX of the PHS Act with respect to maternal and child health and title V of the Social Security Act, $1,181,680,000, which shall be for the purposes and in the amounts specified in the "Final Bill" column for Maternal and Child Health in the "Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That notwithstanding sections 502(a)(1) and 502(b)(1) of the Social Security Act, amounts made available for Special Projects of Regional and National Significance shall be available for carrying out special projects of regional and national significance pursuant to section 501(a)(2) of such Act and $10,276,000 shall be available for projects described in subparagraphs (A) through (F) of section 501(a)(3) of such Act, and the budget activities specified in the table under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act) shall be funded in the amounts specified in such table.

### RYAN WHITE HIV/AIDS PROGRAM

For carrying out title XXVI of the PHS Act with respect to the Ryan White HIV/AIDS program, $2,571,041,000, which shall be for the purposes and in the amounts specified in the "Final Bill" column for Ryan White HIV/AIDS Program in the "Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), of which the amounts made available for Emergency Assistance (Part A) and Comprehensive Care Programs (Part B) shall remain available to the Secretary through September 30, 2028, for parts A and B of title XXVI of the PHS Act, and of which the amounts made available for the AIDS Drug Assistance Program (ADAP) shall be for State AIDS Drug Assistance Programs under the authority of section 2616 or 311(c) of such Act; and of which the amounts made available for Ending the HIV/AIDS Epidemic Initiative shall remain available until expended and shall be available to the Secretary for carrying out a program of grants and contracts under title XXVI or section 311(c) of such Act focused on ending the nationwide HIV/AIDS epidemic, with any grants issued under such section 311(c) administered in conjunction with title XXVI of the PHS Act, including the limitation on administrative expenses.

### HEALTH SYSTEMS

For carrying out titles III and XII of the PHS Act with respect to health care systems, and the Stem Cell Therapeutic and Research Act of 2005, $127,009,000, of which $122,000 shall be available

H. R. 7148—89

until expended for facility renovations and other facilities-related expenses of the Hansen's Disease Program: *Provided,* That during the period covered by this Act, the Secretary of Health and Human Services may collect registration fees from members of the Organ Procurement and Transplantation Network (in this title referred to as "OPTN"), authorized under section 372 of the PHS Act, for each transplant candidate such members place on the list described in subsection (b)(2)(A)(i) of such section, including directly or through awards made under subsection (b)(1)(A) of such section: *Provided further,* That such fees may be credited to this account, to remain available until expended, to support the operation of the OPTN: *Provided further,* That the Secretary may distribute fees collected pursuant to the first proviso under this heading among the awardee or awardees described in subsection (b)(1)(A) of section 372 of the PHS Act as the Secretary determines appropriate.

RURAL HEALTH

For carrying out titles III and IV of the PHS Act with respect to rural health, section 427(a) of the Federal Coal Mine Health and Safety Act of 1969, and sections 711 and 1820 of the Social Security Act, $392,907,000, which shall be for the purposes and in the amounts specified, other than for "Rural Hospital Provider Assistance Program", in the "Final Bill" column for Rural Health in the "Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), of which the amounts made available for Rural Hospital Flexibility Grants shall come from general revenues, notwithstanding section 1820(j) of the Social Security Act: *Provided,* That of the funds made available under this paragraph for Rural Hospital Flexibility Grants, up to $22,942,000 shall be available for the Small Rural Hospital Improvement Program for quality improvement and adoption of health information technology, no less than $5,000,000 shall be available to award grants to public or non-profit private entities for the Rural Emergency Hospital Technical Assistance Program, and up to $1,000,000 shall be to carry out section 1820(g)(6) of the Social Security Act, with funds provided for grants under section 1820(g)(6) available for the purchase and implementation of telehealth services and other efforts to improve health care coordination for rural veterans between rural providers and the Department of Veterans Affairs: *Provided further,* That the amounts made available for State Offices of Rural Health shall be available notwithstanding section 338J(k) of the PHS Act: *Provided further,* That the amounts for the Rural Residency Planning and Development Program shall remain available through September 30, 2028.

In addition to amounts otherwise available for the same purpose, $25,000,000, for making payments to eligible hospitals for the maintenance of health care providers: *Provided,* That eligible hospitals receiving such payment shall meet the following criteria: (1) have no more than 50 inpatient beds and (2) have an established wage index value of less than 0.90 as determined by the Secretary of Health and Human Services under section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)): *Provided further,* That up to 10 percent of funds made available in this paragraph

H. R. 7148—90

may be used by eligible hospitals for administrative expenses: *Provided further,* That payment amounts to eligible hospitals shall be calculated by dividing available funding equally among such eligible hospitals.

FAMILY PLANNING

For carrying out the program under title X of the PHS Act to provide for voluntary family planning projects, $286,479,000: *Provided,* That amounts provided to said projects under such title shall not be expended for abortions, that all pregnancy counseling shall be nondirective, and that such amounts shall not be expended for any activity (including the publication or distribution of literature) that in any way tends to promote public support or opposition to any legislative proposal or candidate for public office.

HRSA-WIDE ACTIVITIES AND PROGRAM SUPPORT

For carrying out title III of the Public Health Service Act and for cross-cutting activities and program support for activities funded in other appropriations included in this Act for the Health Resources and Services Administration, $1,076,181,000, of which $45,550,000 shall be for expenses necessary for the Office for the Advancement of Telehealth, including grants, contracts, and cooperative agreements for the advancement of telehealth activities: *Provided,* That funds made available under this heading may be used to supplement program support funding provided under the headings "Primary Health Care", "Health Workforce", "Maternal and Child Health", "Ryan White HIV/AIDS Program", "Health Systems", and "Rural Health": *Provided further,* That of the amount made available under this heading, $857,793,000 shall be used for the projects financing the construction and renovation (including equipment) of health care and other facilities, and for the projects financing one-time grants that support health-related activities, including training and information technology, and in the amounts specified in the table titled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That none of the funds made available for projects described in the preceding proviso shall be subject to section 241 of the PHS Act or section 205 of this Act.

VACCINE INJURY COMPENSATION PROGRAM TRUST FUND

For payments from the Vaccine Injury Compensation Program Trust Fund (the "Trust Fund"), such sums as may be necessary for claims associated with vaccine-related injury or death with respect to vaccines administered after September 30, 1988, pursuant to subtitle 2 of title XXI of the PHS Act, to remain available until expended: *Provided,* That for necessary administrative expenses, not to exceed $15,200,000 shall be available from the Trust Fund to the Secretary.

H. R. 7148—91

CENTERS FOR DISEASE CONTROL AND PREVENTION

IMMUNIZATION AND RESPIRATORY DISEASES

For carrying out titles II, III, XVII, and XXI, and section 2821 of the PHS Act, and titles II and IV of the Immigration and Nationality Act, with respect to immunization and respiratory diseases, $316,901,000.

HIV/AIDS, VIRAL HEPATITIS, SEXUALLY TRANSMITTED DISEASES, AND TUBERCULOSIS PREVENTION

For carrying out titles II, III, XVII, and XXIII of the PHS Act with respect to HIV/AIDS, viral hepatitis, sexually transmitted diseases, and tuberculosis prevention, $1,384,056,000.

EMERGING AND ZOONOTIC INFECTIOUS DISEASES

For carrying out titles II, III, and XVII, and section 2821 of the PHS Act, and titles II and IV of the Immigration and Nationality Act, with respect to emerging and zoonotic infectious diseases, $729,272,000: *Provided,* That of the amounts made available under this heading, up to $1,000,000 from amounts made available for Quarantine appropriations shall remain available until expended to pay for the transportation, medical care, treatment, and other related costs of persons quarantined or isolated under Federal or State quarantine law.

CHRONIC DISEASE PREVENTION AND HEALTH PROMOTION

For carrying out titles II, III, XI, XV, XVII, and XIX of the PHS Act with respect to chronic disease prevention and health promotion, $983,830,000: *Provided,* That funds made available under this heading may be available for making grants under section 1509 of the PHS Act for not less than 21 States, Tribes, or Tribal organizations: *Provided further,* That the proportional funding requirements under section 1503(a) of the PHS Act shall not apply to funds made available under this heading.

BIRTH DEFECTS, DEVELOPMENTAL DISABILITIES, DISABILITIES AND HEALTH

For carrying out titles II, III, XI, and XVII of the PHS Act with respect to birth defects, developmental disabilities, disabilities and health, $205,060,000.

PUBLIC HEALTH SCIENTIFIC SERVICES

For carrying out titles II, III, and XVII of the PHS Act with respect to health statistics, surveillance, health informatics, and workforce development, $724,553,000: *Provided,* That in addition to amounts provided herein, $42,944,000 shall be from funds available under section 241 of the PHS Act for health statistics.

ENVIRONMENTAL HEALTH

For carrying out titles II, III, and XVII of the PHS Act with respect to environmental health, $191,850,000.

H. R. 7148—92

INJURY PREVENTION AND CONTROL

For carrying out titles II, III, and XVII of the PHS Act with respect to injury prevention and control, $761,379,000.

NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH

For carrying out titles II, III, and XVII of the PHS Act, sections 101, 102, 103, 201, 202, 203, 301, and 501 of the Federal Mine Safety and Health Act, section 13 of the Mine Improvement and New Emergency Response Act, and sections 20, 21, and 22 of the Occupational Safety and Health Act, with respect to occupational safety and health, $366,800,000.

ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION PROGRAM

For necessary expenses to administer the Energy Employees Occupational Illness Compensation Program Act, $55,358,000, to remain available until expended: *Provided,* That this amount shall be available consistent with the provision regarding administrative expenses in section 151(b) of division B, title I of Public Law 106–554.

GLOBAL HEALTH

For carrying out titles II, III, and XVII of the PHS Act with respect to global health, $692,843,000, of which: (1) the amounts made available for the Global HIV/AIDS Program shall remain available through September 30, 2027; and (2) the amounts made available for the Global Public Health Protection shall remain available through September 30, 2028: *Provided,* That funds may be used for purchase and insurance of official motor vehicles in foreign countries.

PUBLIC HEALTH PREPAREDNESS AND RESPONSE

For carrying out titles II, III, XVII, and XXVIII of the PHS Act with respect to public health preparedness and response, and for expenses necessary to support activities related to countering potential biological, nuclear, radiological, and chemical threats to civilian populations, $913,200,000: *Provided,* That the Director of the Centers for Disease Control and Prevention (referred to in this title as "CDC") or the Administrator of the Agency for Toxic Substances and Disease Registry may detail staff without reimbursement to support an activation of the CDC Emergency Operations Center, so long as the Director or Administrator, as applicable, provides a notice to the Committees on Appropriations of the House of Representatives and the Senate within 15 days of the use of this authority, a full report within 30 days after use of this authority which includes the number of staff and funding level broken down by the originating center and number of days detailed, and an update of such report every 180 days until staff are no longer on detail without reimbursement to the CDC Emergency Operations Center.

H. R. 7148—93

BUILDINGS AND FACILITIES

(INCLUDING TRANSFER OF FUNDS)

For acquisition of real property, equipment, construction, installation, demolition, and renovation of facilities, $40,000,000, which shall remain available until expended: *Provided,* That funds made available to this account in this or any prior Act that are available for the acquisition of real property or for construction or improvement of facilities shall be available to make improvements on non-federally owned property, provided that any improvements that are not adjacent to federally owned property do not exceed $2,500,000, and that the primary benefit of such improvements accrues to CDC: *Provided further,* That funds previously set-aside by CDC for repair and upgrade of the Lake Lynn Experimental Mine and Laboratory shall be used to acquire a replacement mine safety research facility: *Provided further,* That funds made available to this account in this or any prior Act that are available for the acquisition of real property or for construction or improvement of facilities in conjunction with the new replacement mine safety research facility shall be available to make improvements on non-federally owned property, provided that any improvements that are not adjacent to federally owned property do not exceed $5,000,000: *Provided further,* That in addition, the prior year unobligated balance of any amounts assigned to former employees in accounts of CDC made available for Individual Learning Accounts shall be credited to and merged with the amounts made available under this heading to support the replacement of the mine safety research facility.

CDC-WIDE ACTIVITIES AND PROGRAM SUPPORT

(INCLUDING TRANSFER OF FUNDS)

For carrying out titles II, III, XVII and XIX, and section 2821 of the PHS Act and for cross-cutting activities and program support for activities funded in other appropriations included in this Act for the Centers for Disease Control and Prevention, $396,570,000: *Provided,* That the amounts made available for Public Health Infrastructure and Capacity appropriations shall remain available through September 30, 2027: *Provided further,* That paragraphs (1) through (3) of subsection (b) of section 2821 of the PHS Act shall not apply to funds appropriated under this heading and in all other accounts of the CDC: *Provided further,* That the amounts made available for Infectious Diseases Rapid Response Reserve Fund appropriations shall remain available until expended and shall be available to the Director of the CDC for deposit in the Infectious Diseases Rapid Response Reserve Fund established by section 231 of division B of Public Law 115–245: *Provided further,* That funds appropriated under this heading may be used to support a contract for the operation and maintenance of an aircraft in direct support of activities throughout CDC to ensure the agency is prepared to address public health preparedness emergencies: *Provided further,* That employees of CDC or the Public Health Service, both civilian and commissioned officers, detailed to States, municipalities, or other organizations under authority of section 214 of the PHS Act, or in overseas assignments, shall be treated as non-Federal employees for reporting purposes only and shall

H. R. 7148—94

not be included within any personnel ceiling applicable to the Agency, Service, or HHS during the period of detail or assignment: *Provided further,* That CDC may use up to $10,000 from amounts appropriated to CDC in this Act for official reception and representation expenses when specifically approved by the Director of CDC: *Provided further,* That in addition, such sums as may be derived from authorized user fees, which shall be credited to the appropriation charged with the cost thereof: *Provided further,* That with respect to the previous proviso, authorized user fees from the Vessel Sanitation Program and the Respirator Certification Program shall be available through September 30, 2027.

NATIONAL INSTITUTES OF HEALTH

NATIONAL CANCER INSTITUTE

For carrying out section 301 and title IV of the PHS Act with respect to cancer, $7,352,159,000, of which up to $30,000,000 may be used for facilities repairs and improvements at the National Cancer Institute—Frederick Federally Funded Research and Development Center in Frederick, Maryland.

NATIONAL HEART, LUNG, AND BLOOD INSTITUTE

For carrying out section 301 and title IV of the PHS Act with respect to cardiovascular, lung, and blood diseases, and blood and blood products, $3,990,345,000.

NATIONAL INSTITUTE OF DENTAL AND CRANIOFACIAL RESEARCH

For carrying out section 301 and title IV of the PHS Act with respect to dental and craniofacial diseases, $525,163,000.

NATIONAL INSTITUTE OF DIABETES AND DIGESTIVE AND KIDNEY DISEASES

For carrying out section 301 and title IV of the PHS Act with respect to diabetes and digestive and kidney disease, $2,326,721,000.

NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE

For carrying out section 301 and title IV of the PHS Act with respect to neurological disorders and stroke, $2,804,925,000.

NATIONAL INSTITUTE OF ALLERGY AND INFECTIOUS DISEASES

For carrying out section 301 and title IV of the PHS Act with respect to allergy and infectious diseases, $6,585,279,000: *Provided,* That not less than $270,000,000 is provided for research to develop universal flu vaccines.

NATIONAL INSTITUTE OF GENERAL MEDICAL SCIENCES

For carrying out section 301 and title IV of the PHS Act with respect to general medical sciences, $3,269,679,000, of which $1,427,482,000 shall be from funds available under section 241 of the PHS Act: *Provided,* That not less than $450,956,000 is provided for the Institutional Development Awards program.

## EUNICE KENNEDY SHRIVER NATIONAL INSTITUTE OF CHILD HEALTH AND HUMAN DEVELOPMENT

For carrying out section 301 and title IV of the PHS Act with respect to child health and human development, $1,769,078,000: *Provided,* That not less than $63,400,000 is provided for the Implementing a Maternal health and Pregnancy Outcomes Vision for Everyone (IMPROVE) Initiative.

## NATIONAL EYE INSTITUTE

For carrying out section 301 and title IV of the PHS Act with respect to eye diseases and visual disorders, $896,549,000.

## NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES

For carrying out section 301 and title IV of the PHS Act with respect to environmental health sciences, $913,979,000.

## NATIONAL INSTITUTE ON AGING

For carrying out section 301 and title IV of the PHS Act with respect to aging, $4,517,623,000.

## NATIONAL INSTITUTE OF ARTHRITIS AND MUSCULOSKELETAL AND SKIN DISEASES

For carrying out section 301 and title IV of the PHS Act with respect to arthritis and musculoskeletal and skin diseases, $685,465,000.

## NATIONAL INSTITUTE ON DEAFNESS AND OTHER COMMUNICATION DISORDERS

For carrying out section 301 and title IV of the PHS Act with respect to deafness and other communication disorders, $534,333,000.

## NATIONAL INSTITUTE OF NURSING RESEARCH

For carrying out section 301 and title IV of the PHS Act with respect to nursing research, $197,693,000.

## NATIONAL INSTITUTE ON ALCOHOL ABUSE AND ALCOHOLISM

For carrying out section 301 and title IV of the PHS Act with respect to alcohol abuse and alcoholism, $595,318,000.

## NATIONAL INSTITUTE ON DRUG ABUSE

For carrying out section 301 and title IV of the PHS Act with respect to drug abuse, $1,662,695,000.

## NATIONAL INSTITUTE OF MENTAL HEALTH

For carrying out section 301 and title IV of the PHS Act with respect to mental health, $2,189,843,000.

H. R. 7148—96

NATIONAL HUMAN GENOME RESEARCH INSTITUTE

For carrying out section 301 and title IV of the PHS Act with respect to human genome research, $663,200,000.

NATIONAL INSTITUTE OF BIOMEDICAL IMAGING AND BIOENGINEERING

For carrying out section 301 and title IV of the PHS Act with respect to biomedical imaging and bioengineering research, $440,627,000.

NATIONAL CENTER FOR COMPLEMENTARY AND INTEGRATIVE HEALTH

For carrying out section 301 and title IV of the PHS Act with respect to complementary and integrative health, $170,384,000.

NATIONAL INSTITUTE ON MINORITY HEALTH AND HEALTH DISPARITIES

For carrying out section 301 and title IV of the PHS Act with respect to minority health and health disparities research, $538,395,000.

JOHN E. FOGARTY INTERNATIONAL CENTER

For carrying out the activities of the John E. Fogarty International Center (described in subpart 2 of part E of title IV of the PHS Act), $95,162,000.

NATIONAL LIBRARY OF MEDICINE

For carrying out section 301 and title IV of the PHS Act with respect to health information communications, $497,548,000: *Provided,* That of the amounts available for improvement of information systems, $4,000,000 shall be available until September 30, 2027: *Provided further,* That in this fiscal year, the National Library of Medicine may enter into personal services contracts for the provision of services in facilities owned, operated, or constructed under the jurisdiction of the National Institutes of Health (referred to in this title as "NIH").

NATIONAL CENTER FOR ADVANCING TRANSLATIONAL SCIENCES

For carrying out section 301 and title IV of the PHS Act with respect to translational sciences, $942,323,000: *Provided,* That $75,000,000 shall be available to implement section 480 of the PHS Act, relating to the Cures Acceleration Network: *Provided further,* That at least $629,560,000 is provided to the Clinical and Translational Sciences Awards program.

OFFICE OF THE DIRECTOR

(INCLUDING TRANSFER OF FUNDS)

For carrying out the responsibilities of the Office of the Director, NIH, $2,462,914,000: *Provided,* That funding shall be available for the purchase of not to exceed 29 passenger motor vehicles for replacement only: *Provided further,* That all funds credited to the NIH Management Fund shall remain available for one fiscal

year after the fiscal year in which they are deposited: *Provided further,* That $180,000,000 shall be for the Environmental Influences on Child Health Outcomes study: *Provided further,* That $572,401,000 shall be available for the Common Fund established under section 402A(c)(1) of the PHS Act: *Provided further,* That of the funds provided, $10,000 shall be for official reception and representation expenses when specifically approved by the Director of the NIH: *Provided further,* That the Office of AIDS Research within the Office of the Director of the NIH may spend up to $8,000,000 to make grants for construction or renovation of facilities as provided for in section 2354(a)(5)(B) of the PHS Act: *Provided further,* That $80,000,000 shall be used to carry out section 404I of the PHS Act (42 U.S.C. 283k), relating to biomedical and behavioral research facilities: *Provided further,* That $5,000,000 shall be transferred to and merged with the appropriation for the "Office of Inspector General" for oversight of grant programs and operations of the NIH, including agency efforts to ensure the integrity of its grant application evaluation and selection processes, and shall be in addition to funds otherwise made available for oversight of the NIH: *Provided further,* That amounts made available under this heading are also available to establish, operate, and support the Research Policy Board authorized by section 2034(f) of the 21st Century Cures Act: *Provided further,* That not less than $106,480,000 is provided for the Office of Research on Women's Health and such funds shall also be available for making grants to serve and promote the interests of women in research, and the Director of such Office may, in making such grants, use the authorities available to NIH Institutes and Centers.

In addition to other funds appropriated for the Office of the Director, $12,600,000 is appropriated from the 10-year Pediatric Research Initiative Fund described in section 9008 of the Internal Revenue Code of 1986 (26 U.S.C. 9008), for the purpose of carrying out section 402(b)(7)(B)(ii) of the PHS Act (relating to pediatric research).

### BUILDINGS AND FACILITIES

For the study of, construction of, demolition of, renovation of, and acquisition of equipment for, facilities of or used by NIH, including the acquisition of real property, $350,000,000, to remain available until expended.

### NIH INNOVATION ACCOUNT, CURES ACT

#### (INCLUDING TRANSFER OF FUNDS)

For necessary expenses to carry out the purposes described in section 1001(b)(4) of the 21st Century Cures Act, in addition to amounts available for such purposes in the appropriations provided to the NIH in this Act, $226,000,000, to remain available until expended: *Provided,* That such amounts are appropriated pursuant to section 1001(b)(3) of such Act, are to be derived from amounts transferred under section 1001(b)(2)(A) of such Act, and may be transferred by the Director of the NIH to other accounts of the NIH solely for the purposes provided in such Act: *Provided further,* That upon a determination by the Director of the NIH that funds transferred pursuant to the previous proviso are not

necessary for the purposes provided, such amounts may be transferred back to the Account: *Provided further,* That the transfer authority provided under this heading is in addition to any other transfer authority provided by law.

ADVANCED RESEARCH PROJECTS AGENCY FOR HEALTH

For carrying out section 301 and part J of title IV of the PHS Act with respect to advanced research projects for health, $1,500,000,000, to remain available through September 30, 2028.

SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES ADMINISTRATION

MENTAL HEALTH

For carrying out titles III, V, and XIX of the PHS Act with respect to mental health, the Protection and Advocacy for Individuals with Mental Illness Act, and the SUPPORT for Patients and Communities Act, $2,790,407,000: *Provided,* That of the funds made available under this heading, $100,887,000 shall be for the National Child Traumatic Stress Initiative: *Provided further,* That of the funds made available under this heading, $991,532,000 shall be for the Mental Health Block Grant: *Provided further,* That of the funds made available under this heading, $132,000,000 shall be for Children's Mental Health Services: *Provided further,* That of the funds made available under this heading, $66,635,000 shall be for Projects for Assistance in Transition from Homelessness: *Provided further,* That of the funds made available under this heading, $40,000,000 shall be for Protection and Advocacy for Individuals with Mental Illness: *Provided further,* That notwithstanding section 520A(f)(2) of the PHS Act, no funds appropriated for carrying out section 520A shall be available for carrying out section 1971 of the PHS Act: *Provided further,* That in addition to amounts provided herein, $21,039,000 shall be available under section 241 of the PHS Act to carry out subpart I of part B of title XIX of the PHS Act to fund section 1920(b) technical assistance, national data, data collection and evaluation activities, and further that the total available under this Act for section 1920(b) activities shall not exceed 5 percent of the amounts appropriated for subpart I of part B of title XIX: *Provided further,* That of the funds made available under this heading for subpart I of part B of title XIX of the PHS Act, at least 5 percent shall be available to support evidence-based crisis systems: *Provided further,* That up to 10 percent of the amounts made available to carry out the Children's Mental Health Services program may be used to carry out demonstration grants or contracts for early interventions with persons not more than 25 years of age at clinical high risk of developing a first episode of psychosis: *Provided further,* That section 520E(b)(2) of the PHS Act shall not apply to funds appropriated in this Act for fiscal year 2026: *Provided further,* That $385,500,000 shall be available until September 30, 2028 for grants to communities and community organizations who meet criteria for Certified Community Behavioral Health Clinics pursuant to section 223(a) of Public Law 113–93: *Provided further,* That none of the funds provided for section 1911 of the PHS Act shall be subject to section 241 of such Act: *Provided further,* That the budget activities specified in the table under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this

consolidated Act) shall be funded in the amounts specified as appropriations in such table: *Provided further,* That amounts made available for 988 Lifeline appropriations shall be for the purposes described in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That of the funds made available under this heading, $21,420,000 shall be to carry out section 224 of the Protecting Access to Medicare Act of 2014 (Public Law 113–93; 42 U.S.C. 290aa 22 note).

SUBSTANCE ABUSE TREATMENT

For carrying out titles III and V of the PHS Act with respect to substance abuse treatment and title XIX of such Act with respect to substance abuse treatment and prevention, section 1003 of the 21st Century Cures Act, and the SUPPORT for Patients and Communities Act, $4,091,598,000: *Provided,* That $1,595,000,000 shall be for carrying out section 1003 of the 21st Century Cures Act: *Provided further,* That such amount in the preceding proviso not less than 4.25 percent shall be made available to Indian Tribes or Tribal organizations: *Provided further,* That in addition to amounts provided herein, the following amounts shall be available under section 241 of the PHS Act: (1) $79,200,000 to carry out subpart II of part B of title XIX of the PHS Act to fund section 1935(b) technical assistance, national data, data collection and evaluation activities, and further that the total available under this Act for section 1935(b) activities shall not exceed 5 percent of the amounts appropriated for subpart II of part B of title XIX; and (2) $2,000,000 to evaluate substance abuse treatment programs: *Provided further,* That $562,219,000 shall be for programs of regional and national significance, which shall be for the purposes and in the amounts specified in the table under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), other than amounts specified in such table as PHS Evaluation Funds: *Provided further,* That none of the funds provided for section 1921 of the PHS Act or State Opioid Response Grants shall be subject to section 241 of such Act.

SUBSTANCE ABUSE PREVENTION

For carrying out titles III and V of the PHS Act with respect to substance abuse prevention, $240,879,000, which shall be for the purposes and in the amounts specified in the table under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

HEALTH SURVEILLANCE AND PROGRAM SUPPORT

For program support and cross-cutting activities that supplement activities funded under the headings "Mental Health", "Substance Abuse Treatment", and "Substance Abuse Prevention" in carrying out titles III, V, and XIX of the PHS Act and the Protection and Advocacy for Individuals with Mental Illness Act in the Substance Abuse and Mental Health Services Administration, $171,566,000: *Provided,* That of the amount made available under this heading, $54,311,000 shall be used for the projects, and in the amounts, specified in the table titled "Community Project

Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That none of the funds made available for projects described in the preceding proviso shall be subject to section 241 of the PHS Act or section 205 of this Act: *Provided further,* That in addition to amounts provided herein, $31,428,000 shall be available under section 241 of the PHS Act to supplement funds available to carry out national surveys on drug abuse and mental health, to collect and analyze program data, and to conduct public awareness and technical assistance activities: *Provided further,* That, in addition, fees may be collected for the costs of publications, data, data tabulations, and data analysis completed under title V of the PHS Act and provided to a public or private entity upon request, which shall be credited to this appropriation and shall remain available until expended for such purposes: *Provided further,* That amounts made available in this Act for carrying out section 501(o) of the PHS Act shall remain available through September 30, 2027: *Provided further,* That funds made available under this heading (other than amounts specified in the first proviso under this heading) may be used to supplement program support funding provided under the headings "Mental Health", "Substance Abuse Treatment", and "Substance Abuse Prevention".

AGENCY FOR HEALTHCARE RESEARCH AND QUALITY

HEALTHCARE RESEARCH AND QUALITY

For carrying out titles III and IX of the PHS Act, part A of title XI of the Social Security Act, and section 1013 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, $345,380,000: *Provided,* That section 947(c) of the PHS Act shall not apply in fiscal year 2026: *Provided further,* That in addition, amounts received from Freedom of Information Act fees, reimbursable and interagency agreements, and the sale of data shall be credited to this appropriation and shall remain available until September 30, 2027.

CENTERS FOR MEDICARE & MEDICAID SERVICES

GRANTS TO STATES FOR MEDICAID

For carrying out, except as otherwise provided, titles XI and XIX of the Social Security Act, $508,148,791,000, to remain available until expended.

In addition, for carrying out such titles after May 31, 2026, for the last quarter of fiscal year 2026 for unanticipated costs incurred for the current fiscal year, such sums as may be necessary, to remain available until expended.

In addition, for carrying out such titles for the first quarter of fiscal year 2027, $316,514,725,000, to remain available until expended.

Payment under such title XIX may be made for any quarter with respect to a State plan or plan amendment in effect during such quarter, if submitted in or prior to such quarter and approved in that or any subsequent quarter.

H. R. 7148—101

PAYMENTS TO THE HEALTH CARE TRUST FUNDS

For payment to the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund, as provided under sections 217(g), 1844, and 1860D–16 of the Social Security Act, sections 103(c) and 111(d) of the Social Security Amendments of 1965, section 278(d)(3) of Public Law 97–248, and for administrative expenses incurred pursuant to section 201(g) of the Social Security Act, $593,817,000,000.

In addition, for making matching payments under section 1844 and benefit payments under section 1860D–16 of the Social Security Act that were not anticipated in budget estimates, such sums as may be necessary.

PROGRAM MANAGEMENT

For carrying out, except as otherwise provided, titles XI, XVIII, XIX, and XXI of the Social Security Act, titles XIII and XXVII of the PHS Act, the Clinical Laboratory Improvement Amendments of 1988, and other responsibilities of the Centers for Medicare & Medicaid Services, not to exceed $3,669,744,000 to be transferred from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund, as authorized by section 201(g) of the Social Security Act; together with all funds collected in accordance with section 353 of the PHS Act and section 1857(e)(2) of the Social Security Act, funds retained by the Secretary pursuant to section 1893(h) of the Social Security Act, and such sums as may be collected from authorized user fees and the sale of data, which shall be credited to this account and remain available until expended: *Provided,* That all funds derived in accordance with 31 U.S.C. 9701 from organizations established under title XIII of the PHS Act shall be credited to and available for carrying out the purposes of this appropriation: *Provided further,* That the Secretary is directed to collect fees in fiscal year 2026 from Medicare Advantage organizations pursuant to section 1857(e)(2) of the Social Security Act and from eligible organizations with risk-sharing contracts under section 1876 of that Act pursuant to section 1876(k)(4)(D) of that Act: *Provided further,* That of the amount made available under this heading, $397,334,000 shall remain available until September 30, 2027, and shall be available for the Survey and Certification Program: *Provided further,* That amounts available under this heading to support quality improvement organizations (as defined in section 1152 of the Social Security Act) shall not exceed the amount specifically provided for such purpose under this heading in division H of the Consolidated Appropriations Act, 2018 (Public Law 115–141).

HEALTH CARE FRAUD AND ABUSE CONTROL ACCOUNT

In addition to amounts otherwise available for program integrity and program management, $941,000,000, to remain available through September 30, 2027, to be transferred from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund, as authorized by section 201(g) of the Social Security Act, of which $699,058,000 shall be for the Centers for Medicare & Medicaid Services program integrity activities, of which $108,735,000 shall be for the Department of Health and Human Services Office of Inspector General to carry out fraud

H. R. 7148—102

and abuse activities authorized by section 1817(k)(3) of such Act,
and of which $133,207,000 shall be for the Department of Justice
to carry out fraud and abuse activities authorized by section
1817(k)(3) of such Act: *Provided,* That the report required by section
1817(k)(5) of the Social Security Act for fiscal year 2026 shall
include measures of the operational efficiency and impact on fraud,
waste, and abuse in the Medicare, Medicaid, and CHIP programs
for the funds provided by this appropriation: *Provided further,*
That of the amount provided under this heading, $311,000,000
is provided to meet the terms of a concurrent resolution on the
budget, and $630,000,000 is additional new budget authority speci-
fied for purposes of a concurrent resolution on the budget for
additional health care fraud and abuse control activities: *Provided
further,* That the Secretary shall provide not less than $35,000,000
from amounts made available under this heading and amounts
made available for fiscal year 2026 under section 1817(k)(3)(A)
of the Social Security Act for the Senior Medicare Patrol program
to combat health care fraud and abuse.

ADMINISTRATION FOR CHILDREN AND FAMILIES

PAYMENTS TO STATES FOR CHILD SUPPORT ENFORCEMENT AND
FAMILY SUPPORT PROGRAMS

For carrying out, except as otherwise provided, titles I, IV–
D, X, XI, XIV, and XVI of the Social Security Act and the Act
of July 5, 1960, $4,147,000,000, to remain available until expended;
and for such purposes for the first quarter of fiscal 2027,
$1,800,000,000, to remain available until expended.

For carrying out, after May 31 of the current fiscal year, except
as otherwise provided, titles I, IV–D, X, XI, XIV, and XVI of the
Social Security Act and the Act of July 5, 1960, for the last 3
months of the current fiscal year for unanticipated costs, incurred
for the current fiscal year, such sums as may be necessary.

LOW INCOME HOME ENERGY ASSISTANCE

For making payments under subsections (b) and (d) of section
2602 of the Low-Income Home Energy Assistance Act of 1981 (42
U.S.C. 8621 et seq.), $4,045,000,000: *Provided,* That notwith-
standing section 2609A(a) of such Act, not more than $9,600,000
may be reserved by the Secretary for technical assistance, training,
and monitoring of program activities for compliance with internal
controls, policies and procedures, and to supplement funding other-
wise available for necessary administrative expenses to carry out
such Act, and the Secretary may, in addition to the authorities
provided in section 2609A(a)(1), use such funds through contracts
with private entities that do not qualify as nonprofit organizations:
*Provided further,* That all but $907,348,000 of the amount appro-
priated under this heading shall be allocated as though the total
appropriation for such payments for fiscal year 2026 was less than
$1,975,000,000: *Provided further,* That, after applying all applicable
provisions of section 2604 of such Act and the previous proviso,
each State or territory that would otherwise receive an allocation
that is less than 97 percent of the amount that it received under
this heading for fiscal year 2025 from amounts appropriated pursu-
ant to section 1101(a)(8) of division A of Public Law 119–4 shall
have its allocation increased to that 97 percent level, with the

H. R. 7148—103

portions of other States' and territories' allocations that would exceed 100 percent of the amounts they respectively received in such fashion for fiscal year 2025 being ratably reduced: *Provided further,* That by November 1 of the current year, the Secretary shall award to each State no less than 90 percent of its total allotment, as calculated pursuant to the preceding two provisos.

REFUGEE AND ENTRANT ASSISTANCE

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses for refugee and entrant assistance activities authorized by section 414 of the Immigration and Nationality Act and section 501 of the Refugee Education Assistance Act of 1980, and for carrying out section 462 of the Homeland Security Act of 2002, section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, the Trafficking Victims Protection Act of 2000 ("TVPA"), and the Torture Victims Relief Act of 1998, $5,163,956,000, of which $5,114,201,000 shall remain available through September 30, 2028 for carrying out such sections 414, 501, 462, and 235: *Provided,* That amounts available under this heading to carry out the TVPA shall also be available for research and evaluation with respect to activities under such Act: *Provided further,* That the limitation in section 205 of this Act regarding transfers increasing any appropriation shall apply to transfers to appropriations under this heading by substituting "15 percent" for "3 percent": *Provided further,* That the contribution of funds requirement under section 235(c)(6)(C)(iii) of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 shall not apply to funds made available under this heading: *Provided further,* That for any month in fiscal year 2026 that the number of unaccompanied children referred to the Department of Health and Human Services pursuant to section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 exceeds 16,000, as determined by the Secretary of Health and Human Services, an additional $15,000,000, to remain available until September 30, 2027, shall be made available for obligation for every 500 unaccompanied children above that level (including a pro rata amount for any increment less than 500), for carrying out such sections 462 and 235.

PAYMENTS TO STATES FOR THE CHILD CARE AND DEVELOPMENT BLOCK GRANT

For carrying out the Child Care and Development Block Grant Act of 1990 ("CCDBG Act"), $8,831,387,000 shall be used to supplement, not supplant State general revenue funds for child care assistance for low-income families: *Provided,* That technical assistance under section 658I(a)(3) of such Act may be provided directly, or through the use of contracts, grants, cooperative agreements, or interagency agreements: *Provided further,* That all funds made available to carry out section 418 of the Social Security Act (42 U.S.C. 618), including funds appropriated for that purpose in such section 418 or any other provision of law, shall be subject to the reservation of funds authority in paragraphs (4) and (5) of section 658O(a) of the CCDBG Act: *Provided further,* That notwithstanding the limitation in subparagraph (B) of section 658O(a)(2) of such

Act, of the amounts appropriated under this heading, not less than 5 percent shall be reserved under subparagraph (A) of such section for payments to Indian Tribes and Tribal organizations: *Provided further,* That of the amounts made available under this heading, the Secretary may reserve up to 0.5 percent for Federal administrative expenses: *Provided further,* That the Secretary shall award to each State its allotted amount no less than quarterly.

SOCIAL SERVICES BLOCK GRANT

For making grants to States pursuant to section 2002 of the Social Security Act, $1,700,000,000: *Provided,* That notwithstanding subparagraph (B) of section 404(d)(2) of such Act, the applicable percent specified under such subparagraph for a State to carry out State programs pursuant to title XX–A of such Act shall be 10 percent.

CHILDREN AND FAMILIES SERVICES PROGRAMS

For carrying out, except as otherwise provided, the Runaway and Homeless Youth Act, the Head Start Act, the Every Student Succeeds Act, the Child Abuse Prevention and Treatment Act, sections 303 and 313 of the Family Violence Prevention and Services Act, the Native American Programs Act of 1974, title II of the Child Abuse Prevention and Treatment and Adoption Reform Act of 1978 (adoption opportunities), part B–1 of title IV and sections 429, 473A, 477(i), 1110, 1114A, and 1115 of the Social Security Act, and the Community Services Block Grant Act (“CSBG Act”); and for necessary administrative expenses to carry out titles I, IV, V, X, XI, XIV, XVI, and XX–A of the Social Security Act, the Act of July 5, 1960, and the Low-Income Home Energy Assistance Act of 1981, $14,923,390,000, of which $75,000,000, to remain available through September 30, 2027, shall be for grants to States for adoption and legal guardianship incentive payments, as defined by section 473A of the Social Security Act and may be made for adoptions and legal guardianships completed before September 30, 2026: *Provided,* That $12,356,820,000 shall be for making payments under the Head Start Act, including for Early Head Start–Child Care Partnerships, and, of which, notwithstanding section 640 of such Act:

(1) $75,000,000 shall be available for a cost of living adjustment, and with respect to any continuing appropriations act, funding available for a cost of living adjustment shall not be construed as an authority or condition under this Act;

(2) $25,000,000 shall be available for allocation by the Secretary to supplement activities described in paragraphs (7)(B) and (9) of section 641(c) of the Head Start Act under the Designation Renewal System, established under the authority of sections 641(c)(7), 645A(b)(12), and 645A(d) of such Act, and such funds shall not be included in the calculation of “base grant” in subsequent fiscal years, as such term is used in section 640(a)(7)(A) of such Act;

(3) $10,000,000 shall be available for the Tribal Colleges and Universities Head Start Partnership Program consistent with section 648(g) of such Act;

(4) Not to exceed $8,000,000 shall be available until September 30, 2027 for the Marshall Islands and Micronesia for the start-up and operation of Head Start services and for the

provision of training and technical assistance: *Provided,* That an agency awarded these funds shall not be subject to the requirements of the system for designation renewal as defined by section 641 of the Head Start Act, for this award only, prior to 24 months after the date of such award; and

(5) $21,000,000 shall be available to supplement funding otherwise available for research, evaluation, and Federal administrative costs:

*Provided further,* That the Secretary may reduce the reservation of funds under section 640(a)(2)(C) of such Act in lieu of reducing the reservation of funds under sections 640(a)(2)(B), 640(a)(2)(D), and 640(a)(2)(E) of such Act: *Provided further,* That the Secretary shall award funding for continuation awards and new award cycles that continue previous activities under existing awards no later than the day following the expiration of the period of performance: *Provided further,* That $315,000,000 shall be available until December 31, 2026 for carrying out sections 9212 and 9213 of the Every Student Succeeds Act: *Provided further,* That up to 3 percent of the funds in the preceding proviso shall be available for technical assistance and evaluation related to grants awarded under such section 9212: *Provided further,* That $810,383,000 shall be for making payments under the CSBG Act: *Provided further,* That for services furnished under the CSBG Act with funds made available for such purpose in this fiscal year and in fiscal year 2025, States may apply the last sentence of section 673(2) of the CSBG Act by substituting "200 percent" for "125 percent": *Provided further,* That $35,383,000 shall be for section 680 of the CSBG Act, of which not less than $22,383,000 shall be for section 680(a)(2) and not less than $13,000,000 shall be for section 680(a)(3)(B) of such Act: *Provided further,* That, notwithstanding section 675C(a)(3) of the CSBG Act, to the extent Community Services Block Grant funds are distributed as grant funds by a State to an eligible entity as provided under such Act, and have not been expended by such entity, they shall remain with such entity for carryover into the next fiscal year for expenditure by such entity consistent with program purposes: *Provided further,* That the Secretary shall establish procedures regarding the disposition of intangible assets and program income that permit such assets acquired with, and program income derived from, grant funds authorized under section 680 of the CSBG Act to become the sole property of such grantees after a period of not more than 12 years after the end of the grant period for any activity consistent with section 680(a)(2)(A) of the CSBG Act: *Provided further,* That intangible assets in the form of loans, equity investments and other debt instruments, and program income may be used by grantees for any eligible purpose consistent with section 680(a)(2)(A) of the CSBG Act: *Provided further,* That these procedures shall apply to such grant funds made available after November 29, 1999: *Provided further,* That funds appropriated for section 680(a)(2) of the CSBG Act shall be available for financing construction and rehabilitation and loans or investments in private business enterprises owned by community development corporations: *Provided further,* That $245,000,000 shall be for carrying out section 303(a) of the Family Violence Prevention and Services Act, of which $9,500,000 shall be allocated notwithstanding section 303(a)(2) of such Act for carrying out section 309 of such Act: *Provided further,* That the percentages specified in section 112(a)(2) of the Child

Abuse Prevention and Treatment Act shall not apply to funds appropriated under this heading: *Provided further,* That $1,864,000 shall be for a human services case management system for federally declared disasters, to include a comprehensive national case management contract and Federal costs of administering the system: *Provided further,* That up to $2,000,000 shall be for improving the Public Assistance Reporting Information System, including grants to States to support data collection for a study of the system's effectiveness: *Provided further,* That $40,801,000 shall be used for the projects, and in the amounts, specified in the table titled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That none of the funds made available for projects described in the preceding proviso shall be subject to section 241 of the PHS Act or section 205 of this Act: *Provided further,* That $34,512,000 shall be for the purposes and in the amounts specified in the table under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

PROMOTING SAFE AND STABLE FAMILIES

For carrying out, except as otherwise provided, section 436 of the Social Security Act, $420,000,000 and, for carrying out, except as otherwise provided, section 437 of such Act, $62,515,000: *Provided,* That of the funds available to carry out section 437, $59,765,000 shall be allocated consistent with subsections (b) through (d) of such section: *Provided further,* That of the funds available to carry out section 437, $2,750,000, in addition to funds otherwise appropriated in section 476 for such purposes, shall be for the Family First Clearinghouse and to support evaluation and technical assistance relating to the evaluation of child and family services: *Provided further,* That notwithstanding section 436(b)(1), such reserved amounts in the preceding proviso may be used for identifying, establishing, and disseminating practices to meet the criteria specified in section 471(e)(4)(C).

PAYMENTS FOR FOSTER CARE AND PERMANENCY

For carrying out, except as otherwise provided, title IV–E of the Social Security Act, $6,843,000,000.

For carrying out, except as otherwise provided, title IV–E of the Social Security Act, for the first quarter of fiscal year 2027, $3,800,000,000.

For carrying out, after May 31 of the current fiscal year, except as otherwise provided, section 474 of title IV–E of the Social Security Act, for the last 3 months of the current fiscal year for unanticipated costs, incurred for the current fiscal year, such sums as may be necessary.

H. R. 7148—107

ADMINISTRATION FOR COMMUNITY LIVING

AGING AND DISABILITY SERVICES PROGRAMS

(INCLUDING TRANSFER OF FUNDS)

For carrying out, to the extent not otherwise provided, the Older Americans Act of 1965 ("OAA"), the RAISE Family Caregivers Act, the Supporting Grandparents Raising Grandchildren Act, titles III and XXIX of the PHS Act, sections 1252 and 1253 of the PHS Act, section 119 of the Medicare Improvements for Patients and Providers Act of 2008, title XX–B of the Social Security Act, the Developmental Disabilities Assistance and Bill of Rights Act of 2000, parts 2 and 5 of subtitle D of title II of the Help America Vote Act of 2002, the Assistive Technology Act of 1998, titles II and VII (and section 14 with respect to such titles) of the Rehabilitation Act of 1973, and for Department-wide coordination of policy and program activities that assist individuals with disabilities, $2,453,737,000, together with $55,242,000 to be transferred from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund to carry out section 4360 of the Omnibus Budget Reconciliation Act of 1990: *Provided,* That of amounts made available under this heading to carry out sections 311, 331, and 336 of the OAA, up to one percent of such amounts shall be available for developing and implementing evidence-based practices for enhancing senior nutrition, including medically-tailored meals: *Provided further,* That notwithstanding any other provision of this Act, funds made available under this heading to carry out section 311 of the OAA may be transferred to the Secretary of Agriculture in accordance with such section: *Provided further,* That up to 5 percent of the funds provided for adult protective services grants under section 2042 of title XX of the Social Security Act may be used to make grants to Tribes and Tribal organizations: *Provided further,* That $2,000,000 shall be for competitive grants to support alternative financing programs that provide for the purchase of assistive technology devices, such as a low-interest loan fund; an interest buy-down program; a revolving loan fund; a loan guarantee; or an insurance program: *Provided further,* That applicants shall provide an assurance that, and information describing the manner in which, the alternative financing program will expand and emphasize consumer choice and control: *Provided further,* That State agencies and community-based disability organizations that are directed by and operated for individuals with disabilities shall be eligible to compete: *Provided further,* That none of the funds made available under this heading may be used by an eligible system (as defined in section 102 of the Protection and Advocacy for Individuals with Mental Illness Act (42 U.S.C. 10802)) to continue to pursue any legal action in a Federal or State court on behalf of an individual or group of individuals with a developmental disability (as defined in section 102(8)(A) of the Developmental Disabilities and Assistance and Bill of Rights Act of 2000 (20 U.S.C. 15002(8)(A)) that is attributable to a mental impairment (or a combination of mental and physical impairments), that has as the requested remedy the closure of State operated intermediate care facilities for people with intellectual or developmental disabilities, unless reasonable public notice of the action has been provided to such individuals

(or, in the case of mental incapacitation, the legal guardians who have been specifically awarded authority by the courts to make healthcare and residential decisions on behalf of such individuals) who are affected by such action, within 90 days of instituting such legal action, which informs such individuals (or such legal guardians) of their legal rights and how to exercise such rights consistent with current Federal Rules of Civil Procedure: *Provided further,* That the limitations in the immediately preceding proviso shall not apply in the case of an individual who is neither competent to consent nor has a legal guardian, nor shall the proviso apply in the case of individuals who are a ward of the State or subject to public guardianship: *Provided further,* That of the amount made available under this heading, $13,968,000 shall be used for the projects, and in the amounts, specified in the table titled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That none of the funds made available for projects described in the preceding proviso shall be subject to section 241 of the PHS Act or section 205 of this Act.

ADMINISTRATION FOR STRATEGIC PREPAREDNESS AND RESPONSE

RESEARCH, DEVELOPMENT, AND PROCUREMENT

For carrying out title III and subtitles A and B of title XXVIII of the PHS Act, with respect to the research, development, storage, production, and procurement of medical countermeasures to counter potential chemical, biological, radiological, and nuclear threats to civilian populations, $3,207,991,000: *Provided,* That of such amount:

(1) $1,050,000,000, to remain available through September 30, 2027, shall be for expenses necessary to support advanced research and development pursuant to section 319L of the PHS Act and other administrative expenses of the Biomedical Advanced Research and Development Authority;

(2) $850,000,000, to remain available until expended, shall be for expenses necessary for procuring security countermeasures (as defined in section 319F–2(c)(1)(B) of the PHS Act);

(3) $1,000,000,000, to remain available until expended, shall be for expenses necessary to carry out section 319F–2(a) of the PHS Act; and

(4) $307,991,000 shall be for expenses necessary to prepare for or respond to an influenza pandemic, of which $280,000,000 shall remain available until expended for activities including the development and purchase of vaccines, antivirals, necessary medical supplies, diagnostics, and surveillance tools: *Provided,* That notwithstanding section 496(b) of the PHS Act, funds allocated under this paragraph may be used for the construction or renovation of privately owned facilities for the production of pandemic influenza vaccines and other biologics, if the Secretary finds such construction or renovation necessary to secure sufficient supplies of such vaccines or biologics:

*Provided further*, That funds provided under this heading for purposes of acquisition of security countermeasures shall be in addition to any other funds made available for such purposes: *Provided further,* That products purchased with funds made available under

this heading may, at the discretion of the Secretary, be deposited in the Strategic National Stockpile pursuant to section 319F–2 of the PHS Act.

OPERATIONS, PREPAREDNESS, AND EMERGENCY RESPONSE

For carrying out titles III, XII, and subtitles A and B of title XXVIII of the PHS Act, operations and emergency response activities related to countering potential chemical, biological, radiological, and nuclear threats and other public health emergencies, $484,606,000: *Provided,* That of the amounts made available under this heading, $5,000,000 shall remain available through September 30, 2028, to support emergency operations: *Provided further,* That of the amounts made available under this heading, $10,000,000 shall remain available until September 30, 2027, for advanced research and development, manufacturing, production, procurement, distribution, and the acquisition, construction, alteration, or renovation of non-federally owned facilities for the production and purchase of medical countermeasures, which may include the development, translation, and demonstration at scale of innovations in manufacturing platform.

OFFICE OF THE SECRETARY

GENERAL DEPARTMENTAL MANAGEMENT

For necessary expenses, not otherwise provided, for general departmental management, including hire of six passenger motor vehicles, and for carrying out titles III, XVII, XXI, and section 229 of the PHS Act, the United States-Mexico Border Health Commission Act, research studies under section 1110 of the Social Security Act, and for protection services for the Secretary, $509,144,000, together with $64,828,000 from the amounts available under section 241 of the PHS Act to carry out national health or human services research and evaluation activities: *Provided,* That of this amount, $56,000,000 shall be for minority AIDS prevention and treatment activities: *Provided further,* That of the funds made available under this heading, $101,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants, of which not more than 10 percent of the available funds shall be for training and technical assistance, evaluation, outreach, and additional program support activities, and of the remaining amount 75 percent shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors, and 25 percent shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy: *Provided further,* That of the amounts provided under this heading from amounts available under section 241 of the PHS Act, $6,800,000 shall be available to carry out evaluations (including longitudinal evaluations) of teenage pregnancy prevention approaches: *Provided further,* That of the funds made available under this heading, $35,000,000 shall be for making competitive

H. R. 7148—110

grants which exclusively implement education in sexual risk avoidance (defined as voluntarily refraining from non-marital sexual activity): *Provided further,* That funding for such competitive grants for sexual risk avoidance shall use medically accurate information referenced to peer-reviewed publications by educational, scientific, governmental, or health organizations; implement an evidence-based approach integrating research findings with practical implementation that aligns with the needs and desired outcomes for the intended audience; and teach the benefits associated with self-regulation, success sequencing for poverty prevention, healthy relationships, goal setting, and resisting sexual coercion, dating violence, and other youth risk behaviors such as underage drinking or illicit drug use without normalizing teen sexual activity: *Provided further,* That no more than 10 percent of the funding for such competitive grants for sexual risk avoidance shall be available for technical assistance and administrative costs of such programs: *Provided further,* That funds provided in this Act for embryo adoption activities may be used to provide to individuals adopting embryos, through grants and other mechanisms, medical and administrative services deemed necessary for such adoptions: *Provided further,* That such services shall be provided consistent with 42 CFR 59.5(a)(4): *Provided further,* That of the funds made available under this heading, $5,000,000 shall be for carrying out prize competitions sponsored by the Office of the Secretary to accelerate innovation in the prevention, diagnosis, and treatment of kidney diseases (as authorized by section 24 of the Stevenson-Wydler Technology Innovation Act of 1980 (15 U.S.C. 3719)).

In addition, for expenses necessary to carry out title II of the PHS Act to support, except as otherwise provided, activities related to safeguarding classified national security information and providing intelligence and national security support across the Department and to counter cybersecurity threats to civilian populations, $108,983,000.

In addition, for expenses necessary to prevent, prepare for, or respond to an influenza pandemic, $7,009,000.

### MEDICARE HEARINGS AND APPEALS

For expenses necessary for Medicare hearings and appeals in the Office of the Secretary, $186,155,000 shall remain available until September 30, 2027, to be transferred in appropriate part from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund.

### OFFICE OF THE NATIONAL COORDINATOR FOR HEALTH INFORMATION TECHNOLOGY

For expenses necessary for the Office of the National Coordinator for Health Information Technology, including grants, contracts, and cooperative agreements for the development and advancement of interoperable health information technology, $69,238,000, of which $35,863,000 shall be from amounts made available under section 241 of the PHS Act.

### OFFICE OF INSPECTOR GENERAL

For expenses necessary for the Office of Inspector General, including the hire of passenger motor vehicles for investigations,

in carrying out the provisions of the Inspector General Act of 1978, $87,000,000: *Provided,* That of such amount, necessary sums shall be available for investigating non-payment of child support cases for which non-payment is a Federal offense under 18 U.S.C. 228: *Provided further,* That of the amount appropriated under this heading, necessary sums shall be available for carrying out activities authorized under section 3022 of the PHS Act (42 U.S.C. 300jj–52).

## OFFICE FOR CIVIL RIGHTS

For expenses necessary for the Office for Civil Rights, $39,798,000.

## RETIREMENT PAY AND MEDICAL BENEFITS FOR COMMISSIONED OFFICERS

For retirement pay and medical benefits of Public Health Service Commissioned Officers as authorized by law, for payments under the Retired Serviceman's Family Protection Plan and Survivor Benefit Plan, and for medical care of dependents and retired personnel under the Dependents' Medical Care Act, such amounts as may be required during the current fiscal year.

## GENERAL PROVISIONS

SEC. 201. Funds appropriated in this title shall be available for not to exceed $50,000 for official reception and representation expenses when specifically approved by the Secretary.

SEC. 202. None of the funds appropriated in this title shall be used to pay the salary of an individual, through a grant or other extramural mechanism, at a rate in excess of Executive Level II: *Provided,* That none of the funds appropriated in this title shall be used to prevent the NIH from paying up to 100 percent of the salary of an individual at this rate.

SEC. 203. None of the funds appropriated in this or any other Act may be expended pursuant to section 241 of the PHS Act, except for funds specifically provided for in this Act, or for other taps and assessments made by any office located in HHS, prior to the preparation and submission of a report by the Secretary to the Committees on Appropriations of the House of Representatives and the Senate detailing the planned uses of such funds.

SEC. 204. Notwithstanding section 241(a) of the PHS Act, such portion as the Secretary shall determine, but not more than 2.5 percent, of any amounts appropriated for programs authorized under such Act shall be made available for the evaluation (directly, or by grants or contracts) and the implementation and effectiveness of programs funded in this title.

## (TRANSFER OF FUNDS)

SEC. 205. Not to exceed 1 percent of any discretionary funds (pursuant to the Balanced Budget and Emergency Deficit Control Act of 1985) which are appropriated for the current fiscal year for HHS in this Act may be transferred between appropriations, but no such appropriation shall be increased by more than 3 percent by any such transfer: *Provided,* That the transfer authority granted by this section shall not be used to create any new program or

H. R. 7148—112


H. R. 7148—113

(2) The Secretary is authorized to provide such funds by advance or reimbursement to the Secretary of State as may be necessary to pay the costs of acquisition, lease, alteration, renovation, and management of facilities outside of the United States for the use of HHS. The Department of State shall cooperate fully with the Secretary to ensure that HHS has secure, safe, functional facilities that comply with applicable regulation governing location, setback, and other facilities requirements and serve the purposes established by this Act. The Secretary is authorized, in consultation with the Secretary of State, through grant or cooperative agreement, to make available to public or nonprofit private institutions or agencies in participating foreign countries, funds to acquire, lease, alter, or renovate facilities in those countries as necessary to conduct programs of assistance for international health activities, including activities relating to HIV/AIDS and other infectious diseases, chronic and environmental diseases, and other health activities abroad.

(3) The Secretary is authorized to provide to personnel appointed or assigned by the Secretary to serve abroad, allowances and benefits similar to those provided under chapter 9 of title I of the Foreign Service Act of 1980, and 22 U.S.C. 4081 through 4086 and subject to such regulations prescribed by the Secretary. The Secretary is further authorized to provide locality-based comparability payments (stated as a percentage) up to the amount of the locality-based comparability payment (stated as a percentage) that would be payable to such personnel under section 5304 of title 5, United States Code if such personnel's official duty station were in the District of Columbia. Leaves of absence for personnel under this subsection shall be on the same basis as that provided under subchapter I of chapter 63 of title 5, United States Code, or section 903 of the Foreign Service Act of 1980, to individuals serving in the Foreign Service.

(TRANSFER OF FUNDS)

SEC. 213. The Director of the NIH, jointly with the Director of the Office of AIDS Research, may transfer up to 3 percent among institutes and centers from the total amounts identified by these two Directors as funding for research pertaining to the human immunodeficiency virus: *Provided,* That the Committees on Appropriations of the House of Representatives and the Senate are notified at least 15 days in advance of any transfer.

(TRANSFER OF FUNDS)

SEC. 214. Of the amounts made available in this Act for NIH, the amount for research related to the human immunodeficiency virus, as jointly determined by the Director of NIH and the Director of the Office of AIDS Research, shall be made available to the "Office of AIDS Research" account. The Director of the Office of AIDS Research shall transfer from such account amounts necessary to carry out section 2353(d)(3) of the PHS Act.

SEC. 215. (a) AUTHORITY.—Notwithstanding any other provision of law, the Director of NIH ("Director") may use funds authorized under section 402(b)(12) of the PHS Act to enter into transactions (other than contracts, cooperative agreements, or grants) to carry

H. R. 7148—114

out research identified pursuant to or research and activities described in such section 402(b)(12).

(b) PEER REVIEW.—In entering into transactions under subsection (a), the Director may utilize such peer review procedures (including consultation with appropriate scientific experts) as the Director determines to be appropriate to obtain assessments of scientific and technical merit. Such procedures shall apply to such transactions in lieu of the peer review and advisory council review procedures that would otherwise be required under sections 301(a)(3), 405(b)(1)(B), 405(b)(2), 406(a)(3)(A), 492, and 494 of the PHS Act.

(c) NOTIFICATION.—The Director shall notify the Committees on Appropriations of the House of Representatives and the Senate not later than 15 days after the Director exercises the authority under subsection (a) for any transaction that is expected to cost the NIH in excess of $100,000,000.

SEC. 216. Not to exceed $100,000,000 of funds appropriated by this Act to the institutes and centers of the National Institutes of Health may be used for alteration, repair, or improvement of facilities, as necessary for the proper and efficient conduct of the activities authorized herein, at not to exceed $5,000,000 per project.

(TRANSFER OF FUNDS)

SEC. 217. Of the amounts made available for NIH, 1 percent of the amount made available for National Research Service Awards ("NRSA") shall be made available to the Administrator of the Health Resources and Services Administration to make NRSA awards for research in primary medical care to individuals affiliated with entities who have received grants or contracts under sections 736, 739, or 747 of the PHS Act, and 1 percent of the amount made available for NRSA shall be made available to the Director of the Agency for Healthcare Research and Quality to make NRSA awards for health service research.

SEC. 218. (a) The Biomedical Advanced Research and Development Authority ("BARDA") may enter into a contract, for more than one but no more than 10 program years, for purchase of research services or of security countermeasures, as that term is defined in section 319F–2(c)(1)(B) of the PHS Act (42 U.S.C. 247d–6b(c)(1)(B)), if—

(1) funds are available and obligated—

(A) for the full period of the contract or for the first fiscal year in which the contract is in effect; and

(B) for the estimated costs associated with a necessary termination of the contract; and

(2) the Secretary determines that a multi-year contract will serve the best interests of the Federal Government by encouraging full and open competition or promoting economy in administration, performance, and operation of BARDA's programs.

(b) A contract entered into under this section—

(1) shall include a termination clause as described by subsection (c) of section 3903 of title 41, United States Code; and

(2) shall be subject to the congressional notice requirement stated in subsection (d) of such section.

H. R. 7148—115

SEC. 219. (a) The Secretary shall publish in the fiscal year 2027 budget justification and on Departmental Web sites information concerning the employment of full-time equivalent Federal employees or contractors for the purposes of implementing, administering, enforcing, or otherwise carrying out the provisions of the ACA, and the amendments made by that Act, in the proposed fiscal year and each fiscal year since the enactment of the ACA.

(b) With respect to employees or contractors supported by all funds appropriated for purposes of carrying out the ACA (and the amendments made by that Act), the Secretary shall include, at a minimum, the following information:

(1) For each such fiscal year, the section of such Act under which such funds were appropriated, a statement indicating the program, project, or activity receiving such funds, the Federal operating division or office that administers such program, and the amount of funding received in discretionary or mandatory appropriations.

(2) For each such fiscal year, the number of full-time equivalent employees or contracted employees assigned to each authorized and funded provision detailed in accordance with paragraph (1).

(c) In carrying out this section, the Secretary may exclude from the report employees or contractors who—

(1) are supported through appropriations enacted in laws other than the ACA and work on programs that existed prior to the passage of the ACA;

(2) spend less than 50 percent of their time on activities funded by or newly authorized in the ACA; or

(3) work on contracts for which FTE reporting is not a requirement of their contract, such as fixed-price contracts.

SEC. 220. The Secretary shall publish, as part of the fiscal year 2027 budget of the President submitted under section 1105(a) of title 31, United States Code, information that details the uses of all funds used by the Centers for Medicare & Medicaid Services specifically for Health Insurance Exchanges for each fiscal year since the enactment of the ACA and the proposed uses for such funds for fiscal year 2027. Such information shall include, for each such fiscal year, the amount of funds used for each activity specified under the heading "Health Insurance Exchange Transparency" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

SEC. 221. None of the funds made available by this Act from the Federal Hospital Insurance Trust Fund or the Federal Supplemental Medical Insurance Trust Fund, or transferred from other accounts funded by this Act to the "Centers for Medicare & Medicaid Services—Program Management" account, may be used for payments under section 1342(b)(1) of Public Law 111–148 (relating to risk corridors).

(TRANSFER OF FUNDS)

SEC. 222. (a) Within 45 days of enactment of this Act, the Secretary shall transfer funds appropriated under section 4002 of the ACA to the accounts specified, in the amounts specified, and for the activities specified under the heading "Prevention and Public Health Fund" in the explanatory statement described in

H. R. 7148—116

section 4 (in the matter preceding division A of this consolidated Act).

(b) Notwithstanding section 4002(c) of the ACA, the Secretary may not further transfer these amounts.

(c) Funds transferred for activities authorized under section 2821 of the PHS Act shall be made available without reference to section 2821(b) of such Act.

SEC. 223. Effective during the period beginning on November 1, 2015 and ending January 1, 2028, any provision of law that refers (including through cross-reference to another provision of law) to the current recommendations of the United States Preventive Services Task Force with respect to breast cancer screening, mammography, and prevention shall be administered by the Secretary involved as if—

(1) such reference to such current recommendations were a reference to the recommendations of such Task Force with respect to breast cancer screening, mammography, and prevention last issued before 2009; and

(2) such recommendations last issued before 2009 applied to any screening mammography modality under section 1861(jj) of the Social Security Act (42 U.S.C. 1395x(jj)).

SEC. 224. In making Federal financial assistance, the provisions relating to indirect costs in part 75 of title 45, Code of Federal Regulations, including with respect to the approval of deviations from negotiated rates, shall continue to apply to the National Institutes of Health to the same extent and in the same manner as such provisions were applied in the third quarter of fiscal year 2017. None of the funds appropriated in this or prior Acts or otherwise made available to the Department of Health and Human Services or to any department or agency may be used to develop or implement a modified approach to such provisions, or to intentionally or substantially expand the fiscal effect of the approval of such deviations from negotiated rates beyond the proportional effect of such approvals in such quarter.

(TRANSFER OF FUNDS)

SEC. 225. The NIH Director may transfer funds for opioid addiction, opioid alternatives, stimulant misuse and addiction, pain management, and addiction treatment to other Institutes and Centers of the NIH to be used for the same purpose 15 days after notifying the Committees on Appropriations of the House of Representatives and the Senate: *Provided,* That the transfer authority provided in the previous proviso is in addition to any other transfer authority provided by law.

SEC. 226. (a) The Secretary shall provide to the Committees on Appropriations of the House of Representatives and the Senate:

(1) Detailed monthly enrollment figures from the Exchanges established under the Patient Protection and Affordable Care Act of 2010 pertaining to enrollments during the open enrollment period; and

(2) Notification of any new or competitive grant awards, including supplements, authorized under section 330 of the Public Health Service Act.

(b) The Committees on Appropriations of the House and Senate must be notified at least 2 business days in advance of any public release of enrollment information or the award of such grants.

SEC. 227. In addition to the amounts otherwise available for "Centers for Medicare & Medicaid Services, Program Management", the Secretary of Health and Human Services may transfer up to $455,000,000 to such account from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund to support program management activity related to the Medicare Program: *Provided,* That except for the foregoing purpose, such funds may not be used to support any provision of Public Law 111–148 or Public Law 111–152 (or any amendment made by either such Public Law) or to supplant any other amounts within such account.

SEC. 228. The Department of Health and Human Services shall provide the Committees on Appropriations of the House of Representatives and Senate a biannual report 30 days after enactment of this Act on staffing described in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

SEC. 229. Funds appropriated in this Act that are available for salaries and expenses of employees of the Department of Health and Human Services shall also be available to pay travel and related expenses of such an employee or of a member of his or her family, when such employee is assigned to duty, in the United States or in a U.S. territory, during a period and in a location that are the subject of a determination of a public health emergency under section 319 of the Public Health Service Act and such travel is necessary to obtain medical care for an illness, injury, or medical condition that cannot be adequately addressed in that location at that time. For purposes of this section, the term "U.S. territory" means Guam, the Commonwealth of Puerto Rico, the Northern Mariana Islands, the Virgin Islands, American Samoa, or the Trust Territory of the Pacific Islands.

SEC. 230. The Department of Health and Human Services may accept donations from the private sector, nongovernmental organizations, and other groups independent of the Federal Government for the care of unaccompanied alien children (as defined in section 462(g)(2) of the Homeland Security Act of 2002 (6 U.S.C. 279(g)(2))) in the care of the Office of Refugee Resettlement of the Administration for Children and Families, including medical goods and services, which may include early childhood developmental screenings, school supplies, toys, clothing, and any other items intended to promote the wellbeing of such children.

SEC. 231. None of the funds made available in this Act under the heading "Department of Health and Human Services—Administration for Children and Families—Refugee and Entrant Assistance" may be obligated to a grantee or contractor to house unaccompanied alien children (as such term is defined in section 462(g)(2) of the Homeland Security Act of 2002 (6 U.S.C. 279(g)(2))) in any facility that is not State-licensed for the care of unaccompanied alien children, except in the case that the Secretary determines that housing unaccompanied alien children in such a facility is necessary on a temporary basis due to an influx of such children or an emergency, provided that—

(1) the terms of the grant or contract for the operations of any such facility that remains in operation for more than six consecutive months shall require compliance with—

(A) the same requirements as licensed placements, as listed in Exhibit 1 of the Flores Settlement Agreement

H. R. 7148—118

that the Secretary determines are applicable to non-State licensed facilities; and

(B) staffing ratios of one (1) on-duty Youth Care Worker for every eight (8) children or youth during waking hours, one (1) on-duty Youth Care Worker for every sixteen (16) children or youth during sleeping hours, and clinician ratios to children (including mental health providers) as required in grantee cooperative agreements;

(2) the Secretary may grant a 60-day waiver for a contractor's or grantee's non-compliance with paragraph (1) if the Secretary certifies and provides a report to Congress on the contractor's or grantee's good-faith efforts and progress towards compliance;

(3) not more than four consecutive waivers under paragraph (2) may be granted to a contractor or grantee with respect to a specific facility;

(4) ORR shall ensure full adherence to the monitoring requirements set forth in section 5.5 of its Policies and Procedures Guide as of May 15, 2019;

(5) for any such unlicensed facility in operation for more than three consecutive months, ORR shall conduct a minimum of one comprehensive monitoring visit during the first three months of operation, with quarterly monitoring visits thereafter; and

(6) not later than 60 days after the date of enactment of this Act, ORR shall brief the Committees on Appropriations of the House of Representatives and the Senate outlining the requirements of ORR for influx facilities including any requirement listed in paragraph (1)(A) that the Secretary has determined are not applicable to non-State licensed facilities.

SEC. 232. In addition to the existing Congressional notification for formal site assessments of potential influx facilities, the Secretary shall notify the Committees on Appropriations of the House of Representatives and the Senate at least 15 days before operationalizing an unlicensed facility, and shall (1) specify whether the facility is hard-sided or soft-sided, and (2) provide analysis that indicates that, in the absence of the influx facility, the likely outcome is that unaccompanied alien children will remain in the custody of the Department of Homeland Security for longer than 72 hours or that unaccompanied alien children will be otherwise placed in danger. Within 60 days of bringing such a facility online, and monthly thereafter, the Secretary shall provide to the Committees on Appropriations of the House of Representatives and the Senate a report detailing the total number of children in care at the facility, the average length of stay and average length of care of children at the facility, and, for any child that has been at the facility for more than 60 days, their length of stay and reason for delay in release.

SEC. 233. None of the funds made available in this Act may be used to prevent a United States Senator or Member of the House of Representatives from entering, for the purpose of conducting oversight, any facility in the United States used for the purpose of maintaining custody of, or otherwise housing, unaccompanied alien children (as defined in section 462(g)(2) of the Homeland Security Act of 2002 (6 U.S.C. 279(g)(2))), provided that such Senator or Member has coordinated the oversight visit with the Office of Refugee Resettlement not less than two business days

in advance to ensure that such visit would not interfere with the operations (including child welfare and child safety operations) of such facility.

SEC. 234. Not later than 14 days after the date of enactment of this Act, and monthly thereafter, the Secretary shall submit to the Committees on Appropriations of the House of Representatives and the Senate, and make publicly available online, a report with respect to children who were separated from their parents or legal guardians by the Department of Homeland Security (DHS) (regardless of whether or not such separation was pursuant to an option selected by the children, parents, or guardians), subsequently classified as unaccompanied alien children, and transferred to the care and custody of ORR during the previous month. Each report shall contain the following information:

(1) the number and ages of children so separated subsequent to apprehension at or between ports of entry, to be reported by sector where separation occurred; and

(2) the documented cause of separation, as reported by DHS when each child was referred.

SEC. 235. Funds appropriated in this Act that are available for salaries and expenses of employees of the Centers for Disease Control and Prevention shall also be available for the primary and secondary schooling of eligible dependents of personnel stationed in a U.S. territory at costs not in excess of those paid for or reimbursed by the Department of Defense: *Provided*, That for purposes of this section, the term "U.S. territory" means Guam, the Commonwealth of Puerto Rico, the Northern Mariana Islands, the Virgin Islands, American Samoa, or the Trust Territory of the Pacific Islands.

SEC. 236. Funds made available in this Act under each of the headings "Immunization and Respiratory Diseases", "HIV/AIDS, Viral Hepatitis, Sexually Transmitted Diseases, and Tuberculosis Prevention", "Emerging and Zoonotic Infectious Diseases", "Chronic Disease Prevention and Health Promotion", "Birth Defects, Developmental Disabilities, Disabilities and Health", "Public Health Scientific Services", "Environmental Health", "Injury Prevention and Control", "National Institute for Occupational Safety and Health", "Global Health", "Public Health Preparedness and Response", and "CDC-Wide Activities and Program Support" shall be for the budget activities, and in the amounts specified in the table under each such heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(RESCISSION)

SEC. 237. Of the unobligated balances in the "Nonrecurring Expenses Fund" established in section 223 of division G of Public Law 110–161, $1,826,000,000 are hereby rescinded not later than September 30, 2026, except that no amounts may be rescinded from amounts that were previously designated by the Congress as being for an emergency requirement pursuant to a concurrent resolution on the budget or the Balanced Budget and Emergency Deficit Control Act of 1985.

SEC. 238. The Director of the NIH shall hereafter require institutions that receive funds through a grant or cooperative agreement or other form of extramural award during fiscal year 2026 and in future years to complete any investigation undertaken due

to concerns about harassment, bullying retaliation, or hostile working conditions regarding any individual identified as a principal investigator or key personnel in an NIH notice of award or progress report even if during the course of the investigation the individual under investigation leaves their current position and is no longer employed by the institution. The Director may hereafter decline transfer of an ongoing extramural award to a different institution if concerns about harassment, bullying, hostile work environment, or other professional misconduct on the part of a principal investigator or key personnel named in the Notice of Award or progress report have not been resolved to the NIH's satisfaction. The Director of the NIH shall hereafter have the authority to share investigation reports, conclusions, and results of any investigation of individuals identified as a principal investigator or as key personnel in an NIH notice of award or progress report due to concerns about harassment, bullying, retaliation, or hostile working conditions on an as needed basis with any institution that receives funds through a grant or cooperative agreement or other form of extramural award during fiscal year 2026 or any subsequent fiscal year. The Director may issue regulations consistent with this section.

SEC. 239. The Department of Health and Human Services shall support staffing levels necessary to fulfill its statutory responsibilities including carrying out programs, projects, and activities funded in this title of this Act in a timely manner: *Provided,* That the Secretary shall submit a detailed plan and justification to the Committees on Appropriations of the House of Representatives and the Senate, and make publicly available to allow for an independent review not less than 60 days prior to initiating the execution of any reorganization moving functions, pursuant to any authorities otherwise provided, carried out by the Centers for Disease Control and Prevention to another component of the Department of Health and Human Services, relative to how such functions are funded in this Act.

SEC. 240. (a) Not to exceed the amount of funds made available under the heading "National Institutes of Health" in fiscal year 2025 that were obligated during fiscal year 2025 for more than one year of a multiyear award may be obligated in fiscal year 2026 from amounts made available under such heading in this Act for more than one year of a multiyear award.

(b) A multiyear award, as the term is used in this section, includes multiyear awards for grants, cooperative agreements, contracts, and any other financial mechanisms.

SEC. 241. The Administrator of the Centers for Medicare & Medicaid Services shall not apply the distance requirements under 1820(c)(2)(B)(i)(I) of the Social Security Act (42 U.S.C. 1395i–4(c)(2)(B)(i)(I)) to any facility with a critical access hospital provider agreement that was designated and certified as a critical access hospital as of January 1, 2024, and receives a notification letter from the Centers for Medicare & Medicaid Services during the period beginning on December 1, 2024, and ending on January 1, 2026, that the facility was found to be noncompliant with such distance requirements under section 1820(c)(2)(B)(i)(I) of the Social Security Act (42 U.S.C. 1395i–4(c)(2)(B)(i)(I)). In the case where a provider agreement for such facility was terminated on or after December 1, 2024 but prior to the date of enactment of this Act exclusively because such facility was unable to meet the distance requirement under section 1820(c)(2)(B)(i)(I) of the Social Security

H. R. 7148—121

Act (42 U.S.C. 1395i–4(c)(2)(B)(i)(I)), the Administrator shall provide for the recertification of such facility as a critical access hospital and reinstatement of such provider agreement. This provision shall not be construed to prohibit the application of any other enforcement measures deemed necessary by the Administrator, including termination of the provider agreement, in response to such facility's violation of any Federal regulation other than the distance requirement.

This title may be cited as the "Department of Health and Human Services Appropriations Act, 2026".

H. R. 7148—122

TITLE III

DEPARTMENT OF EDUCATION

OFFICE OF ELEMENTARY AND SECONDARY EDUCATION

EDUCATION FOR THE DISADVANTAGED

For carrying out title I and subpart 2 of part B of title II of the Elementary and Secondary Education Act of 1965 (referred to in this Act as "ESEA") and section 418A of the Higher Education Act of 1965 (referred to in this Act as "HEA"), $19,127,790,000, of which $8,199,490,000 shall become available on July 1, 2026, and shall remain available through September 30, 2027, and of which $10,841,177,000 shall become available on October 1, 2026, and shall remain available through September 30, 2027, for academic year 2026–2027: *Provided,* That $6,459,401,000 shall be for basic grants under section 1124 of the ESEA: *Provided further,* That up to $5,000,000 of these funds shall be available to the Secretary of Education (referred to in this title as "Secretary") on October 1, 2025, to obtain annually updated local educational agency-level census poverty data from the Bureau of the Census: *Provided further,* That $1,362,301,000 shall be for concentration grants under section 1124A of the ESEA: *Provided further,* That $5,302,550,000 shall be for targeted grants under section 1125 of the ESEA: *Provided further,* That $5,302,550,000 shall be for education finance incentive grants under section 1125A of the ESEA: *Provided further,* That $224,000,000 shall be for carrying out subpart 2 of part B of title II: *Provided further*, That $52,123,000 shall be for carrying out section 418A of the HEA.

IMPACT AID

For carrying out programs of financial assistance to federally affected schools authorized by title VII of the ESEA, $1,630,151,000, of which $1,477,000,000 shall be for basic support payments under section 7003(b), $49,316,000 shall be for payments for children with disabilities under section 7003(d), $19,000,000 to remain available through September 30, 2027, shall be for construction under section 7007(b), $80,000,000 shall be for Federal property payments under section 7002, and $4,835,000, to remain available until expended, shall be for facilities maintenance under section 7008: *Provided,* That for purposes of computing the amount of a payment for an eligible local educational agency under section 7003(a) for school year 2025–2026, children enrolled in a school of such agency that would otherwise be eligible for payment under section 7003(a)(1)(B) of such Act, but due to the deployment of both parents or legal guardians, or a parent or legal guardian having sole custody of such children, or due to the death of a military parent or legal guardian while on active duty (so long as such children reside on Federal property as described in section 7003(a)(1)(B)), are no longer eligible under such section, shall be considered as eligible students under such section, provided such students remain in average daily attendance at a school in the same local educational agency they attended prior to their change in eligibility status.

H. R. 7148—123

SCHOOL IMPROVEMENT PROGRAMS

For carrying out school improvement activities authorized by part B of title I, part A of title II, subpart 1 of part A of title IV, part B of title IV, part B of title V, and parts B and C of title VI of the ESEA; the McKinney-Vento Homeless Assistance Act; section 203 of the Educational Technical Assistance Act of 2002; and the Civil Rights Act of 1964, $5,781,178,000, of which $3,952,312,000 shall become available on July 1, 2026, and remain available through September 30, 2027, and of which $1,681,441,000 shall become available on October 1, 2026, and shall remain available through September 30, 2027, for academic year 2026–2027: *Provided,* That $2,190,080,000 shall be for part A of title II of the ESEA: *Provided further,* That $380,000,000 shall be for part B of title I: *Provided further,* That $1,329,673,000 shall be for part B of title IV: *Provided further,* That $45,897,000 shall be for part B of title VI, which may be used for construction, renovation, and modernization of any public elementary school, secondary school, or structure related to a public elementary school or secondary school that serves a predominantly Native Hawaiian student body, and that the 5 percent limitation in section 6205(b) of the ESEA on the use of funds for administrative purposes shall apply only to direct administrative costs: *Provided further,* That the Secretary shall use $650,000 of funds made available in the preceding proviso to carry out section 6204 of the ESEA: *Provided further,* That $44,953,000 shall be for part C of title VI, which shall be awarded on a competitive basis, and may be used for construction, and that the 5 percent limitation in section 6305 of the ESEA on the use of funds for administrative purposes shall apply only to direct administrative costs: *Provided further,* That $50,000,000 shall be available to carry out section 203 of the Educational Technical Assistance Act of 2002 and the Secretary shall make such arrangements as determined to be necessary to ensure that the Bureau of Indian Education has access to services provided under this section: *Provided further,* That $225,000,000 shall be for part B of title V: *Provided further,* That in carrying out such part B the percentage in section 316(b)(1)(F) of title III of division H of Public Law 116–260 shall be deemed 83.33 percent: *Provided further,* That $1,380,000,000 shall be available for grants under subpart 1 of part A of title IV: *Provided further,* That $129,000,000 shall be for subpart B of title VII of the McKinney-Vento Homeless Assistance Act, which shall be available for expenditure by educational agencies and institutions for an additional fiscal year following the succeeding fiscal year provided by subsection 421(b)(1) of the General Education Provisions Act.

INDIAN EDUCATION

For expenses necessary to carry out, to the extent not otherwise provided, title VI, part A of the ESEA, $196,746,000, of which $72,000,000 shall be for subpart 2 of part A of title VI and $14,365,000 shall be for subpart 3 of part A of title VI: *Provided,* That the 5 percent limitation in sections 6115(d), 6121(e), and 6133(g) of the ESEA on the use of funds for administrative purposes shall apply only to direct administrative costs: *Provided further,* That grants awarded under sections 6132 and 6133 of the ESEA with funds provided under this heading may be for a period of up to 5 years: *Provided further,* That the Secretary may make

awards under subpart 3 of part A of title VI without regard to the funding limitation in section 6133(b)(1) of the ESEA.

INNOVATION AND IMPROVEMENT

For carrying out activities authorized by subparts 1, 3, and 4 of part B of title II, and parts C, D, and E and subparts 1 and 4 of part F of title IV of the ESEA, $1,191,147,000, which shall be for the purposes and in the amounts specified in the "Final Bill" column for Innovation and Improvement in the "Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), of which the amounts made available for "Community Project Funding/Congressionally Directed Spending" are for the projects, and in the amounts, specified for this account in the table titled "Community Project Funding/ Congressionally Directed Spending" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act) and none of the funds made available for such projects shall be subject to section 302 of this Act: *Provided,* That amounts for subparts 1, 3, and 4 of part B of title II shall be made available without regard to sections 2201, 2231(b), and 2241: *Provided further,* That amounts for parts C, D, and E and subpart 4 of part F of title IV shall be made available without regard to sections 4311, 4409(a), and 4601 of the ESEA: *Provided further,* That section 4303(d)(3)(A)(i) shall not apply to the funds available for part C of title IV: *Provided further,* That of the funds available for part C of title IV, the Secretary shall use not less than $60,000,000 to carry out section 4304, not more than $140,000,000, to remain available through March 31, 2027, to carry out section 4305(b), from which the amount necessary for continuation grants may be available for obligation through March 31, 2027, and not more than $16,000,000 to carry out the activities in section 4305(a)(3): *Provided further,* That notwithstanding section 4601(b), $235,000,000 shall be available through December 31, 2026 for subpart 1 of part F of title IV: *Provided further,* That of the funds available for subpart 4 of part F of title IV, not less than $8,000,000 shall be used for grants for eligible national nonprofit organizations, as described in the Applications for New Awards; Assistance for Arts Education Program published in the Federal Register on May 31, 2022, for activities described under section 4642(a)(1)(C): *Provided further,* That the competitive preference priority described in such notice shall be given only to an eligible national nonprofit organization that previously received the competitive preference priority pursuant to such notice.

SAFE SCHOOLS AND CITIZENSHIP EDUCATION

For carrying out activities authorized by subparts 2 and 3 of part F of title IV of the ESEA, $431,000,000, to remain available through December 31, 2026: *Provided,* That $190,000,000 shall be available for section 4631, of which up to $6,000,000, to remain available until expended, shall be for the Project School Emergency Response to Violence (Project SERV) program: *Provided further,* That $150,000,000 shall be available for section 4625: *Provided further,* That $91,000,000 shall be for section 4624.

H. R. 7148—125

OFFICE OF ENGLISH LANGUAGE ACQUISITION

ENGLISH LANGUAGE ACQUISITION

For carrying out part A of title III of the ESEA, $890,000,000, which shall become available on July 1, 2026, and shall remain available through September 30, 2027, except that 6.5 percent of such amount shall be available on October 1, 2025, and shall remain available through September 30, 2027, to carry out activities under section 3111(c)(1)(C).

OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES

SPECIAL EDUCATION

For carrying out the Individuals with Disabilities Education Act (IDEA) and the Special Olympics Sport and Empowerment Act of 2004, $15,490,264,000, of which $5,910,321,000 shall become available on July 1, 2026, and shall remain available through September 30, 2027, and of which $9,283,383,000 shall become available on October 1, 2026, and shall remain available through September 30, 2027, for academic year 2026–2027: *Provided,* That the amount for section 611(b)(2) of the IDEA shall be equal to the lesser of the amount available for that activity during fiscal year 2025, increased by the amount of inflation as specified in section 619(d)(2)(B) of the IDEA, or the percent change in the funds appropriated under section 611(i) of the IDEA, but not less than the amount for that activity during fiscal year 2025: *Provided further,* That the Secretary shall, without regard to section 611(d) of the IDEA, distribute to all other States (as that term is defined in section 611(g)(2)), subject to the third proviso, any amount by which a State's allocation under section 611, from funds appropriated under this heading, is reduced under section 612(a)(18)(B), according to the following: 85 percent on the basis of the States' relative populations of children aged 3 through 21 who are of the same age as children with disabilities for whom the State ensures the availability of a free appropriate public education under this part, and 15 percent to States on the basis of the States' relative populations of those children who are living in poverty: *Provided further,* That the Secretary may not distribute any funds under the previous proviso to any State whose reduction in allocation from funds appropriated under this heading made funds available for such a distribution: *Provided further,* That the States shall allocate such funds distributed under the second proviso to local educational agencies in accordance with section 611(f): *Provided further,* That the amount by which a State's allocation under section 611(d) of the IDEA is reduced under section 612(a)(18)(B) and the amounts distributed to States under the previous provisos in fiscal year 2012 or any subsequent year shall not be considered in calculating the awards under section 611(d) for fiscal year 2013 or for any subsequent fiscal years: *Provided further,* That, notwithstanding the provision in section 612(a)(18)(B) regarding the fiscal year in which a State's allocation under section 611(d) is reduced for failure to comply with the requirement of section 612(a)(18)(A), the Secretary may apply the reduction specified in section 612(a)(18)(B) over a period of consecutive fiscal years, not to exceed 5, until the entire reduction is applied: *Provided further,* That the Secretary may, in any fiscal year in which a State's allocation

under section 611 is reduced in accordance with section 612(a)(18)(B), reduce the amount a State may reserve under section 611(e)(1) by an amount that bears the same relation to the maximum amount described in that paragraph as the reduction under section 612(a)(18)(B) bears to the total allocation the State would have received in that fiscal year under section 611(d) in the absence of the reduction: *Provided further,* That the Secretary shall either reduce the allocation of funds under section 611 for any fiscal year following the fiscal year for which the State fails to comply with the requirement of section 612(a)(18)(A) as authorized by section 612(a)(18)(B), or seek to recover funds under section 452 of the General Education Provisions Act (20 U.S.C. 1234a): *Provided further,* That the funds reserved under 611(c) of the IDEA may be used to provide technical assistance to States to improve the capacity of the States to meet the data collection requirements of sections 616 and 618 and to administer and carry out other services and activities to improve data collection, coordination, quality, and use under parts B and C of the IDEA: *Provided further,* That the Secretary may use funds made available for the State Personnel Development Grants program under part D, subpart 1 of IDEA to evaluate program performance under such subpart: *Provided further,* That States may use funds reserved for other State-level activities under sections 611(e)(2) and 619(f) of the IDEA to make subgrants to local educational agencies, institutions of higher education, other public agencies, and private nonprofit organizations to carry out activities authorized by those sections: *Provided further,* That, notwithstanding section 643(e)(2)(A) of the IDEA, if 5 or fewer States apply for grants pursuant to section 643(e) of such Act, the Secretary shall provide a grant to each State in an amount equal to the maximum amount described in section 643(e)(2)(B) of such Act: *Provided further,* That if more than 5 States apply for grants pursuant to section 643(e) of the IDEA, the Secretary shall award funds to those States on the basis of the States' relative populations of infants and toddlers except that no such State shall receive a grant in excess of the amount described in section 643(e)(2)(B) of such Act: *Provided further,* That States may use funds allotted under section 643(c) of the IDEA to make subgrants to local educational agencies, institutions of higher education, other public agencies, and private nonprofit organizations to carry out activities authorized by section 638 of IDEA: *Provided further,* That, notwithstanding section 638 of the IDEA, a State may use funds it receives under section 633 of the IDEA to offer continued early intervention services to a child who previously received services under part C of the IDEA from age 3 until the beginning of the school year following the child's third birthday with parental consent and without regard to the procedures in section 635(c) of the IDEA: *Provided further,* That notwithstanding section 638 of the IDEA, a State may use funds appropriated under Part C of the IDEA to conduct child find, public awareness, and referral activities for an individual who is expected to become a parent of an infant with a disability (as that term is defined in section 632(5)), as established by medical or other records: *Provided further,* That any State electing to use funds under the preceding proviso shall ensure that, as soon as possible but not later than 45 days after the child's birth, it completes the referral and eligibility process under this part for that child.

H. R. 7148—127

REHABILITATION SERVICES

(INCLUDING TRANSFER OF FUNDS)

For carrying out, to the extent not otherwise provided, the Rehabilitation Act of 1973 and the Helen Keller National Center Act, $4,648,295,000, of which $4,504,096,000 shall be for grants for vocational rehabilitation services under title I of the Rehabilitation Act: *Provided,* That the Secretary may use amounts provided in this Act that remain available subsequent to the reallotment of funds to States pursuant to section 110(b) of the Rehabilitation Act for innovative activities aimed at increasing competitive integrated employment as defined in section 7 of such Act for youth and other individuals with disabilities, including related Federal administrative expenses, for improving monitoring and oversight of grants for vocational rehabilitation services under title I of the Rehabilitation Act, and information technology needs under section 15 and titles I, III, VI, and VII of the Rehabilitation Act: *Provided further,* That up to 15 percent of the amounts available subsequent to reallotment for the activities described in the first proviso from funds provided under this paragraph in this Act, may be used for evaluation and technical assistance related to such activities: *Provided further,* That any funds made available subsequent to reallotment for the activities described in the first proviso may be provided to States and other public, private and nonprofit entities, including Indian Tribes and institutions of higher education for carrying out such activities: *Provided further,* That States and other public and nonprofit entities, including Indian Tribes and institutions of higher education may award subgrants for a portion of the funds to other eligible entities: *Provided further,* That any funds provided in this Act and made available subsequent to reallotment for the purposes described in the first proviso shall remain available until September 30, 2027: *Provided further,* That any funds provided in the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119–4) and made available subsequent to reallotment shall remain available until September 30, 2026: *Provided further,* That the Secretary may transfer funds provided in this Act and made available subsequent to the reallotment of funds to States pursuant to section 110(b) of the Rehabilitation Act to "Institute of Education Sciences" for the evaluation of outcomes for students receiving services and supports under IDEA and under title I, section 504 of title V, and title VI of the Rehabilitation Act: *Provided further,* That the transfer authority in the preceding proviso is in addition to any other transfer authority in this Act.

SPECIAL INSTITUTIONS FOR PERSONS WITH DISABILITIES

AMERICAN PRINTING HOUSE FOR THE BLIND

For carrying out the Act to Promote the Education of the Blind of March 3, 1879, $43,431,000.

NATIONAL TECHNICAL INSTITUTE FOR THE DEAF

For the National Technical Institute for the Deaf under titles I and II of the Education of the Deaf Act of 1986, $92,500,000: *Provided,* That from the total amount available, the Institute may

H. R. 7148—128

at its discretion use funds for the endowment program as authorized under section 207 of such Act.

GALLAUDET UNIVERSITY

For the Kendall Demonstration Elementary School, the Model Secondary School for the Deaf, and the partial support of Gallaudet University under titles I and II of the Education of the Deaf Act of 1986, $167,361,000, of which up to $15,000,000, to remain available until expended, shall be for construction, as defined by section 201(2) of such Act: *Provided,* That from the total amount available, the University may at its discretion use funds for the endowment program as authorized under section 207 of such Act.

OFFICE OF CAREER, TECHNICAL, AND ADULT EDUCATION

CAREER, TECHNICAL, AND ADULT EDUCATION

For carrying out, to the extent not otherwise provided, the Carl D. Perkins Career and Technical Education Act of 2006 ("Perkins Act") and the Adult Education and Family Literacy Act ("AEFLA"), $2,181,436,000, of which $1,390,436,000 shall become available on July 1, 2026, and shall remain available through September 30, 2027, and of which $791,000,000 shall become available on October 1, 2026, and shall remain available through September 30, 2027: *Provided,* That up to $6,100,000 shall be available for innovation and modernization grants under such section 114(e) of the Perkins Act: *Provided further,* That of the amounts made available for AEFLA, $13,712,000 shall be for national leadership activities under section 242.

OFFICE OF FEDERAL STUDENT AID

STUDENT FINANCIAL ASSISTANCE

For carrying out subparts 1 and 3 of part A, and part C of title IV of the HEA, $24,615,352,000 which shall remain available through September 30, 2027: *Provided,* That $22,475,352,000 shall be for subpart 1 of part A, $910,000,000 shall be for subpart 3 of part A, and $1,230,000,000 shall be for part C.

The maximum Pell Grant for which a student shall be eligible during award year 2026–2027 shall be $6,335.

STUDENT AID ADMINISTRATION

For Federal administrative expenses to carry out part D of title I, and subparts 1, 3, 9, and 10 of part A, and parts B, C, D, and E of title IV of the HEA, and subpart 1 of part A of title VII of the Public Health Service Act, $2,058,943,000, to remain available through September 30, 2027: *Provided,* That in order to promote accountability and high-quality service to borrowers, the Secretary shall not award funding for any contract solicitation for a new Federal student loan servicing environment unless such an environment provides for the participation of multiple student loan servicers that contract directly with the Department of Education to manage a unique portfolio of borrower accounts and the full life-cycle of loans from disbursement to pay-

H. R. 7148—129

off with certain limited exceptions, and allocates student loan bor-
rower accounts to eligible student loan servicers based on perform-
ance: *Provided further,* That the Department shall re-allocate
accounts from servicers for recurring non-compliance with FSA
guidelines, contractual requirements, and applicable laws, including
for failure to sufficiently inform borrowers of available repayment
options: *Provided further,* That such servicers shall be evaluated
based on their ability to meet contract requirements (including
an understanding of Federal and State law), future performance
on the contracts, and history of compliance with applicable con-
sumer protections laws: *Provided further,* That FSA shall ensure
that the Federal loan servicing environment incentivizes more sup-
port to borrowers at risk of delinquency or default: *Provided further,*
That FSA shall ensure that in such environment contractors have
the capacity to meet and are held accountable for performance
on service levels; are held accountable for and have a history
of compliance with applicable consumer protection laws; and have
relevant experience and demonstrated effectiveness: *Provided fur-
ther,* That the Secretary shall provide monthly briefings to the
Committees on Appropriations and Education and Workforce of
the House of Representatives and the Committees on Appropriations
and Health, Education, Labor, and Pensions of the Senate on gen-
eral progress related to Federal student loan servicing and repay-
ment: *Provided further,* That FSA shall strengthen transparency
through expanded publication of aggregate data on student loan
and servicer performance: *Provided further,* That the limitation
in section 302 of this Act regarding transfers increasing any appro-
priation shall apply to transfers to appropriations under this
heading by substituting "10 percent" for "3 percent" for the purposes
of the continuation of basic operations, including student loan serv-
icing, business process operations, digital customer care, common
origination and disbursement, cybersecurity activities, and informa-
tion technology systems: *Provided further,* That not later than 45
days after enactment of this Act, FSA shall provide to the Commit-
tees on Appropriations of the House of Representatives and the
Senate a detailed spend plan of anticipated uses of funds made
available in this account for fiscal year 2026 and provide quarterly
updates on this plan (including contracts awarded, change orders,
bonuses paid to staff, reorganization costs, and any other activity
carried out using amounts provided under this heading for fiscal
year 2026) no later than 10 days prior to the start of such quarter:
*Provided further,* That FSA shall notify the Committees within
10 days of any modification of such spend plan that exceeds five
percent of the amount appropriated under the heading "Student
Aid Administration".

OFFICE OF POSTSECONDARY EDUCATION

HIGHER EDUCATION

For carrying out, to the extent not otherwise provided, titles
II, III, IV, V, VI, VII, and VIII of the HEA, the Mutual Educational
and Cultural Exchange Act of 1961, and section 117 of the Perkins
Act, $3,265,598,000, of which $2,243,711,000 shall be for the pur-
poses and in the amounts, other than for "Aid for Institutional
Development", specified in the "Final Bill" column for Higher Edu-
cation in the "Departments of Labor, Health and Human Services,

Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), of which the amounts made available for Community Project Funding/Congressionally Directed Spending are for the projects, and in the amounts, specified for this account in the table titled "Community Project Funding/ Congressionally Directed Spending" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act) and none of the funds made available for such projects shall be subject to section 302 of this Act, and of which the amounts made available for part B of title VII of the HEA shall be for the purposes and in the amounts specified in the table under the heading "Fund for the Improvement of Postsecondary Education" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That of the amounts provided under this heading, $493,331,000 shall be for carrying out part A of title III and title V of the HEA, of which $53,807,000 shall be for carrying out section 316: *Provided further,* That of the amounts provided under this heading, $528,556,000 shall be for carrying out part B of title III and section 723 of the HEA, of which $6,000,000 of the amounts available for section 323 of the HEA shall be for grants to supplement amounts awarded to part B institutions that are junior or community colleges, as defined in section 312(f) of the HEA: *Provided further,* That the supplemental funds described in the preceding proviso are in addition to any grant award that any institution may receive under section 323 of the HEA and shall be allocated in accordance with the allotments specified under section 324 of such Act: *Provided further,* That notwithstanding any other provision of law, funds made available in this Act to carry out title VI of the HEA and section 102(b)(6) of the Mutual Educational and Cultural Exchange Act of 1961 may be used to support visits and study in foreign countries by individuals who are participating in advanced foreign language training and international studies in areas that are vital to United States national security and who plan to apply their language skills and knowledge of these countries in the fields of government, the professions, or international development: *Provided further,* That of the funds referred to in the preceding proviso up to 1 percent may be used for program evaluation, national outreach, and information dissemination activities: *Provided further,* That up to 1.5 percent of the funds made available under chapter 2 of subpart 2 of part A of title IV of the HEA may be used for evaluation: *Provided further,* That section 313(d) of the HEA shall not apply to an institution of higher education that is eligible to receive funding under section 318 of the HEA: *Provided further,* That amounts made available for carrying out section 419N of the HEA may be awarded notwithstanding the limitations in section 419N(b)(2) of the HEA: *Provided further,* That activities authorized under sections 317(c)(2)(B), 319(c)(2)(B), and 320(c)(2)(B) of the HEA may include construction and maintenance in classrooms, libraries, laboratories, and other instructional facilities.

## HOWARD UNIVERSITY

For partial support of Howard University, $254,018,000, of which not less than $3,405,000 shall be for a matching endowment

H. R. 7148—131

grant pursuant to the Howard University Endowment Act and shall remain available until expended.

COLLEGE HOUSING AND ACADEMIC FACILITIES LOANS PROGRAM

For Federal administrative expenses to carry out activities related to existing facility loans pursuant to section 121 of the HEA, $298,000.

HISTORICALLY BLACK COLLEGE AND UNIVERSITY CAPITAL FINANCING PROGRAM ACCOUNT

For the cost of guaranteed loans, $20,150,000, as authorized pursuant to part D of title III of the HEA, which shall remain available through September 30, 2027: *Provided,* That such costs, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further,* That these funds are available to subsidize total loan principal, any part of which is to be guaranteed, not to exceed $500,000,000: *Provided further,* That these funds may be used to support loans to public and private Historically Black Colleges and Universities without regard to the limitations within section 344(a) of the HEA.

In addition, for administrative expenses to carry out the Historically Black College and University Capital Financing Program entered into pursuant to part D of title III of the HEA, $528,000.

INSTITUTE OF EDUCATION SCIENCES

For necessary expenses for the Institute of Education Sciences as authorized by section 208 of the Department of Education Organization Act and carrying out activities authorized by the National Assessment of Educational Progress Authorization Act, section 208 of the Educational Technical Assistance Act of 2002, and section 664 of the Individuals with Disabilities Education Act, $789,606,000, to remain available through September 30, 2027, which shall be for the purposes and in the amounts specified in the "Final Bill" column for Institute of Education Sciences in the "Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That funds available to carry out section 208 of the Educational Technical Assistance Act may be used to link Statewide elementary and secondary data systems with early childhood, postsecondary, and workforce data systems, or to further develop such systems: *Provided further,* That up to $6,000,000 of the funds available to carry out section 208 of the Educational Technical Assistance Act may be used for awards to public or private organizations or agencies to support activities to improve data coordination, quality, and use at the local, State, and national levels.

H. R. 7148—132

DEPARTMENTAL MANAGEMENT

PROGRAM ADMINISTRATION

For carrying out, to the extent not otherwise provided, the Department of Education Organization Act, including rental of conference rooms in the District of Columbia and hire of three passenger motor vehicles, $399,407,000: *Provided,* That, notwithstanding any other provision of law, none of the funds provided by this Act or provided by previous Appropriations Acts to the Department of Education available for obligation or expenditure in the current fiscal year may be used for any activity relating to implementing a reorganization that decentralizes, reduces the staffing level, or alters the responsibilities, structure, authority, or functionality of the Budget Service of the Department of Education, relative to the organization and operation of the Budget Service as in effect on January 1, 2018: *Provided further,* That none of the funds provided by this Act may be used to support a number of non-career employees that is more than the number of non-career employees as of December 31, 2022: *Provided further,* That the Department of Education shall support staffing levels necessary to fulfill its statutory responsibilities including carrying out programs, projects, and activities funded in this title of this Act in a timely manner.

OFFICE FOR CIVIL RIGHTS

For expenses necessary for the Office for Civil Rights, as authorized by section 203 of the Department of Education Organization Act, $140,000,000.

OFFICE OF INSPECTOR GENERAL

For expenses necessary for the Office of Inspector General, as authorized by section 212 of the Department of Education Organization Act, $67,500,000, of which $3,000,000 shall remain available through September 30, 2027.

GENERAL PROVISIONS

SEC. 301. No funds appropriated in this Act may be used to prevent the implementation of programs of voluntary prayer and meditation in the public schools.

(TRANSFER OF FUNDS)

SEC. 302. Not to exceed 1 percent of any discretionary funds (pursuant to the Balanced Budget and Emergency Deficit Control Act of 1985) which are appropriated for the Department of Education in this Act may be transferred between appropriations, but no such appropriation shall be increased by more than 3 percent by any such transfer: *Provided,* That the transfer authority granted by this section shall not be used to create any new program or to fund any project or activity for which no funds are provided in this Act: *Provided further,* That the Committees on Appropriations of the House of Representatives and the Senate are notified at least 15 days in advance of any transfer.

SEC. 303. Funds appropriated in this Act and consolidated for evaluation purposes under section 8601(c) of the ESEA shall be available from July 1, 2026, through September 30, 2027.

SEC. 304. (a) An institution of higher education that maintains an endowment fund supported with funds appropriated for title III or V of the HEA for fiscal year 2026 may use the income from that fund to award scholarships to students, subject to the limitation in section 331(c)(3)(B)(i) of the HEA. The use of such income for such purposes, prior to the enactment of this Act, shall be considered to have been an allowable use of that income, subject to that limitation.

(b) Subsection (a) shall be in effect until titles III and V of the HEA are reauthorized.

SEC. 305. Section 114(f) of the HEA (20 U.S.C. 1011c(f)) shall be applied by substituting "2026" for "2021".

SEC. 306. Section 458(a)(4) of the HEA (20 U.S.C. 1087h(a)) shall be applied by substituting "2027" for "2021".

SEC. 307. Funds appropriated in this Act under the heading "Student Aid Administration" may be available for payments for student loan servicing to an institution of higher education that services outstanding Federal Perkins Loans under part E of title IV of the Higher Education Act of 1965 (20 U.S.C. 1087aa et seq.).

SEC. 308. The Secretary may reserve not more than 0.5 percent from any amount made available in this Act for an HEA program, except for any amounts made available for subpart 1 of part A of title IV of the HEA, to carry out rigorous and independent evaluations and to collect and analyze outcome data for any program authorized by the HEA: *Provided,* That no funds made available in this Act for the "Student Aid Administration" account shall be subject to the reservation under this section: *Provided further,* That any funds reserved under this section shall be available through September 30, 2028: *Provided further,* That if, under any other provision of law, funds are authorized to be reserved or used for evaluation activities with respect to a program or project, the Secretary may also reserve funds for such program or project for the purposes described in this section so long as the total reservation of funds for such program or project does not exceed any statutory limits on such reservations: *Provided further,* That not later than 30 days prior to the initial obligation of funds reserved under this section, the Secretary shall submit to the Committees on Appropriations of the Senate and the House of Representatives, the Committee on Health, Education, Labor and Pensions of the Senate, and the Committee on Education and Workforce of the House of Representatives a plan that identifies the source and amount of funds reserved under this section, the impact on program grantees if funds are withheld for the purposes of this section, and the activities to be carried out with such funds.

(INCLUDING TRANSFER OF FUNDS)

SEC. 309. Of the amounts appropriated in this Act for "Institute of Education Sciences" from amounts available for Program Administration, up to $20,000,000 shall be available for the Secretary of Education ("the Secretary") to provide support services to the Institute of Education Sciences (including, but not limited to information technology services, lease or procurement of office

space, human resource services, financial management services, financial systems support, budget formulation and execution, legal counsel, equal employment opportunity services, physical security, facilities management, acquisition and contract management, grants administration and policy, and enterprise risk management): *Provided,* That the Secretary shall calculate the actual amounts obligated and expended for such support services by using a standard Department of Education methodology for allocating the cost of all such support services: *Provided further,* That the Secretary may transfer any amounts available for IES support services in excess of actual amounts needed for IES support services, as so calculated, to the "Program Administration" account from the "Institute of Education Sciences" account: *Provided further,* That in order to address any shortfall between amounts available for IES support services and amounts needed for IES support services, as so calculated, the Secretary may transfer necessary amounts to the "Institute of Education Sciences" account from the "Program Administration" account: *Provided further,* That the Committees on Appropriations of the House of Representatives and the Senate are notified at least 14 days in advance of any transfer made pursuant to this section.

(RESCISSION AND TRANSFER OF FUNDS)

SEC. 310. Of the unobligated balances in the "Department of Education Nonrecurring Expenses Fund" established in section 313 of division H of Public Law 116–260, $160,000,000 are hereby rescinded not later than September 30, 2026: *Provided,* That from any remaining unobligated balances in such Fund, the Secretary may transfer up to $60,000,000 to "Innovation and Improvement" to be merged with funds made available under such heading for carrying out activities authorized under part C of title IV of the ESEA.

(RESCISSION)

SEC. 311. Of the funds made available under the heading "Institute of Education Sciences" pursuant to section 1101(a)(8) of the Full-Year Continuing Appropriations Act, 2025 (division A of Public Law 119–4) for program administration, $25,000,000 are hereby permanently rescinded not later than September 30, 2026.

SEC. 312. The Secretary shall award to each State an amount as required under the applicable provisions of the ESEA, McKinney-Vento Homeless Assistance Act, IDEA, Perkins Act, and AEFLA for each formula grant program to which funds are appropriated in this Act on the date such funds become available for obligation.

This title may be cited as the "Department of Education Appropriations Act, 2026".

## TITLE IV

## RELATED AGENCIES

### COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY DISABLED

#### SALARIES AND EXPENSES

For expenses necessary for the Committee for Purchase From People Who Are Blind or Severely Disabled (referred to in this title as "the Committee") established under section 8502 of title 41, United States Code, $13,124,000: *Provided,* That in order to authorize any central nonprofit agency designated pursuant to section 8503(c) of title 41, United States Code, to perform requirements of the Committee as prescribed under section 51–3.2 of title 41, Code of Federal Regulations, the Committee shall enter into a written agreement with any such central nonprofit agency: *Provided further,* That such agreement shall contain such auditing, oversight, and reporting provisions as necessary to implement chapter 85 of title 41, United States Code: *Provided further,* That such agreement shall include the elements listed under the heading "Committee For Purchase From People Who Are Blind or Severely Disabled—Written Agreement Elements" in the explanatory statement described in section 4 of Public Law 114–113 (in the matter preceding division A of that consolidated Act): *Provided further,* That any such central nonprofit agency may not charge a fee under section 51–3.5 of title 41, Code of Federal Regulations, prior to executing a written agreement with the Committee: *Provided further,* That no less than $3,150,000 shall be available for the Office of Inspector General.

### CORPORATION FOR NATIONAL AND COMMUNITY SERVICE

#### OPERATING EXPENSES

For necessary expenses for the Corporation for National and Community Service (referred to in this title as "CNCS") to carry out the Domestic Volunteer Service Act of 1973 (referred to in this title as "1973 Act") and the National and Community Service Act of 1990 (referred to in this title as "1990 Act"), $975,525,000, which shall be for the purposes and in the amounts specified in the "Final Bill" column for Corporation for National and Community Service in the "Departments of Labor, Health and Human Services, Education, and Related Agencies Appropriations Act, 2026" table in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), notwithstanding sections 198B(b)(3), 198S(g), 501(a)(4)(C), and 501(a)(4)(F) of the 1990 Act: *Provided,* That of the amounts provided under this heading: (1) up to 1 percent of program grant funds may be used to defray the costs of conducting grant application reviews, including the use of outside peer reviewers and electronic management of the grants cycle; (2) the amounts made available for State Commission Support Grants shall be available to provide assistance to State commissions on national and community service, under section 126(a) of the 1990 Act and notwithstanding section 501(a)(5)(B) of the 1990 Act; (3) of amounts made available for Innovation, Assistance, and Other Activities, $8,558,000 shall be available for

expenses authorized under section 501(a)(4)(F) of the 1990 Act, which, notwithstanding the provisions of section 198P shall be awarded by CNCS on a competitive basis; and (4) of amounts made available for Innovation, Assistance, and Other Activities, $6,148,000 shall be available to carry out sections 198(k) and 198(i) of the 1990 Act: *Provided further,* That for the purposes of carrying out the 1990 Act, satisfying the requirements in section 122(c)(1)(D) may include a determination of need by the local community: *Provided further,* That CNCS shall award to each State their allotted amount under AmeriCorps State and National formula grants no later than April 1, 2026 and to each state their allotted amount under State Service Commission Support Grants and State Commission Investment Fund Grants no later than June 1, 2026: *Provided further,* That the Corporation shall support staffing levels necessary to fulfill its statutory responsibilities including carrying out programs, projects, and activities funded in this title of this Act in a timely manner.

PAYMENT TO THE NATIONAL SERVICE TRUST

(INCLUDING TRANSFER OF FUNDS)

For payment to the National Service Trust established under subtitle D of title I of the 1990 Act, $180,000,000, to remain available until expended: *Provided,* That CNCS may transfer additional funds from the amount provided within "Operating Expenses" allocated to grants under subtitle C of title I of the 1990 Act to the National Service Trust upon determination that such transfer is necessary to support the activities of national service participants and after notice is transmitted to the Committees on Appropriations of the House of Representatives and the Senate: *Provided further,* That amounts appropriated for or transferred to the National Service Trust may be invested under section 145(b) of the 1990 Act without regard to the requirement to apportion funds under 31 U.S.C. 1513(b).

SALARIES AND EXPENSES

For necessary expenses of administration as provided under section 501(a)(5) of the 1990 Act and under section 504(a) of the 1973 Act, including payment of salaries, authorized travel, hire of passenger motor vehicles, the rental of conference rooms in the District of Columbia, the employment of experts and consultants authorized under 5 U.S.C. 3109, and not to exceed $2,500 for official reception and representation expenses, $89,686,000.

OFFICE OF INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General in carrying out the Inspector General Act of 1978, $8,595,000, of which $1,000,000 shall be available until expended.

ADMINISTRATIVE PROVISIONS

SEC. 401. CNCS shall make any significant changes to program requirements, service delivery or policy only through public notice and comment rulemaking. For fiscal year 2026, during any grant

selection process, an officer or employee of CNCS shall not know-ingly disclose any covered grant selection information regarding such selection, directly or indirectly, to any person other than an officer or employee of CNCS that is authorized by CNCS to receive such information.

SEC. 402. AmeriCorps programs receiving grants under the National Service Trust program shall meet an overall minimum share requirement of 24 percent for the first 3 years that they receive AmeriCorps funding, and thereafter shall meet the overall minimum share requirement as provided in section 2521.60 of title 45, Code of Federal Regulations, without regard to the operating costs match requirement in section 121(e) or the member support Federal share limitations in section 140 of the 1990 Act, and subject to partial waiver consistent with section 2521.70 of title 45, Code of Federal Regulations.

SEC. 403. Donations made to CNCS under section 196 of the 1990 Act for the purposes of financing programs and operations under titles I and II of the 1973 Act or subtitle B, C, D, or E of title I of the 1990 Act shall be used to supplement and not supplant current programs and operations.

SEC. 404. In addition to the requirements in section 146(a) of the 1990 Act, use of an educational award for the purpose described in section 148(a)(4) shall be limited to individuals who are veterans as defined under section 101 of the Act.

SEC. 405. For the purpose of carrying out section 189D of the 1990 Act—

(1) entities described in paragraph (a) of such section shall be considered "qualified entities" under section 3 of the National Child Protection Act of 1993 ("NCPA");

(2) individuals described in such section shall be considered "volunteers" under section 3 of NCPA; and

(3) State Commissions on National and Community Service established pursuant to section 178 of the 1990 Act, are author-ized to receive criminal history record information, consistent with Public Law 92–544.

SEC. 406. Notwithstanding sections 139(b), 146, and 147 of the 1990 Act, an individual who successfully completes a term of service of not less than 1,200 hours during a period of not more than one year may receive a national service education award having a value of 70 percent of the value of a national service education award determined under section 147(a) of the Act.

SEC. 407. Section 148(f)(2)(A)(i) of the 1990 Act shall be applied by substituting "an approved national service position" for "a national service program that receives grants under subtitle C".

SEC. 408. In any case where a participant of a position eligible for an educational award described in subtitle D of title I of the National and Community Service Act of 1990 (42 U.S.C. 12601 et seq.) was required to exit the position early at the direction of the Corporation for National and Community Service and due to circumstances outside the control of the individual, such as a lapse in availability of Federal appropriations, or termination of their position, or the applicable program grant or agreement under the national service laws is released from completing the required term of service for such position, the Chief Executive Officer of the Corporation for National and Community Service may—

H. R. 7148—138

(1) deem such individual as having met the minimum requirements of the position or program for purposes of section 139(c)(1) of the 1990 Act; and

(2) notwithstanding section 139(c)(2)(B) of the 1990 Act, award the individual a pro-rated value of the educational award that corresponds to the quantity of the term of service actually completed by the individual without regard to whether such individual has completed at least 15 percent of their term of service as required under section 139(c) of the 1990 Act.

FEDERAL MEDIATION AND CONCILIATION SERVICE

SALARIES AND EXPENSES

For expenses necessary for the Federal Mediation and Conciliation Service ("Service") to carry out the functions vested in it by the Labor-Management Relations Act, 1947, including hire of passenger motor vehicles; for expenses necessary for the Labor-Management Cooperation Act of 1978; and for expenses necessary for the Service to carry out the functions vested in it by the Civil Service Reform Act, $48,705,000: *Provided,* That notwithstanding 31 U.S.C. 3302, fees charged, up to full-cost recovery, for special training activities and other conflict resolution services and technical assistance, including those provided to foreign governments and international organizations, and for arbitration services shall be credited to and merged with this account, and shall remain available until expended: *Provided further,* That fees for arbitration services shall be available only for education, training, and professional development of the agency workforce: *Provided further,* That the Director of the Service is authorized to accept and use on behalf of the United States gifts of services and real, personal, or other property in the aid of any projects or functions within the Director's jurisdiction.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION

SALARIES AND EXPENSES

For expenses necessary for the Federal Mine Safety and Health Review Commission, $18,012,000.

INSTITUTE OF MUSEUM AND LIBRARY SERVICES

OFFICE OF MUSEUM AND LIBRARY SERVICES: GRANTS AND ADMINISTRATION

For carrying out the Museum and Library Services Act of 1996 and the National Museum of African American History and Culture Act, $291,800,000, which shall be for the purposes and in the amounts specified in the table under this heading in the explanatory statement in section 4 (in the matter preceding division A of this consolidated Act).

H. R. 7148—139

MEDICAID AND CHIP PAYMENT AND ACCESS COMMISSION

SALARIES AND EXPENSES

For expenses necessary to carry out section 1900 of the Social Security Act, $9,405,000: *Provided,* That in fiscal year 2026 and thereafter, for all contracts for goods and services to which the Medicaid and CHIP Payment and Access Commission is a party, the following Federal Acquisition Regulation (FAR) clauses will apply: FAR 52.232–39 and FAR 52.233–4 (or a successor clause).

MEDICARE PAYMENT ADVISORY COMMISSION

SALARIES AND EXPENSES

For expenses necessary to carry out section 1805 of the Social Security Act, $14,673,000, to be transferred to this appropriation from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund: *Provided,* That in fiscal year 2026 and thereafter, for all contracts for goods and services to which the Medicare Payment Advisory Commission is a party, the following Federal Acquisition Regulation (FAR) clauses will apply: FAR 52.232–39 and FAR 52.233–4 (or a successor clause).

NATIONAL COUNCIL ON DISABILITY

SALARIES AND EXPENSES

For expenses necessary for the National Council on Disability as authorized by title IV of the Rehabilitation Act of 1973, $3,850,000.

NATIONAL LABOR RELATIONS BOARD

SALARIES AND EXPENSES

For expenses necessary for the National Labor Relations Board to carry out the functions vested in it by the Labor-Management Relations Act, 1947, and other laws, $294,224,000: *Provided,* That no part of this appropriation shall be available to organize or assist in organizing agricultural laborers or used in connection with investigations, hearings, directives, or orders concerning bargaining units composed of agricultural laborers as referred to in section 2(3) of the Act of July 5, 1935, and as amended by the Labor-Management Relations Act, 1947, and as defined in section 3(f) of the Act of June 25, 1938, and including in said definition employees engaged in the maintenance and operation of ditches, canals, reservoirs, and waterways when maintained or operated on a mutual, nonprofit basis and at least 95 percent of the water stored or supplied thereby is used for farming purposes.

ADMINISTRATIVE PROVISION

SEC. 409. None of the funds provided by this Act or previous Acts making appropriations for the National Labor Relations Board may be used to issue any new administrative directive or regulation that would provide employees any means of voting through any

H. R. 7148—140

electronic means in an election to determine a representative for the purposes of collective bargaining.

NATIONAL MEDIATION BOARD

SALARIES AND EXPENSES

For expenses necessary to carry out the provisions of the Railway Labor Act, including emergency boards appointed by the President, $15,113,000.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

SALARIES AND EXPENSES

For expenses necessary for the Occupational Safety and Health Review Commission, $14,449,000.

RAILROAD RETIREMENT BOARD

DUAL BENEFITS PAYMENTS ACCOUNT

For payment to the Dual Benefits Payments Account, authorized under section 15(d) of the Railroad Retirement Act of 1974, $5,000,000, which shall include amounts becoming available in fiscal year 2026 pursuant to section 224(c)(1)(B) of Public Law 98–76; and in addition, an amount, not to exceed 2 percent of the amount provided herein, shall be available proportional to the amount by which the product of recipients and the average benefit received exceeds the amount available for payment of vested dual benefits: *Provided,* That the total amount provided herein shall be credited in 12 approximately equal amounts on the first day of each month in the fiscal year.

FEDERAL PAYMENTS TO THE RAILROAD RETIREMENT ACCOUNTS

For payment to the accounts established in the Treasury for the payment of benefits under the Railroad Retirement Act for interest earned on unnegotiated checks, $150,000, to remain available through September 30, 2027, which shall be the maximum amount available for payment pursuant to section 417 of Public Law 98–76.

LIMITATION ON ADMINISTRATION

For necessary expenses for the Railroad Retirement Board ("Board") for administration of the Railroad Retirement Act and the Railroad Unemployment Insurance Act, $127,000,000, to be derived in such amounts as determined by the Board from the railroad retirement accounts and from moneys credited to the railroad unemployment insurance administration fund: *Provided,* That notwithstanding section 7(b)(9) of the Railroad Retirement Act this limitation may be used to hire attorneys only through the excepted service: *Provided further,* That the previous proviso shall not change the status under Federal employment laws of any attorney hired by the Railroad Retirement Board prior to January 1, 2013: *Provided further,* That notwithstanding section 7(b)(9) of the Railroad Retirement Act, this limitation may be used to hire students

H. R. 7148—141

attending qualifying educational institutions or individuals who have recently completed qualifying educational programs using current excepted hiring authorities established by the Office of Personnel Management.

### LIMITATION ON THE OFFICE OF INSPECTOR GENERAL

For expenses necessary for the Office of Inspector General for audit, investigatory and review activities, as authorized by the Inspector General Act of 1978, not more than $14,000,000, to be derived from the railroad retirement accounts and railroad unemployment insurance account.

## SOCIAL SECURITY ADMINISTRATION

### PAYMENTS TO SOCIAL SECURITY TRUST FUNDS

For payment to the Federal Old-Age and Survivors Insurance Trust Fund and the Federal Disability Insurance Trust Fund, as provided under sections 201(m) and 1131(b)(2) of the Social Security Act, $15,000,000.

### SUPPLEMENTAL SECURITY INCOME PROGRAM

For carrying out titles XI and XVI of the Social Security Act, section 401 of Public Law 92–603, section 212 of Public Law 93–66, as amended, and section 405 of Public Law 95–216, including payment to the Social Security trust funds for administrative expenses incurred pursuant to section 201(g)(1) of the Social Security Act, $49,452,282,000, to remain available until expended: *Provided,* That any portion of the funds provided to a State in the current fiscal year and not obligated by the State during that year shall be returned to the Treasury: *Provided further,* That not more than $91,000,000 shall be available for research and demonstrations under sections 1110, 1115, and 1144 of the Social Security Act, and remain available through September 30, 2028.

For making, after June 15 of the current fiscal year, benefit payments to individuals under title XVI of the Social Security Act, for unanticipated costs incurred for the current fiscal year, such sums as may be necessary.

For making benefit payments under title XVI of the Social Security Act for the first quarter of fiscal year 2027, $23,500,000,000, to remain available until expended.

### LIMITATION ON ADMINISTRATIVE EXPENSES

#### (INCLUDING TRANSFER OF FUNDS)

For necessary expenses, including the hire and purchase of two passenger motor vehicles, and not to exceed $20,000 for official reception and representation expenses, not more than $14,671,978,000 may be expended, as authorized by section 201(g)(1) of the Social Security Act, from any one or all of the trust funds referred to in such section: *Provided,* That not less than $2,700,000 shall be for the Social Security Advisory Board: *Provided further,* That unobligated balances of funds provided under this paragraph at the end of fiscal year 2026 not needed for fiscal year 2026

H. R. 7148—142

shall remain available until expended to invest in the Social Security Administration information technology and telecommunications hardware and software infrastructure, including related equipment and non-payroll administrative expenses associated solely with this information technology and telecommunications infrastructure, except unobligated balances of funds described in the first proviso of this paragraph at the end of fiscal year 2026 not needed for fiscal year 2026 shall remain available until expended to invest in the Social Security Advisory Board information technology: *Provided further,* That the Commissioner of Social Security shall notify the Committees on Appropriations of the House of Representatives and the Senate prior to making unobligated balances available under the authority in the previous proviso: *Provided further,* That reimbursement to the trust funds under this heading for expenditures for official time for employees of the Social Security Administration pursuant to 5 U.S.C. 7131, and for facilities or support services for labor organizations pursuant to policies, regulations, or procedures referred to in section 7135(b) of such title shall be made by the Secretary of the Treasury, with interest, from amounts in the general fund not otherwise appropriated, as soon as possible after such expenditures are made.

From funds provided under the first paragraph under this heading, not more than $2,397,000,000, to remain available through March 31, 2027, is for the costs associated with continuing disability reviews under titles II and XVI of the Social Security Act, including work-related continuing disability reviews to determine whether earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity, for the cost associated with conducting redeterminations of eligibility under title XVI of the Social Security Act, for the cost of co-operative disability investigation units, and for the cost associated with the prosecution of fraud in the programs and operations of the Social Security Administration by Special Assistant United States Attorneys: *Provided,* That, of such amount, $273,000,000 is provided to meet the terms of a concurrent resolution on the budget and $2,124,000,000 is additional new budget authority specified for purposes of a concurrent resolution on the budget: *Provided further,* That, of the additional new budget authority described in the preceding proviso, up to $24,600,000 may be transferred to the "Office of Inspector General", Social Security Administration, for the cost of jointly operated co-operative disability investigation units: *Provided further,* That such transfer authority is in addition to any other transfer authority provided by law: *Provided further,* That the Commissioner shall provide to the Congress (at the conclusion of the fiscal year) a report on the obligation and expenditure of these funds, similar to the reports that were required by section 103(d)(2) of Public Law 104–121 for fiscal years 1996 through 2002: *Provided further,* That none of the funds described in this paragraph shall be available for transfer or reprogramming except as specified in this paragraph.

In addition, $170,000,000 to be derived from administration fees in excess of $5.00 per supplementary payment collected pursuant to section 1616(d) of the Social Security Act or section 212(b)(3) of Public Law 93–66, which shall remain available until expended: *Provided,* That to the extent that the amounts collected pursuant to such sections in fiscal year 2026 exceed $170,000,000, the

H. R. 7148—143

amounts shall be available in fiscal year 2027 only to the extent provided in advance in appropriations Acts.

In addition, up to $1,000,000 to be derived from fees collected pursuant to section 303(c) of the Social Security Protection Act, which shall remain available until expended.

OFFICE OF INSPECTOR GENERAL

(INCLUDING TRANSFER OF FUNDS)

For expenses necessary for the Office of Inspector General in carrying out the provisions of the Inspector General Act of 1978, $32,000,000, together with not to exceed $82,665,000, to be transferred and expended as authorized by section 201(g)(1) of the Social Security Act from the Federal Old-Age and Survivors Insurance Trust Fund and the Federal Disability Insurance Trust Fund: *Provided,* That $2,000,000 shall remain available until expended for information technology modernization, including related hardware and software infrastructure and equipment, and for administrative expenses directly associated with information technology modernization.

In addition, an amount not to exceed 3 percent of the total provided in this appropriation may be transferred from the "Limitation on Administrative Expenses", Social Security Administration, to be merged with this account, to be available for the time and purposes for which this account is available: *Provided,* That notice of such transfers shall be transmitted promptly to the Committees on Appropriations of the House of Representatives and the Senate at least 15 days in advance of any transfer.

H. R. 7148—144

TITLE V

GENERAL PROVISIONS

(TRANSFER OF FUNDS)

SEC. 501. The Secretaries of Labor, Health and Human Services, and Education are authorized to transfer unexpended balances of prior appropriations to accounts corresponding to current appropriations provided in this Act. Such transferred balances shall be used for the same purpose, and for the same periods of time, for which they were originally appropriated.

SEC. 502. No part of any appropriation contained in this Act shall remain available for obligation beyond the current fiscal year unless expressly so provided herein.

SEC. 503. (a) No part of any appropriation contained in this Act or transferred pursuant to section 4002 of Public Law 111–148 shall be used, other than for normal and recognized executive-legislative relationships, for publicity or propaganda purposes, for the preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television, or video presentation designed to support or defeat the enactment of legislation before the Congress or any State or local legislature or legislative body, except in presentation to the Congress or any State or local legislature itself, or designed to support or defeat any proposed or pending regulation, administrative action, or order issued by the executive branch of any State or local government, except in presentation to the executive branch of any State or local government itself.

(b) No part of any appropriation contained in this Act or transferred pursuant to section 4002 of Public Law 111–148 shall be used to pay the salary or expenses of any grant or contract recipient, or agent acting for such recipient, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the Congress or any State government, State legislature or local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a State, local or Tribal government in policymaking and administrative processes within the executive branch of that government.

(c) The prohibitions in subsections (a) and (b) shall include any activity to advocate or promote any proposed, pending or future Federal, State or local tax increase, or any proposed, pending, or future requirement or restriction on any legal consumer product, including its sale or marketing, including but not limited to the advocacy or promotion of gun control.

SEC. 504. The Secretaries of Labor and Education are authorized to make available not to exceed $28,000 and $20,000, respectively, from funds available for salaries and expenses under titles I and III, respectively, for official reception and representation expenses; the Director of the Federal Mediation and Conciliation Service is authorized to make available for official reception and representation expenses not to exceed $5,000 from the funds available for "Federal Mediation and Conciliation Service, Salaries and Expenses"; and the Chairman of the National Mediation Board

is authorized to make available for official reception and representation expenses not to exceed $5,000 from funds available for "National Mediation Board, Salaries and Expenses".

SEC. 505. When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, all grantees receiving Federal funds included in this Act, including but not limited to State and local governments and recipients of Federal research grants, shall clearly state—

(1) the percentage of the total costs of the program or project which will be financed with Federal money;

(2) the dollar amount of Federal funds for the project or program; and

(3) percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

SEC. 506. (a) None of the funds appropriated in this Act, and none of the funds in any trust fund to which funds are appropriated in this Act, shall be expended for any abortion.

(b) None of the funds appropriated in this Act, and none of the funds in any trust fund to which funds are appropriated in this Act, shall be expended for health benefits coverage that includes coverage of abortion.

(c) The term "health benefits coverage" means the package of services covered by a managed care provider or organization pursuant to a contract or other arrangement.

SEC. 507. (a) The limitations established in the preceding section shall not apply to an abortion—

(1) if the pregnancy is the result of an act of rape or incest; or

(2) in the case where a woman suffers from a physical disorder, physical injury, or physical illness, including a life-endangering physical condition caused by or arising from the pregnancy itself, that would, as certified by a physician, place the woman in danger of death unless an abortion is performed.

(b) Nothing in the preceding section shall be construed as prohibiting the expenditure by a State, locality, entity, or private person of State, local, or private funds (other than a State's or locality's contribution of Medicaid matching funds).

(c) Nothing in the preceding section shall be construed as restricting the ability of any managed care provider from offering abortion coverage or the ability of a State or locality to contract separately with such a provider for such coverage with State funds (other than a State's or locality's contribution of Medicaid matching funds).

(d)(1) None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

(2) In this subsection, the term "health care entity" includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.

H. R. 7148—146

Sec. 508. (a) None of the funds made available in this Act may be used for—

(1) the creation of a human embryo or embryos for research purposes; or

(2) research in which a human embryo or embryos are destroyed, discarded, or knowingly subjected to risk of injury or death greater than that allowed for research on fetuses in utero under 45 CFR 46.204(b) and section 498(b) of the Public Health Service Act (42 U.S.C. 289g(b)).

(b) For purposes of this section, the term "human embryo or embryos" includes any organism, not protected as a human subject under 45 CFR 46 as of the date of the enactment of this Act, that is derived by fertilization, parthenogenesis, cloning, or any other means from one or more human gametes or human diploid cells.

Sec. 509. (a) None of the funds made available in this Act may be used for any activity that promotes the legalization of any drug or other substance included in schedule I of the schedules of controlled substances established under section 202 of the Controlled Substances Act except for normal and recognized executive-congressional communications.

(b) The limitation in subsection (a) shall not apply when there is significant medical evidence of a therapeutic advantage to the use of such drug or other substance or that federally sponsored clinical trials are being conducted to determine therapeutic advantage.

Sec. 510. None of the funds made available in this Act may be used to promulgate or adopt any final standard under section 1173(b) of the Social Security Act providing for, or providing for the assignment of, a unique health identifier for an individual (except in an individual's capacity as an employer or a health care provider), until legislation is enacted specifically approving the standard.

Sec. 511. None of the funds made available in this Act may be obligated or expended to enter into or renew a contract with an entity if—

(1) such entity is otherwise a contractor with the United States and is subject to the requirement in 38 U.S.C. 4212(d) regarding submission of an annual report to the Secretary of Labor concerning employment of certain veterans; and

(2) such entity has not submitted a report as required by that section for the most recent year for which such requirement was applicable to such entity.

Sec. 512. None of the funds made available in this Act may be transferred to any department, agency, or instrumentality of the United States Government, except pursuant to a transfer made by, or transfer authority provided in, this Act or any other appropriation Act.

Sec. 513. None of the funds made available by this Act to carry out the Library Services and Technology Act may be made available to any library covered by paragraph (1) of section 224(f) of such Act, as amended by the Children's Internet Protection Act, unless such library has made the certifications required by paragraph (4) of such section.

Sec. 514. (a) None of the funds provided under this Act, or provided under previous appropriations Acts to the agencies funded by this Act that remain available for obligation or expenditure

in fiscal year 2026, or provided from any accounts in the Treasury of the United States derived by the collection of fees available to the agencies funded by this Act, shall be available for obligation or expenditure through a reprogramming of funds that—

(1) creates new programs;

(2) eliminates a program, project, or activity;

(3) increases funds or personnel by any means for any project or activity for which funds have been denied or restricted;

(4) relocates an office or employees;

(5) reorganizes or renames offices;

(6) reorganizes programs or activities; or

(7) contracts out or privatizes any functions or activities presently performed by Federal employees;

unless the Committees on Appropriations of the House of Representatives and the Senate are consulted 15 days in advance of such reprogramming or of an announcement of intent relating to such reprogramming, whichever occurs earlier, and are notified in writing 10 days in advance of such reprogramming.

(b) None of the funds provided under this Act, or provided under previous appropriations Acts to the agencies funded by this Act that remain available for obligation or expenditure in fiscal year 2026, or provided from any accounts in the Treasury of the United States derived by the collection of fees available to the agencies funded by this Act, shall be available for obligation or expenditure through a reprogramming of funds in excess of $500,000 or 10 percent, whichever is less, that—

(1) augments existing programs, projects (including construction projects), or activities;

(2) reduces by 10 percent funding for any existing program, project, or activity, or numbers of personnel by 10 percent as approved by Congress; or

(3) results from any general savings from a reduction in personnel which would result in a change in existing programs, activities, or projects as approved by Congress;

unless the Committees on Appropriations of the House of Representatives and the Senate are consulted 15 days in advance of such reprogramming or of an announcement of intent relating to such reprogramming, whichever occurs earlier, and are notified in writing 10 days in advance of such reprogramming.

SEC. 515. (a) None of the funds made available in this Act may be used to request that a candidate for appointment to a Federal scientific advisory committee disclose the political affiliation or voting history of the candidate or the position that the candidate holds with respect to political issues not directly related to and necessary for the work of the committee involved.

(b) None of the funds made available in this Act may be used to disseminate information that is deliberately false or misleading.

SEC. 516. Within 45 days of enactment of this Act, each department and related agency funded through this Act shall submit an operating plan that details at the program, project, and activity level any funding allocations for fiscal year 2026 that are different than those specified in this Act, the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act) or the fiscal year 2026 budget request.

SEC. 517. The Secretaries of Labor, Health and Human Services, and Education shall each prepare and submit to the Committees on Appropriations of the House of Representatives and the Senate a report on the number and amount of contracts, grants, and cooperative agreements exceeding $500,000, individually or in total for a particular project, activity, or programmatic initiative, in value and awarded by the Department on a non-competitive basis during each quarter of fiscal year 2026, but not to include grants awarded on a formula basis or directed by law. Such report shall include the name of the contractor or grantee, the amount of funding, the governmental purpose, including a justification for issuing the award on a non-competitive basis. Such report shall be transmitted to the Committees within 30 days after the end of the quarter for which the report is submitted.

SEC. 518. None of the funds appropriated in this Act shall be expended or obligated by the Commissioner of Social Security, for purposes of administering Social Security benefit payments under title II of the Social Security Act, to process any claim for credit for a quarter of coverage based on work performed under a social security account number that is not the claimant's number and the performance of such work under such number has formed the basis for a conviction of the claimant of a violation of section 208(a)(6) or (7) of the Social Security Act.

SEC. 519. None of the funds appropriated by this Act may be used by the Commissioner of Social Security or the Social Security Administration to pay the compensation of employees of the Social Security Administration to administer Social Security benefit payments, under any agreement between the United States and Mexico establishing totalization arrangements between the social security system established by title II of the Social Security Act and the social security system of Mexico, which would not otherwise be payable but for such agreement.

SEC. 520. (a) None of the funds made available in this Act may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography.

(b) Nothing in subsection (a) shall limit the use of funds necessary for any Federal, State, Tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities.

SEC. 521. For purposes of carrying out Executive Order 13589, Office of Management and Budget Memorandum M–12–12 dated May 11, 2012, and requirements contained in the annual appropriations bills relating to conference attendance and expenditures:

(1) the operating divisions of HHS shall be considered independent agencies; and

(2) attendance at and support for scientific conferences shall be tabulated separately from and not included in agency totals.

SEC. 522. Federal agencies funded under this Act shall clearly state within the text, audio, or video used for advertising or educational purposes, including emails or Internet postings, that the communication is printed, published, or produced and disseminated at United States taxpayer expense. The funds used by a Federal agency to carry out this requirement shall be derived from amounts made available to the agency for advertising or other communications regarding the programs and activities of the agency.

SEC. 523. Not later than 30 days after the end of each calendar quarter, beginning with the first month of fiscal year 2026 the Departments of Labor, Health and Human Services and Education and the Social Security Administration shall provide the Committees on Appropriations of the House of Representatives and Senate a report on the status of balances of appropriations: *Provided,* That for balances that are unobligated and uncommitted, committed, and obligated but unexpended, the monthly reports shall separately identify the amounts attributable to each source year of appropriation (beginning with fiscal year 2012, or, to the extent feasible, earlier fiscal years) from which balances were derived.

SEC. 524. The Departments of Labor, Health and Human Services, and Education and the Corporation for National and Community Service shall notify the Committees on Appropriations of the House of Representatives and the Senate not less than 3 full business days prior to announcing or providing notice of—

(1) any new or non-competing continuation grant, including supplements, issued at the discretion of such Departments (other than emergency response grants at any time of the year or for grant awards made during the last 10 business days of the fiscal year, or if applicable, of the program year); and

(2) the termination or non-continuation of any grant, including a short description of the reason for the termination or non-continuation.

SEC. 525. Notwithstanding any other provision of this Act, no funds appropriated in this Act shall be used to purchase sterile needles or syringes for the hypodermic injection of any illegal drug: *Provided,* That such limitation does not apply to the use of funds for elements of a program other than making such purchases if the relevant State or local health department, in consultation with the Centers for Disease Control and Prevention, determines that the State or local jurisdiction, as applicable, is experiencing, or is at risk for, a significant increase in hepatitis infections or an HIV outbreak due to injection drug use, and such program is operating in accordance with State and local law.

SEC. 526. Each department and related agency funded through this Act shall provide answers to questions submitted for the record by members of the Committee within 45 business days after receipt.

SEC. 527. Of amounts deposited in the Child Enrollment Contingency Fund under section 2104(n)(2) of the Social Security Act and the income derived from investment of those funds pursuant to section 2104(n)(2)(C) of that Act, $12,340,000,000 shall not be available for obligation in this fiscal year.

(RESCISSION)

SEC. 528. Of the unobligated balances of amounts made available in section 10301(1)(A)(iii) of Public Law 117–169, $11,661,000,000 are hereby rescinded.

SEC. 529. (a) This section applies to: (1) the Administration for Children and Families in the Department of Health and Human Services; and (2) the Chief Evaluation Office and the statistical-related cooperative and interagency agreements and contracting activities of the Bureau of Labor Statistics in the Department of Labor.

H. R. 7148—150

(b) Amounts made available under this Act which are either appropriated, allocated, advanced on a reimbursable basis, or transferred to the functions and organizations identified in subsection (a) for research, evaluation, or statistical purposes shall be available for obligation through September 30, 2030: *Provided*, That when an office referenced in subsection (a) receives research and evaluation funding from multiple appropriations, such offices may use a single Treasury account for such activities, with funding advanced on a reimbursable basis.

(c) Amounts referenced in subsection (b) that are unexpended at the time of completion of a contract, grant, or cooperative agreement may be deobligated and shall immediately become available and may be reobligated in that fiscal year or the subsequent fiscal year for the research, evaluation, or statistical purposes for which such amounts are available.

(RESCISSION)

SEC. 530. Of the unobligated balances of funds made available by sections 2023, 2206, 2301, 2302, 2303, 2401, 2402, 2403, 2404, 2501, 2502, 2601, 2602, 2603, 2605, 2701, 2702, 2703, 2704, 2705, 2706, 2707, 2708, 2709, 2710, 2711, 2712, 2713, 2904, 2912, 3101, and 9911 of the American Rescue Plan Act of 2021 (Public Law 117–2), $2,000,000,000 are hereby rescinded: *Provided,* That not later than 60 days after the date of enactment of this Act, the Secretary of Health and Human Services shall submit to the Committees on Appropriations of the House of Representatives and the Senate a report specifying the unobligated balances rescinded pursuant to this section by both account and amount from each applicable appropriation in Public Law 117–2.

This division may be cited as the "Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2026".

H. R. 7148—151

## DIVISION D—TRANSPORTATION, HOUSING AND URBAN DEVELOPMENT, AND RELATED AGENCIES APPROPRIATIONS ACT, 2026

### TITLE I

### DEPARTMENT OF TRANSPORTATION

#### OFFICE OF THE SECRETARY

##### SALARIES AND EXPENSES

###### (INCLUDING TRANSFER OF FUNDS)

For necessary expenses of the Office of the Secretary, $187,344,000, to remain available until September 30, 2027: *Provided,* That of the sums appropriated under this heading—

(1) $3,764,000 shall be available for the immediate Office of the Secretary;

(2) $1,348,000 shall be available for the immediate Office of the Deputy Secretary;

(3) $27,780,000 shall be available for the Office of the General Counsel: *Provided,* That the Secretary of Transportation (referred to in this title as "the Secretary") shall report to the House and Senate Committees on Appropriations on the implementation of all sections under title V of the FAA Reauthorization Act of 2024 (Public Law 118–63) not later than 90 days after enactment of this Act;

(4) $21,358,000 shall be available for the Office of the Under Secretary of Transportation for Policy, of which $5,000,000 is for the Office for Multimodal Freight Infrastructure and Policy: *Provided,* That the Secretary must obtain reprogramming approval from the House and Senate Committees on Appropriations under section 405 of this Act prior to executing the authorities of section 118(g)(2)–(3) of title 49, United States Code;

(5) $21,505,000 shall be available for the Office of the Assistant Secretary for Budget and Programs;

(6) $3,807,000 shall be available for the Office of the Assistant Secretary for Governmental Affairs;

(7) $16,181,000 shall be available for the Office of the Assistant Secretary for Administration;

(8) $5,664,000 shall be available for the Office of Public Affairs and Public Engagement;

(9) $2,332,000 shall be available for the Office of the Executive Secretariat;

(10) $19,388,000 shall be available for the Office of Intelligence, Security, and Emergency Response;

(11) $1,707,000 shall be available for the Office of the Chief Information Officer;

(12) $1,517,000 shall be available for the Office of Tribal Government Affairs; and

(13) $60,993,000 shall be available for shared services as authorized in section 327 of title 49, United States Code, for the Office of the Secretary that would otherwise be provided by the Working Capital Fund, in addition to amounts otherwise available for such purposes:

*Provided further,* That the Secretary is authorized to transfer funds appropriated under this heading among the purposes specified in the first proviso under this heading: *Provided further,* That such transfers combined shall not increase or decrease the amount appropriated for any purpose specified in the first proviso under this heading by more than 7 percent: *Provided further,* That notice of any change in funding greater than 7 percent shall be submitted for approval to the House and Senate Committees on Appropriations not later than 7 business days in advance of any such change: *Provided further,* That not to exceed $70,000 shall be for allocation within the Department for official reception and representation expenses as the Secretary may determine: *Provided further,* That notwithstanding any other provision of law, there may be credited to this appropriation up to $2,500,000 in funds received in user fees.

RESEARCH AND TECHNOLOGY

For necessary expenses related to the Office of the Assistant Secretary for Research and Technology, $74,471,000, of which $56,000,000 shall remain available until expended: *Provided,* That of such amounts that are available until expended, $9,000,000 shall be for necessary expenses of the Advanced Research Projects Agency—Infrastructure (ARPA–I) as authorized by section 119 of title 49, United States Code: *Provided further,* That within the funds made available under the preceding proviso, not less than $7,000,000 shall be available for research on durability, resiliency, and sustainability of bridges and other infrastructure and shall be directed to an accredited university of higher education in the northeast United States that has experience leading a regional university transportation center and a proven record of developing, patenting, deploying, and commercializing innovative composite materials and technologies for bridge and other transportation applications, as well as conducting research and developing prototypes using very large-scale polymer-based additive manufacturing: *Provided further,* That of such amounts that are available until expended, $4,000,000 shall be for the Highly Automated Systems Safety Center of Excellence as authorized in section 105 of title I of division H of the Further Consolidated Appropriations Act, 2020 (Public Law 116–94): *Provided further,* That of such amounts that are available until expended, $3,000,000 shall be for activities relating to complementary positioning, navigation, and timing technologies demonstrations as identified in the U.S. Department of Transportation Complementary PNT Action Plan (March 2024): *Provided further,* That of such amounts that are available until expended, $10,000,000 shall be for the drone infrastructure inspection grant program authorized in section 912 of Public Law 118–63: *Provided further,* That, notwithstanding subsection (g)(2) of such section 912, amounts made available under section 106(k) of title 49, United States Code, shall not be available to carry out such program: *Provided further,* That of amounts made available for the drone infrastructure inspection grant program, $1,000,000 shall be available for administrative expenses: *Provided further,* That of such amounts that are available until expended, $30,000,000 shall be for research on transportation resilience and nuclear technology and shall be directed, without competition, to a university of higher education, as defined under 20 U.S.C. 1067(q)(1), that

H. R. 7148—153

has a nuclear engineering program and experience as a consortium member of a university transportation center that conducts research on transportation cybersecurity and resiliency: *Provided further,* That there may be credited to this appropriation, to be available until expended, funds received from States, counties, municipalities, other public authorities, and private sources for expenses incurred for training: *Provided further,* That any reference in law, regulation, judicial proceedings, or elsewhere to the Research and Innovative Technology Administration shall continue to be deemed to be a reference to the Office of the Assistant Secretary for Research and Technology of the Department of Transportation.

NATIONAL INFRASTRUCTURE INVESTMENTS

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses to carry out a local and regional project assistance grant program under section 6702 of title 49, United States Code, $145,000,000, to remain available until expended: *Provided,* That section 6702(f)(2) of title 49, United States Code, shall not apply to amounts made available under this heading in this Act: *Provided further,* That of the amounts made available under this heading in this Act, not less than 5 percent shall be awarded to projects in historically disadvantaged communities or areas of persistent poverty as defined under section 6702(a)(1) of title 49, United States Code: *Provided further,* That grants awarded under this heading in this Act for eligible projects for planning, preparation, or design shall not be subject to a minimum grant size: *Provided further,* That in distributing amounts made available under this heading in this Act, the Secretary shall take such measures so as to ensure an equitable geographic distribution of funds, an appropriate balance in addressing the needs of urban and rural areas, including Tribal areas, and the investment in a variety of transportation modes: *Provided further,* That for amounts made available under this heading in this Act, the Secretary shall give priority to projects that require a contribution of Federal funds in order to complete an overall financing package: *Provided further,* That section 6702(f)(1) of title 49, United States Code, shall not apply to amounts made available under this heading in this Act: *Provided further,* That of the amounts awarded under this heading in this Act, not more than 50 percent shall be allocated for eligible projects located in rural areas and not more than 50 percent shall be allocated for eligible projects located in urbanized areas: *Provided further,* That for the purpose of determining if an award for planning, preparation, or design under this heading in this Act is an urban award, the project location is the location of the project being planned, prepared, or designed: *Provided further,* That the Secretary may retain up to 2 percent of the amounts made available under this heading in this Act, and may transfer portions of such amounts to the Administrators of the Federal Aviation Administration, the Federal Highway Administration, the Federal Transit Administration, the Federal Railroad Administration and the Maritime Administration to fund the award and oversight of grants and credit assistance made under the program authorized under section 6702 of title 49, United States Code: *Provided further,* That for amounts made available under this heading in this Act, the Secretary shall consider and award projects

based solely on the selection criteria as identified under section 6702(d)(3) and (d)(4) of title 49, United States Code.

NATIONAL SURFACE TRANSPORTATION AND INNOVATIVE FINANCE BUREAU

For necessary expenses of the National Surface Transportation and Innovative Finance Bureau as authorized by 49 U.S.C. 116, $9,250,000, to remain available until expended: *Provided,* That the Secretary may collect and spend fees, as authorized by title 23, United States Code, to cover the costs of services of expert firms, including counsel, in the field of municipal and project finance to assist in the underwriting and servicing of Federal credit instruments and all or a portion of the costs to the Federal Government of servicing such credit instruments: *Provided further,* That such fees are available until expended to pay for such costs: *Provided further,* That such amounts are in addition to other amounts made available for such purposes and are not subject to any obligation limitation or the limitation on administrative expenses under section 608 of title 23, United States Code.

RURAL AND TRIBAL INFRASTRUCTURE ADVANCEMENT

For necessary expenses to carry out rural and Tribal infrastructure advancement as authorized in section 21205 of Public Law 117–58, $10,000,000, to remain available until September 30, 2028: *Provided,* That the Secretary may enter into cooperative agreements with philanthropic entities, non-profit organizations, other Federal agencies, State or local governments and their agencies, Indian Tribes, or other technical assistance providers, to provide such technical assistance, planning, and capacity building to State, local, or Tribal governments, United States territories, metropolitan planning organizations, transit agencies, or other political subdivisions of State or local governments.

RAILROAD REHABILITATION AND IMPROVEMENT FINANCING PROGRAM

The Secretary is authorized to issue direct loans and loan guarantees pursuant to chapter 224 of title 49, United States Code, and such authority shall exist as long as any such direct loan or loan guarantee is outstanding.

FINANCIAL MANAGEMENT CAPITAL

For necessary expenses for upgrading and enhancing the Department of Transportation's financial systems and re-engineering business processes, $5,000,000, to remain available through September 30, 2027.

CYBER SECURITY INITIATIVES

For necessary expenses for cyber security initiatives, including necessary upgrades to network and information technology infrastructure, improvement of identity management and authentication capabilities, securing and protecting data, implementation of Federal cyber security initiatives, and implementation of enhanced security controls on agency computers and mobile devices, $60,000,000, to remain available until September 30, 2027.

H. R. 7148—155

OFFICE OF CIVIL RIGHTS

For necessary expenses of the Office of Civil Rights, $11,761,000.

TRANSPORTATION PLANNING, RESEARCH, AND DEVELOPMENT

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses for conducting transportation planning, research, systems development, development activities, and making grants, $32,043,000, to remain available until expended: *Provided,* That of such amount, $5,436,000 shall be for necessary expenses of the Interagency Infrastructure Permitting Improvement Center (IIPIC): *Provided further,* That there may be transferred to this appropriation, to remain available until expended, amounts transferred from other Federal agencies for expenses incurred under this heading for IIPIC activities not related to transportation infrastructure: *Provided further,* That the tools and analysis developed by the IIPIC shall be available to other Federal agencies for the permitting and review of major infrastructure projects not related to transportation only to the extent that other Federal agencies provide funding to the Department in accordance with the preceding proviso: *Provided further,* That of the amounts made available under this heading, $9,647,000 shall be for the purposes, and in the amounts, specified for Community Project Funding/Congressionally Directed Spending in the table entitled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That amounts made available in the preceding proviso for such purposes shall not diminish or prejudice any application or geographic region for other discretionary grant or loan awards made by the Department of Transportation: *Provided further,* That of the amounts made available under this heading, $2,000,000 shall be made available for an independent review of airspace design, civil-military coordination, and operational safety in the National Capital Region, with particular focus on airspace activities at Ronald Reagan Washington National Airport, as specified under the paragraph entitled "Flight 5342" in Senate Report 119–47.

WORKING CAPITAL FUND

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses for operating costs and capital outlays of the Working Capital Fund as authorized in section 327 of title 49, United States Code, not to exceed $764,965,000, shall be paid from appropriations made available to the Department of Transportation: *Provided,* That such services shall be provided on a competitive basis to entities within the Department of Transportation: *Provided further,* That the limitation under this heading on operating expenses shall not apply to entities external to the Department of Transportation or for funds provided in Public Law 117–58: *Provided further,* That no funds made available by this Act to an agency of the Department shall be transferred to the Working Capital Fund without majority approval of the Working Capital Fund Steering Committee and approval of the Secretary: *Provided*

*further,* That no assessments may be levied against any program, budget activity, subactivity, or project funded by this Act unless notice of such assessments and the basis therefor are presented to the House and Senate Committees on Appropriations and are approved by such Committees: *Provided further,* That the Secretary may provide non-commodity information technology and procurement services in a consolidated or shared manner for operating administrations through the Working Capital Fund: *Provided further,* That the preceding proviso shall not apply to the Federal Aviation Administration, the Great Lakes St. Lawrence Seaway Development Corporation, and the Office of Inspector General: *Provided further,* That an operating administration may determine that certain non-commodity information technology and procurement services do not provide a direct benefit to the operating administration and shall not be required to obligate funds appropriated by this Act to the Office of the Secretary pursuant to section 188 of this Act: *Provided further,* That if the determination in the preceding proviso concludes that non-commodity information technology and procurement services do not provide a direct benefit to the operating administration, those services shall remain within the operating administration: *Provided further,* That not less than 30 days prior to using the authority provided in the preceding four provisos, the Secretary shall provide the House and Senate Committees on Appropriations a plan describing the non-commodity information technology and procurement services consolidated or shared through the Working Capital Fund: *Provided further,* That the Secretary shall provide monthly briefings to the House and Senate Committees on Appropriations on all activities relating to non-commodity information technology and procurement services as authorized under this heading, including: (1) the amount of funding participating operating administrations provide the Working Capital Fund for programming and full time equivalent positions, including reimbursable and non-reimbursable details, to support non-commodity information technology and procurement services as authorized under this heading; and (2) the number of full time equivalent positions in the Office of the Chief Information Officer within the Office of the Secretary and the Office of the Assistant Secretary for Administration within the Office of the Secretary to support non-commodity information technology and procurement services as authorized under this heading: *Provided further,* That the Secretary shall include funding for programming and full time equivalent positions to support non-commodity information technology and procurement services, as authorized under this heading, in the congressional budget justification for fiscal year 2027 for the Working Capital Fund, the Office of the Chief Information Officer within the Office of the Secretary, the Office of the Assistant Secretary for Administration within the Office of the Secretary, and each participating operating administration: *Provided further,* That unless otherwise specified under this heading, the Working Capital Fund shall only deliver services consisting of administration and commodity information technology: *Provided further,* That the departmental consolidation of activities including human resources, governmental affairs, public affairs and public engagement, and civil rights in the Working Capital Fund are prohibited: *Provided further,* That amounts within the Working Capital Fund are not available to provide services not specifically authorized under this heading.

H. R. 7148—157

SMALL AND DISADVANTAGED BUSINESS UTILIZATION AND OUTREACH

For necessary expenses for small and disadvantaged business utilization and outreach activities, $5,330,000, to remain available until September 30, 2027: *Provided,* That not less than 6 small business transportation resource centers shall be maintained and operated: *Provided further,* That notwithstanding section 332 of title 49, United States Code, such amounts may be used for business opportunities related to any mode of transportation: *Provided further,* That appropriations made available under this heading shall be available for any purpose consistent with prior year appropriations that were made available under the heading "Office of the Secretary—Minority Business Resource Center Program".

PAYMENTS TO AIR CARRIERS

(AIRPORT AND AIRWAY TRUST FUND)

In addition to funds made available from any other source to carry out the essential air service program under sections 41731 through 41742 of title 49, United States Code, $513,637,231, to be derived from the Airport and Airway Trust Fund, to remain available until expended: *Provided,* That in determining between or among carriers competing to provide service to a community, the Secretary may consider the relative subsidy requirements of the carriers: *Provided further,* That basic essential air service minimum requirements shall not include the 15-passenger capacity requirement under section 41732(b)(3) of title 49, United States Code: *Provided further,* That amounts authorized to be distributed for the essential air service program under section 41742(b) of title 49, United States Code, shall be made available immediately from amounts otherwise provided to the Administrator of the Federal Aviation Administration: *Provided further,* That the Administrator may reimburse such amounts from fees credited to the account established under section 45303 of title 49, United States Code: *Provided further,* That, notwithstanding section 41733 of title 49, United States Code, for fiscal year 2026, the requirements established under subparagraphs (B) and (C) of section 41731(a)(1) of title 49, United States Code, shall not apply to maintain eligibility under section 41731 of title 49, United States Code.

ADMINISTRATIVE PROVISIONS—OFFICE OF THE SECRETARY OF TRANSPORTATION

(INCLUDING RESCISSIONS)

(INCLUDING TRANSFER OF FUNDS)

SEC. 101. None of the funds made available by this Act to the Department of Transportation may be obligated for the Office of the Secretary of Transportation to approve assessments or reimbursable agreements pertaining to funds appropriated to the operating administrations in this Act, except for activities underway on the date of enactment of this Act, unless such assessments or agreements have completed the normal reprogramming process for congressional notification.

SEC. 102. The Secretary shall post on the website of the Department of Transportation a schedule of all meetings of the Council

H. R. 7148—158

on Credit and Finance, including the agenda for each meeting, and require the Council on Credit and Finance to record the decisions and actions of each meeting.

SEC. 103. In addition to authority provided by section 327 of title 49, United States Code, the Department's Working Capital Fund is authorized to provide partial or full payments in advance and accept subsequent reimbursements from all Federal agencies from available funds for transit benefit distribution services that are necessary to carry out the Federal transit pass transportation fringe benefit program under Executive Order No. 13150 and section 3049 of SAFETEA–LU (5 U.S.C. 7905 note): *Provided,* That the Department shall maintain a reasonable operating reserve in the Working Capital Fund, to be expended in advance to provide uninterrupted transit benefits to Government employees: *Provided further,* That such reserve shall not exceed 1 month of benefits payable and may be used only for the purpose of providing for the continuation of transit benefits: *Provided further,* That the Working Capital Fund shall be fully reimbursed by each customer agency from available funds for the actual cost of the transit benefit.

SEC. 104. Receipts collected in the Department's Working Capital Fund, as authorized by section 327 of title 49, United States Code, for unused transit and van pool benefits, in an amount not to exceed 10 percent of fiscal year 2026 collections, shall be available until expended in the Department's Working Capital Fund to provide contractual services in support of section 189 of this Act: *Provided,* That obligations in fiscal year 2026 of such collections shall not exceed $1,000,000.

SEC. 105. None of the funds in this title may be obligated or expended for retention or senior executive bonuses for an employee of the Department of Transportation without the prior written approval of the Assistant Secretary for Administration.

SEC. 106. In addition to authority provided by section 327 of title 49, United States Code, the Department's Administrative Working Capital Fund is hereby authorized to transfer information technology equipment, software, and systems from departmental sources or other entities and collect and maintain a reserve at rates which will return full cost of transferred assets.

SEC. 107. None of the funds provided in this Act to the Department of Transportation may be used to provide credit assistance unless not less than 3 days before any application approval to provide credit assistance under sections 603 and 604 of title 23, United States Code, the Secretary provides notification in writing to the following committees: the House and Senate Committees on Appropriations; the Committee on Environment and Public Works and the Committee on Banking, Housing and Urban Affairs of the Senate; and the Committee on Transportation and Infrastructure of the House of Representatives: *Provided,* That such notification shall include, but not be limited to, the name of the project sponsor; a description of the project; whether credit assistance will be provided as a direct loan, loan guarantee, or line of credit; and the amount of credit assistance.

SEC. 108. (a) Amounts made available to the Secretary of Transportation or the Department of Transportation's operating administrations in this Act for the costs of award, administration, or oversight of financial assistance under the programs identified in subsection (c) may be transferred to the account identified in section 801 of division J of Public Law 117–58, as amended by

H. R. 7148—159

section 425 of title IV of division L of Public Law 117–103, to remain available until expended, for the necessary expenses of award, administration, or oversight of any financial assistance programs in the Department of Transportation.

(b) Amounts transferred under the authority in this section are available in addition to amounts otherwise available for such purpose.

(c) The programs from which funds made available under this Act may be transferred under subsection (a) are—

(1) the local and regional project assistance program under section 6702 of title 49, United States Code;

(2) the university transportation centers program under section 5505 of title 49, United States Code; and

(3) the drone infrastructure inspection grant program as authorized by section 912 of title IX of Public Law 118–63.

Sec. 109. The Secretary of Transportation may transfer amounts awarded to a federally recognized Tribe under a funding agreement entered into under part 29 of title 49, Code of Federal Regulations, from the Department of Transportation's operating administrations to the Office of Tribal Government Affairs: *Provided,* That any amounts retroceded or reassumed under such part may be transferred back to the appropriate operating administration.

Sec. 109A. For amounts provided for this fiscal year and prior fiscal years, section 24112(c)(2)(B) of Public Law 117–58 shall be applied by substituting "30 percent" for "40 percent": *Provided,* That if the Secretary determines that there are insufficient meritworthy applications for the amounts provided for fiscal year 2022 through fiscal year 2026 in division J of Public Law 117–58 for competitive grants as authorized in section 24112 of division B of Public Law 117–58 to meet the requirement in section 24112(c)(2)(B) for a fiscal year, the Secretary shall use the unutilized amounts to make other grants as authorized in section 24112 of division B of Public Law 117–58: *Provided further,* That amounts repurposed pursuant to this section shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5.

Sec. 109B. The remaining unobligated balances, as of September 30, 2026, from amounts made available for "Department of Transportation—Office of the Secretary—National Infrastructure Investments" in division J of Public Law 117–58 for local and regional project assistance under section 6702 of title 49, United States Code, for fiscal year 2022 are hereby permanently rescinded, and an amount of additional new budget authority equivalent to the amount rescinded pursuant to this section is hereby appropriated on September 30, 2026, for an additional amount for fiscal year 2026, to remain available until September 30, 2031, and shall be available, without additional competition, for completing the funding of awards made pursuant to section 6702 of title 49, United States Code, for fiscal year 2022 funding, in addition to other funds as may be available for such purposes: *Provided,* That the amounts rescinded pursuant to this section that were previously designated by the Congress as an emergency requirement pursuant to section 4112(a) of H. Con. Res. 71 (115th Congress), the concurrent resolution on the budget for fiscal year 2018, and to section 251(b) of the Balanced Budget and Emergency Deficit Control Act

of 1985 are designated by the Congress as an emergency requirement pursuant to 4001(a)(1) of S. Con. Res 14 (117th Congress), the concurrent resolution on the budget for fiscal year 2022, and to legislation establishing fiscal year 2026 budget enforcement in the House of Representatives: *Provided further,* That the amount of additional new budget authority is designated by the Congress as being for an emergency requirement pursuant to such section 4001(a) and to legislation establishing fiscal year 2026 budget enforcement in the House of Representatives.

SEC. 109C. None of the funds made available by this or any other Act shall be used to cancel or seek to renegotiate an existing contract under the essential air service program under subchapter II of chapter 417 of title 49, United States Code, before the standard period of rebidding occurring prior to a contract's expiration unless in response to an explicit written request from the EAS Community: *Provided,* That this section shall only apply to existing contracts under which the carrier is in compliance with the contract terms.

SEC. 109D. Of the unobligated balances of funds remaining from—

(1) "Transportation Planning, Research, and Development" account in title I of division A of Public Law 111–117, $108,147.49 is hereby permanently rescinded; and

(2) "Transportation Planning, Research, and Development" account in title I of division F of Public Law 108–199, $744,000 is hereby permanently rescinded.

SEC. 109E. Of the unobligated balances from amounts made available for "Railroad Rehabilitation and Improvement Financing Program" in section 420 of title IV of division G of Public Law 116–6, $25,476 is hereby permanently rescinded.

SEC. 109F. Of the unobligated balances from amounts made available for "Department of Transportation—Office of the Secretary—Salaries and Expenses" in Public Law 119–4, $10,368,826 is hereby permanently rescinded.

SEC. 109G. Of the unobligated balances from amounts made available until expended for "Department of Transportation—Office of the Secretary—Research and Technology" in division L of title I of Public Law 117–103, $1,272,800.79 is hereby permanently rescinded.

FEDERAL AVIATION ADMINISTRATION

OPERATIONS

(AIRPORT AND AIRWAY TRUST FUND)

For necessary expenses of the Federal Aviation Administration (FAA), not otherwise provided for, including operations and research activities related to commercial space transportation, administrative expenses for research and development, establishment of air navigation facilities, the operation (including leasing) and maintenance of aircraft, subsidizing the cost of aeronautical charts and maps sold to the public, the lease or purchase of passenger motor vehicles for replacement only, $13,710,000,000, to remain available until September 30, 2027, of which $13,040,600,000 to be derived from the Airport and Airway Trust Fund: *Provided,* That of the amounts made available under this heading—

(1) not less than $1,842,037,000 shall be available for aviation safety activities;

(2) $10,340,667,000 shall be available for air traffic organization activities;

(3) $41,755,000 shall be available for commercial space transportation activities;

(4) $963,410,000 shall be available for finance and management activities;

(5) $65,813,000 shall be available for NextGen and operations planning activities;

(6) $154,896,000 shall be available for security and hazardous materials safety activities; and

(7) $301,422,000 shall be available for staff offices:

*Provided further,* That of the amounts allocated under the previous proviso—

(A) not less than $379,223,000 shall be for aircraft certification service;

(B) not less than $100,000,000 shall be for the Office of Aerospace Medicine;

(C) not less than $279,200,000 shall be used to fund direct operations of the current air traffic control towers in the contract tower program, including the contract tower cost share program, and any airport that is currently qualified or that will qualify for the program during the fiscal year;

(D) $6,000,000 shall be for the pilot program to convert high activity air traffic control towers operating under the contract tower program to FAA staffed visual flight rules towers, as authorized under section 625 of the FAA Reauthorization Act of 2024, and to prioritize the contract towers as required under section 625(a)(2) of such Act;

(E) not less than $16,000,000 shall be for the Office of Spectrum Engineering;

(F) $6,000,000 shall be for unmanned aircraft system test ranges;

(G) not less than $7,500,000 shall be for the internship program authorized under section 404 of the FAA Reauthorization Act of 2024 (Public Law 118–63);

(H) not less than $1,000,000 shall be for the human intervention motivation study contract and the flight attendant drug and alcohol program contract; and

(I) $3,000,000 shall be for the FAA's veterans' pilot training program:

*Provided further,* That not to exceed 5 percent of any budget activity, except for aviation safety budget activity, may be transferred to any budget activity under this heading: *Provided further,* That no transfer may increase or decrease any appropriation under this heading by more than 5 percent: *Provided further,* That any transfer in excess of 5 percent shall be treated as a reprogramming of funds under section 405 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in that section: *Provided further,* That not later than 45 days after the submission of the budget request, the Administrator of the Federal Aviation Administration shall transmit to Congress an annual update to the report submitted to Congress in December 2004 pursuant to section 221 of the Vision 100-Century of Aviation Reauthorization Act (49 U.S.C. 44506 note): *Provided further,* That not later than 45 days after the submission of the

budget request, the Administrator shall transmit to Congress reports that describe a comprehensive strategy for staffing, hiring, and training of flight standards and aircraft certification staff, and airway transportation system specialists in a format similar to the one utilized for the controller staffing plan, including stated attrition estimates and numerical hiring goals by fiscal year: *Provided further,* That the amounts made available under this heading shall be reduced by $100,000 for each day after 45 days after the submission of the budget request that reports containing the information described in the preceding two provisos have not been transmitted to Congress: *Provided further,* That funds may be used to enter into a grant agreement with a nonprofit standard-setting organization to assist in the development of aviation safety standards: *Provided further,* That none of the funds made available by this Act shall be available for new applicants for the second career training program: *Provided further,* That none of the funds made available by this Act shall be available for the Federal Aviation Administration to finalize or implement any regulation that would promulgate new aviation user fees not specifically authorized by law after the date of the enactment of this Act: *Provided further,* That there may be credited to this appropriation, as offsetting collections, funds received from States, counties, municipalities, foreign authorities, other public authorities, and private sources for expenses incurred in the provision of agency services, including receipts for the maintenance and operation of air navigation facilities, and for issuance, renewal or modification of certificates, including airman, aircraft, and repair station certificates, or for tests related thereto, or for processing major repair or alteration forms: *Provided further,* That not later than 120 days after enactment of this Act, the Administrator shall transmit to the House and Senate Committees on Appropriations a report on all expenditures related to the contract tower program from the most recent fiscal year, including a breakout for administrative costs, contract support expenses, insurance, equipment procured and installed in contract towers, new starts, and aggregate payments for operating the contract towers: *Provided further,* That not later than 180 days after enactment of this Act, the Administrator shall transmit to the House and Senate Committees on Appropriations a report on the FAA's ongoing efforts and future plans to equip contract towers with radar displays and other technology that the FAA believes are necessary to enhance aviation safety: *Provided further,* That none of the funds made available by this Act for aeronautical charting and cartography are available for activities conducted by, or coordinated through, the Working Capital Fund: *Provided further,* That not less than $4,000,000 of amounts made available for staff offices shall be used to establish the Office of the Assistant Administrator for Rulemaking and Regulatory Improvement as authorized under section 106(c) of title 49, United States Code: *Provided further,* That none of the funds appropriated or otherwise made available by this Act or any other Act may be used to eliminate the contract weather observers program at any airport.

H. R. 7148—163

FACILITIES AND EQUIPMENT

(AIRPORT AND AIRWAY TRUST FUND)

For necessary expenses, not otherwise provided for, for acquisition, establishment, technical support services, improvement by contract or purchase, and hire of national airspace systems and experimental facilities and equipment, as authorized under part A of subtitle VII of title 49, United States Code, including initial acquisition of necessary sites by lease or grant; engineering and service testing, including construction of test facilities and acquisition of necessary sites by lease or grant; construction and furnishing of quarters and related accommodations for officers and employees of the Federal Aviation Administration stationed at remote localities where such accommodations are not available; and the purchase, lease, or transfer of aircraft from funds made available under this heading, including aircraft for aviation regulation and certification; to be derived from the Airport and Airway Trust Fund, $4,000,000,000, of which $697,850,000 is for personnel and related expenses and shall remain available until September 30, 2027, and $3,302,150,000 shall remain available until September 30, 2028: *Provided,* That the sums appropriated under this heading in this Act shall be made available for the purposes, and in the amounts, specified for spending in the table entitled "Allocation of FAA Facilities and Equipment Funding in This Act—Fiscal Year 2026" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That the sums appropriated under this heading in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58) shall be made available for the purposes, and in the amounts, specified for spending in the table entitled "Allocation of FAA Facilities and Equipment Funding in the Infrastructure Investment and Jobs Act—Fiscal Year 2026" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That amounts repurposed pursuant to the preceding proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5: *Provided further,* That there may be credited to this appropriation funds received from States, counties, municipalities, other public authorities, and private sources, for expenses incurred in the establishment, improvement, and modernization of national airspace systems: *Provided further,* That not later than 30 days after submission of the budget request, the Secretary of Transportation shall transmit to the Congress an investment plan for the Federal Aviation Administration which includes funding for each budget line item for fiscal years 2027 through 2031, with total funding for each year of the plan constrained to the funding targets for those years as estimated and approved by the Office of Management and Budget: *Provided further,* That section 405 of this Act shall apply to amounts made available under the heading in this Act and in title VIII of the Infrastructure Investment and Jobs Act (division J of Public Law 117–58): *Provided further,* That, notwithstanding subsections (a)(5) and (a)(6) of such section 405, unless prior approval is received from the House and Senate Committees on Appropriations, not to exceed 7 percent of any funding level specified for projects and activities in the tables incorporated by reference

H. R. 7148—164

under this heading may be transferred to any other funding level specified for projects and activities in such tables and no transfer of such funding levels may increase or decrease any funding level in such tables by more than 7 percent.

RESEARCH, ENGINEERING, AND DEVELOPMENT

(AIRPORT AND AIRWAY TRUST FUND)

For necessary expenses, not otherwise provided for, for research, engineering, and development, as authorized under part A of subtitle VII of title 49, United States Code, including construction of experimental facilities and acquisition of necessary sites by lease or grant, $290,000,000, to be derived from the Airport and Airway Trust Fund and to remain available until September 30, 2028: *Provided,* That there may be credited to this appropriation as offsetting collections, funds received from States, counties, municipalities, other public authorities, and private sources, which shall be available for expenses incurred for research, engineering, and development: *Provided further,* That the sums appropriated under this heading shall be made available for the purposes, and in the amounts, specified in the table entitled "Research, Engineering, and Development" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That not to exceed 7 percent of any funding level specified in the table incorporated by reference under this heading included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act)may be transferred to any other funding level specified under this heading included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That no transfer may increase or decrease any funding level by more than 7 percent: *Provided further,* That any transfer in excess of 7 percent shall be treated as a reprogramming of funds under section 405 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in that section: *Provided further,* That of the amounts made available under this heading, $40,000,000, to remain available until expended, shall be for aviation workforce development programs, as authorized under section 625 of the FAA Reauthorization Act of 2018, as amended (49 U.S.C. 40132 note): *Provided further,* That of the amounts set aside under the preceding proviso—

(1) no less than $10,000,000 shall be awarded for manufacturing workforce grants as authorized under section 625 (a)(3) of such Act;

(2) $10,000,000 shall be for not more than two community colleges that are sponsors of a general aviation airport identified in the National Plan of Integrated Airport Systems: *Provided,* That grants awarded under this paragraph for community colleges shall be awarded for an amount not less than $5,000,000 per award: *Provided further,* That the Secretary may award such grants under this subsection notwithstanding section 625(b)(2) of the FAA Reauthorization Act of 2018, as amended (49 U.S.C. 40132 note); and

(3) no less than $20,000,000 shall be awarded to institutions eligible under paragraphs (1) and (3) of section 1067q(a) of title 20, United States Code, and priority shall be given to institutions or consortiums of institutions near commercial aviation manufacturing and military aviation employment opportunities.

GRANTS-IN-AID FOR AIRPORTS

(LIQUIDATION OF CONTRACT AUTHORIZATION)

(LIMITATION ON OBLIGATIONS)

(AIRPORT AND AIRWAY TRUST FUND)

(INCLUDING TRANSFER OF FUNDS)

For liquidation of obligations incurred for grants-in-aid for airport planning and development, and noise compatibility planning and programs as authorized under subchapter I of chapter 471 and subchapter I of chapter 475 of title 49, United States Code, and under other law authorizing such obligations; for procurement, installation, and commissioning of runway incursion prevention devices and systems at airports of such title; for grants authorized under section 41743 of title 49, United States Code; and for inspection activities and administration of airport safety programs, including those related to airport operating certificates under section 44706 of title 49, United States Code, $4,000,000,000, to be derived from the Airport and Airway Trust Fund and to remain available until expended: *Provided,* That none of the amounts made available under this heading shall be available for the planning or execution of programs the obligations for which are in excess of $4,000,000,000, in fiscal year 2026, notwithstanding section 47117(g) of title 49, United States Code: *Provided further,* That none of the amounts made available under this heading shall be available for the replacement of baggage conveyor systems, reconfiguration of terminal baggage areas, or other airport improvements that are necessary to install bulk explosive detection systems: *Provided further,* That notwithstanding section 47109(a) of title 49, United States Code, the Government's share of allowable project costs under paragraph (2) of such section for subgrants or paragraph (3) of such section shall be 95 percent for a project at other than a large or medium hub airport that is a successive phase of a multi-phased construction project for which the project sponsor received a grant in fiscal year 2011 for the construction project: *Provided further,* That notwithstanding any other provision of law, of amounts limited under this heading, not less than $160,000,000 shall be available for administration, $15,000,000 shall be available for the airport cooperative research program, $41,827,000 shall be available for the airport technology research program and of which, $6,000,000 shall be available for the airfield technology program authorized under section 1014 of Public Law 118–63, of which $3,000,000 is for concrete pavement research and $3,000,000 is for asphalt pavement research, and $15,000,000, to remain available until expended, shall be available and transferred to "Office of the Secretary, Salaries and Expenses" to carry out the small community air service development program: *Provided further,* That in addition to airports eligible under section 41743 of title 49,

H. R. 7148—166

United States Code, such program may include the participation of an airport that serves a community or consortium that is not larger than a small hub airport, according to Federal Aviation Administration hub classifications effective at the time the Office of the Secretary issues a request for proposals.

GRANTS-IN-AID FOR AIRPORTS

(INCLUDING TRANSFER OF FUNDS)

For an additional amount for "Grants-In-Aid for Airports", to enable the Secretary of Transportation to make grants for projects as authorized by subchapter 1 of chapter 471 of title 49, United States Code, subchapter 1 of chapter 475 of such title, and section 767 of the FAA Reauthorization Act of 2024 (Public Law 118–63), $577,356,000, to remain available through September 30, 2028: *Provided,* That amounts made available under this heading shall be derived from the general fund, and such funds shall not be subject to apportionment formulas, special apportionment categories, or minimum percentages under chapter 471 of title 49, United States Code: *Provided further,* That the amounts made available under this heading shall not be subject to any limitation on obligations for the Grants-in-Aid for Airports program set forth in any Act: *Provided further*, That of the sums appropriated under this heading—

(1) $542,356,000 shall be made available for the purposes, and in the amounts, specified for Community Project Funding/ Congressionally Directed Spending in the table entitled "Community Project Funding/Congressionally Directed Spending" for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That amounts made available in the preceding proviso for such purposes shall not diminish or prejudice any application or geographic region for other discretionary grant or loan awards made by the Department of Transportation: *Provided further,* That funds made available under this section shall not be subject to or considered under section 47115(j)(3)(B), 47115(j)(3)(C), or 47115(j)(3)(D) of title 49, United States Code; and

(2) up to $35,000,000 shall be made available to the Secretary to distribute as discretionary grants to airports that include, but are not limited to, projects that are eligible under section 47115(j)(3)(D) of title 49, United States Code: *Provided,* That of amounts made available under this heading, $20,000,000 shall be made available for the Secretary to distribute as discretionary grants for airports with scheduled commercial service in calendar year 2024, that serve essential air service markets as reported in October 2024, reported and certified zero dollars total debt at end of year on the form FAA–5100–127 submitted before the date of enactment of this Act for fiscal year 2024, and were allocated an amount under the heading "Grants-in-Aid for Airports" in division B of Public Law 116–136 equal to or less than the amount designated for a regional airport under paragraph (4) under such heading: *Provided further,* That the funds made available under the preceding proviso shall be prioritized for airports participating in the FAA Contract Tower Program:

H. R. 7148—167

*Provided further,* That of the amounts made available under this heading—

(1) $300,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2023, 2024, 2025, and 2026 for personnel, contracting, and other costs to administer and oversee grants (excluding amounts transferred to the Office of Inspector General of the Department of Transportation) under the heading "Federal Aviation Administration—Airport Infrastructure Grants" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58); and

(2) $68,670,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2023, 2024, 2025, and 2026 for personnel, contracting, and other costs to administer and oversee grants (excluding amounts transferred to the Office of Inspector General of the Department of Transportation) under the heading "Federal Aviation Administration—Airport Terminal Program" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58):

*Provided further,* That amounts transferred pursuant to the preceding provisos shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5.

ADMINISTRATIVE PROVISIONS—FEDERAL AVIATION ADMINISTRATION

SEC. 110. None of the funds made available by this Act may be used to compensate in excess of 600 technical staff-years under the federally funded research and development center contract between the Federal Aviation Administration and the Center for Advanced Aviation Systems Development during fiscal year 2026.

SEC. 111. None of the funds made available by this Act shall be used to pursue or adopt guidelines or regulations requiring airport sponsors to provide to the Federal Aviation Administration without cost building construction, maintenance, utilities and expenses, including related accommodation services, or space in airport sponsor-owned buildings for services relating to air traffic control, air navigation, or weather reporting: *Provided,* That the prohibition on the use of funds in this section does not apply to negotiations between the agency and airport sponsors to achieve agreement on "below-market" rates for these items or to grant assurances that require airport sponsors to provide land without cost to the Federal Aviation Administration for air traffic control facilities.

SEC. 112. The Administrator of the Federal Aviation Administration may reimburse amounts made available to satisfy section 41742(a)(1) of title 49, United States Code, from fees credited under section 45303 of title 49, United States Code, and any amount remaining in such account at the close of any fiscal year may be made available to satisfy section 41742(a)(1) of title 49, United States Code, for the subsequent fiscal year.

SEC. 113. Amounts collected under section 40113(e) of title 49, United States Code, shall be credited to the appropriation current at the time of collection, to be merged with and available for the same purposes as such appropriation.

SEC. 114. None of the funds made available by this Act shall be available for paying premium pay under section 5546(a) of title

H. R. 7148—168

5, United States Code, to any Federal Aviation Administration employee unless such employee actually performed work during the time corresponding to such premium pay.

SEC. 115. None of the funds made available by this Act may be obligated or expended for an employee of the Federal Aviation Administration to purchase a store gift card or gift certificate through use of a Government-issued credit card.

SEC. 116. Notwithstanding any other provision of law, none of the funds made available under this Act or any prior Act may be used to implement or to continue to implement any limitation on the ability of any owner or operator of a private aircraft to obtain, upon a request to the Administrator of the Federal Aviation Administration, a blocking of that owner's or operator's aircraft registration number, Mode S transponder code, flight identification, call sign, or similar identifying information from any ground based display to the public that would allow the real-time or near real-time flight tracking of that aircraft's movements, except data made available to a Government agency, for the noncommercial flights of that owner or operator.

SEC. 117. None of the funds made available by this Act shall be available for salaries and expenses of more than nine political and Presidential appointees in the Federal Aviation Administration: *Provided,* That of the nine political and Presidential appointee positions in the Federal Aviation Administration, not less than one position shall be within each of the following offices and no appointee shall be in any other office: the Office of the Administrator, the Office of the Deputy Administrator, the Office of the General Counsel, the Office of Government and Industry Affairs, the Office of Communications, the Office of Airports, and the Office for Policy, International Affairs, and Environment.

SEC. 118. None of the funds made available by this Act may be used to increase fees pursuant to section 44721 of title 49, United States Code, until the Federal Aviation Administration provides to the House and Senate Committees on Appropriations a report that justifies all fees related to aeronautical navigation products and explains how such fees are consistent with Executive Order No. 13642.

SEC. 119. None of the funds made available by this Act may be used to close a regional operations center of the Federal Aviation Administration or reduce its services or personnel unless the Administrator notifies the House and Senate Committees on Appropriations not less than 90 full business days in advance.

SEC. 119A. None of the funds made available by or limited by this Act may be used to change weight restrictions or prior permission rules at Teterboro airport in Teterboro, New Jersey.

SEC. 119B. None of the funds made available by this Act may be used by the Administrator of the Federal Aviation Administration to withhold from consideration and approval any new application for participation in the contract tower program, or for reevaluation of cost-share program participants so long as the Federal Aviation Administration has received an application from the airport, and so long as the Administrator determines such tower is eligible using the factors set forth in Federal Aviation Administration published establishment criteria.

SEC. 119C. None of the funds made available by this Act may be used to open, close, redesignate as a lesser office, or reorganize a regional office, the aeronautical center, or the technical

H. R. 7148—169

center unless the Administrator does so in compliance with section 405 of this Act.

SEC. 119D. Notwithstanding subsection (a)(7) of section 405, activities creating, reorganizing, or restructuring an organizational unit of the Federal Aviation Administration are not subject to the requirements of section 405 unless those activities would change the organization chart provided as an exhibit to section 1 of the President's Budget justification.

SEC. 119E. For an additional amount for "Grants-in-aid for Airports", up to $3,500,000 shall be available through September 30, 2028, for necessary expenses, including an independent verification regime, to provide reimbursement to airport sponsors that do not provide gateway operations and providers of general aviation ground support services, or other aviation tenants, located at those airports closed during a temporary flight restriction (TFR) for any residence of the President that is designated or identified to be secured by the United States Secret Service, and for direct and incremental financial losses incurred while such airports are closed solely due to the actions of the Federal Government: *Provided,* That such amounts shall be derived from balances remaining from amounts appropriated for such purposes in prior Acts: *Provided further,* That such amounts shall not be subject to any limitation on obligations for the Grants-in-Aid for Airports program set forth in any Act: *Provided further,* That no funds shall be obligated or distributed to airport sponsors that do not provide gateway operations and providers of general aviation ground support services until an independent audit is completed: *Provided further,* That losses incurred as a result of violations of law, or through fault or negligence, of such operators and service providers or of third parties (including airports) are not eligible for reimbursements: *Provided further,* That obligation and expenditure of funds are conditional upon full release of the United States Government for all claims for financial losses resulting from such actions.

SEC. 119F. Section 44502(e) of title 49, United States Code, shall be applied by inserting the following after paragraph (4):

"(5) LIMITATIONS.—

"(A) SYSTEMS OR EQUIPMENT.—Eligible air traffic systems or equipment identified in subparagraphs (A) through (C) of paragraph (3) of this subsection to be transferred to the Administrator under this subsection must have been purchased by the transferor airport on or after October 5, 2018.

"(B) OTHER SYSTEMS OR EQUIPMENT.—Eligible air traffic systems or equipment identified in subparagraph (D) of paragraph (3) of this subsection to be transferred to the Administrator under this subsection must have been purchased by the transferor airport on or after October 1, 2024.

"(6) AIRPORTS CLASSIFIED AS A BASIC OR LOCAL GENERAL AVIATION AIRPORT.—An airport that is categorized as a basic or local general aviation airport under the most recently published national plan of integrated airport systems under section 47103 may only transfer an eligible air traffic system or equipment under this subsection in accordance with the exception provided in paragraph (4) if such system or equipment was purchased by the transferor airport on or after October 1, 2024.".

H. R. 7148—170

SEC. 119G. None of the funds in this or any other Act shall be used to plan, design, or implement the privatization or separation of the air traffic organization functions of the Federal Aviation Administration.

SEC. 119H. None of the funds appropriated or otherwise made available by this or any other Act may be used for the construction of a new Air Traffic Control Training Academy except for the Federal Aviation Administration's existing Training Academy located at the Mike Monroney Aeronautical Center.

SEC. 119I. Notwithstanding section 40122(c) of title 49, United States Code, for this year and thereafter, the Administrator of the Federal Aviation Administration, in consultation with the Federal Air Surgeon, may increase the annual rate of basic pay for positions in the Office of Aerospace Medicine requiring a medical degree up to the annual compensation paid under section 102 of title 3, United States Code.

SEC. 119J. The Administrator of the Federal Aviation Administration is directed to provide a spend plan and a briefing within 30 days of enactment of this Act, and each month thereafter during fiscal year 2026, to the House and Senate Committees on Appropriations on all activities and efforts funded by this Act and section 40003 of Public Law 119–21 for the Federal Aviation Administration's air traffic control modernization efforts: *Provided,* That the Administrator shall make available for each briefing the Federal Aviation Administration's Chief Financial Officer and the Assistant Administrator for Policy, International Affairs, and Environment, and the Federal Aviation Administration's Air Traffic Organization's Chief Operating Officer and Chief Technology Officer.

FEDERAL HIGHWAY ADMINISTRATION

LIMITATION ON ADMINISTRATIVE EXPENSES

(HIGHWAY TRUST FUND)

(INCLUDING TRANSFER OF FUNDS)

Not to exceed $504,187,977 together with advances and reimbursements received by the Federal Highway Administration, shall be obligated for necessary expenses for administration and operation of the Federal Highway Administration: *Provided,* That in addition, $3,248,000 shall be transferred to the Appalachian Regional Commission in accordance with section 104(a) of title 23, United States Code.

FEDERAL-AID HIGHWAYS

(LIMITATION ON OBLIGATIONS)

(HIGHWAY TRUST FUND)

Funds available for the implementation or execution of authorized Federal-aid highway and highway safety construction programs shall not exceed total obligations of $62,657,105,821 for fiscal year 2026: *Provided,* That the limitation on obligations under this heading shall only apply to contract authority authorized from the Highway Trust Fund (other than the Mass Transit Account), unless otherwise specified in law.

H. R. 7148—171

(LIQUIDATION OF CONTRACT AUTHORIZATION)

(HIGHWAY TRUST FUND)

For the payment of obligations incurred in carrying out authorized Federal-aid highway and highway safety construction programs, $63,396,105,821 shall be derived from the Highway Trust Fund (other than the Mass Transit Account), to remain available until expended.

HIGHWAY INFRASTRUCTURE PROGRAMS

(INCLUDING TRANSFER OF FUNDS)

For the purposes as described under this heading, $2,395,880,591, of which $927,212,591 shall be appropriated from the general fund, and of which—

(1) $1,093,756,000 shall be derived from the unobligated balances of amounts previously appropriated under the heading "Federal Highway Administration—Highway Infrastructure Programs" in title VIII of division J of Public Law 117–58, as follows:

(A) $125,000,000 from amounts previously appropriated for fiscal years 2023, 2024, 2025, and 2026 for operations and administration of the Federal Highway Administration (excluding amounts transferred to the Office of Inspector General of the Department of Transportation);

(B) $75,000,000 from amounts previously appropriated for fiscal year 2022 in paragraph (2) of such title VIII for the Joint Office of Energy and Transportation;

(C) $300,000,000 from amounts previously appropriated for fiscal years 2024, 2025, and 2026 in paragraph (2) of such title VIII for grants to States or localities that require additional assistance to strategically deploy electric vehicle charging infrastructure;

(D) $503,756,000 from amounts previously appropriated for fiscal years 2022, 2023, 2024, 2025, and 2026 in paragraph (2) of such title VIII that were distributed among the States, to be derived on a proportional basis from such unobligated amounts based on the unobligated balances from fiscal year 2022 by State as of January 31, 2026; and

(E) $90,000,000 from amounts previously appropriated for fiscal years 2024, 2025, and 2026 under paragraph (5) of such title VIII for the reduction of truck emissions at port facilities program:

*Provided,* That amounts derived from the unobligated balances as described in the matter preceding this proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5;

(2) $20,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2025 and 2026 under the heading "Federal Motor Carrier Safety Administration—Motor Carrier Safety Operations and Program" in title VIII of division J of Public Law 117–58: *Provided,* That amounts derived by transfer as described in the matter preceding this proviso shall continue to be treated

as amounts specified in section 103(b) of division A of Public Law 118–5;

(3) $204,912,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2022, 2023, 2024, 2025, and 2026 under the heading "Office of the Secretary—Strengthening Mobility and Revolutionizing Transportation Grant Program" in title VIII of division J of Public Law 117–58: *Provided,* That amounts derived by transfer as described in the matter preceding this proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5;

(4) $50,000,000 shall be derived by transfer from the unobligated balances of amounts made available by transfer pursuant to section 801 in title VIII of division J of Public Law 117–58 (excluding amounts transferred to the Office of Inspector General of the Department of Transportation): *Provided,* That amounts derived by transfer as described in the matter preceding this proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5; and

(5) $100,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal year 2026 under the heading "Pipeline and Hazardous Materials Safety Administration—Natural Gas Distribution Infrastructure Safety and Modernization Grant Program" in title VIII of division J of Public Law 117–58 (excluding amounts transferred to the Office of Inspector General of the Department of Transportation): *Provided,* That amounts derived by transfer as described in the matter preceding this proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5:

*Provided further,* That the funds made available under this heading shall be in addition to any funds provided for fiscal year 2026 in this or any other Act for: (1) "Federal-aid Highways" under chapter 1 of title 23, United States Code; (2) the Appalachian development highway system as authorized under section 1069(y) of Public Law 102–240; (3) activities eligible under the Tribal transportation program under section 202 of title 23, United States Code; (4) activities eligible under the Federal lands transportation program under section 203 of such title; (5) activities eligible under the Federal land access program under section 204 of such title; (6) the Northern Border Regional Commission (40 U.S.C. 15101 et seq.); (7) the Southwest Border Regional Commission (40 U.S.C. 15101 et seq.); (8) the Denali Commission; or (9) activities eligible under chapter 5 of title 23, United States Code, and shall not affect the distribution or amount of funds provided in any other Act: *Provided further,* That, except for the funds made available under this heading for the Northern Border Regional Commission, the Southwest Border Regional Commission, and the Denali Commission, section 11101(e) of Public Law 117–58 shall apply to funds made available under this heading: *Provided further,* That amounts made available under this heading shall not be subject to any limitation on obligations for Federal-aid highways or highway safety construction programs set forth in any Act making annual appropriations: *Provided further,* That of the sums appropriated or otherwise made available under this heading—

(1) $1,514,721,091, which shall be available until September 30, 2029, shall be for the purposes, and in the amounts, specified for Community Project Funding/Congressionally Directed Spending in the table entitled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That amounts made available in the preceding proviso for such purposes shall not diminish or prejudice any application or geographic region for other discretionary grant or loan awards made by the Department of Transportation: *Provided further,* That, except as otherwise provided under this heading, the funds made available under this paragraph shall be administered as if apportioned under chapter 1 of title 23, United States Code: *Provided further,* That funds made available under this paragraph that are used for Tribal projects shall be administered as if allocated under chapter 2 of title 23, United States Code, except that the set-asides described in subparagraph (C) of section 202(b)(3) of title 23, United States Code, and subsections (a)(6), (c), and (e) of section 202 of such title, and section 1123(h)(1) of MAP–21 (as amended by Public Law 117–58), shall not apply to such funds;

(2) $200,000,000, to remain available until September 30, 2029, shall be for activities eligible under the Tribal transportation program, as described in section 202 of title 23, United States Code: *Provided,* That, except as otherwise provided under this heading, the funds made available under this paragraph shall be administered as if allocated under chapter 2 of title 23, United States Code: *Provided further,* That the set-asides described in subparagraph (C) of section 202(b)(3) of title 23, United States Code, and subsections (a)(6), (c), and (e) of section 202 of such title shall not apply to funds made available under this paragraph: *Provided further,* That the set-aside described in section 1123(h)(1) of MAP–21 (as amended by Public Law 117–58), shall not apply to such funds;

(3) $200,000,000, to remain available until expended, shall be to carry out the Nationally Significant Multimodal Freight and Highway Projects program under section 117 of title 23, United States Code: *Provided,* That the funds made available under this paragraph shall be for projects to provide public parking for commercial motor vehicles: *Provided further,* That such projects shall be within reasonable access to or in the right of way of an Interstate highway, the National Highway System, or the National Highway Freight Network: *Provided further,* That the Secretary shall reserve not less than 50 percent of the amounts made available under this paragraph to make grants for projects that do not satisfy the minimum threshold under section 117(d)(1)(B) of such title: *Provided further,* That, of the amount reserved under the preceding proviso, not less than 30 percent shall be used for projects in rural areas: *Provided further,* That each grant made with funds reserved under the third proviso of this paragraph shall be in an amount that is at least $5,000,000: *Provided further,* That in addition to other applicable requirements, in making grants with funds reserved under the third proviso of this paragraph, the Secretary shall take into consideration the project selection considerations described in section 117(e)(3)

of such title: *Provided further,* That, except as described in the preceding proviso, subsections (e) and (i) of section 117 of such title shall not apply to funds made available under this paragraph: *Provided further,* That the Secretary shall reserve not less than 25 percent of the amounts made available under this paragraph to make grants for projects located in rural areas: *Provided further,* That if qualified applications will not allow for the amount reserved under the preceding proviso to be fully utilized, the Secretary shall combine the unutilized amounts with the amounts reserved under the fourth proviso of this paragraph: *Provided further,* That the requirements in section 117(g) of such title shall not apply to a project assisted with a grant under this paragraph that does not meet the minimum threshold under section 117(d)(1)(B): *Provided further,* That, except as described in the following proviso, the Federal share of the cost of a project assisted with a grant under this paragraph may not exceed 60 percent: *Provided further,* That the Federal share of the cost of a project that does not meet the minimum threshold under section 117(d)(1)(B) of such title shall be 80 percent: *Provided further,* That an eligible applicant that receives a grant under this paragraph may partner with a private entity to fund the development, capacity expansion, or operation or maintenance of a facility: *Provided further,* That no fees may be charged by an eligible applicant receiving a grant under this paragraph to a commercial motor vehicle driver to use parking constructed, expanded, opened, maintained, or improved with a grant under this paragraph: *Provided further,* That the funds made available under this paragraph shall not be used for the construction, or development phase activities that would enable the construction, of charging or fueling infrastructure for the propulsion of a vehicle, including a commercial motor vehicle: *Provided further,* That for purposes of this paragraph, (1) the term "commercial motor vehicle" has the meaning given the term in section 31132 of title 49, United States Code, and (2) the term "rural area" has the meaning given the term in section 117(i)(3) of title 23, United States Code;

(4) $5,000,000, to remain available until September 30, 2029, shall be to carry out section 11502 of the Infrastructure Investment and Jobs Act (23 U.S.C. 148 note): *Provided,* That, except as otherwise provided under such section or this heading, the funds made available under this paragraph shall be administered as if apportioned under chapter 1 of title 23, United States Code;

(5) $5,000,000, to remain available until September 30, 2029, shall be to carry out the regional infrastructure accelerator demonstration program under section 1441 of the FAST Act (23 U.S.C. 601 note): *Provided,* That for funds made available under this paragraph, the Federal share of the costs shall be, at the option of the recipient, up to 100 percent: *Provided further,* That funds made available under this paragraph may be transferred to the Office of the Secretary;

(6) $20,000,000 shall be for necessary expenses for construction of the Appalachian development highway system, as authorized under section 1069(y) of Public Law 102–240: *Provided,* That for the purposes of funds made available under this paragraph, the term "Appalachian State" means a State

that contains 1 or more counties (including any political subdivision located within the area) in the Appalachian region as defined in section 14102(a) of title 40, United States Code: *Provided further,* That funds made available under this heading for construction of the Appalachian development highway system shall remain available until expended: *Provided further,* That, except as provided in the following proviso, funds made available under this heading for construction of the Appalachian development highway system shall be administered as if apportioned under chapter 1 of title 23, United States Code: *Provided further,* That a project carried out with funds made available under this heading for construction of the Appalachian development highway system shall be carried out in the same manner as a project under section 14501 of title 40, United States Code: *Provided further,* That subject to the following proviso, funds made available under this heading for construction of the Appalachian development highway system shall be apportioned to Appalachian States according to the percentages derived from the 2012 Appalachian development highway system cost-to-complete estimate, adopted in Appalachian Regional Commission Resolution Number 736, and confirmed as each Appalachian State's relative share of the estimated remaining need to complete the Appalachian development highway system, adjusted to exclude those corridors that such States have no current plans to complete, as reported in the 2013 Appalachian Development Highway System Completion Report, unless those States have modified and assigned a higher priority for completion of an Appalachian development highway system corridor, as reported in the 2020 Appalachian Development Highway System Future Outlook: *Provided further,* That the Secretary shall adjust apportionments made under the preceding proviso so that no Appalachian State shall be apportioned an amount in excess of 30 percent of the amount made available for construction of the Appalachian development highway system under this heading: *Provided further,* That the Secretary shall consult with the Appalachian Regional Commission in making adjustments under the preceding two provisos: *Provided further,* That the Federal share of the costs for which an expenditure is made for construction of the Appalachian development highway system under this heading shall be up to 100 percent;

(7) $3,000,000, to remain available until September 30, 2029, shall be transferred to the Southwest Border Regional Commission (40 U.S.C. 15101 et seq.) to make grants, in addition to amounts otherwise made available to the Southwest Border Regional Commission for such purpose, for authorized activities, including for administration of grants or cooperative agreements to support interjurisdictional planning activities advancing transportation infrastructure: *Provided,* That a grant made with funds made available under this paragraph shall be administered in the same manner as a grant made under subtitle V of title 40, United States Code;

(8) $5,000,000, to remain available until expended, shall be transferred to the Northern Border Regional Commission (40 U.S.C. 15101 et seq.) to make grants, in addition to amounts otherwise made available to the Northern Border Regional Commission for such purpose, to carry out pilot projects that

H. R. 7148—176

demonstrate the capabilities of wood-based infrastructure projects: *Provided,* That a grant made with funds made available under this paragraph shall be administered in the same manner as a grant made under subtitle V of title 40, United States Code;

(9) $5,000,000 shall be transferred to the Denali Commission for activities eligible under section 307(d) of the Denali Commission Act of 1998 (42 U.S.C. 3121 note; Public Law 105–277): *Provided,* That funds made available under this paragraph shall not be subject to section 311 of such Act: *Provided further,* That except as otherwise provided under section 307(d) of such Act or this heading, funds made available under this paragraph shall be administered as if directly appropriated to the Denali Commission and subject to applicable provisions of such Act, including the requirement in section 307(d) of such Act that the local community provides a 10 percent non-Federal match in the form of any necessary land or planning and design funds: *Provided further,* That such funds shall be available until expended: *Provided further,* That the Federal share of the costs for which an expenditure is made with funds transferred under this paragraph shall be up to 90 percent;

(10) $15,000,000 shall be transferred to the Denali Commission to carry out the Denali access system program under section 309 of the Denali Commission Act of 1998 (42 U.S.C. 3121 note; Public Law 105–277): *Provided,* That a transfer under this paragraph shall not be subject to section 311 of such Act: *Provided further,* That except as otherwise provided under this heading, funds made available under this paragraph shall be administered as if directly appropriated to the Denali Commission and subject to applicable provisions of such Act: *Provided further,* That funds made available under this paragraph shall not be subject to section 309(j)(2) of such Act: *Provided further,* That funds made available under this paragraph shall be available until expended: *Provided further,* That the Federal share of the costs for which an expenditure is made with funds transferred under this paragraph shall be up to 100 percent;

(11) $2,000,000, to remain available until September 30, 2029, shall be to carry out the pollinator-friendly practices on roadsides and highway rights-of-way program under section 332 of title 23, United States Code;

(12) $10,000,000, to remain available until September 30, 2029, shall be for the national scenic byways program under section 162 of title 23, United States Code: *Provided,* That, except as otherwise provided under this heading, the funds made available under this paragraph shall be administered as if apportioned under chapter 1 of title 23, United States Code;

(13) $350,000,000, to remain available until September 30, 2029, shall be for a competitive highway bridge program for States that—

(A) have—

(i) a population density of less than 115 individuals per square mile; or

(ii) a population of less than 1,100,000 individuals; and

(B) have—
(i) less than 26 percent of total bridges classified as in good condition; or
(ii) greater than or equal to 4.9 percent of total bridges classified as in poor condition:

*Provided,* That any such State with more than 14 percent of total bridges classified as in poor condition shall receive not less than $32,500,000 of the funds made available in this paragraph for grant applications for projects eligible under this paragraph: *Provided further,* That if the Secretary determines that eligible applications from any such State meeting the criteria under the preceding proviso are insufficient to make awards of at least $32,500,000, the Secretary shall use the unutilized amounts to provide other grants to States eligible under this paragraph: *Provided further,* That no State shall be awarded more than $55,000,000 in awards from funds made available under this paragraph for grant applications for projects eligible under this paragraph: *Provided further,* That the funds made available under this paragraph shall be used for highway bridge replacement or rehabilitation projects on public roads that demonstrate cost savings by bundling multiple highway bridge projects and, except as otherwise provided in this heading, shall be administered as if apportioned under chapter 1 of title 23, United States Code: *Provided further*, That the requirements of section 144(j)(5) of title 23, United States Code, shall not apply to funds made available under this paragraph: *Provided further,* That for purposes of this paragraph, the Secretary shall calculate population and population density figures based on the latest available data from the decennial census conducted under section 141(a) of title 13, United States Code: *Provided further*, That for purposes of this paragraph, the Secretary shall calculate the percentages of bridge counts (including the percentages of bridge counts classified as in poor and good condition) based on the national bridge inventory as of June 2024;

(14) $25,000,000 shall be for a competitive Type 3 highway bridge program for the replacement or rehabilitation of bridges that—(A) are owned by a county; (B) are classified as a Type 3 bridge by the Bureau of Reclamation; (C) are eligible under the Federal lands access program, as described in section 204 of title 23, United States Code; and (D) cross a water conveyance structure owned by the Bureau of Reclamation: *Provided,* That the Secretary, in consultation with the Bureau of Reclamation, shall prioritize awards to projects that will lead to— (i) improved water delivery; (ii) improved bridge conditions; and (iii) improved safety, efficiency, and reliability of the movement of people and goods over Type 3 bridges crossing a water conveyance structure owned by the Bureau of Reclamation: *Provided further,* That only a county owning a bridge meeting the conditions in this paragraph shall be an eligible applicant for a grant under this paragraph: *Provided further,* That, except as otherwise provided under this heading, funds made available under this paragraph shall be administered as if allocated under section 204 of such title, except that such funds shall not be subject to subsections (b) or (c) of such section: *Provided further,* That for the purposes of funds made available under

this paragraph, the term "Type 3 bridge" means a bridge classified as a Type 3 bridge by the Bureau of Reclamation as defined in its Reclamation Manual Directives and Standards FAC 07–01 (as updated on June 9, 2023): *Provided further,* That funds made available under this paragraph shall remain available until expended: *Provided further,* That the Federal share of the costs for which an expenditure is made with funds made available under this paragraph shall be 100 percent: *Provided further,* That the Secretary of Transportation shall issue the notice of funding opportunity for the funds made available under this paragraph no later than 60 days after enactment of this Act: *Provided further,* That the Secretary of Transportation shall make grants for the funds made available under this paragraph no later than 270 days after enactment of this Act;

(15) $6,159,500, to remain available until expended, shall be for research leading to sustainable stormwater management technologies and techniques to reduce the impacts of 6PPD and 6PPD-quinone on salmon-bearing streams: *Provided,* That the Federal Highway Administration shall implement this research as specified under the paragraph entitled "Stormwater Management" in Senate Report 119–47; and

(16) $30,000,000, to remain available until expended, shall be for capital construction grants under the Reconnecting Communities Pilot Program as authorized under section 11509(d) of division A of the Infrastructure Investment and Jobs Act (Public Law 117–58): *Provided,* That funds made available under this paragraph shall only be available for projects in States in which the Department of Transportation previously awarded a competitive grant award and signed a grant agreement of not less than $145,000,000 under section 177 of title 23, United States Code, and any amount of such funds were subsequently rescinded by an Act of Congress.

ADMINISTRATIVE PROVISIONS—FEDERAL HIGHWAY ADMINISTRATION

(INCLUDING RESCISSIONS)

SEC. 120. (a) For fiscal year 2026, the Secretary of Transportation shall—

(1) not distribute from the obligation limitation for Federal-aid highways—

(A) amounts authorized for administrative expenses and programs by section 104(a) of title 23, United States Code; and

(B) amounts authorized for the Bureau of Transportation Statistics;

(2) not distribute an amount from the obligation limitation for Federal-aid highways that is equal to the unobligated balance of amounts—

(A) made available from the Highway Trust Fund (other than the Mass Transit Account) for Federal-aid highway and highway safety construction programs for previous fiscal years the funds for which are allocated by the Secretary (or apportioned by the Secretary under section 202 or 204 of title 23, United States Code); and

(B) for which obligation limitation was provided in a previous fiscal year;

(3) determine the proportion that—

(A) the obligation limitation for Federal-aid highways, less the aggregate of amounts not distributed under paragraphs (1) and (2) of this subsection; bears to

(B) the total of the sums authorized to be appropriated for the Federal-aid highway and highway safety construction programs (other than sums authorized to be appropriated for provisions of law described in paragraphs (1) through (11) of subsection (b) and sums authorized to be appropriated for section 119 of title 23, United States Code, equal to the amount referred to in subsection (b)(12) for such fiscal year), less the aggregate of the amounts not distributed under paragraphs (1) and (2) of this subsection;

(4) distribute the obligation limitation for Federal-aid highways, less the aggregate of amounts not distributed under paragraphs (1) and (2), for each of the programs (other than programs to which paragraph (1) applies) that are allocated by the Secretary under authorized Federal-aid highway and highway safety construction programs, or apportioned by the Secretary under section 202 or 204 of title 23, United States Code, by multiplying—

(A) the proportion determined under paragraph (3); by

(B) the amounts authorized to be appropriated for each such program for such fiscal year; and

(5) distribute the obligation limitation for Federal-aid highways, less the aggregate amounts not distributed under paragraphs (1) and (2) and the amounts distributed under paragraph (4), for Federal-aid highway and highway safety construction programs that are apportioned by the Secretary under title 23, United States Code (other than the amounts apportioned for the national highway performance program in section 119 of title 23, United States Code, that are exempt from the limitation under subsection (b)(12) and the amounts apportioned under sections 202 and 204 of that title) in the proportion that—

(A) amounts authorized to be appropriated for the programs that are apportioned under title 23, United States Code, to each State for such fiscal year; bears to

(B) the total of the amounts authorized to be appropriated for the programs that are apportioned under title 23, United States Code, to all States for such fiscal year.

(b) EXCEPTIONS FROM OBLIGATION LIMITATION.—The obligation limitation for Federal-aid highways shall not apply to obligations under or for—

(1) section 125 of title 23, United States Code;

(2) section 147 of the Surface Transportation Assistance Act of 1978 (23 U.S.C. 144 note; 92 Stat. 2714);

(3) section 9 of the Federal-Aid Highway Act of 1981 (95 Stat. 1701);

(4) subsections (b) and (j) of section 131 of the Surface Transportation Assistance Act of 1982 (96 Stat. 2119);

(5) subsections (b) and (c) of section 149 of the Surface Transportation and Uniform Relocation Assistance Act of 1987 (101 Stat. 198);

(6) sections 1103 through 1108 of the Intermodal Surface Transportation Efficiency Act of 1991 (105 Stat. 2027);

(7) section 157 of title 23, United States Code (as in effect on June 8, 1998);

(8) section 105 of title 23, United States Code (as in effect for fiscal years 1998 through 2004, but only in an amount equal to $639,000,000 for each of those fiscal years);

(9) Federal-aid highway programs for which obligation authority was made available under the Transportation Equity Act for the 21st Century (112 Stat. 107) or subsequent Acts for multiple years or to remain available until expended, but only to the extent that the obligation authority has not lapsed or been used;

(10) section 105 of title 23, United States Code (as in effect for fiscal years 2005 through 2012, but only in an amount equal to $639,000,000 for each of those fiscal years);

(11) section 1603 of SAFETEA–LU (23 U.S.C. 118 note; 119 Stat. 1248), to the extent that funds obligated in accordance with that section were not subject to a limitation on obligations at the time at which the funds were initially made available for obligation; and

(12) section 119 of title 23, United States Code (but, for each of fiscal years 2013 through 2026, only in an amount equal to $639,000,000).

(c) REDISTRIBUTION OF UNUSED OBLIGATION AUTHORITY.—Notwithstanding subsection (a), the Secretary shall, after August 1 of such fiscal year—

(1) revise a distribution of the obligation limitation made available under subsection (a) if an amount distributed cannot be obligated during that fiscal year; and

(2) redistribute sufficient amounts to those States able to obligate amounts in addition to those previously distributed during that fiscal year, giving priority to those States having large unobligated balances of funds apportioned under sections 144 (as in effect on the day before the date of enactment of Public Law 112–141) and 104 of title 23, United States Code.

(d) APPLICABILITY OF OBLIGATION LIMITATIONS TO TRANSPORTATION RESEARCH PROGRAMS.—

(1) IN GENERAL.—Except as provided in paragraph (2), the obligation limitation for Federal-aid highways shall apply to contract authority for transportation research programs carried out under—

(A) chapter 5 of title 23, United States Code;

(B) title VI of the Fixing America's Surface Transportation Act; and

(C) title III of division A of the Infrastructure Investment and Jobs Act (Public Law 117–58).

(2) EXCEPTION.—Obligation authority made available under paragraph (1) shall—

(A) remain available for a period of 4 fiscal years; and

(B) be in addition to the amount of any limitation imposed on obligations for Federal-aid highway and highway safety construction programs for future fiscal years.

(e) REDISTRIBUTION OF CERTAIN AUTHORIZED FUNDS.—

(1) IN GENERAL.—Not later than 30 days after the date of distribution of obligation limitation under subsection (a), the Secretary shall distribute to the States any funds (excluding funds authorized for the program under section 202 of title 23, United States Code) that—

(A) are authorized to be appropriated for such fiscal year for Federal-aid highway programs; and

(B) the Secretary determines will not be allocated to the States (or will not be apportioned to the States under section 204 of title 23, United States Code), and will not be available for obligation, for such fiscal year because of the imposition of any obligation limitation for such fiscal year.

(2) RATIO.—Funds shall be distributed under paragraph (1) in the same proportion as the distribution of obligation authority under subsection (a)(5).

(3) AVAILABILITY.—Funds distributed to each State under paragraph (1) shall be available for any purpose described in section 133(b) of title 23, United States Code.

SEC. 121. Notwithstanding 31 U.S.C. 3302, funds received by the Bureau of Transportation Statistics from the sale of data products, for necessary expenses incurred pursuant to chapter 63 of title 49, United States Code, may be credited to the Federal-aid highways account for the purpose of reimbursing the Bureau for such expenses.

SEC. 122. Not less than 15 days prior to waiving, under his or her statutory authority, any Buy America requirement for Federal-aid highways projects, the Secretary of Transportation shall make an informal public notice and comment opportunity on the intent to issue such waiver and the reasons therefor: *Provided,* That the Secretary shall post on a website any waivers granted under the Buy America requirements.

SEC. 123. None of the funds made available in this Act may be used to make a grant for a project under section 117 of title 23, United States Code, unless the Secretary, at least 60 days before making a grant under that section, provides written notification to the House and Senate Committees on Appropriations of the proposed grant, including an evaluation and justification for the project and the amount of the proposed grant award.

SEC. 124. (a) A State or territory, as defined in section 165 of title 23, United States Code, may use for any project eligible under section 133(b) of title 23 or section 165 of title 23 and located within the boundary of the State or territory any earmarked amount, and any associated obligation limitation: *Provided,* That the Department of Transportation for the State or territory for which the earmarked amount was originally designated or directed notifies the Secretary of its intent to use its authority under this section and submits an annual report to the Secretary identifying the projects to which the funding would be applied. Notwithstanding the original period of availability of funds to be obligated under this section, such funds and associated obligation limitation shall remain available for obligation for a period of 3 fiscal years after the fiscal year in which the Secretary is notified. The Federal share of the cost of a project carried out with funds made available under this section shall be the same as associated with the earmark.

(b) In this section, the term "earmarked amount" means—

(1) congressionally directed spending, as defined in rule XLIV of the Standing Rules of the Senate, identified in a prior law, report, or joint explanatory statement, which was authorized to be appropriated or appropriated more than 10 fiscal years prior to the current fiscal year, and administered by the Federal Highway Administration; or

(2) a congressional earmark, as defined in rule XXI of the Rules of the House of Representatives, identified in a prior law, report, or joint explanatory statement, which was authorized to be appropriated or appropriated more than 10 fiscal years prior to the current fiscal year, and administered by the Federal Highway Administration.

(c) The authority under subsection (a) may be exercised only for those projects or activities that have obligated less than 10 percent of the amount made available for obligation as of October 1 of the current fiscal year, and shall be applied to projects within the same general geographic area within 25 miles for which the funding was designated, except that a State or territory may apply such authority to unexpended balances of funds from projects or activities the State or territory certifies have been closed and for which payments have been made under a final voucher.

(d) The Secretary shall submit consolidated reports of the information provided by the States and territories annually to the House and Senate Committees on Appropriations.

SEC. 125. The remaining unobligated balances, as of September 30, 2026, from amounts made available for "Department of Transportation—Federal Highway Administration—Highway Infrastructure Programs" in division J of Public Law 117–58 for the Nationally Significant Freight and Highway Projects program under section 117 of title 23, United States Code, for fiscal year 2023 are hereby permanently rescinded, and an amount of additional new budget authority equivalent to the amount rescinded pursuant to this section is hereby appropriated on September 30, 2026, for an additional amount for fiscal year 2026, to remain available until September 30, 2031, and shall be available, without additional competition, for completing the funding of awards made pursuant to section 117 of title 23, United States Code, for fiscal year 2023 funding, in addition to other funds as may be available for such purposes: *Provided,* That the amounts rescinded pursuant to this section that were previously designated by the Congress as an emergency requirement pursuant to section 4112(a) of H. Con. Res. 71 (115th Congress), the concurrent resolution on the budget for fiscal year 2018, and to section 251(b) of the Balanced Budget and Emergency Deficit Control Act of 1985 are designated by the Congress as an emergency requirement pursuant to 4001(a)(1) of S. Con. Res 14 (117th Congress), the concurrent resolution on the budget for fiscal year 2022, and to legislation establishing fiscal year 2026 budget enforcement in the House of Representatives: *Provided further,* That the amount of additional new budget authority provided by this section is designated by the Congress as being for an emergency requirement pursuant to such section 4001(a)(1) and to legislation establishing fiscal year 2026 budget enforcement in the House of Representatives.

SEC. 126. The remaining unobligated balances, as of September 30, 2026, from amounts made available for "Department of Transportation—Federal Highway Administration—Highway Infrastructure Programs" in division J of Public Law 117–58 for the

H. R. 7148—183

bridge investment program under section 124 of title 23, United States Code, for fiscal year 2023 are hereby permanently rescinded, and an amount of additional new budget authority equivalent to the amount rescinded pursuant to this section is hereby appropriated on September 30, 2026, for an additional amount for fiscal year 2026, to remain available until September 30, 2031, and shall be available, without additional competition, for completing the funding of awards made pursuant to section 124 of title 23, United States Code, for fiscal year 2023 funding, in addition to other funds as may be available for such purposes: *Provided,* That the amounts rescinded pursuant to this section that were previously designated by the Congress as an emergency requirement pursuant to section 4112(a) of H. Con. Res. 71 (115th Congress), the concurrent resolution on the budget for fiscal year 2018, and to section 251(b) of the Balanced Budget and Emergency Deficit Control Act of 1985 are designated by the Congress as an emergency requirement pursuant to 4001(a)(1) of S. Con. Res 14 (117th Congress), the concurrent resolution on the budget for fiscal year 2022, and to legislation establishing fiscal year 2026 budget enforcement in the House of Representatives: *Provided further,* That the amount of additional new budget authority provided by this section is designated by the Congress as being for an emergency requirement pursuant to such section 4001(a)(1) and to legislation establishing fiscal year 2026 budget enforcement in the House of Representatives.

SEC. 127. The remaining unobligated balances, as of September 30, 2026, from amounts made available for "Department of Transportation—Federal Highway Administration—Highway Infrastructure Programs" in division L of Public Law 117–328 for competitive awards for activities eligible under section 176(d)(4)(A) and 176(d)(4)(C) of title 23, United States Code, for fiscal year 2023 are hereby permanently rescinded, and an amount of additional new budget authority equivalent to the amount rescinded pursuant to this section is hereby appropriated on September 30, 2026, for an additional amount for fiscal year 2026, to remain available until September 30, 2031, and shall be available, without additional competition, for completing the funding of awards made pursuant to section 176 of title 23, United States Code, for fiscal year 2023 funding, in addition to other funds as may be available for such purposes.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

MOTOR CARRIER SAFETY OPERATIONS AND PROGRAMS

(LIQUIDATION OF CONTRACT AUTHORIZATION)

(LIMITATION ON OBLIGATIONS)

(HIGHWAY TRUST FUND)

For payment of obligations incurred in the implementation, execution and administration of motor carrier safety operations and programs pursuant to section 31110 of title 49, United States Code, as amended by the Infrastructure Investment and Jobs Act (Public Law 117–58), $390,000,000, to be derived from the Highway Trust Fund (other than the Mass Transit Account), together with

H. R. 7148—184

advances and reimbursements received by the Federal Motor Carrier Safety Administration, the sum of which shall remain available until expended: *Provided,* That funds available for implementation, execution, or administration of motor carrier safety operations and programs authorized under title 49, United States Code, shall not exceed total obligations of $390,000,000, for "Motor Carrier Safety Operations and Programs" for fiscal year 2026: *Provided further,* That of the amounts made available under this heading—

(1) not less than $63,098,000, to remain available for obligation until September 30, 2028, shall be for development, modernization, enhancement, and continued operation and maintenance of information technology and information management; and

(2) $14,073,000, to remain available for obligation until September 30, 2028, shall be for the research and technology program:

*Provided further,* That the activities funded in paragraphs (1) and (2) in the preceding proviso may be accomplished through direct expenditures, direct research activities, grants, cooperative agreements, contracts, intra-agency or interagency agreements, or other agreements with public organizations.

MOTOR CARRIER SAFETY GRANTS

(LIQUIDATION OF CONTRACT AUTHORIZATION)

(LIMITATION ON OBLIGATIONS)

(HIGHWAY TRUST FUND)

For payment of obligations incurred in carrying out sections 31102, 31103, 31104, and 31313 of title 49, United States Code, $536,600,000, to be derived from the Highway Trust Fund (other than the Mass Transit Account) and to remain available until expended: *Provided,* That funds available for the implementation or execution of motor carrier safety programs shall not exceed total obligations of $541,600,000 in fiscal year 2026 for "Motor Carrier Safety Grants": *Provided further,* That of the amounts made available under this heading—

(1) $422,500,000, to remain available for obligation until September 30, 2027, shall be for the motor carrier safety assistance program;

(2) $45,200,000, to remain available for obligation until September 30, 2027, shall be for the commercial driver's license program implementation program;

(3) $62,400,000, to remain available for obligation until September 30, 2027, shall be for the high priority program;

(4) $1,500,000, to remain available for obligation until September 30, 2027, shall be for the commercial motor vehicle operators grant program; and

(5) $10,000,000, to remain available for obligation until September 30, 2027, shall be for the commercial motor vehicle enforcement training and support grant program, of which $5,000,000 shall be made available from prior year unobligated contract authority made available for Motor Carrier Safety Grants in section 23001 of the Infrastructure Investment and Jobs Act (Public Law 117–58): *Provided,* That such prior year unobligated contract authority shall be available to complete

H. R. 7148—185

the fiscal year 2024 commercial motor vehicle enforcement training and support grant program notice of funding opportunity and shall be available to all applicants otherwise eligible under such notice of funding opportunity.

ADMINISTRATIVE PROVISIONS—FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION

SEC. 130. None of the funds appropriated or otherwise made available to the Department of Transportation by this Act or any other Act may be obligated or expended to implement, administer, or enforce the requirements of section 31137 of title 49, United States Code, or any regulation issued by the Secretary pursuant to such section, with respect to the use of electronic logging devices by operators of commercial motor vehicles, as defined in section 31132(1) of such title, transporting livestock as defined in section 602 of the Emergency Livestock Feed Assistance Act of 1988 (7 U.S.C. 1471) or insects.

SEC. 131. The Secretary shall update the Department's regulations to ensure that non-compliance with section 391.11(b)(2) of title 49, Code of Federal Regulations, triggers an out-of-service order.

NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION

OPERATIONS AND RESEARCH

(INCLUDING TRANSFER OF FUNDS)

For expenses necessary to discharge the functions of the Secretary, with respect to traffic and highway safety, authorized under chapter 301 and part C of subtitle VI of title 49, United States Code, $200,000,000, of which $65,000,000 shall remain available through September 30, 2027, and of which $129,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58) as follows: (1) $79,000,000 from amounts previously appropriated for fiscal years 2023, 2024, 2025, and 2026 in paragraph (3) under the heading "Department of Transportation—National Highway Traffic Safety Administration—Supplemental Highway Traffic Safety Programs"; and (2) $50,000,000 from amounts previously appropriated for fiscal year 2026 under the heading "Department of Transportation—National Highway Traffic Safety Administration—Crash Data": *Provided,* That amounts derived by transfer as described in the matter preceding this proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5.

OPERATIONS AND RESEARCH

(LIQUIDATION OF CONTRACT AUTHORIZATION)

(LIMITATION ON OBLIGATIONS)

(HIGHWAY TRUST FUND)

For payment of obligations incurred in carrying out the provisions of section 403 of title 23, United States Code, including

behavioral research on automated driving systems and advanced driver assistance systems and improving consumer responses to safety recalls, section 25024 of the Infrastructure Investment and Jobs Act (Public Law 117–58), and chapter 303 of title 49, United States Code, $209,600,000, to be derived from the Highway Trust Fund (other than the Mass Transit Account) and to remain available until expended: *Provided,* That none of the funds in this Act shall be available for the planning or execution of programs the total obligations for which, in fiscal year 2026, are in excess of $209,600,000: *Provided further,* That of the sums appropriated under this heading—

(1) $202,000,000 shall be for programs authorized under section 403 of title 23, United States Code, including behavioral research on automated driving systems and advanced driver assistance systems and improving consumer responses to safety recalls, and section 25024 of the Infrastructure Investment and Jobs Act (Public Law 117–58); and

(2) $7,600,000 shall be for the national driver register authorized under chapter 303 of title 49, United States Code: *Provided further,* That within the $209,600,000 obligation limitation for operations and research, $57,500,000 shall remain available until September 30, 2027, and shall be in addition to the amount of any limitation imposed on obligations for future years: *Provided further,* That amounts for behavioral research on automated driving systems and advanced driver assistance systems and improving consumer responses to safety recalls are in addition to any other funds provided for those purposes for fiscal year 2026 in this Act.

HIGHWAY TRAFFIC SAFETY GRANTS

(LIQUIDATION OF CONTRACT AUTHORIZATION)

(LIMITATION ON OBLIGATIONS)

(HIGHWAY TRUST FUND)

For payment of obligations incurred in carrying out provisions of sections 402, 404, and 405 of title 23, United States Code, and grant administration expenses under chapter 4 of title 23, United States Code, to remain available until expended, $849,654,625, to be derived from the Highway Trust Fund (other than the Mass Transit Account): *Provided,* That none of the funds in this Act shall be available for the planning or execution of programs for which the total obligations in fiscal year 2026 are in excess of $849,654,625 for programs authorized under sections 402, 404, and 405 of title 23, United States Code, and grant administration expenses under chapter 4 of title 23, United States Code: *Provided further,* That of the sums appropriated under this heading—

(1) $393,400,000 shall be for highway safety programs under section 402 of title 23, United States Code;

(2) $367,500,000 shall be for national priority safety programs under section 405 of title 23, United States Code;

(3) $44,300,000 shall be for the high visibility enforcement program under section 404 of title 23, United States Code; and

(4) $44,454,625 shall be for grant administrative expenses under chapter 4 of title 23, United States Code:

*Provided further,* That none of these funds shall be used for construction, rehabilitation, or remodeling costs, or for office furnishings and fixtures for State, local or private buildings or structures: *Provided further,* That not to exceed $500,000 of the funds made available for national priority safety programs under section 405 of title 23, United States Code, for impaired driving countermeasures (as described in subsection (d) of that section) shall be available for technical assistance to the States: *Provided further,* That with respect to the "Transfers" provision under section 405(a)(10) of title 23, United States Code, any amounts transferred to increase the amounts made available under section 402 shall include the obligation authority for such amounts: *Provided further,* That the Administrator shall notify the House and Senate Committees on Appropriations of any exercise of the authority granted under the preceding proviso or under section 405(a)(10) of title 23, United States Code, within 5 days.

ADMINISTRATIVE PROVISIONS—NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION

Sec. 140. The limitations on obligations for the programs of the National Highway Traffic Safety Administration set in this Act shall not apply to obligations for which obligation authority was made available in previous public laws but only to the extent that the obligation authority has not lapsed or been used.

Sec. 141. None of the funds provided in this Act may be used to encourage illegal drug or alcohol use in the National Highway Traffic Safety Administration's impaired driving advertising campaigns.

Sec. 142. An additional $130,000 shall be made available to the National Highway Traffic Safety Administration, out of the amount limited for section 402 of title 23, United States Code, to pay for travel and related expenses for State management reviews and to pay for core competency development training and related expenses for highway safety staff.

FEDERAL RAILROAD ADMINISTRATION

SAFETY AND OPERATIONS

For necessary expenses of the Federal Railroad Administration, not otherwise provided for, $264,761,000, of which $25,000,000 shall remain available until expended.

RAILROAD RESEARCH AND DEVELOPMENT

For necessary expenses for railroad research and development, $40,000,000, to remain available until expended: *Provided,* That of the amounts provided under this heading, up to $3,000,000 shall be available pursuant to section 20108(d) of title 49, United States Code, for the construction, alteration, and repair of buildings and improvements at the Transportation Technology Center: *Provided further,* That of the amounts provided under this heading, not less than $2,500,000 shall be available pursuant to section 20108(j) of title 49, United States Code, to establish and maintain a center of excellence.

H. R. 7148—188

FEDERAL-STATE PARTNERSHIP FOR INTERCITY PASSENGER RAIL

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses related to Federal-State partnership for intercity passenger rail grants as authorized by section 24911 of title 49, United States Code, $65,000,000, to remain available until expended: *Provided,* That the Secretary may withhold up to 2 percent of the amounts made available under this heading in this Act for the costs of award and project management oversight of grants carried out under title 49, United States Code: *Provided further,* That of the amounts made available under this heading, $40,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2025 and 2026 for the costs of award and project management oversight of grants, including amounts transferred to the "Financial Assistance Oversight and Technical Assistance" account (excluding amounts transferred to the Office of Inspector General of the Department of Transportation and to the National Railroad Passenger Corporation Office of Inspector General) under the heading "Federal Railroad Administration—Federal-State Partnership for Intercity Passenger Rail Grants" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58): *Provided further,* That amounts transferred pursuant to the preceding proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5: *Provided further,* That, of amounts made available under this heading, $5,000,000 shall be for a grant to the Union Station Redevelopment Corporation to rehabilitate and repair the Washington Union Station complex, and section 24911(f)(2) of title 49, United States Code, shall not apply to that grant.

CONSOLIDATED RAIL INFRASTRUCTURE AND SAFETY IMPROVEMENTS

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses related to consolidated rail infrastructure and safety improvements grants, as authorized by section 22907 of title 49, United States Code, $137,426,000, to remain available until expended: *Provided,* That of the amounts made available under this heading in this Act—

(1) $87,426,000 shall be available for the purposes, and in amounts, specified for Community Project Funding/Congressionally Directed Spending in the table entitled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That amounts made available in the preceding proviso for such purposes shall not diminish or prejudice any application or geographic region for other discretionary grant or loan awards made by the Department of Transportation: *Provided further,* That requirements under subsections (g) and (l) of section 22907 of title 49, United States Code, shall not apply to the funds made available under this paragraph: *Provided further,* That any remaining funds available after the distribution of the Community Project Funding/Congressionally Directed Spending described in this paragraph

shall be available to the Secretary to distribute as discretionary grants under this heading; and

(2) $50,000,000 shall be available to the Secretary to distribute as discretionary grants under this heading in this Act: *Provided further,* That of the amounts made available under this heading—

(1) $20,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal year 2026 for the costs of award and project management oversight of grants, including amounts transferred to the "Financial Assistance Oversight and Technical Assistance" account (excluding amounts transferred to the Office of Inspector General of the Department of Transportation and to the National Railroad Passenger Corporation Office of Inspector General) under the heading "Federal Railroad Administration—Consolidated Rail Infrastructure and Safety Improvements" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58); and

(2) $110,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2025 and 2026 for the costs of award and project management oversight of grants, including amounts transferred to the "Financial Assistance Oversight and Technical Assistance" account (excluding amounts transferred to the Office of Inspector General of the Department of Transportation and to the National Railroad Passenger Corporation Office of Inspector General) under the heading "Federal Railroad Administration—Federal-State Partnership for Intercity Passenger Rail Grants" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58):

*Provided further,* That amounts transferred pursuant to the preceding proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5: *Provided further,* That for amounts made available under this heading in this Act, eligible projects under section 22907(c)(8) of title 49, United States Code, shall also include railroad systems planning (including the preparation of regional intercity passenger rail plans and State rail plans) and railroad project development activities (including railroad project planning, preliminary engineering, design, environmental analysis, feasibility studies, and the development and analysis of project alternatives): *Provided further,* That section 22905(f) of title 49, United States Code, shall not apply to amounts made available under this heading in this Act for projects that implement or sustain positive train control systems otherwise eligible under section 22907(c)(1) of title 49, United States Code: *Provided further,* That amounts made available under this heading in this Act for projects selected for commuter rail passenger transportation may be transferred by the Secretary, after selection, to the appropriate agencies to be administered in accordance with chapter 53 of title 49, United States Code: *Provided further,* That for amounts made available under this heading in this Act, eligible recipients under section 22907(b)(7) of title 49, United States Code, shall include any holding company of a Class II railroad or Class III railroad (as those terms are defined in section 20102 of title 49, United States Code): *Provided further,* That section 22907(e)(1)(A) of title 49, United States Code, shall not apply to amounts made available under this heading in this Act: *Provided further,* That section

22907(e)(1)(A) of title 49, United States Code, shall not apply to amounts made available under this heading in previous fiscal years if such funds are announced in a notice of funding opportunity that includes funds made available under this heading in this Act: *Provided further*, That the preceding proviso shall not apply to funds made available under this heading in the Infrastructure Investment and Jobs Act (division J of Public Law 117–58): *Provided further,* That unobligated balances remaining after 6 years from the date of enactment of this Act may be used for any eligible project under section 22907(c) of title 49, United States Code: *Provided further,* That the Secretary may withhold up to 2 percent of the amounts made available under this heading in this Act for the costs of award and project management oversight of grants carried out under title 49, United States Code.

### NORTHEAST CORRIDOR GRANTS TO THE NATIONAL RAILROAD PASSENGER CORPORATION

To enable the Secretary of Transportation to make grants to the National Railroad Passenger Corporation for activities associated with the Northeast Corridor as authorized by section 22101(a) of the Infrastructure Investment and Jobs Act (Public Law 117–58), $850,000,000, to remain available until expended: *Provided,* That the Secretary may retain up to one-half of 1 percent of the amounts made available under both this heading in this Act and the "National Network Grants to the National Railroad Passenger Corporation" heading in this Act to fund the costs of project management and oversight of activities authorized by section 22101(c) of the Infrastructure Investment and Jobs Act (Public Law 117–58): *Provided further,* That in addition to the project management oversight funds authorized under section 22101(c) of the Infrastructure Investment and Jobs Act (Public Law 117–58), the Secretary shall retain an additional $5,000,000 of the amounts made available under this heading in this Act to fund expenses associated with the Northeast Corridor Commission established under section 24905 of title 49, United States Code.

### NATIONAL NETWORK GRANTS TO THE NATIONAL RAILROAD PASSENGER CORPORATION

To enable the Secretary of Transportation to make grants to the National Railroad Passenger Corporation for activities associated with the National Network as authorized by section 22101(b) of the Infrastructure Investment and Jobs Act (Public Law 117–58), $1,577,000,000, to remain available until expended: *Provided,* That the Secretary shall retain an additional $3,000,000 of the funds provided under this heading in this Act to fund expenses associated with the State-Supported Route Committee established under section 24712 of title 49, United States Code: *Provided further,* That none of the funds provided under this heading in this Act shall be used by Amtrak to give notice under subsection (a) or (c) of section 24706 of title 49, United States Code, with respect to long-distance routes (as defined in section 24102 of title 49, United States Code) on which Amtrak is the sole operator on a host railroad's line and a positive train control system is not required by law or regulation, or, except in an emergency or during maintenance or construction outages impacting such routes, to

otherwise discontinue, reduce the frequency of, suspend, or substantially alter the route of rail service on any portion of such route operated in fiscal year 2018, including implementation of service permitted by section 24305(a)(3)(A) of title 49, United States Code, in lieu of rail service: *Provided further,* That the National Railroad Passenger Corporation may use up to $66,000,000 of the amounts made available under this heading in this Act for corridor development activities as authorized by section 22101(h) of Public Law 117–58: *Provided further,* That $5,000,000 of the amounts made available under this heading in this Act shall be for the modernization project identified under this heading included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

ADMINISTRATIVE PROVISIONS—FEDERAL RAILROAD ADMINISTRATION

(INCLUDING TRANSFER OF FUNDS)

(INCLUDING RESCISSION)

SEC. 150. The amounts made available to the Secretary or to the Federal Railroad Administration for the costs of award, administration, and project management oversight of financial assistance which are administered by the Federal Railroad Administration, in this and prior Acts, may be transferred to the Federal Railroad Administration's "Financial Assistance Oversight and Technical Assistance" account for the necessary expenses to support the award, administration, project management oversight, and technical assistance of financial assistance administered by the Federal Railroad Administration, in the same manner as appropriated for in this and prior Acts: *Provided,* That this section shall not apply to amounts that were previously designated by the Congress as an emergency requirement pursuant to a concurrent resolution on the budget or the Balanced Budget and Emergency Deficit Control Act of 1985.

SEC. 151. None of the funds made available to the National Railroad Passenger Corporation may be used to fund any overtime costs in excess of $35,000 for any individual employee: *Provided,* That the President of Amtrak may waive the cap set in the preceding proviso for specific employees when the President of Amtrak determines such a cap poses a risk to the safety and operational efficiency of the system: *Provided further,* That the President of Amtrak shall report to the House and Senate Committees on Appropriations no later than 60 days after the date of enactment of this Act, a summary of all overtime payments incurred by Amtrak for 2025 and the 3 prior calendar years: *Provided further,* That such summary shall include the total number of employees that received waivers and the total overtime payments Amtrak paid to employees receiving waivers for each month for 2025 and for the 3 prior calendar years.

SEC. 152. None of the funds made available to the National Railroad Passenger Corporation under the headings "Northeast Corridor Grants to the National Railroad Passenger Corporation" and "National Network Grants to the National Railroad Passenger Corporation" may be used to reduce the total number of Amtrak Police Department uniformed officers patrolling on board passenger trains

H. R. 7148—192

or at stations, facilities or rights-of-way below the staffing level on May 1, 2019.

SEC. 153. For amounts made available under the heading "Federal-State Partnership for Intercity Passenger Rail" for fiscal year 2026 in this Act and in title VIII of division J of Public Law 117–58, the Union Station Redevelopment Corporation shall be considered an entity eligible to receive a grant under section 24911(a) of title 49, United States Code: *Provided,* That section 24911(f)(2) of title 49 shall not apply to grants made available to the Union Station Redevelopment Corporation under the authority as provided in this section: *Provided further,* That the Union Station Redevelopment Corporation and the National Railroad Passenger Corporation shall adhere to Public Law 97–125 and ensure the historic preservation and improvements to Washington Union Station are achieved with maximum reliance on the private sector and minimum requirement for Federal assistance.

SEC. 154. None of the funds made available by this Act may be used by the National Railroad Passenger Corporation in contravention of the Worker Adjustment and Retraining Notification Act (29 U.S.C. 2101 et seq.).

SEC. 155. It is the sense of Congress that—

(1) long-distance passenger rail routes provide much-needed transportation access for 4,200,000 riders in 39 States and the District of Columbia and are particularly important in rural areas; and

(2) long-distance passenger rail routes and services should be sustained to ensure connectivity throughout the National Network (as defined in section 24102 of title 49, United States Code).

SEC. 156. Of the unobligated balances of funds remaining from—

(1) "Railroad Safety Grants" account totaling $795,331.70 appropriated by Public Law 114–113 is hereby permanently rescinded;

(2) "Grants to the National Railroad Passenger Corporation" account totaling $20 appropriated by Public Law 104–50 is hereby permanently rescinded;

(3) "Capital Assistance to States—Intercity Passenger Rail Grant Program" account totaling $292,181.41 appropriated by Public Law 111–8 is hereby permanently rescinded;

(4) "Capital Assistance for High Speed Rail Corridors and Intercity Passenger Rail Service" account totaling $9,912.54 appropriated by Public Law 111–117 is hereby permanently rescinded;

(5) "Railroad Research and Development" account totaling $1,008,385 appropriated by Public Law 109–115 is hereby permanently rescinded;

(6) "National Network Grants to the National Railroad Passenger Corporation" account totaling $76,633.70 appropriated by Public Law 115–31 is hereby permanently rescinded;

(7) "Magnetic Levitation Technology Deployment Program" account totaling $14,000,000 appropriated by the following public laws are hereby permanently rescinded:

(A) Public Law 116–6 a total of $10,000,000;

(B) Public Law 116–94 a total of $2,000,000; and

(C) Public Law 116–260 a total of $2,000,000;

H. R. 7148—193

(8) "Consolidated Rail Infrastructure and Safety Improvements" account totaling $5,000,000 appropriated by Public Law 117–328 for preconstruction planning activities and capital costs related to the deployment of magnetic levitation transportation projects is hereby permanently rescinded; and

(9) "Capital Assistance for High Speed Rail Corridors and Intercity Passenger Rail Service" account totaling $928,620,000 appropriated by Public Law 111–117 is hereby permanently rescinded.

FEDERAL TRANSIT ADMINISTRATION

TRANSIT FORMULA GRANTS

(LIQUIDATION OF CONTRACT AUTHORIZATION)

(LIMITATION ON OBLIGATIONS)

(HIGHWAY TRUST FUND)

For payment of obligations incurred in the Federal public transportation assistance program in this account, and for payment of obligations incurred in carrying out the provisions of 49 U.S.C. 5305, 5307, 5310, 5311, 5312, 5314, 5318, 5329(e)(6), 5334, 5335, 5337, 5339, and 5340, section 20005(b) of Public Law 112–141, and section 3006(b) of Public Law 114–94, $14,642,000,000, to be derived from the Mass Transit Account of the Highway Trust Fund and to remain available until expended: *Provided,* That funds available for the implementation or execution of programs authorized under 49 U.S.C. 5305, 5307, 5310, 5311, 5312, 5314, 5318, 5329(e)(6), 5334, 5335, 5337, 5339, and 5340, section 20005(b) of Public Law 112–141, and section 3006(b) of Public Law 114–94, shall not exceed total obligations of $14,642,000,000 in fiscal year 2026.

TRANSIT INFRASTRUCTURE GRANTS

(INCLUDING TRANSFER OF FUNDS)

For an additional amount for ferry boat grants under section 5307(h) of title 49, United States Code, bus testing facilities under section 5318 of such title, accelerating innovative mobility initiative grants under section 5312 of such title, Community Project Funding/Congressionally Directed Spending for projects and activities eligible under chapter 53 of such title, ferry service for rural communities under section 71103 of division G of Public Law 117–58, and operating assistance to improve public safety in transit systems, $211,423,390, to remain available until expended: *Provided,* That of the sums provided under this heading in this Act—

(1) $25,000,000 shall be available for ferry boat grants as authorized under section 5307(h) of such title: *Provided,* That of the amounts provided in this paragraph, no less than $4,000,000 shall be available for low or zero emission ferries or ferries using electric battery or fuel cell components and the infrastructure to support such ferries;

(2) $1,500,000 shall be available for the operation and maintenance of the bus testing facilities selected under section 5318 of such title;

H. R. 7148—194

(3) $2,000,000 shall be available for the accelerating innovative mobility initiative as authorized under section 5312 of title 49, United States Code: *Provided,* That such amounts shall be available for competitive grants to improve mobility and enhance the rider experience with a focus on innovative service delivery models, creative financing, novel partnerships, and integrated payment solutions in order to help disseminate proven innovation mobility practices throughout the public transportation industry;

(4) $147,923,390 shall be available for the purposes, and in the amounts, specified for Community Project Funding/Congressionally Directed Spending in the table entitled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That amounts made available in this paragraph for such purposes shall not diminish or prejudice any application or geographic region for other discretionary grant or loan awards made by the Department of Transportation: *Provided further,* That unless otherwise specified, applicable requirements under chapter 53 of title 49, United States Code, shall apply to amounts made available in this paragraph, except that the Federal share of the costs for a project in this paragraph shall be in an amount equal to 80 percent of the net costs of the project, unless the Secretary approves a higher maximum Federal share of the net costs of the project consistent with administration of similar projects funded under chapter 53 of title 49, United States Code;

(5) $20,000,000 shall be available for ferry service for rural communities under section 71103 of division G of Public Law 117–58: *Provided,* That for amounts made available in this paragraph, notwithstanding section 71103(a)(2)(B), eligible service shall include passenger ferry service that serves at least two rural areas with a single segment over 15 miles between the two rural areas: *Provided further,* That for (1) amounts made available in this paragraph, (2) unobligated balances from amounts made available pursuant to section 1101(a)(12) of division A of the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119–4) for ferry service for rural communities previously appropriated in paragraph (5) under this heading in division F of the Consolidated Appropriations Act, 2024 (Public Law 118–42), and (3) unobligated balances from amounts made available in paragraph (5) under this heading in division F of the Consolidated Appropriations Act, 2024 (Public Law 118–42), notwithstanding section 71103(e)(2), eligible service shall include passenger ferry service that receives funds apportioned under chapter 53 of title 49, United States Code: *Provided further,* That entities that provide eligible service pursuant to the preceding two provisos may use amounts made available in this paragraph for public transportation capital projects to support any ferry service between two rural areas; and

(6) $15,000,000 shall be available for costs related to operating equipment and facilities for use in public transportation to improve public safety in transit systems: *Provided,* That the Secretary shall provide amounts made available in this paragraph as if such amounts were provided under section

H. R. 7148—195

5307 of title 49, United States Code, as applicable: *Provided further*, That notwithstanding subsection (a)(1) or (a)(2) of section 5307 of such title, amounts made available in this paragraph shall be available for the operating cost of equipment and facilities for use in public transportation eligible under section 5307 of such title: *Provided further*, That amounts made available in this paragraph shall be for eligible recipients under section 5307 of such title for such operating costs to improve public safety, reduce crime, and increase security in transit systems: *Provided further*, That the Secretary shall allocate amounts made available in this paragraph to the 10 eligible recipients with the highest ridership in fiscal year 2024: *Provided further*, That amounts shall be provided to eligible recipients proportionally based on ridership in fiscal year 2024: *Provided further*, That no eligible recipient may receive an allocation of more than 50 percent of the total amounts made available in this paragraph: *Provided further*, That the Secretary shall allocate any excess funds above the 50 percent threshold in the preceding proviso to all other eligible recipients in this paragraph proportionally based on ridership in fiscal year 2024: *Provided further*, That the Secretary shall make available in this paragraph to eligible recipients no later than 30 days after the date of enactment of this Act:

*Provided further*, That amounts made available under this heading shall be derived from the general fund, of which—

(1) $40,795,000 shall be derived from amounts previously appropriated for fiscal year 2026 for administrative and oversight expenses as authorized under section 5334 and section 5338(c) of title 49, United States Code, (excluding amounts transferred to the Office of Inspector General of the Department of Transportation) under the heading "Federal Transit Administration—Transit Infrastructure Grants" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58);

(2) $4,975,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2022, 2023, 2024, 2025, and 2026 for administrative and oversight expenses as authorized under section 5334 and section 5338(c) of title 49, United States Code, (excluding amounts transferred to the Office of Inspector General of the Department of Transportation) under the heading "Federal Transit Administration—Electric or Low-Emitting Ferry Program" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58);

(3) $4,601,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2022, 2023, 2024, 2025, and 2026 for administrative and oversight expenses as authorized under section 5334 and section 5338(c) of title 49, United States Code, (excluding amounts transferred to the Office of Inspector General of the Department of Transportation) under the heading "Federal Transit Administration—Ferry Service for Rural Communities" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58); and

(4) $138,000,000 shall be derived by transfer from the unobligated balances of amounts previously appropriated for fiscal years 2025 and 2026 for the costs of award and project

management oversight of grants, including amounts transferred to the "Financial Assistance Oversight and Technical Assistance" account (excluding amounts transferred to the Office of Inspector General of the Department of Transportation and to the National Railroad Passenger Corporation Office of Inspector General) under the heading "Federal Railroad Administration—Federal-State Partnership for Intercity Passenger Rail Grants" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58): *Provided further,* That amounts transferred pursuant to the preceding proviso shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5: *Provided further,* That amounts made available under this heading in this Act shall not be subject to any limitation on obligations for transit programs set forth in this or any other Act.

### TECHNICAL ASSISTANCE AND TRAINING

For necessary expenses to carry out section 5314 of title 49, United States Code, $7,500,000, to remain available until September 30, 2027: *Provided,* That the assistance provided under this heading does not duplicate the activities of section 5311(b) or section 5312 of title 49, United States Code: *Provided further,* That amounts made available under this heading are in addition to any other amounts made available for such purposes: *Provided further,* That amounts made available under this heading shall not be subject to any limitation on obligations set forth in this or any other Act.

### CAPITAL INVESTMENT GRANTS

#### (INCLUDING TRANSFER OF FUNDS)

For necessary expenses to carry out fixed guideway capital investment grants under section 5309 of title 49, United States Code, and section 3005(b) of the Fixing America's Surface Transportation Act (Public Law 114–94), $1,700,000,000, to remain available until expended: *Provided,* That of the sums appropriated under this heading in this Act—

    (1) $1,357,300,000 shall be available for projects authorized under section 5309(d) of title 49, United States Code;

    (2) $200,000,000 shall be available for projects authorized under section 5309(e) of title 49, United States Code;

    (3) $25,700,000 shall be available for projects authorized under section 5309(h) of title 49, United States Code; and

    (4) $100,000,000 shall be available for projects authorized under section 3005(b) of the Fixing America's Surface Transportation Act:

*Provided further,* That the amounts made available under this heading in this or any prior appropriations Act shall be available for the purposes, and in amounts, specified in the table entitled "Allocation of FTA Capital Investment Grants Funding" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That the Secretary shall make allocations for amounts made available under this heading in this or any prior appropriations Act in accordance with the table referred to in the second proviso under this heading in this Act no later than 120

days after the enactment of this Act: *Provided further,* That not to exceed 10 percent of any funding level specified in the table referred to in the second proviso under this heading in this Act may be transferred to any other funding level specified in such table: *Provided further,* That no transfer of such funding levels may increase or decrease any funding level in the table referred to in the second proviso under this heading in this Act by more than 10 percent: *Provided further,* That the preceding two provisos shall not apply to projects with full funding grant agreements under section 5309(d) of title 49, United States Code, included in the table referred to in the second proviso under this heading in this Act: *Provided further,* That funds made available under this heading in division J of Public Law 117–58 the second through sixth provisos shall be treated as inapplicable for fiscal year 2026: *Provided further,* That for funds made available under this heading in division J of Public Law 117–58, $734,900,000 may be available for projects authorized under section 5309(d) of title 49, United States Code: *Provided further,* That for funds made available under this heading in division J of Public Law 117–58, $849,500,000 may be available for projects authorized under section 5309(h) of title 49, United States Code: *Provided further,* That amounts repurposed under this heading in this Act shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5: *Provided further,* That the Secretary shall continue to administer the capital investment grants program in accordance with the procedural and substantive requirements of section 5309 of title 49, United States Code, and of section 3005(b) of the Fixing America's Surface Transportation Act: *Provided further,* That projects that receive a grant agreement under the expedited project delivery for capital investment grants pilot program under section 3005(b) of the Fixing America's Surface Transportation Act shall be deemed eligible for funding provided for projects under section 5309 of title 49, United States Code, without further evaluation or rating under such section: *Provided further,* That such funding shall not exceed the Federal share under section 3005(b).

### GRANTS TO THE WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

For grants to the Washington Metropolitan Area Transit Authority as authorized under section 601 of division B of the Passenger Rail Investment and Improvement Act of 2008 (Public Law 110–432), $150,000,000, to remain available until expended: *Provided,* That the Secretary of Transportation shall approve grants for capital and preventive maintenance expenditures for the Washington Metropolitan Area Transit Authority only after receiving and reviewing a request for each specific project: *Provided further,* That the Secretary shall determine that the Washington Metropolitan Area Transit Authority has placed the highest priority on those investments that will improve the safety of the system before approving such grants.

H. R. 7148—198

ADMINISTRATIVE PROVISIONS—FEDERAL TRANSIT ADMINISTRATION

(INCLUDING TRANSFER OF FUNDS)

SEC. 160. The limitations on obligations for the programs of the Federal Transit Administration shall not apply to any authority under 49 U.S.C. 5338, previously made available for obligation, or to any other authority previously made available for obligation.

SEC. 161. Notwithstanding any other provision of law, funds appropriated or limited by this Act under the heading "Capital Investment Grants" of the Federal Transit Administration for projects specified in this Act not obligated by September 30, 2029, and other recoveries, shall be directed to projects eligible to use the funds for the purposes for which they were originally provided.

SEC. 162. Notwithstanding any other provision of law, any funds appropriated before October 1, 2025, under any section of chapter 53 of title 49, United States Code, that remain available for expenditure, may be transferred to and administered under the most recent appropriation heading for any such section.

SEC. 163. None of the funds made available by this Act or any other Act shall be used to adjust apportionments or withhold funds from apportionments pursuant to section 9503(e)(4) of the Internal Revenue Code of 1986 (26 U.S.C. 9503(e)(4)).

SEC. 164. None of the funds made available by this Act or any other Act shall be used to impede or hinder project advancement or approval for any project seeking a Federal contribution from the capital investment grants program of greater than 40 percent of project costs as authorized under section 5309 of title 49, United States Code.

SEC. 165. Of the unobligated balances made available for the following programs authorized by Public Law 109–59, the Secretary shall make $94,316,766 available for transportation assistance, including assistance with transit planning, capital projects, and operating assistance, for surface, commuter, and public transportation systems necessary to support the mobility needs of the international quadrennial Olympic and Paralympic events as authorized by section 1223(e) of Public Law 105–178—

(1) "Alternatives Analysis Program" under section 5339 of title 49, United States Code;

(2) "bus and bus-related equipment and facilities" under section 5309 of title 49, United States Code; and

(3) "Alternative Transportation in Parks and Public Lands" under section 5320 of title 49, United States Code:

*Provided,* That such assistance shall be for any eligible entity as defined by section 6702 of title 49, United States Code, that serves or supports service to a venue that is part of the 2028 international quadrennial Olympic or Paralympic events: *Provided further,* That such assistance may be provided through direct grants or cooperative agreements for which the Federal share shall not exceed 80 percent, with the exception of assistance for a supplemental public transportation bus system which shall be no less than 90 percent: *Provided further,* That these amounts shall be in addition to other amounts made available for such purpose: *Provided further,* That amounts made available in this section may be transferred to other operating administrations of the Department to administer the amounts made available in this

H. R. 7148—199

section as appropriate: *Provided further,* That amounts made available in this section shall only be available for obligation for the purposes specifically authorized in this section in this Act for a period not to exceed 2 fiscal years after the official closing of the 2028 international quadrennial Olympic and Paralympic events.

SEC. 166. Of the unobligated balances made available for the following programs authorized by Public Law 109–59 and Public Law 105–178, the Secretary shall make $100,250,212 available for grants to transit agencies for costs related to eligible planning, capital, and operating expenses for equipment and facilities in support of matches or other public events held in domestic host cities for the FIFA World Cup 2026—

(1) "Clean Fuels Grant Program" under section 5308 of title 49, United States Code;

(2) "Job Access and Reverse Commute Formula Grants" under section 5316 of title 49, United States Code;

(3) "New Freedom" under section 5317 of title 49, United States Code, as amended by Public Law 109–59; and

(4) "Rural Transportation Accessibility Incentive Program" under section 3038 of Public Law 105–178:

*Provided,* That the Secretary shall apportion such amounts not later than 30 days after enactment of this Act so that the transit agencies in each of the domestic host cities for the FIFA World Cup 2026 are each entitled to receive an amount equal to—

(1) 70 percent of the total amount apportioned multiplied by a ratio equal to the FIFA estimated stadium capacity of the host stadium at the time of apportionment divided by the total FIFA estimated stadium capacity of all host stadiums at the time of apportionment; and

(2) 30 percent of the total amount apportioned multiplied by a ratio equal to the number of matches to be held in the host stadium divided by the total number of matches to be held in all host cities in the United States:

*Provided further,* That notwithstanding subsection (a)(1) or (b) of section 5307 of title 49, United States Code, amounts made available in this section are available for the planning, capital, and operating expenses of transit agencies for hosting matches or other public events held in domestic host cities for the FIFA World Cup 2026, eligible under section 5307 of title 49, United States Code: *Provided further,* That such planning, capital, and operating expenses are not required to be included in a transportation improvement program, long-range transportation, statewide transportation plan, or a statewide transportation improvement program: *Provided further,* That the Secretary shall not waive the requirements of section 5333 of title 49, United States Code, for amounts made available in this section: *Provided further,* That unless otherwise specified, applicable requirements under chapter 53 of title 49, United States Code, shall apply to amounts made available in this section, except that the Federal share of the costs for which any grant is made according to this section shall be, at the option of the recipient, up to 100 percent: *Provided further,* That amounts made available in this section shall only be available for obligation for the purposes specifically authorized in this section in this Act for a period not to exceed 1 fiscal year after the official closing of the FIFA World Cup 2026 events.

H. R. 7148—200

GREAT LAKES ST. LAWRENCE SEAWAY DEVELOPMENT CORPORATION

The Great Lakes St. Lawrence Seaway Development Corporation is hereby authorized to make such expenditures, within the limits of funds and borrowing authority available to the Corporation, and in accord with law, and to make such contracts and commitments without regard to fiscal year limitations, as provided by section 9104 of title 31, United States Code, as may be necessary in carrying out the programs set forth in the Corporation's budget for the current fiscal year.

OPERATIONS AND MAINTENANCE

(HARBOR MAINTENANCE TRUST FUND)

For necessary expenses to conduct the operations, maintenance, and capital infrastructure activities on portions of the St. Lawrence Seaway owned, operated, and maintained by the Great Lakes St. Lawrence Seaway Development Corporation, $38,080,000, to be derived from the Harbor Maintenance Trust Fund, pursuant to section 210 of the Water Resources Development Act of 1986 (33 U.S.C. 2238): *Provided,* That of the amounts made available under this heading, not less than $15,950,000 shall be for the seaway infrastructure program.

MARITIME ADMINISTRATION

MARITIME SECURITY PROGRAM

(INCLUDING RESCISSION)

For necessary expenses to maintain and preserve a U.S.-flag merchant fleet as authorized under chapter 531 of title 46, United States Code, to serve the national security needs of the United States, $390,000,000, to remain available until expended: *Provided,* That of the unobligated balances remaining from fiscal year 2021, 2022, 2023, 2024, and 2025 appropriations made available under this heading, $38,400,000 are hereby permanently rescinded.

CABLE SECURITY FLEET

(INCLUDING RESCISSION)

For the cable security fleet program, as authorized under chapter 532 of title 46, United States Code, $10,000,000, to remain available until expended: *Provided,* That of the unobligated balances remaining from fiscal year 2021 and 2022 appropriations made available under this heading, $12,392,000 are hereby permanently rescinded.

TANKER SECURITY PROGRAM

(INCLUDING RESCISSION)

For Tanker Security Fleet payments, as authorized under section 53406 of title 46, United States Code, $81,600,000, to remain available until expended: *Provided,* That of the unobligated balances remaining from fiscal year 2022, 2023, and 2024 appropriations

made available under this heading, $42,808,000 are hereby permanently rescinded.

OPERATIONS AND TRAINING

For necessary expenses of operations and training activities authorized by law, $275,791,000: *Provided,* That of the sums appropriated under this heading—

(1) $101,500,000 shall remain available until September 30, 2027, for the operations of the United States Merchant Marine Academy;

(2) $50,000,000 shall remain available until expended for facilities maintenance and repair, and equipment, at the United States Merchant Marine Academy;

(3) $50,000,000 shall remain available until expended for the capital improvement program at the United States Merchant Marine Academy;

(4) $2,000,000 shall remain available until September 30, 2027, for the maritime environmental and technical assistance program authorized under section 50307 of title 46, United States Code; and

(5) $5,000,000 shall remain available until expended, for the United States marine highway program to make grants for the purposes authorized under section 55601 of title 46, United States Code:

*Provided further,* That the Administrator of the Maritime Administration shall transmit to the House and Senate Committees on Appropriations the annual report on sexual assault and sexual harassment at the United States Merchant Marine Academy as required pursuant to section 3510 of the National Defense Authorization Act for fiscal year 2017 (46 U.S.C. 51318): *Provided further,* That the Administrator of the Maritime Administration shall transmit to the House and Senate Committees on Appropriations an annual capital improvement program plan not later than 30 days after the submission of the budget request: *Provided further,* That available balances under this heading for the short sea transportation program or America's marine highway program (now known as the United States marine highway program) from prior year recoveries shall be available to carry out activities authorized under section 55601 of title 46, United States Code.

STATE MARITIME ACADEMY OPERATIONS

For necessary expenses of operations, support, and training activities for State Maritime Academies, $138,900,000: *Provided,* That of the sums appropriated under this heading—

(1) $7,800,000 shall remain available until expended for maintenance, repair, and life extension of training ships at the State Maritime Academies;

(2) $110,000,000 shall remain available until expended for the national security multi-mission vessel program, of which—

(A) not less than $55,000,000 shall be for necessary expenses to design, plan, construct infrastructure, and purchase equipment necessary to berth such ships, as determined by the Secretary: *Provided,* That such funds may be used to reimburse State Maritime Academies for costs incurred prior to the date of enactment of this Act; and

H. R. 7148—202

(B) up to $55,000,000 shall be for expenses related to the operation, integration, oversight, and management of national security multi-mission vessel school ships, including insurance, maintenance, repair, and equipment costs;

(3) $4,800,000 shall remain available until September 30, 2030, for the student incentive program;

(4) $9,300,000 shall remain available until expended for training ship fuel assistance; and

(5) $7,000,000 shall remain available until September 30, 2027, for direct payments for State Maritime Academies: *Provided,* That each institution eligible for such payments receives no more than $1,000,000.

### ASSISTANCE TO SMALL SHIPYARDS

To make grants to qualified shipyards as authorized under section 54101 of title 46, United States Code, $35,000,000, to remain available until expended.

### SHIP DISPOSAL

For necessary expenses related to the disposal of obsolete vessels in the National Defense Reserve Fleet of the Maritime Administration, $6,000,000, to remain available until expended.

### MARITIME GUARANTEED LOAN (TITLE XI) PROGRAM ACCOUNT

#### (INCLUDING TRANSFER OF FUNDS)

For administrative expenses to carry out the guaranteed loan program, $3,940,000, which shall be transferred to and merged with the appropriations for "Maritime Administration—Operations and Training".

### PORT INFRASTRUCTURE DEVELOPMENT PROGRAM

To make grants to improve port facilities as authorized under section 54301 of title 46, United States Code, and section 3501(b) of the National Defense Authorization Act for fiscal year 2026 (Public Law 119–60), $103,330,000, to remain available until expended: *Provided,* That of the sums appropriated under this heading in this Act—

(1) $38,628,000 shall be for projects for coastal seaports, inland river ports, or Great Lakes ports: *Provided,* That for grants awarded under this paragraph in this Act, the minimum grant size shall be $1,000,000; and

(2) $64,702,000 shall be for the purposes, and in the amounts, specified for Community Project Funding/Congressionally Directed Spending in the table entitled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That amounts made available in this paragraph for such purposes shall not diminish or prejudice any applicant or geographic region for other discretionary grant or loan awards made by the Department of Transportation.

H. R. 7148—203

ADMINISTRATIVE PROVISIONS—MARITIME ADMINISTRATION

(INCLUDING RESCISSION)

SEC. 170. Notwithstanding any other provision of this Act, in addition to any existing authority, the Maritime Administration is authorized to furnish utilities and services and make necessary repairs in connection with any lease, contract, or occupancy involving Government property under control of the Maritime Administration: *Provided,* That payments received therefor shall be credited to the appropriation charged with the cost thereof and shall remain available until expended: *Provided further,* That rental payments under any such lease, contract, or occupancy for items other than such utilities, services, or repairs shall be deposited into the Treasury as miscellaneous receipts.

SEC. 171. Of the unobligated balances from prior year appropriations available under the heading "Maritime Administration—Maritime Guaranteed Loan (Title XI) Program Account", $34,000,000 are hereby rescinded.

PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION

OPERATIONAL EXPENSES

For necessary operational expenses of the Pipeline and Hazardous Materials Safety Administration, $28,647,000, of which $4,500,000 shall remain available until September 30, 2028: *Provided,* That not less than $2,000,000 of the amounts made available under this heading shall be for pipeline safety information grants to communities as authorized under section 60130 of title 49, United States Code: *Provided further,* That the Secretary shall issue a notice of funding opportunity for such funds not later than 120 days after enactment of this Act.

HAZARDOUS MATERIALS SAFETY

For expenses necessary to discharge the hazardous materials safety functions of the Pipeline and Hazardous Materials Safety Administration, $66,050,000, of which $8,570,000 shall remain available until September 30, 2028, of which $1,000,000 shall be made available for carrying out section 5107(i) of title 49, United States Code: *Provided,* That up to $800,000 in fees collected under section 5108(g) of title 49, United States Code, shall be deposited in the general fund of the Treasury as offsetting receipts: *Provided further,* That there may be credited to this appropriation, to be available until expended, funds received from States, counties, municipalities, other public authorities, and private sources for expenses incurred for training, for reports publication and dissemination, and for travel expenses incurred in performance of hazardous materials exemptions and approvals functions.

H. R. 7148—204

PIPELINE SAFETY

(PIPELINE SAFETY FUND)

(OIL SPILL LIABILITY TRUST FUND)

For expenses necessary to carry out a pipeline safety program, as authorized by section 60107 of title 49, United States Code, and to discharge the pipeline program responsibilities of the Oil Pollution Act of 1990 (Public Law 101–380), $214,807,000, to remain available until September 30, 2028, of which $30,000,000 shall be derived from the Oil Spill Liability Trust Fund; of which $177,407,000 shall be derived from the Pipeline Safety Fund; of which $200,000 shall be derived from the fees collected under section 60303 of title 49, United States Code, and deposited in the Liquefied Natural Gas Siting Account for compliance reviews of liquefied natural gas facilities; of which $200,000 shall be derived from the fees collected under section 60117, of title 49, United States Code, and deposited in the Pipeline Safety Design Review Account for facility design safety reviews; and of which $7,000,000 shall be derived from fees collected under section 60302 of title 49, United States Code, and deposited in the Underground Natural Gas Storage Facility Safety Account for the purpose of carrying out section 60141 of title 49, United States Code: *Provided,* That not less than $1,058,000 of the amounts made available under this heading shall be for the one-call state grant program: *Provided further,* That any amounts made available under this heading in this Act or in prior Acts for research contracts, grants, cooperative agreements or research other transactions agreements (OTAs) shall require written notification to the House and Senate Committees on Appropriations not less than 3 full business days before such research contracts, grants, cooperative agreements, or research OTAs are announced by the Department of Transportation: *Provided further,* That the Secretary shall transmit to the House and Senate Committees on Appropriations the report on pipeline safety testing enhancement as required pursuant to section 105 of the Protecting our Infrastructure of Pipelines and Enhancing Safety Act of 2020 (division R of Public Law 116–260): *Provided further,* That the Secretary may obligate amounts made available under this heading to engineer, erect, alter, and repair buildings or make any other public improvements for research facilities at the Transportation Technology Center after the Secretary submits an updated research plan and the report in the preceding proviso to the House and Senate Committees on Appropriations and after such plan and report in the preceding proviso are approved by the House and Senate Committees on Appropriations: *Provided further,* That of the amounts made available under this heading, not less than $5,000,000 is for the National Center of Excellence for Liquefied Natural Gas Safety authorized under section 111 of the Protecting Our Infrastructure of Pipelines and Enhancing Safety Act of 2020 (PIPES) Act.

H. R. 7148—205

EMERGENCY PREPAREDNESS GRANTS

(LIMITATION ON OBLIGATIONS)

(EMERGENCY PREPAREDNESS FUND)

For expenses necessary to carry out the Emergency Prepared-
ness Grants program, not more than $46,825,000 shall remain
available until September 30, 2028, from amounts made available
by section 5116(h) and subsections (b) and (c) of section 5128
of title 49, United States Code: *Provided,* That notwithstanding
section 5116(h)(4) of title 49, United States Code, not more than
4 percent of the amounts made available from this account shall
be available to pay the administrative costs of carrying out sections
5116, 5107(e), and 5108(g)(2) of title 49, United States Code: *Pro-
vided further,* That notwithstanding subsections (b) and (c) of sec-
tion 5128 of title 49, United States Code, and the limitation on
obligations provided under this heading, prior year recoveries recog-
nized in the current year shall be available to develop and deliver
hazardous materials emergency response training for emergency
responders, including response activities for the transportation of
crude oil, ethanol, flammable liquids, and other hazardous commod-
ities by rail, consistent with National Fire Protection Association
standards, and to make such training available through an elec-
tronic format: *Provided further,* That the prior year recoveries made
available under this heading shall also be available to carry out
sections 5116(a)(1)(C), 5116(h), 5116(i), 5116(j), and 5107(e) of title
49, United States Code.

OFFICE OF INSPECTOR GENERAL

SALARIES AND EXPENSES

For necessary expenses of the Office of Inspector General to
carry out the provisions of the Inspector General Act of 1978,
as amended, $113,000,000: *Provided,* That the Inspector General
shall have all necessary authority, in carrying out the duties speci-
fied in the Inspector General Act, as amended (5 U.S.C. App.),
to investigate allegations of fraud, including false statements to
the government (18 U.S.C. 1001), by any person or entity that
is subject to regulation by the Department of Transportation: *Pro-
vided further,* That none of the funds made available by this Act
or any other Act shall be used to impede or prevent the Inspector
General (or Acting Inspector General) of the Department of
Transportation from exercising the independent authority over all
personnel decisions, as authorized under section 406 of title 5,
United States Code.

GENERAL PROVISIONS—DEPARTMENT OF TRANSPORTATION

SEC. 180. (a) During the current fiscal year, applicable appro-
priations to the Department of Transportation shall be available
for maintenance and operation of aircraft; hire of passenger motor
vehicles and aircraft; purchase of liability insurance for motor
vehicles operating in foreign countries on official department busi-
ness; and uniforms or allowances therefor, as authorized by sections
5901 and 5902 of title 5, United States Code.

(b) During the current fiscal year, applicable appropriations to the Department and its operating administrations shall be available for the purchase, maintenance, operation, and deployment of unmanned aircraft systems that advance the missions of the Department of Transportation or an operating administration of the Department of Transportation.

(c) Any unmanned aircraft system purchased, procured, or contracted for by the Department prior to the date of enactment of this Act shall be deemed authorized by Congress as if this provision was in effect when the system was purchased, procured, or contracted for.

SEC. 181. Appropriations contained in this Act for the Department of Transportation shall be available for services as authorized by section 3109 of title 5, United States Code, but at rates for individuals not to exceed the per diem rate equivalent to the rate for an Executive Level IV.

SEC. 182. (a) No recipient of amounts made available by this Act shall disseminate personal information (as defined in section 2725(3) of title 18, United States Code) obtained by a State department of motor vehicles in connection with a motor vehicle record as defined in section 2725(1) of title 18, United States Code, except as provided in section 2721 of title 18, United States Code, for a use permitted under section 2721 of title 18, United States Code.

(b) Notwithstanding subsection (a), the Secretary shall not withhold amounts made available by this Act for any grantee if a State is in noncompliance with this provision.

SEC. 183. None of the funds made available by this Act shall be available for salaries and expenses of more than 125 political and Presidential appointees in the Department of Transportation: *Provided,* That none of the personnel covered by this provision may be assigned on temporary detail outside the Department of Transportation.

SEC. 184. Funds received by the Federal Highway Administration and Federal Railroad Administration from States, counties, municipalities, other public authorities, and private sources for expenses incurred for training may be credited respectively to the Federal Highway Administration's "Federal-Aid Highways" account and to the Federal Railroad Administration's "Safety and Operations" account, except for State rail safety inspectors participating in training pursuant to section 20105 of title 49, United States Code.

SEC. 185. None of the funds made available by this Act or in title VIII of division J of Public Law 117–58 to the Department of Transportation may be used to make, withdraw, terminate, or rescind (except at the request of the recipient) a loan, loan guarantee, line of credit, letter of intent, federally funded cooperative agreement, full funding grant agreement, or discretionary grant unless the Secretary of Transportation notifies the House and Senate Committees on Appropriations not less than 3 full business days before any project competitively selected to receive any discretionary grant award, letter of intent, loan commitment, loan guarantee commitment, line of credit commitment, federally funded cooperative agreement, or full funding grant agreement is announced or is notified of such changes by the Department or its operating administrations: *Provided,* That the Secretary of Transportation shall provide the House and Senate Committees on Appropriations with a comprehensive list of all such loans,

loan guarantees, lines of credit, letters of intent, federally funded cooperative agreements, full funding grant agreements, and discretionary grants prior to the notification required under the preceding proviso: *Provided further,* That the Secretary gives concurrent notification to the House and Senate Committees on Appropriations for any "quick release" of funds from the emergency relief program: *Provided further,* That no notification shall involve funds that are not available for obligation.

SEC. 186. Rebates, refunds, incentive payments, minor fees, and other funds received by the Department of Transportation from travel management centers, charge card programs, the subleasing of building space, and miscellaneous sources are to be credited to appropriations of the Department of Transportation and allocated to organizational units of the Department of Transportation using fair and equitable criteria and such funds shall be available until expended.

SEC. 187. Notwithstanding any other provision of law, if any funds provided by or limited by this Act are subject to a reprogramming action that requires notice to be provided to the House and Senate Committees on Appropriations, transmission of such reprogramming notice shall be provided solely to the House and Senate Committees on Appropriations, and such reprogramming action shall be approved or denied solely by the House and Senate Committees on Appropriations: *Provided,* That the Secretary of Transportation may provide notice to other congressional committees of the action of the House and Senate Committees on Appropriations on such reprogramming but not sooner than 30 days after the date on which the reprogramming action has been approved or denied by the House and Senate Committees on Appropriations.

SEC. 188. Funds appropriated by this Act to the operating administrations may be obligated for the Office of the Secretary for the costs related to assessments or reimbursable agreements only when such amounts are for the costs of goods and services that are purchased to provide a direct benefit to the applicable operating administration or administrations.

SEC. 189. The Secretary of Transportation is authorized to carry out a program that establishes uniform standards for developing and supporting agency transit pass and transit benefits authorized under section 7905 of title 5, United States Code, including distribution of transit benefits by various paper and electronic media.

SEC. 190. The Department of Transportation may use funds provided by this Act, or any other Act, to assist a contract under title 49 or 23 of the United States Code utilizing geographic, economic, or any other hiring preference not otherwise authorized by law, or to amend a rule, regulation, policy or other measure that forbids a recipient of a Federal Highway Administration or Federal Transit Administration grant from imposing such hiring preference on a contract or construction project with which the Department of Transportation is assisting, only if the grant recipient certifies the following:

(1) that except with respect to apprentices or trainees, a pool of readily available but unemployed individuals possessing the knowledge, skill, and ability to perform the work that the contract requires resides in the jurisdiction;

H. R. 7148—208

(2) that the grant recipient will include appropriate provisions in its bid document ensuring that the contractor does not displace any of its existing employees in order to satisfy such hiring preference; and

(3) that any increase in the cost of labor, training, or delays resulting from the use of such hiring preference does not delay or displace any transportation project in the applicable statewide transportation improvement program or transportation improvement program.

SEC. 191. The Secretary of Transportation shall coordinate with the Secretaries of Homeland Security and Commerce to ensure that best practices for Industrial Control Systems Procurement are up-to-date and are considered for all systems procured with funds provided under this title.

SEC. 192. None of the funds made available in this Act may be used in contravention of the American Security Drone Act of 2023 (subtitle B of title XVIII of division A of Public Law 118–31).

SEC. 193. None of the funds appropriated or made available by this title for the Department of Transportation for fiscal year 2026 may be used to enforce a mask mandate in response to the COVID–19 virus.

SEC. 194. The Secretary shall issue a new notice of funding opportunity for six new university transportation centers, as authorized under section 5505 of title 49, United States Code: *Provided,* That in selecting such university transportation center awards, the Secretary shall first prioritize (a) any applicants that had previously been selected as a university transportation center focusing on transportation infrastructure durability and composite materials and were required to re-compete before the end of the typical 5-year term and who currently participate in the Department of Transportation's Advanced Research Projects Agency—Infrastructure program and (b) any applicant that had their university transportation center designation cancelled in May 2025 by the Department of Transportation and such university transportation center designation remains cancelled on the date of enactment of this Act: *Provided further,* That such university transportation center awards shall be made available using any unobligated amounts remaining from the university transportation centers program, which have not been committed to any existing university transportation center grantees: *Provided further,* That any such unobligated amounts shall include funds made available in section 11101(c)(1)(E) of the Infrastructure Investment and Jobs Act (Public Law 117–58) and funds made available under the heading "Federal Highway Administration—Highway Infrastructure Programs" in title VIII of division J of the Infrastructure Investment and Jobs Act (Public Law 117–58): *Provided further,* That amounts repurposed or transferred pursuant to this section shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5.

This title may be cited as the "Department of Transportation Appropriations Act, 2026".

H. R. 7148—209

TITLE II

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

MANAGEMENT AND ADMINISTRATION

EXECUTIVE OFFICES

For necessary salaries and expenses for Executive Offices, which shall be comprised of the offices of the Secretary, Deputy Secretary, Adjudicatory Services, Congressional and Intergovernmental Relations, Public Affairs, Small and Disadvantaged Business Utilization, and the Center for Faith, $17,500,000, to remain available until September 30, 2027: *Provided,* That of the sums appropriated under this heading not less than $2,500,000 shall be for the Office of the Deputy Secretary, of which not less than $500,000 shall be for the Office of Gender-Based Violence Prevention and not less than $1,500,000 shall be for the Office of Disaster Management: *Provided further,* That not to exceed $25,000 of the amount made available under this heading shall be available to the Secretary of Housing and Urban Development (referred to in this title as "the Secretary") for official reception and representation expenses as the Secretary may determine.

ADMINISTRATIVE SUPPORT OFFICES

For necessary salaries and expenses for Administrative Support Offices, $595,000,000, to remain available until September 30, 2027: *Provided,* That of the sums appropriated under this heading—
        (1) $103,200,000 shall be available for the Office of the Chief Financial Officer;
        (2) $93,000,000 shall be available for the Office of the General Counsel;
        (3) $218,000,000 shall be available for the Office of Administration;
        (4) $53,000,000 shall be available for the Office of the Chief Human Capital Officer;
        (5) $29,500,000 shall be available for the Office of the Chief Procurement Officer;
        (6) $40,000,000 shall be available for the Office of Field Policy and Management;
        (7) $3,300,000 shall be available for the Office of Departmental Equal Employment Opportunity; and
        (8) $55,000,000 shall be available for the Office of the Chief Information Officer:
*Provided further,* That funds made available under this heading may be used for necessary administrative and non-administrative expenses of the Department, not otherwise provided for, including purchase of uniforms, or allowances therefor, as authorized by sections 5901 and 5902 of title 5, United States Code; hire of passenger motor vehicles; and services as authorized by section 3109 of title 5, United States Code: *Provided further,* That notwithstanding any other provision of law, funds appropriated under this heading may be used for advertising and promotional activities that directly support program activities funded in this title: *Provided further,* That none of the funds made available by this or any prior Act may be used in contravention of section 3535(p) of title 42, United States Code.

H. R. 7148—210

PROGRAM OFFICES

For necessary salaries and expenses for Program Offices, $842,500,000, to remain available until September 30, 2027: *Provided,* That of the sums appropriated under this heading—

(1) $233,000,000 shall be available for the Office of Public and Indian Housing;

(2) $129,000,000 shall be available for the Office of Community Planning and Development;

(3) $380,000,000 shall be available for the Office of Housing;

(4) $31,500,000 shall be available for the Office of Policy Development and Research;

(5) $60,000,000 shall be available for the Office of Fair Housing and Equal Opportunity; and

(6) $9,000,000 shall be available for the Office of Lead Hazard Control and Healthy Homes.

INFORMATION TECHNOLOGY FUND

For Department-wide and program-specific information technology systems and infrastructure, $345,000,000, to remain available until September 30, 2028: *Provided,* That not later than 30 days after the end of each quarter, the Secretary shall brief the House and Senate Committees on Appropriations on all information technology modernization efforts as required in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

WORKING CAPITAL FUND

(INCLUDING TRANSFER OF FUNDS)

For the working capital fund for the Department of Housing and Urban Development (referred to in this paragraph as the "Fund"), pursuant, in part, to section 7(f) of the Department of Housing and Urban Development Act (42 U.S.C. 3535(f)), amounts transferred, including reimbursements pursuant to section 7(f), to the Fund under this heading shall be available only for Federal shared services used by offices and agencies of the Department, and for any such portion of any office or agency's printing, records management, space renovation, furniture, or supply services the Secretary has determined shall be provided through the Fund, and the operational expenses of the Fund: *Provided,* That amounts within the Fund shall not be available to provide services not specifically authorized under this heading: *Provided further,* That upon a determination by the Secretary that any other service (or portion thereof) authorized under this heading shall be provided through the Fund, amounts made available in this title for salaries and expenses under the headings "Executive Offices", "Administrative Support Offices", "Program Offices", and "Government National Mortgage Association", for such services shall be transferred to the Fund, to remain available until expended: *Provided further,* That the Secretary shall notify the House and Senate Committees on Appropriations of its plans for executing such transfers at least 15 days in advance of such transfers.

PUBLIC AND INDIAN HOUSING

TENANT-BASED RENTAL ASSISTANCE

For activities and assistance for the provision of tenant-based rental assistance authorized under the United States Housing Act of 1937, as amended (42 U.S.C. 1437 et seq.) (in this heading "the Act"), not otherwise provided for, $34,438,557,000, to remain available until expended, which shall be available on October 1, 2025 (in addition to the $4,000,000,000 previously appropriated under this heading that shall be available on October 1, 2025), and $4,000,000,000, to remain available until expended, which shall be available on October 1, 2026: *Provided,* That of the sums appropriated under this heading—

(1) $34,957,000,000 shall be available for renewals of expiring section 8 tenant-based annual contributions contracts (including renewals of enhanced vouchers under any provision of law authorizing such assistance under section 8(t) of the Act) and including renewal of other special purpose incremental vouchers: *Provided,* That notwithstanding any other provision of law, from amounts provided under this paragraph and any carryover, the Secretary for the calendar year 2026 funding cycle shall provide renewal funding for each public housing agency based on validated voucher management system (VMS) or successor system leasing and cost data for the prior calendar year and by applying an inflation factor as established by the Secretary, by notice published in the Federal Register, and by making any necessary adjustments for the costs associated with the first-time renewal of vouchers under this paragraph including tenant protection and choice neighborhoods vouchers: *Provided further,* That none of the funds provided under this paragraph may be used to fund a total number of unit months under lease which exceeds a public housing agency's authorized level of units under contract, except for public housing agencies participating in the moving to work (MTW) demonstration, which are instead governed in accordance with the requirements of the MTW demonstration program or their MTW agreements, if any, or as necessary on a temporary basis and within available resources to facilitate the transition of residents assisted by emergency housing vouchers (Public Law 117–2; 135 Stat. 58) to tenant-based rental assistance under the housing assistance payment contract under section 8(o) of the Act: *Provided further,* That any leasing or associated costs authorized for emergency housing vouchers in the preceding proviso above the public housing agency's authorized level of units under contract shall not be included in the calculation of the agency's renewal funding allocation for any subsequent fiscal year: *Provided further,* That the Secretary shall, to the extent necessary to stay within the amount specified under this paragraph (except as otherwise modified under this paragraph), prorate each public housing agency's allocation otherwise established pursuant to this paragraph: *Provided further,* That except as provided in the following provisos, the entire amount specified under this paragraph (except as otherwise modified under this paragraph) shall be obligated to the public housing agencies based on the allocation and pro rata method described above, and the Secretary shall notify

public housing agencies of their annual budget by the latter
of 60 days after enactment of this Act or March 1, 2026:
*Provided further,* That the Secretary may extend the notifica-
tion period only after the House and Senate Committees on
Appropriations are notified at least 10 business days in advance
of the deadline: *Provided further,* That public housing agencies
participating in the MTW demonstration shall be funded in
accordance with the requirements of the MTW demonstration
program or their MTW agreements, if any, and shall be subject
to the same pro rata adjustments under the preceding proviso:
*Provided further,* That the Secretary may perform a statutory
offset of public housing agencies' calendar year 2026 allocations
based on the excess amounts of public housing agencies' net
restricted assets accounts, including HUD-held programmatic
reserves (in accordance with VMS or successor system data
in calendar year 2025 that is verifiable and complete), as deter-
mined by the Secretary: *Provided further,* That public housing
agencies participating in the MTW demonstration shall also
be subject to the statutory offset: *Provided further,* That for
amounts subject to the single fund budget authority provisions
of their MTW agreements, excess amounts shall be offset only
to the extent permitted by section 239 of the Consolidated
Appropriations Act, 2016 (Public Law 114–113): *Provided fur-
ther,* That for public housing agencies in the MTW demonstra-
tion subject to single fund budget authority provisions, the
Secretary shall provide not less than 60 days to appeal such
offsets and shall not offset amounts that have been committed
to capital improvement, development, and other repositioning
activities that are scheduled to close within 12 months of enact-
ment of this Act, as evidenced in funding applications, project
schedules, or other commitments to third parties implementing
such activities, to the extent that reserve amounts excluded
from offset under such section 239 are insufficient to cover
such commitments: *Provided further,* That the Secretary shall
not offset any portion of a public housing agency's excess
amounts if offsetting such portion would result in a public
housing agency being put in a shortfall position in calendar
year 2026, as estimated by HUD prior to the offset's
implementation, as determined by the Secretary: *Provided fur-
ther,* That the Secretary shall use any such offset amounts
referred to in the preceding five provisos throughout the cal-
endar year to prevent the termination of rental assistance
for families as the result of insufficient funding, as determined
by the Secretary, and to avoid or reduce the proration of
renewal funding allocations: *Provided further,* That the Sec-
retary may waive or specify alternative requirements for section
5A and section 8(o) of the Act or any regulation applicable
to such statutes related to the administration of waiting lists,
local preferences, portability, and public housing agency plan
and public hearing requirements to facilitate or expedite the
transition of residents assisted by emergency housing vouchers
(Public Law 117–2; 135 Stat. 58) to tenant-based rental assist-
ance under the housing assistance payment contract under
section 8(o) of the Act: *Provided further,* That up to
$400,000,000 shall be available only:

      (A) for adjustments in the allocations for public housing
      agencies, after application for an adjustment by a public

housing agency that experienced a significant increase, as determined by the Secretary, in renewal costs of vouchers resulting from unforeseen circumstances or from portability under section 8(r) of the Act;

(B) for vouchers that were not in use during the previous 12-month period in order to be available to meet a commitment pursuant to section 8(o)(13) of the Act, or an adjustment for a funding obligation not yet expended in the previous calendar year for a MTW-eligible activity to develop affordable housing for an agency added to the MTW demonstration under the expansion authority provided in section 239 of the Transportation, Housing and Urban Development, and Related Agencies Appropriations Act, 2016 (division L of Public Law 114–113);

(C) for adjustments for costs associated with HUD–Veterans Affairs Supportive Housing (HUD–VASH) vouchers;

(D) for public housing agencies that despite taking reasonable cost savings measures, as determined by the Secretary, would otherwise be required to terminate rental assistance for families as a result of insufficient funding;

(E) for adjustments in the allocations for public housing agencies that—

(i) are leasing a lower-than-average percentage of their authorized vouchers,

(ii) have low amounts of budget authority in their net restricted assets accounts and HUD-held programmatic reserves, relative to other agencies, and

(iii) are not participating in the MTW demonstration, to enable such agencies to lease more vouchers;

(F) for withheld payments in accordance with section 8(o)(8)(A)(ii) of the Act for months in the previous calendar year that were subsequently paid by the public housing agency after the agency's actual costs were validated;

(G) for public housing agencies that have experienced increased costs or loss of units in an area for which the President declared a disaster under title IV of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170 et seq.); and

(H) for costs associated with mainstream vouchers: *Provided further,* That the Secretary shall allocate amounts under the preceding proviso based on need, as determined by the Secretary;

(2) $600,622,000 shall be available for section 8 rental assistance for relocation and replacement of housing units that are demolished or disposed of pursuant to section 18 of the Act, conversion of section 23 projects to assistance under section 8, relocation of witnesses (including victims of violent crimes) in connection with efforts to combat crime in public and assisted housing pursuant to a request from a law enforcement or prosecution agency, enhanced vouchers under any provision of law authorizing such assistance under section 8(t) of the Act, choice neighborhood vouchers, mandatory and voluntary conversions, and tenant protection assistance including replacement and relocation assistance or for project-based assistance to prevent the displacement of unassisted elderly tenants currently residing in section 202 properties financed between 1959

and 1974 that are refinanced pursuant to Public Law 106–569, as amended, or under the authority as provided under this Act: *Provided,* That when a public housing development is submitted for demolition or disposition under section 18 of the Act, the Secretary may provide section 8 rental assistance when the units pose an imminent health and safety risk to residents: *Provided further,* That the Secretary may provide section 8 rental assistance from amounts made available under this paragraph for units assisted under a project-based subsidy contract funded under the "Project-Based Rental Assistance" heading under this title where the owner has received a Notice of Default and the units pose an imminent health and safety risk to residents: *Provided further,* That of the amounts made available under this paragraph, no less than $5,000,000 may be available to provide tenant protection assistance, not otherwise provided under this paragraph, to residents residing in low vacancy areas and who may have to pay rents greater than 30 percent of household income, as the result of: (A) the maturity of a HUD-insured, HUD-held or section 202 loan that requires the permission of the Secretary prior to loan prepayment; (B) the expiration of a rental assistance contract for which the tenants are not eligible for enhanced voucher or tenant protection assistance under existing law; or (C) the expiration of affordability restrictions accompanying a mortgage or preservation program administered by the Secretary: *Provided further,* That such tenant protection assistance made available under the preceding proviso may be provided under the authority of section 8(t) or section 8(o)(13) of the Act: *Provided further,* That any tenant protection voucher made available from amounts under this paragraph shall not be reissued by any public housing agency, except the replacement vouchers as defined by the Secretary by notice, when the initial family that received any such voucher no longer receives such voucher, and the authority for any public housing agency to issue any such voucher shall cease to exist: *Provided further,* That the Secretary may only provide replacement vouchers for units that were occupied within the previous 24 months that cease to be available as assisted housing, subject only to the availability of funds: *Provided further,* That amounts made available under this paragraph may be available to provide calendar year 2026 assistance to public housing agencies that would otherwise be required to terminate emergency housing vouchers (Public Law 117–2; 135 Stat. 58) for families as a result of insufficient funding;

(3) $2,835,935,000 shall be available for administrative and other expenses of public housing agencies in administering the section 8 tenant-based rental assistance program, of which up to $30,000,000 shall be available to the Secretary to allocate to public housing agencies that need additional funds to administer their section 8 programs, including fees associated with section 8 tenant protection rental assistance, the administration of disaster related vouchers, HUD–VASH vouchers, and other special purpose incremental vouchers: *Provided,* That no less than $2,805,935,000 of the amount provided in this paragraph shall be allocated to public housing agencies for the calendar year 2026 funding cycle based on section 8(q) of the Act (and related appropriations Act provisions) as in effect immediately

before the enactment of the Quality Housing and Work Responsibility Act of 1998 (Public Law 105–276): *Provided further,* That if the amounts made available under this paragraph are insufficient to pay the amounts determined under the preceding proviso, the Secretary may decrease the amounts allocated to agencies by a uniform percentage applicable to all agencies receiving funding under this paragraph or may, to the extent necessary to provide full payment of amounts determined under the preceding proviso, utilize unobligated balances, including recaptures and carryover, remaining from funds appropriated under this heading from prior fiscal years, excluding special purpose vouchers, notwithstanding the purposes for which such amounts were appropriated: *Provided further,* That all public housing agencies participating in the MTW demonstration shall be funded in accordance with the requirements of the MTW demonstration program or their MTW agreements, if any, and shall be subject to the same uniform percentage decrease as under the preceding proviso: *Provided further,* That amounts provided under this paragraph shall be only for activities related to the provision of tenant-based rental assistance authorized under section 8, including related development activities;

(4) $15,000,000 shall be available for incremental rental voucher assistance for use through a supported housing program administered in conjunction with the Department of Veterans Affairs as authorized under section 8(o)(19) of the United States Housing Act of 1937: *Provided,* That the Secretary of Housing and Urban Development shall make such funding available, notwithstanding section 203 (competition provision) of this title, to public housing agencies that partner with eligible VA medical centers or other entities as designated by the Secretary of the Department of Veterans Affairs, based on geographical need for such assistance as identified by the Secretary of the Department of Veterans Affairs, public housing agency administrative performance, and other factors as specified by the Secretary of Housing and Urban Development in consultation with the Secretary of the Department of Veterans Affairs: *Provided further,* That the Secretary of Housing and Urban Development may waive, or specify alternative requirements for (in consultation with the Secretary of the Department of Veterans Affairs), any provision of any statute or regulation that the Secretary of Housing and Urban Development administers in connection with the use of funds made available under this paragraph (except for requirements related to fair housing, nondiscrimination, labor standards, and the environment), upon a finding by the Secretary that any such waivers or alternative requirements are necessary for the effective delivery and administration of such voucher assistance: *Provided further,* That assistance made available under this paragraph shall continue to remain available for homeless veterans upon turnover: *Provided further,* That of the total amount made available under this paragraph, up to $10,000,000 may be for additional fees established by and allocated pursuant to a method determined by the Secretary for administrative and other expenses (including those eligible activities defined by notice to facilitate leasing, such as security deposit assistance and costs related

H. R. 7148—216

to the retention and support of participating owners) of public housing agencies in administering HUD–VASH vouchers;

(5) $30,000,000 shall be available for the family unification program as authorized under section 8(x) of the Act: *Provided,* That the amounts made available under this paragraph are provided as follows:

(A) $5,000,000 shall be available for new incremental voucher assistance, which shall continue to remain available for family unification upon turnover; and

(B) $25,000,000 shall be available for new incremental voucher assistance to assist eligible youth as defined by such section 8(x)(2)(B) of the Act, which shall continue to remain available for such eligible youth upon turnover: *Provided,* That such amounts shall be available on a non-competitive basis to public housing agencies that partner with public child welfare agencies to identify such eligible youth, that request such assistance to timely assist such eligible youth, and that meet any other criteria as specified by the Secretary: *Provided further,* That the Secretary shall review utilization of such assistance and assistance originating from appropriations made available for youth under this heading in any prior Act that the Secretary made available on a noncompetitive basis, at an interval to be determined by the Secretary, and unutilized voucher assistance that is no longer needed based on such review shall be recaptured by the Secretary and reallocated pursuant to the preceding proviso:

*Provided further,* That any public housing agency administering new incremental voucher assistance originating from appropriations made available for the family unification program under this heading in this or any prior Act that the Secretary made available on a competitive basis that determines it no longer has an identified need for such assistance upon turnover shall notify the Secretary, and the Secretary shall recapture such assistance from the agency and reallocate it to any other public housing agency or agencies based on need for voucher assistance in connection with such specified program or eligible youth, as applicable; and

(6) the Secretary shall separately track all special purpose vouchers funded under this heading and continue to provide timely updates on budget, utilization, spending and leasing trends for all vouchers by purpose on the voucher data dashboard on the publicly accessible website of the Department: *Provided,* That upon turnover, special purpose vouchers issued pursuant to section 811 of the Cranston-Gonzalez National Affordable Housing Act (42 U.S.C. 8013) funded under this or any other heading in this or prior Acts, shall be provided to non-elderly persons with disabilities.

HOUSING CERTIFICATE FUND

(INCLUDING RESCISSIONS)

Unobligated balances, including recaptures and carryover, remaining from funds appropriated to the Department of Housing and Urban Development under this heading, the heading "Annual Contributions for Assisted Housing" and the heading "Project-Based

H. R. 7148—217

Rental Assistance", for fiscal year 2026 and prior years may be used for renewal of or amendments to section 8 project-based contracts and for performance-based contract administrators, notwithstanding the purposes for which such funds were appropriated: *Provided,* That any obligated balances of contract authority from fiscal year 1974 and prior fiscal years that have been terminated shall be rescinded: *Provided further,* That amounts heretofore recaptured, or recaptured during the current fiscal year, from section 8 project-based contracts from source years fiscal year 1975 through fiscal year 1987 are hereby rescinded, and an amount of additional new budget authority, equivalent to the amount rescinded is hereby appropriated, to remain available until expended, for the purposes set forth under this heading, in addition to amounts otherwise available.

PUBLIC HOUSING FUND

For 2026 payments to public housing agencies for the operation and management of public housing, as authorized by section 9(e) of the United States Housing Act of 1937 (42 U.S.C. 1437g(e)) (the "Act"), and to carry out capital and management activities for public housing agencies, as authorized under section 9(d) of the Act (42 U.S.C. 1437g(d)), $8,319,393,000, to remain available until September 30, 2029: *Provided,* That of the sums appropriated under this heading—

(1) $4,687,393,000 shall be available for the Secretary to allocate pursuant to the operating fund formula at part 990 of title 24, Code of Federal Regulations, for 2026 payments;

(2) $337,000,000 shall be available for the Secretary to allocate pursuant to a need-based application process, notwithstanding section 203 of this title, not subject to such operating fund formula, and without regard to unit count, to public housing agencies that experience, or are at risk of, financial shortfalls, as determined by the Secretary: *Provided,* That the Secretary shall notify public housing agencies of their estimated shortfall eligibility no later than 60 days of the enactment of this Act;

(3) $3,200,000,000 shall be available for the Secretary to allocate pursuant to the capital fund formula at section 905.400 of title 24, Code of Federal Regulations: *Provided,* That for funds described under this paragraph, the limitation in section 9(g)(1) of the Act shall be 25 percent: *Provided further,* That the Secretary may waive the limitation in the preceding proviso to allow public housing agencies to fund activities authorized under section 9(e)(1)(C) of the Act: *Provided further,* That the Secretary shall notify public housing agencies requesting waivers under the preceding proviso if the request is approved or denied within 14 days of submitting the request: *Provided further,* That from the funds made available under this paragraph, the Secretary shall provide bonus awards in fiscal year 2026 to public housing agencies that are designated high performers: *Provided further,* That the Department shall notify public housing agencies of their formula allocation within 60 days of enactment of this Act;

(4) $30,000,000 shall be available for the Secretary to make grants, notwithstanding section 203 of this title, to public housing agencies for emergency capital needs, including safety

and security measures necessary to address crime and drug-related activity, as well as needs resulting from unforeseen or unpreventable emergencies and natural disasters excluding Presidentially declared emergencies and natural disasters under the Robert T. Stafford Disaster Relief and Emergency Act (42 U.S.C. 5121 et seq.) occurring in fiscal year 2026: *Provided,* That of the amount made available under this paragraph, not less than $10,000,000 shall be for safety and security measures: *Provided further,* That in addition to the amount in the preceding proviso for such safety and security measures, any amounts that remain available, after all applications received on or before September 30, 2027, for emergency capital needs have been processed, shall be allocated to public housing agencies for such safety and security measures;

(5) $50,000,000 shall be available for competitive grants to public housing agencies to evaluate and reduce residential health hazards in public housing, including lead-based paint (by carrying out the activities of risk assessments, abatement, and interim controls, as those terms are defined in section 1004 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 (42 U.S.C. 4851b)), carbon monoxide, mold, radon, and fire safety: *Provided,* That not less than $25,000,000 of the amounts provided under this paragraph shall be awarded for evaluating and reducing lead-based paint hazards, except that if such amount is undersubscribed any remaining amounts may be awarded to qualified applicants for other purposes under this paragraph: *Provided further,* That for purposes of environmental review, a grant under this paragraph shall be considered funds for projects or activities under title I of the Act for purposes of section 26 of the Act (42 U.S.C. 1437x) and shall be subject to the regulations implementing such section; and

(6) $15,000,000 shall be available to support the costs of administrative and judicial receiverships and for competitive grants to public housing agencies in receivership, designated troubled or substandard, or otherwise at risk, as determined by the Secretary, for costs associated with public housing asset improvement, in addition to other amounts for that purpose provided under any heading under this title:

*Provided further,* That notwithstanding any other provision of law or regulation, during fiscal year 2026, the Secretary of Housing and Urban Development may not delegate to any Department official other than the Deputy Secretary and the Assistant Secretary for Public and Indian Housing any authority under paragraph (2) of section 9(j) of the Act regarding the extension of the time periods under such section: *Provided further,* That for purposes of such section 9(j), the term "obligate" means, with respect to amounts, that the amounts are subject to a binding agreement that will result in outlays, immediately or in the future: *Provided further,* That the Secretary may authorize a public housing agency with at least one property with a low physical inspection score to use operating reserve funds or any amounts allocated to such agency pursuant to the operating fund formula from amounts made available in this and prior Acts for any eligible activities under section 9(d)(1) of the United States Housing Act of 1937 (42 U.S.C. 1437g(d)(1)) under such conditions or criteria as established by

the Secretary, including that such use would not put such agency at risk of financial shortfall.

ASSISTED HOUSING INSPECTIONS AND RISK ASSESSMENTS

For the Department's inspection and assessment programs, including travel, training, and program support contracts, $50,000,000 to remain available until September 30, 2028: *Provided,* That unobligated balances, including recaptures and carryover, remaining from funds appropriated under the heading "Public Housing Fund" in prior Acts to support ongoing public housing financial and physical assessment activities shall be available for the purposes authorized under this heading in addition to the purposes for which such funds originally were appropriated.

CHOICE NEIGHBORHOODS INITIATIVE

For competitive grants under the choice neighborhoods initiative (subject to section 24 of the United States Housing Act of 1937 (42 U.S.C. 1437v) (the "Act")) unless otherwise specified under this heading), for transformation, rehabilitation, and replacement housing needs of both public and HUD-assisted housing and to transform neighborhoods of poverty into functioning, sustainable, mixed-income neighborhoods with appropriate services, schools, public assets, transportation, and access to jobs, $25,000,000, to remain available until September 30, 2030: *Provided,* That grant funds may be used for resident and community services, community development, and affordable housing needs in the community, and for conversion of vacant or foreclosed properties to affordable housing: *Provided further,* That the use of amounts made available under this heading shall not be deemed to be for public housing, notwithstanding section 3(b)(1) of the Act: *Provided further,* That grantees shall commit to an additional period of affordability determined by the Secretary of not fewer than 20 years: *Provided further,* That grantees shall provide a match in State, local, other Federal, or private funds: *Provided further,* That grantees may include local governments, Tribal entities, public housing agencies, and nonprofit organizations: *Provided further,* That for-profit developers may apply jointly with a public entity: *Provided further,* That for purposes of environmental review, a grantee shall be treated as a public housing agency under section 26 of the Act (42 U.S.C. 1437x), and grants made with amounts available under this heading shall be subject to the regulations issued by the Secretary to implement such section: *Provided further,* That of the amounts made available under this heading, not less than $12,500,000 shall be awarded to public housing agencies: *Provided further,* That such grantees shall create partnerships with other local organizations, including assisted housing owners, service agencies, and resident organizations: *Provided further,* That the Secretary shall consult with the Secretaries of Education, Labor, Transportation, Health and Human Services, Agriculture, and Commerce, the Attorney General, and the Administrator of the Environmental Protection Agency to coordinate and leverage other appropriate Federal resources: *Provided further,* That not more than $10,000,000 of the amounts made available under this heading may be provided as grants to undertake comprehensive local planning with input from residents and the community: *Provided further,* That none of the funds made available under this heading may be obligated for main street

housing grants under section 24(n) of the Act (42 U.S.C. 1437v(n)): *Provided further,* That unobligated balances, including recaptures, remaining from amounts made available under the heading "Revitalization of Severely Distressed Public Housing (HOPE VI)" in fiscal year 2011 and prior fiscal years may be used for purposes under this heading, notwithstanding the purposes for which such amounts were appropriated: *Provided further,* That the Secretary shall make grant awards not later than 1 year after the date of enactment of this Act in such amounts that the Secretary determines: *Provided further,* That notwithstanding section 24(o) of the Act (42 U.S.C. 1437v(o)), the Secretary may, until September 30, 2026, obligate any available unobligated balances made available under this heading in this or any prior Act.

SELF-SUFFICIENCY PROGRAMS

For activities and assistance related to self-sufficiency programs, to remain available until September 30, 2029, $206,400,000: *Provided,* That of the sums appropriated under this heading—

(1) $156,400,000 shall be available for the family self-sufficiency program to support family self-sufficiency coordinators under section 23 of the United States Housing Act of 1937 (42 U.S.C. 1437u), to promote the development of local strategies to coordinate the use of assistance under sections 8 and 9 of such Act with public and private resources, and enable eligible families to achieve economic independence and self-sufficiency: *Provided,* That the Secretary may use recaptured amounts made available under this paragraph in prior Acts to provide bonus awards to programs that are assigned a ranking of performance category 1 based on their publicly available family self-sufficiency achievement metrics (FAM) scores;

(2) $40,000,000 shall be available for the resident opportunity and self-sufficiency program to provide for supportive services, service coordinators, and congregate services as authorized by section 34 of the United States Housing Act of 1937 (42 U.S.C. 1437z–6) and the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4101 et seq.): *Provided,* That amounts made available under this paragraph may be used to renew resident opportunity and self-sufficiency program grants to allow the public housing agency, or a new owner, to continue to serve (or restart service to) residents of a project with assistance converted from public housing to project-based rental assistance under section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f) or assistance under section 8(o)(13) of such Act under the heading "Rental Assistance Demonstration" in the Department of Housing and Urban Development Appropriations Act, 2012 (Public Law 112–55), as amended (42 U.S.C. 1437f note); and

(3) $10,000,000 shall be available for a jobs-plus initiative, modeled after the jobs-plus demonstration: *Provided,* That funding provided under this paragraph shall be available for competitive grants to partnerships between public housing agencies, local workforce investment boards established under section 107 of the Workforce Innovation and Opportunity Act of 2014 (29 U.S.C. 3122), and other agencies and organizations that provide support to help public housing residents obtain

employment and increase earnings: *Provided further,* That applicants must demonstrate the ability to provide services to residents, partner with workforce investment boards, and leverage service dollars: *Provided further,* That the Secretary may allow public housing agencies to request exemptions from rent and income limitation requirements under sections 3 and 6 of the United States Housing Act of 1937 (42 U.S.C. 1437a, 1437d), as necessary to implement the jobs-plus program, on such terms and conditions as the Secretary may approve upon a finding by the Secretary that any such waivers or alternative requirements are necessary for the effective implementation of the jobs-plus initiative as a voluntary program for residents: *Provided further,* That the Secretary shall publish by notice in the Federal Register any waivers or alternative requirements pursuant to the preceding proviso no later than 10 days before the effective date of such notice.

NATIVE AMERICAN PROGRAMS

For activities and assistance authorized under title I of the Native American Housing Assistance and Self-Determination Act of 1996 (in this heading "NAHASDA") (25 U.S.C. 4111 et seq.), title I of the Housing and Community Development Act of 1974 (42 U.S.C. 5301 et seq.) with respect to Indian tribes, and for related activities and assistance, $1,354,000,000, to remain available until September 30, 2030: *Provided,* That of the sums appropriated under this heading—

(1) $1,111,000,000 shall be available for the Native American housing block grants program, as authorized under title I of NAHASDA: *Provided,* That, notwithstanding NAHASDA, to determine the amount of the allocation under title I of such Act for each Indian tribe, the Secretary shall apply the formula under section 302 of such Act with the need component based on single-race census data and with the need component based on multi-race census data, and the amount of the allocation for each Indian tribe shall be the greater of the two resulting allocation amounts: *Provided further,* That the Secretary shall notify grantees of their formula allocation not later than 60 days after the date of enactment of this Act;

(2) $125,000,000 shall be available for competitive grants under the Native American housing block grants program, as authorized under title I of NAHASDA: *Provided,* That the Secretary shall obligate such amount for competitive grants to eligible recipients authorized under NAHASDA that apply for funds: *Provided further,* That in awarding amounts made available in this paragraph, the Secretary shall consider need and administrative capacity, and shall give priority to projects that will spur construction and rehabilitation of housing: *Provided further,* That any amounts transferred for the necessary costs of administering and overseeing the obligation and expenditure of such additional amounts in prior Acts may also be used for the necessary costs of administering and overseeing such additional amount;

(3) $10,000,000 shall be available for noncompetitive grants to recipients that received a Tribal HUD-Veterans Affairs Supportive Housing grant in prior years, to be available under

H. R. 7148—222

the same terms and conditions as funds specified under paragraph (5) under the heading "Public and Indian Housing–Tenant-Based Rental Assistance" in Public Law 118–42: *Provided,* That the Secretary may reallocate, as determined by the Secretary, amounts returned or recaptured from awards under the Tribal HUD–VASH program under prior Acts to existing recipients under the Tribal HUD–VASH program;

(4) $1,000,000 shall be available for the cost of guaranteed notes and other obligations, as authorized by title VI of NAHASDA: *Provided,* That such costs, including the cost of modifying such notes and other obligations, shall be as defined in section 502 of the Congressional Budget Act of 1974 (2 U.S.C. 661a): *Provided further,* That amounts made available in this and prior Acts for the cost of such guaranteed notes and other obligations that are unobligated, including recaptures and carryover, may be available to subsidize the total principal amount of any notes and other obligations, any part of which is to be guaranteed, not to exceed $60,000,000, to remain available until September 30, 2027;

(5) $100,000,000 shall be available for grants to Indian tribes for carrying out the Indian community development block grant program under title I of the Housing and Community Development Act of 1974, notwithstanding section 106(a)(1) of such Act, of which, notwithstanding any other provision of law (including section 203 of this Act), not more than $10,000,000 may be used for emergencies that constitute imminent threats to health and safety: *Provided,* That not to exceed 20 percent of any grant made with amounts made available in this paragraph shall be expended for planning and management development and administration; and

(6) $7,000,000, in addition to amounts otherwise available for such purpose, shall be available for providing training and technical assistance to Indian tribes, Indian housing authorities, and tribally designated housing entities, to support the inspection of Indian housing units, for contract expertise, and for training and technical assistance related to amounts made available under this heading and other headings in this Act for the needs of Native American families and Indian country: *Provided,* That of the amounts made available in this paragraph, not less than $2,000,000 shall be for a national organization as authorized under section 703 of NAHASDA (25 U.S.C. 4212): *Provided further,* That amounts made available in this paragraph may be used, contracted, or competed as determined by the Secretary: *Provided further,* That notwithstanding chapter 63 of title 31, United States Code (commonly known as the Federal Grant and Cooperative Agreements Act of 1977), the amounts made available in this paragraph may be used by the Secretary to enter into cooperative agreements with public and private organizations, agencies, institutions, and other technical assistance providers to support the administration of negotiated rulemaking under section 106 of NAHASDA (25 U.S.C. 4116), the administration of the allocation formula under section 302 of NAHASDA (25 U.S.C. 4152), and the administration of performance tracking and reporting under section 407 of NAHASDA (25 U.S.C. 4167).

H. R. 7148—223

INDIAN HOUSING LOAN GUARANTEE FUND PROGRAM ACCOUNT

For the cost of guaranteed loans, as authorized by section 184 of the Housing and Community Development Act of 1992 (12 U.S.C. 1715z–13a), $1,000,000, to remain available until expended: *Provided,* That such costs, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974 (2 U.S.C. 661a): *Provided further,* That an additional $400,000, to remain available until expended, shall be available for administrative contract expenses including management processes to carry out the loan guarantee program: *Provided further,* That amounts made available in this and prior Acts for the cost of guaranteed loans, as authorized by section 184 of the Housing and Community Development Act of 1992 (12 U.S.C. 1715z–13a), that are unobligated, including recaptures and carryover, may be available to subsidize total loan principal, any part of which is to be guaranteed, not to exceed $1,800,000,000, to remain available until September 30, 2027.

NATIVE HAWAIIAN HOUSING BLOCK GRANT

For the Native Hawaiian housing block grant program, as authorized under title VIII of the Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4221 et seq.), $22,300,000, to remain available until September 30, 2030: *Provided,* That notwithstanding section 812(b) of such Act, the Department of Hawaiian Home Lands may not invest grant amounts made available under this heading in investment securities and other obligations: *Provided further,* That amounts made available under this heading in this and prior fiscal years may be used to provide rental assistance to eligible Native Hawaiian families both on and off the Hawaiian Home Lands, notwithstanding any other provision of law: *Provided further,* That up to $1,000,000 of the amounts made available under this heading may be for training and technical assistance related to amounts made available under this heading and other headings in this Act for the needs of Native Hawaiians and the Department of Hawaiian Home Lands.

NATIVE HAWAIIAN HOUSING LOAN GUARANTEE FUND PROGRAM ACCOUNT

New commitments to guarantee loans, as authorized by section 184A of the Housing and Community Development Act of 1992 (12 U.S.C. 1715z–13b), any part of which is to be guaranteed, shall not exceed $28,000,000 in total loan principal, to remain available until September 30, 2027: *Provided,* That the Secretary may enter into commitments to guarantee loans used for refinancing.

COMMUNITY PLANNING AND DEVELOPMENT

HOUSING OPPORTUNITIES FOR PERSONS WITH AIDS

For carrying out the housing opportunities for persons with AIDS program, as authorized by the AIDS Housing Opportunity Act (42 U.S.C. 12901 et seq.), $529,000,000, to remain available until September 30, 2029: *Provided,* That the Secretary shall renew or replace all expiring contracts for permanent supportive housing

H. R. 7148—224

that initially were funded under section 854(c)(5) of such Act from
funds made available under this heading in fiscal year 2010 and
prior fiscal years that meet all program requirements before
awarding funds for new contracts under such section: *Provided
further,* That the process for submitting amendments and approving
replacement contracts shall be established by the Secretary in a
notice: *Provided further,* That the Department shall notify grantees
of their formula allocation within 60 days of enactment of this
Act.

COMMUNITY DEVELOPMENT FUND

For assistance to States and units of general local government,
and other entities, for economic and community development activi-
ties, and other purposes, $6,995,244,120, to remain available until
September 30, 2029: *Provided,* That of the sums appropriated under
this heading—
        (1) $3,300,000,000 shall be available for carrying out the
    community development block grant program under title I of
    the Housing and Community Development Act of 1974, as
    amended (42 U.S.C. 5301 et seq.) (in this heading "the Act"):
    *Provided,* That not to exceed 20 percent of any grant made
    with funds made available under this paragraph shall be
    expended for planning and management development and
    administration: *Provided further,* That a metropolitan city,
    urban county, unit of general local government, or insular
    area that directly or indirectly receives funds under this para-
    graph may not sell, trade, or otherwise transfer all or any
    portion of such funds to another such entity in exchange for
    any other funds, credits, or non-Federal considerations, but
    shall use such funds for activities eligible under title I of
    the Act: *Provided further,* That notwithstanding section
    105(e)(1) of the Act, no funds made available under this para-
    graph may be provided to a for-profit entity for an economic
    development project under section 105(a)(17) unless such
    project has been evaluated and selected in accordance with
    guidelines required under subsection (e)(2) of section 105;
        (2) $50,000,000 shall be available for the Secretary to award
    grants on a competitive basis to State and local governments,
    metropolitan planning organizations, and multijurisdictional
    entities for additional activities under title I of the Act for
    the identification and removal of barriers to affordable housing
    production and preservation, including new housing construc-
    tion: *Provided,* That eligible uses of such grants include activi-
    ties to further develop, evaluate, and implement housing policy
    plans, improve housing strategies, and facilitate affordable
    housing production and preservation: *Provided further,* That
    the Secretary shall select applicants that (A) have enacted
    or implemented (or caused another entity to enact or imple-
    ment) less restrictive zoning, land use, or permitting laws and
    regulations, that are reasonably expected to preserve or produce
    new housing units; and (B) can demonstrate an acute need
    for housing affordable to households with incomes below 100
    percent of the area median income: *Provided further,* That
    grantees shall report to the Secretary on their activities and
    housing supply outcomes: *Provided further,* That the Secretary
    shall analyze observable housing production, preservation, and

H. R. 7148—225

cost trends in the participating jurisdictions or geographic areas: *Provided further,* That the Secretary shall annually report to the House and Senate Committees on Appropriations, and make publicly available, a summary of the information collected in the preceding two provisos: *Provided further,* That funds allocated for such grants shall not adversely affect the amount of any formula assistance received by a jurisdiction under paragraph (1) of this heading: *Provided further,* That in administering such amounts the Secretary may waive or specify alternative requirements for any provision of title I of the Act except for requirements related to fair housing, nondiscrimination, labor standards, the environment, and requirements that activities benefit persons of low- and moderate-income, upon a finding that any such waivers or alternative requirements are necessary to expedite or facilitate the use of such amounts: *Provided further,* That the Secretary shall issue a notice of funding opportunity not later than 120 days after the date of enactment of this Act;

(3) $30,000,000 shall be available for activities authorized under section 8071 of the SUPPORT for Patients and Communities Act (Public Law 115–271): *Provided,* That funds allocated pursuant to this paragraph shall not adversely affect the amount of any formula assistance received by a State under paragraph (1) of this heading: *Provided further,* That the Secretary shall allocate the funds for such activities based on the notice establishing the funding formula published in 84 FR 16027 (April 17, 2019) except that the formula shall use age-adjusted rates of drug overdose deaths for 2023 based on data from the Centers for Disease Control and Prevention; and

(4) $3,615,244,120 shall be available for grants for the economic development initiative (EDI) for the purposes, and in amounts, specified for Community Project Funding/Congressionally Directed Spending in the table entitled "Community Project Funding/Congressionally Directed Spending" included for this division in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That amounts made available under this paragraph for such purposes shall not diminish or prejudice any application or geographic region for other discretionary grant or loan awards made by the Department of Housing and Urban Development: *Provided further,* That eligible expenses of such grants in this and prior Acts may include administrative, planning, operations and maintenance, and other costs: *Provided further,* That such grants for the EDI shall be available for reimbursement of otherwise eligible expenses incurred on or after the date of enactment of this Act and prior to the date of grant execution: *Provided further,* That none of the amounts made available under this paragraph for grants for the EDI shall be used for reimbursement of expenses incurred prior to the date of enactment of this Act:

*Provided further*, That for amounts made available under paragraphs (1) and (3), the Secretary shall notify grantees of their formula allocation within 60 days of enactment of this Act.

H. R. 7148—226

COMMUNITY DEVELOPMENT LOAN GUARANTEES PROGRAM ACCOUNT

Subject to section 502 of the Congressional Budget Act of 1974 (2 U.S.C. 661a), during fiscal year 2026, commitments to guarantee loans under section 108 of the Housing and Community Development Act of 1974 (42 U.S.C. 5308), any part of which is guaranteed, shall not exceed a total principal amount of $300,000,000, notwithstanding any aggregate limitation on outstanding obligations guaranteed in subsection (k) of such section 108: *Provided,* That the Secretary shall collect fees from borrowers, notwithstanding subsection (m) of such section 108, to result in a credit subsidy cost of zero for guaranteeing such loans, and any such fees shall be collected in accordance with section 502(7) of the Congressional Budget Act of 1974: *Provided further,* That such commitment authority funded by fees may be used to guarantee, or make commitments to guarantee, notes or other obligations issued by any State on behalf of non-entitlement communities in the State in accordance with the requirements of such section 108: *Provided further,* That any State receiving such a guarantee or commitment under the preceding proviso shall distribute all funds subject to such guarantee to the units of general local government in non-entitlement areas that received the commitment.

HOME INVESTMENT PARTNERSHIPS PROGRAM

For the HOME investment partnerships program, as authorized under title II of the Cranston-Gonzalez National Affordable Housing Act, as amended (42 U.S.C. 12721 et seq.), $1,250,000,000, to remain available until September 30, 2029: *Provided,* That the threshold reduction requirements in sections 216(10) and 217(b)(4) of such Act (42 U.S.C. 12746(10), 12747(b)(4)) shall not apply to the amounts made available under this heading: *Provided further,* That notwithstanding section 231(b) of such Act (42 U.S.C. 12771(b)), all unobligated balances remaining from amounts recaptured pursuant to such section that remain available until expended shall be combined with amounts made available under this heading and allocated in accordance with the formula under section 217(b)(1)(A) of such Act (42 U.S.C. 12747(b)(1)(A)): *Provided further,* That the Department shall notify grantees of their formula allocations within 60 days after enactment of this Act: *Provided further,* That section 218(g) of such Act (42 U.S.C. 12748(g)) shall not apply with respect to the right of a jurisdiction to draw funds from its HOME Investment Trust Fund that otherwise expired or would expire in any calendar year from 2020 through 2028 under that section: *Provided further,* That section 231(b) of such Act (42 U.S.C. 12771(b)) shall not apply to any uninvested funds that otherwise were deducted or would be deducted from the line of credit in the participating jurisdiction's HOME Investment Trust Fund in any calendar year from 2020 through 2028 under that section.

SELF-HELP AND ASSISTED HOMEOWNERSHIP OPPORTUNITY PROGRAM

For the self-help and assisted homeownership opportunity program, as authorized under section 11 of the Housing Opportunity Program Extension Act of 1996 (42 U.S.C. 12805 note), and for related activities and assistance, $65,000,000, to remain available until September 30, 2028: *Provided,* That of the sums appropriated under this heading—

H. R. 7148—227

(1) $12,000,000 shall be available for the self-help home-ownership opportunity program as authorized under such section 11;

(2) $46,000,000 shall be available for the second, third, and fourth capacity building entities specified in section 4(a) of the HUD Demonstration Act of 1993 (III Stat 201; 42 U.S.C. 9816 note), of which not less than $5,000,000 shall be for rural capacity building activities; and

(3) $7,000,000 shall be available for capacity building by national rural housing organizations having experience assessing national rural conditions and providing financing, training, technical assistance, information, and research to local nonprofit organizations, local governments, and Indian tribes serving high need rural communities.

HOMELESS ASSISTANCE GRANTS

For assistance under title IV of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11360 et seq.), and for related activities and assistance, $4,417,000,000, to remain available until September 30, 2028: *Provided,* That of the sums appropriated under this heading—

(1) $290,000,000 shall be available for the emergency solutions grants program authorized under subtitle B of such title IV (42 U.S.C. 11371 et seq.): *Provided,* That the Department shall notify grantees of their formula allocation from amounts allocated (which may represent initial or final amounts allocated) for the emergency solutions grant program not later than 60 days after enactment of this Act;

(2) $4,010,000,000 shall be available for the continuum of care program authorized under subtitle C of such title IV (42 U.S.C. 11381 et seq.) and the rural housing stability assistance programs authorized under subtitle D of such title IV (42 U.S.C. 11408): *Provided,* That the Secretary shall prioritize funding under the continuum of care program to continuums of care that have demonstrated a capacity to reallocate funding from lower performing projects to higher performing projects: *Provided further,* That the Secretary shall make reasonable adjustments to renewal amounts to enable renewal projects to operate at substantially the same levels, including cost-of-living adjustments for supportive services from the prior grant: *Provided further,* That in allocating and awarding amounts made available under this paragraph, the Secretary shall select projects totaling not less than 60 percent of the annual renewal demand for each collaborative applicant based on rankings determined by the local continuum of care and consistent with 42 U.S.C. 11381 et seq.: *Provided further,* That the Secretary may establish by notice an alternative maximum amount for administrative costs related to the requirements described in sections 402(f)(1) and 402(f)(2) of subtitle A of such title IV of no more than 5 percent or $50,000, whichever is greater, notwithstanding the 3 percent limitation in section 423(a)(10) of such subtitle C: *Provided further,* That of the amounts made available for the continuum of care program under this paragraph, $52,000,000 shall be for grants for new rapid re-housing projects and supportive service projects providing coordinated entry, and for eligible activities that the

Secretary determines to be critical in order to assist survivors of domestic violence, dating violence, sexual assault, or stalking, except that the Secretary may make additional grants for such projects and purposes from amounts made available for such continuum of care program: *Provided further,* That amounts made available for the continuum of care program under this paragraph and any remaining unobligated balances under this heading in prior Acts may be used to competitively or non-competitively renew or replace grants for youth homelessness demonstration projects under the continuum of care program, notwithstanding any conflict with the requirements of the continuum of care program: *Provided further,* That any continuum of care, in consultation with their youth action board, that determines it no longer has an identified need for funds to renew a youth homelessness demonstration project shall notify the Secretary, and the Secretary shall recapture such assistance from the continuum of care and competitively award it to any other continuum of care with the amounts provided under this heading under paragraph (4): *Provided further,* That the Secretary shall issue the notice of funding opportunity for the amounts made available in this paragraph not later than June 1, 2026 and shall award such amounts not later than December 1, 2026;

(3) $10,000,000 shall be available for the national homeless data analysis project: *Provided,* That notwithstanding the provisions of the Federal Grant and Cooperative Agreements Act of 1977 (31 U.S.C. 6301–6308), the amounts made available under this paragraph and any remaining unobligated balances under this heading for such purposes in prior Acts may be used by the Secretary to enter into cooperative agreements with such entities as may be determined by the Secretary, including public and private organizations, agencies, and institutions; and

(4) $107,000,000 shall be available to implement projects to demonstrate how a comprehensive approach to serving homeless youth, age 24 and under, in up to 25 communities with a priority for communities with substantial rural populations in up to eight locations, can dramatically reduce youth homelessness: *Provided,* That of the amount made available under this paragraph, up to $25,000,000 may be for youth homelessness system improvement grants to support communities, including but not limited to the communities assisted under the matter preceding this proviso, in establishing and implementing an evidence-based response system for youth homelessness, or for improving their existing system, including through the establishment of local youth advisory boards, collaboration with youth with lived experience of homelessness in project design and implementation, improving data collection, management, utilization and evaluation, cross-system partnerships with juvenile justice, child welfare, and education systems: *Provided further,* That of the amount made available under this paragraph, up to $10,000,000 shall be to provide technical assistance to communities, including but not limited to the communities assisted in the preceding proviso and the matter preceding such proviso, on improving system responses to youth homelessness, and collection, analysis, use, and

H. R. 7148—229

reporting of data and performance measures under the comprehensive approaches to serve homeless youth, in addition to and in coordination with other technical assistance funds provided under this title: *Provided further,* That the Secretary may use up to 10 percent of the amount made available under the preceding proviso to build the capacity of current technical assistance providers or to train new technical assistance providers with verifiable prior experience with systems and programs for youth experiencing homelessness: *Provided further,* That youth aged 24 and under seeking assistance under this heading shall not be required to provide third party documentation to establish their eligibility under subsection (a) or (b) of section 103 of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11302) to receive services: *Provided further,* That unaccompanied youth aged 24 and under or families headed by youth aged 24 and under who are living in unsafe situations may be served by youth-serving providers funded under this heading: *Provided further,* That recipients of funds provided under this heading in this Act or any prior Act may establish preferences for elderly individuals or families (except for programs provided to serve homeless youth), or disabled individuals or families as defined by section 401(10) of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11360(10)), when implementing the programs: *Provided further,* That persons eligible under section 103(a)(5) of the McKinney-Vento Homeless Assistance Act may be served by any project funded under this heading to provide both transitional housing and rapid re-housing: *Provided further,* That for all matching funds requirements applicable to funds made available under this heading for this fiscal year and prior fiscal years, a grantee may use (or could have used) as a source of match funds other funds administered by the Secretary and other Federal agencies unless there is (or was) a specific statutory prohibition on any such use of any such funds: *Provided further,* That none of the funds made available under this heading shall be available to provide funding for new projects, except for projects created through reallocation, unless the Secretary determines that the continuum of care has demonstrated that projects are evaluated and ranked based on the degree to which they improve the continuum of care's system performance: *Provided further,* That any unobligated amounts remaining from funds made available under this heading in fiscal year 2012 and prior years for project-based rental assistance for rehabilitation projects with 10-year grant terms may be used for purposes under this heading, notwithstanding the purposes for which such funds were appropriated: *Provided further,* That unobligated balances, including recaptures and carryover, remaining from funds transferred to or appropriated under this heading in fiscal year 2019 or prior years, except for rental assistance amounts that were recaptured and made available until expended, shall be available for the current purposes authorized under this heading in addition to the purposes for which such funds originally were appropriated.

H. R. 7148—230

HOUSING PROGRAMS

PROJECT-BASED RENTAL ASSISTANCE

For activities and assistance for the provision of project-based subsidy contracts under the United States Housing Act of 1937 (42 U.S.C. 1437 et seq.) ("the Act"), not otherwise provided for, $18,143,000,000, to remain available until expended, shall be available on October 1, 2025 (in addition to the $400,000,000 previously appropriated under this heading that became available October 1, 2025), and $400,000,000, to remain available until expended, shall be available on October 1, 2026: *Provided,* That the amounts made available under this heading shall be available for expiring or terminating section 8 project-based subsidy contracts (including section 8 moderate rehabilitation contracts), for amendments to section 8 project-based subsidy contracts (including section 8 moderate rehabilitation contracts), for contracts entered into pursuant to section 441 of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11401), for renewal of section 8 contracts for units in projects that are subject to approved plans of action under the Emergency Low Income Housing Preservation Act of 1987 or the Low-Income Housing Preservation and Resident Homeownership Act of 1990, and for administrative and other expenses associated with project-based activities and assistance funded under this heading: *Provided further,* That of the total amounts provided under this heading, not to exceed $509,000,000 shall be available for performance-based contract administrators for section 8 project-based assistance, for carrying out 42 U.S.C. 1437f: *Provided further,* That the Secretary may also use such amounts in the preceding proviso for performance-based contract administrators for the administration of: interest reduction payments pursuant to section 236(a) of the National Housing Act (12 U.S.C. 1715z–1(a)); rent supplement payments pursuant to section 101 of the Housing and Urban Development Act of 1965 (12 U.S.C. 1701s); section 236(f)(2) rental assistance payments (12 U.S.C. 1715z–1(f)(2)); project rental assistance contracts for the elderly under section 202(c)(2) of the Housing Act of 1959 (12 U.S.C. 1701q); project rental assistance contracts for supportive housing for persons with disabilities under section 811(d)(2) of the Cranston-Gonzalez National Affordable Housing Act (42 U.S.C. 8013(d)(2)); project assistance contracts pursuant to section 202(h) of the Housing Act of 1959 (Public Law 86–372; 73 Stat. 667); and loans under section 202 of the Housing Act of 1959 (Public Law 86–372; 73 Stat. 667): *Provided further,* That amounts recaptured under this heading, the heading "Annual Contributions for Assisted Housing", or the heading "Housing Certificate Fund", may be used for renewals of or amendments to section 8 project-based contracts or for performance-based contract administrators, notwithstanding the purposes for which such amounts were appropriated: *Provided further,* That, notwithstanding any other provision of law, upon the request of the Secretary, project funds that are held in residual receipts accounts for any project subject to a section 8 project-based housing assistance payments contract that authorizes the Department or a housing finance agency to require that surplus project funds be deposited in an interest-bearing residual receipts account and that are in excess of an amount to be determined by the Secretary, shall be remitted to the Department and deposited in this account,

H. R. 7148—231

to be available until expended: *Provided further,* That amounts deposited pursuant to the preceding proviso shall be available in addition to the amount otherwise provided by this heading for uses authorized under this heading.

HOUSING FOR THE ELDERLY

For capital advances, including amendments to capital advance contracts, for housing for the elderly, as authorized by section 202 of the Housing Act of 1959 (12 U.S.C. 1701q), for project rental assistance for the elderly under section 202(c)(2) of such Act, including amendments to contracts for such assistance and renewal of expiring contracts for such assistance for up to a 5-year term, for senior preservation rental assistance contracts, including renewals, as authorized by section 811(e) of the American Homeownership and Economic Opportunity Act of 2000 (12 U.S.C. 1701q note), for supportive services associated with the housing, and for administrative and other expenses associated with assistance under this heading, $1,031,000,000 to remain available until September 30, 2029: *Provided,* That of the amount made available under this heading, up to $122,000,000 shall be for service coordinators and the continuation of existing congregate service grants for residents of assisted housing projects: *Provided further,* That any funding for existing service coordinators under the preceding proviso shall be provided within 120 days of enactment of this Act: *Provided further,* That the Secretary may enter into 2-year agreements as appropriate with such funding that are subject to the availability of annual appropriations: *Provided further,* That the Secretary may waive the provisions of section 202 governing the terms and conditions of project rental assistance, except that the initial contract term for such assistance shall not exceed 5 years in duration: *Provided further,* That upon request of the Secretary, project funds that are held in residual receipts accounts for any project subject to a section 202 project rental assistance contract, and that upon termination of such contract are in excess of an amount to be determined by the Secretary, shall be remitted to the Department and deposited in this account, to remain available until September 30, 2029: *Provided further,* That amounts deposited in this account pursuant to the preceding proviso shall be available, in addition to the amounts otherwise provided by this heading, for the purposes authorized under this heading: *Provided further,* That unobligated balances, including recaptures and carryover, remaining from funds transferred to or appropriated under this heading shall be available for the current purposes authorized under this heading in addition to the purposes for which such funds originally were appropriated: *Provided further,* That of the total amount made available under this heading, up to $4,000,000 shall be used by the Secretary to support preservation transactions of housing for the elderly originally developed with a capital advance and assisted by a project rental assistance contract under the provisions of section 202(c) of the Housing Act of 1959.

HOUSING FOR PERSONS WITH DISABILITIES

For capital advances, including amendments to capital advance contracts, for supportive housing for persons with disabilities, as

authorized by section 811 of the Cranston-Gonzalez National Affordable Housing Act (42 U.S.C. 8013), for project rental assistance for supportive housing for persons with disabilities under section 811(d)(2) of such Act, for project assistance contracts pursuant to subsection (h) of section 202 of the Housing Act of 1959, as added by section 205(a) of the Housing and Community Development Amendments of 1978 (Public Law 95–557; 92 Stat. 2090), including amendments to contracts for such assistance and renewal of expiring contracts for such assistance for up to a 5-year term, for project rental assistance to State housing finance agencies and other appropriate entities as authorized under section 811(b)(3) of the Cranston-Gonzalez National Affordable Housing Act, for supportive services associated with the housing for persons with disabilities as authorized by section 811(b)(1) of such Act, and for administrative and other expenses associated with assistance funded under this heading, $287,000,000, to remain available until September 30, 2029: *Provided,* That, upon the request of the Secretary, project funds that are held in residual receipts accounts for any project subject to a section 811 project rental assistance contract, and that upon termination of such contract are in excess of an amount to be determined by the Secretary, shall be remitted to the Department and deposited in this account, to remain available until September 30, 2029: *Provided further,* That amounts deposited in this account pursuant to the preceding proviso shall be available in addition to the amounts otherwise provided by this heading for the purposes authorized under this heading: *Provided further,* That unobligated balances, including recaptures and carryover, remaining from funds transferred to or appropriated under this heading shall be used for the current purposes authorized under this heading in addition to the purposes for which such funds originally were appropriated.

HOUSING COUNSELING ASSISTANCE

For contracts, grants, and other assistance excluding loans, as authorized under section 106 of the Housing and Urban Development Act of 1968, as amended, $57,500,000, to remain available until September 30, 2027, including up to $4,500,000 for administrative contract services: *Provided,* That funds shall be used for providing counseling and advice to tenants and homeowners, both current and prospective, with respect to property maintenance, financial management or literacy, and such other matters as may be appropriate to assist them in improving their housing conditions, meeting their financial needs, and fulfilling the responsibilities of tenancy or homeownership; for program administration; and for housing counselor training: *Provided further,* That for purposes of awarding grants from amounts provided under this heading, the Secretary may enter into multiyear agreements, as appropriate, subject to the availability of annual appropriations.

PAYMENT TO MANUFACTURED HOUSING FEES TRUST FUND

For necessary expenses as authorized by the National Manufactured Housing Construction and Safety Standards Act of 1974 (42 U.S.C. 5401 et seq.), up to $14,000,000, to remain available until expended, of which $14,000,000 shall be derived from the Manufactured Housing Fees Trust Fund (established under section 620(e) of such Act (42 U.S.C. 5419(e)): *Provided,* That not to exceed the

H. R. 7148—233

total amount appropriated under this heading shall be available from the general fund of the Treasury to the extent necessary to incur obligations and make expenditures pending the receipt of collections to the Fund pursuant to section 620 of such Act: *Provided further,* That the amount made available under this heading from the general fund shall be reduced as such collections are received during fiscal year 2026 so as to result in a final fiscal year 2026 appropriation from the general fund estimated at zero, and fees pursuant to such section 620 shall be modified as necessary to ensure such a final fiscal year 2026 appropriation: *Provided further,* That for the dispute resolution and installation programs, the Secretary may assess and collect fees from any program participant: *Provided further,* That such collections shall be deposited into the Trust Fund, and the Secretary, as provided herein, may use such collections, as well as fees collected under section 620 of such Act, for necessary expenses of such Act: *Provided further,* That, notwithstanding the requirements of section 620 of such Act, the Secretary may carry out responsibilities of the Secretary under such Act through the use of approved service providers that are paid directly by the recipients of their services.

FEDERAL HOUSING ADMINISTRATION

MUTUAL MORTGAGE INSURANCE PROGRAM ACCOUNT

New commitments to guarantee single family loans insured under the Mutual Mortgage Insurance Fund shall not exceed $400,000,000,000, to remain available until September 30, 2027: *Provided,* That during fiscal year 2026, obligations to make direct loans to carry out the purposes of section 204(g) of the National Housing Act, as amended, shall not exceed $1,000,000: *Provided further,* That the foregoing amount in the preceding proviso shall be for loans to nonprofit and governmental entities in connection with sales of single family real properties owned by the Secretary and formerly insured under the Mutual Mortgage Insurance Fund: *Provided further,* That for administrative contract expenses of the Federal Housing Administration, $160,000,000, to remain available until September 30, 2027: *Provided further,* That to the extent guaranteed loan commitments exceed $200,000,000,000 on or before April 1, 2026, an additional $1,400 for administrative contract expenses shall be available for each $1,000,000 in additional guaranteed loan commitments (including a pro rata amount for any amount below $1,000,000), but in no case shall funds made available by this proviso exceed $30,000,000: *Provided further,* That notwithstanding the limitation in the first sentence of section 255(g) of the National Housing Act (12 U.S.C. 1715z–20(g)), during fiscal year 2026 the Secretary may insure and enter into new commitments to insure mortgages under section 255 of the National Housing Act only to the extent that the net credit subsidy cost for such insurance does not exceed zero.

GENERAL AND SPECIAL RISK PROGRAM ACCOUNT

New commitments to guarantee loans insured under the General and Special Risk Insurance Funds, as authorized by sections 238 and 519 of the National Housing Act (12 U.S.C. 1715z–3 and 1735c), shall not exceed $35,000,000,000 in total loan principal, any part of which is to be guaranteed, to remain available until

September 30, 2027: *Provided,* That during fiscal year 2026, gross obligations for the principal amount of direct loans, as authorized by sections 204(g), 207(l), 238, and 519(a) of the National Housing Act, shall not exceed $1,000,000, which shall be for loans to nonprofit and governmental entities in connection with the sale of single family real properties owned by the Secretary and formerly insured under such Act.

GOVERNMENT NATIONAL MORTGAGE ASSOCIATION

GUARANTEES OF MORTGAGE-BACKED SECURITIES LOAN GUARANTEE PROGRAM ACCOUNT

New commitments to issue guarantees to carry out the purposes of section 306 of the National Housing Act, as amended (12 U.S.C. 1721(g)), shall not exceed $550,000,000,000, to remain available until September 30, 2027: *Provided,* That $56,000,000, to remain available until September 30, 2027, shall be for necessary salaries and expenses of the Government National Mortgage Association: *Provided further,* That to the extent that guaranteed loan commitments exceed $155,000,000,000 on or before April 1, 2026, an additional $100 for necessary salaries and expenses shall be available until expended for each $1,000,000 in additional guaranteed loan commitments (including a pro rata amount for any amount below $1,000,000), but in no case shall funds made available by this proviso exceed $3,000,000: *Provided further,* That receipts from Commitment and Multiclass fees collected pursuant to title III of the National Housing Act (12 U.S.C. 1716 et seq.) shall be credited as offsetting collections to this account.

POLICY DEVELOPMENT AND RESEARCH

RESEARCH AND TECHNOLOGY

For contracts, grants, and necessary expenses of programs of research and studies relating to housing and urban problems, not otherwise provided for, as authorized by title V of the Housing and Urban Development Act of 1970 (12 U.S.C. 1701z–1 et seq.), including carrying out the functions of the Secretary of Housing and Urban Development under section 1a(1)(i) of Reorganization Plan No. 2 of 1968, and for technical assistance, $122,500,000, to remain available until September 30, 2027: *Provided,* That of the amounts made available under this heading, $40,000,000 shall be for technical assistance, of which $5,000,000 shall be for the distressed cities technical assistance program: *Provided further,* That with respect to amounts made available under this heading, notwithstanding section 203 of this title, the Secretary may enter into cooperative agreements with philanthropic entities, other Federal agencies, State or local governments and their agencies, Indian tribes, tribally designated housing entities, or colleges or universities for research projects: *Provided further,* That with respect to the preceding proviso, such partners to the cooperative agreements shall contribute at least a 50 percent match toward the cost of the project: *Provided further,* That for non-competitive agreements entered into in accordance with the preceding two provisos, the Secretary shall comply with section 2(b) of the Federal Funding Accountability and Transparency Act of 2006 (Public Law 109–282; 31 U.S.C. note) in lieu of compliance with section 102(a)(4)(C)

H. R. 7148—235

of the Department of Housing and Urban Development Reform
Act of 1989 (42 U.S.C. 3545(a)(4)(C)) with respect to documentation
of award decisions: *Provided further,* That of the total amounts
provided under this heading, $7,500,000 shall be for competitive
grants to nonprofit or governmental entities to provide legal assist-
ance (including assistance related to pretrial activities, trial activi-
ties, post-trial activities and alternative dispute resolution) at no
cost to eligible low-income tenants at risk of or subject to eviction:
*Provided further,* That in awarding grants under the preceding
proviso, the Secretary shall give preference to applicants that
include a marketing strategy for residents of areas with high rates
of eviction, have experience providing no-cost legal assistance to
low-income individuals, and have sufficient capacity to administer
such assistance: *Provided further,* That the Secretary shall ensure,
to the extent practicable, that the proportion of eligible tenants
living in rural areas who will receive legal assistance with grant
funds made available under this heading is not less than the
overall proportion of eligible tenants who live in rural areas: *Pro-
vided further,* That the Department shall maintain on its publicly
accessible website all completed research funded under this heading
by this or any prior Act: *Provided further,* That the Department
shall release and publish such research without regard to the
findings within 6 months of submission of the final report.

FAIR HOUSING AND EQUAL OPPORTUNITY

FAIR HOUSING ACTIVITIES

For contracts, grants, and other assistance, not otherwise pro-
vided for, as authorized by title VIII of the Civil Rights Act of
1968 (42 U.S.C. 3601 et seq.), section 561 of the Housing and
Community Development Act of 1987 (42 U.S.C. 3616a), and this
heading, $86,355,000, to remain available until September 30, 2027:
*Provided,* That of the sums appropriated under this heading—
    (1) $26,355,000 shall be for the fair housing assistance
program under such title VIII;
    (2) $56,000,000 shall be for the fair housing initiatives
program under such section 561, of which, not less than
$10,400,000 shall be available for education and outreach pro-
grams, not less than $3,700,000 shall be available for fair
housing organization initiatives, and not less than $40,500,000
shall be available for the private enforcement initiative, except
that if any program or initiative is undersubscribed any
remaining amounts may be awarded to qualified applicants
of other programs or initiatives under this paragraph: *Provided,*
That the Secretary shall issue each notice of funding oppor-
tunity for the fair housing initiatives program not later than
150 days after the date of enactment of this Act;
    (3) $1,000,000 may be for the Secretary for the creation
and promotion of translated materials and other programs that
support the assistance of persons with limited English pro-
ficiency in utilizing the services provided by the Department
of Housing and Urban Development; and
    (4) $3,000,000 shall be for the national fair housing training
academy: *Provided,* That notwithstanding section 3302 of title
31, United States Code, the Secretary may also assess and

collect fees to cover the costs of such academy, and may use such funds to develop online courses and provide such training: *Provided further,* That none of the funds made available under this heading may be used to lobby the executive or legislative branches of the Federal Government in connection with a specific contract, grant, or loan.

OFFICE OF LEAD HAZARD CONTROL AND HEALTHY HOMES

LEAD HAZARD REDUCTION

(INCLUDING TRANSFER OF FUNDS)

For the lead hazard reduction program, as authorized by section 1011 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 (42 U.S.C. 4852), the healthy homes initiative, pursuant to sections 501 and 502 of the Housing and Urban Development Act of 1970 (12 U.S.C. 1701z–1 and 1701z–2), and for related activities and assistance, $295,600,000, to remain available until September 30, 2028: *Provided,* That the amounts made available under this heading are provided as follows:

(1) $155,600,000 shall be for the award of grants pursuant to such section 1011, of which not less than $105,000,000 shall be provided to areas with the highest lead-based paint abatement need;

(2) $140,000,000 shall be for the healthy homes initiative, pursuant to sections 501 and 502 of the Housing and Urban Development Act of 1970, which shall include research, studies, testing, and demonstration efforts, including education and outreach concerning lead-based paint poisoning and other housing-related diseases and hazards, and mitigating housing-related health and safety hazards in housing of low-income families: *Provided,* That up to $10,000,000 of amounts made available under this paragraph shall be for a one-time national pilot program to facilitate new financing mechanisms to address lead and other residential environmental stressors in low-income communities: *Provided further,* That the Secretary shall issue the notice of funding of opportunity for the pilot program established in the preceding proviso within 120 days of enactment of this Act: *Provided further,* That $30,000,000 of amounts made available under this paragraph shall be for grants to experienced non-profit organizations, States, local governments, or public housing agencies for safety and functional home modification repairs and renovations to meet the needs of low-income seniors to enable them to remain in their primary residence, of which no less than $10,000,000 shall be available to meet such needs in communities with substantial rural populations: *Provided further,* That for funds made available for such grants in the preceding proviso or under this heading or the heading "Housing for the Elderly" in prior Acts, all eligible activities, except those that would alter the existing footprint of a structure or improvement in a floodplain or a wetland, are exempt from environmental review and not subject to the Federal laws and authorities cited in section 58.5 of title 24, Code of Federal Regulations; and

(3) up to $2,000,000 in total of the amounts made available under paragraph (2) may be transferred to the heading

"Research and Technology" for the purposes of conducting research and studies and for use in accordance with the provisos under that heading for non-competitive agreements: *Provided further,* That for purposes of environmental review, pursuant to the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) and other provisions of law that further the purposes of such Act, a grant under the healthy homes initiative, or the lead technical studies program, or other demonstrations or programs under this heading or under prior appropriations Acts for such purposes under this heading, or under the heading "Housing for the Elderly" under prior Appropriations Acts, shall be considered to be funds for a special project for purposes of section 305(c) of the Multifamily Housing Property Disposition Reform Act of 1994: *Provided further,* That each applicant for a grant or cooperative agreement under this heading shall certify adequate capacity that is acceptable to the Secretary to carry out the proposed use of funds pursuant to a notice of funding opportunity: *Provided further,* That amounts made available under the fifth paragraph under this heading by the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119–4) shall be transferred to and merged with the amounts provided under the fifth paragraph under the heading "Public Housing Fund" in this Act and prioritized for qualified projects where the primary purpose is radon testing and mitigation, except any transfer pursuant to this provision shall retain its original availability: *Provided further,* That amounts made available under this heading, in this or prior appropriations Acts, still remaining available, may be used for any purpose under this heading notwithstanding the purpose for which such amounts were appropriated if a program competition is undersubscribed and there are other program competitions under this heading that are oversubscribed.

## OFFICE OF INSPECTOR GENERAL

For necessary salaries and expenses of the Office of Inspector General in carrying out the Inspector General Act of 1978, as amended, $144,500,000: *Provided,* That the Inspector General shall have independent authority over all personnel and acquisition issues within this office.

## GENERAL PROVISIONS—DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

### (INCLUDING RESCISSIONS)

### (INCLUDING TRANSFER OF FUNDS)

SEC. 201. Fifty percent of the amounts of budget authority, or in lieu thereof 50 percent of the cash amounts associated with such budget authority, that are recaptured from projects described in section 1012(a) of the Stewart B. McKinney Homeless Assistance Amendments Act of 1988 (42 U.S.C. 1437f note) shall be rescinded or in the case of cash, shall be remitted to the Treasury, and such amounts of budget authority or cash recaptured and not rescinded or remitted to the Treasury shall be used by State housing finance agencies or local governments or local housing agencies with projects approved by the Secretary of Housing and Urban Development for which settlement occurred after January 1, 1992,

H. R. 7148—238

in accordance with such section. Notwithstanding the previous sentence, the Secretary may award up to 15 percent of the budget authority or cash recaptured and not rescinded or remitted to the Treasury to provide project owners with incentives to refinance their project at a lower interest rate.

SEC. 202. None of the funds made available by this Act may be used to investigate or prosecute under the Fair Housing Act any otherwise lawful activity engaged in by one or more persons, including the filing or maintaining of a nonfrivolous legal action, that is engaged in solely for the purpose of achieving or preventing action by a Government official or entity, or a court of competent jurisdiction.

SEC. 203. Except as explicitly provided in law, any grant, cooperative agreement or other assistance made pursuant to title II of this Act shall be made on a competitive basis and in accordance with section 102 of the Department of Housing and Urban Development Reform Act of 1989 (42 U.S.C. 3545).

SEC. 204. Funds of the Department of Housing and Urban Development subject to the Government Corporation Control Act or section 402 of the Housing Act of 1950 shall be available, without regard to the limitations on administrative expenses, for legal services on a contract or fee basis, and for utilizing and making payment for services and facilities of the Federal National Mortgage Association, Government National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Financing Bank, Federal Reserve banks or any member thereof, Federal Home Loan banks, and any insured bank within the meaning of the Federal Deposit Insurance Corporation Act, as amended (12 U.S.C. 1811–1).

SEC. 205. Unless otherwise provided for in this Act or through a reprogramming of funds, no part of any appropriation for the Department of Housing and Urban Development shall be available for any program, project or activity in excess of amounts set forth in the budget estimates submitted to Congress.

SEC. 206. Corporations and agencies of the Department of Housing and Urban Development which are subject to the Government Corporation Control Act are hereby authorized to make such expenditures, within the limits of funds and borrowing authority available to each such corporation or agency and in accordance with law, and to make such contracts and commitments without regard to fiscal year limitations as provided by section 104 of such Act as may be necessary in carrying out the programs set forth in the budget for 2026 for such corporation or agency except as hereinafter provided: *Provided,* That collections of these corporations and agencies may be used for new loan or mortgage purchase commitments only to the extent expressly provided for in this Act (unless such loans are in support of other forms of assistance provided for in this or prior appropriations Acts), except that this proviso shall not apply to the mortgage insurance or guaranty operations of these corporations, or where loans or mortgage purchases are necessary to protect the financial interest of the United States Government.

SEC. 207. None of the funds made available by this title may be used for an audit of the Government National Mortgage Association that makes applicable requirements under the Federal Credit Reform Act of 1990 (2 U.S.C. 661 et seq.).

SEC. 208. (a) Notwithstanding any other provision of law, subject to the conditions listed under this section, for fiscal years

H. R. 7148—239

2026 and 2027, the Secretary of Housing and Urban Development may authorize the transfer of some or all project-based assistance, debt held or insured by the Secretary and statutorily required low-income and very low-income use restrictions if any, associated with one or more multifamily housing project or projects to another multifamily housing project or projects.

(b) PHASED TRANSFERS.—Transfers of project-based assistance under this section may be done in phases to accommodate the financing and other requirements related to rehabilitating or constructing the project or projects to which the assistance is transferred, to ensure that such project or projects meet the standards under subsection (c).

(c) The transfer authorized in subsection (a) is subject to the following conditions:

(1) NUMBER AND BEDROOM SIZE OF UNITS.—

(A) For occupied units in the transferring project: The number of low-income and very low-income units and the configuration (i.e., bedroom size) provided by the transferring project shall be no less than when transferred to the receiving project or projects and the net dollar amount of Federal assistance provided to the transferring project shall remain the same in the receiving project or projects. The Secretary, upon determination of good cause, including a determination that there will be no loss of assistance to currently assisted households, may authorize a different number of such units or a change in such configuration, or both, at the receiving project or projects in the event there is a transfer of use restrictions without an associated transfer of project-based assistance to the receiving project. The Secretary shall publish a notice in the Federal Register for public comment containing the criteria for determinations of good cause no less than 60 days before the effective date of such notice.

(B) For unoccupied units in the transferring project: The Secretary may authorize a reduction in the number of dwelling units in the receiving project or projects to allow for a reconfiguration of bedroom sizes to meet current market demands, as determined by the Secretary and provided there is no increase in the project-based assistance budget authority.

(2) The transferring project shall, as determined by the Secretary, be either physically obsolete or economically non-viable, or be reasonably expected to become economically non-viable when complying with State or Federal requirements for community integration and reduced concentration of individuals with disabilities.

(3) The receiving project or projects shall meet or exceed applicable physical standards established by the Secretary.

(4) The owner or mortgagor of the transferring project shall notify and consult with the tenants residing in the transferring project and provide a certification of approval by all appropriate local governmental officials.

(5) The tenants of the transferring project who remain eligible for assistance to be provided by the receiving project or projects shall not be required to vacate their units in the transferring project or projects until new units in the receiving project are available for occupancy.

H. R. 7148—240

(6) The Secretary determines that this transfer is in the best interest of the tenants.

(7) If either the transferring project or the receiving project or projects meets the condition specified in subsection (d)(2)(A), any lien on the receiving project resulting from additional financing obtained by the owner shall be subordinate to any FHA-insured mortgage lien transferred to, or placed on, such project by the Secretary, except that the Secretary may waive this requirement upon determination that such a waiver is necessary to facilitate the financing of acquisition, construction, and/or rehabilitation of the receiving project or projects.

(8) If the transferring project meets the requirements of subsection (d)(2), the owner or mortgagor of the receiving project or projects shall execute and record either a continuation of the existing use agreement or a new use agreement for the project where, in either case, any use restrictions in such agreement are of no lesser duration than the existing use restrictions.

(9) The transfer does not increase the cost (as defined in section 502 of the Congressional Budget Act of 1974 (2 U.S.C. 661a)) of any FHA-insured mortgage, except to the extent that appropriations are provided in advance for the amount of any such increased cost.

(d) For purposes of this section—

(1) the terms "low-income" and "very low-income" shall have the meanings provided by the statute and/or regulations governing the program under which the project is insured or assisted;

(2) the term "multifamily housing project" means housing that meets one of the following conditions—

(A) housing that is subject to a mortgage insured under the National Housing Act;

(B) housing that has project-based assistance attached to the structure including projects undergoing mark to market debt restructuring under the Multifamily Assisted Housing Reform and Affordability Housing Act;

(C) housing that is assisted under section 202 of the Housing Act of 1959 (12 U.S.C. 1701q);

(D) housing that is assisted under section 202 of the Housing Act of 1959 (12 U.S.C. 1701q), as such section existed before the enactment of the Cranston-Gonzales National Affordable Housing Act;

(E) housing that is assisted under section 811 of the Cranston-Gonzales National Affordable Housing Act (42 U.S.C. 8013); or

(F) housing or vacant land that is subject to a use agreement;

(3) the term "project-based assistance" means—

(A) assistance provided under section 8(b) of the United States Housing Act of 1937 (42 U.S.C. 1437f(b));

(B) assistance for housing constructed or substantially rehabilitated pursuant to assistance provided under section 8(b)(2) of such Act (as such section existed immediately before October 1, 1983);

(C) rent supplement payments under section 101 of the Housing and Urban Development Act of 1965 (12 U.S.C. 1701s);

(D) interest reduction payments under section 236 and/or additional assistance payments under section 236(f)(2) of the National Housing Act (12 U.S.C. 1715z–1);

(E) assistance payments made under section 202(c)(2) of the Housing Act of 1959 (12 U.S.C. 1701q(c)(2)); and

(F) assistance payments made under section 811(d)(2) of the Cranston-Gonzalez National Affordable Housing Act (42 U.S.C. 8013(d)(2));

(4) the term "receiving project or projects" means the multifamily housing project or projects to which some or all of the project-based assistance, debt, and statutorily required low-income and very low-income use restrictions are to be transferred;

(5) the term "transferring project" means the multifamily housing project which is transferring some or all of the project-based assistance, debt, and the statutorily required low-income and very low-income use restrictions to the receiving project or projects; and

(6) the term "Secretary" means the Secretary of Housing and Urban Development.

(e) RESEARCH REPORT.—The Secretary shall conduct an evaluation of the transfer authority under this section, including the effect of such transfers on the operational efficiency, contract rents, physical and financial conditions, and long-term preservation of the affected properties.

SEC. 209. No assistance shall be provided under section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f) to any individual who—

(1) is enrolled as a student at an institution of higher education (as defined under section 102 of the Higher Education Act of 1965 (20 U.S.C. 1002));

(2) is under 24 years of age;

(3) is not a veteran;

(4) is unmarried;

(5) does not have a dependent child;

(6) is not a person with disabilities, as such term is defined in section 3(b)(3)(E) of the United States Housing Act of 1937 (42 U.S.C. 1437a(b)(3)(E)) and was not receiving assistance under such section 8 as of November 30, 2005;

(7) is not a youth who left foster care at age 14 or older and is at risk of becoming homeless; and

(8) is not otherwise individually eligible, or has parents who, individually or jointly, are not eligible, to receive assistance under section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f).

SEC. 210. The funds made available for Native Alaskans under paragraph (1) under the heading "Native American Programs" in title II of this Act shall be allocated to the same Native Alaskan housing block grant recipients that received funds in fiscal year 2005, and only such recipients shall be eligible to apply for funds made available under paragraph (2) of such heading.

SEC. 211. Notwithstanding any other provision of law, in fiscal year 2026, in managing and disposing of any multifamily property that is owned or has a mortgage held by the Secretary of Housing and Urban Development, and during the process of foreclosure on any property with a contract for rental assistance payments under section 8 of the United States Housing Act of 1937 (42

U.S.C. 1437f) or any other Federal programs, the Secretary shall maintain any rental assistance payments under section 8 of the United States Housing Act of 1937 and other programs that are attached to any dwelling units in the property. To the extent the Secretary determines, in consultation with the tenants and the local government that such a multifamily property owned or having a mortgage held by the Secretary is not feasible for continued rental assistance payments under such section 8 or other programs, based on consideration of (1) the costs of rehabilitating and operating the property and all available Federal, State, and local resources, including rent adjustments under section 524 of the Multifamily Assisted Housing Reform and Affordability Act of 1997 (in this section "MAHRAA") (42 U.S.C. 1437f note), and (2) environmental conditions that cannot be remedied in a cost-effective fashion, the Secretary may, in consultation with the tenants of that property, contract for project-based rental assistance payments with an owner or owners of other existing housing properties, or provide other rental assistance. The Secretary shall also take appropriate steps to ensure that project-based contracts remain in effect prior to foreclosure, subject to the exercise of contractual abatement remedies to assist relocation of tenants for imminent major threats to health and safety after written notice to and informed consent of the affected tenants and use of other available remedies, such as partial abatements or receivership. After disposition of any multifamily property described in this section, the contract and allowable rent levels on such properties shall be subject to the requirements under section 524 of MAHRAA.

SEC. 212. Public housing agencies that own and operate 400 or fewer public housing units may elect to be exempt from any asset management requirement imposed by the Secretary in connection with the operating fund rule: *Provided,* That an agency seeking a discontinuance of a reduction of subsidy under the operating fund formula shall not be exempt from asset management requirements.

SEC. 213. With respect to the use of amounts provided in this Act and in future Acts for the operation, capital improvement, and management of public housing as authorized by sections 9(d) and 9(e) of the United States Housing Act of 1937 (42 U.S.C. 1437g(d), (e)), the Secretary shall not impose any requirement or guideline relating to asset management that restricts or limits in any way the use of capital funds for central office costs pursuant to paragraph (1) or (2) of section 9(g) of the United States Housing Act of 1937 (42 U.S.C. 1437g(g)(1), (2)): *Provided,* That a public housing agency may not use capital funds authorized under section 9(d) for activities that are eligible under section 9(e) for assistance with amounts from the operating fund in excess of the amounts permitted under paragraph (1) or (2) of section 9(g).

SEC. 214. No official or employee of the Department of Housing and Urban Development shall be designated as an allotment holder unless the Office of the Chief Financial Officer has determined that such allotment holder has implemented an adequate system of funds control and has received training in funds control procedures and directives. The Chief Financial Officer shall ensure that there is a trained allotment holder for each HUD appropriation under the accounts "Executive Offices", "Administrative Support Offices", "Program Offices", "Government National Mortgage

Association—Guarantees of Mortgage-Backed Securities Loan Guarantee Program Account", and "Office of Inspector General" within the Department of Housing and Urban Development.

SEC. 215. Notwithstanding any other provision of law, for fiscal year 2026, the Secretary may make a notice of funding opportunity, and a notice of any funding decision, for any program or discretionary fund administered by the Secretary that is to be competitively awarded available only on the Internet at the appropriate Government website or through other electronic media, as determined by the Secretary.

SEC. 216. Payment of attorney fees in program-related litigation shall be paid from the individual program office and Office of General Counsel salaries and expenses appropriations.

SEC. 217. The Secretary is authorized to transfer up to 10 percent or $5,000,000, whichever is less, of funds appropriated for any office under the headings "Administrative Support Offices" or "Program Offices" to any other such office under such headings: *Provided,* That the Secretary shall provide notification to such Committees 5 business days in advance of any such transfers.

SEC. 218. (a) Any entity receiving housing assistance payments shall maintain decent, safe, and sanitary conditions, as determined by the Secretary, and comply with any standards under applicable State or local laws, rules, ordinances, or regulations relating to the physical condition of any property covered under a housing assistance payment contract.

(b) The Secretary shall take action under subsection (c) when a multifamily housing project with a contract under section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f) or a contract for similar project-based assistance—

(1) receives a failing score under the Uniform Physical Condition Standards (UPCS) or successor standard; or

(2) fails to certify in writing to the Secretary within 3 days that all Exigent Health and Safety deficiencies, or those deficiencies requiring correction within 24 hours, identified by the inspector at the project have been corrected.

Such requirements shall apply to insured and noninsured projects with assistance attached to the units under section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), but shall not apply to such units assisted under section 8(o)(13) of such Act (42 U.S.C. 1437f(o)(13)) or to public housing units assisted with capital or operating funds under section 9 of the United States Housing Act of 1937 (42 U.S.C. 1437g).

(c)(1) Within 15 days of the issuance of the Real Estate Assessment Center ("REAC") inspection, the Secretary shall provide the owner with a Notice of Default with a specified timetable, determined by the Secretary, for correcting all deficiencies. The Secretary shall provide a copy of the Notice of Default to the tenants, the local government, any mortgagees, and any contract administrator. If the owner's appeal results in a passing score, the Secretary may withdraw the Notice of Default.

(2) At the end of the time period for correcting all deficiencies specified in the Notice of Default, if the owner fails to fully correct such deficiencies, the Secretary may—

(A) require immediate replacement of project management with a management agent approved by the Secretary;

(B) impose civil money penalties, which shall be used solely for the purpose of supporting safe and sanitary conditions at

H. R. 7148—244

applicable properties, as designated by the Secretary, with priority given to the tenants of the property affected by the penalty;

(C) abate the section 8 contract, including partial abatement, as determined by the Secretary, until all deficiencies have been corrected;

(D) pursue transfer of the project to an owner, approved by the Secretary under established procedures, who will be obligated to promptly make all required repairs and to accept renewal of the assistance contract if such renewal is offered;

(E) transfer the existing section 8 contract to another project or projects and owner or owners;

(F) pursue exclusionary sanctions, including suspensions or debarments from Federal programs;

(G) seek judicial appointment of a receiver to manage the property and cure all project deficiencies or seek a judicial order of specific performance requiring the owner to cure all project deficiencies;

(H) work with the owner, lender, or other related party to stabilize the property in an attempt to preserve the property through compliance, transfer of ownership, or an infusion of capital provided by a third-party that requires time to effectuate; or

(I) take any other regulatory or contractual remedies available as deemed necessary and appropriate by the Secretary.

(d) The Secretary shall take appropriate steps to ensure that project-based contracts remain in effect, subject to the exercise of contractual abatement remedies to assist relocation of tenants for major threats to health and safety after written notice to the affected tenants. To the extent the Secretary determines, in consultation with the tenants and the local government, that the property is not feasible for continued rental assistance payments under such section 8 or other programs, based on consideration of—

(1) the costs of rehabilitating and operating the property and all available Federal, State, and local resources, including rent adjustments under section 524 of the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRAA"); and

(2) environmental conditions that cannot be remedied in a cost-effective fashion, the Secretary may contract for project-based rental assistance payments with an owner or owners of other existing housing properties, or provide other rental assistance.

(e) The Secretary shall report semi-annually on all properties covered by this section that are assessed through the Real Estate Assessment Center and have failing physical inspection scores or have received an unsatisfactory management and occupancy review within the past 36 months. The report shall include—

(1) identification of the enforcement actions being taken to address such conditions, including imposition of civil money penalties and termination of subsidies, and identification of properties that have such conditions multiple times;

(2) identification of actions that the Department of Housing and Urban Development is taking to protect tenants of such identified properties; and

H. R. 7148—245

(3) any administrative or legislative recommendations to further improve the living conditions at properties covered under a housing assistance payment contract.

The first report shall be submitted to the Senate and House Committees on Appropriations not later than 30 days after the enactment of this Act, and the second report shall be submitted within 180 days of the transmittal of the first report.

SEC. 219. None of the funds made available by this Act, or any other Act, for purposes authorized under section 8 (only with respect to the tenant-based rental assistance program) and section 9 of the United States Housing Act of 1937 (42 U.S.C. 1437 et seq.), may be used by any public housing agency for any amount of salary, including bonuses, for the chief executive officer of which, or any other official or employee of which, that exceeds the annual rate of basic pay payable for a position at level IV of the Executive Schedule at any time during any public housing agency fiscal year 2026.

SEC. 220. None of the funds made available by this Act and provided to the Department of Housing and Urban Development may be used to make, withdraw, terminate, or rescind (except at the request of the recipient) a grant award unless the Secretary notifies the House and Senate Committees on Appropriations not less than 3 full business days before any project, State, locality, housing authority, tribe, nonprofit organization, or other entity selected to receive a grant award is announced or is notified of such changes by the Department or its offices: *Provided*, That such notification shall list each grant award and project description by State and congressional district.

SEC. 221. None of the funds made available in this Act shall be used by the Federal Housing Administration, the Government National Mortgage Association, or the Department of Housing and Urban Development to insure, securitize, or establish a Federal guarantee of any mortgage or mortgage backed security that refinances or otherwise replaces a mortgage that has been subject to eminent domain condemnation or seizure, by a State, municipality, or any other political subdivision of a State.

SEC. 222. None of the funds made available by this Act may be used to terminate the status of a unit of general local government as a metropolitan city (as defined in section 102 of the Housing and Community Development Act of 1974 (42 U.S.C. 5302)) with respect to grants under section 106 of such Act (42 U.S.C. 5306).

SEC. 223. Amounts made available by this Act that are appropriated, allocated, advanced on a reimbursable basis, or transferred to the Office of Policy Development and Research of the Department of Housing and Urban Development and functions thereof, for research, evaluation, or statistical purposes, and that are unexpended at the time of completion of a contract, grant, or cooperative agreement, may be deobligated and shall immediately become available and may be reobligated in that fiscal year or the subsequent fiscal year for the research, evaluation, or statistical purposes for which the amounts are made available to that Office subject to reprogramming requirements in section 405 of this Act.

SEC. 224. None of the funds provided in this Act or any other Act may be used for awards, including performance, special act, or spot, for any employee of the Department of Housing and Urban Development subject to administrative discipline (including suspension from work), in this fiscal year, but this prohibition shall not

H. R. 7148—246

be effective prior to the effective date of any such administrative discipline or after any final decision over-turning such discipline.

SEC. 225. With respect to grant amounts awarded under the heading "Homeless Assistance Grants" for fiscal years 2015 through 2026 for the continuum of care (CoC) program as authorized under subtitle C of title IV of the McKinney-Vento Homeless Assistance Act, costs paid by program income of grant recipients may count toward meeting the recipient's matching requirements, provided the costs are eligible CoC costs that supplement the recipient's CoC program.

SEC. 226. (a) From amounts made available under this title under the heading "Homeless Assistance Grants", the Secretary may award 1-year transition grants to recipients of funds for activities under subtitle C of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11381 et seq.) to transition from one continuum of care program component to another.

(b) In order to be eligible to receive a transition grant, the funding recipient must have the consent of the continuum of care and meet standards determined by the Secretary.

SEC. 227. The promise zone designations and promise zone designation agreements entered into pursuant to such designations, made by the Secretary in prior fiscal years, shall remain in effect in accordance with the terms and conditions of such agreements (including designation and agreement time periods).

SEC. 228. Any public housing agency designated as a Moving to Work agency pursuant to section 239 of division L of Public Law 114–113 (42 U.S.C. 1437f note; 129 Stat. 2897) may, upon such designation, use funds (except for special purpose funding, including special purpose vouchers) previously allocated to any such public housing agency under section 8 or 9 of the United States Housing Act of 1937, including any reserve funds held by the public housing agency or funds held by the Department of Housing and Urban Development, pursuant to the authority for use of section 8 or 9 funding provided under such section and section 204 of title II of the Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1996 (Public Law 104–134; 110 Stat. 1321–28), notwithstanding the purposes for which such funds were appropriated.

SEC. 229. None of the amounts made available by this Act may be used to prohibit any public housing agency under receivership or the direction of a Federal monitor from applying for, receiving, or using funds made available under the heading "Public Housing Fund" for competitive grants to evaluate and reduce lead-based paint hazards in this Act or that remain available and not awarded from prior Acts, or be used to prohibit a public housing agency from using such funds to carry out any required work pursuant to a settlement agreement, consent decree, voluntary agreement, or similar document for a violation of the lead safe housing or lead disclosure rules.

SEC. 230. For fiscal year 2026, if the Secretary determines or has determined, for any prior formula grant allocation administered by the Secretary through the Offices of Public and Indian Housing, Community Planning and Development, or Housing, that a recipient received an allocation greater than the amount such recipient should have received for a formula allocation cycle pursuant to applicable statutes and regulations, the Secretary may adjust for any such funding error in the next applicable formula allocation

cycle by (a) offsetting each such recipient's formula allocation (if eligible for a formula allocation in the next applicable formula allocation cycle) by the amount of any such funding error, and (b) reallocating any available balances that are attributable to the offset to the recipient or recipients that would have been allocated additional funds in the formula allocation cycle in which any such error occurred (if such recipient or recipients are eligible for a formula allocation in the next applicable formula allocation cycle) in an amount proportionate to such recipient's eligibility under the next applicable formula allocation cycle: *Provided,* That all offsets and reallocations from such available balances shall be recorded against funds available for the next applicable formula allocation cycle: *Provided further,* That the term "next applicable formula allocation cycle" means the first formula allocation cycle for a program that is reasonably available for correction following such a Secretarial determination: *Provided further,* That if, upon request by a recipient and giving consideration to all Federal resources available to the recipient for the same grant purposes, the Secretary determines that the offset in the next applicable formula allocation cycle would critically impair the recipient's ability to accomplish the purpose of the formula grant, the Secretary may adjust for the funding error across two or more formula allocation cycles.

SEC. 231. The Secretary may transfer from amounts made available for salaries and expenses under this title (excluding amounts made available under the heading "Office of Inspector General") to the heading "Information Technology Fund" for unforeseen information technology needs, including for additional development, modernization, and enhancement, to remain available until September 30, 2028: *Provided,* That the total amount of such transfers shall not exceed $5,000,000: *Provided further,* That this transfer authority shall not be used to fund information technology projects or activities that have known out-year development, modernization, or enhancement costs in excess of $500,000: *Provided further,* That this transfer authority shall not be used to allocate costs across offices for broader departmental information technology needs: *Provided further,* That the Secretary shall provide notification to the House and Senate Committees on Appropriations no fewer than 10 business days in advance of any such transfer.

SEC. 232. The Secretary shall comply with all process requirements, including public notice and comment, when seeking to revise any annual contributions contract: *Provided,* That the Secretary shall provide public housing authorities not less than 60 days for public comment, and the Secretary shall consider and respond to submitted comments.

SEC. 233. None of the funds made available to the Department of Housing and Urban Development in this or prior Acts may be used to issue a solicitation or accept bids on any solicitation that is substantially equivalent to the draft solicitation entitled "Housing Assistance Payments (HAP) Contract Support Services (HAPSS)" posted to www.Sam.gov on July 27, 2022.

SEC. 234. (a) Any unobligated balances from amounts made available under the heading, "Community Development Fund" in chapter 9 of title II of the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Hurricane Recovery, 2006 (Public Law 109–234) that were transferred to "Management

and Administration, Salaries and Expenses" are hereby permanently rescinded.

(b) Any unobligated balances included under Treasury Appropriation Fund Symbol 86 X 0108 from amounts transferred to the Department of Housing and Urban Development from amounts made available under the heading, "Unanticipated Needs" in chapter 8 of title I of the Emergency Supplemental Appropriations Act of 1994 (Public Law 103–211) are hereby permanently rescinded.

(c) Any unobligated balances included under Treasury Appropriation Fund Symbol 86 X 0148, 86–2023/2027–0483 and 86 X 0163 are hereby permanently rescinded.

(d) Of the unobligated balances from amounts included under Treasury Appropriation Fund Symbol 86 X 0304, $5,036,988.73 are hereby permanently rescinded.

(e) Of the unobligated balances from appropriations made available under the heading "Community Development Fund" prior to fiscal year 2011, $176,688.49 in Economic Development Initiative grant funds and $336,275.98 in Special Purpose Grant funds are hereby rescinded.

(f) Of the unobligated balances from amounts made available under the heading "Assisted Housing Inspections and Risk Assessments", in the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119–4), $22,000,000 are hereby permanently rescinded.

(g) Of the unobligated balances from amounts included under Treasury Appropriation Fund Symbol 86 X 0313, $1.74 is hereby permanently rescinded.

(h) $5,200,000 of amounts previously made available for expenditure from the Manufactured Housing Fees Trust Fund are hereby permanently rescinded.

SEC. 235. None of the amounts made available in this or prior Acts may be used to consider family self-sufficiency achievement metrics (FAM) in determining funding awards for programs receiving family self-sufficiency program coordinator funding provided in this or prior Acts except to provide bonus awards as expressly made available in this or prior Acts for self-sufficiency programs assigned a ranking of performance category 1 based on their publicly available FAM scores.

SEC. 236. The Secretary may, upon a finding that a waiver or alternative requirement is necessary for the effective delivery and administration of funds made available for new incremental voucher assistance or renewals for the mainstream program and the family unification program (including the foster youth to independence program) in this and prior Acts, waive or specify alternative requirements, other than requirements related to tenant rights and protections, rent setting, fair housing, nondiscrimination, labor standards, and the environment, for—

(1) section 8(o)(6)(A) of the United States Housing Act of 1937 (42 U.S.C. 1437f(o)(6)(A)) and regulatory provisions related to the administration of waiting lists, local preferences, and the initial term and extensions of tenant-based vouchers; and

(2) section 8(x)(2) of the United States Housing Act of 1937 (42 U.S.C. 1437f(x)(2)) regarding the timing of referral of youth leaving foster care.

SEC. 237. The Secretary shall fulfill their responsibilities to enforce the Fair Housing Act (42 U.S.C. 3601 et seq.): *Provided,* That none of the funds made available by this Act may be used by the Department of Housing and Urban Development to direct a grantee to undertake specific changes to existing zoning laws as part of carrying out the interim final rule entitled "Affirmatively Furthering Fair Housing Revisions" (90 Fed. Reg. 11020 (March 3, 2025)).

SEC. 238. The whistleblower protections in section 4712 of title 41, United States Code, shall apply to any contract, sub-contract, grant, subgrant, or personal services contract funded from amounts made available in this or prior Acts (including carryover and recaptures), regardless of when the agreement was executed.

SEC. 239. (a) For fiscal years 2026 through 2028, upon request from the owner, the Secretary of Housing and Urban Development ("Secretary") may forgive or restructure the terms of any indebtedness relating to any remaining principal and interest under financial assistance made available under section 201 of the Housing and Community Development Amendments of 1978 (12 U.S.C. 1715z–1a) ("Flex Sub loan").

(b) The Secretary may only forgive or restructure loans under this section for properties with—

(1) 200 or fewer assisted units;

(2) a Flex Sub loan with an unpaid principal balance of $2,000,000 or less;

(3) a score of 80 or higher on the most recent REAC inspection; and

(4) a most recent management and occupancy review score of "above average" or "superior."

(c) The Secretary may set such terms and conditions as the Secretary determines are appropriate for forgiveness or restructuring under this section, including:

(1) Different maturity dates or interest rate terms;

(2) Extension of affordability use agreements; and

(3) Other measures to ensure the long-term stability of operations at the property.

(d) There is hereby appropriated $2,000,000, to remain available until September 30, 2029, to carry out the purposes of this section, in addition to amounts otherwise available for such purposes.

SEC. 240. Funds previously made available by the Consolidated and Further Continuing Appropriations Act, 2013 (Public Law 113–6) for initial project rental assistance contracts associated with the demonstration program under the heading "Housing for Persons with Disabilities" in the Consolidated and Further Continuing Appropriations Act, 2012 (Public Law 112–55) that were available for obligation through fiscal year 2016 are to remain available through fiscal year 2031 for the liquidation of valid obligations incurred in fiscal years 2013 through 2016.

SEC. 241. Amounts made available for the Office of Housing under the heading "Program Offices" in this and prior Acts shall also be available, without additional competition, for cooperative agreements with participating administrative entities that have been selected under section 513(b) of the Multifamily Assisted Housing Reform and Affordability Act of 1997 (42 U.S.C. 1437f note) (MAHRAA) to provide direct support, including carrying out

H. R. 7148—250

due diligence and underwriting functions for owners and for technical assistance activities, on conditions established by the Secretary for small properties and owners converting assistance under the first component or the second component under the heading "Rental Assistance Demonstration" in the Department of Housing and Urban Development Appropriations Act, 2012 (title II of division C of Public Law 112–55).

SEC. 242. The Secretary shall conduct all rulemaking in accordance with the policies of part 10 of title 24 of the Code of Federal Regulations and Executive Order 12866, as amended, including providing for public participation and not less than 60 days for the submission of written comments.

SEC. 243. For fiscal year 2026, the costs of any rent incentives as authorized pursuant to waivers or alternative requirements of the jobs-plus initiative as described under the heading "Self-Sufficiency Programs" shall not be charged against the competitive grant amounts made available under such heading: *Provided,* That the amount of any forgone increases in tenant rent payments due to the implementation of such rent incentives shall be factored into the public housing agency's general operating fund eligibility pursuant to the formula under the heading "Public Housing Fund": *Provided further,* That the amount of any forgone increases in tenant rent payments due to the implementation of such rent incentives implemented on behalf of residents of a project with assistance converted from public housing to project-based rental assistance under section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f) or assistance under section 8(o)(13) of such Act under the heading "Rental Assistance Demonstration" in the Department of Housing and Urban Development Appropriations Act, 2012 (title II of division C of Public Law 112–55), as amended (42 U.S.C. 1437f note) shall be factored into (1) housing assistance payments made pursuant to project-based subsidy contracts provided under the heading "Project-Based Rental Assistance"; and (2) housing assistance payments made by public housing agencies pursuant to project-based assistance contracts under section 8(o)(13) of such Act, with these costs being renewed under the heading "Tenant-Based Rental Assistance".

SEC. 244. In allocating and awarding available amounts provided under the heading "Homeless Assistance Grants" in the Department of Housing and Urban Development Appropriations Act, 2025 (Public Law 119–04) and under section 231 of Public Law 116–94 for the continuum of care program, the Secretary shall, prior to awarding any amounts through a notice of funding opportunity and notwithstanding any inconsistent provisions in such Acts or in subtitle C of title IV of the McKinney-Vento Homeless Assistance Act, non-competitively renew for one 12-month period all projects (including youth homelessness demonstration projects and shelter plus care projects) expiring during the first quarter of calendar year 2026 (including any projects that expired from January 1, 2026 through the date of enactment of this Act): *Provided,* That if awards have not been made under a fiscal year 2025 notice of funding opportunity prior to April 1, 2026, the Secretary shall also non-competitively renew all such projects expiring during the second quarter of calendar year 2026: *Provided further,* That if awards have not been made under a fiscal year 2025 notice of funding opportunity prior to July 1, 2026, the Secretary shall also non-competitively renew all such projects expiring

H. R. 7148—251

during the third and fourth quarters of calendar year 2026: *Provided further,* That such renewals shall be in an amount equal to the prior award with upward adjustments to enable renewal projects to operate at substantially the same levels, including cost-of-living adjustments for supportive services from the prior grant and due to changes to the fair market rents in the geographic area: *Provided further,* That amounts remaining after all such renewals are made shall be competitively awarded pursuant to a notice of funding opportunity: *Provided further,* That such renewals shall not render recipients ineligible for awards under any fiscal year 2025 and fiscal year 2026 notices of funding opportunity.

This title may be cited as the "Department of Housing and Urban Development Appropriations Act, 2026".

H. R. 7148—252

TITLE III

RELATED AGENCIES

ACCESS BOARD

SALARIES AND EXPENSES

For expenses necessary for the Access Board, as authorized by section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792), $9,955,000: *Provided,* That, notwithstanding any other provision of law, there may be credited to this appropriation funds received for publications and training expenses.

FEDERAL MARITIME COMMISSION

SALARIES AND EXPENSES

For necessary expenses of the Federal Maritime Commission as authorized by section 46107 of title 46, United States Code, including services as authorized by section 3109 of title 5, United States Code; hire of passenger motor vehicles as authorized by section 1343(b) of title 31, United States Code; and uniforms or allowances therefor, as authorized by sections 5901 and 5902 of title 5, United States Code, $40,000,000, of which $2,000,000 shall remain available until September 30, 2027: *Provided,* That not to exceed $3,500 shall be for official reception and representation expenses.

NATIONAL RAILROAD PASSENGER CORPORATION

OFFICE OF INSPECTOR GENERAL

SALARIES AND EXPENSES

For necessary expenses of the Office of Inspector General for the National Railroad Passenger Corporation to carry out the provisions of the Inspector General Act of 1978 (5 U.S.C. Chapter 4), $29,240,000: *Provided,* That the Inspector General shall have all necessary authority, in carrying out the duties specified in such Act, to investigate allegations of fraud, including false statements to the Government under section 1001 of title 18, United States Code, by any person or entity that is subject to regulation by the National Railroad Passenger Corporation: *Provided further,* That the Inspector General may enter into contracts and other arrangements for audits, studies, analyses, and other services with public agencies and with private persons, subject to the applicable laws and regulations that govern the obtaining of such services within the National Railroad Passenger Corporation: *Provided further,* That the Inspector General may select, appoint, and employ such officers and employees as may be necessary for carrying out the functions, powers, and duties of the Office of Inspector General, subject to the applicable laws and regulations that govern such selections, appointments, and employment within the National Railroad Passenger Corporation: *Provided further,* That concurrent with the President's budget request for fiscal year 2027, the Inspector General shall submit to the House and Senate Committees on Appropriations a budget request for fiscal year 2027 in similar

format and substance to budget requests submitted by executive agencies of the Federal Government.

## NATIONAL TRANSPORTATION SAFETY BOARD

### SALARIES AND EXPENSES

For necessary expenses of the National Transportation Safety Board, including hire of passenger motor vehicles and aircraft; services as authorized by section 3109 of title 5, United States Code, but at rates for individuals not to exceed the per diem rate equivalent to the rate for a GS–15; uniforms, or allowances therefor, as authorized by sections 5901 and 5902 of title 5, United States Code, $145,000,000, of which not to exceed $1,000 may be used for official reception and representation expenses.

## NEIGHBORHOOD REINVESTMENT CORPORATION

### PAYMENT TO THE NEIGHBORHOOD REINVESTMENT CORPORATION

For payment to the Neighborhood Reinvestment Corporation for use in neighborhood reinvestment activities, as authorized by the Neighborhood Reinvestment Corporation Act (42 U.S.C. 8101–8107), $158,000,000: *Provided,* That the Neighborhood Reinvestment Corporation shall notify network organizations of their full formula grant award by the latter of 60 days after enactment of this Act or March 1, 2026.

## SURFACE TRANSPORTATION BOARD

### SALARIES AND EXPENSES

For necessary expenses of the Surface Transportation Board, including services authorized by section 3109 of title 5, United States Code, $40,799,000: *Provided,* That, notwithstanding any other provision of law, not to exceed $1,250,000 from fees established by the Surface Transportation Board shall be credited to this appropriation as offsetting collections and used for necessary and authorized expenses under this heading: *Provided further,* That the amounts made available under this heading from the general fund shall be reduced on a dollar-for-dollar basis as such offsetting collections are received during fiscal year 2026, to result in a final appropriation from the general fund estimated at not more than $39,549,000.

## UNITED STATES INTERAGENCY COUNCIL ON HOMELESSNESS

### OPERATING EXPENSES

For necessary expenses, including payment of salaries, authorized travel, hire of passenger motor vehicles, the rental of conference rooms, and the employment of experts and consultants under section 3109 of title 5, United States Code, of the United States Interagency Council on Homelessness (in this heading "the Council") in carrying out the functions pursuant to title II of the McKinney-Vento Homeless Assistance Act, as amended, $3,000,000: *Provided,* That the Council shall be staffed in accordance with section 11313(a)(5) of title 42, United States Code, and regional coordinators shall have

H. R. 7148—254

the proven expertise and demonstrated experience needed to carry out the duties specified in such section: *Provided further,* That each meeting of the Council shall be open to the public, and the Council shall post a public notification of each Council meeting not less than 30 days in advance of each meeting on its website and include the agenda for each meeting in such posting.

## TITLE IV

### GENERAL PROVISIONS—THIS ACT

SEC. 401. None of the funds in this Act shall be used for the planning or execution of any program to pay the expenses of, or otherwise compensate, non-Federal parties intervening in regulatory or adjudicatory proceedings funded in this Act.

SEC. 402. None of the funds appropriated in this Act shall remain available for obligation beyond the current fiscal year, nor may any be transferred to other appropriations, unless expressly so provided herein.

SEC. 403. The expenditure of any appropriation under this Act for any consulting service through a procurement contract pursuant to section 3109 of title 5, United States Code, shall be limited to those contracts where such expenditures are a matter of public record and available for public inspection, except where otherwise provided under existing law, or under existing Executive Order issued pursuant to existing law.

SEC. 404. (a) None of the funds made available in this Act may be obligated or expended for any employee training that—

(1) does not meet identified needs for knowledge, skills, and abilities bearing directly upon the performance of official duties;

(2) contains elements likely to induce high levels of emotional response or psychological stress in some participants;

(3) does not require prior employee notification of the content and methods to be used in the training and written end of course evaluation;

(4) contains any methods or content associated with religious or quasi-religious belief systems or "new age" belief systems as defined in Equal Employment Opportunity Commission Notice N–915.022, dated September 2, 1988; or

(5) is offensive to, or designed to change, participants' personal values or lifestyle outside the workplace.

(b) Nothing in this section shall prohibit, restrict, or otherwise preclude an agency from conducting training bearing directly upon the performance of official duties.

SEC. 405. (a) Except as otherwise provided in this Act or the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), none of the funds provided in this Act or provided by previous appropriations Acts to the agencies or entities funded in this Act that remain available for obligation or expenditure in fiscal year 2026, or provided from any accounts in the Treasury derived by the collection of fees and available to the agencies funded by this Act, shall be available for obligation or expenditure through a reprogramming of funds that—

(1) creates a new program;

(2) eliminates a program, project, or activity;

(3) increases funds or personnel for any program, project, or activity for which funds have been denied or restricted by the Congress;

(4) proposes to use funds directed for a specific activity by either the House or Senate Committees on Appropriations for a different purpose;

(5) augments existing programs, projects, or activities in excess of $5,000,000 or 10 percent, whichever is less;

(6) reduces existing programs, projects, or activities by $5,000,000 or 10 percent, whichever is less; or

(7) creates, reorganizes, or restructures a branch, division, office, bureau, board, commission, agency, administration, or department different from the budget justifications submitted to the House and Senate Committees on Appropriations, the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), or the relevant operating plan properly submitted by each agency, whichever is more detailed.

(b) Not later than 60 days after the date of enactment of this Act, each agency funded by this Act shall submit an operating plan to the House and Senate Committees on Appropriations to establish the baseline for application of reprogramming and transfer authorities for the current fiscal year: *Provided,* That the operating plan shall include—

(1) a table for each appropriation with a separate column to display the prior year enacted level, the President's budget request, adjustments made by Congress, adjustments due to enacted rescissions, if appropriate, and the fiscal year enacted level;

(2) a delineation in the table for (A) each appropriation and its respective prior year enacted level by object class and program, project, and activity as detailed in this Act, the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), or in the budget appendix for the respective appropriations, whichever is more detailed, (B) each item for which a dollar amount is specified and for all programs for which new budget (obligational) authority is provided, and (C) each discretionary grant and discretionary grant allocation;

(3) an organizational chart that includes current and estimated staffing numbers, by office, at the customary level of detail unless otherwise directed by this Act or the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act); and

(4) an identification of items of special congressional interest.

(c) Each agency may reprogram amounts in excess of or contrary to the threshold limitations established in this section only after—

(1) providing written notification to the House and Senate Committees on Appropriations no less than 30 days in advance of such reprogramming of funds; and

(2) receiving prior written approval from the House and Senate Committees on Appropriations.

SEC. 406. Except as otherwise specifically provided by law, not to exceed 50 percent of unobligated balances remaining available at the end of fiscal year 2026 from appropriations made available for salaries and expenses for fiscal year 2026 in this Act, shall remain available through September 30, 2027, for each such account for the purposes authorized: *Provided,* That a request shall be submitted to the House and Senate Committees on Appropriations for approval prior to the expenditure of such funds: *Provided further,* That these requests shall be made in compliance with reprogramming guidelines under section 405 of this Act.

SEC. 407. No funds in this Act may be used to support any Federal, State, or local projects that seek to use the power of eminent domain, unless eminent domain is employed only for a public use: *Provided,* That for purposes of this section, public use shall not be construed to include economic development that primarily benefits private entities: *Provided further,* That any use of funds for mass transit, railroad, airport, seaport or highway projects, as well as utility projects which benefit or serve the general public (including energy-related, communication-related, water-related and wastewater-related infrastructure), other structures designated for use by the general public or which have other common-carrier or public-utility functions that serve the general public and are subject to regulation and oversight by the government, and projects for the removal of an immediate threat to public health and safety or brownfields as defined in the Small Business Liability Relief and Brownfields Revitalization Act (Public Law 107–118) shall be considered a public use for purposes of eminent domain.

SEC. 408. None of the funds made available in this Act may be transferred to any department, agency, or instrumentality of the United States Government, except pursuant to a transfer made by, or transfer authority provided in, this Act or any other appropriations Act.

SEC. 409. No funds appropriated pursuant to this Act may be expended by an entity unless the entity agrees that in expending the assistance the entity will comply with sections 2 through 4 of the Act of March 3, 1933 (41 U.S.C. 8301–8305, popularly known as the "Buy American Act").

SEC. 410. No funds appropriated or otherwise made available under this Act shall be made available to any person or entity that has been convicted of violating the Buy American Act (41 U.S.C. 8301–8305).

SEC. 411. None of the funds made available in this Act may be used for first-class airline accommodations in contravention of sections 301–10.122 and 301–10.123 of title 41, Code of Federal Regulations.

SEC. 412. None of the funds made available in this Act may be used to send or otherwise pay for the attendance of more than 50 employees of a single agency or department of the United States Government, who are stationed in the United States, at any single international conference unless the relevant Secretary reports to the House and Senate Committees on Appropriations at least 5 days in advance that such attendance is important to the national interest: *Provided,* That for purposes of this section the term "international conference" shall mean a conference occurring outside of the United States attended by representatives of the United States Government and of foreign governments, international organizations, or nongovernmental organizations.

SEC. 413. None of the funds appropriated or otherwise made available under this Act may be used by the Surface Transportation Board to charge or collect any filing fee for rate or practice complaints filed with the Board in an amount in excess of the amount authorized for district court civil suit filing fees under section 1914 of title 28, United States Code.

SEC. 414. (a) None of the funds made available in this Act may be used to maintain or establish a computer network unless

such network blocks the viewing, downloading, and exchanging of pornography.

(b) Nothing in subsection (a) shall limit the use of funds necessary for any Federal, State, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities.

Sec. 415. (a) None of the funds made available in this Act may be used to deny an Inspector General funded under this Act timely access to any records, documents, or other materials available to the department or agency over which that Inspector General has responsibilities under the Inspector General Act of 1978 (5 U.S.C. App.), or to prevent or impede that Inspector General's access to such records, documents, or other materials, under any provision of law, except a provision of law that expressly refers to the Inspector General and expressly limits the Inspector General's right of access.

(b) A department or agency covered by this section shall provide its Inspector General with access to all such records, documents, and other materials in a timely manner.

(c) Each Inspector General shall ensure compliance with statutory limitations on disclosure relevant to the information provided by the establishment over which that Inspector General has responsibilities under the Inspector General Act of 1978 (5 U.S.C. App.).

(d) Each Inspector General covered by this section shall report to the Committees on Appropriations of the House of Representatives and the Senate within 5 calendar days any failures to comply with this requirement.

Sec. 416. None of the funds appropriated or otherwise made available by this Act may be used to pay award or incentive fees for contractors whose performance has been judged to be below satisfactory, behind schedule, over budget, or has failed to meet the basic requirements of a contract, unless the Agency determines that any such deviations are due to unforeseeable events, government-driven scope changes, or are not significant within the overall scope of the project and/or program unless such awards or incentive fees are consistent with 16.401(e)(2) of the Federal Acquisition Regulations.

Sec. 417. No part of any appropriation contained in this Act shall be available to pay the salary for any person filling a position, other than a temporary position, formerly held by an employee who has left to enter the Armed Forces of the United States and has satisfactorily completed his or her period of active military or naval service, and has within 90 days after his or her release from such service or from hospitalization continuing after discharge for a period of not more than 1 year, made application for restoration to his or her former position and has been certified by the Office of Personnel Management as still qualified to perform the duties of his or her former position and has not been restored thereto.

Sec. 418. (a) None of the funds made available by this Act may be used to approve a new foreign air carrier permit under sections 41301 through 41305 of title 49, United States Code, or exemption application under section 40109 of that title of an air carrier already holding an air operators certificate issued by a country that is party to the U.S.-E.U.-Iceland-Norway Air Transport Agreement where such approval would contravene United States law or Article 17 bis of the U.S.-E.U.-Iceland-Norway Air Transport Agreement.

(b) Nothing in this section shall prohibit, restrict or otherwise preclude the Secretary of Transportation from granting a foreign air carrier permit or an exemption to such an air carrier where such authorization is consistent with the U.S.-E.U.-Iceland-Norway Air Transport Agreement and United States law.

SEC. 419. None of the funds made available by this Act may be used in contravention of existing Federal law regarding non-citizen eligibility and ineligibility for occupancy in federally assisted housing or for participation in and assistance under Federal housing programs, including section 214 of the Housing and Community Development Act of 1980 (42 U.S.C. 1436a) and title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (8 U.S.C. 1601 et seq.).

SEC. 420. (a) No part of any appropriation contained in this Act or title VIII of division J of Public Law 117–58 shall be used, other than for normal and recognized executive-legislative relationships, for publicity or propaganda purposes, and for the preparation, distribution, or use of any kit, pamphlet, booklet, publication, radio, television, or film presentation designed to support or defeat legislation pending before the Congress, except in presentation to the Congress itself.

(b) No part of any appropriation contained in this Act or in title VIII of division J of Public Law 117–58 shall be used to pay the salary or expenses of any grant or contract recipient, or agent acting for such recipient, related to any activity designed to influence the enactment of legislation or appropriations proposed or pending before the Congress, other than for normal and recognized executive-legislative relationships.

(c) Amounts repurposed pursuant to subsections (a) and (b) shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5.

SEC. 421. (a) In the table of projects in the explanatory statement referenced in section 417 of the Transportation, Housing and Urban Development, and Related Agencies Appropriations Act, 2022 (division L of Public Law 117–103)—

(1) the item relating to "Kansas Rail Safety Improvement Project" is deemed to be amended by striking recipient "Pittsburg Port Authority (KS)" and inserting "Kansas Department of Transportation";

(2) the item relating to "The Barkers Creek Industrial Park Power Expansion" is deemed to be amended by striking "The Barkers Creek Industrial Park Power Expansion" and inserting "Barkers Creek Industrial Park Access Bridge, Phase II";

(3) the item relating to "Acquisition of new commercial space" is deemed to be amended by striking project "Acquisition of new commercial space" and inserting "Renovation of commercial space";

(4) the item relating to "Electric school bus and associated electric vehicle (EV) charging infrastructure" is deemed to be amended by striking recipient "Falls Church City Public Schools" and inserting "City of Falls Church";

(5) the item relating to "North Commons Regional Vision" is deemed to be amended by striking recipient "Minneapolis Park and Recreation Board" and inserting "City of Minneapolis";

H. R. 7148—260

(6) the item relating to "Orangewood Parkette" is deemed to be amended by striking project "Orangewood Parkette" and inserting "Orangewood Complete Streets";

(7) the item relating to "Replacing Five Elevators in a Public Housing Development" is deemed to be amended by striking project "Replacing Five Elevators in a Public Housing Development" and inserting "Replacing Elevators in a Public Housing Development";

(8) the item relating to "Long Branch Stream Valley Park Pedestrian Bridge Replacements and ADA Improvements" is deemed to be amended by striking recipient "Montgomery County Government" and inserting "Maryland National Capital Park and Planning Commission";

(9) the item relating to "Washington Gorge Action Programs—Goldendale Childcare and Early Learning Center" is deemed to be amended by striking "Goldendale";

(10) the item relating to "Habitat for Humanity's Veterans Blitz Build" is deemed to be amended by striking recipient "Habitat for Humanity San Bernardino Area, Inc." and inserting "Neighborhood Partnership Housing Services, Inc. (NPHS)";

(11) the item relating to "Allen University Restoration of Historic Waverly-Good Samaritan Hospital" is deemed to be amended by striking "Allen University Restoration of Historic Waverly-Good Samaritan Hospital" and inserting "Facility Upgrades";

(12) the item relating to "The MEWS at Spencer Road, Affordable Housing and Mixed Use Development" is deemed to be amended by striking "The MEWS at Spencer Road,"; and

(13) The item relating to "ARISE housing for young adults transitioning out of foster care" is deemed to be amended by striking "ARISE housing for young adults transitioning out of foster care" and inserting "Construction of Housing in the City of Greenville."

(b) In the table of projects entitled "Community Project Funding/Congressionally Directed Spending" in the explanatory statement for division L of the Consolidated Appropriations Act, 2023 (Public Law 117–328) described in section 4 in the matter preceding division A of such Act—

(1) the item relating to "Lower Shore Clinic Co-Occurring Disorder Treatment Facility Housing" is deemed to be amended by:

(A) striking "Lower Shore Clinic Co-Occurring Disorder Treatment Facility Housing" and inserting "HealthPort Co-Occurring Disorder Treatment Facility"; and

(B) striking recipient "Lower Shore Clinic Inc." and inserting "HealthPort, Inc.";

(2) the item relating to "Metra Zero Emission Locomotive Commuter Rail Pilot" is deemed to be amended by striking "Locomotive";

(3) the item relating to "Acquisition of Property for the Revitalization of Cliftondale Square Business District" is deemed to be amended by striking "Acquisition of Property for the";

(4) the item relating to "Supportive Living, Community Day Services, and Housing Site Project for Adults with Intellectual and Developmental Disabilities" is deemed to be amended by striking project "Supportive Living, Community Day Services, and Housing Site Project for Adults with Intellectual and Developmental Disabilities" and inserting "Community Day Services and Housing Expansion for Adults with Intellectual and Developmental Disabilities";

(5) the item relating to "Public Library Addition" is deemed to be amended by striking project "Public Library Addition" and inserting "Public Library Renovations";

(6) the item relating to "Renovation of Snelling Motel to Affordable Housing for Veterans" is deemed to be amended by striking project "Renovation of Snelling Motel to Affordable Housing for Veterans" and inserting "Acquisition for Affordable Housing for Veterans";

(7) the item relating to "El Centro de la Raza-Pattison's West Community Campus Property Acquisition" is deemed to be amended by striking project "El Centro de la Raza-Pattison's West Community Campus Property Acquisition" and inserting "Pattison's West Community Campus";

(8) the item relating to "Riverbrook Regional YMCA" is deemed to be amended by striking recipient "Riverbrook Regional Young Men's Christian Association, Inc." and inserting "City of Norwalk";

(9) the item relating to "The SE1 Rehab" is deemed to be amended by striking recipient "The Skid Row Housing Trust" and inserting "PATH Ventures" and striking project "The SE1 Rehab" and inserting "Skid Row Permanent Supportive Housing Rehabilitation";

(10) the item relating to "Community Aging & Retirement Services, Inc." is deemed to be amended by striking recipient "Community Aging & Retirement Services, Inc." and inserting "Pasco County," and striking project "CARES One Stop Senior Center Acquisition and Construction" and inserting "Senior Center Acquisition and Construction";

(11) the item relating to "Western Flyer Coast Guard Pier Repair and Classroom Design" is deemed to be amended by striking project "Western Flyer Coast Guard Pier Repair and Classroom Design" and inserting "Western Flyer Pier and Classroom Repair";

(12) the item relating to "NYCHA ADA Accessibility and Security Lighting Project" is deemed to be amended by striking project "NYCHA ADA Accessibility and Security Lighting Project" and inserting "Installation of Exterior Lighting at Borinquen Plaza II";

(13) the item relating to "Ausonia Apartments Modernization" is deemed to be amended by striking recipient "Ausonia Apartments" and inserting "Boston Housing Authority";

(14) the item relating to "Helping Up Mission Permanent Housing on East Baltimore Street" is deemed to be amended by striking "Helping Up Mission Permanent Housing on East Baltimore Street" and inserting "Greenspace Development in Baltimore";

(15) the item relating to "The Choir School of Delaware's New Building at 8th and West Street in Wilmington's Historic Quaker Hill District" is deemed to be amended by striking

H. R. 7148—262

"at 8th and West Street in Wilmington's Historic Quaker Hill District" and inserting "in Wilmington";

(16) the item relating to "WTA 2011 Fixed Route Diesel to Electric Replacement Project, Bellingham" is deemed to be amended by striking "WTA 2011 Fixed Route Diesel to Electric Replacement Project, Bellingham" and inserting "Acquisition of Hybrid-Electric Buses"; and

(17) the item relating to "Media and Arts Collaborative Building Renovation" is deemed to be amended by striking "Renovation".

(c) In the table of projects entitled "Community Project Funding/ Congressionally Directed Spending" in the explanatory statement for division F of the Consolidated Appropriations Act, 2024 (Public Law 118–42) described in section 4 in the matter preceding division A of such Act—

(1) the item relating to "Hardwoods Permanent Supportive Housing" is deemed to be amended by striking "Hardwoods";

(2) the item relating to "Cle Elum—First Street Downtown Revitalization" is deemed to be amended by striking "First Street";

(3) the item relating to "Center for Community Programs in Livermore Falls and Jay" is deemed to be amended by striking recipient "United Way of the Tri-Valley Area" and inserting "Town of Jay";

(4) the item relating to "Pawtucket Library, Sayles Building Re-Pointing" is deemed to be amended by striking project "Pawtucket Library, Sayles Building Re-Pointing" and inserting "Pawtucket Library, Sayles Building Renovation";

(5) the item relating to "Germany Road Relocation Project" is deemed to be amended by striking project "Germany Road Relocation Project" and inserting "Sewer Improvements";

(6) the item relating to "Community Center Expansion and Land Acquisition" is deemed to be amended by striking "Expansion and Land Acquisition" and inserting "Planning and Design";

(7) the item relating to "Laconia, NH Hill Street Pedestrian Bridge Replacement" is deemed to be amended by striking "Hill Street" and inserting "Mill Street";

(8) the item relating to "Sunnyside Community Reinvestment as Cultura & Traditions: Tucson, AZ" is deemed to be amended by striking recipient "Sunnyside Foundation" and inserting "Sunnyside Unified School District";

(9) the item relating to "Craighead Technology Park and Public Safety Center" is deemed to be amended by striking recipient "City Water and Light of Jonesboro" and inserting "City of Jonesboro";

(10) the item relating to "Capital Repairs of 4 Affordable Housing properties, City of Seattle, King County, WA" is deemed to be amended by striking "4" and inserting "3";

(11) the item relating to "Middletown Plaza Elevator Replacement" is deemed to be amended by striking "Middletown Plaza Elevator Replacement" and inserting "Security Upgrades at NYCHA's Soundview Houses";

(12) the item relating to "Morris Affordable Housing Infrastructure" is deemed to be amended by striking recipient "Morris Affordable Housing Infrastructure" and inserting "Morris Housing Authority";

H. R. 7148—263

(13) the item relating to "Rehabilitation of Historic Alumni House as Skills-based Workforce Development Community Center" is deemed to be amended by striking "Historic Alumni House as" and inserting "a building for a";

(14) the item relating to "Mt. Airy/Germantown Streetscape Improvement and Reconnection" is deemed to be amended by striking recipient "Mt. Airy Business Improvement District" and inserting "City of Philadelphia";

(15) the item relating to "YMCA of Greater Pittsburgh" is deemed to be amended by striking "YMCA of Greater Pittsburgh" and inserting "Allegheny YMCA Renovation";

(16) the item relating to "Corn Maiden Early Learning Center" is deemed to be amended by striking recipient "Corn Maiden Early Learning Center" and inserting "Indian Pueblo Cultural Center";

(17) the item relating to "10th Street Realignment Project Overpass Project" is deemed to be amended by striking recipient "City of Richmond" and inserting "Fort Bend County"; and

(18) the item relating to "S. Roosevelt Road Share Use Path" is deemed to be amended by striking "S. Roosevelt Road".

(d) Each amendment made by subsection (a) shall be considered and treated as a continuation of an existing obligation of funds and not as a new obligation of funds.

(e) Amounts made available under the heading "Department of Transportation—Consolidated Rail Infrastructure and Safety Improvements" for the item relating to "Midway Crossing" in the table of projects entitled "Community Project Funding/Congressionally Directed Spending" in the explanatory statement for division L of the Consolidated Appropriations Act, 2023 (Public Law 117–328) described in section 4 in the matter preceding division A of such Act shall be transferred to "Department of Transportation—Transit Infrastructure Grants" and shall be available under the heading to which transferred for its original purpose.

(1) The item relating to "Midway Crossing" is deemed to be amended by striking account "Consolidated Rail Infrastructure and Safety Improvements" and inserting "Transit Infrastructure Grants" in the table of projects entitled "Community Project Funding/Congressionally Directed Spending" in the explanatory statement for division L of the Consolidated Appropriations Act, 2023 (Public Law 117–328) described in section 4 in the matter preceding division A of such Act.

SEC. 422. The Department of Transportation and the Department of Housing and Urban Development shall provide the House and Senate Committees on Appropriations:

(1) quarterly reports on the status of all funds, including the start of year unobligated and uncommitted balances, and the total obligations and recaptures for the fiscal year, by program, project, and activity;

(2) semiannual reports on staffing levels, hirings, and separations (including through the deferred resignation program and any other voluntary retirement programs), consistent with direction provided in this Act or the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act); and

(3) additional, updated budget or financial technical assistance, upon request.

SEC. 423. Each Department and agency funded in this Act shall maintain on its publicly accessible website:

(1) notices of funding opportunities (including any amendments) for all competitive grant programs issued in the most recent 10 years;

(2) grant awards for the most recent 10 years; and

(3) programmatic notices, guidance, and grant agreement templates for any grant program with disbursement activity within the previous 5 fiscal years.

SEC. 424. No later than 30 days after the date of enactment of this Act, and annually thereafter, the Departments and agencies funded under this Act shall submit a report to the House and Senate Committees on Appropriations on current staffing levels for all political and Presidential appointees in such Departments and agencies and categorized by which office within such Departments and agencies such employee is funded from, the office in which such employee carries out their daily work, such employee's title, and such employee's pay grade or the equivalent level based on the GS-scale.

SEC. 425. The assistance made available under paragraph (5)(B) under the heading "Public and Indian Housing—Tenant-Based Rental Assistance" in title II of this Act shall be known and designated as "The Melania Trump Foster Youth to Independence Initiative".

SEC. 426. (a) In the table titled "Community Project Funding/Congressionally Directed Spending" in the explanatory statement for division A of the Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026 described in section 4 in the matter preceding division A of such Act—

(1) the contents in the "Senate" sub column of the "Requestor(s)" column are deemed to be amended by inserting "Kaine, Warner" for the project identified as the "Center of Excellence in Environmental Forecasting" for the recipient "Virginia Institute of Marine Science";

(2) the contents in the "Recipient" column are deemed to be amended by—

(A) inserting "Research Foundation of the" before "City University of New York on behalf of Medgar Evers College" for the project identified as "Advancing Scientific Research Capabilities";

(B) inserting "Research Foundation of the" before "State University of New York on behalf of the University at Buffalo" for the project identified as "Center of Excellence for Cross-Border Supply Chains";

(C) striking "Game Department/Great Bay National Estuarine Research" and inserting "New Hampshire Fish and Game Department/Great Bay National Estuarine Research Reserve" for the project identified as "Great Bay National Estuarine Research Reserve: Research Facility";

(D) striking "of Albany" and inserting "at Albany" for the project identified as "UAlbany CNSE 200mm Wafer Cleanroom Equipment Upgrade"; and

(E) striking "Penn" and inserting "Pennington" for the project identified as "Jail Tech Upgrades"; and

(3) the contents in the "Project" column are deemed to be amended by inserting—

H. R. 7148—265

(A) "Chip Design Hub: Advanced Chip Design, Testing and" before "Fabrication Laboratory Equipment for Preparing the Semiconductor Workforce" for recipient "Florida Atlantic University";

(B) "University of Texas at Dallas Comparative Effectiveness of" before "North Texas Workforce Development Programs for Semiconductors" for recipient "The University of Texas at Dallas";

(C) "D'Youville University School of Pharmacy Sterile" before "Compounding and Non-Sterile Hazardous Compounding Lab" for recipient "D'Youville University";

(D) "Building the Workforce of the Future Generation By" before "Empowering Underserved Students with Technology-based STEM Education" for recipient "Research Foundation of CUNY";

(E) "Additive Construction and Manufacturing Equipment for" before "Affordable and Resilient Housing Research and Workforce Development" for recipient "Rowan University"; and

(F) "Interdisciplinary Engineering & Computing initiative to" before "Advance Semiconductor Industry and National Security Project" for recipient "Florida International University".

(b) The table titled "Department of Commerce Allocation of National Institute of Standards and Technology Funds: CHIPS Act Fiscal Year 2026" in the explanatory statement for division A of the Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026 described in section 4 in the matter preceding division A of such Act is deemed to be amended by striking "(1,000,000)" and inserting "(100,000)" for the "Administrative Expenses" project and activity.

(c) In the table titled "Interior and Environment Incorporation of Community Project Funding/Congressionally Directed Spending Items" in the explanatory statement for division C of the Commerce, Justice, Science; Energy and Water Development; and Interior and Environment Appropriations Act, 2026 described in section 4 in the matter preceding division A of such Act, the contents in the "Project Recipient and Name" column for the "STAG—Other (CDS)" account are deemed to be amended by striking "COR Healthy Communities for Waste Improvement System" and inserting "Oregon Metro for Waste Improvement System".

(d) The Department of the Interior, Environment, and Related Agencies Appropriations Act, 2026, is amended—

(1) in the matter preceding the first proviso under the heading "National Park Service—Operation of the National Park System" by striking "$2,877,195,000" and inserting "$2,901,195,000", striking "$148,285,000" and inserting "$157,165,000", and striking "$157,950,000" and inserting "$173,070,000"; and

(2) in the matter preceding the first proviso under the heading "National Park Service—Historic Preservation Fund", by striking "$205,059,000" and inserting "$181,059,000".

This division may be cited as the "Transportation, Housing and Urban Development, and Related Agencies Appropriations Act, 2026".

## DIVISION E—FINANCIAL SERVICES AND GENERAL GOVERNMENT APPROPRIATIONS ACT, 2026

### TITLE I

### DEPARTMENT OF THE TREASURY

#### DEPARTMENTAL OFFICES

##### SALARIES AND EXPENSES

For necessary expenses of the Departmental Offices including operation and maintenance of the Treasury Building and Freedman's Bank Building; hire of passenger motor vehicles; maintenance, repairs, and improvements of, and purchase of commercial insurance policies for, real properties leased or owned overseas, when necessary for the performance of official business; executive direction program activities; international affairs and economic policy activities; domestic finance and tax policy activities, including technical assistance to State, local, and territorial entities; and Treasury-wide management policies and programs activities, $287,576,000: *Provided,* That of the amount appropriated under this heading—

(1) not to exceed $1,350,000 is for official reception and representation expenses of which $1,000,000 is available until January 30, 2027, for hosting the G20 Financial Summit;

(2) not to exceed $258,000 is for unforeseen emergencies of a confidential nature to be allocated and expended under the direction of the Secretary of the Treasury and to be accounted for solely on the Secretary's certificate; and

(3) not to exceed $42,000,000 shall remain available until September 30, 2027, for—

(A) the Treasury-wide Financial Statement Audit and Internal Control Program;

(B) information technology modernization requirements;

(C) the audit, oversight, and administration of the Gulf Coast Restoration Trust Fund;

(D) the development and implementation of programs within the Office of Cybersecurity and Critical Infrastructure Protection, including entering into cooperative agreements;

(E) operations and maintenance of facilities; and

(F) international operations.

#### COMMITTEE ON FOREIGN INVESTMENT IN THE UNITED STATES FUND

##### (INCLUDING TRANSFER OF FUNDS)

For necessary expenses of the Committee on Foreign Investment in the United States, $21,000,000, to remain available until expended: *Provided,* That the chairperson of the Committee may transfer such amounts to any department or agency represented on the Committee (including the Department of the Treasury) subject to advance notification to the Committees on Appropriations of the House of Representatives and the Senate: *Provided further,* That the Department shall submit a report with the notification describing the amount of the transfer, the purpose of the transfer,

and the receiving agency: *Provided further,* That amounts so transferred shall remain available until expended for expenses of implementing section 721 of the Defense Production Act of 1950, as amended (50 U.S.C. 4565), and shall be available in addition to any other funds available to any department or agency: *Provided further,* That fees authorized by section 721(p) of such Act shall be credited to this appropriation as offsetting collections: *Provided further,* That the total amount appropriated under this heading from the general fund shall be reduced as such offsetting collections are received during fiscal year 2026, so as to result in a total appropriation from the general fund estimated at not more than $0.

### OFFICE OF TERRORISM AND FINANCIAL INTELLIGENCE

#### SALARIES AND EXPENSES

For the necessary expenses of the Office of Terrorism and Financial Intelligence to safeguard the financial system against illicit use and to combat rogue nations, terrorist facilitators, weapons of mass destruction proliferators, human rights abusers, money launderers, drug kingpins, and other national security threats, $237,662,000, of which not less than $3,000,000 shall be available for addressing human rights violations and corruption, including activities authorized by the Global Magnitsky Human Rights Accountability Act (22 U.S.C. 2656 note): *Provided,* That of the amounts appropriated under this heading, up to $16,000,000 shall remain available until September 30, 2027.

#### CYBERSECURITY ENHANCEMENT ACCOUNT

For salaries and expenses for enhanced cybersecurity for systems operated by the Department of the Treasury, $59,000,000, to remain available until September 30, 2028: *Provided,* That such funds shall supplement and not supplant any other amounts made available to the Treasury offices and bureaus for cybersecurity: *Provided further,* That of the total amount made available under this heading $6,000,000 shall be available for administrative expenses for the Treasury Chief Information Officer to provide oversight of the investments made under this heading: *Provided further,* That such funds shall supplement and not supplant any other amounts made available to the Treasury Chief Information Officer.

#### DEPARTMENT-WIDE SYSTEMS AND CAPITAL INVESTMENTS PROGRAMS

##### (INCLUDING TRANSFER OF FUNDS)

For development and acquisition of automatic data processing equipment, software, and services and for repairs and renovations to buildings owned by the Department of the Treasury, $11,007,000, to remain available until September 30, 2028: *Provided,* That these funds shall be transferred to accounts and in amounts as necessary to satisfy the requirements of the Department's offices, bureaus, and other organizations: *Provided further,* That this transfer authority shall be in addition to any other transfer authority provided in this Act: *Provided further,* That none of the funds appropriated under this heading shall be used to support or supplement

H. R. 7148—268

"Internal Revenue Service—Technology and Operations Support" or "Internal Revenue Service—Business Systems Modernization".

OFFICE OF INSPECTOR GENERAL

SALARIES AND EXPENSES

For necessary expenses of the Office of Inspector General in carrying out the provisions of chapter 4 of title 5, United States Code, $48,389,000, including hire of passenger motor vehicles; of which not to exceed $100,000 shall be available for unforeseen emergencies of a confidential nature, to be allocated and expended under the direction of the Inspector General of the Treasury; of which up to $2,800,000 to remain available until September 30, 2027, shall be for audits and investigations conducted pursuant to section 1608 of the Resources and Ecosystems Sustainability, Tourist Opportunities, and Revived Economies of the Gulf Coast States Act of 2012 (33 U.S.C. 1321 note); and of which not to exceed $1,000 shall be available for official reception and representation expenses.

TREASURY INSPECTOR GENERAL FOR TAX ADMINISTRATION

SALARIES AND EXPENSES

For necessary expenses of the Treasury Inspector General for Tax Administration in carrying out chapter 4 of title 5, United States Code, including purchase and hire of passenger motor vehicles (31 U.S.C. 1343(b)); and services authorized by 5 U.S.C. 3109, at such rates as may be determined by the Inspector General for Tax Administration; $165,000,000, of which $5,000,000 shall remain available until September 30, 2027; of which not to exceed $6,000,000 shall be available for official travel expenses; of which not to exceed $500,000 shall be available for unforeseen emergencies of a confidential nature, to be allocated and expended under the direction of the Inspector General for Tax Administration; and of which not to exceed $1,500 shall be available for official reception and representation expenses.

FINANCIAL CRIMES ENFORCEMENT NETWORK

SALARIES AND EXPENSES

For necessary expenses of the Financial Crimes Enforcement Network, including hire of passenger motor vehicles; travel and training expenses of non-Federal and foreign government personnel to attend meetings and training concerned with domestic and foreign financial intelligence activities, law enforcement, and financial regulation; services authorized by 5 U.S.C. 3109; not to exceed $25,000 for official reception and representation expenses; and for assistance to Federal law enforcement agencies, with or without reimbursement, $185,193,000, of which not to exceed $55,000,000 shall remain available until September 30, 2028.

H. R. 7148—269

BUREAU OF THE FISCAL SERVICE

SALARIES AND EXPENSES

For necessary expenses of operations of the Bureau of the Fiscal Service, $391,109,000; of which not to exceed $8,000,000, to remain available until September 30, 2028, is for information systems modernization initiatives; and of which $5,000 shall be available for official reception and representation expenses.

In addition, $242,000, to be derived from the Oil Spill Liability Trust Fund to reimburse administrative and personnel expenses for financial management of the Fund, as authorized by section 1012 of Public Law 101–380.

ALCOHOL AND TOBACCO TAX AND TRADE BUREAU

SALARIES AND EXPENSES

For necessary expenses of carrying out section 1111 of the Homeland Security Act of 2002, including hire of passenger motor vehicles, $157,795,000; of which not to exceed $6,000 shall be available for official reception and representation expenses; and of which not to exceed $50,000 shall be available for cooperative research and development programs for laboratory services; and provision of laboratory assistance to State and local agencies with or without reimbursement: *Provided,* That of the amount appropriated under this heading, $5,000,000 shall be for the costs of accelerating the processing of formula and label applications: *Provided further,* That of the amount appropriated under this heading, $5,000,000, to remain available until September 30, 2028, shall be for the costs associated with enforcement of and education regarding the trade practice provisions of the Federal Alcohol Administration Act (27 U.S.C. 201 et seq.).

UNITED STATES MINT

UNITED STATES MINT PUBLIC ENTERPRISE FUND

Pursuant to section 5136 of title 31, United States Code, the United States Mint is provided funding through the United States Mint Public Enterprise Fund for costs associated with the production of circulating coins, numismatic items, and protective services, including both operating expenses and capital investments: *Provided,* That the aggregate amount of new liabilities and obligations incurred during fiscal year 2026 under such section 5136 for circulating coinage and protective service capital investments of the United States Mint shall not exceed $50,000,000.

COMMUNITY DEVELOPMENT FINANCIAL INSTITUTIONS FUND

To carry out the Riegle Community Development and Regulatory Improvement Act of 1994 (subtitle A of title I of Public Law 103–325), including services authorized by section 3109 of title 5, United States Code, but at rates for individuals not to exceed the per diem rate equivalent to the rate for EX–III, $324,000,000. Of the amount appropriated under this heading—

(1) not less than $188,000,000, notwithstanding section 108(e) of Public Law 103–325 (12 U.S.C. 4707(e)) with regard

to Small and/or Emerging Community Development Financial Institutions Assistance awards, is available until September 30, 2027, for financial assistance and technical assistance under subparagraphs (A) and (B) of section 108(a)(1), respectively, of Public Law 103–325 (12 U.S.C. 4707(a)(1)(A) and (B)), of which up to $1,600,000 may be available for training and outreach under section 109 of Public Law 103–325 (12 U.S.C. 4708), of which up to $3,153,750 may be used for the cost of direct loans, of which up to $10,000,000, notwithstanding subsection (d) of section 108 of Public Law 103–325 (12 U.S.C. 4707(d)), may be available to provide financial assistance, technical assistance, training, and outreach to community development financial institutions to expand investments that benefit individuals with disabilities, and of which up to $2,000,000 shall be for the Economic Mobility Corps to be operated in conjunction with the Corporation for National and Community Service, pursuant to 42 U.S.C. 12571: *Provided*, That the cost of direct and guaranteed loans, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further*, That these funds are available to subsidize gross obligations for the principal amount of direct loans not to exceed $25,000,000: *Provided further*, That of the funds provided under this paragraph, excluding those made to community development financial institutions to expand investments that benefit individuals with disabilities and those made to community development financial institutions that serve populations living in persistent poverty counties, the CDFI Fund shall prioritize Financial Assistance awards to organizations that invest and lend in high-poverty areas: *Provided further*, That for purposes of this section, the term "high-poverty area" means any census tract with a poverty rate of at least 20 percent as measured by the 2016–2020 5-year data series available from the American Community Survey of the Bureau of the Census for all States and Puerto Rico or with a poverty rate of at least 20 percent as measured by the 2020 Island areas Decennial Census data for any territory or possession of the United States;

(2) not less than $28,000,000, notwithstanding section 108(e) of Public Law 103–325 (12 U.S.C. 4707(e)), is available until September 30, 2027, for financial assistance, technical assistance, training, and outreach programs designed to benefit Native American, Native Hawaiian, and Alaska Native communities and provided primarily through qualified community development lender organizations with experience and expertise in community development banking and lending in Indian country, Native American organizations, Tribes and Tribal organizations, and other suitable providers;

(3) not less than $40,000,000 is available until September 30, 2027, for the Bank Enterprise Award program;

(4) not less than $24,000,000, notwithstanding subsections (d) and (e) of section 108 of Public Law 103–325 (12 U.S.C. 4707(d) and (e)), is available until September 30, 2027, for a Healthy Food Financing Initiative to provide financial assistance, technical assistance, training, and outreach to community development financial institutions for the purpose of offering affordable financing and technical assistance to expand the availability of healthy food options in distressed communities;

(5) not less than $9,000,000 is available until September 30, 2027, to provide grants for loan loss reserve funds and to provide technical assistance for small dollar loan programs under section 122 of Public Law 103–325 (12 U.S.C. 4719): *Provided*, That sections 108(d) and 122(b)(2) of such Public Law shall not apply to the provision of such grants and technical assistance;

(6) not less than $35,000,000 is available for administrative expenses, including administration of CDFI Fund programs and the New Markets Tax Credit Program, of which not less than $1,000,000 is for the development of tools to better assess and inform CDFI investment performance and CDFI program impacts, and up to $300,000 is for administrative expenses to carry out the direct loan program; and

(7) during fiscal year 2026, none of the funds available under this heading are available for the cost, as defined in section 502 of the Congressional Budget Act of 1974, of commitments to guarantee bonds and notes under section 114A of the Riegle Community Development and Regulatory Improvement Act of 1994 (12 U.S.C. 4713a): *Provided*, That commitments to guarantee bonds and notes under such section 114A shall not exceed $500,000,000: *Provided further*, That such section 114A shall remain in effect until December 31, 2027: *Provided further*, That of the funds awarded under this heading, except those provided for the Economic Mobility Corps, not less than 10 percent shall be used for awards that support investments that serve populations living in persistent poverty counties: *Provided further*, That for the purposes of this paragraph and paragraph (1), the term "persistent poverty counties" means any county, including county equivalent areas in Puerto Rico, that has had 20 percent or more of its population living in poverty over the past 30 years, as measured by the 1990 and 2000 decennial censuses and the 2016–2020 5-year data series available from the American Community Survey of the Bureau of the Census or any other territory or possession of the United States that has had 20 percent or more of its population living in poverty over the past 30 years, as measured by the 1990, 2000, 2010 and 2020 Island Areas Decennial Censuses, or equivalent data, of the Bureau of the Census.

INTERNAL REVENUE SERVICE

TAXPAYER SERVICES

For necessary expenses of the Internal Revenue Service to provide taxpayer services, including pre-filing assistance and education, filing and account services, taxpayer advocacy services, and other services as authorized by 5 U.S.C. 3109, at such rates as may be determined by the Commissioner, $3,036,606,000: *Provided*, That not to exceed $186,000,000 of the amounts provided under this heading shall remain available until September 30, 2027, of which not less than $12,000,000 shall be for the Tax Counseling for the Elderly Program; not less than $28,000,000 shall be available for low-income taxpayer clinic grants, including grants to individual clinics of up to $200,000; and not less than $46,000,000 shall be available for the Community Volunteer Income Tax Assistance Matching Grants Program for tax return preparation assistance:

*Provided further,* That not less than $271,200,000 of the amounts provided under this heading shall be available for operating expenses of the Taxpayer Advocate Service, of which not less than $7,000,000 shall be for identity theft and refund fraud casework.

ENFORCEMENT

For necessary expenses for tax enforcement activities of the Internal Revenue Service to determine and collect owed taxes, to provide legal and litigation support, to conduct criminal investigations, to enforce criminal statutes related to violations of internal revenue laws and other financial crimes, to purchase and hire passenger motor vehicles (31 U.S.C. 1343(b)), and to provide other services as authorized by 5 U.S.C. 3109, at such rates as may be determined by the Commissioner, $4,999,000,000; of which not to exceed $250,000,000 shall remain available until September 30, 2027; of which not less than $60,257,000 shall be for the Interagency Crime and Drug Enforcement program; and of which not to exceed $35,000,000 shall be for investigative technology for the Criminal Investigation Division: *Provided,* That the amount made available for investigative technology for the Criminal Investigation Division shall be in addition to amounts made available for the Criminal Investigation Division under the "Technology and Operations Support" heading.

TECHNOLOGY AND OPERATIONS SUPPORT

For necessary expenses to operate the Internal Revenue Service to support taxpayer services and enforcement programs, including rent payments; facilities services; printing; postage; physical security; headquarters and other IRS-wide administration activities; research and statistics of income; telecommunications; information technology development, enhancement, operations, maintenance and security; the hire of passenger motor vehicles (31 U.S.C. 1343(b)); the operations of the Internal Revenue Service Oversight Board; and other services as authorized by 5 U.S.C. 3109, at such rates as may be determined by the Commissioner; $3,159,759,000, of which not to exceed $275,000,000 shall remain available until September 30, 2027; of which not to exceed $10,000,000 shall remain available until expended for acquisition of equipment and construction, repair and renovation of facilities; of which not to exceed $1,000,000 shall remain available until September 30, 2028, for research; and of which not to exceed $20,000 shall be for official reception and representation expenses: *Provided,* That not later than 30 days after the end of each quarter, the Internal Revenue Service shall submit a report to the Committees on Appropriations of the House of Representatives and the Senate, the Treasury Inspector General for Tax Administration, and the Comptroller General of the United States detailing each major investment in the Internal Revenue Service's information technology portfolio, including projection management dashboard; short, plain language summaries describing the investment's planned total expenditures, development start and end dates, schedule of deliverables between the start and end dates, scope, and results; the actual deliverables, expenditures, and results from the prior quarter; the estimated deliverables, expenditures, and results for the upcoming quarter; risks and mitigation strategies associated with ongoing work; reasons for any cost or schedule variances and any planned cost,

schedule, and scope as a consequence; and the cumulative and annual costs since the start date, estimated total and annual operation and maintenance costs, and an explanation of how the investment fulfills the Internal Revenue Service's information technology objectives and goals: *Provided further*, That the Internal Revenue Service shall include, in its budget justification for fiscal year 2027, a summary of cost and schedule performance information for its major information technology systems.

ADMINISTRATIVE PROVISIONS—INTERNAL REVENUE SERVICE

(INCLUDING TRANSFER OF FUNDS)

SEC. 101. Not to exceed 5 percent of any funds made available to the Internal Revenue Service in this Act or any other provision of law may be transferred to any other Internal Revenue Service appropriation upon the advance approval of the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 102. The Internal Revenue Service shall maintain an employee training program, which shall include the following topics: taxpayers' rights, dealing courteously with taxpayers, cross-cultural relations, ethics, and the impartial application of tax law.

SEC. 103. The Internal Revenue Service shall institute and enforce policies and procedures that will safeguard the confidentiality of taxpayer information and protect taxpayers against identity theft.

SEC. 104. Funds made available by this or any other Act to the Internal Revenue Service shall be available for improved facilities and increased staffing to provide sufficient and effective 1–800 help line service for taxpayers. The Commissioner shall continue to make improvements to the Internal Revenue Service 1–800 help line service a priority and allocate resources necessary to enhance the response time to taxpayer communications, particularly with regard to victims of tax-related crimes.

SEC. 105. The Internal Revenue Service shall issue a notice of confirmation of any address change relating to an employer making employment tax payments, and such notice shall be sent to both the employer's former and new address and an officer or employee of the Internal Revenue Service shall give special consideration to an offer-in-compromise from a taxpayer who has been the victim of fraud by a third party payroll tax preparer.

SEC. 106. None of the funds made available under this Act may be used by the Internal Revenue Service to target citizens of the United States for exercising any right guaranteed under the First Amendment to the Constitution of the United States.

SEC. 107. None of the funds made available in this Act may be used by the Internal Revenue Service to target groups for regulatory scrutiny based on their ideological beliefs.

SEC. 108. None of funds made available by this Act to the Internal Revenue Service shall be obligated or expended on conferences that do not adhere to the procedures, verification processes, documentation requirements, and policies issued by the Chief Financial Officer, Human Capital Office, and Agency-Wide Shared Services as a result of the recommendations in the report published on May 31, 2013, by the Treasury Inspector General for Tax Administration entitled "Review of the August 2010 Small Business/

H. R. 7148—274

Self-Employed Division's Conference in Anaheim, California" (Reference Number 2013–10–037).

SEC. 109. None of the funds made available in this Act to the Internal Revenue Service may be obligated or expended—

(1) to make a payment to any employee under a bonus, award, or recognition program; or

(2) under any hiring or personnel selection process with respect to re-hiring a former employee;

unless such program or process takes into account the conduct and Federal tax compliance of such employee or former employee.

SEC. 110. None of the funds made available by this Act may be used in contravention of section 6103 of the Internal Revenue Code of 1986 (relating to confidentiality and disclosure of returns and return information).

SEC. 111. The Secretary of the Treasury (or the Secretary's delegate) may use the funds made available in this Act, subject to such policies as the Secretary (or the Secretary's delegate) may establish, to utilize direct hire authority to recruit and appoint qualified applicants, without regard to any notice or preference requirements, directly to positions in the competitive service to process backlogged tax returns and return information.

SEC. 112. Notwithstanding section 1344 of title 31, United States Code, funds appropriated to the Internal Revenue Service in this Act may be used to provide passenger carrier transportation and protection between the Commissioner of Internal Revenue's residence and place of employment.

ADMINISTRATIVE PROVISIONS—DEPARTMENT OF THE TREASURY

(INCLUDING TRANSFERS OF FUNDS)

SEC. 113. Appropriations to the Department of the Treasury in this Act shall be available for uniforms or allowances therefor, as authorized by law (5 U.S.C. 5901), including maintenance, repairs, and cleaning; purchase of insurance for official motor vehicles operated in foreign countries; purchase of motor vehicles without regard to the general purchase price limitations for vehicles purchased and used overseas for the current fiscal year; entering into contracts with the Department of State for the furnishing of health and medical services to employees and their dependents serving in foreign countries; and services authorized by 5 U.S.C. 3109.

SEC. 114. Not to exceed 2 percent of any appropriations in this title made available under the headings "Departmental Offices—Salaries and Expenses", "Office of Inspector General", "Financial Crimes Enforcement Network", "Bureau of the Fiscal Service", and "Alcohol and Tobacco Tax and Trade Bureau" may be transferred between such appropriations upon the advance approval of the Committees on Appropriations of the House of Representatives and the Senate: *Provided,* That no transfer under this section may increase or decrease any such appropriation by more than 2 percent.

SEC. 115. Not to exceed 2 percent of any appropriation made available in this Act to the Internal Revenue Service may be transferred to the Treasury Inspector General for Tax Administration's appropriation upon the advance approval of the Committees on Appropriations of the House of Representatives and the Senate:

*Provided,* That no transfer may increase or decrease any such appropriation by more than 2 percent.

SEC. 116. None of the funds appropriated in this Act or otherwise available to the Department of the Treasury or the Bureau of Engraving and Printing may be used to redesign the $1 Federal Reserve note.

SEC. 117. The Secretary of the Treasury may transfer funds from the "Bureau of the Fiscal Service—Salaries and Expenses" to the Debt Collection Fund as necessary to cover the costs of debt collection: *Provided,* That such amounts shall be reimbursed to such salaries and expenses account from debt collections received in the Debt Collection Fund.

SEC. 118. None of the funds appropriated or otherwise made available by this or any other Act may be used by the United States Mint to construct or operate any museum without the explicit approval of the Committees on Appropriations of the House of Representatives and the Senate, the House Committee on Financial Services, and the Senate Committee on Banking, Housing, and Urban Affairs.

SEC. 119. None of the funds appropriated or otherwise made available by this or any other Act or source to the Department of the Treasury, the Bureau of Engraving and Printing, and the United States Mint, individually or collectively, may be used to consolidate any or all functions of the Bureau of Engraving and Printing and the United States Mint without the explicit approval of the House Committee on Financial Services; the Senate Committee on Banking, Housing, and Urban Affairs; and the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 120. Funds appropriated by this Act, or made available by the transfer of funds in this Act, for the Department of the Treasury's intelligence or intelligence related activities are deemed to be specifically authorized by the Congress for purposes of section 504 of the National Security Act of 1947 (50 U.S.C. 414) during fiscal year 2026 until the enactment of the Intelligence Authorization Act for Fiscal Year 2026.

SEC. 121. Not to exceed $5,000 shall be made available from the Bureau of Engraving and Printing's Industrial Revolving Fund for necessary official reception and representation expenses.

SEC. 122. The Secretary of the Treasury shall submit a Capital Investment Plan to the Committees on Appropriations of the House of Representatives and the Senate not later than 30 days following the submission of the annual budget submitted by the President: *Provided,* That such Capital Investment Plan shall include capital investment spending from all accounts within the Department of the Treasury, including but not limited to the Department-wide Systems and Capital Investment Programs account, Treasury Franchise Fund account, and the Treasury Forfeiture Fund account: *Provided further,* That such Capital Investment Plan shall include expenditures occurring in previous fiscal years for each capital investment project that has not been fully completed.

SEC. 123. During fiscal year 2026—

(1) none of the funds made available in this or any other Act may be used by the Department of the Treasury, including the Internal Revenue Service, to issue, revise, or finalize any regulation, revenue ruling, or other guidance not limited to a particular taxpayer relating to the standard which is used

H. R. 7148—276

to determine whether an organization is operated exclusively for the promotion of social welfare for purposes of section 501(c)(4) of the Internal Revenue Code of 1986 (including the proposed regulations published at 78 Fed. Reg. 71535 (November 29, 2013)); and

(2) the standard and definitions as in effect on January 1, 2010, which are used to make such determinations shall apply after the date of the enactment of this Act for purposes of determining status under section 501(c)(4) of such Code of organizations created on, before, or after such date.

SEC. 124. Within 45 days after the date of enactment of this Act, the Secretary of the Treasury shall submit an itemized report to the Committees on Appropriations of the House of Representatives and the Senate on the amount of total funds charged to each office by the Franchise Fund including the amount charged for each service provided by the Franchise Fund to each office, a detailed description of the services, a detailed explanation of how each charge for each service is calculated, and a description of the role customers have in governing in the Franchise Fund.

SEC. 125. (a) Not later than 60 days after the end of each quarter, the Office of Financial Research shall submit reports on their activities to the Committees on Appropriations of the House of Representatives and the Senate, the Committee on Financial Services of the House of Representatives, and the Senate Committee on Banking, Housing, and Urban Affairs.

(b) The reports required under subsection (a) shall include—

(1) the obligations made during the previous quarter by object class, office, and activity;

(2) the estimated obligations for the remainder of the fiscal year by object class, office, and activity;

(3) the number of full-time equivalents within each office during the previous quarter;

(4) the estimated number of full-time equivalents within each office for the remainder of the fiscal year; and

(5) actions taken to achieve the goals, objectives, and performance measures of each office.

(c) At the request of any such Committees specified in subsection (a), the Office of Financial Research shall make officials available to testify on the contents of the reports required under subsection (a).

SEC. 126. Not to exceed 5 percent of any appropriation made available in this Act for the Department of the Treasury may be transferred to the Department's information technology system modernization and working capital fund (IT WCF), as authorized by section 1077(b)(1) of title X of division A of the National Defense Authorization Act for Fiscal Year 2018 (Public Law 115–91), for the purposes specified in section 1077(b)(3) of such Act, upon the prior approval of the Committees on Appropriations of the House of Representatives and the Senate: *Provided,* That amounts transferred to the IT WCF under this section shall remain available for obligation through September 30, 2029.

SEC. 127. Amounts made available under section 601(f)(3) of the Social Security Act (42 U.S.C. 801(f)(3)) shall be available for any necessary expenses of the Department of the Treasury Office of Inspector General with respect to section 601 of that Act, subtitle A of title V of division N of the Consolidated Appropriations Act, 2021, and section 3201 of the American Rescue Plan

H. R. 7148—277

Act of 2021, in addition to amounts otherwise available for such purposes.

SEC. 128. The Secretary of the Treasury is directed to issue a report to Committees on Appropriations of the House of Representatives and the Senate, the House Committee on Financial Services, and the Senate Committee on Banking, Housing, and Urban Affairs not later than 90 days after the date of the enactment of this Act on the authorities used to establish the Strategic Bitcoin Reserve and U.S. Digital Asset Stockpile, the impact the reserve and/or stockpile has on the Treasury Forfeiture Fund (TFF) including specific impacts on funding for law enforcement and compensation for victims of crime, a description of how Bitcoin and digital assets would appear on the Federal government's balance sheet including on TFF monthly reports, and all third party contractors responsible for the custody of the assets.

SEC. 129. Not later than 20 days after the date of the enactment of this Act, and not later than 20 days after the end of the month thereafter, the Secretary of the Treasury shall submit to the Committees on Appropriations of the House of Representatives and the Senate a report on the Treasury Forfeiture Fund.

This title may be cited as the "Department of the Treasury Appropriations Act, 2026".

H. R. 7148—278

TITLE II

EXECUTIVE OFFICE OF THE PRESIDENT AND FUNDS
APPROPRIATED TO THE PRESIDENT

THE WHITE HOUSE

SALARIES AND EXPENSES

For necessary expenses for the White House as authorized
by law, including not to exceed $3,850,000 for services as authorized
by 5 U.S.C. 3109 and 3 U.S.C. 105; subsistence expenses as author-
ized by 3 U.S.C. 105, which shall be expended and accounted
for as provided in that section; hire of passenger motor vehicles,
and travel (not to exceed $100,000 to be expended and accounted
for as provided by 3 U.S.C. 103); and not to exceed $19,000 for
official reception and representation expenses, to be available for
allocation within the Executive Office of the President; and for
necessary expenses of the Office of Policy Development, including
services as authorized by 5 U.S.C. 3109 and 3 U.S.C. 107,
$78,904,000.

EXECUTIVE RESIDENCE AT THE WHITE HOUSE

OPERATING EXPENSES

For necessary expenses of the Executive Residence at the White
House, $15,453,000, to be expended and accounted for as provided
by 3 U.S.C. 105, 109, 110, and 112–114.

REIMBURSABLE EXPENSES

For the reimbursable expenses of the Executive Residence at
the White House, such sums as may be necessary: *Provided,* That
all reimbursable operating expenses of the Executive Residence
shall be made in accordance with the provisions of this paragraph:
*Provided further,* That, notwithstanding any other provision of law,
such amount for reimbursable operating expenses shall be the exclu-
sive authority of the Executive Residence to incur obligations and
to receive offsetting collections, for such expenses: *Provided further,*
That the Executive Residence shall require each person sponsoring
a reimbursable political event to pay in advance an amount equal
to the estimated cost of the event, and all such advance payments
shall be credited to this account and remain available until
expended: *Provided further,* That the Executive Residence shall
require the national committee of the political party of the President
to maintain on deposit $25,000, to be separately accounted for
and available for expenses relating to reimbursable political events
sponsored by such committee during such fiscal year: *Provided
further,* That the Executive Residence shall ensure that a written
notice of any amount owed for a reimbursable operating expense
under this paragraph is submitted to the person owing such amount
within 60 days after such expense is incurred, and that such amount
is collected within 30 days after the submission of such notice:
*Provided further,* That the Executive Residence shall charge interest
and assess penalties and other charges on any such amount that
is not reimbursed within such 30 days, in accordance with the
interest and penalty provisions applicable to an outstanding debt

H. R. 7148—279

on a United States Government claim under 31 U.S.C. 3717: *Provided further,* That each such amount that is reimbursed, and any accompanying interest and charges, shall be deposited in the Treasury as miscellaneous receipts: *Provided further,* That the Executive Residence shall prepare and submit to the Committees on Appropriations of the House of Representatives and the Senate, by not later than 90 days after the end of the fiscal year covered by this Act, a report setting forth the reimbursable operating expenses of the Executive Residence during the preceding fiscal year, including the total amount of such expenses, the amount of such total that consists of reimbursable official and ceremonial events, the amount of such total that consists of reimbursable political events, and the portion of each such amount that has been reimbursed as of the date of the report: *Provided further,* That the Executive Residence shall maintain a system for the tracking of expenses related to reimbursable events within the Executive Residence that includes a standard for the classification of any such expense as political or nonpolitical: *Provided further,* That no provision of this paragraph may be construed to exempt the Executive Residence from any other applicable requirement of subchapter I or II of chapter 37 of title 31, United States Code.

WHITE HOUSE REPAIR AND RESTORATION

For the repair, alteration, and improvement of the Executive Residence at the White House pursuant to 3 U.S.C. 105(d), $2,475,000, to remain available until expended, for required maintenance, resolution of safety and health issues, and continued preventative maintenance.

COUNCIL OF ECONOMIC ADVISERS

SALARIES AND EXPENSES

For necessary expenses of the Council of Economic Advisers in carrying out its functions under the Employment Act of 1946 (15 U.S.C. 1021 et seq.), $4,854,000.

NATIONAL SECURITY COUNCIL AND HOMELAND SECURITY COUNCIL

SALARIES AND EXPENSES

For necessary expenses of the National Security Council and the Homeland Security Council, including services as authorized by 5 U.S.C. 3109, $19,000,000, of which not to exceed $10,000 shall be available for official reception and representation expenses.

OFFICE OF ADMINISTRATION

SALARIES AND EXPENSES

For necessary expenses of the Office of Administration, including services as authorized by 5 U.S.C. 3109 and 3 U.S.C. 107, and hire of passenger motor vehicles, $114,308,000, of which not to exceed $12,800,000 shall remain available until expended for continued modernization of information resources within the Executive Office of the President.

H. R. 7148—280

In addition, $10,000,000, to remain available until expended, for security and continuity of operations improvements for the Executive Office of the President, in addition to other amounts otherwise available for such purposes.

OFFICE OF MANAGEMENT AND BUDGET

SALARIES AND EXPENSES

For necessary expenses of the Office of Management and Budget, including hire of passenger motor vehicles and services as authorized by 5 U.S.C. 3109, to carry out the provisions of chapter 35 of title 44, United States Code, and to prepare and submit the budget of the United States Government, in accordance with section 1105(a) of title 31, United States Code, $129,000,000, of which not to exceed $3,000 shall be available for official representation expenses: *Provided,* That none of the funds appropriated in this Act for the Office of Management and Budget may be used for the purpose of reviewing any agricultural marketing orders or any activities or regulations under the provisions of the Agricultural Marketing Agreement Act of 1937 (7 U.S.C. 601 et seq.): *Provided further,* That none of the funds made available for the Office of Management and Budget by this Act may be expended for the altering of the transcript of actual testimony of witnesses, except for testimony of officials of the Office of Management and Budget, before the Committees on Appropriations or their subcommittees: *Provided further,* That none of the funds made available for the Office of Management and Budget by this Act may be expended for the altering of the annual work plan developed by the Corps of Engineers for submission to the Committees on Appropriations: *Provided further,* That none of the funds provided in this or prior Acts shall be used, directly or indirectly, by the Office of Management and Budget, for evaluating or determining if water resource project or study reports submitted by the Chief of Engineers acting through the Secretary of the Army are in compliance with all applicable laws, regulations, and requirements relevant to the Civil Works water resource planning process: *Provided further,* That the Office of Management and Budget shall have not more than 60 days in which to perform budgetary policy reviews of water resource matters on which the Chief of Engineers has reported: *Provided further,* That the Director of the Office of Management and Budget shall notify the appropriate authorizing and appropriating committees when the 60-day review is initiated: *Provided further,* That if water resource reports have not been transmitted to the appropriate authorizing and appropriating committees within 15 days after the end of the Office of Management and Budget review period based on the notification from the Director, Congress shall assume Office of Management and Budget concurrence with the report and act accordingly: *Provided further,* That no later than 14 days after the submission of the budget of the United States Government for fiscal year 2027, the Director of the Office of Management and Budget shall make publicly available on a website a tabular list for each agency that submits budget justification materials (as defined in section 3 of the Federal Funding Accountability and Transparency Act of 2006) that shall include, at minimum, the name of the agency, the date on which the budget justification materials of the agency were

H. R. 7148—281

submitted to Congress, and a uniform resource locator where the budget justification materials are published on the website of the agency.

OFFICE OF THE NATIONAL CYBER DIRECTOR

SALARIES AND EXPENSES

For necessary expenses of the Office of the National Cyber Director, as authorized by section 1752 of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116–283), $20,000,000, of which not to exceed $5,000 shall be available for official reception and representation expenses.

OFFICE OF NATIONAL DRUG CONTROL POLICY

SALARIES AND EXPENSES

For necessary expenses of the Office of National Drug Control Policy; for research activities pursuant to the Office of National Drug Control Policy Reauthorization Act of 1998, as amended; not to exceed $10,000 for official reception and representation expenses; and for participation in joint projects or in the provision of services on matters of mutual interest with nonprofit, research, or public organizations or agencies, with or without reimbursement, $21,785,000: *Provided*, That the Office is authorized to accept, hold, administer, and utilize gifts, both real and personal, public and private, without fiscal year limitation, for the purpose of aiding or facilitating the work of the Office.

FEDERAL DRUG CONTROL PROGRAMS

HIGH INTENSITY DRUG TRAFFICKING AREAS PROGRAM

(INCLUDING TRANSFERS OF FUNDS)

For necessary expenses of the Office of National Drug Control Policy's High Intensity Drug Trafficking Areas Program, $298,579,000, to remain available until September 30, 2027, for drug control activities consistent with the approved strategy for each of the designated High Intensity Drug Trafficking Areas ("HIDTAs"), of which not less than 51 percent shall be transferred to State and local entities for drug control activities and shall be obligated not later than 120 days after enactment of this Act: *Provided,* That up to 49 percent may be transferred to Federal agencies and departments in amounts determined by the Director of the Office of National Drug Control Policy, of which up to $4,000,000 may be used for auditing services and associated activities and $3,000,000 shall be for the Grants Management System for use by the Office of National Drug Control Policy: *Provided further,* That any unexpended funds obligated prior to fiscal year 2024 may be used for any other approved activities of that HIDTA, subject to reprogramming requirements: *Provided further,* That each HIDTA designated as of September 30, 2025, shall be funded at not less than the fiscal year 2025 base level, unless the Director submits to the Committees on Appropriations of the House of Representatives and the Senate justification for changes to those levels

H. R. 7148—282

based on clearly articulated priorities and published Office of National Drug Control Policy performance measures of effectiveness: *Provided further,* That the Director shall notify the Committees on Appropriations of the House of Representatives and the Senate of the initial allocation of fiscal year 2026 funding among HIDTAs not later than 45 days after enactment of this Act, and shall notify the Committees of planned uses of discretionary HIDTA funding, as determined in consultation with the HIDTA Directors, not later than 90 days after enactment of this Act: *Provided further,* That upon a determination that all or part of the funds so transferred from this appropriation are not necessary for the purposes provided herein and upon notification to the Committees on Appropriations of the House of Representatives and the Senate, such amounts may be transferred back to this appropriation.

OTHER FEDERAL DRUG CONTROL PROGRAMS

(INCLUDING TRANSFERS OF FUNDS)

For other drug control activities authorized by the Anti-Drug Abuse Act of 1988 and the Office of National Drug Control Policy Reauthorization Act of 1998, as amended, $136,150,000, to remain available until expended, which shall be available as follows: $109,000,000 for the Drug-Free Communities Program, of which not more than $12,780,000 is for administrative expenses, and of which $2,500,000 shall be made available as directed by section 4 of Public Law 107–82, as amended by section 8204 of Public Law 115–271; $3,000,000 for drug court training and technical assistance; $14,000,000 for anti-doping activities; up to $3,700,000 for the United States membership dues to the World Anti-Doping Agency; $1,250,000 for the Model Acts Program; and $5,200,000 for activities authorized by section 103 of Public Law 114–198: *Provided,* That amounts made available under this heading may be transferred to other Federal departments and agencies to carry out such activities: *Provided further,* That the Director of the Office of National Drug Control Policy shall, not fewer than 30 days prior to obligating funds under this heading for United States membership dues to the World Anti-Doping Agency, submit to the Committees on Appropriations of the House of Representatives and the Senate a spending plan and explanation of the proposed uses of these funds: *Provided further,* That such plan shall include the results of an audit of the World Anti-Doping Agency to be conducted by external anti-doping experts and experienced independent auditors that demonstrate the World Anti-Doping Agency's Executive Committee and Foundation are operating consistent with their duties.

UNANTICIPATED NEEDS

For expenses necessary to enable the President to meet unanticipated needs, in furtherance of the national interest, security, or defense which may arise at home or abroad during the current fiscal year, as authorized by 3 U.S.C. 108, $990,000, to remain available until September 30, 2027.

H. R. 7148—283

INFORMATION TECHNOLOGY OVERSIGHT AND REFORM

For necessary expenses for the furtherance of integrated, efficient, secure, and effective uses of information technology in the Federal Government, $8,000,000, to remain available until expended.

SPECIAL ASSISTANCE TO THE PRESIDENT

SALARIES AND EXPENSES

For necessary expenses to enable the Vice President to provide assistance to the President in connection with specially assigned functions; services as authorized by 5 U.S.C. 3109 and 3 U.S.C. 106, including subsistence expenses as authorized by 3 U.S.C. 106, which shall be expended and accounted for as provided in that section; and hire of passenger motor vehicles, $6,015,000.

OFFICIAL RESIDENCE OF THE VICE PRESIDENT

OPERATING EXPENSES

(INCLUDING TRANSFER OF FUNDS)

For the care, operation, refurnishing, improvement, and to the extent not otherwise provided for, heating and lighting, including electric power and fixtures, of the official residence of the Vice President; the hire of passenger motor vehicles; and not to exceed $90,000 pursuant to 3 U.S.C. 106(b)(2), $318,000: *Provided,* That advances, repayments, or transfers from this appropriation may be made to any department or agency for expenses of carrying out such activities.

ADMINISTRATIVE PROVISIONS—EXECUTIVE OFFICE OF THE PRESIDENT AND FUNDS APPROPRIATED TO THE PRESIDENT

(INCLUDING TRANSFER OF FUNDS)

SEC. 201. From funds made available in this Act under the headings "The White House", "Executive Residence at the White House", "White House Repair and Restoration", "Council of Economic Advisers", "National Security Council and Homeland Security Council", "Office of Administration", "Special Assistance to the President", and "Official Residence of the Vice President", the Director of the Office of Management and Budget (or such other officer as the President may designate in writing) may, with advance approval of the Committees on Appropriations of the House of Representatives and the Senate, transfer not to exceed 10 percent of any such appropriation to any other such appropriation, to be merged with and available for the same time and for the same purposes as the appropriation to which transferred: *Provided,* That the amount of an appropriation shall not be increased by more than 50 percent by such transfers: *Provided further,* That no amount shall be transferred from "Special Assistance to the President" or "Official Residence of the Vice President" without the approval of the Vice President.

SEC. 202. (a) During fiscal year 2026, any Executive order or Presidential memorandum issued or revoked by the President

H. R. 7148—284

shall be accompanied by a written statement from the Director of the Office of Management and Budget on the budgetary impact, including costs, benefits, and revenues, of such order or memorandum.

(b) Any such statement shall include—

(1) a narrative summary of the budgetary impact of such order or memorandum on the Federal Government;

(2) the impact on mandatory and discretionary obligations and outlays as the result of such order or memorandum, listed by Federal agency, for each year in the 5-fiscal-year period beginning in fiscal year 2026; and

(3) the impact on revenues of the Federal Government as the result of such order or memorandum over the 5-fiscal-year period beginning in fiscal year 2026.

(c) If an Executive order or Presidential memorandum is issued during fiscal year 2026 due to a national emergency, the Director of the Office of Management and Budget may issue the statement required by subsection (a) not later than 15 days after the date that such order or memorandum is issued.

(d) The requirement for cost estimates for Presidential memoranda shall only apply for Presidential memoranda estimated to have a regulatory cost in excess of $100,000,000.

SEC. 203. Not later than 30 days after the date of enactment of this Act, the Director of the Office of Management and Budget shall issue a memorandum to all Federal departments, agencies, and corporations directing compliance with the provisions in title VII of this Act.

SEC. 204. For an additional amount for "Office of National Drug Control Policy, Salaries and Expenses", $7,071,000, which shall be for initiatives in the amounts and for the projects specified in the table that appears under the heading "Administrative Provisions—Executive Office of the President and Funds Appropriated to the President" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That none of the funds made available by this section may be transferred for any other purpose.

This title may be cited as the "Executive Office of the President Appropriations Act, 2026".

TITLE III

THE JUDICIARY

SUPREME COURT OF THE UNITED STATES

SALARIES AND EXPENSES

For expenses necessary for the operation of the Supreme Court, as required by law, excluding care of the building and grounds, including purchase and hire of passenger motor vehicles as authorized by 31 U.S.C. 1343 and 1344; not to exceed $10,000 for official reception and representation expenses; and for miscellaneous expenses, to be expended as the Chief Justice may approve, $135,127,000, of which $1,500,000 shall remain available until expended.

In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief justice and associate justices of the court.

CARE OF THE BUILDING AND GROUNDS

For such expenditures as may be necessary to enable the Architect of the Capitol to carry out the duties imposed upon the Architect by 40 U.S.C. 6111 and 6112 under the direction of the Chief Justice, $11,437,000, to remain available until expended.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SALARIES AND EXPENSES

For salaries of officers and employees, and for necessary expenses of the court, as authorized by law, $36,735,000.

In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief judge and judges of the court.

UNITED STATES COURT OF INTERNATIONAL TRADE

SALARIES AND EXPENSES

For salaries of officers and employees of the court, services, and necessary expenses of the court, as authorized by law, $22,437,000.

In addition, there are appropriated such sums as may be necessary under current law for the salaries of the chief judge and judges of the court.

COURTS OF APPEALS, DISTRICT COURTS, AND OTHER JUDICIAL SERVICES

SALARIES AND EXPENSES

For the salaries of judges of the United States Court of Federal Claims, magistrate judges, and all other officers and employees of the Federal Judiciary not otherwise specifically provided for, necessary expenses of the courts, and the purchase, rental, repair, and cleaning of uniforms for Probation and Pretrial Services Office staff, as authorized by law, $6,127,055,000 (including the purchase of firearms and ammunition); of which not to exceed $27,817,000 shall remain available until expended for space alteration projects and for furniture and furnishings related to new space alteration and construction projects.

In addition, there are appropriated such sums as may be necessary under current law for the salaries of circuit and district judges (including judges of the territorial courts of the United States), bankruptcy judges, and justices and judges retired from office or from regular active service.

In addition, for reimbursement of expenses of the United States Court of Federal Claims associated with processing cases under the National Childhood Vaccine Injury Act of 1986 (Public Law 99–660), $12,109,000, to be appropriated from the Vaccine Injury Compensation Trust Fund to remain available until expended.

H. R. 7148—286

DEFENDER SERVICES

For the operation of Federal Defender organizations; the compensation and reimbursement of expenses of attorneys appointed to represent persons under 18 U.S.C. 3006A and 3599, and for the compensation and reimbursement of expenses of persons furnishing investigative, expert, and other services for such representations as authorized by law; the compensation (in accordance with the maximums under 18 U.S.C. 3006A) and reimbursement of expenses of attorneys appointed to assist the court in criminal cases where the defendant has waived representation by counsel; the compensation and reimbursement of expenses of attorneys appointed to represent jurors in civil actions for the protection of their employment, as authorized by 28 U.S.C. 1875(d)(1); the compensation and reimbursement of expenses of attorneys appointed under 18 U.S.C. 983(b)(1) in connection with certain judicial civil forfeiture proceedings; the compensation and reimbursement of travel expenses of guardians ad litem appointed under 18 U.S.C. 4100(b); and for necessary training and general administrative expenses, $1,766,010,000, to remain available until expended.

FEES OF JURORS AND COMMISSIONERS

For fees and expenses of jurors as authorized by 28 U.S.C. 1871 and 1876; compensation of jury commissioners as authorized by 28 U.S.C. 1863; and compensation of commissioners appointed in condemnation cases pursuant to rule 71.1(h) of the Federal Rules of Civil Procedure (28 U.S.C. Appendix Rule 71.1(h)), $19,108,000, to remain available until expended: *Provided,* That the compensation of land commissioners shall not exceed the daily equivalent of the highest rate payable under 5 U.S.C. 5332.

COURT SECURITY

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses, not otherwise provided for, incident to the provision of protective guard services for United States courthouses and other facilities housing Federal court or Administrative Office of the United States Courts operations, the procurement, installation, and maintenance of security systems and equipment for United States courthouses and other facilities housing Federal court or Administrative Office of the United States Courts operations, building ingress-egress control, inspection of mail and packages, directed security patrols, perimeter security, basic security services provided by the Federal Protective Service, and other similar activities as authorized by section 1010 of the Judicial Improvement and Access to Justice Act (Public Law 100–702), $892,032,000, of which not to exceed $20,000,000 shall remain available until expended, to be expended directly or transferred to the United States Marshals Service, which shall be responsible for administering the Judicial Facility Security Program consistent with standards or guidelines agreed to by the Director of the Administrative Office of the United States Courts and the Attorney General: *Provided,* That funds made available under this heading may be used for managing a Judiciary-wide program to facilitate security and emergency management services among the Judiciary,

H. R. 7148—287

United States Marshals Service, Federal Protective Service, General Services Administration, other Federal agencies, state and local governments and the public; and for purposes authorized by the Daniel Anderl Judicial Security and Privacy Act of 2022 (Public Law 117–263, division C, title LIX, subtitle D) and 28 U.S.C. 604(a)(24).

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

SALARIES AND EXPENSES

For necessary expenses of the Administrative Office of the United States Courts as authorized by law, including travel as authorized by 31 U.S.C. 1345, hire of a passenger motor vehicle as authorized by 31 U.S.C. 1343(b), advertising and rent in the District of Columbia and elsewhere, $106,953,000, of which not to exceed $8,500 is authorized for official reception and representation expenses.

FEDERAL JUDICIAL CENTER

SALARIES AND EXPENSES

For necessary expenses of the Federal Judicial Center, as authorized by Public Law 90–219, $35,121,000; of which $1,800,000 shall remain available through September 30, 2027, to provide education and training to Federal court personnel; and of which not to exceed $1,500 is authorized for official reception and representation expenses.

UNITED STATES SENTENCING COMMISSION

SALARIES AND EXPENSES

For the salaries and expenses necessary to carry out the provisions of chapter 58 of title 28, United States Code, $22,677,000, of which not to exceed $1,000 is authorized for official reception and representation expenses.

ADMINISTRATIVE PROVISIONS—THE JUDICIARY

(INCLUDING TRANSFER OF FUNDS)

SEC. 301. Appropriations and authorizations made in this title which are available for salaries and expenses shall be available for services as authorized by 5 U.S.C. 3109.

SEC. 302. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Judiciary in this Act may be transferred between such appropriations, but no such appropriation, except "Courts of Appeals, District Courts, and Other Judicial Services, Defender Services" and "Courts of Appeals, District Courts, and Other Judicial Services, Fees of Jurors and Commissioners", shall be increased by more than 10 percent by any such transfers: *Provided,* That any transfer pursuant to this section shall be treated as a reprogramming of funds under sections 604 and 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in section 608.

H. R. 7148—288

SEC. 303. Notwithstanding any other provision of law, the salaries and expenses appropriation for "Courts of Appeals, District Courts, and Other Judicial Services" shall be available for official reception and representation expenses of the Judicial Conference of the United States: *Provided,* That such available funds shall not exceed $11,000 and shall be administered by the Director of the Administrative Office of the United States Courts in the capacity as Secretary of the Judicial Conference.

SEC. 304. Section 3315(a) of title 40, United States Code, shall be applied by substituting "Federal" for "executive" each place it appears.

SEC. 305. In accordance with 28 U.S.C. 561–569, and notwithstanding any other provision of law, the United States Marshals Service shall provide, for such courthouses as its Director may designate in consultation with the Director of the Administrative Office of the United States Courts, for purposes of a pilot program, the security services that 40 U.S.C. 1315 authorizes the Department of Homeland Security to provide, except for the services specified in 40 U.S.C. 1315(b)(2)(E). For building-specific security services at these courthouses, the Director of the Administrative Office of the United States Courts shall reimburse the United States Marshals Service rather than the Department of Homeland Security.

This title may be cited as the "Judiciary Appropriations Act, 2026".

TITLE IV

DISTRICT OF COLUMBIA

FEDERAL FUNDS

FEDERAL PAYMENT FOR RESIDENT TUITION SUPPORT

For a Federal payment to the District of Columbia, to be deposited into a dedicated account, for a nationwide program to be administered by the Mayor, for the District of Columbia resident tuition support program established and operated under the District of Columbia College Access Act of 1999 (sec 38–2701 et seq. D.C. Official Code), $40,000,000, to remain available until expended: *Provided,* That the awarding of such funds may be prioritized on the basis of a resident's academic merit, the income and need of eligible students and such other factors as may be authorized: *Provided further,* That the District of Columbia government shall maintain a dedicated account for the Resident Tuition Support Program that shall consist of the Federal funds appropriated to the Program in this Act and any subsequent appropriations, any unobligated balances from prior fiscal years, and any interest earned in this or any fiscal year: *Provided further,* That the account shall be under the control of the District of Columbia Chief Financial Officer, who shall use those funds solely for the purposes of carrying out the Resident Tuition Support Program: *Provided further,* That the Office of the Chief Financial Officer shall provide a quarterly financial report to the Committees on Appropriations of the House of Representatives and the Senate for these funds showing, by object class, the expenditures made and the purpose therefor.

H. R. 7148—289

FEDERAL PAYMENT FOR EMERGENCY PLANNING AND SECURITY COSTS
IN THE DISTRICT OF COLUMBIA

For a Federal payment of necessary expenses, as determined by the Mayor of the District of Columbia in written consultation with the elected county or city officials of surrounding jurisdictions, $90,000,000, to remain available until expended, for the costs of providing public safety at events related to the presence of the National Capital in the District of Columbia, including support requested by the Director of the United States Secret Service in carrying out protective duties under the direction of the Secretary of Homeland Security, and for the costs of providing support to respond to immediate and specific terrorist threats or attacks in the District of Columbia or surrounding jurisdictions: *Provided,* That not later than 90 days after the last day of each quarter, the District of Columbia Chief Budget Officer shall submit to the Committees on Appropriations of the House of Representatives and the Senate a quarterly budget report that includes total obligations of the Emergency Planning and Security Costs for that quarter, broken down by each Federal and District government agency, activity and purpose charged to the federal payment account and a quarterly estimates report that accounts for upcoming federal activities.

FEDERAL PAYMENT TO THE DISTRICT OF COLUMBIA COURTS

For salaries and expenses for the District of Columbia Courts, including the transfer and hire of motor vehicles, $292,068,000 to be allocated as follows: for the District of Columbia Court of Appeals, $15,747,000, of which not to exceed $2,500 is for official reception and representation expenses; for the Superior Court of the District of Columbia, $149,349,000, of which not to exceed $2,500 is for official reception and representation expenses; for the District of Columbia Court System, $97,720,000, of which not to exceed $2,500 is for official reception and representation expenses; and $29,252,000, to remain available until September 30, 2027, for capital improvements for District of Columbia courthouse facilities: *Provided,* That funds made available for capital improvements shall be expended consistent with the District of Columbia Courts master plan study and facilities condition assessment: *Provided further,* That, in addition to the amounts appropriated herein, fees received by the District of Columbia Courts for administering bar examinations and processing District of Columbia bar admissions may be retained and credited to this appropriation, to remain available until expended, for salaries and expenses associated with such activities, notwithstanding section 450 of the District of Columbia Home Rule Act (D.C. Official Code, sec. 1–204.50): *Provided further,* That notwithstanding any other provision of law, all amounts under this heading shall be apportioned quarterly by the Office of Management and Budget and obligated and expended in the same manner as funds appropriated for salaries and expenses of other Federal agencies: *Provided further,* That 30 days after providing written notice to the Committees on Appropriations of the House of Representatives and the Senate, the District of Columbia Courts may reallocate not more than $9,000,000 of the funds provided under this heading among the items and entities funded under this heading: *Provided further,* That the Joint Committee on Judicial Administration in the District

of Columbia may, by regulation, establish a program substantially similar to the program set forth in subchapter II of chapter 35 of title 5, United States Code, for employees of the District of Columbia Courts.

### FEDERAL PAYMENT FOR DEFENDER SERVICES IN DISTRICT OF COLUMBIA COURTS

For payments authorized under section 11–2604 and section 11–2605, D.C. Official Code (relating to representation provided under the District of Columbia Criminal Justice Act), payments for counsel appointed in proceedings in the Family Court of the Superior Court of the District of Columbia under chapter 23 of title 16, D.C. Official Code, or pursuant to contractual agreements to provide guardian ad litem representation, training, technical assistance, and such other services as are necessary to improve the quality of guardian ad litem representation, payments for counsel appointed in adoption proceedings under chapter 3 of title 16, D.C. Official Code, and payments authorized under section 21–2060, D.C. Official Code (relating to services provided under the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act of 1986), $46,005,000, to remain available until expended: *Provided,* That funds provided under this heading shall be administered by the Joint Committee on Judicial Administration in the District of Columbia: *Provided further,* That notwithstanding any other provision of law, this appropriation shall be apportioned quarterly by the Office of Management and Budget and obligated and expended in the same manner as funds appropriated for expenses of other Federal agencies.

### FEDERAL PAYMENT TO THE COURT SERVICES AND OFFENDER SUPERVISION AGENCY FOR THE DISTRICT OF COLUMBIA

For salaries and expenses, including the transfer and hire of motor vehicles, of the Court Services and Offender Supervision Agency for the District of Columbia, as authorized by the National Capital Revitalization and Self-Government Improvement Act of 1997, $287,017,000, of which not to exceed $2,000 is for official reception and representation expenses related to Community Supervision and Pretrial Services Agency programs, and of which not to exceed $35,000 is for dues and assessments relating to the implementation of the Court Services and Offender Supervision Agency Interstate Supervision Act of 2002: *Provided,* That, of the funds appropriated under this heading, $203,542,000 shall be for necessary expenses of Community Supervision and Sex Offender Registration, to include expenses relating to the monitoring of adults subject to protection orders or the provision of services for or related to such persons: *Provided further,* That, of the funds appropriated under this heading, $83,475,000 shall be available to the Pretrial Services Agency: *Provided further,* That notwithstanding any other provision of law, all amounts under this heading shall be apportioned quarterly by the Office of Management and Budget and obligated and expended in the same manner as funds appropriated for salaries and expenses of other Federal agencies: *Provided further,* That amounts under this heading may be used for programmatic incentives for defendants to successfully complete their terms of supervision.

FEDERAL PAYMENT TO THE DISTRICT OF COLUMBIA PUBLIC DEFENDER
SERVICE

For salaries and expenses, including the transfer and hire of motor vehicles, of the District of Columbia Public Defender Service, as authorized by the National Capital Revitalization and Self-Government Improvement Act of 1997, $53,629,000: *Provided,* That notwithstanding any other provision of law, all amounts under this heading shall be apportioned quarterly by the Office of Management and Budget and obligated and expended in the same manner as funds appropriated for salaries and expenses of Federal agencies: *Provided further,* That the District of Columbia Public Defender Service may establish for employees of the District of Columbia Public Defender Service a program substantially similar to the program set forth in subchapter II of chapter 35 of title 5, United States Code, except that the maximum amount of the payment made under the program to any individual may not exceed the amount referred to in section 3523(b)(3)(B) of title 5, United States Code: *Provided further,* That for the purposes of engaging with, and receiving services from, Federal Franchise Fund Programs established in accordance with section 403 of the Government Management Reform Act of 1994, as amended, the District of Columbia Public Defender Service shall be considered an agency of the United States Government: *Provided further,* That the District of Columbia Public Defender Service may enter into contracts for the procurement of severable services and multiyear contracts for the acquisition of property and services to the same extent and under the same conditions as an executive agency under sections 3902 and 3903 of title 41, United States Code.

FEDERAL PAYMENT TO THE CRIMINAL JUSTICE COORDINATING
COUNCIL

For a Federal payment to the Criminal Justice Coordinating Council, $3,451,000, to remain available until expended, to support initiatives related to the coordination of Federal and local criminal justice resources in the District of Columbia.

FEDERAL PAYMENT FOR JUDICIAL COMMISSIONS

For a Federal payment, to remain available until September 30, 2027, to the Commission on Judicial Disabilities and Tenure, $330,000, and for the Judicial Nomination Commission, $300,000.

FEDERAL PAYMENT FOR SCHOOL IMPROVEMENT

For a Federal payment for a school improvement program in the District of Columbia, $52,500,000, to remain available until expended, for payments authorized under the Scholarships for Opportunity and Results Act (division C of Public Law 112–10): *Provided,* That, to the extent that funds are available for opportunity scholarships and following the priorities included in section 3006 of such Act, the Secretary of Education shall make scholarships available to students eligible under section 3013(3) of such Act (Public Law 112–10; 125 Stat. 211) including students who were not offered a scholarship during any previous school year:

H. R. 7148—292

*Provided further,* That within funds provided for opportunity schol-arships, up to $1,750,000 shall be for the activities specified in sections 3007(b) through 3007(d) of the Act.

FEDERAL PAYMENT FOR THE DISTRICT OF COLUMBIA NATIONAL GUARD

For a Federal payment to the District of Columbia National Guard, $600,000, to remain available until expended for the Major General David F. Wherley, Jr. District of Columbia National Guard Retention and College Access Program.

FEDERAL PAYMENT FOR TESTING AND TREATMENT OF HIV/AIDS

For a Federal payment to the District of Columbia for the testing of individuals for, and the treatment of individuals with, human immunodeficiency virus and acquired immunodeficiency syn-drome in the District of Columbia, $4,000,000.

FEDERAL PAYMENT TO THE DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY

For a Federal payment to the District of Columbia Water and Sewer Authority, $8,000,000, to remain available until expended, to continue implementation of the Combined Sewer Over-flow Long-Term Plan: *Provided,* That the District of Columbia Water and Sewer Authority provides a 100 percent match for this payment.

DISTRICT OF COLUMBIA FUNDS

Local funds are appropriated for the District of Columbia for the current fiscal year out of the General Fund of the District of Columbia ("General Fund") for programs and activities set forth in the Fiscal Year 2026 Local Budget Act of 2025 (D.C. Law 26–51) and at rates set forth under such Act, as amended as of the date of enactment of this Act: *Provided,* That notwithstanding any other provision of law, except as provided in section 450A of the District of Columbia Home Rule Act (section 1–204.50a, D.C. Official Code), sections 816 and 817 of the Financial Services and General Government Appropriations Act, 2009 (secs. 47–369.01 and 47–369.02, D.C. Official Code), and provisions of this Act, the total amount appropriated in this Act for operating expenses for the District of Columbia for fiscal year 2026 under this heading shall not exceed the estimates included in the Fiscal Year 2026 Local Budget Act of 2025, as amended as of the date of enactment of this Act or the sum of the total revenues of the District of Columbia for such fiscal year: *Provided further,* That the amount appropriated may be increased by proceeds of one-time transactions, which are expended for emergency or unanticipated operating or capital needs: *Provided further,* That such increases shall be approved by enactment of local District law and shall comply with all reserve requirements contained in the District of Columbia Home Rule Act: *Provided further,* That the Chief Financial Officer of the District of Columbia shall take such steps as are necessary to assure that the District of Columbia meets these requirements, including the apportioning by the Chief Financial Officer of the appropriations and funds made available to the District during fiscal year 2026, except that the Chief Financial Officer may not

reprogram for operating expenses any funds derived from bonds, notes, or other obligations issued for capital projects.

This title may be cited as the "District of Columbia Appropriations Act, 2026".

## TITLE V

## INDEPENDENT AGENCIES

### ADMINISTRATIVE CONFERENCE OF THE UNITED STATES

#### SALARIES AND EXPENSES

For necessary expenses of the Administrative Conference of the United States, authorized by 5 U.S.C. 591 et seq., $3,430,000, to remain available until September 30, 2027, of which not to exceed $1,000 is for official reception and representation expenses.

### COMMODITY FUTURES TRADING COMMISSION

#### SALARIES AND EXPENSES

#### (INCLUDING TRANSFER OF FUNDS)

For necessary expenses to carry out the provisions of the Commodity Exchange Act (7 U.S.C. 1 et seq.), including the purchase and hire of passenger motor vehicles, and the rental of space (to include multiple year leases), in the District of Columbia and elsewhere, $365,000,000, including not to exceed $3,000 for official reception and representation expenses, and not to exceed $25,000 for the expenses for consultations and meetings hosted by the Commission with foreign governmental and other regulatory officials, of which not less than $80,000,000 shall remain available until September 30, 2028, and of which not less than $5,773,000 shall be for expenses of the Office of the Inspector General: *Provided,* That notwithstanding the limitations in 31 U.S.C. 1553, amounts provided under this heading are available for the liquidation of obligations equal to current year payments on leases entered into prior to the date of enactment of this Act: *Provided further,* That for the purpose of recording and liquidating any lease obligations that should have been recorded and liquidated against accounts closed pursuant to 31 U.S.C. 1552, and consistent with the preceding proviso, such amounts shall be transferred to and recorded in a no-year account in the Treasury, which has been established for the sole purpose of recording adjustments for and liquidating such unpaid obligations.

### CONSUMER PRODUCT SAFETY COMMISSION

#### SALARIES AND EXPENSES

For necessary expenses of the Consumer Product Safety Commission, including hire of passenger motor vehicles, services as authorized by 5 U.S.C. 3109, but at rates for individuals not to exceed the per diem rate equivalent to the maximum rate payable under 5 U.S.C. 5376, purchase of nominal awards to recognize non-Federal officials' contributions to Commission activities, and not to exceed $4,000 for official reception and representation

H. R. 7148—294

expenses, $150,975,000, of which no less than $1,622,000 shall be for salaries and expenses of the Office of the Inspector General, of which $2,500,000 shall remain available until expended, to carry out the program, including administrative costs, authorized by section 1405 of the Virginia Graeme Baker Pool and Spa Safety Act (Public Law 110–140, as amended), and of which $2,000,000 shall remain available until expended, to carry out the program, including administrative costs, authorized by section 204 of the Nicholas and Zachary Burt Memorial Carbon Monoxide Poisoning Prevention Act of 2022 (title II of division Q of Public Law 117–103).

ADMINISTRATIVE PROVISIONS—CONSUMER PRODUCT SAFETY COMMISSION

SEC. 501. During fiscal year 2026, none of the amounts made available by this Act may be used to finalize or implement the Safety Standard for Recreational Off-Highway Vehicles published by the Consumer Product Safety Commission in the Federal Register on November 19, 2014 (79 Fed. Reg. 68964) until after—

(1) the National Academy of Sciences, in consultation with the National Highway Traffic Safety Administration and the Department of Defense, completes a study to determine—

(A) the technical validity of the lateral stability and vehicle handling requirements proposed by such standard for purposes of reducing the risk of Recreational Off-Highway Vehicle (referred to in this section as "ROV") rollovers in the off-road environment, including the repeatability and reproducibility of testing for compliance with such requirements;

(B) the number of ROV rollovers that would be prevented if the proposed requirements were adopted;

(C) whether there is a technical basis for the proposal to provide information on a point-of-sale hangtag about a ROV's rollover resistance on a progressive scale; and

(D) the effect on the utility of ROVs used by the United States military if the proposed requirements were adopted; and

(2) a report containing the results of the study completed under paragraph (1) is delivered to—

(A) the Committee on Commerce, Science, and Transportation of the Senate;

(B) the Committee on Energy and Commerce of the House of Representatives;

(C) the Committee on Appropriations of the Senate; and

(D) the Committee on Appropriations of the House of Representatives.

SEC. 502. None of the funds provided may be used to promulgate, implement, administer, or enforce any regulation issued by the U.S. Consumer Product Safety Commission to ban gas stoves as a class of products.

COUNCIL OF THE INSPECTORS GENERAL ON INTEGRITY AND
EFFICIENCY

SALARIES AND EXPENSES

For necessary expenses of the Council of the Inspectors General on Integrity and Efficiency, as established pursuant to section 11(c)(3)(B) of chapter 4 of title 5, United States Code, to utilize and further develop the data analytics capabilities of the Pandemic Response Accountability Committee to enhance transparency, to prevent, detect, and remediate waste, fraud and abuse in Federal spending, and for expenses related to enhancements to www.oversight.gov, $5,450,000, to remain available until expended, of which $850,000 is for enhancements to oversight.gov: *Provided,* That the amounts appropriated under this heading shall be in addition to any other amounts available to the Council of the Inspectors General on Integrity and Efficiency under section 424 of title 5, United States Code.

ELECTION ASSISTANCE COMMISSION

SALARIES AND EXPENSES

For necessary expenses to carry out the Help America Vote Act of 2002 (Public Law 107–252), $23,860,000, of which $1,500,000 shall be made available to the National Institute of Standards and Technology for election reform activities authorized under the Help America Vote Act of 2002; and of which $1,354,169 shall be for necessary expenses of the Office of the Inspector General and of which $8,000 shall be for official reception and representation expenses: *Provided,* That of the amounts appropriated under this heading, up to $2,500,000 shall remain available until September 30, 2027.

ELECTION SECURITY GRANTS

Notwithstanding section 104(c)(2)(B) of the Help America Vote Act of 2002 (52 U.S.C. 20904(c)(2)(B)), $45,000,000 is provided to the Election Assistance Commission for necessary expenses to make payments to States for activities to improve the administration of elections for Federal office, including to enhance election technology and make election security improvements, as authorized by sections 101, 103, and 104 of such Act: *Provided,* That for purposes of applying such sections, the Commonwealth of the Northern Mariana Islands shall be deemed to be a State and, for purposes of sections 101(d)(2) and 103(a) shall be treated in the same manner as the Commonwealth of Puerto Rico, Guam, American Samoa, and the United States Virgin Islands: *Provided further,* That each reference to the "Administrator of General Services" or the "Administrator" in sections 101 and 103 shall be deemed to refer to the "Election Assistance Commission": *Provided further,* That each reference to "$5,000,000" in section 103 shall be deemed to refer to "$819,000" and each reference to "$1,000,000" in section 103 shall be deemed to refer to "$162,000": *Provided further,* That not later than two years after receiving a payment under this heading, a State shall make available funds for such activities in an amount equal to 20 percent of the total amount of the payment made to the State under this heading: *Provided further,*

H. R. 7148—296

That not later than 45 days after the date of enactment of this Act, the Election Assistance Commission shall make the payments to States under this heading: *Provided further,* That States shall submit quarterly financial reports and annual progress reports: *Provided further,* That of the amounts provided under this heading, $10,000,000 shall be paid from the unobligated balances, as of the date of enactment of this Act, in the fund established by section 9006(a) of the Internal Revenue Code of 1986 (26 U.S.C. 9006(a)).

FEDERAL COMMUNICATIONS COMMISSION

SALARIES AND EXPENSES

For necessary expenses of the Federal Communications Commission, as authorized by law, including uniforms and allowances therefor, as authorized by 5 U.S.C. 5901–5902; not to exceed $4,000 for official reception and representation expenses; purchase and hire of motor vehicles; special counsel fees; and services as authorized by 5 U.S.C. 3109, $416,112,000 to remain available until September 30, 2029: *Provided,* That $416,112,000 of offsetting collections shall be assessed and collected pursuant to section 9 of title I of the Communications Act of 1934, shall be retained and used for necessary expenses and shall remain available until September 30, 2029: *Provided further,* That the sum herein appropriated shall be reduced as such offsetting collections are received during fiscal year 2026 so as to result in a final fiscal year 2026 appropriation estimated at $0: *Provided further,* That, notwithstanding 47 U.S.C. 309(j)(8)(B), proceeds from the use of a competitive bidding system that may be retained and made available for obligation shall not exceed $132,681,000 for fiscal year 2026: *Provided further,* That, of the amount appropriated under this heading, not less than $13,500,000 shall be for the salaries and expenses of the Office of Inspector General.

ADMINISTRATIVE PROVISIONS—FEDERAL COMMUNICATIONS COMMISSION

SEC. 510. Section 302 of Public Law 108–494 shall be applied as if "and ending on December 31, 2024" were struck.

SEC. 511. None of the funds appropriated by this Act may be used by the Federal Communications Commission to modify, amend, or change its rules or regulations for universal service support payments to implement the February 27, 2004, recommendations of the Federal-State Joint Board on Universal Service regarding single connection or primary line restrictions on universal service support payments.

FEDERAL DEPOSIT INSURANCE CORPORATION

OFFICE OF THE INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General in carrying out the provisions of chapter 4 of title 5, United States Code, $48,500,000, of which $1,500,000 shall remain available until expended, to be derived from the Deposit Insurance Fund or, only when appropriate, the FSLIC Resolution Fund.

H. R. 7148—297

FEDERAL ELECTION COMMISSION

SALARIES AND EXPENSES

For necessary expenses to carry out the provisions of the Federal Election Campaign Act of 1971, $80,857,000, of which not to exceed $5,000 shall be available for reception and representation expenses.

FEDERAL LABOR RELATIONS AUTHORITY

SALARIES AND EXPENSES

For necessary expenses to carry out functions of the Federal Labor Relations Authority, pursuant to Reorganization Plan Numbered 2 of 1978, and the Civil Service Reform Act of 1978, including services authorized by 5 U.S.C. 3109, and including hire of experts and consultants, hire of passenger motor vehicles, and including official reception and representation expenses (not to exceed $1,500) and rental of conference rooms in the District of Columbia and elsewhere, $29,500,000, of which $1,271,000 shall be made available to support the Office of the Inspector General: *Provided,* That public members of the Federal Service Impasses Panel may be paid travel expenses and per diem in lieu of subsistence as authorized by law (5 U.S.C. 5703) for persons employed intermittently in the Government service, and compensation as authorized by 5 U.S.C. 3109: *Provided further,* That, notwithstanding 31 U.S.C. 3302, funds received from fees charged to non-Federal participants at labor-management relations conferences shall be credited to and merged with this account, to be available without further appropriation for the costs of carrying out these conferences.

FEDERAL TRADE COMMISSION

SALARIES AND EXPENSES

For necessary expenses of the Federal Trade Commission, including uniforms or allowances therefor, as authorized by 5 U.S.C. 5901–5902; services as authorized by 5 U.S.C. 3109; hire of passenger motor vehicles; and not to exceed $2,000 for official reception and representation expenses, $383,600,000, to remain available until expended: *Provided,* That not less than $2,700,000 shall be for necessary expenses of the Office of Inspector General: *Provided further,* That not to exceed $300,000 shall be available for use to contract with a person or persons for collection services in accordance with the terms of 31 U.S.C. 3718: *Provided further,* That not less than $10,000,000 shall be available for the programs and activities authorized by the TAKE IT DOWN Act (Public Law 119–12): *Provided further,* That, notwithstanding any other provision of law, not to exceed $310,000,000 of offsetting collections derived from fees collected for premerger notification filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (15 U.S.C. 18a), regardless of the year of collection, shall be retained and used for necessary expenses in this appropriation: *Provided further,* That, notwithstanding any other provision of law, not to exceed $15,000,000 in offsetting collections derived from fees to implement and enforce the Telemarketing Sales Rule, promulgated

H. R. 7148—298

under the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. 6101 et seq.), shall be credited to this account, and be retained and used for necessary expenses in this appropriation: *Provided further,* That the sum herein appropriated from the general fund shall be reduced as such offsetting collections are received during fiscal year 2026 so as to result in a final fiscal year 2026 appropriation from the general fund estimated at no more than $58,600,000: *Provided further,* That none of the funds made available to the Federal Trade Commission may be used to implement subsection (e)(2)(B) of section 43 of the Federal Deposit Insurance Act (12 U.S.C. 1831t).

GENERAL SERVICES ADMINISTRATION

REAL PROPERTY ACTIVITIES

FEDERAL BUILDINGS FUND

LIMITATIONS ON AVAILABILITY OF REVENUE

(INCLUDING TRANSFERS OF FUNDS)

Amounts in the Fund, including revenues and collections deposited into the Fund, shall be available for necessary expenses of real property management and related activities not otherwise provided for, including operation, maintenance, and protection of federally owned and leased buildings; rental of buildings in the District of Columbia; restoration of leased premises; moving governmental agencies (including space adjustments and telecommunications relocation expenses) in connection with the assignment, allocation, and transfer of space; contractual services incident to cleaning or servicing buildings, and moving; repair and alteration of federally owned buildings, including grounds, approaches, and appurtenances; care and safeguarding of sites; maintenance, preservation, demolition, and equipment; acquisition of buildings and sites by purchase, condemnation, or as otherwise authorized by law; acquisition of options to purchase buildings and sites; conversion and extension of federally owned buildings; preliminary planning and design of projects by contract or otherwise; construction of new buildings (including equipment for such buildings); and payment of principal, interest, and any other obligations for public buildings acquired by installment purchase and purchase contract; in the aggregate amount of $9,686,761,000, of which—

(1) $165,661,000 shall remain available until expended for construction and acquisition (including funds for sites and expenses, and associated design and construction services), in addition to amounts otherwise provided for such purposes, as follows:

Connecticut:
    Hartford, U.S. Courthouse, $10,000,000;
Puerto Rico:
    San Juan, Clemente Ruiz-Nazario U.S. Courthouse and Federico Degetau Federal Building, $20,000,000;
Tennessee:
    Chattanooga, U.S. Courthouse, $43,500,000;
    Memphis, Odell Horton Federal Building, $1,500,000;
Washington:

Seattle, National Archives Replacement Facility, $30,000,000; and

Environmental Remediation, $60,661,000:
*Provided,* That each of the foregoing limits of costs on construction and acquisition projects may be exceeded to the extent that savings are effected in other such projects, but not to exceed 20 percent of the amounts included in a transmitted prospectus, if required, unless advance approval is obtained from the Committees on Appropriations of the House of Representatives and the Senate of a greater amount;

(2) $933,553,000 shall remain available until expended for repairs and alterations, including associated design and construction services, in addition to amounts otherwise provided for such purposes, of which—

(A) $239,000,000 is for Major Repairs and Alterations;

(B) $479,000,000 is for Basic Repairs and Alterations; and

(C) $215,553,000 is for Special Emphasis Programs: *Provided,* That funds made available in this or any previous Act in the Federal Buildings Fund for Repairs and Alterations shall, for prospectus projects, be limited to the amount identified for each project, except each project in this or any previous Act may be increased by an amount not to exceed 20 percent unless advance approval is obtained from the Committees on Appropriations of the House of Representatives and the Senate of a greater amount: *Provided further,* That additional projects for which prospectuses have been fully approved may be funded under this category only if advance approval is obtained from the Committees on Appropriations of the House of Representatives and the Senate: *Provided further*, That the amounts provided in this or any prior Act for "Repairs and Alterations" may be used to fund costs associated with implementing security improvements to buildings necessary to meet the minimum standards for security in accordance with current law and in compliance with the reprogramming guidelines of the appropriate Committees of the House and Senate: *Provided further,* That the difference between the funds appropriated and expended on any projects in this or any prior Act, under the heading "Repairs and Alterations", may be transferred to "Basic Repairs and Alterations" or used to fund authorized increases in prospectus projects: *Provided further,* That the amount provided in this or any prior Act for "Basic Repairs and Alterations" may be used to pay claims against the Government arising from any projects under the heading "Repairs and Alterations" or used to fund authorized increases in prospectus projects;

(3) $5,574,593,000 for rental of space to remain available until expended; and

(4) $3,012,954,000 for building operations to remain available until expended: *Provided,* That the total amount of funds made available from this Fund to the General Services Administration shall not be available for expenses of any construction, repair, alteration and acquisition project for which a prospectus, if required by 40 U.S.C. 3307(a), has not been approved, except that necessary funds may be expended for each project for required expenses for the development of a proposed prospectus: *Provided further*, That funds available in the Federal Buildings

H. R. 7148—300

Fund may be expended for emergency repairs when advance approval is obtained from the Committees on Appropriations of the House of Representatives and the Senate: *Provided further*, That amounts necessary to provide reimbursable special services to other agencies under 40 U.S.C. 592(b)(2) and amounts to provide such reimbursable fencing, lighting, guard booths, and other facilities on private or other property not in Government ownership or control as may be appropriate to enable the United States Secret Service to perform its protective functions pursuant to 18 U.S.C. 3056, shall be available from such revenues and collections: *Provided further*, That revenues and collections and any other sums accruing to this Fund during fiscal year 2026, excluding reimbursements under 40 U.S.C. 592(b)(2), in excess of the aggregate new obligational authority authorized for Real Property Activities of the Federal Buildings Fund in this Act shall remain in the Fund and shall not be available for expenditure except as authorized in appropriations Acts.

GENERAL ACTIVITIES

GOVERNMENT-WIDE POLICY

For expenses authorized by law, not otherwise provided for, for Government-wide policy associated with the management of real and personal property assets and certain administrative services; Government-wide policy support responsibilities relating to acquisition, travel, motor vehicles, information technology management, and related technology activities; and services as authorized by 5 U.S.C. 3109; and evaluation activities as authorized by statute; $64,000,000, of which $4,000,000 shall remain available until September 30, 2027.

OPERATING EXPENSES

For expenses authorized by law, not otherwise provided for, for Government-wide activities associated with utilization and donation of surplus personal property; disposal of real property; agency-wide policy direction and management; and services as authorized by 5 U.S.C. 3109; $48,000,000, of which not to exceed $7,500 is for official reception and representation expenses.

CIVILIAN BOARD OF CONTRACT APPEALS

For expenses authorized by law, not otherwise provided for, for the activities associated with the Civilian Board of Contract Appeals, $10,248,000, of which $2,000,000 shall remain available until expended.

OFFICE OF INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General and services authorized by 5 U.S.C. 3109, $73,837,000: *Provided,* That not to exceed $50,000 shall be available for payment for information and detection of fraud against the Government, including payment for recovery of stolen Government property: *Provided further,* That not to exceed $2,500 shall be available for awards to employees of other Federal agencies and private citizens in recognition of

efforts and initiatives resulting in enhanced Office of Inspector General effectiveness.

ALLOWANCES AND OFFICE STAFF FOR FORMER PRESIDENTS

For carrying out the provisions of the Act of August 25, 1958 (3 U.S.C. 102 note), and Public Law 95–138, $5,353,000.

FEDERAL CITIZEN SERVICES FUND

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses authorized by 40 U.S.C. 323 and 44 U.S.C. 3604; and for necessary expenses authorized by law in support of interagency projects that enable the Federal Government to enhance its ability to conduct activities electronically through the development and implementation of innovative uses of information technology; $70,000,000, to be deposited into the Federal Citizen Services Fund: *Provided,* That the previous amount may be transferred to Federal agencies to carry out the purpose of the Federal Citizen Services Fund: *Provided further,* That the appropriations, revenues, reimbursements, and collections deposited into the Fund shall be available until expended for necessary expenses authorized by 40 U.S.C. 323 and 44 U.S.C. 3604 and for necessary expenses in support of interagency projects that enable the Federal Government to enhance its ability to conduct activities electronically through the development and implementation of innovative uses of information technology in the aggregate amount not to exceed $150,000,000: *Provided further,* That appropriations, revenues, reimbursements, and collections accruing to this Fund during fiscal year 2026 in excess of such amount shall remain in the Fund and shall not be available for expenditure except as authorized in appropriations Acts: *Provided further,* That, of the total amount appropriated, up to $5,000,000 shall be available for support functions and full-time hires to support activities related to the Administration's requirements under title II of the Foundations for Evidence-Based Policymaking Act of 2018 (Public Law 115–435): *Provided further,* That the transfer authorities provided herein shall be in addition to any other transfer authority provided in this Act.

TECHNOLOGY MODERNIZATION FUND

For carrying out the purposes of the Technology Modernization Fund, as authorized by section 1078 of subtitle G of the title X of the National Defense Authorization Act for Fiscal Year 2018 (Public Law 115–91; 40 U.S.C. 11301 note), $5,000,000, to remain available until expended.

ASSET PROCEEDS AND SPACE MANAGEMENT FUND

For carrying out section 16(b) of the Federal Asset Sales and Transfer Act of 2016 (40 U.S.C. 1303 note), $143,328,000, to remain available until expended.

H. R. 7148—302

ADMINISTRATIVE PROVISIONS—GENERAL SERVICES ADMINISTRATION

(INCLUDING TRANSFER OF FUNDS)

SEC. 520. Funds available to the General Services Administration shall be available for the hire of passenger motor vehicles.

SEC. 521. Funds in the Federal Buildings Fund made available for fiscal year 2026 for Federal Buildings Fund activities may be transferred between such activities only to the extent necessary to meet program requirements: *Provided,* That any proposed transfers shall be approved in advance by the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 522. Except as otherwise provided in this title, funds made available by this Act shall be used to transmit a fiscal year 2027 request for United States Courthouse construction only if the request: (1) meets the design guide standards for construction as established and approved by the General Services Administration, the Judicial Conference of the United States, and the Office of Management and Budget; (2) reflects the priorities of the Judicial Conference of the United States as set out in its approved Courthouse Project Priorities plan; and (3) includes a standardized courtroom utilization study of each facility to be constructed, replaced, or expanded.

SEC. 523. None of the funds provided in this Act may be used to increase the amount of occupiable square feet, provide cleaning services, security enhancements, or any other service usually provided through the Federal Buildings Fund, to any agency that does not pay the rate per square foot assessment for space and services as determined by the General Services Administration in consideration of the Public Buildings Amendments Act of 1972 (Public Law 92–313).

SEC. 524. From funds made available under the heading "Federal Buildings Fund, Limitations on Availability of Revenue", claims against the Government of less than $250,000 arising from direct construction projects and acquisition of buildings may be liquidated from savings effected in other construction projects with prior notification to the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 525. In any case in which the Committee on Transportation and Infrastructure of the House of Representatives and the Committee on Environment and Public Works of the Senate adopt a resolution granting lease authority pursuant to a prospectus transmitted to Congress by the Administrator of the General Services Administration under 40 U.S.C. 3307, the Administrator shall ensure that the delineated area of procurement is identical to the delineated area included in the prospectus for all lease agreements, except that, if the Administrator determines that the delineated area of the procurement should not be identical to the delineated area included in the prospectus, the Administrator shall provide an explanatory statement to each of such committees and the Committees on Appropriations of the House of Representatives and the Senate prior to exercising any lease authority provided in the resolution.

SEC. 526. With respect to projects funded under the heading "Federal Citizen Services Fund", the Administrator of General Services shall submit a spending plan and explanation for each project to be undertaken to the Committees on Appropriations of the House

of Representatives and the Senate not later than 60 days after the date of enactment of this Act.

SEC. 527. For an additional amount to be deposited in the "Federal Buildings Fund", $23,612,000, to remain available until expended, which shall be for initiatives related to Repairs and Alterations, in the amounts and for the projects specified in the table that appears under the heading "Administrative Provisions—General Services Administration" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That if any of the projects specified in this section experience a funding deficiency due to unforeseen cost over runs for that project that will create a risk to project completion, the Administrator of the General Services Administration shall immediately notify the Committees on Appropriations of the House of Representatives and the Senate of the amount of and the reason for such deficiency: *Provided further,* That if any of the projects specified in this section do not need all of the amounts provided for project completion, the Administrator of the General Services Administration shall immediately notify the Committees on Appropriations of the House of Representatives and the Senate of the amount of and the reason that such funding that is not needed for project completion: *Provided further,* That none of the funds made available by this section may be transferred for any other purpose.

HARRY S TRUMAN SCHOLARSHIP FOUNDATION

SALARIES AND EXPENSES

For payment to the Harry S Truman Scholarship Foundation Trust Fund, established by section 10 of Public Law 93–642, $2,970,000, to remain available until expended.

MERIT SYSTEMS PROTECTION BOARD

SALARIES AND EXPENSES

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses to carry out functions of the Merit Systems Protection Board pursuant to Reorganization Plan Numbered 2 of 1978, the Civil Service Reform Act of 1978, and the Whistleblower Protection Act of 1989 (5 U.S.C. 5509 note), including services as authorized by 5 U.S.C. 3109, rental of conference rooms in the District of Columbia and elsewhere, hire of passenger motor vehicles, direct procurement of survey printing, and not to exceed $2,000 for official reception and representation expenses, $49,135,000, to remain available until September 30, 2027, and in addition not to exceed $2,345,000, to remain available until September 30, 2027, for administrative expenses to adjudicate retirement appeals to be transferred from the Civil Service Retirement and Disability Fund in amounts determined by the Merit Systems Protection Board.

MORRIS K. UDALL AND STEWART L. UDALL FOUNDATION

MORRIS K. UDALL AND STEWART L. UDALL TRUST FUND

(INCLUDING TRANSFER OF FUNDS)

For payment to the Morris K. Udall and Stewart L. Udall Foundation, pursuant to the Morris K. Udall and Stewart L. Udall Foundation Act (20 U.S.C. 5601 et seq.), $1,582,000, to remain available for direct expenditure until September 30, 2029, of which, notwithstanding sections 8 and 9 of such Act, up to $1,000,000 shall be available to carry out the activities authorized by section 6(7) of Public Law 102–259 and section 817(a) of Public Law 106–568 (20 U.S.C. 5604(7)): *Provided,* That all current and previous amounts transferred to the Office of Inspector General of the Department of the Interior will remain available until expended for audits and investigations of the Morris K. Udall and Stewart L. Udall Foundation, consistent with chapter 4 of title 5, United States Code, and for annual independent financial audits of the Morris K. Udall and Stewart L. Udall Foundation pursuant to the Accountability of Tax Dollars Act of 2002 (Public Law 107–289): *Provided further,* That previous amounts transferred to the Office of Inspector General of the Department of the Interior may be transferred to the Morris K. Udall and Stewart L. Udall Foundation for annual independent financial audits pursuant to the Accountability of Tax Dollars Act of 2002 (Public Law 107–289): *Provided further,* That any interest earned during fiscal year 2026 from investments made from discretionary appropriations to the Morris K. Udall and Stewart L. Udall Trust Fund after the date specified in 20 U.S.C. 5606(b)(1) shall be available until expended.

ENVIRONMENTAL DISPUTE RESOLUTION FUND

For payment to the Environmental Dispute Resolution Fund to carry out activities authorized in the Environmental Policy and Conflict Resolution Act of 1998, $3,862,000, to remain available until September 30, 2029.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

OPERATING EXPENSES

For necessary expenses in connection with the administration of the National Archives and Records Administration and archived Federal records and related activities, as provided by law, and for expenses necessary for the review and declassification of documents, the activities of the Public Interest Declassification Board, the operations and maintenance of the electronic records archives, the hire of passenger motor vehicles, and for uniforms or allowances therefor, as authorized by law (5 U.S.C. 5901), including maintenance, repairs, and cleaning, $421,000,000, of which up to $30,000,000 shall remain available until expended for expenses necessary to enhance the Federal Government's ability to electronically preserve, manage, and store Government records.

H. R. 7148—305

OFFICE OF INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General in carrying out the provisions of the Inspector General Reform Act of 2008, Public Law 110–409, 122 Stat. 4302–16 (2008), and chapter 4 of title 5, United States Code, and for the hire of passenger motor vehicles, $5,920,000, of which $897,000 is available until September 30, 2027.

REPAIRS AND RESTORATION

For the repair, alteration, and improvement of archives facilities and to provide adequate storage for holdings, $8,000,000, to remain available until expended.

NATIONAL HISTORICAL PUBLICATIONS AND RECORDS COMMISSION

GRANTS PROGRAM

For necessary expenses for allocations and grants for historical publications and records as authorized by 44 U.S.C. 2504, $5,000,000, to remain available until September 30, 2029.

ADMINISTRATIVE PROVISION—NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

SEC. 530. For an additional amount for "National Historical Publications and Records Commission Grants Program", $14,344,000 shall be available until one year after the date of enactment of this Act, which shall be for initiatives in the amounts and for the projects specified in the table that appears under the heading "Administrative Provision—National Archives and Records Administration" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That none of the funds made available by this section may be transferred for any other purpose.

NATIONAL CREDIT UNION ADMINISTRATION

COMMUNITY DEVELOPMENT REVOLVING LOAN FUND

For the Community Development Revolving Loan Fund program as authorized by 42 U.S.C. 9812, 9822, and 9910, $3,465,000 shall be available until September 30, 2027, for technical assistance to low-income designated credit unions.

OFFICE OF GOVERNMENT ETHICS

SALARIES AND EXPENSES

For necessary expenses to carry out functions of the Office of Government Ethics pursuant to chapter 131 of title 5, United States Code, the Ethics Reform Act of 1989, and the Representative Louise McIntosh Slaughter Stop Trading on Congressional Knowledge Act of 2012, including services as authorized by 5 U.S.C. 3109, rental of conference rooms in the District of Columbia and elsewhere, hire of passenger motor vehicles, and not to exceed $1,500 for official reception and representation expenses, $23,037,000.

H. R. 7148—306

OFFICE OF PERSONNEL MANAGEMENT

SALARIES AND EXPENSES

(INCLUDING TRANSFERS OF TRUST FUNDS)

For necessary expenses to carry out functions of the Office of Personnel Management (OPM) pursuant to Reorganization Plan Numbered 2 of 1978 and the Civil Service Reform Act of 1978, including services as authorized by 5 U.S.C. 3109; medical examinations performed for veterans by private physicians on a fee basis; rental of conference rooms in the District of Columbia and elsewhere; hire of passenger motor vehicles; not to exceed $2,500 for official reception and representation expenses; and payment of per diem and/or subsistence allowances to employees where Voting Rights Act activities require an employee to remain overnight at his or her post of duty, $167,535,000: *Provided,* That of the total amount made available under this heading, $10,898,000 may remain available until expended, for information technology modernization, and shall be in addition to funds otherwise made available for such purposes; and in addition $214,605,000, for administrative expenses, to be transferred from the appropriate trust funds of OPM without regard to other statutes, including direct procurement of printed materials, for the retirement and insurance programs: *Provided further,* That the provisions of this appropriation shall not affect the authority to use applicable trust funds as provided by sections 8348(a)(1)(B), 8958(f)(2)(A), 8988(f)(2)(A), and 9004(f)(2)(A) of title 5, United States Code: *Provided further,* That no part of this appropriation shall be available for salaries and expenses of the Legal Examining Unit of OPM established pursuant to Executive Order No. 9358 of July 1, 1943, or any successor unit of like purpose: *Provided further,* That the President's Commission on White House Fellows, established by Executive Order No. 11183 of October 3, 1964, may, during fiscal year 2026, accept donations of money, property, and personal services: *Provided further,* That such donations, including those from prior years, may be used for the development of publicity materials to provide information about the White House Fellows, except that no such donations shall be accepted for travel or reimbursement of travel expenses, or for the salaries of employees of such Commission: *Provided further,* That not to exceed 5 percent of amounts made available under this heading may be transferred to an information technology working capital fund established for purposes authorized by subtitle G of title X of division A of the National Defense Authorization Act for Fiscal Year 2018 (Public Law 115–91; 40 U.S.C. 11301 note): *Provided further,* That the OPM Director shall notify, and receive approval from, the Committees on Appropriations of the House of Representatives and the Senate at least 15 days in advance of any transfer under the preceding proviso: *Provided further,* That amounts transferred to such a fund under such transfer authority from any organizational category of OPM shall not exceed 5 percent of each such organizational category's budget as identified in the report required by section 608 of this Act: *Provided further,* That amounts transferred to such a fund shall remain available for obligation through September 30, 2029.

H. R. 7148—307

OFFICE OF INSPECTOR GENERAL

SALARIES AND EXPENSES

(INCLUDING TRANSFER OF TRUST FUNDS)

For necessary expenses of the Office of Inspector General in carrying out the provisions of chapter 4 of title 5, United States Code, including services as authorized by 5 U.S.C. 3109, hire of passenger motor vehicles, $6,839,000, and in addition, not to exceed $29,192,000 for administrative expenses to audit, investigate, and provide other oversight of the Office of Personnel Management's retirement and insurance programs, to be transferred from the appropriate trust funds of the Office of Personnel Management, as determined by the Inspector General: *Provided*, That the Inspector General is authorized to rent conference rooms in the District of Columbia and elsewhere.

OFFICE OF SPECIAL COUNSEL

SALARIES AND EXPENSES

For necessary expenses to carry out functions of the Office of Special Counsel, including services as authorized by 5 U.S.C. 3109, payment of fees and expenses for witnesses, rental of conference rooms in the District of Columbia and elsewhere, and hire of passenger motor vehicles, $31,585,000.

PRIVACY AND CIVIL LIBERTIES OVERSIGHT BOARD

SALARIES AND EXPENSES

For necessary expenses of the Privacy and Civil Liberties Oversight Board, as authorized by section 1061 of the Intelligence Reform and Terrorism Prevention Act of 2004 (42 U.S.C. 2000ee), $13,700,000, to remain available until September 30, 2027.

PUBLIC BUILDINGS REFORM BOARD

SALARIES AND EXPENSES

For salaries and expenses of the Public Buildings Reform Board in carrying out the Federal Assets Sale and Transfer Act of 2016 (Public Law 114–287), $3,605,000, to remain available until expended.

SECURITIES AND EXCHANGE COMMISSION

SALARIES AND EXPENSES

For necessary expenses for the Securities and Exchange Commission, including services as authorized by 5 U.S.C. 3109, the rental of space (to include multiple year leases) in the District of Columbia and elsewhere, and not to exceed $3,500 for official reception and representation expenses, $2,149,000,000, to remain available until expended; of which not less than $20,050,000 shall be for the Office of Inspector General; of which not to exceed $275,000 shall be available for a permanent secretariat for the

H. R. 7148—308

International Organization of Securities Commissions; and of which not to exceed $100,000 shall be available for expenses for consultations and meetings hosted by the Commission with foreign governmental and other regulatory officials, members of their delegations and staffs to exchange views concerning securities matters, such expenses to include necessary logistic and administrative expenses and the expenses of Commission staff and foreign invitees in attendance including: (1) incidental expenses such as meals; (2) travel and transportation; and (3) related lodging or subsistence: *Provided,* That any unobligated balances from funds made available under this heading in prior Acts for replacement leases for the Commission's headquarters and other regional office facilities may be used for such purposes at any Commission office facility, notwithstanding provisos in such Acts limiting use to particular office facilities, and notwithstanding provisos in such Acts requiring that de-obligated amounts derived from the general fund be returned to the general fund or that de-obligated amounts derived from fees or assessments be paid to national securities exchanges and national securities associations in proportion to any fees or assessments paid by such national securities exchange or national securities association.

For purposes of calculating the fee rate under section 31(j) of the Securities Exchange Act of 1934 (15 U.S.C. 78ee(j)) for fiscal year 2026, all amounts appropriated under this heading shall be deemed to be the regular appropriation to the Commission for fiscal year 2026: *Provided,* That fees and charges authorized by section 31 of the Securities Exchange Act of 1934 (15 U.S.C. 78ee) shall be credited to this account as offsetting collections: *Provided further,* That not to exceed $2,149,000,000 of such offsetting collections shall be available until expended for necessary expenses of this account: *Provided further,* That the total amount appropriated under this heading from the general fund for fiscal year 2026 shall be reduced as such offsetting fees are received so as to result in a final total fiscal year 2026 appropriation from the general fund estimated at not more than $0.

SELECTIVE SERVICE SYSTEM

SALARIES AND EXPENSES

For necessary expenses of the Selective Service System, including expenses of attendance at meetings and of training for uniformed personnel assigned to the Selective Service System, as authorized by 5 U.S.C. 4101–4118 for civilian employees; hire of passenger motor vehicles; services as authorized by 5 U.S.C. 3109; and not to exceed $1,000 for official reception and representation expenses; $31,300,000: *Provided,* That during the current fiscal year, the President may exempt this appropriation from the provisions of 31 U.S.C. 1341, whenever the President deems such action to be necessary in the interest of national defense: *Provided further,* That none of the funds appropriated by this Act may be expended for or in connection with the induction of any person into the Armed Forces of the United States.

H. R. 7148—309

SMALL BUSINESS ADMINISTRATION

SALARIES AND EXPENSES

For necessary expenses, not otherwise provided for, of the Small Business Administration, including hire of passenger motor vehicles as authorized by sections 1343 and 1344 of title 31, United States Code, and not to exceed $3,500 for official reception and representation expenses, $323,118,000, of which not less than $12,000,000 shall be available for examinations, reviews, and other lender oversight activities, of which no more than $30,000,000 shall remain available until September 30, 2027, for information technology systems and activities, and shall be in addition to amounts otherwise available for such purposes: *Provided,* That the Administrator is authorized to charge fees to cover the cost of publications developed by the Small Business Administration, and certain loan program activities, including fees authorized by section 5(b) of the Small Business Act: *Provided further,* That, notwithstanding 31 U.S.C. 3302, revenues received from all such activities shall be credited to this account, to remain available until expended, for carrying out these purposes without further appropriations: *Provided further,* That the Small Business Administration may accept gifts in an amount not to exceed $4,000,000 and may co-sponsor activities, each in accordance with section 132(a) of division K of Public Law 108–447, during fiscal year 2026: *Provided further,* That $15,500,000 shall be available for costs associated with the certification of small business concerns owned and controlled by veterans or service-disabled veterans under sections 36A and 36 of the Small Business Act (15 U.S.C. 657f–1; 657f), respectively, and section 862 of Public Law 116–283, to be available until September 30, 2027: *Provided further,* That not later than 180 days after the enactment of this Act, the Small Business Administration shall submit a report to the Committees on Appropriations of the House of Representatives and the Senate detailing the number FTE, funding obligated, and city and state for each district and regional office during the previous fiscal year and the number of FTE, funding level, and city and state for the current fiscal year for each district and regional office: *Provided further,* That district offices shall collect data on the number of constituents served each fiscal year.

ENTREPRENEURIAL DEVELOPMENT PROGRAMS

For necessary expenses of programs supporting entrepreneurial and small business development, $330,000,000, of which $82,000,000 shall remain available until September 30, 2027: *Provided,* That amounts made available under this heading may not be transferred pursuant to section 540 of this Act: *Provided further,* That of the amount appropriated under this heading—

(1) $150,000,000 shall be available to fund grants for performance as authorized by section 21 of the Small Business Act (15 U.S.C. 648), of which $30,000,000 shall remain available until September 30, 2027;

(2) $41,000,000 shall be available for marketing, management, and technical assistance under section 7(m)(4) of the Small Business Act (15 U.S.C. 636(m)(4)) by intermediaries that make microloans under the microloan program, of which $8,200,000 shall remain available until September 30, 2027;

(3) $20,000,000, to remain available until September 30, 2027, shall be available for grants to States to carry out export programs that assist small business concerns authorized under section 22(l) of the Small Business Act (15 U.S.C. 649(l));

(4) $27,000,000 shall be available for the Women's Business Center program described in section 29 of the Small Business Act (15 U.S.C. 656), of which $5,400,000 shall remain available until September 30, 2027;

(5) $21,400,000 shall be available for conducting outreach to veterans, including through the Boots to Business Program established under section 32(h) of the Small Business Act (15 U.S.C. 657b(h)) and Veteran Business Outreach Centers, of which $4,280,000 shall remain available until September 30, 2027;

(6) $17,000,000 shall be available for the Service Corps of Retired Executives established under section 8(b)(1)(B) of the Small Business Act (15 U.S.C. 637(b)(1)(B)), of which $3,400,000 shall remain available until September 30, 2027;

(7) $9,000,000 shall be available for grants and cooperative agreements under the Federal and State Technology Partnership Program under section 34 of the Small Business Act (15 U.S.C. 657d), of which $1,800,000 shall remain available until September 30, 2027;

(8) $9,000,000 shall be available for the Regional Innovation Cluster Initiative, of which $1,800,000 shall remain available until September 30, 2027;

(9) $7,000,000 shall be available for providing technical assistance under the Program for Investors in Microentrepreneurs, of which $1,400,000 shall remain available until September 30, 2027;

(10) $9,000,000 shall be available for grants to growth accelerators to assist entrepreneurs to start and scale their businesses, of which $1,800,000 shall remain available until September 30, 2027;

(11) $5,300,000 shall be available for the Office of Native American Affairs to carry out the outreach activities for Native American-owned small businesses, of which $1,060,000 shall remain available until September 30, 2027;

(12) $3,800,000 shall be available for financial assistance for the program established under section 7(j) of the Small Business Act (15 U.S.C. 636(j)), of which $760,000 shall remain available until September 30, 2027;

(13) $4,000,000 shall be available for technical and certification assistance for the HUBZone program established under section 31 of the Small Business Act (15 U.S.C. 657a), of which $800,000 shall remain available until September 30, 2027;

(14) $2,000,000 shall be available to provide entrepreneurship education, of which $400,000 shall remain available until September 30, 2027;

(15) $3,000,000 shall be available to make grants under the Cybersecurity for Small Businesses Pilot Program, of which $600,000 shall remain available until September 30, 2027; and

(16) $1,500,000 shall be available for the National Women's Business Council established under section 405 of the Women's Business Ownership Act of 1988 (15 U.S.C. 7105), of which $300,000 shall remain available until September 30, 2027.

H. R. 7148—311

OFFICE OF INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General in carrying out the provisions of chapter 4 of title 5, United States Code, $37,020,000.

OFFICE OF ADVOCACY

For necessary expenses of the Office of Advocacy in carrying out the provisions of title II of Public Law 94–305 (15 U.S.C. 634a et seq.) and the Regulatory Flexibility Act of 1980 (5 U.S.C. 601 et seq.), $10,109,000, to remain available until expended.

BUSINESS LOANS PROGRAM ACCOUNT

(INCLUDING TRANSFER OF FUNDS)

For the cost of direct loans, $3,000,000, to remain available until expended: *Provided,* That such costs, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further,* That subject to section 502 of the Congressional Budget Act of 1974, during fiscal year 2026 commitments to guarantee loans under section 503 of the Small Business Investment Act of 1958 and commitments for loans authorized under subparagraph (C) of section 502(7) of the Small Business Investment Act of 1958 (15 U.S.C. 696(7)) shall not exceed, in the aggregate, $16,500,000,000: *Provided further,* That during fiscal year 2026 commitments for general business loans authorized under paragraphs (1) through (35) of section 7(a) of the Small Business Act shall not exceed $35,500,000,000 for a combination of amortizing term loans and the aggregated maximum line of credit provided by revolving loans: *Provided further,* That during fiscal year 2026 commitments to guarantee loans for debentures under section 303(b) of the Small Business Investment Act of 1958 shall not exceed $6,000,000,000: *Provided further,* That during fiscal year 2026, guarantees of trust certificates authorized by section 5(g) of the Small Business Act shall not exceed a principal amount of $15,000,000,000. In addition, for administrative expenses to carry out the direct and guaranteed loan programs, $158,000,000, which may be transferred to and merged with the appropriations for Salaries and Expenses.

DISASTER LOANS PROGRAM ACCOUNT

(INCLUDING TRANSFERS OF FUNDS)

To carry out the direct loan program authorized by section 7(b) of the Small Business Act, $282,000,000, to be available until expended, of which $1,600,000 is for the Office of Inspector General of the Small Business Administration for audits and reviews of disaster loans and the disaster loan programs and shall be transferred to and merged with the appropriations for the Office of Inspector General; of which $197,000,000 is for direct administrative expenses of loan making and servicing to carry out the direct loan program, which may be transferred to and merged with the appropriations for Salaries and Expenses; of which $8,400,000 is for indirect administrative expenses for the direct loan program, which may be transferred to and merged with the appropriations

for Salaries and Expenses; and of which $75,000,000 is for the cost of direct loans and that such costs, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided,* That, of the funds provided under this heading, $250,000,000 shall be for major disasters declared pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122(2)): *Provided further,* That the amount for major disasters under this heading is designated by the Congress as being for disaster relief pursuant to a concurrent resolution on the budget.

ADMINISTRATIVE PROVISIONS—SMALL BUSINESS ADMINISTRATION

(INCLUDING TRANSFERS OF FUNDS)

SEC. 540. Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Small Business Administration in this Act may be transferred between such appropriations, but no such appropriation shall be increased by more than 10 percent by any such transfers: *Provided,* That any transfer pursuant to this paragraph shall be treated as a reprogramming of funds under section 608 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in that section.

SEC. 541. Not to exceed 3 percent of any appropriation made available in this Act for the Small Business Administration under the headings "Salaries and Expenses" and "Business Loans Program Account" may be transferred to the Administration's information technology system modernization and working capital fund (IT WCF), as authorized by section 1077(b)(1) of title X of division A of the National Defense Authorization Act for Fiscal Year 2018, for the purposes specified in section 1077(b)(3) of such Act, upon the advance approval of the Committees on Appropriations of the House of Representatives and the Senate: *Provided,* That amounts transferred to the IT WCF under this section shall remain available for obligation through September 30, 2029.

SEC. 542. For an additional amount for "Small Business Administration—Salaries and Expenses", $106,862,000, which shall be for initiatives related to small business development and entrepreneurship, including programmatic, construction, and acquisition activities, in the amounts and for the projects specified in the table that appears under the heading "Administrative Provisions—Small Business Administration" in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That, notwithstanding sections 2701.92 and 2701.93 of title 2, Code of Federal Regulations, the Administrator of the Small Business Administration may permit awards to subrecipients for initiatives funded under this section: *Provided further,* That none of the funds made available by this section may be transferred for any other purpose.

UNITED STATES POSTAL SERVICE

PAYMENT TO THE POSTAL SERVICE FUND

For payment to the Postal Service Fund for revenue forgone on free and reduced rate mail, pursuant to subsections (c) and (d) of section 2401 of title 39, United States Code, $38,360,000:

H. R. 7148—313

*Provided,* That mail for overseas voting and mail for the blind shall continue to be free: *Provided further,* That none of the funds made available to the Postal Service by this Act shall be used to implement any rule, regulation, or policy of charging any officer or employee of any State or local child support enforcement agency, or any individual participating in a State or local program of child support enforcement, a fee for information requested or provided concerning an address of a postal customer: *Provided further,* That none of the funds provided in this Act shall be used to consolidate or close small rural and other small post offices: *Provided further,* That the Postal Service may not destroy, and shall continue to offer for sale, any copies of the Multinational Species Conservation Funds Semipostal Stamp, as authorized under the Multinational Species Conservation Funds Semipostal Stamp Act of 2010 (Public Law 111–241).

OFFICE OF INSPECTOR GENERAL

SALARIES AND EXPENSES

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses of the Office of Inspector General in carrying out the provisions of chapter 4 of title 5, United States Code, $274,000,000, to be derived by transfer from the Postal Service Fund and expended as authorized by section 603(b)(3) of the Postal Accountability and Enhancement Act (Public Law 109–435).

UNITED STATES TAX COURT

SALARIES AND EXPENSES

For necessary expenses, including contract reporting and other services as authorized by 5 U.S.C. 3109, and not to exceed $3,000 for official reception and representation expenses, $55,000,000, of which $1,000,000 shall remain available until expended: *Provided,* That travel expenses of the judges shall be paid upon the written certificate of the judge.

TITLE VI

GENERAL PROVISIONS—THIS ACT

(INCLUDING RESCISSIONS OF FUNDS)

SEC. 601. None of the funds in this Act shall be used for the planning or execution of any program to pay the expenses of, or otherwise compensate, non-Federal parties intervening in regulatory or adjudicatory proceedings funded in this Act.

SEC. 602. None of the funds appropriated in this Act shall remain available for obligation beyond the current fiscal year, nor may any be transferred to other appropriations, except for transfers made pursuant to the authority in section 3173(d) of title 40, United States Code, unless expressly so provided herein.

SEC. 603. The expenditure of any appropriation under this Act for any consulting service through procurement contract pursuant to 5 U.S.C. 3109, shall be limited to those contracts where

such expenditures are a matter of public record and available for public inspection, except where otherwise provided under existing law, or under existing Executive order issued pursuant to existing law.

SEC. 604. None of the funds made available in this Act may be transferred to any department, agency, or instrumentality of the United States Government, except pursuant to a transfer made by, or transfer authority provided in, this Act or any other appropriations Act.

SEC. 605. None of the funds made available by this Act shall be available for any activity or for paying the salary of any Government employee where funding an activity or paying a salary to a Government employee would result in a decision, determination, rule, regulation, or policy that would prohibit the enforcement of section 307 of the Tariff Act of 1930 (19 U.S.C. 1307).

SEC. 606. No funds appropriated pursuant to this Act may be expended by an entity unless the entity agrees that in expending the assistance the entity will comply with chapter 83 of title 41, United States Code.

SEC. 607. No funds appropriated or otherwise made available under this Act shall be made available to any person or entity that has been convicted of violating chapter 83 of title 41, United States Code.

SEC. 608. Except as otherwise provided in this Act, none of the funds provided in this Act, provided by previous appropriations Acts to the agencies or entities funded in this Act that remain available for obligation or expenditure in fiscal year 2026, or provided from any accounts in the Treasury derived by the collection of fees and available to the agencies funded by this Act, shall be available for obligation or expenditure through a reprogramming of funds that: (1) creates a new program; (2) eliminates a program, project, or activity; (3) increases funds or personnel for any program, project, or activity for which funds have been denied or restricted by the Congress; (4) proposes to use funds directed for a specific activity by the Committee on Appropriations of either the House of Representatives or the Senate for a different purpose; (5) augments existing programs, projects, or activities in excess of $5,000,000 or 10 percent, whichever is less; (6) reduces existing programs, projects, or activities by $5,000,000 or 10 percent, whichever is less; or (7) creates or reorganizes offices, programs, or activities unless prior approval is received from the Committees on Appropriations of the House of Representatives and the Senate: *Provided,* That prior to any significant reorganization, restructuring, relocation, or closing of offices, programs, or activities, each agency or entity funded in this Act shall consult with the Committees on Appropriations of the House of Representatives and the Senate: *Provided further,* That not later than 60 days after the date of enactment of this Act, each agency funded by this Act shall submit a report to the Committees on Appropriations of the House of Representatives and the Senate to establish the baseline for application of reprogramming and transfer authorities for the current fiscal year: *Provided further,* That at a minimum the report shall include: (1) a table for each appropriation, detailing both full-time employee equivalents and budget authority, with separate columns to display the prior year enacted level, the President's budget request, adjustments made by Congress, adjustments due to enacted rescissions, if appropriate, and the fiscal year enacted

level; (2) a delineation in the table for each appropriation and its respective prior year enacted level by object class and program, project, and activity as detailed in this Act, in the accompanying report, or in the budget appendix for the respective appropriation, whichever is more detailed, and which shall apply to all items for which a dollar amount is specified and to all programs for which new budget authority is provided, as well as to discretionary grants and discretionary grant allocations; and (3) an identification of items of special congressional interest: *Provided further,* That the amount appropriated or limited for salaries and expenses for an agency shall be reduced by $100,000 per day for each day after the required date that the report has not been submitted to the Congress.

SEC. 609. Except as otherwise specifically provided by law, not to exceed 50 percent of unobligated balances remaining available at the end of fiscal year 2026 from appropriations made available for salaries and expenses for fiscal year 2026 in this Act, shall remain available through September 30, 2027, for each such account for the purposes authorized: *Provided,* That a request shall be submitted to the Committees on Appropriations of the House of Representatives and the Senate for approval prior to the expenditure of such funds: *Provided further,* That these requests shall be made in compliance with reprogramming guidelines.

SEC. 610. (a) None of the funds made available in this Act may be used by the Executive Office of the President to request—

(1) any official background investigation report on any individual from the Federal Bureau of Investigation; or

(2) a determination with respect to the treatment of an organization as described in section 501(c) of the Internal Revenue Code of 1986 and exempt from taxation under section 501(a) of such Code from the Department of the Treasury or the Internal Revenue Service.

(b) Subsection (a) shall not apply—

(1) in the case of an official background investigation report, if such individual has given express written consent for such request not more than 6 months prior to the date of such request and during the same presidential administration; or

(2) if such request is required due to extraordinary circumstances involving national security.

SEC. 611. The cost accounting standards promulgated under chapter 15 of title 41, United States Code shall not apply with respect to a contract under the Federal Employees Health Benefits Program established under chapter 89 of title 5, United States Code.

SEC. 612. For the purpose of resolving litigation and implementing any settlement agreements regarding the nonforeign area cost-of-living allowance program, the Office of Personnel Management may accept and utilize (without regard to any restriction on unanticipated travel expenses imposed in an appropriations Act) funds made available to the Office of Personnel Management pursuant to court approval.

SEC. 613. No funds appropriated by this Act shall be available to pay for an abortion, or the administrative expenses in connection with any health plan under the Federal employees health benefits program which provides any benefits or coverage for abortions.

SEC. 614. The provision of section 613 shall not apply where the life of the mother would be endangered if the fetus were carried to term, or the pregnancy is the result of an act of rape or incest.

SEC. 615. In order to promote Government access to commercial information technology, the restriction on purchasing nondomestic articles, materials, and supplies set forth in chapter 83 of title 41, United States Code (popularly known as the Buy American Act), shall not apply to the acquisition by the Federal Government of information technology (as defined in section 11101 of title 40, United States Code), that is a commercial item (as defined in section 103 of title 41, United States Code).

SEC. 616. Notwithstanding section 1353 of title 31, United States Code, no officer or employee of any regulatory agency or commission funded by this Act may accept on behalf of that agency, nor may such agency or commission accept, payment or reimbursement from a non-Federal entity for travel, subsistence, or related expenses for the purpose of enabling an officer or employee to attend and participate in any meeting or similar function relating to the official duties of the officer or employee when the entity offering payment or reimbursement is a person or entity subject to regulation by such agency or commission, or represents a person or entity subject to regulation by such agency or commission, unless the person or entity is an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code.

SEC. 617. (a)(1) Notwithstanding any other provision of law, an Executive agency covered by this Act otherwise authorized to enter into contracts for either leases or the construction or alteration of real property for office, meeting, storage, or other space must consult with the General Services Administration before issuing a solicitation for offers of new leases or construction contracts, and in the case of succeeding leases, before entering into negotiations with the current lessor.

(2) Any such agency with authority to enter into an emergency lease may do so during any period declared by the President to require emergency leasing authority with respect to such agency.

(b) For purposes of this section, the term "Executive agency covered by this Act" means any Executive agency provided funds by this Act, but does not include the General Services Administration or the United States Postal Service.

SEC. 618. (a) There are appropriated for the following activities the amounts required under current law:

(1) Compensation of the President (3 U.S.C. 102).

(2) Payments to—

(A) the Judicial Officers' Retirement Fund (28 U.S.C. 377(o));

(B) the Judicial Survivors' Annuities Fund (28 U.S.C. 376(c)); and

(C) the United States Court of Federal Claims Judges' Retirement Fund (28 U.S.C. 178(l)).

(3) Payment of Government contributions—

(A) with respect to the health benefits of retired employees, as authorized by chapter 89 of title 5, United States Code, and the Retired Federal Employees Health Benefits Act (74 Stat. 849); and

H. R. 7148—317

(B) with respect to the life insurance benefits for employees retiring after December 31, 1989 (5 U.S.C. ch. 87).

(4) Payment to finance the unfunded liability of new and increased annuity benefits under the Civil Service Retirement and Disability Fund (5 U.S.C. 8348).

(5) Payment of annuities authorized to be paid from the Civil Service Retirement and Disability Fund by statutory provisions other than subchapter III of chapter 83 or chapter 84 of title 5, United States Code.

(b) Nothing in this section may be construed to exempt any amount appropriated by this section from any otherwise applicable limitation on the use of funds contained in this Act.

SEC. 619. None of the funds made available in this Act may be used by the Federal Trade Commission to complete the draft report entitled "Interagency Working Group on Food Marketed to Children: Preliminary Proposed Nutrition Principles to Guide Industry Self-Regulatory Efforts" unless the Interagency Working Group on Food Marketed to Children complies with Executive Order No. 13563.

SEC. 620. (a) The head of each executive branch agency funded by this Act shall ensure that the Chief Information Officer of the agency has the authority to participate in decisions regarding the budget planning process related to information technology.

(b) Amounts appropriated for any executive branch agency funded by this Act that are available for information technology shall be allocated within the agency, consistent with the provisions of appropriations Acts and budget guidelines and recommendations from the Director of the Office of Management and Budget, in such manner as specified by, or approved by, the Chief Information Officer of the agency in consultation with the Chief Financial Officer of the agency and budget officials.

SEC. 621. None of the funds made available in this Act may be used in contravention of chapter 29, 31, or 33 of title 44, United States Code.

SEC. 622. None of the funds made available in this Act may be used by a governmental entity to require the disclosure by a provider of electronic communication service to the public or remote computing service of the contents of a wire or electronic communication that is in electronic storage with the provider (as such terms are defined in sections 2510 and 2711 of title 18, United States Code) in a manner that violates the Fourth Amendment to the Constitution of the United States.

SEC. 623. No funds provided in this Act shall be used to deny an Inspector General funded under this Act timely access to any records, documents, or other materials available to the department or agency over which that Inspector General has responsibilities under chapter 4 of title 5, United States Code, or to prevent or impede that Inspector General's access to such records, documents, or other materials, under any provision of law, except a provision of law that expressly refers to the Inspector General and expressly limits the Inspector General's right of access. A department or agency covered by this section shall provide its Inspector General with access to all such records, documents, and other materials in a timely manner. Each Inspector General shall ensure compliance with statutory limitations on disclosure relevant to the information provided by the establishment over which that

Inspector General has responsibilities under chapter 4 of title 5, United States Code. Each Inspector General covered by this section shall report to the Committees on Appropriations of the House of Representatives and the Senate within 5 calendar days any failures to comply with this requirement.

SEC. 624. None of the funds appropriated by this Act may be used by the Federal Communications Commission to modify, amend, or change the rules or regulations of the Commission for universal service high-cost support for competitive eligible telecommunications carriers in a way that is inconsistent with paragraph (e)(5) or (e)(6) of section 54.307 of title 47, Code of Federal Regulations, as in effect on July 15, 2015: *Provided,* That this section shall not prohibit the Commission from considering, developing, or adopting other support mechanisms as an alternative to Mobility Fund Phase II: *Provided further,* That any such alternative mechanism shall maintain existing high-cost support to competitive eligible telecommunications carriers until support under such mechanism commences.

SEC. 625. (a) None of the funds made available in this Act may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography.

(b) Nothing in subsection (a) shall limit the use of funds necessary for any Federal, State, Tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, adjudication activities, or other law enforcement- or victim assistance-related activity.

SEC. 626. None of the funds appropriated or other-wise made available by this Act may be used to pay award or incentive fees for contractors whose performance has been judged to be below satisfactory, behind schedule, over budget, or has failed to meet the basic requirements of a contract, unless the Agency determines that any such deviations are due to unforeseeable events, government-driven scope changes, or are not significant within the overall scope of the project and/or program and unless such awards or incentive fees are consistent with section 16.401(e)(2) of the Federal Acquisition Regulation.

SEC. 627. (a) None of the funds made available under this Act may be used to pay for travel and conference activities that result in a total cost to an Executive branch department, agency, board or commission funded by this Act of more than $500,000 at any single conference unless the agency or entity determines that such attendance is in the national interest and advance notice is transmitted to the Committees on Appropriations of the House of Representatives and the Senate that includes the basis of that determination.

(b) None of the funds made available under this Act may be used to pay for the travel to or attendance of more than 50 employees, who are stationed in the United States, at any single conference occurring outside the United States unless the agency or entity determines that such attendance is in the national interest and advance notice is transmitted to the Committees on Appropriations of the House of Representatives and the Senate that includes the basis of that determination.

SEC. 628. None of the funds made available by this Act may be used for first-class or business-class travel by the employees of executive branch agencies funded by this Act in contravention

of sections 301–10.122 through 301–10.125 of title 41, Code of Federal Regulations.

SEC. 629. None of the funds made available by this Act may be obligated on contracts in excess of $5,000 for public relations, as that term is defined in Office and Management and Budget Circular A–87 (revised May 10, 2004), unless advance notice of such an obligation is transmitted to the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 630. Federal agencies funded under this Act shall clearly state within the text, audio, or video used for advertising or educational purposes, including emails or Internet postings, that the communication is printed, published, or produced and disseminated at U.S. taxpayer expense. The funds used by a Federal agency to carry out this requirement shall be derived from amounts made available to the agency for advertising or other communications regarding the programs and activities of the agency.

SEC. 631. When issuing statements, press releases, requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or in part with Federal money, all grantees receiving Federal funds included in this Act, shall clearly state—

(1) the percentage of the total costs of the program or project which will be financed with Federal money;

(2) the dollar amount of Federal funds for the project or program; and

(3) percentage and dollar amount of the total costs of the project or program that will be financed by non-governmental sources.

SEC. 632. None of the funds made available by this Act shall be used by the Securities and Exchange Commission to finalize, issue, or implement any rule, regulation, or order regarding the disclosure of political contributions, contributions to tax exempt organizations, or dues paid to trade associations.

SEC. 633. Not later than 45 days after the last day of each quarter, each agency funded in this Act shall submit to the Committees on Appropriations of the House of Representatives and the Senate a quarterly budget report that includes total obligations of the Agency for that quarter for each appropriation, by the source year of the appropriation.

SEC. 634. Of the unobligated balances available in the Department of the Treasury, Treasury Forfeiture Fund, established by section 9703 of title 31, United States Code, $300,000,000 shall be permanently rescinded not later than September 30, 2026.

SEC. 635. The unobligated balances from prior years appropriations provided for the Special Inspector General for Pandemic Recovery are permanently rescinded.

## TITLE VII

### GENERAL PROVISIONS—GOVERNMENT-WIDE

#### DEPARTMENTS, AGENCIES, AND CORPORATIONS

##### (INCLUDING TRANSFERS OF FUNDS)

SEC. 701. No department, agency, or instrumentality of the United States receiving appropriated funds under this or any other Act for fiscal year 2026 shall obligate or expend any such funds,

unless such department, agency, or instrumentality has in place, and will continue to administer in good faith, a written policy designed to ensure that all of its workplaces are free from the illegal use, possession, or distribution of controlled substances (as defined in the Controlled Substances Act (21 U.S.C. 802)) by the officers and employees of such department, agency, or instrumentality.

SEC. 702. Unless otherwise specifically provided, the maximum amount allowable during the current fiscal year in accordance with section 1343(c) of title 31, United States Code, for the purchase of any passenger motor vehicle (exclusive of buses, ambulances, vans, law enforcement vehicles, protective vehicles, undercover surveillance vehicles, and police-type vehicles), is hereby fixed at $40,000 except station wagons for which the maximum shall be $41,140: *Provided,* That these limits may be exceeded by not to exceed $7,775 for police-type vehicles: *Provided further,* That the limits set forth in this section may not be exceeded by more than 5 percent for electric or hybrid vehicles purchased for demonstration under the provisions of the Electric and Hybrid Vehicle Research, Development, and Demonstration Act of 1976: *Provided further,* That the limits set forth in this section may be exceeded by the incremental cost of clean alternative fuels vehicles acquired pursuant to Public Law 101–549 over the cost of comparable conventionally fueled vehicles: *Provided further,* That the limits set forth in this section shall not apply to any vehicle that is a commercial item and which operates on alternative fuel, including but not limited to electric, plug-in hybrid electric, and hydrogen fuel cell vehicles.

SEC. 703. Appropriations of the executive departments and independent establishments for the current fiscal year available for expenses of travel, or for the expenses of the activity concerned, are hereby made available for quarters allowances and cost-of-living allowances, in accordance with 5 U.S.C. 5922–5924.

SEC. 704. Unless otherwise specified in law during the current fiscal year, no part of any appropriation contained in this or any other Act shall be used to pay the compensation of any officer or employee of the Government of the United States (including any agency the majority of the stock of which is owned by the Government of the United States) whose post of duty is in the continental United States unless such person: (1) is a citizen of the United States; (2) is a person who is lawfully admitted for permanent residence and is seeking citizenship as outlined in 8 U.S.C. 1324b(a)(3)(B); (3) is a person who is admitted as a refugee under 8 U.S.C. 1157 or is granted asylum under 8 U.S.C. 1158 and has filed a declaration of intention to become a lawful permanent resident and then a citizen when eligible; or (4) is a person who owes allegiance to the United States: *Provided,* That for purposes of this section, affidavits signed by any such person shall be considered prima facie evidence that the requirements of this section with respect to his or her status are being complied with: *Provided further,* That for purposes of paragraphs (2) and (3) such affidavits shall be submitted prior to employment and updated thereafter as necessary: *Provided further,* That any person making a false affidavit shall be guilty of a felony, and upon conviction, shall be fined no more than $4,000 or imprisoned for not more than 1 year, or both: *Provided further,* That the above penal clause shall be in addition to, and not in substitution for, any other

H. R. 7148—321

provisions of existing law: *Provided further,* That any payment made to any officer or employee contrary to the provisions of this section shall be recoverable in action by the Federal Government: *Provided further,* That this section shall not apply to any person who is an officer or employee of the Government of the United States on the date of enactment of this Act, or to international broadcasters employed by the Broadcasting Board of Governors, or to temporary employment of translators, or to temporary employment in the field service (not to exceed 60 days) as a result of emergencies: *Provided further,* That this section does not apply to the employment as Wildland firefighters for not more than 120 days of nonresident aliens employed by the Department of the Interior or the USDA Forest Service pursuant to an agreement with another country.

SEC. 705. Appropriations available to any department or agency during the current fiscal year for necessary expenses, including maintenance or operating expenses, shall also be available for payment to the General Services Administration for charges for space and services and those expenses of renovation and alteration of buildings and facilities which constitute public improvements performed in accordance with the Public Buildings Act of 1959 (73 Stat. 479), the Public Buildings Amendments of 1972 (86 Stat. 216), or other applicable law.

SEC. 706. In addition to funds provided in this or any other Act, all Federal agencies are authorized to receive and use funds resulting from the sale of materials, including Federal records disposed of pursuant to a records schedule recovered through recycling or waste prevention programs. Such funds shall be available until expended for the following purposes:

(1) Acquisition, waste reduction and prevention, and recycling programs as described in Executive Order No. 14057 (December 8, 2021), including any such programs adopted prior to the effective date of the Executive order.

(2) Other Federal agency environmental management programs, including, but not limited to, the development and implementation of hazardous waste management and pollution prevention programs.

(3) Other employee programs as authorized by law or as deemed appropriate by the head of the Federal agency.

SEC. 707. Funds made available by this or any other Act for administrative expenses in the current fiscal year of the corporations and agencies subject to chapter 91 of title 31, United States Code, shall be available, in addition to objects for which such funds are otherwise available, for rent in the District of Columbia; services in accordance with 5 U.S.C. 3109; and the objects specified under this head, all the provisions of which shall be applicable to the expenditure of such funds unless otherwise specified in the Act by which they are made available: *Provided,* That in the event any functions budgeted as administrative expenses are subsequently transferred to or paid from other funds, the limitations on administrative expenses shall be correspondingly reduced.

SEC. 708. No part of any appropriation contained in this or any other Act shall be available for interagency financing of boards (except Federal Executive Boards), commissions, councils, committees, or similar groups (whether or not they are interagency entities) which do not have a prior and specific statutory approval to receive financial support from more than one agency or instrumentality.

SEC. 709. None of the funds made available pursuant to the provisions of this or any other Act shall be used to implement, administer, or enforce any regulation which has been disapproved pursuant to a joint resolution duly adopted in accordance with the applicable law of the United States.

SEC. 710. During the period in which the head of any department or agency, or any other officer or civilian employee of the Federal Government appointed by the President of the United States, holds office, no funds may be obligated or expended in excess of $5,000 to furnish or redecorate the office of such department head, agency head, officer, or employee, or to purchase furniture or make improvements for any such office, unless advance notice of such furnishing or redecoration is transmitted to the Committees on Appropriations of the House of Representatives and the Senate. For the purposes of this section, the term "office" shall include the entire suite of offices assigned to the individual, as well as any other space used primarily by the individual or the use of which is directly controlled by the individual.

SEC. 711. Notwithstanding 31 U.S.C. 1346, or section 708 of this Act, funds made available for the current fiscal year by this or any other Act shall be available for the interagency funding of national security and emergency preparedness telecommunications initiatives which benefit multiple Federal departments, agencies, or entities, as provided by Executive Order No. 13618 (July 6, 2012).

SEC. 712. (a) None of the funds made available by this or any other Act may be obligated or expended by any department, agency, or other instrumentality of the Federal Government to pay the salaries or expenses of any individual appointed to a position of a confidential or policy-determining character that is excepted from the competitive service under section 3302 of title 5, United States Code, (pursuant to schedule C of subpart C of part 213 of title 5 of the Code of Federal Regulations) unless the head of the applicable department, agency, or other instrumentality employing such schedule C individual certifies to the Director of the Office of Personnel Management that the schedule C position occupied by the individual was not created solely or primarily in order to detail the individual to the White House.

(b) The provisions of this section shall not apply to Federal employees or members of the armed forces detailed to or from an element of the intelligence community (as that term is defined under section 3(4) of the National Security Act of 1947 (50 U.S.C. 3003(4))).

SEC. 713. No part of any appropriation contained in this or any other Act shall be available for the payment of the salary of any officer or employee of the Federal Government, who—

(1) prohibits or prevents, or attempts or threatens to prohibit or prevent, any other officer or employee of the Federal Government from having any direct oral or written communication or contact with any Member, committee, or subcommittee of the Congress in connection with any matter pertaining to the employment of such other officer or employee or pertaining to the department or agency of such other officer or employee in any way, irrespective of whether such communication or contact is at the initiative of such other officer or employee or in response to the request or inquiry of such Member, committee, or subcommittee; or

(2) removes, suspends from duty without pay, demotes, reduces in rank, seniority, status, pay, or performance or efficiency rating, denies promotion to, relocates, reassigns, transfers, disciplines, or discriminates in regard to any employment right, entitlement, or benefit, or any term or condition of employment of, any other officer or employee of the Federal Government, or attempts or threatens to commit any of the foregoing actions with respect to such other officer or employee, by reason of any communication or contact of such other officer or employee with any Member, committee, or subcommittee of the Congress as described in paragraph (1).

SEC. 714. (a) None of the funds made available in this or any other Act may be obligated or expended for any employee training that—

(1) does not meet identified needs for knowledge, skills, and abilities bearing directly upon the performance of official duties;

(2) contains elements likely to induce high levels of emotional response or psychological stress in some participants;

(3) does not require prior employee notification of the content and methods to be used in the training and written end of course evaluation;

(4) contains any methods or content associated with religious or quasi-religious belief systems or "new age" belief systems as defined in Equal Employment Opportunity Commission Notice N–915.022, dated September 2, 1988; or

(5) is offensive to, or designed to change, participants' personal values or lifestyle outside the workplace.

(b) Nothing in this section shall prohibit, restrict, or otherwise preclude an agency from conducting training bearing directly upon the performance of official duties.

SEC. 715. No part of any funds appropriated in this or any other Act shall be used by an agency of the executive branch, other than for normal and recognized executive-legislative relationships, for publicity or propaganda purposes, and for the preparation, distribution or use of any kit, pamphlet, booklet, publication, radio, television, or film presentation designed to support or defeat legislation pending before the Congress, except in presentation to the Congress itself.

SEC. 716. None of the funds appropriated by this or any other Act may be used by an agency to provide a Federal employee's home address to any labor organization except when the employee has authorized such disclosure or when such disclosure has been ordered by a court of competent jurisdiction.

SEC. 717. None of the funds made available in this or any other Act may be used to provide any non-public information such as mailing, telephone, or electronic mailing lists to any person or any organization outside of the Federal Government without the approval of the Committees on Appropriations of the House of Representatives and the Senate.

SEC. 718. No part of any appropriation contained in this or any other Act shall be used directly or indirectly, including by private contractor, for publicity or propaganda purposes within the United States not heretofore authorized by Congress.

SEC. 719. (a) In this section, the term "agency"—

(1) means an Executive agency, as defined under 5 U.S.C. 105; and

(2) includes a military department, as defined under section 102 of such title and the United States Postal Service.

(b) Unless authorized in accordance with law or regulations to use such time for other purposes, an employee of an agency shall use official time in an honest effort to perform official duties. An employee not under a leave system, including a Presidential appointee exempted under 5 U.S.C. 6301(2), has an obligation to expend an honest effort and a reasonable proportion of such employee's time in the performance of official duties.

SEC. 720. Notwithstanding 31 U.S.C. 1346 and section 708 of this Act, funds made available for the current fiscal year by this or any other Act to any department or agency, which is a member of the Federal Accounting Standards Advisory Board (FASAB), shall be available to finance an appropriate share of FASAB administrative costs.

SEC. 721. Notwithstanding 31 U.S.C. 1346 and section 708 of this Act, the head of each Executive department and agency is hereby authorized to transfer to or reimburse "General Services Administration, Government-wide Policy" with the approval of the Director of the Office of Management and Budget, funds made available for the current fiscal year by this or any other Act, including rebates from charge card and other contracts: *Provided,* That these funds shall be administered by the Administrator of General Services to support Government-wide and other multi-agency financial, information technology, procurement, and other management innovations, initiatives, and activities, including improving coordination and reducing duplication, as approved by the Director of the Office of Management and Budget, in consultation with the appropriate interagency and multi-agency groups designated by the Director (including the President's Management Council for overall management improvement initiatives, the Chief Financial Officers Council for financial management initiatives, the Chief Information Officers Council for information technology initiatives, the Chief Human Capital Officers Council for human capital initiatives, the Chief Acquisition Officers Council for procurement initiatives, and the Performance Improvement Council for performance improvement initiatives): *Provided further,* That the total funds transferred or reimbursed shall not exceed $15,000,000 to improve coordination, reduce duplication, and for other activities related to Federal Government Priority Goals established by 31 U.S.C. 1120, and not to exceed $17,000,000 for Government-wide innovations, initiatives, and activities: *Provided further,* That the funds transferred to or for reimbursement of "General Services Administration, Government-Wide Policy" during fiscal year 2026 shall remain available for obligation through September 30, 2027: *Provided further,* That not later than 90 days after enactment of this Act, the Director of the Office of Management and Budget, in consultation with the Administrator of General Services, shall submit to the Committees on Appropriations of the House of Representatives and the Senate, the Committee on Homeland Security and Governmental Affairs of the Senate, and the Committee on Oversight and Accountability of the House of Representatives a detailed spend plan for the funds to be transferred or reimbursed: *Provided further,* That the spend plan shall, at a minimum, include: (i) the amounts currently in the funds authorized under this section and the estimate of amounts to be transferred or reimbursed in fiscal year 2026; (ii) a detailed breakdown of the purposes for

all funds estimated to be transferred or reimbursed pursuant to this section (including total number of personnel and costs for all staff whose salaries are provided for by this section); (iii) where applicable, a description of the funds intended for use by or for the benefit of each executive council; and (iv) where applicable, a description of the funds intended for use by or for the implementation of specific laws passed by Congress: *Provided further,* That no transfers or reimbursements may be made pursuant to this section until 15 days following notification of the Committees on Appropriations of the House of Representatives and the Senate by the Director of the Office of Management and Budget.

SEC. 722. Notwithstanding any other provision of law, a woman may breastfeed her child at any location in a Federal building or on Federal property, if the woman and her child are otherwise authorized to be present at the location.

SEC. 723. Notwithstanding 31 U.S.C. 1346, or section 708 of this Act, funds made available for the current fiscal year by this or any other Act shall be available for the interagency funding of specific projects, workshops, studies, and similar efforts to carry out the purposes of the National Science and Technology Council (authorized by Executive Order No. 12881), which benefit multiple Federal departments, agencies, or entities: *Provided,* That the Office of Management and Budget shall provide a report describing the budget of and resources connected with the National Science and Technology Council to the Committees on Appropriations of the House of Representatives and the Senate, the House Committee on Science, Space, and Technology, and the Senate Committee on Commerce, Science, and Transportation 90 days after enactment of this Act.

SEC. 724. Any request for proposals, solicitation, grant application, form, notification, press release, or other publications involving the distribution of Federal funds shall comply with any relevant requirements in part 200 of title 2, Code of Federal Regulations: *Provided,* That this section shall apply to direct payments, formula funds, and grants received by a State receiving Federal funds.

SEC. 725. (a) PROHIBITION OF FEDERAL AGENCY MONITORING OF INDIVIDUALS' INTERNET USE.—None of the funds made available in this or any other Act may be used by any Federal agency—

(1) to collect, review, or create any aggregation of data, derived from any means, that includes any personally identifiable information relating to an individual's access to or use of any Federal Government Internet site of the agency; or

(2) to enter into any agreement with a third party (including another government agency) to collect, review, or obtain any aggregation of data, derived from any means, that includes any personally identifiable information relating to an individual's access to or use of any nongovernmental Internet site.

(b) EXCEPTIONS.—The limitations established in subsection (a) shall not apply to—

(1) any record of aggregate data that does not identify particular persons;

(2) any voluntary submission of personally identifiable information;

(3) any action taken for law enforcement, regulatory, or supervisory purposes, in accordance with applicable law; or

(4) any action described in subsection (a)(1) that is a system security action taken by the operator of an Internet site and is necessarily incident to providing the Internet site services or to protecting the rights or property of the provider of the Internet site.

(c) DEFINITIONS.—For the purposes of this section:

(1) The term "regulatory" means agency actions to implement, interpret or enforce authorities provided in law.

(2) The term "supervisory" means examinations of the agency's supervised institutions, including assessing safety and soundness, overall financial condition, management practices and policies and compliance with applicable standards as provided in law.

SEC. 726. (a) None of the funds appropriated by this Act may be used to enter into or renew a contract which includes a provision providing prescription drug coverage, except where the contract also includes a provision for contraceptive coverage.

(b) Nothing in this section shall apply to a contract with—

(1) any of the following religious plans:

(A) Personal Care's HMO; and

(B) OSF HealthPlans, Inc.; and

(2) any existing or future plan, if the carrier for the plan objects to such coverage on the basis of religious beliefs.

(c) In implementing this section, any plan that enters into or renews a contract under this section may not subject any individual to discrimination on the basis that the individual refuses to prescribe or otherwise provide for contraceptives because such activities would be contrary to the individual's religious beliefs or moral convictions.

(d) Nothing in this section shall be construed to require coverage of abortion or abortion-related services.

SEC. 727. The United States is committed to ensuring the health of its Olympic, Pan American, and Paralympic athletes, and supports the strict adherence to anti-doping in sport through testing, adjudication, education, and research as performed by nationally recognized oversight authorities.

SEC. 728. Notwithstanding any other provision of law, funds appropriated for official travel to Federal departments and agencies may be used by such departments and agencies, if consistent with Office of Management and Budget Circular A–126 regarding official travel for Government personnel, to participate in the fractional aircraft ownership pilot program.

SEC. 729. Notwithstanding any other provision of law, none of the funds appropriated or made available under this or any other appropriations Act may be used to implement or enforce restrictions or limitations on the Coast Guard Congressional Fellowship Program, or to implement the proposed regulations of the Office of Personnel Management to add sections 300.311 through 300.316 to part 300 of title 5 of the Code of Federal Regulations, published in the Federal Register, volume 68, number 174, on September 9, 2003 (relating to the detail of executive branch employees to the legislative branch).

SEC. 730. Notwithstanding any other provision of law, no executive branch agency shall purchase, construct, or lease any additional facilities, except within or contiguous to existing locations, to be used for the purpose of conducting Federal law enforcement training without the advance approval of the Committees on Appropriations

of the House of Representatives and the Senate, except that the Federal Law Enforcement Training Centers is authorized to obtain the temporary use of additional facilities by lease, contract, or other agreement for training which cannot be accommodated in existing Centers facilities.

SEC. 731. Unless otherwise authorized by existing law, none of the funds provided in this or any other Act may be used by an executive branch agency to produce any prepackaged news story intended for broadcast or distribution in the United States, unless the story includes a clear notification within the text or audio of the prepackaged news story that the prepackaged news story was prepared or funded by that executive branch agency.

SEC. 732. None of the funds made available in this Act may be used in contravention of section 552a of title 5, United States Code (popularly known as the Privacy Act), and regulations implementing that section.

SEC. 733. (a) IN GENERAL.—None of the funds appropriated or otherwise made available by this or any other Act may be used for any Federal Government contract with any foreign incorporated entity which is treated as an inverted domestic corporation under section 835(b) of the Homeland Security Act of 2002 (6 U.S.C. 395(b)) or any subsidiary of such an entity.

(b) WAIVERS.—

(1) IN GENERAL.—Any Secretary shall waive subsection (a) with respect to any Federal Government contract under the authority of such Secretary if the Secretary determines that the waiver is required in the interest of national security.

(2) REPORT TO CONGRESS.—Any Secretary issuing a waiver under paragraph (1) shall report such issuance to Congress.

(c) EXCEPTION.—This section shall not apply to any Federal Government contract entered into before the date of the enactment of this Act, or to any task order issued pursuant to such contract.

SEC. 734. During fiscal year 2026, for each employee who—

(1) retires under section 8336(d)(2) or 8414(b)(1)(B) of title 5, United States Code; or

(2) retires under any other provision of subchapter III of chapter 83 or chapter 84 of such title 5 and receives a payment as an incentive to separate, the separating agency shall remit to the Civil Service Retirement and Disability Fund an amount equal to the Office of Personnel Management's average unit cost of processing a retirement claim for the preceding fiscal year. Such amounts shall be available until expended to the Office of Personnel Management and shall be deemed to be an administrative expense under section 8348(a)(1)(B) of title 5, United States Code.

SEC. 735. (a) None of the funds made available in this or any other Act may be used to recommend or require any entity submitting an offer for a Federal contract to disclose any of the following information as a condition of submitting the offer:

(1) Any payment consisting of a contribution, expenditure, independent expenditure, or disbursement for an electioneering communication that is made by the entity, its officers or directors, or any of its affiliates or subsidiaries to a candidate for election for Federal office or to a political committee, or that is otherwise made with respect to any election for Federal office.

H. R. 7148—328

(2) Any disbursement of funds (other than a payment described in paragraph (1)) made by the entity, its officers or directors, or any of its affiliates or subsidiaries to any person with the intent or the reasonable expectation that the person will use the funds to make a payment described in paragraph (1).

(b) In this section, each of the terms "contribution", "expenditure", "independent expenditure", "electioneering communication", "candidate", "election", and "Federal office" has the meaning given such term in the Federal Election Campaign Act of 1971 (52 U.S.C. 30101 et seq.).

Sec. 736. None of the funds made available in this or any other Act may be used to pay for the painting of a portrait of an officer or employee of the Federal Government, including the President, the Vice President, a Member of Congress (including a Delegate or a Resident Commissioner to Congress), the head of an executive branch agency (as defined in section 133 of title 41, United States Code), or the head of an office of the legislative branch.

Sec. 737. (a)(1) Notwithstanding any other provision of law, and except as otherwise provided in this section, no part of any of the funds appropriated for fiscal year 2026, by this or any other Act, may be used to pay any prevailing rate employee described in section 5342(a)(2)(A) of title 5, United States Code—

(A) during the period from the date of expiration of the limitation imposed by the comparable section for the previous fiscal years until the normal effective date of the applicable wage survey adjustment that is to take effect in fiscal year 2026, in an amount that exceeds the rate payable for the applicable grade and step of the applicable wage schedule in accordance with such section; and

(B) during the period consisting of the remainder of fiscal year 2026, in an amount that exceeds, as a result of a wage survey adjustment, the rate payable under subparagraph (A) by more than the sum of—

(i) the percentage adjustment taking effect in fiscal year 2026 under section 5303 of title 5, United States Code, in the rates of pay under the General Schedule; and

(ii) the difference between the overall average percentage of the locality-based comparability payments taking effect in fiscal year 2026 under section 5304 of such title (whether by adjustment or otherwise), and the overall average percentage of such payments which was effective in the previous fiscal year under such section.

(2) Notwithstanding any other provision of law, no prevailing rate employee described in subparagraph (B) or (C) of section 5342(a)(2) of title 5, United States Code, and no employee covered by section 5348 of such title, may be paid during the periods for which paragraph (1) is in effect at a rate that exceeds the rates that would be payable under paragraph (1) were paragraph (1) applicable to such employee.

(3) For the purposes of this subsection, the rates payable to an employee who is covered by this subsection and who is paid from a schedule not in existence on September 30, 2025, shall be determined under regulations prescribed by the Office of Personnel Management.

H. R. 7148—329

(4) Notwithstanding any other provision of law, rates of premium pay for employees subject to this subsection may not be changed from the rates in effect on September 30, 2025, except to the extent determined by the Office of Personnel Management to be consistent with the purpose of this subsection.

(5) This subsection shall apply with respect to pay for service performed after September 30, 2025.

(6) For the purpose of administering any provision of law (including any rule or regulation that provides premium pay, retirement, life insurance, or any other employee benefit) that requires any deduction or contribution, or that imposes any requirement or limitation on the basis of a rate of salary or basic pay, the rate of salary or basic pay payable after the application of this subsection shall be treated as the rate of salary or basic pay.

(7) Nothing in this subsection shall be considered to permit or require the payment to any employee covered by this subsection at a rate in excess of the rate that would be payable were this subsection not in effect.

(8) The Office of Personnel Management may provide for exceptions to the limitations imposed by this subsection if the Office determines that such exceptions are necessary to ensure the recruitment or retention of qualified employees.

(b) Notwithstanding subsection (a), the adjustment in rates of basic pay for the statutory pay systems that take place in fiscal year 2026 under sections 5344 and 5348 of title 5, United States Code, shall be—

(1) not less than the percentage received by employees in the same location whose rates of basic pay are adjusted pursuant to the statutory pay systems under sections 5303 and 5304 of title 5, United States Code: *Provided,* That prevailing rate employees at locations where there are no employees whose pay is increased pursuant to sections 5303 and 5304 of title 5, United States Code, and prevailing rate employees described in section 5343(a)(5) of title 5, United States Code, shall be considered to be located in the pay locality designated as "Rest of United States" pursuant to section 5304 of title 5, United States Code, for purposes of this subsection; and

(2) effective as of the first day of the first applicable pay period beginning after September 30, 2025.

SEC. 738. (a) The head of any Executive branch department, agency, board, commission, or office funded by this or any other appropriations Act shall submit annual reports to the Inspector General or senior ethics official for any entity without an Inspector General, regarding the costs and contracting procedures related to each conference held by any such department, agency, board, commission, or office during fiscal year 2026 for which the cost to the United States Government was more than $100,000.

(b) Each report submitted shall include, for each conference described in subsection (a) held during the applicable period—

(1) a description of its purpose;

(2) the number of participants attending;

(3) a detailed statement of the costs to the United States Government, including—

(A) the cost of any food or beverages;

(B) the cost of any audio-visual services;

H. R. 7148—330

(C) the cost of employee or contractor travel to and from the conference; and

(D) a discussion of the methodology used to determine which costs relate to the conference; and

(4) a description of the contracting procedures used including—

(A) whether contracts were awarded on a competitive basis; and

(B) a discussion of any cost comparison conducted by the departmental component or office in evaluating potential contractors for the conference.

(c) Within 15 days after the end of a quarter, the head of any such department, agency, board, commission, or office shall notify the Inspector General or senior ethics official for any entity without an Inspector General, of the date, location, and number of employees attending a conference held by any Executive branch department, agency, board, commission, or office funded by this or any other appropriations Act during fiscal year 2026 for which the cost to the United States Government was more than $20,000.

(d) A grant or contract funded by amounts appropriated by this or any other appropriations Act may not be used for the purpose of defraying the costs of a conference described in subsection (c) that is not directly and programmatically related to the purpose for which the grant or contract was awarded, such as a conference held in connection with planning, training, assessment, review, or other routine purposes related to a project funded by the grant or contract.

(e) None of the funds made available in this or any other appropriations Act may be used for travel and conference activities that are not in compliance with Office of Management and Budget Memorandum M–12–12 dated May 11, 2012 or any subsequent revisions to that memorandum.

SEC. 739. None of the funds made available in this or any other appropriations Act may be used to increase, eliminate, or reduce funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other appropriations Act.

SEC. 740. None of the funds made available by this or any other Act may be used to implement, administer, enforce, or apply the rule entitled "Competitive Area" published by the Office of Personnel Management in the Federal Register on April 15, 2008 (73 Fed. Reg. 20180 et seq.).

SEC. 741. None of the funds appropriated or otherwise made available by this or any other Act may be used to begin or announce a study or public-private competition regarding the conversion to contractor performance of any function performed by Federal employees pursuant to Office of Management and Budget Circular A–76 or any other administrative regulation, directive, or policy.

SEC. 742. (a) None of the funds appropriated or otherwise made available by this or any other Act may be available for a contract, grant, or cooperative agreement with an entity that requires employees or contractors of such entity seeking to report fraud, waste, or abuse to sign internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or contractors from lawfully reporting such waste, fraud, or abuse

H. R. 7148—331

to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

(b) The limitation in subsection (a) shall not contravene requirements applicable to Standard Form 312, Form 4414, or any other form issued by a Federal department or agency governing the nondisclosure of classified information.

SEC. 743. (a) No funds appropriated in this or any other Act may be used to implement or enforce the agreements in Standard Forms 312 and 4414 of the Government or any other nondisclosure policy, form, or agreement if such policy, form, or agreement does not contain the following provisions: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General or the Office of Special Counsel of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.": *Provided,* That notwithstanding the preceding provision of this section, a nondisclosure policy form or agreement that is to be executed by a person connected with the conduct of an intelligence or intelligence-related activity, other than an employee or officer of the United States Government, may contain provisions appropriate to the particular activity for which such document is to be used. Such form or agreement shall, at a minimum, require that the person will not disclose any classified information received in the course of such activity unless specifically authorized to do so by the United States Government. Such nondisclosure forms shall also make it clear that they do not bar disclosures to Congress, or to an authorized official of an executive agency or the Department of Justice, that are essential to reporting a substantial violation of law.

(b) A nondisclosure agreement may continue to be implemented and enforced notwithstanding subsection (a) if it complies with the requirements for such agreement that were in effect when the agreement was entered into.

(c) No funds appropriated in this or any other Act may be used to implement or enforce any agreement entered into during fiscal year 2014 which does not contain substantially similar language to that required in subsection (a).

SEC. 744. None of the funds made available by this or any other Act may be used to enter into a contract, memorandum of understanding, or cooperative agreement with, make a grant to, or provide a loan or loan guarantee to, any corporation that has any unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, and that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, where the awarding agency is aware of the unpaid tax liability, unless a Federal agency has considered

H. R. 7148—332

suspension or debarment of the corporation and has made a determination that this further action is not necessary to protect the interests of the Government.

SEC. 745. None of the funds made available by this or any other Act may be used to enter into a contract, memorandum of understanding, or cooperative agreement with, make a grant to, or provide a loan or loan guarantee to, any corporation that was convicted of a felony criminal violation under any Federal law within the preceding 24 months, where the awarding agency is aware of the conviction, unless a Federal agency has considered suspension or debarment of the corporation and has made a determination that this further action is not necessary to protect the interests of the Government.

SEC. 746. (a) During fiscal year 2026, on the date on which a request is made for a transfer of funds in accordance with section 1017 of Public Law 111–203, the Bureau of Consumer Financial Protection shall notify the Committees on Appropriations of the House of Representatives and the Senate, the Committee on Financial Services of the House of Representatives, and the Committee on Banking, Housing, and Urban Affairs of the Senate of such request.

(b) Any notification required by this section shall be made available on the Bureau's public website.

SEC. 747. (a) Notwithstanding any official rate adjusted under section 104 of title 3, United States Code, the rate payable to the Vice President during calendar year 2026 shall be the rate payable to the Vice President on December 31, 2025, by operation of section 747 of division B of Public Law 118–47, as continued in effect and modified by section 1605 of title VI of division A of Public Law 119–4 (as continued in effect and modified by division A of Public Law 119–37).

(b) Notwithstanding any official rate adjusted under section 5318 of title 5, United States Code, or any other provision of law, the payable rate during calendar year 2026 for an employee serving in an Executive Schedule position, or in a position for which the rate of pay is fixed by statute at an Executive Schedule rate, shall be the rate payable for the applicable Executive Schedule level on December 31, 2025, by operation of section 747 of division B of Public Law 118–47, as continued in effect and modified by section 1605 of title VI of division A of Public Law 119–4 (as continued in effect and modified by division A of Public Law 119–37).

(c) Notwithstanding section 401 of the Foreign Service Act of 1980 (Public Law 96–465) or any other provision of law, a chief of mission or ambassador at large is subject to subsection (b) in the same manner as other employees who are paid at an Executive Schedule rate.

(d)(1) This subsection applies to—

(A) a noncareer appointee in the Senior Executive Service paid a rate of basic pay at or above the official rate for level IV of the Executive Schedule; or

(B) a limited term appointee or limited emergency appointee in the Senior Executive Service serving under a political appointment and paid a rate of basic pay at or above the official rate for level IV of the Executive Schedule.

(2) Notwithstanding sections 5382 and 5383 of title 5, United States Code, an employee described in paragraph (1) may not

receive a pay rate increase during calendar year 2026, except as provided in subsection (i).

(e) Notwithstanding any other provision of law, any employee paid a rate of basic pay (including any locality based payments under section 5304 of title 5, United States Code, or similar authority) at or above the official rate for level IV of the Executive Schedule who serves under a political appointment may not receive a pay rate increase during calendar year 2026, except as provided in subsection (i). This subsection does not apply to employees in the General Schedule pay system or the Foreign Service pay system, to employees appointed under section 3161 of title 5, United States Code, or to employees in another pay system whose position would be classified at GS–15 or below if chapter 51 of title 5, United States Code, applied to them.

(f) Nothing in subsections (b) through (e) shall prevent employees who do not serve under a political appointment from receiving pay increases as otherwise provided under applicable law.

(g) This section does not apply to an individual who makes an election to retain Senior Executive Service basic pay under section 3392(c) of title 5, United States Code, for such time as that election is in effect.

(h) This section does not apply to an individual who makes an election to retain Senior Foreign Service pay entitlements under section 302(b) of the Foreign Service Act of 1980 (Public Law 96–465) for such time as that election is in effect.

(i) Notwithstanding subsections (b) through (e), an employee in a covered position may receive a pay rate increase upon an authorized movement to a different covered position only if that new position has higher-level duties and a pre-established level or range of pay higher than the level or range for the position held immediately before the movement. Any such increase must be based on the rates of pay and applicable limitations on payable rates of pay in effect on December 31, 2025, by operation of section 747 of division B of Public Law 118–47, as continued in effect and modified by section 1605 of title VI of division A of Public Law 119–4 (as continued in effect and modified by division A of Public Law 119–37).

(j) Notwithstanding any other provision of law, for an individual who is newly appointed to a covered position during the period of time subject to this section, the initial pay rate shall be based on the rates of pay and applicable limitations on payable rates of pay in effect on December 31, 2025, by operation of section 747 of division B of Public Law 118–47, as continued in effect and modified by section 1605 of title VI of division A of Public Law 119–4 (as continued in effect and modified by division A of Public Law 119–37).

(k) If an employee affected by this section is subject to a biweekly pay period that begins in calendar year 2026 but ends in calendar year 2027, the bar on the employee's receipt of pay rate increases shall apply through the end of that pay period.

(l) For the purpose of this section, the term "covered position" means a position occupied by an employee whose pay is restricted under this section.

(m) This section takes effect on the first day of the first applicable pay period beginning on or after January 1, 2026.

SEC. 748. In the event of a violation of the Impoundment Control Act of 1974, the President or the head of the relevant

department or agency, as the case may be, shall report immediately to the Congress all relevant facts and a statement of actions taken: *Provided,* That a copy of each report shall also be transmitted to the Committees on Appropriations of the House of Representatives and the Senate and the Comptroller General on the same date the report is transmitted to the Congress.

SEC. 749. (a) Each department or agency of the executive branch of the United States Government shall notify the Committees on Appropriations and the Budget of the House of Representatives and the Senate and any other appropriate congressional committees if—

(1) an apportionment is not made in the required time period provided in section 1513(b) of title 31, United States Code;

(2) an approved apportionment received by the department or agency conditions the availability of an appropriation on further action; or

(3) an approved apportionment received by the department or agency may hinder the prudent obligation of such appropriation or the execution of a program, project, or activity by such department or agency.

(b) Any notification submitted to a congressional committee pursuant to this section shall contain information identifying the bureau, account name, appropriation name, and Treasury Appropriation Fund Symbol or fund account.

SEC. 750. (a) Any non-Federal entity receiving funds provided in this or any other appropriations Act for fiscal year 2026 that are specified in the disclosure table submitted in compliance with clause 9 of rule XXI of the Rules of the House of Representatives or Rule XLIV of the Standing Rules of the Senate that is included in the report or explanatory statement accompanying any such Act shall be deemed to be a recipient of a Federal award with respect to such funds for purposes of the requirements of 2 CFR 200.334, regarding records retention, and 2 CFR 200.337, regarding access by the Comptroller General of the United States.

(b) Nothing in this section shall be construed to limit, amend, supersede, or restrict in any manner any requirements otherwise applicable to non-Federal entities described in paragraph (1) or any existing authority of the Comptroller General.

SEC. 751. Notwithstanding section 1346 of title 31, United States Code, or section 708 of this Act, funds made available by this or any other Act to any Federal agency may be used by that Federal agency for interagency funding for coordination with, participation in, or recommendations involving, activities of the U.S. Army Medical Research and Development Command, the Congressionally Directed Medical Research Programs and the National Institutes of Health research programs.

SEC. 752. Notwithstanding 31 U.S.C. 1346 and section 708 of this Act, the head of each Executive department and agency is hereby authorized to transfer to or reimburse "General Services Administration, Federal Citizen Services Fund" with the approval of the Director of the Office of Management and Budget, funds made available for the current fiscal year by this or any other Act, including rebates from charge card and other contracts: *Provided,* That these funds, in addition to amounts otherwise available, shall be administered by the Administrator of General Services to carry out the purposes of the Federal Citizen Services Fund

and to support Government-wide and other multi-agency financial, information technology, procurement, and other activities, including services authorized by 44 U.S.C. 3604 and enabling Federal agencies to take advantage of information technology in sharing information: *Provided further,* That the total funds transferred or reimbursed shall not exceed $29,000,000 for such purposes: *Provided further,* That the funds transferred to or for reimbursement of "General Services Administration, Federal Citizen Services Fund" during fiscal year 2026 shall remain available for obligation through September 30, 2027: *Provided further,* That not later than 90 days after enactment of this Act, the Administrator of General Services, in consultation with the Director of the Office of Management and Budget, shall submit to the Committees on Appropriations of the House of Representatives and the Senate a detailed spend plan for the funds to be transferred or reimbursed: *Provided further,* That the spend plan shall, at a minimum, include: (i) the amounts currently in the funds authorized under this section and the estimate of amounts to be transferred or reimbursed in fiscal year 2026; (ii) a detailed breakdown of the purposes for all funds estimated to be transferred or reimbursed pursuant to this section (including total number of personnel and costs for all staff whose salaries are provided for by this section); and (iii) where applicable, a description of the funds intended for use by or for the implementation of specific laws passed by Congress: *Provided further,* That no transfers or reimbursements may be made pursuant to this section until 15 days following notification of the Committees on Appropriations of the House of Representatives and the Senate by the Director of the Office of Management and Budget.

SEC. 753. Notwithstanding any other provision of law, the unobligated balances of funds made available in division J of the Infrastructure Investment and Jobs Act (Public Law 117–58) to any department or agency funded by this or any other Act may be transferred to the United States Fish and Wildlife Service and the National Marine Fisheries Service for the costs of carrying out their responsibilities under the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) to consult and conference, as required by section 7 of such Act, in connection with activities and projects funded by Public Law 117–58: *Provided,* That such transfers shall support activities and projects executed by the department or agency making such transfer: *Provided further,* That such transfers shall be approved by the head of such department or agency making such transfer: *Provided further*, That each department or agency shall provide notification to the Committees on Appropriations of the House of Representatives and the Senate no less than 30 days prior to such transfer: *Provided further,* That any such transfers from the Department of Transportation, including from agencies within the Department of Transportation, shall be from funding provided for personnel, contracting, and other costs to administer and oversee grants: *Provided further,* That amounts transferred pursuant to this section shall be in addition to amounts otherwise available for such purposes: *Provided further,* That the transfer authority provided in this section shall be in addition to any other transfer authority provided by law: *Provided further,* That amounts transferred pursuant to this section shall continue to be treated as amounts specified in section 103(b) of division A of Public Law 118–5.

H. R. 7148—336

SEC. 754. Except as expressly provided otherwise, any reference to "this Act" contained in any title other than title IV or VIII shall not apply to such title IV or VIII.

TITLE VIII

GENERAL PROVISIONS—DISTRICT OF COLUMBIA

(INCLUDING TRANSFERS OF FUNDS)

SEC. 801. There are appropriated from the applicable funds of the District of Columbia such sums as may be necessary for making refunds and for the payment of legal settlements or judgments that have been entered against the District of Columbia government.

SEC. 802. None of the Federal funds provided in this Act shall be used for publicity or propaganda purposes or implementation of any policy including boycott designed to support or defeat legislation pending before Congress or any State legislature.

SEC. 803. (a) None of the Federal funds provided under this Act to the agencies funded by this Act, both Federal and District government agencies, that remain available for obligation or expenditure in fiscal year 2026, or provided from any accounts in the Treasury of the United States derived by the collection of fees available to the agencies funded by this Act, shall be available for obligation or expenditures for an agency through a reprogramming of funds which—

(1) creates new programs;

(2) eliminates a program, project, or responsibility center;

(3) establishes or changes allocations specifically denied, limited or increased under this Act;

(4) increases funds or personnel by any means for any program, project, or responsibility center for which funds have been denied or restricted;

(5) re-establishes any program or project previously deferred through reprogramming;

(6) augments any existing program, project, or responsibility center through a reprogramming of funds in excess of $3,000,000 or 10 percent, whichever is less; or

(7) increases by 20 percent or more personnel assigned to a specific program, project or responsibility center, unless prior approval is received from the Committees on Appropriations of the House of Representatives and the Senate.

(b) The District of Columbia government is authorized to approve and execute reprogramming and transfer requests of local funds under this title through November 7, 2026.

SEC. 804. None of the Federal funds provided in this Act may be used by the District of Columbia to provide for salaries, expenses, or other costs associated with the offices of United States Senator or United States Representative under section 4(d) of the District of Columbia Statehood Constitutional Convention Initiatives of 1979 (D.C. Law 3–171; D.C. Official Code, sec. 1–123).

SEC. 805. Except as otherwise provided in this section, none of the funds made available by this Act or by any other Act may be used to provide any officer or employee of the District of Columbia with an official vehicle unless the officer or employee uses the vehicle only in the performance of the officer's or employee's

H. R. 7148—337

official duties. For purposes of this section, the term "official duties" does not include travel between the officer's or employee's residence and workplace, except in the case of—

(1) an officer or employee of the Metropolitan Police Department who resides in the District of Columbia or is otherwise designated by the Chief of the Department;

(2) at the discretion of the Fire Chief, an officer or employee of the District of Columbia Fire and Emergency Medical Services Department who resides in the District of Columbia and is on call 24 hours a day;

(3) at the discretion of the Director of the Department of Corrections, an officer or employee of the District of Columbia Department of Corrections who resides in the District of Columbia and is on call 24 hours a day;

(4) at the discretion of the Chief Medical Examiner, an officer or employee of the Office of the Chief Medical Examiner who resides in the District of Columbia and is on call 24 hours a day;

(5) at the discretion of the Director of the Homeland Security and Emergency Management Agency, an officer or employee of the Homeland Security and Emergency Management Agency who resides in the District of Columbia and is on call 24 hours a day;

(6) the Mayor of the District of Columbia; and

(7) the Chairman of the Council of the District of Columbia.

SEC. 806. (a) None of the Federal funds contained in this Act may be used by the District of Columbia Attorney General or any other officer or entity of the District government to provide assistance for any petition drive or civil action which seeks to require Congress to provide for voting representation in Congress for the District of Columbia.

(b) Nothing in this section bars the District of Columbia Attorney General from reviewing or commenting on briefs in private lawsuits, or from consulting with officials of the District government regarding such lawsuits.

SEC. 807. None of the Federal funds contained in this Act may be used to distribute any needle or syringe for the purpose of preventing the spread of blood borne pathogens in any location that has been determined by the local public health or local law enforcement authorities to be inappropriate for such distribution.

SEC. 808. Nothing in this Act may be construed to prevent the Council or Mayor of the District of Columbia from addressing the issue of the provision of contraceptive coverage by health insurance plans, but it is the intent of Congress that any legislation enacted on such issue should include a "conscience clause" which provides exceptions for religious beliefs and moral convictions.

SEC. 809. (a) None of the Federal funds contained in this Act may be used to enact or carry out any law, rule, or regulation to legalize or otherwise reduce penalties associated with the possession, use, or distribution of any schedule I substance under the Controlled Substances Act (21 U.S.C. 801 et seq.) or any tetrahydrocannabinols derivative.

(b) No funds available for obligation or expenditure by the District of Columbia government under any authority may be used to enact any law, rule, or regulation to legalize or otherwise reduce penalties associated with the possession, use, or distribution of any schedule I substance under the Controlled Substances Act

(21 U.S.C. 801 et seq.) or any tetrahydrocannabinols derivative for recreational purposes.

SEC. 810. No funds available for obligation or expenditure by the District of Columbia government under any authority shall be expended for any abortion except where the life of the mother would be endangered if the fetus were carried to term or where the pregnancy is the result of an act of rape or incest.

SEC. 811. (a) No later than 30 calendar days after the date of the enactment of this Act, the Chief Financial Officer for the District of Columbia shall submit to the appropriate committees of Congress, the Mayor, and the Council of the District of Columbia, a revised appropriated funds operating budget in the format of the budget that the District of Columbia government submitted pursuant to section 442 of the District of Columbia Home Rule Act (D.C. Official Code, sec. 1–204.42), for all agencies of the District of Columbia government for fiscal year 2026 that is in the total amount of the approved appropriation and that realigns all budgeted data for personal services and other-than-personal services, respectively, with anticipated actual expenditures.

(b) This section shall apply only to an agency for which the Chief Financial Officer for the District of Columbia certifies that a reallocation is required to address unanticipated changes in program requirements.

SEC. 812. No later than 30 calendar days after the date of the enactment of this Act, the Chief Financial Officer for the District of Columbia shall submit to the appropriate committees of Congress, the Mayor, and the Council for the District of Columbia, a revised appropriated funds operating budget for the District of Columbia Public Schools that aligns schools budgets to actual enrollment. The revised appropriated funds budget shall be in the format of the budget that the District of Columbia government submitted pursuant to section 442 of the District of Columbia Home Rule Act (D.C. Official Code, sec. 1–204.42).

SEC. 813. (a) Amounts appropriated in this Act as operating funds may be transferred to the District of Columbia's enterprise and capital funds and such amounts, once transferred, shall retain appropriation authority consistent with the provisions of this Act.

(b) The District of Columbia government is authorized to reprogram or transfer for operating expenses any local funds transferred or reprogrammed in this or the four prior fiscal years from operating funds to capital funds, and such amounts, once transferred or reprogrammed, shall retain appropriation authority consistent with the provisions of this Act.

(c) The District of Columbia government may not transfer or reprogram for operating expenses any funds derived from bonds, notes, or other obligations issued for capital projects.

SEC. 814. None of the Federal funds appropriated in this Act shall remain available for obligation beyond the current fiscal year, nor may any be transferred to other appropriations, unless expressly so provided herein.

SEC. 815. Except as otherwise specifically provided by law or under this Act, not to exceed 50 percent of unobligated balances remaining available at the end of fiscal year 2026 from appropriations of Federal funds made available for salaries and expenses for fiscal year 2026 in this Act, shall remain available through September 30, 2027, for each such account for the purposes authorized: *Provided,* That a request shall be submitted to the Committees

H. R. 7148—339

on Appropriations of the House of Representatives and the Senate for approval prior to the expenditure of such funds: *Provided further,* That these requests shall be made in compliance with reprogramming guidelines outlined in section 803 of this Act.

SEC. 816. (a)(1) During fiscal year 2027, during a period in which neither a District of Columbia continuing resolution or a regular District of Columbia appropriation bill is in effect, local funds are appropriated in the amount provided for any project or activity for which local funds are provided in the Act referred to in paragraph (2) (subject to any modifications enacted by the District of Columbia as of the beginning of the period during which this subsection is in effect) at the rate set forth by such Act.

(2) The Act referred to in this paragraph is the Act of the Council of the District of Columbia pursuant to which a proposed budget is approved for fiscal year 2027 which (subject to the requirements of the District of Columbia Home Rule Act) will constitute the local portion of the annual budget for the District of Columbia government for fiscal year 2027 for purposes of section 446 of the District of Columbia Home Rule Act (sec. 1–204.46, D.C. Official Code).

(b) Appropriations made by subsection (a) shall cease to be available—

(1) during any period in which a District of Columbia continuing resolution for fiscal year 2027 is in effect; or

(2) upon the enactment into law of the regular District of Columbia appropriation bill for fiscal year 2027.

(c) An appropriation made by subsection (a) is provided under the authority and conditions as provided under this Act and shall be available to the extent and in the manner that would be provided by this Act.

(d) An appropriation made by subsection (a) shall cover all obligations or expenditures incurred for such project or activity during the portion of fiscal year 2027 for which this section applies to such project or activity.

(e) This section shall not apply to a project or activity during any period of fiscal year 2027 if any other provision of law (other than an authorization of appropriations)—

(1) makes an appropriation, makes funds available, or grants authority for such project or activity to continue for such period; or

(2) specifically provides that no appropriation shall be made, no funds shall be made available, or no authority shall be granted for such project or activity to continue for such period.

(f) Nothing in this section shall be construed to affect obligations of the government of the District of Columbia mandated by other law.

SEC. 817. (a) During fiscal year 2027, during a period in which a continuing resolution is in effect, including a continuing resolution that is in effect through the end of the fiscal year, if the continuing resolution does not include a provision that, by specific and explicit reference to the District of Columbia, establishes a specific and separately identified appropriation for the District of Columbia, the District of Columbia is appropriated and may expend local funds in the amounts set forth under the heading "District of Columbia—District of Columbia Funds" in the Act referred to in subsection (b) (subject to any modifications enacted by the District

H. R. 7148—340

of Columbia as of the beginning of the period during which this section is in effect) for such programs and activities for which local funds are provided in such Act at the rates set forth by such Act.

(b) The Act referred to in subsection (a) is the Act of the Council of the District of Columbia pursuant to which a proposed budget is approved for fiscal year 2027 which (subject to the requirements of the District of Columbia Home Rule Act) will constitute the local portion of the annual budget for the District of Columbia government for fiscal year 2027 for purposes of section 446 of the District of Columbia Home Rule Act (sec. 1–204.46, D.C. Official Code).

(c) Amounts appropriated by subsection (a) are provided under the authority and conditions as provided under this Act and shall be available to the extent and in the manner that would be provided by this Act.

SEC. 818. (a) Section 244 of the Revised Statutes of the United States relating to the District of Columbia (sec. 9–1201.03, D.C. Official Code) does not apply with respect to any railroads installed pursuant to the Long Bridge Project.

(b) In this section, the term "Long Bridge Project" means the project carried out by the District of Columbia and the Commonwealth of Virginia to construct a new Long Bridge adjacent to the existing Long Bridge over the Potomac River, including related infrastructure and other related projects, to expand commuter and regional passenger rail service and to provide bike and pedestrian access crossings over the Potomac River.

SEC. 819. Not later than 45 days after the last day of each quarter, each Federal and District government agency appropriated Federal funds in this Act shall submit to the Committees on Appropriations of the House of Representatives and the Senate a quarterly budget report that includes total obligations of the Agency for that quarter for each Federal funds appropriation provided in this Act, by the source year of the appropriation.

SEC. 820. The District of Columbia College Access Act of 1999 (sec. 38–2701 et seq., D.C. Official Code), is amended—

(1) in section 3—

(A) in subsection (a)(2)(A), by striking "$10,000" and inserting "$15,000";

(B) in subsection (a)(2)(B), by striking "$50,000" and inserting "$75,000"; and

(C) in subsection (b)(1)—

(i) in subparagraph (A), by striking "; and" and inserting a semicolon;

(ii) by redesignating subparagraph (B) as subparagraph (C);

(iii) by inserting after subparagraph (A) the following new subparagraph: "(B) after making reductions under subparagraph (A), ratably reduce the amount of the tuition and fee payment of each eligible student who receives more than $10,000 for the award year; and"; and

(iv) in subparagraph (C), as so redesignated, by striking "subparagraph (A)" and inserting "subparagraph (B)"; and

(2) in section 5—

H. R. 7148—341

(A) in subsection (a)(2)(A), by striking "$2,500" and inserting "$3,750";

(B) in subsection (a)(2)(B), by striking "$12,500" and inserting "$18,750"; and

(C) in subsection (b)(1)—

(i) in subparagraph (A), by striking "; and" and inserting a semicolon;

(ii) by redesignating subparagraph (B) as subparagraph (C);

(iii) by inserting after subparagraph (A) the following new subparagraph: "(B) after making reductions under subparagraph (A), ratably reduce the amount of the tuition and fee payment of each eligible student who receives more than $2,500 for the award year; and"; and

(iv) in subparagraph (C), as so redesignated, by striking "subparagraph (A)" and inserting "subparagraph (B)".

SEC. 821. Except as expressly provided otherwise, any reference to "this Act" contained in this title or in title IV shall be treated as referring only to the provisions of this title or of title IV.

This division may be cited as the "Financial Services and General Government Appropriations Act, 2026".

## DIVISION F—NATIONAL SECURITY, DEPARTMENT OF STATE, AND RELATED PROGRAMS APPROPRIATIONS ACT, 2026

### TITLE I

### DEPARTMENT OF STATE AND RELATED PROGRAMS

### DEPARTMENT OF STATE

#### ADMINISTRATION OF FOREIGN AFFAIRS

##### DIPLOMATIC PROGRAMS

For necessary expenses of the Department of State and the Foreign Service not otherwise provided for, $9,358,236,000, of which $839,910,000 may remain available until September 30, 2027, and of which up to $3,758,836,000 may remain available until expended for Worldwide Security Protection: *Provided,* That funds made available under this heading shall be allocated in accordance with paragraphs (1) through (4), as follows:

(1) HUMAN RESOURCES.—For necessary expenses for training, human resources management, and salaries, including employment without regard to civil service and classification laws of persons on a temporary basis (not to exceed $700,000), as authorized by section 801 of the United States Information and Educational Exchange Act of 1948 (62 Stat. 11; Chapter 36), $3,987,233,000, of which up to $724,204,000 is for Worldwide Security Protection.

(2) OVERSEAS PROGRAMS.—For necessary expenses for the regional bureaus of the Department of State and overseas activities as authorized by law, $1,437,707,000.

(3) DIPLOMATIC POLICY AND SUPPORT.—For necessary expenses for the functional bureaus of the Department of State,

including representation to certain international organizations in which the United States participates pursuant to treaties ratified pursuant to the advice and consent of the Senate or specific Acts of Congress, general administration, and arms control, nonproliferation, and disarmament activities as authorized, $871,645,000.

(4) SECURITY PROGRAMS.—For necessary expenses for security activities, $3,061,651,000, of which up to $3,034,632,000 is for Worldwide Security Protection.

(5) REPROGRAMMING.—Notwithstanding any other provision of this Act, funds may be reprogrammed within and between paragraphs (1) through (4) under this heading subject to section 7015 of this Act.

### CONSULAR AND BORDER SECURITY PROGRAMS

Of the amounts deposited in the Consular and Border Security Programs account in this or any prior fiscal year pursuant to section 7069(e) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2022 (division K of Public Law 117–103), $513,000,000 shall be available until expended for the purposes of such account, including to reduce passport backlogs and reduce visa wait times: *Provided,* That the Secretary of State may by regulation authorize State officials or the United States Postal Service to collect and retain the execution fee for each application for a passport accepted by such officials or by that Service.

### CAPITAL INVESTMENT FUND

For necessary expenses of the Capital Investment Fund, as authorized, $399,700,000, to remain available until expended.

### OFFICE OF INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General of the Department of State as established by section 402(a)(1) of title 5, United States Code, $135,550,000, of which $20,333,000 may remain available until September 30, 2027: *Provided,* That of the funds appropriated under this heading, up to $6,000,000 may remain available until September 30, 2026 for the Special Inspector General for Afghanistan Reconstruction: *Provided further,* That funds appropriated under this heading are made available notwithstanding section 209(a)(1) of the Foreign Service Act of 1980 (22 U.S.C. 3929(a)(1)), as it relates to post inspections.

### EDUCATIONAL AND CULTURAL EXCHANGE PROGRAMS

For necessary expenses of educational and cultural exchange programs, as authorized, $667,000,000, to remain available until expended, of which not less than $273,410,000 shall be for the Fulbright Program, not less than $16,150,000 shall be for the Benjamin Gilman International Scholarships Program, not less than $99,750,000 shall be for the International Visitor Leadership Program, and not less than $35,630,000 shall be for the Young Leaders Initiatives: *Provided,* That fees or other payments received from, or in connection with, English teaching, educational advising and counseling programs, and exchange visitor programs as authorized

H. R. 7148—343

may be credited to this account, to remain available until expended: *Provided further,* That a portion of the Fulbright awards from the Eurasia and Central Asia regions shall be designated as Edmund S. Muskie Fellowships, following consultation with the Committees on Appropriations: *Provided further,* That funds appropriated under this heading that are made available for the Benjamin Gilman International Scholarships Program shall also be made available for the John S. McCain Scholars Program, pursuant to section 7075 of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2019 (division F of Public Law 116–6): *Provided further,* That not later than 30 days after the date of enactment of this Act, the Secretary of State shall consult with the Committees on Appropriations on the allocation of funds made available under this heading by program, project, and activity: *Provided further,* That any substantive modifications from the prior fiscal year to programs funded under this heading in this Act, including program consolidation and closures, changes to eligibility criteria and geographic scope, and implementing partners, shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations: *Provided further,* That funds appropriated under this heading shall be apportioned to the Department of State not later than 60 days after the date of enactment of this Act.

### REPRESENTATION EXPENSES

For representation expenses as authorized, $10,000,000.

### PROTECTION OF FOREIGN MISSIONS AND OFFICIALS

For necessary expenses, not otherwise provided, to enable the Secretary of State to provide for extraordinary protective services, as authorized, $30,890,000, to remain available until September 30, 2027.

### EMBASSY SECURITY, CONSTRUCTION, AND MAINTENANCE

For necessary expenses for carrying out the Foreign Service Buildings Act of 1926 (22 U.S.C. 292 et seq.), preserving, maintaining, repairing, and planning for real property that are owned or leased by the Department of State, and renovating, in addition to funds otherwise available, the Harry S Truman Building, $812,836,000, to remain available until September 30, 2030, of which not to exceed $25,000 may be used for overseas representation expenses as authorized: *Provided,* That none of the funds appropriated in this paragraph shall be available for acquisition of furniture, furnishings, or generators for other departments and agencies of the United States Government.

In addition, for the costs of worldwide security upgrades, acquisition, and construction as authorized, $1,199,856,000, to remain available until expended.

### EMERGENCIES IN THE DIPLOMATIC AND CONSULAR SERVICE

For necessary expenses to enable the Secretary of State to meet unforeseen emergencies arising in the Diplomatic and Consular Service, as authorized, $8,885,000, to remain available until expended, of which not to exceed $1,000,000 may be transferred

H. R. 7148—344

to, and merged with, funds appropriated by this Act under the heading "Repatriation Loans Program Account".

REPATRIATION LOANS PROGRAM ACCOUNT

For the cost of direct loans, $2,550,000, as authorized: *Provided,* That such costs, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further,* That such funds are available to subsidize gross obligations for the principal amount of direct loans not to exceed $5,520,137.

PAYMENT TO THE AMERICAN INSTITUTE IN TAIWAN

For necessary expenses to carry out the Taiwan Relations Act (Public Law 96–8), $35,964,000.

INTERNATIONAL CENTER, WASHINGTON, DISTRICT OF COLUMBIA

Not to exceed $1,917,178 shall be derived from fees collected from other executive agencies for lease or use of facilities at the International Center in accordance with section 4 of the International Center Act (Public Law 90–553), and, in addition, as authorized by section 5 of such Act, $745,000, to be derived from the reserve authorized by such section, to be used for the purposes set out in that section.

PAYMENT TO THE FOREIGN SERVICE RETIREMENT AND DISABILITY FUND

For payment to the Foreign Service Retirement and Disability Fund, as authorized, $60,000,000.

INTERNATIONAL ORGANIZATIONS

CONTRIBUTIONS TO INTERNATIONAL ORGANIZATIONS

For necessary expenses, not otherwise provided for, to meet annual obligations of membership in international multilateral organizations, pursuant to treaties ratified pursuant to the advice and consent of the Senate, conventions, or specific Acts of Congress, $1,389,152,000, of which $96,240,000 may remain available until September 30, 2027: *Provided,* That the Secretary of State shall, at the time of the submission of the President's budget to Congress under section 1105(a) of title 31, United States Code, transmit to the Committees on Appropriations the most recent biennial budget prepared by the United Nations for the operations of the United Nations: *Provided further,* That the Secretary of State shall notify the Committees on Appropriations at least 15 days in advance (or in an emergency, as far in advance as is practicable) of any United Nations action to increase funding for any United Nations program without identifying an offsetting decrease elsewhere in the United Nations budget: *Provided further,* That any payment of arrearages under this heading shall be directed to activities that are mutually agreed upon by the United States and the respective international organization and shall be subject to the regular notification procedures of the Committees on Appropriations: *Provided further,* That none of the funds appropriated under this

H. R. 7148—345

heading shall be available for a United States contribution to an international organization for the United States share of interest costs made known to the United States Government by such organization for loans incurred on or after October 1, 1984, through external borrowings.

CONTRIBUTIONS FOR INTERNATIONAL PEACEKEEPING ACTIVITIES

For necessary expenses to pay assessed and other expenses of international peacekeeping activities directed to the maintenance or restoration of international peace and security, $1,230,667,000, of which $615,334,000 may remain available until September 30, 2027: *Provided,* That none of the funds made available by this Act shall be obligated or expended for any new or expanded United Nations peacekeeping mission unless, at least 15 days in advance of voting for such mission in the United Nations Security Council (or in an emergency as far in advance as is practicable), the Committees on Appropriations are notified of: (1) the estimated cost and duration of the mission, the objectives of the mission, the national interest that will be served, and the exit strategy; and (2) the sources of funds, including any reprogrammings or transfers, that will be used to pay the cost of the new or expanded mission, and the estimated cost in future fiscal years: *Provided further,* That none of the funds appropriated under this heading may be made available for obligation unless the Secretary of State certifies and reports to the Committees on Appropriations on a peacekeeping mission-by-mission basis that the United Nations is implementing effective policies and procedures to prevent United Nations employees, contractor personnel, and peacekeeping troops serving in such mission from trafficking in persons, exploiting victims of trafficking, or committing acts of sexual exploitation and abuse or other violations of human rights, and to hold accountable individuals who engage in such acts while participating in such mission, including prosecution in their home countries and making information about such prosecutions publicly available on the website of the United Nations: *Provided further,* That the Secretary of State shall work with the United Nations and foreign governments contributing peacekeeping troops to implement effective vetting procedures to ensure that such troops have not violated human rights: *Provided further,* That funds shall be available for peace-keeping expenses unless the Secretary of State determines that United States manufacturers and suppliers are not being given opportunities to provide equipment, services, and material for United Nations peacekeeping activities equal to those being given to foreign manufacturers and suppliers: *Provided further,* That none of the funds appropriated or otherwise made available under this heading may be used for any United Nations peacekeeping mission that will involve United States Armed Forces under the command or operational control of a foreign national, unless the President's military advisors have submitted to the President a recommendation that such involvement is in the national interest of the United States and the President has submitted to Congress such a recommendation: *Provided further,* That any payment of arrearages with funds appropriated by this Act shall be subject to the regular notification procedures of the Committees on Appropriations.

H. R. 7148—346

INTERNATIONAL COMMISSIONS

For necessary expenses, not otherwise provided for, to meet obligations of the United States arising under treaties, or specific Acts of Congress, as follows:

INTERNATIONAL BOUNDARY AND WATER COMMISSION, UNITED STATES AND MEXICO

For necessary expenses for the United States Section of the International Boundary and Water Commission, United States and Mexico, and to comply with laws applicable to the United States Section, including not to exceed $6,000 for representation expenses, as follows:

SALARIES AND EXPENSES

For salaries and expenses, not otherwise provided for, $67,300,000, of which $10,095,000 may remain available until September 30, 2027.

In addition, for expenses necessary to carry out paragraph (3) of section 5602(b) of the National Defense Authorization Act for Fiscal Year 2024 (Public Law 118–31), $12,500,000, to remain available until expended.

CONSTRUCTION

For detailed plan preparation and construction of authorized projects, $78,000,000, to remain available until expended, as authorized: *Provided,* That the operating plan required by section 7062(a) of this Act shall include, for each construction project, the expected scope, timeline, and total cost, including out-year cost estimates for construction and operations and maintenance requirements: *Provided further,* That of the funds appropriated under this heading in this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs for the United States Section, up to $5,000,000 may be transferred to, and merged with, funds appropriated under the heading "Salaries and Expenses" to carry out the purposes of the United States Section, which shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations: *Provided further,* That such transfer authority is in addition to any other transfer authority provided in this Act.

AMERICAN SECTIONS, INTERNATIONAL COMMISSIONS

For necessary expenses, not otherwise provided, for the International Joint Commission and the International Boundary Commission, United States and Canada, as authorized by treaties between the United States and Canada or Great Britain, and for grant programs of the North American Development Bank, including technical assistance grants and the Community Assistance Program, $18,204,000: *Provided,* That of the amount provided under this heading for the International Joint Commission, up to $1,250,000 may remain available until September 30, 2027, and up to $9,000 may be made available for representation expenses: *Provided further,* That of the amount provided under this heading

for the International Boundary Commission, up to $1,000 may be made available for representation expenses.

INTERNATIONAL FISHERIES COMMISSIONS

For necessary expenses for international fisheries commissions, not otherwise provided for, as authorized by law, $68,570,000: *Provided,* That the United States share of such expenses may be advanced to the respective commissions pursuant to section 3324 of title 31, United States Code.

RELATED AGENCY

UNITED STATES AGENCY FOR GLOBAL MEDIA

INTERNATIONAL BROADCASTING OPERATIONS

For necessary expenses to enable the United States Agency for Global Media (USAGM), as authorized, to carry out international communication activities, and to make and supervise grants for radio, Internet, and television broadcasting to the Middle East, $643,000,000: *Provided,* That in addition to amounts otherwise available for such purposes, up to $72,720,000 of the amount appropriated under this heading may remain available until expended for satellite transmissions, global network distribution, and Internet freedom programs: *Provided further,* That of the total amount appropriated under this heading, not to exceed $35,000 may be used for representation expenses, of which $10,000 may be used for such expenses within the United States as authorized, and not to exceed $30,000 may be used for representation expenses of Radio Free Europe/Radio Liberty: *Provided further,* That of the funds appropriated under this heading, not less than $30,000,000 shall be made available for the Office of Cuba Broadcasting (OCB): *Provided further,* That funds made available pursuant to the previous proviso shall be made available for medium- and short-wave broadcasting at not less than the fiscal year 2024 level and in a manner able to reach all provinces in Cuba with daily programming: *Provided further,* That funds appropriated under this heading shall be allocated in accordance with the table included under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That notwithstanding the previous proviso, funds may be reprogrammed within and between amounts designated in such table, subject to the regular notification procedures of the Committees on Appropriations, except that no such reprogramming may reduce a designated amount by more than 10 percent: *Provided further,* That if a subsequent Act of Congress results in a reorganization or restructuring of the programs or authorities funded under this heading such that the allocations set forth in such table can no longer be applied as written, such allocations shall be available for reprogramming among such programs or authorities, consistent with such Act, subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations: *Provided further,* That the USAGM Chief Executive Officer shall notify the Committees on Appropriations within 15 days of any determination by the USAGM that any of its broadcast entities, including its grantee organizations, provides an open platform for international terrorists or those who support international terrorism:

H. R. 7148—348

*Provided further,* That in addition to funds made available under this heading, and notwithstanding any other provision of law, up to $5,000,000 in receipts from advertising and revenue from business ventures, up to $500,000 in receipts from cooperating international organizations, and up to $1,000,000 in receipts from privatization efforts of the Voice of America and the International Broadcasting Bureau, shall remain available until expended for carrying out authorized purposes: *Provided further,* That significant modifications to USAGM broadcast hours previously justified to Congress, including changes to transmission platforms (shortwave, medium wave, satellite, Internet, and television), for all USAGM language services shall be subject to the regular notification procedures of the Committees on Appropriations.

BROADCASTING CAPITAL IMPROVEMENTS

For the purchase, rent, construction, repair, preservation, and improvement of facilities for radio, television, and digital transmission and reception; the purchase, rent, and installation of necessary equipment for radio, television, and digital transmission and reception, including to Cuba, as authorized; and physical security worldwide, in addition to amounts otherwise available for such purposes, $9,700,000, to remain available until expended, as authorized.

RELATED PROGRAMS

THE ASIA FOUNDATION

For a grant to The Asia Foundation, as authorized by The Asia Foundation Act (22 U.S.C. 4402), $20,000,000, to remain available until expended: *Provided,* That funds appropriated under this heading for such grant shall be apportioned to the Foundation not later than 60 days after the date of enactment of this Act.

UNITED STATES INSTITUTE OF PEACE

For necessary expenses of the United States Institute of Peace, as authorized by the United States Institute of Peace Act (22 U.S.C. 4601 et seq.), $20,000,000, to remain available until September 30, 2027, which shall not be used for construction activities.

CENTER FOR MIDDLE EASTERN-WESTERN DIALOGUE TRUST FUND

For necessary expenses of the Center for Middle Eastern-Western Dialogue Trust Fund, as authorized by section 633 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 2004 (22 U.S.C. 2078), the total amount of the interest and earnings accruing to such Fund on or before September 30, 2026, to remain available until expended.

EISENHOWER EXCHANGE FELLOWSHIP PROGRAM

For necessary expenses of Eisenhower Exchange Fellowships, Incorporated, as authorized by sections 4 and 5 of the Eisenhower Exchange Fellowship Act of 1990 (20 U.S.C. 5204–5205), all interest

and earnings accruing to the Eisenhower Exchange Fellowship Program Trust Fund on or before September 30, 2026, to remain available until expended: *Provided,* That none of the funds appropriated herein shall be used to pay any salary or other compensation, or to enter into any contract providing for the payment thereof, in excess of the rate authorized by section 5376 of title 5, United States Code; or for purposes which are not in accordance with section 200 of title 2 of the Code of Federal Regulations, including the restrictions on compensation for personal services.

### ISRAELI ARAB SCHOLARSHIP PROGRAM

For necessary expenses of the Israeli Arab Scholarship Program, as authorized by section 214 of the Foreign Relations Authorization Act, Fiscal Years 1992 and 1993 (22 U.S.C. 2452 note), all interest and earnings accruing to the Israeli Arab Scholarship Fund on or before September 30, 2026, to remain available until expended.

### EAST-WEST CENTER

To enable the Secretary of State to provide for carrying out the provisions of the Center for Cultural and Technical Interchange Between East and West Act of 1960, by grant to the Center for Cultural and Technical Interchange Between East and West in the State of Hawaii, $22,000,000: *Provided,* That funds appropriated under this heading for such grant shall be apportioned to the Center not later than 60 days after the date of enactment of this Act.

### NATIONAL ENDOWMENT FOR DEMOCRACY

For grants made by the Department of State to the National Endowment for Democracy, as authorized by the National Endowment for Democracy Act (22 U.S.C. 4412), $315,000,000, to remain available until expended, of which $210,316,000 shall be allocated in the traditional and customary manner, including for the core institutes, and $104,684,000 shall be for democracy programs: *Provided,* That the requirements of section 7062(a) of this Act shall not apply to funds made available under this heading: *Provided further,* That funds appropriated under this heading shall be apportioned to the Endowment not later than 60 days after the date of enactment of this Act.

## OTHER COMMISSIONS

### COMMISSION FOR THE PRESERVATION OF AMERICA'S HERITAGE ABROAD

#### SALARIES AND EXPENSES

For necessary expenses for the Commission for the Preservation of America's Heritage Abroad, as authorized by chapter 3123 of title 54, United States Code, $770,000, of which $116,000 may remain available until September 30, 2027: *Provided,* That the Commission may procure temporary, intermittent, and other services notwithstanding paragraph (3) of section 312304(b) of such chapter: *Provided further,* That such authority shall terminate on

H. R. 7148—350

October 1, 2026: *Provided further,* That the Commission shall notify the Committees on Appropriations prior to exercising such authority.

## UNITED STATES COMMISSION ON INTERNATIONAL RELIGIOUS FREEDOM

### SALARIES AND EXPENSES

For necessary expenses for the United States Commission on International Religious Freedom, as authorized by title II of the International Religious Freedom Act of 1998 (22 U.S.C. 6431 et seq.), $4,000,000, to remain available until September 30, 2027, including not more than $4,000 for representation expenses.

## COMMISSION ON SECURITY AND COOPERATION IN EUROPE

### SALARIES AND EXPENSES

For necessary expenses of the Commission on Security and Cooperation in Europe, as authorized by Public Law 94–304 (22 U.S.C. 3001 et seq.), $3,059,000, including not more than $6,000 for representation expenses, to remain available until September 30, 2027.

## CONGRESSIONAL-EXECUTIVE COMMISSION ON THE PEOPLE'S REPUBLIC OF CHINA

### SALARIES AND EXPENSES

For necessary expenses of the Congressional-Executive Commission on the People's Republic of China, as authorized by title III of the U.S.-China Relations Act of 2000 (22 U.S.C. 6911 et seq.), $2,300,000, including not more than $3,000 for representation expenses, to remain available until September 30, 2027.

## UNITED STATES-CHINA ECONOMIC AND SECURITY REVIEW COMMISSION

### SALARIES AND EXPENSES

For necessary expenses of the United States-China Economic and Security Review Commission, as authorized by section 1238 of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001 (22 U.S.C. 7002), $4,000,000, including not more than $4,000 for representation expenses, to remain available until September 30, 2027: *Provided,* That the authorities, requirements, limitations, and conditions contained in the second through fifth provisos under this heading in the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2010 (division F of Public Law 111–117) shall continue in effect during fiscal year 2026 and shall apply to funds appropriated under this heading.

HOUSE DEMOCRACY PARTNERSHIP

SALARIES AND EXPENSES

For necessary expenses of the House Democracy Partnership established pursuant to House Resolution 24, One Hundred Tenth Congress, as carried forward by House Resolution 5, One Hundred Nineteenth Congress, $2,300,000: *Provided,* That funds appropriated under this heading shall be apportioned to the House Democracy Partnership not later than 60 days after the date of enactment of this Act.

TITLE II

ADMINISTRATION OF ASSISTANCE

FUNDS APPROPRIATED TO THE PRESIDENT

OPERATING EXPENSES

For necessary expenses to carry out the provisions of section 667 of the Foreign Assistance Act of 1961, $111,988,000.

OFFICE OF INSPECTOR GENERAL

For the necessary expenses of the Office of Inspector General with continued oversight jurisdiction for foreign assistance programs administered by the agency primarily responsible for administering part I of the Foreign Assistance Act of 1961 (22 U.S.C. 2151 et seq.) and whose oversight activities were funded under title II of prior Acts making appropriations for the Department of State, foreign operations, and related programs, $62,500,000, of which $9,375,000 may remain available until September 30, 2027, in accordance with section 409 of title 5, United States Code, section 614(f) of the Millennium Challenge Act of 2003 (22 U.S.C. 7713(f)) and section 8A(a) of the Inspector General Act of 1978 (as enacted into law by section 1000(a) of Public Law 106–113), as well as section 401 of the Inter-American Foundation Act (22 U.S.C. 290f), and section 505 of the African Development Foundation Act (22 U.S.C. 290h).

TITLE III

BILATERAL ECONOMIC ASSISTANCE

FUNDS APPROPRIATED TO THE PRESIDENT

For necessary expenses to enable the President to carry out the provisions of the Foreign Assistance Act of 1961, and for other purposes, as follows:

GLOBAL HEALTH PROGRAMS

For necessary expenses to carry out the provisions of chapters 1 and 10 of part I of the Foreign Assistance Act of 1961, for global health activities, in addition to funds otherwise available for such purposes, $3,531,975,000, to remain available until September 30, 2027, and which shall be apportioned directly to the

H. R. 7148—352

Department of State: *Provided,* That this amount shall be made available for training, equipment, and technical assistance to build the capacity of public health institutions and organizations in developing countries, and for such activities as: (1) child survival and maternal health programs; (2) immunization and oral rehydration programs; (3) other health, nutrition, water and sanitation programs which directly address the needs of mothers and children, and related education programs; (4) assistance for children displaced or orphaned by causes other than AIDS; (5) programs for the prevention, treatment, control of, and research on HIV/AIDS, tuberculosis, polio, malaria, and other infectious diseases including neglected tropical diseases, and for assistance to communities severely affected by HIV/AIDS, including children infected or affected by AIDS; (6) disaster preparedness training for health crises; (7) programs to prevent, prepare for, and respond to unanticipated and emerging global health threats, including zoonotic diseases; and (8) family planning/reproductive health: *Provided further,* That funds appropriated under this paragraph may be made available for United States contributions to The GAVI Alliance and to a multilateral vaccine development partnership to support epidemic preparedness: *Provided further*, That funds made available pursuant to the previous proviso shall remain available until September 30, 2026: *Provided further,* That none of the funds made available in this Act nor any unobligated balances from prior appropriations Acts may be made available to any organization or program which, as determined by the President of the United States, supports or participates in the management of a program of coercive abortion or involuntary sterilization: *Provided further,* That any determination made under the previous proviso must be made not later than 6 months after the date of enactment of this Act, and must be accompanied by the evidence and criteria utilized to make the determination: *Provided further,* That none of the funds made available under this Act may be used to pay for the performance of abortion as a method of family planning or to motivate or coerce any person to practice abortions: *Provided further,* That nothing in this paragraph shall be construed to alter any existing statutory prohibitions against abortion under section 104 of the Foreign Assistance Act of 1961: *Provided further,* That none of the funds made available under this Act may be used to lobby for or against abortion: *Provided further,* That in order to reduce reliance on abortion in developing nations, funds shall be available only to voluntary family planning projects which offer, either directly or through referral to, or information about access to, a broad range of family planning methods and services, and that any such voluntary family planning project shall meet the following requirements: (1) service providers or referral agents in the project shall not implement or be subject to quotas, or other numerical targets, of total number of births, number of family planning acceptors, or acceptors of a particular method of family planning (this provision shall not be construed to include the use of quantitative estimates or indicators for budgeting and planning purposes); (2) the project shall not include payment of incentives, bribes, gratuities, or financial reward to: (A) an individual in exchange for becoming a family planning acceptor; or (B) program personnel for achieving a numerical target or quota of total number of births, number of family planning acceptors, or acceptors of a particular method of family planning; (3) the project shall not

deny any right or benefit, including the right of access to participate in any program of general welfare or the right of access to health care, as a consequence of any individual's decision not to accept family planning services; (4) the project shall provide family planning acceptors comprehensible information on the health benefits and risks of the method chosen, including those conditions that might render the use of the method inadvisable and those adverse side effects known to be consequent to the use of the method; and (5) the project shall ensure that experimental contraceptive drugs and devices and medical procedures are provided only in the context of a scientific study in which participants are advised of potential risks and benefits; and, not less than 60 days after the date on which the Secretary of State determines that there has been a violation of the requirements contained in paragraph (1), (2), (3), or (5) of this proviso, or a pattern or practice of violations of the requirements contained in paragraph (4) of this proviso, the Secretary shall submit to the Committees on Appropriations a report containing a description of such violation and the corrective action taken by the Department: *Provided further,* That in awarding grants for natural family planning under section 104 of the Foreign Assistance Act of 1961 no applicant shall be discriminated against because of such applicant's religious or conscientious commitment to offer only natural family planning; and, additionally, all such applicants shall comply with the requirements of the previous proviso: *Provided further,* That for purposes of this Act or any other Act authorizing or appropriating funds for the Department of State, foreign operations, and related programs, the term "motivate", as it relates to family planning assistance, shall not be construed to prohibit the provision, consistent with local law, of information or counseling about all pregnancy options: *Provided further,* That information provided about the use of condoms as part of projects or activities that are funded from amounts appropriated by this Act shall be medically accurate and shall include the public health benefits and failure rates of such use.

In addition, for necessary expenses to carry out the provisions of the Foreign Assistance Act of 1961 for the prevention, treatment, and control of, and research on, HIV/AIDS, $5,883,800,000, to remain available until September 30, 2030, which shall be apportioned directly to the Department of State: *Provided,* That funds appropriated under this paragraph may be made available, notwithstanding any other provision of law, except for the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 (Public Law 108–25), for a United States contribution to the Global Fund to Fight AIDS, Tuberculosis and Malaria (Global Fund): *Provided further,* That the amount of such contribution shall be $1,250,000,000: *Provided further,* That of the funds appropriated under this paragraph, up to $22,000,000 may be made available, in addition to amounts otherwise available for such purposes, for administrative expenses of the United States Global AIDS Coordinator.

### INTERNATIONAL HUMANITARIAN ASSISTANCE

For necessary expenses to enable the Secretary of State to carry out the provisions of section 491 of the Foreign Assistance Act of 1961 for international disaster relief, rehabilitation, and reconstruction assistance; section 2(a) and (b) of the Migration

and Refugee Assistance Act of 1962 (22 U.S.C. 2601), and other activities to meet refugee and migration needs; salaries and expenses of personnel and dependents as authorized by the Foreign Service Act of 1980 (22 U.S.C. 3901 et seq.); allowances as authorized by sections 5921 through 5925 of title 5, United States Code; purchase and hire of passenger motor vehicles; and services as authorized by section 3109 of title 5, United States Code, $5,400,000,000, to remain available until expended, of which not less than $6,500,000 shall be made available for refugees resettling in Israel: *Provided,* That consistent with section 491(d) of the Foreign Assistance Act of 1961, funds made available under this heading shall be prioritized to reach those most in need of relief and rehabilitation because of natural and manmade disasters: *Provided further,* That of the funds appropriated under this paragraph, not less than $2,970,000,000 shall be made available to carry out the provisions of section 491 of the Foreign Assistance Act of 1961: *Provided further,* That funds appropriated under this heading shall be apportioned to the Department of State not later than 60 days after the date of enactment of this Act: *Provided further,* That not later than 30 days after the date of enactment of this Act and at the start of each quarter thereafter until September 30, 2027, the Secretary of State shall submit a spend plan to the Committees on Appropriations detailing the planned uses of funds, obligations, and disbursements as described under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

UNITED STATES EMERGENCY REFUGEE AND MIGRATION ASSISTANCE FUND

For necessary expenses to carry out the provisions of section 2(c) of the Migration and Refugee Assistance Act of 1962 (22 U.S.C. 2601(c)), $100,000,000, to remain available until expended: *Provided,* That amounts made available by this Act that are in excess of the limitation contained in paragraph (2) of such section shall be transferred to, and merged with, funds made available by this Act under the heading "International Humanitarian Assistance".

NATIONAL SECURITY INVESTMENT PROGRAMS

For necessary expenses to carry out the provisions of sections 103, 105, 106, 214, and sections 251 through 255, and chapter 10 of part I and chapter 4 of part II of the Foreign Assistance Act of 1961, the FREEDOM Support Act (Public Law 102–511), and the Support for East European Democracy (SEED) Act of 1989 (Public Law 101–179), $6,766,874,000, of which not less than fifteen percent of amounts made available under this heading shall be made available for programs in Africa, to remain available until September 30, 2027: *Provided,* That funds appropriated under this heading shall be apportioned to the Department of State not later than 60 days after the date of enactment of this Act.

DEMOCRACY FUND

For necessary expenses to carry out the provisions of the Foreign Assistance Act of 1961 for the promotion of democracy globally, including to carry out the purposes of section 502(b)(3) and (5) of Public Law 98–164 (22 U.S.C. 4411), $205,200,000, to remain

available until September 30, 2027, which shall be made available for the Human Rights and Democracy Fund of the Bureau of Democracy, Human Rights, and Labor, Department of State: *Provided,* That funds appropriated under this heading that are made available to the National Endowment for Democracy and its core institutes are in addition to amounts otherwise made available by this Act for such purposes: *Provided further,* That the Assistant Secretary for Democracy, Human Rights, and Labor, Department of State, shall consult with the Committees on Appropriations prior to the initial obligation of funds appropriated under this paragraph: *Provided further,* That funds appropriated under this heading shall be apportioned to the Department of State not later than 60 days after the date of enactment of this Act.

INDEPENDENT AGENCIES

PEACE CORPS

(INCLUDING TRANSFER OF FUNDS)

For necessary expenses to carry out the provisions of the Peace Corps Act (22 U.S.C. 2501 et seq.), including the purchase of not to exceed five passenger motor vehicles for administrative purposes for use outside of the United States, $410,500,000, of which $7,800,000 is for the Office of Inspector General, to remain available until September 30, 2027: *Provided,* That the Director of the Peace Corps may transfer to the Foreign Currency Fluctuations Account, as authorized by section 16 of the Peace Corps Act (22 U.S.C. 2515), an amount not to exceed $5,000,000: *Provided further,* That funds transferred pursuant to the previous proviso may not be derived from amounts made available for Peace Corps overseas operations: *Provided further,* That of the funds appropriated under this heading, not to exceed $104,000 may be available for representation expenses, of which not to exceed $4,000 may be made available for entertainment expenses: *Provided further,* That in addition to the requirements under section 7015(a) of this Act, the Peace Corps shall consult with the Committees on Appropriations prior to any decision to open, close, or suspend a domestic or overseas office or a country program unless there is a substantial risk to volunteers or other Peace Corps personnel: *Provided further,* That none of the funds appropriated under this heading shall be used to pay for abortions: *Provided further,* That notwithstanding the previous proviso, section 614 of division E of Public Law 113–76 shall apply to funds appropriated under this heading.

MILLENNIUM CHALLENGE CORPORATION

For necessary expenses to carry out the provisions of the Millennium Challenge Act of 2003 (22 U.S.C. 7701 et seq.) (MCA), $830,000,000, to remain available until expended: *Provided,* That section 605(e) of the MCA (22 U.S.C. 7704(e)) shall apply to funds appropriated under this heading: *Provided further,* That funds appropriated under this heading may be made available for a Millennium Challenge Compact entered into pursuant to section 609 of the MCA (22 U.S.C. 7708) only if such Compact obligates, or contains a commitment to obligate subject to the availability of funds and the mutual agreement of the parties to the Compact to proceed, the entire amount of the United States Government

H. R. 7148—356

funding anticipated for the duration of the Compact: *Provided further,* That of the funds appropriated under this heading, not to exceed $100,000 may be available for representation and entertainment expenses, of which not to exceed $5,000 may be available for entertainment expenses: *Provided further,* That funds appropriated under this heading shall be apportioned to the Corporation not later than 60 days after the date of enactment of this Act: *Provided further,* That notwithstanding the limitations in sections 609(i) and 609(j) of the Millennium Challenge Act of 2003 (22 U.S.C. 7708(i), 7708(j)), the Millennium Challenge Corporation may, subject to the availability of funds, extend compacts in Indonesia, Kosovo, Nepal, and Senegal, for up to one additional year: *Provided further,* That the Corporation shall notify the appropriate congressional committees prior to providing any such extension.

INTER-AMERICAN FOUNDATION

For necessary expenses to carry out the functions of the Inter-American Foundation in accordance with the provisions of section 401 of the Foreign Assistance Act of 1969, $29,000,000, to remain available until September 30, 2027: *Provided,* That of the funds appropriated under this heading, not to exceed $2,000 may be available for representation expenses.

UNITED STATES AFRICAN DEVELOPMENT FOUNDATION

For necessary expenses to carry out the African Development Foundation Act (title V of Public Law 96–533; 22 U.S.C. 290h et seq.), $12,000,000, to remain available until September 30, 2027, of which not to exceed $2,000 may be available for representation expenses: *Provided,* That funds made available to grantees may be invested pending expenditure for project purposes when authorized by the Board of Directors of the United States African Development Foundation (USADF): *Provided further,* That interest earned shall be used only for the purposes for which the grant was made: *Provided further,* That notwithstanding section 505(a)(2) of the African Development Foundation Act (22 U.S.C. 290h–3(a)(2)), in exceptional circumstances the Board of Directors of the USADF may waive the $250,000 limitation contained in that section with respect to a project and a project may exceed the limitation by up to 10 percent if the increase is due solely to foreign currency fluctuation: *Provided further,* That the USADF shall submit a report to the appropriate congressional committees after each time such waiver authority is exercised: *Provided further,* That the USADF may make rent or lease payments in advance from appropriations available for such purpose for offices, buildings, grounds, and quarters in Africa as may be necessary to carry out its functions: *Provided further,* That the USADF may maintain bank accounts outside the United States Treasury and retain any interest earned on such accounts, in furtherance of the purposes of the African Development Foundation Act: *Provided further,* That the USADF may not withdraw any appropriation from the Treasury prior to the need of spending such funds for program purposes.

UNITED STATES FOUNDATION FOR NATURAL SECURITY AND
COUNTERTERRORISM

For necessary expenses to carry out the purposes of section 5102 of the National Defense Authorization Act for Fiscal Year 2025 (22 U.S.C. 10602), $100,000,000, to remain available until expended.

DEPARTMENT OF THE TREASURY

INTERNATIONAL AFFAIRS TECHNICAL ASSISTANCE

For necessary expenses to carry out the provisions of section 129 of the Foreign Assistance Act of 1961, $30,000,000, to remain available until expended: *Provided,* That amounts made available under this heading may be made available to contract for services as described in section 129(d)(3)(A) of the Foreign Assistance Act of 1961, without regard to the location in which such services are performed.

DEBT RESTRUCTURING

For "Bilateral Economic Assistance—Department of the Treasury—Debt Restructuring" there is appropriated $52,000,000, to remain available until September 30, 2029, for the costs, as defined in section 502 of the Congressional Budget Act of 1974, of modifying loans and loan guarantees for, or credits extended to, such countries as the President may determine, including the costs of selling, reducing, or canceling amounts owed to the United States pursuant to multilateral debt restructurings, including Paris Club debt restructurings and the "Common Framework for Debt Treatments beyond the Debt Service Suspension Initiative": *Provided,* That such amounts may be used notwithstanding any other provision of law.

TITLE IV

INTERNATIONAL SECURITY ASSISTANCE

DEPARTMENT OF STATE

INTERNATIONAL NARCOTICS CONTROL AND LAW ENFORCEMENT

For necessary expenses to carry out section 481 of the Foreign Assistance Act of 1961, $1,400,000,000, to remain available until September 30, 2027: *Provided,* That the Department of State may use the authority of section 608 of the Foreign Assistance Act of 1961, without regard to its restrictions, to receive excess property from an agency of the United States Government for the purpose of providing such property to a foreign country or international organization under chapter 8 of part I of such Act, subject to the regular notification procedures of the Committees on Appropriations: *Provided further,* That section 482(b) of the Foreign Assistance Act of 1961 shall not apply to funds appropriated under this heading, except that any funds made available notwithstanding such section shall be subject to the regular notification procedures of the Committees on Appropriations: *Provided further,* That funds appropriated under this heading shall be made available to support

training and technical assistance for foreign law enforcement, corrections, judges, and other judicial authorities, utilizing regional partners: *Provided further,* That funds made available under this heading for Program Development and Support may be made available notwithstanding pre-obligation requirements contained in this Act, except for the notification requirements of section 7015: *Provided further,* That funds appropriated under this heading shall be apportioned to the Department of State not later than 60 days after the date of enactment of this Act.

NONPROLIFERATION, ANTI-TERRORISM, DEMINING AND RELATED PROGRAMS

For necessary expenses for nonproliferation, anti-terrorism, demining and related programs and activities, $870,000,000, to remain available until September 30, 2027, to carry out the provisions of chapter 8 of part II of the Foreign Assistance Act of 1961 for anti-terrorism assistance, chapter 9 of part II of the Foreign Assistance Act of 1961, section 504 of the FREEDOM Support Act (22 U.S.C. 5854), section 23 of the Arms Export Control Act (22 U.S.C. 2763), or the Foreign Assistance Act of 1961 for demining activities, the clearance of unexploded ordnance, the destruction of small arms, and related activities, notwithstanding any other provision of law, including activities implemented through non-governmental and international organizations, and section 301 of the Foreign Assistance Act of 1961 for a United States contribution to the Comprehensive Nuclear Test Ban Treaty Preparatory Commission, and for a voluntary contribution to the International Atomic Energy Agency (IAEA): *Provided,* That funds made available under this heading for the Nonproliferation and Disarmament Fund shall be made available, notwithstanding any other provision of law and subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations, to promote bilateral and multilateral activities relating to nonproliferation, disarmament, and weapons destruction, and shall remain available until expended: *Provided further,* That such funds may also be used for such countries other than the Independent States of the former Soviet Union and international organizations when it is in the national security interest of the United States to do so: *Provided further,* That funds appropriated under this heading may be made available for the IAEA unless the Secretary of State determines that Israel is being denied its right to participate in the activities of that Agency: *Provided further,* That funds made available for conventional weapons destruction programs, including demining and related activities, in addition to funds otherwise available for such purposes, may be used for administrative expenses related to the operation and management of such programs and activities, subject to the regular notification procedures of the Committees on Appropriations.

PEACEKEEPING OPERATIONS

For necessary expenses to carry out the provisions of section 551 of the Foreign Assistance Act of 1961, $335,458,000, to remain available until September 30, 2027: *Provided,* That funds appropriated under this heading may be used, notwithstanding section 660 of the Foreign Assistance Act of 1961, to provide assistance to enhance the capacity of foreign civilian security forces, including

gendarmes, to participate in peacekeeping operations: *Provided further,* That of the funds appropriated under this heading, not less than $32,000,000 shall be made available for a United States contribution to the Multinational Force and Observers mission in the Sinai: *Provided further,* That of the funds appropriated under this heading, up to $148,300,000 may be made available to pay assessed expenses of international peacekeeping activities under the same terms and conditions, as applicable, as funds appropriated by this Act under the heading "Contributions for International Peacekeeping Activities".

FUNDS APPROPRIATED TO THE PRESIDENT

INTERNATIONAL MILITARY EDUCATION AND TRAINING

For necessary expenses to carry out the provisions of section 541 of the Foreign Assistance Act of 1961, $119,152,000, to remain available until September 30, 2027: *Provided,* That the civilian personnel for whom military education and training may be provided under this heading may include civilians who are not members of a government whose participation would contribute to improved civil-military relations, civilian control of the military, or respect for human rights: *Provided further,* That of the funds appropriated under this heading, $3,500,000 shall remain available until expended to increase the participation of women in programs and activities funded under this heading, following consultation with the Committees on Appropriations: *Provided further,* That of the funds appropriated under this heading, not to exceed $50,000 may be available for entertainment expenses.

FOREIGN MILITARY FINANCING PROGRAM

For necessary expenses for grants to enable the President to carry out the provisions of section 23 of the Arms Export Control Act (22 U.S.C. 2763), $6,158,397,000: *Provided,* That to expedite the provision of assistance to foreign countries and international organizations, the Secretary of State, following consultation with the Committees on Appropriations and subject to the regular notification procedures of such Committees, may use the funds appropriated under this heading to procure defense articles and services to enhance the capacity of foreign security forces: *Provided further,* That funds appropriated or otherwise made available under this heading shall be nonrepayable notwithstanding any requirement in section 23 of the Arms Export Control Act: *Provided further,* That funds made available under this heading shall be obligated upon apportionment in accordance with paragraph (5)(C) of section 1501(a) of title 31, United States Code.

None of the funds made available under this heading shall be available to finance the procurement of defense articles, defense services, or design and construction services that are not sold by the United States Government under the Arms Export Control Act unless the foreign country proposing to make such procurement has first signed an agreement with the United States Government specifying the conditions under which such procurement may be financed with such funds: *Provided,* That all country and funding level increases in allocations shall be submitted through the regular notification procedures of section 7015 of this Act: *Provided further,*

That funds made available under this heading may be used, notwithstanding any other provision of law, for demining, the clearance of unexploded ordnance, and related activities, and may include activities implemented through nongovernmental and international organizations: *Provided further,* That a country that is a member of the North Atlantic Treaty Organization (NATO) or is a major non-NATO ally designated by section 517(b) of the Foreign Assistance Act of 1961 may utilize funds made available under this heading for procurement of defense articles, defense services, or design and construction services that are not sold by the United States Government under the Arms Export Control Act: *Provided further,* That funds appropriated under this heading shall be expended at the minimum rate necessary to make timely payment for defense articles and services: *Provided further,* That not more than $72,000,000 of the funds appropriated under this heading may be obligated for necessary expenses, including the purchase of passenger motor vehicles for replacement only for use outside of the United States, for the general costs of administering military assistance and sales, except that this limitation may be exceeded only through the regular notification procedures of the Committees on Appropriations: *Provided further,* That the Secretary of State may use funds made available under this heading pursuant to the previous proviso for the administrative and other operational costs of the Department of State related to military assistance and sales, assistance under section 551 of the Foreign Assistance Act of 1961, and Department of Defense security assistance programs, in addition to funds otherwise available for such purposes: *Provided further,* That up to $2,000,000 of the funds made available pursuant to the previous proviso may be used for direct hire personnel, except that this limitation may be exceeded by the Secretary of State following consultation with the Committees on Appropriations: *Provided further,* That of the funds made available under this heading for general costs of administering military assistance and sales, not to exceed $4,000 may be available for entertainment expenses and not to exceed $130,000 may be available for representation expenses: *Provided further,* That not more than $1,589,585,805 of funds realized pursuant to section 21(e)(1)(A) of the Arms Export Control Act (22 U.S.C. 2761(e)(1)(A)) may be obligated for expenses incurred by the Department of Defense during fiscal year 2026 pursuant to section 43(b) of the Arms Export Control Act (22 U.S.C. 2792(b)), except that this limitation may be exceeded only through the regular notification procedures of the Committees on Appropriations.

TITLE V

MULTILATERAL ASSISTANCE

FUNDS APPROPRIATED TO THE PRESIDENT

INTERNATIONAL ORGANIZATIONS AND PROGRAMS

For necessary expenses to carry out the provisions of section 301 of the Foreign Assistance Act of 1961, $339,000,000: *Provided,* That not later than 60 days after the date of enactment of this Act, the Secretary of State shall submit to the Committees on Appropriations a spend plan detailing the proposed allocation of funds under this heading and the entities to be funded: *Provided*

H. R. 7148—361

*further*, That such funds shall be subject to the regular notification procedures of such Committees.

INTERNATIONAL FINANCIAL INSTITUTIONS

GLOBAL ENVIRONMENT FACILITY

For payment to the International Bank for Reconstruction and Development as trustee for the Global Environment Facility by the Secretary of the Treasury, $150,200,000, to remain available until expended.

CONTRIBUTION TO THE INTERNATIONAL DEVELOPMENT ASSOCIATION

For payment to the International Development Association by the Secretary of the Treasury, $1,066,184,000, to remain available until expended.

CONTRIBUTION TO THE ASIAN DEVELOPMENT FUND

For payment to the Asian Development Bank's Asian Development Fund by the Secretary of the Treasury, $43,610,000, to remain available until expended.

CONTRIBUTION TO THE AFRICAN DEVELOPMENT BANK

For payment to the African Development Bank by the Secretary of the Treasury for the United States share of the paid-in portion of the increases in capital stock, $54,649,000, to remain available until expended.

LIMITATION ON CALLABLE CAPITAL SUBSCRIPTIONS

The United States Governor of the African Development Bank may subscribe without fiscal year limitation to the callable capital portion of the United States share of increases in capital stock in an amount not to exceed $8,656,174,624.

CONTRIBUTION TO THE EUROPEAN BANK FOR RECONSTRUCTION AND DEVELOPMENT

For payment to the European Bank for Reconstruction and Development by the Secretary of the Treasury for the United States share of the paid-in portion of the increases in capital stock, $87,500,000, to remain available until expended.

CONTRIBUTION TO THE INTERNATIONAL FUND FOR AGRICULTURAL DEVELOPMENT

For payment to the International Fund for Agricultural Development by the Secretary of the Treasury, $54,000,000, to remain available until expended.

TREASURY INTERNATIONAL ASSISTANCE PROGRAMS

For contributions by the Secretary of the Treasury to international financial institutions and trust funds administered by such institutions, in addition to amounts otherwise available for such

H. R. 7148—362

purposes, $75,000,000, to remain available until expended: *Provided,* That funds made available under this heading shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

TITLE VI

EXPORT AND INVESTMENT ASSISTANCE

EXPORT-IMPORT BANK OF THE UNITED STATES

INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General in carrying out the provisions of the Inspector General Act of 1978 (5 U.S.C. App.), $8,860,000, of which up to $1,329,000 may remain available until September 30, 2027.

PROGRAM ACCOUNT

The Export-Import Bank of the United States is authorized to make such expenditures within the limits of funds and borrowing authority available to such corporation, and in accordance with law, and to make such contracts and commitments without regard to fiscal year limitations, as provided by section 9104 of title 31, United States Code, as may be necessary in carrying out the program for the current fiscal year for such corporation: *Provided,* That none of the funds available during the current fiscal year may be used to make expenditures, contracts, or commitments for the export of nuclear equipment, fuel, or technology to any country, other than a nuclear-weapon state as defined in Article IX of the Treaty on the Non-Proliferation of Nuclear Weapons eligible to receive economic or military assistance under this Act, that has detonated a nuclear explosive after the date of enactment of this Act.

ADMINISTRATIVE EXPENSES

For administrative expenses to carry out the direct and guaranteed loan and insurance programs, including hire of passenger motor vehicles and services as authorized by section 3109 of title 5, United States Code, and not to exceed $30,000 for official reception and representation expenses for members of the Board of Directors, not to exceed $125,000,000, of which up to $18,750,000 may remain available until September 30, 2027: *Provided,* That the Export-Import Bank (the Bank) may accept, and use, payment or services provided by transaction participants for legal, financial, or technical services in connection with any transaction for which an application for a loan, guarantee or insurance commitment has been made: *Provided further,* That notwithstanding subsection (b) of section 117 of the Export Enhancement Act of 1992, subsection (a) of such section shall remain in effect until September 30, 2026: *Provided further,* That the Bank shall charge fees for necessary expenses (including special services performed on a contract or fee basis, but not including other personal services) in connection with the collection of moneys owed the Bank, repossession or sale of pledged collateral or other assets acquired by the Bank in satisfaction of moneys owed the Bank, or the investigation or appraisal

of any property, or the evaluation of the legal, financial, or technical aspects of any transaction for which an application for a loan, guarantee or insurance commitment has been made, or systems infrastructure directly supporting transactions: *Provided further,* That in addition to other funds appropriated for administrative expenses, such fees shall be credited to this account for such purposes, to remain available until expended.

### PROGRAM BUDGET APPROPRIATIONS

For the cost of direct loans, loan guarantees, insurance, and tied-aid grants as authorized by section 10 of the Export-Import Bank Act of 1945, as amended, not to exceed $20,000,000, to remain available until September 30, 2029: *Provided,* That such costs, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further,* That such funds shall remain available until September 30, 2041, for the disbursement of direct loans, loan guarantees, insurance and tied-aid grants obligated in fiscal years 2026 through 2029.

### RECEIPTS COLLECTED

Receipts collected pursuant to the Export-Import Bank Act of 1945 (Public Law 79–173) and the Federal Credit Reform Act of 1990, in an amount not to exceed the amount appropriated herein, shall be credited as offsetting collections to this account: *Provided,* That the sums herein appropriated from the General Fund shall be reduced on a dollar-for-dollar basis by such offsetting collections so as to result in a final fiscal year appropriation from the General Fund estimated at $0.

## UNITED STATES INTERNATIONAL DEVELOPMENT FINANCE CORPORATION

### INSPECTOR GENERAL

For necessary expenses of the Office of Inspector General in carrying out the provisions of the Inspector General Act of 1978 (5 U.S.C. App.), $7,200,000, to remain available until September 30, 2027.

### CORPORATE CAPITAL ACCOUNT

The United States International Development Finance Corporation (the Corporation) is authorized to make such expenditures and commitments within the limits of funds and borrowing authority available to the Corporation, and in accordance with the law, and to make such expenditures and commitments without regard to fiscal year limitations, as provided by section 9104 of title 31, United States Code, as may be necessary in carrying out the programs for the current fiscal year for the Corporation: *Provided,* That for necessary expenses of the activities described in subsections (b), (c), (e), (f), and (g) of section 1421 of the BUILD Act of 2018 (division F of Public Law 115–254) and for administrative expenses to carry out authorized activities described in section 1434(d) of such Act, $983,250,000: *Provided further,* That of the amount provided—

(1) $243,000,000 shall remain available until September 30, 2028, for administrative expenses to carry out authorized activities (including an amount for official reception and representation expenses which shall not exceed $25,000); and

(2) $740,250,000 shall remain available until September 30, 2028, for the activities described in subsections (b), (c), (e), (f), and (g) of section 1421 of the BUILD Act of 2018, except such amounts obligated in a fiscal year for activities described in section 1421(c) of such Act shall remain available for disbursement for the term of the underlying project: *Provided further,* That amounts made available under this paragraph may be paid to the "United States International Development Finance Corporation—Program Account" for programs authorized by subsections (b), (e), (f), and (g) of section 1421 of the BUILD Act of 2018:

*Provided further,* That funds may only be obligated pursuant to section 1421(g) of the BUILD Act of 2018 subject to prior consultation with the appropriate congressional committees and the regular notification procedures of the Committees on Appropriations: *Provided further,* That funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs for support by the Corporation in high-income and advancing income countries shall be subject to prior consultation with the Committees on Appropriations: *Provided further,* That in fiscal year 2026 collections of amounts described in section 1434(h) of the BUILD Act of 2018 shall be credited as offsetting collections to this appropriation: *Provided further,* That such collections collected in fiscal year 2026 in excess of $983,250,000 shall be credited to this account and shall be available in future fiscal years only to the extent provided in advance in appropriations Acts: *Provided further,* That in fiscal year 2026, if such collections are less than $983,250,000, receipts collected pursuant to the BUILD Act of 2018 and the Federal Credit Reform Act of 1990, in an amount equal to such shortfall, shall be credited as offsetting collections to this appropriation: *Provided further,* That fees charged for project-specific transaction costs as described in section 1434(k) of the BUILD Act of 2018, and other direct costs associated with origination or monitoring services provided to specific or potential investors, shall not be considered administrative expenses for the purposes of this heading: *Provided further,* That such fees shall be credited to this account for such purposes, to remain available until expended: *Provided further,* That funds appropriated or otherwise made available under this heading may not be used to provide any type of assistance that is otherwise prohibited by any other provision of law or to provide assistance to any foreign country that is otherwise prohibited by any other provision of law: *Provided further,* That the sums herein appropriated from the General Fund shall be reduced on a dollar-for-dollar basis by the offsetting collections described under this heading so as to result in a final fiscal year appropriation from the General Fund estimated at $547,450,000.

PROGRAM ACCOUNT

Amounts paid from "United States International Development Finance Corporation—Corporate Capital Account" (CCA) shall remain available until September 30, 2028: *Provided,* That amounts

paid to this account from CCA or transferred to this account pursuant to section 1434(j) of the BUILD Act of 2018 (division F of Public Law 115–254) shall be available for the costs of direct and guaranteed loans provided by the Corporation pursuant to section 1421(b) of such Act and the costs of modifying loans and loan guarantees transferred to the Corporation pursuant to section 1463 of such Act: *Provided further,* That such costs, including the cost of modifying such loans, shall be as defined in section 502 of the Congressional Budget Act of 1974: *Provided further,* That such amounts obligated in a fiscal year shall remain available for disbursement for the following 8 fiscal years: *Provided further,* That funds made available in this Act and transferred to carry out the Foreign Assistance Act of 1961 pursuant to section 1434(j) of the BUILD Act of 2018 may remain available for obligation for 1 additional fiscal year: *Provided further,* That the total loan principal or guaranteed principal amount shall not exceed $15,000,000,000.

### TRADE AND DEVELOPMENT AGENCY

For necessary expenses to carry out the provisions of section 661 of the Foreign Assistance Act of 1961, $87,000,000, to remain available until September 30, 2027: *Provided,* That of the funds appropriated under this heading, not more than $5,000 may be available for representation and entertainment expenses.

## TITLE VII

## GENERAL PROVISIONS

### ALLOWANCES AND DIFFERENTIALS

SEC. 7001. Funds appropriated under title I of this Act shall be available, except as otherwise provided, for allowances and differentials as authorized by subchapter 59 of title 5, United States Code; for services as authorized by section 3109 of such title and for hire of passenger transportation pursuant to section 1343(b) of title 31, United States Code.

### UNOBLIGATED BALANCES REPORT

SEC. 7002. Any department or agency of the United States Government to which funds are appropriated or otherwise made available by this Act shall provide to the Committees on Appropriations a quarterly accounting of cumulative unobligated balances and obligated, but unexpended, balances by program, project, and activity, and Treasury Account Fund Symbol of all funds received by such department or agency in fiscal year 2026 or any previous fiscal year, disaggregated by fiscal year: *Provided,* That the report required by this section shall be submitted not later than 30 days after the end of each fiscal quarter and should specify by account the amount of funds obligated pursuant to bilateral agreements which have not been further sub-obligated.

H. R. 7148—366

CONSULTING SERVICES

SEC. 7003. The expenditure of any appropriation under title I of this Act for any consulting service through procurement contract, pursuant to section 3109 of title 5, United States Code, shall be limited to those contracts where such expenditures are a matter of public record and available for public inspection, except where otherwise provided under existing law, or under existing Executive order issued pursuant to existing law.

DIPLOMATIC FACILITIES

SEC. 7004. (a) CAPITAL SECURITY COST SHARING EXCEPTION.—Notwithstanding paragraph (2) of section 604(e) of the Secure Embassy Construction and Counterterrorism Act of 1999 (title VI of division A of H.R. 3427, as enacted into law by section 1000(a)(7) of Public Law 106–113 and contained in appendix G of that Act), as amended by section 111 of the Department of State Authorities Act, Fiscal Year 2017 (Public Law 114–323), a project to construct a facility of the United States may include office space or other accommodations for members of the United States Marine Corps.

(b) CONSULTATION AND NOTIFICATIONS.—Funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs, which may be made available for the acquisition of property or award of construction contracts for overseas United States diplomatic facilities during fiscal year 2026, shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations: *Provided,* That notifications pursuant to this subsection shall include the information enumerated under this section in House Report 119–217: *Provided further,* That the Secretary of State shall consult with the Committees on Appropriations at the early project development stage for out-year construction projects, including to discuss security and non-security construction requirements, modifications to scope, and cost reductions identified for such projects, consistent with applicable laws and regulations: *Provided further,* That the Secretary shall submit a quarterly report to the Committees on Appropriations on contingency savings identified from funds appropriated under the heading "Embassy Security, Construction, and Maintenance" by prior Acts making appropriations for the Department of State, foreign operations, and related programs, and the obligation of funds made available by such savings shall be subject to prior consultation with the Committees on Appropriations.

(c) INTERIM AND TEMPORARY FACILITIES ABROAD.—

(1) SECURITY VULNERABILITIES.—Funds appropriated by this Act under the heading "Embassy Security, Construction, and Maintenance" may be made available, following consultation with the appropriate congressional committees, to address security vulnerabilities at interim and temporary United States diplomatic facilities abroad, including physical security upgrades and local guard staffing.

(2) CONSULTATION.—The opening, closure, or any significant modification to an interim or temporary United States diplomatic facility shall be subject to prior consultation with the appropriate congressional committees and the regular notification procedures of the Committees on Appropriations,

H. R. 7148—367

except that such consultation and notification may be waived if there is a security risk to personnel.

(d) SOFT TARGETS.—Funds appropriated by this Act under the heading "Embassy Security, Construction, and Maintenance" may be made available for security upgrades to soft targets, including schools, recreational facilities, residences, and places of worship used by United States diplomatic personnel and their dependents.

(e) FACILITIES.—None of the funds appropriated or otherwise made available by this Act may be used to move the United States embassy to the State of Israel to a location other than Jerusalem.

PERSONNEL ACTIONS

SEC. 7005. Any costs incurred by a department or agency funded under title I of this Act resulting from personnel actions taken in response to funding reductions included in this Act shall be absorbed within the total budgetary resources available under title I to such department or agency: *Provided,* That the authority to transfer funds between appropriations accounts as may be necessary to carry out this section is provided in addition to authorities included elsewhere in this Act: *Provided further,* That use of funds to carry out this section shall be treated as a reprogramming of funds under section 7015 of this Act.

PROHIBITION ON PUBLICITY OR PROPAGANDA

SEC. 7006. No part of any appropriation contained in this Act shall be used for publicity or propaganda purposes within the United States not authorized before enactment of this Act by Congress: *Provided,* That up to $25,000 may be made available to carry out the provisions of section 316 of the International Security and Development Cooperation Act of 1980 (Public Law 96–533; 22 U.S.C. 2151a note).

PROHIBITION AGAINST DIRECT FUNDING FOR CERTAIN COUNTRIES

SEC. 7007. None of the funds appropriated or otherwise made available pursuant to titles III through VI of this Act shall be obligated or expended to finance directly any assistance or reparations for the governments of Cuba, North Korea, or Iran: *Provided,* That for purposes of this section, the prohibition on obligations or expenditures shall include direct loans, credits, insurance, and guarantees of the Export-Import Bank or its agents.

COUPS D'ÉTAT

SEC. 7008. (a) PROHIBITION.—None of the funds appropriated or otherwise made available pursuant to titles III through VI of this Act shall be obligated or expended to finance directly any assistance to the government of any country whose duly elected head of government is deposed by military coup d'état or decree or, after the date of enactment of this Act, a coup d'état or decree in which the military plays a decisive role: *Provided,* That assistance may be resumed to such government if the Secretary of State certifies and reports to the appropriate congressional committees that subsequent to the termination of assistance a democratically elected government has taken office: *Provided further,* That the provisions of this section shall not apply to assistance to promote

H. R. 7148—368

democratic elections or public participation in democratic processes, or to support a democratic transition: *Provided further,* That funds made available pursuant to the previous provisos shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

(b) WAIVER.—The Secretary of State, following consultation with the heads of relevant Federal agencies, may waive the restriction in this section on a program-by-program basis if the Secretary certifies and reports to the Committees on Appropriations that such waiver is in the national security interest of the United States: *Provided,* That funds made available pursuant to such waiver shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

TRANSFER OF FUNDS AUTHORITY

SEC. 7009. (a) DEPARTMENT OF STATE.—

(1) DEPARTMENT OF STATE.—

(A) IN GENERAL.—Not to exceed 5 percent of any appropriation made available for the current fiscal year for the Department of State under title I of this Act may be transferred between, and merged with, such appropriations, but no such appropriation, except as otherwise specifically provided, shall be increased by more than 10 percent by any such transfers, and no such transfer may be made to increase the appropriation under the heading "Representation Expenses".

(B) EMBASSY SECURITY.—Funds appropriated under the headings "Diplomatic Programs", including for Worldwide Security Protection, "Embassy Security, Construction, and Maintenance", and "Emergencies in the Diplomatic and Consular Service" in this Act may be transferred to, and merged with, funds appropriated under such headings if the Secretary of State determines and reports to the Committees on Appropriations that to do so is necessary to implement the recommendations of the Benghazi Accountability Review Board, for emergency evacuations, or to prevent or respond to security situations and requirements, subject to the regular notification procedures of such Committees.

(C) EMERGENCIES IN THE DIPLOMATIC AND CONSULAR SERVICE.—Of the amount made available under the heading "Diplomatic Programs" for Worldwide Security Protection, not to exceed $50,000,000 may be transferred to, and merged with, funds made available by this Act under the heading "Emergencies in the Diplomatic and Consular Service", to be available only for emergency evacuations and rewards, as authorized.

(D) CAPITAL INVESTMENT FUND.—Of the amount made available under the heading, "Diplomatic Programs", up to $50,000,000 may be transferred to, and merged with, funds made available in title I of this Act under the heading "Capital Investment Fund".

(E) PRIOR CONSULTATION.—The transfer authorities provided by subparagraphs (B), (C), and (D) are in addition to any transfer authority otherwise available in this Act and under any other provision of law and the exercise

of such authority shall be subject to prior consultation with the Committees on Appropriations.

(2) REORGANIZATION.—Funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs under the headings "Administration of Foreign Affairs" in title I and "Operating Expenses" in title II may be transferred to and between accounts under such headings if the Secretary of State determines such transfer is necessary to implement a reorganization, redesign, or other plan as defined by section 7063(b) of this Act that is expressly authorized by a subsequent Act of Congress: *Provided,* That such transfer authority is in addition to any other transfer authority provided by this Act or any other Act and is subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

(3) TREATMENT AS REPROGRAMMING.—Any transfer pursuant to this subsection shall be treated as a reprogramming of funds under section 7015 of this Act and shall not be available for obligation or expenditure except in compliance with the procedures set forth in that section.

(b) LIMITATION ON TRANSFERS OF FUNDS BETWEEN AGENCIES.—

(1) IN GENERAL.—None of the funds made available under titles II through V of this Act may be transferred to any department, agency, or instrumentality of the United States Government, except pursuant to a transfer made by, or transfer authority provided in, this Act or any other appropriations Act.

(2) ALLOCATION AND TRANSFERS.—Notwithstanding paragraph (1), in addition to transfers made by, or authorized elsewhere in, this Act, funds appropriated by this Act to carry out the purposes of the Foreign Assistance Act of 1961 may be allocated or transferred to agencies of the United States Government pursuant to the provisions of sections 109, 610, and 632 of the Foreign Assistance Act of 1961, and section 1434(j) of the BUILD Act of 2018 (division F of Public Law 115–254).

(3) NOTIFICATION.—Any agreement entered into by the Department of State with any department, agency, or instrumentality of the United States Government pursuant to section 632(b) of the Foreign Assistance Act of 1961 valued in excess of $2,000,000 and any agreement made pursuant to section 632(a) of such Act, with funds appropriated by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs under the headings "Global Health Programs", "Development Assistance", "Economic Support Fund", "National Security Investment Programs", "Assistance for Europe, Eurasia and Central Asia", and "International Narcotics Control and Law Enforcement" shall be subject to the regular notification procedures of the Committees on Appropriations: *Provided,* That the requirement of this paragraph shall not apply to such agreements with a department, agency, or instrumentality funded by this Act.

(4) PRIOR CONSULTATION REQUIREMENT.—Agreements between the Department of State with any department, agency, or instrumentality of the United States Government not funded

by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs, to transfer or allocate funds appropriated under the headings "International Humanitarian Assistance" and "United States Emergency Refugee and Migration Assistance Fund" in this Act, or under the headings "International Disaster Assistance", "Migration and Refugee Assistance", and "United States Emergency Refugee and Migration Assistance Fund" in prior Acts making appropriations for the Department of State, foreign operations, and related programs shall be subject to prior consultation with the Committees on Appropriations, not later than 7 days prior to the transfer of such funds, except if to do so would pose an immediate and substantial risk to human health or welfare: *Provided,* That in the case of any such exception the information required by such consultation shall be provided as early as practicable, but in no event later than 3 days after taking the action to which the consultation requirement was applicable, and such information shall include a description of the circumstance necessitating such exception.

(c) UNITED STATES INTERNATIONAL DEVELOPMENT FINANCE CORPORATION.—Amounts transferred pursuant to section 1434(j) of the BUILD Act of 2018 (division F of Public Law 115–254) may only be transferred from funds made available under title III of this Act: *Provided,* That any such transfers, or any other amounts transferred to the United States International Development Finance Corporation (the Corporation) pursuant to any provision of law, shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations: *Provided further,* That the Secretary of State and the Chief Executive Officer of the Corporation, as appropriate, shall ensure that the programs funded by such transfers are coordinated with, and complement, foreign assistance programs implemented by the Department of State.

(d) TRANSFER OF FUNDS BETWEEN ACCOUNTS.—None of the funds made available under titles II through V of this Act may be obligated under an appropriations account to which such funds were not appropriated, except for transfers specifically provided for in this Act, unless the President, not less than 5 days prior to the exercise of any authority contained in the Foreign Assistance Act of 1961 to transfer funds, consults with and provides a written policy justification to the Committees on Appropriations.

(e) AUDIT OF INTER-AGENCY TRANSFERS OF FUNDS.—Any agreement for the transfer or allocation of funds appropriated by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs entered into between the Department of State and another agency of the United States Government under the authority of section 632(a) of the Foreign Assistance Act of 1961, or any comparable provision of law, shall expressly provide that the Inspector General (IG) for the agency receiving the transfer or allocation of such funds, or other entity with audit responsibility if the receiving agency does not have an IG, shall perform periodic program and financial audits of the use of such funds and report to the Department of State upon completion of such audits: *Provided,* That such audits shall

H. R. 7148—371

be transmitted to the Committees on Appropriations by the Department of State: *Provided further,* That funds transferred under such authority may be made available for the cost of such audits.

PROHIBITION AND LIMITATION ON CERTAIN EXPENSES

SEC. 7010. (a) FIRST-CLASS TRAVEL.—None of the funds made available by this Act may be used for first-class travel by employees of United States Government departments and agencies funded by this Act in contravention of section 301–10.122 through 301–10.124 of title 41, Code of Federal Regulations.

(b) COMPUTER NETWORKS.—None of the funds made available by this Act for the operating expenses of any United States Government department or agency may be used to establish or maintain a computer network for use by such department or agency unless such network has filters designed to block access to sexually explicit websites: *Provided,* That nothing in this subsection shall limit the use of funds necessary for any Federal, State, Tribal, or local law enforcement agency, or any other entity carrying out the following activities: criminal investigations, prosecutions, and adjudications; administrative discipline; and the monitoring of such websites undertaken as part of official business.

(c) PROHIBITION ON PROMOTION OF TOBACCO.—None of the funds made available by this Act shall be available to promote the sale or export of tobacco or tobacco products (including electronic nicotine delivery systems), or to seek the reduction or removal by any foreign country of restrictions on the marketing of tobacco or tobacco products (including electronic nicotine delivery systems), except for restrictions which are not applied equally to all tobacco or tobacco products (including electronic nicotine delivery systems) of the same type.

(d) EMAIL SERVERS OUTSIDE THE .GOV DOMAIN.—None of the funds appropriated by this Act under the headings "Diplomatic Programs" and "Capital Investment Fund" that are made available to the Department of State may be made available to support the use or establishment of email accounts or email servers created outside the .gov domain or not fitted for automated records management as part of a Federal government records management program in contravention of the Presidential and Federal Records Act Amendments of 2014 (Public Law 113–187).

(e) REPRESENTATION AND ENTERTAINMENT EXPENSES.—Each Federal department, agency, or entity funded in title I of this Act and the Department of the Treasury and independent agencies funded in titles III or VI of this Act, shall take steps to ensure that domestic and overseas representation and entertainment expenses further official agency business and United States foreign policy interests, and—

(1) are primarily for fostering relations outside of the Executive Branch;

(2) are principally for meals and events of a protocol nature;

(3) are not for employee-only events; and

(4) do not include activities that are substantially of a recreational character.

(f) LIMITATIONS ON ENTERTAINMENT EXPENSES.—None of the funds appropriated or otherwise made available by this Act under the headings "International Military Education and Training" or "Foreign Military Financing Program" for Informational Program

activities or under the headings "Global Health Programs" and "National Security Investment Programs" may be obligated or expended to pay for—

(1) alcoholic beverages; or

(2) entertainment expenses for activities that are substantially of a recreational character, including entrance fees at sporting events, theatrical and musical productions, and amusement parks.

ASSISTANCE EFFECTIVENESS AND TRANSPARENCY

SEC. 7011. (a) STRATEGY.—

(1) IN GENERAL.—Not later than 180 days after the date of enactment of this Act, the Secretary of State shall develop and submit to the appropriate congressional committees a multi-year strategy to improve the effectiveness of United States Government foreign assistance.

(2) ELEMENTS.—The strategy required by this subsection shall include—

(A) methods used to determine the effectiveness of United States Government foreign assistance;

(B) analysis on using outcomes to inform the allocation of such assistance;

(C) results of impact evaluations carried out within the prior 12 months and a plan for incorporating the results of such evaluations into the design of future programs funded by such assistance;

(D) analysis of opportunities to enhance the effectiveness of such assistance by increasing partnerships with local organizations, including faith-based organizations, as appropriate, including specific plans to provide grants, cooperative agreements, and other awards of not more than $2,000,000, consistent with the requirements included in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act); and

(E) estimated costs associated with implementation of the strategy.

(3) SPECIFIC REFORMS.—The strategy required by this subsection shall include the following specific reforms—

(A) an approval process for small grants previously managed at the mission level, including public diplomacy and cultural preservation programs, by respective Chiefs of Mission, the Under Secretary for Public Diplomacy and Public Affairs, and the Under Secretary of Political Affairs, as appropriate: *Provided*, That for purposes of this section, the term "small grants" means a grant with a value of less than $1,000,000;

(B) a certification process, on a country-by-country basis, to ensure that United States assistance supports the implementation of a comprehensive assistance strategy that promotes American interests abroad, including a detailed definition of such interests, consistent with the requirements of subparagraphs (C) and (D);

(C) a plan established prior to the obligation of United States assistance for the winding down of such assistance, as appropriate, including transition and sustainment of

programs and activities to entities other than the United States Government; and

(D) requirements for co-investment by recipient governments and cost matching from sources other than the United States Government, including other international donors and the private sector, for assistance made available by this Act, as appropriate.

(4) CONCURRENT RECOMMENDATIONS.—The Secretary shall—

(A) convene a panel of experts and practitioners to make recommendations for the strategy required by this subsection; and

(B) include all such recommendations in an appendix to the strategy whether or not they were incorporated into the strategy.

(5) CONSULTATION.—Not later than 45 days after the date of enactment of this Act, the Secretary shall consult with the Committees on Appropriations on the requirements of this subsection.

(b) BENEFICIARY FEEDBACK.—Funds appropriated by this Act that are made available for monitoring and evaluation of assistance under the headings "National Security Investment Programs" and "International Humanitarian Assistance" shall be made available for the regular and systematic collection of feedback obtained directly from beneficiaries to enhance the quality and relevance of such assistance: *Provided,* That the Secretary of State shall regularly conduct oversight to ensure that such feedback is collected and used by implementing partners to maximize the cost-effectiveness and utility of such assistance.

(c) EVALUATIONS.—Of the funds appropriated by this Act under titles III and IV, not less than $15,000,000, to remain available until expended, shall be made available for impact evaluations, including ex-post evaluations, of the effectiveness and sustainability of United States Government foreign assistance programs: *Provided,* That funds made available pursuant to this subsection are in addition to funds otherwise made available for such purposes.

(d) INNOVATION.—The Secretary of State may use funds appropriated by this Act under title III to make innovation incentive awards in accordance with the terms and conditions of section 7034(e)(4) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2019 (division F of Public Law 116–6), except that each individual award may not exceed $500,000.

(e) FOREIGN ASSISTANCE WEBSITE.—Funds appropriated by this Act under title I, funds made available for any independent agency in title III, and funds made available under the headings "Trade and Development Agency" and "United States International Development Finance Corporation", as appropriate, shall be made available to support the provision of additional information on United States Government foreign assistance on the "ForeignAssistance.gov" website: *Provided,* That all Federal agencies funded under this Act shall provide such information on foreign assistance, upon request and in a timely manner, to the Department of State.

H. R. 7148—374

LIMITATION ON ASSISTANCE TO COUNTRIES IN DEFAULT

SEC. 7012. No part of any appropriation provided under titles III through VI in this Act shall be used to furnish assistance to the government of any country which is in default during a period in excess of 1 calendar year in payment to the United States of principal or interest on any loan made to the government of such country by the United States pursuant to a program for which funds are appropriated under this Act unless the President determines, following consultation with the Committees on Appropriations, that assistance for such country is in the national interest of the United States.

PROHIBITION ON TAXATION OF UNITED STATES ASSISTANCE

SEC. 7013. (a) PROHIBITION ON TAXATION.—None of the funds appropriated under titles III through VI of this Act may be made available to provide assistance for a foreign country under a new bilateral agreement governing the terms and conditions under which such assistance is to be provided unless such agreement includes a provision stating that assistance provided by the United States shall be exempt from taxation, or reimbursed, by the foreign government, and the Secretary of State shall expeditiously seek to negotiate amendments to existing bilateral agreements, as necessary, to conform with this requirement.

(b) NOTIFICATION AND REIMBURSEMENT OF FOREIGN TAXES.—An amount equivalent to 200 percent of the total taxes assessed during fiscal year 2026 on funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs by a foreign government or entity against United States assistance programs, either directly or through grantees, contractors, and subcontractors, shall be withheld from obligation from funds appropriated for assistance for fiscal year 2027 and for prior fiscal years and allocated for the central government of such country or for the West Bank and Gaza program, as applicable, if, not later than September 30, 2027, such taxes have not been reimbursed.

(c) DE MINIMIS EXCEPTION.—Foreign taxes of a de minimis nature shall not be subject to the provisions of subsection (b).

(d) REPROGRAMMING OF FUNDS.—Funds withheld from obligation for each foreign government or entity pursuant to subsection (b) shall be reprogrammed for assistance for countries which do not assess taxes on United States assistance or which have an effective arrangement that is providing substantial reimbursement of such taxes, and that can reasonably accommodate such assistance in a programmatically responsible manner.

(e) DETERMINATIONS.—

(1) IN GENERAL.—The provisions of this section shall not apply to any foreign government or entity that assesses such taxes if the Secretary of State reports to the Committees on Appropriations that—

(A) such foreign government or entity has an effective arrangement that is providing substantial reimbursement of such taxes; or

(B) the foreign policy interests of the United States outweigh the purpose of this section to ensure that United States assistance is not subject to taxation.

(2) CONSULTATION.—The Secretary of State shall consult with the Committees on Appropriations at least 15 days prior to exercising the authority of this subsection with regard to any foreign government or entity.

(f) IMPLEMENTATION.—The Secretary of State shall issue and update rules, regulations, or policy guidance, as appropriate, to implement the prohibition against the taxation of assistance contained in this section.

(g) DEFINITIONS.—As used in this section:

(1) BILATERAL AGREEMENT.—The term "bilateral agreement" refers to a framework bilateral agreement between the Government of the United States and the government of the country receiving assistance that describes the privileges and immunities applicable to United States foreign assistance for such country generally, or an individual agreement between the Government of the United States and such government that describes, among other things, the treatment for tax purposes that will be accorded the United States assistance provided under that agreement.

(2) TAXES AND TAXATION.—The term "taxes and taxation" shall include value added taxes and customs duties but shall not include individual income taxes assessed to local staff.

AVAILABILITY AND DESIGNATED FUNDING LEVELS

SEC. 7014. (a) AVAILABILITY.—No part of any appropriation contained in this Act shall remain available for obligation after the expiration of the current fiscal year unless expressly so provided by this Act.

(b) REPROGRAMMING.—Funds appropriated under titles III through VI of this Act which are specifically designated may be reprogrammed for other programs within the same account notwithstanding the designation if compliance with the designation is made impossible by operation of any provision of this or any other Act: *Provided,* That any such reprogramming shall be subject to the regular notification procedures of the Committees on Appropriations: *Provided further,* That assistance that is reprogrammed pursuant to this subsection shall be made available under the same terms and conditions as originally provided.

(c) EXTENSION OF AVAILABILITY.—In addition to the authority contained in subsection (b), the original period of availability of funds appropriated by this Act and administered by the Department of State that are specifically designated for particular programs or activities by this or any other Act may be extended for an additional fiscal year if the Secretary of State determines and reports promptly to the Committees on Appropriations that the termination of assistance to a country or a significant change in circumstances makes it unlikely that such designated funds can be obligated during the original period of availability: *Provided,* That such designated funds that continue to be available for an additional fiscal year shall be obligated only for the purpose of such designation.

(d) OTHER ACTS.—Ceilings and specifically designated funding levels contained in this Act shall not be applicable to funds or authorities appropriated or otherwise made available by any subsequent Act unless such Act specifically so directs: *Provided,* That

specifically designated funding levels or minimum funding requirements contained in any other Act shall not be applicable to funds appropriated by this Act.

NOTIFICATION REQUIREMENTS

SEC. 7015. (a) NOTIFICATION OF CHANGES IN PROGRAMS, PROJECTS, AND ACTIVITIES.—None of the funds made available in titles I, II, and VI, and under the headings "Peace Corps" and "Millennium Challenge Corporation", of this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs to the departments and agencies funded by this Act that remain available for obligation in fiscal year 2026, or provided from any accounts in the Treasury of the United States derived by the collection of fees or of currency reflows or other offsetting collections, or made available by transfer, to the departments and agencies funded by this Act, shall be available for obligation to—

(1) create new programs;

(2) suspend or eliminate a program, project, or activity;

(3) close, suspend, open, or reopen a mission or post;

(4) create, close, reorganize, downsize, or rename bureaus, centers, or offices; or

(5) contract out or privatize any functions or activities presently performed by Federal employees;

unless previously justified to the Committees on Appropriations or such Committees are notified 15 days in advance of such obligation.

(b) NOTIFICATION OF REPROGRAMMING OF FUNDS.—None of the funds provided under titles I, II, and VI of this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs, to the departments and agencies funded under such titles that remain available for obligation in fiscal year 2026, or provided from any accounts in the Treasury of the United States derived by the collection of fees available to the department and agency funded under title I of this Act, shall be available for obligation or expenditure for programs, projects, or activities through a reprogramming of funds in excess of $1,000,000 or 10 percent, whichever is less, that—

(1) augments or changes existing programs, projects, or activities;

(2) relocates an existing office or employees;

(3) reduces by 10 percent funding for any existing program, project, or activity, or numbers of personnel by 10 percent as approved by Congress; or

(4) results from any general savings, including savings from a reduction in personnel, which would result in a change in existing programs, projects, or activities as approved by Congress;

unless the Committees on Appropriations are notified 15 days in advance of such reprogramming of funds.

(c) NOTIFICATION REQUIREMENT.—None of the funds made available by this Act under the headings "Global Health Programs", "National Security Investment Programs", "Democracy Fund", "Peace Corps", "Millennium Challenge Corporation", "International Narcotics Control and Law Enforcement", "Nonproliferation, Anti-

terrorism, Demining and Related Programs", "Peacekeeping Operations", "International Military Education and Training", "Foreign Military Financing Program", "International Organizations and Programs", "United States International Development Finance Corporation", and "Trade and Development Agency" shall be available for obligation for programs, projects, activities, type of materiel assistance, countries, or other operations not justified or in excess of the amount justified to the Committees on Appropriations for obligation under any of these specific headings unless the Committees on Appropriations are notified 15 days in advance of such obligation: *Provided,* That the President shall not enter into any commitment of funds appropriated for the purposes of section 23 of the Arms Export Control Act for the provision of major defense equipment, other than conventional ammunition, or other major defense items defined to be aircraft, ships, missiles, or combat vehicles, not previously justified to Congress or 20 percent in excess of the quantities justified to Congress unless the Committees on Appropriations are notified 15 days in advance of such commitment: *Provided further,* That requirements of this subsection or any similar provision of this or any other Act shall not apply to any reprogramming for a program, project, or activity for which funds are appropriated under titles III through VI of this Act of less than 10 percent of the amount previously justified to Congress for obligation for such program, project, or activity for the current fiscal year: *Provided further,* That any notification submitted pursuant to subsection (f) of this section shall include information on the use of notwithstanding authority.

(d) DEPARTMENT OF DEFENSE PROGRAMS AND FUNDING NOTIFICATIONS.—

(1) PROGRAMS.—None of the funds appropriated by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs may be made available to support or continue any program initially funded under any authority of title 10, United States Code, or any Act making or authorizing appropriations for the Department of Defense, unless the Secretary of State, in consultation with the Secretary of Defense and in accordance with the regular notification procedures of the Committees on Appropriations, submits a justification to such Committees that includes a description of, and the annual estimated costs associated with, the support or continuation of such program.

(2) FUNDING.—Funds transferred by the Department of Defense to the Department of State for assistance for foreign countries and international organizations shall be subject to the regular notification procedures of the Committees on Appropriations.

(3) NOTIFICATION ON EXCESS DEFENSE ARTICLES.—Prior to providing excess Department of Defense articles in accordance with section 516(a) of the Foreign Assistance Act of 1961, the Department of Defense shall notify the Committees on Appropriations to the same extent and under the same conditions as other committees pursuant to subsection (f) of that section: *Provided,* That before issuing a letter of offer to sell excess defense articles under the Arms Export Control Act, the Department of Defense shall notify the Committees on Appropriations in accordance with the regular notification procedures of such Committees if such defense articles are

significant military equipment (as defined in section 47(9) of the Arms Export Control Act) or are valued (in terms of original acquisition cost) at $7,000,000 or more, or if notification is required elsewhere in this Act for the use of appropriated funds for specific countries that would receive such excess defense articles: *Provided further,* That such Committees shall also be informed of the original acquisition cost of such defense articles.

(e) WAIVER.—Notwithstanding any other provision of law, the requirements of this section or any similar provision of this Act or any other Act, including any prior Act, requiring notification in accordance with the regular notification procedures of, or consultations with, the Committees on Appropriations may only be waived if failure to do so would pose a substantial risk to human health or welfare: *Provided,* That in case of any such waiver, notification to, or consultation with, the Committees on Appropriations shall be provided as early as practicable, but in no event later than 3 days after taking the action to which such notification requirement was applicable, in the context of the circumstances necessitating such waiver: *Provided further,* That any notification provided pursuant to such a waiver shall contain an explanation of the emergency circumstances: *Provided further,* That no other provision of law relating to such assistance may be construed to authorize a waiver or alteration of the notification requirements of this section, or any other notification or consultation required by this Act or prior Acts, unless such provision explicitly cites to and supersedes this proviso.

(f) COUNTRY NOTIFICATION REQUIREMENTS.—None of the funds appropriated under titles III through VI of this Act may be obligated or expended for assistance for Afghanistan, Burma, Cambodia, Colombia, Cuba, Egypt, El Salvador, Georgia, Guatemala, Haiti, Honduras, Iran, Iraq, Lebanon, Libya, Mexico, Nicaragua, Nigeria, Pakistan, the Russian Federation, Somalia, South Sudan, Sudan, Syria, Tunisia, Ukraine, Venezuela, Yemen, and Zimbabwe except as provided through the regular notification procedures of the Committees on Appropriations.

(g) TRUST FUNDS.—Funds appropriated or otherwise made available in title III of this Act and prior Acts making funds available for the Department of State, foreign operations, and related programs that are made available for a trust fund held by an international financial institution shall be subject to the regular notification procedures of the Committees on Appropriations, and such notification shall include the information specified under this section in House Report 119–217.

(h) OTHER PROGRAM NOTIFICATION REQUIREMENTS.—

(1) OTHER PROGRAMS.—Funds appropriated by this Act that are made available for the following programs and activities shall be subject to the regular notification procedures of the Committees on Appropriations:

(A) the Power Africa and Prosper Africa initiatives;

(B) the Indo-Pacific Strategy;

(C) assistance made available pursuant to section 7066 of this Act;

(D) the Countering PRC Influence Fund and the Countering Russian Influence Fund; and

(E) the America First Opportunity Fund.

(2) ARMS SALES.—The reports, notifications, and certifi-
cations, and any other documents, required to be submitted
pursuant to section 36(a) of the Arms Export Control Act (22
U.S.C. 2776), and such documents submitted pursuant to sec-
tion 36(b) through (d) of such Act with respect to countries
that have received assistance provided with funds appropriated
by this Act or prior Acts making appropriations for the Depart-
ment of State, foreign operations, and related programs, shall
be concurrently submitted to the Committees on Appropriations
and shall include information about the source of funds for
any sale or transfer, as applicable, if known at the time of
submission.

(3) DEOBLIGATED BALANCES.—An obligation in excess of
$2,000,000 from deobligated balances of funds appropriated
by prior Acts making appropriations for the Department of
State, foreign operations, and related programs that remain
available due to the exercise of the authority in section 7011
of such Acts shall be subject to the regular notification proce-
dures of the Committees on Appropriations.

(i) WITHHOLDING OF FUNDS.—Funds appropriated by this Act
under titles III and IV that are withheld from obligation or other-
wise not programmed as a result of application of a provision
of law in this or any other Act shall, if reprogrammed, be subject
to the regular notification procedures of the Committees on Appro-
priations.

(j) REQUIREMENT TO INFORM.—The Secretary of State shall
promptly inform the appropriate congressional committees of each
instance in which funds appropriated by this Act for assistance
have been diverted or destroyed, to include the type and amount
of assistance, a description of the incident and parties involved,
and an explanation of the response of the Department of State:
*Provided*, That the requirement to inform of this subsection shall
also apply to the circumstances and in the manner described under
this section in the explanatory statement described in section 4
(in the matter preceding division A of this consolidated Act).

(k) PRIOR CONSULTATION REQUIREMENT.—The Secretary of
State, the Chief Executive Officer of the United States International
Development Finance Corporation, and the Chief Executive Officer
of the Millennium Challenge Corporation shall consult with the
Committees on Appropriations at least 7 days prior to informing
a government of, or publicly announcing a decision on, the suspen-
sion or early termination of assistance to a country or a territory,
including as a result of an interagency review of such assistance,
from funds appropriated by this Act or prior Acts making appropria-
tions for the Department of State, foreign operations, and related
programs: *Provided*, That such consultation shall include a detailed
justification for such suspension, including a description of the
assistance being suspended.

DOCUMENTS, REPORT POSTING, RECORDS MANAGEMENT, AND RELATED
CYBERSECURITY PROTECTIONS

SEC. 7016. (a) DOCUMENT REQUESTS.—None of the funds appro-
priated or made available pursuant to titles III through VI of
this Act shall be available to a nongovernmental organization,
including any contractor, which fails to provide upon timely request

any document, file, or record necessary to the auditing requirements of the Department of State.

(b) PUBLIC POSTING OF REPORTS.—

(1) Any Federal agency funded by this Act shall maintain a public website, and, except as provided in paragraphs (2) and (3), any report required by this Act to be submitted to Congress shall be posted on the public website of such agency not later than 45 days following the receipt of such report by Congress.

(2) Paragraph (1) shall not apply to a report if—

(A) the head of such agency determines and reports to the Committees on Appropriations in the transmittal letter accompanying such report that—

(i) the public posting of the report would compromise national security, including the conduct of diplomacy; or

(ii) the report contains proprietary or other privileged information; or

(B) the public posting of the report is specifically exempted in House Report 119–217 or the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(3) The agency posting such report shall do so only after the report has been made available to the Committees on Appropriations.

(4) The head of the agency posting such report shall do so in a central location on the public website of such agency.

(c) RECORDS MANAGEMENT AND RELATED CYBERSECURITY PROTECTIONS.—The heads of Federal agencies funded under titles I and II of this Act shall—

(1) regularly review and update the policies, directives, and oversight necessary to comply with Federal statutes, regulations, and presidential executive orders and memoranda concerning the preservation of all records made or received in the conduct of official business, including record emails, instant messaging, and other online tools;

(2) use funds appropriated by this Act to improve Federal records management pursuant to the Federal Records Act (44 U.S.C. Chapters 21, 29, 31, and 33) and other applicable Federal records management statutes, regulations, or policies for such agencies;

(3) direct departing employees, including senior officials, that all Federal records generated by such employees belong to the Federal Government;

(4) substantially reduce, compared to the previous fiscal year, the response time for identifying and retrieving Federal records, including requests made pursuant to section 552 of title 5, United States Code (commonly known as the "Freedom of Information Act"); and

(5) strengthen cybersecurity measures to mitigate vulnerabilities, including those resulting from the use of personal email accounts or servers outside the .gov domain, improve the process to identify and remove inactive user accounts, update and enforce guidance related to the control of national security information, and implement the recommendations of the applicable reports of the cognizant Office of Inspector General.

USE OF FUNDS IN CONTRAVENTION OF THIS ACT

SEC. 7017. If the President makes a determination not to comply with any provision of this Act on constitutional grounds, the head of the relevant Federal agency shall notify the Committees on Appropriations in writing within 5 days of such determination, the basis for such determination and any resulting changes to program or policy.

PROHIBITION ON FUNDING FOR ABORTIONS AND INVOLUNTARY STERILIZATION

SEC. 7018. None of the funds made available to carry out part I of the Foreign Assistance Act of 1961, as amended, may be used to pay for the performance of abortions as a method of family planning or to motivate or coerce any person to practice abortions. None of the funds made available to carry out part I of the Foreign Assistance Act of 1961, as amended, may be used to pay for the performance of involuntary sterilization as a method of family planning or to coerce or provide any financial incentive to any person to undergo sterilizations. None of the funds made available to carry out part I of the Foreign Assistance Act of 1961, as amended, may be used to pay for any biomedical research which relates in whole or in part, to methods of, or the performance of, abortions or involuntary sterilization as a means of family planning. None of the funds made available to carry out part I of the Foreign Assistance Act of 1961, as amended, may be obligated or expended for any country or organization if the President certifies that the use of these funds by any such country or organization would violate any of the above provisions related to abortions and involuntary sterilizations.

ALLOCATIONS AND REPORTS

SEC. 7019. (a) ALLOCATION TABLES.—Subject to subsection (b), funds appropriated by this Act under titles III through V shall be made available at not less than the amounts specifically designated in the respective tables included in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That such designated amounts for foreign countries and international organizations shall serve as the amounts for such countries and international organizations transmitted to Congress in the report required by section 653(a) of the Foreign Assistance Act of 1961, and shall be made available for such foreign countries and international organizations notwithstanding the date of the transmission of such report.

(b) AUTHORIZED DEVIATIONS.—Unless otherwise provided for by this Act, the Secretary of State may only deviate up to 10 percent below the amounts specifically designated in the respective tables included in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That such percentage may be exceeded only if the Secretary of State determines and reports in writing to the Committees on Appropriations on a case-by-case basis that such deviation is necessary to respond to significant, exigent, or unforeseen events, or to address other exceptional circumstances directly related to the national security interest of the United States, including a description of such events or circumstances: *Provided further,* That

deviations pursuant to the preceding proviso may not exceed 50 percent and shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

(c) LIMITATION.—For specifically designated amounts that are included, pursuant to subsection (a), in the report required by section 653(a) of the Foreign Assistance Act of 1961, deviations authorized by subsection (b) may only take place after submission of such report.

(d) EXCEPTIONS.—

(1) Subsections (a) and (b) shall not apply to—

(A) funds for which the initial period of availability has expired; and

(B) amounts designated by this Act as minimum funding requirements.

(2) The authority of subsection (b) to deviate from amounts designated in the respective tables included in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act) shall not apply to the table included under the heading "Global Health Programs" in such statement.

(3) With respect to the amounts designated for "Global Programs" in the table under the heading "National Security Investment Programs" included in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), the matter preceding the first proviso in subsection (b) of this section shall be applied by substituting "5 percent" for "10 percent", and the provisos in such subsection (b) shall not apply.

(e) REPORTS AND CONSULTATIONS.—The Secretary of State and other designated officials, as appropriate, shall submit the reports and conduct the consultations required, in the manner described, in House Report 119–217 and the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), unless otherwise directed in such explanatory statement.

(f) CLARIFICATION.—Funds appropriated by this Act under the heading "International Humanitarian Assistance" shall not be included for purposes of meeting amounts designated for countries in this Act, unless such heading is specifically designated as the source of funds.

(g) REPORT.—Not later than 45 days after the date of enactment of this Act, the Secretary of State shall submit to the Committees on Appropriations the report required by section 653(a) of the Foreign Assistance Act of 1961 for fiscal year 2025: *Provided*, That such report shall also include details on the allocation of funds at the program, project, and activity level for meeting the congressionally directed amounts specifically designated for a purpose in the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (division F of Public Law 118–47), as carried forward by the Continuing Appropriations Act, 2025 (division A of Public Law 119–4), to include the amounts specifically designated in title VII of such Acts: *Provided further*, That not later than 30 days after the date of enactment of this Act, the Secretary shall consult with the Committees on Appropriations on the structure and details to accompany such report.

H. R. 7148—383

MULTI-YEAR PLEDGES

SEC. 7020. None of the funds appropriated or otherwise made available by this Act may be used to make any pledge for future year funding for any multilateral or bilateral program funded in titles III through VI of this Act unless such pledge meets the requirements contained under this section in House Report 119–217.

PROHIBITION ON ASSISTANCE TO GOVERNMENTS SUPPORTING
INTERNATIONAL TERRORISM

SEC. 7021. (a) LETHAL MILITARY EQUIPMENT EXPORTS.—

(1) PROHIBITION.—None of the funds appropriated or otherwise made available under titles III through VI of this Act may be made available to any foreign government which provides lethal military equipment to a country the government of which the Secretary of State has determined supports international terrorism for purposes of section 1754(c) of the Export Control Reform Act of 2018 (50 U.S.C. 4813(c)): *Provided,* That the prohibition under this section with respect to a foreign government shall terminate 12 months after that government ceases to provide such military equipment: *Provided further,* That this section applies with respect to lethal military equipment provided under a contract entered into after October 1, 1997.

(2) DETERMINATION.—Assistance restricted by paragraph (1) or any other similar provision of law, may be furnished if the President determines that to do so is important to the national interest of the United States.

(3) REPORT.—Whenever the President makes a determination pursuant to paragraph (2), the President shall submit to the Committees on Appropriations a report with respect to the furnishing of such assistance, including a detailed explanation of the assistance to be provided, the estimated dollar amount of such assistance, and an explanation of how the assistance furthers the United States national interest.

(b) BILATERAL ASSISTANCE.—

(1) LIMITATIONS.—Funds appropriated for bilateral assistance in titles III through VI of this Act and funds appropriated under any such title in prior Acts making appropriations for the Department of State, foreign operations, and related programs, shall not be made available to any foreign government which the President determines—

(A) grants sanctuary from prosecution to any individual or group which has committed an act of international terrorism;

(B) otherwise supports international terrorism; or

(C) is controlled by an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189).

(2) WAIVER.—The President may waive the application of paragraph (1) to a government if the President determines that national security or humanitarian reasons justify such waiver: *Provided,* That the President shall publish each such waiver in the Federal Register and, at least 15 days before the waiver takes effect, shall notify the Committees on Appropriations of the waiver (including the justification for the

H. R. 7148—384

waiver) in accordance with the regular notification procedures of the Committees on Appropriations.

AUTHORIZATION REQUIREMENTS

SEC. 7022. Funds appropriated by this Act, except funds appropriated under the heading "Trade and Development Agency", may be obligated and expended notwithstanding section 10 of Public Law 91–672 (22 U.S.C. 2412), section 15 of the State Department Basic Authorities Act of 1956 (22 U.S.C. 2680), section 313 of the Foreign Relations Authorization Act, Fiscal Years 1994 and 1995 (22 U.S.C. 6212), and section 504(a)(1) of the National Security Act of 1947 (50 U.S.C. 3094(a)(1)).

DEFINITION OF PROGRAM, PROJECT, AND ACTIVITY

SEC. 7023. For the purpose of titles II through VI of this Act, "program, project, and activity" shall be defined at the appropriations Act account level and shall include all appropriations and authorizations Acts funding directives, ceilings, and limitations with the exception that for the "National Security Investment Programs", "International Narcotics Control and Law Enforcement", and "Foreign Military Financing Program" accounts, "program, project, and activity" shall also be considered to include country, regional, and central program level funding within each such account, either as—

(1) justified to Congress; or

(2) allocated by the Executive Branch in accordance with the report required by section 653(a) of the Foreign Assistance Act of 1961 or as modified pursuant to section 7019 of this Act.

CLARIFICATION

SEC. 7024. Unless expressly provided to the contrary, provisions of this or any other Act, including provisions contained in prior Acts authorizing or making appropriations for the Department of State, foreign operations, and related programs, shall not be construed to prohibit activities authorized by or conducted under the Peace Corps Act, the Inter-American Foundation Act, or the African Development Foundation Act: *Provided,* That prior to conducting activities in a country for which assistance is prohibited, the agency shall consult with the Committees on Appropriations and report to such Committees within 15 days of taking such action.

COMMERCE, TRADE AND SURPLUS COMMODITIES

SEC. 7025. (a) WORLD MARKETS.—None of the funds appropriated or made available pursuant to titles III through VI of this Act for direct assistance and none of the funds otherwise made available to the Export-Import Bank and the United States International Development Finance Corporation shall be obligated or expended to finance any loan, any assistance, or any other financial commitments for establishing or expanding production of any commodity for export by any country other than the United States, if the commodity is likely to be in surplus on world markets at the time the resulting productive capacity is expected to become operative and if the assistance will cause substantial injury to

H. R. 7148—385

United States producers of the same, similar, or competing commodity: *Provided,* That such prohibition shall not apply to the Export-Import Bank if in the judgment of its Board of Directors the benefits to industry and employment in the United States are likely to outweigh the injury to United States producers of the same, similar, or competing commodity, and the Chairman of the Board so notifies the Committees on Appropriations: *Provided further,* That this subsection shall not prohibit—

(1) activities in a country that is eligible for assistance from the International Development Association, is not eligible for assistance from the International Bank for Reconstruction and Development, and does not export on a consistent basis the agricultural commodity with respect to which assistance is furnished; or

(2) activities in a country the President determines is recovering from widespread conflict, a humanitarian crisis, or a complex emergency.

(b) EXPORTS.—None of the funds appropriated by this or any other Act to carry out chapter 1 of part I of the Foreign Assistance Act of 1961 shall be available for any testing or breeding feasibility study, variety improvement or introduction, consultancy, publication, conference, or training in connection with the growth or production in a foreign country of an agricultural commodity for export which would compete with a similar commodity grown or produced in the United States: *Provided,* That this subsection shall not prohibit—

(1) activities designed to increase food security in developing countries where such activities will not have a significant impact on the export of agricultural commodities of the United States;

(2) research activities intended primarily to benefit United States producers;

(3) activities in a country that is eligible for assistance from the International Development Association, is not eligible for assistance from the International Bank for Reconstruction and Development, and does not export on a consistent basis the agricultural commodity with respect to which assistance is furnished; or

(4) activities in a country the President determines is recovering from widespread conflict, a humanitarian crisis, or a complex emergency.

(c) INTERNATIONAL FINANCIAL INSTITUTIONS.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice and vote of the United States to oppose any assistance by such institution, using funds appropriated or otherwise made available by this Act, for the production or extraction of any commodity or mineral for export, if it is in surplus on world markets and if the assistance will cause substantial injury to United States producers of the same, similar, or competing commodity.

SEPARATE ACCOUNTS

SEC. 7026. (a) SEPARATE ACCOUNTS FOR LOCAL CURRENCIES.—

(1) AGREEMENTS.—If assistance is furnished to the government of a foreign country under chapters 1 and 10 of part I or chapter 4 of part II of the Foreign Assistance Act of

1961 under agreements which result in the generation of local currencies of that country, the Secretary of State shall—

(A) require that local currencies be deposited in a separate account established by that government;

(B) enter into an agreement with that government which sets forth—

(i) the amount of the local currencies to be generated; and

(ii) the terms and conditions under which the currencies so deposited may be utilized, consistent with this section; and

(C) establish by agreement with that government the responsibilities of the Department of State and that government to monitor and account for deposits into and disbursements from the separate account.

(2) USES OF LOCAL CURRENCIES.—As may be agreed upon with the foreign government, local currencies deposited in a separate account pursuant to subsection (a), or an equivalent amount of local currencies, shall be used only—

(A) to carry out chapter 1 or 10 of part I or chapter 4 of part II of the Foreign Assistance Act of 1961 (as the case may be), for such purposes as—

(i) project and sector assistance activities; or

(ii) debt and deficit financing; or

(B) for the administrative requirements of the United States Government.

(3) PROGRAMMING ACCOUNTABILITY.—The Department of State shall take all necessary steps to ensure that the equivalent of the local currencies disbursed pursuant to subsection (a)(2)(A) from the separate account established pursuant to subsection (a)(1) are used for the purposes agreed upon pursuant to subsection (a)(2).

(4) TERMINATION OF ASSISTANCE PROGRAMS.—Upon termination of assistance to a country under chapter 1 or 10 of part I or chapter 4 of part II of the Foreign Assistance Act of 1961 (as the case may be), any unencumbered balances of funds which remain in a separate account established pursuant to subsection (a) shall be disposed of for such purposes as may be agreed to by the government of that country and the United States Government.

(b) SEPARATE ACCOUNTS FOR CASH TRANSFERS.—

(1) IN GENERAL.—If assistance is made available to the government of a foreign country, under chapter 1 or 10 of part I or chapter 4 of part II of the Foreign Assistance Act of 1961, as cash transfer assistance or as nonproject sector assistance, that country shall be required to maintain such funds in a separate account and not commingle with any other funds.

(2) APPLICABILITY OF OTHER PROVISIONS OF LAW.—Such funds may be obligated and expended notwithstanding provisions of law which are inconsistent with the nature of this assistance, including provisions which are referenced in the Joint Explanatory Statement of the Committee of Conference accompanying House Joint Resolution 648 (House Report No. 98–1159).

(3) NOTIFICATION.—At least 15 days prior to obligating any such cash transfer or nonproject sector assistance, the

President shall submit a notification through the regular notification procedures of the Committees on Appropriations, which shall include a detailed description of how the funds proposed to be made available will be used, with a discussion of the United States interests that will be served by such assistance (including, as appropriate, a description of the economic policy reforms that will be promoted by such assistance).

(4) EXEMPTION.—Nonproject sector assistance funds may be exempt from the requirements of paragraph (1) only through the regular notification procedures of the Committees on Appropriations.

ELIGIBILITY FOR ASSISTANCE

SEC. 7027. (a) ASSISTANCE THROUGH NONGOVERNMENTAL ORGANIZATIONS.—Restrictions contained in this or any other Act with respect to assistance for a country shall not be construed to restrict assistance in support of programs of nongovernmental organizations from funds appropriated by this Act to carry out the provisions of chapters 1, 10, 11, and 12 of part I and chapter 4 of part II of the Foreign Assistance Act of 1961, the FREEDOM Support Act (Public Law 102–511), and the Support for East European Democracy (SEED) Act of 1989 (Public Law 101–179): *Provided,* That before using the authority of this subsection to furnish assistance in support of programs of nongovernmental organizations, the President shall notify the Committees on Appropriations pursuant to the regular notification procedures, including a description of the program to be assisted, the assistance to be provided, and the reasons for furnishing such assistance: *Provided further,* That nothing in this subsection shall be construed to alter any existing statutory prohibitions against abortion or involuntary sterilizations contained in this or any other Act.

(b) PUBLIC LAW 480.—During fiscal year 2026, restrictions contained in this or any other Act with respect to assistance for a country shall not be construed to restrict assistance under the Food for Peace Act (Public Law 83–480; 7 U.S.C. 1721 et seq.): *Provided,* That none of the funds appropriated to carry out title I of such Act and made available pursuant to this subsection may be obligated or expended except as provided through the regular notification procedures of the Committees on Appropriations.

(c) EXCEPTION.—This section shall not apply—

(1) with respect to section 620A of the Foreign Assistance Act of 1961 or any comparable provision of law prohibiting assistance to countries that support international terrorism; or

(2) with respect to section 116 of the Foreign Assistance Act of 1961 or any comparable provision of law prohibiting assistance to the government of a country that violates internationally recognized human rights.

PROMOTION OF UNITED STATES ECONOMIC INTERESTS

SEC. 7028. (a) DIPLOMATIC ENGAGEMENT.—Consistent with section 704 of the Championing American Business Through Diplomacy Act of 2019 (title VII of division J of Public Law 116–94), the Secretary of State, in consultation with the Secretary of Commerce, shall prioritize the allocation of funds appropriated by this Act under the heading "Diplomatic Programs" for support of Chief of

H. R. 7148—388

Mission diplomatic engagement to foster commercial relations and safeguard United States economic and business interests in the country in which each Chief of Mission serves, including activities and initiatives to create and maintain an enabling environment, promote and protect such interests, and resolve commercial disputes: *Provided,* That each Mission Resource Request and Bureau Resource Request shall include amounts required to prioritize the activities described in this subsection.

(b) TRAINING.—In carrying out section 705 of title VII of division J of Public Law 116–94, the Secretary of State shall annually assess training needs across the economic and commercial diplomacy issue areas and ensure, after a review of course offerings, course attendance records, and course evaluation results, that current offerings meet training needs.

(c) ASSISTANCE.—

(1) The Secretary of State should direct each Chief of Mission to consider how best to advance and support commercial relations and the safeguarding of United States business interests in the development and execution of the applicable Integrated Country Strategy and the Mission Resource Request for each country receiving bilateral assistance from funds appropriated by this Act.

(2) Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $5,000,000 shall be made available to enhance and expand Department of State coordination with the Department of Commerce on the furtherance of national and economic security interests, subject to the coordination and concurrence of the Assistant Secretary for Global Markets and Director General, United States Foreign Commercial Service: *Provided,* That such funds shall not be used to subsidize or replicate ongoing activities of the United State Foreign Commercial Service, and may not be used for programs or activities in the United States: *Provided further,* That such funds are subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

INTERNATIONAL FINANCIAL INSTITUTIONS

SEC. 7029. (a) EVALUATIONS.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice of the United States to encourage such institution to adopt and implement a publicly available policy, including the strategic use of peer reviews and external experts, to conduct independent, in-depth evaluations of the effectiveness of at least 35 percent of all loans, grants, programs, and significant analytical non-lending activities in advancing the institution's goals of reducing poverty and promoting equitable economic growth, consistent with relevant safeguards, to ensure that decisions to support such loans, grants, programs, and activities are based on accurate data and objective analysis.

(b) SAFEGUARDS.—

(1) STANDARDS.—The Secretary of the Treasury shall instruct the United States Executive Director of the International Bank for Reconstruction and Development and the International Development Association to use the voice and vote of the United States to oppose any loan, grant, policy,

or strategy if such institution has adopted and is implementing any social or environmental safeguard relevant to such loan, grant, policy, or strategy that provides less protection than World Bank safeguards in effect on September 30, 2015.

(2) ACCOUNTABILITY, STANDARDS, AND BEST PRACTICES.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice and vote of the United States to oppose loans or other financing for projects unless such projects—

(A) provide for accountability and transparency, including the collection, verification, and publication of beneficial ownership information related to extractive industries and on-site monitoring during the life of the project;

(B) will be developed and carried out in accordance with best practices regarding environmental conservation, cultural protection, and empowerment of local populations, including free, prior and informed consent of affected Indigenous communities;

(C) do not provide incentives for, or facilitate, forced displacement or other violations of human rights; and

(D) do not partner with or otherwise involve enterprises owned or controlled by the armed forces.

(c) COMPENSATION.—None of the funds appropriated under title V of this Act may be made as payment to any international financial institution while the United States executive director to such institution is compensated by the institution at a rate which, together with whatever compensation such executive director receives from the United States, is in excess of the rate provided for an individual occupying a position at level IV of the Executive Schedule under section 5315 of title 5, United States Code, or while any alternate United States executive director to such institution is compensated by the institution at a rate in excess of the rate provided for an individual occupying a position at level V of the Executive Schedule under section 5316 of title 5, United States Code.

(d) HUMAN RIGHTS.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice and vote of the United States to promote human rights due diligence and risk management, as appropriate, in connection with any loan, grant, policy, or strategy of such institution.

(e) FRAUD AND CORRUPTION.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice of the United States to include in loan, grant, and other financing agreements improvements in borrowing countries' financial management and judicial capacity to investigate, prosecute, and punish fraud and corruption.

(f) BENEFICIAL OWNERSHIP INFORMATION.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice of the United States to encourage such institution to collect, verify, and publish, to the maximum extent practicable, beneficial ownership information (excluding proprietary information) for any corporation or limited liability company, other than a publicly listed company, that receives funds from any such financial institution.

H. R. 7148—390

(g) WHISTLEBLOWER PROTECTIONS.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice of the United States to encourage such institution to effectively implement and enforce policies and procedures which meet or exceed best practices in the United States for the protection of whistleblowers from retaliation, including—

(1) protection against retaliation for internal and lawful public disclosure;

(2) legal burdens of proof;

(3) statutes of limitation for reporting retaliation;

(4) access to binding independent adjudicative bodies, including shared cost and selection external arbitration; and

(5) results that eliminate the effects of proven retaliation, including provision for the restoration of prior employment.

(h) GRIEVANCE MECHANISMS AND PROCEDURES.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice of the United States to support independent investigative and adjudicative mechanisms and procedures that meet or exceed best practices in the United States to provide due process and fair compensation, including the right to reinstatement, for employees who are subjected to harassment, discrimination, retaliation, false allegations, or other misconduct.

(i) CAPITAL INCREASES.—None of the funds appropriated by this Act may be made available to support a new capital increase for an international financial institution unless the President submits a budget request for such increase to Congress and the Secretary of the Treasury concurrent with such request determines and reports to the Committees on Appropriations that—

(1) the capital increase sets such institution on a path to meet its regional or global objectives, as appropriate, including its overarching strategic framework and vision for its role in development finance, and such increase includes agreement on internal reforms and policy measures necessary to enhance the efficiency and effectiveness of the institution; and

(2) the capital increase does not increase the voting power of the People's Republic of China in such institution relative to that of the United States, unless the Secretary of the Treasury certifies and reports to the appropriate congressional committees that such capital increase is in the national interest of the United States.

(j) OPPOSITION TO LENDING TO THE PEOPLE'S REPUBLIC OF CHINA.—The Secretary of the Treasury shall instruct the United States executive director at each multilateral development bank to use the voice and vote of the United States to oppose any loan, extension of financial assistance, or technical assistance by such bank to the People's Republic of China.

(k) REPORT.—Not later than 120 days after the date of enactment of this Act, the Secretary of the Treasury shall submit a report to the Committees on Appropriations detailing any funding provided in the prior calendar year by a financial intermediary fund overseen by the Department of the Treasury to the People's Republic of China or any country or region subject to comprehensive sanctions by the United States.

ECONOMIC RESILIENCE INITIATIVE

SEC. 7030. (a) Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $155,000,000 shall be made available for the Economic Resilience Initiative to enhance the economic security and stability of the United States and partner countries, including through efforts to counter economic coercion: *Provided,* That funds made available by this section may only be made available following consultation with, and the regular notification procedures of, the Committees on Appropriations, and shall include support for—

(1) strategic infrastructure investments, which shall be administered by the Secretary of State in consultation with the heads of other relevant Federal agencies;

(2) activities to enhance critical mineral supply chain security; and

(3) the Cyberspace, Digital Connectivity, and Related Technologies Fund in accordance with Chapter 10 of Part II of the Foreign Assistance Act of 1961: *Provided,* That the authority of section 592(f) of such Act may apply to amounts made available for such Fund under the heading "National Security Investment Programs" and such funds may be made available for the Digital Connectivity and Cybersecurity Partnership program consistent with section 6306 of the Department of State Authorization Act of 2023 (division F of Public Law 118–31).

(b) Funds appropriated by subsection (a) may be transferred to, and merged with, funds appropriated by this Act to the Export-Import Bank of the United States under the heading "Program Account", to the United States International Development Finance Corporation under the heading "Corporate Capital Account", and under the heading "Trade and Development Agency": *Provided,* That such transfer authority is in addition to any other transfer authority provided by this Act or any other Act, and is subject to the regular notification procedures of the Committees on Appropriations.

(c) Of the funds appropriated under title III of this Act, not less than $185,250,000 shall be made available for energy development and security programs for countries globally through approaches consistent with section 3 of the Electrify Africa Act (Public Law 114–121), to improve energy access, productivity, and self-reliance, including to counter the influence of the People's Republic of China and increase the economic competitiveness of the United States in the energy sector.

(d) Section 7030(c) of division F of Public Law 118–47 shall apply during fiscal year 2026.

FINANCIAL MANAGEMENT, BUDGET TRANSPARENCY, AND ANTI-CORRUPTION

SEC. 7031. (a) LIMITATION ON DIRECT GOVERNMENT-TO-GOVERNMENT ASSISTANCE.—

(1) REQUIREMENTS.—Funds appropriated by this Act may be made available for direct government-to-government assistance only if—

(A) the requirements included in section 7031(a)(1)(A) through (E) of the Department of State, Foreign Operations,

H. R. 7148—392

and Related Programs Appropriations Act, 2019 (division F of Public Law 116–6) are fully met; and

(B) the government of the recipient country is taking steps to reduce corruption.

(2) CONSULTATION AND NOTIFICATION.—In addition to the requirements in paragraph (1), funds may only be made available for direct government-to-government assistance subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations: *Provided,* That such notification shall contain an explanation of how the proposed activity meets the requirements of paragraph (1): *Provided further,* That the requirements of this paragraph shall only apply to direct government-to-government assistance in excess of $2,500,000 and all funds available for cash transfer, budget support, and cash payments to individuals.

(3) SUSPENSION OF ASSISTANCE.—The Secretary of State shall suspend any direct government-to-government assistance if the Secretary has credible information of material misuse of such assistance, unless the Secretary reports to the Committees on Appropriations that it is in the national interest of the United States to continue such assistance, including a justification, or that such misuse has been appropriately addressed.

(4) SUBMISSION OF INFORMATION.—The Secretary of State shall submit to the Committees on Appropriations, concurrent with the fiscal year 2027 congressional budget justification materials, amounts planned for assistance described in paragraph (1) by country, proposed funding amount, source of funds, and type of assistance.

(5) DEBT SERVICE PAYMENT PROHIBITION.—None of the funds made available by this Act may be used by the government of any foreign country for debt service payments owed by any country to any international financial institution or to the Government of the People's Republic of China.

(b) NATIONAL BUDGET AND CONTRACT TRANSPARENCY.—

(1) MINIMUM REQUIREMENTS OF FISCAL TRANSPARENCY.—The Secretary of State shall continue to update and strengthen the "minimum requirements of fiscal transparency" for each government receiving assistance appropriated by this Act, as identified in the report required by section 7031(b) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2014 (division K of Public Law 113–76).

(2) DETERMINATION AND REPORT.—For each government identified pursuant to paragraph (1), the Secretary of State, not later than 180 days after the date of enactment of this Act, shall make or update any determination of "significant progress" or "no significant progress" in meeting the minimum requirements of fiscal transparency, and make such determinations publicly available in an annual "Fiscal Transparency Report" to be posted on the Department of State website: *Provided,* That such report shall include the elements included under this section in House Report 118–146.

(3) ASSISTANCE.—Not less than $5,000,000 of the funds appropriated by this Act under the heading "National Security Investment Programs" shall be made available for programs

and activities to assist governments identified pursuant to paragraph (1) to improve budget transparency and to support civil society organizations in such countries that promote budget transparency.

(c) ANTI-KLEPTOCRACY AND HUMAN RIGHTS.—

(1) INELIGIBILITY.—

(A) Officials of foreign governments and their immediate family members about whom the Secretary of State has credible information have been involved, directly or indirectly, in significant corruption, including corruption related to the extraction of natural resources, or a gross violation of human rights, including the wrongful detention of locally employed staff of a United States diplomatic mission or a United States citizen or national, shall be ineligible for entry into the United States.

(B) Concurrent with the application of subparagraph (A), the Secretary shall, as appropriate, refer the matter to the Office of Foreign Assets Control, Department of the Treasury, to determine whether to apply sanctions authorities in accordance with United States law to block the transfer of property and interests in property, and all financial transactions, in the United States involving any person described in such subparagraph.

(C) The Secretary shall also publicly or privately designate or identify the officials of foreign governments and their immediate family members about whom the Secretary has such credible information without regard to whether the individual has applied for a visa.

(2) EXCEPTION.—Individuals shall not be ineligible for entry into the United States pursuant to paragraph (1) if such entry would further important United States law enforcement objectives or is necessary to permit the United States to fulfill its obligations under the United Nations Headquarters Agreement: *Provided,* That nothing in paragraph (1) shall be construed to derogate from United States Government obligations under applicable international agreements.

(3) WAIVER.—The Secretary may waive the application of paragraph (1) if the Secretary determines that the waiver would serve a compelling national interest or that the circumstances which caused the individual to be ineligible have changed sufficiently.

(4) REPORT.—Not later than 30 days after the date of enactment of this Act, and every 90 days thereafter until September 30, 2027, the Secretary of State shall submit a report, including a classified annex if necessary, to the appropriate congressional committees and the Committees on the Judiciary describing the information related to corruption or violation of human rights concerning each of the individuals found ineligible in the previous 12 months pursuant to paragraph (1)(A) as well as the individuals who the Secretary designated or identified pursuant to paragraph (1)(B), or who would be ineligible but for the application of paragraph (2), a list of any waivers provided under paragraph (3), and the justification for each waiver.

(5) POSTING OF REPORT.—Any unclassified portion of the report required under paragraph (4) shall be posted on the Department of State website.

(6) CLARIFICATION.—For purposes of paragraphs (1), (4), and (5), the records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall not be considered confidential.

(d) EXTRACTION OF NATURAL RESOURCES.—

(1) ASSISTANCE.—Funds appropriated by this Act shall be made available to promote and support transparency and accountability of expenditures and revenues related to the extraction of natural resources, including by strengthening implementation and monitoring of the Extractive Industries Transparency Initiative, implementing and enforcing section 8204 of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246; 122 Stat. 2052) and the amendments made by such section, and to prevent the sale of conflict minerals, and for technical assistance to promote independent audit mechanisms and support civil society participation in natural resource management.

(2) PUBLIC DISCLOSURE AND INDEPENDENT AUDITS.—

(A) The Secretary of the Treasury shall instruct the executive director of each international financial institution to use the voice and vote of the United States to oppose any assistance by such institutions (including any loan, credit, grant, or guarantee) to any country for the extraction and export of a natural resource if the government of such country has in place laws, regulations, or procedures to prevent or limit the public disclosure of company payments as required by United States law, and unless such government has adopted laws, regulations, or procedures in the sector in which assistance is being considered that: (1) accurately account for and publicly disclose payments to the government by companies involved in the extraction and export of natural resources; (2) include independent auditing of accounts receiving such payments and the public disclosure of such audits; and (3) require public disclosure of agreement and bidding documents, as appropriate.

(B) The requirements of subparagraph (A) shall not apply to assistance for the purpose of building the capacity of such government to meet the requirements of such subparagraph.

DEMOCRACY PROGRAMS

SEC. 7032. (a) FUNDING.—Of the funds appropriated by this Act under the headings "National Security Investment Programs", "Democracy Fund", and "International Narcotics Control and Law Enforcement", $2,175,000,000 should be made available for democracy programs as described under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(b) AUTHORITIES.—

(1) AVAILABILITY.—Funds made available by this Act for democracy programs pursuant to subsection (a) and under the heading "National Endowment for Democracy" may be made available notwithstanding any other provision of law, and with

regard to the National Endowment for Democracy (NED), any regulation.

(2) BENEFICIARIES.—Funds made available by this Act for the NED are made available pursuant to the authority of the National Endowment for Democracy Act (title V of Public Law 98–164), including all decisions regarding the selection of beneficiaries.

(c) DEFINITION OF DEMOCRACY PROGRAMS.—For purposes of funds appropriated by this Act, the term "democracy programs" means programs that support good governance, credible and competitive elections, freedom of expression, association, assembly, and religion, human rights, labor rights, independent media, and the rule of law, and that otherwise strengthen the capacity of democratic political parties, governments, nongovernmental organizations and institutions, and citizens to support the development of democratic states and institutions that are responsive and accountable to citizens.

(d) RESTRICTIONS ON FOREIGN GOVERNMENT INTERFERENCE.—

(1) PRIOR APPROVAL.—With respect to the provision of assistance for democracy programs in this Act, the organizations implementing such assistance, the specific nature of the assistance, and the participants in such programs shall not be subject to prior approval by the government of any foreign country.

(2) DISCLOSURE OF IMPLEMENTING PARTNER INFORMATION.—If the Secretary of State determines that the government of the country is undemocratic or has engaged in or condoned harassment, threats, or attacks against organizations implementing democracy programs, any new bilateral agreement governing the terms and conditions under which assistance is provided to such country shall not require the disclosure of the names of implementing partners of democracy programs, and the Secretary of State shall expeditiously seek to negotiate amendments to existing bilateral agreements, as necessary, to conform to this requirement.

(e) PROTECTION OF CIVIL SOCIETY ACTIVISTS AND JOURNALISTS.—Funds appropriated by this Act under the headings "National Security Investment Programs" and "Democracy Fund" shall be made available to support and protect members of civil society and journalists who have been threatened, harassed, or attacked.

INTERNATIONAL RELIGIOUS FREEDOM

SEC. 7033. (a) INTERNATIONAL RELIGIOUS FREEDOM OFFICE.—Funds appropriated by this Act under the heading "Diplomatic Programs" shall be made available for the Office of International Religious Freedom, Department of State.

(b) ASSISTANCE.—

(1) Of the funds appropriated by this Act under the headings "National Security Investment Programs" and "Democracy Fund", not less than $40,000,000 shall be made available for international religious freedom programs: *Provided,* That such funds shall be the responsibility of the Ambassador-at-Large for International Religious Freedom, in consultation with other relevant United States Government officials: *Provided further,* That such funds shall be prioritized for programs in countries designated as a country of particular concern

H. R. 7148—396

for religious freedom pursuant to section 402(b)(1)(A)(ii) of the International Religious Freedom Act of 1998 (22 U.S.C. 6442).

(2) Funds appropriated by this Act under the heading "International Humanitarian Assistance" shall be made available for humanitarian assistance for vulnerable and persecuted ethnic and religious minorities, including victims of genocide designated by the Secretary of State and other groups that have suffered crimes against humanity and ethnic cleansing.

(c) AUTHORITY.—Funds appropriated by this Act under the heading "National Security Investment Programs" may be made available notwithstanding any other provision of law for assistance for ethnic and religious minorities in Iraq and Syria.

SPECIAL PROVISIONS

SEC. 7034. (a) VICTIMS OF WAR, DISPLACED CHILDREN, AND DISPLACED BURMESE.—Funds appropriated in title III of this Act that are made available for victims of war, displaced children, displaced Burmese, and to combat trafficking in persons and assist victims of such trafficking may be made available notwithstanding any other provision of law.

(b) FORENSIC ASSISTANCE.—Of the funds appropriated by this Act under the headings "National Security Investment Programs" and "International Narcotics Control and Law Enforcement", not less than $15,000,000 shall be made available for forensic assistance related to combating human trafficking as well as the exhumation and identification of victims of war crimes, crimes against humanity, and genocide: *Provided,* That such funds shall be in addition to funds made available by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs for assistance for countries.

(c) DIRECTIVES AND AUTHORITIES.—

(1) GENOCIDE VICTIMS MEMORIAL SITES.—Funds appropriated by this Act under the heading "National Security Investment Programs" may be made available as contributions to establish and maintain memorial sites of genocide, subject to the regular notification procedures of the Committees on Appropriations.

(2) EXCHANGE VISITOR PROGRAM.—None of the funds made available by this Act may be used to modify the Exchange Visitor Program administered by the Department of State to implement the Mutual Educational and Cultural Exchange Act of 1961 (Public Law 87–256; 22 U.S.C. 2451 et seq.), except through the formal rulemaking process pursuant to the Administrative Procedure Act (5 U.S.C. 551 et seq.) and notwithstanding the exception to such rulemaking process in such Act: *Provided,* That funds made available for such purpose shall only be made available after consultation with, and subject to the regular notification procedures of, the Committees on Appropriations, regarding how any proposed modification would affect the public diplomacy goals of, and the estimated economic impact on, the United States: *Provided further,* That such consultation shall take place not later than 30 days prior to the publication in the Federal Register of any regulatory action modifying the Exchange Visitor Program.

(3) PAYMENTS.—Funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign

operations, and related programs under the headings "Diplomatic Programs", except for funds designated by Congress as an emergency requirement pursuant to a concurrent resolution on the budget or the Balanced Budget and Emergency Deficit Control Act of 1985, are available to provide payments pursuant to section 901(i)(2) of title IX of division J of the Further Consolidated Appropriations Act, 2020 (22 U.S.C. 2680b(i)(2)): *Provided,* That funds made available pursuant to this paragraph shall be subject to prior consultation with the Committees on Appropriations.

(4) PROGRAM COORDINATION.—The fourth proviso under the heading "International Narcotics Control and Law Enforcement" in the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2022 (division K of Public Law 117–103) shall continue in effect during fiscal year 2026 and apply to funds appropriated under such heading in this Act.

(d) PARTNER VETTING.—Prior to initiating a partner vetting program, providing a direct vetting option, or making a significant change to the scope of an existing partner vetting program, the Secretary of State shall consult with the Committees on Appropriations: *Provided,* That the Secretary of State may restrict the award of, terminate, or cancel contracts, grants, or cooperative agreements or require an awardee to restrict the award of, terminate, or cancel a sub-award based on information in connection with a partner vetting program.

(e) INTERNATIONAL CHILD ABDUCTIONS.—The Secretary of State should withhold funds appropriated under title III of this Act for assistance for the central government of any country that is not taking appropriate steps to comply with the Convention on the Civil Aspects of International Child Abductions, done at the Hague on October 25, 1980: *Provided,* That the Secretary shall report to the Committees on Appropriations within 15 days of withholding funds under this subsection.

(f) CONTINGENCIES.—During fiscal year 2026, the President may use up to $125,000,000 under the authority of section 451 of the Foreign Assistance Act of 1961, notwithstanding any other provision of law.

(g) TRANSFER OF FUNDS FOR EXTRAORDINARY PROTECTION.—The Secretary of State may transfer to, and merge with, funds under the heading "Protection of Foreign Missions and Officials" unobligated balances of expired funds appropriated under the heading "Diplomatic Programs" for fiscal year 2026, at no later than the end of the fifth fiscal year after the last fiscal year for which such funds are available for the purposes for which appropriated: *Provided,* That not more than $50,000,000 may be transferred.

(h) IMPACT ON JOBS.—Section 7056 of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2021 (division K of Public Law 116–260) shall continue in effect during fiscal year 2026.

(i) EXTENSION OF AUTHORITIES.—

(1) INCENTIVES FOR CRITICAL POSTS.—The authority contained in section 1115(d) of the Supplemental Appropriations Act, 2009 (Public Law 111–32) shall remain in effect through September 30, 2026.

(2) TRANSFER OF BALANCES.—Section 7081(h) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2017 (division J of Public Law 115–31) shall continue in effect during fiscal year 2026.

(3) PROTECTIVE SERVICES.—Section 7071 of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2022 (division K of Public Law 117–103) shall continue in effect during fiscal year 2026 and shall apply to funds appropriated by this Act.

(4) EXTENSIONS.—

(A) Chapter 5 of title I of the Emergency Wartime Supplemental Appropriations Act, 2003 (Public Law 108–11; 117 Stat. 576) is amended under the heading "Loan Guarantees to Israel"—

(i) in the matter preceding the first proviso, by striking "September 30, 2030" and inserting "September 30, 2031"; and

(ii) in the second proviso, by striking "September 30, 2030" and inserting "September 30, 2031".

(B) Section 7030(b) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (division J of Public Law 118–47) shall continue in effect during fiscal year 2026 and shall—

(i) also apply to funds appropriated by this Act under the heading "National Security Investment Programs" and to the countries of Costa Rica and Panama; and

(ii) be applied by substituting "Department of State" for "United States Agency for International Development".

(5) CATEGORICAL ELIGIBILITY.—The Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1990 (Public Law 101–167) is amended—

(A) in section 599D (8 U.S.C. 1157 note)—

(i) in subsection (b)(3), by striking "and 2025" and inserting "2025, and 2026"; and

(ii) in subsection (e), by striking "2025" each place it appears and inserting "2026"; and

(B) in section 599E(b)(2) (8 U.S.C. 1255 note), by striking "2025" and inserting "2026".

(j) HIV/AIDS WORKING CAPITAL FUND.—Funds available in the HIV/AIDS Working Capital Fund established pursuant to section 525(b)(1) of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 2005 (Public Law 108–447) may be made available for pharmaceuticals and other products for child survival, malaria, tuberculosis, and emerging infectious diseases to the same extent as HIV/AIDS pharmaceuticals and other products, subject to the terms and conditions in such section: *Provided,* That the authority in section 525(b)(5) of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 2005 (Public Law 108–447) shall be exercised by the Secretary of State with respect to funds deposited for such non-HIV/AIDS pharmaceuticals and other products, and shall be subject to the regular notification procedures of the Committees on Appropriations: *Provided further,* That the Secretary shall include in the congressional budget justification an accounting of budgetary

resources, disbursements, balances, and reimbursements related to such fund.

(k) FOUNDATION.—Subtitle A of title LI of division E of the Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025 (Public Law 118–159) is amended—

(1) in section 5101(6) (22 U.S.C. 10601(6)), by striking "International Conservation" and inserting "Natural Security and Counterterrorism"; and

(2) in section 5102 (22 U.S.C. 10602)—

(A) in the section heading, by striking "international conservation" and inserting "natural security and counterterrorism"; and

(B) in subsection (a)(1), by striking "International Conservation" and inserting "Natural Security and Counterterrorism".

(l) DEFINITIONS.—

(1) APPROPRIATE CONGRESSIONAL COMMITTEES.—Unless otherwise defined in this Act, for purposes of this Act the term "appropriate congressional committees" means the Committees on Appropriations and Foreign Relations of the Senate and the Committees on Appropriations and Foreign Affairs of the House of Representatives.

(2) CONGRESSIONAL NOTIFICATIONS.—The term "regular notification procedures of the Committees on Appropriations" means such Committees shall be notified not less than 15 days in advance of the obligation of funds: *Provided,* That such notifications shall include the information detailed under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(3) FUNDS APPROPRIATED BY THIS ACT AND PRIOR ACTS.— Unless otherwise defined in this Act, for purposes of this Act the term "funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs" means funds that remain available for obligation, and have not expired.

(4) INTERNATIONAL FINANCIAL INSTITUTIONS.—In this Act "international financial institutions" means the International Bank for Reconstruction and Development, the International Development Association, the International Finance Corporation, the Inter-American Development Bank, the International Monetary Fund, the International Fund for Agricultural Development, the Asian Development Bank, the Asian Development Fund, the Inter-American Investment Corporation, the North American Development Bank, the European Bank for Reconstruction and Development, the African Development Bank, the African Development Fund, and the Multilateral Investment Guarantee Agency.

(5) PACIFIC ISLANDS COUNTRIES.—In this Act, the term "Pacific Islands countries" means the Cook Islands, the Republic of Fiji, the Republic of Kiribati, the Republic of the Marshall Islands, the Federated States of Micronesia, the Republic of Nauru, Niue, the Republic of Palau, the Independent State of Papua New Guinea, the Independent State of Samoa, the Solomon Islands, the Kingdom of Tonga, Tuvalu, and the Republic of Vanuatu.

H. R. 7148—400

(6) PRIOR CONSULTATION.—For the purposes of this Act, the term "prior consultation" means a substantive engagement between a relevant Federal agency and the Committees on Appropriations at least 7 days prior to any public announcement or submission of a notification in which such Committees are provided with details and the opportunity to engage on—

(A) the proposed use of funds, as applicable;

(B) the development, content, or conduct of a program, project, or activity; and

(C) the proposed decision to be taken.

(7) SPEND PLAN.—In this Act, the term "spend plan" means a plan for the uses of funds appropriated for a particular entity, country, program, purpose, or account and which shall include, at a minimum, a description of—

(A) realistic and sustainable goals, criteria for measuring progress, and a timeline for achieving such goals;

(B) amounts and sources of funds by account;

(C) how such funds will complement other ongoing or planned programs; and

(D) implementing partners, to the maximum extent practicable.

(8) SUCCESSOR OPERATING UNIT.—Any reference to a particular operating unit or office in this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs shall be deemed to include any successor operating unit performing the same or similar functions.

(9) THIS ACT.—This Act shall be deemed to be an Act making appropriations for the Department of State, Foreign Operations, and Related Programs for purposes of any provision of law citing, or referring to amounts made available by, such an Act.

LAW ENFORCEMENT AND SECURITY

SEC. 7035. (a) ASSISTANCE.—

(1) COMMUNITY-BASED POLICE ASSISTANCE.—Funds made available under titles III and IV of this Act to carry out the provisions of chapter 1 of part I and chapters 4 and 6 of part II of the Foreign Assistance Act of 1961, may be used, notwithstanding section 660 of that Act, to enhance the effectiveness and accountability of civilian police authority through training and technical assistance in human rights, the rule of law, anti-corruption, strategic planning, and through assistance to foster civilian police roles that support democratic governance, including assistance for programs to prevent conflict, respond to disasters, address gender-based violence, and foster improved police relations with the communities they serve.

(2) COMBAT CASUALTY CARE.—

(A) Consistent with the objectives of the Foreign Assistance Act of 1961 and the Arms Export Control Act, funds appropriated by this Act under the headings "Peacekeeping Operations" and "Foreign Military Financing Program" shall be made available for combat casualty training and equipment in an amount above the prior fiscal year.

(B) The Secretary of State shall offer combat casualty care training and equipment as a component of any package

of lethal assistance funded by this Act with funds appropriated under the headings "Peacekeeping Operations" and "Foreign Military Financing Program": *Provided,* That the requirement of this subparagraph shall apply to a country in conflict, unless the Secretary determines that such country has in place, to the maximum extent practicable, functioning combat casualty care treatment and equipment that meets or exceeds the standards recommended by the Committee on Tactical Combat Casualty Care: *Provided further,* That any such training and equipment for combat casualty care shall be made available through an open and competitive process.

(3) TRAINING RELATED TO INTERNATIONAL HUMANITARIAN LAW.—The Secretary of State shall offer training related to the requirements of international humanitarian law as a component of any package of lethal assistance funded by this Act with funds appropriated under the headings "Peacekeeping Operations" and "Foreign Military Financing Program": *Provided,* That the requirement of this paragraph shall not apply to a country that is a member of the North Atlantic Treaty Organization (NATO), is a major non-NATO ally designated by section 517(b) of the Foreign Assistance Act of 1961, or is complying with international humanitarian law: *Provided further,* That any such training shall be made available through an open and competitive process.

(4) INTERNATIONAL PRISON CONDITIONS.—Funds appropriated by this Act under the headings "National Security Investment Programs" and "International Narcotics Control and Law Enforcement" shall be made available for assistance to eliminate inhumane conditions in foreign prisons and other detention facilities, notwithstanding section 660 of the Foreign Assistance Act of 1961: *Provided,* That the Secretary of State shall consult with the Committees on Appropriations on the proposed uses of such funds prior to obligation and not later than 60 days after the date of enactment of this Act: *Provided further,* That such funds shall be in addition to funds otherwise made available by this Act for such purpose.

(5) MANAGEMENT AND TRANSPARENCY OF ASSISTANCE.—Of the funds appropriated by this Act under the heading "Diplomatic Programs", not less than $2,500,000 shall be made available for the Bureau of Political-Military Affairs, Department of State, in accordance with the purposes specified under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(b) AUTHORITIES.—

(1) RECONSTITUTING CIVILIAN POLICE AUTHORITY.—In providing assistance with funds appropriated by this Act under section 660(b)(6) of the Foreign Assistance Act of 1961, support for a nation emerging from instability may be deemed to mean support for regional, district, municipal, or other sub-national entity emerging from instability, as well as a nation emerging from instability.

(2) DISARMAMENT, DEMOBILIZATION, AND REINTEGRATION.— Section 7034(d) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2015 (division J of Public Law 113–235) shall continue in effect during fiscal year 2026, and shall apply to funds made available by this

Act under the heading "National Security Investment Programs".

(3) COMMERCIAL LEASING OF DEFENSE ARTICLES.—Notwithstanding any other provision of law, and subject to the regular notification procedures of the Committees on Appropriations, the authority of section 23(a) of the Arms Export Control Act (22 U.S.C. 2763) may be used to provide financing to Israel, Egypt, the North Atlantic Treaty Organization (NATO), and major non-NATO allies for the procurement by leasing (including leasing with an option to purchase) of defense articles from United States commercial suppliers, not including Major Defense Equipment (other than helicopters and other types of aircraft having possible civilian application), if the President determines that there are compelling foreign policy or national security reasons for those defense articles being provided by commercial lease rather than by government-to-government sale under such Act.

(4) SPECIAL DEFENSE ACQUISITION FUND.—Not to exceed $900,000,000 may be obligated pursuant to section 51(c)(2) of the Arms Export Control Act (22 U.S.C. 2795(c)(2)) for the purposes of the Special Defense Acquisition Fund (the Fund), to remain available for obligation until September 30, 2028: *Provided,* That the provision of defense articles and defense services to foreign countries or international organizations from the Fund shall be subject to the concurrence of the Secretary of State.

(5) EXTENSION OF WAR RESERVE STOCKPILE AUTHORITY.—Section 514(b)(2)(A) of the Foreign Assistance Act of 1961 (22 U.S.C. 2321h(b)(2)(A)) is amended by striking "2027" and inserting "2028".

(6) PROGRAM CLARIFICATION.—Notwithstanding section 503(a)(3) of Public Law 87–195 (22 U.S.C. 2311(a)(3)), the procurement of defense articles and services funded on a non-repayable basis under section 23 of the Arms Export Control Act may be priced to include the costs of salaries of members of the Armed Forces of the United States engaged in security assistance activities pursuant to 10 U.S.C. 341 (relating to the State Partnership Program): *Provided,* That this paragraph shall only apply to funds that remain available for obligation in fiscal year 2026.

(7) FOREIGN MILITARY FINANCING DIRECT LOANS AND LOAN GUARANTEES.—Through fiscal year 2027, the terms and conditions provided in section 2606(a) and (b) of the Consolidated Appropriations Act, 2022 (Public Law 117–103; 136 Stat. 785) shall apply in the same manner and to the same extent to amounts made available by this Act under the heading "Foreign Military Financing Program", except that the limitations on amounts made available for direct loans and loan guarantees under sections 2606(a) and (b) shall each be increased by an additional $8,000,000,000, and the phrase ", except with respect to the initial obligation of funds for such costs" shall be inserted before the period in the final proviso of section 2606(a) and the final proviso of section 2606(b).

(8) CONTINUATION OF AUTHORITY.—Section 7035(b)(7) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (division F of Public Law 118–47) shall continue in effect during fiscal year 2026.

H. R. 7148—403

(c) LIMITATIONS.—

(1) CHILD SOLDIERS.—Funds appropriated by this Act should not be used to support any military training or operations that include child soldiers.

(2) LANDMINES AND CLUSTER MUNITIONS.—

(A) LANDMINES.—Notwithstanding any other provision of law, demining equipment available to the Department of State and used in support of the clearance of landmines and unexploded ordnance for humanitarian purposes may be disposed of on a grant basis in foreign countries, subject to such terms and conditions as the Secretary of State may prescribe.

(B) CLUSTER MUNITIONS.—No military assistance shall be furnished for cluster munitions, no defense export license for cluster munitions may be issued, and no cluster munitions or cluster munitions technology shall be sold or transferred, unless—

(i) the submunitions of the cluster munitions, after arming, do not result in more than 1 percent unexploded ordnance across the range of intended operational environments, and the agreement applicable to the assistance, transfer, or sale of such cluster munitions or cluster munitions technology specifies that the cluster munitions will only be used against clearly defined military targets and will not be used where civilians are known to be present or in areas normally inhabited by civilians; or

(ii) such assistance, license, sale, or transfer is for the purpose of demilitarizing or permanently disposing of such cluster munitions.

(3) CROWD CONTROL.—If the Secretary of State has information that a unit of a foreign security force uses excessive force to repress peaceful expression or assembly concerning corruption, harm to the environment or human health, or the fairness of electoral processes, or in countries that are undemocratic or undergoing democratic transition, the Secretary shall promptly determine if such information is credible: *Provided,* That if the information is determined to be credible, funds appropriated by this Act should not be used for tear gas, small arms, light weapons, ammunition, or other items for crowd control purposes for such unit, unless the Secretary of State determines that the foreign government is taking effective measures to bring the responsible members of such unit to justice.

(4) OVERSIGHT AND ACCOUNTABILITY.—

(A) Prior to the signing of a new Letter of Offer and Acceptance (LOA) involving funds appropriated under the heading "Foreign Military Financing Program", the Secretary of State shall consult with each recipient government to ensure that the LOA between the United States and such recipient government complies with the purposes of section 4 of the Arms Export Control Act (22 U.S.C. 2754) and that the defense articles, services, and training procured with funds appropriated under such heading are consistent with United States national security policy.

(B) The Secretary of State shall promptly inform the appropriate congressional committees of any instance in

H. R. 7148—404

which the Secretary of State has credible information that such assistance was used in a manner contrary to such agreement.

(d) OTHER MATTERS.—

(1) SECURITY ASSISTANCE REPORT.—Not later than 120 days after the date of enactment of this Act, the Secretary of State shall submit to the Committees on Appropriations a report on funds obligated and expended during fiscal year 2025, by country and purpose of assistance, including for sustainment of Department of Defense security cooperation programs, and under the headings "Peacekeeping Operations", "International Military Education and Training", and "Foreign Military Financing Program".

(2) ANNUAL FOREIGN MILITARY TRAINING REPORT.—For the purposes of implementing section 656 of the Foreign Assistance Act of 1961, the term "military training provided to foreign military personnel by the Department of Defense and the Department of State" shall be deemed to include all military training provided by foreign governments with funds appropriated to the Department of Defense or the Department of State, except for training provided by the government of a country designated by section 517(b) of such Act (22 U.S.C. 2321k(b)) as a major non-NATO ally: *Provided,* That such third-country training shall be clearly identified in the report submitted pursuant to section 656 of such Act.

(3) LEAHY LAW.—For purposes of implementing section 620M of the Foreign Assistance Act of 1961, the term "credible information" means information that, considering the source of such information and the surrounding circumstances, supports a reasonable belief that a violation has occurred, and shall not be determined solely on the basis of the number of sources; whether the source has been critical of a policy of the United States Government or its security partners; whether the source has a personal connection to the information being reported; or whether the United States Government is able to independently verify the information.

COUNTERING THE FLOW OF FENTANYL AND OTHER SYNTHETIC DRUGS

SEC. 7036. (a) ASSISTANCE.—Of the funds appropriated by this Act under the headings "National Security Investment Programs" and "International Narcotics Control and Law Enforcement", not less than $150,000,000 shall be made available for programs to counter the flow of fentanyl, fentanyl precursors, and other synthetic drugs into the United States: *Provided,* That such funds shall be in addition to funds otherwise made available for such purposes.

(b) USES OF FUNDS.—Funds made available pursuant to subsection (a) shall be made available to support—

(1) efforts to stop the flow of fentanyl, fentanyl precursors, and other synthetic drugs and their precursor materials to the United States from and through the People's Republic of China (PRC), Mexico, and other countries;

(2) law enforcement cooperation and capacity building efforts aimed at disrupting and dismantling transnational

criminal organizations involved in the production and traf-
ficking of fentanyl, fentanyl precursors, and other synthetic
drugs;

(3) implementation of the Fighting Emerging Narcotics
Through Additional Nations to Yield Lasting Results Act (part
7 of subtitle C of the James M. Inhofe National Defense
Authorization Act for Fiscal Year 2023, Public Law 117–263);
and

(4) engagement, including through multilateral organiza-
tions and frameworks, to catalyze collective action to address
the public health and security threats posed by fentanyl,
fentanyl precursors, and other synthetic drugs, including
through the Global Coalition to Address Synthetic Drug
Threats.

PALESTINIAN STATEHOOD

SEC. 7037. (a) LIMITATION ON ASSISTANCE.—None of the funds
appropriated under titles III through VI of this Act may be provided
to support a Palestinian state unless the Secretary of State deter-
mines and certifies to the appropriate congressional committees
that—

(1) the governing entity of a new Palestinian state—
(A) has demonstrated a firm commitment to peaceful
co-existence with the State of Israel; and
(B) is taking appropriate measures to counter terrorism
and terrorist financing in the West Bank and Gaza,
including the dismantling of terrorist infrastructures, and
is cooperating with appropriate Israeli and other appro-
priate security organizations; and
(2) the Palestinian Authority (or the governing entity of
a new Palestinian state) is working with other countries in
the region to vigorously pursue efforts to establish a just,
lasting, and comprehensive peace in the Middle East that will
enable Israel and an independent Palestinian state to exist
within the context of full and normal relationships, which
should include—
(A) termination of all claims or states of belligerency;
(B) respect for and acknowledgment of the sovereignty,
territorial integrity, and political independence of every
state in the area through measures including the establish-
ment of demilitarized zones;
(C) their right to live in peace within secure and recog-
nized boundaries free from threats or acts of force;
(D) freedom of navigation through international water-
ways in the area; and
(E) a framework for achieving a just settlement of
the refugee problem.

(b) SENSE OF CONGRESS.—It is the sense of Congress that
the governing entity should enact a constitution assuring the rule
of law, an independent judiciary, and respect for human rights
for its citizens, and should enact other laws and regulations
assuring transparent and accountable governance.

(c) WAIVER.—The President may waive subsection (a) if the
President determines that it is important to the national security
interest of the United States to do so.

H. R. 7148—406

(d) EXEMPTION.—The restriction in subsection (a) shall not apply to assistance intended to help reform the Palestinian Authority and affiliated institutions, or the governing entity, in order to help meet the requirements of subsection (a), consistent with the provisions of section 7040 of this Act ("Limitation on Assistance for the Palestinian Authority").

PROHIBITION ON ASSISTANCE TO THE PALESTINIAN BROADCASTING CORPORATION

SEC. 7038. None of the funds appropriated or otherwise made available by this Act may be used to provide equipment, technical support, consulting services, or any other form of assistance to the Palestinian Broadcasting Corporation.

ASSISTANCE FOR THE WEST BANK AND GAZA

SEC. 7039. (a) OVERSIGHT.—For fiscal year 2026, 30 days prior to the initial obligation of funds for the bilateral West Bank and Gaza Program, the Secretary of State shall certify to the Committees on Appropriations that procedures have been established to assure the Comptroller General of the United States will have access to appropriate United States financial information in order to review the uses of United States assistance for the Program funded under the heading "National Security Investment Programs" for the West Bank and Gaza.

(b) VETTING.—Prior to the obligation of funds appropriated by this Act under the heading "National Security Investment Programs" for assistance for the West Bank and Gaza, the Secretary of State shall take all appropriate steps to ensure that such assistance is not provided to or through any individual, private or government entity, or educational institution that the Secretary knows or has reason to believe advocates, plans, sponsors, engages in, or has engaged in, terrorist activity nor, with respect to private entities or educational institutions, those that have as a principal officer of the entity's governing board or governing board of trustees any individual that has been determined to be involved in, or advocating terrorist activity or determined to be a member of a designated foreign terrorist organization: *Provided,* That the Secretary of State shall, as appropriate, establish procedures specifying the steps to be taken in carrying out this subsection and shall terminate assistance to any individual, entity, or educational institution which the Secretary has determined to be involved in or advocating terrorist activity.

(c) PROHIBITION.—

(1) RECOGNITION OF ACTS OF TERRORISM.—None of the funds appropriated under titles III through VI of this Act for assistance under the West Bank and Gaza Program may be made available for—

(A) the purpose of recognizing or otherwise honoring individuals who commit, or have committed acts of terrorism; and

(B) any educational institution located in the West Bank or Gaza that is named after an individual who the Secretary of State determines has committed an act of terrorism.

(2) SECURITY ASSISTANCE AND REPORTING REQUIREMENT.—Notwithstanding any other provision of law, none of the funds

made available by this or prior appropriations Acts, including funds made available by transfer, may be made available for obligation for security assistance for the West Bank and Gaza until the Secretary of State reports to the Committees on Appropriations on—

    (A) the benchmarks that have been established for security assistance for the West Bank and Gaza and on the extent of Palestinian compliance with such benchmarks; and

    (B) the steps being taken by the Palestinian Authority to end torture and other cruel, inhuman, and degrading treatment of detainees, including by bringing to justice members of Palestinian security forces who commit such crimes.

(d) OVERSIGHT BY THE DEPARTMENT OF STATE.—

    (1) The Secretary of State shall ensure that Federal or non-Federal audits of all contractors and grantees, and significant subcontractors and sub-grantees, under the West Bank and Gaza Program, are conducted at least on an annual basis to ensure, among other things, compliance with this section.

    (2) Of the funds appropriated by this Act, up to $1,400,000 may be used by the Office of Inspector General of the Department of State for audits, investigations, and other activities in furtherance of the requirements of this subsection: *Provided,* That such funds are in addition to funds otherwise available for such purposes.

(e) COMPTROLLER GENERAL OF THE UNITED STATES AUDIT.— Subsequent to the certification specified in subsection (a), the Comptroller General of the United States shall conduct an audit and an investigation of the treatment, handling, and uses of all funds for the bilateral West Bank and Gaza Program, including all funds provided as cash transfer assistance, in fiscal year 2026 under the heading "National Security Investment Programs", and such audit shall address—

    (1) the extent to which such Program complies with the requirements of subsections (b) and (c); and

    (2) an examination of all programs, projects, and activities carried out under such Program, including both obligations and expenditures.

(f) NOTIFICATION PROCEDURES.—Funds made available in this Act for West Bank and Gaza shall be subject to the regular notification procedures of the Committees on Appropriations.

LIMITATION ON ASSISTANCE FOR THE PALESTINIAN AUTHORITY

SEC. 7040. (a) PROHIBITION OF FUNDS.—None of the funds appropriated by this Act to carry out the provisions of chapter 4 of part II of the Foreign Assistance Act of 1961 may be obligated or expended with respect to providing funds to the Palestinian Authority.

(b) WAIVER.—The prohibition included in subsection (a) shall not apply if the President certifies in writing to the Speaker of the House of Representatives, the President pro tempore of the Senate, and the Committees on Appropriations that waiving such prohibition is important to the national security interest of the United States.

H. R. 7148—408

(c) PERIOD OF APPLICATION OF WAIVER.—Any waiver pursuant to subsection (b) shall be effective for no more than a period of 6 months at a time and shall not apply beyond 12 months after the enactment of this Act.

(d) REPORT.—Whenever the waiver authority pursuant to subsection (b) is exercised, the President shall submit a report to the Committees on Appropriations detailing the justification for the waiver, the purposes for which the funds will be spent, and the accounting procedures in place to ensure that the funds are properly disbursed: *Provided,* That the report shall also detail the steps the Palestinian Authority has taken to arrest terrorists, confiscate weapons and dismantle the terrorist infrastructure.

(e) CERTIFICATION.—If the President exercises the waiver authority under subsection (b), the Secretary of State must certify and report to the Committees on Appropriations prior to the obligation of funds that the Palestinian Authority has established a single treasury account for all Palestinian Authority financing and all financing mechanisms flow through this account, no parallel financing mechanisms exist outside of the Palestinian Authority treasury account, and there is a single comprehensive civil service roster and payroll, and the Palestinian Authority is acting to counter incitement of violence against Israelis and is supporting activities aimed at promoting peace, coexistence, and security cooperation with Israel.

(f) PROHIBITION TO HAMAS AND THE PALESTINE LIBERATION ORGANIZATION.—

(1) None of the funds appropriated in titles III through VI of this Act may be obligated for salaries of personnel of the Palestinian Authority located in Gaza or may be obligated or expended for assistance to Hamas or any entity effectively controlled by Hamas, any power-sharing government of which Hamas is a member, or that results from an agreement with Hamas and over which Hamas exercises undue influence.

(2) Notwithstanding the limitation of paragraph (1), assistance may be provided to a power-sharing government only if the President certifies and reports to the Committees on Appropriations that such government, including all of its ministers or such equivalent, has publicly accepted and is complying with the principles contained in section 620K(b)(1)(A) and (B) of the Foreign Assistance Act of 1961, as amended.

(3) The President may exercise the authority in section 620K(e) of the Foreign Assistance Act of 1961, as added by the Palestinian Anti-Terrorism Act of 2006 (Public Law 109–446) with respect to this subsection.

(4) Whenever the certification pursuant to paragraph (2) is exercised, the Secretary of State shall submit a report to the Committees on Appropriations within 120 days of the certification and every quarter thereafter on whether such government, including all of its ministers or such equivalent are continuing to comply with the principles contained in section 620K(b)(1)(A) and (B) of the Foreign Assistance Act of 1961, as amended: *Provided,* That the report shall also detail the amount, purposes and delivery mechanisms for any assistance provided pursuant to the abovementioned certification and a full accounting of any direct support of such government.

(5) None of the funds appropriated under titles III through VI of this Act may be obligated for assistance for the Palestine Liberation Organization.

MIDDLE EAST AND NORTH AFRICA

SEC. 7041. (a) EGYPT.—

(1) ASSISTANCE.—Of the funds appropriated by this Act, not less than $1,425,000,000 should be made available for assistance for Egypt, of which—

(A) not less than $125,000,000 shall be made available from funds under the heading "National Security Investment Programs", of which not less than $40,000,000 should be made available for higher education programs, including not less than $15,000,000 for scholarships for Egyptian students with high financial need to attend not-for-profit institutions of higher education in Egypt that are currently accredited by a regional accrediting agency recognized by the United States Department of Education, or meets standards equivalent to those required for United States institutional accreditation by a regional accrediting agency recognized by such Department: *Provided,* That such funds shall be made available for democracy programs, and for development programs in the Sinai; and

(B) not less than $1,300,000,000 shall be made available from funds under the heading "Foreign Military Financing Program", to remain available until September 30, 2027, subject to the requirements of paragraphs (3) and (4): *Provided,* That such funds may be transferred to an interest bearing account in the Federal Reserve Bank of New York, following consultation with the Committees on Appropriations and the uses of any interest earned on such funds shall be subject to the regular notification procedures of the Committees on Appropriations.

(2) ADDITIONAL SECURITY ASSISTANCE.—In addition to amounts made available pursuant to paragraph (1), not less than $75,000,000 of the funds appropriated under the heading "Foreign Military Financing Program" shall be made available for assistance for Egypt.

(3) CERTIFICATION AND REPORT.—Funds appropriated by this Act that are available for assistance for Egypt may be made available notwithstanding any other provision of law restricting assistance for Egypt, except for this subsection and section 620M of the Foreign Assistance Act of 1961, and may only be made available for assistance for the Government of Egypt if the Secretary of State certifies and reports to the Committees on Appropriations that such government is—

(A) sustaining the strategic relationship with the United States; and

(B) meeting its obligations under the 1979 Egypt-Israel Peace Treaty.

(4) WITHHOLDING.—Of the funds made available pursuant to paragraph (1)(B), $320,000,000 shall be withheld from obligation until the Secretary certifies and reports to the Committees on Appropriations that the Government of Egypt is meeting the requirements under this section in the explanatory statement described in section 4 (in the matter preceding division

H. R. 7148—410

A of this consolidated Act): *Provided,* That the Secretary may waive such requirement if the Secretary determines and reports to the Committees on Appropriations that such funds are necessary for counterterrorism, border security, or nonproliferation programs or that it is otherwise important to the national security interest of the United States to do so, including a detailed justification for the use of such waiver and the reasons why any of the requirements cannot be met: *Provided further,* That the report required by the previous proviso shall be submitted in unclassified form but may be accompanied by a classified annex.

(b) IRAN.—

(1) FUNDING.—Funds appropriated by this Act under the headings "Diplomatic Programs", "National Security Investment Programs", and "Nonproliferation, Anti-terrorism, Demining and Related Programs" shall be made available—

(A) to support the United States policy to prevent Iran from achieving the capability to produce or otherwise obtain a nuclear weapon;

(B) to support an expeditious response to any violation of United Nations Security Council Resolutions or to efforts that advance Iran's nuclear program;

(C) to support the implementation and enforcement of sanctions against Iran for support of nuclear weapons development, terrorism, human rights abuses, and ballistic missile and weapons proliferation; and

(D) for democracy programs in support of the aspirations of the Iranian people.

(2) REPORTS.—

(A) SEMI-ANNUAL REPORT.—The Secretary of State shall submit to the Committees on Appropriations the semi-annual report required by section 135(d)(4) of the Atomic Energy Act of 1954 (42 U.S.C. 2160e(d)(4)), as added by section 2 of the Iran Nuclear Agreement Review Act of 2015 (Public Law 114–17).

(B) SANCTIONS REPORT.—Not later than 180 days after the date of enactment of this Act, the Secretary of State, in consultation with the Secretary of the Treasury, shall submit to the appropriate congressional committees a report on—

(i) the status of United States bilateral sanctions on Iran;

(ii) the reimposition and renewed enforcement of secondary sanctions; and

(iii) the impact such sanctions have had on Iran's destabilizing activities throughout the Middle East.

(3) LIMITATIONS.—None of the funds appropriated by this Act may be—

(A) used to implement an agreement with the Government of Iran relating to the nuclear program of Iran, or a renewal of the Joint Comprehensive Plan of Action adopted on October 18, 2015, in contravention of the Iran Nuclear Agreement Review Act of 2015 (42 U.S.C. 2160e);

(B) made available to any foreign entity or person that is subject to United Nations or United States bilateral sanctions with respect to the Government of Iran; or

H. R. 7148—411

(C) used to revoke the designation of the Islamic Revolutionary Guard Corps as a Foreign Terrorist Organization pursuant to section 219 of the Immigration and Nationality Act (8 U.S.C. 1189).

(c) ISRAEL.—Of the funds appropriated by this Act under the heading "Foreign Military Financing Program", not less than $3,300,000,000 shall be available for grants only for Israel: *Provided,* That funds appropriated by this Act under the heading "Foreign Military Financing Program" and made available for assistance for Israel shall be disbursed within 30 days of the date of enactment of this Act: *Provided further,* That to the extent that the Government of Israel requests that funds be used for such purposes, grants made available for Israel under this heading shall, as agreed by the United States and Israel, be available for advanced weapons systems, of which not less than $250,300,000 shall be available for the procurement in Israel of defense articles and defense services, including research and development.

(d) JORDAN.—

(1) Of the funds appropriated by this Act under titles III and IV, not less than $1,650,000,000 shall be made available for assistance for Jordan, of which not less than $845,100,000 shall be made available for budget support for the Government of Jordan and not less than $425,000,000 shall be made available under the heading "Foreign Military Financing Program".

(2) In addition to amounts made available pursuant to paragraph (1), not less than $400,000,000 of the funds appropriated under the heading "National Security Investment Programs" shall be made available for assistance for Jordan, which shall be made available for budget support, and not less than $50,000,000 of the funds appropriated under the heading "Foreign Military Financing Program" shall be made available for assistance for Jordan.

(e) LEBANON.—

(1) LIMITATION.—None of the funds appropriated by this Act may be made available for the Lebanese Internal Security Forces (ISF) or the Lebanese Armed Forces (LAF) if the ISF or the LAF is controlled by a foreign terrorist organization, as designated pursuant to section 219 of the Immigration and Nationality Act (8 U.S.C. 1189).

(2) SECURITY ASSISTANCE.—

(A) Funds appropriated by this Act under the headings "International Narcotics Control and Law Enforcement" and "Foreign Military Financing Program" that are made available for assistance for Lebanon may be made available for programs and equipment for the ISF and the LAF to address security and stability requirements in areas affected by conflict in Syria, following consultation with the appropriate congressional committees.

(B) Funds appropriated by this Act under the heading "Foreign Military Financing Program" that are made available for assistance for Lebanon may only be made available for programs to—

(i) professionalize the LAF to mitigate internal and external threats from non-state actors, including Hizballah;

(ii) strengthen the security of borders and combat terrorism, including training and equipping the LAF

to secure the borders of Lebanon and address security and stability requirements in areas affected by conflict in Syria, interdicting arms shipments, and preventing the use of Lebanon as a safe haven for terrorist groups; and

(iii) implement United Nations Security Council Resolution 1701:

*Provided,* That prior to obligating funds made available by this subparagraph for assistance for the LAF, the Secretary of State shall submit to the Committees on Appropriations a spend plan, including actions to be taken to ensure equipment provided to the LAF is used only for the intended purposes, except such plan may not be considered as meeting the notification requirements under section 7015 of this Act or under section 634A of the Foreign Assistance Act of 1961: *Provided further,* That any notification submitted pursuant to such section shall include any funds specifically intended for lethal military equipment.

(3) ASSISTANCE.—Funds appropriated by this Act under the heading "National Security Investment Programs" that are made available for assistance for Lebanon may be made available notwithstanding section 1224 of the Foreign Relations Authorization Act, Fiscal Year 2003 (Public Law 107–228; 22 U.S.C. 2346 note).

(f) SYRIA.—

(1) NON-LETHAL ASSISTANCE.—Funds appropriated by this Act under titles III and IV may be made available, notwithstanding any other provision of law, for non-lethal stabilization assistance for Syria, including for emergency medical and rescue response and chemical weapons investigations.

(2) LIMITATIONS.—Funds appropriated by this Act and made available for assistance for Syria may not be made available for—

(A) a project or activity that supports or otherwise legitimizes the Government of Iran, foreign terrorist organizations (as designated pursuant to section 219 of the Immigration and Nationality Act (8 U.S.C. 1189)), or a proxy of Iran in Syria; and

(B) activities that further the strategic objectives of the Government of the Russian Federation that the Secretary of State determines may threaten or undermine United States national security interests.

(3) CONSULTATION.—Funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs that are made available for any new program, project, or activity in Syria shall be subject to prior consultation with the appropriate congressional committees.

(g) TUNISIA.—Funds appropriated under titles III and IV of this Act shall be made available for assistance for Tunisia for the purposes described under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), following consultation with the Committees on Appropriations.

(h) WEST BANK AND GAZA.—

(1) REPORT ON ASSISTANCE.—Prior to the initial obligation of funds made available by this Act under the heading "National

Security Investment Programs" for assistance for the West Bank and Gaza, the Secretary of State shall report to the Committees on Appropriations that the purpose of such assistance is to—

    (A) advance Middle East peace;

    (B) improve security in the region;

    (C) continue support for transparent and accountable government institutions;

    (D) promote a private sector economy; or

    (E) address urgent humanitarian needs.

  (2) LIMITATIONS.—

    (A)(i) None of the funds appropriated under the heading "National Security Investment Programs" in this Act may be made available for assistance for the Palestinian Authority, if after the date of enactment of this Act—

        (I) the Palestinians obtain the same standing as member states or full membership as a state in the United Nations or any specialized agency thereof outside an agreement negotiated between Israel and the Palestinians; or

        (II) the Palestinians initiate an International Criminal Court (ICC) judicially authorized investigation, or actively support such an investigation, that subjects Israeli nationals to an investigation for alleged crimes against Palestinians.

    (ii) The Secretary of State may waive the restriction in clause (i) of this subparagraph resulting from the application of subclause (I) of such clause if the Secretary certifies to the Committees on Appropriations that to do so is in the national security interest of the United States, and submits a report to such Committees detailing how the waiver and the continuation of assistance would assist in furthering Middle East peace.

    (B)(i) The President may waive the provisions of section 1003 of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989 (Public Law 100–204) if the President determines and certifies in writing to the Speaker of the House of Representatives, the President pro tempore of the Senate, and the appropriate congressional committees that the Palestinians have not, after the date of enactment of this Act—

        (I) obtained in the United Nations or any specialized agency thereof the same standing as member states or full membership as a state outside an agreement negotiated between Israel and the Palestinians; and

        (II) initiated or actively supported an ICC investigation against Israeli nationals for alleged crimes against Palestinians.

    (ii) Not less than 90 days after the President is unable to make the certification pursuant to clause (i) of this subparagraph, the President may waive section 1003 of Public Law 100–204 if the President determines and certifies in writing to the Speaker of the House of Representatives, the President pro tempore of the Senate, and the Committees on Appropriations that the Palestinians have

H. R. 7148—414

entered into direct and meaningful negotiations with Israel: *Provided,* That any waiver of the provisions of section 1003 of Public Law 100–204 under clause (i) of this subparagraph or under previous provisions of law must expire before the waiver under this clause may be exercised.

(iii) Any waiver pursuant to this subparagraph shall be effective for no more than a period of 6 months at a time and shall not apply beyond 12 months after the enactment of this Act.

(3) GAZA OVERSIGHT.—

(A) CERTIFICATION.—The Secretary of State shall certify and report to the appropriate congressional committees not later than 15 days after the date of enactment of this Act, that—

(i) oversight policies, processes, and procedures have been established by the Department of State and are in use to prevent the diversion to Hamas and other terrorist and extremist entities in Gaza and the misuse or destruction by such entities of assistance, including through international organizations; and

(ii) such policies, processes, and procedures have been developed in coordination with other bilateral and multilateral donors and the Government of Israel, as appropriate.

(B) OVERSIGHT POLICY AND PROCEDURES.—The Secretary of State shall submit to the appropriate congressional committees, concurrent with the submission of the certification required in subparagraph (A), a written description of the oversight policies, processes, and procedures for funds appropriated by this Act that are made available for assistance for Gaza, including specific actions to be taken should such assistance be diverted, misused, or destroyed, and the role of the Government of Israel in the oversight of such assistance.

(C) REQUIREMENT TO INFORM.—The Secretary of State shall promptly inform the appropriate congressional committees of each instance in which funds appropriated by this Act that are made available for assistance for Gaza have been diverted, misused, or destroyed, to include the type of assistance, a description of the incident and parties involved, and an explanation of the response of the Department of State.

(D) THIRD PARTY MONITORING.—Funds appropriated by this Act shall be made available for third party monitoring of assistance for Gaza, including end use monitoring, following consultation with the appropriate congressional committees.

(E) REPORT.—Not later than 90 days after the initial obligation of funds appropriated by this Act that are made available for assistance for Gaza, and every 90 days thereafter until all such funds are expended, the Secretary of State shall submit to the appropriate congressional committees a report detailing the amount and purpose of such assistance provided during each respective quarter, including a description of the specific entity implementing such assistance.

(F) ASSESSMENT.—Not later than 90 days after the date of enactment of this Act and every 90 days thereafter until September 30, 2027, the Secretary of State, in consultation with the Director of National Intelligence and other heads of elements of the intelligence community that the Secretary considers relevant, shall submit to the appropriate congressional committees a report assessing whether funds appropriated by this Act and made available for assistance for the West Bank and Gaza have been diverted to or destroyed by Hamas or other terrorist and extremist entities in the West Bank and Gaza: *Provided,* That such report shall include details on the amount and how such funds were made available and used by such entities: *Provided further,* That such report may be submitted in classified form, if necessary.

(G) CONSULTATION.—Not later than 30 days after the date of enactment of this Act but prior to the initial obligation of funds made available by this Act for humanitarian assistance for Gaza, the Secretary of State shall consult with the Committees on Appropriations on the amount and anticipated uses of such funds.

(4) APPLICATION OF TAYLOR FORCE ACT.—Funds appropriated by this Act under the heading "National Security Investment Programs" that are made available for assistance for the West Bank and Gaza shall be made available consistent with section 1004(a) of the Taylor Force Act (title X of division S of Public Law 115–141).

(5) SECURITY REPORT.—The reporting requirements in section 1404 of the Supplemental Appropriations Act, 2008 (Public Law 110–252) shall apply to funds made available by this Act, including a description of modifications, if any, to the security strategy of the Palestinian Authority.

(6) INCITEMENT REPORT.—Not later than 90 days after the date of enactment of this Act, the Secretary of State shall submit a report to the appropriate congressional committees detailing steps taken by the Palestinian Authority to counter incitement of violence against Israelis and to promote peace and coexistence with Israel.

AFRICA

SEC. 7042. (a) CENTRAL AFRICAN REPUBLIC.—Funds appropriated by this Act under the heading "National Security Investment Programs" may be made available for a contribution to the Special Criminal Court in Central African Republic.

(b) COUNTRIES OF THE AFRICAN GREAT LAKES REGION.—

(1) PEACE AGREEMENT AND REGIONAL ECONOMIC INTEGRATION.—Funds appropriated under titles III and IV of this Act shall be made available to support the June 27, 2025 Peace Agreement Between the Democratic Republic of the Congo and the Republic of Rwanda and implementation of the Regional Economic Integration Framework, including for cross-border security and education programs, east-west economic linkages, and health security in Virunga National Park and adjoining national parks in Rwanda: *Provided,* That such funds shall prioritize sectors deemed critical by the Secretary of State to the national security and economic interests of the United

States, including the mining sector and other natural resources: *Provided further,* That such funds shall also be made available to facilitate regional economic integration and investment, including with Burundi and Uganda: *Provided further,* That such funds may only be made available following consultation with, and the regular notification procedures of, the Committees on Appropriations, and in accordance with the requirements contained under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided further,* That not less than $60,000,000 shall be made available for such purposes, which are in addition to amounts made available for assistance for the Democratic Republic of the Congo and the Republic of Rwanda, including for bilateral assistance for such countries.

(2) DEMOCRATIC REPUBLIC OF THE CONGO.—Funds appropriated under titles III and IV of this Act shall be made available for bilateral assistance for the Democratic Republic of the Congo (DRC) for agriculture, global health, law enforcement programs, humanitarian assistance, and programs to address violence against women and girls, including in Eastern DRC.

(3) REPUBLIC OF RWANDA.—Funds appropriated under titles III and IV of this Act shall be made available for bilateral assistance for the Republic of Rwanda, including for maternal and child health programs, programs to combat malaria, and continued support for the Government of Rwanda's education reform efforts.

(4) ASSISTANCE RESTRICTION.—Funds appropriated by this Act under the heading "International Military Education and Training" for the central government of a country in the African Great Lakes region may be made available only for Expanded International Military Education and Training and professional military education until the Secretary of State determines and reports to the Committees on Appropriations that such government is not facilitating or otherwise participating in destabilizing activities in a neighboring country, including aiding and abetting armed groups.

(c) COUNTER ILLICIT ARMED GROUPS.—Funds appropriated by this Act shall be made available for programs and activities in areas affected by the Lord's Resistance Army (LRA) or other illicit armed groups in Eastern Democratic Republic of the Congo and the Central African Republic, including to improve physical access, telecommunications infrastructure, and early-warning mechanisms and to support the disarmament, demobilization, and reintegration of former LRA combatants, especially child soldiers.

(d) ETHIOPIA.—Funds appropriated by this Act that are made available for assistance for Ethiopia should be used to support—

(1) political dialogue;

(2) civil society and the protection of human rights;

(3) investigations and prosecutions of gross violations of human rights;

(4) efforts to provide unimpeded access to, and monitoring of, humanitarian assistance; and

(5) the restoration of basic services in areas impacted by conflict.

(e) NIGERIA.—

H. R. 7148—417

(1) CERTIFICATION.—Of the funds appropriated under titles III and IV of this Act that are made available for assistance for the central Government of Nigeria, 50 percent may not be obligated until the Secretary of State certifies to the Committees on Appropriations that such Government is—

(A) taking effective steps to prevent and respond to violence and hold perpetrators accountable;

(B) prioritizing resources to support victims of such violence, including internally displaced persons;

(C) actively facilitating the safe return, resettlement, and reconstruction of communities impacted by the violence; and

(D) allocating sufficient resources to address the conditions in subparagraphs (A) through (C).

(2) PROGRAM PRIORITIZATION.—Funds appropriated under titles III and IV of this Act that are made available for assistance for Nigeria shall be made available on a cost-matching basis to the maximum extent practicable and used to support—

(A) atrocities prevention, including through early warning systems;

(B) advancing religious freedom;

(C) investigations and prosecutions of violence committed by Fulani militia groups, jihadist terror groups, and criminal gangs;

(D) the effectiveness and accountability of police and security forces for the protection of civilians from militia or terrorist attack;

(E) the delivery of humanitarian assistance;

(F) the restoration of basic services in areas impacted by conflict including through faith-based and local organizations; and

(G) the development of demobilization, disarmament, and reintegration efforts to address the challenge of illegal weapons trafficking and related security risks, pursuant to section 7035(b)(2) of this Act.

(3) ACCOUNTABILITY.—The Comptroller General of the United States shall conduct an independent audit of all United States foreign assistance provided to Nigeria during the 5 fiscal years preceding enactment of this Act: *Provided,* That such audit shall assess the criteria enumerated under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(f) SOUTH SUDAN.—None of the funds appropriated by this Act under title IV may be made available for assistance for the central Government of South Sudan, except to support implementation of a viable peace agreement in South Sudan.

(g) SUDAN.—

(1) LIMITATION.—None of the funds appropriated by this Act under title IV may be made available for assistance for the central Government of Sudan, except to support implementation of a viable peace agreement in Sudan.

(2) CONSULTATION.—Funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs that are made available for any new program, project, or activity in Sudan shall be subject to prior consultation with the appropriate congressional committees.

(h) ZIMBABWE.—

(1) INSTRUCTION.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to vote against any extension by the respective institution of any loan or grant to the Government of Zimbabwe, except to meet basic human needs or to promote democracy, unless the Secretary of State certifies and reports to the Committees on Appropriations that the rule of law has been restored, including respect for ownership and title to property, and freedoms of expression, association, and assembly.

(2) LIMITATION.—None of the funds appropriated by this Act shall be made available for assistance for the central Government of Zimbabwe, except for health and education, unless the Secretary of State certifies and reports as required in paragraph (1).

EAST ASIA AND THE PACIFIC

SEC. 7043. (a) BURMA.—

(1) USES OF FUNDS.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $121,000,000 shall be made available for assistance for Burma for the purposes described in section 5575 of the Burma Act of 2022 (subtitle E of title LV of division E of Public Law 117–263) and section 7043(a) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2023 (division K of Public Law 117–328): *Provided,* That the authorities, limitations, and conditions contained in section 7043(a) of division K of Public Law 117–328 shall apply to funds made available for assistance for Burma under this Act, except for the minimum funding requirements and paragraph (1)(B): *Provided further,* That for the purposes of section 5575 of the Burma Act of 2022 and assistance for Burma made available by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs, "non-lethal assistance" shall include equipment and associated training as described under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(2) ASSISTANCE.—Of the funds appropriated by subsection (a), not less than the following amounts shall be made available for assistance for Burma—

(A) $75,000,000 for assistance programs, including in Thailand and India, and cross border programs;

(B) $10,000,000 for governance and federalism programs, including at the local and state levels;

(C) $7,000,000 for atrocities prevention and accountability programs, including for documentation and preservation of evidence;

(D) $1,000,000 for accountability and justice programs for crimes against the Rohingya;

(E) $25,000,000 for non-lethal assistance, consistent with the requirements of paragraph (1);

(F) $1,500,000 for support for current and former political prisoners; and

(G) $1,500,000 for deserter programs, consistent with the requirements of paragraph (3).

(3) DESERTER PROGRAMS.—Pursuant to section 7043(a)(1)(A) of division K of Public Law 117–328, as continued in effect by this subsection, funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs that are made available for assistance for Burma shall be made available for programs and activities to support deserters from the military junta and its allied entities, following consultation with the appropriate congressional committees.

(b) INDO-PACIFIC STRATEGY.—

(1) ASSISTANCE.—Of the funds appropriated under titles III and IV of this Act, not less than $1,800,000,000 shall be made available to support implementation of the Indo-Pacific Strategy.

(2) COUNTERING PRC INFLUENCE FUND.—Of the funds appropriated or otherwise made available by this Act under the headings "National Security Investment Programs", "International Narcotics Control and Law Enforcement", "Nonproliferation, Anti-terrorism, Demining and Related Programs", and "Foreign Military Financing Program", not less than $400,000,000 shall be made available for a Countering PRC Influence Fund to counter the influence of the Government of the People's Republic of China and the Chinese Communist Party and entities acting on their behalf globally, which shall be subject to prior consultation with the Committees on Appropriations: *Provided,* That such funds are in addition to amounts otherwise made available for such purposes: *Provided further,* That up to 10 percent of such funds shall be held in reserve to respond to unanticipated opportunities to counter PRC influence: *Provided further,* That funds made available pursuant to this paragraph under the heading "Foreign Military Financing Program" may remain available until September 30, 2027: *Provided further,* That funds appropriated by this Act for such Fund under the headings "International Narcotics Control and Law Enforcement", "Nonproliferation, Anti-terrorism, Demining and Related Programs", and "Foreign Military Financing Program" may be transferred to, and merged with, funds appropriated under such headings: *Provided further,* That such transfer authority is in addition to any other transfer authority provided by this Act or any other Act, and is subject to the regular notification procedures of the Committees on Appropriations.

(3) RESTRICTION ON USES OF FUNDS.—None of the funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs may be made available for any project or activity that directly supports or promotes—

(A) the Belt and Road Initiative or any dual-use infrastructure projects of the People's Republic of China; or

(B) the use of technology, including biotechnology, digital, telecommunications, and cyber, developed by the People's Republic of China unless the Secretary of State, in consultation with the heads of other Federal agencies, as appropriate, determines that such use does not adversely impact the national security of the United States.

H. R. 7148—420

(4) MAPS.—None of the funds made available by this Act should be used to create, procure, or display any map that inaccurately depicts the territory and social and economic system of Taiwan and the islands or island groups administered by Taiwan authorities.

(5) TREASURY APPROPRIATIONS FUND SYMBOL 97–11 X 8242 REPROGRAMMING.—Of the grant balances in the Foreign Military Sales Trust Fund, identified by Treasury Appropriations Fund Symbol 97–11 X 8242, which are not currently applied to an active FMS case and which were appropriated prior to fiscal year 2016, $50,000,000 shall be deobligated, as appropriate, and shall be available for assistance for countries in the Indo-Pacific region and for the purposes of the Countering PRC Influence Fund, in addition to any funds otherwise made available for such purposes, under the same authorities and conditions as amounts made available under this subsection.

(c) LAOS.—Funds appropriated by this Act under titles III and IV shall be made available for assistance for Laos, including for assistance for persons with disabilities caused by unexploded ordnance accidents, and funds may be made available for programs to assist persons with severe physical mobility, cognitive, or developmental disabilities in areas sprayed with Agent Orange: *Provided,* That funds made available pursuant to this subsection may be used, in consultation with the Government of Laos, for assessments of the existence of dioxin contamination resulting from the use of Agent Orange in Laos and the feasibility and cost of remediation.

(d) MISSION AUSTRALIA.—Funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs under the heading "Administration of Foreign Affairs" shall be made available to increase the number of Department of State personnel and improve the requisite facilities necessary to advance the national security policy objectives of the United States in Australia, including through AUKUS implementation: *Provided,* That such expanded presence shall be reflected in the operating plan submitted pursuant to section 7062 of this Act, following consultation with the appropriate congressional committees.

(e) NORTH KOREA.—

(1) CYBERSECURITY.—None of the funds appropriated by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs may be made available for assistance for the central government of a country the Secretary of State determines and reports to the appropriate congressional committees engages in significant transactions contributing materially to the malicious cyber-intrusion capabilities of the Government of North Korea: *Provided,* That the Secretary of State shall submit the report required by section 209 of the North Korea Sanctions and Policy Enhancement Act of 2016 (Public Law 114–122; 22 U.S.C. 9229) to the Committees on Appropriations: *Provided further,* That the Secretary of State may waive the application of the restriction in this paragraph with respect to assistance for the central government of a country if the Secretary determines and reports to the appropriate congressional committees that to do so is important to the national security interest of the United States, including a description of such interest served.

(2) BROADCASTS.—Funds appropriated by this Act under the heading "International Broadcasting Operations" shall be made available to maintain broadcasting hours into North Korea at levels not less than the prior fiscal year.

(3) HUMAN RIGHTS.—Funds appropriated by this Act under the headings "National Security Investment Programs" and "Democracy Fund" shall be made available for the promotion of human rights in North Korea: *Provided,* That the authority of section 7032(b)(1) of this Act shall apply to such funds.

(4) LIMITATION ON USE OF FUNDS.—None of the funds made available by this Act under the heading "National Security Investment Programs" may be made available for assistance for the Government of North Korea.

(f) PACIFIC ISLANDS COUNTRIES.—

(1) OPERATIONS.—Funds appropriated by this Act under the heading "Administration of Foreign Affairs" shall be made available to increase the United States diplomatic and development presence in Pacific Islands countries (PICs), including the number and location of facilities and personnel, and to enhance the communications capacity of such personnel: *Provided,* That such expanded presence shall be reflected in the operating plan submitted pursuant to section 7062 of this Act, following consultation with the appropriate congressional committees.

(2) ASSISTANCE.—Of the funds appropriated by this Act under the headings "National Security Investment Programs", "International Narcotics Control and Law Enforcement", "Nonproliferation, Anti-terrorism, Demining and Related Programs", and "Foreign Military Financing Program", not less than $175,000,000 shall be made available for assistance for PICs: *Provided,* That funds appropriated by this Act that are made available for the Countering PRC Influence Fund shall be made available for assistance for PICs, in addition to funds made available under this paragraph: *Provided further,* That funds made available by this paragraph for assistance for PICs shall be made available for programs and activities to strengthen and expand cooperation between the United States and higher education institutions in PICs, to be awarded on a competitive basis: *Provided further,* That of the funds made available by this paragraph for assistance for PICs: not less than $5,000,000 shall be made available for trilateral programs; not less than $7,500,000 shall be made available for unexploded ordnance clearance, including in Papua New Guinea, Solomon Islands, and Kiribati; and not less than $20,000,000 shall be made available for a regional financing facility established by the Pacific Islands Forum to build preparedness against natural disasters.

(g) PEOPLE'S REPUBLIC OF CHINA.—

(1) PROHIBITION.—

None of the funds appropriated by this Act may be made available for assistance for the Government of the People's Republic of China or the Chinese Communist Party.

(2) HONG KONG.—Of the funds appropriated by this Act under the heading "Democracy Fund", not less than $5,000,000 shall be made available for democracy and Internet freedom

H. R. 7148—422

programs for Hong Kong, including legal and other support for democracy activists.

(h) PHILIPPINES.—

(1) ASSISTANCE.—Of the funds appropriated by this Act under titles III and IV, not less than $180,300,000 shall be made available for assistance for the Philippines, of which not less than $80,300,000 shall be made available under the heading "National Security Investment Programs" and not less than $100,000,000 shall be made available under the heading "Foreign Military Financing Program".

(2) LIMITATION.—None of the funds appropriated by this Act under the heading "International Narcotics Control and Law Enforcement" may be made available for counternarcotics assistance for the Philippines, except for drug demand reduction, maritime law enforcement, or transnational interdiction.

(i) PUBLIC LAW 106–554.—Of the funds appropriated by this Act under the headings "Educational and Cultural Exchange Programs" and "National Security Investment Programs", not less than $11,500,000 shall be made available to carry out the purposes of the Vietnam Education Foundation Act of 2000 (title II of division B of H.R. 5666, as enacted by section 1(a)(4) of Public Law 106–554 and contained in appendix D of such Act; 114 Stat. 2763A–257; 22 U.S.C. 2452 note).

(j) TAIWAN.—

(1) GLOBAL COOPERATION AND TRAINING FRAMEWORK.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $4,000,000 shall be made available for the Global Cooperation and Training Framework, which shall be administered by the American Institute in Taiwan.

(2) FOREIGN MILITARY FINANCING PROGRAM.—Of the funds appropriated by this Act under the heading "Foreign Military Financing Program", not less than $300,000,000 shall be made available for assistance for Taiwan: *Provided*, That the Secretary of State, in coordination with the Secretary of Defense, shall prioritize the delivery of defense articles and services for Taiwan.

(3) FOREIGN MILITARY FINANCING PROGRAM LOAN AND LOAN GUARANTEE AUTHORITY.—Funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs under the heading "Foreign Military Financing Program", except for amounts designated as an emergency requirement pursuant to a concurrent resolution on the budget or the Balanced Budget and Emergency Deficit Control Act of 1985, may be made available for the costs, as defined in section 502 of the Congressional Budget Act of 1974, of direct loans and loan guarantees for Taiwan, as authorized by section 5502(g) of the Taiwan Enhanced Resilience Act (subtitle A of title LV of division E of Public Law 117–263).

(4) FELLOWSHIP PROGRAM.—Funds appropriated by this Act under the heading "Payment to the American Institute in Taiwan" shall be made available for the Taiwan Fellowship Program.

(5) CONSULTATION.—Not later than 60 days after the date of enactment of this Act, the Secretary of State shall consult with the Committees on Appropriations on the uses of funds

H. R. 7148—423

made available pursuant to this subsection: *Provided,* That such funds shall be subject to the regular notification procedures of the Committees on Appropriations.

(k) TIBET.—

(1) Notwithstanding any other provision of law, of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $10,000,000 shall be made available to nongovernmental organizations with experience working with Tibetan communities to support activities which preserve cultural traditions and promote sustainable development, education, and environmental conservation in Tibetan communities in the Tibet Autonomous Region and in other Tibetan communities in China.

(2) Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $8,000,000 shall be made available for programs to promote and preserve Tibetan culture and language in the refugee and diaspora Tibetan communities, development, and the resilience of Tibetan communities and the Central Tibetan Administration in India and Nepal, and to assist in the education and development of the next generation of Tibetan leaders from such communities: *Provided,* That such funds are in addition to amounts made available in paragraph (1) for programs inside Tibet.

(3) Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $5,000,000 shall be made available for programs to strengthen the capacity of the Central Tibetan Administration, of which up to $1,500,000 may be made available to address economic growth and capacity building activities, including for displaced Tibetan refugee families in India and Nepal to help meet basic needs, following consultation with the Committees on Appropriations.

(4) Funds made available for assistance for Tibet by this subsection shall be made available as described under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(5) Section 7031(c) of this Act shall be applied to officials of the Government of the People's Republic of China and other governments in the South Asia region about whom the Secretary of State has credible information have been involved in a gross violation of human rights against the people of Tibet in the Tibet Autonomous Region or other Tibetan communities in the People's Republic of China and the region.

(l) VIETNAM.—Funds appropriated under titles III and IV of this Act shall be made available for assistance for Vietnam, of which not less than—

(1) $30,000,000 shall be made available for health and disability programs to assist persons with severe physical mobility, cognitive, or developmental disabilities: *Provided,* That such funds shall be prioritized to assist persons whose disabilities may be related to the use of Agent Orange and exposure to dioxin, or are the result of unexploded ordnance accidents;

(2) $20,000,000 shall be made available, notwithstanding any other provision of law, for activities related to the remediation of dioxin contaminated sites in Vietnam and may be

H. R. 7148—424

made available for assistance for the Government of Vietnam, including the military, for such purposes;

(3) $3,000,000 shall be made available for the Reconciliation/Vietnamese Wartime Accounting Initiative; and

(4) $3,500,000 shall be made available for higher education programs.

SOUTH AND CENTRAL ASIA

SEC. 7044. (a) AFGHANISTAN.—None of the funds appropriated or otherwise made available by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs may be made available for assistance to the Taliban.

(b) PAKISTAN.—Of the funds appropriated under titles III and IV of this Act that are made available for assistance for Pakistan, $33,000,000 shall be withheld from obligation until the Secretary of State reports to the Committees on Appropriations that Dr. Shakil Afridi has been released from prison and cleared of all charges relating to the assistance provided to the United States in locating Osama bin Laden.

LATIN AMERICA AND THE CARIBBEAN

SEC. 7045. (a) ASSISTANCE FOR LATIN AMERICA AND THE CARIBBEAN.—Funds appropriated by this Act under titles III and IV and made available for countries in Latin America and the Caribbean shall be prioritized for programs as described under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(b) CENTRAL AMERICA.—

(1) ASSISTANCE.—Funds appropriated under titles III and IV of this Act shall be made available for assistance for countries in Central America, including Panama and Costa Rica, consistent with subsection (a), which shall include programs to—

(A) combat corruption and impunity in such countries, including, as appropriate, with offices of Attorneys General;

(B) reduce violence against women and girls; and

(C) support locally-led development in El Salvador, Guatemala, and Honduras.

(2) LIMITATION ON ASSISTANCE TO CERTAIN CENTRAL GOVERNMENTS.—

(A) Of the funds made available pursuant to paragraph (1) under the heading "National Security Investment Programs" and under title IV of this Act, 50 percent of such funds that are made available for assistance for each of the central governments of El Salvador, Guatemala, and Honduras may only be obligated after the Secretary of State certifies and reports to the Committees on Appropriations that such government is—

(i) combating corruption and impunity, including investigating and prosecuting government officials, military personnel, and police officers credibly alleged to be corrupt, and improving strategies to combat money laundering and other global financial crimes;

(ii) implementing reforms, policies, and programs to strengthen the rule of law, including increasing

H. R. 7148—425

the transparency of public institutions, strengthening the independence of judicial and electoral institutions, and improving the transparency of political campaign and political party financing;

(iii) protecting the rights of human rights defenders, trade unionists, journalists, civil society groups, opposition political parties, and the independence of the media;

(iv) taking demonstrable actions to secure national borders and stem mass migration toward Mexico and the United States, including positive governance related to combating crime and violence, building economic opportunity, improving government services, and protecting human rights;

(v) providing effective and accountable law enforcement and security for its citizens, curtailing the role of the military in public security, and upholding due process of law;

(vi) implementing programs to reduce violence against women and girls;

(vii) implementing policies to reduce poverty and promote economic growth and opportunity, including the implementation of reforms to strengthen educational systems, vocational training programs, and programs for at-risk youth;

(viii) cooperating with the United States to counter drug trafficking, human trafficking and smuggling, and other transnational crime;

(ix) cooperating with the United States and other governments in the region to facilitate the return, repatriation, and reintegration of migrants; and

(x) implementing policies that improve the environment for businesses, including foreign businesses, to operate and invest, including executing tax reform in a transparent manner, ensuring effective legal mechanisms for reimbursements of tax refunds owed to United States businesses, and resolving disputes involving the confiscation of real property of United States entities.

(B) EXCEPTIONS.—The limitation of subparagraph (A) shall not apply to funds appropriated by this Act that are made available for—

(i) judicial entities to combat corruption and impunity;

(ii) programs to promote and protect human rights and to investigate human rights abuses;

(iii) support for women's economic empowerment;

(iv) prevention of violence against women and girls;

(v) humanitarian assistance; and

(vi) food security programs.

(C) FOREIGN MILITARY FINANCING PROGRAM.—None of the funds appropriated by this Act under the heading "Foreign Military Financing Program" may be made available for assistance for El Salvador, Guatemala, or Honduras, except for programs that support humanitarian assistance and disaster response.

(c) COLOMBIA.—

(1) PRE-OBLIGATION REPORTS.—Prior to the initial obligation of funds appropriated by this Act and made available for assistance for Colombia, the Secretary of State shall submit the reports required under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(2) WITHHOLDING OF FUNDS.—

(A) COUNTERNARCOTICS.—Of the funds appropriated by this Act under the heading "International Narcotics Control and Law Enforcement" that are made available for assistance for Colombia, 25 percent may be obligated only if the Secretary of State certifies and reports to the Committees on Appropriations that in the previous 12 months the Government of Colombia has—

(i) reduced overall coca cultivation, production, and drug trafficking;

(ii) continued cooperating with the United States on joint counternarcotics operations; and

(iii) maintained extradition cooperation with the United States.

(B) HUMAN RIGHTS.—Of the funds appropriated by this Act under the heading "Foreign Military Financing Program" and made available for assistance for Colombia, 20 percent may be obligated only if the Secretary of State certifies and reports to the Committees on Appropriations that the requirements under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act) have been met.

(3) EXCEPTIONS.—The limitations of paragraph (2) shall not apply to funds made available for aviation instruction and maintenance, and maritime and riverine security programs.

(4) AUTHORITY.—Aircraft supported by funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs and made available for assistance for Colombia may be used to transport personnel and supplies involved in drug eradication and interdiction, including security for such activities, and to provide transport in support of alternative development programs and investigations by civilian judicial authorities.

(5) LIMITATION.—None of the funds appropriated by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs that are made available for assistance for Colombia may be made available for payment of reparations to conflict victims, compensation to demobilized combatants, or cash subsidies for agrarian reforms associated with the implementation of the 2016 agreement between the Government of Colombia and illegal armed groups.

(d) CUBA.—

(1) DEMOCRACY PROGRAMS.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $25,000,000 shall be made available to promote democracy and strengthen civil society in Cuba, including to support political prisoners: *Provided,* That no funds shall be obligated for business promotion, economic reform, entrepreneurship, or any other assistance that is not democracy building as expressly authorized in the Cuban Liberty and

Democratic Solidarity (LIBERTAD) Act of 1996 and the Cuban Democracy Act of 1992.

(2) PROHIBITIONS.—None of the funds appropriated or otherwise made available by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs may be used to eliminate or diminish the Cuba Restricted List as maintained by the Department of State, or to otherwise allow, facilitate or encourage financial transactions with entities on the Cuba Restricted List, as well as other entities or individuals within the Cuban military or Cuban intelligence services, high level members of the Communist Party, those licensed by the Cuban government, or the immediate family members of these entities or individuals.

(3) PROHIBITION ON SUPPORT FOR CUBAN MILITARY AND SECURITY INSTITUTIONS.—None of the funds appropriated or otherwise made available by this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs may be made available to any individual or entity that—

(A) engages in financial transactions with, transfers funds to, or otherwise provides material support to the Ministry of the Revolutionary Armed Forces of Cuba, the Ministry of the Interior of Cuba, or any subdivision, agency, or instrumentality thereof;

(B) engages in activities that directly or indirectly support, facilitate, or benefit the operations, revenue generation, or international commercial activities of such Ministries;

(C) is owned or controlled by, or acts on behalf of, any entity described in subparagraphs (A) or (B); or

(D) knowingly provides support or services for the purpose of circumventing sanctions or restrictions on the Cuban military or security forces, or to benefit senior members thereof.

(4) EXCEPTIONS.—The restrictions of paragraph (3) shall not apply to—

(A) the sale of agricultural commodities, medicine, or medical devices to Cuba consistent with the Trade Sanctions Reform and Export Enhancement Act of 2000 (22 U.S.C. 7201 et seq.);

(B) payments in furtherance of the lease, maintenance, or improvements of the United States military base at Guantanamo Bay, Cuba;

(C) assistance in support of democracy-building and civil society programs for Cuba consistent with section 109 of the LIBERTAD Act;

(D) payments necessary for the operations, maintenance, or outreach of the United States diplomatic mission or embassy in Havana, Cuba; and

(E) sending, processing, or receiving authorized remittances.

(e) CUBAN DOCTORS.—

(1) REPORT.—Not later than 90 days after the date of enactment of this Act, the Secretary of State shall submit a report to the appropriate congressional committees listing the countries and international organizations for which the Secretary has credible information are directly paying the

H. R. 7148—428

Government of Cuba for coerced and trafficked labor of Cuban medical professionals: *Provided,* That such report shall be submitted in unclassified form but may include a classified annex: *Provided further,* That the Secretary of State shall inform each government or international organization of its inclusion in such report not later than 30 days after the date of the submission of such report to such committees.

(2) DESIGNATION.—The Secretary of State shall apply the requirements of section 7031(c) of this Act to officials from countries and organizations identified in the report required pursuant to the previous paragraph.

(3) LIMITATION.—

(A) None of the funds appropriated by this Act under titles III and IV may be made available for assistance for the central government of a country or international organization that is listed for 2 consecutive years in the report required by paragraph (1).

(B) The Secretary may resume assistance to the government of a country or international organization listed in the report for 2 consecutive years required by paragraph (1) if the Secretary determines and reports to the appropriate congressional committees that such government or international organization no longer pays the Government of Cuba for coerced and trafficked labor of Cuban medical professionals.

(f) FACILITATING IRRESPONSIBLE MIGRATION.—None of the funds appropriated or otherwise made available by this Act may be used to encourage, mobilize, publicize, or manage mass-migration caravans toward the United States southwest border: *Provided,* That not later than 180 days after the date of enactment of this Act, the Secretary of State shall report to the appropriate congressional committees with analysis on the organization and funding of mass-migration caravans in the Western Hemisphere: *Provided further*, That the prohibition contained in this subsection shall not be construed to preclude the provision of humanitarian assistance.

(g) HAITI.—

(1) ASSISTANCE.—Funds appropriated under titles III and IV of this Act shall be made available for assistance for Haiti for programs to—

(A) improve security and counter gang violence, including through the Gang Suppression Force in Haiti, and support for the Haitian National Police and administration of justice;

(B) coordinate programs and facilitate information sharing between and among Federal agencies and other international entities, particularly in the security and electoral sectors;

(C) address humanitarian needs, including nutrition and programs addressing violence against women and children;

(D) continue basic education, public health, and economic development programs; and

(E) establish humanitarian corridors for the provision of assistance to the people of Haiti, as the initial step in implementing an integrated security and humanitarian response that respects Haitian self-determination and sovereignty.

(2) HAITIAN ARMED FORCES.—Of the funds appropriated by this Act under the headings "Peacekeeping Operations" and "Foreign Military Financing Program", up to $5,000,000 may be made available for non-lethal assistance and operational support for the Haitian Armed Forces, following consultation with the appropriate congressional committees.

(3) HAITIAN COAST GUARD.—The Government of Haiti shall be eligible to purchase defense articles and services under the Arms Export Control Act (22 U.S.C. 2751 et seq.) for the Coast Guard.

(h) MEXICO.—

(1) WATER DELIVERIES.—None of the funds appropriated or otherwise made available by this Act may be made available for assistance for the Government of Mexico until the Secretary of State certifies and reports to the Committees on Appropriations that such Government is delivering water owed to the United States by Mexico, as prescribed by Article 4, Section B of the Treaty Between the United States of America and Mexico Relating to the Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande, February 3, 1944 (59 Stat. 1219): *Provided,* That such certification shall include an assessment of whether Mexico is delivering water in accordance with all terms established across bilateral agreements addressing delivery shortfalls: *Provided further,* That the limitation of this paragraph shall not apply to funds made available to counter the flow of fentanyl, fentanyl precursors, and other synthetic drugs into the United States.

(2) COUNTERNARCOTICS.—Of the funds appropriated by this Act under title IV that are made available for assistance for Mexico, 30 percent may only be obligated after the Secretary of State certifies and reports to the Committees on Appropriations that in the previous 12 months the Government of Mexico has taken steps to—

(A) reduce the amount of fentanyl arriving at the United States-Mexico border;

(B) dismantle and hold accountable transnational criminal organizations;

(C) support joint counternarcotics operations and intelligence sharing with United States counterparts;

(D) respect extradition requests for criminals sought by the United States; and

(E) increase counternarcotics engagement at both Federal and state levels.

(i) NICARAGUA.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $15,000,000 shall be made available for democracy and religious freedom programs for Nicaragua.

(j) ORGANIZATION OF AMERICAN STATES.—

(1) The Secretary of State shall instruct the United States Permanent Representative to the Organization of American States (OAS) to use the voice and vote of the United States to:

(A) implement budgetary reforms and efficiencies within the Organization;

(B) eliminate arrears, increase other donor contributions, and impose penalties for successive late payment of assessments;

(C) prevent programmatic and organizational redundancies and consolidate duplicative activities and functions;

(D) prioritize areas in which the OAS has expertise, such as strengthening democracy, monitoring electoral processes, and protecting human rights; and

(E) implement reforms within the Office of the Inspector General (OIG) to ensure the OIG has the necessary leadership, integrity, professionalism, independence, policies, and procedures to properly carry out its responsibilities in a manner that meets or exceeds best practices in the United States.

(2) Prior to the obligation of funds appropriated by this Act and made available for an assessed contribution to the Organization of American States, but not later than 90 days after the date of enactment of this Act, the Secretary of State shall submit a report to the appropriate congressional committees on actions taken or planned to be taken pursuant to paragraph (1) that are in addition to actions taken during the preceding fiscal year, and the results of such actions.

(k) THE CARIBBEAN.—Of the funds appropriated by this Act under titles III and IV, not less than $90,000,000 shall be made available for the Caribbean Basin Security Initiative: *Provided,* That funds made available above the fiscal year 2025 level shall be prioritized for countries within the transit zones of illicit drug shipments toward the United States that have increased interdiction of illicit drugs and are most directly impacted by the crisis in Haiti.

(l) VENEZUELA.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", $50,000,000 should be made available for democracy programs for Venezuela.

EUROPE AND EURASIA

SEC. 7046. (a) SECTION 907 OF THE FREEDOM SUPPORT ACT.— Section 907 of the FREEDOM Support Act (22 U.S.C. 5812 note) shall not apply to—

(1) activities to support democracy or assistance under title V of the FREEDOM Support Act (22 U.S.C. 5851 et seq.) and section 1424 of the Defense Against Weapons of Mass Destruction Act of 1996 (50 U.S.C. 2333) or non-proliferation assistance;

(2) any assistance provided by the Trade and Development Agency under section 661 of the Foreign Assistance Act of 1961;

(3) any activity carried out by a member of the United States and Foreign Commercial Service while acting within his or her official capacity;

(4) any insurance, reinsurance, guarantee, or other assistance provided by the United States International Development Finance Corporation as authorized by the BUILD Act of 2018 (division F of Public Law 115–254);

(5) any financing provided under the Export-Import Bank Act of 1945 (Public Law 79–173); or

(6) humanitarian assistance.

(b) TERRITORIAL INTEGRITY.—None of the funds appropriated by this Act may be made available for assistance for a government

H. R. 7148—431

of an Independent State of the former Soviet Union if such government directs any action in violation of the territorial integrity or national sovereignty of any other Independent State of the former Soviet Union, such as those violations included in the Helsinki Final Act: *Provided,* That except as otherwise provided in section 7047(a) of this Act, funds may be made available without regard to the restriction in this subsection if the President determines that to do so is in the national security interest of the United States: *Provided further,* That prior to executing the authority contained in the previous proviso, the Secretary of State shall consult with the Committees on Appropriations on how such assistance supports the national security interest of the United States.

(c) TURKEY.—The limitations and other provisions of section 7046(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (division F of Public Law 118–47) shall continue in effect during fiscal year 2026 and apply to funds appropriated by this Act.

(d) REQUIREMENTS.—The limitations and other provisions of section 7046(d) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (division F of Public Law 118–47) shall continue in effect during fiscal year 2026 and apply to funds appropriated by this Act.

(e) OTHER MATTERS.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $500,000,000 shall be made available, notwithstanding any other provision of law, except section 7047 of this Act, for assistance and related programs for countries identified in section 3 of the FREEDOM Support Act (22 U.S.C. 5801) and section 3(c) of the SEED Act of 1989 (22 U.S.C. 5402), in addition to funds otherwise available for such purposes: *Provided,* That funds appropriated by this Act under the headings "National Security Investment Programs" and "International Narcotics Control and Law Enforcement" may be made available for contributions to multilateral initiatives to counter hybrid threats.

COUNTERING RUSSIAN INFLUENCE AND AGGRESSION

SEC. 7047. (a) PROHIBITION.—None of the funds appropriated by this Act may be made available for assistance for the central Government of the Russian Federation.

(b) ANNEXATION OF TERRITORY.—

(1) PROHIBITION.—None of the funds appropriated by this Act may be made available for assistance for the central government of a country that the Secretary of State determines and reports to the Committees on Appropriations has taken affirmative steps intended to support or be supportive of the Russian Federation annexation of Crimea or other territory in Ukraine: *Provided,* That except as otherwise provided in subsection (a), the Secretary may waive the restriction on assistance required by this paragraph if the Secretary determines and reports to such Committees that to do so is in the national interest of the United States, and includes a justification for such interest.

(2) LIMITATION.—None of the funds appropriated by this Act may be made available for—

H. R. 7148—432

(A) the implementation of any action or policy that recognizes the sovereignty of the Russian Federation over Crimea or other territory in Ukraine;

(B) the facilitation, financing, or guarantee of United States Government investments in Crimea or other territory in Ukraine under the control of the Russian Federation or Russian-backed forces, if such activity includes the participation of Russian Government officials, or other Russian owned or controlled financial entities; or

(C) assistance for Crimea or other territory in Ukraine under the control of the Russian Federation or Russian-backed forces, if such assistance includes the participation of Russian Government officials, or other Russian owned or controlled financial entities.

(3) INTERNATIONAL FINANCIAL INSTITUTIONS.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice and vote of the United States to oppose any assistance by such institution (including any loan, credit, grant, or guarantee) for any program that violates the sovereignty or territorial integrity of Ukraine.

(4) DURATION.—The requirements and limitations of this subsection shall cease to be in effect if the Secretary of State determines and reports to the Committees on Appropriations that the Government of Ukraine has reestablished sovereignty over Crimea and other territory in Ukraine under the control of the Russian Federation or Russian-backed forces.

(c) OCCUPATION OF THE GEORGIAN TERRITORIES OF ABKHAZIA AND TSKHINVALI REGION/SOUTH OSSETIA.—

(1) PROHIBITION.—None of the funds appropriated by this Act may be made available for assistance for the central government of a country that the Secretary of State determines and reports to the Committees on Appropriations has recognized the independence of, or has established diplomatic relations with, the Russian Federation occupied Georgian territories of Abkhazia and Tskhinvali Region/South Ossetia: *Provided*, That the Secretary shall publish on the Department of State website a list of any such central governments in a timely manner: *Provided further*, That the Secretary may waive the restriction on assistance required by this paragraph if the Secretary determines and reports to the Committees on Appropriations that to do so is in the national interest of the United States, and includes a justification for such interest.

(2) LIMITATION.—None of the funds appropriated by this Act may be made available to support the Russian Federation occupation of the Georgian territories of Abkhazia and Tskhinvali Region/South Ossetia.

(3) INTERNATIONAL FINANCIAL INSTITUTIONS.—The Secretary of the Treasury shall instruct the United States executive director of each international financial institution to use the voice and vote of the United States to oppose any assistance by such institution (including any loan, credit, grant, or guarantee) for any program that violates the sovereignty and territorial integrity of Georgia.

(d) COUNTERING RUSSIAN INFLUENCE FUND.—Of the funds appropriated by this Act and prior Acts making appropriations

H. R. 7148—433

for the Department of State, foreign operations, and related programs under the headings "National Security Investment Programs", "International Narcotics Control and Law Enforcement", "International Military Education and Training", and "Foreign Military Financing Program", not less than $300,000,000 shall be made available to carry out the purposes of the Countering Russian Influence Fund, as authorized by section 254 of the Countering Russian Influence in Europe and Eurasia Act of 2017 (Public Law 115–44; 22 U.S.C. 9543) and notwithstanding the country limitation in subsection (b) of such section, and programs to enhance the capacity of law enforcement and security forces in countries in Europe, Eurasia, and Central Asia and strengthen security cooperation between such countries and the United States and the North Atlantic Treaty Organization, as appropriate: *Provided,* That funds made available pursuant to this paragraph under the heading "Foreign Military Financing Program" may remain available until September 30, 2027.

UNITED NATIONS AND OTHER INTERNATIONAL ORGANIZATIONS

SEC. 7048. (a) UNITED NATIONS VOTING PRACTICES.—

(1) In considering bilateral assistance for a foreign government, the Secretary of State should review, among other factors, the voting practices of such government in the United Nations in relation to United States strategic interests and whether such government supports the participation of Taiwan as an observer in meetings and activities of multilateral agencies, bodies, or commissions.

(2) The Secretary of State shall consult with the United States Permanent Representative to the United Nations on the voting practices of foreign governments prior to the submission of the report required under section 653(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2413(a)).

(b) TRANSPARENCY AND ACCOUNTABILITY.—Of the funds appropriated under title I and under the heading "International Organizations and Programs" in title V of this Act that are available for contributions to the United Nations (including the Department of Peacekeeping Operations) or any United Nations agency, 10 percent may not be obligated for such organization, department, or agency until the Secretary of State determines and reports to the appropriate congressional committees that the organization, department, or agency is—

(1) posting on a publicly available website, consistent with privacy regulations and due process, regular financial and programmatic audits of such organization, department, or agency, and providing the United States Government with necessary access to such financial and performance audits;

(2) effectively implementing and enforcing policies and procedures which meet or exceed best practices in the United States for the protection of whistleblowers from retaliation, including—

(A) protection against retaliation for internal and lawful public disclosures;

(B) legal burdens of proof;

(C) statutes of limitation for reporting retaliation;

H. R. 7148—434

(D) access to binding independent adjudicative bodies, including shared cost and selection of external arbitration; and

(E) results that eliminate the effects of proven retaliation, including provision for the restoration of prior employment;

(3) effectively implementing and enforcing policies and procedures on the appropriate use of travel funds, including restrictions on first-class and business-class travel;

(4) taking credible steps to combat anti-Israel bias;

(5) developing and implementing mechanisms to inform donors of instances in which funds have been diverted or destroyed and an explanation of the response by the respective international organization; and

(6) implementing policies and procedures to effectively vet staff for any affiliation with a terrorist organization.

(c) RESTRICTIONS ON UNITED NATIONS DELEGATIONS AND ORGANIZATIONS.—

(1) None of the funds made available by this Act may be used to pay expenses for any United States delegation to any specialized agency, body, or commission of the United Nations if such agency, body, or commission is chaired or presided over by a country, the government of which the Secretary of State has determined, for purposes of section 1754(c) of the Export Control Reform Act of 2018 (50 U.S.C. 4813(c)), supports international terrorism.

(2) None of the funds made available by this Act may be used by the Secretary of State as a contribution to any organization, agency, commission, or program within the United Nations system if such organization, agency, commission, or program is chaired or presided over by a country the government of which the Secretary of State has determined, for purposes of section 620A of the Foreign Assistance Act of 1961, section 40 of the Arms Export Control Act, section 1754(c) of the Export Control Reform Act of 2018 (50 U.S.C. 4813(c)), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism.

(3) The Secretary of State may waive the restriction in this subsection if the Secretary determines and reports to the Committees on Appropriations that to do so is important to the national interest of the United States, including a description of the national interest served.

(d) UNITED NATIONS HUMAN RIGHTS COUNCIL.—

(1) None of the funds appropriated by this Act may be made available in support of the United Nations Human Rights Council unless the Secretary of State determines and reports to the appropriate congressional committees that participation in the Council is important to the national interest of the United States and that such Council is taking significant steps to remove Israel as a permanent agenda item and ensure integrity in the election of members to such Council: *Provided,* That such report shall include a description of the national interest served and provide a detailed reform agenda, including a timeline to remove Israel as a permanent agenda item and ensure integrity in the election of members to such Council: *Provided further,* That the Secretary of State shall withhold,

H. R. 7148—435

from funds appropriated by this Act under the heading "Contributions to International Organizations" for a contribution to the United Nations Regular Budget, the United States proportionate share of the total annual amount of the United Nations Regular Budget funding for the United Nations Human Rights Council until such determination and report is made: *Provided further,* That if the Secretary is unable to make such determination and report, such amounts may be reprogrammed for purposes other than the United Nations Regular Budget, subject to the regular notification procedures of the Committees on Appropriations: *Provided further,* That the Secretary shall report to the Committees on Appropriations not later than September 30, 2026, on the resolutions considered in the United Nations Human Rights Council during the previous 12 months, and on steps taken to remove Israel as a permanent agenda item and to improve the quality of membership through competitive elections.

(2) None of the funds appropriated by this Act may be made available for the United Nations International Commission of Inquiry on the Occupied Palestinian Territory, including East Jerusalem, and Israel.

(e) PROHIBITION OF PAYMENTS TO UNITED NATIONS MEMBERS.— None of the funds appropriated or made available pursuant to titles III through VI of this Act for carrying out the Foreign Assistance Act of 1961, may be used to pay in whole or in part any assessments, arrearages, or dues of any member of the United Nations or, from funds appropriated by this Act to carry out chapter 1 of part I of the Foreign Assistance Act of 1961, the costs for participation of another country's delegation at international conferences held under the auspices of multilateral or international organizations.

(f) REPORT AND BRIEFING.—

(1) Not later than 45 days after the date of enactment of this Act, the Secretary of State shall submit a report to the Committees on Appropriations detailing the amount of funds available for obligation or expenditure in fiscal year 2026 for contributions to any organization, department, agency, or program within the United Nations system or any international program that are withheld from obligation or expenditure due to any provision of law: *Provided,* That the Secretary shall update such report each time additional funds are withheld by operation of any provision of law: *Provided further,* That the reprogramming of any withheld funds identified in such report, including updates thereof, shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

(2) Not later than 30 days after the date of enactment of this Act, the Secretary of State shall brief the appropriate congressional committees on the processes and recommendations for United States participation in each international organization included in the 2025 review of such matters.

(g) SEXUAL EXPLOITATION AND ABUSE IN PEACEKEEPING OPERATIONS.—The Secretary of State shall, to the maximum extent practicable, withhold assistance to any unit of the security forces of a foreign country if the Secretary has credible information that such unit has engaged in sexual exploitation or abuse while serving in a United Nations peacekeeping operation until the Secretary

determines that the government of such country is taking effective steps to hold the responsible members of such unit accountable and to prevent future incidents: *Provided,* That the Secretary shall promptly notify the government of each country subject to any withholding of assistance pursuant to this paragraph, and shall notify the appropriate congressional committees of such withholding not later than 10 days after a determination to withhold such assistance is made: *Provided further,* That the Secretary shall, to the maximum extent practicable, assist such government in bringing the responsible members of such unit to justice.

(h) ADDITIONAL AVAILABILITY.—Subject to the regular notification procedures of the Committees on Appropriations, funds appropriated by this Act which are returned or not made available due to the second proviso under the heading "Contributions for International Peacekeeping Activities" in title I of this Act or section 307(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2227(a)), shall remain available for obligation until September 30, 2027: *Provided,* That the requirement to withhold funds for programs in Burma under section 307(a) of the Foreign Assistance Act of 1961 shall not apply to funds appropriated by this Act.

(i) ACCOUNTABILITY REQUIREMENT.—

(1) The Secretary of State shall seek to enter into written agreements with each international organization that receives funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs to provide timely access to the Inspector General of the Department of State and the Comptroller General of the United States to such organization's financial data and other information relevant to United States contributions to such organization, as determined by the Inspector General and the Comptroller General.

(2) Not later than 180 days after the date of enactment of this Act, the Secretary of State shall submit a report to the appropriate congressional committees detailing whether each international organization funded by this Act has entered into such agreements: *Provided,* That such report shall include, for each applicable organization, the status of any negotiations undertaken by the Department of State to secure such agreements, including any obstacles encountered and a description of the Department's plans to address them.

(j) STRENGTHENING AMERICAN PRESENCE AT INTERNATIONAL ORGANIZATIONS.—

(1) Of the funds made available by this Act under the heading "International Organizations and Programs", not less than $5,000,000 shall be made available for the placement of United States citizens in the Junior Professional Officer Programme.

(2) Of the funds made available by this Act under the heading "Diplomatic Programs", not less than $750,000 shall be made available to enhance the competitiveness of United States citizens for leadership positions in the United Nations system, including pursuant to section 9701 of the Department of State Authorization Act of 2022 (title XCVII of division I of Public Law 117–263).

(k) TRANSFER AUTHORITY.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", up to $466,514,000 may be transferred to, and merged with, funds

available under the headings "Contributions to International Organizations" and "Contributions for International Peacekeeping Activities" if the Secretary of State determines and reports to the Committees on Appropriations that such funds support reform efforts and are in the national interest: *Provided,* That such transfer authority is in addition to any other transfer authority provided by this Act or any other Act and is subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

WAR CRIMES TRIBUNAL

SEC. 7049. If the President determines that doing so will contribute to a just resolution of charges regarding genocide or other violations of international humanitarian law, the President may direct a drawdown pursuant to section 552(c) of the Foreign Assistance Act of 1961 of up to $30,000,000 of commodities and services for the United Nations War Crimes Tribunal established with regard to the former Yugoslavia by the United Nations Security Council or such other tribunals or commissions as the Council may establish or authorize to deal with such violations, without regard to the ceiling limitation contained in paragraph (2) thereof: *Provided,* That the determination required under this section shall be in lieu of any determinations otherwise required under section 552(c): *Provided further,* That funds made available pursuant to this section shall be made available subject to the regular notification procedures of the Committees on Appropriations.

INTERNET FREEDOM

SEC. 7050. Of the funds appropriated by this Act, not less than $78,375,000 shall be made available for programs to promote Internet freedom globally, consistent with section 9707 of the Department of State Authorization Act of 2022 (title XCVII of division I of Public Law 117–263).

TORTURE AND OTHER CRUEL, INHUMAN, OR DEGRADING TREATMENT OR PUNISHMENT

SEC. 7051. (a) PROHIBITION.—None of the funds made available by this Act may be used to support or justify the use of torture and other cruel, inhuman, or degrading treatment or punishment by any official or contract employee of the United States Government.

(b) ASSISTANCE.—Funds appropriated under titles III and IV of this Act shall be made available, notwithstanding section 660 of the Foreign Assistance Act of 1961, for assistance to eliminate torture and other cruel, inhuman, or degrading treatment or punishment by foreign police, military, or other security forces in countries receiving assistance from funds appropriated by this Act.

AIRCRAFT TRANSFER, COORDINATION, AND USE

SEC. 7052. (a) TRANSFER AUTHORITY.—Notwithstanding any other provision of law or regulation, aircraft procured with funds appropriated by this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs under the headings "Diplomatic Programs", "International

Narcotics Control and Law Enforcement", "Andean Counterdrug Initiative", and "Andean Counterdrug Programs" may be used for any other program and in any region.

(b) PROPERTY DISPOSAL.—The authority provided in subsection (a) shall apply only after the Secretary of State determines and reports to the Committees on Appropriations that the equipment is no longer required to meet programmatic purposes in the designated country or region: *Provided,* That any such transfer shall be subject to prior consultation with, and the regular notification procedures of, the Committees on Appropriations.

(c) AIRCRAFT COORDINATION.—

(1) AUTHORITY.—The uses of aircraft purchased or leased by the Department of State with funds made available in this Act or prior Acts making appropriations for the Department of State, foreign operations, and related programs shall be coordinated under the authority of the appropriate Chief of Mission: *Provided,* That such aircraft may be used to transport, on a reimbursable or non-reimbursable basis, Federal and non-Federal personnel supporting Department of State programs and activities: *Provided further,* That official travel for other agencies for other purposes may be supported on a reimbursable basis, or without reimbursement when traveling on a space available basis: *Provided further,* That funds received by the Department of State in connection with the use of aircraft owned, leased, or chartered by the Department of State may be credited to the Working Capital Fund of the Department and shall be available for expenses related to the purchase, lease, maintenance, chartering, or operation of such aircraft.

(2) SCOPE.—The requirement and authorities of this subsection shall only apply to aircraft, the primary purpose of which is the transportation of personnel.

(d) AIRCRAFT OPERATIONS AND MAINTENANCE.—To the maximum extent practicable, the costs of operations and maintenance, including fuel, of aircraft funded by this Act shall be borne by the recipient country.

PARKING FINES AND REAL PROPERTY TAXES OWED BY FOREIGN GOVERNMENTS

SEC. 7053. The terms and conditions of section 7055 of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2010 (division F of Public Law 111–117) shall apply to this Act: *Provided,* That subsection (f)(2)(B) of such section shall be applied by substituting "September 30, 2025" for "September 30, 2009".

INTERNATIONAL MONETARY FUND

SEC. 7054. (a) EXTENSIONS.—The terms and conditions of sections 7086(b)(1) and (2) and 7090(a) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2010 (division F of Public Law 111–117) shall apply to this Act.

(b) REPAYMENT.—The Secretary of the Treasury shall instruct the United States Executive Director of the International Monetary Fund (IMF) to seek to ensure that any loan will be repaid to the IMF before other private or multilateral creditors.

EXTRADITION

SEC. 7055. (a) LIMITATION.—None of the funds appropriated in this Act may be used to provide assistance (other than funds provided under the headings "National Security Investment Programs", "International Humanitarian Assistance", "International Narcotics Control and Law Enforcement", "United States Emergency Refugee and Migration Assistance Fund", and "Nonproliferation, Anti-terrorism, Demining and Related Assistance") for the central government of a country which has notified the Department of State of its refusal to extradite to the United States any individual indicted for a criminal offense for which the maximum penalty is life imprisonment without the possibility of parole or for killing a law enforcement officer, as specified in a United States extradition request.

(b) CLARIFICATION.—Subsection (a) shall only apply to the central government of a country with which the United States maintains diplomatic relations and with which the United States has an extradition treaty and the government of that country is in violation of the terms and conditions of the treaty.

(c) WAIVER.—The Secretary of State may waive the restriction in subsection (a) on a case-by-case basis if the Secretary certifies to the Committees on Appropriations that such waiver is important to the national interest of the United States.

ENTERPRISE FUNDS

SEC. 7056. (a) NOTIFICATION.—None of the funds made available under titles III through VI of this Act may be made available for Enterprise Funds unless the appropriate congressional committees are notified at least 15 days in advance, in accordance with the requirements enumerated under this section in the joint explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(b) DISTRIBUTION OF ASSETS PLAN.—Prior to the distribution of any assets resulting from any liquidation, dissolution, or winding up of an Enterprise Fund, in whole or in part, the President shall submit to the appropriate congressional committees a plan for the distribution of the assets of the Enterprise Fund.

(c) TRANSITION OR OPERATING PLAN.—Prior to a transition to and operation of any private equity fund or other parallel investment fund under an existing Enterprise Fund, the President shall submit such transition or operating plan to the appropriate congressional committees.

UNITED NATIONS POPULATION FUND

SEC. 7057. (a) CONTRIBUTION.—Of the funds made available under the heading "International Organizations and Programs" in this Act for fiscal year 2026, $32,500,000 shall be made available for the United Nations Population Fund (UNFPA).

(b) AVAILABILITY OF FUNDS.—Funds appropriated by this Act for UNFPA, that are not made available for UNFPA because of the operation of any provision of law, shall be transferred to the "Global Health Programs" account and shall be made available for family planning, maternal, and reproductive health activities, subject to the regular notification procedures of the Committees on Appropriations.

H. R. 7148—440

(c) PROHIBITION ON USE OF FUNDS IN CHINA.—None of the funds made available by this Act may be used by UNFPA for a country program in the People's Republic of China.

(d) CONDITIONS ON AVAILABILITY OF FUNDS.—Funds made available by this Act for UNFPA may not be made available unless—

(1) UNFPA maintains funds made available by this Act in an account separate from other accounts of UNFPA and does not commingle such funds with other sums; and

(2) UNFPA does not fund abortions.

(e) REPORT TO CONGRESS AND DOLLAR-FOR-DOLLAR WITHHOLDING OF FUNDS.—

(1) Not later than 4 months after the date of enactment of this Act, the Secretary of State shall submit a report to the Committees on Appropriations indicating the amount of funds that UNFPA is budgeting for the year in which the report is submitted for a country program in the People's Republic of China.

(2) If a report under paragraph (1) indicates that UNFPA plans to spend funds for a country program in the People's Republic of China in the year covered by the report, then the amount of such funds UNFPA plans to spend in the People's Republic of China shall be deducted from the funds made available to UNFPA after March 1 for obligation for the remainder of the fiscal year in which the report is submitted.

GLOBAL HEALTH ACTIVITIES

SEC. 7058. (a) IN GENERAL.—Funds appropriated by titles III and IV of this Act that are made available for bilateral assistance for child survival activities or disease programs including activities relating to research on, and the prevention, treatment and control of, HIV/AIDS may be made available notwithstanding any other provision of law except for provisions under the heading "Global Health Programs" and the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 (117 Stat. 711; 22 U.S.C. 7601 et seq.), as amended: *Provided,* That of the funds appropriated under title III of this Act, not less than $575,000,000 should be made available for family planning/reproductive health, including in areas where population growth threatens biodiversity or endangered species.

(b) PANDEMICS AND OTHER INFECTIOUS DISEASE OUTBREAKS.—

(1) GLOBAL HEALTH SECURITY.—Funds appropriated by this Act under the heading "Global Health Programs" shall be made available for global health security programs to accelerate the capacity of countries to prevent, detect, and respond to infectious disease outbreaks, including by strengthening public health capacity where there is a high risk of emerging zoonotic infectious diseases: *Provided,* That not later than 60 days after the date of enactment of this Act, the Secretary of State shall consult with the Committees on Appropriations on the planned uses of such funds.

(2) EXTRAORDINARY MEASURES.—If the Secretary of State determines and reports to the Committees on Appropriations that an international infectious disease outbreak is sustained, severe, and is spreading internationally, or that it is in the national interest to respond to a Public Health Emergency of International Concern, not to exceed an aggregate total of

$200,000,000 of the funds appropriated by this Act under the headings "Global Health Programs", "National Security Investment Programs", "International Humanitarian Assistance", "Democracy Fund", and "Millennium Challenge Corporation", may be made available to combat such infectious disease or public health emergency, and may be transferred to, and merged with, funds appropriated under such headings for the purposes of this paragraph.

(3) EMERGENCY RESERVE FUND.—Up to $20,000,000 of the funds made available under the heading "Global Health Programs" may be made available for the Emergency Reserve Fund established pursuant to section 7058(c)(1) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2017 (division J of Public Law 115–31): *Provided,* That such funds shall be made available under the same terms and conditions of such section, except that such section shall be applied by substituting "International Humanitarian Assistance" for "International Disaster Assistance" and substituting "Secretary of State" for "Administrator of the United States Agency for International Development".

(4) CONSULTATION AND NOTIFICATION.—Funds made available by this subsection, except paragraph (3), shall be subject to prior consultation with the appropriate congressional committees and the regular notification procedures of the Committees on Appropriations.

(c) LIMITATION.—Notwithstanding any other provision of law, none of the funds made available by this Act may be made available to the Wuhan Institute of Virology located in the City of Wuhan in the People's Republic of China.

(d) TRANSITION STRATEGY.—Not later than 90 days after the date of enactment of this Act, the Secretary of State shall submit a strategy to the appropriate congressional committees on a multi-year structured transition of programs supported by the President's Emergency Plan for AIDS Relief to country-led ownership resulting in reductions of United States assistance consistent with the requirements described under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(e) INITIATIVE.—Of the funds appropriated by this Act under the heading "Global Health Programs", not less than $50,000,000 shall be made available for a Prevention, Treatment, and Response Initiative for the prevention and treatment of HIV/AIDS, malaria, and other infectious diseases as described under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That such funds shall be awarded to eligible public and private entities, including product development partnerships and in coordination with other donors, and shall support the September 2025 America First Global Health Strategy: *Provided further,* That funds made available by this subsection may only be made available following consultation with the Committees on Appropriations: *Provided further,* That such funds are in addition to funds otherwise made available by this Act for such purposes.

H. R. 7148—442

WOMEN'S EQUALITY AND EMPOWERMENT

Sec. 7059. (a) In General.—Funds appropriated by this Act shall be made available to promote the equality and empowerment of women and girls in United States Government diplomatic and development efforts by raising the status, increasing the economic participation and opportunities for political leadership, and protecting the rights of women and girls worldwide.

(b) Women's Economic Empowerment.—Of the funds appropriated under title III of this Act, $150,000,000 shall be made available to expand economic opportunities for women by increasing the number and capacity of women-owned enterprises, improving property rights for women, increasing women's access to financial services and capital, enhancing the role of women in economic decision-making at the local, national, and international levels, and improving women's ability to participate in the global economy, including through implementation of the Women's Entrepreneurship and Economic Empowerment Act of 2018 (Public Law 115–428): *Provided,* That the Secretary of State shall consult with the Committees on Appropriations on the uses of funds made available pursuant to this subsection.

(c) Madeleine K. Albright Women's Leadership Program.—Of the funds appropriated under title III of this Act, not less than $37,500,000 shall be made available for the Madeleine K. Albright Women's Leadership Program, as established by section 7059(b) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2023 (division K of Public Law 117–328).

(d) Gender-Based Violence.—

(1) Of the funds appropriated under titles III and IV of this Act, not less than $187,500,000 shall be made available to implement a multi-year strategy to prevent and respond to gender-based violence in countries where it is common in conflict and non-conflict settings.

(2) Funds appropriated under titles III and IV of this Act that are available to train foreign police, judicial, and military personnel, including for international peacekeeping operations, shall address, where appropriate, prevention and response to gender-based violence and trafficking in persons, and shall promote the integration of women into the police and other security forces.

(3) Funds made available pursuant to this subsection should include efforts to combat a variety of forms of violence against women and girls, including child marriage, rape, and female genital cutting and mutilation.

(e) Women, Peace, and Security.—Of the funds appropriated by this Act under the headings "National Security Investment Programs" and "International Narcotics Control and Law Enforcement", $112,500,000 should be made available to support a multi-year strategy to expand, and improve coordination of, United States Government efforts to empower women as equal partners in conflict prevention, peace building, transitional processes, and reconstruction efforts in countries affected by conflict or in political transition, and to ensure the equal provision of relief and recovery assistance to women and girls.

H. R. 7148—443

SECTOR ALLOCATIONS

SEC. 7060. (a) BASIC EDUCATION AND HIGHER EDUCATION.—
(1) BASIC EDUCATION.—
(A) Of the funds appropriated under title III of this
Act, not less than $691,500,000 shall be made available
for the Nita M. Lowey Basic Education Fund, and such
funds may be made available notwithstanding any other
provision of law that restricts assistance to foreign coun-
tries: *Provided,* That such funds shall also be used for
secondary education activities.
(B) Of the funds appropriated under title III of this
Act for assistance for basic education programs,
$152,000,000 shall be made available for contributions to
multilateral partnerships that support education.
(2) HIGHER EDUCATION.—Of the funds appropriated by title
III of this Act, not less than $203,250,000 shall be made avail-
able for assistance for higher education: *Provided,* That such
funds may be made available notwithstanding any other provi-
sion of law that restricts assistance to foreign countries, and
shall be subject to the regular notification procedures of the
Committees on Appropriations: *Provided further,* That of such
amount, not less than $50,000,000 shall be made available
for higher education programs pursuant to section 7060(a)(3)
of the Department of State, Foreign Operations, and Related
Programs Appropriations Act, 2021 (division K of Public Law
116–260).
(b) CONSERVATION PROGRAMS.—
(1) Funds appropriated by this Act to carry out the provi-
sions of sections 103 through 106, and chapter 4 of part II,
of the Foreign Assistance Act of 1961 may be used, notwith-
standing any other provision of law, except for the provisions
of this subsection, to support programs funded pursuant to
this subsection: *Provided,* That funds made available pursuant
to this subsection shall be subject to the regular notification
procedures of the Committees on Appropriations.
(2)(A) Of the funds appropriated under title III of this
Act, not less than $274,313,000 shall be made available for
biodiversity conservation programs, including for marine con-
servation programs following consultation with the Committees
on Appropriations: *Provided,* That no such funds may be made
available to support the expansion of industrial scale logging,
agriculture, livestock production, mining, or any other indus-
trial scale extractive activity into areas that were primary/
intact tropical forests as of December 30, 2013, and the Sec-
retary of the Treasury shall instruct the United States executive
directors of each international financial institution to use the
voice and vote of the United States to oppose any financing
of any such activity.
(B)(i) Of the funds appropriated under titles III and IV
of this Act, not less than $89,063,000 shall be made available
to combat the transnational threat of wildlife poaching and
trafficking.
(ii) None of the funds appropriated under title IV of this
Act may be made available for training or other assistance
for any military unit or personnel that the Secretary of State
determines has been credibly alleged to have participated in

H. R. 7148—444

wildlife poaching or trafficking, unless the Secretary reports to the appropriate congressional committees that to do so is in the national security interest of the United States.

(C) Of the funds appropriated under titles III and IV of this Act, not less than $12,500,000 shall be made available for the prevention of illegal logging practices consistent with the Lacey Act (16 U.S.C. 3371 et seq./section 8204 of Public Law 110–246), and not less than $12,500,000 shall be made available to reduce deforestation: *Provided,* That such funds shall be allocated consistent with the requirements included under this heading in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act).

(3) Of the funds appropriated under titles III and IV of this Act, not less than $131,813,000 shall be made available for land use, management, and protection programs.

(c) DEVELOPMENT PROGRAMS.—Of the funds appropriated by this Act under the heading "National Security Investment Programs", not less than $13,875,000 shall be made available for cooperative development programs.

(d) DISABILITY PROGRAMS.—Funds appropriated by this Act under the heading "National Security Investment Programs" shall be made available for programs and activities to address the needs of, and protect and promote the rights of, people with disabilities in developing countries: *Provided,* That funds shall be made available to support disability rights advocacy organizations in developing countries: *Provided further,* That of the funds made available pursuant to this subsection, 5 percent may be used for management, oversight, and technical support.

(e) FOOD SECURITY AND AGRICULTURAL DEVELOPMENT.—

(1) USES OF FUNDS.—Of the funds appropriated by title III of this Act, not less than $720,000,000 shall be made available for food security and agricultural development programs to carry out the purposes of the Global Food Security Act of 2016 (Public Law 114–195), including not less than $175,000,000 for international agricultural research, of which not less than $72,000,000 shall be made available for the Feed the Future Innovation Labs, including for the purposes enumerated under this section in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act): *Provided,* That funds may be made available for a contribution as authorized by section 3202 of the Food, Conservation, and Energy Act of 2008 (Public Law 110–246), as amended by section 3310 of the Agriculture Improvement Act of 2018 (Public Law 115–334).

(2) FEED THE FUTURE PRIVATE SECTOR ENGAGEMENT.—Of the funds made available pursuant to this subsection, not less than $20,000,000 shall be made available to support private sector investment in food security, including as catalytic capital.

(f) PUBLIC-PRIVATE PARTNERSHIP.—Of the funds appropriated by title III of this Act and prior Acts making appropriations for the Department of State, foreign operations, and related programs, not less than $100,000,000 shall be made available for a public-private partnership foundation for food security, if legislation establishing such a foundation is enacted into law by December 31, 2026.

(g) PROGRAMS TO COMBAT TRAFFICKING IN PERSONS.—

(1) IN GENERAL.—Of the funds appropriated by this Act under the headings "National Security Investment Programs" and "International Narcotics Control and Law Enforcement", not less than $105,625,000 shall be made available for activities to combat trafficking in persons internationally, including for the Program to End Modern Slavery, of which not less than $89,500,000 shall be from funds made available under the heading "International Narcotics Control and Law Enforcement": *Provided,* That funds made available by this Act under the heading "National Security Investment Programs" that are made available for activities to combat trafficking in persons should be obligated and programmed consistent with the country-specific recommendations included in the annual Trafficking in Persons Report, and shall be coordinated with the Office to Monitor and Combat Trafficking in Persons, Department of State: *Provided further,* That such funds are in addition to funds made available by this Act under the heading "Diplomatic Programs" for the Office to Monitor and Combat Trafficking in Persons: *Provided further,* That funds made available by this Act shall be made available to further develop, standardize, and update training for all United States Government personnel under Chief of Mission authority posted at United States embassies and consulates abroad on recognizing signs of human trafficking and protocols for reporting such cases.

(2) REPORT.—Not later than 90 days after the date of enactment of this Act, the Secretary of State shall report to the appropriate congressional committees on how all grants and contracts awarded in the prior fiscal year by the Department of State are compliant with applicable requirements within section 106(g) of the Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(g)).

(h) WATER AND SANITATION.—Of the funds appropriated by this Act, not less than $338,250,000 shall be made available for water supply and sanitation projects pursuant to section 136 of the Foreign Assistance Act of 1961, of which not less than $169,125,000 shall be for programs in sub-Saharan Africa.

(i) DEVIATION.—Unless otherwise provided for by this Act, the Secretary of State may deviate below the minimum funding requirements designated in sections 7030, 7059, and 7060 of this Act by up to 10 percent, notwithstanding such designation: *Provided,* That such deviations shall only be exercised to address unforeseen or exigent circumstances: *Provided further,* That concurrent with the submission of the report required by section 653(a) of the Foreign Assistance Act of 1961, the Secretary shall submit to the Committees on Appropriations in writing any proposed deviations utilizing such authority that are planned at the time of submission of such report: *Provided further,* That any deviations proposed subsequent to the submission of such report shall be subject to prior consultation with such Committees: *Provided further,* That not later than November 1, 2027, the Secretary of State shall submit a report to the Committees on Appropriations on the use of the authority of this subsection.

DEBT-FOR-DEVELOPMENT

SEC. 7061. In order to enhance the continued participation of nongovernmental organizations in debt-for-development and debt-

H. R. 7148—446

for-nature exchanges, a nongovernmental organization which is a grantee or contractor of the Department of State may place in interest bearing accounts local currencies which accrue to that organization as a result of economic assistance provided under title III of this Act and, subject to the regular notification procedures of the Committees on Appropriations, any interest earned on such investment shall be used for the purpose for which the assistance was provided to that organization.

BUDGET DOCUMENTS

SEC. 7062. (a) OPERATING PLANS.—Not later than 45 days after the date of enactment of this Act, each department, agency, or organization funded in titles I, II, and VI of this Act, and the Department of the Treasury and Independent Agencies funded in title III of this Act, shall submit to the Committees on Appropriations an operating plan for funds appropriated to such department, agency, or organization in such titles of this Act, or funds otherwise available for obligation in fiscal year 2026, that provides details of the uses of such funds at the program, project, and activity level: *Provided,* That such plans shall include, as applicable, a comparison between the congressional budget justification funding levels, the most recent congressional directives or approved funding levels, and the funding levels proposed by the department or agency; and a clear, concise, and informative description/justification: *Provided further,* That operating plans that include changes in levels of funding for programs, projects, and activities specified in the congressional budget justification, in this Act, or amounts designated in the tables in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act), as applicable, shall be subject to the notification and re-programming requirements of section 7015 of this Act.

(b) SPEND PLANS.—

(1) Not later than 180 days after the date of enactment of this Act, the Secretary of State shall submit to the Committees on Appropriations a spend plan for funds made available by this Act for—

(A) assistance for Pacific Islands countries and for Colombia;

(B) assistance for the Caribbean Basin Security Initiative, Central America Regional Security Initiative, Middle East Partnership Initiative, Indo-Pacific Strategy and the Countering PRC Influence Fund, and Power Africa;

(C) assistance made available pursuant to the following sections in this Act: section 7030; section 7032; section 7033; section 7036; section 7047(d) (on a country-by-country basis); section 7059; and subsections (a), (e), (g), and (h) of section 7060;

(D) funds provided under the heading "International Narcotics Control and Law Enforcement" for demand reduction, which shall include bilateral and global programs; and

(E) implementation of the Global Fragility Act of 2019.

(2) Not later than 90 days after the date of enactment of this Act, the Secretary of the Treasury shall submit to the Committees on Appropriations a detailed spend plan for

H. R. 7148—447

funds made available by this Act under the headings "Department of the Treasury, International Affairs Technical Assistance" in title III.

(c) CLARIFICATION.—The spend plans referenced in subsection (b) shall not be considered as meeting the notification requirements in this Act or under section 634A of the Foreign Assistance Act of 1961.

(d) CONGRESSIONAL BUDGET JUSTIFICATION.—The congressional budget justification for Department of State operations and foreign operations shall be provided to the Committees on Appropriations concurrent with the date of submission of the President's budget for fiscal year 2027: *Provided,* That the appendices for such justification shall be provided to the Committees on Appropriations not later than 10 calendar days thereafter.

### REORGANIZATION

SEC. 7063. (a) PRIOR CONSULTATION AND NOTIFICATION.—Funds appropriated by this Act, prior Acts making appropriations for the Department of State, foreign operations, and related programs, or any other Act may not be used to implement a reorganization, redesign, or other plan described in subsection (b) by the Department of State or any other Federal department, agency, or organization funded by this Act without prior consultation by the head of such department, agency, or organization with the appropriate congressional committees: *Provided,* That such funds shall be subject to the regular notification procedures of the Committees on Appropriations: *Provided further,* That any such notification submitted to such Committees shall include a detailed justification for any proposed action: *Provided further,* That congressional notifications submitted in prior fiscal years pursuant to similar provisions of law in prior Acts making appropriations for the Department of State, foreign operations, and related programs may be deemed to meet the notification requirements of this section.

(b) DESCRIPTION OF ACTIVITIES.—Pursuant to subsection (a), a reorganization, redesign, or other plan shall include any action to—

(1) expand, eliminate, consolidate, or downsize covered departments, agencies, or organizations, including bureaus and offices within or between such departments, agencies, or organizations, including the transfer to other agencies of the authorities and responsibilities of such bureaus and offices;

(2) expand, eliminate, consolidate, or downsize the United States official presence overseas, including at bilateral, regional, and multilateral diplomatic facilities and other platforms; or

(3) expand or reduce the size of the permanent Civil Service, Foreign Service, eligible family member, and locally employed staff workforce of the Department of State from the staffing levels previously justified to the Committees on Appropriations for fiscal year 2026.

### DEPARTMENT OF STATE MATTERS

SEC. 7064. (a) WORKING CAPITAL FUND.—Funds appropriated by this Act or otherwise made available to the Department of State for payments to the Working Capital Fund that are made available for new service centers, shall be subject to the regular notification procedures of the Committees on Appropriations.

(b) CERTIFICATION.—

(1) COMPLIANCE.—Not later than 45 days after the initial obligation of funds appropriated under titles III and IV of this Act that are made available to a Department of State bureau or office with responsibility for the management and oversight of such funds, the Secretary of State shall certify and report to the Committees on Appropriations, on an individual bureau or office basis, that such bureau or office is in compliance with Department and Federal financial and grants management policies, procedures, and regulations, as applicable.

(2) CONSIDERATIONS.—When making a certification required by paragraph (1), the Secretary of State shall consider the capacity of a bureau or office to—

(A) account for the obligated funds at the country and program level, as appropriate;

(B) identify risks and develop mitigation and monitoring plans;

(C) establish performance measures and indicators;

(D) review activities and performance; and

(E) assess final results and reconcile finances.

(3) PLAN.—If the Secretary of State is unable to make a certification required by paragraph (1), the Secretary shall submit a plan and timeline detailing the steps to be taken to bring such bureau or office into compliance.

(c) OTHER MATTERS.—

(1) In addition to amounts appropriated or otherwise made available by this Act under the heading "Diplomatic Programs"—

(A) as authorized by section 810 of the United States Information and Educational Exchange Act, not to exceed $5,000,000, to remain available until expended, may be credited to this appropriation from fees or other payments received from English teaching, library, motion pictures, and publication programs and from fees from educational advising and counseling and exchange visitor programs; and

(B) not to exceed $15,000, which shall be derived from reimbursements, surcharges, and fees for use of Blair House facilities.

(2) Funds appropriated or otherwise made available by this Act under the heading "Diplomatic Programs" are available for acquisition by exchange or purchase of passenger motor vehicles as authorized by law and, pursuant to section 1108(g) of title 31, United States Code, for the field examination of programs and activities in the United States funded from any account contained in title I of this Act.

(3) Consistent with section 204 of the Admiral James W. Nance and Meg Donovan Foreign Relations Authorization Act, Fiscal Years 2000 and 2001 (22 U.S.C. 2452b), up to $25,000,000 of the amounts made available under the heading "Diplomatic Programs" in this Act may be obligated and expended for United States participation in international fairs and expositions abroad, including for construction and operation of a United States pavilion.

(4)(A) The notification requirement of paragraphs (2) and (3) of subsection (j) of the State Department Basic Authorities

H. R. 7148—449

Act of 1956 (22 U.S.C. 2651a(j)) shall also apply to the Commit-tees on Appropriations.

(B) The justification requirement of paragraph (4) of sub-section (j) of the State Department Basic Authorities Act of 1956 (22 U.S.C. 2651a(j)) shall also apply to the Committees on Appropriations.

(C) Not later than 90 days after the date of enactment of this Act, the Secretary of State shall submit to the appro-priate congressional committees a report detailing the criteria used to certify that a position established in accordance with paragraph (2) of subsection (j) of the State Department Basic Authorities Act of 1956 (22 U.S.C. 2651a(j)) does not require the exercise of significant authority pursuant to the laws of the United States: *Provided*, That such report shall also include a listing of each special appointment authorized by such section, the number of positions for the applicable office, and the salary and other support costs of such office, and such report shall be updated and submitted to the such committees every 180 days thereafter until September 30, 2027.

(5) Funds appropriated by this Act under the headings "Diplomatic Programs" and "National Security Investment Pro-grams" shall be made available for the purposes and in the manner described under this subsection in the explanatory statement described in section 4 (in the matter preceding divi-sion A of this consolidated Act).

FOREIGN ASSISTANCE MANAGEMENT

SEC. 7065. (a) AUTHORITY.—Up to $170,000,000 of the funds made available in title III of this Act pursuant to or to carry out the provisions of part I of the Foreign Assistance Act of 1961 may be used to hire and employ individuals in the United States and overseas on a limited appointment basis pursuant to the authority of sections 308 and 309 of the Foreign Service Act of 1980 (22 U.S.C. 3948 and 3949).

(b) RESTRICTION.—The authority to hire individuals contained in subsection (a) shall expire on September 30, 2027.

(c) PROGRAM ACCOUNT CHARGED.—The account charged for the cost of an individual hired and employed under the authority of this section shall be the account to which the responsibilities of such individual primarily relate: *Provided,* That funds made avail-able to carry out this section may be transferred to, and merged with, funds appropriated by this Act under the relevant headings in title I.

(d) DISASTER SURGE CAPACITY.—Funds appropriated under title III of this Act to carry out part I of the Foreign Assistance Act of 1961, may be used, in addition to funds otherwise available for such purposes, for the cost (including the support costs) of individuals whose primary responsibility is to carry out programs in response to natural disasters or man-made disasters, subject to the regular notification procedures of the Committees on Appro-priations.

(e) SMALL BUSINESS.—In entering into multiple award indefi-nite-quantity contracts with funds appropriated by this Act, the Department of State may provide an exception to the fair oppor-tunity process for placing task orders under such contracts when

H. R. 7148—450

the order is placed with any category of small or small disadvantaged business.

(f) PERSONAL SERVICE AGREEMENTS.—Funds appropriated by this Act under title III may be made available for the Secretary of State to exercise the authorities of section 2669(c) of title 22, United States Code.

STABILIZATION AND DEVELOPMENT

SEC. 7066. (a) Of the funds appropriated by this Act under the headings "National Security Investment Programs", "International Narcotics Control and Law Enforcement", "Nonproliferation, Anti-terrorism, Demining and Related Programs", "Peacekeeping Operations", and "Foreign Military Financing Program", not less than $108,000,000 shall be made available for the Prevention and Stabilization Fund for the purposes enumerated in section 509(a) of the Global Fragility Act of 2019 (title V of division J of Public Law 116–94): *Provided,* That funds made available pursuant to this subsection under the heading "Foreign Military Financing Program" may remain available until September 30, 2027.

(b) Of the funds appropriated under title III of this Act, not less than $192,375,000 shall be made available for natural disaster preparation and mitigation efforts, including in Pacific Islands countries and other high-risk areas, notwithstanding any other provision of law.

EXTENSION OF CONSULAR FEES AND RELATED AUTHORITIES

SEC. 7067. (a) Section 1(b)(1) of the Passport Act of June 4, 1920 (22 U.S.C. 214(b)(1)) shall be applied through fiscal year 2026 by substituting "the costs of providing consular services" for "such costs".

(b) Section 21009 of the Emergency Appropriations for Coronavirus Health Response and Agency Operations (division B of Public Law 116–136; 134 Stat. 592) shall be applied during fiscal year 2026 by substituting "2020 through 2026" for "2020 and 2021".

(c) Discretionary amounts made available to the Department of State under the heading "Administration of Foreign Affairs" of this Act, and discretionary unobligated balances under such heading from prior Acts making appropriations for the Department of State, foreign operations, and related programs, may be transferred to the Consular and Border Security Programs account if the Secretary of State determines and reports to the Committees on Appropriations that to do so is necessary to sustain consular operations, following consultation with such Committees: *Provided,* That such transfer authority is in addition to any transfer authority otherwise available in this Act and under any other provision of law: *Provided further,* That no amounts may be transferred from amounts designated as an emergency requirement pursuant to a concurrent resolution on the budget or the Balanced Budget and Emergency Deficit Control Act of 1985.

(d) In addition to the uses permitted pursuant to section 286(v)(2)(A) of the Immigration and Nationality Act (8 U.S.C. 1356(v)(2)(A)), for fiscal year 2026, the Secretary of State may also use fees deposited into the Fraud Prevention and Detection Account for the costs of providing consular services.

H. R. 7148—451

(e) Amounts provided pursuant to subsection (b) are designated by the Congress as being for an emergency requirement pursuant to section 251(b)(2)(A)(i) of the Balanced Budget and Emergency Deficit Control Act of 1985.

PROHIBITION ON CENSORSHIP

SEC. 7068. Funds appropriated or otherwise made available by this Act for programs to counter foreign propaganda and disinformation, and for related purposes, may only be made available for the purpose of countering such efforts by foreign state and non-state actors abroad.

OTHER MATTERS

SEC. 7069. (a) None of the funds appropriated or otherwise made available by this Act may be obligated or expended to fly or display a flag over a facility of the United States Department of State other than the—

(1) United States flag;
(2) Foreign Service flag pursuant to 2 FAM 154.2–1;
(3) POW/MIA flag;
(4) Hostage and Wrongful Detainee flag, pursuant to section 904 of title 36, United States Code;
(5) flag of a State, insular area, or the District of Columbia at domestic locations;
(6) flag of an Indian Tribal government;
(7) official branded flag of a United States agency; or
(8) sovereign flag of other countries.

(b) Funds may be transferred to the United States Section of the International Boundary and Water Commission, United States and Mexico, from Federal or non-Federal entities, to study, design, construct, operate, and maintain treatment and flood control works and related structures, consistent with the functions of the United States Section: *Provided,* That such funds shall be deposited in an account under the heading "International Boundary and Water Commission, United States and Mexico", to remain available until expended.

MULTILATERAL DEVELOPMENT BANKS

SEC. 7070. (a) ADDITIONAL SUBSCRIPTION TO SHARES OF THE CAPITAL STOCK OF THE INTER-AMERICAN INVESTMENT CORPORA-TION.—The Secretary of the Treasury may subscribe on behalf of the United States to up to an additional 25,128 shares of the capital stock of the Inter-American Investment Corporation: *Pro-vided,* That any subscription to such additional shares shall be effective only to such extent or in such amounts as are provided in this or any other appropriations Act.

(b) WORLD BANK.—

(1) INTERNATIONAL DEVELOPMENT ASSOCIATION TWENTY-FIRST REPLENISHMENT.—The International Development Association Act (22 U.S.C. 284 et seq.) is amended by adding at the end the following:

**"SEC. 33. TWENTY-FIRST REPLENISHMENT.**

"(a) IN GENERAL.—The United States Governor of the Inter-national Development Association may contribute on behalf of the

United States $3,198,552,000 to the twenty-first replenishment of the resources of the Association, subject to obtaining the necessary appropriations.

"(b) AUTHORIZATION OF APPROPRIATIONS.—In order to pay for the United States contribution provided for in subsection (a), there are authorized to be appropriated, without fiscal year limitation, $3,198,552,000 for payment by the Secretary of the Treasury.".

(2) MULTILATERAL DEVELOPMENT BANK SUPPORT FOR NUCLEAR ENERGY.—Title XV of the International Financial Institutions Act (22 U.S.C. 262o et seq.) is amended by adding at the end the following:

## "SEC. 1506. MULTILATERAL DEVELOPMENT BANK SUPPORT FOR NUCLEAR ENERGY.

"The Secretary of the Treasury shall instruct the United States Executive Director at the International Bank for Reconstruction and Development, the European Bank for Reconstruction and Development, and, as the Secretary finds appropriate, any other multilateral development bank (as defined in section 1307(g)) to use the voice, vote, and influence of the United States to advocate for—

"(1) the removal of prohibitions at the respective bank against financial and technical assistance for the generation, transmission, and distribution of nuclear energy, to the extent that the prohibitions apply to nuclear technologies, including small modular reactors, that meet or exceed the quality and safety standards of technologies produced by the United States or a member country of the Organisation for Economic Co-operation and Development; and

"(2) increased internal capacity-building at the respective bank for the purpose of assessing—

"(A) the potential role of nuclear energy, including small modular reactors, in the energy systems of client countries; and

"(B) the delivery of financial and technical assistance described in paragraph (1) to the countries.".

(3) ESTABLISHMENT OF NUCLEAR ENERGY ASSISTANCE TRUST FUNDS.—Title XV of the International Financial Institutions Act (22 U.S.C. 262o et seq.) is further amended by adding at the end the following:

## "SEC. 1507. ESTABLISHMENT OF NUCLEAR ENERGY ASSISTANCE TRUST FUNDS.

"(a) IN GENERAL.—The Secretary of the Treasury shall instruct the United States Governors of the International Bank for Reconstruction and Development, and, as the Secretary deems appropriate, of other international financial institutions (as defined in section 1701(c)(2)) to use the voice, vote, and influence of the United States to establish at each such institution a trust fund to be known as the 'Nuclear Energy Assistance Trust Fund' that meets the requirements of subsections (b) and (c) of this section.

"(b) PURPOSES.—The purposes of such a trust fund shall be the following:

"(1) To provide financial and technical assistance to support the generation, transmission, and distribution of nuclear energy in borrowing countries.

"(2) To ensure that the international financial institution makes financing available on competitive terms, including for

H. R. 7148—453

the purpose of countering credit extended by the government of a country that is not a member of the OECD Arrangement on Officially Supported Export Credits.

"(3) To exclusively support the adoption of nuclear energy technologies, including small modular reactors, that meet or exceed the quality and safety standards of technologies produced by the United States or a member country of the Organisation for Economic Co-operation and Development.

"(4) To strengthen the capacity of the international financial institution to assess, implement, and evaluate nuclear energy projects.

"(c) USE OF TRUST FUND REVENUES.—The revenues of such a trust fund may be made available for activities for the purposes described in subsection (b), or the United States share of the revenues may be remitted to the general fund of the Treasury, as the Secretary finds appropriate.

"(d) RULE OF INTERPRETATION.—This section shall not be interpreted to affect the ability of the United States Governor of, or the United States Executive Director at, an international financial institution (as so defined) to encourage the provision of financial or technical assistance from non-trust fund resources of the institution to support the generation or distribution of nuclear energy.".

(4) INCLUSION IN ANNUAL REPORT.—During the 7-year period that begins with the date of enactment of this Act, the Chairman of the National Advisory Council on International Monetary and Financial Policies shall include in the annual report required by section 1701 of the International Financial Institutions Act a description of any progress made—

(A) to promote multilateral development bank (as defined in such section) assistance for nuclear energy; and

(B) to establish a trust fund pursuant to section 1507 of such Act or, as the case may be, a summary of the activities of any such trust fund.

(5) SUNSET.—The preceding provisions of this subsection and the amendments made by the preceding provisions of this subsection shall have no force or effect beginning 10 years after the date of the enactment of this Act.

(6) CONTINUATION OF PAUSE ON WORLD BANK DISBURSEMENTS AND COMMITMENTS TO BURMA.—The Secretary of the Treasury shall direct the United States Executive Director at the International Bank for Reconstruction and Development to use the voice and vote of the United States to continue the pause by the Bank on disbursements and the making of new financing commitments to Burma, that was initiated after a military coup overthrew the democratically elected government of Burma in 2021, unless the Secretary of the Treasury determines that it is not in the national interest of the United States to do so.

(7) EXEMPTION FROM SECURITIES LAWS; REPORTS TO SECURITIES AND EXCHANGE COMMISSION.—Any securities issued by the International Development Association (including any guaranty by the Association, whether or not limited in scope) and any securities guaranteed by the Association as to both principal and interest shall be deemed to be exempted securities within the meaning of section 3(a)(2) of the Securities Act of 1933 (15 U.S.C. 77c(a)(2)) and section 3(a)(12) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(12)): *Provided,*

That the Association shall file with the Securities and Exchange Commission such annual and other reports with regard to such securities as the Commission shall determine to be appropriate in view of the special character of the Association and its operations, and necessary in the public interest or for the protection of investors.

(8) AUTHORITY OF SECURITIES AND EXCHANGE COMMISSION TO SUSPEND EXEMPTION; REPORTS TO CONGRESS.—The Securities and Exchange Commission, acting in consultation with the National Advisory Council on International Monetary and Financial Policies, may suspend the provisions of paragraph (7) at any time as to any or all securities issued or guaranteed by the International Development Association during the period of such suspension: *Provided*, That the Commission shall include in its annual reports to the Congress such information as it shall deem advisable with regard to the operations and effect of this paragraph.

(9) EFFECTIVE DATE.—

(A) IN GENERAL.—Paragraph (7) shall take effect 30 days after the date of the enactment of this Act.

(B) EXCEPTION.—Notwithstanding subparagraph (A), paragraph (7) shall not take effect if, before the effective date described in subparagraph (A), the Secretary of the Treasury reports to the Committee on Financial Services of the House of Representatives and the Committees on Banking, Housing, and Urban Affairs and Foreign Relations of the Senate that the International Development Association is providing financial assistance to any country the government of which the Secretary of State has determined, for purposes of section 1754 of the National Defense Authorization Act for Fiscal Year 2019, section 620A of the Foreign Assistance Act of 1961, or section 40 of the Arms Export Control Act, to be a government that has repeatedly provided support for acts of international terrorism.

(c) ASIAN DEVELOPMENT FUND THIRTEENTH REPLENISHMENT.— The Asian Development Bank Act (22 U.S.C. 285 et seq.) is amended by adding at the end the following:

### "SEC. 38. ASIAN DEVELOPMENT FUND THIRTEENTH REPLENISHMENT.

"(a) IN GENERAL.—The United States Governor of the Fund may contribute on behalf of the United States $174,440,000 to the thirteenth replenishment of the resources of the Fund, subject to obtaining the necessary appropriations.

"(b) AUTHORIZATION OF APPROPRIATIONS.—In order to pay for the United States contribution provided for in subsection (a), there are authorized to be appropriated, without fiscal year limitation, $174,440,000 for payment by the Secretary of the Treasury.".

(d) AFRICAN DEVELOPMENT BANK GENERAL CALLABLE CAPITAL INCREASE.—The African Development Bank Act (22 U.S.C. 290i et seq.) is amended by inserting at the end the following:

### "SEC. 1346. GENERAL CALLABLE CAPITAL INCREASE.

"(a) SUBSCRIPTION AUTHORIZED.—

"(1) IN GENERAL.—The United States Governor of the Bank may subscribe on behalf of the United States to 800,000 additional shares of the capital stock of the Bank.

H. R. 7148—455

"(2) LIMITATION.—Any subscription by the United States to the capital stock of the Bank shall be effective only to such extent and in such amounts as are provided in advance in appropriations Acts.

"(b) AUTHORIZATION OF APPROPRIATIONS.—For the increase in the United States subscription to the Bank under subsection (a), there is authorized to be appropriated, without fiscal year limitation, $7,800,000,000, for payment by the Secretary of the Treasury for callable shares of the Bank.".

AMERICA FIRST OPPORTUNITY FUND

SEC. 7071. (a) IN GENERAL.—Of the funds appropriated by this Act under the headings "National Security Investment Programs", "International Narcotics Control and Law Enforcement", "Peacekeeping Operations", and "Foreign Military Financing Program", up to $850,000,000 may be made available for the America First Opportunity Fund to furnish assistance that makes America safer, stronger, and more prosperous by responding to crises, engaging proactively with strategic partners, and countering threats from adversaries.

(b) TRANSFER AUTHORITY.—Funds appropriated by this Act under the headings "International Narcotics Control and Law Enforcement", "Peacekeeping Operations", and "Foreign Military Financing Program" and made available for such Fund may be transferred to, and merged with, funds appropriated under such headings: *Provided,* That such transfer authority is in addition to any other transfer authority provided by this Act or any other Act, and is subject to the regular notification procedures of the Committees on Appropriations.

(c) AVAILABILITY.—Funds made available pursuant to this section under the heading "Foreign Military Financing Program" may remain available until September 30, 2027.

(d) CONSULTATION.—The Secretary of State shall consult with the Committees on Appropriations on the allocation of funds made available pursuant to this section not later than 30 days prior to the initial obligation of funds.

RESCISSIONS

(INCLUDING RESCISSIONS OF FUNDS)

SEC. 7072. (a) CONSULAR AND BORDER SECURITY PROGRAMS.— Of the unobligated balances from amounts made available under the heading "Consular and Border Security Programs" from prior Acts making appropriations for the Department of State, foreign operations, and related programs, $900,000,000 are permanently rescinded.

(b) EDUCATIONAL AND CULTURAL EXCHANGE PROGRAMS.—Of the unobligated balances from amounts made available under the heading "Educational and Cultural Exchange Programs" from prior Acts making appropriations for the Department of State, foreign operations, and related programs, $25,000,000 are permanently rescinded.

(c) DEBT RESTRUCTURING.—Of the unobligated balances from amounts made available under the heading "Debt Restructuring" from prior Acts making appropriations for the Department of State,

foreign operations, and related programs, $63,975,000 are permanently rescinded.

(d) DEMOCRACY FUND.—Of the unobligated balances from amounts made available under the heading "Democracy Fund" for the Bureau for Democracy, Human Rights, and Governance, United States Agency for International Development, from prior Acts making appropriations for the Department of State, foreign operations, and related programs, $57,000,000 are permanently rescinded.

(e) MILLENNIUM CHALLENGE CORPORATION.—Of the unobligated balances from amounts made available under the heading "Millennium Challenge Corporation" from prior Acts making appropriations for the Department of State, foreign operations, and related programs, $661,250,000 are permanently rescinded.

(f) INTERNATIONAL NARCOTICS CONTROL AND LAW ENFORCEMENT.—Of the unobligated and unexpended balances from amounts made available under the heading "International Narcotics Control and Law Enforcement" from prior Acts making appropriations for the Department of State, foreign operations, and related programs, $179,306,000 are permanently rescinded.

(g) PEACEKEEPING OPERATIONS.—Of the unobligated and unexpended balances from amounts made available under the heading "Peacekeeping Operations" from prior Acts making appropriations for the Department of State, foreign operations, and related programs, $50,000,000 are permanently rescinded.

(h) RESTRICTION.—No amounts may be rescinded from amounts that were previously designated by the Congress as an emergency requirement pursuant to a concurrent resolution on the budget or section 251(b)(2)(A)(i) of the Balanced Budget and Emergency Deficit Control Act of 1985.

This division may be cited as the "National Security, Department of State, and Related Programs Appropriations Act, 2026".

# DIVISION G—OTHER MATTERS

### SEC. 101. FUNDING LIMITATION.

Notwithstanding any other provision of any other division of this Act, funds appropriated or otherwise made available by division F of this Act or other Acts making appropriations for the Department of State, foreign operations, and related programs, including provisions of Acts providing supplemental appropriations for the Department of State, foreign operations, and related programs, may not be used for a contribution, grant, or other payment to the United Nations Relief and Works Agency, notwithstanding any other provision of law—

(1) for any amounts provided in prior fiscal years or in fiscal year 2026; or

(2) for amounts provided in fiscal year 2027, until March 25, 2027.

## DIVISION H—FURTHER CONTINUING APPROPRIATIONS ACT, 2026

SEC. 101. The Continuing Appropriations Act, 2026 (division A of Public Law 119–37) is amended by striking the date specified in section 106(3) and inserting "February 13, 2026".

SEC. 102. For the purposes of the Continuing Appropriations Act, 2026 (division A of Public Law 119–37), the time covered by such division shall be considered to include the period which began on or about January 31, 2026, during which there occurred a lapse in appropriations.

SEC. 103. Amounts made available in the Continuing Appropriations Act, 2026 (division A of Public Law 119–37) and the Consolidated Appropriations Act, 2026 for personnel pay, allowances, and benefits in each department and agency shall be available for payments pursuant to subsection (c) of section 1341 of title 31, United States Code and such payments shall be made.

SEC. 104. All obligations incurred and in anticipation of the appropriations made and authority granted by the Continuing Appropriations Act, 2026 (division A of Public Law 119–37) and by the Consolidated Appropriations Act, 2026 for the purposes of maintaining the essential level of activity to protect life and property and bringing about orderly termination of Government function, and for purposes as otherwise authorized by law, are hereby ratified and approved if otherwise in accord with the provisions of such Act.

SEC. 105. Section 213 of title II of division C of the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, and the amendments made by such section, are hereby repealed and shall have no force or effect.

This division may be cited as the "Further Continuing Appropriations Act, 2026".

# DIVISION I—AUTHORIZING EXTENDERS AND TECHNICAL CORRECTIONS

### SEC. 5001. UNITED STATES GRAIN STANDARDS ACT EXTENSION.

Sections 7(j)(5), 7A(l)(4), and 21(e) of the United States Grain Standards Act (7 U.S.C. 79(j)(5), 79a(l)(4), 87j(e)) shall be applied by substituting "September 30, 2026" for "September 30, 2025" each place it appears.

### SEC. 5002. COMMODITY FUTURES TRADING COMMISSION WHISTLE-BLOWER PROGRAM.

Section 1(b) of Public Law 117–25 (135 Stat. 297; 136 Stat. 2133; 136 Stat. 5984; 139 Stat. 46) is amended in each of paragraphs (3) and (4) by striking "September 30, 2025" and inserting "September 30, 2026".

### SEC. 5003. FOREST SERVICE PARTICIPATION IN ACES PROGRAM.

Section 8302(b) of the Agricultural Act of 2014 (16 U.S.C. 3851a(b)) shall be applied by substituting "October 1, 2026" for "October 1, 2023".

### SEC. 5004. EXTENSION OF NATIONAL FLOOD INSURANCE PROGRAM.

(a) FINANCING.—Section 1309(a) of the National Flood Insurance Act of 1968 (42 U.S.C. 4016(a)) is amended, in the first sentence, by striking "September 30, 2023" and inserting "September 30, 2026".

H. R. 7148—458

(b) PROGRAM EXPIRATION.—Section 1319 of the National Flood Insurance Act of 1968 (42 U.S.C. 4026) is amended by striking "September 30, 2023" and inserting "September 30, 2026".

(c) EFFECTIVE DATE.—

(1) IN GENERAL.—Subject to paragraph (2), this section shall take effect immediately upon the date of enactment of this Act.

(2) ALTERNATE DATE.—If this Act is enacted after January 30, 2026, this section shall take effect as if enacted on January 30, 2026.

## SEC. 5005. EXTENSION OF REIMBURSABLE SCREENING SERVICES PROGRAM.

Section 225(e) of the Department of Homeland Security Appropriations Act, 2019 (division A of Public Law 116–6; 49 U.S.C. 44901 note) is amended by striking "2025" and inserting "2026".

## SEC. 5006. MOTOR CARRIER SAFETY ADVISORY COMMITTEE.

Section 4144(d) of the Motor Carrier Safety Reauthorization Act of 2005 (49 U.S.C. 31100 note; Public Law 109–59) shall be applied by substituting "September 30, 2026" for "September 30, 2025".

## SEC. 5007. NATIONAL CYBERSECURITY PROTECTION SYSTEM AUTHORIZATION.

Section 227(a) of the Federal Cybersecurity Enhancement Act of 2015 (6 U.S.C. 1525(a)) is amended by striking "September 30, 2025" and inserting "September 30, 2026".

## SEC. 5008. CYBERSECURITY INFORMATION SHARING ACT OF 2015.

Section 111(a) of the Cybersecurity Information Sharing Act of 2015 (6 U.S.C. 1510(a)) is amended by striking "September 30, 2025" and inserting "September 30, 2026".

## SEC. 5009. STATE AND LOCAL CYBERSECURITY GRANT PROGRAM.

Section 2220A(s)(1) of the Homeland Security Act of 2002 (6 U.S.C. 665g(s)(1)) is amended by striking "September 30, 2025" and inserting "September 30, 2026".

## SEC. 5010. EXTENSION OF THE TECHNOLOGY MODERNIZATION FUND AND BOARD.

Section 1078(f)(1) of the National Defense Authorization Act for Fiscal Year 2018 (40 U.S.C. 11301 note) is amended by striking "On and after the date that is 2 years after the date on which the Comptroller General of the United States issues the third report required under subsection (b)(7)(B)" and inserting "After September 30, 2026".

## SEC. 5011. EXTENSION OF EXISTENCE OF PAROLE COMMISSION.

Any expiration date established by section 235(b) of the Sentencing Reform Act of 1984 (18 U.S.C. 3551 note; Public Law 98–473), as such section relates to chapter 311 of title 18, United States Code, and the United States Parole Commission, shall not apply during the period beginning on October 1, 2025, and ending on January 30, 2031.

## SEC. 5012. ADDITIONAL SPECIAL ASSESSMENT.

Section 3014(a) of title 18, United States Code, is amended by striking "and ending on September 30, 2025".

H. R. 7148—459

### SEC. 5013. RURAL HEALTHCARE WORKERS.

Section 220(c) of the Immigration and Nationality Technical Corrections Act of 1994 (8 U.S.C. 1182 note) shall be applied by substituting "September 30, 2026" for "September 30, 2015".

### SEC. 5014. E-VERIFY.

Section 401(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1324a note) shall be applied by substituting "September 30, 2026" for "September 30, 2015".

### SEC. 5015. NON-MINISTER RELIGIOUS WORKERS.

Section 101(a)(27)(C)(ii) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(27)(C)(ii)) shall be applied by substituting "September 30, 2026" for "September 30, 2015" each place such date appears.

### SEC. 5016. H-2B SUPPLEMENTAL VISA EXEMPTION.

Notwithstanding the numerical limitation set forth in section 214(g)(1)(B) of the Immigration and Nationality Act (8 U.S.C. 1184(g)(1)(B)), the Secretary of Homeland Security, after consultation with the Secretary of Labor, and upon the determination that the needs of United States businesses cannot be satisfied during fiscal year 2026 with United States workers who are willing, qualified, and able to perform temporary nonagricultural labor, may increase the total number of aliens who may receive a visa under section 101(a)(15)(H)(ii)(b) of such Act (8 U.S.C. 1101(a)(15)(H)(ii)(b)) in such fiscal year by not more than the highest number of H–2B nonimmigrants who participated in the H–2B returning worker program in any fiscal year in which returning workers were exempt from such numerical limitation.

### SEC. 5017. EMERGENCY AUTHORITY FOR SENTENCING COMMISSION.

(a) IN GENERAL.—The United States Sentencing Commission (in this section, referred to as the "Commission") shall promulgate the guidelines or amendments provided for under section 8605(e) of the SAFER SKIES Act (title LXXXVI of Public Law 119–60) as soon as possible after the date of enactment of such Act, and in any event not later than December 31, 2026, notwithstanding the deadline under section 994(p) of title 28, United States Code.

(b) EFFECTIVE DATE.—The amendments to the guidelines promulgated under subsection (a) shall take effect 180 days after the date of promulgation by the Commission, except to the extent that the effective date is revised or the amendment is otherwise modified or disapproved by an Act of Congress, and shall supersede any amendment to the contrary contained in the amendments to the sentencing guidelines submitted to Congress by the Commission on or about May 1, 2026.

(c) RULE OF CONSTRUCTION.—The requirements of this section shall supersede the timeline set forth in section 8605(e)(1) of the SAFER SKIES Act (title LXXXVI of Public Law 119–60).

### SEC. 5018. BANKRUPTCY FEES.

(a) IN GENERAL.—Section 126 of the Continuing Appropriations Act, 2026 (division A of the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026 (Public Law 119–37; 139 Stat. 502)) is amended to read as follows:

H. R. 7148—460

"SEC. 126. Notwithstanding section 106, during the period ending on the last day of the first calendar quarter of 2026, section 1930(a)(6)(B)(i) of title 28, United States Code, shall be applied as if 'During the 5-year period' were struck.".

(b) APPLICATION OF AMENDMENTS MADE BY THE BANKRUPTCY ADMINISTRATION IMPROVEMENT ACT OF 2025.—

(1) IN GENERAL.—Section 6(b)(2)(A) of the Bankruptcy Administration Improvement Act of 2025 is amended by striking "on the" and inserting "on or after the".

(2) EFFECTIVE DATE.—The amendment made by paragraph (1) shall take effect as though enacted immediately after the enactment of the Bankruptcy Administration Improvement Act of 2025.

## SEC. 5019. EXTENSION OF AFRICAN GROWTH AND OPPORTUNITY ACT.

(a) EXTENSION OF PREFERENTIAL TREATMENT FOR CERTAIN COUNTRIES IN AFRICA UNDER AFRICAN GROWTH AND OPPORTUNITY ACT; RETROACTIVE APPLICATION.—

(1) EXTENSION.—

(A) TRADE ACT OF 1974.—Section 506B of the Trade Act of 1974 (19 U.S.C. 2466b) is amended by striking "September 30, 2025" and inserting "December 31, 2026".

(B) AFRICAN GROWTH AND OPPORTUNITY ACT.—

(i) IN GENERAL.—Section 112(g) of the African Growth and Opportunity Act (19 U.S.C. 3721(g)) is amended by striking "September 30, 2025" and inserting "December 31, 2026".

(ii) REGIONAL APPAREL ARTICLE PROGRAM.—Section 112(b)(3)(A) of the African Growth and Opportunity Act (19 U.S.C. 3721(b)(3)(A)) is amended—

(I) in clause (i), by striking "21 succeeding" and inserting "23 succeeding"; and

(II) in clause (ii)(II), by striking "September 30, 2025" and inserting "December 31, 2026".

(iii) THIRD-COUNTRY FABRIC PROGRAM.—Section 112(c)(1) of the African Growth and Opportunity Act (19 U.S.C. 3721(c)(1)) is amended—

(I) in the paragraph heading, by striking "SEPTEMBER 30, 2025" and inserting "DECEMBER 31, 2026";

(II) in subparagraph (A), by striking "September 30, 2025" and inserting "December 31, 2026"; and

(III) in subparagraph (B)(ii), by striking "September 30, 2025" and inserting "December 31, 2026".

(2) RETROACTIVE APPLICATION.—

(A) IN GENERAL.—Notwithstanding section 514 of the Tariff Act of 1930 (19 U.S.C. 1514) or any other provision of law, and subject to subparagraph (B), any entry of a covered article to which duty-free treatment or other preferential treatment under section 506A of the Trade Act of 1974 (19 U.S.C. 2466a) or section 112 of the African Grown and Opportunity Act (19 U.S.C. 3721) would have applied if the entry had been made on September 30, 2025, that was made—

(i) after September 30, 2025, and

H. R. 7148—461

(ii) before the date of the enactment of this Act, shall be liquidated or reliquidated as though such entry occurred on the date of the enactment of this Act.

(B) REQUESTS.—A liquidation or reliquidation may be made under subparagraph (A) with respect to an entry only if a request therefor is filed with the Commissioner of U.S. Customs and Border Protection not later than 180 days after the date of the enactment of this Act that contains sufficient information to enable such Commissioner—

(i) to locate the entry; or

(ii) to reconstruct the entry if it cannot be located.

(C) PAYMENT OF AMOUNTS OWED.—Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry of a covered article under subparagraph (A) shall be paid, without interest of any kind, not later than 90 days after the date of the liquidation or reliquidation (as the case may be).

(D) DEFINITIONS.—In this paragraph:

(i) COVERED ARTICLE.—The term "covered article" means an article from a country that is designated by the President as a beneficiary sub-Saharan African country under section 104 of the African Growth and Opportunity Act (19 U.S.C. 3703) as of the day before the date of the enactment of this Act.

(ii) ENTRY.—The term "entry" includes a withdrawal from warehouse for consumption.

(b) EXTENSION OF CUSTOMS USER FEES.—

(1) IN GENERAL.—Section 13031(j)(3) of the Consolidated Omnibus Budget Reconciliation Act of 1985 (19 U.S.C. 58c(j)(3)) is amended—

(A) in subparagraph (A), by striking "September 30, 2031" and inserting "December 31, 2031"; and

(B) in subparagraph (B)(i), by striking "September 30, 2031" and inserting "December 31, 2031".

(2) RATE FOR MERCHANDISE PROCESSING FEES.—Section 503 of the United States-Korea Free Trade Agreement Implementation Act (Public Law 112–41;19 U.S.C. 3805 note) is amended by striking "September 30, 2031" and inserting "December 31, 2031".

**SEC. 5020. EXTENSION OF HAITI ECONOMIC LIFT PROGRAM.**

(a) EXTENSION OF SPECIAL RULES FOR HAITI UNDER CARIBBEAN BASIN ECONOMIC RECOVERY ACT.—Section 213A of the Caribbean Basin Economic Recovery Act (19 U.S.C. 2703a) is amended—

(1) in subsection (b)—

(A) in paragraph (1)—

(i) by amending subparagraph (B)(v)(I) to read as follows:

"(I) APPLICABLE PERCENTAGE.—The term 'applicable percentage' means 60 percent or more on and after December 20, 2017."; and

(ii) by amending subparagraph (C) to read as follows:

"(C) QUANTITATIVE LIMITATIONS.—The preferential treatment described in subparagraph (A) shall be extended, during each period after the initial applicable 1-year period, to not more than 1.25 percent of the aggregate square

H. R. 7148—462

meter equivalents of all apparel articles imported into the United States in the most recent 12-month period for which data are available."; and

(B) in paragraph (2), by striking "in each of the 16 succeeding 1-year periods" each place it appears and inserting "in any of the succeeding 1-year periods"; and

(2) by amending subsection (h) to read as follows:

"(h) TERMINATION.—The duty-free treatment provided under this section shall remain in effect until December 31, 2026.".

(b) RESTORATION OF ELIGIBILITY OF CERTAIN ARTICLES FOR PREFERENTIAL TREATMENT.—

(1) IN GENERAL.—The President shall proclaim such modifications to the Harmonized Tariff Schedule of the United States as may be necessary to restore the eligibility of articles described in paragraph (2) for preferential treatment under section 213A of the Caribbean Basin Economic Recovery Act (19 U.S.C. 2703a).

(2) ARTICLES DESCRIBED.—An article described in this paragraph is an article that—

(A) was eligible for preferential treatment under section 213A of the Caribbean Basin Economic Recovery Act (19 U.S.C. 2703a) on December 20, 2006; and

(B) became ineligible for such treatment after that date and before the date of the enactment of this Act as a result of revisions to the Harmonized Tariff Schedule.

(3) EFFECTIVE DATE OF PROCLAMATION.—A proclamation under paragraph (1) shall take effect not earlier than 2 business days after the President submits to the Committee on Finance of the Senate and the Committee on Ways and Means of the House of Representatives a report on the proclamation and the reasons for the modifications to the Harmonized Tariff Schedule under the proclamation.

(c) RETROACTIVE APPLICATION.—

(1) IN GENERAL.—Notwithstanding section 514 of the Tariff Act of 1930 (19 U.S.C. 1514) or any other provision of law, and subject to paragraph (2), any entry of a covered article to which duty-free treatment or other preferential treatment under the Caribbean Basin Economic Recovery Act (19 U.S.C. 2701 et seq.) would have applied if the entry had been made before September 30, 2025, that was made—

(A) on or after September 30, 2025, and

(B) before the date of the enactment of this Act,

shall be liquidated or reliquidated as though such entry occurred on the date of the enactment of this Act.

(2) REQUESTS.—A liquidation or reliquidation may be made under paragraph (1) with respect to an entry only if a request therefor is filed with the Commissioner of U.S. Customs and Border Protection not later than 180 days after the date of the enactment of this Act that contains sufficient information to enable such Commissioner—

(A) to locate the entry; or

(B) to reconstruct the entry if it cannot be located.

(3) PAYMENT OF AMOUNTS OWED.—Any amounts owed by the United States pursuant to the liquidation or reliquidation of an entry of a covered article under paragraph (1) shall be paid, without interest of any kind, not later than 90 days

H. R. 7148—463

after the date of the liquidation or reliquidation (as the case may be).

(4) DEFINITIONS.—In this subsection:

(A) COVERED ARTICLE.—The term "covered article" means an article from Haiti.

(B) ENTRY.—The term "entry" includes a withdrawal from warehouse for consumption.

**SEC. 5021. BUDGETARY EFFECTS.**

(a) STATUTORY PAYGO SCORECARDS.—The budgetary effects of this division and each succeeding division shall not be entered on either PAYGO scorecard maintained pursuant to section 4(d) of the Statutory Pay-As-You-Go Act of 2010.

(b) SENATE PAYGO SCORECARDS.—The budgetary effects of this division and each succeeding division shall not be entered on any PAYGO scorecard maintained for purposes of section 4106 of H. Con. Res. 71 (115th Congress).

(c) CLASSIFICATION OF BUDGETARY EFFECTS.—Notwithstanding Rule 3 of the Budget Scorekeeping Guidelines set forth in the joint explanatory statement of the committee of conference accompanying Conference Report 105–217 and section 250(c)(8) of the Balanced Budget and Emergency Deficit Control Act of 1985, the budgetary effects of this division and each succeeding division shall not be estimated—

(1) for purposes of section 251 of such Act;

(2) for purposes of an allocation to the Committee on Appropriations pursuant to section 302(a) of the Congressional Budget Act of 1974; and

(3) for purposes of paragraph (4)(C) of section 3 of the Statutory Pay-As-You-Go Act of 2010 as being included in an appropriation Act.

# DIVISION J—HEALTH CARE EXTENDERS

**SEC. 6001. TABLE OF CONTENTS.**

The table of contents of this division is as follows:

DIVISION J—HEALTH CARE EXTENDERS

Sec. 6001. Table of contents.

TITLE I—MEDICAID

Sec. 6101. Streamlined enrollment process for eligible out-of-State providers under Medicaid and CHIP.
Sec. 6102. Removing certain age restrictions on Medicaid eligibility for working adults with disabilities.
Sec. 6103. Medicaid State plan requirement for determining residency and coverage for military families.
Sec. 6104. State studies and HHS report on costs of providing maternity, labor, and delivery services.
Sec. 6105. Modifying certain disproportionate share hospital allotments.
Sec. 6106. Modifying certain limitations on disproportionate share hospital payment adjustments under the Medicaid program.

TITLE II—MEDICARE

Sec. 6201. Extension of increased inpatient hospital payment adjustment for certain low-volume hospitals.
Sec. 6202. Extension of the Medicare-dependent hospital (MDH) program.
Sec. 6203. Extension of add-on payments for ambulance services.
Sec. 6204. Extending incentive payments for participation in eligible alternative payment models.
Sec. 6205. Extension of funding for quality measure endorsement, input, and selection.

H. R. 7148—464

Sec. 6206. Extension of funding outreach and assistance for low-income programs.
Sec. 6207. Extension of funding for Medicare hospice surveys.
Sec. 6208. Extension of the work geographic index floor.
Sec. 6209. Extension of certain telehealth flexibilities.
Sec. 6210. Extending acute hospital care at home waiver flexibilities.
Sec. 6211. In-home cardiopulmonary rehabilitation flexibility.
Sec. 6212. Enhancing certain program integrity requirements for DME under Medicare.
Sec. 6213. Guidance on furnishing services via telehealth to individuals with limited English proficiency.
Sec. 6214. Inclusion of virtual diabetes prevention program suppliers in MDPP Expanded Model.
Sec. 6215. Medication-induced movement disorder outreach and education.
Sec. 6216. Report on wearable medical devices.
Sec. 6217. Extension of temporary inclusion of authorized oral antiviral drugs as covered part D drugs.
Sec. 6218. Extension of adjustment to calculation of hospice cap amount under Medicare.
Sec. 6219. Adjustments to Medicare part D cost-sharing reductions for low-income individuals.
Sec. 6220. Requiring Enhanced and Accurate Lists of (REAL) Health Providers Act.
Sec. 6221. Medicare coverage of multi-cancer early detection screening tests.
Sec. 6222. Medicare coverage of external infusion pumps and non-self-administrable home infusion drugs.
Sec. 6223. Assuring pharmacy access and choice for medicare beneficiaries.
Sec. 6224. Modernizing and ensuring PBM accountability.
Sec. 6225. Requiring a separate identification number and an attestation for each off-campus pediatric department of a provider.
Sec. 6226. Revising phase-in of medicare clinical laboratory test payment changes.
Sec. 6227. Medicare sequestration.
Sec. 6228. Medicare Improvement Fund.

TITLE III—HUMAN SERVICES

Sec. 6301. Sexual risk avoidance education extension.
Sec. 6302. Personal responsibility education extension.
Sec. 6303. Extension of funding for family-to-family health information centers.
Sec. 6304. Extension of the Temporary Assistance for Needy Families Program.

TITLE IV—PUBLIC HEALTH AND OTHER EXTENDERS

Subtitle A—Extensions

Sec. 6401. Extension for community health centers, National Health Service Corps, and teaching health centers that operate GME programs.
Sec. 6402. Extension of special diabetes programs.
Sec. 6403. Extension of national health security programs.
Sec. 6404. No Surprises Act implementation.

Subtitle B—World Trade Center Health Program

Sec. 6411. 9/11 responder and survivor health funding corrections.

TITLE V—PUBLIC HEALTH PROGRAMS

Sec. 6501. Preventing maternal deaths.
Sec. 6502. Organ Procurement and Transplantation Network.
Sec. 6503. Honor our living donors.
Sec. 6504. Program for pediatric studies of drugs.
Sec. 6505. Sickle cell disease prevention and treatment.
Sec. 6506. Lifespan respite care.
Sec. 6507. PREEMIE.
Sec. 6508. Dr. Lorna Breen health care provider protection.

TITLE VI—FOOD AND DRUG ADMINISTRATION

Subtitle A—Mikaela Naylon Give Kids a Chance Act

Sec. 6601. Research into pediatric uses of drugs; additional authorities of Food and Drug Administration regarding molecularly targeted cancer drugs.
Sec. 6602. Ensuring completion of pediatric study requirements.
Sec. 6603. FDA report on PREA enforcement.
Sec. 6604. Extension of authority to issue priority review vouchers to encourage treatments for rare pediatric diseases.
Sec. 6605. Limitations on exclusive approval or licensure of orphan drugs.

Subtitle B—United States-Abraham Accords Cooperation and Security

Sec. 6611. Establishment of Abraham Accords Office within Food and Drug Administration.

H. R. 7148—465

TITLE VII—LOWERING PRESCRIPTION DRUG COSTS

Sec. 6701. Oversight of pharmacy benefit management services.
Sec. 6702. Full rebate pass through to plan; exception for innocent plan fiduciaries.
Sec. 6703. Increasing transparency in generic drug applications.

# TITLE I—MEDICAID

### SEC. 6101. STREAMLINED ENROLLMENT PROCESS FOR ELIGIBLE OUT-OF-STATE PROVIDERS UNDER MEDICAID AND CHIP.

(a) IN GENERAL.—Section 1902(kk) of the Social Security Act (42 U.S.C. 1396a(kk)) is amended by adding at the end the following new paragraph:

"(10) STREAMLINED ENROLLMENT PROCESS FOR ELIGIBLE OUT-OF-STATE PROVIDERS.—

"(A) IN GENERAL.—The State—

"(i) adopts and implements a process to allow an eligible out-of-State provider to enroll under the State plan (or a waiver of such plan) to furnish items and services to, or order, prescribe, refer, or certify eligibility for items and services for, qualifying individuals without the imposition of screening or enrollment requirements by such State that exceed the minimum necessary for such State to provide payment to an eligible out-of-State provider under such State plan (or a waiver of such plan), such as the provider's name and National Provider Identifier (and such other information specified by the Secretary); and

"(ii) provides that an eligible out-of-State provider that enrolls as a participating provider in the State plan (or a waiver of such plan) through such process shall be so enrolled for a 5-year period, unless the provider is terminated or excluded from participation during such period.

"(B) DEFINITIONS.—In this paragraph:

"(i) ELIGIBLE OUT-OF-STATE PROVIDER.—The term 'eligible out-of-State provider' means, with respect to a State, a provider—

"(I) that is located in any other State;

"(II) that—

"(aa) was determined by the Secretary to have a limited risk of fraud, waste, and abuse for purposes of determining the level of screening to be conducted under section 1866(j)(2), has been so screened under such section 1866(j)(2), and is enrolled in the Medicare program under title XVIII; or

"(bb) was determined by the State agency administering or supervising the administration of the State plan (or a waiver of such plan) of such other State to have a limited risk of fraud, waste, and abuse for purposes of determining the level of screening to be conducted under paragraph (1) of this subsection, has been so screened under such paragraph (1), and is enrolled under such State plan (or a waiver of such plan); and

"(III) that has not been—

H. R. 7148—466

"(aa) excluded from participation in any Federal health care program pursuant to section 1128 or 1128A;

"(bb) excluded from participation in the State plan (or a waiver of such plan) pursuant to part 1002 of title 42, Code of Federal Regulations (or any successor regulation), or State law; or

"(cc) terminated from participating in a Federal health care program or the State plan (or a waiver of such plan) for a reason described in paragraph (8)(A).

"(ii) QUALIFYING INDIVIDUAL.—The term 'qualifying individual' means an individual under 21 years of age who is enrolled under the State plan (or waiver of such plan).

"(iii) STATE.—The term 'State' means 1 of the 50 States or the District of Columbia.".

(b) CONFORMING AMENDMENTS.—

(1) Section 1902(a)(77) of the Social Security Act (42 U.S.C. 1396a(a)(77)) is amended by inserting "enrollment," after "screening,".

(2) The subsection heading for section 1902(kk) of such Act (42 U.S.C. 1396a(kk)) is amended by inserting "enrollment," after "screening,".

(3) Section 2107(e)(1)(G) of such Act (42 U.S.C. 1397gg(e)(1)(G)) is amended by inserting "enrollment," after "screening,".

(c) EFFECTIVE DATE.—The amendments made by this section shall take effect on the date that is 3 years after the date of enactment of this Act.

## SEC. 6102. REMOVING CERTAIN AGE RESTRICTIONS ON MEDICAID ELIGIBILITY FOR WORKING ADULTS WITH DISABILITIES.

(a) MODIFICATION OF OPTIONAL BUY-IN GROUPS.—

(1) IN GENERAL.—Section 1902(a)(10)(A)(ii) of the Social Security Act (42 U.S.C. 1396a(a)(10)(A)(ii)) is amended—

(A) in subclause (XV)—

(i) by striking ", but less than 65,"; and

(ii) by inserting ", including at least the group described in section 1905(a)(xviii)" before the semicolon at the end; and

(B) in subclause (XVI), by inserting "including at least the group described in section 1905(a)(xii)," after "the State may establish,".

(2) INDIVIDUALS DESCRIBED.—Section 1905(a) of the Social Security Act (42 U.S.C. 1396d(a)) is amended—

(A) in clause (xvi), by striking "or" at the end;

(B) in clause (xvii), by adding "or" after the comma at the end; and

(C) by adding after clause (xvii) the following new clause:

"(xviii) individuals who, but for earnings in excess of the limit established under subsection (q)(2)(B), would be considered to be receiving supplemental security income, and who are at least 16 years of age,".

(3) DEFINITION MODIFICATION.—Section 1905(v)(1)(A) of the Social Security Act (42 U.S.C. 1396d(v)(1)(A)) is amended by striking ", but less than 65,".

(b) APPLICATION TO CERTAIN STATES.—A State that, as of the date of enactment of this Act, provides for making medical assistance available to individuals described in subclause (XV) or (XVI) of section 1902(a)(10)(A)(ii) of the Social Security Act (42 U.S.C. 1396a(a)(10)(A)(ii)) shall not be regarded as failing to comply with the requirements of the amendments made by subsection (a) before January 1, 2028.

**SEC. 6103. MEDICAID STATE PLAN REQUIREMENT FOR DETERMINING RESIDENCY AND COVERAGE FOR MILITARY FAMILIES.**

(a) IN GENERAL.—Section 1902 of the Social Security Act (42 U.S.C. 1396a) is amended—

(1) in subsection (a)—

(A) in paragraph (88), by striking "and" at the end;

(B) in paragraph (89), by striking the period at the end and inserting "; and"; and

(C) by inserting after paragraph (89), the following new paragraph:

"(90) beginning January 1, 2030, provide, with respect to an active duty relocated individual (as defined in subsection (yy)(1))—

"(A) that, for purposes of determining eligibility for medical assistance under the State plan (or waiver of such plan), such active duty relocated individual is treated as a resident of the State unless such individual voluntarily elects not to be so treated for such purposes;

"(B) that if, at the time of relocation (as described in subsection (yy)(1)), such active duty relocated individual is on a home and community-based services waiting list (as defined in subsection (yy)(2)), such individual remains on such list until—

"(i) the State completes an assessment and renders a decision with respect to the eligibility of such individual to receive the relevant home and community-based services at the time a slot for such services becomes available and, in the case such decision is a denial of such eligibility, such individual has exhausted the individual's opportunity for a fair hearing; or

"(ii) such individual elects to be removed from such list; and

"(C) payment for medical assistance furnished under the State plan (or a waiver of the plan) on behalf of such active duty relocated individual in the military service relocation State (as referred to in subsection (yy)(1)(B)(i)), to the extent that such assistance is available in such military service relocation State in accordance with such guidance as the Secretary may issue to ensure access to such assistance."; and

(2) by adding at the end the following new subsection:

"(yy) ACTIVE DUTY RELOCATED INDIVIDUAL; HOME AND COMMUNITY-BASED SERVICES WAITING LIST.—For purposes of subsection (a)(90) and this subsection:

H. R. 7148—468

"(1) ACTIVE DUTY RELOCATED INDIVIDUAL.—The term 'active duty relocated individual' means an individual—

"(A) who—

"(i) is enrolled under the State plan (or waiver of such plan); or

"(ii) with respect to an individual described in subparagraph (C)(ii), would be so enrolled pursuant to subsection (a)(10)(A)(ii)(VI) if such individual began receiving home and community-based services;

"(B) who—

"(i) is a member of the Armed Forces engaged in active duty service and is relocated to another State (in this subsection referred to as the 'military service relocation State') by reason of such service;

"(ii) would be described in clause (i) except that the individual stopped being engaged in active duty service (including by reason of retirement from such service) and the last day on which the individual was engaged in active duty service occurred not more than 12 months ago; or

"(iii) is a dependent (as defined by the Secretary) of a member described in clause (i) or (ii) who relocates to the military service relocation State with such member; and

"(C) who—

"(i) was receiving home and community-based services (as defined in section 9817(a)(2)(B) of the American Rescue Plan Act of 2021) at the time of such relocation; or

"(ii) if the State maintains a home and community-based services waiting list, was on such home and community-based services waiting list at the time of such relocation.

"(2) HOME AND COMMUNITY-BASED SERVICES WAITING LIST.—The term 'home and community-based services waiting list' means, in the case of a State that has a limit on the number of individuals who may receive home and community-based services under section 1115(a) or section 1915(c), a list maintained by such State of individuals who are requesting to receive such services under 1 or more such sections but for whom the State has not yet completed an assessment and rendered a decision with respect to the eligibility of such individuals to receive the relevant home and community-based services at the time a slot for such services becomes available due to such limit.".

(b) IMPLEMENTATION FUNDING.—There are appropriated, out of any funds in the Treasury not otherwise obligated, $1,000,000 for each of fiscal years 2026 through 2030, to remain available until expended, to the Secretary of Health and Human Services for purposes of implementing the amendments made by subsection (a).

**SEC. 6104. STATE STUDIES AND HHS REPORT ON COSTS OF PROVIDING MATERNITY, LABOR, AND DELIVERY SERVICES.**

(a) STATE STUDY.—

(1) IN GENERAL.—Not later than 30 months after the date of enactment of this Act, and every 5 years thereafter, each

H. R. 7148—469

State (as such term is defined in section 1101(a)(1) of the
Social Security Act (42 U.S.C. 1301(a)(1)) for purposes of titles
XIX and XXI of such Act) shall conduct a study on the costs
of providing maternity, labor, and delivery services in applicable
hospitals (as defined in paragraph (3)) and submit the results
of such study to the Secretary of Health and Human Services
(referred to in this section as the "Secretary") in such form
and manner as the Secretary requires.

(2) CONTENT OF STUDY.—A State study required under
paragraph (1) shall include the following information (to the
extent practicable and as further defined by the Secretary)
with respect to maternity, labor, and delivery services furnished
by applicable hospitals located in the State:

(A) An estimate of the cost of providing maternity,
labor, and delivery services at applicable hospitals, based
on the expenditures a representative sample of such hos-
pitals incurred for providing such services during the 2
most recent years for which data is available.

(B) An estimate of the cost of providing maternity,
labor, and delivery services at hospitals that would be
applicable hospitals (as defined in paragraph (3)) if not
for ceasing to provide labor and delivery services within
the past 5 years, based on the expenditures a representa-
tive sample of such hospitals incurred for providing such
services during the 2 most recent years for which data
is available.

(C) To the extent data allow, an analysis of the extent
to which geographic location, community demographics,
and local economic factors (as defined by the Secretary)
affect the cost of providing maternity, labor, and delivery
services at applicable hospitals described in subparagraphs
(A) and (B), including the cost of services that support
the provision of maternity, labor, and delivery services.

(D) The amounts applicable hospitals are paid for
maternity, labor, and delivery services, by geographic loca-
tion and hospital size, under—

(i) parts A and B of the Medicare program;

(ii) the State Medicaid program, including payment
amounts for such services under fee-for-service pay-
ment arrangements and under managed care (as
applicable);

(iii) the State CHIP plan, including payment
amounts for such services under fee-for-service pay-
ment arrangements and under managed care (as
applicable); and

(iv) private health insurance.

(E) A comparative payment rate analysis—

(i) comparing payment rates for maternity, labor,
and delivery services (inclusive of all payments
received by applicable hospitals for furnishing mater-
nity, labor, and delivery services) under the State Med-
icaid fee-for-service program to such payment rates
for such services under Medicare (including those
described in paragraphs (2) and (3) of section
447.203(b) of title 42, Code of Federal Regulations),
and, to the extent data is available, such payment
rates for such services under Medicaid managed care

H. R. 7148—470

and private health insurers within geographic areas of the State; and

(ii) analyzing different payment methods for such services, such as the use of bundled payments, quality incentives, and low-volume adjustments.

(F) An evaluation, using such methodology and parameters established by the Secretary, of whether each hospital located in the State that furnishes maternity, labor, and delivery services is expected to experience in the next 3 years significant changes in particular expenditures or types of reimbursement for maternity, labor, and delivery services.

(3) APPLICABLE HOSPITAL DEFINED.—For purposes of this subsection, the term "applicable hospital" means any hospital located in a State that meets either of the following criteria:

(A) The hospital provides labor and delivery services and more than 50 percent of the hospital's births (in the most recent year for which such data is available) are financed by the Medicaid program or CHIP.

(B) The hospital—

(i) is located in a rural area (as defined by the Federal Office of Rural Health Policy for the purpose of rural health grant programs administered by such Office);

(ii) based on the most recent 2 years of data available (as determined by the Secretary), furnished services for less than an average of 300 births per year; and

(iii) provides labor and delivery services.

(4) ASSISTANCE TO SMALL HOSPITALS IN COMPILING COST INFORMATION.—There are appropriated to the Secretary for fiscal year 2026, $10,000,000 for the purpose of providing grants and technical assistance to a hospital described in paragraph (3)(B) to enable such hospital to compile detailed information for use in the State studies required under paragraph (1), to remain available until expended.

(5) HHS REPORT ON STATE STUDIES.—For each year in which a State is required to conduct a study under paragraph (1), the Secretary shall issue, not later than 18 months after the date on which the State submits to the Secretary the data described in such paragraph, a publicly available report that compiles and details the results of such study and includes the information described in paragraph (2).

(b) HHS REPORT ON NATIONAL DATA COLLECTION FINDINGS.—Not later than 3 years and 6 months after the date of enactment of this Act, the Secretary shall submit to Congress, and make publicly available, a report analyzing the first studies conducted by States under subsection (a)(1), including recommendations for improving data collection on the cost of providing maternity, labor, and delivery services.

(c) IMPLEMENTATION FUNDING.—In addition to the amount appropriated under subsection (a)(4), there are appropriated, out of any funds in the Treasury not otherwise obligated, $3,000,000 for fiscal year 2026, to remain available until expended, to the Secretary of Health and Human Services for purposes of implementing this section.

H. R. 7148—471

### SEC. 6105. MODIFYING CERTAIN DISPROPORTIONATE SHARE HOS-PITAL ALLOTMENTS.

(a) EXTENDING TENNESSEE DSH ALLOTMENTS.—Section 1923(f)(6)(A)(vi) of the Social Security Act (42 U.S.C. 1396r–4(f)(6)(A)(vi)) is amended—

(1) in the heading, by striking "2025 AND A PORTION OF FISCAL YEAR 2026" and inserting "2027"; and

(2) by inserting ", and the DSH allotment for Tennessee for the portion of fiscal year 2026 beginning on January 31, 2026, and ending September 30, 2026, shall be $35,351,507, which may be claimed as fiscal year 2026 uncompensated care costs, and the DSH allotment for Tennessee for fiscal year 2027, shall be $53,100,000" before the period.

(b) ELIMINATING CERTAIN DSH ALLOTMENT REDUCTIONS.—Section 1923(f)(7)(A) of the Social Security Act (42 U.S.C. 1396r–4(f)(7)(A)) is amended—

(1) in clause (i)—

(A) in the matter preceding subclause (I), by striking "the period beginning January 31, 2026, and ending September 30, 2026, and for each of fiscal years 2027 and 2028" and inserting "fiscal year 2028";

(B) in subclause (I), by striking "or period"; and

(C) in subclause (II), by striking "or period" each place it appears; and

(2) in clause (ii), by striking "the period beginning January 31, 2026, and ending September 30, 2026, and for each of fiscal years 2027 and 2028" and inserting "fiscal year 2028".

### SEC. 6106. MODIFYING CERTAIN LIMITATIONS ON DISPROPORTIONATE SHARE HOSPITAL PAYMENT ADJUSTMENTS UNDER THE MEDICAID PROGRAM.

(a) IN GENERAL.—Section 1923(g) of the Social Security Act (42 U.S.C. 1396r–4(g)) is amended—

(1) in paragraph (1)—

(A) in subparagraph (A)—

(i) in the matter preceding clause (i), by striking "(other than a hospital described in paragraph (2)(B))";

(ii) in clause (i), by inserting "with respect to such hospital and year" after "described in subparagraph (B)"; and

(iii) in clause (ii)—

(I) in subclause (I), by striking "and" at the end;

(II) in subclause (II), by striking the period and inserting "; and"; and

(III) by adding at the end the following new subclause:

"(III) payments made under title XVIII or by an applicable plan (as defined in section 1862(b)(8)(F)) for such services."; and

(B) in subparagraph (B)—

(i) in the matter preceding clause (i), by striking "in this clause are" and inserting "in this subparagraph are, with respect to a hospital and a year,"; and

(ii) by adding at the end the following new clause:

"(iii) Individuals who are eligible for medical assistance under the State plan or under a waiver

H. R. 7148—472

of such plan and for whom the State plan or waiver is a payor for such services after application of benefits under title XVIII or under an applicable plan (as defined in section 1862(b)(8)(F)), but only if the hospital has in the aggregate incurred costs exceeding payments under such State plan, waiver, title XVIII, or applicable plan for such services furnished to such individuals during such year.";

(2) by striking paragraph (2);

(3) by redesignating paragraph (3) as paragraph (2); and

(4) in paragraph (2), as so redesignated, by striking "Notwithstanding paragraph (2) of this subsection (as in effect on October 1, 2021), paragraph (2)" and inserting "Paragraph (2)".

(b) EFFECTIVE DATE.—

(1) IN GENERAL.—Except as provided in paragraph (2), the amendments made by this section shall apply to payment adjustments made under section 1923 of the Social Security Act (42 U.S.C. 1396r–4) for Medicaid State plan rate years beginning on or after the date of enactment of this Act.

(2) STATE OPTION TO DISTRIBUTE UNSPENT DSH ALLOTMENTS FROM PRIOR YEARS UP TO MODIFIED CAP.—

(A) IN GENERAL.—If, for any Medicaid State plan rate year that begins on or after October 1, 2022, and before the date of enactment of this Act, a State did not spend the full amount of its Federal fiscal year allotment under section 1923 of the Social Security Act (42 U.S.C. 1396r–4) applicable to that State plan rate year, the State may use the unspent portion of such allotment to increase the amount of any payment adjustment made to a hospital for such rate year, provided that—

(i) such payment adjustment (as so increased) is consistent with subsection (g) of such section (as amended by this section); and

(ii) the total amount of all payment adjustments for the State plan rate year (as so increased) does not exceed the disproportionate share hospital allotment for the State and applicable Federal fiscal year under subsection (f) of such section.

(B) NO RECOUPMENT OF PAYMENTS ALREADY MADE TO HOSPITALS.—A State shall not recoup any payment adjustment made by the State to a hospital for a Medicaid State plan rate year described in subparagraph (A) if such payment adjustment is consistent with section 1923(g) of such Act (42 U.S.C. 1396r–4(g)) as in effect on October 1, 2021.

(C) AUTHORITY TO PERMIT RETROACTIVE MODIFICATION OF STATE PLAN AMENDMENTS TO ALLOW FOR INCREASES.—

(i) IN GENERAL.—Subject to clause (ii), solely for the purpose of allowing a State to increase the amount of a payment adjustment to a hospital for a Medicaid State plan rate year described in subparagraph (A) pursuant to this paragraph, a State may retroactively modify a provision of the Medicaid State plan, a waiver of such plan, or a State plan amendment that relates to such rate year and the Secretary may approve such modification.

(ii) DEADLINE.—A State may not submit a request for approval of a retroactive modification to a provision

of the Medicaid State plan, a waiver of such plan, or a State plan amendment for a Medicaid State plan rate year after the date by which the State is required to submit the independent certified audit for such State plan rate year as required under section 1923(j)(2) of the Social Security Act (42 U.S.C. 1396r–4(j)(2)).

(D) REPORTING.—If a State increases a payment adjustment made to a hospital for a Medicaid State plan rate year pursuant to this paragraph, the State shall include information in such form and manner as the Secretary shall specify on such increased payment adjustment as part of the annual report submitted by the State under section 1923(j)(1) of the Social Security Act (42 U.S.C. 1396r–4(j)(1)) for such State plan rate year or, if necessary, as determined by the Secretary, in an amendment to such annual report.

# TITLE II—MEDICARE

### SEC. 6201. EXTENSION OF INCREASED INPATIENT HOSPITAL PAYMENT ADJUSTMENT FOR CERTAIN LOW-VOLUME HOSPITALS.

(a) IN GENERAL.—Section 1886(d)(12) of the Social Security Act (42 U.S.C. 1395ww(d)(12)) is amended—

(1) in subparagraph (B), by striking "during the portion of fiscal year 2026 beginning on January 31, 2026, and ending on September 30, 2026, and in fiscal year 2027" and inserting "during the portion of fiscal year 2027 beginning on January 1, 2027, and ending on September 30, 2027, and in fiscal year 2028";

(2) in subparagraph (C)(i)—

(A) in the matter preceding subclause (I), by striking "through 2025 and the portion of fiscal year 2026 beginning on October 1, 2025, and ending on January 30, 2026" and inserting "through 2026 and the portion of fiscal year 2027 beginning on October 1, 2026, and ending on December 31, 2026";

(B) in subclause (III), by striking "through 2025 and the portion of fiscal year 2026 beginning on October 1, 2025, and ending on January 30, 2026" and inserting "through 2026 and the portion of fiscal year 2027 beginning on October 1, 2026, and ending on December 31, 2026"; and

(C) in subclause (IV), by striking "the portion of fiscal year 2026 beginning on January 31, 2026, and ending on September 30, 2026, and fiscal year 2027" and inserting "the portion of fiscal year 2027 beginning on January 1, 2027, and ending on September 30, 2027, and fiscal year 2028"; and

(3) in subparagraph (D)—

(A) in the matter preceding clause (i), by striking "through 2025 or during the portion of fiscal year 2026 beginning on October 1, 2025, and ending on January 30, 2026" and inserting "through 2026 or during the portion of fiscal year 2027 beginning on October 1, 2026, and ending on December 31, 2026"; and

H. R. 7148—474

(B) in clause (ii), by striking "through 2025 and the portion of fiscal year 2026 beginning on October 1, 2025, and ending on January 30, 2026" and inserting "through 2026 and the portion of fiscal year 2027 beginning on October 1, 2026, and ending on December 31, 2026".

(b) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary of Health and Human Services may implement the amendments made by this section by program instruction or otherwise.

**SEC. 6202. EXTENSION OF THE MEDICARE-DEPENDENT HOSPITAL (MDH) PROGRAM.**

(a) IN GENERAL.—Section 1886(d)(5)(G) of the Social Security Act (42 U.S.C. 1395ww(d)(5)(G)) is amended—

(1) in clause (i), by striking "January 31, 2026" and inserting "January 1, 2027"; and

(2) in clause (ii)(II), by striking "January 31, 2026" and inserting "January 1, 2027".

(b) CONFORMING AMENDMENTS.—

(1) IN GENERAL.—Section 1886(b)(3)(D) of the Social Security Act (42 U.S.C. 1395ww(b)(3)(D)) is amended—

(A) in the matter preceding clause (i), by striking "January 31, 2026" and inserting "January 1, 2027"; and

(B) in clause (iv), by striking "through fiscal year 2025 and the portion of fiscal year 2026 beginning on October 1, 2025, and ending on January 30, 2026" and inserting "through fiscal year 2026 and the portion of fiscal year 2027 beginning on October 1, 2026, and ending on December 31, 2026".

(2) PERMITTING HOSPITALS TO DECLINE RECLASSIFICATION.—Section 13501(e)(2) of the Omnibus Budget Reconciliation Act of 1993 (42 U.S.C. 1395ww note) is amended by striking "through fiscal year 2025, or the portion of fiscal year 2026 beginning on October 1, 2025, and ending on January 30, 2026" and inserting "through fiscal year 2026, or the portion of fiscal year 2027 beginning on October 1, 2026, and ending on December 31, 2026".

**SEC. 6203. EXTENSION OF ADD-ON PAYMENTS FOR AMBULANCE SERVICES.**

Section 1834(l) of the Social Security Act (42 U.S.C. 1395m(l)) is amended—

(1) in paragraph (12)(A), by striking "January 31, 2026" and inserting "January 1, 2028"; and

(2) in paragraph (13), by striking "January 31, 2026" each place it appears and inserting "January 1, 2028" in each such place.

**SEC. 6204. EXTENDING INCENTIVE PAYMENTS FOR PARTICIPATION IN ELIGIBLE ALTERNATIVE PAYMENT MODELS.**

(a) IN GENERAL.—Section 1833(z) of the Social Security Act (42 U.S.C. 1395l(z)) is amended—

(1) in paragraph (1)(A)—

(A) by inserting ", and during 2028," after "with 2026"; and

(B) by inserting ", or, with respect to 2028, 3.1 percent" after "1.88 percent";

(2) in paragraph (2)—

H. R. 7148—475

(A) in subparagraph (B)—
(i) in the heading, by inserting "AND 2028" after "2026"; and
(ii) in the matter preceding clause (i), by inserting "and 2028" after "2026";
(B) in subparagraph (C)—
(i) in the heading, by striking "BEGINNING IN 2027" and inserting "2027 AND 2029 AND SUBSEQUENT YEARS"; and
(ii) in the matter preceding clause (i), by inserting "and 2029" after "2027"; and
(C) in subparagraph (D), by striking "and 2026" and inserting "2026, and 2028"; and
(3) in paragraph (4)(B), by inserting ", or, with respect to 2028, 3.1 percent" after "1.88 percent".
(b) CONFORMING AMENDMENTS.—Section 1848(q)(1)(C)(iii) of the Social Security Act (42 U.S.C. 1395w–4(q)(1)(C)(iii)) is amended—
(1) in subclause (II), by inserting "and 2028" after "2026"; and
(2) in subclause (III), by inserting "and 2029" after "2027".

**SEC. 6205. EXTENSION OF FUNDING FOR QUALITY MEASURE ENDORSE- MENT, INPUT, AND SELECTION.**

Section 1890(d)(2) of the Social Security Act (42 U.S.C. 1395aaa(d)(2)) is amended—
(1) in the first sentence—
(A) by striking "and $13,300,000" and inserting "$13,300,000"; and
(B) by inserting the following before the period at the end: ", and $15,100,000 for fiscal year 2027"; and
(2) in the third sentence, by striking "and 2026" and inserting "2026, and 2027".

**SEC. 6206. EXTENSION OF FUNDING OUTREACH AND ASSISTANCE FOR LOW-INCOME PROGRAMS.**

(a) STATE HEALTH INSURANCE ASSISTANCE PROGRAMS.—Sub-section (a)(1)(B) of section 119 of the Medicare Improvements for Patients and Providers Act of 2008 (42 U.S.C. 1395b–3 note) is amended—
(1) in clause (xiv), by striking "and" at the end;
(2) in clause (xv), by striking the period at the end and inserting "; and"; and
(3) by inserting after clause (xv) the following new clause:
"(xvi) for the period beginning on January 31, 2026, and ending on December 31, 2027, $30,000,000.".
(b) AREA AGENCIES ON AGING.—Subsection (b)(1)(B) of such section 119 is amended—
(1) in clause (xiv), by striking "and" at the end;
(2) in clause (xv), by striking the period at the end and inserting "; and"; and
(3) by inserting after clause (xv) the following new clause:
"(xvi) for the period beginning on January 31, 2026, and ending on December 31, 2027, $30,000,000.".
(c) AGING AND DISABILITY RESOURCE CENTERS.—Subsection (c)(1)(B) of such section 119 is amended—
(1) in clause (xiv), by striking "and" at the end;
(2) in clause (xv), by striking the period at the end and inserting "; and"; and

(3) by inserting after clause (xv) the following new clause:

"(xvi) for the period beginning on January 31, 2026, and ending on December 31, 2027, $10,000,000.".

(d) COORDINATION OF EFFORTS TO INFORM OLDER AMERICANS ABOUT BENEFITS AVAILABLE UNDER FEDERAL AND STATE PROGRAMS.—Subsection (d)(2) of such section 119 is amended—

(1) in clause (xiv), by striking "and" at the end;

(2) in clause (xv), by striking the period at the end and inserting "; and"; and

(3) by inserting after clause (xv) the following new clause:

"(xvi) for the period beginning on January 31, 2026, and ending on December 31, 2027, $30,000,000.".

### SEC. 6207. EXTENSION OF FUNDING FOR MEDICARE HOSPICE SURVEYS.

Section 3(a)(2) of the IMPACT Act of 2014 (Public Law 113–185), as amended by section 6205 of division F of the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026 (Public Law 119–37), is amended—

(1) in subparagraph (B), by striking "and" at the end;

(2) in subparagraph (C), by striking the period at the end and inserting "; and"; and

(3) by adding at the end the following new subparagraph:

"(D) $4,400,000 for the period beginning on January 31, 2026, and ending on December 31, 2026, to remain available until expended.".

### SEC. 6208. EXTENSION OF THE WORK GEOGRAPHIC INDEX FLOOR.

Section 1848(e)(1)(E) of the Social Security Act (42 U.S.C. 1395w–4(e)(1)(E)) is amended by striking "January 31, 2026" and inserting "January 1, 2027".

### SEC. 6209. EXTENSION OF CERTAIN TELEHEALTH FLEXIBILITIES.

(a) REMOVING GEOGRAPHIC REQUIREMENTS AND EXPANDING ORIGINATING SITES FOR TELEHEALTH SERVICES.—Section 1834(m) of the Social Security Act (42 U.S.C. 1395m(m)) is amended—

(1) in paragraph (2)(B)(iii), by striking "ending January 30, 2026" and inserting "ending December 31, 2027"; and

(2) in paragraph (4)(C)(iii), by striking "ending on January 30, 2026" and inserting "ending on December 31, 2027".

(b) EXPANDING PRACTITIONERS ELIGIBLE TO FURNISH TELEHEALTH SERVICES.—Section 1834(m)(4)(E) of the Social Security Act (42 U.S.C. 1395m(m)(4)(E)) is amended by striking "ending on January 30, 2026" and inserting "ending on December 31, 2027".

(c) EXTENDING TELEHEALTH SERVICES FOR FEDERALLY QUALIFIED HEALTH CENTERS AND RURAL HEALTH CLINICS.—Section 1834(m)(8)(A) of the Social Security Act (42 U.S.C. 1395m(m)(8)(A)) is amended by striking "ending on January 30, 2026" and inserting "ending on December 31, 2027".

(d) DELAYING THE IN-PERSON REQUIREMENTS UNDER MEDICARE FOR MENTAL HEALTH SERVICES FURNISHED THROUGH TELEHEALTH AND TELECOMMUNICATIONS TECHNOLOGY.—

(1) DELAY IN REQUIREMENTS FOR MENTAL HEALTH SERVICES FURNISHED THROUGH TELEHEALTH.—Section 1834(m)(7)(B)(i) of the Social Security Act (42 U.S.C. 1395m(m)(7)(B)(i)) is amended, in the matter preceding subclause (I), by striking

H. R. 7148—477

"on or after January 31, 2026" and inserting "on or after January 1, 2028".

(2) MENTAL HEALTH VISITS FURNISHED BY RURAL HEALTH CLINICS.—Section 1834(y)(2) of the Social Security Act (42 U.S.C. 1395m(y)(2)) is amended by striking "January 31, 2026" and inserting "January 1, 2028".

(3) MENTAL HEALTH VISITS FURNISHED BY FEDERALLY QUALIFIED HEALTH CENTERS.—Section 1834(o)(4)(B) of the Social Security Act (42 U.S.C. 1395m(o)(4)(B)) is amended by striking "January 31, 2026" and inserting "January 1, 2028".

(e) ALLOWING FOR THE FURNISHING OF AUDIO-ONLY TELEHEALTH SERVICES.—Section 1834(m)(9) of the Social Security Act (42 U.S.C. 1395m(m)(9)) is amended by striking "ending on January 30, 2026" and inserting "ending on December 31, 2027".

(f) EXTENDING USE OF TELEHEALTH TO CONDUCT FACE-TO-FACE ENCOUNTER PRIOR TO RECERTIFICATION OF ELIGIBILITY FOR HOSPICE CARE.—

(1) IN GENERAL.—Section 1814(a)(7)(D)(i)(II) of the Social Security Act (42 U.S.C. 1395f(a)(7)(D)(i)(II)) is amended—

(A) by striking "ending on January 30, 2026" and inserting "ending on December 31, 2027"; and

(B) by inserting ", except that this subclause shall not apply in the case of such an encounter with an individual occurring on or after January 31, 2026, if such individual is located in an area that is subject to a moratorium on the enrollment of hospice programs under this title pursuant to section 1866(j)(7), if such individual is receiving hospice care from a provider that is subject to enhanced oversight under this title pursuant to section 1866(j)(3), or if such encounter is performed by a hospice physician or nurse practitioner who is not enrolled under section 1866(j) and is not an opt-out physician or practitioner (as defined in section 1802(b)(6)(D))" before the semicolon.

(2) REQUIRING USE OF MODIFIER.—Section 1814(a)(7)(D)(i)(II) of the Social Security Act (42 U.S.C. 1395f(a)(7)(D)(i)(II)), as amended by paragraph (1), is further amended by inserting ", but only if, in the case of such an encounter occurring on or after January 1, 2027, any hospice claim includes 1 or more modifiers or codes (as specified by the Secretary) to indicate that such encounter was conducted via telehealth" after "as determined appropriate by the Secretary".

(g) REQUIRING MODIFIERS FOR TELEHEALTH SERVICES IN CERTAIN INSTANCES.—Section 1834(m) of the Social Security Act (42 U.S.C. 1395m(m)) is amended by adding at the end the following new paragraph:

"(10) REQUIRED USE OF MODIFIERS IN CERTAIN INSTANCES.—Not later than January 1, 2027, the Secretary shall establish requirements to include one or more codes or modifiers, as determined appropriate by the Secretary, in the case of—

"(A) claims for telehealth services under this subsection that are furnished through a telehealth virtual platform—

"(i) by a physician or practitioner that contracts with an entity that owns such virtual platform; or

"(ii) for which a physician or practitioner has a payment arrangement with an entity for use of such virtual platform; and

"(B) claims for telehealth services under this subsection that are furnished incident to a physician's or practitioner's professional service.".

(h) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary of Health and Human Services may implement the amendments made by this section by program instruction or otherwise.

## SEC. 6210. EXTENDING ACUTE HOSPITAL CARE AT HOME WAIVER FLEXIBILITIES.

(a) IN GENERAL.—Section 1866G(a)(1) of the Social Security Act (42 U.S.C. 1395cc–7(a)(1)) is amended by striking "January 30, 2026" and inserting "September 30, 2030".

(b) REQUIRING ADDITIONAL STUDY AND REPORT.—Section 1866G of the Social Security Act (42 U.S.C. 1395cc–7) is amended—

(1) in subsection (a)(3)(E)—

(A) in clause (ii), by striking "the study described in subsection (b)" and inserting "the studies described in subsections (b) and (c)"; and

(B) by adding at the end the following new flush sentence:

"The Secretary may require that such data and information be submitted through a hospital's cost report, through such survey instruments as the Secretary may develop, through medical record information, or through such other means as the Secretary determines appropriate.";

(2) in subsection (b)—

(A) in the subsection heading, by striking "STUDY" and inserting "INITIAL STUDY"; and

(B) in paragraph (3), by striking "subsection" and inserting "section";

(3) by redesignating subsections (c) and (d) as subsections (d) and (e), respectively;

(4) by inserting after subsection (b) the following new subsection:

"(c) SUBSEQUENT STUDY AND REPORT.—

"(1) IN GENERAL.—Not later than September 30, 2029, the Secretary shall conduct a study to—

"(A) analyze, to the extent practicable, the criteria established by hospitals under the Acute Hospital Care at Home initiative to determine which individuals may be furnished services under such initiative; and

"(B) analyze and compare (both within and between hospitals participating in the initiative, and relative to comparable hospitals that do not participate in the initiative, for relevant parameters such as diagnosis-related groups)—

"(i) quality of care furnished to individuals with similar conditions and characteristics in the inpatient setting and through the Acute Hospital Care at Home initiative, including health outcomes, hospital readmission rates (including readmissions both within and beyond 30 days post-discharge), hospital mortality rates, length of stay, infection rates, composition of

care team (including the types of labor used, such as contracted labor), the ratio of nursing staff, transfers from the hospital to the home, transfers from the home to the hospital (including the timing, frequency, and causes of such transfers), transfers and discharges to post-acute care settings (including the timing, frequency, and causes of such transfers and discharges), and patient and caregiver experience of care;

"(ii) clinical conditions treated and diagnosis-related groups of discharges from inpatient settings relative to discharges from the Acute Hospital Care at Home initiative;

"(iii) costs incurred by the hospital for furnishing care in inpatient settings relative to costs incurred by the hospital for furnishing care through the Acute Hospital Care at Home initiative, including costs relating to staffing, equipment, food, prescriptions, and other services, as determined by the Secretary;

"(iv) the quantity, mix, and intensity of services (such as in-person visits and virtual contacts with patients and the intensity of such services) furnished in inpatient settings relative to the Acute Hospital Care at Home initiative, and, to the extent practicable, the nature and extent of family or caregiver involvement;

"(v) socioeconomic information on individuals treated in comparable inpatient settings relative to the initiative, including racial and ethnic data, income, housing, geographic proximity to the brick-and-mortar facility and whether such individuals are dually eligible for benefits under this title and title XIX; and

"(vi) the quality of care, outcomes, costs, quantity and intensity of services, and other relevant metrics between individuals who entered into the Acute Hospital Care at Home initiative directly from an emergency department compared with individuals who entered into the Acute Hospital Care at Home initiative directly from an existing inpatient stay in a hospital.

"(2) SELECTION BIAS.—In conducting the study under paragraph (1), the Secretary shall, to the extent practicable, analyze and compare individuals who participate and do not participate in the initiative controlling for selection bias or other factors that may impact the reliability of data.

"(3) REPORT.—Not later than September 30, 2029, the Secretary of Health and Human Services shall—

"(A) submit to the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate a report on the study conducted under paragraph (1); and

"(B) make such report publicly available on a website of the Centers for Medicare & Medicaid Services.

"(4) FUNDING.—In addition to amounts otherwise available, there is appropriated to the Centers for Medicare & Medicaid Services Program Management Account for fiscal year 2026, out of any amounts in the Treasury not otherwise appropriated, $2,500,000, to remain available until expended, for purposes of carrying out this section."; and

H. R. 7148—480

(5) in subsection (e), as redesignated by paragraph (3), by striking "and (b)(1)" and inserting ", (b)(1), and (c)(1)".

SEC. 6211. IN-HOME CARDIOPULMONARY REHABILITATION FLEXIBILITY.

(a) IN GENERAL.—Section 1861(eee)(2)(A)(ii) of the Social Security Act (42 U.S.C. 1395x(eee)(2)(A)(ii)) is amended by inserting "(including, with respect to items and services furnished through audio and video real-time communications technology (excluding audio-only) on or after January 31, 2026, and before January 1, 2028, in the home of an individual who is an outpatient of the hospital)" after "outpatient basis".

(b) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary of Health and Human Services may implement the amendment made by subsection (a) by program instruction or otherwise.

SEC. 6212. ENHANCING CERTAIN PROGRAM INTEGRITY REQUIREMENTS FOR DME UNDER MEDICARE.

(a) DURABLE MEDICAL EQUIPMENT.—
(1) IN GENERAL.—Section 1834(a) of the Social Security Act (42 U.S.C. 1395m(a)) is amended by adding at the end the following new paragraph:

"(23) MASTER LIST INCLUSION AND CLAIM REVIEW FOR CERTAIN ITEMS.—
"(A) MASTER LIST INCLUSION.—Beginning January 1, 2029, for purposes of the Master List described in section 414.234(b) of title 42, Code of Federal Regulations (or any successor regulation), in determining which items have aberrant billing patterns (as such term is used for purposes of such section), the Secretary shall also treat an item for which payment may be made under this subsection as having such an aberrant billing pattern if the Secretary determines that, without explanatory contributing factors (such as furnishing emergent care services), a substantial number of claims for such items under this subsection are for such items ordered by a physician or practitioner who has not previously (during a period of not less than 24 months, as established by the Secretary) furnished to the individual involved any item or service for which payment may be made under this title.
"(B) CLAIM REVIEW.—With respect to items furnished on or after January 1, 2029, that are included on the Master List pursuant to subparagraph (A), if such an item is not subject to a determination of coverage in advance pursuant to paragraph (15)(C), the Secretary may conduct prepayment review of claims for payment for such item.".
(2) CONFORMING AMENDMENT FOR PROSTHETIC DEVICES, ORTHOTICS, AND PROSTHETICS.—Section 1834(h)(3) of the Social Security Act (42 U.S.C. 1395m(h)(3)) is amended by inserting ", and paragraph (23) of subsection (a) shall apply to prosthetic devices, orthotics, and prosthetics in the same manner as such provision applies to items for which payment may be made under such subsection" before the period at the end.

(b) REPORT ON IDENTIFYING CLINICAL DIAGNOSTIC LABORATORY TESTS AT HIGH RISK FOR FRAUD AND EFFECTIVE MITIGATION MEASURES.—Not later than January 1, 2028, the Inspector General of the Department of Health and Human Services shall submit to

H. R. 7148—481

Congress a report assessing fraud risks relating to clinical diag-
nostic laboratory tests for which payment may be made under
section 1834A of the Social Security Act (42 U.S.C. 1395m–1) and
effective tools for reducing such fraudulent claims. The report may
include, at the Inspector General's discretion—
　　(1) which, if any, clinical diagnostic laboratory tests are
identified as being at high risk of fraudulent claims, and an
analysis of the factors that contribute to such risk;
　　(2) with respect to a clinical diagnostic laboratory test
identified under paragraph (1) as being at high risk of fraudu-
lent claims—
　　　　(A) the amount payable under such section 1834A with
respect to such test;
　　　　(B) the number of such tests furnished to individuals
enrolled under part B of title XVIII of the Social Security
Act (42 U.S.C. 1395j et seq.);
　　　　(C) whether an order for such a test was more likely
to come from a provider with whom the individual involved
did not have a prior relationship, as determined on the
basis of prior payment experience; and
　　　　(D) the frequency with which a claim for payment
under such section 1834A included the payment modifier
identified by code 59 or 91; and
　　(3) suggested strategies for reducing the number of fraudu-
lent claims made with respect to tests so identified as being
at high risk, including—
　　　　(A) an analysis of whether the Centers for Medicare
& Medicaid Services can detect aberrant billing patterns
with respect to such tests in a timely manner;
　　　　(B) any strategies for identifying and monitoring the
providers who are outliers with respect to the number
of such tests that such providers order; and
　　　　(C) targeted education efforts to mitigate improper
billing for such tests; and
　　(4) such other information as the Inspector General deter-
mines appropriate.
　　(c) FUNDING.—In addition to amounts otherwise available, there
is appropriated to the Inspector General of the Department of
Health and Human Services, out of any money in the Treasury
not otherwise appropriated, $1,200,000 for fiscal year 2026, to
remain available until expended, to carry out this section.

**SEC. 6213. GUIDANCE ON FURNISHING SERVICES VIA TELEHEALTH
　　TO INDIVIDUALS WITH LIMITED ENGLISH PROFICIENCY.**

　　(a) IN GENERAL.—Not later than 1 year after the date of enact-
ment of this section, the Secretary of Health and Human Services,
in consultation with 1 or more entities from each of the categories
described in paragraphs (1) through (7) of subsection (b), shall
issue and disseminate, or update and revise as applicable, guidance
for the entities described in such subsection on the following:
　　(1) Best practices on facilitating and integrating use of
interpreters during a telemedicine appointment.
　　(2) Best practices on providing accessible instructions on
how to access telecommunications systems (as such term is
used for purposes of section 1834(m) of the Social Security
Act (42 U.S.C. 1395m(m)) for individuals with limited English
proficiency.

H. R. 7148—482

(3) Best practices on improving access to digital patient portals for individuals with limited English proficiency.

(4) Best practices on integrating the use of video platforms that enable multi-person video calls furnished via a tele-communications system for purposes of providing interpretation during a telemedicine appointment for an individual with limited English proficiency.

(5) Best practices for providing patient materials, communications, and instructions in multiple languages, including text message appointment reminders and prescription information.

(b) ENTITIES DESCRIBED.—For purposes of subsection (a), an entity described in this subsection is an entity in 1 or more of the following categories:

(1) Health information technology service providers, including—

(A) electronic medical record companies;

(B) remote patient monitoring companies; and

(C) telehealth or mobile health vendors and companies.

(2) Health care providers, including—

(A) physicians; and

(B) hospitals.

(3) Health insurers.

(4) Language service companies.

(5) Interpreter or translator professional associations.

(6) Health and language services quality certification organizations.

(7) Patient and consumer advocates, including such advocates that work with individuals with limited English proficiency.

### SEC. 6214. INCLUSION OF VIRTUAL DIABETES PREVENTION PROGRAM SUPPLIERS IN MDPP EXPANDED MODEL.

(a) IN GENERAL.—For the period beginning on January 1, 2026, and ending on December 31, 2029—

(1) an entity may participate in the MDPP by offering only MDPP services via distance learning or online delivery modalities if such entity meets the conditions for enrollment as an MDPP supplier;

(2) if an entity participates in the MDPP in the manner described in paragraph (1), in the case of online MDPP services furnished by such entity to an MDPP beneficiary who was not located in the same State as the entity at the time such services were furnished, the entity shall not be prohibited from submitting a claim for payment for such services solely by reason of the location of such beneficiary at such time; and

(3) no limit is applied on the number of times an individual may enroll in the MDPP.

(b) DEFINITIONS.—In this section:

(1) MDPP.—The term "MDPP" means the Medicare Diabetes Prevention Program (as such term is defined in section 410.79(b) of title 42, Code of Federal Regulations).

(2) REGULATORY TERMS.—The terms "distance learning", "MDPP beneficiary", "MDPP services", "MDPP supplier", and "online" have the meanings given such terms in section 410.79(b) of title 42, Code of Federal Regulations.

(3) SECRETARY.—The term "Secretary" means the Secretary of Health and Human Services.

(c) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary may implement this section by program instruction or otherwise.

## SEC. 6215. MEDICATION-INDUCED MOVEMENT DISORDER OUTREACH AND EDUCATION.

Not later than January 1, 2028, the Secretary of Health and Human Services shall use existing communications mechanisms to provide education and outreach to physicians and appropriate non-physician practitioners participating under the Medicare program under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.) with respect to periodic screening for medication-induced movement disorders that are associated with the treatment of mental health disorders in at-risk patients, as well as resources related to clinical guidelines and best practices for furnishing such screening services through telehealth. Such education and outreach shall include information on how to account for such screening services in evaluation and management code selection. The Secretary shall, to the extent practicable, seek input from relevant stakeholders to inform such education and outreach. Such education and outreach may also address other relevant screening services furnished through telehealth, as the Secretary determines appropriate.

## SEC. 6216. REPORT ON WEARABLE MEDICAL DEVICES.

Not later than 18 months after the date of the enactment of this Act, the Comptroller General of the United States shall conduct a technology assessment of, and submit to Congress a report on, the capabilities and limitations of wearable medical devices used to support clinical decision-making. Such report shall include a description of—

(1) the potential for such devices to accurately prescribe treatments;

(2) an examination of the benefits and challenges of artificial intelligence to augment such capabilities; and

(3) policy options to enhance the benefits and mitigate potential challenges of developing or using such devices.

## SEC. 6217. EXTENSION OF TEMPORARY INCLUSION OF AUTHORIZED ORAL ANTIVIRAL DRUGS AS COVERED PART D DRUGS.

Section 1860D–2(e)(1)(C) of the Social Security Act (42 U.S.C. 1395w–102(e)(1)(C)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

## SEC. 6218. EXTENSION OF ADJUSTMENT TO CALCULATION OF HOSPICE CAP AMOUNT UNDER MEDICARE.

Section 1814(i)(2)(B) of the Social Security Act (42 U.S.C. 1395f(i)(2)(B)) is amended—

(1) in clause (ii), by striking "2033" and inserting "2035"; and

(2) in clause (iii), by striking "2033" and inserting "2035".

## SEC. 6219. ADJUSTMENTS TO MEDICARE PART D COST-SHARING REDUCTIONS FOR LOW-INCOME INDIVIDUALS.

Section 1860D–14(a) of the Social Security Act (42 U.S.C. 1395w–114(a)) is amended—

(1) in paragraph (1)(D)(ii), by striking "that does not exceed $1 for" and all that follows through the period at the end and inserting "that does not exceed—"

"(I) for a plan year before 2028—

"(aa) for a generic drug or a preferred drug that is a multiple source drug (as defined in section 1927(k)(7)(A)(i)), $1 or, if less, the copayment amount applicable to an individual under clause (iii); and

"(bb) for any other drug, $3 or, if less, the copayment amount applicable to an individual under clause (iii); and

"(II) for plan year 2028 and each subsequent plan year—

"(aa) for a generic drug, $0;

"(bb) for a preferred drug that is a multiple source drug (as defined in section 1927(k)(7)(A)(i)), the dollar amount applied under this clause for such a drug for the preceding plan year, increased by the annual percentage increase in the consumer price index (all items; U.S. city average) as of September of such preceding year, or, if less, the copayment amount applicable to an individual under clause (iii); and

"(cc) for a drug not described in either item (aa) or (bb), the dollar amount applied under this clause for such a drug for the preceding plan year, increased in the manner specified in item (bb), or, if less, the copayment amount applicable to an individual under clause (iii).

Any amount established under item (bb) or (cc) of subclause (II), that is based on an increase of $1 or $3, that is not a multiple of 5 cents or 10 cents, respectively, shall be rounded to the nearest multiple of 5 cents or 10 cents, respectively."; and

(2) in paragraph (4)(A)(ii), by inserting "(before 2028)" after "a subsequent year".

**SEC. 6220. REQUIRING ENHANCED AND ACCURATE LISTS OF (REAL) HEALTH PROVIDERS ACT.**

(a) IN GENERAL.—Section 1852(c) of the Social Security Act (42 U.S.C. 1395w–22(c)) is amended—

(1) in paragraph (1)(C)—

(A) by striking "plan, and any" and inserting "plan, any"; and

(B) by inserting the following before the period: ", and, in the case of a specified MA plan (as defined in paragraph (3)(C)), for plan year 2028 and subsequent plan years, the information described in paragraph (3)(B)"; and

(2) by adding at the end the following new paragraph:

"(3) PROVIDER DIRECTORY ACCURACY.—

"(A) IN GENERAL.—For plan year 2028 and subsequent plan years, each MA organization offering a specified MA plan (as defined in subparagraph (C)) shall, for each such plan offered by the organization—

H. R. 7148—485

"(i) maintain, on a publicly available internet website, an accurate provider directory that includes the information described in subparagraph (B);

"(ii) not less frequently than once every 90 days (or, in the case of a hospital or any other facility determined appropriate by the Secretary, at a lesser frequency specified by the Secretary but in no case less frequently than once every 12 months), verify the provider directory information of each provider listed in such directory and, if applicable, update such information;

"(iii) if the organization is unable to verify such information with respect to a provider, include in such directory an indication that the information of such provider may not be up to date; and

"(iv) remove a provider from such directory within 5 business days if the organization determines that the provider is no longer a provider participating in the network of such plan.

"(B) PROVIDER DIRECTORY INFORMATION.—The information described in this subparagraph is information enrollees may need to access covered benefits from a provider with which such organization offering such plan has an agreement for furnishing items and services covered under such plan, such as name, specialty, contact information, primary office or facility addresses where items or services are furnished, whether the provider is accepting new patients, accommodations for people with disabilities, cultural and linguistic capabilities, and telehealth capabilities.

"(C) SPECIFIED MA PLAN.—In this paragraph, the term 'specified MA plan' means—

"(i) a network-based plan (as defined in subsection (d)(5)(C)); or

"(ii) a Medicare Advantage private fee-for-service plan (as defined in section 1859(b)(2)) that meets the access standards under subsection (d)(4), in whole or in part, through entering into contracts or agreements as provided for under subparagraph (B) of such subsection.".

(b) ACCOUNTABILITY FOR PROVIDER DIRECTORY ACCURACY.—

(1) COST SHARING FOR SERVICES FURNISHED BASED ON RELIANCE ON INCORRECT PROVIDER DIRECTORY INFORMATION.—Section 1852(d) of the Social Security Act (42 U.S.C. 1395w–22(d)) is amended—

(A) in paragraph (1)(C)—

(i) in clause (ii), by striking "or" at the end;

(ii) in clause (iii), by striking the semicolon at the end and inserting ", or"; and

(iii) by adding at the end the following new clause:

"(iv) for plan year 2028 and subsequent plan years, in the case of a specified MA plan (as defined in subsection (c)(3)(C)), the services were furnished by a provider that was not participating in the network of such plan but was listed in the provider directory of such plan on the date on which the appointment was made, as described in paragraph (7)(A);"; and

(B) by adding at the end the following new paragraph:

H. R. 7148—486

"(7) COST SHARING FOR SERVICES FURNISHED BASED ON RELI-ANCE ON INCORRECT PROVIDER DIRECTORY INFORMATION.—

"(A) IN GENERAL.—For plan year 2028 and subsequent plan years, if an enrollee in a specified MA plan (as defined in subsection (c)(3)(C)) is furnished an item or service by a provider that is not participating in the network of such plan but is listed in the provider directory of such plan (as required to be provided to an enrollee pursuant to subsection (c)(1)(C)) on the date on which the appointment is made, and if such item or service would otherwise be covered under such plan if furnished by a provider that is participating in the network of such plan, the MA organization offering such plan shall ensure that the enrollee is only responsible for the lesser of—

"(i) the amount of cost sharing that would apply if such provider had been participating in the network of such plan; or

"(ii) the amount of cost sharing that would other-wise apply (without regard to this subparagraph).

"(B) NOTIFICATION REQUIREMENT.—For plan year 2028 and subsequent plan years, each MA organization that offers a specified MA plan shall—

"(i) notify enrollees of their cost-sharing protections under this paragraph and make such notifications, to the extent practicable, by not later than the first day of an annual, coordinated election period under section 1851(e)(3) with respect to a year;

"(ii) include information regarding such cost-sharing protections in the provider directory of each specified MA plan offered by the MA organization.; and

"(iii) notify enrollees of their cost-sharing protec-tions under this paragraph in the first explanation of benefits issued in a plan year.".

(2) REQUIRED PROVIDER DIRECTORY ACCURACY ANALYSIS AND REPORTS.—

(A) IN GENERAL.—Section 1857(e) of the Social Security Act (42 U.S.C. 1395w–27(e)) is amended by adding at the end the following new paragraph:

"(6) PROVIDER DIRECTORY ACCURACY ANALYSIS AND REPORTS.—

"(A) IN GENERAL.—Beginning with plan years begin-ning on or after January 1, 2028, subject to subparagraph (C), a contract under this section with an MA organization shall require the organization, for each specified MA plan (as defined in section 1852(c)(3)(C)) offered by the organiza-tion, to annually do the following:

"(i) Conduct an analysis estimating the accuracy of the provider directory information of such plan using a random sample of providers included in such provider directory as follows:

"(I) Such a random sample shall include a random sample of each specialty of providers with a high inaccuracy rate of provider directory information relative to other specialties of pro-viders, as determined by the Secretary.

H. R. 7148—487

"(II) For purposes of subclause (I), one type of specialty may be providers specializing in mental health or substance use disorder treatment.

"(ii) Submit to the Secretary a report containing the results of the analysis conducted under clause (i), including an accuracy score for such provider directory information (as determined using a plan verification method specified by the Secretary under subparagraph (B)(i)).

"(B) DETERMINATION OF ACCURACY SCORE.—

"(i) IN GENERAL.—The Secretary shall specify plan verification methods, such as using telephonic verification or other approaches using data sources maintained by an MA organization or using publicly available data sets, that MA organizations may use for estimating accuracy scores of the provider directory information of specified MA plans offered by such organizations.

"(ii) ACCURACY SCORE METHODOLOGY.—With respect to each such method specified by the Secretary as described in clause (i), the Secretary shall specify a methodology for MA organizations to use in estimating such accuracy scores. Each such methodology shall take into account the administrative burden on plans and providers and the relative importance of certain provider directory information on enrollee ability to access care.

"(C) EXCEPTION.—The Secretary may waive the requirements of this paragraph in the case of a specified MA plan with low enrollment (as defined by the Secretary).

"(D) TRANSPARENCY.—Beginning with plan years beginning on or after January 1, 2029, the Secretary shall post accuracy scores (as reported under subparagraph (A)(ii)), in a machine readable file, on an internet website maintained by the Centers for Medicare & Medicaid Services.".

(B) PROVISION OF INFORMATION TO BENEFICIARIES.—Section 1851(d)(4) of the Social Security Act (42 U.S.C. 1395w–21(d)(4)) is amended by adding at the end the following new subparagraph:

"(F) PROVIDER DIRECTORY.—Beginning with plan years beginning on or after January 1, 2029, in the case of a specified MA plan (as defined in section 1852(c)(3)(C)), the accuracy score of the plan's provider directory (as reported under section 1857(e)(6)(A)(ii)) listed prominently on the plan's provider directory.".

(C) FUNDING.—In addition to amounts otherwise available, there is appropriated to the Centers for Medicare & Medicaid Services Program Management Account, out of any money in the Treasury not otherwise appropriated, $4,000,000 for fiscal year 2026, to remain available until expended, to carry out the amendments made by this paragraph.

(3) GAO STUDY AND REPORT.—

(A) ANALYSIS.—The Comptroller General of the United States (in this paragraph referred to as the "Comptroller General") shall conduct a study of the implementation of the amendments made by paragraphs (1) and (2). To the

extent data are available and reliable, such study shall include an analysis of—

    (i) the use of cost-sharing protections required under section 1852(d)(7)(A) of the Social Security Act, as added by paragraph (1);

    (ii) the trends in provider directory information accuracy scores submitted to the Secretary of Health and Human Services under section 1857(e)(6)(A)(ii) of the Social Security Act (as added by paragraph (2)(A)), both overall and among providers specializing in mental health or substance use disorder treatment;

    (iii) provider response rates by plan verification methods;

    (iv) administrative costs to providers and Medicare Advantage organizations; and

    (v) other items determined appropriate by the Comptroller General.

(B) REPORT.—Not later than January 15, 2033, the Comptroller General shall submit to Congress a report containing the results of the study conducted under subparagraph (A), together with recommendations for such legislation and administrative action as the Comptroller General determines appropriate.

(c) GUIDANCE ON MAINTAINING ACCURATE PROVIDER DIRECTORIES.—

    (1) STAKEHOLDER MEETING.—

        (A) IN GENERAL.—Not later than 6 months after the date of enactment of this Act, the Secretary of Health and Human Services (referred to in this subsection as the "Secretary") shall hold a public meeting to receive input on approaches for maintaining accurate provider directories for Medicare Advantage plans under part C of title XVIII of the Social Security Act (42 U.S.C. 1395w–21 et seq.), including input on approaches for reducing administrative burden, such as data standardization, and best practices to maintain accurate provider directory information.

        (B) PARTICIPANTS.—Participants of the meeting under subparagraph (A) shall include representatives from the Centers for Medicare & Medicaid Services and the Assistant Secretary for Technology Policy and Office of the National Coordinator for Health Information Technology. Such meeting shall be open to the public. To the extent practicable, the Secretary shall include health care providers, companies that specialize in relevant technologies, health insurers, and patient advocates.

    (2) GUIDANCE TO MEDICARE ADVANTAGE ORGANIZATIONS.—Not later than 18 months after the date of enactment of this Act, the Secretary shall issue guidance to Medicare Advantage organizations offering Medicare Advantage plans under part C of title XVIII of the Social Security Act (42 U.S.C. 1395w–21 et seq.) on maintaining accurate provider directories for such plans, taking into consideration input received during the stakeholder meeting under paragraph (1). Such guidance may include the following, as determined appropriate by the Secretary:

(A) Best practices for Medicare Advantage organizations on how to work with providers to maintain the accuracy of provider directories and reduce provider and Medicare Advantage organization burden with respect to maintaining the accuracy of provider directories.

(B) Information on data sets and data sources with information that could be used by Medicare Advantage organizations to maintain accurate provider directories.

(C) Approaches for utilizing data sources maintained by Medicare Advantage organizations and publicly available data sets to maintain accurate provider directories.

(D) Information that may be useful to include in provider directories for Medicare beneficiaries to use in assessing plan networks when selecting a plan and accessing providers participating in plan networks during the plan year.

(3) GUIDANCE TO PART B PROVIDERS.—Not later than 12 months after the date of enactment of this Act, the Secretary shall issue guidance to providers of services and suppliers who furnish items or services for which benefits are available under part B of title XVIII of the Social Security Act (42 U.S.C. 1395j et seq.) on when to update the National Plan and Provider Enumeration System (or a successor system) for information changes.

**SEC. 6221. MEDICARE COVERAGE OF MULTI-CANCER EARLY DETECTION SCREENING TESTS.**

(a) COVERAGE.—Section 1861 of the Social Security Act (42 U.S.C. 1395x) is amended—

(1) in subsection (s)(2)—

(A) by striking the semicolon at the end of subparagraph (JJ) and inserting "; and"; and

(B) by adding at the end the following new subparagraph:

"(KK) multi-cancer early detection screening tests (as defined in subsection (nnn))"; and

(2) by adding at the end the following new subsection:

"(nnn) MULTI-CANCER EARLY DETECTION SCREENING TESTS.—

"(1) IN GENERAL.—The term 'multi-cancer early detection screening test' means a test furnished to an individual for the concurrent detection of multiple cancer types across multiple organ sites on or after January 1, 2029, that—

"(A) is cleared under section 510(k), classified under section 513(f)(2), or approved under section 515 of the Federal Food, Drug, and Cosmetic Act;

"(B) is—

"(i) a genomic sequencing blood or blood product test that includes the analysis of cell-free nucleic acids; or

"(ii) a test based on samples of biological material that provide results comparable to those obtained with a test described in clause (i), as described by the Secretary; and

"(C) the Secretary determines is—

"(i) reasonable and necessary for the prevention or early detection of an illness or disability; and

H. R. 7148—490

"(ii) appropriate for individuals entitled to benefits under part A or enrolled under part B.

"(2) NCD PROCESS.—In making determinations under paragraph (1)(C) regarding the coverage of a new test, the Secretary shall use the process for making national coverage determinations (as defined in section 1869(f)(1)(B)) under this title.".

(b) PAYMENT AND STANDARDS FOR MULTI-CANCER EARLY DETECTION SCREENING TESTS.—

(1) IN GENERAL.—Section 1834 of the Social Security Act (42 U.S.C. 1395m) is amended by adding at the end the following new subsection:

"(aa) PAYMENT AND STANDARDS FOR MULTI-CANCER EARLY DETECTION SCREENING TESTS.—

"(1) PAYMENT AMOUNT.—The payment amount for a multi-cancer early detection screening test (as defined in section 1861(nnn)) is—

"(A) with respect to such a test furnished before January 1, 2031, equal to the payment amount in effect on the date of the enactment of this subsection for a multi-target stool screening DNA test covered pursuant to section 1861(pp)(1)(D); and

"(B) with respect to such a test furnished on or after January 1, 2031, equal to the lesser of—

"(i) the amount described in subparagraph (A); or

"(ii) the payment amount determined for such test under section 1834A.

"(2) LIMITATIONS.—

"(A) IN GENERAL.—No payment may be made under this part for a multi-cancer early detection screening test furnished during a year to an individual if—

"(i) such individual—

"(I) is under 50 years of age; or

"(II) as of January 1 of such year, has attained the age specified in subparagraph (B) for such year; or

"(ii) such test was furnished to the individual during the previous 11 months.

"(B) AGE SPECIFIED.—For purposes of subparagraph (A)(i)(II), the age specified in this subparagraph is—

"(i) for 2029, 65 years of age; and

"(ii) for a succeeding year, the age specified in this subparagraph for the preceding year, increased by 1 year.

"(C) STANDARDS FOLLOWING USPSTF RATING OF A OR B.—In the case of a multi-cancer early detection screening test that is recommended with a grade of A or B by the United States Preventive Services Task Force, beginning on the date on which coverage for such test is provided pursuant to section 1861(ddd)(1), the preceding provisions of this paragraph shall not apply.".

(2) CONFORMING AMENDMENTS.—

(A) Section 1833 of the Social Security Act (42 U.S.C. 1395l) is amended—

(i) in subsection (a)—

H. R. 7148—491

(I) in paragraph (1)(D)(i)(I), by striking "section 1834(d)(1)" and inserting "subsection (d)(1) or (aa) of section 1834"; and

(II) in paragraph (2)(D)(i)(I), by striking "section 1834(d)(1)" and inserting "subsection (d)(1) or (aa) of section 1834"; and

(ii) in subsection (h)(1)(A), by striking "section 1834(d)(1)" and inserting "subsections (d)(1) and (aa) of section 1834".

(B) Section 1862(a)(1)(A) of the Social Security Act (42 U.S.C. 1395y(a)(1)(A)) is amended—

(i) by striking "or additional preventive services" and inserting ", additional preventive services"; and

(ii) by inserting ", or multi-cancer early detection screening tests (as defined in section 1861(nnn))" after "(as described in section 1861(ddd)(1))".

(c) RULE OF CONSTRUCTION RELATING TO OTHER CANCER SCREENING TESTS.—Nothing in this section, including the amendments made by this section, shall be construed—

(1) in the case of an individual who undergoes a multi-cancer early detection screening test, to affect coverage under part B of title XVIII of the Social Security Act for other cancer screening tests covered under such title, such as screening tests for breast, cervical, colorectal, lung, or prostate cancer; or

(2) in the case of an individual who undergoes another cancer screening test, to affect coverage under such part for a multi-cancer early detection screening test or the use of such a test as a diagnostic or confirmatory test for a result of the other cancer screening test.

(d) FUNDING.—In addition to amounts otherwise available, there is appropriated to the Centers for Medicare & Medicaid Services Program Management Account, out of any money in the Treasury not otherwise appropriated, $2,000,000 for fiscal year 2026, to remain available until expended, to carry out this section.

**SEC. 6222. MEDICARE COVERAGE OF EXTERNAL INFUSION PUMPS AND NON-SELF-ADMINISTRABLE HOME INFUSION DRUGS.**

(a) IN GENERAL.—Section 1861(n) of the Social Security Act (42 U.S.C. 1395x(n)) is amended by adding at the end the following new sentence: "Beginning with the first calendar quarter beginning on or after the date that is 1 year after the date of the enactment of this sentence, an external infusion pump and associated home infusion drug (as defined in subsection (iii)(3)(C)) or other associated supplies that do not meet the appropriate for use in the home requirement applied to the definition of durable medical equipment under section 414.202 of title 42, Code of Federal Regulations (or any successor to such regulation) shall be treated as meeting such requirement if each of the following criteria is satisfied:

"(1) The prescribing information approved by the Food and Drug Administration for the home infusion drug associated with the pump instructs that the drug should be administered by or under the supervision of a health care professional.

"(2) A qualified home infusion therapy supplier (as defined in subsection (iii)(3)(D)) administers or supervises the administration of the drug or biological in a safe and effective manner in the patient's home (as defined in subsection (iii)(3)(B)).

H. R. 7148—492

"(3) The prescribing information described in paragraph (1) instructs that the drug should be infused at least 12 times per year—

"(A) intravenously or subcutaneously; or

"(B) at infusion rates that the Secretary determines would require the use of an external infusion pump.".

(b) COST SHARING NOTIFICATION.—The Secretary of Health and Human Services shall ensure that patients are notified of the cost sharing for electing home infusion therapy compared to other applicable settings of care for the furnishing of infusion drugs under the Medicare program.

### SEC. 6223. ASSURING PHARMACY ACCESS AND CHOICE FOR MEDICARE BENEFICIARIES.

(a) IN GENERAL.—Section 1860D–4(b)(1) of the Social Security Act (42 U.S.C. 1395w–104(b)(1)) is amended by striking subparagraph (A) and inserting the following:

"(A) IN GENERAL.—

"(i) PARTICIPATION OF ANY WILLING PHARMACY.— A PDP sponsor offering a prescription drug plan shall permit any pharmacy that meets the standard contract terms and conditions under such plan to participate as a network pharmacy of such plan.

"(ii) CONTRACT TERMS AND CONDITIONS.—

"(I) IN GENERAL.—Notwithstanding any other provision of law, for plan years beginning on or after January 1, 2029, in accordance with clause (i), contract terms and conditions offered by such PDP sponsor shall be reasonable and relevant according to standards established by the Secretary under subclause (II).

"(II) STANDARDS.—Not later than the first Monday in April of 2028, the Secretary shall establish standards for reasonable and relevant contract terms and conditions for purposes of this clause.

"(III) REQUEST FOR INFORMATION.—Not later than April 1, 2027, for purposes of establishing the standards under subclause (II), the Secretary shall issue a request for information to seek input on trends in prescription drug plan and network pharmacy contract terms and conditions, current prescription drug plan and network pharmacy contracting practices, whether pharmacy reimbursement and dispensing fees paid by PDP sponsors to network pharmacies sufficiently cover the ingredient and operational costs of such pharmacies, the use and application of pharmacy quality measures by PDP sponsors for network pharmacies, PDP sponsor restrictions or limitations on the dispensing of covered part D drugs by network pharmacies (or any subsets of such pharmacies), PDP sponsor auditing practices for network pharmacies, areas in current regulations or program guidance related to contracting between prescription drug

plans and network pharmacies requiring clarification or additional specificity, factors for consideration in determining the reasonableness and relevance of contract terms and conditions between prescription drug plans and network pharmacies, and other issues as determined appropriate by the Secretary.".

(b) ESSENTIAL RETAIL PHARMACIES.—Section 1860D–42 of the Social Security Act (42 U.S.C. 1395w–152) is amended by adding at the end the following new subsection:

"(e) ESSENTIAL RETAIL PHARMACIES.—

"(1) IN GENERAL.—With respect to plan years beginning on or after January 1, 2028, the Secretary shall publish reports, at least once every 2 years until 2034, and periodically thereafter, that provide information, to the extent feasible, on—

"(A) trends in ingredient cost reimbursement, dispensing fees, incentive payments and other fees paid by PDP sponsors offering prescription drug plans and MA organizations offering MA–PD plans under this part to essential retail pharmacies (as defined in paragraph (2)) with respect to the dispensing of covered part D drugs, including a comparison of such trends between essential retail pharmacies and pharmacies that are not essential retail pharmacies;

"(B) trends in amounts paid to PDP sponsors offering prescription drug plans and MA organizations offering MA–PD plans under this part by essential retail pharmacies with respect to the dispensing of covered part D drugs, including a comparison of such trends between essential retail pharmacies and pharmacies that are not essential retail pharmacies;

"(C) trends in essential retail pharmacy participation in pharmacy networks and preferred pharmacy networks for prescription drug plans offered by PDP sponsors and MA–PD plans offered by MA organizations under this part, including a comparison of such trends between essential retail pharmacies and pharmacies that are not essential retail pharmacies;

"(D) trends in the number of essential retail pharmacies, including variation in such trends by geographic region or other factors;

"(E) a comparison of cost-sharing for covered part D drugs dispensed by essential retail pharmacies that are network pharmacies for prescription drug plans offered by PDP sponsors and MA–PD plans offered by MA organizations under this part and cost-sharing for covered part D drugs dispensed by other network pharmacies for such plans located in similar geographic areas that are not essential retail pharmacies;

"(F) a comparison of the volume of covered part D drugs dispensed by essential retail pharmacies that are network pharmacies for prescription drug plans offered by PDP sponsors and MA–PD plans offered by MA organizations under this part and such volume of dispensing by network pharmacies for such plans located in similar geographic areas that are not essential retail pharmacies, including information on any patterns or trends

in such comparison specific to certain types of covered part D drugs, such as generic drugs or drugs specified as specialty drugs by a PDP sponsor under a prescription drug plan or an MA organization under an MA–PD plan; and

"(G) a comparison of the information described in subparagraphs (A) through (F) between essential retail pharmacies that are network pharmacies for prescription drug plans offered by PDP sponsors under this part and essential retail pharmacies that are network pharmacies for MA–PD plans offered by MA organizations under this part.

"(2) DEFINITION OF ESSENTIAL RETAIL PHARMACY.—In this subsection, the term 'essential retail pharmacy' means, with respect to a plan year, a retail pharmacy that—

"(A) is not a pharmacy that is an affiliate as defined in paragraph (4); and

"(B) is located in—

"(i) a rural area in which there is no other retail pharmacy within 10 miles, as determined by the Secretary;

"(ii) a suburban area in which there is no other retail pharmacy within 2 miles, as determined by the Secretary; or

"(iii) an urban area in which there is no other retail pharmacy within 1 mile, as determined by the Secretary.

"(3) LIST OF ESSENTIAL RETAIL PHARMACIES.—

"(A) PUBLICATION OF LIST OF ESSENTIAL RETAIL PHARMACIES.—For each plan year (beginning with plan year 2028), the Secretary shall publish, on a publicly available internet website of the Centers for Medicare & Medicaid Services, a list of retail pharmacies that meet the criteria described in subparagraphs (A) and (B) of paragraph (2) to be considered an essential retail pharmacy.

"(B) REQUIRED SUBMISSIONS FROM PDP SPONSORS.—For each plan year (beginning with plan year 2028), each PDP sponsor offering a prescription drug plan and each MA organization offering an MA–PD plan shall submit to the Secretary, for the purposes of determining retail pharmacies that meet the criterion specified in subparagraph (A) of paragraph (2), a list of retail pharmacies that are affiliates of such sponsor or organization, or are affiliates of a pharmacy benefit manager acting on behalf of such sponsor or organization, at a time, and in a form and manner, specified by the Secretary.

"(C) REPORTING BY PDP SPONSORS AND MA ORGANIZATIONS.—For each plan year beginning with plan year 2027, each PDP sponsor offering a prescription drug plan and each MA organization offering an MA–PD plan under this part shall submit to the Secretary information on incentive payments and other fees paid by such sponsor or organization to pharmacies, insofar as any such payments or fees are not otherwise reported, at a time, and in a form and manner, specified by the Secretary.

"(D) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary may implement this paragraph by program instruction or otherwise.

H. R. 7148—495

"(E) NONAPPLICATION OF PAPERWORK REDUCTION ACT.—Chapter 35 of title 44, United States Code, shall not apply to the implementation of this paragraph.

"(4) DEFINITION OF AFFILIATE; PHARMACY BENEFIT MANAGER.—In this subsection, the terms 'affiliate' and 'pharmacy benefit manager' have the meaning given those terms in section 1860D–12(h)(7).".

(c) ENFORCEMENT.—

(1) IN GENERAL.—Section 1860D–4(b)(1) of the Social Security Act (42 U.S.C. 1395w–104(b)(1)) is amended by adding at the end the following new subparagraph:

"(F) ENFORCEMENT OF STANDARDS FOR REASONABLE AND RELEVANT CONTRACT TERMS AND CONDITIONS.—

"(i) ALLEGATION SUBMISSION PROCESS.—

"(I) IN GENERAL.—Not later than January 1, 2029, the Secretary shall establish a process through which a pharmacy may submit to the Secretary an allegation of a violation by a PDP sponsor offering a prescription drug plan of the standards for reasonable and relevant contract terms and conditions under subparagraph (A)(ii), or of subclause (VIII) of this clause.

"(II) FREQUENCY OF SUBMISSION.—

"(aa) IN GENERAL.—Except as provided in item (bb), the allegation submission process under this clause shall allow pharmacies to submit any allegations of violations described in subclause (I) not more frequently than once per plan year per contract between a pharmacy and a PDP sponsor.

"(bb) ALLEGATIONS RELATING TO CONTRACT MODIFICATIONS.—In the case where a contract between a pharmacy and a PDP sponsor is modified following the submission of allegations by a pharmacy with respect to such contract and plan year, the allegation submission process under this clause shall allow such pharmacy to submit an additional allegation related to those modifications with respect to such contract and plan year.

"(III) ACCESS TO RELEVANT DOCUMENTS AND MATERIALS.—A PDP sponsor subject to an allegation under this clause—

"(aa) shall provide documents or materials, as specified by the Secretary, including contract offers made by such sponsor to such pharmacy or correspondence related to such offers, to the Secretary at a time, and in a form and manner, specified by the Secretary; and

"(bb) shall not prohibit or otherwise limit the ability of a pharmacy to submit such documents or materials to the Secretary for the purpose of submitting an allegation or providing evidence for such an allegation under this clause.

"(IV) STANDARDIZED TEMPLATE.—The Secretary shall establish a standardized template for pharmacies to use for the submission of allegations described in subclause (I). Such template shall require that the submission include a certification by the pharmacy that the information included is accurate, complete, and true to the best of the knowledge, information, and belief of such pharmacy.

"(V) PREVENTING FRIVOLOUS ALLEGATIONS.—In the case where the Secretary determines that a pharmacy has submitted frivolous allegations under this clause on a routine basis, the Secretary may temporarily prohibit such pharmacy from using the allegation submission process under this clause, as determined appropriate by the Secretary.

"(VI) EXEMPTION FROM FREEDOM OF INFORMATION ACT.—Allegations submitted under this clause shall be exempt from disclosure under section 552 of title 5, United States Code.

"(VII) RULE OF CONSTRUCTION.—Nothing in this clause shall be construed as limiting the ability of a pharmacy to pursue other legal actions or remedies, consistent with applicable Federal or State law, with respect to a potential violation of a requirement described in this subparagraph.

"(VIII) ANTI-RETALIATION AND ANTI-COERCION.—Consistent with applicable Federal or State law, a PDP sponsor shall not—

"(aa) retaliate against a pharmacy for submitting any allegations under this clause; or

"(bb) coerce, intimidate, threaten, or interfere with the ability of a pharmacy to submit any such allegations.

"(ii) INVESTIGATION.—The Secretary shall investigate, as determined appropriate by the Secretary, allegations submitted pursuant to clause (i).

"(iii) ENFORCEMENT.—

"(I) IN GENERAL.—In the case where the Secretary determines that a PDP sponsor offering a prescription drug plan has violated the standards for reasonable and relevant contract terms and conditions under subparagraph (A)(ii) or the provisions of clause (i)(VIII) of this subparagraph, the Secretary may use authorities under sections 1857(g) and 1860D–12(b)(3)(E) to impose civil monetary penalties or other intermediate sanctions.

"(II) APPLICATION OF CIVIL MONETARY PENALTIES.—The provisions of section 1128A (other than subsections (a) and (b)) shall apply to a civil monetary penalty under this clause in the same manner as such provisions apply to a penalty or proceeding under section 1128A(a).".

H. R. 7148—497

(2) CONFORMING AMENDMENT.—Section 1857(g)(1) of the Social Security Act (42 U.S.C. 1395w–27(g)(1)) is amended—

(A) in subparagraph (J), by striking "or" after the semicolon;

(B) by redesignating subparagraph (K) as subparagraph (L);

(C) by inserting after subparagraph (J), the following new subparagraph:

"(K) fails to comply with the standards for reasonable and relevant contract terms and conditions under subparagraph (A)(ii) of section 1860D–4(b)(1) or violates the provisions of subparagraph (F)(i)(VIII) of such section; or";

(D) in subparagraph (L), as redesignated by subparagraph (B), by striking "through (J)" and inserting "through (K)"; and

(E) in the flush matter following subparagraph (L), as so redesignated, by striking "subparagraphs (A) through (K)" and inserting "subparagraphs (A) through (L)".

(d) ACCOUNTABILITY OF PHARMACY BENEFIT MANAGERS FOR VIOLATIONS OF REASONABLE AND RELEVANT CONTRACT TERMS AND CONDITIONS.—

(1) IN GENERAL.—Section 1860D–12(b) of the Social Security Act (42 U.S.C. 1395w–112) is amended by adding at the end the following new paragraph:

"(9) ACCOUNTABILITY OF PHARMACY BENEFIT MANAGERS FOR VIOLATIONS OF REASONABLE AND RELEVANT CONTRACT TERMS AND CONDITIONS.—For plan years beginning on or after January 1, 2029, each contract entered into with a PDP sponsor under this part with respect to a prescription drug plan offered by such sponsor shall provide that any pharmacy benefit manager acting on behalf of such sponsor has a written agreement with the PDP sponsor under which the pharmacy benefit manager agrees to reimburse the PDP sponsor for any amounts paid by such sponsor under section 1860D–4(b)(1)(F)(iii)(I) to the Secretary as a result of a violation described in such section if such violation is related to a responsibility delegated to the pharmacy benefit manager by such PDP sponsor.".

(2) MA–PD PLANS.—Section 1857(f)(3) of the Social Security Act (42 U.S.C. 1395w–27(f)(3)) is amended by adding at the end the following new subparagraph:

"(F) ACCOUNTABILITY OF PHARMACY BENEFIT MANAGERS FOR VIOLATIONS OF REASONABLE AND RELEVANT CONTRACT TERMS.—For plan years beginning on or after January 1, 2029, section 1860D–12(b)(9).".

(e) BIENNIAL REPORT ON ENFORCEMENT AND OVERSIGHT OF PHARMACY ACCESS REQUIREMENTS.—Section 1860D–42 of the Social Security Act (42 U.S.C. 1395w–152), as amended by subsection (b), is amended by adding at the end the following new subsection:

"(f) BIENNIAL REPORT ON ENFORCEMENT AND OVERSIGHT OF PHARMACY ACCESS REQUIREMENTS.—

"(1) IN GENERAL.—Not later than 2 years after the date of enactment of this subsection, and at least once every 2 years thereafter, the Secretary shall publish a report on enforcement and oversight actions and activities undertaken by the Secretary with respect to the requirements under section 1860D–4(b)(1).

H. R. 7148—498

"(2) LIMITATION.—A report under paragraph (1) shall not disclose—

"(A) identifiable information about individuals or entities unless such information is otherwise publicly available; or

"(B) trade secrets with respect to any entities.".

(f) FUNDING.—In addition to amounts otherwise available, there is appropriated to the Centers for Medicare & Medicaid Services Program Management Account, out of any money in the Treasury not otherwise appropriated, $188,000,000 for fiscal year 2026, to remain available until expended, to carry out this section.

### SEC. 6224. MODERNIZING AND ENSURING PBM ACCOUNTABILITY.

(a) IN GENERAL.—

(1) PRESCRIPTION DRUG PLANS.—Section 1860D–12 of the Social Security Act (42 U.S.C. 1395w–112) is amended by adding at the end the following new subsection:

"(h) REQUIREMENTS RELATING TO PHARMACY BENEFIT MANAGERS.—For plan years beginning on or after January 1, 2028:

"(1) AGREEMENTS WITH PHARMACY BENEFIT MANAGERS.—Each contract entered into with a PDP sponsor under this part with respect to a prescription drug plan offered by such sponsor shall provide that any pharmacy benefit manager acting on behalf of such sponsor has a written agreement with the PDP sponsor under which the pharmacy benefit manager, and any affiliates of such pharmacy benefit manager, as applicable, agree to meet the following requirements:

"(A) NO INCOME OTHER THAN BONA FIDE SERVICE FEES.—

"(i) IN GENERAL.—The pharmacy benefit manager and any affiliate of such pharmacy benefit manager shall not derive any remuneration with respect to any services provided on behalf of any entity or individual, in connection with the utilization of covered part D drugs, from any such entity or individual other than bona fide service fees, subject to clauses (ii) and (iii).

"(ii) INCENTIVE PAYMENTS.—For the purposes of this subsection, an incentive payment (as determined by the Secretary) paid by a PDP sponsor to a pharmacy benefit manager or an affiliate of a pharmacy benefit manager that is performing services on behalf of such sponsor shall be deemed a 'bona fide service fee' (even if such payment does not otherwise meet the definition of such term under paragraph (7)(B)) if such payment is a flat dollar amount, is consistent with fair market value (as specified by the Secretary), is related to services actually performed by the pharmacy benefit manager or affiliate of such pharmacy benefit manager, on behalf of the PDP sponsor making such payment, in connection with the utilization of covered part D drugs, and meets additional requirements, if any, as determined appropriate by the Secretary.

"(iii) CLARIFICATION ON REBATES AND DISCOUNTS USED TO LOWER COSTS FOR COVERED PART D DRUGS.—Rebates, discounts, and other price concessions received by a pharmacy benefit manager or an affiliate of a pharmacy benefit manager from manufacturers,

even if such price concessions are calculated as a percentage of a drug's price, shall not be considered a violation of the requirements of clause (i) if they are fully passed through to a PDP sponsor and are compliant with all regulatory and subregulatory requirements related to direct and indirect remuneration for manufacturer rebates, discounts, and other price concessions under this part, including in cases where a PDP sponsor is acting as a pharmacy benefit manager on behalf of a prescription drug plan offered by such PDP sponsor.

"(iv) EVALUATION OF REMUNERATION ARRANGE-MENTS.—Components of subsets of remuneration arrangements (such as fees or other forms of compensation paid to or retained by the pharmacy benefit manager or affiliate of such pharmacy benefit manager), as determined appropriate by the Secretary, between pharmacy benefit managers or affiliates of such pharmacy benefit managers, as applicable, and other entities involved in the dispensing or utilization of covered part D drugs (including PDP sponsors, manufacturers, pharmacies, and other entities as determined appropriate by the Secretary) shall be subject to review by the Secretary, in consultation with the Office of the Inspector General of the Department of Health and Human Services, as determined appropriate by the Secretary. The Secretary, in consultation with the Office of the Inspector General, shall review whether remuneration under such arrangements is consistent with fair market value (as specified by the Secretary) through reviews and assessments of such remuneration, as determined appropriate.

"(v) DISGORGEMENT.—The pharmacy benefit manager shall disgorge any remuneration paid to such pharmacy benefit manager or an affiliate of such pharmacy benefit manager in violation of this subparagraph to the PDP sponsor.

"(vi) ADDITIONAL REQUIREMENTS.—The pharmacy benefit manager shall—

"(I) enter into a written agreement with any affiliate of such pharmacy benefit manager, under which the affiliate shall identify and disgorge any remuneration described in clause (v) to the pharmacy benefit manager; and

"(II) attest, subject to any requirements determined appropriate by the Secretary, that the pharmacy benefit manager has entered into a written agreement described in subclause (I) with any affiliate of the pharmacy benefit manager.

"(B) TRANSPARENCY REGARDING GUARANTEES AND COST PERFORMANCE EVALUATIONS.—The pharmacy benefit manager shall—

"(i) define, interpret, and apply, in a fully transparent and consistent manner for purposes of calculating or otherwise evaluating pharmacy benefit manager performance against pricing guarantees or similar

cost performance measurements related to rebates, discounts, price concessions, or net costs, terms such as—

"(I) 'generic drug', in a manner consistent with the definition of the term under section 423.4 of title 42, Code of Federal Regulations, or a successor regulation;

"(II) 'brand name drug', in a manner consistent with the definition of the term under section 423.4 of title 42, Code of Federal Regulations, or a successor regulation;

"(III) 'specialty drug';

"(IV) 'rebate'; and

"(V) 'discount';

"(ii) identify any drugs, claims, or price concessions excluded from any pricing guarantee or other cost performance measure in a clear and consistent manner; and

"(iii) where a pricing guarantee or other cost performance measure is based on a pricing benchmark other than the wholesale acquisition cost (as defined in section 1847A(c)(6)(B)) of a drug, calculate and provide a wholesale acquisition cost-based equivalent to the pricing guarantee or other cost performance measure.

"(C) PROVISION OF INFORMATION.—

"(i) IN GENERAL.—Not later than July 1 of each year, beginning in 2028, the pharmacy benefit manager shall submit to the PDP sponsor, and to the Secretary, a report, in accordance with this subparagraph, and shall make such report available to such sponsor at no cost to such sponsor in a format specified by the Secretary under paragraph (5). Each such report shall include, with respect to such PDP sponsor and each plan offered by such sponsor, the following information with respect to the previous plan year:

"(I) A list of all drugs covered by the plan that were dispensed including, with respect to each such drug—

"(aa) the brand name, generic or non-proprietary name, and National Drug Code;

"(bb) the number of plan enrollees for whom the drug was dispensed, the total number of prescription claims for the drug (including original prescriptions and refills, counted as separate claims), and the total number of dosage units of the drug dispensed;

"(cc) the number of prescription claims described in item (bb) by each type of dispensing channel through which the drug was dispensed, including retail, mail order, specialty pharmacy, long term care pharmacy, home infusion pharmacy, or other types of pharmacies or dispensers;

"(dd) the average wholesale acquisition cost, listed as cost per day's supply, cost per dosage unit, and cost per typical course of treatment (as applicable);

"(ee) the average wholesale price for the drug, listed as price per day's supply, price per dosage unit, and price per typical course of treatment (as applicable);

"(ff) the total out-of-pocket spending by plan enrollees on such drug after application of any benefits under the plan, including plan enrollee spending through copayments, coinsurance, and deductibles;

"(gg) total rebates paid by the manufacturer on the drug as reported under the Detailed DIR Report (or any successor report) submitted by such sponsor to the Centers for Medicare & Medicaid Services;

"(hh) all other direct or indirect remuneration on the drug as reported under the Detailed DIR Report (or any successor report) submitted by such sponsor to the Centers for Medicare & Medicaid Services;

"(ii) the average pharmacy reimbursement amount paid by the plan for the drug in the aggregate and disaggregated by dispensing channel identified in item (cc);

"(jj) the average National Average Drug Acquisition Cost (NADAC); and

"(kk) total manufacturer-derived revenue, inclusive of bona fide service fees, attributable to the drug and retained by the pharmacy benefit manager and any affiliate of such pharmacy benefit manager.

"(II) In the case of a pharmacy benefit manager that has an affiliate that is a retail, mail order, or specialty pharmacy, with respect to drugs covered by such plan that were dispensed, the following information:

"(aa) The percentage of total prescriptions that were dispensed by pharmacies that are an affiliate of the pharmacy benefit manager for each drug.

"(bb) The interquartile range of the total combined costs paid by the plan and plan enrollees, per dosage unit, per course of treatment, per 30-day supply, and per 90-day supply for each drug dispensed by pharmacies that are not an affiliate of the pharmacy benefit manager and that are included in the pharmacy network of such plan.

"(cc) The interquartile range of the total combined costs paid by the plan and plan enrollees, per dosage unit, per course of treatment, per 30-day supply, and per 90-day supply for each drug dispensed by pharmacies that are an affiliate of the pharmacy benefit manager and that are included in the pharmacy network of such plan.

"(dd) The lowest total combined cost paid by the plan and plan enrollees, per dosage

unit, per course of treatment, per 30-day supply, and per 90-day supply, for each drug that is available from any pharmacy included in the pharmacy network of such plan.

"(ee) The difference between the average acquisition cost of the affiliate, such as a pharmacy or other entity that acquires prescription drugs, that initially acquires the drug and the amount reported under subclause (I)(jj) for each drug.

"(ff) A list inclusive of the brand name, generic or non-proprietary name, and National Drug Code of covered part D drugs subject to an agreement with a covered entity under section 340B of the Public Health Service Act for which the pharmacy benefit manager or an affiliate of the pharmacy benefit manager had a contract or other arrangement with such a covered entity in the service area of such plan.

"(III) Where a drug approved under section 505(c) of the Federal Food, Drug, and Cosmetic Act (referred to in this subclause as the 'listed drug') is covered by the plan, the following information:

"(aa) A list of currently marketed generic drugs approved under section 505(j) of the Federal Food, Drug, and Cosmetic Act pursuant to an application that references such listed drug that are not covered by the plan, are covered on the same formulary tier or a formulary tier typically associated with higher cost-sharing than the listed drug, or are subject to utilization management that the listed drug is not subject to.

"(bb) The estimated average beneficiary cost-sharing under the plan for a 30-day supply of the listed drug.

"(cc) Where a generic drug listed under item (aa) is on a formulary tier typically associated with higher cost-sharing than the listed drug, the estimated average cost-sharing that a beneficiary would have paid for a 30-day supply of each of the generic drugs described in item (aa), had the plan provided coverage for such drugs on the same formulary tier as the listed drug.

"(dd) A written justification for providing more favorable coverage of the listed drug than the generic drugs described in item (aa).

"(ee) The number of currently marketed generic drugs approved under section 505(j) of the Federal Food, Drug, and Cosmetic Act pursuant to an application that references such listed drug.

H. R. 7148—503

"(IV) Where a reference product (as defined in section 351(i) of the Public Health Service Act) is covered by the plan, the following information:

"(aa) A list of currently marketed biosimilar biological products licensed under section 351(k) of the Public Health Service Act pursuant to an application that refers to such reference product that are not covered by the plan, are covered on the same formulary tier or a formulary tier typically associated with higher cost-sharing than the reference product, or are subject to utilization management that the reference product is not subject to.

"(bb) The estimated average beneficiary cost-sharing under the plan for a 30-day supply of the reference product.

"(cc) Where a biosimilar biological product listed under item (aa) is on a formulary tier typically associated with higher cost-sharing than the reference product, the estimated average cost-sharing that a beneficiary would have paid for a 30-day supply of each of the biosimilar biological products described in item (aa), had the plan provided coverage for such products on the same formulary tier as the reference product.

"(dd) A written justification for providing more favorable coverage of the reference product than the biosimilar biological products described in item (aa).

"(ee) The number of currently marketed biosimilar biological products licensed under section 351(k) of the Public Health Service Act, pursuant to an application that refers to such reference product.

"(V) Total gross spending on covered part D drugs by the plan, not net of rebates, fees, discounts, or other direct or indirect remuneration.

"(VI) The total amount retained by the pharmacy benefit manager or an affiliate of such pharmacy benefit manager in revenue related to utilization of covered part D drugs under that plan, inclusive of bona fide service fees.

"(VII) The total spending on covered part D drugs net of rebates, fees, discounts, or other direct and indirect remuneration by the plan.

"(VIII) An explanation of any benefit design parameters under such plan that encourage plan enrollees to fill prescriptions at pharmacies that are an affiliate of such pharmacy benefit manager, such as mail and specialty home delivery programs, and retail and mail auto-refill programs.

"(IX) The following information:

"(aa) A list of all brokers, consultants, advisors, and auditors that receive compensation from the pharmacy benefit manager or

H. R. 7148—504

an affiliate of such pharmacy benefit manager for referrals, consulting, auditing, or other services offered to PDP sponsors related to pharmacy benefit management services.

"(bb) The amount of compensation provided by such pharmacy benefit manager or affiliate to each such broker, consultant, advisor, and auditor.

"(cc) The methodology for calculating the amount of compensation provided by such pharmacy benefit manager or affiliate, for each such broker, consultant, advisor, and auditor.

"(X) A list of all affiliates of the pharmacy benefit manager.

"(XI) A summary document submitted in a standardized template developed by the Secretary that includes such information described in subclauses (I) through (X).

"(ii) WRITTEN EXPLANATION OF CONTRACTS OR AGREEMENTS WITH MANUFACTURERS.—

"(I) IN GENERAL.—The pharmacy benefit manager shall, not later than 30 days after the finalization of any contract or agreement between such pharmacy benefit manager or an affiliate of such pharmacy benefit manager and a manufacturer (or subsidiary, agent, or entity affiliated with such manufacturer) that makes rebates, discounts, payments, or other financial incentives related to one or more covered part D drugs or other prescription drugs, as applicable, of the manufacturer directly or indirectly contingent upon coverage, formulary placement, or utilization management conditions on any other covered part D drugs or other prescription drugs, as applicable, submit to the PDP sponsor a written explanation of such contract or agreement.

"(II) REQUIREMENTS.—A written explanation under subclause (I) shall—

"(aa) include the manufacturer subject to the contract or agreement, all covered part D drugs and other prescription drugs, as applicable, subject to the contract or agreement and the manufacturers of such drugs, and a high-level description of the terms of such contract or agreement and how such terms apply to such drugs; and

"(bb) be certified by the Chief Executive Officer, Chief Financial Officer, or General Counsel of such pharmacy benefit manager, or affiliate of such pharmacy benefit manager, as applicable, or an individual delegated with the authority to sign on behalf of one of these officers, who reports directly to the officer.

"(III) DEFINITION OF OTHER PRESCRIPTION DRUGS.—For purposes of this clause, the term 'other prescription drugs' means prescription drugs

covered as supplemental benefits under this part or prescription drugs paid outside of this part.

"(D) AUDIT RIGHTS.—

"(i) IN GENERAL.—Not less than once a year, at the request of the PDP sponsor, the pharmacy benefit manager shall allow for an audit of the pharmacy benefit manager to ensure compliance with all terms and conditions under the written agreement described in this paragraph and the accuracy of information reported under subparagraph (C).

"(ii) AUDITOR.—The PDP sponsor shall have the right to select an auditor. The pharmacy benefit manager shall not impose any limitations on the selection of such auditor.

"(iii) PROVISION OF INFORMATION.—The pharmacy benefit manager shall make available to such auditor all records, data, contracts, and other information necessary to confirm the accuracy of information reported under subparagraph (C), subject to reasonable restrictions on how such information must be reported to prevent redisclosure of such information.

"(iv) TIMING.—The pharmacy benefit manager must provide information under clause (iii) and other information, data, and records relevant to the audit to such auditor within 6 months of the initiation of the audit and respond to requests for additional information from such auditor within 30 days after the request for additional information.

"(v) INFORMATION FROM AFFILIATES.—The pharmacy benefit manager shall be responsible for providing to such auditor information required to be reported under subparagraph (C) or under clause (iii) of this subparagraph that is owned or held by an affiliate of such pharmacy benefit manager.

"(2) ENFORCEMENT.—

"(A) IN GENERAL.—Each PDP sponsor shall—

"(i) disgorge to the Secretary any amounts disgorged to the PDP sponsor by a pharmacy benefit manager under paragraph (1)(A)(v);

"(ii) require, in a written agreement with any pharmacy benefit manager acting on behalf of such sponsor or affiliate of such pharmacy benefit manager, that such pharmacy benefit manager or affiliate reimburse the PDP sponsor for any civil money penalty imposed on the PDP sponsor as a result of the failure of the pharmacy benefit manager or affiliate to meet the requirements of paragraph (1) that are applicable to the pharmacy benefit manager or affiliate under the agreement; and

"(iii) require, in a written agreement with any such pharmacy benefit manager acting on behalf of such sponsor or affiliate of such pharmacy benefit manager, that such pharmacy benefit manager or affiliate be subject to punitive remedies for breach of contract for failure to comply with the requirements applicable under paragraph (1).

H. R. 7148—506

"(B) REPORTING OF ALLEGED VIOLATIONS.—The Secretary shall make available and maintain a mechanism for manufacturers, PDP sponsors, pharmacies, and other entities that have contractual relationships with pharmacy benefit managers or affiliates of such pharmacy benefit managers to report, on a confidential basis, alleged violations of paragraph (1)(A) or subparagraph (C).

"(C) ANTI-RETALIATION AND ANTI-COERCION.—Consistent with applicable Federal or State law, a PDP sponsor shall not—

"(i) retaliate against an individual or entity for reporting an alleged violation under subparagraph (B); or

"(ii) coerce, intimidate, threaten, or interfere with the ability of an individual or entity to report any such alleged violations.

"(3) CERTIFICATION OF COMPLIANCE.—

"(A) IN GENERAL.—Each PDP sponsor shall furnish to the Secretary (at a time and in a manner specified by the Secretary) an annual certification of compliance with this subsection, as well as such information as the Secretary determines necessary to carry out this subsection.

"(B) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary may implement this paragraph by program instruction or otherwise.

"(4) RULE OF CONSTRUCTION.—Nothing in this subsection shall be construed as—

"(A) prohibiting flat dispensing fees or reimbursement or payment for ingredient costs (including customary, industry-standard discounts directly related to drug acquisition that are retained by pharmacies or wholesalers) to entities that acquire or dispense prescription drugs; or

"(B) modifying regulatory requirements or sub-regulatory program instruction or guidance related to pharmacy payment, reimbursement, or dispensing fees.

"(5) STANDARD FORMATS.—

"(A) IN GENERAL.—Not later than June 1, 2027, the Secretary shall specify standard, machine-readable formats for pharmacy benefit managers to submit annual reports required under paragraph (1)(C)(i).

"(B) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary may implement this paragraph by program instruction or otherwise.

"(6) CONFIDENTIALITY.—

"(A) IN GENERAL.—Information disclosed by a pharmacy benefit manager, an affiliate of a pharmacy benefit manager, a PDP sponsor, or a pharmacy under this subsection that is not otherwise publicly available or available for purchase shall not be disclosed by the Secretary or a PDP sponsor receiving the information, except that the Secretary may disclose the information for the following purposes:

"(i) As the Secretary determines necessary to carry out this part.

"(ii) To permit the Comptroller General to review the information provided.

"(iii) To permit the Director of the Congressional Budget Office to review the information provided.

"(iv) To permit the Executive Director of the Medicare Payment Advisory Commission to review the information provided.

"(v) To the Attorney General for the purposes of conducting oversight and enforcement under this title.

"(vi) To the Inspector General of the Department of Health and Human Services in accordance with its authorities under the Inspector General Act of 1978 (section 406 of title 5, United States Code), and other applicable statutes.

"(B) RESTRICTION ON USE OF INFORMATION.—The Secretary, the Comptroller General, the Director of the Congressional Budget Office, and the Executive Director of the Medicare Payment Advisory Commission shall not report on or disclose information disclosed pursuant to subparagraph (A) to the public in a manner that would identify—

"(i) a specific pharmacy benefit manager, affiliate, pharmacy, manufacturer, wholesaler, PDP sponsor, or plan; or

"(ii) contract prices, rebates, discounts, or other remuneration for specific drugs in a manner that may allow the identification of specific contracting parties or of such specific drugs.

"(7) DEFINITIONS.—For purposes of this subsection:

"(A) AFFILIATE.—The term 'affiliate' means, with respect to any pharmacy benefit manager or PDP sponsor, any entity that, directly or indirectly—

"(i) owns or is owned by, controls or is controlled by, or is otherwise related in any ownership structure to such pharmacy benefit manager or PDP sponsor; or

"(ii) acts as a contractor, principal, or agent to such pharmacy benefit manager or PDP sponsor, insofar as such contractor, principal, or agent performs any of the functions described under subparagraph (C).

"(B) BONA FIDE SERVICE FEE.—The term 'bona fide service fee' means a fee that is reflective of the fair market value (as specified by the Secretary, through notice and comment rulemaking) for a bona fide, itemized service actually performed on behalf of an entity, that the entity would otherwise perform (or contract for) in the absence of the service arrangement and that is not passed on in whole or in part to a client or customer, whether or not the entity takes title to the drug. Such fee must be a flat dollar amount and shall not be directly or indirectly based on, or contingent upon—

"(i) drug price, such as wholesale acquisition cost or drug benchmark price (such as average wholesale price);

"(ii) the amount of discounts, rebates, fees, or other direct or indirect remuneration with respect to covered part D drugs dispensed to enrollees in a prescription

H. R. 7148—508

drug plan, except as permitted pursuant to paragraph (1)(A)(ii);

"(iii) coverage or formulary placement decisions or the volume or value of any referrals or business generated between the parties to the arrangement; or

"(iv) any other amounts or methodologies prohibited by the Secretary.

"(C) PHARMACY BENEFIT MANAGER.—The term 'pharmacy benefit manager' means any person or entity that, either directly or through an intermediary, acts as a price negotiator or group purchaser on behalf of a PDP sponsor or prescription drug plan, or manages the prescription drug benefits provided by such sponsor or plan, including the processing and payment of claims for prescription drugs, the performance of drug utilization review, the processing of drug prior authorization requests, the adjudication of appeals or grievances related to the prescription drug benefit, contracting with network pharmacies, controlling the cost of covered part D drugs, or the provision of related services. Such term includes any person or entity that carries out one or more of the activities described in the preceding sentence, irrespective of whether such person or entity calls itself a 'pharmacy benefit manager'.".

(2) MA–PD PLANS.—Section 1857(f)(3) of the Social Security Act (42 U.S.C. 1395w–27(f)(3)), as amended by section 6223(d)(2), is amended by adding at the end the following new subparagraph:

"(G) REQUIREMENTS RELATING TO PHARMACY BENEFIT MANAGERS.—For plan years beginning on or after January 1, 2028, section 1860D–12(h).".

(3) NONAPPLICATION OF PAPERWORK REDUCTION ACT.— Chapter 35 of title 44, United States Code, shall not apply to the implementation of this subsection.

(4) FUNDING.—

(A) SECRETARY.—In addition to amounts otherwise available, there is appropriated to the Centers for Medicare & Medicaid Services Program Management Account, out of any money in the Treasury not otherwise appropriated, $113,000,000 for fiscal year 2026, to remain available until expended, to carry out this subsection.

(B) OIG.—In addition to amounts otherwise available, there is appropriated to the Inspector General of the Department of Health and Human Services, out of any money in the Treasury not otherwise appropriated, $20,000,000 for fiscal year 2026, to remain available until expended, to carry out this subsection.

(b) GAO STUDY AND REPORT ON PRICE-RELATED COMPENSATION ACROSS THE SUPPLY CHAIN.—

(1) STUDY.—The Comptroller General of the United States (in this subsection referred to as the "Comptroller General") shall conduct a study describing the use of compensation and payment structures related to a prescription drug's price within the retail prescription drug supply chain in part D of title XVIII of the Social Security Act (42 U.S.C. 1395w–101 et seq.). Such study shall summarize information from Federal agencies

H. R. 7148—509

and industry experts, to the extent available, with respect to the following:

(A) The type, magnitude, other features (such as the pricing benchmarks used), and prevalence of compensation and payment structures related to a prescription drug's price, such as calculating fee amounts as a percentage of a prescription drug's price, between intermediaries in the prescription drug supply chain, including—

(i) pharmacy benefit managers;

(ii) PDP sponsors offering prescription drug plans and Medicare Advantage organizations offering MA–PD plans;

(iii) drug wholesalers;

(iv) pharmacies;

(v) manufacturers;

(vi) pharmacy services administrative organizations;

(vii) brokers, auditors, consultants, and other entities that—

(I) advise PDP sponsors offering prescription drug plans and Medicare Advantage organizations offering MA–PD plans regarding pharmacy benefits; or

(II) review PDP sponsor and Medicare Advantage organization contracts with pharmacy benefit managers; and

(viii) other service providers that contract with any of the entities described in clauses (i) through (vii) that may use price-related compensation and payment structures, such as rebate aggregators (or other entities that negotiate or process price concessions on behalf of pharmacy benefit managers, plan sponsors, or pharmacies).

(B) The primary business models and compensation structures for each category of intermediary described in subparagraph (A).

(C) Variation in price-related compensation structures between affiliated entities (such as entities with common ownership, either full or partial, and subsidiary relationships) and unaffiliated entities.

(D) Potential conflicts of interest among contracting entities related to the use of prescription drug price-related compensation structures, such as the potential for fees or other payments set as a percentage of a prescription drug's price to advantage formulary selection, distribution, or purchasing of prescription drugs with higher prices.

(E) Notable differences, if any, in the use and level of price-based compensation structures over time and between different market segments, such as under part D of title XVIII of the Social Security Act (42 U.S.C. 1395w–101 et seq.) and the Medicaid program under title XIX of such Act (42 U.S.C. 1396 et seq.).

(F) The effects of drug price-related compensation structures and alternative compensation structures on Federal health care programs and program beneficiaries, including with respect to cost-sharing, premiums, Federal

H. R. 7148—510

outlays, biosimilar and generic drug adoption and utilization, drug shortage risks, and the potential for fees set as a percentage of a drug's price to advantage the formulary selection, distribution, or purchasing of drugs with higher prices.

(G) Other issues determined to be relevant and appropriate by the Comptroller General.

(2) REPORT.—Not later than 2 years after the date of enactment of this section, the Comptroller General shall submit to Congress a report containing the results of the study conducted under paragraph (1), together with recommendations for such legislation and administrative action as the Comptroller General determines appropriate.

(c) MEDPAC REPORTS ON AGREEMENTS WITH PHARMACY BENEFIT MANAGERS WITH RESPECT TO PRESCRIPTION DRUG PLANS AND MA–PD PLANS.—

(1) IN GENERAL.—The Medicare Payment Advisory Commission shall submit to Congress the following reports:

(A) INITIAL REPORT.—Not later than the first March 15 occurring after the date that is 2 years after the date on which the Secretary makes the data available to the Commission, a report regarding agreements with pharmacy benefit managers with respect to prescription drug plans and MA–PD plans. Such report shall include, to the extent practicable—

(i) a description of trends and patterns, including relevant averages, totals, and other figures for the types of information submitted;

(ii) an analysis of any differences in agreements and their effects on plan enrollee out-of-pocket spending and average pharmacy reimbursement, and other impacts; and

(iii) any recommendations the Commission determines appropriate.

(B) FINAL REPORT.—Not later than 2 years after the date on which the Commission submits the initial report under subparagraph (A), a report describing any changes with respect to the information described in subparagraph (A) over time, together with any recommendations the Commission determines appropriate.

(2) FUNDING.—In addition to amounts otherwise available, there is appropriated to the Medicare Payment Advisory Commission, out of any money in the Treasury not otherwise appropriated, $1,000,000 for fiscal year 2026, to remain available until expended, to carry out this subsection.

**SEC. 6225. REQUIRING A SEPARATE IDENTIFICATION NUMBER AND AN ATTESTATION FOR EACH OFF-CAMPUS OUTPATIENT DEPARTMENT OF A PROVIDER.**

(a) IN GENERAL.—Section 1833(t) of the Social Security Act (42 U.S.C. 1395l(t)) is amended by adding at the end the following new paragraph:

"(23) USE OF UNIQUE HEALTH IDENTIFIERS; ATTESTATION.—

"(A) IN GENERAL.—No payment may be made under this subsection (or under an applicable payment system

H. R. 7148—511

pursuant to paragraph (21)) for items and services furnished on or after January 1, 2028, by an off-campus outpatient department of a provider (as defined in subparagraph (C)) unless—

"(i) such department has obtained, and such items and services are billed under, a National Provider Identifier that is separate from such identifier for such provider;

"(ii) such provider has submitted to the Secretary, during the 2-year period ending on the date such items and services are so furnished, an initial provider-based status attestation that such department is compliant with the requirements described in section 413.65 of title 42, Code of Federal Regulations (or a successor regulation), which, until the Secretary establishes the process described in subparagraph (B), may include an attestation submitted in accordance with paragraph (b)(3) of such section (as in effect on the date of enactment of this paragraph); and

"(iii) after such provider has submitted an attestation under clause (ii), such provider has submitted a subsequent attestation within the timeframe specified by the Secretary.

"(B) PROCESS FOR SUBMISSION AND REVIEW.—

"(i) IN GENERAL.—The Secretary shall, through notice and comment rulemaking, establish a process for each provider with an off-campus outpatient department of a provider to submit an initial and subsequent attestation pursuant to clauses (ii) and (iii), respectively, of subparagraph (A), and for the Secretary to review each such attestation and determine, through site visits, remote audits, or other means (as determined appropriate by the Secretary), whether such department is compliant with the requirements described in such subparagraph.

"(ii) FUNDING.—In addition to amounts otherwise available, there is appropriated to the Centers for Medicare & Medicaid Services Program Management Account for fiscal year 2026, out of any amounts in the Treasury not otherwise appropriated, $20,000,000, to remain available until expended, for purposes of carrying out this subparagraph.

"(C) OFF-CAMPUS OUTPATIENT DEPARTMENT OF A PROVIDER DEFINED.—For purposes of this paragraph, the term 'off-campus outpatient department of a provider' means a department of a provider (as defined in section 413.65 of title 42, Code of Federal Regulations, or any successor regulation) that is not located—

"(i) on the campus (as defined in such section) of such provider; or

"(ii) within the distance (described in such definition of campus) from a remote location of a hospital facility (as defined in such section).".

(b) HHS OIG ANALYSIS.—Not later than January 1, 2030, the Inspector General of the Department of Health and Human Services shall submit to Congress—

H. R. 7148—512

(1) an analysis of the process established by the Secretary of Health and Human Services to conduct the reviews and determinations described in section 1833(t)(23)(B) of the Social Security Act, as added by subsection (a) of this section; and

(2) recommendations based on such analysis, as the Inspector General determines appropriate.

**SEC. 6226. REVISING PHASE-IN OF MEDICARE CLINICAL LABORATORY TEST PAYMENT CHANGES.**

(a) REVISED PHASE-IN OF REDUCTIONS FROM PRIVATE PAYOR RATE IMPLEMENTATION.—Section 1834A(b)(3) of the Social Security Act (42 U.S.C. 1395m–1(b)(3)) is amended—

(1) in subparagraph (A), by striking "2028" and inserting "2029"; and

(2) in subparagraph (B)—

(A) in clause (ii), by striking "2025 and for the period beginning on January 1, 2026, and ending on January 30, 2026" and inserting "2026"; and

(B) in clause (iii), by striking "the period beginning on January 31, 2026, and ending on December 31, 2026, and for each of 2027 and 2028" and inserting "each of 2027 through 2029".

(b) REVISED DATA COLLECTION PERIOD FOR REPORTING OF PRIVATE SECTOR PAYMENT RATES FOR ESTABLISHMENT OF MEDICARE PAYMENT RATES.—Section 1834A(a)(4)(B) of the Social Security Act (42 U.S.C. 1395m–1(a)(4)(B)) is amended by striking "2019" each place it appears and inserting "2025" in each such place.

(c) REVISED REPORTING PERIOD FOR REPORTING OF PRIVATE SECTOR PAYMENT RATES FOR ESTABLISHMENT OF MEDICARE PAYMENT RATES.—Section 1834A(a)(1)(B) of the Social Security Act (42 U.S.C. 1395m–1(a)(1)(B)) is amended—

(1) in clause (i), by striking "January 31" and inserting "April 30"; and

(2) in clause (ii), by striking "February 1, 2026, and ending April 30, 2026" and inserting "May 1, 2026, and ending July 31, 2026".

(d) IMPLEMENTATION.—Notwithstanding any other provision of law, the Secretary of Health and Human Services may implement the amendments made by this section by program instruction or otherwise.

**SEC. 6227. MEDICARE SEQUESTRATION.**

Section 251A(6) of the Balanced Budget and Emergency Deficit Control Act of 1985 (2 U.S.C. 901a(6)) is amended—

(1) in subparagraph (D), by striking "such that," and all that follows and inserting "such that the payment reduction shall be 2.0 percent for such fiscal year."; and

(2) by adding at the end the following:

"(F) On the date on which the President submits the budget under section 1105 of title 31, United States Code, for fiscal year 2033, the President shall order a sequestration of payments for the Medicare programs specified in section 256(d), effective upon issuance, such that, notwithstanding the 2 percent limit specified in subparagraph (A) for such payments—

"(i) with respect to the first 5 months in which such order is effective for such fiscal year, the payment reduction shall be 2.0 percent; and

"(ii) with respect to the last 7 months in which such order is effective for such fiscal year, the payment reduction shall be 0 percent.".

**SEC. 6228. MEDICARE IMPROVEMENT FUND.**

Section 1898(b)(1) of the Social Security Act (42 U.S.C. 1395iii(b)(1)) is amended by striking "$1,403,000,000" and inserting "$2,062,000,000".

# TITLE III—HUMAN SERVICES

**SEC. 6301. SEXUAL RISK AVOIDANCE EDUCATION EXTENSION.**

Section 510 of the Social Security Act (42 U.S.C. 710) is amended—

(1) in subsection (a)—

(A) in paragraph (1)—

(i) by striking "2025, and for the period beginning on October 1, 2025, and ending on January 30, 2026" and inserting "2026, and for the period beginning on October 1, 2026, and ending on December 31, 2026"; and

(ii) by striking "fiscal year 2026" and inserting "fiscal year 2027"; and

(B) in paragraph (2)—

(i) in subparagraph (A)—

(I) by striking "through 2025" and inserting "through 2026"; and

(II) by striking "fiscal year 2026" each place it appears and inserting "fiscal year 2027"; and

(ii) in subparagraph (B)(i), by striking "2026" and inserting "2027"; and

(2) in subsection (f)(1) by striking "2025, and for the period beginning on October 1, 2025, and ending on January 30, 2026, an amount equal to the pro rata portion of the amount appropriated for the corresponding period for fiscal year 2025" and inserting "2026, and for the period beginning on October 1, 2026, and ending on December 31, 2026, an amount equal to the pro rata portion of the amount appropriated for the corresponding period for fiscal year 2026".

**SEC. 6302. PERSONAL RESPONSIBILITY EDUCATION EXTENSION.**

Section 513 of the Social Security Act (42 U.S.C. 713) is amended—

(1) in subsection (a)(1)—

(A) in subparagraph (A), in the matter preceding clause (i), by striking "2025, and for the period beginning on October 1, 2025, and ending on January 30, 2026" and inserting "2026, and for the period beginning on October 1, 2026, and ending on December 31, 2026"; and

(B) in subparagraph (B)(i), by striking "fiscal years 2024 and 2025, and for the period beginning on October 1, 2025, and ending on January 30, 2026" and inserting "fiscal years 2025 and 2026, and for the period beginning on October 1, 2026, and ending on December 31, 2026";

(2) in subsection (c)(3), by striking "2026" and inserting "2027"; and

H. R. 7148—514

(3) in subsection (f), by striking "2025, and for the period beginning on October 1, 2025, and ending on January 30, 2026, an amount equal to the pro rata portion of the amount appropriated for the corresponding period for fiscal year 2025" and inserting "2026, and for the period beginning on October 1, 2026, and ending on December 31, 2026, an amount equal to the pro rata portion of the amount appropriated for the corresponding period for fiscal year 2026".

**SEC. 6303. EXTENSION OF FUNDING FOR FAMILY-TO-FAMILY HEALTH INFORMATION CENTERS.**

Section 501(c)(1)(A) of the Social Security Act (42 U.S.C. 701(c)(1)(A)) is amended—

(1) in clause (viii), by striking "for fiscal year 2025" and inserting "for each of fiscal years 2025 and 2026"; and

(2) in clause (ix), by striking "October 1, 2025, and ending on January 30, 2026, an amount equal to the pro rata portion of the amount appropriated for fiscal year 2025" and inserting "October 1, 2026, and ending on December 31, 2026, an amount equal to the pro rata portion of the amount appropriated for fiscal year 2026".

**SEC. 6304. EXTENSION OF THE TEMPORARY ASSISTANCE FOR NEEDY FAMILIES PROGRAM.**

Activities authorized by part A of title IV of the Social Security Act (other than under section 403(c) or 418 of such Act) and section 1108(b) of the Social Security Act shall continue through December 31, 2026, in the manner authorized for fiscal year 2025, and out of any money in the Treasury of the United States not otherwise appropriated, there are hereby appropriated such sums as may be necessary for such purpose.

# TITLE IV—PUBLIC HEALTH AND OTHER EXTENDERS

## Subtitle A—Extensions

**SEC. 6401. EXTENSION FOR COMMUNITY HEALTH CENTERS, NATIONAL HEALTH SERVICE CORPS, AND TEACHING HEALTH CENTERS THAT OPERATE GME PROGRAMS.**

(a) EXTENSION FOR COMMUNITY HEALTH CENTERS.—Section 10503(b)(1) of the Patient Protection and Affordable Care Act (42 U.S.C. 254b–2(b)(1)) is amended by striking subparagraphs (H), (I), (J), and (K) and inserting the following:

"(H) $4,236,712,328 for fiscal year 2024;

"(I) $4,295,287,671 for fiscal year 2025;

"(J) $4,600,000,000 for fiscal year 2026; and

"(K) $1,159,452,055 for the period beginning on October 1, 2026, and ending on December 31, 2026; and".

(b) EXTENSION FOR THE NATIONAL HEALTH SERVICE CORPS.—Section 10503(b)(2) of the Patient Protection and Affordable Care Act (42 U.S.C. 254b–2(b)(2)) is amended by striking subparagraphs (I), (J), (K), and (L) and inserting the following:

"(I) $341,208,605 for fiscal year 2024;

"(J) $349,736,600 for fiscal year 2025;

"(K) $350,000,000 for fiscal year 2026; and

H. R. 7148—515

"(L) $88,219,178 for the period beginning on October 1, 2026, and ending on December 31, 2026.".

(c) TEACHING HEALTH CENTERS THAT OPERATE GRADUATE MEDICAL EDUCATION PROGRAMS.—Section 340H(g)(1) of the Public Health Service Act (42 U.S.C. 256h(g)(1)) is amended by striking subparagraphs (D), (E), (F), and (G) and inserting the following:
"

"(D) $168,915,878 for fiscal year 2024;
"(E) $181,563,574 for fiscal year 2025;
"(F) $225,000,000 for fiscal year 2026;
"(G) $250,000,000 for fiscal year 2027;
"(H) $275,000,000 for fiscal year 2028; and
"(I) $300,000,000 for fiscal year 2029.".

(d) APPLICATION OF PROVISIONS.—Amounts appropriated pursuant to the amendments made by this section shall be subject to the requirements contained in Public Law 118–47 for funds for programs authorized under sections 330 through 340 of the Public Health Service Act (42 U.S.C. 254b et seq.).

(e) CONFORMING AMENDMENTS.—Section 3014(h)(4) of title 18, United States Code, is amended by striking "and section 6101(d) of the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026" and inserting "section 6101(d) of the Continuing Appropriations, Agriculture, Legislative Branch, Military Construction and Veterans Affairs, and Extensions Act, 2026, and section 6401(d) of the Consolidated Appropriations Act, 2026".

SEC. 6402. EXTENSION OF SPECIAL DIABETES PROGRAMS.

(a) EXTENSION OF SPECIAL DIABETES PROGRAMS FOR TYPE I DIABETES.—Section 330B(b)(2) of the Public Health Service Act (42 U.S.C. 254c–2(b)(2)) is amended by striking subparagraphs (E), (F), (G), and (H) and inserting the following:
"(E) $155,619,196 for fiscal year 2024, to remain available until expended;
"(F) $159,228,188 for fiscal year 2025, to remain available until expended;
"(G) $200,000,000 for fiscal year 2026, to remain available until expended; and
"(H) $50,410,959 for the period beginning on October 1, 2026, and ending on December 31, 2026, to remain available until expended.".

(b) EXTENDING FUNDING FOR SPECIAL DIABETES PROGRAMS FOR INDIANS.—Section 330C(c)(2) of the Public Health Service Act (42 U.S.C. 254c–3(c)(2)) is amended by striking subparagraphs (E), (F), (G), and (H) and inserting the following:
"(E) $155,619,196 for fiscal year 2024, to remain available until expended;
"(F) $159,228,188 for fiscal year 2025, to remain available until expended;
"(G) $200,000,000 for fiscal year 2026, to remain available until expended; and
"(H) $50,410,959 for the period beginning on October 1, 2026, and ending on December 31, 2026, to remain available until expended.".

**SEC. 6403. EXTENSION OF NATIONAL HEALTH SECURITY PROGRAMS.**

(a) Section 319(e)(8) of the Public Health Service Act (42 U.S.C. 247d(e)(8)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

(b) Section 319L(e)(1)(D) of the Public Health Service Act (42 U.S.C. 247d–7e(e)(1)(D)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

(c) Section 319L–1(b) of the Public Health Service Act (42 U.S.C. 247d–7f(b)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

(d) Section 2811A(g) of the Public Health Service Act (42 U.S.C. 300hh–10b(g)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

(e) Section 2811B(g)(1) of the Public Health Service Act (42 U.S.C. 300hh–10c(g)(1)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

(f) Section 2811C(g)(1) of the Public Health Service Act (42 U.S.C. 300hh–10d(g)(1)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

(g) Section 2812(c)(4)(B) of the Public Health Service Act (42 U.S.C. 300hh–11(c)(4)(B)) is amended by striking "January 30, 2026" and inserting "December 31, 2026".

**SEC. 6404. NO SURPRISES ACT IMPLEMENTATION.**

Section 118(a) of division BB of the Consolidated Appropriations Act, 2021 (Public Law 116–260) is amended—

(1) in paragraph (1), by striking "January 30, 2026" and inserting "December 31, 2026"; and

(2) in paragraph (2)—

(A) by striking "$14,000,000" and inserting "$42,100,000"; and

(B) by striking "January 30, 2026" and inserting "December 31, 2026".

# Subtitle B—World Trade Center Health Program

**SEC. 6411. 9/11 RESPONDER AND SURVIVOR HEALTH FUNDING CORRECTIONS.**

(a) IN GENERAL.—Section 3351(a)(2)(A) of the Public Health Service Act (42 U.S.C. 300mm–61(a)(2)(A)) is amended—

(1) in clause (x), by striking "; and" and inserting a semicolon;

(2) by redesignating clause (xi) as clause (xii); and

(3) by inserting after clause (x), the following:

"(xi) for each of fiscal years 2026 through 2040—

"(I) the amount determined under this subparagraph for the previous fiscal year multiplied by 1.07; multiplied by

"(II) the ratio of—

"(aa) the total number of individuals enrolled in the WTC Program on July 1 of such previous fiscal year; to

"(bb) the total number of individuals so enrolled on July 1 of the fiscal year prior to such previous fiscal year; and".

(b) REPORT TO CONGRESS.—

(1) IN GENERAL.—Not later than 3 years after the date of enactment of this Act, the Secretary of Health and Human Services (referred to in this subsection as the "Secretary") shall conduct an assessment of anticipated budget authority and outlays of the World Trade Center Health Program (referred to in this subsection as the "Program") through the duration of the Program and submit a report summarizing such assessment to—

(A) the Speaker and minority leader of the House of Representatives;

(B) the majority and minority leaders of the Senate;

(C) the Committee on Health, Education, Labor, and Pensions and the Committee on the Budget of the Senate; and

(D) the Committee on Energy and Commerce and the Committee on the Budget of the House of Representatives.

(2) INCLUSIONS.—The report required under paragraph (1) shall include—

(A) a projection of Program budgetary needs on a per-fiscal year basis through fiscal year 2090;

(B) a review of Program modeling for each of fiscal years 2017 through the fiscal year prior to the fiscal year in which the report is issued to assess how anticipated budgetary needs compared to actual expenditures;

(C) an assessment of the projected budget authority and expenditures of the Program through fiscal year 2090 by comparing—

(i) such projected authority and expenditures resulting from application of section 3351(a)(2)(A) of the Public Health Service Act (42 U.S.C. 300mm–61(a)(2)(A)), as amended by subsection (a); and

(ii) such projected authority and expenditures that would result if such section were amended so that the formula under clause (xi) of such section, as amended by subsection (a), were to be extended through fiscal year 2090; and

(D) any recommendations of the Secretary to make changes to the formula under such section 3351(a)(2)(A), as so amended, to fully offset anticipated Program expenditures through fiscal year 2090.

(c) TECHNICAL AMENDMENTS.—Title XXXIII of the Public Health Service Act (42 U.S.C. 300mm et seq.) is amended—

(1) in section 3352(d) (42 U.S.C. 300mm–62(d)), by striking "Any amounts" and inserting "Any unobligated amounts";

(2) in section 3353(d) (42 U.S.C. 300mm–63(d)), by striking "Any amounts" and inserting "Any unobligated amounts"; and

(3) in section 3354(d) (42 U.S.C. 300mm–64(d)), by striking "Any amounts" and inserting "Any unobligated amounts".

# TITLE V—PUBLIC HEALTH PROGRAMS

### SEC. 6501. PREVENTING MATERNAL DEATHS.

(a) MATERNAL MORTALITY REVIEW COMMITTEES.—Section 317K(d) of the Public Health Service Act (42 U.S.C. 247b–12(d)) is amended—

H. R. 7148—518

(1) in paragraph (1)(A), by inserting "(including obstetricians and gynecologists)" after "clinical specialties"; and

(2) in paragraph (3)(A)(i)—

(A) in subclause (I), by striking "as applicable" and inserting "if available"; and

(B) in subclause (III), by striking ", as appropriate" and inserting "and coordinating with individuals responsible for certifying deaths to improve the collection and quality of death record reports, including by amending errors and missing or incomplete information to cause-of-death information on a death certificate, as appropriate".

(b) MATERNAL MORTALITY.—Section 317K of the Public Health Service Act (42 U.S.C. 247b–12) is amended—

(1) by redesignating subsections (e) and (f) as subsections (f) and (g), respectively; and

(2) by inserting after subsection (d) the following:

"(e) BEST PRACTICES RELATING TO THE PREVENTION OF MATERNAL MORTALITY.—

"(1) IN GENERAL.—The Secretary, acting through the Director of the Centers for Disease Control and Prevention, shall, in consultation with the Administrator of the Health Resources and Services Administration, identify and disseminate to health care providers, relevant professional societies, and perinatal quality collaboratives, best practices related to preventing maternal morbidity and mortality, taking into consideration any relevant findings from other Federal maternal health programs.

"(2) FREQUENCY.—The Secretary, acting through the Director of the Centers for Disease Control and Prevention, shall disseminate the best practices referred to in paragraph (1) not less than once per fiscal year.".

(c) AUTHORIZATION OF APPROPRIATIONS.—Subsection (g) of section 317K of the Public Health Service Act (42 U.S.C. 247b–12), as redesignated by subsection (b)(1), is amended by striking "$58,000,000 for each of fiscal years 2019 through 2023" and inserting "$100,000,000 for each of fiscal years 2026 through 2030".

**SEC. 6502. ORGAN PROCUREMENT AND TRANSPLANTATION NETWORK.**

Section 372 of the Public Health Service Act (42 U.S.C. 274) is amended—

(1) in subsection (b)(2)—

(A) by moving the margins of subparagraphs (M) through (O) 2 ems to the left;

(B) in subparagraph (A)—

(i) in clause (i), by striking ", and" and inserting "; and"; and

(ii) in clause (ii), by striking the comma at the end and inserting a semicolon;

(C) in subparagraph (C), by striking "twenty-four-hour telephone service" and inserting "24-hour telephone or information technology service";

(D) in each of subparagraphs (B) through (M), by striking the comma at the end and inserting a semicolon;

(E) in subparagraph (N), by striking "transportation, and" and inserting "transportation;";

(F) in subparagraph (O), by striking the period and inserting a semicolon; and

H. R. 7148—519

(G) by adding at the end the following:

"(P) encourage the integration of electronic health records systems through application programming interfaces (or successor technologies) among hospitals, organ procurement organizations, and transplant centers, including the use of automated electronic hospital referrals and the grant of remote, electronic access to hospital electronic health records of potential donors by organ procurement organizations, in a manner that complies with the privacy regulations promulgated under the Health Insurance Portability and Accountability Act of 1996, at part 160 of title 45, Code of Federal Regulations, and subparts A, C, and E of part 164 of such title (or any successor regulations); and

"(Q) consider establishing a dashboard to display the number of transplants performed, the types of transplants performed, the number and types of organs that entered the Organ Procurement and Transplantation Network system and failed to be transplanted, and other appropriate statistics, which should be updated more frequently than annually."; and

(2) by adding at the end the following:

"(d) REGISTRATION FEES.—

"(1) IN GENERAL.—The Secretary may collect registration fees from any member of the Organ Procurement and Transplantation Network for each transplant candidate such member places on the list described in subsection (b)(2)(A)(i). Such registration fees shall be collected and distributed only to support the operation of the Organ Procurement and Transplantation Network. Such registration fees are authorized to remain available until expended.

"(2) COLLECTION.—The Secretary may collect the registration fees under paragraph (1) directly or through awards made under subsection (b)(1)(A).

"(3) DISTRIBUTION.—Any amounts collected under this subsection shall—

"(A) be credited to the currently applicable appropriation, account, or fund of the Department of Health and Human Services as discretionary offsetting collections; and

"(B) be available, only to the extent and in the amounts provided in advance in appropriations Acts, to distribute such fees among awardees described in subsection (b)(1)(A).

"(4) TRANSPARENCY.—The Secretary shall—

"(A) promptly post on the website of the Organ Procurement and Transplantation Network—

"(i) the amount of registration fees collected under this subsection from each member of the Organ Procurement and Transplantation Network; and

"(ii) a list of activities such fees are used to support; and

"(B) update the information posted pursuant to subparagraph (A), as applicable for each calendar quarter for which fees are collected under paragraph (1).

"(5) GAO REVIEW.—Not later than 2 years after the date of enactment of this subsection, the Comptroller General of the United States shall, to the extent data are available—

"(A) conduct a review concerning the activities under this subsection; and

H. R. 7148—520

"(B) submit to the Committee on Health, Education, Labor, and Pensions and the Committee on Finance of the Senate and the Committee on Energy and Commerce of the House of Representatives, a report on such review, including related recommendations, as applicable.

"(6) SUNSET.—The authority to collect registration fees under paragraph (1) shall expire on the date that is 3 years after the date of enactment of the Consolidated Appropriations Act, 2026.".

### SEC. 6503. HONOR OUR LIVING DONORS.

(a) NO CONSIDERATION OF INCOME OF ORGAN RECIPIENT.—Section 377 of the Public Health Service Act (42 U.S.C. 274f) is amended—

(1) by redesignating subsections (c) through (f) as subsections (d) through (g), respectively;

(2) by inserting after subsection (b) the following:

"(c) NO CONSIDERATION OF INCOME OF ORGAN RECIPIENT.—The recipient of a grant under this section, in providing reimbursement to a donating individual through such grant, shall not give any consideration to the income of the organ recipient."; and

(3) in subsection (f), as so redesignated—

(A) in paragraph (1), by striking "subsection (c)(1)" and inserting "subsection (d)(1)"; and

(B) in paragraph (2), by striking "subsection (c)(2)" and inserting "subsection (d)(2)".

(b) REMOVAL OF EXPECTATION OF PAYMENTS BY ORGAN RECIPIENTS.—Section 377(e) of the Public Health Service Act (42 U.S.C. 274f(e)), as redesignated by subsection (a)(1), is amended—

(1) in paragraph (1), by adding "or" at the end;

(2) in paragraph (2), by striking "; or" and inserting a period; and

(3) by striking paragraph (3).

(c) ANNUAL REPORT.—Section 377 of the Public Health Service Act (42 U.S.C. 274f), as amended by subsections (a) and (b), is amended by adding at the end the following:

"(h) ANNUAL REPORT.—Not later than December 31 of each year, beginning in fiscal year 2027, the Secretary shall—

"(1) prepare, submit to the Congress, and make public a report on whether grants under this section provided adequate funding during the preceding fiscal year to reimburse all donating individuals participating in the grant program under this section for all qualifying expenses; and

"(2) include in each such report—

"(A) the estimated number of all donating individuals participating in the grant program under this section who did not receive reimbursement for all qualifying expenses during the preceding fiscal year; and

"(B) the total amount of funding that is estimated to be necessary to fully reimburse all donating individuals participating in the grant program under this section for all qualifying expenses.".

### SEC. 6504. PROGRAM FOR PEDIATRIC STUDIES OF DRUGS.

Section 409I(d)(1) of the Public Health Service Act (42 U.S.C. 284m(d)(1)) is amended by striking "section," and all that follows through the period at the end and inserting "section, $25,000,000 for each of fiscal years 2026 through 2028.".

H. R. 7148—521

**SEC. 6505. SICKLE CELL DISEASE PREVENTION AND TREATMENT.**

(a) IN GENERAL.—Section 1106(b) of the Public Health Service Act (42 U.S.C. 300b–5(b)) is amended—

(1) in paragraph (1)(A)(iii), by striking "prevention and treatment of sickle cell disease" and inserting "treatment of sickle cell disease and the prevention and treatment of complications of sickle cell disease";

(2) in paragraph (2)(D), by striking "prevention and treatment of sickle cell disease" and inserting "treatment of sickle cell disease and the prevention and treatment of complications of sickle cell disease";

(3) in paragraph (3)—

(A) in subparagraph (A), by striking "enter into a contract with" and inserting "make a grant to, or enter into a contract or cooperative agreement with,"; and

(B) in subparagraph (B), in each of clauses (ii) and (iii), by striking "prevention and treatment of sickle cell disease" and inserting "treatment of sickle cell disease and the prevention and treatment of complications of sickle cell disease"; and

(4) in paragraph (6), by striking "$4,455,000 for each of fiscal years 2019 through 2023" and inserting "$8,205,000 for each of fiscal years 2026 through 2030".

(b) SENSE OF CONGRESS.—It is the sense of Congress that further research should be undertaken to expand the understanding of the causes of, and to find cures for, heritable blood disorders, including sickle cell disease.

**SEC. 6506. LIFESPAN RESPITE CARE.**

(a) DEFINITION OF FAMILY CAREGIVER.—Section 2901(5) of the Public Health Service Act (42 U.S.C. 300ii(5)) is amended by striking "unpaid adult" and inserting "unpaid individual".

(b) FUNDING.—Section 2905 of the Public Health Service Act (42 U.S.C. 300ii–4) is amended by striking "fiscal years 2020 through fiscal year 2024" and inserting "fiscal years 2026 through 2030".

**SEC. 6507. PREEMIE.**

(a) RESEARCH RELATING TO PRETERM LABOR AND DELIVERY AND THE CARE, TREATMENT, AND OUTCOMES OF PRETERM AND LOW BIRTHWEIGHT INFANTS.—

(1) IN GENERAL.—Section 3(e) of the Prematurity Research Expansion and Education for Mothers who deliver Infants Early Act (42 U.S.C. 247b–4f(e)) is amended by striking "fiscal years 2019 through 2023" and inserting "fiscal years 2026 through 2030".

(2) TECHNICAL CORRECTION.—Effective as if included in the enactment of the PREEMIE Reauthorization Act of 2018 (Public Law 115–328), section 2 of such Act is amended, in the matter preceding paragraph (1), by striking "Section 2" and inserting "Section 3".

(b) INTERAGENCY WORKING GROUP.—Section 5(a) of the PREEMIE Reauthorization Act of 2018 (Public Law 115–328) is amended by striking "The Secretary of Health and Human Services, in collaboration with other departments, as appropriate, may establish" and inserting "Not later than 18 months after the date of the enactment of the Consolidated Appropriations Act, 2026, the

H. R. 7148—522

Secretary of Health and Human Services, in collaboration with other departments, as appropriate, shall establish".

(c) STUDY ON PRETERM BIRTHS.—

(1) IN GENERAL.—The Secretary of Health and Human Services shall enter into appropriate arrangements with the National Academies of Sciences, Engineering, and Medicine under which the National Academies shall—

(A) not later than 30 days after the date of enactment of this Act, convene a committee of experts in maternal health to study premature births in the United States; and

(B) upon completion of the study under subparagraph (A)—

(i) approve by consensus a report on the results of such study;

(ii) include in such report—

(I) an assessment of each of the topics listed in paragraph (2);

(II) the analysis required by paragraph (3); and

(III) the raw data used to develop such report; and

(iii) not later than 24 months after the date of enactment of this Act, transmit such report to—

(I) the Secretary of Health and Human Services;

(II) the Committee on Energy and Commerce of the House of Representatives; and

(III) the Committee on Finance and the Committee on Health, Education, Labor, and Pensions of the Senate.

(2) ASSESSMENT TOPICS.—The topics listed in this subsection are each of the following:

(A) The financial costs of premature birth to society, including—

(i) an analysis of stays in neonatal intensive care units and the cost of such stays;

(ii) long-term costs of stays in such units to society and the family involved post-discharge; and

(iii) health care costs for families post-discharge from such units (such as medications, therapeutic services, co-payments for visits, and specialty equipment).

(B) The factors that impact preterm birth rates.

(C) Opportunities for earlier detection of premature birth risk factors, including—

(i) opportunities to improve maternal and infant health; and

(ii) opportunities for public health programs to provide support and resources for parents in-hospital, in non-hospital settings, and post-discharge.

(3) ANALYSIS.—The analysis required by this subsection is an analysis of—

(A) targeted research strategies to develop effective drugs, treatments, or interventions to bring at-risk pregnancies to term;

(B) State and other programs' best practices with respect to reducing premature birth rates; and

(C) precision medicine and preventative care approaches starting early in the life course (including during pregnancy) with a focus on behavioral and biological influences on premature birth, child health, and the trajectory of such approaches into adulthood.

### SEC. 6508. DR. LORNA BREEN HEALTH CARE PROVIDER PROTECTION.

(a) DISSEMINATION OF BEST PRACTICES.—Section 2 of the Dr. Lorna Breen Health Care Provider Protection Act (Public Law 117–105) is amended by striking "2 years" and inserting "5 years".

(b) EDUCATION AND AWARENESS INITIATIVE ENCOURAGING USE OF MENTAL HEALTH AND SUBSTANCE USE DISORDER SERVICES BY HEALTH CARE PROFESSIONALS.—Section 3 of the Dr. Lorna Breen Health Care Provider Protection Act (Public Law 117–105) is amended—

(1) in subsection (b), by inserting "and annually thereafter," after "of this Act,"; and

(2) in subsection (c), by striking "2022 through 2024" and inserting "2026 through 2030".

(c) PROGRAMS TO PROMOTE MENTAL HEALTH AMONG THE HEALTH PROFESSIONAL WORKFORCE.—The second section 764 of the Public Health Service Act (42 U.S.C. 294t), as added by section 4 of the Dr. Lorna Breen Health Care Provider Protection Act (Public Law 117–105), is amended—

(1) by redesignating such section 764 as section 764A;

(2) in subsection (a)(3)—

(A) by striking "to eligible entities in" and inserting "to eligible entities that—

"(A) are in";

(B) by striking the period and inserting "; or"; and

(C) by adding at the end the following:

"(B) have a focus on the reduction of administrative burden on health care workers.";

(3) in subsection (c), by inserting "not less than" after "period of"; and

(4) in subsection (f), by striking "2022 through 2024" and inserting "2026 through 2030".

# TITLE VI—FOOD AND DRUG ADMINISTRATION

## Subtitle A—Mikaela Naylon Give Kids a Chance Act

### SEC. 6601. RESEARCH INTO PEDIATRIC USES OF DRUGS; ADDITIONAL AUTHORITIES OF FOOD AND DRUG ADMINISTRATION REGARDING MOLECULARLY TARGETED CANCER DRUGS.

(a) IN GENERAL.—

(1) ADDITIONAL ACTIVE INGREDIENT FOR APPLICATION DRUG; LIMITATION REGARDING NOVEL-COMBINATION APPLICATION DRUG.—Section 505B(a)(3) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355c(a)(3)) is amended—

(A) by redesignating subparagraphs (B) and (C) as subparagraphs (C) and (D), respectively; and

H. R. 7148—524

(B) by striking subparagraph (A) and inserting the following:

"(A) IN GENERAL.—For purposes of paragraph (1)(B), the investigation described in this paragraph is a molecularly targeted pediatric cancer investigation of—

"(i) the drug or biological product for which the application referred to in such paragraph is submitted; or

"(ii) such drug or biological product used in combination with—

"(I) an active ingredient of a drug or biological product—

"(aa) for which an approved application under section 505(j) under this Act or under section 351(k) of the Public Health Service Act is in effect; and

"(bb) that is determined by the Secretary, after consultation with the applicant, to be part of the standard of care for treating a pediatric cancer; or

"(II) an active ingredient of a drug or biological product—

"(aa) for which an approved application under section 505(b) of this Act or section 351(a) of the Public Health Service Act to treat an adult cancer is in effect and is held by the same person submitting the application under paragraph (1)(B); and

"(bb) that is directed at a molecular target that the Secretary determines to be substantially relevant to the growth or progression of a pediatric cancer.

"(B) ADDITIONAL REQUIREMENTS.—

"(i) DESIGN OF INVESTIGATION.—A molecularly targeted pediatric cancer investigation referred to in subparagraph (A) shall be designed to yield clinically meaningful pediatric study data that is gathered using appropriate formulations for each age group for which the study is required, regarding dosing, safety, and preliminary efficacy to inform potential pediatric labeling.

"(ii) LIMITATION.—An investigation described in subparagraph (A)(ii) may be required only if the drug or biological product for which the application referred to in paragraph (1)(B) contains either—

"(I) a single new active ingredient; or

"(II) more than one active ingredient, if an application for the combination of active ingredients has not previously been approved but each active ingredient is in a drug product that has been previously approved to treat an adult cancer.

"(iii) RESULTS OF ALREADY-COMPLETED PRECLINICAL STUDIES OF APPLICATION DRUG.—With respect to an investigation required pursuant to paragraph (1)(B), the Secretary may require the results of any completed preclinical studies relevant to the initial pediatric study plan be submitted to the Secretary at the same

H. R. 7148—525

time that the initial pediatric study plan required under subsection (e)(1) is submitted.

"(iv) RULE OF CONSTRUCTION REGARDING INACTIVE INGREDIENTS.—With respect to a combination of active ingredients referred to in subparagraph (A)(ii), such subparagraph shall not be construed as addressing the use of inactive ingredients with such combination.".

(2) DETERMINATION OF APPLICABLE REQUIREMENTS.—Section 505B(e)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355c(e)(1)) is amended by adding at the end the following: "The Secretary shall determine whether subparagraph (A) or (B) of subsection (a)(1) applies with respect to an application before the date on which the applicant is required to submit the initial pediatric study plan under paragraph (2)(A).".

(3) CLARIFYING APPLICABILITY.—Section 505B(a)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355c(a)(1)) is amended by adding at the end the following:

"(C) RULE OF CONSTRUCTION.—No application that is subject to the requirements of subparagraph (B) shall be subject to the requirements of subparagraph (A), and no application (or supplement to an application) that is subject to the requirements of subparagraph (A) shall be subject to the requirements of subparagraph (B).".

(4) CONFORMING AMENDMENTS.—Section 505B(a) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355c(a)) is amended—

(A) in paragraph (3)(C), as redesignated by paragraph (1)(A) of this subsection, by striking "investigations described in this paragraph" and inserting "investigations referred to in subparagraph (A)"; and

(B) in paragraph (3)(D), as redesignated by paragraph (1)(A) of this subsection, by striking "the assessments under paragraph (2)(B)" and inserting "the assessments required under paragraph (1)(A)".

(b) GUIDANCE.—The Secretary of Health and Human Services, acting through the Commissioner of Food and Drugs, shall—

(1) not later than 12 months after the date of enactment of this Act, issue draft guidance on the implementation of the amendments made by subsection (a); and

(2) not later than 12 months after closing the comment period on such draft guidance, finalize such guidance.

(c) APPLICABILITY.—The amendments made by this section apply with respect to any application under section 505(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(b)) and any application under section 351(a) of the Public Health Service Act (42 U.S.C. 262(a)), that is submitted on or after the date that is 3 years after the date of enactment of this Act.

(d) REPORTS TO CONGRESS.—

(1) SECRETARY OF HEALTH AND HUMAN SERVICES.—Not later than 6 years after the date of enactment of this Act, the Secretary of Health and Human Services shall submit to the Committee on Energy and Commerce of the House of Representatives and the Committee on Health, Education, Labor, and Pensions of the Senate a report on the Secretary's efforts, in coordination with industry, to ensure implementation of the amendments made by subsection (a).

H. R. 7148—526

(2) GAO STUDY AND REPORT.—

(A) STUDY.—Not later than 8 years after the date of enactment of this Act, the Comptroller General of the United States shall conduct a study of the effectiveness of requiring assessments and investigations described in section 505B of the Federal Food, Drug, and Cosmetic Act (21 U.S.C.355c), as amended by subsection (a), in the development of drugs and biological products for pediatric cancer indications, including consideration of any benefits to, or burdens on, pediatric cancer drug development.

(B) FINDINGS.—Not later than 10 years after the date of enactment of this Act, the Comptroller General shall submit to the Committee on Energy and Commerce of the House of Representatives and the Committee on Health, Education, Labor, and Pensions of the Senate a report containing the findings of the study conducted under subparagraph (A).

**SEC. 6602. ENSURING COMPLETION OF PEDIATRIC STUDY REQUIRE-MENTS.**

(a) EQUAL ACCOUNTABILITY FOR PEDIATRIC STUDY REQUIRE-MENTS.—Section 505B(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355c(d)) is amended—

(1) in paragraph (1), by striking "Beginning 270" and inserting "NONCOMPLIANCE LETTER.—Beginning 270";

(2) in paragraph (2)—

(A) by striking "The drug or" and inserting "EFFECT OF NONCOMPLIANCE.—The drug or"; and

(B) by striking "(except that the drug or biological product shall not be subject to action under section 303)" and inserting "(except that the drug or biological product shall be subject to action under section 303 only if such person demonstrated a lack of due diligence in satisfying the applicable requirement)"; and

(3) by adding at the end the following:

"(3) LIMITATION.—The Secretary shall not issue enforcement actions under section 303 for failures under this subsection in the case of a drug or biological product that is no longer marketed.".

(b) DUE DILIGENCE.—Section 505B(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355c(d)), as amended by subsection (a), is further amended by adding at the end the following:

"(4) DUE DILIGENCE.—Before the Secretary may conclude that a person failed to submit or otherwise meet a requirement as described in the matter preceding paragraph (1), the Secretary shall—

"(A) issue a noncompliance letter pursuant to paragraph (1);

"(B) provide such person with a 45-day period beginning on the date of receipt of such noncompliance letter to respond in writing as set forth in such paragraph; and

"(C) after reviewing such written response, determine whether the person demonstrated a lack of due diligence in satisfying such requirement.".

(c) CONFORMING AMENDMENTS.—Section 303(f)(4)(A) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 333(f)(4)(A)) is amended by striking "or 505–1" and inserting "505–1, or 505B".

H. R. 7148—527

(d) TRANSITION RULE.—The Secretary of Health and Human Services may take enforcement action under section 303 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 333) only for failures described in section 505B(d) of such Act (21 U.S.C. 355c(d)) that occur on or after the date that is 180 days after the date of enactment of this Act.

**SEC. 6603. FDA REPORT ON PREA ENFORCEMENT.**

Section 508(b) of the Food and Drug Administration Safety and Innovation Act (21 U.S.C. 355c–1(b)) is amended—

(1) in paragraph (11), by striking the semicolon at the end and inserting ", including an evaluation of compliance with deadlines provided for in deferrals and deferral extensions;";

(2) in paragraph (15), by striking "and" at the end;

(3) in paragraph (16), by striking the period at the end and inserting "; and"; and

(4) by adding at the end the following:

"(17) a listing of penalties, settlements, or payments under section 303 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 353) for failure to comply with requirements under such section 505B, including, for each penalty, settlement, or payment, the name of the drug, the sponsor thereof, and the amount of the penalty, settlement, or payment imposed.".

**SEC. 6604. EXTENSION OF AUTHORITY TO ISSUE PRIORITY REVIEW VOUCHERS TO ENCOURAGE TREATMENTS FOR RARE PEDIATRIC DISEASES.**

(a) EXTENSION.—Paragraph (5) of section 529(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360ff(b)) is amended by striking "December 20, 2024, unless" and all that follows through the period at the end and inserting "September 30, 2029.".

(b) USER FEE PAYMENT.—Section 529(c)4) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360ff(c)(4)) is amended by striking subparagraph (A) and inserting the following:

"(A) IN GENERAL.—The priority review user fee required by this subsection shall be due upon the submission of a human drug application under section 505(b)(1) or section 351(a) of the Public Health Service Act for which the priority review voucher is used. All other user fees associated with the human drug application shall be due as required by the Secretary or under applicable law.".

(c) GAO REPORT ON EFFECTIVENESS OF RARE PEDIATRIC DISEASE PRIORITY VOUCHER AWARDS IN INCENTIVIZING RARE PEDIATRIC DISEASE DRUG DEVELOPMENT.—

(1) GAO STUDY.—

(A) STUDY.—The Comptroller General of the United States shall conduct a study of the effectiveness of awarding rare pediatric disease priority vouchers under section 529 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360ff), as amended by subsection (a), in the development of human drug products that treat or prevent rare pediatric diseases (as defined in such section 529).

(B) CONTENTS OF STUDY.—In conducting the study under subparagraph (A), the Comptroller General shall examine the following:

(i) The indications for each drug or biological product that—

H. R. 7148—528

(I) is the subject of a rare pediatric disease product application (as defined in section 529 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360ff)) for which a priority review voucher was awarded; and

(II) was approved under section 505 of the Federal Food, Drug, and Cosmetic Act (42 U.S.C. 355) or licensed under section 351 of the Public Health Service Act (42 U.S.C. 262).

(ii) Whether, and to what extent, an unmet need related to the treatment or prevention of a rare pediatric disease was met through the approval or licensure of such a drug or biological product.

(iii) The size of the company to which a priority review voucher was awarded under section 529 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360ff) for such a drug or biological product.

(iv) The value of such priority review voucher if transferred.

(v) Identification of each drug for which a priority review voucher awarded under such section 529 was used.

(vi) The size of the company using each priority review voucher awarded under such section 529.

(vii) The length of the period of time between the date on which a priority review voucher was awarded under such section 529 and the date on which it was used.

(viii) Whether, and to what extent, an unmet need related to the treatment or prevention of a rare pediatric disease was met through the approval under section 505 of the Federal Food, Drug, and Cosmetic Act (42 U.S.C. 355) or licensure under section 351 of the Public Health Service Act (42 U.S.C. 262) of a drug for which a priority review voucher was used.

(ix) Whether, and to what extent, companies were motivated by the availability of priority review vouchers under section 529 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360ff) to attempt to develop a drug for a rare pediatric disease.

(x) Whether, and to what extent, pediatric review vouchers awarded under such section were successful in stimulating development and expedited patient access to drug products for treatment or prevention of a rare pediatric disease that wouldn't otherwise take place without the incentive provided by such vouchers.

(xi) The impact of such priority review vouchers on the workload, review process, and public health prioritization efforts of the Food and Drug Administration.

(xii) Any other incentives in Federal law that exist for companies developing drugs or biological products described in clause (i).

(2) REPORT ON FINDINGS.—Not later than 5 years after the date of the enactment of this Act, the Comptroller General of the United States shall submit to the Committee on Energy

and Commerce of the House of Representatives and the Committee on Health, Education, Labor, and Pensions of the Senate a report containing the findings of the study conducted under paragraph (1).

### SEC. 6605. LIMITATIONS ON EXCLUSIVE APPROVAL OR LICENSURE OF ORPHAN DRUGS.

(a) IN GENERAL.—Section 527 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360cc) is amended—

(1) in subsection (a), in the matter following paragraph (2), by striking "same disease or condition" and inserting "same approved use or indication within such rare disease or condition";

(2) in subsection (b)—

(A) in the matter preceding paragraph (1), by striking "same rare disease or condition" and inserting "same approved use or indication for which such 7-year period applies to such already approved or licensed drug"; and

(B) in paragraph (1), by inserting ", relating to the approved use or indication," after "the needs";

(3) in subsection (c)(1), by striking "same rare disease or condition as the already approved drug" and inserting "same use or indication for which the already approved or licensed drug was approved or licensed"; and

(4) by adding at the end the following:

"(f) APPROVED USE OR INDICATION DEFINED.—In this section, the term 'approved use or indication' means the use or indication approved under section 505 of this Act or licensed under section 351 of the Public Health Service Act for a drug designated under section 526 for a rare disease or condition.".

(b) APPLICATION OF AMENDMENTS.—The amendments made by subsection (a) shall apply with respect to any drug designated under section 526 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360bb), regardless of the date on which the drug was so designated, and regardless of the date on which the drug was approved under section 505 of such Act (21 U.S.C. 355) or licensed under section 351 of the Public Health Service Act (42 U.S.C. 262).

# Subtitle B—United States-Abraham Accords Cooperation and Security

### SEC. 6611. ESTABLISHMENT OF ABRAHAM ACCORDS OFFICE WITHIN FOOD AND DRUG ADMINISTRATION.

(a) IN GENERAL.—Chapter X of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 391 et seq.) is amended by adding at the end the following:

### "SEC. 1015. ABRAHAM ACCORDS OFFICE.

"(a) IN GENERAL.—The Secretary, acting through the Commissioner of Food and Drugs, shall establish within the Food and Drug Administration an office, to be known as the Abraham Accords Office, to be headed by a director.

"(b) OFFICE.—Not later than 2 years after the date of enactment of this section, the Secretary shall—

"(1) in consultation with the governments of Abraham Accords countries, as well as appropriate United States Government diplomatic and security personnel—

"(A) select the location of the Abraham Accords Office in an Abraham Accords country; and

"(B) establish such office; and

"(2) assign to such office such personnel of the Food and Drug Administration as the Secretary determines necessary to carry out the functions of such office.

"(c) DUTIES.—The Secretary, acting through the Director of the Abraham Accords Office, shall—

"(1) after the Abraham Accords Office is established—

"(A) as part of the Food and Drug Administration's work to strengthen the international oversight of regulated commodities, provide technical assistance to regulatory partners in Abraham Accords countries on strengthening regulatory oversight and converging regulatory requirements for the oversight of regulated products, including good manufacturing practices and other issues relevant to manufacturing medical products that are regulated by the Food and Drug Administration; and

"(B) facilitate interactions between the Food and Drug Administration and interested parties in Abraham Accords countries, including by sharing relevant information regarding United States regulatory pathways with such parties, and facilitate feedback on the research, development, and manufacturing of products regulated in accordance with this Act; and

"(2) carry out other functions and activities as the Secretary determines to be necessary to carry out this section.

"(d) ABRAHAM ACCORDS COUNTRY DEFINED.—In this section, the term 'Abraham Accords country' means a country identified by the Department of State as having signed the Abraham Accords Declaration.

"(e) NATIONAL SECURITY.—Nothing in this section shall be construed to require any action inconsistent with a national security recommendation provided by the Federal Government.".

(b) REPORT TO CONGRESS.—

(1) IN GENERAL.—Not later than 3 years after the date of enactment of this Act, the Secretary of Health and Human Services shall submit to the Congress a report on the Abraham Accords Office, including—

(A) an evaluation of how the Office has advanced progress toward conformance with Food and Drug Administration regulatory requirements by manufacturers in the Abraham Accords countries;

(B) a numerical count of parties that the Office has helped facilitate interactions or feedback pursuant to section 1015(c)(1)(B) of the Federal Food, Drug, and Cosmetic Act (as added by subsection (a));

(C) a summary of technical assistance provided to regulatory partners in Abraham Accords countries pursuant to subparagraph (A) of such section 1015(c)(1); and

(D) recommendations for increasing and improving coordination between the Food and Drug Administration and entities in Abraham Accords countries.

(2) ABRAHAM ACCORDS COUNTRY DEFINED.—In this sub-section, the term "Abraham Accords country" has the meaning given such term in section 1015(d) of the Federal Food, Drug, and Cosmetic Act (as added by subsection (a)).

# TITLE VII—LOWERING PRESCRIPTION DRUG COSTS

### SEC. 6701. OVERSIGHT OF PHARMACY BENEFIT MANAGEMENT SERV-ICES.

(a) PUBLIC HEALTH SERVICE ACT.—Title XXVII of the Public Health Service Act (42 U.S.C. 300gg et seq.) is amended—

(1) in part D (42 U.S.C. 300gg–111 et seq.), by adding at the end the following new section:

### "SEC. 2799A–11. OVERSIGHT OF ENTITIES THAT PROVIDE PHARMACY BENEFIT MANAGEMENT SERVICES.

"(a) IN GENERAL.—For plan years beginning on or after the date that is 30 months after the date of enactment of this section (referred to in this subsection and subsection (b) as the 'effective date'), a group health plan or a health insurance issuer offering group health insurance coverage, or an entity providing pharmacy benefit management services on behalf of such a plan or issuer, shall not enter into a contract, including an extension or renewal of a contract, entered into on or after the effective date, with an applicable entity unless such applicable entity agrees to—

"(1) not limit or delay the disclosure of information to the group health plan (including such a plan offered through a health insurance issuer) in such a manner that prevents an entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer offering group health insurance coverage from making the reports described in subsection (b); and

"(2) provide the entity providing pharmacy benefit manage-ment services on behalf of a group health plan or health insur-ance issuer relevant information necessary to make the reports described in subsection (b).

"(b) REPORTS.—

"(1) IN GENERAL.—For plan years beginning on or after the effective date, in the case of any contract between a group health plan or a health insurance issuer offering group health insurance coverage offered in connection with such a plan and an entity providing pharmacy benefit management services on behalf of such plan or issuer, including an extension or renewal of such a contract, entered into on or after the effective date, the entity providing pharmacy benefit management services on behalf of such a group health plan or health insurance issuer, not less frequently than every 6 months (or, at the request of a group health plan, not less frequently than quar-terly, and under the same conditions, terms, and cost of the semiannual report under this subsection), shall submit to the group health plan a report in accordance with this section. Each such report shall be made available to such group health plan in plain language, in a machine-readable format, and as the Secretary may determine, other formats. Each such

H. R. 7148—532

report shall include the information described in paragraph (2).

"(2) INFORMATION DESCRIBED.—For purposes of paragraph (1), the information described in this paragraph is, with respect to drugs covered by a group health plan or group health insurance coverage offered by a health insurance issuer in connection with a group health plan during each reporting period—

"(A) in the case of a group health plan that is offered by a specified large employer or that is a specified large plan, and is not offered as health insurance coverage, or in the case of health insurance coverage for which the election under paragraph (3) is made for the applicable reporting period—

"(i) a list of drugs for which a claim was filed and, with respect to each such drug on such list—

"(I) the contracted compensation paid by the group health plan or health insurance issuer for each covered drug (identified by the National Drug Code) to the entity providing pharmacy benefit management services or other applicable entity on behalf of the group health plan or health insurance issuer;

"(II) the contracted compensation paid to the pharmacy, by any entity providing pharmacy benefit management services or other applicable entity on behalf of the group health plan or health insurance issuer, for each covered drug (identified by the National Drug Code);

"(III) for each such claim, the difference between the amount paid under subclause (I) and the amount paid under subclause (II);

"(IV) the proprietary name, established name or proper name, and the National Drug Code;

"(V) for each claim for the drug (including original prescriptions and refills) and for each dosage unit of the drug for which a claim was filed, the type of dispensing channel used to furnish the drug, including retail, mail order, or specialty pharmacy;

"(VI) with respect to each drug dispensed, for each type of dispensing channel (including retail, mail order, or specialty pharmacy)—

"(aa) whether such drug is a brand drug or a generic drug, and—

"(AA) in the case of a brand name drug, the wholesale acquisition cost, listed as cost per days supply and cost per dosage unit, on the date such drug was dispensed; and

"(BB) in the case of a generic drug, the average wholesale price, listed as cost per days supply and cost per dosage unit, on the date such drug was dispensed; and

"(bb) the total number of—

"(AA) prescription claims (including original prescriptions and refills);

"(BB) participants and beneficiaries for whom a claim for such drug was filed through the applicable dispensing channel;

"(CC) dosage units and dosage units per fill of such drug; and

"(DD) days supply of such drug per fill;

"(VII) the net price per course of treatment or single fill, such as a 30-day supply or 90-day supply to the plan or coverage after rebates, fees, alternative discounts, or other remuneration received from applicable entities;

"(VIII) the total amount of out-of-pocket spending by participants and beneficiaries on such drug, including spending through copayments, coinsurance, and deductibles, but not including any amounts spent by participants and beneficiaries on drugs not covered under the plan or coverage, or for which no claim is submitted under the plan or coverage;

"(IX) the total net spending on the drug;

"(X) the total amount received, or expected to be received, by the plan or issuer from any applicable entity in rebates, fees, alternative discounts, or other remuneration;

"(XI) the total amount received, or expected to be received, by the entity providing pharmacy benefit management services, from applicable entities, in rebates, fees, alternative discounts, or other remuneration from such entities—

"(aa) for claims incurred during the reporting period; and

"(bb) that is related to utilization of such drug or spending on such drug; and

"(XII) to the extent feasible, information on the total amount of remuneration for such drug, including copayment assistance dollars paid, copayment cards applied, or other discounts provided by each drug manufacturer (or entity administering copayment assistance on behalf of such drug manufacturer), to the participants and beneficiaries enrolled in such plan or coverage;

"(ii) a list of each therapeutic class (as defined by the Secretary) for which a claim was filed under the group health plan or health insurance coverage during the reporting period, and, with respect to each such therapeutic class—

"(I) the total gross spending on drugs in such class before rebates, price concessions, alternative discounts, or other remuneration from applicable entities;

"(II) the net spending in such class after such rebates, price concessions, alternative discounts, or other remuneration from applicable entities;

"(III) the total amount received, or expected to be received, by the entity providing pharmacy

benefit management services, from applicable entities, in rebates, fees, alternative discounts, or other remuneration from such entities—

"(aa) for claims incurred during the reporting period; and

"(bb) that is related to utilization of drugs or drug spending;

"(IV) the average net spending per 30-day supply and per 90-day supply by the plan or by the issuer with respect to such coverage and its participants and beneficiaries, among all drugs within the therapeutic class for which a claim was filed during the reporting period;

"(V) the number of participants and beneficiaries who filled a prescription for a drug in such class, including the National Drug Code for each such drug;

"(VI) if applicable, a description of the formulary tiers and utilization mechanisms (such as prior authorization or step therapy) employed for drugs in that class; and

"(VII) the total out-of-pocket spending under the plan or coverage by participants and beneficiaries, including spending through copayments, coinsurance, and deductibles, but not including any amounts spent by participants and beneficiaries on drugs not covered under the plan or coverage or for which no claim is submitted under the plan or coverage;

"(iii) with respect to any drug for which gross spending under the group health plan or health insurance coverage exceeded $10,000 during the reporting period or, in the case that gross spending under the group health plan or coverage exceeded $10,000 during the reporting period with respect to fewer than 50 drugs, with respect to the 50 prescription drugs with the highest spending during the reporting period—

"(I) a list of all other drugs in the same therapeutic class as such drug;

"(II) if applicable, the rationale for the formulary placement of such drug in that therapeutic category or class, selected from a list of standard rationales established by the Secretary, in consultation with stakeholders; and

"(III) any change in formulary placement compared to the prior plan year; and

"(iv) in the case that such plan or issuer (or an entity providing pharmacy benefit management services on behalf of such plan or issuer) has an affiliated pharmacy or pharmacy under common ownership, including mandatory mail and specialty home delivery programs, retail and mail auto-refill programs, and cost sharing assistance incentives funded by an entity providing pharmacy benefit services—

"(I) an explanation of any benefit design parameters that encourage or require participants and beneficiaries in the plan or coverage to fill

prescriptions at mail order, specialty, or retail pharmacies;

"(II) the percentage of total prescriptions dispensed by such pharmacies to participants or beneficiaries in such plan or coverage; and

"(III) a list of all drugs dispensed by such pharmacies to participants or beneficiaries enrolled in such plan or coverage, and, with respect to each drug dispensed—

"(aa) the amount charged, per dosage unit, per 30-day supply, or per 90-day supply (as applicable) to the plan or issuer, and to participants and beneficiaries;

"(bb) the median amount charged to such plan or issuer, and the interquartile range of the costs, per dosage unit, per 30-day supply, and per 90-day supply, including amounts paid by the participants and beneficiaries, when the same drug is dispensed by other pharmacies that are not affiliated with or under common ownership with the entity and that are included in the pharmacy network of such plan or coverage;

"(cc) the lowest cost per dosage unit, per 30-day supply and per 90-day supply, for each such drug, including amounts charged to the plan or coverage and to participants and beneficiaries, that is available from any pharmacy included in the network of such plan or coverage; and

"(dd) the net acquisition cost per dosage unit, per 30-day supply, and per 90-day supply, if such drug is subject to a maximum price discount; and

"(B) with respect to any group health plan, including group health insurance coverage offered in connection with such a plan, regardless of whether the plan or coverage is offered by a specified large employer or whether it is a specified large plan—

"(i) a summary document for the group health plan that includes such information described in clauses (i) through (iv) of subparagraph (A), as specified by the Secretary through guidance, program instruction, or otherwise (with no requirement of notice and comment rulemaking), that the Secretary determines useful to group health plans for purposes of selecting pharmacy benefit management services, such as an estimated net price to group health plan and participant or beneficiary, a cost per claim, the fee structure or reimbursement model, and estimated cost per participant or beneficiary;

"(ii) a summary document for plans and issuers to provide to participants and beneficiaries, which shall be made available to participants or beneficiaries upon request to their group health plan (including in the case of group health insurance coverage offered in connection with such a plan), that—

"(I) contains such information described in clauses (iii), (iv), (v), and (vi), as applicable, as specified by the Secretary through guidance, program instruction, or otherwise (with no requirement of notice and comment rulemaking) that the Secretary determines useful to participants or beneficiaries in better understanding the plan or coverage or benefits under such plan or coverage;

"(II) contains only aggregate information; and

"(III) states that participants and beneficiaries may request specific, claims-level information required to be furnished under subsection (c) from the group health plan or health insurance issuer; and

"(iii) with respect to drugs covered by such plan or coverage during such reporting period—

"(I) the total net spending by the plan or coverage for all such drugs;

"(II) the total amount received, or expected to be received, by the plan or issuer from any applicable entity in rebates, fees, alternative discounts, or other remuneration; and

"(III) to the extent feasible, information on the total amount of remuneration for such drugs, including copayment assistance dollars paid, copayment cards applied, or other discounts provided by each drug manufacturer (or entity administering copayment assistance on behalf of such drug manufacturer) to participants and beneficiaries;

"(iv) amounts paid directly or indirectly in rebates, fees, or any other type of compensation (as defined in section 408(b)(2)(B)(ii)(dd)(AA) of the Employee Retirement Income Security Act) to brokerage firms, brokers, consultants, advisors, or any other individual or firm, for—

"(I) the referral of the group health plan's or health insurance issuer's business to an entity providing pharmacy benefit management services, including the identity of the recipient of such amounts;

"(II) consideration of the entity providing pharmacy benefit management services by the group health plan or health insurance issuer; or

"(III) the retention of the entity by the group health plan or health insurance issuer;

"(v) an explanation of any benefit design parameters that encourage or require participants and beneficiaries in such plan or coverage to fill prescriptions at mail order, specialty, or retail pharmacies that are affiliated with or under common ownership with the entity providing pharmacy benefit management services under such plan or coverage, including mandatory mail and specialty home delivery programs, retail and mail auto-refill programs, and cost-sharing assistance incentives directly or indirectly funded by such entity; and

"(vi) total gross spending on all drugs under the plan or coverage during the reporting period.

"(3) OPT-IN FOR GROUP HEALTH INSURANCE COVERAGE OFFERED BY A SPECIFIED LARGE EMPLOYER OR THAT IS A SPECIFIED LARGE PLAN.—In the case of group health insurance coverage offered in connection with a group health plan that is offered by a specified large employer or is a specified large plan, such group health plan may, on an annual basis, for plan years beginning on or after the date that is 30 months after the date of enactment of this section, elect to require an entity providing pharmacy benefit management services on behalf of the health insurance issuer to submit to such group health plan a report that includes all of the information described in paragraph (2)(A), in addition to the information described in paragraph (2)(B).

"(4) PRIVACY REQUIREMENTS.—

"(A) IN GENERAL.—An entity providing pharmacy benefit management services on behalf of a group health plan or a health insurance issuer offering group health insurance coverage shall report information under paragraph (1) in a manner consistent with the privacy regulations promulgated under section 13402(a) of the Health Information Technology for Economic and Clinical Health Act and consistent with the privacy regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 in part 160 and subparts A and E of part 164 of title 45, Code of Federal Regulations (or successor regulations) (referred to in this paragraph as the 'HIPAA privacy regulations') and shall restrict the use and disclosure of such information according to such privacy regulations and such HIPAA privacy regulations.

"(B) ADDITIONAL REQUIREMENTS.—

"(i) IN GENERAL.—An entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer offering group health insurance coverage that submits a report under paragraph (1) shall ensure that such report contains only summary health information, as defined in section 164.504(a) of title 45, Code of Federal Regulations (or successor regulations).

"(ii) RESTRICTIONS.—In carrying out this subsection, a group health plan shall comply with section 164.504(f) of title 45, Code of Federal Regulations (or a successor regulation), and a plan sponsor shall act in accordance with the terms of the agreement described in such section.

"(C) RULE OF CONSTRUCTION.—

"(i) Nothing in this section shall be construed to modify the requirements for the creation, receipt, maintenance, or transmission of protected health information under the HIPAA privacy regulations.

"(ii) Nothing in this section shall be construed to affect the application of any Federal or State privacy or civil rights law, including the HIPAA privacy regulations, the Genetic Information Nondiscrimination Act

of 2008 (Public Law 110–233) (including the amendments made by such Act), the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.), section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. 18116), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d), and title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e).

"(D) WRITTEN NOTICE.—Each plan year, group health plans, including with respect to group health insurance coverage offered in connection with a group health plan, shall provide to each participant or beneficiary written notice informing the participant or beneficiary of the requirement for entities providing pharmacy benefit management services on behalf of the group health plan or health insurance issuer offering group health insurance coverage to submit reports to group health plans under paragraph (1), as applicable, which may include incorporating such notification in plan documents provided to the participant or beneficiary, or providing individual notification.

"(E) LIMITATION TO BUSINESS ASSOCIATES.—A group health plan receiving a report under paragraph (1) may disclose such information only to the entity from which the report was received or to that entity's business associates as defined in section 160.103 of title 45, Code of Federal Regulations (or successor regulations) or as permitted by the HIPAA privacy regulations.

"(F) CLARIFICATION REGARDING PUBLIC DISCLOSURE OF INFORMATION.—Nothing in this section shall prevent an entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer offering group health insurance coverage, from placing reasonable restrictions on the public disclosure of the information contained in a report described in paragraph (1), except that such plan, issuer, or entity may not—

"(i) restrict disclosure of such report to the Department of Health and Human Services, the Department of Labor, or the Department of the Treasury; or

"(ii) prevent disclosure for the purposes of subsection (c), or any other public disclosure requirement under this section.

"(G) LIMITED FORM OF REPORT.—The Secretary shall define through rulemaking a limited form of the report under paragraph (1) required with respect to any group health plan established by a plan sponsor that is, or is affiliated with, a drug manufacturer, drug wholesaler, or other direct participant in the drug supply chain, in order to prevent anti-competitive behavior.

"(5) STANDARD FORMAT AND REGULATIONS.—

"(A) IN GENERAL.—Not later than 18 months after the date of enactment of this section, the Secretary shall specify through rulemaking a standard format for entities providing pharmacy benefit management services on behalf of group health plans and health insurance issuers offering group health insurance coverage, to submit reports required under paragraph (1).

"(B) ADDITIONAL REGULATIONS.—Not later than 18 months after the date of enactment of this section, the Secretary shall, through rulemaking, promulgate any other final regulations necessary to implement the requirements of this section. In promulgating such regulations, the Secretary shall, to the extent practicable, align the reporting requirements under this section with the reporting requirements under section 2799A–10.

"(c) REQUIREMENT TO PROVIDE INFORMATION TO PARTICIPANTS OR BENEFICIARIES.—A group health plan, including with respect to group health insurance coverage offered in connection with a group health plan, upon request of a participant or beneficiary, shall provide to such participant or beneficiary—

"(1) the summary document described in subsection (b)(2)(B)(ii); and

"(2) the information described in subsection (b)(2)(A)(i)(III) with respect to a claim made by or on behalf of such participant or beneficiary.

"(d) ENFORCEMENT.—

"(1) IN GENERAL.—The Secretary shall enforce this section. The enforcement authority under this subsection shall apply only with respect to group health plans (including group health insurance coverage offered in connection with such a plan) to which the requirements of subparts I and II of part A and part D apply in accordance with section 2722, and with respect to entities providing pharmacy benefit management services on behalf of such plans and applicable entities providing services on behalf of such plans.

"(2) FAILURE TO PROVIDE INFORMATION.—A group health plan, a health insurance issuer offering group health insurance coverage, an entity providing pharmacy benefit management services on behalf of such a plan or issuer, or an applicable entity providing services on behalf of such a plan or issuer that violates subsection (a); an entity providing pharmacy benefit management services on behalf of such a plan or issuer that fails to provide the information required under subsection (b); or a group health plan that fails to provide the information required under subsection (c), shall be subject to a civil monetary penalty in the amount of $10,000 for each day during which such violation continues or such information is not disclosed or reported.

"(3) FALSE INFORMATION.—A health insurance issuer, an entity providing pharmacy benefit management services, or a third party administrator providing services on behalf of such issuer offered by a health insurance issuer that knowingly provides false information under this section shall be subject to a civil monetary penalty in an amount not to exceed $100,000 for each item of false information. Such civil monetary penalty shall be in addition to other penalties as may be prescribed by law.

"(4) PROCEDURE.—The provisions of section 1128A of the Social Security Act, other than subsections (a) and (b) and the first sentence of subsection (c)(1) of such section shall apply to civil monetary penalties under this subsection in the same manner as such provisions apply to a penalty or proceeding under such section.

H. R. 7148—540

"(5) WAIVERS.—The Secretary may waive penalties under paragraph (2), or extend the period of time for compliance with a requirement of this section, for an entity in violation of this section that has made a good-faith effort to comply with the requirements in this section.

"(e) RULE OF CONSTRUCTION.—Nothing in this section shall be construed to permit a health insurance issuer, group health plan, entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer, or other entity to restrict disclosure to, or otherwise limit the access of, the Secretary to a report described in subsection (b)(1) or information related to compliance with subsections (a), (b), (c), or (d) by such issuer, plan, or entity.

"(f) DEFINITIONS.—In this section:

"(1) APPLICABLE ENTITY.—The term 'applicable entity' means—

"(A) an applicable group purchasing organization, drug manufacturer, distributor, wholesaler, rebate aggregator (or other purchasing entity designed to aggregate rebates), or associated third party;

"(B) any subsidiary, parent, affiliate, or subcontractor of a group health plan, health insurance issuer, entity that provides pharmacy benefit management services on behalf of such a plan or issuer, or any entity described in subparagraph (A); or

"(C) such other entity as the Secretary may specify through rulemaking.

"(2) APPLICABLE GROUP PURCHASING ORGANIZATION.—The term 'applicable group purchasing organization' means a group purchasing organization that is affiliated with or under common ownership with an entity providing pharmacy benefit management services.

"(3) CONTRACTED COMPENSATION.—The term 'contracted compensation' means the sum of any ingredient cost and dispensing fee for a drug (inclusive of the out-of-pocket costs to the participant or beneficiary), or another analogous compensation structure that the Secretary may specify through regulations.

"(4) GROSS SPENDING.—The term 'gross spending', with respect to prescription drug benefits under a group health plan or health insurance coverage, means the amount spent by a group health plan or health insurance issuer on prescription drug benefits, calculated before the application of rebates, fees, alternative discounts, or other remuneration.

"(5) NET SPENDING.—The term 'net spending', with respect to prescription drug benefits under a group health plan or health insurance coverage, means the amount spent by a group health plan or health insurance issuer on prescription drug benefits, calculated after the application of rebates, fees, alternative discounts, or other remuneration.

"(6) PLAN SPONSOR.—The term 'plan sponsor' has the meaning given such term in section 3(16)(B) of the Employee Retirement Income Security Act of 1974.

"(7) REMUNERATION.—The term 'remuneration' has the meaning given such term by the Secretary through rulemaking, which shall be reevaluated by the Secretary every 5 years.

"(8) SPECIFIED LARGE EMPLOYER.—The term 'specified large employer' means, in connection with a group health plan (including group health insurance coverage offered in connection with such a plan) established or maintained by a single employer, with respect to a calendar year or a plan year, as applicable, an employer who employed an average of at least 100 employees on business days during the preceding calendar year or plan year and who employs at least 1 employee on the first day of the calendar year or plan year.

"(9) SPECIFIED LARGE PLAN.—The term 'specified large plan' means a group health plan (including group health insurance coverage offered in connection with such a plan) established or maintained by a plan sponsor described in clause (ii) or (iii) of section 3(16)(B) of the Employee Retirement Income Security Act of 1974 that had an average of at least 100 participants on business days during the preceding calendar year or plan year, as applicable.

"(10) WHOLESALE ACQUISITION COST.—The term 'wholesale acquisition cost' has the meaning given such term in section 1847A(c)(6)(B) of the Social Security Act."; and

(2) in section 2723 (42 U.S.C. 300gg–22)—

(A) in subsection (a)—

(i) in paragraph (1), by inserting "(other than section 2799A–11)" after "part D"; and

(ii) in paragraph (2), by inserting "(other than section 2799A–11)" after "part D"; and

(B) in subsection (b)—

(i) in paragraph (1), by inserting "(other than section 2799A–11)" after "part D";

(ii) in paragraph (2)(A), by inserting "(other than section 2799A–11)" after "part D"; and

(iii) in paragraph (2)(C)(ii), by inserting "(other than section 2799A–11)" after "part D".

(b) EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974.—

(1) IN GENERAL.—Subtitle B of title I of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1021 et seq.) is amended—

(A) in subpart B of part 7 (29 U.S.C. 1185 et seq.), by adding at the end the following:

## "SEC. 726. OVERSIGHT OF ENTITIES THAT PROVIDE PHARMACY BENEFIT MANAGEMENT SERVICES.

"(a) IN GENERAL.—For plan years beginning on or after the date that is 30 months after the date of enactment of this section (referred to in this subsection and subsection (b) as the 'effective date'), a group health plan or a health insurance issuer offering group health insurance coverage, or an entity providing pharmacy benefit management services on behalf of such a plan or issuer, shall not enter into a contract, including an extension or renewal of a contract, entered into on or after the effective date, with an applicable entity unless such applicable entity agrees to—

"(1) not limit or delay the disclosure of information to the group health plan (including such a plan offered through a health insurance issuer) in such a manner that prevents an entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer offering

H. R. 7148—542

group health insurance coverage from making the reports described in subsection (b); and

"(2) provide the entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer relevant information necessary to make the reports described in subsection (b).

"(b) REPORTS.—

"(1) IN GENERAL.—For plan years beginning on or after the effective date, in the case of any contract between a group health plan or a health insurance issuer offering group health insurance coverage offered in connection with such a plan and an entity providing pharmacy benefit management services on behalf of such plan or issuer, including an extension or renewal of such a contract, entered into on or after the effective date, the entity providing pharmacy benefit management services on behalf of such a group health plan or health insurance issuer, not less frequently than every 6 months (or, at the request of a group health plan, not less frequently than quarterly, and under the same conditions, terms, and cost of the semiannual report under this subsection), shall submit to the group health plan a report in accordance with this section. Each such report shall be made available to such group health plan in plain language, in a machine-readable format, and as the Secretary may determine, other formats. Each such report shall include the information described in paragraph (2).

"(2) INFORMATION DESCRIBED.—For purposes of paragraph (1), the information described in this paragraph is, with respect to drugs covered by a group health plan or group health insurance coverage offered by a health insurance issuer in connection with a group health plan during each reporting period—

"(A) in the case of a group health plan that is offered by a specified large employer or that is a specified large plan, and is not offered as health insurance coverage, or in the case of health insurance coverage for which the election under paragraph (3) is made for the applicable reporting period—

"(i) a list of drugs for which a claim was filed and, with respect to each such drug on such list—

"(I) the contracted compensation paid by the group health plan or health insurance issuer for each covered drug (identified by the National Drug Code) to the entity providing pharmacy benefit management services or other applicable entity on behalf of the group health plan or health insurance issuer;

"(II) the contracted compensation paid to the pharmacy, by any entity providing pharmacy benefit management services or other applicable entity on behalf of the group health plan or health insurance issuer, for each covered drug (identified by the National Drug Code);

"(III) for each such claim, the difference between the amount paid under subclause (I) and the amount paid under subclause (II);

"(IV) the proprietary name, established name or proper name, and the National Drug Code;

H. R. 7148—543

"(V) for each claim for the drug (including original prescriptions and refills) and for each dosage unit of the drug for which a claim was filed, the type of dispensing channel used to furnish the drug, including retail, mail order, or specialty pharmacy;

"(VI) with respect to each drug dispensed, for each type of dispensing channel (including retail, mail order, or specialty pharmacy)—

"(aa) whether such drug is a brand name drug or a generic drug, and—

"(AA) in the case of a brand name drug, the wholesale acquisition cost, listed as cost per days supply and cost per dosage unit, on the date such drug was dispensed; and

"(BB) in the case of a generic drug, the average wholesale price, listed as cost per days supply and cost per dosage unit, on the date such drug was dispensed; and

"(bb) the total number of—

"(AA) prescription claims (including original prescriptions and refills);

"(BB) participants and beneficiaries for whom a claim for such drug was filed through the applicable dispensing channel;

"(CC) dosage units and dosage units per fill of such drug; and

"(DD) days supply of such drug per fill;

"(VII) the net price per course of treatment or single fill, such as a 30-day supply or 90-day supply to the plan or coverage after rebates, fees, alternative discounts, or other remuneration received from applicable entities;

"(VIII) the total amount of out-of-pocket spending by participants and beneficiaries on such drug, including spending through copayments, coinsurance, and deductibles, but not including any amounts spent by participants and beneficiaries on drugs not covered under the plan or coverage, or for which no claim is submitted under the plan or coverage;

"(IX) the total net spending on the drug;

"(X) the total amount received, or expected to be received, by the plan or issuer from any applicable entity in rebates, fees, alternative discounts, or other remuneration;

"(XI) the total amount received, or expected to be received, by the entity providing pharmacy benefit management services, from applicable entities, in rebates, fees, alternative discounts, or other remuneration from such entities—

"(aa) for claims incurred during the reporting period; and

H. R. 7148—544

"(bb) that is related to utilization of such drug or spending on such drug; and

"(XII) to the extent feasible, information on the total amount of remuneration for such drug, including copayment assistance dollars paid, copayment cards applied, or other discounts provided by each drug manufacturer (or entity administering copayment assistance on behalf of such drug manufacturer), to the participants and beneficiaries enrolled in such plan or coverage;

"(ii) a list of each therapeutic class (as defined by the Secretary) for which a claim was filed under the group health plan or health insurance coverage during the reporting period, and, with respect to each such therapeutic class—

"(I) the total gross spending on drugs in such class before rebates, price concessions, alternative discounts, or other remuneration from applicable entities;

"(II) the net spending in such class after such rebates, price concessions, alternative discounts, or other remuneration from applicable entities;

"(III) the total amount received, or expected to be received, by the entity providing pharmacy benefit management services, from applicable entities, in rebates, fees, alternative discounts, or other remuneration from such entities—

"(aa) for claims incurred during the reporting period; and

"(bb) that is related to utilization of drugs or drug spending;

"(IV) the average net spending per 30-day supply and per 90-day supply by the plan or by the issuer with respect to such coverage and its participants and beneficiaries, among all drugs within the therapeutic class for which a claim was filed during the reporting period;

"(V) the number of participants and beneficiaries who filled a prescription for a drug in such class, including the National Drug Code for each such drug;

"(VI) if applicable, a description of the formulary tiers and utilization mechanisms (such as prior authorization or step therapy) employed for drugs in that class; and

"(VII) the total out-of-pocket spending under the plan or coverage by participants and beneficiaries, including spending through copayments, coinsurance, and deductibles, but not including any amounts spent by participants and beneficiaries on drugs not covered under the plan or coverage or for which no claim is submitted under the plan or coverage;

"(iii) with respect to any drug for which gross spending under the group health plan or health insurance coverage exceeded $10,000 during the reporting period or, in the case that gross spending under the

group health plan or coverage exceeded $10,000 during the reporting period with respect to fewer than 50 drugs, with respect to the 50 prescription drugs with the highest spending during the reporting period—

"(I) a list of all other drugs in the same therapeutic class as such drug;

"(II) if applicable, the rationale for the formulary placement of such drug in that therapeutic category or class, selected from a list of standard rationales established by the Secretary, in consultation with stakeholders; and

"(III) any change in formulary placement compared to the prior plan year; and

"(iv) in the case that such plan or issuer (or an entity providing pharmacy benefit management services on behalf of such plan or issuer) has an affiliated pharmacy or pharmacy under common ownership, including mandatory mail and specialty home delivery programs, retail and mail auto-refill programs, and cost sharing assistance incentives funded by an entity providing pharmacy benefit services—

"(I) an explanation of any benefit design parameters that encourage or require participants and beneficiaries in the plan or coverage to fill prescriptions at mail order, specialty, or retail pharmacies;

"(II) the percentage of total prescriptions dispensed by such pharmacies to participants or beneficiaries in such plan or coverage; and

"(III) a list of all drugs dispensed by such pharmacies to participants or beneficiaries enrolled in such plan or coverage, and, with respect to each drug dispensed—

"(aa) the amount charged, per dosage unit, per 30-day supply, or per 90-day supply (as applicable) to the plan or issuer, and to participants and beneficiaries;

"(bb) the median amount charged to such plan or issuer, and the interquartile range of the costs, per dosage unit, per 30-day supply, and per 90-day supply, including amounts paid by the participants and beneficiaries, when the same drug is dispensed by other pharmacies that are not affiliated with or under common ownership with the entity and that are included in the pharmacy network of such plan or coverage;

"(cc) the lowest cost per dosage unit, per 30-day supply and per 90-day supply, for each such drug, including amounts charged to the plan or coverage and to participants and beneficiaries, that is available from any pharmacy included in the network of such plan or coverage; and

"(dd) the net acquisition cost per dosage unit, per 30-day supply, and per 90-day

H. R. 7148—546

supply, if such drug is subject to a maximum price discount; and

"(B) with respect to any group health plan, including group health insurance coverage offered in connection with such a plan, regardless of whether the plan or coverage is offered by a specified large employer or whether it is a specified large plan—

"(i) a summary document for the group health plan that includes such information described in clauses (i) through (iv) of subparagraph (A), as specified by the Secretary through guidance, program instruction, or otherwise (with no requirement of notice and comment rulemaking), that the Secretary determines useful to group health plans for purposes of selecting pharmacy benefit management services, such as an estimated net price to group health plan and participant or beneficiary, a cost per claim, the fee structure or reimbursement model, and estimated cost per participant or beneficiary;

"(ii) a summary document for plans and issuers to provide to participants and beneficiaries, which shall be made available to participants or beneficiaries upon request to their group health plan (including in the case of group health insurance coverage offered in connection with such a plan), that—

"(I) contains such information described in clauses (iii), (iv), (v), and (vi), as applicable, as specified by the Secretary through guidance, program instruction, or otherwise (with no requirement of notice and comment rulemaking) that the Secretary determines useful to participants or beneficiaries in better understanding the plan or coverage or benefits under such plan or coverage;

"(II) contains only aggregate information; and

"(III) states that participants and beneficiaries may request specific, claims-level information required to be furnished under subsection (c) from the group health plan or health insurance issuer; and

"(iii) with respect to drugs covered by such plan or coverage during such reporting period—

"(I) the total net spending by the plan or coverage for all such drugs;

"(II) the total amount received, or expected to be received, by the plan or issuer from any applicable entity in rebates, fees, alternative discounts, or other remuneration; and

"(III) to the extent feasible, information on the total amount of remuneration for such drugs, including copayment assistance dollars paid, copayment cards applied, or other discounts provided by each drug manufacturer (or entity administering copayment assistance on behalf of such drug manufacturer) to participants and beneficiaries;

"(iv) amounts paid directly or indirectly in rebates, fees, or any other type of compensation (as defined

H. R. 7148—547

in section 408(b)(2)(B)(ii)(dd)(AA)) to brokerage firms, brokers, consultants, advisors, or any other individual or firm, for—

"(I) the referral of the group health plan's or health insurance issuer's business to an entity providing pharmacy benefit management services, including the identity of the recipient of such amounts;

"(II) consideration of the entity providing pharmacy benefit management services by the group health plan or health insurance issuer; or

"(III) the retention of the entity by the group health plan or health insurance issuer;

"(v) an explanation of any benefit design parameters that encourage or require participants and beneficiaries in such plan or coverage to fill prescriptions at mail order, specialty, or retail pharmacies that are affiliated with or under common ownership with the entity providing pharmacy benefit management services under such plan or coverage, including mandatory mail and specialty home delivery programs, retail and mail auto-refill programs, and cost-sharing assistance incentives directly or indirectly funded by such entity; and

"(vi) total gross spending on all drugs under the plan or coverage during the reporting period.

"(3) OPT-IN FOR GROUP HEALTH INSURANCE COVERAGE OFFERED BY A SPECIFIED LARGE EMPLOYER OR THAT IS A SPECIFIED LARGE PLAN.—In the case of group health insurance coverage offered in connection with a group health plan that is offered by a specified large employer or is a specified large plan, such group health plan may, on an annual basis, for plan years beginning on or after the date that is 30 months after the date of enactment of this section, elect to require an entity providing pharmacy benefit management services on behalf of the health insurance issuer to submit to such group health plan a report that includes all of the information described in paragraph (2)(A), in addition to the information described in paragraph (2)(B).

"(4) PRIVACY REQUIREMENTS.—

"(A) IN GENERAL.—An entity providing pharmacy benefit management services on behalf of a group health plan or a health insurance issuer offering group health insurance coverage shall report information under paragraph (1) in a manner consistent with the privacy regulations promulgated under section 13402(a) of the Health Information Technology for Economic and Clinical Health Act (42 U.S.C. 17932(a)) and consistent with the privacy regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 in part 160 and subparts A and E of part 164 of title 45, Code of Federal Regulations (or successor regulations) (referred to in this paragraph as the 'HIPAA privacy regulations') and shall restrict the use and disclosure of such information according to such privacy regulations and such HIPAA privacy regulations.

"(B) ADDITIONAL REQUIREMENTS.—

H. R. 7148—548

"(i) IN GENERAL.—An entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer offering group health insurance coverage that submits a report under paragraph (1) shall ensure that such report contains only summary health information, as defined in section 164.504(a) of title 45, Code of Federal Regulations (or successor regulations).

"(ii) RESTRICTIONS.—In carrying out this subsection, a group health plan shall comply with section 164.504(f) of title 45, Code of Federal Regulations (or a successor regulation), and a plan sponsor shall act in accordance with the terms of the agreement described in such section.

"(C) RULE OF CONSTRUCTION.—

"(i) Nothing in this section shall be construed to modify the requirements for the creation, receipt, maintenance, or transmission of protected health information under the HIPAA privacy regulations.

"(ii) Nothing in this section shall be construed to affect the application of any Federal or State privacy or civil rights law, including the HIPAA privacy regulations, the Genetic Information Nondiscrimination Act of 2008 (Public Law 110–233) (including the amendments made by such Act), the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.), section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. 18116), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d), and title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e).

"(D) WRITTEN NOTICE.—Each plan year, group health plans, including with respect to group health insurance coverage offered in connection with a group health plan, shall provide to each participant or beneficiary written notice informing the participant or beneficiary of the requirement for entities providing pharmacy benefit management services on behalf of the group health plan or health insurance issuer offering group health insurance coverage to submit reports to group health plans under paragraph (1), as applicable, which may include incorporating such notification in plan documents provided to the participant or beneficiary, or providing individual notification.

"(E) LIMITATION TO BUSINESS ASSOCIATES.—A group health plan receiving a report under paragraph (1) may disclose such information only to the entity from which the report was received or to that entity's business associates as defined in section 160.103 of title 45, Code of Federal Regulations (or successor regulations) or as permitted by the HIPAA privacy regulations.

"(F) CLARIFICATION REGARDING PUBLIC DISCLOSURE OF INFORMATION.—Nothing in this section shall prevent an entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer offering group health insurance coverage, from placing reasonable restrictions on the public disclosure of the

information contained in a report described in paragraph (1), except that such plan, issuer, or entity may not—

"(i) restrict disclosure of such report to the Department of Health and Human Services, the Department of Labor, or the Department of the Treasury; or

"(ii) prevent disclosure for the purposes of subsection (c), or any other public disclosure requirement under this section.

"(G) LIMITED FORM OF REPORT.—The Secretary shall define through rulemaking a limited form of the report under paragraph (1) required with respect to any group health plan established by a plan sponsor that is, or is affiliated with, a drug manufacturer, drug wholesaler, or other direct participant in the drug supply chain, in order to prevent anti-competitive behavior.

"(5) STANDARD FORMAT AND REGULATIONS.—

"(A) IN GENERAL.—Not later than 18 months after the date of enactment of this section, the Secretary shall specify through rulemaking a standard format for entities providing pharmacy benefit management services on behalf of group health plans and health insurance issuers offering group health insurance coverage, to submit reports required under paragraph (1).

"(B) ADDITIONAL REGULATIONS.—Not later than 18 months after the date of enactment of this section, the Secretary shall, through rulemaking, promulgate any other final regulations necessary to implement the requirements of this section. In promulgating such regulations, the Secretary shall, to the extent practicable, align the reporting requirements under this section with the reporting requirements under section 725.

"(c) REQUIREMENT TO PROVIDE INFORMATION TO PARTICIPANTS OR BENEFICIARIES.—A group health plan, including with respect to group health insurance coverage offered in connection with a group health plan, upon request of a participant or beneficiary, shall provide to such participant or beneficiary—

"(1) the summary document described in subsection (b)(2)(B)(ii); and

"(2) the information described in subsection (b)(2)(A)(i)(III) with respect to a claim made by or on behalf of such participant or beneficiary.

"(d) RULE OF CONSTRUCTION.—Nothing in this section shall be construed to permit a health insurance issuer, group health plan, entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer, or other entity to restrict disclosure to, or otherwise limit the access of, the Secretary to a report described in subsection (b)(1) or information related to compliance with subsections (a), (b), or (c) of this section or section 502(c)(13) by such issuer, plan, or entity.

"(e) DEFINITIONS.—In this section:

"(1) APPLICABLE ENTITY.—The term 'applicable entity' means—

"(A) an applicable group purchasing organization, drug manufacturer, distributor, wholesaler, rebate aggregator (or other purchasing entity designed to aggregate rebates), or associated third party;

"(B) any subsidiary, parent, affiliate, or subcontractor of a group health plan, health insurance issuer, entity that provides pharmacy benefit management services on behalf of such a plan or issuer, or any entity described in subparagraph (A); or

"(C) such other entity as the Secretary may specify through rulemaking.

"(2) APPLICABLE GROUP PURCHASING ORGANIZATION.—The term 'applicable group purchasing organization' means a group purchasing organization that is affiliated with or under common ownership with an entity providing pharmacy benefit management services.

"(3) CONTRACTED COMPENSATION.—The term 'contracted compensation' means the sum of any ingredient cost and dispensing fee for a drug (inclusive of the out-of-pocket costs to the participant or beneficiary), or another analogous compensation structure that the Secretary may specify through regulations.

"(4) GROSS SPENDING.—The term 'gross spending', with respect to prescription drug benefits under a group health plan or health insurance coverage, means the amount spent by a group health plan or health insurance issuer on prescription drug benefits, calculated before the application of rebates, fees, alternative discounts, or other remuneration.

"(5) NET SPENDING.—The term 'net spending', with respect to prescription drug benefits under a group health plan or health insurance coverage, means the amount spent by a group health plan or health insurance issuer on prescription drug benefits, calculated after the application of rebates, fees, alternative discounts, or other remuneration.

"(6) PLAN SPONSOR.—The term 'plan sponsor' has the meaning given such term in section 3(16)(B).

"(7) REMUNERATION.—The term 'remuneration' has the meaning given such term by the Secretary through rulemaking, which shall be reevaluated by the Secretary every 5 years.

"(8) SPECIFIED LARGE EMPLOYER.—The term 'specified large employer' means, in connection with a group health plan (including group health insurance coverage offered in connection with such a plan) established or maintained by a single employer, with respect to a calendar year or a plan year, as applicable, an employer who employed an average of at least 100 employees on business days during the preceding calendar year or plan year and who employs at least 1 employee on the first day of the calendar year or plan year.

"(9) SPECIFIED LARGE PLAN.—The term 'specified large plan' means a group health plan (including group health insurance coverage offered in connection with such a plan) established or maintained by a plan sponsor described in clause (ii) or (iii) of section 3(16)(B) that had an average of at least 100 participants on business days during the preceding calendar year or plan year, as applicable.

"(10) WHOLESALE ACQUISITION COST.—The term 'wholesale acquisition cost' has the meaning given such term in section 1847A(c)(6)(B) of the Social Security Act (42 U.S.C. 1395w–3a(c)(6)(B)).";

(B) in section 502 (29 U.S.C. 1132)—

H. R. 7148—551

(i) in subsection (a)(6), by striking "or (9)" and inserting "(9), or (13)";

(ii) in subsection (b)(3), by striking "under subsection (c)(9)" and inserting "under paragraphs (9) and (13) of subsection (c)"; and

(iii) in subsection (c), by adding at the end the following:

"(13) SECRETARIAL ENFORCEMENT AUTHORITY RELATING TO OVERSIGHT OF PHARMACY BENEFIT MANAGEMENT SERVICES.—

"(A) FAILURE TO PROVIDE INFORMATION.—The Secretary may impose a penalty against a plan administrator of a group health plan, a health insurance issuer offering group health insurance coverage, or an entity providing pharmacy benefit management services on behalf of such a plan or issuer, or an applicable entity (as defined in section 726(e)) that violates section 726(a); an entity providing pharmacy benefit management services on behalf of such a plan or issuer that fails to provide the information required under section 726(b); or any person who causes a group health plan to fail to provide the information required under section 726(c), in the amount of $10,000 for each day during which such violation continues or such information is not disclosed or reported.

"(B) FALSE INFORMATION.—The Secretary may impose a penalty against a plan administrator of a group health plan, a health insurance issuer offering group health insurance coverage, an entity providing pharmacy benefit management services, or an applicable entity (as defined in section 726(e)) that knowingly provides false information under section 726, in an amount not to exceed $100,000 for each item of false information. Such penalty shall be in addition to other penalties as may be prescribed by law.

"(C) WAIVERS.—The Secretary may waive penalties under subparagraph (A), or extend the period of time for compliance with a requirement of this section, for an entity in violation of section 726 that has made a good-faith effort to comply with the requirements of section 726."; and

(C) in section 732(a) (29 U.S.C. 1191a(a)), by striking "section 711" and inserting "sections 711 and 726".

(2) CLERICAL AMENDMENT.—The table of contents in section 1 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1001 et seq.) is amended by inserting after the item relating to section 725 the following new item:

"Sec. 726. Oversight of entities that provide pharmacy benefit management services.".

(c) INTERNAL REVENUE CODE OF 1986.—

(1) IN GENERAL.—Chapter 100 of the Internal Revenue Code of 1986 is amended—

(A) by adding at the end of subchapter B the following:

**"SEC. 9826. OVERSIGHT OF ENTITIES THAT PROVIDE PHARMACY BENEFIT MANAGEMENT SERVICES.**

"(a) IN GENERAL.—For plan years beginning on or after the date that is 30 months after the date of enactment of this section (referred to in this subsection and subsection (b) as the 'effective

H. R. 7148—552

date'), a group health plan, or an entity providing pharmacy benefit management services on behalf of such a plan, shall not enter into a contract, including an extension or renewal of a contract, entered into on or after the effective date, with an applicable entity unless such applicable entity agrees to—

"(1) not limit or delay the disclosure of information to the group health plan in such a manner that prevents an entity providing pharmacy benefit management services on behalf of a group health plan from making the reports described in subsection (b); and

"(2) provide the entity providing pharmacy benefit management services on behalf of a group health plan relevant information necessary to make the reports described in subsection (b).

"(b) REPORTS.—

"(1) IN GENERAL.—For plan years beginning on or after the effective date, in the case of any contract between a group health plan and an entity providing pharmacy benefit management services on behalf of such plan, including an extension or renewal of such a contract, entered into on or after the effective date, the entity providing pharmacy benefit management services on behalf of such a group health plan, not less frequently than every 6 months (or, at the request of a group health plan, not less frequently than quarterly, and under the same conditions, terms, and cost of the semiannual report under this subsection), shall submit to the group health plan a report in accordance with this section. Each such report shall be made available to such group health plan in plain language, in a machine-readable format, and as the Secretary may determine, other formats. Each such report shall include the information described in paragraph (2).

"(2) INFORMATION DESCRIBED.—For purposes of paragraph (1), the information described in this paragraph is, with respect to drugs covered by a group health plan during each reporting period—

"(A) in the case of a group health plan that is offered by a specified large employer or that is a specified large plan, and is not offered as health insurance coverage, or in the case of health insurance coverage for which the election under paragraph (3) is made for the applicable reporting period—

"(i) a list of drugs for which a claim was filed and, with respect to each such drug on such list—

"(I) the contracted compensation paid by the group health plan for each covered drug (identified by the National Drug Code) to the entity providing pharmacy benefit management services or other applicable entity on behalf of the group health plan;

"(II) the contracted compensation paid to the pharmacy, by any entity providing pharmacy benefit management services or other applicable entity on behalf of the group health plan, for each covered drug (identified by the National Drug Code);

"(III) for each such claim, the difference between the amount paid under subclause (I) and the amount paid under subclause (II);

"(IV) the proprietary name, established name or proper name, and the National Drug Code;

"(V) for each claim for the drug (including original prescriptions and refills) and for each dosage unit of the drug for which a claim was filed, the type of dispensing channel used to furnish the drug, including retail, mail order, or specialty pharmacy;

"(VI) with respect to each drug dispensed, for each type of dispensing channel (including retail, mail order, or specialty pharmacy)—

"(aa) whether such drug is a brand name drug or a generic drug, and—

"(AA) in the case of a brand name drug, the wholesale acquisition cost, listed as cost per days supply and cost per dosage unit, on the date such drug was dispensed; and

"(BB) in the case of a generic drug, the average wholesale price, listed as cost per days supply and cost per dosage unit, on the date such drug was dispensed; and

"(bb) the total number of—

"(AA) prescription claims (including original prescriptions and refills);

"(BB) participants and beneficiaries for whom a claim for such drug was filed through the applicable dispensing channel;

"(CC) dosage units and dosage units per fill of such drug; and

"(DD) days supply of such drug per fill;

"(VII) the net price per course of treatment or single fill, such as a 30-day supply or 90-day supply to the plan after rebates, fees, alternative discounts, or other remuneration received from applicable entities;

"(VIII) the total amount of out-of-pocket spending by participants and beneficiaries on such drug, including spending through copayments, coinsurance, and deductibles, but not including any amounts spent by participants and beneficiaries on drugs not covered under the plan, or for which no claim is submitted under the plan;

"(IX) the total net spending on the drug;

"(X) the total amount received, or expected to be received, by the plan from any applicable entity in rebates, fees, alternative discounts, or other remuneration;

"(XI) the total amount received, or expected to be received, by the entity providing pharmacy benefit management services, from applicable entities, in rebates, fees, alternative discounts, or other remuneration from such entities—

"(aa) for claims incurred during the reporting period; and

H. R. 7148—554

"(bb) that is related to utilization of such drug or spending on such drug; and

"(XII) to the extent feasible, information on the total amount of remuneration for such drug, including copayment assistance dollars paid, copayment cards applied, or other discounts provided by each drug manufacturer (or entity administering copayment assistance on behalf of such drug manufacturer), to the participants and beneficiaries enrolled in such plan;

"(ii) a list of each therapeutic class (as defined by the Secretary) for which a claim was filed under the group health plan during the reporting period, and, with respect to each such therapeutic class—

"(I) the total gross spending on drugs in such class before rebates, price concessions, alternative discounts, or other remuneration from applicable entities;

"(II) the net spending in such class after such rebates, price concessions, alternative discounts, or other remuneration from applicable entities;

"(III) the total amount received, or expected to be received, by the entity providing pharmacy benefit management services, from applicable entities, in rebates, fees, alternative discounts, or other remuneration from such entities—

"(aa) for claims incurred during the reporting period; and

"(bb) that is related to utilization of drugs or drug spending;

"(IV) the average net spending per 30-day supply and per 90-day supply by the plan and its participants and beneficiaries, among all drugs within the therapeutic class for which a claim was filed during the reporting period;

"(V) the number of participants and beneficiaries who filled a prescription for a drug in such class, including the National Drug Code for each such drug;

"(VI) if applicable, a description of the formulary tiers and utilization mechanisms (such as prior authorization or step therapy) employed for drugs in that class; and

"(VII) the total out-of-pocket spending under the plan by participants and beneficiaries, including spending through copayments, coinsurance, and deductibles, but not including any amounts spent by participants and beneficiaries on drugs not covered under the plan or for which no claim is submitted under the plan;

"(iii) with respect to any drug for which gross spending under the group health plan exceeded $10,000 during the reporting period or, in the case that gross spending under the group health plan exceeded $10,000 during the reporting period with respect to fewer than 50 drugs, with respect to the 50 prescription drugs

with the highest spending during the reporting period—

"(I) a list of all other drugs in the same therapeutic class as such drug;

"(II) if applicable, the rationale for the formulary placement of such drug in that therapeutic category or class, selected from a list of standard rationales established by the Secretary, in consultation with stakeholders; and

"(III) any change in formulary placement compared to the prior plan year; and

"(iv) in the case that such plan (or an entity providing pharmacy benefit management services on behalf of such plan) has an affiliated pharmacy or pharmacy under common ownership, including mandatory mail and specialty home delivery programs, retail and mail auto-refill programs, and cost sharing assistance incentives funded by an entity providing pharmacy benefit services—

"(I) an explanation of any benefit design parameters that encourage or require participants and beneficiaries in the plan to fill prescriptions at mail order, specialty, or retail pharmacies;

"(II) the percentage of total prescriptions dispensed by such pharmacies to participants or beneficiaries in such plan; and

"(III) a list of all drugs dispensed by such pharmacies to participants or beneficiaries enrolled in such plan, and, with respect to each drug dispensed—

"(aa) the amount charged, per dosage unit, per 30-day supply, or per 90-day supply (as applicable) to the plan, and to participants and beneficiaries;

"(bb) the median amount charged to such plan, and the interquartile range of the costs, per dosage unit, per 30-day supply, and per 90-day supply, including amounts paid by the participants and beneficiaries, when the same drug is dispensed by other pharmacies that are not affiliated with or under common ownership with the entity and that are included in the pharmacy network of such plan;

"(cc) the lowest cost per dosage unit, per 30-day supply and per 90-day supply, for each such drug, including amounts charged to the plan and to participants and beneficiaries, that is available from any pharmacy included in the network of such plan; and

"(dd) the net acquisition cost per dosage unit, per 30-day supply, and per 90-day supply, if such drug is subject to a maximum price discount; and

"(B) with respect to any group health plan, regardless of whether the plan is offered by a specified large employer or whether it is a specified large plan—

H. R. 7148—556

"(i) a summary document for the group health plan that includes such information described in clauses (i) through (iv) of subparagraph (A), as specified by the Secretary through guidance, program instruction, or otherwise (with no requirement of notice and comment rulemaking), that the Secretary determines useful to group health plans for purposes of selecting pharmacy benefit management services, such as an estimated net price to group health plan and participant or beneficiary, a cost per claim, the fee structure or reimbursement model, and estimated cost per participant or beneficiary;

"(ii) a summary document for plans to provide to participants and beneficiaries, which shall be made available to participants or beneficiaries upon request to their group health plan, that—

"(I) contains such information described in clauses (iii), (iv), (v), and (vi), as applicable, as specified by the Secretary through guidance, program instruction, or otherwise (with no requirement of notice and comment rulemaking) that the Secretary determines useful to participants or beneficiaries in better understanding the plan or benefits under such plan;

"(II) contains only aggregate information; and

"(III) states that participants and beneficiaries may request specific, claims-level information required to be furnished under subsection (c) from the group health plan; and

"(iii) with respect to drugs covered by such plan during such reporting period—

"(I) the total net spending by the plan for all such drugs;

"(II) the total amount received, or expected to be received, by the plan from any applicable entity in rebates, fees, alternative discounts, or other remuneration; and

"(III) to the extent feasible, information on the total amount of remuneration for such drugs, including copayment assistance dollars paid, copayment cards applied, or other discounts provided by each drug manufacturer (or entity administering copayment assistance on behalf of such drug manufacturer) to participants and beneficiaries;

"(iv) amounts paid directly or indirectly in rebates, fees, or any other type of compensation (as defined in section 408(b)(2)(B)(ii)(dd)(AA) of the Employee Retirement Income Security Act (29 U.S.C. 1108(b)(2)(B)(ii)(dd)(AA))) to brokerage firms, brokers, consultants, advisors, or any other individual or firm, for—

"(I) the referral of the group health plan's business to an entity providing pharmacy benefit management services, including the identity of the recipient of such amounts;

H. R. 7148—557

"(II) consideration of the entity providing pharmacy benefit management services by the group health plan; or

"(III) the retention of the entity by the group health plan;

"(v) an explanation of any benefit design parameters that encourage or require participants and beneficiaries in such plan to fill prescriptions at mail order, specialty, or retail pharmacies that are affiliated with or under common ownership with the entity providing pharmacy benefit management services under such plan, including mandatory mail and specialty home delivery programs, retail and mail auto-refill programs, and cost-sharing assistance incentives directly or indirectly funded by such entity; and

"(vi) total gross spending on all drugs under the plan during the reporting period.

"(3) OPT-IN FOR GROUP HEALTH INSURANCE COVERAGE OFFERED BY A SPECIFIED LARGE EMPLOYER OR THAT IS A SPECIFIED LARGE PLAN.—In the case of group health insurance coverage offered in connection with a group health plan that is offered by a specified large employer or is a specified large plan, such group health plan may, on an annual basis, for plan years beginning on or after the date that is 30 months after the date of enactment of this section, elect to require an entity providing pharmacy benefit management services on behalf of the health insurance issuer to submit to such group health plan a report that includes all of the information described in paragraph (2)(A), in addition to the information described in paragraph (2)(B).

"(4) PRIVACY REQUIREMENTS.—

"(A) IN GENERAL.—An entity providing pharmacy benefit management services on behalf of a group health plan shall report information under paragraph (1) in a manner consistent with the privacy regulations promulgated under section 13402(a) of the Health Information Technology for Economic and Clinical Health Act (42 U.S.C. 17932(a)) and consistent with the privacy regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 in part 160 and subparts A and E of part 164 of title 45, Code of Federal Regulations (or successor regulations) (referred to in this paragraph as the 'HIPAA privacy regulations') and shall restrict the use and disclosure of such information according to such privacy regulations and such HIPAA privacy regulations.

"(B) ADDITIONAL REQUIREMENTS.—

"(i) IN GENERAL.—An entity providing pharmacy benefit management services on behalf of a group health plan that submits a report under paragraph (1) shall ensure that such report contains only summary health information, as defined in section 164.504(a) of title 45, Code of Federal Regulations (or successor regulations).

"(ii) RESTRICTIONS.—In carrying out this subsection, a group health plan shall comply with section 164.504(f) of title 45, Code of Federal Regulations (or a successor regulation), and a plan sponsor shall act

H. R. 7148—558

in accordance with the terms of the agreement described in such section.

"(C) RULE OF CONSTRUCTION.—

"(i) Nothing in this section shall be construed to modify the requirements for the creation, receipt, maintenance, or transmission of protected health information under the HIPAA privacy regulations.

"(ii) Nothing in this section shall be construed to affect the application of any Federal or State privacy or civil rights law, including the HIPAA privacy regulations, the Genetic Information Nondiscrimination Act of 2008 (Public Law 110–233) (including the amendments made by such Act), the Americans with Disabilities Act of 1990 (42 U.S.C. 12101 et seq.), section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. 18116), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d), and title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e).

"(D) WRITTEN NOTICE.—Each plan year, group health plans shall provide to each participant or beneficiary written notice informing the participant or beneficiary of the requirement for entities providing pharmacy benefit management services on behalf of the group health plan to submit reports to group health plans under paragraph (1), as applicable, which may include incorporating such notification in plan documents provided to the participant or beneficiary, or providing individual notification.

"(E) LIMITATION TO BUSINESS ASSOCIATES.—A group health plan receiving a report under paragraph (1) may disclose such information only to the entity from which the report was received or to that entity's business associates as defined in section 160.103 of title 45, Code of Federal Regulations (or successor regulations) or as permitted by the HIPAA privacy regulations.

"(F) CLARIFICATION REGARDING PUBLIC DISCLOSURE OF INFORMATION.—Nothing in this section shall prevent an entity providing pharmacy benefit management services on behalf of a group health plan, from placing reasonable restrictions on the public disclosure of the information contained in a report described in paragraph (1), except that such plan or entity may not—

"(i) restrict disclosure of such report to the Department of Health and Human Services, the Department of Labor, or the Department of the Treasury; or

"(ii) prevent disclosure for the purposes of subsection (c), or any other public disclosure requirement under this section.

"(G) LIMITED FORM OF REPORT.—The Secretary shall define through rulemaking a limited form of the report under paragraph (1) required with respect to any group health plan established by a plan sponsor that is, or is affiliated with, a drug manufacturer, drug wholesaler, or other direct participant in the drug supply chain, in order to prevent anti-competitive behavior.

"(5) STANDARD FORMAT AND REGULATIONS.—

H. R. 7148—559

"(A) IN GENERAL.—Not later than 18 months after the date of enactment of this section, the Secretary shall specify through rulemaking a standard format for entities providing pharmacy benefit management services on behalf of group health plans, to submit reports required under paragraph (1).

"(B) ADDITIONAL REGULATIONS.—Not later than 18 months after the date of enactment of this section, the Secretary shall, through rulemaking, promulgate any other final regulations necessary to implement the requirements of this section. In promulgating such regulations, the Secretary shall, to the extent practicable, align the reporting requirements under this section with the reporting requirements under section 9825.

"(c) REQUIREMENT TO PROVIDE INFORMATION TO PARTICIPANTS OR BENEFICIARIES.—A group health plan, upon request of a participant or beneficiary, shall provide to such participant or beneficiary—

"(1) the summary document described in subsection (b)(2)(B)(ii); and

"(2) the information described in subsection (b)(2)(A)(i)(III) with respect to a claim made by or on behalf of such participant or beneficiary.

"(d) RULE OF CONSTRUCTION.—Nothing in this section shall be construed to permit a health insurance issuer, group health plan, entity providing pharmacy benefit management services on behalf of a group health plan or health insurance issuer, or other entity to restrict disclosure to, or otherwise limit the access of, the Secretary to a report described in subsection (b)(1) or information related to compliance with subsections (a), (b), or (c) of this section or section 4980D(g) by such issuer, plan, or entity.

"(e) DEFINITIONS.—In this section:

"(1) APPLICABLE ENTITY.—The term 'applicable entity' means—

"(A) an applicable group purchasing organization, drug manufacturer, distributor, wholesaler, rebate aggregator (or other purchasing entity designed to aggregate rebates), or associated third party;

"(B) any subsidiary, parent, affiliate, or subcontractor of a group health plan, health insurance issuer, entity that provides pharmacy benefit management services on behalf of such a plan or issuer, or any entity described in subparagraph (A); or

"(C) such other entity as the Secretary may specify through rulemaking.

"(2) APPLICABLE GROUP PURCHASING ORGANIZATION.—The term 'applicable group purchasing organization' means a group purchasing organization that is affiliated with or under common ownership with an entity providing pharmacy benefit management services.

"(3) CONTRACTED COMPENSATION.—The term 'contracted compensation' means the sum of any ingredient cost and dispensing fee for a drug (inclusive of the out-of-pocket costs to the participant or beneficiary), or another analogous compensation structure that the Secretary may specify through regulations.

H. R. 7148—560

"(4) GROSS SPENDING.—The term 'gross spending', with respect to prescription drug benefits under a group health plan, means the amount spent by a group health plan on prescription drug benefits, calculated before the application of rebates, fees, alternative discounts, or other remuneration.

"(5) NET SPENDING.—The term 'net spending', with respect to prescription drug benefits under a group health plan, means the amount spent by a group health plan on prescription drug benefits, calculated after the application of rebates, fees, alternative discounts, or other remuneration.

"(6) PLAN SPONSOR.—The term 'plan sponsor' has the meaning given such term in section 3(16)(B) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002(16)(B)).

"(7) REMUNERATION.—The term 'remuneration' has the meaning given such term by the Secretary, through rulemaking, which shall be reevaluated by the Secretary every 5 years.

"(8) SPECIFIED LARGE EMPLOYER.—The term 'specified large employer' means, in connection with a group health plan established or maintained by a single employer, with respect to a calendar year or a plan year, as applicable, an employer who employed an average of at least 100 employees on business days during the preceding calendar year or plan year and who employs at least 1 employee on the first day of the calendar year or plan year.

"(9) SPECIFIED LARGE PLAN.—The term 'specified large plan' means a group health plan established or maintained by a plan sponsor described in clause (ii) or (iii) of section 3(16)(B) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002(16)(B)) that had an average of at least 100 participants on business days during the preceding calendar year or plan year, as applicable.

"(10) WHOLESALE ACQUISITION COST.—The term 'wholesale acquisition cost' has the meaning given such term in section 1847A(c)(6)(B) of the Social Security Act (42 U.S.C. 1395w–3a(c)(6)(B)).";

(2) EXCEPTION FOR CERTAIN GROUP HEALTH PLANS.—Section 9831(a)(2) of the Internal Revenue Code of 1986 is amended by inserting "other than with respect to section 9826," before "any group health plan".

(3) ENFORCEMENT.—Section 4980D of the Internal Revenue Code of 1986 is amended by adding at the end the following new subsection:

"(g) APPLICATION TO REQUIREMENTS IMPOSED ON CERTAIN ENTITIES PROVIDING PHARMACY BENEFIT MANAGEMENT SERVICES.—In the case of any requirement under section 9826 that applies with respect to an entity providing pharmacy benefit management services on behalf of a group health plan, any reference in this section to such group health plan (and the reference in subsection (e)(1) to the employer) shall be treated as including a reference to such entity.".

H. R. 7148—561

(4) CLERICAL AMENDMENT.—The table of sections for sub-chapter B of chapter 100 of the Internal Revenue Code of 1986 is amended by adding at the end the following new item:

"Sec. 9826. Oversight of entities that provide pharmacy benefit management services.".

**SEC. 6702. FULL REBATE PASS THROUGH TO PLAN; EXCEPTION FOR INNOCENT PLAN FIDUCIARIES.**

(a) IN GENERAL.—Section 408(b)(2) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1108(b)(2)) is amended—

(1) in subparagraph (B)(viii)—

(A) by redesignating subclauses (II) through (IV) as subclauses (III) through (V), respectively;

(B) in subclause (I)—

(i) by striking "subclause (II)" and inserting "subclause (III)"; and

(ii) by striking "subclauses (II) and (III)" and inserting "subclauses (III) and (IV)"; and

(C) by inserting after subclause (I) the following:

"(II) Pursuant to subsection (a), subparagraphs (C) and (D) of section 406(a)(1) shall not apply to a responsible plan fiduciary, notwithstanding any failure to remit required amounts under subparagraph (C)(i), if the following conditions are met:

"(aa) The responsible plan fiduciary did not know that the covered service provider failed or would fail to make required remittances and reasonably believed that the covered service provider remitted such required amounts.

"(bb) The responsible plan fiduciary, upon discovering that the covered service provider failed to remit the required amounts, requests in writing that the covered service provider remit such amounts.

"(cc) If the covered service provider fails to comply with a written request described in subclause (III) within 90 days of the request, the responsible plan fiduciary notifies the Secretary of the covered service provider's failure, in accordance with subclauses (III) and (IV).''; and

(2) by adding at the end the following:

"(C)(i)(I) For plan years beginning on or after the date that is 30 months after the date of enactment of this subparagraph (referred to in this clause as the 'effective date'), no contract or arrangement or renewal or extension of a contract or arrangement, entered into on or after the effective date, for services between a covered plan and a covered service provider (or between a sponsor of a covered plan and a covered service provider), through a health insurance issuer offering group health insurance coverage, a third-party administrator, an entity providing pharmacy benefit management services, or other entity, for pharmacy benefit management services, is reasonable within the meaning of this paragraph unless such entity providing pharmacy benefit management services—

"(aa) remits 100 percent of rebates, fees, alternative discounts, and other remuneration received from any applicable entity that are related to utilization of drugs or drug spending under such health plan or health insurance coverage, to the group health plan or, in the case of a health insurance issuer offering group health insurance

coverage in connection with a group health plan, to the health insurance issuer offering group health insurance coverage on behalf of the plan; and

"(bb) does not enter into any contract for pharmacy benefit management services on behalf of such a plan or coverage, with an applicable entity unless 100 percent of rebates, fees, alternative discounts, and other remuneration received under such contract that are related to the utilization of drugs or drug spending under such group health plan or health insurance coverage are remitted to the group health plan or, in the case of a health insurance issuer offering group health insurance coverage in connection with a group health plan, to the health insurance issuer on behalf of the plan by the entity providing pharmacy benefit management services.

"(II) Nothing in subclause (I) shall be construed to affect the term of a contract or arrangement, as in effect on the effective date (as described in such subclause), except that such subclause shall apply to any renewal or extension of such a contract or arrangement entered into on or after such effective date, as so described.

"(ii) With respect to such rebates, fees, alternative discounts, and other remuneration—

"(I) the rebates, fees, alternative discounts, and other remuneration under clause (i)(I) shall be—

"(aa) remitted—

"(AA) on a quarterly basis, to the group health plan or, in the case of a health insurance issuer offering group health insurance coverage in connection with a group health plan, to the group health insurance issuer on behalf of the plan, not later than 90 days after the end of each quarter; or

"(BB) in the case of an underpayment in a remittance for a prior quarter, as soon as practicable, but not later than 90 days after notice of the underpayment is first given;

"(bb) fully disclosed and enumerated to the group health plan or health insurance issuer; and

"(cc) returned to the covered service provider for pharmacy benefit management services on behalf of the group health plan if any audit by a plan sponsor, issuer or a third party designated by a plan sponsor, indicates that the amounts received are in excess of correct amounts after such amounts have been paid to the group health plan, in the amount of such excess;

"(II) the Secretary may issue regulations governing—

"(aa) procedures for the remittance of rebates, fees, alternative discounts, and other remuneration under subclause (I)(aa);

"(bb) any audit pursuant to this subparagraph; and

"(cc) the timing, manner, and content of the disclosure of rebates, fees, alternative discounts, and other remuneration under subclause (I)(bb) as well as any other information the Secretary determines necessary for the responsible plan fiduciary to consider the reasonableness of the contract or arrangement (provided that such information does not

H. R. 7148—563

include personally identifiable health information or protected health information subject to established individual privacy and nondiscrimination requirements under law); and

"(III) the records of such rebates, fees, alternative discounts, other remuneration, and disclosures, shall be available for audit by the plan (or the plan sponsor, issuer, or a third party designated by a plan sponsor on behalf of the plan), not less than once per plan year.

"(iii) To ensure that an entity providing pharmacy benefit management services is able to meet the requirements of clause (ii)(I), a rebate aggregator (or other purchasing entity designed to aggregate rebates) and an applicable group purchasing organization shall remit such rebates to the entity providing pharmacy benefit management services not later than 45 days after the end of each quarter.

"(iv) A third-party administrator of a group health plan, a health insurance issuer offering group health insurance coverage, or a covered service provider for pharmacy benefit management services under such health plan or health insurance coverage shall make rebate contracts with rebate aggregators or drug manufacturers available for audit by such plan, subject to reasonable restrictions (as determined by the Secretary) on confidentiality to prevent re-disclosure of such contracts or use of such information in audits for purposes unrelated to this section.

"(v) Audits carried out under clauses (ii)(III) and (iv) shall be performed by an auditor selected by the responsible plan fiduciary. Payment for such auditors shall not be made, whether directly or indirectly, by the entity providing pharmacy benefit management services.

"(vi) Nothing in this subparagraph shall be construed to—

"(I) prohibit reasonable payments to entities offering pharmacy benefit management services for bona fide services using a fee structure not described in this subparagraph, provided that such fees are transparent and quantifiable to group health plans and health insurance issuers;

"(II) require a third-party administrator of a group health plan or covered service provider for pharmacy benefit management services under such health plan or health insurance coverage to remit bona fide service fees to the group health plan;

"(III) limit the ability of a group health plan or health insurance issuer to pass through rebates, fees, alternative discounts, and other remuneration to the participant or beneficiary;

"(IV) modify the requirements for the creation, receipt, maintenance, or transmission of protected health information under the privacy regulations promulgated under the Health Insurance Portability and Accountability Act of 1996 in part 160 and subparts A and E of part 164 of title 45, Code of Federal Regulations (or successor regulations); or

"(V) limit any requirement under subparagraph (A) or (B).

"(vii) For purposes of this subparagraph—

"(I) the terms 'applicable entity' and 'applicable group purchasing organization' have the meanings given such terms in section 726(e);


H. R. 7148—565

the covered plan, in which such entity contracts, in connection with such plan, with a service provider for pharmacy benefit management services, shall be considered an indirect furnishing of goods, services, or facilities between the covered plan and the service provider for pharmacy benefit management services acting as the party in interest.''.

(B) EXEMPTION.—Section 408(b)(2)(B) (29 U.S.C. 1108(b)(2)(B)) of such Act is amended by adding at the end the following:

''(x) A service provider for pharmacy benefit management services that is considered to indirectly furnish goods, services, or facilities to a covered plan, as described in clause (i)(I), is entitled to relief with respect to a violation of this section provided the conditions for receiving such relief are satisfied.''.

(C) HEALTH INSURANCE ISSUER AND HEALTH INSURANCE COVERAGE DEFINED.—Section 408(b)(2)(B)(ii)(I)(aa) of such Act (29 U.S.C. 1108(b)(2)(B)(ii)(I)(aa)) is amended by inserting before the period at the end ''and the terms 'health insurance coverage' and 'health insurance issuer' have the meanings given such terms in section 733(b)''.

(D) TECHNICAL AMENDMENT.—Section 408(b)(2)(B)(ii)(I)(aa) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1108(b)(2)(B)(ii)(I)(aa)) is amended by inserting ''in'' after ''defined''.

(E) REGULATORY AUTHORITY.—Section 408(b)(2)(B)(iii) of such Act (29 U.S.C. 1108(b)(2)(B)(iii)) is amended, in the matter preceding subclause (I), by inserting ''(in accordance with regulations issued by the Secretary addressing time, manner, and content of such disclosures)'', after ''following''.

**SEC. 6703. INCREASING TRANSPARENCY IN GENERIC DRUG APPLICATIONS.**

(a) IN GENERAL.—Section 505(j)(3) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 355(j)(3)) is amended by adding at the end the following:

''(H)(i) Upon request (in controlled correspondence or an analogous process) by a person that has submitted or intends to submit an abbreviated application under this subsection for a drug that is required by regulation to contain one or more of the same inactive ingredients in the same concentrations as the listed drug referred to, or for which the Secretary determines there is a scientific justification for an approach that is in vitro, in whole or in part, to be used to demonstrate bioequivalence for a drug if such a drug contains one or more of the same inactive ingredients in the same concentrations as the listed drug referred to, the Secretary shall inform the person whether such drug is qualitatively and quantitatively the same as the listed drug. The Secretary may also provide such information to such a person on the Secretary's own initiative during the review of an abbreviated application under this subsection for such drug.

''(ii) Notwithstanding section 301(j), if the Secretary determines that such drug is not qualitatively or quantitatively the same as the listed drug, the Secretary shall identify and disclose to the person—

H. R. 7148—566

"(I) the ingredient or ingredients that cause such drug not to be qualitatively or quantitatively the same as the listed drug; and

"(II) for any ingredient for which there is an identified quantitative deviation, the amount of such deviation.

"(iii) If the Secretary determines that such drug is qualitatively and quantitatively the same as the listed drug, the Secretary shall not change or rescind such determination after the submission of an abbreviated application for such drug under this subsection unless—

"(I) the formulation of the listed drug has been changed and the Secretary has determined that the prior listed drug formulation was withdrawn for reasons of safety or effectiveness; or

"(II) the Secretary makes a written determination that the prior determination must be changed because an error has been identified.

"(iv) If the Secretary makes a written determination described in clause (iii)(II), the Secretary shall provide notice and a copy of the written determination to the person making the request under clause (i).

"(v) The disclosures authorized under clauses (i) and (ii) are disclosures authorized by law, including for purposes of section 1905 of title 18, United States Code. This subparagraph shall not otherwise be construed to authorize the disclosure of nonpublic qualitative or quantitative information about the ingredients in a listed drug, or to affect the status, if any, of such information as trade secret or confidential commercial information for purposes of section 301(j) of this Act, section 552 of title 5, United States Code, or section 1905 of title 18, United States Code.".

(b) GUIDANCE.—

(1) IN GENERAL.—Not later than one year after the date of enactment of this Act, the Secretary of Health and Human Services shall issue draft guidance, or update guidance, describing how the Secretary will determine whether a drug is qualitatively and quantitatively the same as the listed drug (as such terms are used in section 505(j)(3)(H) of the Federal Food, Drug, and Cosmetic Act, as added by subsection (a)), including with respect to assessing pH adjusters.

(2) PROCESS.—In issuing guidance under this subsection, the Secretary of Health and Human Services shall—

(A) publish draft guidance;

(B) provide a period of at least 60 days for comment on the draft guidance; and

(C) after considering any comments received and not later than one year after the close of the comment period on the draft guidance, publish final guidance.

H. R. 7148—567

(c) APPLICABILITY.—Section 505(j)(3)(H) of the Federal Food, Drug, and Cosmetic Act, as added by subsection (a), applies beginning on the date of enactment of this Act, irrespective of the date on which the guidance required by subsection (b) is finalized.

*Speaker of the House of Representatives.*

*Vice President of the United States and*
*President of the Senate.*