UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PATSY WIDAKUSWARA, et al., <br><br> Plaintiff, <br><br> v. <br><br> KARI LAKE, et al., <br><br> Defendant. | Civil Action No. 25-1015 (RCL) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' COMBINED MOTION TO DISMISS AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

i

Defendants, Kari Lake, Victor Morales, and the United States Agency for Global Media ("USAGM" or "Global Media") by and through undersigned counsel, hereby submit this reply in support of their Combined Motion to Dismiss and Cross-Motion for Summary Judgment (Defs' Mtn. (ECF No. 202)) and in response to the opposition filed by Plaintiffs (Pls' Opp'n (ECF No. 209). Accompanying this reply are the referenced exhibits, the supplemental declaration of Neeraja Gumma ("Gumma Supp. Decl."), and responses to Plaintiffs' additional statements of material fact.

## INTRODUCTION

This reply in support of Defendants' combined motion addresses Plaintiffs' Supplemental Claims which allege Kari Lake's ("Ms. Lake") appointments at USAGM violate the Appointments Clause and Federal Vacancies Reform Act ("FVRA"), and therefore, any actions she took in such role are invalid and must be vacated. Defendants also submit that delegation was permitted under these facts, and Ms. Lake's length of service under the FVRA did not violate the time limits set by it.

As discussed in Defendants' motion, the Court lacks jurisdiction over the First Supplemental Complaint because the claims brought under the Appointments Clause and the Federal Vacancies Reform Act ("FVRA") are precluded by the Civil Service Reform Act of 1978. Mot. (ECF No. 202) at 6-8. Should the Court allow this matter to proceed to summary judgment, Defendants submit no alleged violation of the Appointments Clause and the FVRA exist as Ms. Lake's appointments were lawful. Therefore, Plaintiffs are not entitled to vacatur of any of Ms. Lake's actions.

# ARGUMENT

I. **If the Court Finds Jurisdiction, No Violation Exists Under the FVRA or the Appointments Clause.**

   **A. Ms. Lake's Service as Senior Advisor, Deputy CEO, and Acting CEO Was Proper.**

Ms. Lake's service as Acting CEO of USAGM was proper. And, although not material to the ultimate issue of whether Ms. Lake's service as Acting CEO violated the FVRA or Appointments Clause, her service in the two prior roles was valid as well.

As discussed in Defendants' motion, Ms. Lake was properly appointed by the Acting CEO to the position of Deputy CEO, and her service as Acting CEO was valid under 5 U.S.C. 3345(a)(1). Congress enacted the FVRA to authorize the appointment of acting officials to perform the functions and duties of an office of an Executive agency. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017). As summarized by the Supreme Court, the "general rule" under the FVRA "is that the first assistant to a vacant office shall become the acting officer" but the "President may override that default rule by directing either a person serving in a different PAS [President appointment and Senate confirmation] office or a senior employee within the relevant agency to become the acting officer instead." *Id*.

Plaintiffs continue to allege that Ms. Lake's appointment as Senior Advisor was improper although it bears no consequence on the FVRA claim. As discussed in Defendants' motion, Ms. Lake was properly appointed to a non-career Senior Executive Service position at USAGM by Roman Napoli on February 27, 2025. *See* Gumma Decl. (ECF No. 202-1) ¶4, Exhibit A; SOMF (ECF No. 202-2) ¶ 2. Mr. Napoli was carrying out delegable duties and functions of the office of the CEO on that date. *Id*. Plaintiffs' opposition states that Defendants never "identify who delegated what duties or functions to Napoli or when." Pls.'Opp'n at 3. However, Mr. Napoli, then-CFO, was carrying out those duties of Acting CEO pursuant to an order of succession. *See*

2

Bennett Delegation, Ex. 1 hereto; Supp. Gumma Decl. ¶ 9. As such, this appointment is proper within Plaintiffs' reading of Congress' grant of authority to the CEO of USAGM as cited in their opposition brief. Pls' Opp'n at 3, *see also* 22 U.S.C. §6204(a)(11). The concept of delegation is further discussed *infra, see* Section B below.

Plaintiffs also once again contend that Ms. Lake's appointment as Deputy CEO was invalid. Pls' Opp'n at 6. However, the only argument they raise on this issue is that Ms. Lake's appointment to the Deputy title is somehow flawed based on her assigned work duties. *Id*. There is no correlation between the two. The fact that she exercised "significant authority" in the Deputy CEO role does not convert such a title to a principal officer position requiring appointment by the President and confirmation by the Senate. "The exercise of 'significant authority pursuant to the laws of the United States' marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather . . . the line between officer and non-officer." *Edmund v. United States*, 520 U.S. 651, 662 (1997). The relevant question is whether Ms. Lake had a superior, *id*., which she did, namely, Mr. Morales, Acting Chief Executive Officer.

Mr. Morales, for his part, was designated as Acting CEO by the President in March 2025 with an effective date of February 27, 2025. *See* Gumma Decl. (ECF No. 202-1) ¶5; SOMF (ECF No. 202-2) ¶3. On July 16, 2025, Acting CEO Morales reassigned Ms. Lake to the position of Deputy CEO. *See* Gumma Decl. (ECF No. 202-1) ¶6, Exhibit B.; SOMF (ECF No. 202-2) ¶ 4. Whatever powers he delegated to Ms. Lake, he continued to retain for himself as Ms. Lake's superior. *See* Ex. 2 and 3 hereto (March and July 2025 delegations). His appointment of Ms. Lake was therefore proper.

Because Mr. Morales was lawfully serving in this role as an acting officer under 22 U.S.C. § 3345(a), he had authority to take any action that could be taken by a Presidentially confirmed

3

candidate. *SW General,* 580 U.S. at 294. This would include appointing the staff below him, including Ms. Lake. As a result, Mr. Morales lawfully promoted Ms. Lake from Senior Advisor to Deputy CEO and that allowed Ms. Lake to assume the Acting CEO position when Mr. Morales ceased serving in that role. Specifically, on July 31, 2025, the President ended Mr. Morales' designation as Acting CEO of USAGM. *See* Gumma Decl. (ECF No. 202-1) ¶8, Exhibit B.; SOMF (ECF No. 202-2) ¶6. Because Ms. Lake was serving as first assistant at this time (i.e., Deputy CEO), Ms. Lake was eligible to serve as Acting CEO of USAGM under 22 U.S.C. § 3345(a)(1) in a temporary capacity when Mr. Morales had his designation removed. This series of events, which is consistent with the FVRA, also does not violate the Appointments Clause. *See SW General*, 580 U.S. at 294.

      Plaintiffs' allegations regarding the lack of subordination here are misplaced. Plaintiffs rely on *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), but that case is readily distinguishable. There, the office at issue—the office of Principal Deputy Director—"was created after the vacancy in the office of the Director arose; that office was nominally designated as the office of the 'first assistant' to the Director after the vacancy arose; and it will cease to exist as the office of the 'first assistant' as soon as the PAS vacancy is filled." *Id*. at 26. Thus, the court concluded that the alleged "first assistant," Mr. Cuccinelli, "never has served and never will serve 'in a subordinate capacity' to any other official at USCIS" because no one encumbered the Director position when Mr. Cuccinelli became Principal Deputy Director. *Id*. Lacking a superior, therefore, he could not be considered a first assistant under the FVRA.

      Here, in contrast, the Deputy CEO position was subordinate to the CEO (or Acting CEO) position, a superior position that was encumbered at the time Ms. Like was appointed to serve as Deputy CEO. There is only one Deputy CEO position and the Deputy CEO is the senior-most

4

position reporting to the CEO. SOMF (ECF No. 202-2) ¶5; Gumma Decl. (ECF No. 202-1) ¶7. Additionally, the Deputy CEO position existed prior to the vacancy, unlike in *Cuccinelli*. USAGM has had a Deputy CEO position since February 2023 under former CEO Amanda Bennett, who signed the newly created position description. *See* Gumma Supp. Decl. ¶5, *see also,* Deputy CEO Position Description attached hereto as Ex. 8.

Plaintiffs incorrectly assert that even if Ms. Lake was validly appointed Deputy CEO, her role had not been subordinate to the Acting CEO's office during her tenure and therefore, cannot qualify as the "first assistant" to the CEO's office. Pls' Mot. (ECF. No. 168-1) at 11. This argument is unfounded. Plaintiffs can point to no evidence that Ms. Lake "operated without direction and supervision" as stated in the "Introduction" section of the Opposition. See Pls' Opp'n at 7. In fact, as Acting CEO, Mr. Morales made two lawful delegations to Ms. Lake, one for her role as Senior Advisor on February 27, 2025 and the second in July 2025 in connection with her reassignment to Deputy CEO. *See* Ex. 2 and 3 hereto. Both delegations stated that Mr. Morales continued to retain, and could exercise, the authority that had been delegated to Ms. Lake. *Id.*; *see also Grigsby Brandford & Co. v. United States*, 869 F. Supp. 984, 991 n.6 (D.D.C 1994) ("[T]he Secretary maintained that authority even though he had made a general delegation of authority to the Assistant Secretary.")

Finally, Plaintiffs argue that the first-assistant default rule applies only to individuals serving as first assistants at the time the vacancy arises rather than, as Defendants contend, to individuals first appointed to the position of first assistant after the vacancy in the PAS office arises. Pls' Opp'n at 7. The weight of authority does not support Plaintiffs' arguments. To the contrary, the Office of Legal Counsel has rejected Plaintiffs' interpretation and the Supreme Court has not resolved the question. *Cuccinelli*, 442 F. Supp. 3d at 24. For reasons explained by the

5

Office of Legal Counsel, Defendants' interpretation is the correct one. *See* 25 Op. O.L.C. 177, 181 (2001) ("Given the Act's text and structure, we now believe that the better understanding is that an individual need not be the first assistant when the vacancy occurs in order to be the acting officer by virtue of being the first assistant.")

### B. Delegation Was Permitted by Statute.

Pursuant to 22 U.S.C. §§ 6204(a)(17) and (a)(18), the CEO of USAGM is expressly authorized to use a broad array of authorities from prior statutes, reorganization plans, executive orders, regulations, and other official documents previously available to the Director of the United States Information Agency ("USIA"), including those necessary to carry out broadcasting activities and ensure operational continuity. This includes, but is not limited to, the delegation provisions under Title X of the United States Information and Educational Exchange Act of 1948 ("Smith-Mundt Act"), 22 U.S.C. § 1435, specifically section 1002, which empowers the highest official—such as the USAGM CEO or Acting CEO—to delegate powers conferred by the Act to appropriate government officers to the extent deemed in the interest of the Act's purposes and the efficient administration of programs, thereby facilitating the continuity of international broadcasting and administrative functions without interruption, even during periods of transition or vacancy. 22 U.S.C. § 1435, Title X, Sec. 1002.

Similarly, Section 1009 under Title X clarifies that all provisions in the Act apply to the "administration" of international information activities under the Agency's jurisdiction, which necessarily include efficiency and restructuring efforts. *Id.* at Title X, Sec. 1009. After the Broadcasting Board of Governors ("BBG") (now USAGM) was separated as an independent agency in 1994 under the International Broadcasting Act ("IBA"), Congress specifically intended that the newly independent BBG retain the same delegation authorities laid out for the State Department under Title X of the Smith Mundt Act. *See* 22 U.S.C. § 6204(a)(17).

6

Under the same authorities, Ms. Bennett delegated authorities within the Office of the CEO in the event of her resignation. *See* Bennett Delegation, Ex. 1. On February 24, 2025, with the CEO, Deputy CEO, and other key positions vacant, Mr. Napoli, the then-CFO, exercised these delegated powers and obtained approval from the Office of Personnel Management for Ms. Lake's appointment as Senior Advisor. *See* OPM Approval, Ex. 4 hereto, see also Gumma Supp. Decl. ¶6-9. President Trump's February 27, 2025 designation of Mr. Morales—a senior USAGM employee in the Office of the CEO who had served for more than 90 days—as Acting CEO under FVRA § 3345(a)(3), was lawful. See Defs' Motion (ECF No. 202) at 15; see also Gumma Supp. Decl. ¶10. As Acting CEO, Mr. Morales's February 27, 2025 delegations to Ms. Lake were authorized under the same statutes (22 U.S.C. § 6204(a)(17), (18); Smith-Mundt, Title X, Sec. 1002). Ex. 2 hereto. The same is true of Mr. Morales' July 2025 delegations to Ms. Lake and reassignment of her to Deputy CEO—the statutory first assistant. Ex. 3 hereto.

### C. Ms. Lake's Service as Acting CEO Did not Exceed the FVRA's Time Limits.

Notwithstanding its irrelevance to the current issues, Plaintiffs' claim that Ms. Lake exceeded FVRA time limits is equally meritless. The USAGM CEO vacancy arose on January 20, 2025—the "transitional inauguration day" under § 3349a(a), when Ms. Bennett resigned as CEO upon President Trump's inauguration. Section 3349a(b) specifically adjusts the time limitations in § 3346 for such inauguration-related vacancies existing during the 60-day period beginning on that day. "Federal Vacancies Reform Act's Application to a Vacancy for Which Prior Presidents Submitted Multiple Nominations." 46 Op. O.L.C. 5 (Oct. 21, 2022). Under § 3349a(b), the standard 210-day initial acting service period in § 3346(a)(1) is "deemed to begin" on the later of (1) 90 days after inauguration day (April 20, 2025) or (2) 90 days after the vacancy occurs (also April 20, 2025, since the vacancy was on January 20). This effectively extends the initial acting period to 300 days total from inauguration (90-day grace period + 210 days), allowing acting

7

service from January 20, 2025, through November 16, 2025, without violating time limits, to provide a new administration flexibility in filling vacancies. This interplay means § 3349a resets and extends § 3346's entire timing sequence—not just the initial 210 days but also the nomination-based extensions in § 3346(a)(2) and (b). The brief Bozell nomination (submitted March 10, 2025; withdrawn March 24, 2025) qualified as the new President's "first nomination" under the reset sequence per § 3346(a)(2), allowing continued acting service during its pendency and triggering a post-withdrawal 210-day extension under § 3346(b)(1) (from March 24, 2025, to October 20, 2025). But because § 3349a restarts the full sequence, this nomination did not exhaust or truncate the broader timeline; acting service could persist through the initial extended period, plus pendency of a potential second nomination, and another 210 days post-failure if submitted.

Mr. Morales's designation and Ms. Lake's July 31 succession as Acting CEO under § 3345(a)(1) fell well within this restarted timeline. The brief Bozell nomination (March 10–24, 2025) counted as the first under the new sequence without exhausting it, ensuring no violation regardless of whether Lake retained the title. The GAO Website also reflects Ms. Lake's appointment under the FVRA and indicates the current CEO vacancy.[1]

Plaintiffs challenge the statement in the declaration of Acting Human Resources Director Neeraja Gumma regarding the end date of Ms. Lake's service as Acting CEO. Pls' Opp. at 14. The

---

[1]  U.S. Government Acccountability Office, Federal Vacancies for Current Administration, U.S. Agency for Global Media, *available at* https://nam10.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww.gao.gov%2Flegal%2Ffederal-vacancies-reform-act%2Ffederal-vacancies-current-administration%3Fprocessed%3D1%26acting_official%3Dkari%2520lake%26vacancy_status%3Dall%23sskipLinkTargetForMainSearchResults&data=05%7C02%7CJDeMaster%40usagm.gov%7C5e634a2346794ca74a9508de7a007f24%7Cba99e87c673541c2b1c1354eee3a8659%7C0%7C0%7C639082339708072526%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=s6QgNh%2BgQ%2BBBSKjzFGMKoR4%2B1LZkQvs7RbS7iWzF9hoo%3D&reserved=0, last accessed March 4, 2026.

relevant portion of the GAO Report, submitted by USAGM's Office of General Counsel is attached hereto as Exhibit 5. This reflects the discontinuation of Ms. Lake's service as Acting CEO as of November 19, 2025. Plaintiffs are also mistaken that Ms. Lake's Acting CEO service was in violation of the 300-day limit by three days as the Senate was not in session on November 16, 2025. *See* 5 U.S. Code § 3348(c). Days in Session of the U.S. Congress, 119th Congress, 1st Session, *available at* https://www.congress.gov/days-in-session/119th-congress/session-1, last accessed March 4, 2026.

Finally, Plaintiffs' opposition raises the argument that Ms. Lake continued to serve as Acting CEO in January and February 2026 in violation of the FVRA time limits. Pls' Opp. at 15. Plaintiffs allege that two emails sent to employees from the "HR Customer Service" email address for USAGM included Ms. Lake's signature and title listed as "Acting Chief Executive Officer" and "Acting CEO." *See* Exhibits A,B,C to Neeper Decl. But as Ms. Gumma explained in her supplemental declaration, the use of that old signature block was inadvertent and was the result of using a previous template email to announce the lapse of appropriations. *See* Supp. Gumma Decl. ¶ 3. In other words, including that title in the signature block of the January 30, 2026 and February 3, 2026 emails was an administrative error. *Id*.

In conclusion, although not material to the resolution of these motions, Ms. Lake's service as Acting CEO ended on November 19, 2025. *See* Exhibit 5, GAO Report and Gumma Decl. (ECF No. 202-1) ¶ 9. No violation of the FVRA time limit exists for the reasons set forth above.

## CONCLUSION

For these reasons, as well as those in Defendants' cross-motion for partial summary judgment and pending motion to dismiss, the Court should dismiss Plaintiff's First Supplemental Complaint, or in the alternative, grant Defendants' Cross-Motion for Partial Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

Dated: March 4, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: */s/ Samantha-Josephine Baker*
    SAMANTHA-JOSEPHINE BAKER
    FL Bar #105714
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-2435
    Samantha-Josephine.Baker@usdoj.gov

*Attorneys for the United States of America*