**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATSY WIDAKUSWARA, et al., | |
| Plaintiffs, | Civil Action No. 25-cv-1015 (RCL) |
| v. | |
| KARI LAKE, et al., | |
| Defendants. | |
| MICHAEL ABRAMOWITZ, et al., | |
| Plaintiffs, | Civil Action No. 25-cv-0887 (RCL) |
| v. | |
| KARI LAKE, et al., | |
| Defendants. | |

**<u>MOTION FOR A PARTIAL STAY OF THE COURT'S ORDER GRANTING PARTIAL
SUMMARY JUDGMENT</u>**

**INTRODUCTION**

On March 17, the Court granted in part Plaintiffs' motion for partial summary judgment and, among other things, ordered Defendants, no later than March 23, 2026, to return to work all employees placed on administrative leave under Defendants' March 2025 directive. ECF 222 (Partial SJ Order). This relief comes despite the D.C. Circuit already staying this same relief in this same case. The merits are no different now. Neither are the equities. Indeed, given that nearly a year has passed and the logistical impossibility imposed by the Court's order, the equities now tilt even further in Defendants' direction. Accordingly, the Court should stay this injunctive relief pending appeal. At the least, the Court should stay its return-to-work mandate for fourteen days to allow Defendants to seek further relief at the D.C. Circuit.[1]

**BACKGROUND**

Following the issuance of Executive Order 14238 in March 2025, the leadership at U.S. Agency for Global Media (USAGM) placed over 1,000 employees on administrative leave and terminated grant agreements with networks. ECF 98 at 5-6. Finding that, as a result, Voice of America (VOA) "ha[d] gone completely dark with no signs of returning, *id.* at 22,[2] the Court entered an injunction ordering Defendants, including USAGM, to do three things, one of which was to return USAGM employees and contractors to their status prior to the EO. *Id.* at 36.

Defendants appealed this prong of the injunction. *See* Emergency Mot. for an Administrative Stay and Partial Stay Pending Appeal ("Stay Mot."), Doc. No. 2113018, *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. Apr. 25, 2025). After proceedings before a motions

---

[1] Under LCvR 7(m), Defendants' counsel states that Plaintiffs' counsel were notified in advance of this motion and stated that they oppose it.

[2] Citations to "ECF" are to docket entries in *Widakuswara v. Lake*, 25-cv-1015-RCL (D.D.C.), unless otherwise noted.

panel and the en banc court, the D.C. Circuit eventually stayed this prong of the Court's injunction. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1556440, at *1 (D.C. Cir. May 22, 2025) (en banc); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc). The parties have since briefed and argued the merits of the appeal.

While the preliminary injunction has been on appeal, litigation continued in this Court. As relevant here, Plaintiffs moved for partial summary judgment on two Administrative Procedure Act (APA) claims and requested that the Court order Defendants to offer "[a]ll employees . . . on administrative leave . . . the opportunity to return to work." ECF 166; ECF 166-5 at 2. In response, Defendants, citing the D.C. Circuit's stay order, argued that the Court lacked jurisdiction under the APA to review Defendants' personnel decisions. *See, e.g.*, ECF 188 at 8-17. On March 17, the Court granted in part Plaintiffs' motion and ordered Defendants, no later than March 23, 2026, to return to work all employees placed on administrative leave under Defendants' March 2025 directive. Partial SJ Order at 2. This order, if not stayed, will require USAGM to return 484 employees to active duty within six calendar days, which "is not operationally feasible" and could interfere with the new Acting CEO's "ability to execute his responsibilities and develop a coherent, considered plan for the agency going forward." Ex. A (Kotz Decl.) ¶¶ 4-12.

Defendants now move for a stay pending appeal of the Court's forward-looking relief.

## ARGUMENT

Four factors govern whether to issue a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other

parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Here, all four favor Defendants.

### I.      Defendants are Likely to Succeed on the Merits.

For two reasons, Defendants are likely to succeed on the merits.

### A.  The Court lacks jurisdiction over USAGM's staffing decisions.

*First*, the Court "lack[s] jurisdiction over USAGM's personnel actions." *Widakuswara*, 2025 WL 1288817, at *2. Congress may "preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed. of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019). As relevant here, Congress has "established a comprehensive system for reviewing personnel action[s] taken against federal employees" that provides the "exclusive means" for review. *Elgin v. Department of the Treasury*, 567 U.S. 1, 5, 8 (2012) (quotation marks omitted). The Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (1978), which includes the Federal Service Labor-Management Relations Statute for federal labor-management relations, 5 U.S.C. §§ 7101-7135, sets out an "integrated scheme of administrative and judicial review" for challenges to personnel actions taken against members of the civil service, *United States v. Fausto*, 484 U.S. 439, 445 (1988). Accordingly, the D.C. Circuit has long held that plaintiffs "may not circumvent [these statutes'] requirements and limitations by resorting to the catchall APA to challenge agency employment actions," *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *see, e.g.*, *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009) ("We long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions."). This rule applies both to a "systemwide challenge to an agency policy"

and to a challenge to the "implementation of such a policy in a particular case." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).

On the basis of these precedents, the D.C. Circuit, in this very case, already concluded that this Court likely lacks jurisdiction over USAGM's decision to place employees on administrative leave. *Widakuswara*, 2025 WL 1288817, at *2. And the Supreme Court, in a series of rulings last spring and summer, issued the same relief in similar cases. *See, e.g.*, *McMahon v. New York*, 145 S. Ct. 2643 (2025); *Trump v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 2635 (2025); *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (2025). There is no reason to think that Defendants are unlikely to succeed here even though the government has succeeded time after time in like cases.

Despite the above precedents, the Court concluded that this case is different because Reporters Sans Frontières and Reporters Without Borders, Inc. (the "RSF Plaintiffs") and The NewsGuild-CWA (TNG-CWA) "raise claims based on their status as listeners of USAGM-sponsored broadcasts," not the merits of any employment action. ECF 223 (Partial SJ Op.) at 16-17; *see id.* at 17 n.9. Respectfully, this distinction does not hold up. Indeed, the Court offered this same distinction at the preliminary-injunction stage, *see Widakuswara v. Lake*, 779 F. Supp. 3d 10, 30 (D.D.C. 2025) (reasoning that the CSRA jurisdictional bar is "not implicated" by claims of "non-governmental entities and contractors" like RSF and TNG-CWA), and Plaintiffs pressed it in opposition to Defendants' stay motion in the D.C. Circuit, *see* Doc. No. 2113400 at 14-15, *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. Apr. 29, 2025), and in seeking *en banc* review, *see* Doc. No. 2114398 at 11, *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. May 5, 2025). But the stay panel was not persuaded, *Widakuswara*, 2025 WL 1288817, at *2, and the *en banc* D.C. Circuit declined to vacate the stay.

There is no reason to think the outcome will change this time around.  The RSF Plaintiffs and TNG-CWA's stated harms are "traceable to the Statutory Minimum Memorandum and its effects."  *Id.* at 17.  Among other things, this Memorandum explains the staffing decisions under review.  *See id.* at 7, 22.  And the RSF Plaintiffs and TNG-CWA request that the Court reverse these decisions.  *See* ECF 166-5 at 2.  When viewed in this light, it is apparent that RSF and TNG-CWA are bringing an "systemwide challenge" to USAGM's staffing decisions.  *Nyunt*, 589 F.3d at 449.

This challenge is unavailable to the employee and the non-employee alike.  To conclude otherwise would invite end-runs around the CSRA and make a mess of the remedial scheme Congress designed "with care."  *Filebark*, 555 F.3d at 1010.  Indeed, the fact that Congress, in the CSRA, excluded end-users of government services "from the provisions establishing administrative and judicial review for personnel action" of the type challenged here "*prevents* [them] from seeking review" under other provisions," like the APA.  *Fausto*, 484 U.S. at 455 (emphasis added); *see Grosdidier*, 560 F.3d at 497 ("[T]he CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA.").

Supreme Court precedent makes all this clear.  In *Block v. Community Nutrition Institute*, the Supreme Court considered a statute that permitted dairy handlers to obtain review of certain "market orders" after exhausting administrative remedies, but did not authorize review by anyone else. 467 U.S. 340, 346-47 (1984) (citing 7 U.S.C. § 608c). When a group of dairy consumers sought review of a marketing order, the Supreme Court explained that the statute omits a "provision for participation by consumers in any proceeding," and that "[i]n a complex scheme of this type, the omission of such a provision is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process." *Id.* at 347.  Any other holding, the

5

Supreme Court said, would facilitate circumvention of the comprehensive statutory scheme. *Id.* at 348.

Those principles apply with full force to the CSRA, as Supreme Court precedent likewise makes clear. *See Fausto*, 484 U.S. at 448 (applying *Block* to conclude that certain employees who lack CSRA appeal rights "should not be able to demand judicial review for the type of personnel action covered by that chapter"). It would turn the CSRA's comprehensive structure "upside down" if end-users of government services—who are, at most, indirectly affected by a termination—could obtain judicial review of termination decisions without any of the restrictions that would apply if the affected employees themselves were to bring such a claim. *Id.* at 449. The exclusion of organizations such as the RSF Plaintiffs and TNG-CWA from the CSRA's review scheme reflects Congress's considered judgment about the limitations of who should be permitted to challenge a personnel decision, rather than providing carte blanche for tangentially affected parties to sue without using the CSRA's comprehensive scheme. *See Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of the specific remedies" that precludes jurisdiction).

That Congress intended to exclude end-users of government services from the class of people who can challenge federal personnel actions is unsurprising. The CSRA is "designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration," and to replace a "patchwork system with an integrated scheme of administrative and judicial review." *Fausto*, 484 U.S. at 445. Permitting end-users of government services to challenge the federal government's personnel decisions in federal district courts around the country would plainly impede those goals and "disrupt" the "complex and delicate" scheme that Congress established to challenge federal employment actions. *Block*, 467

U.S. at 348.

Indeed, the district court implicitly recognized all this by declining to grant relief as to the PSCs who had been terminated. The district court said the PSCs "were in a contractual relationship with the government" and thus were limited to remedies in the Court of Federal Claims under the Tucker Act. *See* Partial SJ Op. 18-21. Just as the third-party plaintiffs could not evade those remedial and jurisdictional limits (despite being unable to sue under the Tucker Act), the third-party plaintiffs cannot evade the CSRA's remedial and jurisdictional limits (despite being unable to sue under that statute).

For these reasons, Defendants are likely to succeed in arguing that the district court lacks jurisdiction over USAGM's personnel-related decisions.

**B. The RSF Plaintiffs and TNG-CWA Lack Standing to Seek a Reversal of USAGM's Staffing Decisions.**

A party is entitled to no greater remedy than one that will provide "complete relief." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). This means that a federal court exceeds its authority when it enters an injunction "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at 861. Here, the Court concluded that RSF and its correspondents had standing because Defendants' actions—which resulted, according to the Court, in VOA's broadcasting "remain[ing] broadly inoperative"—caused an injury to their "right to receive information and ideas." Partial SJ Op. at 12-13. But this conclusion rested on a declaration from almost a year ago. *See id.* at 12 (citing ECF 16-15). Given how much the facts have changed over the past year, *see* ECF 175 at 10 (detailing VOA's resumption of programming), a year-old declaration is quite the slender reed on which to rest a finding of the "certainly impending" harm necessary for injunctive relief. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013).

7

Even assuming the Court was correct to find a cognizable injury-in-fact, the Court did not explain why an order directing USAGM to return all its employees from administrative leave was "necessary" to provide RSF with "complete relief." *CASA, Inc.*, 606 U.S. at 861. The Court did not, for example, provide any reason to conclude that the return of all 484 employees, *see* Kotz Decl. ¶ 4 (stating that "484 employees are on administrative leave"), rather than one hundred, two hundred, or three hundred, was necessary to provide broadcasting in "the Democratic Republic of Congo, Ethiopia, Kenya, Tibet and Vietnam." Partial SJ Op. at 12. Nor did the Court explain why an order directing the return of any number of employees was necessary, especially given the other relief awarded, such as vacatur of the "suspension of broadcasting operations." Partial SJ Order at 2. Given that RSF's alleged harm is tied to this suspension, RSF is not entitled to any further relief.

For the foregoing reasons, Defendants are likely to succeed in arguing that the Court erred in concluding that RSF had standing to challenge Defendants' staffing decisions.[3]

## II.    The Remaining Factors Favor a Stay.

The equitable factors likewise weigh decisively in the government's favor, and "the public interest and balance of equities factors merge" where, as here, "the government is the party" against whom an injunction is sought. *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021).

First, the Court's order inflicts an irreparable loss of control vested in the USAGM and the President and, by extension, an irreparable harm on the public. "The Executive Branch has a significant interest in maintaining control over personnel matters." *Widakuswara*, 2025 WL

---

[3] Although the Court's analysis—and thus Defendants' arguments—focused on RSF, the same arguments would apply to similarly situated Plaintiffs too.

1288817, at *5. The Court's reinstatement order interferes with this interest and impedes the newly appointed Acting CEO's efforts to run the agency by requiring the virtually overnight re-integration of nearly five hundred employees who have not been working at the agency in over a year. *See* Kotz Decl. ¶ 4, 11. This act of judicial superintendence—which is not "is operationally feasible," *id.* ¶ 12— makes both the injunction and the irreparable harm "[d]oubly" exceptional, *Salazar by Salazar v. District of Columbia*, 896 F.3d 489, 497 (D.C. Cir. 2018), especially given that it "implicates the Executive Branch's foreign-affairs authority," *Widakuswara*, 2025 WL 1288817, at *5. Therefore, this time, like last time, the "harm to the government is irreparable." *Id.*

Second, a stay would not irreparably harm any interested party. Employees on administrative leave are currently receiving full pay. And for non-employee Plaintiffs, *i.e.*, "consumers of VOA broadcasting," the rest of the Court's order—which includes vacatur of Defendants' "suspension of broadcasting operations"—will remain in place pending appeal. Partial SJ Order at 1. In any case, VOA has not gone "completely dark." ECF 98 at 22. As Defendants recently explained, "VOA has resumed programming in various media and languages, is making capital investments to increase its capacity, and has meaningful plans for expansion in many respects." ECF 175 at 10. There is no irreparable harm to Plaintiffs here.

Third, the public has an interest in permitting the President to take decisive action when it comes to setting his policy priorities for the Agency and its broadcasting networks. The court's injunction displaces and frustrates the President's decision about how to best address those issues, causing harm to the public. *Cf. Nat'l Ass'n of Home Builders v. E.P.A.*, 682 F.3d 1032, 1043 (D.C. Cir. 2012) ("A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its

9

programs and regulations."). The public also has an interest in "in the Judicial Branch's respect for the jurisdictional boundaries laid down by Congress." *Widakuswara*, 2025 WL 1288817, at *6. And, as covered above, the Court's finding of jurisdiction here fails to head Congress's codified boundaries. Accordingly, the public interest cuts in favor of a stay.

## CONCLUSION

The Court should enter a stay pending appeal of the order to restore employees from administrative leave. At the least, the Court should enter a short stay to allow Defendants to seek relief from the D.C. Circuit. *See, e.g.*, *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 233 (D.D.C. 2025) (Contreras, J.) (staying a preliminary injunction "for fourteen days so that the parties may seek review in the Court of Appeals"); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 111 (D.D.C. 2025) (Moss, J.) ("postpon[ing] the effective date of its class-wide order for fourteen days to permit Defendants to seek a stay pending appeal from the Court of Appeals").

Dated: March 19, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

*/s/ Elizabeth Hedges*
ELIZABETH HEDGES
BRANTLEY T. MAYERS
Counsel to the Assistant Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0929
Elizabeth.T.Hedges@usdoj.gov

*Attorneys for Defendants*

11