**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL ABRAMOWITZ, *et al.,*<br><br>*Plaintiffs,*<br><br>–v.–<br><br>KARI LAKE, *et al.*,<br><br>*Defendants.* | **Case No. 1:25-cv-887-RCL** |
| PATSY WIDAKUSWARA, *et al.,*<br><br>*Plaintiffs,*<br><br>–v.–<br><br>KARI LAKE, *et al.*,<br><br>*Defendants.* | **Case No. 1:25-cv-1015-RCL** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

**INTRODUCTION**

The Court's March 17, 2026 order is sound. The Court correctly found that Defendants violated the APA by acting arbitrarily and capriciously and not otherwise in accordance with law and have withheld required agency action. Defendants do not contest those findings, nor have they ever. Instead, Defendants take issue with the Court's vacatur of their illegal decision and the actions taken to implement it—at this juncture, the reversal of administrative leave for USAGM and VOA employees whom Defendants have been paying for the last year to do no work. But the Court's direction that vacatur here requires as much was entirely appropriate. Indeed, Defendants' decisionmaking and actions have been so seriously out of conformity with the law and this Court's prior orders that it was reasonable for the Court to provide direction as to what vacatur must entail.

Beyond this, each stay factor that it is Defendants' burden to prove disfavors a stay of the Court's order. *First*, Defendants are unlikely to succeed on their contentions that the CSRA divests the Court of jurisdiction or that Plaintiffs lack standing. *Second*, Defendants cannot prove any irreparable harm. Defendants' claimed harm is of their own making—not once over the course of this litigation or after the Court's order have Defendants raised their current concerns related to vacatur. Defendants could have and should have raised how many employees they believe they can reasonably accommodate returning to work each week before rushing to file a motion to stay. Had they, Plaintiffs would have been more than willing to work with them to reach a sensible solution that phases the implementation of the Court's order. The Court, of course, has never had an opportunity to consider such a proposal, because the Defendants have not raised it, either in prior briefing or via a limited motion for reconsideration and modification of the Court's order which they could have filed earlier this week rather than seeking an emergency stay more than two days after the Court's order. *Third*, the remaining factors disfavor a stay. Plaintiffs need not rehash the persistent and ongoing harm they face which this Court has repeatedly found. And the public

interest and balance of the equities disfavor a stay, because the Court's order simply begins the process of vacating the Defendants' illegal actions such that they may come into conformity with the law.

For any of the above reasons, the Court should deny Defendants' motion.

## ARGUMENT

A stay pending appeal is an "extraordinary remedy," *KalshiEX LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024) (quotation marks omitted), intruding "into the ordinary processes of administration and judicial review," *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks omitted). The movant must show (1) a "strong" likelihood of success on the merits, (2) irreparable injury, (3) that a stay will not "substantially injure the other parties," and (4) that the public interest favors a stay. *Id.* at 426. The "first two" of these factors—the applicant's likelihood of success on the merits and the existence of an irreparable injury absent a stay—"are the most critical." *Id.* at 434.

## I.     DEFENDANTS ARE UNLIKELY TO SUCCEED ON THE MERITS.

### A.     RSF and TNG-CWA have standing to challenge Defendants' violation of the APA.

Defendants concede that "[t]he RSF Plaintiffs and TNG-CWA's stated harms are 'traceable to the Statutory Minimum Memorandum and its effects.'" Stay Mot. at 5. They thus do not appear to contest that both groups have been harmed by Defendants' actions within the meaning of Article III. Nor could they. *See, e.g., See Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 776 (D.C. Cir. 2025), *reh'g en banc granted*, No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025) (NAACP had standing to challenge dismantling of CFPB); *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 619 (D.C. Cir. 2020) (where agency's action deprives group of "information that it relies on to fulfill its mission," group has standing); *Action All. of Senior*

*Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986) (agency's restriction of information flow that harmed organization's routine activities constituted injury in fact).

Instead, they raise two arguments: first, that the unrebutted declarations demonstrating these Plaintiffs' harm are too old to demonstrate continued standing, an argument they have never raised; and second, that RSF and TNG-CWA's injuries cannot justify ordering the Agency to bring its sidelined staff back from administrative leave. Stay Mot. at 7-8.

As to the first point, Defendants do not explain how unrebutted evidence somehow loses its probative force merely because time has passed since it was entered into the record. Nor does their assertion that "facts have changed over the past year" even attempt to address the specific harm set forth in the declarations submitted in March and April. 25-cv-1015, ECF 16-15; ECF 16-16; ECF 95. The Court relied on the attestation that RSF correspondents rely on VOA in, for example, the Democratic Republic of Congo, Ethiopia, Kenya, Tibet, and Vietnam. *See* Op. at 12 (citing ECF No. 16-15 (Bruttin Decl.)). Defendants have submitted no evidence that they have resumed programming in any of those locations. Moreover, Defendants' limited resumption of programming, which does not redress RSF's harm, was in response to prong (3) of this Court's preliminary injunction. But compliance with a Court's interim and temporary order cannot defeat standing; otherwise, success on a temporary restraining order or preliminary injunction would spell doom for many Plaintiffs. Defendants' claim that irreparable harm that remains unrebutted and unredressed somehow evaporates into thin air at the expiration of one year is absurd and should be quickly rejected.

But even if that claim had any merit, it would be immaterial because RSF submitted an updated declaration with the summary judgment motion that documents RSF's continued

irreparable harm. *See* 25-cv-1015, ECF 166-3. That declaration details the harm that VOA's continued substantial silence in the markets it once occupied is irreparably harming RSF's organizational interests and its specific members. The declaration details, among other things, the loss of "information on the situation of journalism in specific countries and regions" in Latin America and Sub-Saharan Africa; RSF's inability to reach large audiences across regions due to language barriers from the lack of multi-lingual programming throughout Africa; and an increase in danger to RSF member journalists throughout the world, including Ethiopia, Russia, and Gaza, where RSF has evacuated journalists in the past. *See id.* ¶¶ 8, 12-13, 16; *see also id.* ¶¶ 9, 10, 14, 15, 18, 28, 29 (discussing harm to RSF member-journalists or organizational interests in Ethiopia, Venezuela, Colombia, Serbia, Democratic Republic of Congo, Nicaragua, El Salvador). RSF's harm, which stems from the final agency action the Court vacated and set aside, is clearly still present and can only be remedied by a full set-aside of Defendants' unlawful conduct, which is what the Court did here.

Defendants' throwaway suggestion that the Court should have considered ordering "one hundred, two hundred, or three hundred" employees back to work instead of all sidelined employees finds no basis in Administrative Procedure Act relief, especially given the flagrant violations here, nor is it something Defendants ever suggested to the Court prior to final judgment on the APA claims. Certainly this Court is not required to "fashion narrower, ostensibly permissible policies from whole cloth," nor must it "propose a range of conceivable polices to the government until the government found one to its liking." *J.D. v. Azar*, 925 F.3d 1291, 1335 (D.C. Cir. 2019).

Defendants make no argument regarding TNG-CWA's standing and indeed do not address TNG-CWA at all, except in the heading of their argument. The argument is thus forfeited in

4

addition to lacking merit. Defendants have done nothing to rebut the evidence that TNG-CWA's members frequently travel abroad for their jobs and "rely on Voice of America" when they do so. *See, e.g.*, 25-cv-1015, ECF 95 ¶¶ 5-6; ECF 16-16 ¶¶ 14-17.

### B.   This Court has jurisdiction.

#### 1.   RSF and TNG-CWA are not channeled to administrative review.

Defendants once again argue that this Court lacks jurisdiction to remedy Defendants' brazen violations of the Administrative Procedure Act because they carried out their unlawful conduct in part through dispensing with their workforce. Their arguments rest on misleading and incomplete descriptions of precedent, or otherwise inapposite case law.

Defendants begin by arguing that "the D.C. Circuit, in this very case, already concluded that this Court likely lacks jurisdiction over USAGM's decision to place employees on administrative leave." Stay Mot. at 4 (citing stay decision, *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025) (history omitted)). The stay-posture decision does not bind this Court with respect to summary judgment. *See Alabama Ass'n of Realtors v. United States Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 1, 7 (D.D.C. 2021) (discussing cases). And regardless, Defendants once again ignore that the stay panel did not have the last word on this Court's jurisdiction to address personnel issues in service of remediating the agency's unlawfulness; Chief Judge Srinivasan, joined by six members of the en banc court, left it to this Court to assess that question. *Widakuswara v. Lake,* No. 25-5144, 2025 WL 2787974, at *1 (D.C. Cir. May 28, 2025).

Defendants then cite three Supreme Court emergency orders that said absolutely nothing about administrative channeling, incorrectly tallying those decisions as their "succe[sses]." Stay Mot. at 4.

The better reading of *Trump v. American Federation of Government Employees*, 606 U.S. ---, 145 S. Ct. 2635 (July 8, 2025) (mem.), is that the government lost its administrative channeling argument before the Supreme Court. In *Trump*, the Solicitor General asked the Court to stay a preliminary injunction entered by the District Court for the Northern District of California, enjoining the executive branch from reorganizing the federal government without Congressional authorization through a series of reductions in force across government agencies. *See Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1028-29 (9th Cir. 2025). The Solicitor General devoted a significant portion of its stay application to the argument that the dispute was channeled under the CSRA, an argument the Ninth Circuit had rejected in a published decision denying a stay. *See* Gov't Application to Stay, *Trump v. Am. Fed'n of Gov't Emps.*, 2025 WL 1569930, at *15-21 (June 1, 2025); *Am. Fed'n of Gov't Emps.*, 139 F.4th at 1029. Notably, the injunction that was the subject of the stay request exercised jurisdiction over claims brought by labor unions on the basis of "injury on behalf of their federal employee members who have received RIF notices" and "on behalf of their non-federal employee members who stand to lose their jobs as a result of federal workforce reductions." *Am. Fed'n of Gov't Emps. v. Trump*, 784 F. Supp. 3d 1316, 1334 (N.D. Cal. 2025) (subsequent history omitted).

In granting the stay application, the Court said nothing about its jurisdiction, instead holding that the government was likely to prevail in defending the legality of its conduct before the Court. *See* 145 S. Ct. 2635. The Court then stated that it was not reaching additional claims in the case challenging the legality of the application of those central directives, which Justice Sotomayor explained in her concurrence "leaves the District Court free to consider" those issues. *Id*. Other circuits were quick to pick up on the implication that "the Supreme Court likely decided that the CSRA did *not* funnel the dispute at issue … to the MSPB." *New York v. Kennedy*, 155

F.4th 67, 75 (1st Cir. 2025) (emphasis in original); *see also Am. Fed'n of Gov't Emps. v. Trump*, 155 F.4th 1082, 1092 (9th Cir. 2025) (allowing discovery to proceed on remand from Supreme Court). That implication is bolstered by the fact that "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998).

Days later, the Court resolved another emergency application from the Solicitor General asking the Court to stay a preliminary injunction entered by the District Court for the District of Massachusetts enjoining the executive's actions to shut down the Department of Education. *See New York v. McMahon*, 784 F. Supp. 3d 311, 324 (D. Mass. 2025) (entering preliminary injunction) (subsequent history omitted). The challenge was brought not by federal employees, but by states and third-party beneficiaries of government services, including public-school employees. *Id.* at 338-41. Again, the Solicitor General advanced a channeling argument. *See* Gov't Application for Stay, *McMahon v. New York*, 2025 WL 1632131, at \*25-30 (June 1, 2025). But instead of announcing that challenges to executive action implicating personnel are categorically channeled, the Court stayed the preliminary injunction without explanation. *McMahon v. New York*, 606 U.S. ---, 145 S. Ct. 2643 (mem.) (July 14, 2025).

*Office of Personnel Management v. American Federation of Government Employees* is likewise unhelpful to Defendants. 145 S.Ct. 1914 (April 8, 2025). That stay was unambiguously on standing grounds, not administrative channeling. *Id.* (holding non-profit organization plaintiffs' claims that they would be harmed by the widespread termination of probationary employees throughout government were "presently insufficient to support the organizations' standing").

Defendants next argue that this Court erred in holding that RSF and TNG-CWA are not channeled, again circling back to the non-binding stay panel opinion. That opinion did not acknowledge the existence of these plaintiffs, let alone hold they were administratively channeled,

7

as this Court noted in its opinion. Op. 12 18 n.9; *see generally Widakuswara v. Lake,* No. 25-5144, 2025 WL 2787974 (D.C. Cir. May 28, 2025).

The panel's complete silence on the issue does not establish support for Defendants' stunning assertion that a non-federal-employee plaintiff who is harmed by an agency's decision to sideline its staff in pursuit of an unlawful plan that disrupts the government services upon which the plaintiff relies has no recourse when relief implicates federal personnel matters. Defendants cite no court that has ever held as much. Such a holding would leave such government beneficiaries without any forum to challenge the government action that has harmed them, as they cannot invoke the administrative processes created by the CSRA. That, in turn, would require the Court to undertake a preclusion analysis, not the *Thunder Basin* analysis relied upon in the bulk of Defendants' cited cases. *Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370, 386-87 (D.C. Cir. 2025) ("When the argument is that a statutory review scheme completely extinguishes a plaintiff's rights under another federal statute, we have generally not applied the *Thunder Basin* framework.").

And that preclusion analysis would require this Court to hold that implications from the CSRA, which says nothing about third parties who are not federal employees, overcome the countervailing presumption of judicial review that the APA carries. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967). That presumption manifests Congress's "evident intent … to make agency action presumptively reviewable." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012). Given that presumption, the Supreme Court has refused to deem APA review impliedly precluded, even when an agency adjudication scheme established by Congress did provide a path to eventual judicial review. *Sackett v. E.P.A.*, 566 U.S. 120, 129 (2012) ("[I]f the express provision of judicial review in one section of a long and

8

complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all.").

Defendants' brief warns that rejecting their argument will turn the CSRA "upside down" because "end-users of government services" will be able to "obtain judicial review of termination decisions." Stay Mot. at 6. This overstatement in service of Defendants' limitless argument ignores that third parties will rarely have standing to challenge individual termination decisions; this case is distinct and should be rare in the context of a government helmed by the rule of law, in that it challenges an agency's decision to stop performing its functions without explanation, part of which constituted sidelining over a thousand federal employees.

What Defendants advocate is simply untenable: A complete bar on judicial review of beneficiaries' challenges to unlawful agency action when that action implicates personnel. Together, with their contention that employees can never raise these challenges, Defendants' view is that the federal government could place on administrative leave every single federal agency employee, thereby shuttering every single administrative agency, and be immune from judicial review because its unlawful action was carried out via personnel decisions. Certainly, Congress did not intend to wipe out the APA by enacting the CSRA. Indeed, far from intending to silently eradicate judicial review under the APA, Congress acknowledged the importance and applicability of the APA when it wrote the CSRA. *See* 5 U.S.C. §§ 1103 (CSRA: requiring the Director of OPM to comply with APA notice and comment rule-making), 1105 (CSRA: "in the exercise of the functions assigned under this chapter, the Director [of OPM] shall be subject to APA]"); 7134 (APA also applies to any rules adopted pursuant to FSLMRS).

Defendants' main authority for this argument is *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), which would be relevant if RSF and TNG-CWA sought judicial review of

Defendants' violation of the CSRA. But they do not, so it is inapposite. In *Block*, the Supreme Court held that consumers of milk could not enforce violations of the Agricultural Marketing Agreement Act of 1937 through the APA because the Agricultural Marketing Act did not contemplate "consumer participation in the regulatory process." *Id.* at 346-47. The Act's administrative exhaustion requirement, which spoke only to "a cooperative venture among the Secretary [of Agriculture], handlers, and producers" of milk indicated Congress did not intend consumers "to ensure that the statutory objectives would be realized." *Id.* Consumers therefore could not sue to remediate violations of the Agricultural Marketing Act. But *Block* does not establish that an implied Congressional intention to channel disputes over violations of the CSRA to administrative review precludes APA challenges to enforce violations of an entirely different statute, the International Broadcasting Act.

In short, there is, indeed, "reason to think the outcome will change this time around." Stay Mot. at 4. Much water has flowed under the bridge since the initial stay-panel decision. The stay panel was not the final word on this issue; this Court's instant order was premised on a fuller record and was in service of enforcing vacatur of the unlawful agency action; and the D.C. Circuit has held that third-party plaintiffs like RSF and TNG-CWA are not administratively channeled under the CSRA, *see Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 776 (D.C. Cir. 2025), *reh'g en banc granted*, No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025).

### 2. The *Thunder Basin* factors support jurisdiction over all Plaintiffs' claims and the ability to order relief.

The Court correctly found that it independently had jurisdiction based on the RSF Plaintiffs' and TNG-CWA's claims. But even if it did not, the *Thunder Basin* factors support finding jurisdiction over all Plaintiffs' claims and the ability to grant the at-issue relief because these claims

are not "of the type Congress intended to be reviewed" under the CSRA's scheme. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994).

The Court did not address this issue in its summary-judgment opinion. But in its preliminary-injunction opinion, it found that "the individual government employee plaintiffs are not barred from challenging the dismantling of USAGM because this case is not simply a collection of employment disputes." *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 30-31 (D.D.C. 2025). Importantly, that conclusion is even more evident now, and demonstrates that Defendants' repeated reliance on the stay-posture opinion in the D.C. Circuit is misguided.

The D.C. Circuit has never held—in the stay decision or otherwise—that Plaintiffs' claims founded on the implementation of an illegal downsizing decision that reduced Agency operations across the board would be channeled. Rather, in its stay-posture opinion, the D.C. Circuit held that the Court "likely lacked jurisdiction over USAGM's *personnel* actions." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025) (emphasis added). The Circuit then considered whether or not the agency action concerned simply employment disputes, and held that to the extent it did not, any challenge would represent the sort of "wholesale challenges to an agency's entire program" that cannot be considered under the APA. *Id.* at *3 (citations and quotation marks omitted). That is a discrete-agency action holding under the APA, not a CSRA holding. Here, on a different and more complete record, this Court vacated the Statutory Minimum Memorandum, after finding that it is challengeable final agency action. The stay-panel decision is unilluminating regarding the propriety of personnel-related relief as a component part of APA relief. *See Widakuswara*, 2025 WL 2787974, at *1 (characterizing the preliminary injunction as lumping together "discrete claims with respect to … individual personnel actions").[1] And the D.C.

---

[1] This issue is presently before the en banc D.C. Circuit in *NTEU*, No. 25-5091.

Circuit has never held that if Plaintiffs could in fact demonstrate discrete agency action tied to an agency-wide downsizing decision that such a claim would be channeled or that relief vacating such a claim would be unobtainable. It is not.

The Court's findings with respect to discrete agency action are different than at the preliminary-injunction stage. Defendants do not mention this. The Court found that Defendants made a single, discrete, and final agency action reflected in the Statutory Minimum Memorandum. Op. at 21. That qualifies as a rule or its equivalent—"the defendants spoke through an official written document that reflected the agency's decision to reduce its future operations." *Id.* at 22. Defendants testified that written documents like the Memorandum "reflected USAGM leadership's 'decision' about what constituted the 'statutory minimum' level of agency operations." *Id.* The placement of USAGM and VOA employees on administrative leave was part and parcel of this illegal decision. Because precisely the type of discrete agency action that the D.C. Circuit envisioned demonstrates that Plaintiffs' claims are not merely employment claims and the relief is oriented toward vacating that illegal discrete action, this Court has jurisdiction under *Thunder Basin.*

## II.    DEFENDANTS CANNOT SHOW IRREPARABLE HARM AND THE REMAINING STAY FACTORS DISFAVOR A STAY.

The remaining stay factors, individually and together, disfavor a stay of the Court's order.

The Defendants cannot show irreparable harm from the Court's order. Defendants' contentions otherwise simply rehash prior gesturing toward unfettered executive power—despite the APA's cabining of arbitrary and capricious government action and action that violates the law— or reflects a problem of the government's own creation. Defendants miss the mark on both counts.

Start with the latter. Defendants now claim, for the first time in any briefing, that they functionally cannot "reintergrat[e] … nearly five hundred employees who have not been working

at the agency in over a year." Stay Mot. at 9. Defendants' argument is founded on a declaration they submitted that suggests that USAGM has "determined it has the capacity to onboard approximately 70 employees per week." Kotz Decl. ¶ 6. Taking that representation as accurate for present purposes, Defendants have *never* raised these capacity concerns to Plaintiffs or this Court, and have *never* asked Plaintiffs whether they would be willing to work with the Agency to develop a plan to propose to this Court for implementation of the Court's order.

In fact, Plaintiffs would be willing to discuss a staged implementation of the order, including returning to work up to 70 employees per week, assuming the Agency's representations are true. That alone vitiates the thrust of Defendants' irreparable-harm contentions. And Defendants could have resolved the issue through a simple conversation and good-faith discussion rather than unnecessary emergency motions practice.

Defendants' arguments related to never-before-heard and never-before-raised concerns about whether they can implement the Court's order amount to a motion for reconsideration or modification of the Court's order, *not* a motion to stay. But, of course, Defendants have never filed such a motion, the proper vehicle for raising these concerns. Rather, they intentionally wish to subject themselves to an order they now claim is impossible to comply with—despite, again, never raising these concerns before filing their motion—in order to bolster their position. That is quintessential gamesmanship that should not and need not be condoned when Plaintiffs (and likely the Court) are willing to reach a sensible solution to any potential issues. *Cf. Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 246 n.11 (D.D.C. 2015) (finding no irreparable harm to support a preliminary injunction when "the alleged irreparable harm is caused, at least in part, by the plaintiff's own inaction"); *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012) ("It is well-settled that a preliminary injunction movant does not satisfy the irreparable harm

13

criterion when the alleged harm is self-inflicted."(citation and quotation marks omitted)); *Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001) (same) (collecting cases).[2]

Moving beyond these concerns, Defendants' argument boils down to a frightening proposition. At bottom, Defendants' position is that by taking illegal actions of a grave magnitude, they can effectively get away with them simply by asserting how hard it would be for them to roll back their own misdeeds. Yes, vacating the illegal downsizing decision here will require various steps. But that is the consequence of Defendants' doing—they cannot now claim that vacatur will be too complicated, or too difficult, because they acted too illegally. *See, e.g. Cigar Ass'n of Am. v. United States Food & Drug Admin.*, 132 F.4th 535, 541 (D.C. Cir. 2025) (vacating a rule over FDA's citation to a "parade of harms" because "[t]he final Rule's deficiencies are serious" and the district court appropriately considered the "potential disruptive consequences of vacatur").

The remainder of Defendants' arguments related to irreparable harm and the remaining stay factors are nothing more than a repackaging of arguments they have made throughout this litigation. Defendants claim that the executive has discretion with respect to personnel issues and that the Court's order unduly intrudes on the executive's prerogatives, thus harming the public interest. These arguments are not new. And as before, they are wrong for the reasons this Court persuasively explained in its Opinion. Adopting Defendants' understanding of unfettered discretion undermines the plain purpose and function of the APA, which is to *cabin* executive discretion when the government takes illegal actions like those at issue here.

---

[2] Defendants' suggestion that a stay would not irreparably harm Plaintiffs and the public flies in the face of repeated findings by this Court related to the persistent and ongoing harms Plaintiffs face as a result of Defendants' illegal actions. This Court has repeatedly found that those harms continue even though Defendants have restored *de minimis* functions. Of course, this Court properly found that Defendants only restored such *de minimis* operations in light of its intervention. *See supra* § I.A.

14

More basically, the Court's order does not interfere with the executive's personnel-related discretion. Defendants have not and cannot contest that the Court's order is designed to set aside and vacate the illegal downsizing decision Defendants made. Defendants' placing of USAGM employees on administrative leave was done in service of that illegal decision. Thus, even if one aspect of the Court's order could be considered as relating to personnel, its order vacating the illegal action in part by ordering employees off administrative leave does not interfere with the executive's discretion over personnel-related issues—something this Court has repeatedly noted it respects. *See, e.g.*, Op. at 26-28. It does not question that discretion. It simply requires that the discretion be exercised within the bounds of the law, including the APA. That is unquestionably within the public interest. *See, e.g.*, *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (citation and quotation marks omitted)).

Taking employees off administrative leave is simply a consequence of vacatur. And there is nothing objectionable about the Court's specificity with respect to certain aspects of what vacatur means here, especially in light of the Defendants' record of bad faith. *See, e.g.*, Op. at 5-6 n.2 (describing Defendants' conduct as "a Hallmark production in bad faith"); *see also* 25-cv-1015, ECF 72 at 2 (noting Court was on brink of holding Defendants in contempt); ECF 164 (expressing "serious doubt" about "defendants' compliance with the preliminary injunction and their minimum statutory obligation"). Indeed, Defendants' arguments really turn on contending that vacatur is inappropriate. But as this Court properly found, vacatur is the default remedy under the APA, Op. at 32-33, especially when the Defendants' decisionmaking was seriously deficient, *id.* at 33 ("The Court can hardly imagine the defendants have a non-arbitrary justification for these actions on

15

remand after they have failed to muster one in litigation."). The Court properly determined that, in light of Defendants' grave errors with respect to conforming their conduct and decisionmaking to the law and continued intransigence related to Court orders that it needed to clearly delineate what one aspect of vacatur involved here. Again, that vindicates the public interest by bringing Defendants one step closer to undoing their illegal decision.

On the flip side, the order poses no harm to Defendants, who are brought into conformity with the law. That is in the public interest. It vindicates hundreds of millions of taxpayer dollars by putting them to productive ends that uplift and serve VOA's and USAGM's statutory missions, rather than paying hundreds of employees not to work. That is likewise in the public interest. Because here the public interest and the equities merge and disfavor a stay, *MediNatura, Inc. v. FDA,* 998 F.3d 931, 945 (D.C. Cir. 2021), Plaintiffs undoubtedly will suffer harm as this Court has repeatedly found, and Defendants failed to show irreparable harm, the Court should deny the Defendants' motion for a stay.

**CONCLUSION**

For the above-mentioned reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for a stay.

Dated: March 20, 2026

ZUCKERMAN SPAEDER LLP


_____/s/_____
William B. Schultz
Jacobus P. van der Ven
Brian J. Beaton, Jr.

2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8136
wschultz@zuckerman.com
cvanderven@zuckerman.com
bbeaton@zuckerman.com

*Counsel for Abramowitz Plaintiffs*




EMERY CELLI BRINCKERHOFF ABADY WARD
& MAAZEL LLP


_____/s/_____
Andrew G. Celli, Jr.
Debra L. Greenberger
Daniel M. Eisenberg
Nick Bourland

One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
dgreenberger@ecbawm.com
deisenberg@ecbawm.com
nbourland@ecbawm.com


*Counsel for Plaintiffs Patsy Widakuswara,
Jessica Jerreat, Kathryn Neeper, John Doe 1,
John Doe 2, John Doe 3, John Doe 4,
American Federation of State, County and
Municipal Employees (AFSCME); American
Federation of Government Employees
(AFGE); American Foreign Service*

Respectfully submitted

AMERICAN FEDERATION OF STATE, COUNTY,
AND MUNICIPAL EMPLOYEES, AFL-CIO
(AFSCME)


_____/s/_____
Teague Paterson
Matthew Blumin
Georgina Yeomans

1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org


*Counsel for Plaintiff American Federation of
State, County, and Municipal Employees, AFL-
CIO (AFSCME)*




DEMOCRACY FORWARD FOUNDATION


_____/s/_____
Kristin Bateman
Cynthia Liao
Robin F. Thurston
Skye L. Perryman

P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org
cliao@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org


*Counsel for Plaintiffs American Federation of
State, County and Municipal Employees
(AFSCME); American Federation of
Government Employees (AFGE); American
Foreign Service Association (AFSA); The
NewsGuild-CWA*

17

*Association (AFSA); and The NewsGuild-CWA*

GOVERNMENT ACCOUNTABILITY PROJECT

_____/s/_____
David Z. Seide

1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, and John Doe 4*

DEMOCRACY DEFENDERS FUND

_____/s/_____
Norman L. Eisen
Joshua Kolb
Taryn Wilgus Null
Sofia Fernandez Gold

600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Norman@democracydefenders.org
Joshua@democracydefenders.org
Taryn@democracydefenders.org
Sofia@democracydefenders.org

*Counsel for Reporters Sans Frontières, Reporters Without Borders, Inc., American Federation of State, County and Municipal Employees (AFSCME); and American Federation of Government Employees (AFGE)*

AMERICAN FOREIGN SERVICE ASSOCIATION

_____/s/_____
Sharon Papp
Raeka Safai

2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Counsel for Plaintiff American Foreign Service Association (AFSA)*

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

_____/s/_____
Rushab Sanghvi

80 F. Street, NW
Washington, DC 20001
(202) 639-6424
SanghR@afge.org

*Counsel for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

18

MEDIA FREEDOM & INFORMATION ACCESS
CLINIC – YALE LAW SCHOOL


_____/s/_____
David A. Schulz

127 Wall Street
New Haven, CT 06520
David.schulz@YLSClinics.org

*Counsel for Plaintiffs Patsy Widakuswara,*
*Jessica Jerreat, Kathryn Neeper, and John*
*Does 1-4*

** The views expressed herein do not purport
to represent the institutional views of Yale
Law School, if any.

19

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 20, 2026, I caused the foregoing to be served on counsel of record via the Court's electronic case filing system.


_____*/s/*_____
Georgina Yeomans