**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL ABRAMOWITZ**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:25-cv-887-RCL** |
| **KARI LAKE**, *et al.*, | |
| *Defendants.* | |
| | |
| **PATSY WIDAKUSWARA**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:25-cv-1015-RCL** |
| **KARI LAKE**, *et al.*, | |
| *Defendants*. | |

**<u>ORDER</u>**

The defendants in this case have moved for a partial stay pending appeal of the Court's March 17 order granting partial summary judgment to the plaintiffs. *See Widakuswara* ECF No. 225; *Abramowitz* ECF No. 138.[1] That order vacated agency actions as arbitrary and capricious and unlawfully withholding required action in violation of the Administrative Procedure Act ("APA"). *See* ECF No. 222. These actions, such as the placement of hundreds of employees on administrative leave, were taken to minimize operations at the U.S. Agency for Global Media ("USAGM"), the parent organization of Voice of America. *See id.* As relevant here, the relief granted included reversing the placement of employees on administrative leave no later than March

---

[1] Further citations to the record will rely on ECF numeration from the *Widakuswara* docket.

23, 2026.  The plaintiffs oppose the motion.  *See* ECF No. 227.  For the reasons that follow, the Court hereby **DENIES** the motion for a stay pending appeal, **VACATES** the March 23 deadline, and **ORDERS** status updates on further steps toward compliance with the March 17 order as described in Part III.

## I.    Legal Standard

"A stay is not a matter of right" but "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672–73 (1926)).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Id.* at 433–34.  "[A] court considers four factors" to decide if a stay should issue: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  "The first two factors . . . are the most critical."  *Id.*

## II.    Discussion

### a.  The defendants fail to make a strong showing that they are likely to succeed on the merits.

The defendants press two jurisdictional grounds for why they are likely to succeed on the merits of their appeal (and no argument on the substantive merits of the plaintiffs' APA claims).  First, they insist the Court was wrong to conclude the claims of non-employee plaintiffs RSF and TNG-CWA must be channeled to the Merit Systems Protection Board ("MSPB") under the Civil Service Reform Act ("CSRA").  ECF No. 225 at 4.  Second, they challenge whether the relief was

tailored to the interests of those non-employee plaintiffs. *Id.* at 8. Before turning to each jurisdictional objection, the Court briefly addresses an issue the defendants largely elide.

At the outset, even if the defendants' arguments regarding non-employee plaintiffs RSF and TNG-CWA were correct as far as they go, those arguments do not go far enough to show a substantial likelihood of ultimate success on appeal. That is because the relief the Court granted went beyond the interests of these non-employee plaintiffs to reach the interests of unions plaintiffs AFGE and AFSCME, whom the Court separately determined had standing to sue. ECF No. 223 at 11–12. The union plaintiffs raising separation-of-powers challenges to the scope of executive action are not subject to CSRA channeling, even if they seek relief that tracks what the employees might otherwise obtain in administrative challenges to the substantive merits of individual termination actions before the MSPB. Challenges to structural agency action "have nothing to do with the" federal employment and labor issues the MSPB "regularly adjudicate[s]," rendering them "wholly collateral" to the CSRA's purpose and squarely "outside the [MSPB]'s expertise." *Axon Enters, Inc. v. Fed. Tr. Comm'n*, 598 U.S. 175, 186, 190–91 (2023) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)); *see also id.* ("The ultimate question is how best to understand what Congress has done . . . ."); *cf. Abramowitz v. Lake*, 803 F. Supp. 3d 1, 12–13 (D.D.C. 2025) (rejecting CSRA channeling argument related to structural constitutional challenge) *stay pending appeal denied* No. 25-5313 (D.C. Cir. Oct. 6, 2025).

For example, if instead of terminating the Yucca Mountain Nuclear Storage Project during the 2000s, the leadership of the Department of Energy and Nuclear Regulatory Commission downsized their agencies and placed every relevant employee on indefinite administrative leave, one could hardly imagine Congress would have intended the MSPB to be the forum for a challenge to the agencies' actions. *See In re Aiken Cnty.*, 725 F.3d 255, 257–59 (D.C. Cir. 2013). Even

more so today, given that the MSPB is subject to unfettered Presidential control under current precedent. *Harris v. Bessent*, 160 F.4th 1235, 1256 (D.C. Cir. 2025) *en banc rehearing denied* 2026 WL 88114 (D.C. Cir. Jan. 9, 2026). And because vacating the placement of employees on administrative leave is indisputably necessary to restore these parties' rights and interests, the injunction is properly tailored to their injuries.

To the extent the defendants offer a response regarding union plaintiffs, it comes in the form of two boilerplate assertions. First, they assert that "the D.C. Circuit, in this very case, already concluded that this Court likely lacks jurisdiction over USAGM's decision to place employees on administrative leave." ECF No. 225 at 4 (citing *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025)). But to the extent their reading is correct, that decision was reached in a stay posture and does not bind this Court in entering summary judgment — because that stay rulings (like this one) merely "'predict[]' who '*likely* will or will not succeed on the merits,' . . . and so create[] no law of the case regarding them." *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 1, 8 (D.D.C. 2021) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012)). Second, the defendants offer a conclusory assertion that "the Supreme Court, in a series of rulings last spring and summer, issued the same relief in similar cases," failing to spell out the similarities between either the relief or the cases. ECF No. 225 at 5. The Court finds this argument underdeveloped and, in any event, is inclined to agree with the plaintiffs' explication of the import of those cases. ECF No. 227 at 6–7.

In any event, the grounds the defendants raise in their motion are unpersuasive. The Court's opinion lays out the reasons why the non-employee plaintiffs' claims need not be channeled. Citing, cases invoking "the absence of [a] provision" for third parties "to obtain judicial review," the defendants suppose that Congress intended to deny affected individuals the "statutory

4

entitlement to review for adverse action of the type governed by [the CSRA]." *United States v. Fausto*, 484 U.S. 439, 448–49 (1988) (discussing *Block v. Community Nutrition Inst.*, 476 U.S. 340, 345–48 (1984)). But that logic — which was applied in *Fausto* to employment actions centered on "misconduct," *id.* at 447, not wholesale agency downsizing — says little about whether the non-employee plaintiff here are barred from invoking the APA to remedy their injuries just because the underlying decision implicated personnel decisions. And that is not surprising, because as the plaintiffs observe, "[w]hen the argument is that a statutory review scheme completely extinguishes a plaintiff's rights under another federal statute," courts do "not appl[y] the *Thunder Basin* framework" at all. *Lucas v. AFGE*, 151 F.4th 370, 386–87 (D.C. Cir. 2025).[2]

The defendants also contend that to the extent the order to return employees from administrative leave was entered on behalf of non-employee plaintiffs, the order was "broader than necessary to provide complete relief to each plaintiff with standing to sue." ECF No. 225 at 8 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025)). They challenge the declarations the Court relied on in determining the scope of RSF's injuries-in-fact but continue to rebut those declarations only with forward-looking statements about intended agency operations. *See* ECF No. 225 at 7 (citing ECF No. 175 at 10 (further citing Decl. of Frank Wuco ¶¶ 4–5, ECF No. 174-1 (describing future broadcasting operations yet to occur))). And the defendants continue to rely on *Trump v. CASA* as suggesting that vacatur is an overbroad remedy for a § 706(2) violation, when the majority opinion in *CASA* deliberately withheld comment on that question. 606 U.S. at 847 n.10. Citing what is at best a penumbra in the scope of equitable authority, without more, falls well short of a strong showing of a likelihood of success on the merits. *See Nken*, 556 U.S. at 435

---

[2] To the extent the defendants see the law differently, the Court hardly finds a strong showing that they are *likely* to prevail on appeal when nearly the same question is presently consuming the attention of the en banc D.C. Circuit. *See, e.g.*, Oral Argument at 10:10–12:37, *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091 (D.C. Cir. Feb. 24, 2025) (debating whether CSRA channeling is party-specific or claim-specific).

(mere "possibility" of success is insufficient (citation omitted)). And to the extent that the defendants now contend that the Court should have picked and chosen which employees should be brought back in order to more narrowly tailor relief to the non-employee plaintiffs' injuries, the Court declines the invitation. ECF No. 225 at 9. "This case . . . is not one in which crafting a narrower remedy is a 'relatively simple matter,'" and in any event, the Court is not required to "fashion narrower, ostensibly permissible policies from whole cloth." *J.D. v. Azar*, 925 F.3d 1291, 1335–36 (D.C. Cir. 2019) (per curiam).

### b. The remaining *Nken* factors do not support granting a stay.

The equitable factors offer similarly scant support for a stay. The defendants contend that compliance with the March 23 deadline would be "operationally infeasible" because they have capacity to onboard only about seventy employees per week. Decl. of David Kotz ¶¶ 6–12, ECF No. 225-1 ("Kotz Decl."). The Court's vacatur of that deadline adequately mitigates that hardship.

Nor does judicial authority yield total discretion over personnel matters to the Executive Branch, as a general matter or in this specific case. This contention has been rejected consistently throughout this litigation and warrants no different treatment here. *See, e.g.*, *Widakuswara v. Lake*, Nos. 25-5144, 25-5145, 2025 WL 2787974, at *1 (D.C. Cir. May 28, 2025) (Srinivasan, C.J., respecting the denial of reconsideration en banc) (rejecting defendants' argument that "the district court lacks any authority . . . 'to order personnel actions beyond those that the [government itself] determines are necessary or appropriate to carry out its statutory mandate." (second alteration in original)).

Perhaps the defendants' weakest contention arises on the third factor, whether a stay would "substantially injure the other parties interested in the proceeding," because their argument on that factor runs headlong into the public-interest factor. *Nken*, 556 U.S. at 434. They contend the third

6

factor weighs in their favor because the "[e]mployees on administrative leave are currently receiving full pay," so there "is no irreparable harm to Plaintiffs here." ECF No. 225 at 10. Yet the defendants have known for months now what the Court thinks of that argument: paying federal employees to twiddle their thumbs is "waste." *Widakuswara v. Lake*, No. 1:25-cv-1015-RCL, 2020 WL 2159180, at *3 (D.D.C. July 30, 2025).

The Court thus finds that whatever the harm to the plaintiffs, the public interest overwhelmingly opposes the requested stay. "[T]he protection of the public fisc is a matter that is of interest to every citizen." *WP Co. LLC v. Small Bus. Admin.*, 502 F. Supp. 3d. 1, 23 (D.D.C. 2020) (Boasberg, J.) (quoting *Brock v. Pierce Cnty.*, 476 U.S. 253, 262 (1986)). Indeed, the "public interest is near its zenith when ensuring . . . that public funds are not purloined or wasted." *Cf. Handy-Clay v. City of Memphis*, 695 F.3d 531, 543 (6th Cir. 2012). Thus, "even the President does not have unilateral authority to refuse to spend . . . funds" in the manner prescribed by Congress. *Aiken Cnty.*, 725 F.3d at 261 n.1 (Kavanaugh, J.). Rather, when a President "has policy reasons . . . for wanting to spend less than the full amount appropriated by Congress for a particular project or program," he "must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill." *Id.* The defendants have not pursued that course, and to the contrary, Congress has passed, and the President has signed, continuing appropriations for USAGM operations as recently as this year. The continued neglect of such taxpayer funds while this litigation proceeds on appeal is anathema to the public interest.

### III.    Conclusion

Based on the foregoing analysis, the Motion for Partial Stay Pending Appeal is hereby **DENIED**, and the March 23 deadline for compliance with the Court's injunction is **VACATED**. The defendants represent in a sworn declaration that they "ha[ve] developed a detailed

Reconstitution Plan that outlines a phased, risk-managed approach" to reinstate employees placed on administrative leave and "determined that [USAGM] has the capacity to onboard approximately 70 employees per week." Kotz Decl. ¶ 5–6. The Court hereby **ORDERS** the defendants to file a copy of the Reconstitution Plan on the dockets of these cases by the close of business on April 1, 2026; and further **ORDERS** the defendants to file a status report the same date and every fourteen days thereafter describing (i) progress toward compliance with the Court's March 17 Order, including the number of employees onboarded since the entry of that order, and (ii) any intended or incidental modifications to or deviations from the Reconstitution Plan

**SO ORDERED.**

Date: ___3-20-26___
9:45 PM

Royce C. Lamberth
United States District Judge