**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL ABRAMOWITZ**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:25-cv-887-RCL** |
| **KARI LAKE**, *et al.*, | |
| *Defendants.* | |
| **PATSY WIDAKUSWARA**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | **Case No. 1:25-cv-1015-RCL** |
| **KARI LAKE**, *et al.*, | |
| *Defendants.* | |

<u>**ORDER**</u>

The plaintiffs in the above-captioned cases have moved for judicial enforcement of this Court's March 20 order requiring production of the defendants' plan and periodic status reports concerning compliance with earlier summary judgment rulings. *See Abramowitz* ECF No. 145; *Widakuswara* ECF No. 232; *Abramowitz v. Lake*, — F. Supp. 3d —, 2026 WL 746989 (D.D.C. Mar. 17, 2026), *appeal filed* Mar. 20, 2026. The defendants oppose. For the reasons briefly stated below, the Motion is hereby **GRANTED.**

### I.    BACKGROUND

For more than a year, the U.S. Agency for Global Media ("USAGM"), the parent agency of the Voice of America news outlet and other government-supported media networks, has been a focus of political controversy. In March 2025, Executive Order 14,238, titled "Continuing the

1

Reduction of the Federal Bureaucracy," directed the reduction of the U.S. Agency for Global Media to its "statutory minimum." *Id.* at *2. In the days and weeks following that action, defendant Kari Lake and other members of USAGM leadership implemented that directive through a number of actions, including (i) placing 1,042 out of 1,147 of USAGM's full-time personnel on paid administrative leave, (ii) terminating all 598 personal service contractors working on behalf of Voice of America, (iii) ordering Voice of America to cease all broadcasting and other transmissions, and (iv) initiating termination proceedings for unionized employees. *Id.* These actions were documented in a three-page "Statutory Minimum Memorandum" that "identified sixty-eight employee or contractor positions to retain, excluding members of the Senior Executive Service, and provided that '[a]ll other positions would be terminated.'" *Id.* The immediate effect of the actions taken in conformance to the Memorandum was that Voice of America was "not reporting the news for the first time in its 80-year existence." *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 21 (D.D.C. 2025). In response to this litigation, the defendants have resumed limited broadcasting to certain statutorily required geographic regions.

The litigation that ensued has gone on for more than a year. On March 17, 2026, this Court granted partial summary judgment for the plaintiffs, holding that the defendants' decision to dramatically downsize USAGM and Voice of America was arbitrary and capricious in violation of § 706(2) of the Administrative Procedure Act. *See Abramowitz*, 2026 WL 746989, at *9–14; *see also* Order 1–2, *Abramowitz* ECF No. 133 ("March 17 Order"). "[N]ot only" did the Statutory Minimum Memorandum reflect "an absence of '*reasoned* analysis' from the defendants," the Court explained, "there [was] an absence of any analysis whatsoever." *Abramowitz*, 2026 WL 746989, at *14 (emphasis added) (citing *Widakuswara*, 779 F. Supp. 3d at 33). As is the ordinary course for a § 706(2) violation, the Court entered an order vacating and setting aside the following:

1. "the March 18 Statutory Minimum Memorandum,"

2. "the March 15 placement of 1,042 employees on administrative leave,"

3. "the suspension of broadcasting operations,"

4. "the termination of non-contractor staff."

March 17 Order at 1–2.  The Court further ordered that, "no later than March 23, 2026, all employees placed on administrative leave pursuant to the defendants' March 2025 directive shall return to work." *Id.* at 2.

Within forty-eight hours, the defendants noticed an appeal and moved in this Court for a stay for the duration of the appellate proceedings.  To support their arguments that equity favored a stay, the defendants filed a declaration by David Kotz, the Chief Management Officer of USAGM.  *See* Decl. of David Kotz, *Abramowitz* ECF No. 138-1 ("Kotz Decl.").  Kotz asserted that as a practical matter, USAGM could not return employees to work in time to meet the Court's March 23 deadline, but he assured the Court that USAGM had developed a "Reconstitution Plan" that would allow the agency "to comply with th[e] Order" entered on "March 17, 2026," while completing the onboarding aspects of the order on a "practicable" timeline.  *Id.* ¶¶ 3, 5.  The Reconstitution Plan was not included in the defendants' filings, but its existence and contents were described in the Katz Declaration; as of this date, neither the Court nor the plaintiffs have viewed it.

In an order issued the next day, the Court denied the defendants' request for a stay.  But the Court appreciated the need to balance the plaintiffs' right to relief and the broader public interest in restoring USAGM and Voice of America operations with the defendants' implementation concerns.  It accordingly adjusted the forward-looking relief provided in the March 17 Order, vacating "the March 23 deadline for compliance with the Court's injunction."

Order 7, *Abramowitz* ECF No. 141 ("March 20 Order").  Instead, the defendants were to: (1) "file a copy of the Reconstitution Plan" with the Court "by the close of business on April 1, 2026," (2) "file a status report the same date and every fourteen days thereafter describing (i) progress toward compliance with the Court's March 17 Order, including the number of employees onboarded since the entry of that order, and (ii) any intended or incidental modifications to or deviations from the Reconstitution Plan."  *Id.* at 8.

The defendants contemporaneously sought a stay from the D.C. Circuit of the return-to-work requirement in the March 17 Order, which the Circuit granted.  *See Widakuswara v. Lake*, Nos. 25-5145, 26-5086, 26-5087, 2026 WL 970265, at *1 (D.C. Cir. Mar. 31, 2026) (per curiam) (staying the "orders entered on March 17, 2026 . . . to the extent that they require that 'all employees placed on administrative leave pursuant to defendants' March 2025 directive shall return to work'").  None of the vacatur provisions of the March 17 Order was before the Circuit in the stay posture.  *See, e.g.*, Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay at 7, No. 26-5086, Doc. No. 2164685 (D.C. Cir. Mar. 20, 2026) ("The government . . . respectfully requests a stay pending appeal of the injunctive order to restore employees from administrative leave.") (hereinafter "D.C. Circuit Stay Motion").

The defendants did not file documents reflecting the Reconstitution Plan or any status report on April 1.  On April 6, the plaintiffs in these cases filed a motion to enforce the production requirements of the March 20 Order.  *See Abramowitz* ECF No. 145; *Widakuswara* ECF No. 232. The defendants oppose the motion, which is now ripe.  *See, e.g.*, Response in Opp'n, *Widakuswara* ECF No. 237; Reply, *Widakuswara* ECF No. 238.

4

## II.   LEGAL STANDARD

"[D]istrict courts have the authority to enforce the deadlines they impose." *Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 22, 26 (D.D.C. 2015).  A "motion to enforce is the usual method for requesting a court . . . to compel compliance" with its prior orders. *Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 812 F. Supp. 3d 86, 97 (D.D.C. 2025) (citation omitted).  "In determining compliance with an order, the Court is guided not only by the text of that order but also by its related opinions." *Id.*

## III.   ANALYSIS

At no point in the last seven weeks have the defendants been relieved from their obligation to produce the Reconstitution Plan and file status reports describing compliance with this Court's March 17 Order.  The plain text of the D.C. Circuit's stay shows that the stay is limited to the injunction contained in the March 17 Order, which represents just one of the five forms of relief afforded to the plaintiffs.  The defendants never requested a stay of the remaining four vacatur provisions, meaning those provisions were necessarily still in effect as of the April 1 deadline for production.  By the defendants' own representations, the Reconstitution Plan relates to compliance with the March 17 Order writ large, not merely with the injunction; so too are the required status reports.  Consequently, the Reconstitution Plan and status reports remain relevant to measuring whether the plaintiffs have received the relief they are entitled to under the March 17 Order.  The plaintiffs' request for further enforcement is thus proper and their motion will be granted, for the reasons briefly explained below.

On the defendants' request, the D.C. Circuit stayed the March 17 Order; but because both the defendants' stay motion and the Circuit's order were expressly limited to injunctive relief, the vacatur provisions of the March 17 Order remain in effect.  In the defendants' own words, they

have appealed — and thus, could only request a stay of — the injunction contained in the Court's

March 17 Order.  *See* D.C. Cir. Stay Mot. 11.  Recognizing that the injunctive portion of the order

was distinct from its vacatur provisions, the defendants made clear they only appealed the former.

*See id.* ("The court vacated various agency actions, including placement of employees on

administrative leave in March 2025.  As relevant here, the court *then* ordered that: "no later than

March 23, 2026, all employees placed on administrative leave . . . shall return to work." (emphasis

added) (alteration in original)).  So as the government explained to the Circuit, it "appealed from

the injunctive aspect of [the March 17 Order]" and "s[ought] a stay of that portion of the order

pending appeal."  *Id.*

Consequently, the relief granted by the Circuit was limited to the provisions of the March

17 Order at issue on appeal: the "injunctive aspect," as the defendants phrased it.  *See id.*  On

March 31, 2026, the Circuit entered a per curiam order that, in relevant part, "the motions for a

stay pending appeal be granted."  *Widakuswara*, 2026 WL 970265, at \*1.[1]  The panel elaborated:

> The district court's orders entered on March 17, 2026, in 1:25-cv-887-RCL, *Abramowitz v. Lake*, and 1:25-cv-1015-RCL, *Widakuswara v. Lake*, are stayed to the extent that they require that "all employees placed on administrative leave pursuant to defendants' March 2025 directive shall return to work."  Appellants have satisfied the stringent requirements for a stay pending appeal.

*Id.*  Thus, by its terms, the Circuit stayed only the March 17 Order insofar as it required

reinstatement: no less — and certainly no more — than what the defendants had requested.  *Cf.*

*Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2629 (2005) (clarifying that district court's

---

[1] The Circuit also denied the plaintiff-appellees' motion to deny the stay motions as moot based on the vacatur of the March 23 deadline.  The Circuit agreed with the defendant-appellants that their stay request reached "broader aspects of the district court's orders" than just the March 23 onboarding deadline that this court vacated on March 20.  *Widakuswara*, 2026 WL 970265, at \*1.  But that fact does not change the ultimate fact that only the injunctive provisions of the March 17 Order were appealed, and only those provisions were stayed on appeal.

subsequent remedial order could not enforce a preliminary injunction that Supreme Court had previously "stayed . . . *in full*" (emphasis added)).  As in earlier stages of this litigation, the non-appealed portions of this Court's order were necessarily not at issue in the stay motion before the D.C. Circuit, and therefore remain in effect.  *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 2787974, at *1 (D.C. Cir. May 28, 2025) (en banc) (Statement of Srinivasan, C.J.) (provision of preliminary injunction not addressed in defendants' stay application remained in "continued operation"); *see also id.* at *3 (Statement of Pillard, J.) (similar).

Based on the defendants' previous representations to this Court, the Reconstitution Plan and the status reports ordered in this Court's March 20 Order remain relevant to measuring compliance with the non-stayed portions of the March 17 Order.  Take the Reconstitution Plan. Although the defendants now contend that the Reconstitution Plan pertained only to the injunction, the defendants pitched that plan to the Court in March not only as a roadmap for "reinstat[ing]" the "484 employees" still on administrative leave, but also for "ensuring continuity of mission-critical operations and safeguarding agency systems and infrastructure."  *See* Kotz Decl. ¶ 5.  The plan was also meant to ensure that new agency leadership could "develop a coherent, considered plan for the agency going forward," to presumably include compliance with the non-stayed vacatur portions of the March 17 Order, including the requirement to vacate and set aside the Statutory Minimum Memorandum and actions taken pursuant thereto.  *See* March 17 Order 1 ("[A]ll actions taken pursuant to the defendants' decision to reduce VOA to the 'statutory minimum,' as set forth in the Statutory Minimum Memorandum, are VACATED and SET ASIDE . . . .").

Similarly, the ordered status reports required explanation of "progress toward compliance with the Court's March 17 Order."  March 20 Order 1.  To be sure, and as the March 20 Order explained, the Court expected such updates to "includ[e] the number of employees onboarded

since entry of that order," *id.* at 2, and the injunction requiring such onboarding has since been stayed. But "[t]he word 'includes' is usually a term of enlargement, and not of limitation." *Vertex Pharms. Inc. v. U.S. Dep't of Health & Hum Servs.*, 774 F. Supp. 3d 211, 230 (D.D.C. Mar. 31, 2025) (quoting *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008)). So the fact that the Court highlighted USAGM's onboarding numbers as a detail to be included in the defendants' compliance reports did not mean such reports should exclude all other information regarding compliance with the March 17 Order. The Court expected such reports to include information regarding compliance with the vacatur provisions of the March 17 Order, not merely the injunctive provision.

The defendants contend that they should have nothing to report in response to the vacatur provisions because the vacatur portions "do not describe any actions" that the defendants "must take." Resp. 6. There is no doubt, and the parties appear to agree, that vacatur does not "compel[]" any particular "further agency decisionmaking," as would an injunction. *Refugee & Immigr. Ctr. for Educ. & Legal Servs. v. Mullin*, — F.4th —, 2026 WL 1110616, at \*26 (D.C. Cir. Apr. 24, 2026) (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022)); *cf. id.* ("[A]n injunction 'is a means by which a court tells someone what to do or not to do.'" (quoting *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986))). "[N]or" does vacatur "restrain[]" the agency from any particular subsequent course of action subject to the threat of contempt. *Id.* But vacatur requires that the agency's forward-looking decisionmaking comply with "the constitutional or statutory basis on which the court invalidated an agency action." *Texas*, 40 F.4th at 220. And of course, the agency must demonstrate that it has, in fact, vacated and set aside the unlawful actions. *Asylumworks v. Mayorkas*, No. 1:20-cv-3815-BAH, 2023 WL 2733722, at \*6 (D.D.C. Mar. 31, 2023). It is well settled that reverting to the pre-action status quo

often requires a change in course by the agency, *see XO Energy MA, KP v. FERC*, 77 F.4th 710, 719 (D.C. Cir. 2023), as the Court acknowledged in the Memorandum Opinion accompanying the March 17 Order, *see Abramowitz*, 2026 WL 746989, at *15 (recognizing that "disruptive consequences of vacatur" under the APA may weigh in favor of an alternative remedy, but the defendants had not briefed the appropriate legal standard (quoting *Heartland Reg'l Med. Ctr. v. Sebelius*, 521 F.3d 193, 197 (D.C. Cir. 2009))).

***

In sum, the defendants remain under a continuing obligation to comply with the vacatur relief contained in the March 17 Order. The requirements to file a copy of the Reconstitution Plan and subsequent status reports pertain to compliance with the March 17 Order as a whole, not merely the injunctive provision that the D.C. Circuit stayed on March 31. As a result, it is hereby **ORDERED** that the plaintiffs' Motion to Enforce is **GRANTED** and that the defendants shall file the documents and status report within seven days of this order and further status reports every two weeks thereafter.

**SO ORDERED.**

Date: _____ May 14, 2026 _____

_____
Royce C. Lamberth
United States District Judge