**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATSY WIDAKUSWARA, et al., | |
| Plaintiffs, | Civil Action No. 25-cv-1015 (RCL) |
| v. | |
| KARI LAKE, et al., | |
| Defendants. | |
| MICHAEL ABRAMOWITZ, et al., | |
| Plaintiffs, | Civil Action No. 25-cv-0887 (RCL) |
| v. | |
| KARI LAKE, et al., | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INFORMATION
RELATED TO VACATUR**

The Court should deny Plaintiffs' motion for information related to vacatur. This is Plaintiffs' second attempt in recent weeks to effectively compel discovery on topics that are irrelevant to any true compliance issue. The Court properly took no action on the first attempt. The Court should reject this attempt as well, because Plaintiffs' motion erroneously interprets the vacatur portions of the Court's March 17, 2026, partial summary judgment ruling as injunctive in nature; Plaintiffs are not entitled to the information they seek, which is obsolete or irrelevant to any issue remaining in the case; and the information is inappropriate for a status report.

Defendants have filed status reports every two weeks as required by the Court's May 14, 2026, order, and they intend to continue filing status reports as long as the order is in effect. But Plaintiffs' motion to add a requirement to include backward-looking information that is *not* about status is meritless. The Court should deny the motion.

## BACKGROUND

In this Court's March 17, 2026, summary judgment orders, it imposed a requirement that "no later than March 23, 2026, all employees placed on administrative leave pursuant to the defendants' March 2025 directive shall return to work." ECF 222 at 2.[1] Defendants then moved the Court for "a stay pending appeal of the Court's forward-looking relief." ECF No. 225 at 2. Specifically, Defendants asked the Court to "stay" the return-to-work requirement "pending appeal," and "[a]t the least" to stay that requirement "for fourteen days." *Id.* at 1; *see also id.* at 10 (asking for "a stay pending appeal of the order to restore employees from administrative leave" and "[a]t the least," for "a short stay to allow Defendants to seek relief from the D.C. Circuit").

---

[1] Citations to "ECF" are to docket entries in *Widakuswara v. Lake*, 25-cv-1015-RCL (D.D.C.), unless otherwise noted.

This Court's March 20, 2026, order denied Defendants' motion for a stay of the return-to-work requirement but vacated the March 23 compliance deadline. ECF 228 at 7-8. In place of the compliance deadline, and in service of the return-to-work requirement, the March 20 order required filing a copy of Defendants' "'Reconstitution Plan that outlines a phased, risk-managed approach' to reinstate employees placed on administrative leave" and status reports "describing (i) progress toward compliance with the Court's March 17 Order, including the number of employees onboarded since the entry of that order, and (ii) any intended or incidental modifications to or deviations from the Reconstitution Plan." *Id.* at 8.

On Defendants' motion, the D.C. Circuit then stayed in full the return-to-work requirement. Doc. #2166451, *Widakuswara v. Lake*, No. 25-5144, at 3 (D.C. Cir. March 31, 2026). Specifically, the Court stated that the March 17 summary judgment orders in *Abramowitz* and *Widakuswara* are stayed "to the extent that they require that 'all employees placed on administrative leave pursuant to defendants' March 2025 directive shall return to work.'" *Id.* The D.C. Circuit entered that relief after the government made clear that its stay motion sought relief from the return-to-work requirement "ideally before the new April 1 [status report] deadline" because "the government remain[ed] subject to an obligation to return 484 employees from administrative leave, with status reports due every two weeks beginning on April 1." Doc. #2164890, *Abramowitz v. Lake*, No. 26-5086, at 6-7 (March 22, 2026). The appeal is still pending.

On April 6, 2026, Plaintiffs filed a motion to "enforce" the requirement to file the Reconstitution Plan and status reports. ECF 232. Although Defendants explained that the Plan is obsolete and the status report filing requirement related to the stayed return-to-work order, ECF 237, the Court disagreed and ordered Defendants to file the Reconstitution Plan and to file "status reports every two weeks." ECF 240 at 9. Defendants have complied. They filed the Reconstitution

2

Plan with the Court. And since the Court's order, Defendants have filed status reports every two weeks. In those reports, Defendants provided updates on staffing and presented legal authority showing that the vacatur does not require them to take "compliance" actions. *See, e.g.*, ECF 242.

On June 8, 2026, Plaintiffs filed a "reply" to Defendants' first two status reports, "propos[ing]" that the Court order Defendants' "next status report" to include essentially the same information Plaintiffs now seek via motion. ECF 245 at 3-4. The Court took no action on the "propos[al]." Defendants have continued to file status reports every two weeks as required by the Court's May 14, 2026, order.

## ARGUMENT

**A.** Plaintiff's motion fails because it is entirely premised on the erroneous notion that Defendants must "take steps to effectuate the Court-ordered vacatur." ECF 249 ("Mot.") 2. That notion is wrong for two reasons. ***First***, the vacaturs—which were part of a grant of partial summary judgment—do not have immediate effect. Vacatur is a final remedy, not a preliminary one. And final remedies do not become effective until appealable, when final judgment (or partial final judgment under Federal Rule of Civil Procedure 54(b)) is entered. *See* 11 Moore's Federal Practice - Civil § 56.122 ("Of course, the reference to 'judgment' in the term 'partial summary judgment' is a misnomer. Any ruling that disposes of less than all issues and fewer than all parties in an action is not a judgment within the meaning of Rule 54."); *see also* Fed. R. Civ. P. 54(a) (judgment is "any order from which an appeal lies"); 54(b) (order that adjudicates fewer than all the claims and is not certified as final under Rule 54(b) "may be revised at any time before the entry of a judgment"); Fed. R. Civ. P. 56 advisory committee's note to 1946 amendment ("[P]artial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case."); 10B Wright & Miller, Fed. Prac. & Proc. Civ. § 2737 (4th ed. 2026) (similar).

Injunctions, by contrast, take immediate effect—but that is also why they are immediately appealable. *See* 28 U.S.C. § 1292(a).

***Second***, even if the vacaturs took effect immediately, Defendants are not aware of any legal basis for interpreting them to require concrete, specific actions, like an injunction can. Vacatur is simply a declaration that actions are void. *See Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) (holding that "vacatur *does nothing but* re-establish the status quo absent the unlawful agency action," and "neither compels nor restrains further agency decision-making" (emphasis added)). Vacatur is self-executing; it strips agency action of legal effect but does not require any specific acts of "compliance." Accordingly, there is nothing to report on "compliance" with the vacatur portion of the partial summary judgment order.

To be clear, Defendants are not currently taking any action based on the agency actions that the Court's order vacated. Of course, if a person believes that Defendants are in some way relying on a vacated agency action, and that doing so has caused the person cognizable harm, that person is free to seek appropriate relief. But this is not a matter of "compliance"—it would be no different from any other challenge to *ultra vires* agency action. In its order on the motion to enforce, the Court quoted *Texas*'s language indicating that an agency's actions following vacatur must comply with "the constitutional or statutory basis on which the court invalidated an agency action." ECF 240 at 8 (quoting *Texas*, 40 F.4th at 220). That proves the point: the only constraints with which the agency must "comply" following vacatur are the constitutional and statutory restrictions that always constrain agency conduct. And if any persons believe Defendants are acting inconsistent with those restrictions and are injured by it, they can sue.

The Court also cited *Asylumworks v. Mayorkas*, 2023 WL 2733722 (D.D.C. Mar. 31, 2023), and that case too is consistent with Defendants' understanding here. There, after vacating

two agency rules, the court held that "defendants were only obligated to vacate and set aside the rules, as they have done." *Id.* at \*6. And it noted that "[p]laintiffs may challenge the sufficiency of any further agency act or the reasonableness of the agency's delays in a separate action with the filing of a new complaint." *Id. Mayorkas* does not support an understanding of this Court's March 17 vacatur as having required some particular affirmative agency action.

Plaintiffs cite no authority whatsoever to the contrary. In their June 8 "reply" to Defendants' first two status reports, they argued that Defendants "are doing nothing to comply" with the Court's partial summary judgment order. ECF 245 at 3. Wrong: the vacatur portion of the order does not require affirmative compliance actions, and nothing in the Court's order on the motion to enforce describes required compliance actions. As described above, Defendants are not currently taking any steps based on the agency actions that the Court's order vacated. Next, although Plaintiffs argued that the partial summary judgment's "effectiveness" is not "automatically stayed," *id.*, Defendants never said it is: instead, the point is that vacatur is not effective until a final judgment is entered. *See supra* p. 3.

The statements of Chief Judge Srinivasan and Judge Pillard regarding the D.C. Circuit's May 2025 stay order do not support Plaintiffs' argument. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL2787974, at \*1 (D.C. Cir. May 28, 2025) (en banc) (Statement of Srinivasan, C.J.); *id.* at \*3 (Statement of Pillard, J.). Those statements discussed the continuing effectiveness of prong (3) of this Court's April 22, 2025, preliminary injunction, which Defendants did not appeal. That order was expressly injunctive in nature and has been treated as such by Defendants. *See* ECF 175 (seeking an order dissolving prong (3)). Indeed, that the Court entered an injunction expressly requiring Defendants to "restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,'" ECF 98 at

36 (citation omitted), merely highlights that the vacatur portion of the March 17, 2026, partial summary judgment order did *not* require Defendants to do anything. Again, a vacatur is not an injunction. *See Texas*, 40 F.4th at 219 (noting that "[t]here are meaningful differences between an injunction, which is a 'drastic and extraordinary remedy,' and vacatur, which is 'a less drastic remedy.'" *Texas*, 40 F.4th at 219 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).

To the extent the Court disagrees with any of the above and believes the vacatur portions of the partial summary judgment order both have immediate effect and require affirmative compliance steps, then those parts of the order are effectively injunctive in nature, and would form part of Defendants' pending appeal. *See* ECF 224 (notice of appeal directed to the entire order); Emergency Motion for Stay Pending Appeal and Immediate Administrative Stay, Doc. #2164685, at 5, 7, *Abramowitz v. Lake*, No. 26-5086 (D.C. Cir. Mar. 20, 2026) (explaining that appeal is intended to challenge injunctive portions of the order). At the time of filing their stay motions in the D.C. Circuit, Defendants understood the return-to-work requirement to be the only portion of the March 17 order that required immediate compliance action, and they sought a stay of that part of the order. But if any portions of the vacatur order are now interpreted to impose immediately enforceable, injunctive, concrete compliance actions, Defendants would move to expand the D.C. Circuit's stay to extend to any such requirements.

**B.** Even apart from the non sequitur of seeking "compliance" information about a vacatur, Plaintiffs are not entitled to the information they seek. Their five items, Mot. 2-3, relate to information that is obsolete, irrelevant to any issue remaining in the case, or both.

*First*, Plaintiffs want Defendants to "[e]xplain what authority presently justifies the Agency's operation of the Agency at roughly the same functional levels as prior to the March 2026

vacatur order." Mot. 2. This item calls for legal arguments, not a report of facts. But the parties already briefed, and the Court resolved through its partial summary judgment order, arguments for and against each side's interpretation of Defendants' legal obligations. Although Defendants disagree with the Court's merits resolution, it is a resolution nonetheless, and further briefing on the subject before this Court would be the purest waste of time. In any event, Plaintiffs' premise is faulty: it is not accurate to describe USAGM as operating at "roughly the same functional levels as prior to the March 2026" order. Defendants already explained in detail how the operating status changed between March 2025 and December 2025, *see, e.g.*, ECF 175 at 4-6, and since March 2026, Defendants have returned to active service or newly hired 65 employees.[2] *See* ECF No. 242 at 2; ECF 244 at 1; ECF 248 at 1; ECF 251 at 1.

*Second* and *third*, Plaintiffs want Defendants to "identify the contracts that were cancelled" in March 2025 and "identify the leases and partnership agreements that were canceled" in "March 2025 and thereafter." Mot. 2. But that information is irrelevant now that the operational status quo is indisputably changed from March 2025—roughly sixteen months ago.

*Fourth*, Plaintiffs ask the Court to compel Defendants to "[i]dentify the other steps taken to suspend broadcasting operations in March 2025 and thereafter." Mot. 3. As Defendants have explained at length, however, broadcasting operations are no longer "suspended" and have not been for many months. *See* ECF 175 at 4-6 (describing USAGM's broadcasting and other operational activities as of December 2025); ECF 123-1 (same). It serves no purpose, therefore, for Defendants to go back in time and provide a list of "steps" that may have been reversed or simply become moot through events.

---

[2] Defendants' previous status reports described 64 such employees, and one additional employee has been hired so far since the most recent status report, for a total of 65.

*Fifth*, Plaintiffs ask the Court to compel Defendants to "[i]dentify all the details of" what they describe as a "plan" referenced in the now-defunct and obsolete Reconstitution Plan, ECF 242-1, to "restore core broadcasting and technical capabilities," and to "enabl[e] a steady and manageable ramp-up to full operational capacity." Mot. 3. As Defendants have explained, however, the Reconstitution Plan was developed for the express purpose of complying with the original March 23, 2026, return-to-work deadline, which is no longer effective. ECF 225-1 at 2 ("USAGM immediately began developing a plan to assess its ability to comply with this Order and return employees on administrative leave to work as soon as practicable. To that end, USAGM has developed a detailed Reconstitution Plan that outlines a phased, risk-managed approach to reinstate all 484 employees while ensuring continuity of mission-critical operations and safeguarding agency systems and infrastructure."); *see* ECF 237 at 6 (explaining the context of the Reconstitution Plan). As with the previous four items, the Reconstitution Plan and its contents serve no purpose in this litigation. USAGM is still bringing programming online, but the March 2026 framework for doing so is no longer relevant.

**C.** Even if the information Plaintiffs seek were not totally irrelevant, it would not be appropriate material for inclusion in the status reports. The Court did not order or authorize the parties to propound questions to each other and receive compelled answers. Yet that is what Plaintiff's motion seeks—compelled answers to interrogatories in all but name.

In fact, *all* of the factual information Plaintiffs seeks is backward-looking, and *none* of it relates to future, proposed, current, or even recent actions: the typical content of status reports. This is simply discovery by another name. Indeed, that Plaintiffs say they want to "gauge [Defendants'] compliance" (at 1) betrays that the motion is no more than a fishing expedition. But the time for record development is long past, as the Court already entered partial summary

8

judgment disposing of Plaintiffs' APA claims. And Plaintiffs have not satisfied the procedural requirements for a motion for an order compelling discovery under Federal Rule of Civil Procedure 37; nor have they carried the "initial burden" they would bear, in such a motion, of "explaining how the requested information is relevant." *See Jefferson v. Austin*, 345 F.R.D. 249, 252 (D.D.C. 2024) (citation omitted).

## CONCLUSION

The Court should deny Plaintiffs' motion for information.


Dated: July 24, 2026                              Respectfully submitted,

                                                  BRETT A. SHUMATE
                                                  Assistant Attorney General

                                                  ERIC J. HAMILTON
                                                  Deputy Assistant Attorney General
                                                  Civil Division, Federal Programs Branch

                                                  */s/ Elizabeth Hedges*
                                                  ELIZABETH HEDGES
                                                  Senior Counsel to the Assistant Attorney
                                                  General
                                                  BRANTLEY T. MAYERS
                                                  Counsel to the Assistant Attorney General
                                                  Civil Division
                                                  United States Department of Justice
                                                  950 Pennsylvania Avenue NW
                                                  Washington, DC 20530
                                                  Telephone: (202) 616-0929
                                                  Elizabeth.T.Hedges@usdoj.gov

                                                  *Attorneys for Defendants*

9