**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL ABRAMOWITZ, *et al.*,<br>*Plaintiffs,*<br>v.<br>KARI LAKE, *et al.*,<br>*Defendants.* | **Case No. 1:25-CV-887-RCL** |
| PATSY WIDAKUSWARA, *et al.*,<br>*Plaintiffs,*<br>v.<br>KARI LAKE, *et al.*,<br>*Defendants.* | **Case No. 1:25-CV-1015-RCL** |

## MEMORANDUM OPINION

Plaintiffs in the above-captioned cases have moved for the Court to require Defendants to submit information that they deem relevant to this Court's March 17 order vacating certain agency action. *See Abramowitz* ECF No. 168; *Widakuswara* ECF No. 249. Defendants oppose. After receiving full briefing, the Court held a hearing on the motion on September 15, 2026. For the reasons contained herein, which differ from those advanced in the Motion, the Court will grant Plaintiffs' Motion in part and deny it in part without prejudice.

## BACKGROUND

Everything old is new again. Ever since this Court's order requiring periodic status reports concerning compliance with the Court's earlier summary judgment rulings, *see Abramowitz v. Lake*, No. 25-887, 2026 WL 1652600, at *5 (D.D.C. May 14, 2026), Defendants have asserted that

those rulings require no concrete action, *see Abramowitz* ECF No. 151 ("Status Report 1"). Defendants have persisted in doing so despite this Court's rejection of that very argument. *See Abramowitz*, 2026 WL 1652600, at *5. Now, in opposing Plaintiff's present motion, Defendants are determined to sing the same tune. *See* Defendants' Opposition, *Abramowitz* ECF No. 162; *Widakuswara* ECF No. 253 at 4–7 ("Defs.' Opp."). Because of the extensive history of this litigation, the Court assumes familiarity with the basic facts of the parties' dispute and briefly sets out the facts required to reach a ruling on the present motion.

On March 17, 2026, the Court granted partial summary judgment in favor of Plaintiffs on their claims under the Administrative Procedure Act ("APA"). *Abramowitz v. Lake*, 824 F. Supp. 3d 1, 27 (D.D.C. 2026); *Abramowitz* ECF No. 133, *Widakuswara* ECF No. 222 at 1–2 ("March 17 Order"). Specifically, the Court held that "all actions taken pursuant to the defendants' decision to reduce VOA to the 'statutory minimum,' as set forth in the Statutory Minimum Memorandum, are VACATED and SET ASIDE, including the March 18 Statutory Minimum Memorandum, the March 15 placement of 1,042 employees on administrative leave, the suspension of broadcasting operations, and the termination of non-contractor staff." March 17 Order at 1–2. The Court also ordered "all employees placed on administrative leave pursuant to the defendants' March 2025 directive shall return to work." *Id.* at 2. Put another way, the Court's order did two things; it (1) vacated agency action and (2) granted injunctive relief. *See id.* at 1–2. Parties do not dispute that portion (2) is irrelevant to this motion and is held in abeyance of proceedings in the D.C. Circuit. *See Widakuswara v. Lake*, Nos. 25-5145, 26-5086, 26-5087, 2026 WL 970265, at *1 (D.C. Cir. Mar. 31, 2026) (per curiam); *Widakuswara v. Lake*, No. 25-5144 at 2 (D.C. Cir. June 8, 2026) (per curiam) (holding appeal in abeyance of *NTEU v. Vought*).

In order to determine whether Defendants were complying with the vacatur portion of the order, the Court ordered Defendants to "file a status report on the same date and every fourteen days thereafter describing (i) progress toward compliance with the Court's March 17 Order, including the number of employees onboarded since the entry of that order, and (ii) any intended or incidental modifications to or deviations from the Reconstruction Plan." *Abramowitz* ECF No. 141, *Widakuswara* ECF No. 228 at 8 ("March 20 Order"). Defendants initially failed to submit the required status reports, so the Court granted Plaintiffs' motion to enforce compliance. *Abramowitz*, 2026 WL 1652600, at *5. In that order, the Court wrote that "the agency must demonstrate that it has, in fact, vacated and set aside . . . unlawful actions." *Id.* (citing *Asylumworks v. Mayorkas*, No. 1:20-cv-3815, 2023 WL 2733722, at *6 (D.D.C. Mar. 31, 2023)).

Afterward, Defendants began submitting status reports. The first, dated May 20, 2026, was mostly dedicated to legal argument rather than factual assertions. Status Report 1 at 1–5. For example, Defendants argued that vacatur has no immediate effect because it was granted as partial summary judgment. *Id.* at 2. Defendants then argued that vacatur cannot require "concrete, specific actions, like an injunction." *Id.* at 3.

Defendants have continued to insist upon those two arguments in each of their subsequent status reports, which incorporate them by reference. *See Abramowitz* ECF Nos. 153, 155, 157, 160, 163, 166, 168, 175; *Widakuswara* ECF Nos. 242, 244, 246, 248, 251, 254, 257, 259, 266. Perhaps because of Defendant's conviction in the truth of those arguments, their status reports have been largely uninformative. Each report is nearly identical, and each makes two assertions. First, Defendants reference their central two arguments: vacatur is not effective, and vacatur requires no concrete action. *See, e.g., Abramowitz* ECF No. 166 ¶ 1. Second, they remind the Court that the

return-to-work portion of the injunction is stayed and state a number of employees who have returned since the previous status report. *See, e.g., Abramowitz* ECF No. 168 ¶ 2.

Dissatisfied with these reports, Plaintiffs filed a response arguing that the reports were inadequate. *Abramowitz* ECF No. 154, *Widakuswara* ECF No. 245. On July 10, 2026, Plaintiffs filed the present motion with the Court. *Abramowitz* ECF No. 158, *Widakuswara* ECF No. 249 ("Pls.' Mot. for Information"). Plaintiffs now request five categories of information:

1. Explain what authority presently justifies the Agency's operation of the Agency at roughly the same functional levels as prior to the March 2026 vacatur order.
2. As part of suspending Agency operations in March 2025 and thereafter, identify the contracts that were cancelled.
3. As part of suspending such operations in March 2025 and thereafter, identify the leases and partnership agreements that were canceled.
4. Identify other steps taken to suspend broadcasting operations in March 2025 and thereafter.
5. With respect to the Reconstruction Plan Defendants prepared following the Court's March 17, 2026 Order, Defendants stated that they had developed a plan to "restore core broadcasting and technical capabilities," and to "enable[e] a steady and manageable ramp-up to full operational capacity." Identify all the details of such plan.

*Abramowitz* ECF No. 158-1, *Widakuswara* ECF No. 249-1 at 1–2 (Pls' Proposed Order). Defendants oppose, primarily restating their central arguments: the vacatur is not effective and vacatur requires no concrete action. *See* Defs.' Opp. at 4–7. On September 15, 2026, the Court heard argument on the motion, *see Abramowitz v. Lake*, No. 25-887; *Widakuswara v. Lake*, No. 25-1015, Hearing Transcript at 1 (D.D.C. Sept. 15, 2026) ("Hr'g Tr."),[1] which is ripe for review.

[1] This opinion quotes from a draft of the hearing transcript.

## LEGAL AUTHORITY

Federal jurisdiction is limited by Article III of the Constitution. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 145 S. Ct. 41, 47 (2025). "Federal courts are empowered—and indeed, have an obligation—to undertake an independent investigation to assure itself of its own subject-matter jurisdiction." *Schindler Elevator Corp. v. Wash. Metro. Area Transit Authority*, 514 F. Supp. 3d 197, 202 (D.D.C. 2020); *see also In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997) ("All federal courts[] 'are under an independent obligation to examine [their] own jurisdiction....'" (quoting *FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 231 (1990))).

## ANALYSIS

Parties vehemently disagree on Defendant's central arguments. That disagreement played out fully during the litigation of Plaintiffs' motion to enforce. *See Abramowitz*, 2026 WL 1652600, at *5. Despite this Court's resolution of that matter, *see id.*, Defendants now apply the same arguments to a subtly new context.

Defendants argue that because this Court ordered vacatur in the form of partial summary judgment, it has no immediate effect. Defs.' Opp. at 4–5. Therefore, the logic goes, Plaintiffs' request for information to gauge compliance is a non-starter because there is nothing with which to comply. *See id.* at 4 ("Plaintiff's motion fails because it is entirely premised on the erroneous notion that Defendants must 'take steps to effectuate the Court-ordered vacatur.'" (quoting Pls.' Mot. at 2)). Defendants then hedge slightly, writing: "To be clear, Defendants are not currently taking any action based on the agency actions that the Court's order vacated." *Id.* at 5. Under Defendants' view, that is all that vacatur requires. *See id.* ("Defendants are not aware of any legal basis for interpreting [vacatur] to require concrete, specific actions . . . ."). In effect, Defendants

claim that even if there were something to comply with, they are giving effect to the Court's order as they interpret that order's legal consequences. *See id.* (beginning argument with the qualification: "[E]ven if the vacaturs took effect immediately . . .").

But those arguments are indirectly responsive. In other words, the Court need not again decide or clarify the effect of the Court's order or what vacatur requires to resolve the present motion. Considering Defendants' intransigence on those issues and their allegation that they overlap with proceedings in the D.C. Circuit, *see id.* at 7, the Court believes that it can reach a simpler and more efficient resolution by taking a different tack, *see Brown v. Plaut*, 131 F.3d 163, 170 (D.C. Cir. 1997) ("We do not think it necessary or even useful to resolve so many complex and fact-specific issues in the context of this case which it may be possible to decide on far narrower grounds.").

Subject-matter jurisdiction is the narrowest ground available. *See Berriochoa Lopez v. U.S.*, 309 F. Supp. 2d 22, 26 n.6 (D.D.C. 2004) ("Because jurisdiction is a threshold requirement, dismissal for lack of subject matter jurisdiction represents the "best and narrowest ground" on which the Court can resolve this case." (quoting *Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))). And the Court is, in fact, under an "obligation [] to undertake an independent investigation to assure itself of its own subject-matter jurisdiction." *Schindler*, 514 F. Supp. 3d at 202. The Supreme Court has confirmed that "even if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction." *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025).

Federal jurisdiction requires that, among other things, "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v.*

*Symczyk*, 569 U.S. 66, 71–72 (2013) (quoting *Arizonans for Official Eng. v. Ariz.*, 520 U.S. 43, 67 (1997)). Put another way, "[f]ederal courts lack subject-matter jurisdiction to hear claims that are moot." *Aboutalebi v. Dep't of State*, No. 19-2605, 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019). Accordingly, "courts may address mootness *sua sponte*." *Sanchez Mora v. Customs and Border Prot.*, No. 24-3136, 2026 WL 1382677, at *6 n.2 (D.D.C. May 18, 2026).

A "case is moot if events have so transpired that the decision will neither presently affect the parties rights nor have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co. v. Fed. Energy Reg. Comm'n*, 897 F.2d 570, 575 (D.C. Cir. 1990). In the APA context, a case may become moot when an agency rescinds the challenged policy. *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113–14 (D.C. Cir. 2025); *see also Larsen v. U.S. Navy*, 525 F.3d 1, 2 (D.C. Cir. 2008). Defendants' authority cited in their brief, Opp. Br. at 6, and at hearing, Hr'g Tr. at 12, proves the same. In *Asylumworks v. Mayorkas*, Judge Howell held that the plaintiff's motion to enforce was "partially mooted by defendants' final rule implementing vacatur." No. 20-cv-3815, 2023 WL 2733722, at *5 (D.D.C. Mar. 31, 2023).

Defendants' arguments and representations suggest that Plaintiffs' APA claim may have become moot. Recall Defendants' brief: "Defendants are not currently taking any action based on the agency actions that the Court's order vacated." Defs.' Opp. at 5; *see also id.* at 6 ("As described above, Defendants are not currently taking any steps based on the agency actions that the Court's order vacated."); Hr'g Tr. at 12–13 ("The agency is not taking action pursuant to the vacated actions."). Because Defendants' argument is that after vacatur, "there is nothing for the agency to do, either in the affirmative or negative," *id.* at 11, Defendants have effectively represented that they are in compliance with vacatur even though they are not required to be.

Defendants also suggest that things have changed at the agency. Mr. Mayers stated, for example, that "[t]he USAGM has had a new acting CEO since March." Hr'g Tr. at 12; *see also id.* at 14 (referencing "new agency leadership"); *id.* ("[G]iven that new leadership has taken over the agency and is ordering the agency's affairs accordingly, the agency has returned 105 employees."). Those representations are consistent with Defendants' assertion that the agency's "operating status" has changed. Defs.' Opp. at 8. In fact, Mr. Mayers suggested that the agency had hired new staff in addition to returning previous staff to work. Hr'g Tr. at 15 ("I believe that a few of those, as I said, were new hires."). If true, a policy allowing for new hires in addition to returning previous employees to work would be a significant change in course by the agency.

That change of course could be attributable to new agency policies., which is exactly what Plaintiffs are seeking. *See* Hr'g Tr. at 8 ("[W]e are simply asking for them to explain on what authority they are still operating under . . . ."). And "[t]he promulgation of a superseding policy or program can have the power to moot a challenge to the old one." *Citizens for Resp. & Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 11 (D.D.C. 2019).

Or the change could be due to a simple abandonment of the vacated actions. In that case, considering Defendants' position that such abandonment alone gave effect to the Court's vacatur order, *see* Defs.' Opp. at 7 ("[T]he vacatur portion of the [March 17 Order] did *not* require Defendants to do anything."), it is possible by their logic that any future rulings on the APA claim "will neither presently affect the parties rights nor have a more-than-speculative chance of affecting them in the future," *Transwestern Pipeline*, 897 F.2d at 575.[2]

---

[2] Of course, voluntary cessation does not generally moot a case. *See Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011) ("As a general rule, a defendant's 'voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case.'" (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979))). But voluntary cessation will moot a case "if (i) 'there is no reasonable expectation . . . that the alleged

Of course, the merits of any mootness litigation is not before the Court, and the Court is not opining on them. But the Court cannot carry out its an "obligation [] to undertake an independent investigation to assure itself of its own subject-matter jurisdiction," *Schindler*, 514 F. Supp. 3d at 202, without more information about the changes at the agency that Defendants have brought to the Court's attention, *see Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 793 F. Supp. 2d 124, 128 (D.D.C. 2011) ("In evaluating subject matter jurisdiction, the Court, when necessary, may look outside the Complaint to 'undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992))).

The first category of information that Plaintiffs' have requested is indisputably relevant to the Court's assessment of its subject-matter jurisdiction. Providing the Court and Plaintiffs with the "authority [that] presently justifies the Agency's operation of the Agency at roughly the same functional levels as prior to the March 2026 vacatur order" will illuminate whether subsequent developments at the agency have rendered the dispute over the previous agency action moot. Pls.' Proposed Order at 1.

A few points of clarification. First, the Court recognizes that Defendant disputes that the agency is operating at the same level as it was in March 2026. Defs.' Opp. at 8. The Court will not opine on these fact-bound conclusions, and Plaintiffs' request does not depend upon it. Defendants' should produce the authority that justifies the agency's operation presently. Second, Defendants' appeared to understand "authority" to mean legal authority, *see* Defs.' Opp. at 8

---

violation will recur,' and (ii) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016) (quoting *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011)).

(arguing that the request "calls for legal arguments"), while Plaintiffs define authority as the material that the agency is using to guide its decisionmaking, *see* Hr'g Tr. at 8 (discussing Defendants' position that they are no longer operating under the vacated memorandum and therefore asking the government "to explain on what authority they are still operating under"). The Court adopts Plaintiffs' usage. To be clear: the Court will direct Defendants to provide the materials that are guiding or determining the current operation of the agency. For example, a memorandum that supersedes the vacated memorandum would fit the bill.

The remaining categories of information that Plaintiffs seek bear a more attenuated connection to the mootness inquiry. But they may be relevant in the future. For example, the actions taken to close down the agency may be relevant to assessing whether the new authority upon which the agency is currently relying represents a true and durable shift in course which could moot the challenge. Accordingly, these requests will be denied without prejudice.

Considering the foregoing, the Court will also direct parties to submit briefing addressing mootness. *See* Per Curiam Order at 1, *Sec'y of Labor v. M-Class Mining, L.L.C.*, No. 20-1369 (D.C. Cir. Mar. 3, 2021) (ordering "supplemental briefing to address mootness"). Because Defendants' have raised factual issues prompting this Court's inquiry into mootness, they will get the first word.

Based on Defendants' counsel's representations at hearing, the Court expects their briefing to address changes in course at the agency to include information regarding the number of employees have been rehired along with those who are new hires. *See* Hr'g Tr. at 15 ("I believe a few of them are new hires. I don't know the bucket out of which these 105 have returned, but given that new leadership has taken over the agency and is ordering the agency's affairs accordingly, the agency has returned 105 employees. I believe a few of those, as I said, were new hires."). The

Court also expects Defendants to address the agency's expenditures, as promised by counsel. *See* Hr'g Tr. at 21 ("Your Honor, I could get the answer to that question, yes.").

The Court will set a schedule for briefing in an order accompanying this opinion.

**CONCLUSION**

For the reasons stated herein, Plaintiffs' Motion for Information Related to Vacatur will be granted in part and denied in part without prejudice. Parties will be further ordered to brief the issue of mootness in a manner consistent with this Opinion.

A separate order accompanying this Memorandum Opinion shall issue.

Date: 9-18-26

Royce C. Lamberth
United States District Judge