**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PATSY WIDAKUSWARA, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>KARI LAKE, *et al.*<br><br>Defendant. | Civil Action No. 25-1015 (RCL) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REVISED RELIEF UNDER FED. R. CIV. P. 54(B)**

## INTRODUCTION

On March 17, 2026, this Court found that Defendants had violated two distinct provisions of the Administrative Procedure Act: the prohibition on arbitrary and capricious and unlawful agency action, under 5 U.S.C. § 706(2)(A); and the directive against withholding of required agency action, under 5 U.S.C. § 706(1). In crafting relief, however, the Court focused on remedying the 706(2) violation through vacatur and did not separately order relief specifically targeted to "compel agency action unlawfully withheld" under 706(1). Plaintiffs submit that, at the time, this Court believed that any 706(1) relief would be subsumed within its vacatur order: by vacating the actions the agency took to implement its drawdown of agency functions, the Court was effectively ordering the agency to restore the status quo ante, meaning that it would no longer withhold mandatory agency action. Seven months of enforcement proceedings have shown, however, that the vacatur order has not been sufficient to remedy the separate 706(1) violation that the Court found. That violation thus remains unremedied.

Accordingly, Plaintiffs respectfully request that this Court revisit its March 17 order and, under Federal Rule of Civil Procedure 54(b), enter relief specific to the 706(1) violation. Namely, Plaintiffs request that the Court order Defendants to promulgate a plan for USAGM's broadcast activities that complies with the International Broadcasting Act, including all statutory mandates contained therein, and the Administrative Procedure Act.

**BACKGROUND**

On March 17, 2026, this Court granted Plaintiffs' motion for summary judgment on their Administrative Procedure Act claims that challenged the "dramatic[] downsiz[ing]" of the U.S. Agency for Global Media (USAGM), including Voice of America (VOA). ECF No. 223 at 1.

The Court held that the Plaintiffs challenged final agency action because the Statutory Minimum Memorandum, which "reflect[ed] the agency's official position regarding its existing legal obligations," constituted a "rule or the equivalent thereof." *Id.* at 21-22. In addition, the Court found, "[i]n the alternative, [that] each implementing action taken by defendants as part of the drawdown of USAGM would be independently reviewable agency action under the APA." *Id.* at 23. The Court then granted the Plaintiffs summary judgment on their claim that the final agency action was arbitrary and capricious under 5 U.S.C. 706(2)(A) "because the defendants failed to consider statutory factors, Congressional appropriations, and reliance interests." *Id.* at 25.

The Court also granted summary judgment on the *Widakuswara* Plaintiffs' claim under 5 U.S.C. 706(1), holding that the agency was required, but had failed, to take discrete action, including "broadcast[ing] by radio to particular areas of the world and . . . retain[ing] surge capacity to deploy during foreign crises." *Id.* at 30. The Court recognized that it was within USAGM leadership's discretion to determine "*how* to effectuate Congress's broadcasting directives," but that they must in fact exercise that discretion and effectuate Congressional

mandates. *Id.* at 30-31. The Court concluded that "[t]he withholding of these mandatory actions requires relief." *Id.* at 32.

In the relief portion of its opinion, the Court decided that "[v]acatur is the proper remedy" for a violation of 5 U.S.C. 706(2)(A). *Id.* The Court did not enter separate relief specific to the 706(1) claim. *Compare* Plaintiffs' Proposed Order, ECF No. 166-5 at 3 (requesting relief specific to 706(1) claim in the form of an order requiring Defendants to "provide all broadcasting and programming required by statute, including appropriations"), *with* Opinion, ECF No. 223 at 32-34 (ordering that "the cessation of USAGM broadcasting shall be VACATED and SET ASIDE"). The Court also entered narrow injunctive relief in aid of that vacatur, ordering that "no later than March 23, 2026, all employees placed on administrative leave pursuant to the defendants' March 2025 directive shall return to work." ECF No. 222 at 2. That injunction was stayed by the D.C. Circuit. *See Widakuswara v. Lake*, Nos. 26-2086, 26-5087, 2026 WL 970265, at *1 (D.C. Cir. Mar. 31, 2026) (per curiam).

Since the entry of partial summary judgment, Plaintiffs have consistently taken the position that vacatur means Defendants must unwind their unlawful downsizing of the agency, including by restoring the status quo that existed before the unlawful agency actions, which commenced on March 15, 2025. *See, e.g.* ECF No. 232 at 6; ECF No. 238 at 3-6; ECF No. 235 at 2-3; ECF No. 256 at 3-5. The government has resisted, arguing, among other things, that vacatur does not require it to restore the status quo at all. *See, e.g.* ECF No. 253 at 5-7. As a result, Defendants have merely disclaimed any continued reliance on the Statutory Minimum Memorandum and deemed that sufficient compliance with the vacatur order. *See* ECF No. 276 at 2 ("Plaintiffs' claim to vacate the Statutory Minimum Memorandum is moot because USAGM

replaced the Memorandum, does not consider the Memorandum operative, and does not plan or intend to readopt the Memorandum").

On September 18, 2026, this Court ordered the parties to brief whether changed circumstances at the Agency have rendered the APA claims moot. *See* ECF No. 269 at 8. Defendants filed their opening brief on October 13 and Plaintiffs file their response concurrently with this motion.

## ARGUMENT

Plaintiffs respectfully request that the Court revise its March 17 summary-judgment order to enter relief specific to the 5 U.S.C. § 706(1) violation, which the Court has already held "requires relief." ECF No. 269 at 8. The Court's decision to order only vacatur, aided by a specific and narrow injunction limited to employee reinstatement, has proved insufficient to accord Plaintiffs relief on their 706(1) claim. Plaintiffs submit that vacatur requires the Defendants to restore the status quo, meaning they would restore all broadcasting that was silenced on March 15, 2025. Had that happened, that restoration of services would have remedied the 706(1) violation as well as the 706(2) violation. But that has not happened.

Intervening factual developments have shown, however, that Defendants do not intend to restore the status quo; modification of the Court's summary-judgment order is thus necessary to account for that factual development and to ensure Plaintiffs relief for the 706(1) violation that this Court already held occurred. Moreover, modification is in the interest of justice: Without it, the Defendants are likely to continue to shirk their statutory duties, leaving the Plaintiffs without a remedy for the legal violation that they have already proven.

### I. This Court Should Revise the March 17 Order

Rule 54(b) allows courts to "revise[]" "any order" or decision at "any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See* Fed.

R. Civ. P. 54(b). It thus governs a request to revisit a partial summary judgment order. *See Pinson v. Dep't of Just.*, 321 F.R.D. 1, 3 (D.D.C. 2017).

Under Rule 54(b), courts apply a "flexible standard." *Shvartser v. Lekser*, 330 F. Supp. 3d 356, 360 (D.D.C. 2018) (quotation marks omitted); *see also Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015). Accordingly, "Rule 54(b) reconsideration may be granted as justice requires." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (Lamberth, J.). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id*. As such, courts have "broad discretion to grant or deny a motion for reconsideration" under Rule 54(b). *Id*. (quotation marks omitted). Among the circumstances that may implicate an injustice is a change in facts since the original decision or order's entry. *Banks v. Booth*, 518 F. Supp. 3d 57, 62 (D.D.C. 2021). Injustice can also arise from a court's "error not of reasoning but of apprehension." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).

Importantly, Rule 54(b) is not an invitation to retread old ground; "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 22 (D.D.C. 2007) (cleaned up).

**a. Defendants' actions since March 17 have not remedied the 706(1) violation.**

Defendants remain derelict in their duties under the International Broadcasting Act as well as the Administrative Procedure Act.

In its summary-judgment opinion and throughout this case, this Court has recognized that, although the International Broadcasting Act grants USAGM leadership discretion in how

best to effectuate Congress's international broadcasting goals, the Agency has no discretion to decline to effectuate those goals altogether. *See e.g.*, ECF No. 223 at 30-31.

Among Congress's directives are that VOA "'communicat[e] directly with the peoples of the world by radio,'" and "ensure that broadcasting includes 'information about developments in each significant region of the world' and 'a variety of opinions and voices from within particular nations and regions prevented by censorship or repression from speaking to their fellow countrymen.'" *Id*. at 30 (quoting 22 U.S.C. §§ 6202(b), (c)). USAGM is "also required, by law, to maintain 'research capacity,' 'transmitter and relay capacity,' and 'capability to provide a surge capacity'" during "crises abroad." *Id*. (quoting 5 U.S.C. § 6202(b)(4), (8), (9)). And Congress has "identified particular countries to which broadcasting must be directed." *Id*.

Likewise, the Agency is bound by the dictates of the Administrative Procedure Act, including the requirement that it engage in "reasoned decisionmaking," *Motor Vehicle Manufacturers Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). When an Agency abandons an old policy and adopts a new one, the agency must "display awareness that it is changing position," and must demonstrate "that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphases omitted). And abandonment of agency policy that has garnered significant reliance interests, as here, *see* ECF No. 223 at 12-13, requires a "more detailed justification than what would suffice for a new policy created on a blank slate." *Fox Television*, 556 U.S. at 515. Moreover, an agency may act only within the statutory jurisdiction and authority granted to it and may not simply disregard the statutory provisions governing its activities. 5 U.S.C § 706(2)(C).

The documents Defendants submitted to the Court on October 13 show that the agency continues to fail to engage with its statutory obligations under the IBA, and that the agency has not thought through whether its dramatically reduced programming is reasonable. Nor has the agency grappled with the reliance interests that the pre-March 15, 2025, broadcasting regime engendered. The Wallace Declaration and the Congressional notification that Defendants submitted with the October 13 filing both reflect actions the Agency intends to take, but not how or even whether it decided those actions align with what Congress envisioned or with the agency's charter. The so-called "Program Plan" they reference is only a "Plan" in the sense that any course of action, without elaboration or justification, constitutes a plan. Both documents nod to the existence of statutory responsibilities or requirements, but do not explain who at the agency has determined what those are, how the agency is fulfilling them, or, just as importantly, why the actions omitted from the "Program Plan" are *not* statutorily required. *See, e.g.*, Wallace Declaration, ECF No. 276-1 at ¶ 4 (stating, without elaboration, that "VOA's current operations are guided by direction from USAGM, including the Program Plan and deliberations about programming and modernization consistent with VOA's statutory responsibilities and Executive Order 14238."); ECF No. 276-2 at 7 (providing, without analysis, "VOA will continue broadcasting in all statutorily required languages including Russian, Korean, and Kurdish, as well as Farsi, Mandarin, Dari and Pashto").

Alarmingly, the Congressional notification omits broadcasting to entire regions of the world, which has been a subject of this Court's past orders. *See* ECF No. 126 at 4 (Defendants' failure to explain why they need not broadcast to Latin America or Africa was deficient to comply with preliminary injunction requiring that they meet statutory requirements). For instance, Defendants' Congressional notification lists VOA's total weekly broadcast hours,

showing only broadcasts in Dari, Pashto, Mandarin, Kurdish, Korean, and Farsi, *see* ECF No. 276-2, none of which are languages spoken widely in Africa or Latin America, suggesting that Defendants still do not plan to broadcast to those two regions of the world. *See* also Abramowitz Decl., ¶¶ 5, 7 (filed with mootness response). The agency also apparently does not plan to initiate radio broadcast in Croatian or Serbian, both of which this Court has pointed out are encompassed within Congressional directives. *See* ECF No. 164 at 9-10.

More to the point, while the agency retains discretion in how to meet its statutory directives, it does not appear to have remedied the fundamental defect this Court identified in March (and indeed in September 2025, as well): The agency has not meaningfully engaged with these statutory requirements, failing to even "feign an effort to exercise" their discretionary authority, and indeed, "thumb[ing their] nose at these statutory requirements." ECF No. 164 at 10 (first quotation); ECF No. 223 at 32 (second quotation).

Plaintiffs submit that, in directing vacatur of the Statutory Minimum Memorandum and the downsizing actions that Defendants took (as well as injunctive relief restoring employees to active duty), the Court assumed, justifiably, that its order would restore the status quo prior to March 15, thereby restoring the Agency's mandatory actions under the IBA. Indeed, in subsequent orders, this Court directed that Defendants must demonstrate that they have "revert[ed] to the *pre-action status quo*." ECF No. 240 at 8-9. The Court likely also contemplated that, if, after restoring the status quo, the Defendants continued to pursue a goal of downsizing the Agency, they would promulgate a new plan accounting for the IBA and compliant with the APA's requirement of reasoned decision-making. After all, "vacatur requires that the agency's forward-looking decisionmaking comply with 'the constitutional or statutory basis on which the

court invalidated an agency action.'" ECF No. 240 at 8 (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022).

The Agency has done neither, however. That factual development undermines foundational assumptions that guided the Court's formulation of relief on March 17. And it leaves unremedied the 706(1) violation that this Court has already identified. Accordingly, justice requires the Court to revisit its March 17 order and enter the 706(1)-specific relief Plaintiffs request.

**b. An order directing Defendants to produce an APA-compliant plan is appropriate.**

5 U.S.C. § 706(1) directs courts to "compel agency action unlawfully withheld or unreasonably delayed." As this Court has held, the IBA sets forth specific broadcasting directives that the Agency must satisfy. ECF No. 223 at 30-31. And the APA requires that, when an agency engages in a change of policy, it must demonstrate "that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better." *Fox Television*, 556 U.S. at 515 (emphases omitted). The Court held in March that the Agency had not satisfied either of these mandatory agency actions. *See* ECF No. 223 at 29-32. That remains the case.

Recognizing, again, that it is "for USAGM leadership's judgment regarding *how* to effectuate Congress's broadcasting directives, [but] they have *no* discretion regarding *whether* to do so," ECF No. 223 at 30-31, this Court should order Defendants to promulgate a plan that complies with the mandates of the IBA and the APA. Such an order should bring the agency into compliance with its responsibility to engage with its statutory directives under the IBA and to exercise its discretion with respect to how best to effectuate those directives.

## CONCLUSION

For the foregoing reasons, Plaintiffs therefore respectfully request that this Court amend its March 17 order to require Defendants to promulgate a plan for the agency's broadcasting activities that will bring it in line with these statutory requirements.

Dated: November 9, 2026

Respectfully submitted,

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

_______/s/______
Andrew G. Celli, Jr.
Debra L. Greenberger
Daniel M. Eisenberg
Nick Bourland

One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
dgreenberger@ecbawm.com
deisenberg@ecbawm.com
nbourland@ecbawm.com

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, John Doe 4, American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA); and The NewsGuild-CWA*

AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO (AFSCME)

_______/s/______
Teague Paterson
Matthew Blumin
Georgina Yeomans

1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for Plaintiff American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME)*

DEMOCRACY DEFENDERS FUND

DEMOCRACY FORWARD FOUNDATION

_______/s/______
Norman L. Eisen
Joshua Kolb
Taryn Wilgus Null
Sofia Fernandez Gold
Zsa'Queria Martin

600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Norman@democracydefenders.org
Joshua@democracydefenders.org
Taryn@democracydefenders.org
Sofia@democracydefenders.org
Zsaqueria@democracydefenders.org

*Counsel for Reporters Sans Frontières, Reporters Without Borders, Inc., American Federation of State, County and Municipal Employees (AFSCME); and American Federation of Government Employees (AFGE)*

_______/s/______
Kristin Bateman
Cynthia Liao
Robin F. Thurston
Skye L. Perryman

P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org
cliao@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs American Federation of State, County and Municipal Employees (AFSCME); American Federation of Government Employees (AFGE); American Foreign Service Association (AFSA); The NewsGuild-CWA*

GOVERNMENT ACCOUNTABILITY PROJECT

_______/s/______
David Z. Seide

1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, John Doe 1, John Doe 2, John Doe 3, and John Doe 4*

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

_______/s/______
Rushab Sanghvi

80 F. Street, NW
Washington, DC 20001
(202) 639-6424
SanghR@afge.org

*Counsel for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

AMERICAN FOREIGN SERVICE ASSOCIATION

_______/s/______
Sharon Papp
Raeka Safai

MEDIA FREEDOM & INFORMATION ACCESS CLINIC – YALE LAW SCHOOL

2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Counsel for Plaintiff American Foreign Service Association (AFSA)*

_______/s/______
David A. Schulz

127 Wall Street
New Haven, CT 06520
David.schulz@YLSClinics.org

*Counsel for Plaintiffs Patsy Widakuswara, Jessica Jerreat, Kathryn Neeper, and John Does 1-4*

** The views expressed herein do not purport to represent the institutional views of Yale Law School, if any.