UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL ABRAMOWITZ, *et al.*,<br>Plaintiffs,<br>v.<br>KARI LAKE, et al.<br>Defendants. | Civil Action No. 25-00887 (RCL) |
| PATSY WIDAKUSWARA, *et al.*<br>Plaintiffs,<br>v.<br>KARI LAKE, *et al.*<br>Defendants. | Civil Action No. 25-1015 (RCL) |

**REPLY IN SUPPORT MEMORANDUM REGARDING MOOTNESS**

When Plaintiffs filed their complaints over nineteen months ago, the U.S. Agency for Global Media (USAGM) was under different leadership, and a different memorandum guided the agency's practices. Now, USAGM is headed in a different direction. Plaintiffs apparently disagree with the direction and insist on continued judicial superintendence of the agency's operations. But policy disagreements and disagreeable rhetoric are not the stuff of an Article III case-or-controversy. Instead, when the record makes clear that an agency has rescinded an action and is not likely to reinstitute it, or that an agency has acted when it previously had not, a case is moot and the time for judicial involvement is at an end. And that is the case here—the decisions made in March 2025 are no longer operative. The Statutory Minimum Memorandum (the

"Memorandum") is not in effect, USAGM has resumed broadcasting efforts around the world, and new leadership has made new personnel decisions. Plaintiffs' vacatur claims are accordingly moot, as is the *Widakuswara* Plaintiffs' § 706(1) claim.

**1.** Plaintiffs seek vacatur of a memorandum that the agency has already set aside. *See* Doc. 276 at 5. Christopher Wallace, the Deputy Director of Voice of America (VOA), does not "use or rely on the March 2025 Statutory Minimum Executive Summary Memo to make operational decisions and [he has] no plans to use that document in the future." Doc. 276-1 (Wallace Decl.) ¶ 4.[1] And the same goes for his colleagues. The "USAGM 2026 Program Plan," not the "March 2025 Statutory Minimum Executive Summary Memo," currently guides agency practice. *Id.* ¶ 17. The agency does not rely in "any way" on the latter. *Id.*

In their attempt to stave off the obvious conclusion that their challenge to the Statutory Minimum Memorandum is no longer live, Plaintiffs juxtapose Wallace's representation that he does not "use or rely on" the Memorandum with Wallace's representation that USAGM and VOA do not "rely on" the Memorandum. Doc. 281 at 2 (emphasis omitted). This difference, Plaintiffs say, is reason to believe that the agency may continue to use the Memorandum. *See id.* But Plaintiffs' hypertechnical reading is unavailing, especially when viewed in the light of the rest of the record, which demonstrates that the agency is "using" the 2026 Program Plan and the hiring plan the agency submitted to the Office of Personnel Management. *See* Wallace Decl. ¶¶ 16-17. Indeed, at odds with the Statutory Minimum Memorandum, the agency has returned to work 168 employees and hired more. *See id.* ¶ 16; Doc. 244 at 1; Doc. 254 at 1; Doc. 280 at 1. If the agency still "used" the Memorandum, which calls for a total of 81 employees including senior executive service members, *see* Doc. 166-4 at 3, then it would not have made these personnel decisions.

[1] All records citations are to the *Widakuswara* case.

Plaintiffs then turn to speculation, claiming that it is possible that USAGM will "tomorrow" return to reliance on the Memorandum. Doc. 281 at 3. But the D.C. Circuit has made clear that this argument in this context cannot save a moot claim: "the mere power to reenact a challenged [policy] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997); *see Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) (refusing to apply the voluntary-cessation exception when doing so would require the court to "speculate about future actions by policymakers"). Instead, evidence supporting the likelihood of reinstitution is required. *See, e.g.*, *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016). "No such evidence exists here," *id.*, especially given the new agency leadership, *cf. Mayor of Philadelphia v. Educ. Equal. League*, 415 U.S. 605, 622 (1974) (requiring "supplemental findings of fact indicating that the new officer will continue the practices of his predecessor" when adjudging whether to issue prospective relief). Plaintiffs' claim for vacatur of the Statutory Minimum Memorandum is therefore moot. *Cf. Akiachak Native Cmty.*, 827 F.3d at 106 ("Because that regulation no longer exists, we can do nothing to affect [plaintiff's] rights relative to it, thus making this case classically moot for lack of a live controversy.").

**2.** Plaintiffs' claim to vacate the cessation of broadcasting is also moot. *See* Doc. 276 at 5-6. As Defendants previously explained, the 2026 Program Plan "far exceeds" broadcasting operations at "the beginning of 2026" *and* at "the time of this suit." *Id.* And there is no plan to revert to the levels at present at either time. *See* Wallace Decl. ¶¶ 4, 17.

In response, Plaintiffs express their disagreement with the 2026 Program Plan and argue that the claim is not moot because the "effects" of the March 2025 decisions related to broadcasting remain. Doc. 281 at 4-5. But because the 2026 Program Plan replaced the March 2025 decisions—

which are now "devoid of any legal effect," *Coal. of Airline Pilots Ass'ns v. F.A.A.*, 370 F.3d 1184, 1191 (D.C. Cir. 2004)—any alleged injuries to Plaintiffs "will stem from the [2026 Program Plan], not the [March 2025 decisions]," *Organic Trade Ass'n v. U.S. Dep't of Agric.*, 834 F. Supp. 3d 1, 13 (D.D.C. 2026) (quotation omitted).[2] Intervening events have therefore "completely and irrevocably eradicated the effects of the alleged violation[s]." *Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 89 (D.D.C. 2018). And the vacatur claim is accordingly moot.

That the agency made the decision to increase broadcasting levels independent of this Court's vacatur order is no reason to doubt mootness. *Contra* Doc. 281 at 4-5. Instead, it is a sign that continued judicial involvement is unwarranted. *Cf. Marshall v. Loc. Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Inc.*, 593 F.2d 1297, 1300 n.14 (D.C. Cir. 1979) ("[A] case does not become moot simply because the defendant has complied with the injunction."). Plaintiffs' arguments to the contrary are more of the same—a misreading of the record to argue that the state of USAGM is akin to the agency's state in "spring 2025," *but see generally* Doc. 276, and a misreading of the law to argue that vacatur required USAGM respond with positive action, *but see, e.g.*, Doc. 242 at 3 (explaining that vacatur does not "require any specific acts of 'compliance'"). Neither argument moves the needle, nor provides any reason for this Court to conclude that this claim remains live.

**3.** Finally, this Court never had jurisdiction over Plaintiffs' vacatur claim with respect to USAGM's personnel decisions, and even if it did, that claim is moot too. *See* Doc. 276 at 6-7. Rightly considered, that claim targets USAGM's programmatic decisions from March 2025, and

[2] Although not strictly relevant to mootness, Plaintiffs do not offer any explanation of their apparent position that the agency is statutorily obligated to provide broadcasting at the level that existed before the issuance of the Statutory Minimum Memorandum. *See* Doc. 281 at 4.

those decisions have now been superseded by more recent agency decisions concerning personnel. *Id.* at 7-8.

Plaintiffs disagree because some employees remain on administrative leave. Doc. 281 at 5. But like with respect to the broadcasting claim, these employees remain on administrative leave because of new agency action. New agency leadership, as the Wallace Declaration attests, has considered the universe of employees on leave and has decided to bring some of those employees back. *See* Wallace Decl. ¶ 16. Necessarily, then, new leadership has decided to keep the rest on leave. Any current effects are attributable to this decision rather than the March 2025 decisions challenged in Plaintiffs' complaints. And the claim is accordingly moot. *See Organic Trade Ass'n*, 834 F. Supp. 3d at 13.

Even if this Court disagrees as to mootness, all parties agree that the pending appeal "greatly impede[s]" further consideration of the agency's personnel decisions. Doc. 281 at 5. This Court should therefore stay this portion of the case "pending the D.C. Circuit's resolution of *NTEU v. Vought* and *Widakuswara*." Doc. 276 at 10.

**4.** Finally, the *Widakuswara* Plaintiffs invoke their 5 U.S.C. § 706(1) claim. Doc. 281 at 5-6. Defendants will address this claim "more fully in their" response to Plaintiffs' Rule 54(b) motion. *Id.* at 6. For now, on the issue of mootness, it suffices to say that the agency is no longer withholding the services that the *Widakuswara* Plaintiffs alleged in their complaint were at one time being withheld. *See* Doc. 1 (Compl.) ¶ 141; *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 323 (D.C. Cir. 2009) ("[T]he wrong at issue for mootness purposes is defined by the plaintiffs' theory set forth in the complaint."); *cf. Hameed v. U.S. Dep't of Health & Hum. Servs.*, No. 25-CV-04117 (DLF), 2026 WL 2921127, at *3 (D.D.C. Sept. 29, 2026) ("The APA permits a court to 'compel agency action unlawfully withheld or unreasonably delayed,' 5 U.S.C.

§ 706(1), but once the agency performs the action sought, 'the issue of regulatory delay will be moot and beyond [the court's] effective power to remedy.'" (first quoting 5 U.S.C. § 706(1); then quoting *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1035 (D.C. Cir. 1983))).

Neither VOA programming nor USAGM programming are "off the air." Compl. ¶ 141(a)-(b); *see* Doc. 276-2 at 21-22; Wallace Decl. ¶¶ 3-15. The Office of Cuba Broadcasting programming is back on the air. Compl. ¶ 141(c); *see* Doc. 276-2 at 4 ("In FY 2026, OCB will broadcast to all Cuban provinces via both medium wave and shortwave, maintaining or exceeding FY 2024 coverage levels."); *id.* at 21. USAGM has allocated appropriated funding to Radio Free Europe/Radio Liberty, Radio Free Asia, Middle East Broadcasting Networks, and Open Technology Fund. Compl. ¶ 141(d)-(f); *see* Doc. 276-2 at 4, 16-19. Korean programming is back. Compl. ¶ 141(e); *see* Doc. 276-2 at 4 ("VOA will expand Korean programming hours to FY 2024 levels."); *id.* at 21. The agency has also renewed programming to Iran. Compl. ¶ 141(f); *see* Wallace Decl. ¶ 9 ("Persian programming has expanded as well. VOA Persian currently produces approximately 77 hours per week of original television programming, forty minutes of video podcasting a week, and maintains continuous digital operations."); Doc. 276-2 at 22. And the agency has allocated the funds Congress appropriated. Compl. ¶ 141(g); *see* Doc. 276-2 at 4.

Further, to the extent this Court looked beyond the withholdings alleged in the complaint when it granted partial summary judgment, *see* Doc. 223 at 31, the case remains moot. This Court considered the cessation of broadcasting activities in March 2025, Doc. 223 at 31, but as discussed, broadcasting activities are no longer ceased. The Court also pointed to a "skeletal operation" (*id.*) that in no way resembles the 2026 Program Plan, which includes Korean video broadcasting and Russian radio broadcasting, *see* Doc. 276-2 at 21-22. Also, VOA has "established a centralized surge capability." Wallace Decl. ¶¶ 14, 17; *contra* Doc. 223 at 31 ("USAGM's surge capacity in

fact amounts to little more than minor fluctuations in staffing when big stories occur." (citation modified). And unlike in March, USAGM no longer lacks the staff necessary to fulfill its statutory duties. *See* Doc. 223 at 31. Indeed, the very example the Court gave—the Persian service, *see id.*—demonstrates as much, *see* Wallace Decl. ¶ 9.

These changed circumstances—caused by new decisions USAGM has voluntarily made—moot out the *Widakuswara* Plaintiffs' § 706(1) claim.

## CONCLUSION

The Administrative Procedure Act does not authorize indefinite judicial superintendence of agency operations. Instead, in certain circumstances, it allows for judicial review of agency action or agency inaction. When an agency's voluntary actions after the filing of a complaint supersede the action or inaction complained of in the complaint, and there is no evidence indicating a reversion, then an APA claim becomes moot. That is the case here. No matter how many times Plaintiffs repeat the same mantra, the facts on the ground are markedly different than they were when Plaintiffs filed their complaints, and the record attests that the agency is not returning to the state it was in when the complaints were filed. Plaintiffs' APA claims are accordingly moot. To the extent this Court disagrees with respect to the personnel decisions, this Court should stay proceedings as to that issue pending the D.C. Circuit's resolution of *NTEU v. Vought* and *Widakuswara*.

Dated: November 16, 2026

Respectfully submitted,

JONATHAN A. GUYNN
Acting Assistant Attorney General

*/s/ Brantley T. Mayers*
BRANTLEY T. MAYERS
FL Bar #1039996
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 890-9874
brantley.t.mayers@usdoj.gov

JEANINE FERRIS PIRRO
United States Attorney

SAMANTHA-JOSEPHINE BAKER
FL Bar #105714
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Telephone: (202) 252-2435
Samantha-Josephine.Baker@usdoj.gov

BRETT S. COVINGTON
D.C. Bar #1003835
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
Telephone: (202) 252-0888
Brett.Covington@usdoj.gov

*Attorneys for Defendants*